IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No.:  6:12-CV-499-LED |
| Plaintiff, | (Consolidated from Civil Action No. 6:12-CV-577) |
| v. | |
| ROVI CORPORATION AND ROVI GUIDES, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS ROVI CORPORATION AND ROVI GUIDES, INC.'S ANSWER TO BLUE SPIKE LLC'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT, DEFENSES AND COUNTERCLAIMS**

Defendants Rovi Corporation ("Rovi Corp.") and Rovi Guides, Inc. ("Rovi Guides" and

collectively with Rovi Corp., "Rovi"), answer the Original Complaint of Plaintiff Blue Spike,

LLC, ("Blue Spike" or "Plaintiff") filed on August 27, 2012 ("Complaint") as follows:

## NATURE OF THE ACTION

**Complaint ¶ 1:**

This is a claim for patent infringement arising under the patent
laws of the United States, Title 35 of the United States Code.

**Response to ¶ 1:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 1, and on that basis denies each and every allegation in paragraph 1.

## PARTIES

**Complaint ¶ 2:**

Plaintiff Blue Spike, LLC is a Texas limited liability company and
has its headquarters and principal place of business at 1820 Shiloh
Road, Suite 1201-C, Tyler, Texas 75703.  Blue Spike, LLC is the

- 0 -

assignee of the Patents-in-Suit from Blue Spike, Inc. (a Florida corporation), which was the assignee of the Patents-in-Suit from Scott Moskowitz and Michael Beny.  Blue Spike, LLC and Blue Spike, Inc. are collectively referred to as "Blue Spike." Blue Spike CEO Scott Moskowitz is an inventor on more than 66 U.S. Patents related to managing, monitoring, and monetizing digital content and informational assets.  Blue Spike has practiced and has continued business plans to practice Moskowitz's patented inventions.  Many of Blue Spike's patents are foundational to today's robust markets for content, which grew into their present form only after using Blue Spike's technology to catalogue, manage, monitor, and monetize that content.

**Response to ¶ 2:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 2, and on that basis denies each and every allegation in paragraph 2.

**Complaint ¶ 3:**

On information and belief, Defendant Rovi Corporation is incorporated in Delaware, and has offices across the United States including, 500 Golden Ridge Road, Suite 100, Golden, CO 80401; 7140 South Lewis Avenue, Tulsa, OK 74136; 10 N. Martingale Road, Suite 610, Schaumburg, IL 60173; 1168 Oak Valley Drive, Ann Arbor , MI 48108; 4 Radnor Corporate Center, 100 Matsonford Road, Radnor, PA 19088; 304 Hudson Street, 8th Floor, New York, NY 10013-1015; 209 Burlington Road, Suite 101, Bedford, MA 01730; 955 Massachusetts Ave., Cambridge, MA 02139; and 2830 De La Cruz Blvd., Santa Clara, California 95050.  This defendant can be served with process through its registered agent, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  Rovi Corporation does business in the State of Texas and in the Eastern District of Texas.

**Response to ¶ 3:**

Rovi Corp. admits that it is incorporated in Delaware and has offices at 500 Golden Ridge Road, Suite 100, Golden CO 80401; 7140 South Lewis Avenue, Tulsa, OK 74136; 10 N. Martingale Road, Suite 610, Schaumburg IL 60173; 1168 Oak Valley Drive, Ann Arbor, MI 48108; 4 Radnor Corporate Center, 100 Matsonford Road, Radnor, PA 19088; 304 Hudson Street, 8th Floor, New York, NY 10013-1015; 209 Burlington Road, Suite 101, Bedford MA 01730; 955 Massachusetts Ave., Cambridge, MA 02139; and 2830 De La Cruz Blvd., Santa Clara, California 95050.  Rovi Corp. also admits that its registered agent is Corporation Service

28311\3430929.1

Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  In all

other respects not specifically admitted, Rovi Corp. denies the allegations in paragraph 3.

**Complaint ¶ 4:**

> On information and belief, Defendant Rovi Guides, Inc. (f/k/a
> Gemstar-TV Guide International Inc.) is incorporated in Delaware,
> and has its principal place of business at 2830 De La Cruz Blvd.,
> Santa Clara, California 95050.  This defendant can be served with
> process through its registered agent, Corporation Service
> Company, located at 2711 Centerville Road, Suite 400,
> Wilmington, Delaware 19808.  Rovi Guides, Inc. does business in
> the State of Texas and in the Eastern District of Texas.

**Response to ¶ 4:**

Rovi Guides admits that it is incorporated in Delaware, has an office at 2830 De La Cruz

Blvd., Santa Clara, California 95050 and that its registered agent is Corporation Service

Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  In all

other respects not specifically admitted, Rovi Guides denies the allegations in paragraph 4.

## JURISDICTION AND VENUE

**Complaint ¶ 5:**

> This lawsuit is a civil action for patent infringement arising under
> the patent laws of the United States, 35 U.S.C. §101 *et seq.*  The
> Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§l33l,
> 1332, 1338(a), and 1367.

**Response to ¶ 5:**

Rovi admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331,

1332, 1338(a) and 1367.  Rovi admits that Blue Spike purports to state a claim arising under the

patent laws of the United States, 35 U.S.C. § 101 *et seq.*  In all other respects not specifically

admitted, Rovi denies the allegations in paragraph 5.

