**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:12-CV-00499 LED |
| | ) | (Lead Case) |
| vs. | ) | |
| | ) | |
| TEXAS INSTRUMENTS, INC., | ) | |
| _____ | ) | |
| BLUE SPIKE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:12-CV-00572 LED |
| | ) | (Member Case) |
| vs. | ) | |
| | ) | |
| TECHNICOLOR USA, INC. and | ) | **JURY TRIAL DEMANDED** |
| TECHNICOLOR S.A., | ) | |
| | ) | |
| Defendants. | ) | |

**TECHNICOLOR USA, INC.'S ANSWER TO
PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Technicolor USA, Inc. ("Technicolor USA") hereby submits its Answer and
Defenses to Plaintiff Blue Spike, LLC's ("Blue Spike" or "Plaintiff") Original Complaint for
Patent Infringement ("Complaint").

## I.    ANSWER TO THE COMPLAINT

As set forth below, Technicolor USA answers the allegations in Blue Spike's Complaint
by reproducing each of the pertinent headings therein [in brackets], reproducing, in single-spaced
form, the corresponding numbering and the text of paragraphs 1-63 of the Complaint under each
heading, and providing Technicolor USA's answer(s) after each numbered paragraph.
Technicolor USA's reproduction, below, of any headings set forth in Blue Spike's Complaint is
solely for the purpose of convenience and is not, and should not be construed as, an admission by

Technicolor USA that any allegations or other statements in such headings, whether explicit or implied, are true, correct, or admitted by Technicolor USA; any such allegations are hereby denied.  All allegations in Blue Spike's Complaint that Technicolor USA does not expressly admit or deny, below, are hereby denied.

## [NATURE OF THE SUIT]

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**ANSWER:** Technicolor USA admits that paragraph 1 purports to assert "a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code."  Technicolor USA denies that it infringes any patent owned by Plaintiff Blue Spike.  Technicolor USA denies any remaining allegations in paragraph 1.

## [PARTIES]

2.      Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit from Blue Spike, Inc. (a Florida corporation), which was the assignee of the Patents-in-Suit from Scott Moskowitz and Michael Berry. Blue Spike, LLC and Blue Spike, Inc. are collectively referred to as "Blue Spike." Blue Spike CEO Scott Moskowitz is an inventor on more than 66 U.S. Patens related to managing, monitoring, and monetizing digital content and informational assets.  Blue Spike has practiced and has continued business plans to practice Moskowitz's patented inventions. Many of Blue Spike's patents are foundational to today's robust markets for content, which grew into their present form only after using Blue Spike's technology to catalogue, manage, monitor, and monetize that content.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and, therefore, denies them.

3.      On information and belief, Technicolor USA, Inc. is a Delaware corporation, having its principal place of business at 101 West 103rd Street, Indianapolis, Indiana 46290. Technicolor USA, Inc. can be served with process through its registered agent, Registered Agent Solutions, Inc., located at 515 Congress Ave., Suite 2300, Austin, Texas 78701. Technicolor USA, Inc. does business in the State of Texas and in the Eastern District of Texas.

**ANSWER:** Technicolor USA admits that it is a Delaware corporation, having a principal place of business at 101 West 103rd Street, Indianapolis, Indiana 46290.  Technicolor USA admits that it can be served with process through one of its registered agents, Registered Agent Solutions, Inc., located at 515 Congress Avenue, Suite 2300, Austin, Texas 78701.  Technicolor USA denies the remaining allegations in paragraph 3.

4.      On information and belief, Technicolor S.A. is a French limited liability company, having its principal place of business at 1, rue Jeanne d'Arc, 92443 Issy-les-Moulineaux Cedex, Paris, France. Technicolor S.A. can be served with process through its U.S. subsidiary, Technicolor USA, Inc., or through the Texas Secretary of State. Technicolor S.A. does business in the State of Texas and in the Eastern District of Texas.

**ANSWER:** Technicolor USA admits that Technicolor S.A. is a French company, having its principal place of business at 1, rue Jeanne d'Arc, 92443 Issy-les-Moulineaux, Cedex, Paris, France.  Technicolor USA denies the remaining allegations in paragraph 4.

