# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, <br> *Plaintiff*, <br> v. <br> TEXAS INSTRUMENTS, INC. <br> *Defendant*. <br> _____ <br><br> BLUE SPIKE, LLC, <br> *Plaintiff*, <br> v. <br> IMAGEWARE SYSTEMS, INC., <br> *Defendant*. | § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 6:12-CV-499-LED <br><br> (LEAD CASE) <br><br> JURY TRIAL DEMANDED <br><br><br> Civil Action No. 6:12-CV-688-LED <br><br> (EXCEPT FOR VENUE, CONSOLIDATED WITH 6:12-CV-499) <br><br> JURY TRIAL DEMANDED |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT IMAGEWARE SYSTEMS, INC.'S MOTION
TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Defendant ImageWare Systems, Inc. ("IWS") respectfully submits the following reply memorandum of points and authorities in support of its motion to dismiss the allegations of indirect infringement and willful infringement in the complaint filed by Plaintiff Blue Spike, LLC ("Blue Spike") under Fed. R. Civ. P. 12(b)(6).

## I.     INTRODUCTION

Blue Spike argues that IWS cites the wrong standard for pleading indirect infringement taken from this Court's decision in *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538 (E.D. Tex. 2010) and argues that Blue Spike need not identify which claims are indirectly infringed. Contrary to Blue Spike's suggestion, the Court in *Realtime Data* did not unconditionally relieve every plaintiff from the obligation to identify which claims are indirectly infringed, which methods or systems indirectly infringe, and a direct infringer for each indirect infringement claim. Rather, the Court stated that it "examines the context of the complaint to determine whether specific claims must be identified as indirectly infringed." 721 F. Supp. 2d at 539-40.

Here, Blue Spike alleges that IWS provides the accused products to unspecified "end users" for use in unidentified "fingerprint-based biometric software, systems, and technology" that infringe. Blue Spike's reference to unspecified "fingerprint-based biometric software, systems, and technology" ***does not identify any accused "method or system,"*** which is a required pleading element. In the complex context of this case--in which four patents containing 114 claims are asserted against numerous accused products--it is impossible to discern which claims are asserted against which methods or systems indirectly, which IWS component is supposedly used in which alleged method or system, and to whose direct infringement IWS supposedly contributes for each claim.

Moreover, Blue Spike does not plead any facts to support an inference that any IWS product or component has no substantial non-infringing uses. Blue Spike argues that the Court may infer from the names of the accused products that they have no substantial, non-infringing use, but product names are not facts from which the Court may infer an essential pleading element.

1

Finally, Blue Spike does not allege or plead any facts to support the last element of contributory infringement, namely, that IWS sold the material or component "with knowledge that the component was especially made or adapted for use in an infringing manner." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 840 (Fed. Cir. 2010). In short, Blue Spike's allegations of indirect infringement are defective and should be dismissed.

In its opposition, Blue Spike concedes it has no basis for alleging pre-filing willfulness and argues that its willfulness allegations are based on IWS' unspecified post-filing conduct. As the Federal Circuit has held, however, a willfulness finding "***must necessarily be grounded exclusively in the accused infringer's pre-filing conduct***." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added). If and when an accused infringer's post-filing conduct is believed to be reckless, a patentee can seek a preliminary injunction to combat post-filing willful infringement. However, post-filing conduct inherently cannot be a proper basis upon which to allege willful infringement in a complaint. Accordingly, Blue Spike's willfulness allegations should be dismissed.

## II.     ARGUMENT

### A.  Blue Spike's Indirect Infringement Allegations Are Deficient.

Blue Spike argues that IWS invokes the wrong standard for pleading indirect infringement from *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538 (E.D. Tex. 2010) and argues that Blue Spike need not identify which claims are indirectly infringed. Contrary to Blue Spike's suggestion, however, the Court in *Realtime Data* did not relieve every plaintiff from the obligation to identify which claims are indirectly infringed, which methods or systems indirectly infringe, and a direct infringer for each indirect infringement claim. Rather, the Court "***examines the context of the complaint to determine whether specific claims must be identified as indirectly infringed***." *Realtime Data*, 721 F. Supp. 2d at 539-40 (emphasis added).

In this case, Blue Spike alleges that IWS supplies the accused products to unspecified "end users" for use in unspecified "fingerprint-based biometric software, systems, and technology" that infringe. D.E. No. 1, ¶¶ 27, 35. While Blue Spike cites two cases to the

2

contrary, this District rejected similar identifications of a defendant's "customers" and "users" as the alleged direct infringers in at least two prior cases that remain valid. *Landmark Technology LLC v. Aeropostale*, 2010 WL 3155888, at *3-4 (E.D. Tex. Mar. 29, 2010). *Cf. PA Advisors, LLC v. Google Inc.*, 2008 WL 4136426, at *8 (E.D. Tex. Aug. 8, 2008). Thus, Blue Spike's identification of "end users" is not necessarily sufficient.[1]

Even if Blue Spike's generic identification of "end users" were sufficient, Blue Spike's reference to unidentified "fingerprint-based biometric software, systems, and technology" ***does not identify any*** accused "method or system" that supposedly infringes, as required. This Court has high expectations of a plaintiff's preparedness before bringing suit. *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). In the complex context of this case—in which four patents containing 114 claims (including method, system, process and apparatus claims) are asserted against multiple accused products--it is impossible to discern what methods or systems supposedly infringe, which claims are asserted indirectly, which IWS component is supposedly used in which alleged method or system, and to whose direct infringement IWS supposedly contributes for each claim. Accordingly, Blue Spike's contributory infringement allegations are defective and should be dismissed. *Realtime Data*, 721 F. Supp. 2d at 538. *See also Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, 2010 WL 3155888, at *4 (E.D. Tex. Mar. 29, 2010) (dismissing the plaintiff's indirect infringement allegations because they "fail to identify which claims are indirectly infringed, fail to identify which methods or systems indirectly infringe, and fail to identify a direct infringer in reference to its indirect infringement claims").[2]

