# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br><br>  *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br><br>  *Defendant*.<br>_____ | § § § § § § § § § § § § | Civil Action No. 6:12-CV-499-LED<br><br>(LEAD CASE)<br><br>JURY TRIAL DEMANDED |
| BLUE SPIKE, LLC,<br><br>  *Plaintiff*,<br><br>v.<br><br>IMAGEWARE SYSTEMS, INC.,<br><br>  *Defendant*. | § § § § § § § § § § § § § § | Civil Action No. 6:12-CV-688-LED<br><br>(EXCEPT FOR VENUE, CONSOLIDATED WITH 6:12-CV-499)<br><br>JURY TRIAL DEMANDED |

## MOTION BY DEFENDANT IMAGEWARE SYSTEMS, INC. TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. §1404(a)

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. SUMMARY OF FACTS.................................................................................................... 3
III. STATEMENT OF ISSUE TO BE DECIDED.................................................................. 4
IV. LEGAL STANDARDS. .................................................................................................... 4
V. ARGUMENT ...................................................................................................................... 5
    A. This Case Unquestionably Could Have Been Brought In The Southern
       District of California ..................................................................................................... 5
    B. The Private Interest Factors Strongly Favor Transfer .................................................. 5
       1. Ease of Access to Sources of Proof ...................................................................... 5
       2. Blue Spike's Recent Connection to Texas is Not Countervailing ........................ 6
       3. Availability of Compulsory Process ..................................................................... 7
       4. Cost of Attendance for Willing Witnesses............................................................ 8
       5. Other Potential Practical Problems Do Not Outweigh The Other
          Factors................................................................................................................... 9
    C. The Public Interest Factors Strongly Favor Transfer ................................................. 10
       1. Relative Court Congestion.................................................................................. 10
       2. Local Interest ...................................................................................................... 11
       3. Other Public Interest Factors .............................................................................. 11
IV. CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

*Amazon.com, Inc. v. Cendant Corp.*,
    404 F. Supp. 2d 1256 (W.D. Wash. 2005) .............................................................................. 5

*Droplets, Inc. v. Amazon.com, Inc.*,
    2012 WL 3578605 (E.D. Tex. Jun. 27, 2012) ...................................................................... 2, 9

*Droplets, Inc. v. E*Trade Financial Corp.*,
    2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) ....................................................................... 5, 6

*Eon Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
    2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ......................................................................... 6, 11

*Fujitsu Ltd. v. Tellabs, Inc.*,
    639 F. Supp. 2d 761 (E.D. Tex. 2009) ................................................................................ 8, 10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ......................................................................................... 5, 6, 8

*J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*,
    2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ......................................................................... 9

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011) ............................................................................................ 5, 7

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
    2010 WL 3855520 (E.D. Tex. Sep. 30, 2010) ................................................................ 8, 9,11

*Optimum Power Solutions, LLC v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex. 2011) .......................................................................... 7, 8, 9

*Pergo, Inc. v. Alloc, Inc.*,
    262 F. Supp. 2d 122 (S.D.N.Y. 2003) ...................................................................................... 9

*Pragmatus v. Facebook, Inc.*,
    769 F. Supp. 2d 991 (E.D. Va. 2011) ....................................................................................... 5

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
    817 F. Supp. 473 (D.N.J. 1993) ........................................................................................... 2, 5

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ..................................................................................................................... 4

*In re TS Tech. USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ............................................................................................... 11

*In re Volkswagen of Am., Inc. ("Volkswagen I")*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................................... 4, 8

*In re Volkswagen AG ("Volkswagen II")*,
    37 F.3d 201 (5th Cir. 2004) ......................................................................................... 4, 8, 10

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
    2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ....................................................................... 6, 7

*Wireless Recognition Technologies, Inc. v. A9.com, Inc.*,
    2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ..................................................... 5, 6, 7, 9, 10

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ......................................................................................... 7, 9

## STATUTES & RULES

28 U.S.C. §1404(a) ........................................................................................................................ 4

28 U.S.C. §1391 ............................................................................................................................ 5

28 U.S.C. §1400(b) ....................................................................................................................... 5

Fed. R. Civ. P. 45(b)(2) ................................................................................................................. 8

Defendant ImageWare Systems, Inc. ("IWS") respectfully submits the following memorandum of points and authorities in support of its motion to transfer this individual case against IWS to the Southern District of California for the convenience of the parties and witnesses and in the interests of justice under 28 U.S.C. §1404(a).  IWS submits that this motion is suitable for decision without oral argument and does not request a hearing on the motion.

