IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>    Plaintiff,<br>v.<br><br>TEXAS INSTRUMENTS, INC. *et al.*,<br><br>    Defendant. | Civil Action No. 6:12-cv-499-LED<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br><br>    Plaintiff,<br>v.<br><br>BIOLINK SOLUTIONS LTD., and<br>BIO-METRICA, LLC,<br><br>    Defendants. | Civil Action Case No. 6-12-cv-648-LED<br><br>CONSOLIDATED CASE |

**DEFENDANT BIO-METRICA, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND BRIEF IN SUPPORT THEREOF**

Defendant Bio-Metrica, LLC respectfully moves this Court to dismiss this action as to Bio-Metrica for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, alternatively, for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  In support of its motion, Bio-Metrica submits the following Brief and the Declaration of Ronen Yacobi, President and CEO of Bio-Metrica ("Dec.").

**STATEMENT OF FACTS**

1.    September 15, 2012, Plaintiff Blue Spike, LLC filed a complaint against multiple defendants, including Bio-Metrica, alleging infringement of U.S. Patent No. 7,346,472, 7,660,700, 7,949,494, and 8,214,175 (collectively, the Patents-in-Suit).  (Doc. No. 1; Dec. ¶ 6.)

2. Blue Spike alleges that this Court has personal jurisdiction over Bio-Metrica, a Florida limited liability company, arising out of various alleged general acts. (Dec. ¶¶ 3, 7, 8). Additionally, Blue Spike has contended that venue is proper for the same reasons that it contended that jurisdiction was proper. (Id. at ¶ 9.)

3. Bio-Metrica maintains its principal place of business at 380 South SR434, Suite 1004-298, Altamonte Springs, FL 32714 ("Florida Office") (Dec. ¶ 3.) Other than its Florida Office, where the corporate and business records are kept, Bio-Metrica has no other offices. (Id. at ¶ 5.)

4. With respect to Bio-Metrica's tenuous connections to Texas, Bio-Metrica has no offices or other places of business in Texas (Dec. ¶¶ 5, 11), nor has Bio-Metrica operated or maintained any facilities in Texas (id. at ¶ 12). Furthermore, Bio-Metrica (i) has no interest in, use of, or possession of real or personal property within Texas (id. at ¶¶ 18-19), and (ii) has never owned or leased any real property in Texas (id.). Similarly, Bio-Metrica has never maintained a mailing address in Texas. (Id. at ¶ 28).

5. In addition to the lack of any physical facilities in Texas, Bio-Metrica does not employ any Texas residents and has no directors or officers that live or work in Texas. (Dec. ¶¶ 13-14.)

6. Coupled with the lack of any physical or human capital in Texas, Bio-Metrica has no significant Texas financial connection. Specifically, Bio-Metrica has (i) no bank accounts in Texas (Dec. ¶ 15), (ii) never mailed payments to Texas (id. at ¶ 16), or (iii) obtained credit from a creditor in Texas (id. at ¶ 17).

7. Furthermore, Bio-Metrica has no connection with the bodies of Texas government. Specifically, other than being named as a defendant herein, Bio-Metrica has not used Texas courts as a litigant (Dec. ¶ 24) or paid taxes to Texas (id. at ¶ 20). Further, Bio-Metrica is not licensed by the

State of Texas (id. at ¶ 21) or registered with the Texas government as a foreign corporation (id. at ¶ 23).  As such, Bio-Metrica has no designated agent for service of process within Texas.  (Id. at ¶ 22.)

