# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **Blue Spike, LLC,** § § | | |
| Plaintiff, § § | | Case No. 6:12-cv-00499-MHS |
| v. § § | | LEAD CASE |
| **Texas Instruments, Inc., et al.,** § § | | Jury Trial Demanded |
| Defendants. § § § § | | |
| **Blue Spike, LLC,** § § | | |
| Plaintiff, § § | | Case No. 6:12-cv-00568-MHS |
| v. § § | | CONSOLIDATED CASE |
| **Zeitera, LLC, et al.,** § § | | Jury Trial Demanded |
| Defendants. § § § § | | |

### DEFENDANT ENSEQUENCE, INC.'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

## TABLE OF CONTENTS

Page

I. STATEMENT OF ISSUES ................................................................................................ 1
II. FACTS ............................................................................................................................... 1
    A. Plaintiff Blue Spike's Allegations ......................................................................... 1
    B. Jurisdictional Facts................................................................................................. 3
III. APPLICABLE LAW .......................................................................................................... 5
    A. Law Relating to Lack of Personal Jurisdiction ....................................................... 5
    B. Law Relating to Improper Venue ........................................................................... 8
IV. ARGUMENT ..................................................................................................................... 8
    A. This Court Lacks Personal Jurisdiction Over Ensequence .................................... 8
        1. There is no general jurisdiction over Ensequence because Ensequence does not have continuous and systematic contacts with Texas ....................................................................................................... 9
        2. There is no specific jurisdiction because Ensequence has not made, used, imported, sold or offered to sell any accused product in Texas ..................................................................................................... 11
    B. Venue Is Improper ............................................................................................... 12
V. CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleron, LLC v. Egenera, Inc.*,
  634 F. Supp. 2d 758 (E.D. Tex. 2009) ............................................................................. 5, 6, 12

*Adv. Bio. Labs. v. Ameripath, Inc.*,
  No. 2:07CV31, 2008 WL 1757819 (E.D. Tex. Apr. 14, 2008) ................................................ 12

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) .................................................................................................. 5

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) .................................................................................................. 6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................................ 6, 8, 11

*Ductcap Prods., Inc. v. J&S Fabrication, Inc.*,
  Civil No. 09-1179 ADM/FLN, 2009 WL 3242022 (D. Minn. Oct. 2, 2009) ........................... 12

*Garnet Digital, LLC v. Apple, Inc.*,
  No. 6:11-CV-647, 2012 WL 4465260 (E.D. Tex. Sept. 27, 2012) ............................................ 8

*Grober v. Mako Prods., Inc.*,
  686 F.3d 1335 (Fed. Cir. 2012) ........................................................................................... 7, 12

*Hanson v. Denckla*,
  357 U.S. 235 (1958) ................................................................................................................... 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ............................................................................................................... 6, 9

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................................................ 6, 8

*Mink v. AAAA Dev. LLC*,
  190 F.3d 333 (5th Cir. 1999) ................................................................................................... 10

*QR Spex, Inc. v Motorola, Inc.*,
  507 F. Supp. 2d 650 (E.D. Tex. 2007) ..................................................................................... 12

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ............................................................................................... 6, 10

*VE Holdings Corp. v. Johnson Gas Appliance Co.*,
  917 F.2d 1574 (Fed. Cir. 1990) ................................................................................................. 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
 952 F. Supp. 1119 (W.D. Pa. 1997) .................................................................................... 10

**Rules**

28 U.S.C. § 1400(b) ........................................................................................................................ 8

Fed. R. Civ. P. 12(b)(2) .................................................................................................................. 1

Fed. R. Civ. P. 12(b)(3) .................................................................................................................. 1

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3), Defendant Ensequence, Inc. ("Ensequence") respectfully requests that this Court dismiss all claims asserted against it in Plaintiff Blue Spike LLC's ("Blue Spike") Complaint for lack of personal jurisdiction and improper venue.  Ensequence is a Delaware corporation with its principal place of business in Portland, Oregon, and it lacks any contacts with the State of Texas upon which personal jurisdiction over Ensequence could be based or any contacts that could establish proper venue in this District.

In support of this Motion, Ensequence also submits the Declaration of Aslam Khader ("Khader Decl.").  Ensequence appears in this case only for the limited purpose of filing this Motion.

## I.     STATEMENT OF ISSUES

1.     Whether this Court has personal jurisdiction over a nonresident defendant that lacks minimum contacts with Texas and who has not made, used, imported, sold or offered to sell any alleged infringing product in Texas.

