# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS

## TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-499 MHS |
| Plaintiff, | LEAD CASE |
| v. | |
| TEXAS INSTRUMENTS, INC., *et al.* | |
| Defendant. | |

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:13-CV-84-MHS |
| Plaintiff, | CONSOLIDATED CASE |
| v. | |
| TYGART TECHNOLOGIES, INC., | |
| Defendant. | |

### DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF WEST VIRGINIA

Defendant Tygart Technologies, Inc. (hereinafter referred to as "Tygart") respectfully requests that this Court dismiss Plaintiff Blue Spike, LLC's (hereinafter referred to as "Blue Spike") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, transfer this action to the United States District Court for the Northern District of West Virginia.

**I.     INTRODUCTION**

On January 22, 2013, Blue Spike filed a four count patent infringement case against Tygart. Despite Blue Spike's assertion that jurisdiction and venue are proper in the United States District Court of the Eastern District of Texas, Tygart is a Fairmont, West Virginia based company that conducts no business in the State of Texas. *See* Exhibit A at ¶ 6. Hence, Tygart does not have sufficient minimum contacts in the Eastern District of Texas that would allow this Court to exercise personal jurisdiction over it.

**II.    FACTUAL ALLEGATIONS AND THE PARTIES**

   **A.    BLUE SPIKE'S COMPLAINT**

Blue Spike claims that Tygart infringed four patents by "…importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271." (Doc. 1 at ¶¶ 34, 42, 50, and 58). Despite these allegations, Blue Spike alleges no specific facts in support of its venue claim as to Tygart, but rather relies on the conclusory assertion that venue is proper because "(1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be haled [*sic*] into court here." *Id.* at ¶ 5. Blue Spike's conclusory allegations regarding Tygart's contacts with Texas are wrong.

### B. TYGART CONDUCTS NO BUSINESS IN THE STATE OF TEXAS.

As set forth in the Affidavit of Douglas Kirby, Tygart does not have the necessary minimum contacts to allow this Court to exercise jurisdiction over it. Specifically:

- Tygart is a West Virginia corporation headquartered in Fairmont, West Virginia;

- Tygart's only office is located in Fairmont, West Virginia;

- Tygart's management, research, and development facilities are located in Fairmont, West Virginia;

- The research, design, and development of Tygart products took place in Fairmont, West Virginia;

- Tygart has no investors, board members, shareholders, officers, employees, or agents in the State of Texas;

- Tygart is not incorporated or licensed to do business in Texas;

- Tygart does not file tax returns in Texas;

- Tygart has no designated agent for service of process in Texas;

- Tygart is not registered as a foreign corporation authorized to conduct business in Texas;

- Tygart has not used the Texas court system as a litigant other than being named a defendant in the above matter;

- Tygart does not conduct daily or periodic business with Texas companies;

- Tygart does not generate any revenue from the sale of its products or consulting services with Texas residents;

- Tygart does not maintain any offices in the State of Texas;

- Tygart does not keep any bank accounts in the State of Texas;

- Tygart does not own any land or property in the State of Texas;

3

- Tygart does not target the State of Texas for advertising;

- Tygart has never obtained credit from a creditor in Texas;

- Tygart has no distribution, manufacturing, or support operations in the State of Texas;

- Tygart does not avail itself of the rights and liabilities of the laws of the State of Texas;

- Other than through its non-passive website, www.tygart.com, which is available throughout the world, but through which sales to consumers cannot be consummated, Tygart does not advertise in Texas;

- Tygart has never entered into any contracts governed by Texas law;

- Tygart does not store any corporate or business records in Texas; and,

- Tygart has not knowingly sold any of its products to a customer in Texas.

*See* Exhibit A ¶¶ 7-29.

