IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SPIKE, LLC** | § | **CIVIL ACTION NO. 6:12-CV-499 MHS** |
| | § | |
| Plaintiff | § | **LEAD CASE** |
| | § | |
| v. | § | |
| | § | |
| **TEXAS INSTRUMENTS, INC., et al.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| **BLUE SPIKE, LLC** | § | |
| | § | **CIVIL ACTION NO. 6:13-CV-86 MHS** |
| Plaintiff | § | |
| | § | **CONSOLIDATED CASE** |
| v. | § | |
| | § | |
| **KRONOS INCORPORATED,** | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT KRONOS INCORPORATED'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Defendant Kronos, Incorporated ("Kronos"), whose relevant business operations are in the District of Massachusetts, respectfully moves the Court pursuant to 28 U.S.C. § 1404(a) for an order transferring the patent infringement action to the District of Massachusetts.

## I.     INTRODUCTION

This case is yet another example of forum shopping the Federal Circuit has repeatedly held must not be permitted.  Plaintiff Blue Spike LLC ("Plaintiff" or "Blue Spike") was formed as a Texas Corporation on May 14, 2012.  That is Plaintiff's only connection to the Eastern District of Texas ("EDTX").  Indeed, Plaintiff conducts no commercial business in EDTX; its only activities appear to be those of the classic non-practicing entity having planted itself in Texas to establish venue using its successively filed cases as anchors to pull in corporations scattered throughout the United States.  This suit belongs in Massachusetts, where it would be both more convenient for Kronos, more convenient for third party witnesses, and just as convenient for Plaintiff who has an office in Boston.  *See* Declaration of Daniel Johnson, Jr. in Support of Kronos' Motion to Transfer ("Johnson Decl."), Ex. 3.  Massachusetts (and nearby New Hampshire) is the location of several current and former employees of Jabil, Inc. ("Jabil"), a third party manufacturer of the Accused Products since 2008.  Declaration of Dan Skiba ("Skiba Decl."), ¶ 5.  Since virtually all of the witnesses with relevant information for both parties and non-parties, and the relevant documents are located outside of Texas, there is no valid basis for maintaining this action in this District.

Transfer is warranted in this case under § 1404(a) and applicable Fifth Circuit and Federal Circuit precedent for the following reasons:  (1) the material defense witnesses are located in the District of Massachusetts, (2) third party witnesses are located in or near Massachusetts; (3) Plaintiff has an office in the District of Massachusetts, and (4) all evidence relating to the Accused Products is located in the District of Massachusetts or in districts other

than EDTX. Moreover, the public interest factors for determining whether to transfer a case from the district either weigh in favor of transfer to the District of Massachusetts, or are neutral.

## II.     THE GRAVITY OF THIS SUIT IS IN THE DISTRICT OF MASSACHUSETTS

On August 9, 2012, less than three months after incorporating in Texas,[1] Plaintiff filed a complaint against Texas Instruments, Inc. for patent infringement, initiating the first in a series of lawsuits alleging infringement of four U.S. patents by making, using, importing, selling and/or offering to sell fingerprint-based biometric software, systems, and technology. *See* Complaint (Dkt. No. 1), *Blue Spike v. Texas Instruments, Inc.*, Case No. 6:12-cv-499 MHS (E.D. Tex. filed Aug. 9, 2012). On January 22, 2013 Plaintiff targeted Kronos, alleging infringement of the same four patents. Complaint ¶ 27. Plaintiff has alleged infringement of the following: 4500 Touch ID, 4510 Touch ID, and InTouch biometric time and attendance terminals (collectively, "Accused Products"). *Id*.

Kronos' counsel informed Plaintiff's counsel in California that it believed venue was not proper in EDTX and that, unless Plaintiff agreed, Kronos would file a motion to transfer the matter to the District of Massachusetts requesting that the Court transfer the case out of EDTX to the proper venue – the District of Massachusetts. Johnson Decl., ¶ 2. Plaintiff did not agree, and accordingly Kronos filed this Motion.

### A.     Kronos Has Only A Minimal Connection To The Eastern District Of Texas

Examination of facts about Kronos shows that Kronos has no real connection to EDTX.

