UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **Blue Spike, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-499** |
| | § | |
| **Texas Instruments, Inc.** | § | |
| | § | |
| **Defendant** | § | |

----------------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **Blue Spike, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 6:12-cv-00598** |
| **Soundmouse, Ltd.** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT SOUNDMOUSE, LTD.'S**
**MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER**

Defendant Soundmouse Ltd. ("Soundmouse") files its *Motion to Dismiss* the Complaint

filed against it herein, for lack of personal jurisdiction, or, in the alternative, *Motion to Transfer*

this case to a more appropriate venue.   Soundmouse would respectfully show the Court as

follows:

I.      **INTRODUCTION**

Soundmouse is a company with its principal place of business in the United Kingdom.

*See* Declaration of Charles Hodgkinson, attached hereto as Exhibit 1, at ¶ 2 (the "Hodgkinson

Declaration").   Soundmouse provides a service which allows the user to broadcast signals to

Soundmouse via servers for audio recognition and analysis.   On or about September 4, 2012,

plaintiff Blue Spike LLC ("Plaintiff") filed a patent infringement lawsuit against Soundmouse in the Eastern District of Texas, Tyler division.  Plaintiff's Complaint fails to provide a single specific reason why this Court should have jurisdiction over Soundmouse or why venue is appropriate in this case.

Soundmouse now seeks dismissal of the Complaint against it on the grounds that the Court cannot assert personal jurisdiction over Soundmouse.  In the alternative, Soundmouse seeks transfer of this case to the Southern District of New York, which is a more appropriate venue given the potential witnesses and the location of the documents for this case.

Other than carrying out a system test in Houston, Texas (which did not result in the sale of any equipment or services or any fee for Soundmouse, and did not occur in this district's territory), Soundmouse does not have any contacts whatsoever with Texas or this Court's district related to this case.[1]  *See* Hodgkinson Declaration, ¶¶ 3-4.  Except as disclosed herein, Soundmouse does not and has never done any other business whatsoever in Texas or this judicial district.  *See* Hodgkinson Declaration, ¶ 4.  Soundmouse does not own or operate any offices, property, bank accounts or assets in Texas or in this judicial district.  *See* Hodgkinson Declaration, ¶ 5.  Soundmouse has no employees, officers or directors in Texas or in this judicial district.  *See* Hodgkinson Declaration, ¶ 6.  Soundmouse has not attended any conferences or trade shows located in Texas or in this judicial district.  *See* Hodgkinson Declaration, ¶ 7.  Soundmouse has not entered into any contracts, agreements or licenses with any customers located in Texas or this judicial district.  *See* Hodgkinson Declaration, ¶ 8.  Soundmouse has not sold any products to any customers in Texas, and has not licensed any products to any customers in Texas or this judicial district.  *See* Hodgkinson Declaration, ¶¶ 4 and 8.  Except for the very

---

[1] The system test is described in greater detail below.

limited times disclosed herein, Soundmouse has not mailed any materials to any potential customers located in Texas or this judicial district, and has never sought out any customers in Texas or this judicial district.  *See* Hodgkinson Declaration, ¶ 9.

Accordingly, Soundmouse does not have sufficient contacts with Texas or this judicial district, and certainly has not availed itself of any business opportunities in Texas or this judicial district by which it should anticipate being haled into court in Texas or this judicial district.  Due process protects Soundmouse's right to be subject only to lawful authority.  Soundmouse has not engaged in activities that reveal any intent to invoke or benefit from the protection of the laws of Texas.  Accordingly, jurisdiction over Soundmouse is improper, and the suit against Soundmouse should be dismissed.

In the alternative, Soundmouse seeks transfer of this case to the Southern District of New York.  Soundmouse has only two customers in the United States for the accused product and services.  *See* Hodgkinson Declaration, ¶ 15.  Both of these customers are headquartered in New York City.  Id.  Thus, the relevant documents and witnesses in the United States are believed to be located in New York City.  Id.  These witnesses will be able to testify regarding the alleged infringement and damages.  Id.  All documents to support this testimony are believed to be located in New York City.  Id.

