# EXH. 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| **SECURE AXCESS LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:10-CV-670 |
| | § | |
| **BANK OF AMERICA CORP., et al.,** | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant ING Direct Bancorp's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (Docket No. 137). Secure Axcess LLC ("Secure") was granted jurisdictional discovery on the issue and permitted to submit a supplemental brief thereafter. *See* Docket No. 317. After considering the parties' submissions and for the reasons stated herein, the Court **GRANTS** the motion to dismiss.

**BACKGROUND**

Secure alleges that ING DIRECT Bancorp ("ING Direct") and ING Bank, FSB d/b/a ING DIRECT USA ("ING Bank") infringe U.S. Patent No. 7,631,191 ("the '191 Patent"), which relates to online banking. ING Direct characterizes itself as a holding company, and ING Bank is a wholly owned subsidiary of ING Direct. ING Bank answered Secure's complaint, admitting personal jurisdiction. Docket No. 135. ING Direct disputes whether it is subject to the jurisdiction of this Court. On January 30, 2012, the Court granted Secure leave to conduct jurisdictional discovery and submit a supplemental brief regarding whether this Court has jurisdiction over ING Direct.

## APPLICABLE LAW

*Personal Jurisdiction*

Because personal jurisdiction intimately relates to patent law, Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). In the absence of an evidentiary hearing regarding jurisdiction, a plaintiff only needs to make a prima facie showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). Further, courts "accept the uncontroverted allegations in [plaintiff's] complaint as true and resolve any factual conflicts in [plaintiff's] favor." *Id.* (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998).

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry. Due process requires that an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316.

Rule 12(b)(2) allows a court to dismiss a case where the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). The Federal Circuit's three-prong test to

determine whether the exercise of personal jurisdiction satisfies the requirements of due process considers whether: "(1) the defendant purposefully directed its activities to the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362–63 (Fed. Cir. 2006) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995)). The plaintiff bears the burden of proving the first two prongs, which correlate to the minimum contacts requirement. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). The defendant then bears the burden of showing that the exercise of jurisdiction is constitutionally unreasonable. *Id.*

*Alter Ego*

Determining whether a subsidiary is an alter ego of a parent corporation is not a question unique to patent law and is governed by regional circuit law. *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004). A subsidiary is presumed independent of its parent for jurisdictional purposes when determining whether the subsidiary's contacts should be imputed to the parent. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). This presumption may be overcome by clear evidence. *Id.* Several factors are relevant in determining whether a parent should be amenable to jurisdiction for the actions of its subsidiary: "(1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiaries property as its own; (11) the daily

3

operations of the two corporations are not kept separate." *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 208–09 (5th Cir. 1996). "Resolution of alter ego issues must be based on a consideration of 'the totality of the circumstances.'" *Id.* at 209 (quoting *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985)).

## ANALYSIS

Secure alleges that ING Direct is subject to this Court's jurisdiction because (1) ING Direct admits to providing banking and financial services; (2) ING Bank is an alter-ego of ING Direct; or (3) ING Direct induces infringement by ING Bank. Each of these arguments is to show that ING Direct has "purposefully directed its activities" to Texas residents.

### *ING Direct's Admissions*

Secure alleges in its complaint that ING Direct "does business in Texas," "offer[s] banking services to individuals in the United States including Texas," and "[i]n connection with these online banking services . . . make[s] and use[s] a system and method for authenticating a web page that infringes one or more claims of the '191 Patent." Docket No. 1 ¶¶ 30, 55. In response, ING Direct's Secretary, Paul Shay, submitted an affidavit stating: "ING Direct Bancorp does not offer any banking services to individuals, businesses or other entities in the United States, including in the State of Texas." Docket No. 137 Attach. 1 ¶ 5.

To further support its contention that ING Direct provides banking services, Secure provides three complaints filed by ING Direct and ING Bank in the District of Delaware alleging trademark infringement. *See* Docket No. 344 Attachs. 1–3. Secure asserts that ING Direct's representations in these complaints show that it provides banking services. The first complaint states that ING Direct and ING Bank will collectively be referred to as "ING DIRECT" throughout the complaint. The latter two state that, "[f]or purposes of this Complaint," they will "collectively and individually" be referred to as "ING DIRECT." Secure then highlights later

4

representations in the complaints to support its position that ING Direct provides banking services. *See, e.g.*, Docket No. 344 Attach. 1 ¶ 6 ("ING DIRECT has continuously been using the Orange Ball Mark as the primary and signature feature of its banking and financial services."); Docket No. 344 Attach. 3 ¶ 11 ("ING DIRECT has been providing direct online banking services in the United States for many years and has become the market leader and most recognized provider of direct banking services.").

