# EXH. 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REEDHYCALOG UK, LTD. and GRANT PRIDECO, INC. | § § § | |
| Plaintiffs | § § | |
| vs. | § § | CASE NO. 6:06 CV 222 PATENT CASE |
| | § | |
| BAKER HUGHES OILFIELD OPERATIONS INC., HALLIBURTON ENERGY SERVICES INC., and U.S. SYNTHETIC CORPORATION | § § § § § | |
| Defendants | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are ReedHycalog UK, Ltd. and Grant Prideco, Inc.'s (collectively, "ReedHycalog") Omnibus Motions in Limine (Docket No. 441) and Halliburton Energy Services Inc. and U.S. Synthetic Corporations's ("USS") (collectively, "Defendants") Motions in Limine (Docket No. 446). As stated at the hearing, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the parties' motions in limine. These rulings are preliminary and only effect whether the offering party must first approach the Court before it raises the subject matter in front of the jury. Two of the parties' motions require further discussion.

**REEDHYCALOG'S MOTION IN LIMINE IV**

ReedHycalog seeks to exclude any references, suggestion, testimony, elicitation of testimony, or introduction of evidence by Defendants with regard to opinions USS obtained from the law firm Holland & Hart with regard to the patents-in-suit ("Holland & Hart Opinions") under

Federal Rule of Evidence 403.[1]

ReedHycalog sued Defendants on May 12, 2006. USS did not receive the Holland & Hart Opinions until September 27, 2006 and March 28, 2007. ReedHycalog contends the Holland & Hart Opinions are irrelevant to the issue of Defendants' willful infringement and, if the Holland & Hart Opinions are relevant, the danger of unfair prejudice to ReedHycalog, confusion of the issues or misleading the jury greatly outweigh any marginal or insignificant probative value of these opinions.

To prevail on a charge of willful infringement, the patentee must show the accused infringer acted with objective recklessness. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). First, the patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions infringed a valid patent. *Id.* The accused infringer's state of mind is irrelevant to this objective inquiry. *Id.* If the patentee meets this threshold objective standard, the patentee must further demonstrate that the accused infringer knew or should have known of this objectively high risk. *Id.*

An accused infringer's pre-litigation and post-litigation conduct may support a willfulness finding. *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, — F. Supp. 2d —, 2008 WL 83443, at *15 (N.D. Ill. Mar. 27, 2008); *see also Seagate*, 497 F.3d at 1374. While post-ligitation conduct is a factor to consider among to the totality of the circumstances, evidence of post-litigation conduct cannot serve as the sole basis for a willful infringement finding. *See Seagate*, 497 F.3d at 1374; *Ball Aerosol*, 2008 WL 83443, at *15.

ReedHycalog cites a passage from *Seagate* where the en banc Court, discussing the scope of the waiver of attorney-client privilege that results from disclosure of an opinion of counsel, states opinions of counsel obtained after commencement of the litigation are of similar marginal value on

---

[1] Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

2

the issue of willfulness as communications between the alleged infringer and its trial counsel. 497 F.3d at 1374. The court also stated "[a]lthough the reasoning contained in those opinions ultimately may preclude [the accused infringer's] conduct from being considered reckless if infringement is found, reliance on the opinions after litigation was commenced will likely be of little significance." *Id.*

The Court **GRANTS** ReedHycalog's motion in limine. ReedHycalog will be prejudiced if the jury is made aware of the Holland & Hart Opinions. However, if ReedHycalog supports its willful infringement allegations with Defendants' post-filing conduct, the Court will likely allow the jury to be made aware of the Holland & Hart Opinions.

## DEFENDANTS' MOTION IN LIMINE NO. 2

Defendants seek to exclude any reference, testimony or evidence that relates to a September 29, 2006 license agreement between Smith International, Inc. ("Smith") and ReedHycalog ("Smith License") under Federal Rules of Evidence 402[2] and 403.

In 2005, USS and Baker Hughes filed declaratory judgment actions against ReedHycalog in the District of Utah and sought a declaration that twelve of ReedHycalog's patents, including the four asserted in this lawsuit, were invalid, unenforceable, and not infringed. The District of Utah Court dismissed both actions, and ReedHycalog sued Defendants in this Court on May 12, 2006. Smith and ReedHycalog began to discuss a potential license during the pendency of the Baker Hughes declaratory judgment action, and Smith entered into a license with ReedHycalog on September 29, 2006. The Smith License covers fifteen ReedHycalog patents, including the four asserted against Defendants in this lawsuit, and three ReedHycalog patent applications. ReedHycalog claims the Smith License is the only "arms-length" license it has entered into for the

---

[2] Federal Rule of Evidence 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

3

technology covered in the patents-in-suit.

