IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>TEXAS INSTRUMENTS, INC.,<br><br>        Defendant. | Civil Action No. 6:12-CV-499-MHS<br><br>LEAD CASE<br><br><br>Jury Trial Demanded |
| BLUE SPIKE, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>        Defendant. | Civil Action No. 6:12-CV-558-MHS<br><br>CONSOLIDATED CASE<br><br>ORAL ARGUMENT REQUESTED<br><br>Jury Trial Demanded |

**DEFENDANT GOOGLE INC.'S MOTION TO TRANSFER VENUE
TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
<u>DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 2

    A. Witnesses And Documents Regarding The Accused Systems Are Located In Northern California .............................................................................................. 2

    B. A Large Number Of Prior Art Entities And Witnesses Are Also In Northern California ............................................................................................................. 4

    C. The Inventors Also Reside Outside Of This District ............................................. 4

    D. Blue Spike Was Incorporated In This District For Purposes of This Litigation ..... 6

III. ARGUMENT ................................................................................................................... 6

    A. Venue Is Proper In The Northern District Of California ....................................... 6

    B. Private Interest Factors Strongly Favor Transfer To The Northern District Of California ............................................................................................................. 7

        1. Easier Access To Sources of Proof Favors The Northern District Of California .................................................................................................. 7

        2. Availability Of Compulsory Process Favors The Northern District Of California .................................................................................................. 8

        3. Cost Of Attendance For Willing Witnesses Favors The Northern District Of California ................................................................................. 9

        4. All Other Concerns Weigh In Favor Of Transfer ..................................... 10

    C. Public Interest Factors Support Transfer To The Northern District Of California ........................................................................................................... 11

        1. Relative Court Congestion Supports Transfer .......................................... 12

        2. Local Interest Favors The Northern District Of California ...................... 12

        3. Both Forums Are Familiar With The Governing Law ............................. 13

        4. There Is No Conflict Of Laws Questions ................................................. 13

IV. CONCLUSION .............................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) ............................................................................................................... 9, 10

*Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) ............................................................................................................... 11, 12

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ....................................................................................................... 8

*GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013) ............................................................................................... 1, 7, 9, 11, 12, 13

*Hoffman-La Roche*, 587 F.3d .............................................................................................. 8, 9

*In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102 (Fed. Cir. Dec. 22, 2011) ..................... 8

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ............................................................ 7, 10

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) ............................................................... 11

*In re TS Tech USA*, 551 F.3d 1315 (Fed. Cir. 2008) ................................................................... 10

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ............................................. 6, 7

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ..................................................... 12

*Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun. 7, 2011) ................................................................................................................. 11

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ........................................................................................ 11

*Network Prot. Sciences LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ............................................................................... 13

*NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ............................................................................................ 8

*Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696 (E.D. Tex. 2011) ........... 8, 10

*PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, Dkt. No. 131 (E.D. Tex. Mar. 21, 2013) ................................................................................................... 1, 7, 8, 13

*Software Rights Archive, LLC, v. Google, Inc. [sic], et al.*, No. 2:07-cv-511-CE, Dkt. No. 323 (E.D. Tex. July 22, 2010) ..................................................................................... 1

*Tse v. Google, Inc. [sic]*, No. 12-cv-356, 2012 WL 6497124 (E.D. Tex. Dec. 13, 2012) ..... 1, 7, 8

*Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370 (E.D.
 Tex. Jan. 23, 2012) .................................................................................................................. 10

**Statutes**

28 U.S.C.
 § 1331 ........................................................................................................................................ 7
 § 1338(a) ................................................................................................................................... 7
 § 1391(b) ................................................................................................................................... 7
 § 1404(a) ........................................................................................................................ 1, 2, 6, 11

Pursuant to 28 U.S.C. § 1404(a), Defendant Google Inc. ("Google") respectively moves to transfer this action to the United States District Court for the Northern District of California.

## I.   INTRODUCTION

This District's transfer jurisprudence provides that this matter belongs in the Northern District of California.  First, this District has repeatedly recognized that Google has no substantial ties to the Eastern District of Texas and that patent litigation regarding such products as YouTube and Google Play (the allegedly accused products in this matter) are properly located in the district containing Google's headquarters in Northern California.  *See, e.g.*, *PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, Dkt. No. 131 (E.D. Tex. Mar. 21, 2013); *Tse v. Google, Inc. [sic]*, No. 12-cv-356, 2012 WL 6497124 (E.D. Tex. Dec. 13, 2012); *Software Rights Archive, LLC, v. Google, Inc. [sic], et al.*, No. 2:07-cv-511-CE, Dkt. No. 323 (E.D. Tex. July 22, 2010).

