# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | Civil Action No. 6:12-cv-499-MHS |
| | § | **(Lead case for Consolidation Issues)** |
| v. | § | Jury Trial Demanded |
| | § | |
| Texas Instruments, Inc., | § | |

_____

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | Civil Action No. 6:13-cv-125-MHS |
| v. | § | |
| | § | |
| Entropic Communications, Inc. | § | |

**DEFENDANT ENTROPIC COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF BLUE SPIKE, LLC'S COMPLAINT FOR INDIRECT AND WILLFUL PATENT INFRINGEMENT FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ...................................................................................................................... 1

        A.     **Blue Spike Does Not Adequately Plead Intent to Induce Infringement** .......... 1

        B.     **Blue Spike's Contributory Infringement Claim is Insufficient** ........................ 3

        C.     **Blue Spike's Post-Filing Willfulness Claim Should be Dismissed** .................... 5

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ........................................................................................ 1, 3

*MacroSolve, Inc. v. Cont'l Airlines, Inc.*,
   No. 6:11-cv-694, slip op. (E.D. Tex. July 30, 2012) ................................................... 1, 2, 3, 4

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
   No. 6:11-cv-229, slip op. (E.D. Tex. July 27, 2012) ............................................................ 3, 4

*Touchscreen Gestures, LLC v. Research in Motion Ltd.*,
   No. 6:12-cv-263, slip op. (E.D. Tex. Mar. 27, 2013) .............................................................. 5

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
   No. 6:12-cv-366, slip op. (E.D. Tex. Feb. 7, 2013) ........................................................ *passim*

I.      INTRODUCTION

The Court should dismiss Plaintiff Blue Spike, LLC's ("Blue Spike") allegations of indirect and willful infringement against Defendant Entropic Communications, Inc. ("Entropic") because: (1) Blue Spike fails to sufficiently allege Entropic had the required intent and knowledge to induce infringement; (2) Blue Spike fails to identify a specialty component used in the alleged infringing products or systems, and fails to sufficiently allege the components have no substantial non-infringing uses; and (3) Blue Spike concedes it cannot allege pre-filing willfulness, and it cannot allege post-filling willfulness in an original complaint.

II.     ARGUMENT

A.      **Blue Spike Does Not Adequately Plead Intent to Induce Infringement**

"[T]o survive [a] motion to dismiss, [a] complaint must contain sufficient facts plausibly showing that Defendants specifically intended a third party to infringe the [asserted] patent[s] and knew the third party's acts constituted infringement." *MacroSolve, Inc. v. Cont'l Airlines, Inc.,* No. 6:11-cv-694, slip op. at 5-6 (E.D. Tex. July 30, 2012) (Love, M.J.) (attached at Dkt. No. 533-4) (citing *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,* No. 6:12-cv-366, slip op. at 2 (E.D. Tex. Feb. 7, 2013) (Love, M.J.) (attached at Dkt. No. 533-2). Blue Spike argues in its opposition that it meets the pleading standard for inducement through "[t]he identification of…specific consumer products [which] permits a reasonable *inference* that Entropic *intends* its customers to use them." (Plaintiff's Opposition, Dkt. No. 640 ("Opp."), at 5-6 emphasis added)). However, Blue Spike's argument is almost identical to the arguments this Court rightly rejected in *U.S. Ethernet* and *MacroSolve.*

In *U.S. Ethernet,* the plaintiff argued "that a reasonable inference of intent and knowledge

1

can be made from the…allegations in its complaint [that]…Yamaha supplies 'infringing systems and components to [its] customers,' and…Yamaha's 'customers [which] operate such systems and components thereof in accordance with [Yamaha's] *instructions* directly infringe one or more claims.'"  6:12-cv-366, slip op. at 6 (emphasis added).  The Court rejected this argument, reasoning that "USEI's allegations that Yamaha 'supplies' infringing systems and components and provides 'instructions' to its customers who allegedly infringe does not create a reasonable inference of inducement."  *Id.*  Thus, the Court found "USEI's complaint…fails to…allege any facts that, if taken as true, establish a plausible inference that Yamaha had the specific intent to induce its customers actions, and knowledge that those actions amounted to infringement."  *Id.*

