UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § | CASE NO. 6:12-cv-499 MHS |
| | § | |
| v. | § | LEAD CASE |
| | § | |
| Texas Instruments, Inc., et al., | § | Jury Trial Demanded |
| *Defendants.* | § | |
| | § | |
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § | CASE NO. 6:13-cv-38 MHS |
| | § | |
| v. | § | CONSOLIDATED CASE |
| | § | |
| Animetrics, Inc. | § | Jury Trial Demanded |
| *Defendant.* | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [DKT. 534]**

Plaintiff Blue Spike, LLC opposes Animetrics, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue. Dismissal is improper because Animetrics' own website and officers have helped show that Animetrics sells the accused products to customers who use them in Texas. The jurisdictional facts are sufficient to make a prima facie showing of personal jurisdiction, supporting the Court's exercise of personal jurisdiction and supporting venue. Further, it would be inappropriate to dismiss the case before allowing jurisdictional discovery.

**Factual Background**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric identification and security systems. Many of today's biometric identification and security providers—including Animetrics—have built their companies by infringing Blue Spike's patents.

The four patents-in-suit teach principles and methods of "digital fingerprinting" that are used in many of today's biometric and security products. Broadly speaking, digital fingerprinting is a means to identify digital material—including video, audio, photographs, and text—based on unique digital markers within the material itself. At its most basic, digital fingerprinting involves at least three steps: (1) cataloging a digital work's identifying characteristics, (2) putting an abstract of the digital work into a database, and (3) scanning live events, digital files, and media sources to see whether the content from those sources has the name "digital fingerprint" as the abstracted digital work in the database. By finding matches between "what's found out in the world" and "what's found in a database of digital content," the digital-fingerprinting process is able to detect the use of protected works or, in Animetrics' case, the faces of people who have previously been photographed. *See generally* Animetrics Website, www.animetrics.com (last accessed April 25, 2013).

**Legal Standards**

Specific personal jurisdiction exists when a defendant purposefully directs activities at the forum, the plaintiff's claim relates to those activities, and the

assertion of personal jurisdiction is reasonable and fair. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (per curiam). In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in plaintiff's favor. *Id.* at 1361. If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id.*

## Argument

There is prima facie case of personal jurisdiction over Animetrics because its own website and officers—as well as other sources—help confirm that the Animetrics' products are used extensively in Texas. The analyses of personal jurisdiction and venue merge in this case because "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."[1] This opposition therefore focuses on personal jurisdiction, as the Court's conclusion on personal jurisdiction will dictate the result for venue as well.

## I.   Animetrics' Accused Products Are Used Pervasively Throughout Texas, Supporting Jurisdiction.

Animetrics' own website and officers help show that many of Animetrics' business partners, customers, and distribution networks have strong Texas connections *and* that Animetrics' products—including accused products—are actually used in Texas. For example:

- Texas consumers can download Animetrics' mobile biometric applications through the Apple App Store and Google Play and can be

---

[1] *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005).

used on all iPhones and Android smartphones, including in Texas. *See, e.g.*, Ex 1 (screenshot from Animetrics' website); Ex. 2 (screenshot from a mobile phone in Texas showing an Animetrics app that was downloaded in Texas).

- Animetrics claims that its accused products are used in the field by U.S. Border Control agents and the TSA, which both have large-scale operations in Texas. Ex. 3 at 2 (screenshot from Animetrics' website).

- Animetrics has partnerships with international, multi-billion-dollar companies with extensive Texas operations, including CACI, Unisys, Lockheed Martin, and Cogent. Ex. 4 (screenshot from Animetrics' website).

- "Animetrics technology is currently being utilized in US military intelligence systems." Ex. 5 at 1 (screenshot from Animetrics' website).

- Paul Schuepp, Animetrics' CEO, has boasted that Animetrics' technology has "proven performance within the U.S. Department of Defense." Ex. 6 (screenshot from Animetrics website).

- Animetrics also solicits business by offering ForensicaGPS—one of the accused products—to "all active federal, state or local law enforcement organizations, agencies or departments in [the] U.S.," which includes thousands of potential consumers in Texas. *See* Ex. 7 (screenshot from Animetrics website).

Animetrics' claim that it "has no connection with Texas whatsoever" is simply not credible. *Contra* Dkt. 534 at 2. It may be true that the U.S. Department of Defense, U.S. Border Control, and its other customers are not "Texas entities." But that is not the end of the analysis. Instead, federal courts also consider where a defendant's products and services—especially their accused products—are actually used in reviewing personal jurisdiction. The Department of Defense, which includes all branches of the military, and U.S. Border Control have major facilities throughout Texas (including this District) and employ tens of thousands of people here. *See, e.g.*, Ex. 8 at 7.

4

Without doubt, Animetrics' accused products and other products are used and here in Texas and offered for sale to Texas consumers. *See, e.g.*, Exs. 1-7. "No more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994); *see also Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (in patent-infringement cases, personal jurisdiction turns on nature and extent of the commercialization of the accused products or services by defendant in the forum); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("[I]n patent litigation the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee."). Tellingly, while Animetrics' CEO runs through a litany of ways in which his company lacks particular Texas connections, he never disputes that large numbers of Animetrics' products and services—including accused products—are actually used in Texas. *See* Dkt. 534-1. The facts establish a prima facie showing of personal jurisdiction.

## II. It Would Be Improper to Dismiss the Case Before Allowing Jurisdictional Discovery.

Here, Blue Spike has made a prima facie showing of personal jurisdiction. But even if Blue Spike's showing were somehow defective, the proper response would not be dismissal. It would be to allow Blue Spike to conduct jurisdictional discovery before ruling on Animetrics' motion. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir.

2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). The showing required to warrant jurisdictional discovery "is less than a prima facie showing." *Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, No. A-11-CA-1057 LY, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012); *see also Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) ("It would . . . be counterintuitive to require a plaintiff, *prior* to conducting discovery, to meet the same burden" of alleging jurisdictional facts "that would be required in order to defeat a motion to dismiss"). Blue Spike has met this threshold. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234-35 (Fed. Cir. 2010) (holding that district court abused its discretion by denying jurisdictional discovery where defendant's website showed that several of defendant's customers operated in forum; while exact extent of defendant's activities in forum was uncertain and plaintiff's "proffered documents may be insufficient in themselves to establish a prima face case," "this incomplete record nevertheless supports the need for additional discovery to determine the merits of personal jurisdiction").

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny Animetrics' motion to dismiss. Alternatively, Blue Spike asks the Court to postpone ruling on the motion until Blue Spike has had the opportunity to conduct jurisdictional discovery.

<u>/s/ Randall T. Garteiser</u>
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
Christopher S. Johns
Texas Bar No. 24044849
cjohns@ghiplaw.com
Kirk J. Anderson
California Bar No. 289043
Peter S. Brasher
California Bar No. 283992
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

***Counsel for Blue Spike LLC***

**CERTIFICATE OF SERVICE**

I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this day. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

<u>  /s/ Randall T. Garteiser      </u>
Randall T. Garteiser

8