UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, *Plaintiff,* v. Texas Instruments, Inc., et al., *Defendants.* | § § § § § § § § § § § | CASE NO. 6:12-cv-499 MHS<br>LEAD CASE<br>Jury Trial Demanded |
| Blue Spike, LLC, *Plaintiff,* v. AxxonSoft, Inc. and AxxonSoft Ltd., *Defendants.* | § § § § § § § § § § § | CASE NO. 6:13-cv-106 MHS<br>CONSOLIDATED CASE<br>Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DKT. 645]**

Plaintiff Blue Spike, LLC ("Blue Spike") opposes the motion to dismiss brought by Defendants AxxonSoft, Inc. and AxxonSoft, Ltd. (collectively, "Defendant" or "AxxonSoft"). In particular, Blue Spike opposes AxxonSoft's motion to dismiss for lack of personal jurisdiction and improper venue because AxxonSoft has sufficient contacts with Texas. Additionally, Blue Spike opposes Defendant's motion to dismiss for failure to state a claim upon which relief can be granted because the complaint pleads each of Blue Spike's claims with sufficient specificity.

1

**FACTUAL BACKGROUND**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric identification and security systems. Many of today's biometric identification and security providers—including Axxonsoft—have built their companies by infringing Blue Spike's patents. Blue Spike has filed over fifty lawsuits against patent infringers in this Court, which has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact." *See* Ex. 1 (consolidation order).

**LEGAL STANDARDS**

1. <u>Personal Jurisdiction</u>[1]

In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id*; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

2. <u>Failure to State a Claim</u>

A motion to dismiss for failure to state a claim is governed by regional circuit law. *In re Bill of Lading Transmission & Processing System Patent Litig.*, 681 F.3d

---

[1] Blue Spike agrees with AxxonSoft that the analyses of venue and personal jurisdiction merge in this case. See *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."). This opposition only discusses personal jurisdiction, as AxxonSoft does not dispute that venue is proper if the exercise of personal jurisdiction is proper. Def. Mot. § III.A.2.

1323, 1331 (Fed. Cir. 2012). Under Fifth Circuit standards, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007); *see also Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 243 (5th Cir. 2010). Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 545 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684-685 (2009) (applying *Twombly* generally to civil actions pleaded under Rule 8). "[D]etailed factual allegations" are not required; a complaint need only allege "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Specific to the patent context, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357; *see also Realtime Data, LLC v. Morgan Stanley*, 721 F.Supp.2d 538, 541 (E.D. Tex. 2010) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief."). "This standard 'simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of' the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed.App'x 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008)).

**ARGUMENT**

**I.     AxxonSoft's Own Website Indicates Continuous and Systematic Contacts with Texas Sufficient to Establish Personal Jurisdiction.**

AxxonSoft claims it has not used, manufactured, sold, or offered for sale any of is products in Texas; does not have inventory in Texas; does not have any customers or end users in Texas; does not maintain offices or other places of business in Texas; and does not solicit or receive business from Texas. Mot. at 6-7. In short, AxxonSoft claims to be an utter stranger to Texas in every way, purportedly lacking "*any* contacts" with Texas. Mot. at 8 (emphasis original). These claims are not credible given the nature of AxxonSoft's business, partners, and customers.

**A.     AxxonSoft's Partners—and by Extension, AxxonSoft Itself—Operate Pervasively Throughout Texas.**

AxxonSoft operates pervasively throughout Texas via its extensive network of partners. For instance, AxxonSoft's partnership with Wincor Nixdorf involves mutual "collaboration," "integration" of the two companies' technologies, and implementation of a "joint solution" that markets those technologies. *See* Ex. 2. These integrated solutions reach Texas through Wincor Nixdorf's U.S. headquarters in Austin, Texas. *See* Ex. 3.

4

Another AxxonSoft partner is inMotion International Ltd. *See* Ex. 4. AxxonSoft and inMotion have a "worldwide joint development and distribution agreement." Under this agreement, "[t]he two companies have combined their expertise to incorporate AxxonSoft's software platform *across the entire line* of inMotion's video security offerings." *See* Ex. 4. (emphasis added). These jointly engineered products reach Texas through inMotion's U.S. headquarters in Lewisville, Texas, located in the Eastern District of Texas. *See* Ex. 5.

