UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC,<br><br>　　　*Plaintiff,*<br><br>v.<br><br>Texas Instruments, Inc., et al.,<br><br>　　　*Defendants.* | § § § § § § § § § § | Case No. 6:12-cv-499 MHS<br><br>Lead Case<br><br>Jury Trial Demanded |
| Blue Spike, LLC,<br><br>　　　*Plaintiff,*<br><br>v.<br><br>MorphoTrak, Inc. and<br>Safran USA, Inc.,<br><br>　　　*Defendants.* | § § § § § § § § § § | Case No. 6:13-cv-89 MHS<br><br>Consolidated Case<br><br>Jury Trial Demanded |

**Plaintiff's Opposition to Defendants' Motion to Transfer Venue**

Plaintiff Blue Spike, LLC—whose entire business operation is in the Eastern District of Texas—opposes Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). The motion fails for at least three independent reasons: (1) considerations of judicial efficiency and economy weigh heavily against transfer, since the Court has consolidated this case with dozens of others based on common questions of law or fact related to the alleged infringement of Blue Spike's patents-in-suit; (2) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—independently precludes a finding that another venue is "clearly more

convenient"; and (3) Defendants have not shown that the other public- and private-interest factors clearly weigh in favor of transfer.

## Factual Background

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric identification and security systems. Many of today's biometric identification and security providers—including Defendants—have built their companies by infringing Blue Spike's patents. Blue Spike has filed over fifty lawsuits against patent infringers in this Court, which has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact." *See* Ex. 1 (consolidation order).

Safran U.S.A. is a "top-level service provider in the U.S." and is "based in Texas." *See* Ex. 20; Mot. at 10. Its offerings include "multi-biometric technologies for fingerprint, iris and facial recognition." *See* Ex. 20. These biometric solutions are founded on Blue Spike's patented technology and are actively sold and serviced in Texas.

MorphoTrak, a subsidiary of Safran U.S.A., claims to be the "world leader in multibiometric technologies for fingerprint, iris and facial recognition, and an acknowledged expert in identification systems." *See* Ex. 17. It provides "biometric and identity management solutions to the U.S. and Canadian markets." *Id*. Like Safran U.S.A., MorphoTrak's biometric products

are founded on Blue Spike's patented technology and are actively sold and serviced in Texas.

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The threshold inquiry in determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.12[3] (3d ed. 2012) ("[T]he party seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district."). If that threshold inquiry is met, the Court then balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).[1] The party seeking transfer must show good cause for transfer and also show that the transferee venue is "clearly more

---

[1] Private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Nintendo*, 589 F.3d at 1198. Public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id.*

convenient" than the transferor venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *TS Tech*, 551 F.3d at 1319.

## Argument

Recent opinions from this Court, the Fifth Circuit, and the Federal Circuit show why the Court should deny Defendants' motion to transfer the case to the Central District of California.

**I.    The "Paramount" Federal Interest in Judicial Efficiency and Economy—Without More—Defeats Transfer in This Consolidated Case.**

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011). Indeed, judicial economy represents a sufficient basis to deny transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010); *see also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No.

6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

Here, more than 50 cases involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact" and because consolidation "would promote efficient case management." *See* Ex. 1 at 14-15. Transfer to another venue would unjustifiably burden the federal courts, cause inefficiencies, and waste judicial resources. *See Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 2).

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Id*. Denying transfer, the Court reasoned that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id*. Other recent cases—all on point—likewise counsel against transfer. *See Oasis Research, LLC v. Pro Softnet Corp*., No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as

Ex. 3) (holding that because plaintiff had filed multiple suits in this district concerning the same four patents, concerns of judicial economy weighed heavily against transfer; if the Court transferred the case, "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 4) (denying motion to transfer patent suit that had already been consolidated with another suit, as "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Transfer is especially inappropriate here given the Court's findings that all of Blue Spike's cases in this District "involve a common question of law or fact" and that keeping them consolidated "would promote efficient case management." Ex. 1 at 14-15. Defendants' argument that transfer would not cause inefficiency (Dkt. 610 at 13-14) relies heavily on a misapplication of Judge Schneider's transfer order in *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 5). There, Judge Schneider held that even though the plaintiff had filed numerous suits in this District concerning a single patent, transferring one of those suits elsewhere would not cause inefficiency because the plaintiffs' suits had no significant "common issues." *Id*. at 10. But in contrast to the situation in *Geotag* in which "none of the cases involve[d] related defendants or

6

overlapping services" (*id.*), the Court in this case has already held that all of Blue Spike's suits in this District "involve a common question of law or fact" and that keeping them consolidated "would promote efficient case management." Ex. 1 at 14-15. Also critical, the defendants and their services overlap: Defendants are both related to MorphoTrust, which is a defendant in another of the consolidated actions, and all three defendants (Safran, MorphoTrak, and MorphoTrust) share accused products and services.

