# Exhibit 5

# United States District Court
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| GEOTAG, INC. | § | |
| | § | |
| v. | § | Case No. 2:10-cv-570 |
| | § | |
| AROMATIQUE, INC., ET AL | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants AT&T Services, Inc. and AT&T Mobility LLC's Motion for Severance and Transfer to the Northern District of Texas (Doc. No. 444). Having fully considered the parties' arguments, the undisputed facts, and the applicable law, the Court **GRANTS** the motion. The Court **GRANTS** severance and **GRANTS** transfer of venue to the United States District Court for the Northern District of Texas Dallas Division.

### I. BACKGROUND

This litigation involves alleged patent infringement of U.S. Patent No. 5,930,474 (the '474 patent) titled "Internet Organizer for Accessing Geographically and Topically Based Information." This litigation includes a large number of related patent infringement cases. In these cases, Plaintiff accuses several hundred defendants of infringing the '474 patent by providing various locator services on their commercial websites. In general, the technology allows consumers to visit defendants' websites to obtain a map and listing of nearby locations or services.

In this particular case, Plaintiff GeoTag, Inc. (GeoTag) is incorporated under the law of Texas and has its headquarters and principal place of business within the Eastern District of Texas in Frisco, Texas. Defendants AT&T Services, Inc. and AT&T Mobility LLC (collectively,

AT&T) are Delaware corporations with their headquarters within the Northern District of Texas in Dallas, Texas. No other defendants have joined this motion.

AT&T now argues that GeoTag's claims against it should be severed from this case and transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). GeoTag is unopposed to severance as long as the severed case, if not transferred, is treated as consolidated for pre-trial purposes with the other co-pending suits. GeoTag opposes transfer and claims that AT&T cannot show that the Northern District of Texas is a clearly more convenient forum.

The Court will not permit GeoTag to conditionally limit its opposition to severance. Consistent with the parties' positions, the Court finds severance appropriate.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*Volkswagen II*). Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted. *Volkswagen II*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08 (1947). The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314. Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred. *Id.* at 315 n.10.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Volkswagen II,* 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).


The relevant factors are divided between these private and public interests. *Gilbert*, 330 U.S. at 508. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quotation omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (quotation omitted). These factors are not exhaustive, and no single factor is dispositive. *Id.*

### III. DISCUSSION

#### A. *Proper Venue*

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have originally been filed in the destination venue, here, the Northern District of Texas. *Volkswagen II*, 545 F.3d at 312. In this case, the parties are in agreement that GeoTag's claims against AT&T could have originally been brought in the proposed transferee forum. Accordingly, the Court finds the initial threshold satisfied.

#### B. *Private Interest Factors*

##### 1. The Relative Ease of Access to Sources of Proof

The first private interest factor is the relative ease of access to sources of proof. This factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. Although documentary evidence is often stored electronically, the Court considers the physical location of the evidence. *In re Genentech, Inc.*, 566 F.3d 1338,

1345–46 (Fed. Cir. 2009). Documents relocated in anticipation of litigation are not considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (explaining that a corporate party's relevant discoverable material is generally located at its headquarters).

AT&T argues that all of the relevant evidence is located at its headquarters within the Northern District of Texas. AT&T indicates that its headquarters is approximately 0.2 miles from the federal courthouse in Dallas. Additionally, AT&T contends that even though GeoTag is headquartered within the Eastern District of Texas, its headquarters is only 24 miles from the Dallas courthouse. Consequently, both parties are considerable closer to the Dallas courthouse than they are to the Marshall courthouse, which is in excess of 100 miles away from the location of either party.[1] AT&T concludes that all source of proof are more readily accessible from the Northern District of Texas.

GeoTag maintains that it has considerable documentary evidence located at its headquarters within the Eastern District of Texas, including documents relevant to conception, reduction to practice, patent prosecution, licensing, and enforcement of the '474 patent. Under certain circumstances, credence must be given to a plaintiff's ties to the transferor venue. "[W]eight given to the location of [plaintiff's] documents is determined by whether [plaintiff] is

---

[1] The parties' briefing uses Tyler, Texas as the existing venue for this suit. The Scheduling Order states that the pretrial conference and trial setting will occur in Tyler, Texas. The parties are correct that the pretrial conference will be held in Tyler. During the pretrial conference the Court will announce a trial date within four weeks of the pretrial conference. The trial itself will be held in Marshall, Texas, where this case was originally filed. Accordingly, the Court uses the Marshall courthouse as its reference point within the Eastern District of Texas for purposes of this Order.

an 'ephemeral' entity." *NovelPoint Learning LLC v. LeapFrog Enters. Inc.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010); *see In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam) (describing a plaintiff's offices within the transferor forum as "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"). Here, GeoTag's ties to the Eastern District of Texas are not recent or ephemeral. GeoTag and its predecessors involved in the licensing and enforcement of the '474 patent have been located in this district since 2007. GeoTag's executive management consists of Chief Executive Officer and lead inventor John W. Veenstra and President and Chief Financial Officer Lawrence P. Howorth. Both reside within the transferor venue in Plano, Texas. Furthermore, Mr. Veenstra has resided in the district since 2007. GeoTag also employs several independent contractors in connection with its business at its Frisco headquarters, where all of its documents are located. Additionally, the Court finds GeoTag's presence in Eastern District of Texas is not an artifact of prior litigation. *See In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 561–62 (Fed. Cir. 2011). The Court does not believe that GeoTag's presence in the Eastern District of Texas is in anticipation of litigation or is an effort to forum shop. Rather, GeoTag's strong connection to the Eastern District of Texas is independent of this and prior litigation.

