**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:12-cv-499 LED |
| | § | |
| **TEXAS INSTRUMENTS, INC.,** | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| Plaintiff, | § | |
| | § | Case No. 6:13-cv-106 MHS |
| v. | § | [Consolidated with |
| | § | Case No. 6:12-cv-499 LED] |
| **AXXONSOFT US, INC. and** | § | |
| **AXXONSOFT LTD.,** | § | |
| Defendants. | § | |

**AXXONSOFT US, INC. AND AXXONSOFT LTD.'S REPLY BRIEF
<u>IN SUPPORT OF MOTION TO DISMISS</u>**

I.      INTRODUCTION

Plaintiff Blue Spike LLC's ("Blue Spike") Opposition (D.I. 700) ("Opp'n") to Defendants AxxonSoft Ltd. and AxxonSoft US Inc.'s (collectively, "AxxonSoft") Motion to Dismiss (D.I. 645) ("Mot") falls short of curing the fatal deficiencies contained in Blue Spike's Complaint.  First, AxxonSoft is a stranger to this District and not subject to personal jurisdiction here.  Notwithstanding Blue Spike's arguments to the contrary, imposing personal jurisdiction on the basis of independent third parties' actions or the operation of a passive website are anathema to the most basic principles of due process.  Second, Blue Spike has repeatedly and unabashedly failed to support its claims of indirect infringement with credible factual allegations giving rise to a plausible claim for relief.  Instead, Blue Spike invites the Court to impose on AxxonSoft the substantial burden of discovery in this case simply so that Blue Spike may at last find the factual allegations it needed to file this suit in the first instance.  In short, Blue Spike's Opposition offers no good reason why this case should continue and further demonstrates precisely why AxxonSoft's well-reasoned Motion to Dismiss should be granted in its entirety.

II.     PERSONAL JURISDICTION

   A.    **The Acts of Independent Third Parties Do Not Subject AxxonSoft to General Personal Jurisdiction**

In its Opposition, Blue Spike *for the first time* introduces factual "support" for its allegation that AxxonSoft's "Continuous and Systematic Contacts with Texas" establish general personal jurisdiction.[1]  Opp'n at 4.  The exercise of general personal jurisdiction over an out-of-

---

[1] Blue Spike does not specifically allege the type of personal jurisdiction to which AxxonSoft's "minimum contacts" allegedly subject it. (Opp'n at 4-7.)  It is undeniable from Blue Spike's choice of language and the absence of any facts specifically tying alleged acts of infringement to Texas, however, that Blue Spike alleges only general personal jurisdiction.  *See LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("General jurisdiction arises when a defendant maintains 'continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts.") (quoting *Helicopteros Nacionales de*

1

state corporate defendant is proper only if the corporation is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). According to Blue Spike, AxxonSoft's home is in "Texas *via its extensive network of partners*." Opp'n at 4 (emphasis added). Because AxxonSoft's third-party *partners* may be subject to personal jurisdiction in Texas, Blue Spike argues, AxxonSoft *itself* must also be subject to personal jurisdiction in Texas. This is simply not the law: "The test for minimum contacts focuses on *defendant's* actions with the forum state and not a third party's independent actions." *Garnet Digital, LLC v. Apple, Inc.*, Case No. 6:11-cv-647, slip op. at 4 (E.D. Tex. Sep. 27, 2012) (Davis, J.) (emphasis original) (Declaration of Stephen C. Crenshaw, "Crenshaw Decl." Ex. A); *see Advanced Biological Labs., SA v. Ameripath, Inc.*, Case No. 2:07 CV 31, 2008 U.S. Dist. LEXIS 30757, at *5-6 (E.D. Tex. Apr. 14, 2008) (Davis, J.) (granting motion to dismiss where third party's "contacts with Texas, which are [the third party's] unilateral activities, do not subject [defendant] to personal jurisdiction in Texas.").

