UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> Texas Instruments, Inc., et al., <br><br> *Defendants.* | § § § § § § § § § § | Case No. 6:12-cv-499 MHS <br><br> Lead Case <br><br> Jury Trial Demanded |
| Blue Spike, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> Cognitec Systems Corporation and Cognitec Systems GmbH, <br><br> *Defendants.* | § § § § § § § § § § | Case No. 6:13-cv-124 MHS <br><br> Consolidated Case <br><br> Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO COGNITEC SYSTEMS CORPORATION'S MOTION TO DISMISS OR TRANSFER [DKT. 625]**

Plaintiff Blue Spike, LLC opposes Defendant Cognitec Systems Corporation's ("CSC's") motion to dismiss or, alternatively, to transfer. CSC's contacts with Texas support asserting personal jurisdiction over CSC. As to the transfer motion, the Eastern District of Texas is a proper forum, and CSC has failed to adequately address, let alone establish, that another forum is "clearly more convenient."

**FACTUAL BACKGROUND**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric-identification and security

1

systems. Many of today's biometric-identification and security providers—including Cognitec—have built their companies by infringing Blue Spike's patents. Blue Spike has filed over 50 lawsuits against patent infringers in this Court, which has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact." *See* Ex. 1 (consolidation order).

Cognitec is a biometrics company that "develops market-leading face recognition technologies and applications for enterprise and government customers around the world." *See* Ex. 2. Cognitec declares that "[a]round the globe, other companies have developed and continue to create new solutions using our technology." *See* Ex. 2. Cognitec's "global" and "market-leading" biometric products are built on Blue Spike's patented inventions and are actively sold in Texas.

## LEGAL STANDARDS

*1.    Personal Jurisdiction*

In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id*; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). In assessing venue, the analyses of venue and personal jurisdiction merge in this case. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue

in a patent action against a corporate defendant exists wherever there is personal jurisdiction.").

### 2. *Transfer of Venue*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The threshold inquiry in determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.12[3] (3d ed. 2012) ("[T]he party seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district."). If that threshold inquiry is met, the Court then balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).[1] The party seeking transfer must show good cause for transfer and also show that the transferee venue is "clearly more

---

[1] Private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Nintendo*, 589 F.3d at 1198. Public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

convenient" than the transferor venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *TS Tech*, 551 F.3d at 1319.

## ARGUMENT

I. **CSC's Continuous and Systematic Contacts with Texas, and its Texas Contacts Directly Related to the Alleged Infringement, Support the Exercise of Personal Personal Jurisdiction.**

   A. **CSC's Contracts and Sales of Accused Products in Texas Support Personal Jurisdiction.**

CSC maintains that it "has not engaged in activities that reveal any intent to invoke or benefit from the protection of the laws of Texas." Dkt. 625 at 3. This is not right. CSC *has* entered into contracts in Texas. Dkt. 625 at 2 (admitting CSC has entered into "a total of six (6) license agreements with two customers located in Texas," citing Kelesoglu Decl. ¶5). Additionally, CSC's accused products are currently being utilized in robotic research at the University of Texas. *See* Ex. 3. In an attempt to downplay these Texas contacts, CSC spends the bulk of its motion arguing that it has limited contacts in the Eastern District of Texas. Dkt. 625. at 6. Yet CSC understands that the proper test for personal jurisdiction relates to minimum contacts in a forum *state*, not a judicial district. Dkt. 625 at 4.; *see also Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214 (5th Cir. Tex. 2012) (noting that personal jurisdiction exists when there is "some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). CSC's argument that it lacks the requisite contacts with the Eastern District of Texas is irrelevant; CSC's multiple sales in the state of Texas establish personal jurisdiction.

4

### B. CSC's Partners and Their Use and Sales of Accused Products Also Support Asserting Jurisdiction in Texas.

CSC operates pervasively throughout Texas via its extensive network of partners, who use the accused products in Texas. Cognitec has been lauded for "gain[ing] a strong foothold in the market through partners such as system integrators and solution providers." *See* Ex. 4. Many of these customers and partners, listed under the "customers" tab on CSC's website, are recognizable as global leaders in their respective industries, such as: 3M, Adobe, Lockheed Martin, NEC, Siemens, Unisys, and Volkswagen. *See* Ex. 5. Many of these companies have Texas plants or operations, including 3M, Lockheed Martin, NEC, Siemens, and Unisys. *See* Exs. 6-10. Some of these locations are in the Eastern District of Texas, such as Siemens's Plano location, and Unisys' Carrollton location. *See* Ex. 9, 10. These Texas "integrators" incorporate CSC's infringing technologies and ensure the accused products reach Texas. Minimum contacts may be established when "defendants generate income from forum residents," including income generated from partners. *Oasis Reasearch, LLC v. Adrive, LLC*, 2011 U.S. Dist. LEXIS 80471 at *17. (attached as Ex. 11) (holding that a defendant's partnership with a company owning a plant and doing business in Texas helped establish personal jurisdiction). Through its partners, CSC generates income in Texas, establishing a prima facie case supporting personal jurisdiction.

