# Exhibit 19

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **MOSAID TECHNOLOGIES, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | **CASE NO. 6:11-CV-00173** |
| § | |
| **FREESCALE SEMICONDUCTOR, INC. et al.,** § | |
| § | |
| Defendants. § | |
| § | |
| § | |
| § | |

## ORDER

Before the Court is Defendant NVIDIA Corporation Inc. ("NVIDIA") and Freescale Semiconductor, Inc.'s ("Freescale") Motion to Sever NVIDIA and Freescale and Transfer NVIDIA and Freescale's claims to the Northern District of California, or in the alternative, to transfer the entire case to the Northern District of California (Docket No. 69). Having considered the parties' written submissions, the Court **DENIES** NVIDIA and Freescale's Motion to Sever and Transfer to the Northern District of California.

## BACKGROUND

On April 7, 2011, MOSAID Technologies Inc. ("MOSAID") filed an action against NVIDIA, Freescale and Interphase Corporation ("Interphase"), alleging infringement of U.S. Patent Nos. 7,015,306; 7,415,680; 7,945,885; 7,996,811; 5,577,230; 5,724,505; 5,958,036; 6,141,762; and 6,256,725 ("the patents-in-suit"). NVIDIA and Freescale are incorporated in Delaware with NVIDIA's principal place of business in Santa Clara, CA while Freescale has its principal place of business in Austin, Texas and Interphase is incorporated in Texas with its

principal place of business in Plano, Texas. Docket No. 46 at 1. MOSAID is a Canadian corporation with its principal place of business in Ottawa, Ontario, while its principal place of business in the U.S. is in Plano, Texas. *Id.*

## MOTION TO SEVER NVIDIA AND FREESCALE

NVIDIA and Freescale move to sever their case from this action because NVIDIA and Freescale wish to join another case pending in the Northern District of California involving ARM Ltd. and ARM, Inc. (collectively, "ARM") and MOSAID.[1]

## APPLICABLE LAW

A plaintiff may join defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(b). The Federal Rules of Civil Procedure give courts authority to sever parties during any stage of the proceeding and on such terms as are just. FED. R. CIV. P. 21. A court may use Rule 21 to sever properly joined parties or to cure improperly joined parties. Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20 if there is some connection or logical relationship between the various transactions or occurrences. *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993). A logical relationship exists if there is some nucleus of operative facts or law. Id.

The joinder rules were created to increase judicial efficiency by allowing related claims against different parties to be tried together. "Under the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to

---

[1] At the time of NVIDIA and Freescale's motion, there was a pending action in the Northern District of California involving ARM and MOSAID, however this case has since been transferred to this Court and been consolidated with this case. *See* Docket No. 182.

2

the parties; joinder of claims, parties and remedies is strongly encouraged*." United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). In a patent case, the district court is responsible for construing the patent's claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390–91 (1996). The prospect of inconsistent claim construction favors resolving related patent cases in the same forum when possible. *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003). Besides being a duplicative use of scarce judicial resources, two claim constructions risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice. *See DataTreasury*, 243 F. Supp.2d at 596.

## ANALYSIS

NVIDIA and Freescale's primary objective for severing its case from Interphase and transferring the claims against them to the Northern District of California was to facilitate consolidating their case with ARM, who had filed a declaratory judgment against MOSAID. *See* Docket No. 69 at 1. Since the filing of NVIDIA and Freescale's Motion to Sever and Transfer though, ARM has been transferred to this Court and has been consolidated with the present case. *See* Docket No. 182. Thus, NVIDIA and Freescale's Motion to Sever is moot in light of the present circumstances. Accordingly, the Court **DENIES** NVIDIA and Freescale's Motion to Sever.

## MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

NVIDIA and Freescale also move to transfer their claims to the Northern District of California if they are severed from the present action or, in the alternative, they move to transfer the entire case to the Northern District of California. Since this Court has denied NVIDIA and Freescale's Motion to Sever, the following transfer analysis will consider all defendants, including Interphase.

3

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not

4

necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

### A. Threshold

NVIDIA and Freescale assert that the Northern District of California is a proper venue for all parties because NVIDIA resides in Santa Clara, California, Freescale maintains an office in San Jose, and Interphase shipped and sold an accused product to San Mateo, California. Docket No. 69 at 6–7. MOSAID does not dispute this claim. Thus, there is no dispute over whether the case could have been filed in the Northern District of California.

### B. Private Factors

#### 1. *Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *id.* at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

5

Case 6:12-cv-00498-MHS-CMC Document 176 Filed 02/24/23 Page 7 of 23 PageID #: 6789

NVIDIA and Freescale argue much of its relevant evidence is located in the Northern District of California. Specifically, NVIDIA asserts the Northern District of California is home to a majority of NVIDIA's employees and relevant documents. Docket No. 69 at 8. Additionally, they argue evidence relating to ARM, whose technology is used in NVIDIA and Freescale's accused products, is located in California as well. *Id.* NVIDIA and Freescale also allege LSI's documents, the prior owner of some of the patents-in-suits, are located in California. *Id.* at 9.

