UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff,* | § | Case No. 6:12-cv-499 MHS |
| | § | |
| v. | § | Lead Case |
| | § | |
| Texas Instruments, Inc., et al., | § | Jury Trial Demanded |
| *Defendants.* | § | |
| | § | |
| Blue Spike, LLC, | § | |
| *Plaintiff,* | § | Case No. 6:13-cv-037 MHS |
| | § | |
| v. | § | Consolidated Case |
| | § | |
| Accu-Time Systems, Inc., | § | Jury Trial Demanded |
| *Defendant.* | § | |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S MOTION TO DISMISS [DKT. 576]**[1]

Accu-Time Systems, Inc.'s reply in support of its motion to dismiss (Dkt. 686) applies the same incorrect pleading standard that the motion did. As explained in the opposition (Dkt. 651 at 3-4), Blue Spike does not have to tie specific patents-in-suit to particular accused products or provide a comprehensive list of accused products at this point.[2] *See InMotion Imagery Techs., LLC v. Imation Corp.*, No.

---

[1] Blue Spike is simultaneously filing a surreply to the motion to dismiss filed by Accu-Time's parent corporation, Amano Cincinnati, Inc. (Dkt. 577). Because the two companies' motions are virtually identical, Blue Spike's oppositions overlap significantly.

[2] Blue Spike exceeded the pleading requirements when it named specific accused products. *See* Case No. 6:13-cv-037, Dkt. 1 at ¶27. ATS tries to use this fact against Blue Spike by (1) misreading the complaint as presenting a *comprehensive* list of specific accused products and (2) claiming that Blue Spike's opposition discusses products that are not among those

1

2:12-cv-298-JRG, 2013 WL 1279055, at *5 (E.D. Tex. Mar. 26, 2013); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 353 (D. Del. 2010). Nor does Blue Spike have to specify which claims of the patents-in-suit are at issue (*contra* Dkt. 686 at 2-3). *See Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-CV-175-TJW, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011) ("[T]here is no requirement that the complaint specify which specific claims the plaintiff is asserting."). Blue Spike only has to "plead facts sufficient to place the alleged infringer on notice as to what [it] must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Accu-Time nevertheless tries to conduct an entire evidentiary hearing within the confines of its seven-page reply, going so far as to analyze the technical capabilities of its products and the history of biometric technology. This approach is fundamentally misguided in the 12(b)(6) context, and it also disproves Accu-Time's claim that it cannot tell what it is supposed to defend against.

Accu-Time also wades deep into the facts on the issue of substantial non-infringing use, parsing the language of its own promotional materials and claiming that particular verbiage conclusively and comprehensively specifies what its products can be used for. *See* Dkt. 686 at 4. Again, this approach is fundamentally misguided in the 12(b)(6) context. Further, Accu-Time does not even address the entire class of accused products, but rather addresses only the accused Optimus$_2$, Maximus, and Prodigy products. *Id.* Even if the approach were proper (and it certainly is not), Accu-Time's approach still would not justify dismissal of *all* of Blue

---

listed. *See* Dkt. 686 at 2. In fact, Blue Spike specifically pleaded that the accused products *include, but are not limited to,* those specified. *See* Case No. 6:13-cv-037, Dkt. 1 at ¶27.

Spike's claims. The salient facts are these: Blue Spike pleaded that the patents-in-suit are foundational to all of today's widespread biometric technology; that Accu-Time makes biometric products; and that at least some of Accu-Time's biometric products have no substantial non-infringing use. This Court has recently held that such allegations are sufficient to defeat dismissal "[a]bsent a showing in the pleadings . . . that [all of the accused] products *do* have substantial noninfringing uses." *Imation*, 2013 WL 1279055, at *6.

