UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | |
| *Plaintiff,* | § | CASE NO. 6:12-cv-499 MHS |
| | § | |
| v. | § | LEAD CASE |
| | § | |
| Texas Instruments, Inc., et al., | § | Jury Trial Demanded |
| | § | |
| *Defendants.* | § | |
| | § | |

**Blue Spike's Opposition to Iris ID Systems' Motion
to Transfer Venue [Dkt. 663]**

Plaintiff Blue Spike, LLC—whose entire business operation is in the Eastern District of Texas—opposes Iris's transfer motion for two main reasons: (1) paramount considerations of judicial efficiency and economy weigh heavily against transfer, since the Court has consolidated this case with scores of others based on common questions of law and fact; and (2) Iris has not shown that the District of New Jersey is any more convenient—much less "clearly more convenient"—than the Eastern District of Texas.

### Introduction

Blue Spike is a Texas LLC with its headquarters and principal place of business in Tyler, Texas. *See* Complaint ¶2. Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric identification and security systems. Many of today's biometric identification and security providers—including Iris—have built their companies by infringing Blue Spike's patents. Blue Spike has filed more

1

than 50 lawsuits in this Court against alleged infringers on these same four patents. The Court consolidated the suits for pretrial purposes based on "common questions of law or fact," finding that consolidation "would promote efficient case management." *See* Ex. 1 (consolidation order).

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. §1404(a). Even so, a motion to transfer venue is only granted upon the movant showing good cause for transfer and proving that the proposed transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 315 (5th Cir. 2008) (en banc). When determining a venue-transfer question, the Federal Circuit weighs several private and public interests. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *Id.* Although not a distinct factor in the analysis, the plaintiff's choice of venue should always be accorded deference. *Id.* at 1320.[1] Public-interest factors

---

[1] "While the Fifth Circuit does not independently consider the plaintiff's choice of forum as a paramount consideration or afford it great or substantial weight, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for transfer. Accordingly, a plaintiff's decision to file in this District places a significant burden on

include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Id.*

## Argument

### I.     The "Paramount" Federal Interest in Judicial Efficiency and Economy—Without More—Defeats Transfer in this Consolidated Action.

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011). Indeed, judicial economy represents a sufficient basis to deny transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010); *see also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No.

---

Defendants to show good cause for transfer, a burden that this Court does not take lightly." *Stragent, LLC v. Pioneer Elecs. (USA) Inc.*, Case No. 6:11-cv-00278-LED-JDL, at 5 (E.D. Tex. May 8, 2013) (attached as Ex.2) (internal punctuation and citations omitted).

6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

Here, more than 50 cases involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact" and because consolidation "would promote efficient case management." *See* Ex. 1 at 14-15.[2] Transfer to another venue would unjustifiably burden the federal courts, cause inefficiencies, and waste judicial resources. *See Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 3).

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Id.* Denying transfer, the Court reasoned that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id.* Other recent cases—all on point—likewise counsel against transfer. *See, e.g., Oasis Research, LLC v.*

---

[2] Supporting these conclusions, Iris concedes that the patents at issue in every one of Blue Spike's suits "are part of the same family" and "share the same specifications and inventors." Dkt. 663 at 1.

*Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 4) (holding that because plaintiff had filed multiple suits in this district concerning the same four patents, concerns of judicial economy weighed heavily against transfer because "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 5) (denying motion to transfer patent suit that had already been consolidated with another suit, as "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Transfer is especially inappropriate here given the Court's findings that all of Blue Spike's cases in this District "involve a common question of law or fact" and that keeping them consolidated "would promote efficient case management." Ex. 1 at 14-15. Iris asks the Court to ignore this "paramount" consideration and instead force another court to expend duplicative efforts considering common questions of law and fact, thereby creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 F. App'x at 296.

Iris's argument that transfer would not cause inefficiency (Dkt. 663 at 9-11) relies heavily on Judge Schneider's transfer order in *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013)

(attached as Ex. 6). There, Judge Schneider held that even though the plaintiff had filed numerous suits in this District concerning a single patent, transferring one of those suits elsewhere would not cause inefficiency because the plaintiffs' suits had no significant "common issues." *Id*. at 10. Here, in contrast, the Court has already held that all of Blue Spike's suits in this District "involve a common question of law or fact" and that keeping them consolidated "would promote efficient case management." Ex. 1 at 14-15. Iris itself concedes that the patents at issue in every one of Blue Spike's suits "are part of the same family" and "share the same specifications and inventors." Dkt. 663 at 1.