**Complaint ¶ 6:**

> The Court has personal jurisdiction over Defendant for at least four
> reasons:  (1) Defendant has committed acts of patent infringement
> and/or contributed to or induced acts of patent infringement by
> others in this District and elsewhere in Texas; (2) Defendant
> regularly does business or solicits business in the District and in
> Texas; (3) Defendant engages in other persistent courses of
> conduct and derives substantial revenue from products and/or

> services provided to individuals in the District and in Texas; and
> (4) Defendant has purposefully established substantial, systematic,
> and continuous contacts with the District and should reasonably
> expect to be haled into court here.  Thus, the Court's exercise of
> jurisdiction over Defendant will not offend traditional notions of
> fair play and substantial justice.

**Response to ¶ 6:**

Rovi denies that the Court has personal jurisdiction and denies the allegations in

paragraph 6.

**Complaint ¶ 7:**

> Venue is proper in this judicial district under 28 U.S.C.
> §§1391(b)—(c) and 1400(b) because Defendant does business in
> the State of Texas, Defendant has committed acts of infringement
> in Texas and in the District, a substantial part of the events or
> omissions giving rise to Blue Spike's claims happened in the
> District, and Defendant is subject to personal jurisdiction in the
> District.

**Response to ¶ 7:**

Rovi denies that venue is proper in this district and denies the allegations in paragraph 7.

## FACTUAL BACKGROUND

**Complaint ¶ 8:**

> The owners of art, music, films, and other creations who want to
> sell and license their work in digital form over the Internet need an
> efficient way to manage, monitor, and monetize it.  Blue Spike
> founder Scott Moskowitz pioneered—and continues to invent—
> technology that makes such management possible, and which has
> parlayed with equal importance into other industries.

**Response to ¶ 8:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 8, and on that basis denies each and every allegation in paragraph 8.

**Complaint ¶ 9:**

> Moskowitz, who earned two degrees cum laude from the Wharton
> School of Finance and Commerce at the University of
> Pennsylvania, is an inventor of more than 66 U.S. Patents,
> including each of the Patents-in-Suit.

**Response to ¶ 9:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 9, and on that basis denies each and every allegation in paragraph 9.

**Complaint ¶ 10:**

> In 1992, Moskowitz entered the entertainment industry by doing agency work in Japan for a large U.S. wholesaler of music-related products.

**Response to ¶ 10:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 10, and on that basis denies each and every allegation in paragraph 10.

**Complaint ¶ 11:**

> In 1993, Moskowitz filed his first U.S. digital-content-management patent application.  That year, he also founded the software start-up The Dice Company, which would become widely recognized as a leader in digital watermarking.  Since that first patent, Moskowitz has continued to create patented inventions in the field of information management and security at a prodigious pace.  His goal from the outset has been to commercialize his patented inventions.

**Response to ¶ 11:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 11, and on that basis denies each and every allegation in paragraph 11.

**Complaint ¶ 12:**

> Moskowitz founded Blue Spike, Inc. in November 1997.  Just over two years later, he filed his first patent application related to signal recognition technology, which issued as the '472 Patent.  In describing this pioneering technology, Moskowitz coined the term "signal abstracting," which enhanced the ability to catalogue, archive, identify, authorize, transact, and monitor the use and/or application of signals, such as images (for example, photographs, paintings, and scanned fingerprints), audio (for example, songs, jingles, commercials, movies soundtracks, and their versions), video (for example, videos, television shows, commercials, and movies), and multimedia works.  This revolutionary technology greatly improves the efficiency and speed of monitoring, analyzing, and identifying signals as perceived, as well as enabling the optimal compression of the signals and their associated signal abstracts for memory accommodation.

**Response to ¶ 12:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 12, and on that basis denies each and every allegation in paragraph 12.

**Complaint ¶ 13:**

> Moskowitz's status as a pioneer in this new field between cryptography and signal analysis is evident from the United States Patent and Trademark Office's categorization of his patent applications.  The USPTO was initially puzzled about how to classify his early inventions, as the then-existing patent categories in cryptography and signal analysis were, by themselves, inadequate.  The USPTO therefore created a new classification for his groundbreaking inventions: classification 713, subclass 176, called "Authentication by digital signature representation or digital watermark."

**Response to ¶ 13:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 13, and on that basis denies each and every allegation in paragraph 13.

**Complaint ¶ 14:**

> The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications.  The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

**Response to ¶ 14:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 14, and on that basis denies each and every allegation in paragraph 14.

**Complaint ¶ 15:**

> As an industry trailblazer, Moskowitz has been an active author and public figure on digital-watermarking and signal-recognition technologies since their emergence.  A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's The Dice Company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology.  He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

- 5 -

**Response to ¶ 15:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 15, and on that basis denies each and every allegation in paragraph 15.