**[JURISDICTION AND VENUE]**

5.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, 1338(a), and 1367.

**ANSWER:** Technicolor USA admits that Blue Spike has brought claims against Technicolor USA for patent infringement under 35 U.S.C. § 101 *et seq.*  Technicolor USA admits that "[t]he Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, 1338(a), and 1367.," except that Technicolor USA denies that it infringes any patent owned by Blue Spike and denies the merit and validity of any of Blue Spike's claims for which subject matter jurisdiction may be had pursuant to those statutes.  Technicolor USA denies any remaining allegations in paragraph 5.

6.      The Court has personal jurisdiction over Defendant for at least five reasons: (1) Defendant has designated an agent for service of process in the State of Texas; (2) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; and (3) Defendant regularly does business or solicits business in the District and in Texas; (4) Defendant engages in other persistent courses of

conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (5) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here. Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

**ANSWER:** Technicolor USA admits that it has designated an agent for service of process in the State of Texas.  Technicolor USA denies the remaining allegations in paragraph 6 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 6 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

7.     Venue is proper in this judicial district under 28 U.S.C. §§1391(b)–(c) and 1400(b) because Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Defendant is subject to personal jurisdiction in the District.

**ANSWER:** Technicolor USA denies the allegations in paragraph 7 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 7 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

### [FACTUAL BACKGROUND]

A.     **Moskowitz's History**

8.     The owners of art, music, films and other creations who want to sell and license their work in digital form over the Internet need an efficient way to manage, monitor, and monetize it. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such management possible, and which has parlayed with equal importance into other industries.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 8 and, therefore, denies them.

9.     Moskowitz, who earned two degrees *cum laude* from the Wharton School of Finance and Commerce at the University of Pennsylvania, is an inventor of more than 66 U.S. Patents, including each of the Patents-in-Suit.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 9 and, therefore, denies them.

10.     In 1992, Moskowitz entered the entertainment industry by doing agency work in Japan for a large U.S. wholesaler of music related products.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 10 and, therefore, denies them.

11.     In 1993, Moskowitz filed his first U.S. digital-content-management patent application. That year, he also founded the software start-up The Dice Company, which would become widely recognized as a leader in digital watermarking. Since that first patent, Moskowitz has continued to create patented inventions in the field of information management and security at a prodigious pace. His goal from the outset has been to commercialize his patented inventions.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 11 and, therefore, denies them.

12.     Moskowitz founded Blue Spike, Inc. in November 1997. Just over two years later, he filed his first patent application related to signal recognition technology, which issued as the '472 Patent. In describing this pioneering technology, Moskowitz coined the term "signal abstracting," which enhanced the ability to catalogue, archive, identify, authorize, transact, and monitor the use and/or application of signals, such as images (for example, photographs, painting, and scanned fingerprints), audio (for example, songs, jingles, commercials, movies, soundtracks, and their versions), video (for example, videos, television shows, commercials, and movies), and multimedia works. This revolutionary technology greatly improves the efficiency and speed of monitoring, analyzing, and identifying signals as perceived, as well as enabling the optimal compression of the signals and their associated signal abstracts for memory accommodation.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 12 and, therefore, denies them.

13.     Maskowitz's status as a pioneer in this new field between cryptography and signal analysis is evident from the United States Patent and Trademark Office's categorization of his patent applications. The USPTO was initially puzzled about how to classify his early inventions, as the then-existing patent categories in cryptography and signal analysis were, by themselves, inadequate. The USPTO therefore created a new classification for his groundbreaking inventions: classification 713, subclass 176, called "Authentication by digital signature representation or digital watermark."

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 13 and, therefore, denies them.

14.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 14 and, therefore, denies them.

15.     As an industry trailblazer, Moskowitz has been an active author and public figure on digital-watermarking and signal-recognition technologies since their emergence. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's The Dice Company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 15 and, therefore, denies them.

16.     He has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?,* the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi,* literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management,* a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 16 and, therefore, denies them.