---

[1] Blue Spike's reliance on *Lone Star Document Management, LLC v. Atalasoft, Inc.*, 2012 WL 4033322 (E.D. Tex. Sep. 12, 2012), is curious. There, the Court dismissed Lone Star's indirect infringement allegations because "Lone Star does not include any discussion of other uses for Compulink's device" nor "does Lone Star mention any alternative use for Compulink's products. Lone Star, consequently, fails to adequately plead contributory infringement." *Id.* at 4. Similarly here, Blue Spike does not discuss any other uses for IWS' accused products.

[2] Citing *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010), Blue Spike argues that IWS' Biometric Engine, Desktop Security, Law Enforcement, and EPI Builder

3

Blue Spike cites *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) as support for its argument that "a plaintiff need not even identify which claims it asserts are being infringed." *Id*. at 1335. There, plaintiff R+L alleged that the accused "process for scanning and wirelessly transmitting bills-of-lading from the truck cab to the back office for the preparation of leading manifests has no other substantial, non-infringing use." *Id*. at 1337-38. However, the Federal Circuit rejected these allegations as "tailored too narrowly; they say nothing more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses' . . . . " *Id*. at 1338. In other words, simply alleging that the accused products have no substantial, non-infringing uses is insufficient. Rather, a plaintiff must identify the material or apparatus for use in practicing the patented process sold by the defendant ***and plead facts "that allow an inference that [these] components . . . have no substantial non-infringing uses***." *InMotion Imagery Technologies v. Brain Damage Films*, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) (emphasis added).

Here, Blue Spike identifies IWS' Biometric Engine, Desktop Security, Law Enforcement, and EPI Builder Software Development Kit as the alleged "material or apparatus," and argues that the Court may infer from the names of these products that they have no substantial, non-infringing use. IWS submits, however, that product names are not facts from which the Court can infer a required pleading element. Blue Spike simply ***pleads no facts allowing a reasonable inference*** that the accused products actually have no substantial non-infringing uses, which is insufficient. *Id*.; *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, Case No. 6:11-cv-229-LED-JDL, D.E. No. 486 (E.D. Tex. Jul. 27, 2012) (the complaint "is devoid of any

---

Software Development Kit comprise the alleged "material or apparatus" that infringes indirectly because these products operate as components of a larger system. But in *i4i*, the Federal Circuit explained that "a particular tool within a larger software package may be the relevant 'material or apparatus' when that tool is a separate and distinct feature." *Id*. at 849. Here, however, Blue Spike has not shown whether any accused product is a separate and distinct feature of any larger "system," nor has Blue Spike identified any such larger "system."

allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses'").

Finally, Blue Spike does not allege or plead any facts to support the last element of contributory infringement, namely, that IWS sold the material or component "with knowledge that the component was especially made or adapted for use in an infringing manner." *i4i*, 598 F.3d at 840; *Aguirre v. Powerchute Sports, LLC*, 2011 WL 3359554, at *5 (W.D. Tex. Aug. 4, 2011) ("A violator of 35 U.S.C. §271(c) must know that the combination for which his component was especially designed was both patented and infringing."). For all these reasons, Blue Spike's allegations of contributory infringement are defective and should be dismissed.

### B. Blue Spike's Willful Infringement Allegations Should Be Dismissed.

Blue Spike concedes it has no basis for alleging pre-filing willful infringement and argues that its willfulness allegations are based purely on unspecified post-filing conduct. D.E. No. 408 at 6. As the Federal Circuit has held, however, allegations of willful infringement "***must necessarily be grounded exclusively in the accused infringer's pre-filing conduct***." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added). If and when an accused infringer's post-filing conduct is believed to be reckless, a patentee can seek a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. *Id*. at 1374 (citing 35 U.S.C. § 283; *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)). However, post-filing conduct inherently cannot be a proper basis upon which to allege willful infringement in a complaint. Accordingly, Blue Spike's willfulness allegations should be dismissed. *InMotion Imagery*, 2012 WL 3283371, at *4; *Realtime Data*, 721 F. Supp. 2d at 545. *Cf. Wordcheck Tech., LLC v. Alt-N Technologies, Ltd., et al.*, Case No. 6:10-cv-457-LED, D.E. No. 537 at 1 (E.D. Tex. Aug. 23, 2011).

### III. CONCLUSION

For the foregoing reasons, Blue Spike's allegations of contributory patent infringement and willful infringement should be dismissed.

DATED:  January 7, 2013                                Respectfully submitted,


By:  */s/James V. Fazio, III*
James V. Fazio, III (Admitted Pro Hac Vice)
SAN DIEGO IP LAW GROUP LLP
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:  858-792-3446
Facsimile:  858-792-3447
jamesfazio@sandiegoiplaw.com

Eric H. Findlay (State Bar No. 00789886)
Brian Craft (State Bar No. 04972020)
Walter W. Lackey, Jr. (State Bar No. 24050901)
FINDLAY CRAFT LLP
6760 Old Jacksonville Highway
Suite 101
Tyler, TX 75703
Telephone: 903-534-1100
efindlay@findlaycraft.com
bcraft@findlaycraft.com
wlackey@findlaycraft.com


Attorneys for Defendant
IMAGEWARE SYSTEMS, INC.


CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on this 7th day of January, 2013.

*/s/James V. Fazio, III*
James V. Fazio, III