## I.   INTRODUCTION

Blue Spike's individual case against IWS should be transferred for the convenience of the parties and witnesses to the Southern District of California because all witnesses with knowledge of the design, development, operation and sales of IWS' accused products live and work in San Diego, California (with the sole exception of IWS' Chief Technical Officer, who works in the Portland, Oregon area but who frequently travels to San Diego on IWS business).  All documents related to the central issues of alleged infringement and damages, including all documents regarding the design, development, operation, sales and marketing of IWS' accused products are also located in San Diego, California.  IWS has no employees, offices, bank accounts, real property, inventory, assets, or agents for service in Texas.  IWS is not licensed to do business in Texas and does not file any tax returns in Texas.  IWS has no United States government or state contracts associated with Texas.  IWS has only one customer in the Eastern District of Texas (The City of Plano).  However, 2012 sales to The City of Plano were just $1,090.

Moreover, Blue Spike recently incorporated in Texas on **May 14, 2012**—*less than three months* prior to filing the lead case in this action, and presumably in order to create venue here. See, Declaration of James V. Fazio, III ("Fazio Decl."), Ex. A [Blue Spike's Articles of Incorporation and Texas Secretary of State information].  According to the four patents in suit filed from 2000-2011, Blue Spike was located in Sunny Isles Beach, Florida and co-inventor Scott A. Moskowitz lived in Florida during that period.  Any documents regarding inventorship and the like that may now be located in Texas have thus only recently been moved here, and Blue Spike's recent incorporation in the Eastern District of Texas appears to be for litigation purposes.  For these reasons, Blue Spike's choice of forum is entitled to little if any weight.

1

Moreover, at least one third party with knowledge of the biometric algorithms used in IWS' accused products is NEC Solutions (America), Inc., which is located in Rancho Cordova, California, which is closer to the Southern District of California than this District. The private interest factors thus strongly support transfer of this case to the Southern District of California.

The public interest factors likewise support transfer. The Southern District of California is significantly less congested than this District. As of December 31, 2011, there were 4,153 private civil cases pending in this District (as compared with 2,310 pending in the Southern District of California). In addition, the Southern District of California has a strong and particularized interest in the adjudication of claims against IWS because IWS' accused products are designed and developed there. By contrast, this District has a weak interest in this case because IWS has virtually no sales in this District, and because Blue Spike appears to have incorporated in Texas only recently and apparently for litigation purposes.

The pendency of Blue Spike's cases against the other defendants in this consolidated action does not overwhelm the strong showing of private and public interest factors favoring transfer because this case is in its early stages and because the accused products made by the defendants are markedly different and vary widely. As this District has observed, "[b]ecause *the cases involve different products . . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial." *Droplets, Inc. v. Amazon.com, Inc.*, 2012 WL 3578605, at *8 (E.D. Tex. Jun. 27, 2012) (emphasis in original). For this reason, the risk of overlap between this case and Blue Spike's cases against the other defendants is insufficient to outweigh the balance of private and public interest factors strongly favoring transfer. Accordingly, Blue Spike's case against IWS should be transferred to the Southern District of California under 28 U.S.C. §1404(a).

## II.     SUMMARY OF FACTS

Defendant ImageWare Systems, Inc. is a small company based in San Diego, California with 50 full-time employees. Virtually all witnesses with knowledge of the design, development, operation and sales of IWS' accused products live or work in San Diego, California. Declaration