8.      Bio-Metrica also has no material business contacts with Texas.  Bio-Metrica does not advertise in Texas other than through its non-interactive website, bio-metrica.com, which is available throughout the world, but through which sales to consumers cannot be consummated.  (Dec. ¶ 29.) Bio-Metrica has not and does not contract with any Texas entity to provide Bio-Metrica with services or goods that are either made in, originate in, or ship from Texas.  (Id. at ¶ 25.)  No officer, director, or employee of Bio-Metrica has traveled to Texas to (i) participate in any trade show or conference (id. at ¶ 26), or (ii) solicit or conduct business (id. at ¶ 27).  Bio-Metrica stores no business or corporate documents in Texas.  (Id. at ¶ 36.)  Bio-Metrica has not programmed, serviced, or manufactured any product in Texas (id. at ¶ 31), nor does it have any inventory of products in Texas (id. at ¶ 32).  Moreover, Bio-Metrica has never received in Texas any shipments of products or other material associated with its business.  (Id. at ¶ 35.)

9.      With respect to its contracts, Bio-Metrica has never negotiated any contracts in Texas (Dec. ¶ 33), nor has Bio-Metrica ever entered into any contracts governed by Texas law  (id. at ¶ 34).

10.     Bio-Metrica is a manufacturer and system integrator in the field of biometric technology. (Dec. ¶ 4.)  However, it has not has not manufactured or integrated in Texas any product, including the products accused of infringement in this action (see, e.g., Doc. No. 1 ¶ 28), which are described as IDenium, Authentication Center, BioTime, Fingerpass, Fingerpass NEO, U-Match Mobile, AMIS Multibiometric Solution, XMatcher, and BioLink Software Development Kit ("Accused Products").  (Dec. ¶ 30.)  Moreover, in the six year period before the filing of this action, Bio-Metrica has generated no revenue from Texas-based or derived sales since it has sold no Accused Products in Texas during the relevant time period.  (Id. at ¶¶ 43, 44.)

# I.  ARGUMENT

## A. Legal Standard

### 1) Personal Jurisdiction

When deciding a personal jurisdiction issue in a patent action, a district court should apply Federal Circuit law. Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1230 (Fed. Cir. 2010); Hockerson-Halberstadt, Inc. v. Costco Wholesale Corp., 93 F. Supp. 2d 738, 741 (E.D. La. 2000). When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 563 F.3d 1285, 1294 (Fed. Cir. 2009).

A court may exercise personal jurisdiction over a nonresident defendant, such as Bio-Metrica, only when doing so would be (1) permitted by the forum state's long-arm statute, and (2) consistent with due process. Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 857 (Fed. Cir. 1999). In Texas, the long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042, authorizes the exercise of jurisdiction "'as far as the federal constitutional requirements of due process will allow.'" Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (quoting long-arm statute). Accordingly, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry. Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

Federal due process requires that the (1) nonresident defendant purposely avail itself of the benefits and protections of the forum state by establishing certain minimum contacts with the forum state; and (2) exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." Johnston, 523 F.3d at 609 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1371 (Fed. Cir. 2000). To establish minimum contacts, a nonresident defendant must do some act by which it "purposefully avails [it]self

4

of the privilege of conducting activities within [Texas], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The activities must be of such quality that the defendant could "reasonably anticipate being haled into court." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Contacts that are random, fortuitous, attenuated, or simply non-existent are not sufficient. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The minimum contacts aspect of due process can be satisfied by either finding specific or personal jurisdiction. Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005). However, under either analysis, "the constitutional touch stone remains whether the defendant purposefully established 'minimum contacts' in the forum state." Burger King, 417 U.S. at 474; Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998). General personal jurisdiction arises when a defendant has created a substantial connection with the forum and its business contacts with the forum are so "continuous and systematic" that jurisdiction is appropriate and just even when the cause of action has no relation to those contacts. Goodyear Dunlop Tires Ops. v. Brown, 131 S. Ct. 2846, 2848 (U.S. 2011); Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984); Campbell Pet Co. v. Miale, 542 F.3d 879, 883 (Fed. Cir. 2008). Specific jurisdiction exists when a nonresident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable. 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998); Burger King, 471 U.S. at 472.