2.     Whether venue lies in the Eastern District of Texas with respect to a defendant who is not subject to personal jurisdiction in the District.

## II.    FACTS

### A.     Plaintiff Blue Spike's Allegations

Blue Spike filed its Complaint against Ensequence, Zeitera, LLC, and Related Content Database, Inc. on August 23, 2012, alleging that all three defendants infringed U.S. Patent Nos. 7,346,472 (the "'472 Patent"), 7,660,700 (the "'700 Patent"), 7,949,494 (the "'494 Patent") and 8,214,175 (the "'175 Patent," and together with the '472 Patent, '700 Patent, and '494

Patent, the "Patents-in-Suit"). (Dkt. No. 1.) Blue Spike alleges that Ensequence has infringed one or more claims of the Patents-in-Suit because it "makes, uses, offers for sale and/or imports into the U.S. products, systems and/or services including, but not limited to, its iTV Manager Interactive Platform software, systems, and technology ('Ensequence Accused Products')." (Dkt. No. 1, ¶ 31.) Specifically, Blue Spike alleges that the Ensequence Accused Products "use the common and related infringing technologies – Zeitera's automatic content recognition systems using fingerprint technology." (Dkt. No. 1, ¶ 9.)

As to the grounds for personal jurisdiction, Blue Spike alleges that this Court has personal jurisdiction over the defendants generally for four reasons:

> (1) Defendants have committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendants regularly do business or solicit business in the District and in Texas; (3) Defendants engage in other persistent courses of conduct and derive substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendants have purposefully established substantial, systematic, and continuous practices with the District and should reasonably expect to be haled into court here.

(Dkt. No. 1, ¶ 7.)

As to the grounds for venue, Blue Spike alleges that:

> Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendants do business in the State of Texas, Defendants have committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Defendants are subject to personal jurisdiction in the District.

(Dkt. No. 1, ¶ 8.)

Blue Spike does not allege any specific facts in support of its jurisdictional and venue allegations.

B. **Jurisdictional Facts**

Ensequence is a Delaware corporation with its principal place of business located in Portland, Oregon. (Khader Decl. ¶ 3.) Ensequence is an interactive TV company that enables programmers, service providers and advertisers to increase program ratings, advertising effectiveness and merchandise sales by making their shows and commercials more powerful and engaging using interactive technology. The Ensequence iTV Manager® interactive platform solves the technical complexities associated with creating and deploying a high volume of uniquely branded interactive television experiences across cable, satellite, telco and connected devices. (*Id.* ¶ 2.)

Ensequence has no presence in Texas. It has never been registered to do business in Texas. (*Id.* ¶ 3.) Ensequence does not have an office in Texas or own any property or maintain any facilities in Texas. (*Id.* ¶¶ 4, 5.) Besides its principal office in Portland, Oregon, Ensequence's only other two offices are in New York, New York and Dayton, Ohio. (*Id.* ¶ 4.) It does not have any mailing address in Texas. (*Id.* ¶ 5.) None of Ensequence's officers, directors, or employees lives or works in Texas. (*Id.* ¶ 6.) Ensequence has never attended a trade show or conference in Texas. (*Id.* ¶ 7.)

As Ensequence is a Delaware corporation, it has a registered agent for service of process in Delaware. It does not have a registered agent for service in Texas. (*Id.* ¶ 8.) None of Ensequence's customers are Texas corporations or headquartered in Texas, and consequently, Ensequence does not receive any revenue from Texas. (*Id.* ¶ 9.) Nor has Ensequence directed marketing or advertisements to Texas. (*Id.* ¶ 10.)

While Ensequence operates a website, which is accessible worldwide over the public Internet, the website is not specifically directed to Texas or any other state or country. (*Id.* ¶ 11 & Ex. A.) The website is maintained, hosted and operated outside of Texas. (*Id.* ¶ 13.) The website provides information related to the company and its goods and services in a passive manner. There is no interactive commercial activity through the Ensequence website. (*Id.* ¶ 11 & Ex. A.) No goods or services are sold through Ensequence's website. (*Id.* ¶ 12.)

Ensequence has not made, used, imported, sold or offered to sell any Ensequence product that uses Zeitera's automatic content recognition software or fingerprint technology in Texas. (*Id*. ¶ 14).