## III. LEGAL ARGUMENT

### A. THIS COURT SHOULD DISMISS BLUE SPIKE'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER TYGART.

#### 1. Legal Standard

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of showing that the defendant is subject to personal jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Acceleron, LLC v. Egenera, Inc.*, 634 F.Supp.2d 758, 768 (E.D. Tex. 2009). Where the evidence demonstrates beyond dispute that the requiste jurisdictional contacts do not exist, courts routinely grant the defendant's Motion to Dismiss based on lack of personal jurisdiction. *See Princeton Digital Image Corp. v. Facebook, Inc.*, No. 2:11-CV-400, 2012 WL 3647182, at *2 (E. D. Tex. Aug. 23, 2012)(granting motion to dismiss for lack of personal jurisdiction because the evidence was uncontroverted that defendant did not have any contacts with the state of Texas); *see also Advanced Biological Labs v.*

4

*Ameripath, Inc.*, No. 2:07CV31, 2008 WL 1757819, at *2 (E.D. Tex. Apr. 14, 2008)(granting motion to dismiss for lack of personal jurisdiction where plaintiff failed to present any evidence of defendant's contacts with Texas). In the present matter, this Court should not exercise personal jurisdiction over Tygart because (1) Tygart does not have the necessary "continuous and systematic" contacts in Texas to support general jurisdiction; and (2) there is no specific jurisdiction with respect to the conduct Blue Spike alleges against Tygart.

In patent litigation, Federal Circuit law controls personal jurisdiction because the issue is "intimately involved in the substantive enforcement of the patent."[1] *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007) (citing *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996)). "A federal court may exercise personal jurisdiction over a foreign defendant only if (1) the long arm statute creates personal jurisdiction over the foreign defendant, and (2) the exercise of personal jurisdiction over that defendant is consistent with the due process guarantees of the United States Constitution." *Keranos, LLC v. Analog Devices, Inc.* 2011 WL 4027427, at *8 (E.D. Tex. Sept. 12, 2011) (citing *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F3d 1364, 1368-69 (Fed. Cir. 2010)). The Texas long arm statute extends to the full extent permitted by the Due Process Clause. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).

"Minimum contacts" can be established through contacts sufficient to support the exercise of either general or specific jurisdiction. *Viam Corp.*, 84 F.3d 428. General jurisdiction occurs when "a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum…" *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). General jurisdiction exists only when the

---

[1] The Federal Circuit's personal jurisdiction jurisprudence does not differ in any meaningful way from that of the Fifth Circuit for purposes of this Motion. *See, e.g., Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214-17 (5th Cir. 2000).

defendant's contacts with the state constitute "continuous and systematic" general contacts. *Id.* at 416. "Random, fortuitous or attenuated contacts are not sufficient to establish general jurisdiction." *Keranos*, 2011 WL 4027427, at *9 (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998)).

Specific jurisdiction, in contrast, exists where the litigation arises out of or relates to the defendant's contacts with the forum. *Id.* Specific jurisdiction exists when the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n. 8. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

As a matter of both general and specific jurisdiction, "the constitutional touchstone [is] whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "[T]hose who live or operate primarily outside a state have a due process right not to be subjected to judgment in its courts as a general matter." *McIntyre Machinery, Ltd. v. Nicastro*, ____ U.S. ____, 131 S. Ct. 2780, 2787 (2011) (plurality).

2. <u>This Court does not have general jurisdiction over Tygart.</u>

To establish that Tygart is subject to the general jurisdiction of this Court, there needs to be evidence of "continuous and systematic" contacts in the state. "The 'continuous and systematic' contacts between a foreign defendant and the forum state required to justify general jurisdiction presents a 'difficult' standard for the resident plaintiff to meet." *Diebold Election Sys., Inc. v. AI Tech, Inc.*, 562 F. Supp. 2d 866, 876 (E.D. Tex. 2008) (citations omitted). "[T]o

6

establish general jurisdiction, the [defendant's] continuous and systematic activities must be substantial enough 'in toto' to justify asserting jurisdiction over a defendant unrelated to those activities." *Langton v. Cbeyond Comm'n, LLC*, 282 F. Supp. 2d. 504, 509 (E.D. Tex. 2003)(citations omitted).