First, Kronos is a Massachusetts corporation, headquartered in Chelmsford, Massachusetts. Skiba Decl., ¶ 3. Its corporate offices, engineering, and product development departments are all located in Massachusetts. *Id*.

---

[1] The Articles of Organization and Texas Secretary of State website information are attached as Exs. 1 and 2, respectively, to the Johnson Decl.

Second, the vast majority of Kronos' business occurs outside of the state of Texas. Kronos sells its biometric terminals and ships the Accused Products worldwide.  *Id*. at ¶ 5.  To the extent that any of the Accused Products are shipped to Texas, these sales account for only a miniscule portion (less than 0.004%) of Kronos' total revenues.  *Id*.

Third, no source of proof with respect to Kronos is located in EDTX.  *Id*. at ¶¶ 4, 7.  No likely fact witnesses reside in EDTX or elsewhere in Texas.  *Id*. at ¶ 4.  A tiny fraction of Kronos employees reside in EDTX (15 out of 3,520), all of whom are "remote" employees working out of their home offices, with no specific responsibilities related to the Accused Products.  *Id*. at ¶ 9. None of these employees has any involvement in or first-hand knowledge of any matters relevant to this litigation.  *Id*.  Kronos has no employees, contractors or other third party relationships with anyone in EDTX, or within Texas, who has relevant knowledge of the Accused Products. *Id*. at ¶ 4.  Indeed, none of the equipment, documents, or electronically stored information relevant to the claims and defenses in this lawsuit is located in EDTX (or any other District in Texas).  *Id*. at ¶ 8.  Nor does Kronos have any business offices at all within EDTX.  *Id*. at ¶ 4.

Fourth, all foreseeable Kronos witnesses with information about the Accused Products and the claims and defenses in this lawsuit reside in the District of Massachusetts, rather than in EDTX, or any other Texas District.  *Id*. at ¶¶ 9-12.  Kronos employs all its personnel who are relevant to this action at its Chelmsford, Massachusetts offices.  *Id*. at ¶ 3.  Dan Skiba (Director of Engineering, Hardware), and one other current Kronos employee with substantial knowledge about the design and development of the Accused Products, are located in Chelmsford, Massachusetts.  *Id*. at ¶ 10.  Neither of these two employees nor any other current or former Kronos employee has any specific knowledge of the proprietary biometric technology licensed by Kronos from its third party supplier.  *Id*.  Additionally, there are several Kronos employees

who are responsible for Vendor Management and Logistics who have relevant knowledge regarding the assembly and shipping of Accused Products. *Id*. at ¶ 11. These Kronos employees work at Kronos' offices in Chelmsford, Massachusetts and reside in or near Massachusetts. *Id*. Finally, there are two Kronos employees (a Product Marketing Manager and a Product Manager, respectively) who have knowledge regarding marketing of the Accused Products and work at Kronos' offices in Chelmsford, Massachusetts, who also both reside in or near Massachusetts. *Id*. at ¶ 12. The distance from Chelmsford, Massachusetts to the District Court in Boston, Massachusetts is 23 miles while the distance from Chelmsford to Tyler, Texas is 1486 miles.[2] The contrast of the cost and convenience to witnesses between holding trial in Boston versus Tyler is enormous; trial in Tyler would demand from the vast majority of party and non-party witnesses in this case thousands of dollars each and up to several days of their time.[3]

Fifth, all of Kronos' documents relating to the Accused Products are located in Massachusetts. *Id*. at ¶ 6. Specifically, Kronos' documents relating to the research, design, development, operation, manufacturing, marketing, advertising and sales of the Accused Products, including electronically stored information are all located in Massachusetts. *Id*. Also, Kronos maintains all of its corporate documents in Chelmsford, Massachusetts. *Id*. at ¶ 3. Furthermore, the servers, technical infrastructure and manufacturing facilities associated with the