All relevant documents and witnesses from Soundmouse are located in the United Kingdom.  *See* Hodgkinson Declaration, ¶ 16.  These witnesses have knowledge of the design, development, operation, and sales of the accused products and services.  Id.  Furthermore, it will be significantly more convenient for these United Kingdom witnesses to travel to New York City as opposed to having to travel to Tyler, Texas.  Plaintiff has clearly chosen a venue without any relationship to the facts of this case and meant to inconvenience Soundmouse and the potential witnesses.

Additionally, Soundmouse is not aware of a single witness or relevant document located in this Court's district or Texas in general.  Plaintiff incorporated in Texas on May 14, 2012, a mere few months prior to filing its first of many complaints against a litany of unrelated defendants.  *See* Exhibit 2.  The asserted patents indicate that Plaintiff was until recently located in Sunny Isles Beach, Florida and the co-inventor Scott A. Moskowitz lived in Florida.  Plaintiff has clearly set up shop in this Court's district to manufacture venue.   Given this, Plaintiff's choice of forum should be given little weight, if any.  Additionally, for these same reasons, the public interests also support transfer because this Court and the people living in this Court's district should have little interest in this controversy.  The Court should not reward parties who manufacture venue for purely litigation purposes.  Plaintiff has no interest in setting up an actual business in this Court's district.  Plaintiff merely wants its numerous litigations adjudicated by the Court.

Finally, the mere fact that Plaintiff has numerous cases pending against numerous defendants does not support keeping this case before the Court.  As explained by the Court in Droplets, Inc. v. Amazon, Inc., 2012 WL 3578605, at *8 (E.D. Tex. June 27, 2012), "[b]ecause the cases involve different products … and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial." There will be no efficiency benefits as a result of keeping this case here in Tyler.

For the reasons stated herein, Soundmouse respectfully requests that the Court dismiss or transfer this case.

## II.   <u>LEGAL AUTHORITY</u>.

In patent infringement cases, a district court must apply Federal Circuit law in determining whether personal jurisdiction may be exercised over a non-resident defendant. *See* <u>LSI Indus. v. Hubbell Lighting, Inc.</u>, 232 F.3d 1369, 1371 (Fed. Cir. 2000); <u>Nuance Communications, Inc. v. Abbyy Software House</u>, 626 F.3d 1222, 1230 (Fed. Cir. 2010); <u>Acceleron, LLC v. Egenera, Inc.</u>, 634 F. Supp. 2d 758, 768 (E.D. Tex. 2009).  "[T]he burden of proof is on the plaintiff to establish 'minimum contacts.' " <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1360 (Fed. Cir. 2001); *see also* <u>Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico</u>, 563 F.3d 1285, 1294 (Fed. Cir. 2009); <u>Autogenomic, Inc. v. Oxford Gene Tech, Ltd.</u>, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

Under Federal Circuit precedent, personal jurisdiction over an out-of-state defendant involves two inquiries:  (1) whether a forum state's long-arm statute permits service of process; and (2) whether the assertion of personal jurisdiction would violate due process.  *See* <u>LSI Indus.</u>, 232 F.3d at 1371; <u>Autogenomic</u>, 566 F.3d at 1017; <u>Amana Refrigeration, Inc. v. Quadlux, Inc.</u>, 172 F.3d 852, 857 (Fed. Cir. 1999).  The Texas long-arm statute authorizes the exercise of jurisdiction "as far as the federal constitutional requirements of due process will allow." <u>Am. Type Culture Collection, Inc. v. Coleman</u>, 83 S.W.3d 801, 806 (Tex. 2002); TEX. CIV. PRAC. & REM. CODE ANN. §17.042.  Thus, the Court's analysis should be the federal due-process inquiry.  *See* <u>Johnston v. Multidata Sys. Int'l Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008).