Secure's interpretation of the trademark complaints takes them out of context. The complaints clearly set out that ING Bank is "an FDIC-insured federally chartered savings bank doing business as ING DIRECT," while ING Direct "is a Delaware corporation." *See, e.g.*, *id.* ¶¶ 4, 5. Then, as a shorthand, ING Direct and ING Bank refer to themselves individually or collectively as "ING DIRECT" throughout the remainder of the complaints. The complaints also establish that ING Direct owns the mark at issue and that ING Bank owns an exclusive license to *use* the mark. *See, e.g.*, *id.* Thus, the representations about the use of the mark to denote banking services are attributable to ING Bank, the exclusive licensee of the mark. When read in context, the trademark complaints do not show that ING Direct provides banking or financial services. The Court is not required to take statements made by Secure in its complaint as true if they are controverted by affidavit. *See Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280–82 (5th Cir. 1982) (finding that defendants uncontroverted affidavits overrode conclusory allegations in the complaint). Secure's conclusory allegations in the complaint that ING Direct offers banking services in Texas were controverted by Shay's affidavit. The trademark complaints are insufficient to counter this affidavit; thus, Secure has failed to establish that ING Direct admits to providing banking and financial services within the United States or Texas.

*Alter Ego*

Secure next argues that the Texas contacts of ING Bank—admittedly within the jurisdiction of Texas courts—should be imputed to ING Direct because ING Bank is an alter ego of ING Direct. Several facts relevant to the *Gundle Lining* factors are not in dispute. It is undisputed that ING Direct owns 100% of the stock of ING Bank and caused the incorporation of ING Bank. Further, it is undisputed that ING Direct and ING Bank share directors and officers. The entities have two common directors and eight common officers. ING Direct also provides financing for ING Bank. Facts pertaining to the following *Gundle Lining* factors are disputed.

*Common Business Departments*

Secures argues that the use of common officers between ING Direct and ING Bank necessarily creates common business departments, blurring the distinction between ING Direct and ING Bank. However, under the Administrative Services Agreement ("ASA") between ING Direct and ING Bank, ING Bank provides (1) accounting and financial reporting services and (2) corporate governance and recordkeeping services for ING Direct for a monthly fee. Additionally, the ASA requires ING Bank to maintain records of all such services rendered. Finally, by its terms, the ASA is an arm's length transaction that mirrors the terms of agreements "with or involving nonaffiliated companies." Docket No. 352 Attach. 1 ¶ 5.

*Filing of Consolidated Financial Statements and Tax Returns*

Secure asserts that ING Direct and ING Bank file consolidated financial statements and tax returns. However, ING Direct responds that ING Bank "also files its own separate financial statements." Docket No. 352, at 7 (citing Docket No. 352 Attach. 4).

6

*Parent Paying the Salaries and Other Expenses of the Subsidiary*

Secure argues that "ING Direct and ING Bank pay the salaries and expenses of the other." Docket No. 344, at 9. Secure contends that the salary of Mr. Kuhlmann—President and CEO of both ING Direct and ING Bank—is paid by ING Bank. Further, Secure argues that ING Direct has "paid for relocation expenses of ING Bank employees and discussed and approved such actions at its board meeting." *Id.*

ING Direct responds that Secure's statements are inaccurate. First, Ms. George testified that ING Direct has no employees; thus, ING Direct has no salaries to pay. Docket No. 344 Attach. 4, at 25:24–26:3 ("George Deposition"). Second, she explained that Kuhlmann was paid by ING Bank as an employee of ING Bank, not as a director of ING Direct. *Id.* at 26.

*Parent Using the Subsidiary's Property as Its Own*

Secure argues that ING Direct uses the property of ING Bank because the entities share a principal place of business. ING Direct responds that it has no employees and under the ASA, ING Bank provides basic administrative, financial, and legal services to ING Direct. Thus, according to ING Direct, it is unreasonable to require the ING Bank employees to move to an alternate location merely for providing the basic services it has agreed to provide to ING Direct pursuant to the ASA.

*Commingling of Daily Operations of the Parent and Subsidiary*

Secure argues that "ING Bank employees routinely perform duties for ING Direct without any demarcation of time spent working for each entity." Docket No. 344, at 10. Secure further contends that the annual board meetings of ING Direct are mere formalities, often occurring simultaneously with board meetings for ING Bank. Finally, Secure again raises the fact that ING Direct and ING Bank jointly filed suit in at least three instances alleging trademark infringement, as discussed earlier.