Smith's Chief Patent Counsel, Wesley Noah, testified that Smith was aware of ReedHycalog's patent activity and decided to approach ReedHyaclog to discuss a potential license agreement. Noah also testified Smith was concerned that if it did not enter licensing negotiations with ReedHycalog, Smith would be involved in a patent infringement lawsuit. Noah also testified that Smith was aware of the ReedHyaclog litigation in Utah when licensing discussions began.

Defendants' damages expert, in his report, considers the Smith License as a data point in his reasonable royalty analysis. He concludes the Smith License, in addition to the other licencing agreements he reviewed, does not show an established royalty for the technology covered by ReedHycalog's patents.

Licenses negotiated to resolve litigation or threatened litigation are generally not relevant to determine a reasonable royalty, as those license fees may be "eroded by litigation" and reflect the desire to avoid litigation and not the commercial value of the patented technology. *Rude v. Westcott*, 130 U.S. 152, 164 (1888); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79 (Fed. Cir. 1983); *Spreadsheet Automation Corp. v. Microsoft Corp.*, No. 2:05-CV-127, 2007 WL 4386258, at *4–5 (E.D. Tex. Feb. 23, 2007) (Folsom, J.); *Acco Brands, Inc. v. ABA Locks Mfr. Ltd.*, No. 2:02-CV-112, Order (Docket No. 182) (E.D. Tex. May 12, 2004) (Ward, J.); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 860 F. Supp. 1448, 1451–53 (C.D. Cal. 1993). On the admissibility continuum, agreements to settle litigation on the validity and infringement of the licensed patents are inadmissible. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n.11 (6th Cir. 1978); *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651 (N.D. Ill. 1994); *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1133–34 (W.D. Mich. 1996); *Pioneer Hi-Bre Int'l, Inc. v. Ottawa Plant-Food, Inc.*, 219 F.R.D. 135, 144–45 (N.D. Iowa 2003); *Spreadsheet Automation*, 2008 WL 4386258, at *4–5. At the other extreme, licenses that result from arms-length

4

commercial negotiations are admissible to determine a reasonable royalty. *See Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp.1116, 1120 (S.D.N.Y. 1970).

The admissibility of licenses located between the extremes depends on the whether the threat of litigation or the litigation backdrop that surrounded negotiation of the license advanced sufficiently "to undermine the significance of the resulting license or the parties' discussions and effectively negate the reliability of any benchmarks established during those negotiations for the purposes of determining a reasonable royalty." *Cornell Research Foundation, Inc. v. Hewlett-Packard Co.*, Civ. Action No. 5:01-CV-1974, 2007 WL 4349135, at *17 (N.D.N.Y. Jan. 31, 2007) (denying patentee's motion to strike from summary judgment evidence license between patentee and third-party negotiated against backdrop of litigation); *see also Cornell Univ. v. Hewlett-Packard Co.*, Civ. Action No. 5:01-CV-1974, 2008 U.S. Dist. LEXIS 39343, at *8–11 (N.D.N.Y. May 14, 2008) (granting patentee's motion in limine to exclude license between patentee and third-party negotiated against backdrop of litigation and stating "[i]n the poker game of license negotiations, the nature of the exchange between the players, not the cards each is holding, sets the tenor of the game"); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557–58 (Fed. Cir. 1983)(affirming district court's decision to discount the probative value of license "negotiated against a backdrop of continuing litigation and [defendant's] infringement of the [licensed] patent" when the court determined a reasonable royalty); *Wang Labs.*, 860 F. Supp. at 1451–53 (excluding from summary judgment evidence licenses negotiated with threat of litigation); *Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 467 (D. Del. 2006) (holding it was proper for jury to consider, when it determined a reasonable royalty, a license where "[t]he licensee . . . was not a party to relevant litigation at the time the agreement was entered into"). Thus, the further removed the license is from litigation over validity and infringement of the licensed patents – either between the parties to the license or between the licensor and third parties – the more likely the royalty reflects the commercial value of

the patented technology, and the more likely the license is admissible. *See Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1572 (Fed. Cir. 1988) (affirming district court's consideration of post-judgment settlement agreement to determine a reasonable royalty, as the settlement agreement was not executed against a backdrop of litigation over the infringement and validity of the licensed patents, as the appellate court had previously affirmed the licensed patents were valid and the licensee infringed); *Deere*, 710 F.2d at 1557–58.

The Court **DENIES** Defendants' motion in limine. While litigation over the ReedHycalog patents was pending when the parties entered into licensing discussions and ultimately executed the Smith License, the evidence in the record does not show the Smith License was sufficiently "eroded by litigation" that it is irrelevant to a reasonable royalty determination or that Defendants will be substantially prejudiced by admittance of its basic terms into evidence.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** ReedHycalog's Motion in Limine IV and **DENIES** Defendants' Motion in Limine No. 2. As stated at the hearing, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the parties' motions in limine.

**So ORDERED and SIGNED this 28th day of May, 2008.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

6