Second, Plaintiff Blue Spike, LLC ("Blue Spike") has no real ties to this District.  Indeed, this case is one more example of the type of venue manipulation and forum shopping that threatens to "undermine the principals underpinning transfer law and the recently enacted America Invents Act."  *GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013).  Since August 9, 2012, Blue Spike has filed more than 80 cases in this District, suing more than 150 defendants over a wide variety of unrelated products and services.  Yet, Blue Spike did not even exist until it was formed on May 11, 2012, less than three months before its litigation campaign began.  And, the patents-in-suit were not transferred to Blue Spike until August 4, 2012 – only five days before the litigation campaign began.  One co-inventor, Scott Moskowitz, is a long-time resident of Florida; the other, Michael Berry, lives in Seattle, Washington.  Since the filing of the earliest application in 2000, the patents-in-suit belonged to Blue Spike, Inc., a long-standing Florida corporation, with no identifiable activities in Texas, much less in this District.

Consistent with these facts and this District's prior decisions, the Northern District of California is the clearly more convenient forum for this dispute. Accordingly, Google requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

## II. FACTUAL BACKGROUND

Blue Spike filed suit against Google in this District on August 22, 2012, alleging that Google's "YouTube, Content ID, Video Identification ('Video ID'), Google Play and Google Music software, applications, websites, systems, and technology" (collectively, the "Accused Systems") infringe U.S. Patent Nos. 7,346,472 (the " '472 patent"), 7,660,700 (the " '700 patent"), 7,949,494 (the " '494 patent"), and 8,214,175 (the " '175 patent") (collectively, the "Asserted Patents"). (Dkt. No. 1, ¶ 27.)[1] The Asserted Patents share a common specification and generally relate to methods and systems for identifying matching text, visual, audio, and video signals. As described below, the relevant facts weigh in favor of transfer to the Northern District of California.

### A. Witnesses And Documents Regarding The Accused Systems Are Located In Northern California

Since its founding in 1998, Google has been headquartered in the Northern District of California. (Declaration of Abeer Dubey In Support Of Defendants' Motion To Transfer ("Dubey Decl."), ¶ 4.) The current headquarters, located in Mountain View, California, is Google's strategic center, and accounts for over half of its U.S. employees, including staff, engineers, product managers, and executives. (*Id.*, ¶ 5.) YouTube LLC, Google's wholly owned subsidiary, was founded in 2005 in San Bruno, California, and is still headquartered there, which is also in the Northern District of California. (*Id.*, ¶ 7.) Google also has a significant number of additional employees in San Francisco, California, which is within the Northern District of California as well. (*Id.*, ¶ 5.)

---

[1] Unless otherwise noted, the docket ("Dkt.") citations are to *Blue Spike LLC v. Google, Inc.*, Case No. 6:12-CV-558-MHS, which has now been consolidated with the lead case (*Blue Spike LLC v. Texas Instruments, Inc.*, Case No. 6:12-CV-499-MHS).

Decisions related to Google and YouTube's overall business, including the most significant sales, marketing and engineering decisions related to the Accused Systems, are made by senior executives residing in Mountain View or San Bruno, California.  (*Id*., ¶ 6.)  For example, YouTube (one of the Accused Systems) was developed by YouTube, LLC in the Northern District of California.  (*Id*., ¶ 7.)  The majority of YouTube's personnel, including its staff, engineers, product managers, and executives, work in Northern California.  (*Id*.)  In particular, the engineers with relevant knowledge regarding the YouTube system and its content recognition functionality (which Google understands to be implicated by the terms "Content ID" and "Video Identification" in the Accused Systems) are based in Northern California or ultimately report to individuals in Northern California.  (*Id*., ¶ 8.)  Specifically, Sergey Ioffe, a Research Scientist, and Dominik Roblek, a Senior Software Engineer, possess relevant knowledge concerning the design and operation of YouTube's content recognition functionality, and both are employed at Google's Mountain View, California location.  (*Id*., ¶ 9.)

Similarly, Google developed the remaining Accused Systems – Google Play and Google Music – in Northern California.  (*Id*., ¶ 10.)  The engineers with relevant knowledge of these systems are located in Mountain View, California.  (*Id*.)  For example, Mr. Roblek and David Ross, a Senior Software Engineer, possess relevant knowledge concerning the design and operation of any content recognition functionality in Google Music,[2] and both are employed by Google in Mountain View, California.  (*Id*., ¶ 11.)