Blue Spike's allegations contain even less factual specificity than the plaintiff's in *U.S. Ethernet*.  There, USEI at least alleged that defendant Yamaha supplied its customers with *instructions* - along with the accused products - that purportedly caused the customers to directly infringe when they followed such instructions.  *See id.* (emphasis added).  Blue Spike, on the other hand, does not and cannot allege that Entropic published such instructions.  Instead, Blue Spike seeks to concoct an allegation of intent and knowledge *solely* through Entropic's supply of alleged infringing products.  (*See* Opp. at 5-6).  This Court plainly rejected such an overreaching in *MacroSolve*.  In that case, the complaint alleged that the defendant "induced infringement and/or contributed to the infringement of one or more of the claims of the '816 patent by its customers."  6:11-cv-694, slip op. at 6.  The Court found this bare allegation insufficient, reasoning that the "complaint alleges a direct infringer, namely Defendants' customers, [but fails] to…allege any facts that, if taken as true, establishes a plausible inference that Defendants had knowledge of the '816 patent, the specific intent to induce a third party to infringe, and knowledge that such action amounted to infringement."  *Id.*

By contrast, in *Patent Harbor*, the Court found that the plaintiff had met the required intent standard through plaintiff's allegation that "Defendants either perform that method themselves or 'direct[] and control[]' others to do so 'through contract.'" *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,* No. 6:11-cv-229, slip op. at 10 (E.D. Tex. July 27, 2012) (Love, M.J.) (attached at Dkt. No. 640-2). The Court reasoned "a plausible inference from these allegations is that Defendants induced others to infringe the '514 patent by ***directing and controlling them through contract***." *Id.* (emphasis added). In other words, in *Patent Harbor*, the Court found intent and knowledge could be inferred through the defendants' alleged direct contractual relationship with the alleged direct infringers, through which the defendants could *direct* and *control* the alleged directly infringing activities.

Blue Spike does not and could not allege such a direct contractual relationship here between Entropic and the putative direct infringers (the alleged "end users"), whereby Entropic is "directing and controlling" the end users' purported direct infringement. Without this key allegation of a direct contractual relationship, no sufficient inference of intent and knowledge can be made from Blue Spike's formulaic allegations, any more than such an inference could be drawn from similar allegations in *U.S. Ethernet* and *MacroSolve.* Accordingly, Blue Spike's inducement claim is insufficient and should be dismissed.

**B. Blue Spike's Contributory Infringement Claim is Insufficient**

"[T]o state a claim for contributory infringement, [a plaintiff] must, among other things: (1) identify the 'material or apparatus for use in practicing [the] patented process' that is sold or offered for sale by Defendants; and (2) 'plead facts that allow an inference that [these] components . . . have no substantial non-infringing uses.'" *U.S. Ethernet*, 6:12-cv-366, slip op. at 7 (citing *Bill of Lading*, 681 F.3d at 1331). *Patent Harbor, MacroSolve,* and *U.S. Ethernet* are

all in accord that a complaint for contributory infringement should be dismissed when it "fails to identify the components used in the infringing method and is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses.'" *Patent Harbor*, 6:11-cv-229, slip op. at 11 (dismissing contributory claim).

Like the plaintiffs in *Patent Harbor, MacroSolve,* and *U.S. Ethernet*, Blue Spike in its complaint fails to identify the specialty components provided by Entropic that it contends are used as a part of the products and systems accused of infringement. For example, Blue Spikes' vague allegation in its complaint that it is the Accused Products - and not specifically identified components thereof - that "have no substantial non-infringing uses and are for use in systems that infringe the [Asserted] Patent[s]" (Complaint at ¶ 34; *see also* ¶¶ 42, 50, 58) is no different than the allegation this Court found insufficient in *MacroSolve*. 6:11-cv-694, slip op. at 6 (dismissing claim that "fails to identify the components of the accused products—the Continental app and United Airlines Mobile app—used to infringe the '816 patent.")