Some of AxxonSoft's partners are major technology providers whose global operations include extensive contact with Texas. For instance, AxxonSoft is partnered with a "division of Sony." *See* Ex. 6. Sony has a strong presence in Texas including service centers and direct sales. *See* Ex. 7, 8, 9. AxxonSoft is also partnered with Samsung Techwin, a division of Samsung. Samsung also has a strong Texas presence, including service centers, direct sales, and university research. *See* Ex. 10, 11, 12.

Additionally, AxxonSoft sells its products through reseller partners who operate in Texas. AxxonSoft's webpage declares that its "partners are our only customers." *See* Ex. 13. Among the reseller "customers" listed on AxxonSoft's website is READEV, Inc., a Texas-based company specifically noting sales coverage in Texas and providing a Texas telephone number. *See* Ex. 14.

Through its partners and resellers, AxxonSoft operates pervasively in Texas, easily establishing a prima facie case supporting personal jurisdiction.

5

### B. AxxonSoft Actively Solicits Business in Texas.

AxxonSoft admits the possibility that its website solicits sales in Texas, but contends the website does not subject the company to this court's jurisdiction. Mot. at 8. This is false. AxxonSoft uses its website to directly solicit sales in Texas. *See* Ex. 14, 15; *Autobytel, Inc. v. InsWeb Corp.*, 2009 U.S. Dist. LEXIS 31287 (E.D. Tex. 2009) (finding personal jurisdiction based on a website with targeted advertising in Texas). AxxonSoft's website boasts an "extensive branch and partner network" and promises that "[r]egardless of what field you work in you can find a competent partner with years of hands-on experience to implement a solution based on AxxonSoft products at your site." *See* Ex. 15. The website directs users to click on a link to view partners by geographic region. The website then prompts users to follow links to AxxonSoft's partners' websites where AxxonSoft products may be ordered. *See* Ex. 14. At least one partner listed on AxxonSoft's site, READEV Inc., is based in Texas and advertises sales in Texas. *See* Ex. 14. AxxonSoft actively solicits business in Texas by directing its website users to interact with its Texas reseller.[2]

### C. At a Minimum, the Court Should Permit Jurisdictional Discovery Before Ruling on AxxonSoft's Motion to Dismiss.

All these facts establish a prima facie showing of personal jurisdiction. But if the Court is not yet persuaded, it should permit Blue Spike to conduct jurisdictional discovery. "If a plaintiff presents factual allegations that suggest with reasonable

---

[2] AxxonSoft's website is not like the one at issue in *Klausner Tech., v. Taridiu, LLC,* 6:11-CV-593-LED, slip op. at 4 (E.D. Tex. Sep. 24, 2012), on which AxxonSoft relies. Mot. at 8. In *Klausner Tech*, the court noted "nothing on Taridium's website targets the Eastern District of Texas or even Texas customers." AxxonSoft's website, by contrast, prompts customers to contact a Texas-based reseller, READEV, Inc. *See* Ex. 14.

6

particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Blue Spike has met that threshold and should thus be allowed to conduct jurisdictional discovery if the Court is inclined to rule against Blue Spike on AxxonSoft's motion.

## II. Blue Spike Has Sufficiently Pleaded Induced Infringement.

A party is liable for induced infringement if it knows or should know that it is inducing an act that constitutes patent infringement. *See* 35 U.S.C. § 271(b); *In re Bill of Lading*, 681 F.3d at 1339. Thus, to survive a motion to dismiss, a complaint alleging induced infringement must contain sufficient facts to plausibly show that the defendants intended a third party to infringe the patent at issue and knew the third party's acts constituted infringement. *Id.* at 1339. Answering the same arguments that AxxonSoft makes in its motion, Magistrate Judge Love recently addressed the standards for pleading "knowledge" and "intent" for induced-infringement claims.