Yet despite the overlap of defendants and accused products, Defendants and their affiliate now ask the Court to grant transfers that would cause at least *three* federal courts to expend duplicative efforts considering common questions of law and fact: (1) MorphoTrak and Safran have moved for transfer to the Central District of California; (2) their affiliate MorphoTrust seeks a transfer to the District of New Jersey; and (3) the other consolidated cases would remain in this District. This result would offend the "paramount" consideration of judicial economy (*In re Google*, 412 F. App'x at 296), causing at least three courts "to spend significant resources to familiarize [themselves] with the patents, prosecution history, claim construction, and other issues" as well as other common issues related to overlapping defendants and accused products. *Oasis Research* (attached as Ex. 3), at 11.

**II.  The Private-Interest Factors Likewise Weigh Against Transfer—
and Certainly Do Not Show the Central District of California To
Be Clearly More Convenient.**

**A. Blue Spike's Interests—Including the Location of and
Burdens on Blue Spike, its Witnesses, and its Sources of
Proof—Also Count in the Transfer Analysis.**

Defendants forget that this case is not only about them. There is a

plaintiff in this case whose interests and burdens are also relevant:

- Blue Spike plans to call witnesses from Texas;
- Blue Spike's inventor and CEO lives in Tyler;
- Blue Spike was incorporated in Texas in May 2012;
- Blue Spike has its headquarters and principal place of business in
  this District;
- and its employees, computer servers, and sources of proof are all
  located here.

*See* Moskowitz Decl. ¶¶1-6; Compl. ¶2.

While Defendants argue that Blue Spike's year-old connections to this

forum were manufactured to manipulate venue and should therefore be

disregarded (Dkt. 610 at 1, 10-11), this Court's precedents dictate otherwise.

*See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-

JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that

WRT was incorporated more than four months before this suit was filed, and

that its direct parent corporation has nine employees in the Eastern District of

Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created

solely to manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters.,

Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010)

(plaintiff's presence in this District was not "recent" or "ephemeral" where

Plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

More important, litigating this action in California would be inconvenient and burdensome for both Blue Spike and for Scott Moskowitz, the CEO and inventor at Blue Spike. A transfer would dramatically increase the costs of litigation for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious hardship for Moskowitz personally, as he suffers from medical issues that make it very painful for him to travel. Moskowitz Decl. ¶¶7-10; *see NGC Worldwide, Inc. v. Siamon*, No. 3:02CV1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases that hold "[t]he health concerns of a party or witness can be an important factor in the determination of whether a § 1404(a) transfer is proper"). Those burdens are critically important in the transfer analysis because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

And there are reasons to doubt Defendants' claim that a Texas forum is too inconvenient for them. Defendant Safran U.S.A. is *based* in Texas and has several of its divisions located here. Mot. at 10; Ex. 14. In addition to undercutting Defendants' arguments about convenience, Safran's corporate offices and other ties to Texas make it likely that Safran-related witnesses and

documents will be located in Texas. Nor can MorphoTrak make out a strong case of inconvenience—especially when compared to the burdens that transfer would impose on Blue Spike. MorphoTrak claims it is "a world leader in multibiometric technologies" with "over 450 persons" employed in "regional facilities throughout the U.S." and a "customer base [that] includes over 50% of the law enforcement biometric identification systems at the state and local level." *See* Ex. 13. The city of El Paso, Texas is one such customer. *See* Ex. 18, 19. MorphoTrak is not a stranger to Texas, having a registered agent, president, vice president, and principal place of business here. *See* Ex. 9, 10, 11, 12. Until recently, MorphoTrak had a major plant in Austin, Texas. *See* Ex. 13. MorphoTrak is fully controlled by its Texas-based parent, Safran U.S.A. Mot. at 4. Given that Defendants have voluntarily established this ongoing business relationship with Texas, it is hard to credit their assertion that litigating in Texas would be unduly burdensome. Defendants' extensive Texas connections prevent them from making the necessary showing that California would be a "clearly more convenient" venue. *Volkswagen II*, 545 F.3d at 315.