GeoTag also highlights that a number of AT&T's servers which host the accused store locator functionality are located in Allen, Texas, within the Eastern District of Texas. AT&T responds that although these particular servers are within the transferor venue, they are significantly closer to Dallas than Marshall. Furthermore, AT&T indicates that it intends to produce its source code in Dallas at its headquarters.

Even though GeoTag maintains strong ties to the Eastern District of Texas, the bulk of the relevant evidence, including GeoTag's documents, is more easily accessed from the Dallas

Division of the Northern District of Texas. On balance, this factor weighs slightly in favor of transfer to the Northern District of Texas.

## 2. The Availability of Compulsory Process

The next factor is the availability of compulsory process. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche,* 587 F.3d at 1337–38. This factor requires the Court to look at non-party witness convenience rather than convenience of the party witnesses. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum. *See Volkswagen II*, 545 F.3d at 316; *see Volkswagen II*, 545 F.3d at 304 (describing that Rule 45 of the Federal Rules of Civil Procedure protects non-party witnesses who live or work more than 100 miles from the courthouse).

AT&T argues that two third-party witnesses are located within the absolute subpoena power of the Northern District of Texas. AT&T identifies one witness as SuperMedia, a company that developed an alleged piece of prior art. AT&T only identifies the other witness as an individual in Arlington, Texas that also has knowledge regarding this alleged prior art. Neither party identifies any non-party witnesses located within the Eastern District of Texas.

A defendant bears the burden of identifying unwilling third-party witnesses that would benefit from the transfer. *See Azure Networks v. CSP PLC*, No. 6:11-cv-139, at 12 (E.D. Tex. June 25, 2012) (collecting cases in which the court required defendant to specifically identify third-party witnesses). The identification of SuperMedia weighs in favor of transfer. But the weight attributed to SuperMedia and the Arlington witness is undercut by AT&T's failure to

identify particular witnesses or documents that would require compulsory process. *See Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, at 14 (E.D. Tex. Apr. 19, 2012); *Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses). Importantly, in the event that SuperMedia or the Arlington witness is required to testify at trial, the Court has the authority to compel them to attend trial. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (stating that a "person may be commanded to attend a trial by traveling from any such place within the state where the trial is held")

Neither party has specifically identified any uncooperative non-party witnesses. But the proposed transferee forum would have absolute subpoena power over SuperMedia and the Arlington witness. The existing forum only has the authority to compel these witnesses to appear at trial. Therefore, the Court finds this factor counsels slightly in favor of transfer.

### 3. The Cost of Attendance for Willing Witnesses

One of the most important factors is the cost of attendance for witnesses. In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and non-party witnesses. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (*Volkswagen I*) (requiring courts to "contemplate consideration of the parties and witnesses"). Nevertheless, the convenience to non-party witnesses is afforded greater weight than that of party witnesses. *NovelPoint*, 2010 WL 5068146, at *6. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. The greater distance

witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. *See Volkswagen I*, 371 F.3d at 205.

As a threshold matter, the Dallas and Marshall courthouses are greater than 100 miles apart. Thus, the Court must assess the inconvenience to witnesses of having to travel to one venue over the other.

Regarding non-party witnesses, AT&T contends that it will likely require witnesses to travel from California, Georgia, and Massachusetts to testify. AT&T additionally states that the non-party inventors are located in California and Illinois. Again, AT&T fails to specifically identify these witnesses. The Court affords these general assertions less weight because of their speculative nature. GeoTag does not identify any non-party witnesses.

Rigid application of the transfer principles dictates that Dallas would be more convenient for the non-party witness in California while Marshall would be more convenient for the non-party witnesses in Illinois, Georgia, and Massachusetts. Yet, in practical terms, neither forum is clearly more convenient than the other for any of these non-party witnesses. *See In re Genentech*, 566 F.3d at 1344 (explaining that witnesses that "will be required to travel a significant distance no matter where they testify" are discounted under the 100-mile rule application).

With respect to party witnesses, AT&T states that it will have witnesses travel from Bothell, Washington, Oklahoma City, Oklahoma, Atlanta, Georgia, and from its headquarters in Dallas. AT&T does not identify any of these witnesses or provide any indication how their testimony relates to this case. Nevertheless, the theoretical witnesses from Washington, Oklahoma, and Dallas will likely find the Northern District of Texas a more convenient forum while any witnesses in Georgia would find Marshall more convenient.