Blue Spike's "vicarious jurisdiction" argument is contrary to the most basic principles of fairness, wholly unsupported by law,[2] and in violation of AxxonSoft's federal due process rights. Blue Spike does not allege that AxxonSoft operates pervasively in Texas on its own. Instead, AxxonSoft operates pervasively throughout Texas "by extension" of the unrelated acts of independent, third-party partners. Opp'n at 4. Somehow, these unrelated acts alert AxxonSoft

---

*Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Indeed, Blue Spike has not and cannot allege any facts supporting the inference that AxxonSoft has committed *any* acts of alleged infringement within this district sufficient to support a specific jurisdiction. *See id.* ("Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

[2] It is particularly telling that Blue Spike fails to support this absurd argument with a *single* citation to controlling, persuasive, or even relevant case law. (Opp'n at 4-5.) In fact, Blue Spike made *no attempt whatsoever* to distinguish AxxonSoft's extensive list of on-point and persuasive opinions of this Court that demand this case be dismissed for lack of personal jurisdiction. (Mot. at 9-10.)

that it could reasonably be haled into court wherever these acts may occur. Such an argument is facially incredible and directly contravenes all "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

In support of its baseless argument, Blue Spike identifies five of AxxonSoft's partners who "operate pervasively" throughout Texas. In each case, however, Blue Spike fails to demonstrate how the partners' alleged connection to Texas is at all germane to the present dispute. Worse, Blue Spike chose five "partners" from AxxonSoft's website - Wincor Nixdorf, inMotion International, Sony, Samsung and READEV – and categorically misrepresents AxxonSoft's connection to the partner, the partner's connection to Texas, or, in some cases, both. Opp'n at 4-5.

**Wincor Nixdorf**

Blue Spike alleges generally that AxxonSoft's "implementation of a 'joint solution'" with Austin-based Wincor Nixdorf is an instance of AxxonSoft's "pervasive" operations in Texas. Opp'n at 4; Opp'n Ex. 2. Blue Spike does not allege, however, that a single one of these "integrated solutions" actually reaches Texas. *Id.* Nor could it. Even a cursory read of AxxonSoft's press release shows that ***Russia***, not Texas, is the focus of the Wincor Nixdorf/AxxonSoft partnership. *See* Opp'n Ex. 2 ("AxxonSoft, the leader in the security systems and video surveillance software market ***in Russia***;" comments provided by "Vitalli Postolatil, CEO, Wincor Nixdorf ***Russia***;" "the TP.net is ***locally supported*** by the outstanding team of the ***Russian*** Customer Competence Center of Wincor Nixdorf;" solution created for "Smart Value Retail at Oliv'e supermarkets" a Moscow-based company.) (emphasis added). Blue Spike's attempt to tie this case to Texas through Wincor Nixdorf is further belied by the fact that the "integrated solution" utilized AxxonSoft's "Intellect POS (point-of-sale) ***cash operation module***;" a product *in no way whatsoever connected to the Accused Product* in this

3

case. *Id.* (emphasis added).

**inMotion International Ltd.**

Like Wincor Nixdorf, Blue Spike ignores the facts contained in its own "supporting" documents in a failed attempt to link inMotion International Ltd., AxxonSoft, and this District. Blue Spike points to the announcement of a partnership between "AxxonSoft GmbH and inMotion International Ltd." as further "evidence" of AxxonSoft's connection to the Eastern District "through inMotion's U.S. headquarters in Lewinsville, Texas." Opp'n at 5; Opp'n Ex. 4. First and foremost, AxxonSoft *GmbH* is not a party to this action and is wholly irrelevant to any personal jurisdiction analysis. Second, and equally important, inMotion International Ltd.'s headquarters is in Kowloon Bay, *Hong Kong*, not Texas as Blue Spike alleges. Opp'n Ex. 5. Yet again, Blue Spike's allegations fail.

**Sony and Samsung**

Blue Spike alleges that AxxonSoft's partnerships with *divisions* of both Sony and Samsung somehow connect AxxonSoft to Texas because of the *parent companies'* "extensive contact with Texas." Opp'n at 5. Tellingly, Blue Spike omits the name of Sony's subsidiary, referring to "Sony Professional Solutions *Europe*" as merely "a division of Sony." Opp'n Ex. 6. Likewise, Blue Spike neglects to mention that the AxxonSoft/Samsung Techwin partnership is focused primarily on the Russian security industry. Crenshaw Decl. Ex. B ("[E]very international company recognizes that *Russia* will soon become a leading market in terms of service and product technology. *Therefore*, building a strategic partnership between Axxon and Samsung is a very meaningful and important step for us." (emphasis added).) These omissions are misguided attempts to confer jurisdiction at best and a misrepresentation of the facts at worse. In either event, AxxonSoft's partnerships with Sony Professional Solutions Europe and Samsung Techwin have no meaningful relationship to the state of Texas or to this District.

4

**READEV, Inc.**

Blue Spike alleges that READEV, Inc. ("READEV"), a reseller of AxxonSoft products, is a "Texas-based company," but fails to provide any actual evidence of this fact. Opp'n at 5. On the contrary, the entirety of READEV and AxxonSoft's relationship was based in Colorado. Supplemental Declaration of Joel Moss, ¶¶ 4-7 (attached hereto as Ex. 14). READEV installed a non-accused AxxonSoft product in Colorado and never resold any AxxonSoft product, including the Accused Product, outside of Colorado. *Id.* ¶¶ 4, 7. The installed product was eventually uninstalled when READEV left the security industry altogether and AxxonSoft has not received any further requests since that time. *Id.* ¶¶ 6, 8. The whole of this relationship was focused on Colorado, not Texas. Even accepting Blue Spike's fallacious argument, a single sale to a company at best tenuously connected to Texas is woefully inadequate to rise to the level of pervasive operations sufficient to confer jurisdiction and survive a motion to dismiss. *See* Mot. Ex. 6, *Innovative Automation LLC v. Audio and Video Labs., Inc.*, Case No. 6:11-cv-234, slip op. at 3 (E.D. Tex. Sep. 27, 2012) (Davis, J.) ("One sale by a third-party distributor is a tenuous tie to this district and there is no precedent to support such a showing is enough to establish sufficient minimum contacts for personal jurisdiction purposes."); *see also Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769-70 (E.D. Tex. 2009) (Davis, J.) (granting motion to dismiss while holding patentee's "unsupported and directly contradicted allegations that [defendant] has an ongoing business relationship with a company based in Texas, does not support a prima facie case for either general or specific jurisdiction").

    **B.    AxxonSoft's Non-Interactive Website Does Not Actively Solicit Business in Texas**

Blue Spike argues that AxxonSoft's non-interactive website directing potential customers

to contact one of multiple listed third parties[3] for additional information is sufficient to subject AxxonSoft to personal jurisdiction in this District. Opp'n at 6. In Blue Spike's view, any reference or advertising that reaches customers in this District, no matter how passive or innocuous, would grant this Court jurisdiction. Fortunately, for the preservation of due process, this is not the Federal Circuit's view: "A passive website is insufficient to establish purposeful availment for the purpose of due process." *Marynard v. Philadelphia Cervical Collar Co.*, 18 F. App'x 814, 816-17 (Fed. Cir. 2001); *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (finding website was passive even where product information, printable forms, and contact information were displayed.) Only when defendants perform acts within a forum state "such as advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents of the forum state" in addition to a passive website is there sufficient support to find jurisdiction over the defendants. *Autobytel, Inc. v. InsWeb Corp.*, Case No. 2:07-cv-524, 2009 U.S. Dist. LEXIS 31287, at *8-9 (E.D. Tex. Mar. 31, 2009) (citing *Marynard*, 18 F. App'x at 816-17).[4] No such additional facts are present here.

Ignoring the clear weight of authority, Blue Spike cites to a wholly inapposite Eastern District case to support its untenable proposition that AxxonSoft is subject to personal jurisdiction based on its "website with targeted advertising in Texas." Opp'n at 6. Setting aside

---

[3] READEV Inc., as discussed in Section II.A, *supra*, AxxonSoft's now defunct relationship with READEV was based in Colorado, with no relevant ties to Texas. Simply because Blue Spike is confused by information contained on AxxonSoft's website "does not relieve [it] of its jurisdictional burden." *Acceleron*, 634 F. Supp. 2d at 770.

[4] Alternatively, "[h]ighly interactive websites that specifically target residents of a district can justify exercising personal jurisdiction over a defendant." Mot. Ex. 4, *Klausner Techs., Inc. v. Taridium, LLC*, 6:11-CV-593-LED, slip op. at 4 (E.D. Tex. Sep. 24, 2012). The key distinction in *Klausner* was over the level of interactivity of the disputed website, not whether the website specifically targeted the Eastern District. *See id.* at 3-4. Neither party disputes that AxxonSoft's website is akin to the website in *Klausner* in that it merely advertises its products and does not allow individuals to purchase the Accused Products online. Mot. at 8; Moss Decl. ¶ 26; Altuev Decl. ¶ 25; Opp'n at 6.

that (i) AxxonSoft's alleged "targeted advertising" consists of posting a single telephone number for a third-party contact and (ii) the defendant in *Autobytel* was licensed to do business in Texas, had designated a registered agent in Texas, paid taxes in Texas, operated multiple websites hosted in Texas, and had made actual sales to Texas residents, the website at issue in *Autobytel* and AxxonSoft's website are diametric opposites. The website in *Autobytel* was "a highly interactive transaction-oriented website" that connected Texas prospective car purchasers with Texas car dealers through the website. *Autobytel*, 2009 U.S. Dist. LEXIS 31287, at *8-9. By contrast, users must leave AxxonSoft's website to potentially order AxxonSoft product. Opp'n at 6 ("The website then prompts users to ***follow links to AxxonSoft's partners' websites***…"). AxxonSoft's website is entirely passive, non-interactive, and does not allow for *any* kind of transactions between users. As such, there is simply no plausible argument that AxxonSoft "actively solicits business in Texas" such that it would be fair and reasonable for this Court to exercise personal jurisdiction.

### C. Jurisdictional Discovery Would Be Futile

Blue Spike has twice failed to present even a colorable argument that AxxonSoft is subject to personal jurisdiction in the Eastern District of Texas. In its first attempt to manufacture jurisdiction, Blue Spike's complaint failed to allege even a single fact in support of its allegations. In the face of AxxonSoft's well-founded challenge to personal jurisdiction, Blue Spike's second attempt proffers incredible legal argument and unsupportable and baseless factual allegations. Nevertheless, Blue Spike believes it should be entitled to a third bite of the jurisdiction apple because it has met the Third Circuit's threshold to conduct jurisdictional discovery. The Court should not countenance Blue Spike's inability to satisfy the most basic requirements of litigation.

Jurisdictional discovery is not only improper in light of Blue Spike's repeated failures,

the record clearly indicates that it would be futile.  AxxonSoft has offered numerous sworn declarations conclusively establishing that it has no meaningful contacts whatsoever with the state of Texas and this District.  Mot. at 2-4, 6-10; Moss Decl. ¶¶ 2-4, 9-23, 25, 27-31; Altuev Decl. ¶¶ 4, 9-18, 20-22, 24, 26-30.  In response, Blue Spike presents half-truths and incorrect allegations.  Nonetheless, Blue Spike would have this Court unnecessarily prolong the inevitable so that this litigation will continue to be a drain on AxxonSoft's resources.  The time to end this matter is now.

### III.    INDIRECT INFRINGEMENT

#### A.    Blue Spike Concedes Lack of Pre-Suit Knowledge

Blue Spike concedes that it has no factual basis for alleging that AxxonSoft had knowledge of the Patents-in-Suit prior to the filing of Blue Spike's Complaint.  Instead, Blue Spike argues that "the exact date when AxxonSoft acquired knowledge is a fact question that may be illuminated by discovery."  Opp'n at 9, n.3.  Apparently, Blue Spike contends that it may use discovery as a mechanism to bear out the facts it needs to support the allegations contained in its Complaint.  This argument directly contravenes the Supreme Court's admonition in *Iqbal* that discovery should not be made available to a plaintiff "armed with nothing more than mere conclusions."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).  The argument also serves as a candid admission that at the time it filed the Complaint, Blue Spike lacked *any* factual basis to allege a required element of its indirect infringement claims: that AxxonSoft had knowledge of the Patents-in-Suit.  *See Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2067-68 (2011) (indirect infringement under § 271(b) or § 271(c) requires "knowledge of the existence of the patent that is infringed.")  At a minimum, these admissions warrant dismissal of Blue Spike's indirect infringement claims to the extent they arise from pre-suit conduct.  Blue Spike has simply failed to live up to this Court's "high expectations as to plaintiffs' preparedness before

bringing suit," including the expectation that a plaintiff "already has sufficient knowledge of facts that it can include in its complaint." *Landmark Tech. LLC v. Aeropostale*, No. 6:09-cv-262, 2010 WL 5174954, at *4 (E.D. Tex. Mar. 29, 2010) (Davis, J.).

### B. Blue Spike's Complaint Does Not Support Induced Infringement

Blue Spike's Opposition identifies no factual allegations contained in its Complaint evidencing AxxonSoft's alleged intent to induce infringement. Rather, Blue Spike relies exclusively on Magistrate Judge Love's recommendation in *Patent Harbor* and additional "evidence" related to AxxonSoft's participation in *international* trade shows. Opp'n at 9-10 (citing *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229 (E.D. Tex. Jul. 27, 2012)); Opp'n Exs. 18-21[5]. Blue Spike's allegations from the Complaint and newly introduced "evidence" fail, however, to reach the level of factual specificity Magistrate Judge Love required in *Patent Harbor*. The patentee in that case included in its complaint factual allegations "that the accused method is the 'authoring' of DVD and Blu-Ray discs 'with their content-addressing features (e.g. illustrated chapter/scene selection),' . . . and that Defendants . . . 'direct[] and control[]' others to [perform the method] 'through contract.'" Opp'n Ex. 16 at 10. Importantly, Magistrate Judge Love found "that a plausible inference from these allegations is that Defendants induced others to infringe the [asserted] patent ***by directing and controlling them through contract***. *Id.* (emphasis added). No such inference can be made from Blue Spike's sparse allegations.

Blue Spike's Complaint fails to allege any facts that demonstrate or provide a plausible

---

[5] Each of the press releases and trade show announcements "touting the accused products' biometric recognition capabilities" at Exhibits 18-21 relate to AxxonSoft's *international* business activities and are accordingly outside the scope of United Sates Patent Law. Opp'n Ex 18 (exhibition in Saudi Arabia); Ex. 19 (expo in Taiwan); Ex. 20 (trade shows in Germany, Iran, and Turkey); Ex. 21 (trade fair in Pakistan). None of these activities are directed towards the United States or this District.

9

basis to infer that AxxonSoft controls or otherwise intends its customers to infringe the Patents-in-Suit, through contract or by any other means. Likewise Blue Spike's allegations of "aggressive[] marketing" at international trade shows do not give rise to a plausible inference of specific intent. *See* Crenshaw Decl. Ex. C, *Macrosolve, Inc. v. United Airlines, Inc.*, No. 6:11-cv-694, slip op. at 6 (E.D. Tex. Jul. 30, 2012) (Love, M.J.) (recommending dismissal of inducement claim without "any facts that, if taken as true, establishes a plausible inference that Defendants had . . . the specific intent to induce a third party to infringe"). Blue Spike simply has not shown that AxxonSoft "intended to induce its customers to use its products ***to practice the patented method***." *In re Bill of Lading*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (emphasis added). This failure demands dismissal of Blue Spike's claims for induced infringement.

### C. Blue Spike Concedes It Has No Facts to Support Contributory Infringement

"It is true that the complaint itself does not contain extensive analysis of why the accused product has no substantial non-infringing use." Opp'n at 10-11. Blue Spike's own averments are absolutely fatal to its claims for contributory infringement. Blue Spike explains away its deficiencies by broadly claiming patent rights to "all of today's widespread biometric–identification applications" and then claiming that "it is reasonable for the Court to infer that [the Accused Product] has no other, non-infringing use—***especially in light of Blue Spike's averment that it does not***." *Id.* at 10 (emphasis added). These types of conclusory allegations were explicitly and roundly rejected by the Federal Circuit in *Bill of Lading* because "they say nothing more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing use.'" 581 F.3d at 1338. Still, Blue Spike urges the Court to accept this impossibly circular argument, deny the motion to dismiss, and thrust open the doors to discovery *despite an admitted lack of support for its allegations at the time it filed suit*. These tactics fly in the face of *Iqbal, Twombly,* and the Federal Rules and simply cannot be tolerated.

Dated: May 9, 2013

Respectfully submitted,

By: */s/ Erik B. Milch*
    COOLEY LLP
    Erik B. Milch
    emilch@cooley.com
    One Freedom Square
    Reston Town Center
    11951 Freedom Drive
    Reston, Virginia 20190-5656
    Tel:  703 456-8000
    Fax:  703 456-8100

*Attorneys for Defendants AxxonSoft US, Inc. and AxxonSoft Ltd.*

## CERTIFICATE OF SERVICE

I, Erik B. Milch, do hereby certify that on this 9th day of May, 2013, I caused a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** to be electronically filed with Clerk of the Court using CM/ECF which will send notification to all registered attorneys of record.

*/s/ Erik B. Milch*