### C. CSC Actively Solicits Business In Texas.

CSC uses its website to solicit direct sales from Texas consumers. *See* Ex. 12. Users are prompted to connect with the sales department by filling out an online

form. *See* Ex. 13. Such uses provide a basis for personal jurisdiction. *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (holding that Texas courts have personal jurisdiction over company whose "potential customers" in Texas can "fill out an online form and apply for [the company's] services through its website").

CSC also solicits business in Texas, advertising its products through press releases with Texas media. Merkatum—one of CSC's partners based in Austin, Texas—released an advertisement on *Business Wire* to promote products that incorporate CSC's infringing technologies. CSC also participated on a Texas-based radio program, attempting to gain more exposure in Texas. *See* Exs. 14-16.

CSC thus sells its accused products in Texas—both directly and through its Texas partners—and it actively solicits Texas business. The exercise of personal jurisdiction is proper.

### D. It Would Be Improper to Grant Dismissal Before Allowing Blue Spike to Conduct Jurisdictional Discovery.

The facts establish a prima facie showing of personal jurisdiction in this case. But if the Court is not yet persuaded, it should permit Blue Spike to conduct jurisdictional discovery. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Blue Spike has met that threshold and should therefore be allowed to

conduct jurisdictional discovery if the Court is inclined to rule against Blue Spike on CSC's motion.

### II. CSC Has Not Carried its Burden of Showing That Another Venue Is "Clearly More Convenient" Than This Court.

As an initial matter, CSC fails to establish, or even sufficiently argue, that another venue is "clearly more convenient" than the Eastern District of Texas. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *TS Tech*, 551 F.3d at 1319. Without actually performing a side-by-side comparison between this District and a single alternative venue, CSC notes that "this case should be transferred to another district court that would have a more appropriate nexus with CSC." Dkt. 625 at. 7. CSC does not use the private- and public-interest factors to perform a one-on-one comparison between this District and another venue, but instead makes the general argument that venue would be better in Boston and Miami based on CSC's offices, employees, and documents there. This approach does not meet the threshold requirement of identifying a "clearly more convenient" forum.

#### A. The "Paramount" Federal Interest in Judicial Efficiency and Economy—Without More—Defeats Transfer in This Consolidated Action.

More important, a proper transfer analysis defeats CSC's motion. "Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011). Judicial economy represents a sufficient basis to deny

7

transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010); *see also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

Here, more than 50 cases involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact" and because consolidation "would promote efficient case management." *See* Ex. 1 at 14-15. Transfer to another venue would unjustifiably burden the federal courts, cause inefficiencies, and waste judicial resources. *See Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 17).

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Id*. Denying transfer, the Court reasoned that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id*. Other recent cases—all on point—likewise counsel against transfer. *See Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 18) (holding that because plaintiff had filed multiple suits in this district concerning the same four patents, concerns of judicial economy weighed heavily against transfer; if the Court transferred the case, "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 19) (denying motion to transfer patent suit that had already been consolidated with another suit, as "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Transfer is especially inappropriate here given the Court's findings that all of Blue Spike's cases in this District "involve a common question of law or fact" and that keeping them consolidated "would promote efficient case management." Ex. 1 at 14-15. Moreover, Cognitec is partnered with many other named defendants in this case. These defendants have integrated Cognitec's infringing technology into

9

their own products. *See, e.g.,* Ex. 20 (partnership with Daon); Ex. 21 (partnership with AxxonSoft). It would be inappropriate to transfer this case when it is so tightly interwoven with other defendants and infringing technologies before the Court.

### B. The Private-Interest Factors Likewise Weigh Against Transfer and Fail to Establish An Alternate Forum as Clearly More Convenient.

#### 1. Blue Spike's interests—including the location of and burdens on Blue Spike, its witnesses, and its sources of proof—also count in the transfer analysis.

CSC forgets that this case is not only about CSC; there is a plaintiff in this case whose interests and burdens are relevant, too. Blue Spike plans to call witnesses from Texas, its inventor and CEO lives in Tyler, it was incorporated in Texas over a year ago, it has its headquarters and principal place of business in this district, and its employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl. ¶¶1-6; Compl. ¶2. Litigating this action in another district would be inconvenient and burdensome for both Blue Spike and for Scott Moskowitz, the CEO and inventor at Blue Spike. A transfer would dramatically increase the costs of litigation for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious hardship for Moskowitz personally, as he suffers from medical issues that make it very painful for him to travel. Moskowitz Decl. ¶¶13-16; *see NGC Worldwide, Inc. v. Siamon,* No. 3:02CV1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases that hold "[t]he health concerns of a party or witness can be an important factor in the determination of whether a § 1404(a) transfer is proper"). These burdens are critically important in the transfer analysis

10

because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

Equally important, there are reasons to doubt CSC's claim that a Texas forum is too inconvenient for it. CSC admits that it has conducted business in Texas. Kelesoglu Decl. ¶5. Its infringing products are used by the University of Texas. *See* Ex. 3. And CSC benefits from partnerships that generating income in Texas. Given that CSC has voluntarily established ongoing business operations and relationships in Texas, it is hard to credit its assertion that litigating in Texas would be unduly burdensome. It is more than reasonable for CSC to be held accountable for infringement here in Texas to a Texas company, because CSC is seeking to benefit from doing business in Texas with Texas residents. Further, CSC fails to identify a more convenient forum, robbing Blue Spike of an opportunity to adequately respond.

### 2. The relative ease of access to sources of proof does not clearly weigh in favor of transfer.

CSC claims that the majority of its likely evidence is located in Boston or Miami. Dkt. 625 at 7. Blue Spike disagrees, as the infringing devices are readily located within Texas. Moreover, Blue Spike's sources of proof are located in this District. *See* Moskowitz Decl. ¶¶1-6; Compl. ¶2. CSC wants the Court to disregard this fact, but the location of Blue Spike's evidence matters. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar.

26, 2013) (attached as Ex. 22) (fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer).

### 3. The availability of compulsory process does not clearly weigh in favor of transfer.

CSC fails to specifically identify any witnesses who may need to be compelled to testify in this case. The party seeking transfer bears the burden of identifying unwilling third-party witnesses that would benefit from transfer, and the weight attributed to such witnesses "is undercut by [the movant's] failure to identify particular witnesses or documents that would require compulsory process." *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585, at *6-7 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 23); *see also Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses). If not weighing in Blue Spike's favor, this factor is at best neutral.

### 4. The cost of attendance for willing witnesses does not clearly weigh in favor of transfer.

CSC notes that its employees reside outside of Texas, implying that a trial elsewhere would be cheaper and more convenient. Dkt. 610 at 12. CSC alleges that those employees work in Miami and Boston.[2] *Id.* Inherent in this assertion is the fact that venue in Florida necessitates travel and possible inconvenience to the

---

[2] CSC's contention that a more convenient forum exists outside of Texas is further undermined by CSC's failure to specifically identify any witnesses. *See Cell & Network Selection*, Ex. 24 at 9 (holding that this factor does not favor transfer when "Defendants fail to specifically identify employees with relevant knowledge of the accused devices.").

parties in Massachusetts, and vice versa. Thus, there is no location that is clearly more convenient to Defendant, much less another venue that is clearly more convenient when all the parties' witnesses and sources of proof are weighed in the balance. A trial in Florida or Massachusetts will be inconvenient and costly to Blue Spike. This factor weighs in favor of denying transfer.

### 5. The public-interest factors do not show another district to be clearly more convenient.

None of the public-interest factors support transfer—much less show that another district is a "clearly more convenient" forum. *In re Volkswagen,* 545 F. 3d at 315. Texas has a local interest in this case because the allegations are that CSC infringed Blue Spike's patents, harming Tyler-based Blue Spike and its Texas-based owners and employees. *See Atmel*, Ex. 22 at 16 ("The residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business."). This Court will be the most familiar with the legal and factual issues involving Blue Spike's technology, since the Court is adjudicating over 50 other suits involving the same patents-in-suit, including suits against other defendants utilizing and selling CSC's software in Texas.

### Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny CSC's motion to dismiss for lack of personal jurisdiction or alternatively to transfer.

May 9, 2013                                  Respectfully submitted,

                                                /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
 Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

      I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 9th day of May, 2013. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                                         /s/ Randall T. Garteiser
                                                          Randall T. Garteiser