MOSAID counters that much of its relevant evidence, such as employees and documents, is located in the Eastern District of Texas with MOSAID's U.S. subsidiary. Docket No. 83 at 4–5. Additionally, MOSAID argues much of Defendants' evidence is located in or near the Eastern District. For example, Freescale has its principal place of business in Austin, TX and Interphase has its principal place of business in the Eastern District of Texas. *Id.* MOSAID admits that NVIDIA is primarily located in the Northern District of California but argues in light of the other defendants' connections to Texas and this district, this factor should not weigh in favor of transfer. *Id*. at 7. With respect to other parties, MOSAID argues ARM has relevant operations located Texas and LSI's witnesses and documents are located in Pennsylvania, not California. *Id.* at 7–9. NVIDIA and Freescale dispute MOSAID's allegations with regard to ARM, and instead argue ARM's operations in Texas are not relevant to the patents-in-suit. Docket No. 89 at 2.

MOSAID, Freescale, and Interphase have a presence in Texas, while NVIDIA and ARM are primarily located in Northern District of California. This factor is neutral, or slightly weighs against transfer.

6

## *2. Convenience of Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204 & n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue,

7

then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *See id.* (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

NVIDIA and Freescale argue that the cost of attendance for both parties and witnesses would be lower if the case was transferred, because NVIDIA, ARM, LSI and other third-party witnesses, such as inventors and prior art witnesses, reside within the Northern District of California. Docket No. 69 at 11. NVIDIA and Freescale further argue that because MOSAID is foreign company, it will need to travel to either forum; therefore, MOSAID's location should not be considered in the analysis. *Id.*

MOSAID does not dispute it is headquartered in Canada, but argues its U.S. subsidiary's location in the Eastern District of Texas should be considered instead, because many of its U.S employees assist in prosecution and licensing of MOSAID's patents. Docket No. 83 at 10–11; Docket No. 93 at 2. Additionally, MOSAID contends it would not be more convenient for Freescale and Interphase to travel to California, because both parties are located in Texas. Docket No. 83 at 10. MOSAID contends LSI's relevant witnesses are located in Pennsylvania and not California; therefore, neither forum would be more convenient for LSI. Docket No. 83 at 9.

MOSAID, Freescale, and Interphase have a presence in Texas, while NVIDIA, ARM, and some third-party witnesses are located in Northern District of California. This factor slightly favors transfer.

8

### 3. *Compulsory Process*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

NVIDIA and Freescale argue many inventors of the patents-in-suit, the owner of some of the patents-in-suit, ARM and several potential prior art witnesses reside within the Northern District of California, and thus would be subject to the subpoena power of the Northern District of California. Docket No. 69 at 9–10; Docket No. 89 at 2. MOSAID acknowledges that some of the inventors of the patents-in-suit reside in the Northern District of California however it argues that over two-thirds of inventors do not reside within the Northern District of California. Docket No. 83 at 10. However, MOSAID argues the location of the inventors should not be considered in this analysis. Additionally, MOSAID argues that potential prior art witnesses should not be considered because at this stage of litigation it is uncertain whether any of these witnesses have relevant information regarding the asserted claims. *Id.* Nonetheless, this factor weighs slightly in favor of transfer.

### 4. *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

9

NVIDIA and Freescale argue judicial efficiency weighs in favor of transfer because of the possibility that this action could be consolidated with the ongoing litigation between MOSAID and ARM. Docket No. 69 at 12. As discussed above, ARM's action has since been transferred to this Court and consolidated with this case. Thus, Defendants' own argument now supports denying transfer. NVIDIA and Freescale further argue in favor of transfer because the Northern District of California has familiarity with the ARM technology involved in this action. *Id.* MOSAID counters that these prior cases did not involve the same patents; therefore, the Northern District of California does not have any more familiarity with the patents-in-suit than this Court. Docket No. 83 at 11–12. Considering the ARM case is now consolidated with the present action, this factor strongly disfavors transfer.

### 5. Public Factors

#### a. Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

10

NVIDIA and Freescale argue that the Northern District of California has a greater interest in this case because NVIDIA, ARM, LSI[2], as well as many inventors and prior art witnesses are located in the Northern District of California. Docket No. 69 at 13. MOSAID counters that the Eastern District of Texas has a greater interest in this case because Interphase and MOSAID's U.S. subsidiary are located in the district and because ARM also has operations in Texas. Docket No. 83 at 12–13. Considering both sides have presences in the Eastern District of Texas, this factor disfavors transfer.

### b. Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id.*

NVIDIA and Freescale argue the Eastern District of Texas is becoming more congested in part due to the recent retirements of Judge Ward and Judge Everingham. Docket No. 69 at 13. Additionally, NVIDIA and Freescale argue that the median time to trial now in the Northern District of California is slightly faster than the Eastern District of Texas. Docket No. 89 at 4. MOSAID counters Defendants' arguments alleging that instead the time to trial in the Eastern District of Texas is faster. Docket No. 83 at 12. Accordingly, this factor is neutral.

### c. *Familiarity of Forum with Governing Law and Conflict of Laws*

The remaining two public factors are not disputed by the parties, thus they are neutral in the analysis.

---

[2] At the time of this motion, LSI was still a third party to this action. Now, LSI has been joined to this case. *See* Docket No. 131.

11

## CONCLUSION

NVIDIA and Freescale should not be severed from this case and NVIDIA and Freescale have not shown that it is clearly more convenient for the parties and witnesses to transfer the instant case to the Northern District of California. The judicial efficiency and local interest factors disfavor transfer, the access to sources of proof factor is neutral if not slightly disfavoring of transfer, and the convenience of the witnesses and the availability of compulsory process factors weigh slightly in favor of transfer. The other three factors are neutral. Therefore, the Court **DENIES** NVIDIA and Freescale's Motion to Sever and Transfer to the Northern District of California.

**So ORDERED and SIGNED this 27th day of September, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**