Accu-Time also argues that Blue Spike's induced-infringement claims fail for the same reasons as its contributory-infringement claims. Dkt. 686 at 5-6. This makes no sense, as the facts relevant to the two kinds of infringement claims are different. The allegations relevant to Blue Spike's induced-infringement claims are that Accu-Time makes, uses, offers for sale, or imports into the U.S. products, systems, or services, including several specifically identified consumer products, that infringe the patents-in-suit. Cause No. 6:13-cv-00037-MHS, Dkt. 1 at ¶27. The identification of these specific consumer products permits a reasonable inference that Accu-Time intends its customers to use them. These facts alone constitute a facially plausible claim for induced infringement, but Blue Spike has gone farther: it has submitted *evidence* that the accused products have specific infringing capabilities that Accu-Time markets in an effort to induce consumer use. *See* Dkt. 651, Ex. 2. This evidentiary showing surpasses what this Court found sufficient to defeat dismissal in *Imation*.[3] There, the Court held that the plaintiff had "provide[d]

---

[3] *See also Symantec Corp. v. Veeam Software Corp.*, No. C-12-00700-SI, 2012 WL 1965832, at *5 (N.D. Cal. May 31, 2012) ("Specific intent can reasonably be inferred in this case from

3

a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement," 2013 WL 1279055, at *5, where the complaint merely stated that "Imation has had knowledge of the [patents-in-suit] at least as early as the filing of the Complaint in this action, and, upon information and belief, continues to encourage, instruct, enable, and otherwise cause end users and/or customers to use its products in a manner which infringes the [patents-in-suit]." *See* Case No. 2:12-cv-00298-JRG, Dkt. 9, at ¶¶12, 22. If that statement from *Imation*, which lacked any supporting evidence, was sufficient to preclude dismissal, then surely the combination of Blue Spike's allegations and supporting evidence is sufficient to defeat dismissal here.

Last, Blue Spike concedes that this Court's recent *Touchscreen* opinion warrants dismissing Blue Spike's willful-infringement claims—at least for now. *See* Dkt. 686 at 6. Blue Spike's complaint never alleged pre-filing willfulness, as Blue Spike had no basis for alleging pre-filing willfulness (although future discovery may change that). Instead, Blue Spike's willfulness allegations dealt with *post*-filing conduct, including the fact that Accu-Time has continued to infringe the patents-in-suit even after being put on actual notice of Blue Spike's patents-in-suit and of how

---

the allegations regarding defendant's marketing materials and offers to sell the infringing products."); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10-C-715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011) (holding the "allegations are sufficient to show specific intent as well, because the Court may infer that by selling their infringing products the defendants intended their customers to use them and thus infringe TT's patents"); *Cal. Inst. of Computer Assisted Surgery, Inc. v. Med–Surgical Servs., Inc.*, No. C–10–05067–CW, 2011 WL 672709 at *4 (N.D. Cal. Feb. 16, 2011) ("[O]ne can infer from the information on the website, publicizing the technologies, offering brochures describing the products and users' manuals, as well as listing company customers, that Defendants were advertising and intended to use or sell the technologies.").

4

Accu-Time's accused products infringe those patents. But *Touchscreen* holds that the receipt of a patent holder's complaint is inssufficient, by itself, to support claims for willful infringement. *See Touchscreen Gestures LLC v. Research in Motion Ltd.*, Case No. 6:12-263-MHS, Dkt. 22, at 3-4 (E.D. Tex. Mar. 27, 2013). Accordingly, Blue Spike concedes that its willful-infringement claims should be dismissed for now, but asks the Court to hold open the possibility of allowing Blue Spike to seek leave to amend its complaint if it "uncovers factual support" for claims of willful infringement. *Id.* at 5.

For these reasons plus those contained in its opposition (Dkt. 651), Blue Spike respectfully requests that the Court deny Accu-Time's motion to dismiss except with regard to Blue Spike's willful-infringement claims.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  randall.garteiser@sftrialattorneys.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@sftrialattorneys.com
Christopher S. Johns
  Texas Bar No. 24044849
  chris.johns@sftrialattorneys.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

      I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 10, 2013. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                                       /s/ Randall T. Garteiser
                                                       Randall T. Garteiser