Iris suggests that the inefficiency resulting from transferring this case to the District of New Jersey would be mitigated because two other defendants (L-1 Identity Solutions, Inc. and MorphoTrust USA, Inc.) have also sought transfer there. *Id*. at 9-10. This argument is unavailing, as those defendants' transfer motions are still pending, with Blue Spike opposing them on multiple grounds. *See* Case No. 6:12-cv-00680-LED, Dkt. 13 (Blue Spike's opposition to transfer motion); *id*. at Dkt. 16 (Blue Spike's surreply in opposition to transfer motion). But even if those defendants prevail on their transfer motions, Iris has not explained how that fact would actually mitigate inefficiency—let alone mitigate inefficiency so dramatically that it no longer weighed against transfer. The burdens on Blue Spike and its employees and witnesses would still be multiplied; over 50 Blue Spike suits would still remain in this District;

and multiple judges would still have to construe the same claims, risking conflicting adjudications. The Court should not create such a situation in a case like this one, where, as explained below, the movant has not even shown that transfer would be clearly more convenient.

## II.   The Private-Interest Factors Likewise Weigh Against Transfer— and Certainly Do Not Show the District of New Jersey To Be Clearly More Convenient.

### A.   Blue Spike's Interests—Including the Location of and Burdens on Blue Spike, its Witnesses, and its Sources of Proof—Also Count in the Transfer Analysis.

Iris forgets that this case is not only about it; there is a plaintiff in this case whose interests and burdens are relevant, too. Blue Spike plans to call witnesses from Texas, its inventor and CEO lives in Tyler, it was incorporated in Texas roughly a year ago, it has its headquarters and principal place of business in this district, and its employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl. ¶¶1-6; Compl. ¶2.

While Iris suggests that these connections to this forum were manufactured to manipulate venue and should therefore be disregarded (Dkt. 663 at 2, 7), this Court's precedent dictates otherwise. *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created solely to

manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010) (plaintiff's presence in this District was not "recent" or "ephemeral" where Plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

Litigating this action in New Jersey would be inconvenient and burdensome for Blue Spike and for Scott Moskowitz, the CEO and inventor at Blue Spike. A transfer would dramatically increase the costs of litigation for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious hardship for Moskowitz personally, as he suffers from medical issues that make it very painful for him to travel. Moskowitz Decl. ¶¶7-10; *see NGC Worldwide, Inc. v. Siamon*, No. 3:02CV1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases that hold "[t]he health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper"). These burdens are critically important in the transfer analysis because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

Also important, Iris does not contend that it lacks extensive contacts with this forum. Indeed, its "thousands of customers" include the U.S. military,

other federal agencies, and many of the world's most valuable companies, some of which indisputably have extensive presences (and which deploy Iris's products) throughout Texas. *See* http://bit.ly/10nSg7R (Iris website listing customers). Nor does Iris contend that litigating here rather than in New Jersey would cause it undue hardship or expense. *See generally* Dkt. 663. Blue Spike, on the other hand, has no connections whatsoever to New Jersey (Moskowitz Decl. ¶¶7, 11), and, unlike Iris, Blue Spike does not have massive revenues based on worldwide market dominance. *See* http://www.irisid.com/partners. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize. All these facts are relevant in weighing the relative burdens of litigating in this District versus in New Jersey. Further, it is extremely unlikely that the District of New Jersey could exercise personal jurisdiction over Blue Spike on claims made against it, including any Iris counterclaims.

### B.   The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.

Iris claims that the majority of its likely evidence is located in New Jersey. Dkt. 663 at 4-8. But Iris fails to provide specifics about the nature of this purported evidence, so the evidence's location does not weigh in favor of transfer. *See Stragent* (Ex. 2) at 9 (finding that "the evidence presented is insufficient to determine that the relevant sources of proof weigh in favor of transfer" because although movant asserted that "the bulk of relevant

documents [were] . . . in Michigan, California, and Germany," it did not provide "specific identification of the types of documents" or "evidence of where the documents are physically located"). But even if one assumes that all of Iris's relevant evidence is in fact located in New Jersey, that is only part of the story, as Iris also admits that important third-party evidence is located outside New Jersey and that Blue Spike's sources of proof are located in this District. *Id.* at 6-8.

In fact, *all* of Blue Spike's evidence is located here. *See* Moskowitz Decl. ¶¶1-6; Compl. ¶2. Iris wants the Court to disregard this fact, but the location of Blue Spike's evidence matters. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached as Ex. 7) (fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer). Further, Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; its entire operation has been here for roughly a year. *See* Moskowitz Decl. ¶4. This means that the presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5 (presence of plaintiff's evidence in this District weighed against transfer given that plaintiff's connection to this District was not "recent" or "ephemeral" where plaintiff had opened its office here four months before filing suit, and two of its three principals lived here).

Iris suggests that some important third-party evidence will come from L-1 Identity Solutions, Inc. and MorphoTrust, Inc., which, as explained in part I above, have also moved for transfer to the District of New Jersey and claimed that their relevant evidence is largely located there. Dkt. 663 at 5-6. This fact does not favor transfer for two reasons. First, the Court has not yet ruled on those companies' motions, which Blue Spike opposes. *See* Case No. 6:12-cv-00680-LED, Dkt. 13 at 7-9, Dkt. 16 at 4-5. Second, even if those companies' relevant evidence *were* largely located in New Jersey, Iris has failed to specify what relevant evidence those companies possess or exactly where it would be, preventing the Court from according any weight to Iris's argument. *See Stragent* (Ex. 2) at 9 (third-party evidence allegedly located in transferee forum do not weigh in favor of transfer unless movant specifically identifies the evidence and its physical location).

Finally, Iris argues that transfer to New Jersey is warranted because Blue Spike's corporate affiliate and former patent attorneys are located outside this District—though admittedly not in New Jersey—and they presumably possess relevant evidence. Dkt. 663 at 6-7. Iris's suggestion is mere speculation. Iris has no idea what evidence those entities might possess or where they might keep it. Iris has apparently not stopped to consider that Blue Spike might have the original versions of the evidence or its own copies of key documents. The Court should not accord any weight to Iris's speculation.

11

**C.     The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.**

Iris argues that the New Jersey court will have compulsory process power over more nonparty witnesses than this Court will. *Id*. at 8. This argument fails because Iris has not specifically identified any such witnesses. The party seeking transfer bears the burden of identifying unwilling third-party witnesses that would benefit from transfer, and the weight attributed to such witnesses "is undercut by [a movant's] failure to identify particular witnesses or documents that would require compulsory process." *Geotag* (Ex. 6) at 6-7; *see also Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses).

Iris argues that most of Blue Spike's own likely third-party witnesses are located outside this District. Dkt. 663 at 8. But Iris has no idea what third-party witnesses Blue Spike might call, and it has not shown (or even suggested) that those witnesses would be subject to the New Jersey court's subpoena power. This failure of proof highlights that the whole topic of third-party witnesses is speculative so early in a lawsuit, when it is far from clear which witnesses will ultimately turn out to be relevant. *See Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 8 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 8) (noting "the speculative nature

of weighing this factor as to convenience for trial at the early stages of [a] proceeding").

### D.   The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.

Iris argues that trial in New Jersey would be cheaper and more convenient for the majority of willing witnesses. Dkt. 663 at 9. Iris again fails to specifically identify any such witnesses, sapping its theory of any force. *See Cell & Network Selection* (Ex. 8) at 9 (holding that this factor does not favor transfer when "Defendants fail to specifically identify employees with relevant knowledge of the accused devices."). Iris further undermines its argument by admitting that potential witnesses may reside in New Mexico, Washington, Virginia, or the District of Columbia, but never attempting to explain why those witnesses would find it cheaper and more convenient to testify in New Jersey than in this District. *See* Dkt 663 at 9. Iris also completely ignore that *all* of Blue Spike's own witnesses reside in this District. *See* Moskowitz Decl. ¶6. Indeed, assigning much weight to the costs of attendance for willing witnesses is premature given that the parties have not even exchanged Rule 26 disclosures; it is far from clear which potential witnesses will actually end up testifying. *See GHJ Holdings, Inc. v. Mag Instrument, Inc.*, No. 5:10-cv-230, Dkt. No. 26 (E.D. Tex. Feb. 5, 2011) (attached as Ex. 9) (holding supplemental briefing regarding disclosures should be submitted before a transfer motion is considered).

### III.    The Public-Interest Factors Do Not Show the District of New Jersey to Be Clearly More Convenient.

None of the public-interest factors supports transfer, much less shows that the District of New Jersey is a "clearly more convenient" forum. *In re Volkswagen,* 545 F. 3d at 315. Iris contends that the District of New Jersey "has a far stronger local interest in deciding this dispute than this District." Dkt. 663 at 11. Again, Iris simply ignores half the equation. The allegations in this case are that Iris infringed Blue Spike's patents, harming Tyler-based Blue Spike and its Texas-based owners and employees. *See Atmel* (Ex. 7) at 16 ("The residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business.").

Iris does not address the other public-interest factors, which is unsurprising given that they do not weigh in favor of transfer either. While this District and the District of New Jersey are both competent to apply federal patent law, this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology because the Court is adjudicating over 50 other suits involving the same patents-in-suit.

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny Iris's Motion to Transfer Venue.

14

Respectfully submitted,


 /s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  randall.garteiser@sftrialattorneys.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@sftrialattorneys.com
Christopher S. Johns
  Texas Bar No. 24044849
  chris.johns@sftrialattorneys.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

**Certificate of Service**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on May 13, 2013.

<u>  /s/ Randall T. Garteiser    </u>

16