**Complaint ¶ 16:**

> He has spoken to the RSA Data Security Conference, the
> International Financial Cryptography Association, Digital
> Distribution of the Music Industry, and many other organizations
> about the business opportunities that digital watermarking creates.
> Moskowitz also authored *So This Is Convergence ?*, the first book
> of its kind about secure digital-content management.  This book
> has been downloaded over a million times online and has sold
> thousands of copies in Japan, where Shogakukan published it
> under the name *Denshi Skashi*, literally "electronic watermark."
> Moskowitz was asked to author the introduction to *Multimedia
> Security Technologies for Digital Rights Management*, a 2006
> book explaining digital-rights management.  Moskowitz authored a
> paper for the 2002 International Symposium on Information
> Technology, titled "What is Acceptable Quality in the Application
> of Digital Watermarking: Trade-offs of Security, Robustness and
> Quality." He also wrote an invited 2003 article titled "Bandwidth
> as Currency" for the *IEEE Journal*, among other publications.

**Response to ¶ 16:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 16, and on that basis denies each and every allegation in paragraph 16.

**Complaint ¶ 17:**

> Moskowitz is a senior member of the Institute of Electrical and
> Electronics Engineers (IEEE), a member of the Association for
> Computing Machinery, and the International Society for Optics
> and Photonics (SPIE).  As a senior member of the IEEE,
> Moskowitz has peer-reviewed numerous conference papers and
> has submitted his own publications.

**Response to ¶ 17:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 17, and on that basis denies each and every allegation in paragraph 17.

**Complaint ¶ 18:**

> Moskowitz has been at the forefront of industry-based tests—such
> as the MUSE Embedded Signaling Tests, Secure Digital Music
> Initiative ("SDMI"), and various tests by performance-rights

organizations including ASCAP and BMI, as well as Japan's
Nomura Research Institute.

**Response to ¶ 18:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 18, and on that basis denies each and every allegation in paragraph 18.

**Complaint ¶ 19:**

> Moskowitz has negotiated projects to incorporate his technologies
> with leaders in a gamut of industries.  For example, Moskowitz
> worked with EMI, Warner Brothers, and Universal Music Group
> on music-release tracking systems; with AIG on insurance and
> financial services; with IBM on watermarking its software and
> managing movie scripts; and with Juniper Networks on measuring
> and provisioning the bandwidth used on its routers.  Blue Spike is
> also registered with the Federal Government's Central Contractor
> Registry (managed under the System for Award Management,
> "SAM") and participated in the Department of Defense Small
> Business Innovative Research (SBIR) program.

**Response to ¶ 19:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 19, and on that basis denies each and every allegation in paragraph 19.

**Complaint ¶ 20:**

> Moskowitz and his companies have always practiced or had
> business plans to practice his patented inventions.  He has worked
> extensively to ensure that his technology's powerful and patented
> Giovanni® suite of media security technologies can be licensed to
> all.  Before the industry understood where digital management of
> content was heading, Moskowitz believed that copyright
> management was an invaluable element for dramatically
> expanding the business of music, emphasizing that security must
> not be shrouded in secrecy and that his patented techniques were
> the strongest to do so.

**Response to ¶ 20:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 20, and on that basis denies each and every allegation in paragraph 20.

**Complaint ¶ 21:**

> Moskowitz and Blue Spike continued to produce new versions of
> its popular digital-watermarking tools.  Under Moskowitz's
> control, Blue Spike also developed its unique Scrambling
> technologies, which continue to gain currency.  Moskowitz and

- 7 -

Blue Spike rolled out its "end-to-end" solution for music security. Music encoded with Blue Spike's watermark had both security and CD-quality sound, even when integrated with text, image, and video content.  To this day, Moskowitz and Blue Spike are working with artists to help them manage and secure their valuable artistic contributions from its office in Tyler, Texas.

**Response to ¶ 21:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 21, and on that basis denies each and every allegation in paragraph 21.

**Complaint ¶ 22:**

As content becomes increasingly profitable and prevalent in the U.S. and around the globe, pirates will continue to proliferate and use increasingly sophisticated technologies to steal and illegally copy others' work, especially those works that are digitally formatted or stored.  The Patents-in-Suit comprise, in part, what Moskowitz has coined "signal abstracting," which encompasses techniques, among others, also known as "signal fingerprinting," "acoustic fingerprinting," or "robust hash functions." These are among the most effective techniques available for combating piracy, which are completely undetectable to the thief, yet still enable content owners to easily search through large amounts of data to identify unauthorized copies of their works.

**Response to ¶ 22:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 22, and on that basis denies each and every allegation in paragraph 22.

**Complaint ¶ 23:**

Broadly speaking, "signal abstracting" identifies digital information and material – including video, audio, graphics, multimedia, and text – based solely on the perceptual characteristics of the material itself.  If desired, however, the abstract need not be static, and other information or heuristics can be used to augment the perceptual characteristics, resulting in a more robust abstract.  In contrast, other technologies (such as digital watermarking) embed additional information or messages into the original source material to enable traceability of the subsequently watermarked content, much like an audit trail or the serial number on a dollar bill.  When a pirate attempts to remove embedded information or messages, ideally the quality of the content may be degraded, making the tampered copies unusable or of such poor quality that they have little commercial value.  Signal abstracting avoids watermarking's vulnerabilities by leaving the source signal unchanged and catalogues the signal's identifying features or perceptual characteristics in a database.

**Response to ¶ 23**:

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 23, and on that basis denies each and every allegation in paragraph 23.

**Complaint ¶ 24**:

> Content owners can also then monitor and analyze distribution
> channels, such as the Internet, radio broadcasts, television
> broadcasts, and other media sources, to determine whether any
> content from those sources has the same abstract as their
> catalogued works.  Unauthorized versions of copies of content may
> then be successfully identified.  With the unauthorized copies
> identified, the content owner can then restrict access, compel
> payment for authorized use, and develop better intelligence about
> content markets and those consumers with a willingness to pay.  In
> some cases, new versions of the content can be observed and
> analyzed, creating more robust abstracts or new abstracts entirely,
> informing owners and content aggregators about new channels or
> new opportunities for consumption of their content.

**Response to ¶ 24**:

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 24, and on that basis denies each and every allegation in paragraph 24.

**Complaint ¶ 25**:

> Similarly, content recognition applications running on mobile
> devices, smartphones, and tablets can use abstracts to identify
> content for users who would like to know what it is they are
> listening to (such as applications that just identify content) or
> would like to know more about that content (such as applications
> that are now popularly known as "second screen applications,"
> which allow a television audience to identify and interact with the
> content they are consuming, whether it be, for example, TV shows,
> movies, music, or video games).  Once identified by an abstract,
> songwriters, for example, can be given lyrics, or budding video
> producers can be provided related versions or background on a
> video identified.  Thus, value add in markets can be adjusted to
> meet the specific needs and consumption patterns of users.

**Response to ¶ 25**:

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 25, and on that basis denies each and every allegation in paragraph 25.

**Complaint ¶ 26:**

> This idea of "signal abstracting" applies equally to biometric
> identification and today's security systems, such as fingerprint,
> facial, and optic systems that analyze, catalogue, monitor, and
> identify a person's biometric features.  Once an image is created
> from the features of these biometric identifiers, signal abstracting
> can be used to optimally compress the signal and its associated
> abstract, resulting in less memory usage and increased accuracy
> and speed of signal analysis and identification.  Further, signal
> abstracts of the biometric information can be secured
> independently; this means that authentication and verification of
> the identifying abstract do not compromise the original
> information.  This separation of the abstracts from the original
> source material enables more secure environments, such as those
> dealing with the security of a person's biometrics.  Thus,
> fingerprint scanners are made more secure, as are systems
> requiring physical scans of a person's body.  The recent evolution
> to smaller and cheaper processors and memory storage has led to
> the proliferation of these biometric-identification systems, which
> rely on the inventions of the Patents-in-Suit to be implemented.

**Response to ¶ 26:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 26, and on that basis denies each and every allegation in paragraph 26.

**Complaint ¶ 27:**

> The four Patents-in-Suit are prime examples of Moskowitz's
> pioneering contributions to signal recognition technology.

**Response to ¶ 27:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 27, and on that basis denies each and every allegation in paragraph 27.

**Complaint ¶ 28:**

> Defendant designs and develops software, applications, systems,
> and technology services that allow access by multiple devices,
> including computers, smartphones and tablets.  Defendant is
> extremely successful, indicating it has over 3.6 million TV shows,
> 28 million music tracks and 500,000 movie titles available.
> Defendant claims its software drives personal media on over 350
> million computers.  Defendant makes, uses, offers for sale and/or
> imports into the U.S. products, systems and/or services including,
> but not limited to, Rovi's Cloud Services, Rovi's Media
> Recognition Services, and Rovi's LASSO media recognition
> solution software, applications, systems, and technology

("Accused Products"), which infringe one or more claims of the
Patents-in-Suit.

**Response to ¶ 28:**

Rovi Corp. admits that it designs and develops software and technology that allows access by multiple devices. Rovi Corp. admits that it has information related to over 3.6 million TV shows, 28 million tracks and 500,000 movie titles, and that its consumer software drives personal media on over 350 million computers. Rovi Corp. also admits that it sells media recognition services. In all other respects not specifically admitted, Rovi Corp. denies the allegations of paragraph 28. Rovi Guides denies each and every allegation in paragraph 28.

**Complaint ¶ 29:**

Defendant has not sought or obtained a license for any of Blue Spike's patented technologies.

**Response to ¶ 29:**

Rovi admits that it has not sought or obtained a license for any of Blue Spike's patents.

**Complaint ¶ 30:**

Yet Defendant is using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

**Response to ¶ 30:**

Rovi denies the allegations of paragraph 30.

**COUNT 1:**
**INFRINGEMENT OF U.S. PATENT NO. 8,214,175**

**Complaint ¶ 31:**

Blue Spike incorporates by reference the allegations in paragraphs 1 through 30 of this complaint.

**Response to ¶ 31:**

Rovi realleges each and every admission and denial set forth above in paragraphs 1 through 30 as if set forth herein.

**Complaint ¶ 32:**

Blue Spike, LLC is assignee of the '175 Patent, titled "Method and

Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '175 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**Response to ¶ 32:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 32, and on that basis denies each and every allegation in paragraph 32.

**Complaint ¶ 33:**

The '175 Patent is valid, is enforceable, and was duly and legally issued on July 3, 2012.  A true and correct copy of the '175 Patent is attached as Exhibit A.

**Response to ¶ 33:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 33, and on that basis denies each and every allegation in paragraph 33.

**Complaint ¶ 34:**

Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '175 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**Response to ¶ 34:**

Rovi denies each and every allegation in paragraph 34.

**Complaint ¶ 35:**

Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '175 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '175 Patent. Such products include, without limitation, one or more of the Accused Products.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '175 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '175 Patent under 35 U.S.C. § 271.  Those whom Defendant induces to infringe and/or

to whose infringement Defendant contributes are the end users of the Accused Products.  Defendant had knowledge of the '175 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '175 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '175 Patent under 35 U.S.C. §271.

**Response to ¶ 35:**

Rovi denies each and every allegation in paragraph 35.

**Complaint ¶ 36:**

Defendant's acts of infringement of the '175 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271.  Defendant's infringement of Blue Spike's exclusive rights under the '175 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**Response to ¶ 36:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 36, and on that basis denies each and every allegation in paragraph 36.

**Complaint ¶ 37:**

On information and belief, Defendant has continued to infringe the '175 Patent since receiving notice of their infringement, at least by way of its receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '175 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**Response to ¶ 37:**

Rovi denies each and every allegation in paragraph 37.

**Complaint ¶ 38:**

On information and belief, Defendant has at least had constructive notice of the '175 Patent by operation of law.

- 13 -

**Response to ¶ 38**:

Rovi denies each and every allegation in paragraph 38.

**COUNT 2:**
**INFRINGEMENT OF U.S. PATENT NO. 7,949,494**

**Complaint ¶ 39**:

Blue Spike incorporates by reference the allegations in paragraphs 1 through 38 of this complaint.

**Response to ¶ 39**:

Rovi realleges each and every admission and denial set forth above in paragraphs 1 through 38 as if set forth herein.

**Complaint ¶ 40**:

Blue Spike, LLC is assignee of the '494 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '494 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**Response to ¶ 40**:

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 40, and on that basis denies each and every allegation in paragraph 40.

**Complaint ¶ 41**:

The '494 Patent is valid, is enforceable, and was duly and legally issued on May 24, 2011.  A true and correct copy of the '494 Patent is attached as Exhibit B.

**Response to ¶ 41**:

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 41, and on that basis denies each and every allegation in paragraph 41.

**Complaint ¶ 42**:

Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '494 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without

- 14 -

limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**Response to ¶ 42:**

Rovi denies each and every allegation in paragraph 42.

**Complaint ¶ 43:**

Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '494 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '494 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '494 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '494 Patent under 35 U.S.C. §271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '494 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '494 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '494 Patent under 35 U.S.C. § 271.

**Response to ¶ 43:**

Rovi denies each and every allegation in paragraph 43.

**Complaint ¶ 44:**

Defendant's acts of infringement of the '494 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '494 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**Response to ¶ 44:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 44, and on that basis denies each and every allegation in paragraph 44.

**Complaint ¶ 45:**

On information and belief, Defendant has continued to infringe the '494 Patent since receiving notice of its infringement, at least by way of their receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '494 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**Response to ¶ 45:**

Rovi denies each and every allegation in paragraph 45.

**Complaint ¶ 46:**

On information and belief, Defendant has at least had constructive notice of the '494 Patent by operation of law.

**Response to ¶ 46:**

Rovi denies each and every allegation in paragraph 46.

**COUNT 3:**
**INFRINGEMENT OF U.S. PATENT NO. 7,660,700**

**Complaint ¶ 47:**

Blue Spike incorporates by reference the allegations in paragraphs 1 through 46 of this complaint.

**Response to ¶ 47:**

Rovi realleges each and every admission and denial set forth above in paragraphs 1 through 46 as if set forth herein.

**Complaint ¶ 48:**

Blue Spike, LLC is assignee of the '700 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '700 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**Response to ¶ 48:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 48, and on that basis denies each and every allegation in paragraph 48.

**Complaint ¶ 49:**

> The '700 Patent is valid, is enforceable, and was duly and legally
> issued on February 9, 2010. A true and correct copy of the '700
> Patent is attached as Exhibit C.

**Response to ¶ 49:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 49, and on that basis denies each and every allegation in paragraph 49.

**Complaint ¶ 50:**

> Without a license or permission from Blue Spike, Defendant has
> infringed and continues to infringe on one or more claims of the
> '700 Patent—directly, contributorily, or by inducement—by
> importing, making, using, offering for sale, or selling products and
> devices that embody the patented invention, including, without
> limitation, one or more of the Accused Products, in violation of 35
> U.S.C. §271.

**Response to ¶ 50:**

Rovi denies each and every allegation in paragraph 50.

**Complaint ¶ 51:**

> Defendant has been and now is indirectly infringing by way of
> inducing infringement by others and/or contributing to the
> infringement by others of the '700 Patent in the State of Texas, in
> this judicial district, and elsewhere in the United States, by, among
> other things, making, using, importing, offering for sale, and/or
> selling, without license or authority, products for use in systems
> that fall within the scope of one or more claims of the '700 Patent.
> Such products include, without limitation, one or more of the
> Accused Products.  Such products have no substantial non-
> infringing uses and are for use in systems that infringe the '700
> Patent.  By making, using, importing offering for sale, and/or
> selling such products, Defendant injured Blue Spike and is thus
> liable to Blue Spike for infringement of the '700 Patent under 35
> U.S.C. §271.  Those whom Defendant induces to infringe and/or to
> whose infringement Defendant contributes are the end users of the
> Accused Products.  Defendant had knowledge of the '700 Patent at
> least as early as the service of this complaint and is thus liable for
> infringement of one or more claims of the '700 Patent by actively

- 17 -

inducing infringement and/or is liable as contributory infringer of one or more claims of the '700 Patent under 35 U.S.C. §271.

**Response to ¶ 51:**

Rovi denies each and every allegation in paragraph 51.

**Complaint ¶ 52:**

Defendant's acts of infringement of the '700 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271.  Defendant's infringement of Blue Spike's exclusive rights under the '700 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**Response to ¶ 52:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 52, and on that basis denies each and every allegation in paragraph 52.

**Complaint ¶ 53:**

On information and belief, Defendant has continued to infringe the '700 Patent since receiving notice of its infringement, at least by way of their receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '700 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**Response to ¶ 53:**

Rovi denies each and every allegation in paragraph 53.

**Complaint ¶ 54:**

On information and belief, Defendant has at least had constructive notice of the '700 Patent by operation of law.

**Response to ¶ 54:**

Rovi denies each and every allegation in paragraph 54.

**COUNT 4:**
**INFRINGEMENT OF U.S. PATENT NO. 7,660,700**

**Complaint ¶ 55:**

Blue Spike incorporates by reference the allegations in paragraphs 1 through 54 of this complaint.

**Response to ¶ 55:**

Rovi realleges each and every admission and denial set forth above in paragraphs 1 through 54 as if set forth herein.

**Complaint ¶ 56:**

Blue Spike, LLC is assignee of the '472 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '472 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**Response to ¶ 56:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 56, and on that basis denies each and every allegation in paragraph 56.

**Complaint ¶ 57:**

The '472 Patent is valid, is enforceable, and was duly and legally issued on March 18, 2008.  A true and correct copy of the '472 Patent is attached as Exhibit D.

**Response to ¶ 57:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in paragraph 57, and on that basis denies each and every allegation in paragraph 57.

**Complaint ¶ 58:**

Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '472 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**Response to ¶ 58:**

Rovi denies each and every allegation in paragraph 58.

**Complaint ¶ 59:**

Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '472 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '472 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '472 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '472 Patent under 35 U.S.C. §271. Those whom Defendant induces to infringe and/or whose infringement to which Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '472 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '472 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '472 Patent under 35 U.S.C. § 271.

**Response to ¶ 59:**

Rovi denies each and every allegation in paragraph 59.

**Complaint ¶ 60:**

Defendant's acts of infringement of the '472 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '472 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**Response to ¶ 60:**

Rovi lacks information upon which to form a belief as to the truth of the allegations in

paragraph 60, and on that basis denies each and every allegation in paragraph 60.

**Complaint ¶ 61:**

On information and belief, Defendant has continued to infringe the '472 Patent since receiving notice of their infringement, at least by

way of its receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '472 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**Response to ¶ 61**:

Rovi denies each and every allegation in paragraph 61.

**Complaint ¶ 62**:

On information and belief, Defendant has at least had constructive notice of the '472 Patent by operation of law.

**Response to ¶ 62**:

Rovi denies each and every allegation in paragraph 62.

**REQUEST FOR RELIEF**

**Complaint ¶¶ (a), (b), (c), (d), (c), (d)**:

Blue Spike incorporates each of the allegations in paragraphs 1 through 62 above and respectfully asks the Court to:

(a)      enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)      enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)      enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)      issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(c)      enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. §285, together with prejudgment interest;

and

(d)      award Blue Spike all other relief that the Court may deem just and proper.

**Response to ¶¶ (a), (b), (c), (d), (c), (d):**

Rovi realleges each and every admission and denial set forth above in paragraphs 1 through 62 as set forth above.  Rovi denies that Blue Spike is entitled to any of the relief requested in paragraphs (a) through (f) (which are mislabeled as (a) through (d)).

## DEMAND FOR JURY TRIAL

**Complaint:**

Blue Spike demands a jury trial on all issues that may be determined by a jury.

**Response:**

Rovi admits that Blue Spike has demanded a jury trial.

## ROVI'S AFFIRMATIVE DEFENSES

By alleging the matters set forth below as Affirmative Defenses, Rovi does not thereby allege or admit that Rovi bears the burden of proof with respect to any of such matters.

## FIRST AFFIRMATIVE DEFENSE
## (FAILURE TO STATE A CLAIM)

Plaintiff's Complaint fails to state facts sufficient to state a cause of action and/or fails to state any claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE
## (INVALIDITY)

One or more claims of U.S. Patent Nos. 8,214,175, 7,949,494, 7,660,700 and 7,346,472 ("patents-in-suit") are invalid or unenforceable for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112.

28311\3430929.1

## THIRD AFFIRMATIVE DEFENSE
## (NON-INFRINGEMENT)

Rovi's making, use or sale of its products, and the use of such products by Rovi's customers, does not infringe any of the claims of the patents-in-suit literally or under the doctrine of equivalents.  Rovi does not induce or contribute to the infringement of others or willfully infringe the patents-in-suit.

## FOURTH AFFIRMATIVE DEFENSE
## (NO INTENT TO INDUCE INFRINGEMENT)

Rovi has never had any specific intent to induce infringement of any of the asserted claims of the patents-in-suit.

## FIFTH AFFIRMATIVE DEFENSE
## (NO KNOWLEDGE OF THE PATENTS-IN-SUIT)

Rovi did not receive notice of the patents-in-suit or its purported infringement of the patents-in-suit before receiving notice of this lawsuit.

## SIXTH AFFIRMATIVE DEFENSE
## (IMPROPER VENUE)

Venue is improper in this court with respect to Rovi.

## SEVENTH AFFIRMATIVE DEFENSE
## (LIMITATIONS ON DAMAGES)

Plaintiff's damages claims are limited or barred under 35 U.S.C. §§ 286, 287.

## EIGHTH AFFIRMATIVE DEFENSE
## (NO ATTORNEY FEES)

Plaintiff has failed to allege facts supporting the award of attorney fees under 35 U.S.C. § 285.

## NINTH AFFIRMATIVE DEFENSE
## (PROSECUTION HISTORY ESTOPPEL)

Prosecution history estoppel bars Plaintiff's proposed claim constructions and/or bars

Plaintiff from proving infringement on the asserted claims under the doctrine of equivalents.

## TENTH AFFIRMATIVE DEFENSE
## (EQUITABLE DEFENSES)

Plaintiff's claims are barred in whole or in part by one or more of the doctrines of equitable estoppel, laches, unclean hands, waiver and/or other applicable equitable defenses.

## OTHER AFFIRMATIVE DEFENSES

Rovi reserves the right to amend its answer to assert further defenses based on future discovery in the lawsuit.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Rovi Corporation and Rovi Guides, Inc. (collectively "Rovi") hereby assert the following counterclaims against Blue Spike, LLC ("Blue Spike").

## NATURE AND BASIS OF ACTION

1.      This is an action arising under the United States Patent Act, 35 U.S.C. § 1 *et seq.*

## PARTIES

2.      Counterclaim Defendant Blue Spike is, on information and belief, a Texas limited liability company with its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler Texas 75703.

3.      Counterclaimant Rovi Corporation is a Delaware Corporation with its headquarters and principal place of business at 2830 De La Cruz Blvd., Santa Clara CA 95050.

4.      Counterclaimant Rovi Guides, Inc. is a Delaware Corporation with its headquarters and principal place of business at 2830 De La Cruz Blvd., Santa Clara CA 95050.

## JURISDICTION AND VENUE

5.      This is an action for declaratory judgment of non-infringement, unenforceability, and invalidity of United States Patent Nos. 8,214,175, 7,949,494, 7,660,700 and 7,346,472

("patents-in-suit").  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b). By asserting these counterclaims, Rovi does not waive, and instead expressly preserves, its objections to venue with respect to Blue Spike's complaint in this action.  *See Rates Tech., Inc. v. Nortel Networks Corp.,* 399 F.3d 1302 (Fed. Cir. 2005).

7.      The Court has personal jurisdiction over Blue Spike because *inter alia,* Blue Spike filed its Original Complaint against Rovi in this Court.

<u>**GENERAL ALLEGATIONS**</u>

8.      On September 24, 2012, Blue Spike filed suit against Rovi, claiming infringement of the patents-in-suit.

9.      Blue Spike asserts that it is the assignee of the patents-in-suit from Blue Spike, Inc., which is the assignee of the patents-in-suit from Scott Moskowitz and Michael Berry.

10.     A justiciable controversy exists between Blue Spike and Rovi concerning the infringement, enforceability and validity of the patents-in-suit.

<u>**COUNT ONE:**</u>

<u>**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT**</u>
<u>**OF U.S. PATENT NUMBER 8,214,175)**</u>

11.     Rovi incorporates paragraphs 1-10 as if set forth fully herein.

12.     Blue Spike alleges that Rovi has infringed and continues to infringe one or more claims of U.S. Patent No. 8,214,175 ("'175 patent") directly, contributorily, or by inducement by importing, making, using, offering for sale, or selling products and devices that embody the patented invention.

13.     Rovi has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '175 patent asserted by Blue Spike in this litigation.

14.     An actual controversy has arisen and now exists between the parties as to the non-infringement of the '175 patent.

15.     Rovi is entitled to a declaratory judgment that Rovi has not and does not infringe any claim of the '175 patent.

## COUNT TWO:
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NUMBER 7,949,494)

16.     Rovi incorporates paragraphs 1-15 as if set forth fully herein.

17.     Blue Spike alleges that Rovi has infringed and continues to infringe one or more claims of U.S. Patent No. 7,949,494 ("'494 patent") directly, contributorily, or by inducement by importing, making, using, offering for sale, or selling products and devices that embody the patented invention.

18.     Rovi has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '494 patent asserted by Blue Spike in this litigation.

19.     An actual controversy has arisen and now exists between the parties as to the non-infringement of the '494 patent.

20.     Rovi is entitled to a declaratory judgment that Rovi has not and does not infringe any claim of the '494 patent.

## COUNT THREE:
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NUMBER 7,660,700)

21.     Rovi incorporates paragraphs 1-20 as if set forth fully herein.

22.     Blue Spike alleges that Rovi has infringed and continues to infringe one or more claims of U.S. Patent No. 7,660,700 ("'700 patent") directly, contributorily, or by inducement by importing, making, using, offering for sale, or selling products and devices that embody the patented invention.

23.     Rovi has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '700 patent asserted by Blue Spike in this litigation.

24.     An actual controversy has arisen and now exists between the parties as to the non-infringement of the '700 patent.

25.     Rovi is entitled to a declaratory judgment that Rovi has not and does not infringe any claim of the '700 patent.

**COUNT FOUR:**
**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
**OF U.S. PATENT NUMBER 7,346,472)**

26.     Rovi incorporates paragraphs 1-25 as if set forth fully herein.

27.     Blue Spike alleges that Rovi has infringed and continues to infringe one or more claims of U.S. Patent No. 7,346,472 ("'472 patent") directly, contributorily, or by inducement by importing, making, using, offering for sale, or selling products and devices that embody the patented invention.

28.     Rovi has not and is not now infringing, contributorily infringing, or inducing infringement of the claims of the '472 patent asserted by Blue Spike in this litigation.

29.     An actual controversy has arisen and now exists between the parties as to the non-infringement of the '472 patent.

30.     Rovi is entitled to a declaratory judgment that Rovi has not and does not infringe any claim of the '472 patent.

**COUNT FIVE:**
**(DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NUMBER 8,214,175)**

31.     Rovi incorporates paragraphs 1-30 as if set forth fully herein.

32.     The claims of the '175 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

33.     An actual controversy has arisen and now exists between Blue Spike and Rovi as to the invalidity of the claims of the '175 patent.

34.     Rovi is entitled to a declaratory judgment that one or more of the claims of the '175 patent are invalid.

**COUNT SIX:**
**(DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NUMBER 7,949,494)**

35.     Rovi incorporates paragraphs 1-34 as if set forth fully herein.

36.     The claims of the '494 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

37.     An actual controversy has arisen and now exists between Blue Spike and Rovi as to the invalidity of the claims of the '494 patent.

38.     Rovi is entitled to a declaratory judgment that one or more of the claims of the '494 patent are invalid.

**COUNT SEVEN:**
**(DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NUMBER 7,660,700)**

39.     Rovi incorporates paragraphs 1-38 as if set forth fully herein.

40.     The claims of the '700 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

41.     An actual controversy has arisen and now exists between Blue Spike and Rovi as to the invalidity of the claims of the '700 patent.

42.     Rovi is entitled to a declaratory judgment that one or more of the claims of the '700 patent are invalid.

**COUNT EIGHT:**
**(DECLARATORY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NUMBER 7,346,472)**

43.     Rovi incorporates paragraphs 1-42 as if set forth fully herein.

44.     The claims of the '472 patent are invalid for failure to comply with one or more of

the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

45.     An actual controversy has arisen and now exists between Blue Spike and Rovi as to the invalidity of the claims of the '472 patent.

46.     Rovi is entitled to a declaratory judgment that one or more of the claims of the '472 patent are invalid.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Rovi demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Rovi respectfully prays for judgment that:

a)      Blue Spike's Complaint is dismissed in its entirety with prejudice;

b)      Blue Spike is not entitled to the relief prayed for in its Complaint, or to any relief whatsoever;

c)      No damages or royalties are due or owing by Rovi for any of the acts alleged by Blue Spike it its Complaint.

d)      Rovi has not infringed and is not infringing any of the asserted claims of the '175, '494, '700, and '472 patents.

e)      One or more of the asserted claims of the '175, '494, '700, and '472 patents are invalid;

f)      The case is an exceptional case pursuant to 35 U.S.C. § 285, and Rovi is accordingly awarded its reasonable attorneys' fees and costs (including expert fees) incurred in this action;

g)      Awards such other relief as the Court may deem appropriate, just and proper under the circumstances.

Dated: November 20, 2012                    Respectfully submitted,


                                            /s/ Andrew Leibnitz
                                            Roderick M. Thompson, CA Bar No. 96192
                                            (admitted *pro hac vice*) Lead Attorney
                                            Andrew Leibnitz, CA Bar No. 184723
                                            (admitted *pro hac vice*)
                                            Daniel C. Callaway, CA Bar No. 262675
                                            Christina R. Hollander, CA Bar No. 267292
                                            Farella Braun + Martel LLP
                                            235 Montgomery Street, 17th Floor
                                            San Francisco, CA  94104
                                            (415) 954-4400

                                            */s/ Deron R. Dacus*

                                            Deron R. Dacus, Bar No. 00790553
                                            The Dacus Firm, PC
                                            821 Ese Loop 323, Suite 430
                                            Tyler, TX  75701
                                            (903) 705-1117

                                            ATTORNEYS FOR DEFENDANTS
                                            ROVI CORPORATION AND ROVI
                                            GUIDES, INC.

                    CERTIFICATE OF SERVICE

        The undersigned certifies that all counsel of record who are deemed to have consented to

electronic service are being served this 20th day of November, 2012, with a copy of this

document via electronic mail.




                                            /s/ Deron R. Dacus
                                            Deron R. Dacus