17.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International

Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publication.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 17 and, therefore, denies them.

18.     Moskowitz has been at the forefront of the industry-based tests—such as the MUSE Embedded Signaling Tests, Secure Digital Music Initiative ("SDMI"), and various tests by performance-rights organizations including ASCAP and BMI, as well as Japan's Nomura Research Institute.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 18 and, therefore, denies them.

19.     Moskowitz has negotiated projects to incorporate his technologies with leaders in a gamut of industries. For example, Moskowitz worked with EMI, Warner Brothers, and Universal Music Group on music-release tracking systems; with AIG on insurance and financial services; with IBM on watermarking its software and managing movie scripts; and with Juniper Networks on measuring and provisioning the bandwidth used on its routers. Blue Spike is also registered with the Federal Government's Central Contractor Registry (managed under the System for Award Management, "SAM") and participated in the Department of Defense Small Business Innovative Research (SBIR) program.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 19 and, therefore, denies them.

20.     Moskowitz and his companies have always practiced or had business plans to practice his patented inventions. He has worked extensively to ensure that his technology's powerful and patented Giovanni® suite of media security technologies can be licensed to all. Before the industry understood where digital management of content was heading, Moskowitz believed that copyright management was an invaluable element for dramatically expanding the business of music, emphasizing that security must not be shrouded in secrecy and that his patented techniques were the strongest to do so.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 20 and, therefore, denies them.

21.     Moskowitz and Blue Spike continued to produce new versions of its popular digital-watermarking tools. Under Moskowitz's control, Blue Spike also developed its unique Scrambling technologies, which continue to gain currency. Moskowitz and Blue Spike rolled out its "end-to-end" solution for music security. Music encoded with Blue Spike's watermark had both security and CD-quality sound, even when integrated with text, image, and video content.

To this day, Moskowitz and Blue Spike are working with artists to help them manage and secure their valuable artistic contributions from its office in Tyler, Texas.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a

belief as to the truth of any allegations in paragraph 21 and, therefore, denies them.

## B.     Patents-in-Suit

22.     As content becomes increasingly profitable and prevalent in the U.S. and around the globe, pirates will continue to proliferate and use increasingly sophisticated technologies to steal and illegally copy others' work, especially those works that are digitally formatted or stored. The Patents-in-Suit comprise, in part, what Moskowitz has coined "signal abstracting," which encompasses techniques, among others, also known as "signal fingerprinting," "acoustic fingerprinting," or "robust hash functions." These are among the most effective techniques available for combating piracy, which are completely undetectable to the thief, yet still enable content owners to easily search through large amounts of data to identify unauthorized copies of their works.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a

belief as to the truth of any allegations in paragraph 22 and, therefore, denies them.

23.     Broadly speaking, "signal abstracting" identifies digital information and material—including video, audio, graphics, multimedia, and text—based solely on the perceptual characteristics of the material itself. If desired, however, the abstract need not be static, and other information or heuristics can be used to augment the perceptual characteristics, resulting in a more robust abstract. In contrast, other technologies (such as digital watermarking) embed additional information or messages into the original source material to enable traceability of the subsequently watermarked content, much like an audit trail or the serial number on a dollar bill. When a pirate attempts to remove embedded information or messages, ideally the quality of the content may be degraded, making the tampered copies unusable or of such poor quality that they have little commercial value. Signal abstracting avoids watermarking's vulnerabilities by leaving the source signal unchanged and catalogues the signal's identifying features or perceptual characteristics in a database.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a

belief as to the truth of any allegations in paragraph 23 and, therefore, denies them.

24.     Content owners can also then monitor and analyze distribution channels, such as the Internet, radio broadcasts, television broadcasts, and other media sources, to determine whether any content from those sources has the same abstract as their catalogued works. Unauthorized versions of copies of content may then be successfully identified. With the unauthorized copies identified, the content owner can then restrict access, compel payment for authorized use, and develop better intelligence about content markets and those consumers with a willingness to pay. In some cases, new versions of the content can be observed and analyzed,

creating more robust abstracts or new abstracts entirely, informing owners and content aggregators about new channels or new opportunities for consumption of their content.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 24 and, therefore, denies them.

25.     Similarly, content recognition applications running on mobile devices, smartphones, and tablets can use abstracts to identify content for users who would like to know what it is they are listening to (such applications that just identify content) or would like to know more about that content (such as applications that are now popularly known as "second screen applications," which allow a television audience to identify and interact with the content they are consuming, whether it be, for example, TV shows, movies, music, or video games). Once identified by an abstract, songwriters, for example, can be given lyrics, or budding video producers can be provided related versions or background on a video identified. Thus, value add in markets can be adjusted to meet the specific needs and consumption patterns of users.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 25 and, therefore, denies them.

26.     This idea of "signal abstracting" applies equally to biometric identification and today's security systems, such as fingerprint, facial, and optic systems that analyze, catalogue, monitor, and identify a person's biometric features. Once an image is created from the features of these biometric identifiers, signal abstracting can be used to optimally compress the signal and its associated abstract, resulting in less memory usage and increased accuracy and speed of signal analysis and identification. Further, signal abstracts of the biometric information can be secured independently; this means that authentication and verification of the identifying abstract do not compromise the original information. This separation of the abstracts from the original source material enables more secure environments, such as those dealing with the security of a person's biometrics. Thus, fingerprint scanners are made more secure, as are systems requiring physical scans of a person's body. The recent evolution to smaller and cheaper processors and memory storage has led to the proliferation of these biometric-identification systems, which rely on the inventions of the Patents-in-Suit to be implemented.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 26 and, therefore, denies them.

27.     The four Patents-in-Suit are prime examples of Moskowitz's pioneering contributions to signal recognition technology.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 27 and, therefore, denies them.

**C.     The Accused Products and Services**

28.     Defendant designs and develops software, systems, applications, and technology for the creation, management, post-production, monetization, delivery and access of content. Defendant is extremely successful, employing more than 16,000 people in 28 countries worldwide. Defendant makes, uses, offers for sale and/or imports into the U.S. products, systems and/or services including, but not limited to, its Video Fingerprinting software, systems, applications, and technology ("Accused Products"), which infringe one or more claims of the Patents-in-Suit.

**ANSWER:** Technicolor USA admits that it is a leading supplier of home access devices, including set-top boxes and gateways, and related services. Technicolor USA denies the remaining allegations in paragraph 28 to the extent they are directed to Technicolor USA. Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 28 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

29.     Defendant has not sought or obtained a license for any of Blue Spike's patented technologies.

**ANSWER:** Technicolor USA admits it "has not sought or obtained a license for any of Blue Spike's patented technologies."  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 29 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

30.     Yet Defendant is using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

**ANSWER:** Technicolor USA denies the allegations in paragraph 30 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 30 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

31.     Ironically, although Defendant does not have permission to use Blue Spike's Patens-in-Suit, it is using those very same technologies to prevent and track piracy committed by others.

**ANSWER:** Technicolor USA denies the allegations in paragraph 31 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 31 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

**[COUNT 1:]**
**[INFRINGEMENT OF U.S. PATENT NO. 8,214,175]**

32.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 31 of this complaint.

**ANSWER:** In response to paragraph 32, Technicolor USA hereby realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 31, above.

33.     Blue Spike, LLC is assignee of the '175 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '175 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 33 and, therefore, denies them.

34.     The '175 Patent is valid, is enforceable, and was duly and legally issued on July 3, 2012. A true and correct copy of the '175 Patent is attached as Exhibit A.

**ANSWER:** Technicolor USA admits that an uncertified copy of U.S. Patent No. 8,214,175 ("'175 Patent") is attached to Blue Spike's Complaint as Exhibit A.  Technicolor USA denies any remaining allegations in paragraph 34.

35.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '175 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 35 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information

sufficient to form a belief as to the truth of any allegations in paragraph 35 to the extent they are

directed to a party other than Technicolor USA and, therefore, denies them.

36.     Defendant has been and now is indirectly infringing by way of inducing infringement by other and/or contributing to the infringement by others of the '175 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '175 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '175 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '175 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '175 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '175 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '175 Patent under 35 U.S.C. §271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 36 to the extent they

are directed to Technicolor USA.  Technicolor USA is without knowledge or information

sufficient to form a belief as to the truth of any allegations in paragraph 36 to the extent they are

directed to a party other than Technicolor USA and, therefore, denies them.

37.     Defendant's act of infringement of the '175 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '175 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**ANSWER:** Technicolor USA denies the allegations in paragraph 37 to the extent they

are directed to Technicolor USA.  Technicolor USA is without knowledge or information

sufficient to form a belief as to the truth of any allegations in paragraph 37 to the extent they are

directed to a party other than Technicolor USA and, therefore, denies them.

38.     On information and belief, Defendant has continued to infringe the '175 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit. On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively

high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '175 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:** Technicolor USA admits it has received notice of this lawsuit.  Technicolor USA denies the remaining allegations in paragraph 38 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 38 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

39.    On information and belief, Defendant has at least had constructive notice of the '175 Patent by operation of law.

**ANSWER:** Technicolor USA denies the allegations in paragraph 39 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 39 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

**[COUNT 2:]**
**[INFRINGEMENT OF U.S. PATENT NO. 7,949,494]**

40.    Blue Spike incorporates by reference the allegations in paragraph 1 through 39 of this complaint.

**ANSWER:** In response to paragraph 40, Technicolor USA hereby realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 39, above.

41.    Blue Spke, LLC is assignee of the '494 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '494 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 41 and, therefore, denies them.

42.    The '494 Patent is valid, is enforceable, and was duly and legally issued on May 24, 2011. A true and correct copy of the '494 Patent is attached as Exhibit B.

**ANSWER:** Technicolor USA admits that an uncertified copy of U.S. Patent No. 7,949,494 ("'494 Patent") is attached to Blue Spike's Complaint as Exhibit B.  Technicolor USA denies any remaining allegations in paragraph 42.

43.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '494 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 43 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 43 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

44.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '494 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '494 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '494 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '494 Patent under 35 U.S.C. §271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '494 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '494 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '494 Patent under 35 U.S.C. § 271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 44 to the extent they are directed to Technicolor USA. Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 44 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

45.     Defendant's acts of infringement of the '494 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '494 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**ANSWER:** Technicolor USA denies the allegations in paragraph 45 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 45 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

46.     On information and belief, Defendant has continued to infringe the '494 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit. On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '494 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:** Technicolor USA admits it has received notice of this lawsuit.  Technicolor USA denies the remaining allegations in paragraph 46 to the extent they are directed to Technicolor USA. Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 46 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

47.     On information and belief, Defendant has at least had constructive notice of the '494 Patent by operation of law.

**ANSWER:** Technicolor USA denies the allegations in paragraph 47 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 47 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

**[COUNT 3:]**
**[INFRINGEMENT OF U.S. PATENT NO. 7,660,700]**

48.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 47 of this complaint.

**ANSWER:** In response to paragraph 48, Technicolor USA hereby realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 47, above.

49.     Blue Spike, LLC is assignee of the '700 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '700 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 49 and, therefore, denies them.

50.     The '700 Patent is valid, is enforceable, and was duly and legally issued on February 9, 2010. A true and correct copy of the '700 Patent is attached as Exhibit C.

**ANSWER:** Technicolor USA admits that an uncertified copy of U.S. Patent No. 7,660,700 ("'700 Patent") is attached to Blue Spike's Complaint as Exhibit C.  Technicolor USA denies any remaining allegations in paragraph 50.

51.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '700 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 51 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 51 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

52.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '700 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that infringe the '700 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue

Spike for infringement of the '700 Patent under 35 U.S.C. §271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '700 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '700 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '700 Patent under 35 U.S.C. §271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 52 to the extent they are directed to Technicolor USA. Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 52 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

53.     Defendant's acts of infringement of the '700 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '700 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court

**ANSWER:** Technicolor USA denies the allegations in paragraph 53 to the extent they are directed to Technicolor USA. Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 53 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

54.     On information and belief, Defendant has continued to infringe the '700 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit. On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '700 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:** Technicolor USA admits it has received notice of this lawsuit.  Technicolor USA denies the remaining allegations in paragraph 54 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a

belief as to the truth of any allegations in paragraph 54 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

55.    On information and belief, Defendant has at least had constructive notice of the '700 Patent by operation of the law.

**ANSWER:** Technicolor USA denies the allegations in paragraph 55 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 55 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

### [COUNT 4:]
### [INFRINGEMENT OF U.S. PATENT NO. 7,346,472]

56.    Blue Spike incorporates by reference the allegations in paragraphs 1 through 55 of this complaint.

**ANSWER:** In response to paragraph 56, Technicolor USA hereby realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 55, above.

57.    Blue Spike, LLC is assignee of the '472 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '472 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:** Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 57 and, therefore, denies them.

58.    The '472 Patent is valid, is enforceable, and was duly and legally issued on March 18, 2008. A true and correct copy of the '472 Patent is attached as Exhibit D

**ANSWER:** Technicolor USA admits that an uncertified copy of U.S. Patent No. 7,346,472 ("'472 Patent") is attached to Blue Spike's Complaint as Exhibit D.  Technicolor USA denies any remaining allegations in paragraph 58.

59.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '472 Patent—directly, contributorily, or by

inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 59 to the extent they

are directed to Technicolor USA.  Technicolor USA is without knowledge or information

sufficient to form a belief as to the truth of any allegations in paragraph 59 to the extent they are

directed to a party other than Technicolor USA and, therefore, denies them.

60.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '472 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '472 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '472 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '472 Patent under 35 U.S.C. §271. Those whom Defendant induces to infringe and/or whose infringement to which Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '472 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '472 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '472 Patent under 35 U.S.C. § 271.

**ANSWER:** Technicolor USA denies the allegations in paragraph 60 to the extent they

are directed to Technicolor USA.  Technicolor USA is without knowledge or information

sufficient to form a belief as to the truth of any allegations in paragraph 60 to the extent they are

directed to a party other than Technicolor USA and, therefore, denies them.

61.    Defendant's acts of infringement of the '472 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '472 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**ANSWER:** Technicolor USA denies the allegations in paragraph 61 to the extent they

are directed to Technicolor USA.  Technicolor USA is without knowledge or information

sufficient to form a belief as to the truth of any allegations in paragraph 61 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

62.     On information and belief, Defendant has continued to infringe the '472 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit. On information and belief, such continued infringement has been objectively reckless including because each Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk. Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '472 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:** Technicolor USA admits it has received notice of this lawsuit.  Technicolor USA denies the remaining allegations in paragraph 62 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 62 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

63.     On information and belief, Defendant has at least had constructive notice of the '472 Patent by operation of law.

**ANSWER:** Technicolor USA denies the allegations in paragraph 63 to the extent they are directed to Technicolor USA.  Technicolor USA is without knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 63 to the extent they are directed to a party other than Technicolor USA and, therefore, denies them.

## II.    DEFENSES

64.     Without admitting or acknowledging that it bears the burden of proof as to any of them, Technicolor USA asserts the following defenses to Blue Spike's claims:

### FIRST DEFENSE: NON-INFRINGEMENT

65.     Technicolor USA hereby realleges and incorporates by reference, as if fully set for the herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 64, above.

66.     Technicolor USA does not infringe, and has never infringed, any valid claim of the '175 Patent, the '494 Patent, the '700 Patent, and/or the '472 Patent (hereinafter referred to collective as "the Asserted Patents"), whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, or otherwise under any section of 35 U.S.C. § 271, and, as such, is without any liability to Blue Spike.

## SECOND DEFENSE: EQUITABLE DEFENSES

67.     Technicolor USA hereby realleges and incorporates by reference, as if fully set for the herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 66, above.

68.     Blue Spike's claims for relief concerning the Asserted Patents are barred, in whole or in part, by the equitable doctrines of laches, waiver, unclean hands, equitable  estoppel, and/or other applicable equitable defenses.

## THIRD DEFENSE: LIMITATIONS ON DAMAGES

69.     Technicolor USA hereby realleges and incorporates by reference, as if fully set for the herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 68, above.

70.     Some or all of Blue Spike's claims for relief concerning the Asserted Patents are limited as a consequence of failing to comply with the requirements of 35 U.S.C. §§ 286, 287, and/or 288.

## FOURTH DEFENSE: FAILURE TO STATE A CLAIM

71.     Technicolor USA hereby realleges and incorporates by reference, as if fully set for the herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 70, above.

72.     Blue Spike has failed to state any claim upon which relief can be granted.

### FIFTH DEFENSE: PROSECUTION LACHES

73.     Technicolor USA hereby realleges and incorporates by reference, as if fully set for the herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 72, above.

74.     The Asserted Patents are unenforceable, in whole or in part, under the doctrine of prosecution laches.

### SIXTH DEFENSE: INVALIDITY

75.     Technicolor USA hereby realleges and incorporates by reference, as if fully set for the herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 74, above.

76.     All claims of the Asserted Patents are invalid for failure to meet and/or comply with one or more of the conditions and requirements of the patent laws and regulations, including, but not limited to, the conditions and requirements set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112; and/or 37 C.F.R. §§ 1.1 *et seq*.

### III.     PRAYER FOR RELIEF

WHEREFORE, Technicolor USA respectfully requests that the Court deny, in all respects, Blue Spike's claims and any other requests for relief; that Blue Spike take nothing by way of its claims and any other requests for relief; that Blue Spike's Complaint, and all claims therein, be dismissed with prejudice; that the Court enter judgment in favor of Technicolor USA and against Blue Spike on all claims asserted by Blue Spike; and that the Court enter a judgment:

A.      Finding that Blue Spike should take nothing by way of its Complaint;

B.      Finding that Technicolor USA does not infringe, and has never infringed, any valid claim of the Asserted Patents, whether literally, directly, indirectly, jointly with any other

person or entity, contributorily, by inducement, under the doctrine of equivalents, or otherwise under any section of 35 U.S.C. § 271;

C.      Finding that all asserted claims of the Asserted Patents are invalid and unenforceable against Technicolor USA and no damages for any alleged past infringement of the Asserted Patents by Technicolor USA can be recovered by Blue Spike because such damages are barred by the equitable doctrines of laches, waiver, and/or estoppel;

D.      Enjoining Blue Spike, its counsel, its officers, and any and all persons in active concert or participation with it, either directly or indirectly, from charging infringement of, or instituting any action for infringement of, the Asserted Patents against Technicolor USA, its vendors, its business partners, or its customers for the manufacture, use, sale, offer for sale, or importation of Technicolor USA's products, systems, and/or services that Blue Spike accuses of infringing the Asserted Patents.

E.      Awarding Technicolor USA its costs, expenses, and fees, including reasonable attorneys' fees, pursuant to 35 U.S.C. § 285 and/or other applicable statutes; and

F.      Awarding Technicolor USA such other and further relief as the Court deems just, equitable and proper.

## IV.    JURY DEMAND

Technicolor USA hereby respectfully requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.


Date:   December 10, 2012                    Respectfully submitted,

                                             _/s/ R. Trevor Carter_____
                                             R. Trevor Carter
                                             **FAEGRE BAKER DANIELS LLP**
                                             300 North Meridian St., Suite 2700
                                             Indianapolis, IN  46204

Telephone:   (317) 237-0300
Facsimile:   (317) 237-1000
Email:         trevor.carter@faegrebd.com

Wesley Hill
**WARD & SMITH LAW FIRM**
1127 Judson Rd., Suite 220
Longview, TX  75601
Telephone:   (903) 757-6400
Facsimile:   (903) 212-3937
Email:         wh@wsfirm.com

*Counsel for Defendant Technicolor USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on December 10, 2012.  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

  */s/ R. Trevor Carter*
R. Trevor Carter
**FAEGRE BAKER DANIELS LLP**