of Wayne G. Wetherell ("Wetherell Decl."), ¶ 3.  Likewise, all documents and all electronically stored information relevant to the design, development, operation and sales of IWS' accused products are located in San Diego, California.  *Id*.  No IWS documents or electronically stored information relevant to this case are located in Texas.  *Id*.  IWS has no offices, employees, bank accounts, real property, assets, inventory, or agents for service of process in Texas.  *Id*., ¶ 4.  IWS is not licensed to do business in Texas and does not file any tax returns or other filings in Texas.  *Id*., ¶ 5.  IWS has no United States government or state government contracts with or associated with Texas.  *Id*., ¶ 6.  IWS has only 6 customers in Texas and 1 customer in this District—The City of Plano.  *Id*., ¶ 7.  Five of those customers (including the City of Plano) have each generated sales of $5,800 or less in 2012 (sales to The City of Plano in 2012 were only $1,090).  *Id*.  The sixth customer (CompuCom, located in Dallas, Texas) has generated $439,000 in revenue.  *Id*.  However, sales to CompuCom are the result of IWS' software licenses delivered and deployed to Los Angeles World Airports in Los Angeles, California (not Texas).  *Id*.  LAWA requires any and all licenses to be invoiced to CompuCom, even though IWS' software sold to CompuCom is ultimately delivered to and deployed in Los Angeles.  *Id*.  IWS does not anticipate selling any additional or future licenses or making any other sales to CompuCom in the future.  *Id*.

Blue Spike does not appear to have a business telephone number in Texas and only recently incorporated in Texas on **May 14, 2012** (less than three months before filing the lead case in this action on August 9, 2012).  Fazio Decl., Ex. A.  According to the four patents in suit, both Blue Spike and co-inventor Scott A. Moskowitz were located in Florida from at least 2000-2011.  D.E. No. 1, Exs. A-D.  Co-inventor Michael W. Berry appears to reside in Seattle, Washington—much closer to San Diego, California than to Tyler, Texas.  *Id*.  Regardless, Messrs. Moskowitz and Berry are but two witnesses, neither of whom has any knowledge regarding the central issues in the case against IWS, namely, the design, development, operation and sales of IWS' accused products.

| Patent | Filing Date | Inventor Scott Moskowitz Residence | Inventor Michael W. Berry Residence |
|---|---|---|---|
| 7,346,472 | 9/7/00 | Miami, FL | Albuquerque, NM |
| 7,660,700 | 12/26/07 | Sunny Isles Beach, FL | Virginia Beach, VA |
| 7,949,494 | 12/22/09 | Sunny Isles Beach, FL | Seattle, WA |
| 8,214,175 | 2/26/11 | Miami, FL | Seattle, WA |

### III. STATEMENT OF ISSUE TO BE DECIDED

1. Whether Blue Spike's case against IWS transferred to the Southern District of California for the convenience of the parties and witnesses and in the interests of justice under 28 U.S.C. §1404(a).

### IV. LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district court or division where the case might have been brought. 28 U.S.C. § 1404(a). A district court has broad discretion in deciding whether to transfer a case. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Droplets*, 2012 WL 3578605, at *1 (*citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

As a threshold matter, the district court must first determine whether the proposed transferee forum is one where the action might have been brought in the first instance. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). After such a determination, the court then balances various private and public interest factors to determine whether the proposed transferee forum is "clearly more convenient" than the chosen forum. *Droplets*, 2012 WL 3578605, at *1 (*citing Volkswagen I*, 371 F.3d at 203). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

4

witnesses; and (4) other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interest factors include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interested decided at home; (3) the familiarity of the forum with the governing law; and (4) the avoidance of unnecessary problems with conflict of laws or the application of foreign law.  *Id*.

The plaintiff's choice of forum is not a separate factor.  *Id*. (*citing Volkswagen II*, 545 F.3d 314-15).  Instead, the plaintiff's choice of forum relates to the defendant's burden to prove that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue.  *Id*.  However, when the plaintiff's presence in the chosen venue appears to have been manufactured for litigation purposes, the plaintiff's choice of forum is disregarded.  *In re Microsoft Corp*., 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (**disregarding the plaintiff's choice of forum as a "recent, ephemeral, and construct for litigation [that] appeared to exist for no other purposes than to manipulate venue**.") (emphasis added); *Pragmatus v. Facebook, Inc., et al.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (giving plaintiff's choice of forum "minimal weight" when plaintiff had a weak connection to the forum and incorporated in the forum shortly before the litigation).

**V.   ARGUMENT**

  **A. This Case Unquestionably Could Have Been Brought In the Southern District of California.**

Blue Spike could have brought this action against IWS in the Southern District of California because that is where IWS is headquartered and has its principal place of business.  28 U.S.C. §§1391, 1400(b).  Accordingly, this threshold is satisfied.

  **B. The Private Interest Factors Strongly Favor Transfer.**

    **1. Ease of Access to Sources of Proof**

Despite the technological advances that render electronic production possible, the location of the sources of proof "continues to be an important private interest factor.*" Wireless Recognition Technologies, Inc. v. A9.com, Inc.*, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15,

2012); *see also Droplets, Inc. v. E\*Trade Financial Corp.*, 2012 WL 3133398, at \*2 (E.D. Tex. Mar. 5, 2012).  In patent cases, the bulk of relevant evidence comes from the accused infringer. *WRT,* 2012 WL 506669, at \*3; *Droplets*, 2012 WL 3133398, at \*2; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, . . . the place where the defendant's documents are kept weighs in favor of transfer to that location").  For that reason, the preferred forum in patent cases is the "center of gravity of the accused activity." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (*citing Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.Y. 1993)).

      Here, virtually all witnesses with knowledge of the design, development, operation and sales of IWS' accused products live or work in San Diego, California.  Wetherell Decl., ¶ 3. Likewise, all documents relevant to the design, development, operation and sales of IWS' accused products are located in San Diego, California. *Id*.  According to the patents in suit, co-inventor Scott A. Moskowitz resided in Sunny Isles, Florida or Miami, Florida from at least 2000-2011.  D.E. No. 1, Exs. A-D.  Co-inventor Michael W. Berry apparently resides in Seattle, Washington, which is much closer to San Diego than to Tyler, Texas.  D.E. No. 1, Ex. A.  In any event, Messrs. Moskowitz and Berry are but two witnesses, neither of whom has any knowledge regarding the central issues of alleged infringement and damages against IWS.

      This factor therefore supports transfer of this case to the Southern District of California. *Eon Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, 2012 WL 122562, at \*4 (E.D. Tex. Jan. 9, 2012) (transferring case to Northern District of California because most of the relevant evidence was located there, notwithstanding that plaintiff was headquartered in Texas); *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, 2012 WL 194370, at \*5 (E.D. Tex. Jan. 23, 2012) (transferring case to Northern District of California because "all documents relating to infringement" were there, and plaintiff "only has a limited number of sources of proof in the Eastern District of Texas"); *WRT,* 2012 WL 506669, at \*3; *Droplets*, 2012 WL 3133398, at \*2; *In re Genentech, Inc.*, 566 F.3d at 1345.

      **2.    Blue Spike's Recent Connection To Texas Is Not Countervailing.**

While the plaintiff's choice of forum is not a separate factor, it bears emphasis that a plaintiff's recent and ephemeral contacts with the chosen forum, which are nothing more than a construct for litigation, should be disregarded in a §1404(a) analysis. *In re Microsoft Corp.*, 630 F.3d at 1364-65; *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

Here, Blue Spike incorporated in Texas on **May 14, 2012** (less than three months before filing the lead case in this action). Fazio Decl., Ex. A. Moreover, while Blue Spike may have an address in Tyler, Texas, Blue Spike does not appear to have a business telephone number in Texas and does not appear to have much if "any business in this District besides pursuing this litigation." *Optimum Power Solutions, LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011) (transferring case despite plaintiff's location in the Eastern District of Texas). Indeed, from 2000-2011 during which period the four patents-in-suit were filed, Blue Spike was located in Sunny Isles Beach, Florida. D.E. No. 1, Exs. A-D. However insistent Blue Spike may be that it has incorporated in Texas with the intention of remaining, Blue Spike's presence here appears to have been manufactured for litigation purposes and should be disregarded. *In re Microsoft Corp.*, 630 F.3d at 1364-65; *In re Zimmer*, 609 F.3d at 1381. At a minimum, Blue Spike's connection to Texas is unquestionably "recent" and thus entitled to little weight, particularly when virtually all evidence relevant to the alleged infringement and damages against IWS are located in San Diego, California.[1]

This factor, therefore, weighs in favor of transfer.

### 3. Availability of Compulsory Process

The availability of compulsory process to secure the attendance of non-party witnesses is the next private interest factor to consider. *Voxpath*, 2012 WL 194370, at *5; *On Semiconductor*

---

[1] In *Wireless Recognition*, the plaintiff had incorporated in Texas four months prior to filing suit. *WRT,* 2012 WL 506669, at *3, n.6. While the Court there did not reject the plaintiff's Texas contacts as created solely to manipulate venue, it accorded the plaintiff's contacts only "some weight," which were outweighed by the overwhelming location of relevant evidence in Northern California. Indeed, the location of the inventor in Texas was deemed insufficient to rebut the fact that "many documents and witnesses" were located in the proposed transferee district. *Id*. at *4, n.7.

7

*Corp. v. Hynix Semiconductor, Inc.*, 2010 WL 3855520, at *8 (E.D. Tex. Sep. 30, 2010). While it is too early in these proceedings to know the identity and location of non-party witnesses, employees of at least one third party, NEC Solutions (America), Inc., have knowledge of biometric algorithms used in IWS' accused products. Wetherell Decl., ¶ 8. NEC Solutions (America), Inc. is located in Rancho Cordova, California, which is closer to San Diego than to Tyler, Texas. *Id.*

Moreover, there are no known defense witnesses subject to the Court's subpoena power or within 100 miles of this Court. *See*, Fed. R. Civ. P. 45(b)(2). Instead, all defense witnesses are located in San Diego, California or Clackamas, Oregon. Wetherell Decl., ¶ 3. This factor therefore weighs in favor of transfer.

### 4. Cost of Attendance for Willing Witnesses

This factor is analyzed giving broad consideration to all potential material and relevant witnesses, irrespective of their centrality to the issues raised in the case. *On Semiconductor*, 2010 WL 3855520, at *5. *See also In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a 100-mile rule to assist with the analysis of this factor. *Volkswagen I*, 371 F.3d at 204-05. When the distance between an existing venue for trial and a proposed venue under §1404(a) is more than 100 miles, the significance of inconvenience to witnesses increases in proportion to the additional distance to be traveled. *Id.* at 205. The 100-mile rule thus favors transfer when the proposed transferee venue is a shorter average distance from witnesses than the transferor venue. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 766 (E.D. Tex. 2009) (*citing Volkswagen II*, 545 F.3d at 317). Importantly, when no potential witnesses are residents of the forum state, using the forum court's status as a centralized location for all witnesses is improper to rebut factors favoring convenience elsewhere. *Optimum Power*, 794 F. Supp. 2d at 702 (*citing In re Genentech*, 566 F.3d at 1344).

Here, transfer of this action to the Southern District of California would significantly reduce the cost of trial attendance for willing witnesses because virtually all witnesses with knowledge of the design, development, operation and sales of IWS' accused products live or work in San Diego, California.  Wetherell Decl., ¶ 3.  Moreover, even if Mr. Moskowitz now lives in Tyler, Texas, Mr. Berry appears to live in Seattle, Washington, which is closer to San Diego than to Tyler, Texas.  D.E. No. 1, Exs. A-D.  Regardless, Messrs. Moskowitz and Berry are but two witnesses, neither of whom has knowledge of the central issues of alleged infringement and damages against IWS.  This factor therefore weighs in favor of transfer.  *On Semiconductor*, 2010 WL 3855520, at *5; *Droplets, Inc.*, 2012 WL 3578605, at *5-6.

### 5. Other Potential Practical Problems Do Not Outweigh The Other Factors.

This Court has recognized that in some cases, the existence of duplicative lawsuits involving the same or similar issues may create practical difficulties that weigh heavily in favor of or against transfer.  *Optimum Power*, 794 F. Supp. 2d at 702.  Here, however, the pendency of Blue Spike's numerous other cases is insufficient to rebut the strong showing that San Diego, California is clearly a more convenient forum than this District for the adjudication of claims against IWS because this case is in its very early stages, and because the accused products made by the 50-plus defendants vary widely.  As this District has observed, "[b]ecause *the cases involve different products . . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial." *Droplets, Inc.*, 2012 WL 3578605, at *8 (emphasis in original).  *See also, J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008) (the risk of overlap is limited when "a court has had limited involvement with the case and the technology, no claim construction opinion has issued, and the cases involve different defendants with different products."); *WRT*, 2012 WL 506669, at *5 (transferred case to the Northern District of California, despite the pendency of three related cases involving similar claims, and despite "the practical issues related to managing multiple actions involving overlapping issues."); *In re*

*Zimmer*, 609 F.3d at 1381 (any perceived gains in judicial economy are minimal when "the cases involve different products").

The potential overlap between Blue Spike's claims against IWS and the other defendants is therefore minimal and does not rebut the strong showing that Blue Spike's case against IWS should be transferred to the Southern District of California.[2]

### C. The Public Interest Factors Strongly Favor Transfer

#### 1. Relative Court Congestion

Here, the Southern District of California is considerably less congested than this District. As of December 31, 2011, there were 2,310 private civil cases pending in the Southern District of California compared with 4,153 in the Eastern District of Texas. www.uscourts.gov/ Statistics/ StatisticalTablesForTheFederalJudiciary /December-2011.aspx. This factor therefore also favors transfer to the Southern District of California. *WRT*, 2012 WL 506669, at *6.

#### 2. Local Interest

Courts must consider the local interest in the litigation because "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sales of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318.

Here, the residents of the Southern District of California have a strong and particularized interest in this case because IWS is headquartered there and because IWS' accused products are designed and developed there. *WRT*, 2012 WL 506669, at *6; *Fujitsu*, 639 F. Supp. 2d at 769 (transferring case to Illinois "[b]ecause the accused products are designed and developed there").

---

[2] In any event, the Federal Circuit is well-equipped to address and resolve any inconsistencies in claim construction rulings should they arise. *See Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 133 (S.D.N.Y. 2003) ("Patent holders often litigate cases and bring claims alleging infringement of the same patent in multiple jurisdictions against different parties, and they are able to resolve discrepancies, if they exist, by appealing those decisions to the Court of Appeals for the Federal Circuit.") (internal citations omitted).

By contrast, Blue Spike has at best only a recent and tangential connection to Texas, especially when compared with IWS' strong and long-standing connection to the Southern District of California (IWS was founded in San Diego in 1987).  http://www.iwsinc.com/aboutiws.cfm. This factor therefore supports transfer of Blue Spike's case against IWS to the Southern District of California.  *Eon Corp.*, 2012 WL 122562, at *5 (holding that "whatever weight might be afforded Plaintiff's presence in the Eastern District [of Texas begun two years before filing of the lawsuit] is outweighed by the presence" of the defendants in California, "where the decisions and events giving rise to this case likely were made or occurred."); *On Semiconductor*, 2010 WL 3855520, at *8 (transferring case to California even though defendants employed over sixty individuals in Texas).

This factor thus also favors transfer to the Southern District of California.

### 3. Other Public Interest Factors

This District and the Southern District of California are presumably equally familiar with patent law, and no conflicts of laws issues are expected in this case, so this factor is perhaps neutral.  *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## VI.   CONCLUSION

The overwhelming balance of private and public interest factors show that litigation of Blue Spike's claims against IWS is clearly more convenient for the parties and witnesses in the Southern District of California than this District.  For the convenience of the parties and witnesses, and in the interests of justice, Blue Spike's case against IWS should therefore be transferred to the Southern District of California under 28 U.S.C. §1404(a).

DATED:  January 7, 2013                              Respectfully submitted,

By: */s/ James V. Fazio, III*
    James V. Fazio, III (Admitted Pro Hac Vice)
    SAN DIEGO IP LAW GROUP LLP
    12526 High Bluff Drive, Suite 300
    San Diego, CA 92130
    Telephone: (858) 792-3446
    Facsimile: (858) 792-3447
    jamesfazio@sandiegoiplaw.com

    Eric H. Findlay (State Bar No. 00789886)
    Brian Craft (State Bar No. 04972020)
    Walter W. Lackey, Jr. (State Bar No. 24050901)
    FINDLAY CRAFT LLP
    6760 Old Jacksonville Highway
    Suite 101
    Tyler, TX 75703
    Phone: 903-534-1100
    efindlay@findlaycraft.com
    bcraft@findlaycraft.com
    wlackey@findlaycraft.com

Attorneys for Defendant
IMAGEWARE SYSTEMS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on January 7, 2013.

*/s/James V. Fazio, III*
James V. Fazio, III

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), lead counsel for the parties, namely, the undersigned (on behalf of ImageWare Systems, Inc.) and Christopher Honea (on behalf of Blue Spike), met and conferred via electronic mail on December 19 and 31, 2012 and via telephone on January 4, 2013. This motion is opposed because Blue Spike does not agree to transfer this case to the Southern District of California, leaving open issues for the Court to decide.

*/s/James V. Fazio, III*
James V. Fazio, III