    2) <u>Venue</u>

In a patent infringement case involving a corporation, venue is proper in any district that may exercise personal jurisdiction over the corporate defendant at the time the action is commenced. VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1999); 28 U.S.C. §§

1391(c) & 1400(b).  The venue issue is therefore subsumed in the personal jurisdiction issue.  N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994).

Here, Bio-Metrica does not have contacts with Texas that are sufficient to authorize the exercise of either general or specific personal jurisdiction and, as such, this Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2).  Moreover, venue in this Court is improper, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(3).

B. Bio-Metrica Does Not Have Substantial or Continuous and Systematic Contacts with Texas to Establish General Personal Jurisdiction.

As stated supra, substantial or continuous and systematic contacts with Texas would justify this Court's exercise of jurisdiction over Bio-Metrica, a non-resident defendant.  However, this standard has been recognized as a "'difficult' standard for the resident plaintiff to meet" because it requires the plaintiff to show extensive contacts between a defendant and a forum.  Diebold Election Sys., Inc. v. AI Tech., Inc., 562 F. Supp. 2d 866, 876 (E.D. Tex. 2008) (quoting Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001) (noting the Supreme Court has only once upheld personal jurisdiction where the suit was unrelated to the defendant's contacts with the forum)); Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1018 (Fed. Cir. 2009).

Here, Blue Spike's complaint alleges that Bio-Metrica i) has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (ii) regularly carries on or solicits business in the District and in Texas; (iii) engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (iv) purposefully establishes substantial, systematic, and continuous contacts with the District such that Bio-Metrica should

reasonably expect to be haled into Court without offending traditional notions of fair play and substantial justice. (Doc. No. 1 ¶ 6.) These "vague and over generalized" allegations (Johnston, 523 F.3d at 610) regarding Bio-Metrica's ostensible contacts with this District in particular and Texas in general are incorrect and devoid of factual foundation. (Dec. ¶ 10.) Bio-Metrica does not do any business in or have any contact with Texas, much less have contacts that rise to the level of a "persistent course of conduct in the state of Texas." Marathon Oil Co. v. Ruhrgas, 182 F.3d 291, 295 (5th Cir. 1999). For example, Bio-Metrica (i) has no interest in any real or personal property in Texas (Dec. ¶¶ 18-19), (ii) is not licensed by or registered to do business in Texas (id. at ¶¶ 21, 23), and (iii) has no directors or officers, employees, business records, statutory agent for service of process, mailing address, offices, other facilities, bank accounts, or inventory in Texas (id. at ¶¶ 11-15, 22, 28, 32). Coupled with this is the absence of any (i) Bio-Metrica contracts governed by Texas law or negotiated in Texas (id. at ¶¶ 33-34), (ii) programming, servicing, or manufacturing by Bio-Metrica of products in Texas (id. at ¶¶ 30-31), (iii) travel by any individual for Bio-Metrica to participate in any trade show, conference, or otherwise solicit or conduct business for Bio-Metrica (id. at ¶¶ 26-27), (iv) receipt in Texas of any shipments of products or other business material (id. at ¶ 35), or (v) advertising in Texas (id. at ¶ 29).

Bio-Metrica's only tenuous connection with Texas is the fact that it has been sued here and that its non-interactive website, available anywhere in the world, is also available in Texas. (Dec. ¶ 29.) Notably, Bio-Metrica has sold no products, including those accused of infringement, in Texas for the six year period before the filing of this lawsuit, generating a whopping $0 in revenue. (Id. at ¶¶ 43-46.) This lack of any sales in Texas does not even rise to the "insignificant and sporadic sales" that are of "the nature and quality" to constitute a general presence in Texas. Dalton v. R&W Marine, Inc., 897 F.2d 1359, 1362 (5th Cir. 1990); Johnston, 523 F.3d at 610 ("Random, fortuitous, or

attenuated contacts [which] are not sufficient to establish jurisdiction."); Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 218 (5th Cir. 2000) (no general personal jurisdiction where "evidence show[ed] at best, that [the defendant] sold, on isolated occasions, products to entities located in Texas…"). Thus, with no revenue from Texas customers, Bio-Metrica could not have "reasonably expected to be sued in Texas on any matters." Johnston, *surpa* (declining to exercise general personal jurisdiction where neither the total amount of sales nor the percentage of annual sales [i.e., 3% of sales over five year period] was substantial or regular enough to create a general presence); Helicopteros, 466 U.S. at 411, 417-18; TXU Energy Retail Co. v. Emanuel Med. Center, Inc., 3:02-CV-2400-BH, 2003 U.S. Dist. LEXIS 9036, at *16 (N.D. Tex. May 28, 2003) (series of short-term contracts for purpose of gas from Texas corporations insufficient to create continuous relationship with state to as to exercise general personal jurisdiction) (citing Helicopteros).

Plaintiff also cannot use Bio-Metrica's website as a basis for general jurisdiction. Bio-Metrica's website (i) is devoid of anything targeting this District or even Texas customers, (ii) is not interactive, and (iii) does not allow internet visitors to the website to purchase any of Bio-Metrica's products or services. (Dec. ¶ 29.) Thus, Bio-Metrica's website cannot establish general personal jurisdiction. Accord Gunze Plastics Eng'g Corp. of Am. v. Landmark Tech., LLC, 12-2297-JTM, 2012 U.S. Dist. LEXIS 174477 (D. Kan. Dec. 10, 2012) (grant of defendant's motion to dismiss plaintiff's declaratory relief action for lack of personal jurisdiction because defendant's website was not interactive); Klausner Techns., Inc. v. Taridium, LLC, 6:11-cv-00593-LED, slip op. at *4 (Doc. No. 28) (E.D. Tex. Sep. 24, 2012) ("[Defendant's] website merely advertises [its] products and does not allow individuals to purchase the allegedly infringing products online. Further, nothing on [its] website targets the Eastern District of Texas or even Texas customers. Accordingly, the Court finds that [defendant's] website does not subject [it] to jurisdiction in the Eastern District of Texas.").

Coupled with the absence of any actual interaction with Texas or its residents in light of the absence of any Texas sales or revenue, the exercise of general personal jurisdiction over Bio-Metrica violates Due Process and thus Blue Spike cannot rely on general personal jurisdiction to establish the exercise of personal jurisdiction over Bio-Metrica in this case.  Accord Roblor Mktg. Group, Inc. v. Gps Indus., 645 F. Supp. 2d 1130, 1142 (S.D. Fla. 2009) ("However, there is no evidence in the record of any actual interaction with the state of Florida. The mere world-wide accessibility of Karrier's websites in the absence of any actual interaction will not support a finding that jurisdiction attaches"); Arquest, Inc. v. Kimberly-Clark Worldwide, Inc., 07 Civ. 11202 (CM), 2008 U.S. Dist. LEXIS 60987 (S.D.N.Y. July 31, 2008) (granting defendant's motion to dismiss for lack of personal jurisdiction in New York where the defendant did not operate in New York, was not registered or licensed to do business in New York, had no property in New York, had no employees in New York, had no sales force, had no customer base, and did not sell or market any products).

C. Bio-Metrica Has Not Purposefully Directed Activities Toward Texas So As To Confer Specific Jurisdiction Over Bio-Metrica.

In the absence of general personal jurisdiction, a court may exercise specific personal jurisdiction over a defendant if the cause of action arises out of or relates to the activity of the defendant in the forum state.  Breckenridge Pharm., Inc. v. Metabolite Labs, Inc., 444 F.3d 1356, 1360-61 (Fed. Cir. 2006).  The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair.  Nuance Commc'ns, 626 F.3d at 1231.

Here, none of the three required prongs is met.  According to the Complaint, this action is based on the allegation of Texas-based or directed activities by Bio-Metrica related to the Accused

9

Products.  However, that the tort of patent infringement is deemed to have occurred in whole or in part in Texas is simply not dispositive of whether jurisdiction is appropriate.  Wilson, 20 F.3d at 648; World-Wide Volkswagen, 444 U.S. at 288-89.  What is critical is whether the (i) defendant personally directed its activities at the residents of Texas, and (ii) litigation results from alleged injuries that arise out of or relate to Bio-Metrica's accused sales.  Aviles v. Kunkle, 978 F.2d 201, 204 (5th Cir. 1992); Innovative Office Prods. v. Ole Smed & Trade Mgmt. Group Ltd., EDCV 07-192-SGL (KCRx), 2007 U.S. Dist. LEXIS 76656, at *12 (C.D. Cal. Aug. 15, 2007).

Here, with respect to the first factor (whether the defendant purposefully directed activities at residents of the forum), Bio-Metrica took no planned action "to inject" itself into Texas.  Bio-Metrica's only "injection" into Texas with respect to the Accused Products is the advertising of such products on its non-interactive website, which resulted in no sales and no revenue from any Texas - based or related commercial transactions.[1]  (Dec. ¶¶ 43-45.)  The absence of any such Texas sales or revenue, coupled with the nonexistence of any other ties to the state, could not reasonably provide Bio-Metrica "fair warning that [it was] subject to the jurisdiction of" Texas.  TXU, supra, at *11; Electrosource v. Horizon Battery Techns., 176 F.3d 867, 871 (5th Cir. 1999)); Zeneca v. Mylan Pharms., 173 F.3d 829, 835 (Fed. Cir. 1999); Arlington Indus. v. Elec. Custom Distribs., 817 F. Supp. 2d 473, 485 (M.D. Pa. 2011) ("Despite the fact that Defendant's website is nationally accessible, there is no evidence that they have targeted Pennsylvania nor have they accounted for a significant proportion of sales in Pennsylvania.  Rather...these two websites are better analogized to an advertising campaign.").

Moreover, Bio-Metrica has no long-term contract, relationship, or other business deal remotely related to Texas.  (Dec. ¶¶ 25, 28, 30-35.)  That is, Bio-Metrica did not establish any

---

[1] Accused Products were sold in MA, OH, TN, NJ, WA, FL, MS, IN, IA, MI, GA, & CA. (Dec. ¶ 46.)

resulting "substantial connection with" Texas. TXU, supra, at *15 (citing Burger King, 471 U.S. at 478-79). As such, Bio-Metrica did not contemplate a "long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by" the Supreme Court when it held that "minimum contacts" requires a party to purposefully avail itself of the privilege of conducing activities within the forum. Verizon v. Cohen, Jayson & Foster, 3:06-CV-2394-L, 2007 U.S. Dist. LEXIS 54676, at *12-13 (N.D. Tex. July 27, 2007) (citing Burger King, 471 U.S. at 475). Therefore, purposeful availment here is lacking. Transplace Tex., L.P. v. Higgins, 4:10-CV-428, 2011 U.S. Dist. LEXIS 13719, at *9 (E.D. Tex. Jan. 19, 2011) (finding no purposeful availment where defendant's forum-related activities comprised a few sales over multiple years yielding negligible revenue).

As to the second factor (whether the claim arises out of or relates to those activities, *viz.*, the foreseeability of the effects of any of Bio-Metrica's Texas-related activities), any "relatedness" is simply not a substitute for the existence of some minimum contacts between Bio-Metrica and Texas. Several courts have concluded that specific jurisdiction is appropriate over a defendant that sells allegedly infringing products through its website and ships them to the forum state. Vice v. Woodline USA, Inc., C 10-04103 CW, 2011 U.S. Dist. LEXIS 8014, at *10 (N.D. Cal. Jan. 21, 2011). However, here, we have neither of these, *viz.*, no sales of Accused Products at all, and no sales through the website (which is not interactive). Therefore, the exercise of specific jurisdiction cannot be established in the absence of any evidence satisfying the second factor. Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC, 708 F. Supp. 2d 527, 534 (D. Md. 2010) (dismissing case where "[t]here [wa]s no evidence that [defendant] induced the sale of any goods in Maryland").

Even if Bio-Metrica were aware that Blue Spike would be injured from any supposed infringing conduct occurring outside of Texas, that conduct was directed at the nationwide market in which Bio-Metrica competes, rather than at Texas, Blue Spike, or its residents. Diebold, 562 F. Supp.

2d at 875; cf. Cent. Freight Lines, Inc. v. APA Transp. Corp., 322 F.3d 376, 384 (5th Cir. 2003) (defendant intentionally interfered with a contract between two parties it knew to be residents of the forum). Bio-Metrica's conduct was simply directed at a nationwide market rather than at Blue Spike, Texas or its residents. (Dec. ¶ 46.) This differs materially from the necessary "purposeful direct[ion]" of Bio-Metrica's acts specifically directed toward Texas. Diebold, 562 F. Supp. 2d at 875 (quoting Burger King, 471 U.S. at 476); cf. McCabe v. Floyd Rose Guitars, 3-10-cv-00581, slip op. at *6 (S.D. Cal. Oct. 17, 2011) (jurisdiction found where there was relatedness of forum-related activities to claims of infringement given that the defendant personally attended trade show in forum to commercialize accused products during which time defendant allegedly solicited sales of the accused products). After consideration of the zero sales of Accused Products in Texas and without any other Texas-directed activity by Bio-Metrica, what is left for Blue Spike to establish personal jurisdiction is "an insurmountable dearth of contacts between [Bio-Metrica] and the State of Texas." Diebold, 562 F. Supp. 2d at 873. As such, in light of the absence of the alleged Bio-Metrica-Texas claim-related contacts, Blue Spike cannot meet the relatedness requirement to establish specific jurisdiction over Bio-Metrica. MADD v. DAMMAD, Inc., 3:02-CV-1712-G, 2003 U.S. Dist. LEXIS 1800, at *16 (N.D. Tex. Feb. 7, 2003) (no specific personal jurisdiction where less than 3% of internet activity alleged to comprise trademark infringing activity originated from Texas) (citing Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999)).

Lastly, there is no support for the conclusion that the exercise of specific personal jurisdiction here would be reasonable. The reasonableness of such exercise is determined by considering a number of factors, including (1) Bio-Metrica's burden, (2) the forum state's interest, (3) Blue Spike's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering social policies. Asahi Metals v.

Superior Court, 480 U.S. 102, 112 (1987); Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1369 (Fed. Cir. 2010).

Here, all factors militate against the exercise of specific jurisdiction over Bio-Metrica. First, it would be a burden for Bio-Metrica to litigate the case in a far-away venue such as Texas, especially given its non-connection with Texas. All of its employees and officers reside and work outside of Texas (Dec. ¶¶ 13-14) and its only office is in Florida (id. at ¶ 5). All documents pertaining to the alleged activities and the Accused Products are located outside of Texas. (Id. at ¶ 36.) Thus, all persons with knowledge of Bio-Metrica's business and relevant documents in this matter would, in all likelihood, have to be transported to Texas if litigation were to occur in this Court. The added related expense would adversely affect Bio-Metrica's business operations. Thus, the first factor weights favors Bio-Metrica. MADD, 2003 U.S. Dist. LEXIS 1800, at *25-26.

Furthermore, the second factor is neutral: Texas may have an interest in protecting corporations headquarted within Texas from patent infringement, but Florida also has a significant interest in remedying alleged violations of patent law by a Florida entity, and this matter involves questions of Federal, not state, law. Id. at *26; cf. Trasplace Tex., 2011 U.S. Dist. LEXIS 13719, at *21 (Texas had strong interest in dispute as it concerned a contract negotiated in Texas governed by Texas law). As to the remaining factors, although Blue Spike allegedly brought the instant action for its convenience to allow for effective relief (third factor), litigation of this dispute in Florida would violate neither the judicial system's interest in efficient resolution of controversies nor the shared interest of the states in furthering fundamental social policies (fourth and fifth factors). In fact, quite the contrary is true: litigation in Florida would presumably allow Blue Spike's claims to be heard on the merits by the appropriate court with jurisdiction over Bio-Metrica, thus reinforcing the proper boundaries of personal jurisdiction jurisprudence in patent cases. As such, the fourth and fifth factors

weigh in favor of Bio-Metrica. MADD, 2003 U.S. Dist. LEXIS 1800, at *27-28. Therefore, considering these factors in light of the relationship between Bio-Metrica, Texas, and this litigation, maintaining this suit against Bio-Metrica in this forum "would offend the traditional notions of fair play and substantial justice." Id. at *28 (citing Asahi, 480 U.S. at 113 and quoting Int'l Shoe, 326 U.S. at 316). Woodson v. Copeland Trucking, 3:01-CV-2216-H, 2002 U.S. Dist. LEXIS 2601, at *3 (N.D. Tex. Feb. 15, 2002); Beverly Hills Fan v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994). As such, this Court should not exercise specific jurisdiction over Bio-Metrica and dismiss the Complaint.

1) Venue in this Court is Improper, Warranting Dismissal under Rule 12(b)(3).

Federal Rule of Civil Procedure 12(b)(3) permits dismissal based on improper venue. In a patent infringement case involving a corporation, venue is proper in any district that may exercise personal jurisdiction over the corporate defendant at the time the action is commenced. VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1999); 28 U.S.C. §§ 1391(c) and 1440(b). As stated supra, in patent infringement cases, personal jurisdiction and venue involve the same analysis and need not be considered separately. Hollyanne Corp. v. TFT, Inc., 199 F.3d 1304, 1306-07 (Fed. Cir. 1999). Because the exercise of personal jurisdiction over Bio-Metrica in this forum is improper, this is also an improper venue. Hockerson-Halberstadt v. Costco Wholesale Corp., 00-758, 2000 U.S. Dist. LEXIS 8290, at *9 (E.D. La. June 6, 2000).

## II. CONCLUSION

Bio-Metrica does not have substantial, continuous and systematic contacts with Texas sufficient to subject it to personal jurisdiction in Texas. It consummated no sales of Accused Products in Texas, and merely operates in Texas a worldwide-accessible, non-interactive website, which clearly are insufficient under Due Process to confer jurisdiction. Ductcap Prods. v. J & S

Fabrication, Inc., 09-1179 ADM/FLN, 2009 U.S. Dist. LEXIS 92038, at *7-10 (D. Minn. Oct. 2, 2009) (defendant's motion to dismiss for lack of personal jurisdiction was granted where defendant's contacts with the forum were an advertisement sent to six businesses, an advertisement in a "nationally circulated magazine," and a website that "has not generated any sales in [the forum].") There is simply nothing sufficient to establish the exercise of personal jurisdiction or the propriety of venue. As such, Bio-Metrica respectfully requests this case be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Moreover, since the exercise of jurisdiction over Bio-Metrica in this forum is improper, this is also an improper venue such that Bio-Metrica respectfully requests dismissal for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).[2]

Respectfully submitted this 21st day of December, 2012.    WEISS & MOY, P.C.
                                                            By: /s/ Kenneth M. Motolenich-Salas
                                                            Kenneth M. Motolenich-Salas
                                                            Attorney for Bio-Metrica, LLC

---

[2] No Certificate of Conference is required for this motion since neither the "meet and confer" nor the "certificate of conference" requirements of Local Rule CV 7(i) applies to motions to dismiss.

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

December 21, 2012                                        */s/ Kenneth M. Motolenich-Salas*
                                                                         Kenneth M. Motolenich-Salas