In April 2011, Ensequence did enter into a Zeitera Software Evaluation License Agreement that gave Ensequence a license to internally test and evaluate Zeitera's automatic content recognition software and fingerprinting technology (the "Evaluation License"), but this license was solely for the purpose of noncommercial evaluation and was limited to an identified period of time. (*Id.* ¶ 15.) In August 2011, Ensequence and Zeitera also issued a joint press release announcing their intention to deploy an integrated Ensequence/Zeitera product that would allow programmers and advertisers to create, manage and deploy interactive applications running on smartphones and tablets that are synchronized with content on the TV screen using Zeitera's automatic content recognition products. (*Id.* ¶ 16. & Ex. B)

Ensequence also made a few customer presentations, all outside of Texas, in which Ensequence described to those customers a version of its iTV Manager product that could incorporate Zeitera's automatic content recognition technology. (*Id*. ¶ 17). None of these potential customers, however, expressed any interest in the integrated Ensequence/Zeitera

product, so Ensequence never finalized the integrated product or provided it to any customers in Texas or elsewhere.  (*Id*.)  Ensequence has elected to stop its internal development of any product based on Zeitera's automatic content recognition software or fingerprint technology, and it is not offering such a product to its customers in Texas or elsewhere.  (*Id*.)  To date, Ensequence has not sold any product that uses any automatic content recognition software or fingerprinting technology, either in Texas or anywhere else.  (*Id.* ¶ 18.)

## III.   APPLICABLE LAW

### A.   Law Relating to Lack of Personal Jurisdiction

In cases involving personal jurisdiction over a nonresident defendant accused of patent infringement, Federal Circuit law governs.  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1026 (Fed. Cir. 2009); *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 768 (E.D. Tex. 2009).  When the parties have not conducted discovery, the plaintiff must make a prima facie showing that the defendant is subject to personal jurisdiction.  *Autogenomics*, 566 F.3d at 1017; *Acceleron*, 634 F. Supp. 2d at 768.  On a motion to dismiss, "a district court must accept the *uncontroverted* allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."  *Autogenomics*, 566 F.3d at 1017 (internal quotation marks and citation omitted).  The plaintiff, however, still bears the burden of showing that the defendant has minimum contacts with the forum state sufficient to support jurisdiction.  *Acceleron*, 634 F. Supp. 2d at 769.

Whether personal jurisdiction exists with respect to a nonresident defendant involves two inquiries: "[1] whether the forum state's long-arm statute permits service of process and [2)] whether assertion of personal jurisdiction violates due process."  *Autogenomics*, 566 F.3d

at 1017 (internal quotation marks and citation omitted). Because the Texas long-arm statute "reaches to the constitutional limits" of due process, the personal jurisdiction inquiry focuses on the second prong of the analysis – whether the assertion of personal jurisdiction violates due process. *Revell v. Lidov*, 317 F.3d 467, 469-70 (5th Cir. 2002). Federal Circuit law governs whether the exercise of personal jurisdiction would violate due process. *Acceleron*, 634 F. Supp. 2d at 769.

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). For the requisite "minimum contacts" with a forum state to exist, the defendant's contacts with the forum must be sufficient to confer either "general" or "specific" jurisdiction over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). To establish either general or specific personal jurisdiction, the contacts must be enough to demonstrate that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citation omitted).

The courts have drawn a distinction between general and specific jurisdiction. In the context of establishing general personal jurisdiction, a plaintiff bears a higher burden. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008). "Specifically, where a

plaintiff's 'claims do not arise out of or relate to the defendant's contacts with the forum State, we must explore the nature of the defendant's contacts with the forum State to determine whether they constitute *continuous and systematic* general business contacts.'" *Id.* (quoting *Helicopteros*, 466 U.S. at 415-16). In the context of patent infringement litigation, the Federal Circuit has held that an assertion of general jurisdiction "requires that the defendant have continuous and systematic contacts with the forum state." *Id.* at 1331 (internal quotation marks and citation omitted).

"To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 1330 (internal quotation marks and citation omitted). In the context of patent infringement litigation, the Federal Circuit employees a three-prong test, in which the court determines whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* at 1332 (internal quotation marks and citation omitted). The plaintiff has the burden of proving the first two criteria, and then the burden shifts to the defendant to prove that jurisdiction is unreasonable. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). The third factor corresponds with the "fair play and substantial justice" analysis. *Id.* (internal quotation marks and citation omitted).

If minimum contacts are established by the plaintiff, the contacts may then "be considered in the light of other factors to determine whether the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). Relevant factors include:

> [1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in further fundamental substantive policies.

*Id.* at 477 (internal quotation marks and citation omitted).

### B. Law Relating to Improper Venue

Venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990); *see also Garnet Digital, LLC v. Apple, Inc.*, No. 6:11-CV-647, 2012 WL 4465260, at *1 (E.D. Tex. Sept. 27, 2012) (quoting same).

## IV. ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Ensequence.

This Court lacks general personal jurisdiction over Ensequence because Ensequence does not have continuous and systematic general business contacts with Texas. This Court lacks specific jurisdiction over Ensequence because Ensequence has never made, used, imported, sold or offered to sell in Texas any Ensequence product that uses Zeitera's automatic content recognition software or fingerprint technology.

### 1. There is no general jurisdiction over Ensequence because Ensequence does not have continuous and systematic contacts with Texas.

As discussed above, general jurisdiction cannot be asserted over a nonresident defendant unless it has engaged in continuous and systematic activity in the forum state. *Helicopteros*, 466 U.S. at 414-16. Blue Spike inaccurately alleges in a conclusory manner that "(2) Defendants regularly do business or solicit business in the District and in Texas; (3) Defendants engage in other persistent courses of conduct and derive substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendants have purposefully established substantial, systematic, and continuous practices with the District." (Dkt. No. 1, ¶ 7.) Blue Spike does not and cannot allege any specific facts to support these formulaic assertions.

Far from having "continuous and systematic" contacts with Texas, Ensequence has no presence in Texas. It is not incorporated there. (Khader Decl. ¶ 3.) It does not have any offices, property, or facilities there, and none of its officers, directors, or employees live or work in Texas. (*Id.* ¶¶ 4-6.) It has not attended any trade shows or conferences in Texas. (*Id.* ¶ 7.) It does not have a Texas mailing address. (*Id.* ¶ 5.) It is not registered to do business in Texas and has no registered agent there for service of process. (*Id.* ¶¶ 3, 8.) None of Ensequence's customers are Texas corporations or headquartered in Texas, and consequently, Ensequence does not derive any revenue from Texas. (*Id.* ¶ 9.) Nor has Ensequence directed marketing or advertisements to Texas. (*Id.* ¶ 10.) In short, and contrary to Blue Spike's unfounded allegations, Ensequence does not "regularly do business or solicit business" in the District and in Texas. (*See* Dkt. No. 1, ¶ 7.) Nor does it "derive substantial revenue from products and/or services provided to individuals in the District and in Texas." (*See id.*)

Blue Spike does not specifically allege that Ensequence's website provides a basis for jurisdiction, presumably because it recognizes that a passive website is insufficient to establish general jurisdiction. While the Federal Circuit has not defined the standard for establishing minimum contacts via a website, other circuits, including the Fifth Circuit, have adopted the sliding-scale test set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Revell*, 317 F.3d at 470. A passive website, which is a website that allows only the owner to post information to the site, is not sufficient to establish the minimum contacts needed to maintain general jurisdiction. *Id.* Websites that allow repeated online contacts by the owner with forum residents may satisfy the minimum contacts requirement. *Id.* Websites that have some interactive elements and allow for bilateral exchange of information fall in the middle. *Id.* In other words, when a court examines a website as a basis for jurisdiction, it looks at the interactivity and the nature of the forum contacts. *Id.* Ensequence's website is passive because it allows only Ensequence to post information, and there are no sales of products or services. (Khader Decl. ¶ 11, Ex. A.) This website is insufficient as a matter of law to establish jurisdiction over Ensequence. *See Revell*, 317 F.3d at 471 (dismissing complaint for lack of personal jurisdiction even when website at issue was used for limited Internet subscriptions); *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (dismissing complaint for lack of personal jurisdiction where website allowed visitors to send an email to company but did not allow consumers to order products or services online).

### 2. There is no specific jurisdiction because Ensequence has not made, used, imported, sold or offered to sell any accused product in Texas.

To demonstrate specific jurisdiction, Blue Spike must show that Ensequence "purposefully directed its activities at the residents of the forum" and that "the claim arises out of or relates to those activities." *Burger King*, 471 U.S. at 477. Blue Spike alleges in a conclusory manner that Ensequence has "committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas" (Dkt. No. 1, ¶ 7), but Blue Spike alleges no facts to support this inaccurate allegation.

Nor are there any facts that *could* support the exercise of specific jurisdiction over Ensequence here. Ensequence has not made, used, imported, sold or offered to sell in Texas any Ensequence product that uses Zeitera's automatic content recognition software or fingerprint technology, which is the product and technology on which Blue Spike bases the claims in this suit. (Khader Decl. ¶ 14.) While Ensequence has entered into an Evaluation License with Zeitera that allows Ensequence to internally test and evaluate, for noncommercial purposes, Zeitera's automatic content recognition software, it has not sold any goods or services using the allegedly infringing software, and it is not currently developing or offering such goods or services in Texas or anywhere else. (*Id*. ¶¶ 15, 18.) Similarly, the presentations made to a few customers, which included some information about an iTV Manager product that could incorporate Zeitera's automatic content recognition technology, cannot provide a basis for personal jurisdiction because these presentations were not made in Texas. (*See id.* ¶ 17.)

Additionally, the August 2011 press release cannot serve as a basis for the exercise of personal jurisdiction by this Court. An isolated press release in a nationally distributed publication or forum such as the Internet is not a continuous and systematic presence in a forum

for general jurisdiction purposes. *See Grober*, 686 F.3d at 1346 (holding that isolated advertisement in nationally distributed trade publication based in forum state did not amount to a continuous and systematic presence); *see also Ductcap Prods., Inc. v. J&S Fabrication, Inc.*, Civil No. 09-1179 ADM/FLN, 2009 WL 3242022, at * 4 (D. Minn. Oct. 2, 2009) ("Courts have consistently held that advertising in a national trade journal is insufficient to confer personal jurisdiction"). Nor can it serve as the basis for specific personal jurisdiction because it is not an offer to sell as defined under the case law, as it does not contain any definite terms. *See QR Spex, Inc. v Motorola, Inc.*, 507 F. Supp. 2d 650, 660 (E.D. Tex. 2007) (holding that "under Texas law an offer must be definite and must be more than a mere invitation for an offer from another" and that "a website that allows a viewer to place a pre-order is not an offer to sell").

Thus, this Court does not have specific jurisdiction over Ensequence. *See*, *e.g.*, *Grober*, 686 F.3d at 1346-47 (affirming that district court could not exercise personal jurisdiction over defendant where plaintiff failed to produce evidence that defendant's accused product was ever shipped to forum state); *Acceleron*, 634 F. Supp. 2d at 769-70 (dismissing complaint for lack of personal jurisdiction where defendant had "never made, used, imported, sold, or offered any of the accused products in Texas"); *Advanced Biological Labs. v. Ameripath, Inc.*, No. 2:07CV31, 2008 WL 1757819, at *2 (E.D. Tex. Apr. 14, 2008) (granting motion to dismiss for lack of personal jurisdiction where plaintiff failed to present any evidence of defendant's contacts with Texas).

### B. Venue Is Improper.

As this Court does not have personal jurisdiction over Ensequence in Texas, venue in this District also must be improper. *See*, *e.g.*, *Garnet Digital, LLC*, 2012 WL 4465260, at *1

(dismissing case against one defendant for improper venue because court did not have personal jurisdiction over defendant in that district).  Also, as discussed above, Ensequence does not have a regular and established place of business anywhere in Texas, let alone this District, and Ensequence has not made, used, imported, sold or offered to sell in Texas any Ensequence product that uses Zeitera's automatic content recognition systems using fingerprint.

## V. CONCLUSION

For the reasons set forth above, Ensequence respectfully requests that this Court grant its motion to dismiss for lack of personal jurisdiction and improper venue.

Dated: October 22, 2012                    Respectfully submitted,

*/s/ Douglas L. Sawyer*
Douglas L. Sawyer (State Bar No. 41009)
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202-5255
Telephone:  (303) 291-2378
Facsimile:  (303) 291- 2478
Email:  DSawyer@perkinscoie.com

Scott D. Eads (State Bar No. 910400)
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  (503) 727-2000
Facsimile:  (503) 727-2222
Email:  SEads@perkinscoie.com

**ATTORNEYS FOR DEFENDANT ENSEQUENCE, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 28, 2013 (re-filed from October 22, 2012 per Court's consolidated order).

*/s/ Douglas L. Sawyer*
Douglas L. Sawyer