Tygart does not have the "continuous and systematic" Texas contacts necessary to make it "essentially at home" in Texas. *Id.* at 2851; *see also* Exhibit A, Affidavit of Douglas Kirby. An examination of the sworn to facts from Tygart, coupled with the absence of facts set forth by Blue Spike, it is clear that Tygart does not have the systematic and continuous conduct to establish personal jurisdiction. Specifically:

- Tygart is a West Virginia corporation headquartered in Fairmont, West Virginia;

- Tygart's only office is located in Fairmont, West Virginia;

- Tygart's management, research, and development facilities are located in Fairmont, West Virginia;

- The research, design, and development of Tygart products took place in Fairmont, West Virginia;

- Tygart has no investors, board members, shareholders, officers, employees, or agents in the State of Texas;

- Tygart is not incorporated or licensed in Texas;

- Tygart does not file tax returns in Texas;

- Tygart has no designated agent for service of process in Texas;

- Tygart is not registered as a foreign corporation authorized to conduct business in Texas;

- Tygart has not used the Texas court system as a litigant other than being named a defendant in the above matter;

- Tygart does not conduct daily or periodic business with Texas companies;

7

- Tygart does not generate any revenue from the sale of its products or consulting services with Texas residents;

- Tygart does not maintain any offices in the State of Texas;

- Tygart does not keep any bank accounts in the State of Texas;

- Tygart does not own any land or property in the State of Texas;

- Tygart does not target the State of Texas for advertising;

- Tygart has never obtained credit from a creditor in Texas;

- Tygart has no distribution, manufacturing, or support operations in the State of Texas;

- Tygart does not avail itself of the rights and liabilities of the laws of the State of Texas;

- Other than through its non-passive website, www.tygart.com, which is available throughout the world, but through which sales to consumers cannot be consummated, Tygart does not advertise in Texas;

- Tygart has never entered into any contracts governed by Texas law;

- Tygart does not store any corporate or business records in Texas;

- Tygart has not knowingly sold any of its products to a customer in Texas; and,

- Most of Tygart's customers are from West Virginia or Virginia.

*See* Exhibit A, Affidavit of Douglas Kirby at ¶¶ 8-29.

As Blue Spike admits in its Complaint, Tygart is a West Virginia corporation with its principal place of business in Fairmont, West Virginia. (Doc. 1 at ¶ 3). Thus, there are no facts demonstrating that Tygart has the necessary, systematic and continuous contacts required to subject it to this Court's general jurisdiction.

### 3. This Court Does Not Have Specific Jurisdiction Over Tygart.

This Court does not have specific jurisdiction over Tygart because Tygart did not have any contacts in Texas related to the sale of any alleged infringing product. Blue Spike has not asserted any facts demonstrating by what means Tygart's actions exposed itself to this Court's specific jurisdiction.

There are three elements necessary to establish specific jurisdiction. First, the cause of action must "arise [ ] out of the defendant's contacts with the forum." *Helicopteros* at 414 n. 8 (1984). Second, the defendant must have "purposefully established 'minimum contacts' with the forum." *Burger King* at 474 (1985). Lastly, the exercise of personal jurisdiction must be reasonable, and must not offend "traditional notions of fair play and substantial justice." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Blue Spike's Complaint alleges that specific jurisdiction exists with this Court because Tygart "…has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas." (Doc. 1 at ¶ 5).[2] Blue Spike, however, has not alleged any act, conduct, or actual infringement by Tygart in Texas. There are no allegations that Tygart caused an infringing product to enter the stream of commerce that made its way into to the Texas market place. Unless Tygart purposefully placed an infringed product deliberately into Texas, thus showing purposeful contact, specific jurisdiction does not exist. *See Sorkin v. Dayton Superior Corp.*, 2006 WL 2141255, at *4 (S.D. Tex. 2006) ("The record shows that [defendant] does not sell the accused product directly to Texas or indirectly through an established distribution channel. The purposeful shipment through an established distribution channel evinces the required purposeful contact. It is lacking in this case").

---

[2] The remaining jurisdictional averments in paragraph 5 apply to general jurisdiction.

As Tygart's affidavit makes clear, Tygart does not have any established network in Texas and does not sell products to companies or individuals in Texas. Tygart has no authority or control over any customer of Tygart and where that customer brings Tygart's products after they are purchased. In sum, Tygart has no contacts with Texas justifying specific personal jurisdiction.

### B. ALTERNATIVELY, THE CLAIMS AGAINST TYGART SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF WEST VIRGINIA.

If the Court declines to dismiss Blue Spike's Complaint for lack of personal jurisdiction, it should transfer this matter to the Northern District of West Virginia.

#### 1. Legal Standard

A district court may transfer any civil case "for the convenience of parties and witnesses, in the interest of justice…to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The underlying premise of section 1404(a) is that courts should prevent plaintiffs from abusing their privileges under section 1391 by subjecting defendants to venues that are inconvenient under the terms of section 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008)(*Volkswagen II*). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen of America, Inc.*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once the threshold inquiry is met, which it is in this case, the Court must balance the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Section 1404(a) imposes a "less demanding" standard than that for a *forum non conveniens* standard – requiring only that the moving party show "good cause" for transferring

the action." *Id.* at 315. The "good cause" standard is satisfied by a showing that the transfer is "for the convenience of the parties" and "in the interest of justice," as represented by the "private interest" and "public interest" factors. *Id.*; *see also* 28 U.S.C. 1404(a).

The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II* at 315. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

    2.    <u>Private interest factors strongly favor transferring this case to the Northern District of West Virginia.</u>

        a.    *Relative ease of access to sources of proof*

The issue in this case is Tygart's infringement or non-infringement of Blue's Spike's patent. The claim focuses on Tygart's conduct, conduct which took place in West Virginia. The bulk of the documentary evidence concerning the allegedly infringing product is located at Tygart's only facility in Fairmont, West Virginia. *See* Exhibit A at ¶¶ 7-8; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location"). The first private interest factor weighs in favor of transfer when evidence can be more readily accessed from the transferee district. *Internet Machines LLC v. Alienware Corp.*, 2011 WL 2292961, at *5 (E.D. Tex. June 7, 2011). Given the easier access to documents and other evidence in Fairmont,

West Virginia if this case is heard in the Northern District of West Virginia, this factor weighs strongly in favor of transfer.[3] *See Volkswagen II*, 545 F.3d at 316 (recognizing that this is a "meaningful factor" in the 1404 analysis); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district). Douglas Kirby, CEO of Tygart states in his affidavit that all paperwork, electronically stored information and witness would only be located in its only location – West Virginia. *See* Exhibit A at ¶¶ 31-32.

### b. *Availability of compulsory process*

This factor favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses, i.e., it has the power to compel attendance at both depositions and trial. *In re Hoffman–La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Tygart has no assurances that non-party witnesses associated with customers of Tygart will be willing witnesses in this matter, making the availability of compulsory process a significant concern. Many of Tygart's customers are in West Virginia or Virginia. *See* Exhibit A at ¶ 30. These customers will likely be witnesses with regards to the products they purchased from Tygart. If the matter is heard in the Eastern District of Texas, this Court will lack the appropriate authority to compel those witnesses to appear at trial because they will have to travel more than 100 miles and from another state. *See* FED. R. CIV. P. 45(c)(3)(A)(ii).

### c. *Cost of attendance for willing witnesses*

Again, the bulk of the witnesses in this case will be located in West Virginia and other Northeast states, and the Fifth Circuit's 100 mile rule therefore strongly suggests that transfer is appropriate. *Volkswagen I*, 371 F.3d at 204-05 ("When the distance between an existing venue

---

[3] The Northern District of West Virginia maintains a division in Clarksburg, West Virginia. Fairmont, West Virginia is approximately 23 miles from the federal courthouse in Clarksburg.

for trial of a matter and a proposed venue under section 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). "The Court must consider the convenience of both the party and non-party witnesses." *Vargas v. Seamar Divers Int'l, LLC,* 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I,* 371 F.3 d at 204 (requiring courts to "contemplate consideration of the parties and witnesses")). Fairmont, West Virginia is approximately 1,100 miles from Tyler, Texas, ruling out day trips for witnesses and resulting in costly air travel, lodging and other expenses. *Id.* at 205 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from regular employment"). Tygart is not aware of any witnesses located in Texas who would have any meaningful insight into the patent infringement issue involved in this litigation. If the matter is transferred to the Northern District of West Virginia, witnesses in Fairmont can travel to Clarksburg in less than 30 minutes. It is plainly more convenient for witnesses if this matter proceeds in the Northern District of West Virginia.

### 3. The public interest factors favor transfer.

The first public interest factor is the administrative difficulties flowing from court congestion. *Volkswagen I,* 371 F.3d at 203. This issue is relevant to this particular District. A recent article from Reuters identified the United States District Court of the Eastern District of Texas as the top venue for patent lawsuits. *See* Exhibit B. The article states that last year, 1,260 patent cases were filed in the Eastern District of Texas, up from 418 the year before. In addition, according to the Federal Judicial Center, the Eastern District of Texas had a total of 2,967 cases filed in 2010 and 3,378 cases filed in 2011. *See* Exhibit C. By contrast, during the same time

period, the Northern District of West Virginia had 585 cases filed in 2010 and 611 cases filed in 2011. *Id.* Such a congested docket in the Eastern District of Texas supports the transfer of this case to the less congested docket of the Northern District of West Virginia. Furthermore, the Federal Judicial Center statistics for the Northern District of West Virginia show that the median time from filing to disposition of cases for the twelve month span from September 30, 2011 to September 30, 2012 was 8.3 months. *See* Exhibit D. By contrast, for the same twelve month span, the median time from filing to disposition of cases in the Eastern District of Texas was 10.1 months. *See* Exhibit E. Thus, transfer to the Northern District of West Virginia would not only lighten docket congestion, Blue Spike's claims are likely to be adjudicated sooner in the Northern District of West Virginia.

Local interests are largely irrelevant, insofar, as the focus of Blue Spike's claims are federal patent rights. To the extent this factor favors either venue, it favors West Virginia because of the location of witnesses and the alleged infringement. The Eastern District of Texas lacks any apparent connection to the underlying facts at issue. *See Volkswagen II*, 545 F.3d at 317-18 (recognizing the transferee court's lack of any "relevant factual connection" to the matter). Familiarity with the governing law and conflicts of laws problems are not relevant as this dispute will be governed by federal law. As such, the public interest factors weigh in favor of transferring this matter to the Northern District of West Virginia.

**IV.   CONCLUSION**

This Court should dismiss Blue Spike's claims for lack of personal jurisdiction because Tygart is not subject to either general or specific jurisdiction in Texas.  In the alternative, this Court should transfer this case to the Northern District of West Virginia due to the interests of convenience and justice under 28 U.S.C. § 1404(a) and binding precedent from the Fifth Circuit Court of Appeals.

                                              Respectfully submitted,

By:   /s/ Douglas R. McSwane, Jr.
        Potter Minton, P.C.
        110 N. College Ave.
        Suite 500
        Tyler, TX 75702
        (903) 597-8311
        (903) 593-0846 – facsimile
        dougmcswane@potterminton.com

        Michael G. Connelly
        Admitted *pro hac vice*
        Spilman, Thomas & Battle, PLLC
        One Oxford Centre
        301 Grant St.
        Suite 3440
        Pittsburgh, PA 15219
        (412) 325-3317
        (412) 325-3324 – facsimile
        mconnelly@spilmanlaw.com

        Counsel for Defendant,
Dated: April 3, 2013        Tygart Technology, Inc.

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's Cm/ECF system per Local Rule CV-5(a)(3) on April 3, 2013.

                          Respectfully submitted,

                          By:    /s/ Douglas R. McSwane, Jr.