---

[2] Distances calculated using http://www.infoplease.com/atlas/calculate-distance.html.
[3] As a practical matter, any Kronos or Jabil New England-based witnesses forced to travel to trial in Tyler, Texas would require airfare, auto travel (cab fares or rental car fees), and accommodations totaling thousands of dollars for each witness. For example, flights from Boston's Logan Airport to Dallas/Fort Worth departing on Monday and arriving on Friday are priced starting at $900. *See* Johnson Decl., Exs. 6-7. Fees for a standard sized rental car reserved for a week are over $450. *See* Johnson Decl., Ex. 8. Cab fares total $500 round trip. *See* Johnson Decl., Ex. 9. Accommodations in Tyler average $500 for a four-night week of accommodations. *See* Johnson Decl., Exs. 10-12. Simple addition of these costs reveals that one witness forced to travel to Tyler, Texas from Boston, Massachusetts for a week will incur travel fees of approximately $1900. It goes without saying that this lies in stark contrast to the cost of travelling the 23 miles from Chelmsford to trial in Boston. Moreover, the time required to travel from Boston to Tyler is at least six hours, including four hours of air travel and two hours of driving time. Johnson Decl., ¶ 8.

Accused Products are located either in Massachusetts or outside the United States in Mexico. *Id*. at ¶ 5.

Sixth, the original conception and design of the biometric terminals all took place or were managed in Massachusetts. *Id*. From 2003 to 2008, all manufacture of terminals was done by Kronos in Massachusetts. *Id*. In 2008, Kronos outsourced the manufacturing of its terminals to Jabil, Inc. ("Jabil"). *Id*. Jabil performed the manufacture of the Accused Products in Massachusetts until 2009, when Jabil moved its operations to Mexico. *Id*. Jabil manufactured the Accused Products in accordance with the same design specifications and by utilizing the same third party components that Kronos had utilized. *Id*. The Jabil representatives who have been involved in any decisions or management of the design or manufacture of terminals are located in either Massachusetts, New Hampshire, or Mexico. *Id*. Jabil has no offices in EDTX (or any other District in Texas), except for a single repair facility having nothing to do with the Accused Products. *Id*. Jabil has four employees who may have relevant knowledge of the assembly and shipment of the Accused Products. *Id*. at ¶ 13. These Jabil employees currently work and reside in Chiuapas, Mexico and have the following positions: Business Unit Coordinator, MasterPlanner, Purchasing Coordinator and Buyer NGT. *Id*. There are other current or former Jabil employees who currently reside in or near Massachusetts and have knowledge of the manufacture of the Accused Products. *Id*.

Seventh, sourcing of components related to the Accused Products is managed in Massachusetts. *Id*. at ¶ 8. Kronos originally obtained the biometric technology, including the signal matching and algorithms, as "off the shelf" components from a third party supplier. *Id*. This supplier was not based in, nor performed such work in, EDTX (or any other District in

Texas). *Id*. None of the potential witnesses of this third party supplier, nor any of its documents relevant to this patent litigation are located in EDTX (or any other District in Texas). *Id*.

### B. Plaintiff Blue Spike Has an Office in Boston, Massachusetts

If would be just as convenient for Plaintiff to attend trial if it were held in Boston Massachusetts than if it were held in Tyler, Texas, because Plaintiff has an office in Boston. *See* Johnson Decl., Ex. 3. Plaintiff's own website states this fact. *Id*.

### C. The Named Inventors Reside Outside Of the Eastern District of Texas

The Patents-in-Suit identify a total of two inventors, Scott A. Moskowitz and Michael W. Berry. Complaint, Exs. A-D. Scott Moskowitz resides in Sunny Isles Beach, Florida, and Michael Berry resides in Seattle, Washington. Complaint, Ex. A. Plaintiff and Assignee Blue Spike, LLC has a total of three U.S. offices: one each in Tyler, Texas; Sunny Isles, Florida; and Boston, Massachusetts. *See* Johnson Decl., Ex. 3. The distance from Seattle, Washington to Boston, Massachusetts and Tyler, Texas is 2492 and 2400 miles, respectively.[4] Thus, it is just as convenient for Mr. Berry to travel to trial in Boston as in Tyler.

On the other hand, while the distance from Sunny Isles Beach, Florida to Boston, Massachusetts (1243 miles) is slightly farther than the distance from Sunny Isles Beach to Tyler, Texas (1017 miles), this fact is basically inconsequential because Mr. Moskowitz's company – Plaintiff Blue Spike – has an office in Boston.[5] Therefore, it would not be any less convenient for Mr. Moskowitz to attend trial in Boston than in Tyler.

### III. CONVENIENCE, RELEVANCE, AND FAIRNESS DICTATE THAT THIS SUIT BE TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[4] Distances calculated using http://www.infoplease.com/atlas/calculate-distance.html.
[5] *Id*.

where it might have been brought." A motion to transfer venue should be granted upon a showing that the transferee venue "is clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The Federal Circuit has routinely held that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009). These Federal Circuit cases provide guidance here.

In *TS Tech*, transfer was ordered because there was "no relevant connection between the actions giving rise to th[e] case and the Eastern District of Texas except that certain vehicles containing TS Tech's headrest assembly have been sold in the venue." 551 F.3d at 1321. The "vast majority of identified witnesses, evidence, and events leading to this case involve[d]" either Ohio (the proposed transferee forum) or Michigan. *Id.* Similarly, in *Genentech*, transfer was ordered even though it would inconvenience the plaintiff because "a substantial number of material witnesses reside within the transferee venue [the Northern District of California] and the state of California, and no witnesses reside within the Eastern District of Texas. . . ." 566 F.3d at 1345.

Likewise, in *Nintendo*, transfer was ordered for want of connection to EDTX. 589 F.3d at 1196. The Federal Circuit found the District Court erred (i) when it only gave minimal weight to the fact that witnesses would have to travel an additional 700 miles to attend trial in Texas versus the proposed transferee venue and (ii) in deeming EDTX to be a centralized location for access to sources of proof. *Id.* at 1198-1200. Also, in *Hoffmann-La Roche*, transfer was ordered

because there was "no connection between this case and the Eastern District of Texas except that in anticipation of this litigation, [the plaintiff's] counsel in California converted into electronic format 75,000 pages of documents demonstrating conception and reduction to practice and transferred them to the offices of its litigation counsel in Texas." 587 F.3d at 1336-37. The Federal Circuit disapproved of the plaintiff's tactic of manipulating venue by moving documents to Texas in anticipation of litigation. *See id.* at 1337 ("[T]he assertion that these documents are 'Texas' documents is a fiction which appears to have been created to manipulate the propriety of venue.").

As in these other cases, there is a stark difference here in convenience, relevance, and fairness between the two venues: (1) there is no link to EDTX, (2) the majority of witnesses and documents related to the Accused Products are in the District of Massachusetts, (3) Plaintiff has an office in Boston, Massachusetts, and (4) no other convenience factors favor the venue chosen by Plaintiff. Therefore, this case should be transferred to the District of Massachusetts.

### A. Suit Could Have Been Brought In The District of Massachusetts

The threshold inquiry of whether venue is proper in the District of Massachusetts is satisfied here. Under Section 1400(b), venue is proper in any "judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For purposes of venue, a corporation is deemed to "reside" in any judicial district in which it is subject to personal jurisdiction when the action is commenced. 28 U.S.C. § 1391(c).

Kronos has sufficient contacts with the District of Massachusetts such that it would be subject to personal jurisdiction in that District. Kronos is a Massachusetts corporation and is headquartered in Chelmsford, Massachusetts. Skiba Decl., ¶ 3. All foreseeable Kronos witnesses with information about the Accused Products and the claims and defenses in this

DB2/ 23952204.2

8

lawsuit reside in the District of Massachusetts. *Id*. at ¶¶ 9-12. All of Kronos' documents relating to the research design, development, operation, manufacturing, marketing, advertising, and sales of the Accused Products, including electronically stored information are located in Massachusetts. *Id*. at ¶ 6. Moreover, Plaintiff has an office in Boston, Massachusetts. *See* Johnson Decl., Ex. 3. Therefore, there is no dispute that venue is proper in the District of Massachusetts.

### B. The Private Interest Factors Weigh In Favor Of Transfer

The private interest factors strongly support transferring this action to the District of Massachusetts. The relevant factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen*, 545 F.3d at 315.

#### 1. Relative ease of access to sources of proof

The location of evidence is meaningful to the convenience analysis, and advances in copying technology and electronic discovery do not render this factor superfluous. *See Volkswagen*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345.

Here, the relative ease of access to sources of proof favors transfer to the District of Massachusetts because most, if not all, of the physical and documentary evidence that will be relevant to the Accused Products resides with Kronos in Chelmsford, Massachusetts, within the District of Massachusetts. *See Genentech*, 566 F.3d at 1345 (recognizing most evidence comes from the accused infringer). Kronos maintains all its corporate documents in Massachusetts and it is a Massachusetts corporation with its headquarters in Chelmsford, Massachusetts. Skiba

Decl., ¶ 3. All of Kronos' documents relating to the research, design, development, operation manufacture, marketing, advertising, and sales of the Accused Products are in Chelmsford, Massachusetts. *Id*. at ¶ 6. The servers, technical infrastructure, and manufacturing facilities associated with the Accused Products are located either in Massachusetts or outside the United States in Mexico. *Id*. at ¶ 5. All foreseeable Kronos witnesses with information about the Accused Products and the claims and defenses in this case are in the District of Massachusetts. *Id*. at ¶¶ 9-12. Many third party Jabil witnesses are in or near Massachusetts. *Id*. at ¶¶ 5, 13.

Other sources of proof related to the Accused Products in the possession of Kronos or third parties are also not located in EDTX. Kronos has no witnesses, equipment, documents or electronically stored information relevant to the claims and defenses in EDTX; no sources of proof with respect to Kronos is located in this District. *Id*. at ¶¶ 4, 7. The third party supplier who provided Kronos with the biometric technology was not based in, nor performed such work in, EDTX (or any other District in Texas). *Id*. at ¶ 8. None of the potential witnesses of this third party supplier, nor any of its documents relevant to this patent litigation, are located in EDTX (or any other District in Texas). *Id*. Furthermore, third party manufacturer Jabil has no offices in EDTX (or any other District in Texas), except for a single repair facility having nothing to do with the Accused Products. Also, Jabil has no representatives involved in any decisions or management of the design or manufacture of terminals located in EDTX. *Id*. at ¶ 5.

The Court should not consider Plaintiff's recent relocation to Tyler and the resulting argument that Plaintiff has documents located in Tyler in its venue analysis. *See In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam). "[W]eight given to the location of [plaintiff's] documents is determined by whether [plaintiff] is an 'ephemeral' entity". *NovelPoint Learning LLC v. Leapfrog Enters., Inc.*, No. 6:10-cv-229 JDL, 2010 U.S. Dist.

LEXIS 128906, at *13 (E.D. Tex. Dec. 6, 2010). Circumstances where this Court has found that a plaintiff is not an "ephemeral" entity involve the plaintiff residing in Texas several years prior to filing suit. *See Adaptix, Inc. v. HTC Corp.*, No. 6:12-cv-121, 2013 U.S. Dist. LEXIS 44265, at *9-10 (E.D. Tex. Mar. 28, 2013). Here, Plaintiff has been domiciled in Sunny Isles, Florida for over fifteen years and only moved to Texas a few months before filing the first suit. *See* Johnson Decl., Exs. 1-3. Plaintiff's recent relocation raises the suspicion that it is such an "ephemeral" entity. In fact, not only should the Court not consider Plaintiff's evidence as sources of proof in EDTX, but it should consider the likelihood that at least some of Plaintiff's evidence is likely located in the District of Massachusetts at Plaintiff's Boston office.

There are "several specific categories of documents that [are] available in" the District of Massachusetts. *See Adaptix*, 2013 U.S. Dist. LEXIS 44265, at *13. In contrast, there is no evidence located in the EDTX. Therefore, this factor weighs strongly in favor of transfer to the District of Massachusetts.

### 2. The availability of compulsory process to secure the attendance of witnesses

A venue that has absolute subpoena power is more favorable than a venue without it. *See Volkswagen*, 545 F.3d at 316. Here, there are no known third party witnesses or defense witnesses subject to the Court's subpoena power in EDTX or within 100 miles of where trial will be held. *See* Fed. R. Civ. P. 45(b)(2). The District of Massachusetts, however, is home to all of the key employees and relevant documents that are the basis for any testimony regarding the Accused Products. Skiba Decl., ¶¶ 7, 10. Moreover, third party Jabil witnesses who have been involved in decisions or management of the design or manufacture of terminals are located in Massachusetts, New Hampshire, or out of the United States in Mexico. *Id.* at ¶ 5. Thus, transfer is strongly favored because the District of Massachusetts can compel (i) all current Kronos

witnesses; (ii) any former Kronos witnesses still residing in Massachusetts; (iii) all Massachusetts-based current and former Jabil employees; and (iv) New Hampshire-based Jabil employees within 100 miles of Boston, to attend *both* depositions and trial, while EDTX cannot.

### 3. The cost of attendance for willing witnesses

In *Nintendo*, the Federal Circuit emphasized that "[t]he convenience and cost of attendance for witnesses is an important factor in the transfer calculus." 589 F.3d at 1198; *see also Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG (E.D. Tex. Jan. 14, 2013) (order granting motion to transfer, at 5). While Courts consider the cost and convenience of both party and non-party witnesses; however, "it is the convenience of non-party witnesses, rather than party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis." *Novelpoint*, 2010 U.S. Dist. LEXIS 128906, at *20 (*quoting Remmers v. U.S.*, No. 1:09-cv-345, 2009 U.S. Dist. LEXIS 100847, at *5 (E.D. Tex. Oct. 28, 2009); *see also Adaptix*, 2013 U.S. Dist. LEXIS 44265, at *20 (transfer ordered because several west coast-based non-party witnesses would find the Northern District of California a more convenient forum in contrast to only seven non-party witnesses who would find EDTX more convenient).

This factor weighs in favor of transfer because the vast majority of foreseeable witnesses are located in the District of Massachusetts. All foreseeable Kronos witnesses are located in Massachusetts, including both Kronos employees with knowledge about the design and development of the Accused Products, the several Kronos employees responsible for Vendor Management and Logistics who have relevant knowledge regarding the assembly and shipping of the Accused Products, and Kronos' Product Marketing Manager and Product Manager. Skiba Decl., ¶¶ 9-12. Furthermore, several Jabil third party witnesses are located in Massachusetts, including current and former Jabil employees, and Jabil representatives who have been involved in decisions or management of the design or manufacture of terminals. *Id*. at ¶¶ 5, 13. Other

Jabil employees are located out of the country in Mexico, and traveling internationally will be equally expensive for them whether they travel to Massachusetts or to Texas. *Id.* at ¶ 13. Additionally, there are at least some Plaintiff employees who work at Plaintiff's Boston office who are located in the District of Massachusetts. *See* Johnson Decl., Ex. 3. By contrast, no witnesses reside in EDTX. *Id.* at ¶¶ 4-5, 7-8.

The Fifth Circuit's "100 mile" rule applies because Chelmsford, Massachusetts is located approximately 1486 miles away from Tyler, Texas. Under this tenet, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317. Application of the "100 mile" rule illustrates that the Kronos witnesses located in Massachusetts, the third party Jabil witnesses located in Massachusetts and New Hampshire, and any Plaintiff witnesses from Plaintiff's Boston office would experience great inconvenience in having to travel the 1486 miles to Tyler for trial. Taking into account all parties and non-parties, and applying the level of importance placed on this factor, the District of Massachusetts is clearly a more convenient forum.

### 4. Other practical problems that make trial of a case easy, expeditious, and inexpensive

This case is in its infancy: there has been no discovery or scheduling order. As such, no practical problems exist that should deter transfer to the District of Massachusetts. The case has recently been consolidated into one with over 100 other defendants. Certainly Plaintiff will argue, as it already has, that "interests of judicial efficiency and economy weigh strongly against transfer" and will "impose unjustified burdens on the federal court system" and "caus[e] gross inefficiencies and wasting scarce judicial resources." *See* Brief for Plaintiff at 3-4 (Dkt. No. 12), *Blue Spike, LLC v. L-1 Identity Solutions, Inc. and MorphoTrust USA, Inc.*, No. 6:12-cv-00680-

MHS (E.D. Tex. Dec. 28, 2012) (opposition to motion to transfer). However, in one of 100 cases having in excess of 400 defendants, this Court has stated that it will not allow plaintiffs to manipulate venue by serially filing cases within a single district. *Geotag*, No. 2:10-cv-00570-JRG, at 10. Like in *Geotag*, "[a]lthough all of the cases [filed by Plaintiff] involve infringement claims, none of them share the same accused services." *Id*. Moreover, no other defendants make 4500 Touch ID, 4510 Touch ID, and InTouch biometric time and attendance terminals. The consolidated case is devoid of common issues and the only issues Plaintiff can identify common to all defendants are those issues common in all patent infringement cases, like claim construction. This Court has stated that these type of "common issues" cannot constitute those that result in judicial efficiency. *Id*. This is not a situation where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute. The Court should give no weight to the need to avoid transferring the case; this factor is neutral.

### C. The Public Factors Weigh In Favor Of Transfer

#### 1. The local interest in having localized interests decided at home

Traditionally, the location of the alleged injury is an important consideration. *TS Tech*, 551 F.3d at 1321. However, when the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id*. As in *TS Tech*, here there is "no relevant connection between the actions giving rise to this case and the Eastern District of Texas." *Id*.

The District of Massachusetts, on the other hand, has a far greater localized connection to this case, because local interest "arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community." *Adaptix*, 2013 U.S. Dist. LEXIS 44265, at *25 (internal citation omitted). The vast majority of likely witnesses, evidence, and events leading to this case involves the District of Massachusetts. Kronos has no

business office in EDTX; no likely witnesses reside in EDTX; and no evidence is in EDTX. Because this case has no meaningful connection to EDTX, whereas the District of Massachusetts does have a localized interest in deciding this case, this factor favors transfer.

### 2. The administrative difficulties flowing from court congestion

The patent docket in EDTX is crowded indeed, compared to the District of Massachusetts. As of March 26, 2013, there were 1361 open patent cases in EDTX. *See* Johnson Decl., Ex. 4. This number lies in stark contrast to the modest District of Massachusetts docket, which has 115 open patent cases. *See* Johnson Decl., Ex. 5. These numbers show that if either District at issue in this Motion is "congested," it is EDTX, which has over ten times the amount of open patent cases as the District of Massachusetts.

### 3. Other public factors are neutral

This case will be governed by the Patent Laws of the United States. EDTX and the District of Massachusetts both are familiar with the patent laws. Also, this case poses no conflicts of law issues and implicates no foreign law. The last two public factors are neutral.

## IV. ALL NON-NEUTRAL FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER

The District of Massachusetts clearly is a more convenient venue than EDTX: (i) the sources of proof related to Kronos and its Accused Products are in the District of Massachusetts; (ii) there are several third party witnesses, with their related sources of proof, located in Massachusetts or nearby New Hampshire; (iii) no likely fact witnesses reside in or near EDTX; (iv) Plaintiff has an office in Boston; (v) it is inconvenient and expensive for the parties' witnesses to travel to Tyler; and (vi) there are no sources of proof in EDTX; and the public factors are either neutral or weigh in favor of transfer. Therefore, Defendant Kronos respectfully requests that this Court grant the requested transfer.

Dated: April 3, 2013

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


*/s/ Daniel Johnson, Jr.*

C. Erik Hawes (TX Bar No. 24042543)
Email: ehawes@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

Daniel Johnson, Jr. (Admitted *Pro Hac Vice*)
Email: djjohnson@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

**Attorneys for Defendant Kronos Incorporated**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's Case Management/Electronic Case Filing and/or electronic mail on April 3, 2013.

*/s/ Daniel Johnson, Jr.*
Daniel Johnson, Jr.

## CERTIFICATE OF CONFERENCE

This motion is opposed.  Pursuant to Local Rule CV-7(h), I, Daniel Johnson, Jr., counsel for Kronos Incorporated, contacted Plaintiff's counsel by telephone on March 29, 2013, requesting consent to transfer this action to the District of Massachusetts.  Plaintiff's counsel did not agree to the transfer.

*/s/ Daniel Johnson, Jr.*
Daniel Johnson, Jr.