Due process requires that in order to subject a defendant to personal jurisdiction in a forum state, the defendant must have certain "minimum contacts with it such that the maintenance of the suit does not 'offend traditional notions of fair play and substantial justice.' " <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (*quoting* <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)).  To establish minimum contacts, a nonresident defendant's contacts must

5

demonstrate that it "purposefully avails [it]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). A defendant must "reasonably anticipate being haled into court." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Contacts solely as a result of random, fortuitous, or attenuated activities are not sufficient. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

"Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction." LSI Indus., 232 F.3d at 1375. "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state.' " LSI Indus., 232 F.3d at 1375. For specific jurisdiction, the Federal Circuit applies a three prong test: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether the assertion of personal jurisdiction is reasonable and fair. Genetic Implant Sys. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997).

With respect to the *Motion to Transfer*, 28 U.S.C. § 1404(a) states: "[f]or the convenience of parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district court or division where the case might have been brought."   This Court has broad discretion in deciding whether to transfer a case.  In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008). The Court must consider whether transfer is appropriate on an "individualized, case-by-case consideration of convenience and fairness." Droplets, Inc., 2012 WL 3578605, at *1, *citing* Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

This Court's first determination is whether the proposed transferee forum is one where the action might have been brought in the first instance.  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).  After such a determination, the court then balances various private and

public interest factors to determine whether the proposed transferee forum is "clearly more convenient" than the chosen forum. Droplets, 2012 WL 3578605, at *1, *citing* Volkswagen, 371 F.3d at 203. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interested decided at home; (3) the familiarity of the forum with the governing law; and (4) the avoidance of unnecessary problems with conflict of laws or the application of foreign law. Id.

The Court should not consider the plaintiff's choice of forum as a separate factor. Id., *citing* Volkswagen, 545 F.3d at 314-15. Instead, the plaintiff's choice of forum concerns the defendant's burden to prove that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue.  Id.   However, if the plaintiff's presence in the chosen venue appears to have been manufactured for litigation purposes (as is the case here), the plaintiff's choice of forum is disregarded. In re Microsoft Corp., 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (disregarding the plaintiff's choice of forum as a "recent, ephemeral, and construct for litigation [that] appeared to exist for no other purposes than to manipulate venue"); Pragmatus v. Facebook, Inc., 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (giving plaintiff's choice of forum "minimal weight" when plaintiff had a weak connection to the forum and incorporated in the forum shortly before the litigation).

## III.     **THE COURT SHOULD DISMISS THIS CASE.**

Plaintiff alleges that this Court has personal jurisdiction over Soundmouse for the following reasons (all of which are false):

(1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas;

(2) Defendant regularly does business or solicits business in the District and in Texas;

(3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and

(4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

*See* Complaint, ¶ 5.

Plaintiff's allegations to support this Court's personal jurisdiction over Soundmouse are merely unsupported generic allegations of personal jurisdiction. Plaintiff offers no evidence or concrete examples to support these allegations because these allegations are unfounded. Plaintiff makes no reference to a specific sale into Texas or this district by Soundmouse. Plaintiff provides no proof of patent infringement in Texas or this district, and provides no evidence that Soundmouse knew about Plaintiff's patent and induced others or contributed to an infringement in Texas or this district. Plaintiff cites no proof that Soundmouse derives "substantial revenue" from Texas or this district. Finally, Plaintiff does not allege a single specific contact between Soundmouse and this district.

Soundmouse's sole contact with the State of Texas is as follows: In July of 2010, Soundmouse sent a representative to Houston, Texas to place two servers, a switch, a firewall, and three external hard drives in a location provided by a third party. Hodgkinson Declaration, ¶ 3. This equipment was used by Soundmouse to test the potential of receiving the third party's broadcast feed data and processing the data feed for delivery to Soundmouse's facilities in the United Kingdom for recognition analysis to take place only in the United Kingdom. Id.

Soundmouse used a third party supplier in Dallas, Texas to purchase some cables and a cabinet to house the equipment for the testing.  Id.  In 2009, unrelated to the testing, Soundmouse purchased a license from a third party supplier in San Antonio for use of a generic software module which was only installed on servers located in the United Kingdom to receive files securely.  Id.  This software module was used by Soundmouse in the United Kingdom to generally receive data files for all projects, and, accordingly, was used by Soundmouse in the United Kingdom for the testing project.  Id.  Soundmouse never sold the tested equipment or services to this third party.  Id.  The servers, firewalls, and hard drives have been returned to Soundmouse in the United Kingdom and all testing has ceased.  Id.  Soundmouse did not enter into a contract for these tested services or equipment with this third party.  Id.  There were no payments by the third party for this testing.  Id.

Beyond these limited contacts, the following applies: Soundmouse has never sold or licensed any products in Texas, much less any allegedly infringing products.  Hodgkinson Declaration, ¶ 4.  Soundmouse has never done business or solicited business in Texas or this district.  Id.  Soundmouse has not sold products in Texas, shipped products to Texas, had past or present customers in Texas, entered into any contracts with a resident of Texas, or conducted any business or performed any service in Texas.  Id.  Indeed, Soundmouse has never had any contacts of any consequence with Texas.  In particular, Soundmouse has:

- Not solicited business or advertised in Texas;
- No offices, facilities, or employees in Texas;
- No property in Texas;
- No telephone listings or mailing addresses in Texas;
- Never been listed or licensed to do business in Texas;
- No designated agent for service of process in Texas;

- Never filed tax returns in Texas; and

- No bank accounts in Texas.

Hodgkinson Declaration, ¶¶ 4, 5, and 10.  Moreover, Soundmouse has not purposefully directed the allegedly infringing activities at residents of Texas.   The accused products are manufactured outside of the United States.   Hodgkinson Declaration, ¶ 11.   The accused services were done in the United Kingdom.  Hodgkinson Declaration, ¶ 12.  Soundmouse was unaware of the asserted patents until Plaintiff filed suit in the case.  Hodgkinson Declaration, ¶ 13.  Further, Soundmouse has never sold an accused product to anyone that has disclosed a Texas mailing address.  Hodgkinson Declaration, ¶ 14.

There is simply no sufficient connection between Soundmouse and this district.  Plaintiff has not offered this Court any specific reason why this Court should assert personal jurisdiction over a United Kingdom corporation that does not do any actual business in Texas or this district (other than one testing project that did not result in any business).   There is no "general jurisdiction" because Soundmouse has not engaged in actual business with Texas or this district, much less "continuous and systematic" contacts with Texas or this district.   LSI Indus., 232 F.3d at 1375.   Furthermore, there is absolutely no evidence to establish that Soundmouse "purposefully directed activities at residents of the forum," that Soundmouse has engaged in any of the alleged activities in Texas or this district, or that the assertion of personal jurisdiction is reasonable and fair in this case.  Genetic Implant Sys., 123 F.3d at 1458.

Plaintiff clearly has sued everyone that it can think of in this district without even considering or investigating whether personal jurisdiction is proper in this district.  In this case, the issue is not even close.  Soundmouse has an attenuated and limited relationship with the State of Texas or this district, and this case should therefore be dismissed.  For the reasons stated

herein, Soundmouse respectfully requests that the Court dismiss this case for lack of personal jurisdiction.

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE CASE.

### A.    This Case Could Have Been Brought in the Southern District of New York.

Plaintiff could have brought this action against Soundmouse in the Southern District of New York because a "substantial part of the events or omissions giving rise to the claim occurred" in New York City. *See* 28 U.S.C. § 1391(b). Soundmouse provided the alleged services to two customers in New York City. Hodgkinson Declaration, ¶ 15. Thus, the threshold consideration is met.

### B.    The Private Interest Factors Support Transfer.

#### 1.    Ease of Access to Sources of Proof.

Despite the ability to transfer documents by electronic means, this Court has continually found that the location of the sources of proof "continues to be an important private interest factor." Wireless Recognition Techs., Inc. v. A9.com, Inc., 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012); *see also* Droplets, Inc. v. E*Trade Financial Corp., 2012 WL 3133398, at *2 (E.D. Tex. Mar. 5, 2012). In most patent cases, the most relevant evidence comes from the defendant. WRT, 2012 WL 506669, at *3; Droplets, 2012 WL 3133398, at *2; In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases … the place where the defendant's documents are kept weighs in favor of transfer to that location"). For that reason, in patent cases, the preferred forum is the "center of gravity of the accused activity." Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (*citing* Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 482 n.17 (D.N.Y. 1993)).

Soundmouse has two customers in the United States for the accused products and services.  Hodgkinson Declaration, ¶ 15.  Both customers are headquartered in New York City.  Id.  All witnesses for the customers with knowledge of the accused products are believed to be located in New York City.  Id.  All Soundmouse witnesses related to the design, development, operation and sales of the accused products a n d  s e r v i c e s  live or work in the United Kingdom, which is significantly closer and more convenient to New York than Tyler, Texas.  Hodgkinson Declaration, ¶ 16.

It is believed that Plaintiff will have two witnesses, the co-inventors.  Neither party is believed to be located in Tyler, Texas.  Regardless of their location, the co-inventors will not have knowledge regarding the central issues of alleged infringement and damages against Soundmouse and are merely two witnesses versus a litany of witnesses from Soundmouse and its two customers.  This factor therefore supports transfer of this case to the Southern District of New York.  See Eon Corp. IP Holdings, LLC v. Sensus, USA, Inc., 2012 WL 122562, at *4 (E.D. Tex. Jan. 9, 2012) (transferring case because most of the relevant evidence was located there); Voxpath RS, LLC v. LG Elecs. U.S.A., Inc., 2012 WL 194370, at *5 (E.D. Tex. Jan. 23, 2012) (transferring case because "all documents relating to infringement" were there, and plaintiff "only has a limited number of sources of proof in the Eastern District of Texas"); WRT, 2012 WL 506669, at *3; Droplets, 2012 WL 3133398, at *2; In re Genentech, Inc., 566 F.3d at 1345.

### 2.    Plaintiff's "Home" Should Be Disregarded.

The Court should disregard Plaintiff's recent "move" to this Court's district in its analysis.  In re Microsoft Corp., 630 F.3d at 1364-65; In re Zimmer Holdings, Inc., 609 F.3d 1378, 1381 (Fed. Cir. 2010).  Plaintiff incorporated in Texas on May 14, 2012 (less than three months before filing the lead case in this action).  See Exhibit 2.  It does not appear that Plaintiff

does any actual business in this Court's district other than "pursuing this litigation." <u>Optimum Power Solutions, LLC v. Apple, Inc.</u>, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011). Indeed, from 2000-2011, Plaintiff was located in Sunny Isles Beach, Florida.  Plaintiff is clearly attempting to manufacture a basis for venue here, and, for that reason, the Court should disregard this deception in its analysis. <u>In re Microsoft Corp.</u>, 630 F.3d at 1364-65; <u>In re Zimmer</u>, 609 F.3d at 1381. This factor, therefore, weighs in favor of transfer.

### 3. Availability of Compulsory Process

The availability of compulsory process to secure the attendance of non-party witnesses is the next private interest factor. <u>Voxpath</u>, 2012 WL 194370, at *5; <u>On Semiconductor Corp. v. Hynix Semiconductor, Inc.</u>, 2010 WL 3855520, at *8 (E.D. Tex. Sep. 30, 2010). As stated above, Soundmouse has two customers for the accused product and services in the United States and both are headquartered in New York City.  Hodgkinson Declaration, ¶ 15.

There are no known witnesses subject to the Court's subpoena power or within 100 miles of this Court. *See* FED. R. CIV. P. 45(b)(2).  All defense witnesses are located in New York City and the United Kingdom, which is significantly closer and more convenient to New York than Tyler, Texas.  Hodgkinson Declaration, ¶¶ 15-16.  This factor therefore weighs in favor of transfer.

### 4. Cost of Attendance for Willing Witnesses

The Court must consider all potential material and relevant witnesses. <u>On Semiconductor</u>, 2010 WL 3855520, at *5. <u>In re Genentech</u>, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit applies a 100-mile rule for the analysis of this factor.  <u>Volkswagen I</u>, 371 F.3d at 204-05. When the distance between an existing venue for trial and a proposed venue

under §1404(a) is more than 100 miles, the significance of inconvenience to witnesses increases in proportion to the additional distance to be traveled. Id. at 205. The 100- mile rule thus favors transfer when the proposed transferee venue is a shorter average distance from witnesses than the transferor venue. Fujitsu Ltd. v. Tellabs, Inc., 639 F. Supp. 2d 761, 766 (E.D. Tex. 2009), *citing* Volkswagen II, 545 F.3d at 317. Importantly, when there are no potential witnesses in forum state, it is improper to use the forum state to rebut factors favoring convenience elsewhere. Optimum Power, 794 F. Supp. 2d at 702, *citing* In re Genentech, 566 F.3d at 1344.

In this case, transferring the case to the Southern District of New York will make the venue convenient to the witnesses for Soundmouse (all of which are located in the United Kingdom) and Soundmouse's two customers in the United States (who are headquartered in New York City).  There appears to be only two witnesses for the Plaintiff (the co-inventors) and neither appear to live in the Eastern District of Texas.  Regardless, these witnesses will not have any knowledge of the alleged infringements or any potential damages.  This factor therefore weighs in favor of transfer. On Semiconductor, 2010 WL 3855520, at *5; Droplets, Inc., 2012 WL 3578605, at *5-6.

### 5.    Multiple Defendants Support Transfer.

This Court has considered the existence of multiple defendants in a single case as a consideration for whether or not to grant transfer.  Optimum Power, 794 F. Supp. 2d at 702. In this case, transfer is warranted because each defendant has different accused products. As this Court has observed, "[b]ecause the cases involve different products … and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial." Droplets, Inc., 2012 WL 3578605, at *8; *see also* J2 Global Communications, Inc. v. Protus IP Solutions, Inc., 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008) (the risk of overlap is limited when "a court has had limited involvement with the

14

case and the technology, no claim construction opinion has issued, and the cases involve different defendants with different products."); <u>WRT</u>, 2012 WL 506669, at *5 (transferred case despite the pendency of three related cases involving similar claims, and despite "the practical issues related to managing multiple actions involving overlapping issues."); <u>In re Zimmer</u>, 609 F.3d at 1381 (any perceived gains in judicial economy are minimal when "the cases involve different products").

Given this, the Court should transfer this case because there will not be any overall efficiency advantages to keeping all of the defendants in a single case because the accused products will be different for each defendant.

### C.     The Public Interest Factors Strongly Favor Transfer

Local interest in the litigation is a factor for the Court's analysis because "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." <u>Volkswagen I</u>, 371 F.3d at 206. Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sales of infringing products, are disregarded in favor of particularized local interests. <u>Volkswagen II</u>, 545 F.3d at 318.

In this case, New York has an interest in this case because the alleged infringements occurred in New York. By contrast, Plaintiff has at best only a recent and tangential connection to Texas. This factor therefore supports transfer. <u>Eon Corp.</u>, 2012 WL 122562, at *5 (holding that "whatever weight might be afforded Plaintiff's presence in the Eastern District [of Texas begun two years before filing of the lawsuit] is outweighed by the presence" of the defendants "where the decisions and events giving rise to this case likely were made or occurred.").

**V.     CONCLUSION.**

For the reasons stated herein, this Court should dismiss this case for lack of jurisdiction.  In the alternative, this Court should transfer this case to the Southern District of New York because it is a more appropriate venue.  A proposed order is attached with this motion.

DATED: April 12, 2013

Respectfully submitted,

/s/ Ryan T. Beard_____
Eric B. Meyertons
  Texas State Bar No. 14004400
  emeyertons@intprop.com
Ryan T. Beard
  Texas State Bar No. 24012264
  rbeard@intprop.com

MEYERTONS, HOOD, KIVLIN, KOWERT & GOETZEL, P.C.
1120 South Capital of Texas HWY
Building 2, Suite 300
Austin, Texas 78746
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

**ATTORNEYS FOR SOUNDMOUSE**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2013 I electronically filed the foregoing pleading with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

/s/ Ryan T. Beard_____
Ryan T. Beard