7

ING Direct responds that Secure's allegations about board meetings stem from minutes "that document [ING Direct's] meetings *separately* from [ING Bank's] meetings." Docket No. 352, at 9 (citing Docket No. 352 Attachs. 2, 3). ING Direct contends that the meetings often occurred at the same location and general time because of the overlap of directors; this arrangement was more convenient for directors required to travel long distances for the meetings.

*Totality of the Circumstances*

Considering all of the factors, the Court finds that Secure has failed to present clear evidence that ING Bank's jurisdictional contacts in Texas should be imputed to its parent, ING Direct. Common ownership, shared directors, and cross-company financing are typical characteristics of the parent–subsidiary relationship and do not necessitate an alter ego relationship. *See Hargrave*, 710 F.2d at 1160 (recognizing that 100% ownership and commonality of officers and directors does not establish an alter ego relationship). ING Direct has controverted almost all of the alter ego evidence Secure has proffered after conducting jurisdictional discovery. Secure's allegations of shared business departments and commingling are reasonably explained with the ASA, a *formal* agreement between ING Direct and ING Bank. The ASA affirms that ING Direct and ING Bank respected their corporate boundaries. This respect for corporate boundaries is also supported by other formal documentation such as board meeting minutes and resolutions by the ING Direct's board of directors authorizing financial transfers to ING Bank (as opposed to commingling financial accounts). *See* Docket No. 352 Attachs. 2, 3 (board meeting minutes); Docket No. 344 Attachs. 7–12 (board resolutions authorizing transfers to ING Bank).

While the Court must view the jurisdictional evidence in a light most favorable to plaintiff, this does not require the Court to view the evidence in the same light as plaintiff. Secure argues that ING Direct paid for relocation expenses of ING Bank employees; however,

8

the evidence shows that ING Direct authorized an executive relocation *loan*. *See* Docket No. 344 Attach. 13 (showing board's authorization of executive relocation loan in board meeting minutes). Secure also argued that ING Bank employees "routinely perform duties for ING Direct without any demarcation of time spent working for each entity," including the President and CEO. Docket No. 344, at 10 (citing George Deposition). Regarding "people who work for [ING Direct]," George testified that "they don't really work for [ING Direct]. They just hold titles there so everybody—everybody really works for [ING Bank]." George Deposition 52:25–53:7. She then testified that these "title-holders" perform duties for ING Direct. *Id.* However, this does not show the *routine* work without demarcation that Secure alleges. *See also* ASA, Docket No. 352 Attach. 1 (creating a formal agreement about shared work between ING Direct and ING Bank and requiring specific demarcation of time spent).

Considering all of the evidence in a light most favorable to Secure, the Court finds that ING Bank is not the alter ego of ING Direct. Rather, the companies have gone to great lengths to maintain their corporate boundaries through formal agreements, separate financial statements, and diligent recordkeeping. Texas law typically requires proof that the parent so controls the operations of the subsidiary as to practically eliminate the corporate distinction. *See Hargrave*, 710 F.2d at 1160 ("Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes."). There is no such proof here. Rather than controlling the affairs of ING Bank, ING Direct has actually contracted out some of its internal operations to ING Bank. Thus, the parent and subsidiary have respected their corporate boundaries, and this Court shall also. The jurisdictional contacts of ING Bank may not be imputed to ING Direct.

*Induced Infringement*

Secure finally argues that ING Direct failed to contravene facts relating to the allegations of induced infringement. The Complaint states that "Defendants have induced infringement . . . [by] providing online banking services websites that use, without authority, the patented systems and methods and requiring users of their web sites to use and instructing its users how to use the patented systems and methods." Docket No. 1 ¶ 62. The induced infringement allegations, on their face, relate to inducing *users* of the banking websites to infringe. Secure now argues that ING Bank infringes by hosting its website and that ING Direct induces this infringement by ING Bank; however, this is not what is stated in the complaint. ING Direct is not required to controvert a jurisdictional basis that was not pled in the complaint.

## CONCLUSION

Secure's three bases for establishing that ING Direct has purposefully directed its activities toward Texas residents are insufficient. Secure has failed to make a prima facie showing that ING Direct is subject to the jurisdiction of this Court. Accordingly, the Court **GRANTS** Defendant ING Direct Bancorp's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (Docket No. 137).

**So ORDERED and SIGNED this 30th day of March, 2012.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**