All relevant electronic documents, such as those generated by engineers or managers that relate to the development or operation of the Accused Systems, are most easily accessible in Mountain View or San Bruno, California, as that is where the persons who can identify and locate such documents reside.  (*Id.*, ¶ 16.)  No physical documents relating to the Accused

---

[2]  Google Play is, generally speaking, a digital application distribution platform.  (*Id*., ¶ 10.)  It is unclear what Blue Spike may be referring to in its reference to Google Play as one of the Accused Systems.  (*Id*.)

Systems are stored in this District, and no Google employees with relevant knowledge regarding the Accused Systems reside or work in this District. (*Id.*, ¶¶ 14-15.)

### B. A Large Number Of Prior Art Entities And Witnesses Are Also In Northern California

Third party documents and witnesses are also concentrated in Northern California, home to numerous software and hardware companies and research institutions. Indeed, prior art references cited during the prosecution of the Asserted Patents alone identify many inventors and companies situated in Northern California. For example, during the prosecution of the '472 patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior art references. (Conti Decl., Ex. 1.[3]) Among them, at least nine patent assignees are based in Northern California[4] and at least 24 prior art inventors reside in Northern California.[5]

### C. The Inventors Also Reside Outside Of This District

The named inventors of the Asserted Patents, Scott Moskowitz and Michael Berry, also do not reside in this District. In an inventor declaration submitted to the Patent Office in 2000 during the prosecution of U.S. Patent Application Serial No. 09/657,181 (the "'181 Application") (the original application that led to the Asserted Patents), Moskowitz and Berry declared their residence in Florida and New Mexico, respectively. (Dkt. Nos. 1-2 through 1-5; Conti Decl., Ex.

---

[3] "Ex." references herein are attached to the Declaration of Patrick J. Conti In Support Of Defendant's Motion To Transfer Venue To The Northern District of California Pursuant To 28 U.S.C. § 1404(a) ("Conti Decl.").

[4] Apple Computer, Inc. (Cupertino), Cisco Technology, Inc. (San Jose), Cryptography Research, Inc. (San Francisco), Hewlett-Packard Company (Palo Alto), Intel Corp. (Santa Clara), InterTrust Technologies Corp. (Sunnyvale), Macrovision Corp. (Sunnyvale), Sun Microsystems, Inc. (Mountain View; acquired by Northern California-based Oracle Corp. in 2010), and Stanford University (Stanford). (Dkt. No. 1-5; Conti Decl., Ex. 2.)

[5] Gilles Boccon-Gibod (Los Altos), William Macy (Palo Alto), Minerva Ming-Yee Yeung (Sunnyvale), Paul Kocher (San Francisco), Paul Wehrenberg (Palo Alto), Martin Hellman (Stanford), Ralph Merkle (Palo Alto), Bailey Diffie (Berkeley), Mark Stefik (Woodside), Michalene Casey (Morgan Hill), Robert Lu (Sunnyvale), Boon-Lock Yeo (Sunnyvale), Todd Collart (Los Altos), Jean Laroche (Santa Cruz), Daniel Ullum (San Jose), Thomas Edsall (Mountain View), Soei-Shin Hang (Sunnyvale), Derek Nelson (Menlo Park), Glen Petrie (Los Gatos), Nicholas Briggs (Palo Alto), Norman Hardy (Portola Valley), Eric Hill (Palo Alto), David Van Wie (Sunnyvale), and James Barton (Los Gatos). (Dkt. No. 1-5; Conti Decl., Exs. 2, 3.)

4 at 3.)  From late 2005 to 2008, Moskowitz himself prosecuted the '181 Application from his residence in Florida.  (Conti Decl., Exs. 5, 6.)  In March 2008, the '181 Application issued as the '472 patent, which, on its face, identifies Moskowitz and Berry as Florida and New Mexico residents, respectively.  (Dkt No. 1-5.)

From 2007 to 2010, Moskowitz prosecuted two continuation applications of the '181 Application, again from his residence in Florida.  (Conti Decl., Exs. 7, 8.)  These two applications, issued as the '700 and '494 patents, identify Berry as a resident of Virginia (the '700 patent) and Washington (the '494 patent) and Moskowitz as still residing in Florida.  (Dkt. Nos. 1-3; 1-4.)

In February 2011, Moskowitz and Berry submitted another inventor declaration in the prosecution of a third continuation application of the '181 Application, averring their residence in Florida and Washington, respectively.  (Conti Decl., Ex. 9.)  This application issued as the '175 patent in July 2012, and identified Moskowitz and Berry as still residing in Florida and Washington, respectively.  (Dkt. No. 1-2.)

Moskowitz continues to live in Florida.  For example, his patent applications and patents published or issued between August 2012 to January 2013 identify his residence in Florida.  (Conti Decl., Ex. 10.)  Further, Mr. Moskowitz has been an officer of at least three Florida-based companies: Blue Spike, Inc., Canopus Medical LLC, and Wistaria Trading Inc.  (*Id.,* Exs. 11-13.)  Two of these companies filed annual reports with the Secretary of State of Florida in January 2013 listing Florida as the principal place of business for both.  (*Id.,* Exs. 14, 15.)  Notably, Mr. Moskowitz signed both of these filings on January 20, 2013, and indicated that he currently resides in Florida.  (*Id.*)  Mr. Moskowitz's personal actions and representations further confirm his continuing presence in Florida.  (*See id.,* Ex. 16 (LinkedIn profile); Ex. 17 (Florida vehicle registration); Ex. 18 (Florida voting record).)

While living in Florida, Moskowitz has frequently traveled to Northern California.  He allegedly founded "The Dice Company," which was based at one time in Palo Alto, California.  (Dkt. No. 1, ¶ 10; Conti Decl., Ex. 19.)  He has spoken several times at the RSA Data Security

Conference, a cryptography conference held annually in San Francisco. (Dkt. No. 1, ¶ 15; Conti Decl., Ex. 20.) Mr. Moskowitz, the only officer of Blue Spike, also retained lead counsel in this action who are based in the Northern District of California. (*Id.,* Ex. 21.)

### D. Blue Spike Was Incorporated In This District For Purposes of This Litigation

In 2000, 2007, and 2009, Moskowitz and Berry assigned their inventions in the Asserted Patents to Blue Spike, Inc., a private company based in Florida since 1997. (*Id.,* Ex. 22.) There is no indication that Blue Spike, Inc. has ever conducted any business within the Eastern District of Texas. On May 14, 2012, a mere three months before bringing this action, Mr. Moskowitz incorporated Blue Spike, LLC in Tyler, Texas. (*Id.,* Ex. 23.) On August 4, 2012, less than a week before filing the lead case in this District, Moskowitz, on behalf of Blue Spike, Inc., assigned the Asserted Patents to Blue Spike. (*Id.,* Ex. 24.) It appears that Moskowitz is the only employee of Blue Spike and there is no customer or contractor of Blue Spike, much less any in this District.

### III. ARGUMENT

Section 1404(a) of 28 U.S.C. provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The inquiries under 28 U.S.C. § 1404(a) are, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008). As explained below, the relevant factors clearly favor transferring this action to the Northern District of California.

### A. Venue Is Proper In The Northern District Of California

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). A case could have been brought in the

transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case. *Id*. There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a). Nor is there any question that the Northern District of California has personal jurisdiction over Google and is a proper venue for this case because, as discussed above, Google regularly conducts business, maintains its headquarters, and employs the bulk of its personnel there. *See* 28 U.S.C. § 1391(b).

### B. Private Interest Factors Strongly Favor Transfer To The Northern District Of California

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. All of these factors weigh in favor of transfer to the Northern District of California.

#### 1. Easier Access To Sources Of Proof Favors The Northern District Of California

In analyzing the first private interest factor, this Court recognizes that:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.

*GeoTag*, Dkt. No. 114, at 3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, as discussed above, Google's documents relevant to this case are most readily accessible from Northern California, and Google employees with relevant knowledge who are likely to testify regarding the Accused Systems are located in Northern California. *See also PersonalWeb Techs.*, Dkt. No. 131, at 21-22 (finding Google and YouTube's headquarters, documents and witnesses relevant to accused products, including YouTube, to be in the Northern District of California); *Tse*, 2012 WL 6497124, at *3-*4 (transferring case involving Google Play to the Northern District of California based on location of evidence).

In contrast, Blue Spike was formed a mere three months before filing its first lawsuit in this District. The limited documents created since Blue Spike's formation, or those trucked into Texas for purposes of this litigation, do not merit keeping the case here. *See Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered); *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) ("[W]eight given to the location of [plaintiff's] documents is determined by whether plaintiff is an 'ephemeral' entity.").

Accordingly, the relevant evidence in this action is more readily accessible from the Northern District of California, favoring transfer to that district. *PersonalWeb Techs.*, Dkt. No. 131, at 39 ("It would be very inconvenient for the Google Defendants to litigate in a forum where they have no connections when the alternative is their home forum."); *Tse*, 2012 WL 6497124, at *2 ("[T]he majority of the relevant evidence and witnesses in this case [regarding Google Play] are likely to be located at Google's headquarters in Northern California."); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102, at *2-*3 (Fed. Cir. Dec. 22, 2011) (ordering transfer to the Northern District of California where neither party had identified any witnesses in the Eastern District of Texas); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting motion to transfer to the Northern District of California where majority of documents and evidence, along with several witnesses, were likely to be in that district).

### 2. Availability Of Compulsory Process Favors The Northern District Of California

A venue is favored when it has subpoena power to compel attendance of deposition and trial over the majority of non-party witnesses. *GeoTag*, Dkt. No. 114, at 5 (citing *Hoffman-La Roche*, 587 F.3d at 1337-38). Here, a great number of potential non-party defense witnesses are

located in the Northern District of California, home to universities and high-tech companies who were active in the field of endeavor relevant to this action in the relevant timeframe. As discussed above, the inventors themselves identified to the Patent and Trademark Office at least 24 different third party prior art inventors (and at least nine different prior art entities) who reside in Northern California. To the extent these non-party prior art witnesses are unwilling to attend deposition or trial, the Northern District of California has the authority to compel their attendance.

In contrast, there are no known third party witnesses who would be subject to the subpoena power of the Eastern District of Texas. Blue Spike is a non-practicing entity and has no known affiliates that are under this Court's subpoena power. One of the co-inventors is an employee of the plaintiff, and the other, Mr. Berry, currently resides in the state of Washington. Google is unaware of any likely non-party defense witnesses who are subject to this Court's subpoena power. Since the Northern District of California has absolute subpoena power over a significant number of known prior art witnesses, the availability of such power favors transfer to the Northern District of California. *Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in plaintiff's chosen forum).

### 3. Cost Of Attendance For Willing Witnesses Favors The Northern District Of California

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses." *GeoTag*, Dkt. No. 114, at 8. While courts analyze the convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Id*. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relation to the additional distance traveled." *In re Genentech*, 566 F.3d at 1343.

Here, with respect to party witnesses, Google's likely witnesses in this action, including its engineers, managers, and executives, reside and work within the Northern District of California. If this case is not transferred, these witnesses would each be burdened with travel of at least 1,500 miles each way to testify in this Court. *Droplets, Inc.*, 2012 WL 3578605, at *5. As for Blue Spike, it appears to have a single employee, Mr. Moskowitz, who is a long time resident of Florida. For him, travel to Northern California is no more inconvenient than travel to this Court. Indeed, as discussed above, Mr. Moskowitz routinely visits the Bay Area to attend conferences and conduct business.

With respect to non-party witnesses, numerous engineers familiar with prior art instrumentalities are centralized in Northern California and would also have to travel over 1,500 miles to attend trial in this District (to the extent they are willing). And, Mr. Berry, the co-inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to Northern California than to this Court. *Id.* (noting that location of relevant third-party witnesses in, and closer to, the transferee venue favored transfer).

In sum, the locations of both party and non-party witnesses also favor transfer to the Northern District of California. *See In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be "clear error"); *Optimum Power Solutions*, 794 F. Supp. 2d at 702 (granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas); *Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at **3-4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district and no identified witness resides in plaintiff's chosen forum).

### 4. All Other Concerns Weigh In Favor Of Transfer

The remaining considerations also favor transfer to the Northern District of California. First, this case is still in its infancy: no case management conference has been scheduled; no scheduling order has been issued; and no discovery has taken place. *See, e.g., Internet Machs.*

*LLC v. Alienware Corp.,* No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun. 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer. As this Court recently emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue:

> The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.

*GeoTag*, Dkt. No. 114, at 11 (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)). Here, Blue Spike formed in this District only three months before commencing a filing spree of over 80 lawsuits in this District against over 150 defendants concerning different, non-overlapping products and services. Permitting Blue Spike to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping, and defeat the purpose of a key provision of the recently enacted America Invents Act, which limits the joinder of unrelated parties in patent cases. *See id*. at 11; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("Because the *cases involve different products . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.") (emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

### C. Public Interest Factors Support Transfer To The Northern District Of California

In addition to private interest factors, courts also consider public interest factors in deciding whether transfer is appropriate. The public interest factors include: "(1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *See GeoTag*, Dkt. No. 114, at 3. These factors also weigh in favor of transfer.

### 1. Relative Court Congestion Supports Transfer

The first public interest factor generally "favors a district that can bring a case to trial faster." *Id*. at 11. This District is more congested than the Northern District of California for patent litigation. The seven U.S. District Judges and eight Magistrate Judges in this District are burdened with 1,061 recently-filed patent cases, on top of more than 1,087 pending patent cases. (Conti Decl., Ex. 25.) In contrast, the Northern District of California has nineteen District Judges and eleven Magistrate Judges[6] to decide 265 recently-filed patent cases and 302 pending patent cases. (*Id.*) Given its greater resources, the Northern District of California resolves cases more quickly than the Eastern District of Texas. (*Id.*, Ex. 26 (N.D. Cal. has a median time interval from filing to disposition of 6.4 months compared to 10.1 months for E.D. Tex.).) Thus, the court congestion factor favors transfer.

### 2. Local Interest Favors The Northern District Of California

While the location of the alleged injury is traditionally an important consideration, this Court noted that "[w]hen the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district;" instead, the local interest lies in the district that is home to a party because "the suit may call into question the reputation of individuals that work in the community." *GeoTag*, Dkt. No. 114, at 12; *see also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation."). Because the Accused Systems in this case are available nationwide, the Northern District of California – where the Accused

---

[6] *See* Judges - United States District Court, Northern District of California, http://www.cand.uscourts.gov/judges (last visited April 19, 2013).

Systems were developed and are still maintained and managed by hundreds of Google staff, engineers, and managers in Northern California – has a particularized local interest in resolving this dispute. *See, e.g.*, *PersonalWeb Techs.*, Dkt. No. 131, at 23 ("Google [is] headquartered in the Bay Area, and everything related to the accused products is located there. For these reasons, this factor favors transfer.").

In contrast, there is no legitimate local interest with respect to the alleged infringement in this District, where, as discussed above, Blue Spike's ties to this District are ephemeral and entirely manufactured in anticipation of litigation. Local interest, thus, strongly favors transfer to the Northern District of California. *See, e.g.*, *Network Prot. Sciences LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the Northern District of California where defendants were headquartered, developed the accused products and employed thousands of people).

### 3. Both Forums Are Familiar With The Governing Law

This Court and the Northern District of California are equally familiar with patent law. Thus, this factor is neutral.

### 4. There Is No Conflict Of Laws Questions

This case does not implicate conflicts of law and thus this factor is neutral.

## IV. CONCLUSION

For the foregoing reasons, balancing all of the private and public factors demonstrates that the Northern District of California is clearly more convenient than the Eastern District of

Texas for this action.  Google respectfully requests that this Court grant the requested transfer to the Northern District of California.

| | |
|---|---|
| Dated:  April 22, 2013 | Respectfully submitted,<br><br>/s/ *Lance Lee*<br>Lance Lee<br>Attorney at Law<br>5511 Plaza Drive<br>Texarkana, TX 75503<br>wlancelee@aol.com<br>Phone: (903) 223-0276<br>Fax: (903) 223-0210<br><br>Michael A. Berta<br>michael.berta@aporter.com<br>Patrick J. Conti<br>patrick.conti@aporter.com<br>**ARNOLD &PORTER LLP**<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111<br>Phone: (415) 471-3100<br>Fax: (415) 471-3400<br><br>Wallace Wu<br>wallace.wu@aporter.com<br>Nicholas H. Lee<br>nicholas.lee@aporter.com<br>**ARNOLD &PORTER LLP**<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA 90017<br>Phone:  (213) 243-4000<br>Fax:  (213) 243-4199<br><br>ATTORNEYS FOR DEFENDANT<br>GOOGLE INC. |

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22, 2013, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

I further certify that, on April 22, 2013, I served a copy of all documents filed under seal on all counsel of record via electronic mail.  Local Rules CV-5(c), CV-5(d).

/s/ *Lance Lee*
Lance Lee

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on April 19, 2013 via telephone conference with the following participants:  Christopher Honea for the Plaintiff and Wallace Wu for the Defendant.  No agreement could be reached because the parties disagreed on the merits.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Lance Lee*
Lance Lee