Blue Spike also fails to allege how these as of yet unidentified components lack any substantial non-infringing uses. Blue Spike concedes in its opposition that "the complaint itself does not contain extensive analysis of why the accused products have no substantial non-infringing uses…" (Opp. at 7). Blue Spike's complaint is deficient not simply because it is missing any such analysis, but also because it is entirely devoid of any factual allegations that make *plausible* a claim that the products in question have no non-infringing use. *See, e.g., U.S. Ethernet*, 6:12-cv-366, slip op. at 7 (dismissing contributory infringement claim that "is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses.'"); *MacroSolve*, 6:11-cv-694, slip op. at 6 (same). Blue Spike's contributory infringement claim is deficient and should be dismissed.

4

### C.    Blue Spike's Post-Filing Willfulness Claim Should be Dismissed

"Blue Spike concedes [in its opposition] that it has no basis for alleging pre-filing willfulness at this point," and instead, "Blue Spike explicitly bases its willfulness allegation on *post*-filing conduct." (Opp. at 8). However, as this Court recently held, "the filing of an infringement suit alone is insufficient to give rise to a post-filing willful infringement claim." *Touchscreen Gestures, LLC v. Research in Motion Ltd.,* No. 6:12-cv-263, slip op. at 4 (E.D. Tex. Mar. 27, 2013) (Schneider) (dismissing willful infringement claim). Under the holding of *Touchscreen Gestures*, Blue Spike's allegation that its willfulness claim arises directly from the filing of this lawsuit is inadequate to state a claim. (Complaint, ¶36; *see also* ¶¶ 44, 52, 60.)

*Wordcheck Tech, LLC v. ALT-N Techs., Ltd.*, No. 6-10-cv-457, Dkt. 755, at 3 (E.D. Tex. July 17, 2012), upon which Blue Spike relies, is inapplicable here. First, that case dealt with an a*mended* complaint and thus actually had the potential for post-filing objectively reckless behavior. Second, in that case, unlike here, the plaintiff specifically "allege[d] when [defendants] received notice of the patent-in-suit." It is Blue Spike's *original* complaint that is at issue here. Blue Spike could not in good faith have alleged post-filing objectively reckless behavior in an original complaint for the obvious reason that at the time of filing of the original complaint there could not have been *any* post-filing conduct. In any event, Blue Spike has not identified a specific date by which Entropic had notice of the asserted patents, and has not alleged sufficient facts in support of its allegation that Entropic was objectively reckless. *See, e.g., U.S. Ethernet*, 6:12-cv-366, slip op. at 8 (dismissing willful infringement claim after finding plaintiff's bare allegation "devoid of any facts that create an inference of [Defendant's] objective recklessness."). Blue Spike's post-filing willfulness allegation based only on the filing of the lawsuit is thus wholly insufficient, and should be dismissed.

DATED:  April 25, 2013          Respectfully submitted,

By */s/Alan H. Blankenheimer, with permission by Michael E. Jones*
    Alan H. Blankenheimer
    ablankenheimer@cov.com
    Jo Dale Carothers
    jcarothers@cov.com
    COVINGTON & BURLING LLP
    9191 Towne Centre Drive, 6th Floor
    San Diego, CA 92122-1225
    Telephone: (858) 678-1800
    Facsimile:  (858) 678-1600

    Michael E. Jones
    SBN: 10929400
    Potter Minton, PC
    110 North College, Suite 500
    Tyler, Texas 75702
    Tel: 903-597-8311
    Fax: 903-593-0846
    mikejones@potterminton.com

Attorneys for Defendant,
Entropic Communications, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 25, 2013.

        */s/ Michael E. Jones*