The facts in *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229 (E.D. Tex. July 27, 2012), were almost identical to those at issue here, so Judge Love's Report and Recommendation are highly instructive and show why Blue Spike's complaint should not be dismissed. The defendants in *Patent Harbor*— like AxxonSoft in this case—moved to dismiss the induced-infringement claims, arguing the plaintiff had "failed to allege that the Defendants had knowledge of the

7

patent-in-suit." Cause No. 6:11-cv-229, Dkt. 486 at 9 (attached as Ex. 16). Judge Love rejected this argument because "the Complaint clearly alleges that the 'Defendants have actual notice of the [patent-in-suit] at least as early as the filing of this Original Complaint.'" *Id*. Judge Love concluded that "[t]o the extent Defendants' arguments relate to Patent Harbor's failure to allege pre-suit knowledge, these arguments are unpersuasive" because "[f]ailing to allege pre-suit knowledge 'is not a basis to dismiss [Plaintiff's] indirect infringement claims; as it cannot be disputed that [Plaintiff] does sufficiently plead that the Moving Defendants had knowledge of the asserted patent for at least some time during the infringing period.'" *Id*. (quoting *Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-CV-242-JRG, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2012)); *see also In re Bill of Lading*, 361 F.3d at 1345-46 (finding complaints that alleged knowledge "at the latest . . . when [defendant] was served with the complaint" were sufficient when pleaded in conjunction with facts plausibly showing intent to induce).

Judge Love also rejected the argument—identical to AxxonSoft's here—that dismissal was warranted based on the failure "to allege specific intent to induce infringement." Cause No. 6:11-cv-229, Dkt. 486 at 9. A plaintiff "need not prove its inducement case at the time of filing, nor must it provide detailed factual support for every element of inducement." *Id*. (citing *In re Bill of Lading*, 681 F.3d at 1336). "Rather, the Complaint need only plead a plausible claim for relief." *Id*. Judge Love found that the complaint before him met this standard because its allegations—that "Defendants have knowledge of the [patent-in-suit], are infringing the patent by

8

authoring DVDs with content addressable videos, and are contracting with others to author DVDs with content addressable videos"—gave rise to a plausible inference "that Defendants induced others to infringe the [patent-in-suit] by directing and controlling them through contract." *Id*. at 10. Critically, Judge Love noted that "although these allegations do not provide an extraordinary amount of detail regarding the elements of inducement, they nevertheless provide Defendants with sufficient notice of the allegedly unlawful conduct in which they engaged." *Id*. "[M]aking all reasonable inferences in favor of [the plaintiff]," it was "plausible to infer that Defendants induced third-party contractors to infringe" the patent-in-suit. *Id*. (citing *Bill of Lading*, 681 F.3d at 1340).

AxxonSoft's arguments are virtually identical to those that Judge Love rejected in *Patent Harbor*. AxxonSoft argues it was not enough for Blue Spike to assert knowledge "at least as early as the service of this complaint." Mot. at 12. Yet the Court found that *this exact wording* precluded dismissal in *Patent Harbor*. Cause No. 6:11-cv-229, Dkt. 486 at 9.[3] Likewise, AxxonSoft argues that Blue Spike has not pleaded sufficient facts to show intent, but Blue Spike alleges facts that are at least as compelling as those in *Patent Harbor*. For example, Blue Spike alleges that AxxonSoft makes, uses, offers for sale, or imports into the U.S. products, systems, or services including its set-top box system-on-a-chip platform software, systems, and technology, enabled with automatic content recognition, that infringe

---

[3] AxxonSoft argues that if the Court does not Grant its motion to "dismiss Blue Spike's claims of indirect infringement in their entirety, the Court should and [sic] dismiss the claims to the extent they are based on any pre-filing activity." Mot. at 13. AxxonSoft is mistaken; the exact date when AxxonSoft acquired knowledge is a fact question that may be illuminated by discovery, so it would be premature for the Court to cut off pre-suit inducement claims at this point. The story would be different if Blue Spike had actually conceded a lack of pre-suit knowledge, but it has not done so.

9

the patents in suit. Cause No. 6:13-cv-00106-MHS, Dkt. 1 at ¶27. The identification of these specific consumer products permits a reasonable inference that AxxonSoft intends its customers to use them. Exhibits 17 through 21 of this opposition provide additional evidence that the accused products have specific infringing capabilities that AxxonSoft is aggressively marketing in an effort to induce consumer use.[4]

### III. Blue Spike Has Sufficiently Pleaded Contributory Infringement.

AxxonSoft also argues that Blue Spike has not pleaded facts to permit an inference that the accused products have no substantial non-infringing use. Mot. at 14. AxxonSoft is again mistaken. The complaint specifically describes that the patents-in-suit are foundational to all of today's widespread biometric-identification applications. Cause No. 6:13-cv-00106-MHS, Dkt. 1 at ¶25. Biometric identification is the accused products' only advertised use. *See* Ex. 17 (product brochure identifying Face Intellect as a biometric product). At this stage, it is reasonable for the Court to infer that this product has no other, non-infringing use—especially in light of Blue Spike's averment that it does not. *Cf. In re Bill of Lading*, 681 F.3d at 1339 (holding that plaintiff had not stated a claim for contributory infringement because, unlike Blue Spike's complaint against AxxonSoft, the amended complaints in *In re Bill of Lading* "actually make clear on their face that Appellees' products do have substantial non-infringing uses"). It is true that the complaint itself does not contain extensive analysis of why the accused product has no substantial non-

---

[4] Exhibit 17, a product brochure, provides additional information on how this infringing technology works Exhibits 18 through 21 are AxxonSoft press releases and trade show announcements touting the accused products' biometric recognition capabilities. Comparing this information to Blue Spike's description of how the patents-in-suit work, *see* Cause No. 6:13-cv-00106-MHS, Dkt. 1 at ¶¶21-25, it is easy to conclude that Blue Spike's infringement allegations are facially plausible.

infringing uses, but, again, a plaintiff need not plead each individual element of a claim for indirect infringement to survive dismissal.

It is critical to bear in mind that "it is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement." *Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*, No. CIV.A 209CV148TJW, 2010 WL 1409245, at *4 (E.D. Tex. Apr. 1, 2010). "Until then, a statement that a defendant makes an embodying device would provide that defendant with sufficient notice as to what it will be required to defend." *Id*. Applying this standard, Blue Spike has adequately pleaded both induced infringement and contributory infringement.

### III. Based on a Recent Decision From This Court, Blue Spike Concedes That Its Willful-Infringement Claims Should Be Dismissed for Now.

A recent decision from this Court warrants dismissing Blue Spike's willful-infringement claims—at least for now. Blue Spike's complaint never alleged pre-filing willfulness, as Blue Spike had no basis for alleging pre-filing willfulness (although future discovery may change that). Instead, Blue Spike's willfulness allegations dealt with post-filing conduct, including the fact that AxxonSoft has continued to infringe the patents-in-suit even after being put on actual notice of Blue Spike's patents-in-suit and how AxxonSoft's accused products infringe those patents. See, e.g., Cause No. 6:13-cv-00106-MHS, Dkt. 1 at ¶¶37, 45, 53, 61. Yet this Court recently held that the receipt of a patent holder's complaint is not enough, by itself, to support claims for willful infringement. *See Touchscreen Gestures LLC v. Research in Motion Ltd.*, Case No. 6:12-263-MHS, Dkt.22, Order on Motion to

11

Dismiss at 3-4 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 22). Accordingly, Blue Spike concedes that its willful-infringement claims should be dismissed for now, but asks the Court to hold open the possibility of allowing Blue Spike to seek leave to amend its complaint if it "uncovers factual support" for claims of willful infringement. Id. at 5.

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny AxxonSoft's motion to dismiss as to lack of personal jurisdiction, venue, and Blue Spike's claims for contributory and induced infringement.

In light of the Court's recent order in *Touchscreen*, Blue Spike concedes it is proper to dismiss the willful-infringement claims, but asks that the Court not foreclose Blue Spike's ability to seek leave to amend its complaint if Blue Spike uncovers factual support for claims of pre-filing or post-filing willfulness.

April 11, 2013    Respectfully submitted,

 /s/ Randall T. Garteiser
Randall T. Garteiser
Lead Attorney
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
Christopher S. Johns
Texas Bar No. 24044849
cjohns@ghiplaw.com
Kirk J. Anderson
California Bar No. 289043
Peter S. Brasher
California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

       I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 29th day of April, 2013. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                                            /s/ Randall T. Garteiser
                                                            Randall T. Garteiser