In contrast to Defendants' pervasive Texas contacts, Blue Spike has no such connections to California. Blue Spike has no offices, no employees, no customers, and no other meaningful contacts in California. Moskowitz Decl. ¶7. And, unlike Defendants, Blue Spike does not enjoy nine-figure revenues. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and

10

commercialize. Defendants' argument that it is inconvenienced by the distance from California to Texas applies equally to Blue Spike. Mot at 4-5. Yet, whereas Defendants have extensive operations in Texas, Blue Spike lacks any meaningful California contacts.

### B. The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.

Defendants claim that the majority of its likely evidence is located in California. Mot. at 9-10. Even if true, this is only part of the story, as all of Blue Spike's sources of proof are located in this District. *See* Moskowitz Decl. ¶¶1-6; Compl. ¶2. Though the Defendants would ignore this fact, the location of Blue Spike's evidence matters. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached as Ex. 6) (fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer). Further, Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; its entire operation has been here for roughly a year. *See* Moskowitz Decl. ¶4. This means that the presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5 (presence of plaintiff's evidence in this District weighed against transfer given that plaintiff's connection to this District was not "recent" or "ephemeral"; plaintiff had opened its office here four months before filing suit, and two of its three principals lived here).

### C. The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.

Defendants argue that the California court will have compulsory process power over more nonparty witnesses than this Court will. Mot. at 11-12. This argument fails because Defendants have not specifically identified any such witnesses. The party seeking transfer bears the burden of identifying unwilling third-party witnesses that would benefit from transfer, and the weight attributed to such witnesses "is undercut by [the movant's] failure to identify particular witnesses or documents that would require compulsory process." *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585, at *6-7 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 5); *see also Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses). Additionally, the whole topic is speculative given that this lawsuit is in its early stages, as it is far from clear which witnesses will ultimately turn out to be relevant. *See Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 8 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 7) (noting "the speculative nature of weighing this factor as to convenience for trial at the early stages of [a] proceeding").

### D. The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.

Defendants "fail to specifically identify" any witnesses (*Cell & Network Selection*, Ex. 7 at 9) and thus fail to allow the Court to give any weight to their argument that their unnamed potential witnesses would "experience great inconvenience" if the case remained in Texas (Mot. at 13). Defendants wrongly overlook Blue Spike's concrete identification of Texas resident Scott Moskowitz—an essential witness to the case—and Blue Spike's assertion that at least some of its 15 employees in this District will also serve as witnesses. *See* Moskowitz Decl. ¶6. Moreover, assigning much weight to the costs of attendance for willing witnesses is premature given that the parties have not even exchanged Rule 26 disclosures, meaning it is far from clear which potential witnesses will actually end up testifying. *See GHJ Holdings, Inc. v. Mag Instrument, Inc.*, No. 5:10-cv-230, Dkt. No. 26 (E.D. Tex. Feb. 5, 2011) (attached as Ex. 8) (holding supplemental briefing regarding disclosures should be submitted before a transfer motion is considered).

### III. The Public-Interest Factors Do Not Show the Central District of California To Be Clearly More Convenient.

None of the public-interest factors support transfer—much less show that the Central District of California is a "clearly more convenient" forum. *In re Volkswagen,* 545 F. 3d at 315. Defendants contend that the Central District of California "has a far greater localized connection to this case" than this District. Mot. at 14-15. Again, Defendants ignore half the equation. The

allegations here are that Defendants infringed Blue Spike's patents, harming Tyler-based Blue Spike and its Texas-based owners and employees. *See Atmel*, Ex. 6 at 16 ("The residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business."). And there are other "local interests" to consider. Defendants have extensive contacts and operations in Texas, including contracts with government entities, and Defendants have engaged in significant lobbying activities in Texas. *See, e.g.*, Exs. 15, 16. This District and the rest of Texas have an interest in having Defendants' alleged patent infringement adjudicated here, as Defendants not only have sold their accused products here but also have actively sought to influence and receive the benefit of Texas's laws and business climate.

Last, while it is true that this District and the Central District of California are both competent to apply federal patent law, this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology, since the Court is adjudicating over 50 other suits involving the same patents-in-suit.

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny Defendants' motion to transfer venue.

Respectfully submitted,

_____/s/ Randall Garteiser_____

Randall T. Garteiser
  Texas Bar No. 24038912
  randall.garteiser@sftrialattorneys.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@sftrialattorneys.com
Christopher S. Johns
  Texas Bar No. 24044849
  chris.johns@sftrialattorneys.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike LLC*

15

**Certificate of Service**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on May 3, 2013.

/s/ Randall Garteiser