The proposed transferee forum is also more convenient to GeoTag's potential party witnesses. Mr. Veenstra and Mr. Lawrence both live in Plano and work at GeoTag's headquarters in Frisco. Thus, travel to Dallas is considerably more convenient over travel to Marshall. GeoTag also identifies Elizabeth Morgan as a party witness but only states that she resides within the Eastern District of Texas.

To a limited extent, the close proximity of the two forums indicates that either venue would be equally inconvenient for the large majority of potential witnesses. But there are a number of witnesses for both parties that are within close proximity of the Dallas Division. There are no witnesses within a close proximity of Marshall. "Thus, maintaining trial in the Marshall Division would require witnesses to undergo the cost, time, and expense of travel which would be significantly reduced if this case was transferred to the Dallas Division." *In re Verizon*, 635 F.3d at 561. Therefore, this factor encourages transfer.

### 4. All Other Practical Problems

The fourth factor serves as a catchall for concerns that may weigh for or against transfer. For example, transfer is disfavored when the issue is raised late in the case. *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009). And judicial economy may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 528 F.3d 1342, 1345 (Fed. Cir. 2010). Generally, other practical problems focus on issues of judicial economy. Particularly, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

This litigation involves over 100 cases against in excess of 400 defendants. Although GeoTag asserts the '474 patent in each case, none of the cases involve related defendants or overlapping products or services. GeoTag argues that having a single court familiar with the facts and legal issues would produce significant gains in judicial economy. The Court disagrees.

Although all of the cases involve infringement claims, none of them share the same accused services. GeoTag claims that common issues between defendants provide gains in efficiency. But this argument is unavailing. Geotag has not pointed to any "common issues" that would not be present in all infringement cases (i.e. claim construction). This is not a situation where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute.

The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filling cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer law and the recently enacted America Invents Act. *See* Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011) (codifying new law for determining proper joinder in patent cases).

Since this case is still in its infancy, and because problems with judicial economy do not exist, this factor is neutral.

C. *Public Interest Factors*

1. <u>**The Administrative Difficulties Flowing From Court Congestion**</u>

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. Of all the venue factors, this is the "most speculative." *Id.* When "several relevant factors weigh in favor of transfer and

others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

Here, AT&T argues that the Northern District of Texas has fewer cases per judge (407 versus 488) and a faster median time from filing to trial (20.2 versus 23.7 months) than the Eastern District of Texas. The Court finds that the difference in the statistics offered by AT&T insignificant. There is no indication that either venue suffers from issues stemming from administrative difficulties associated with court congestion. Therefore, this factor is neutral.

### 2. The Local Interest in Having Localized Interests Decided at Home

The next public interest factor is the local interest in adjudication of the case. Traditionally, the location of the alleged injury is an important consideration. *In re TS Tech*, 551 F.3d at 1321. When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *Hoffman-La Roche*, 587 F.3d at 1338. The local interest in the litigation is an important consideration because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.

AT&T alleges that the Northern District of Texas has a strong local interest in resolving this dispute because AT&T is headquartered in that district. AT&T states that it is a prominent corporate citizen in the Dallas Division and that it employs over 20,000 residents in the Northern District of Texas. Therefore, the Northern District of Texas maintains a strong local interest in the resolution of this suit.

Conversely, GeoTag maintains corporate ties within the Eastern District of Texas. Therefore this venue also has a local interest in the outcome of this case. In addition to its headquarters in the transferor forum, GeoTag employs several independent contractors in connection with its business at its headquarters. As previously discussed, GeoTag's ties to the existing venue are not recent or ephemeral and must be considered. Since neither district has a clearly established local interest over the other, this factor is neutral.

### 3. The Familiarity of the Forum With the Governing Law

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court notes that both the Northern District of Texas and the Eastern District of Texas are equally capable of applying the law regarding patent infringement. *See In re TS Tech*, 551 F.3d at 1320. Accordingly, as the parties agree, this factor is neutral.

### 4. The Avoidance of Unnecessary Problems of Conflict of Laws

The parties acknowledge that no conflict of laws questions are expected in this case. Thus, this factor is neutral.

### IV. CONCLUSION

Having fully considered all of the private and public interest factors, AT&T has met its burden of showing that the Northern District of Texas is "*clearly* more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 315 (emphasis added). In balancing all of the factors, the Court finds that AT&T has meet its "significant burden" under § 1404(a). *Id.* at 315 n.10. Accordingly, AT&T's motion to sever and transfer (Doc. No. 444) is **GRANTED**. The Court **GRANTS** severance and **ORDERS** that these severed claims be immediately transferred

to the United States District Court for the Northern District of Texas Dallas Division. The 20-day waiting period established in Local Rule CV-83(b) is waived.

**It is SO ORDERED.**

**SIGNED this 14th day of January, 2013.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE