# Exhibit 7

Case 6:12-cv-00499-RWS-CMC   Document 749-10   Filed 05/13/13   Page 2 of 17 PageID #: 81

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ADVANCED PROCESSOR | § | |
| TECHNOLOGIES LLC | § | |
| | § | |
| v. | § | Case No. 2:12-CV-152-JRG-RSP |
| | § | |
| ATMEL CORP. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Atmel Corporation's Motion to Transfer Venue to the Northern District of California (Dkt. No. 12, filed May 25, 2012).

This case is one of several related patent infringement cases involving Plaintiff Advanced Processor Technologies LLC ("APT").  Case No. 2:11-CV-19 (hereinafter, "the first case") was filed on January 18, 2011 asserting the '978 and '354 patents against nine defendants (Analog Devices, Cirrus Logic, Conexant Systems, Digi International, Marvell Semiconductor, Micrel, Mindspeed Technologies, Netronome Systems, and Zoran).  *See Advanced Processor Techs. LLC v. Analog Devices, Inc., et al.*, Case No. 2:11-CV-19.  Case No. 2:12-CV-152 (hereinafter, "the second case") asserting the '978, '354, and '207 patents was filed on March 23, 2012, naming Atmel as a defendant.  Additional cases involving the same patents were filed against the other defendants from the first case (hereinafter, "the second set of cases"), and have been consolidated with the second case for pretrial purposes.

On July 23, 2012, ARM moved to intervene in all of the related cases on behalf of the remaining defendants (except for defendant AMD).  APT did not oppose ARM's intervention. ARM argued that it should be permitted to intervene because "the necessarily (sic) technical information to defend the case is solely in ARM's possession – not that of the Defendants." (ARM's Mot. to Intervene at 8, Dkt. No. 21.)  ARM concurrently filed identical motions to

transfer venue to the Northern District of California in the first case and the second set of cases, joined by the relevant defendants.

Atmel filed the instant motion to transfer two months prior to ARM's filing of the various motions to intervene and transfer.[1] Although Atmel and APT did not have the benefit of ARM's transfer briefing during the opening and response stages of the briefing schedule, Atmel and APT clearly appreciated the relevance and importance of ARM's witnesses and evidence to the merits of this motion. Atmel itself relies upon a copy of the declaration submitted by ARM in support of the various transfer motions filed in the related cases. (*See* Larri Decl., Dkt. No. 27-10.) Because ARM has witnesses and evidence important to this case, the convenience of its witnesses and the accessibility of its sources of proof should be fully considered in the context of this motion. As ARM and APT have had an full and adequate opportunity to brief that issue in the related cases, the Court takes notice of the related briefing, and incorporates its findings of fact where appropriate.

Although this case has been consolidated for pretrial purposes with cases involving other defendants, there does not appear to be a basis at this time for consolidating the various defendants for the purposes of trial. Accordingly, the Court must consider the merits of the transfer motion on an individual defendant basis, at the point in time when the case was filed.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when

---

[1] The present motion to transfer venue is brought solely on convenience grounds under 28 U.S.C. § 1404 because the Eastern District of Texas is an undisputed proper venue for this lawsuit, and in any event, Atmel never challenged venue by filing a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(3).

Case 6:12-cv-00499-RWS-CMC Document 749-10 Filed 05/13/13 Page 4 of 17 PageID #:
7161
Case 2:12-cv-00152-JRG-RSP Document 93 Filed 03/26/13 Page 3 of 6 PageID #: 183

analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private

and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

### A.    Proper Venue

The Northern District of California and the Eastern District of Texas are proper venues for this lawsuit.

### B.    Private Interest Factors

#### 1.    Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

#### Plaintiff APT's Sources of Proof

APT has submitted a declaration by Dooyong Lee, its chief executive officer and a member of its board of directors. (Lee Decl., Dkt. No. 20-2.) APT is a Texas LLC with its principal place of business in Frisco, Texas. (*Id.* at 1.) APT's parent company, Acacia Research Group LLC, is also a Texas LLC with its principal place of business in Frisco, Texas. (*Id.* at 1.) APT maintains its documents and its business records "related to APT's licensing efforts,

documents relating to APT's corporate formation, and documents relating to the patents owned by APT, among others" at its office in Frisco, Texas. (*Id.* at 2.)

Atmel argues that APT's and Acacia Research Group's publicly traded parent company, Acacia Research Corporation may have relevant information. Acacia Research Corporation has its principal place of business in Newport Beach, California, which is located in the Central District of California. However, APT's evidence clearly shows that all of the evidence relevant to these topics is maintained by APT's and Acacia Research Group's offices in Frisco, Texas. (*Id.*) The Court finds that APT's sources of proof are located in the Eastern District of Texas.

### Defendant Atmel's and Intervenor ARM's Sources of Proof

In its motion, Atmel claims that its documents are "located at, or readily accessible from, Atmel's San Jose, California headquarters." (Mot. at 6.) In support of its claim, Atmel relies on a declaration by David Swan, senior IT director, which states that: "Atmel company records, including technical and financial documents relating to the Atmel Accused Products, are maintained using Atmel's document management systems . . . . While not all of the servers and databases associated with these systems are physically located at Atmel's headquarters in San Jose, California, all of these systems are readily accessible from Atmel's San Jose headquarters." (Swan Decl. 2, Dkt. No. 12-3.) Atmel admits that all of the accused products are designed and developed overseas, and that the business and marketing leadership for these products are in Europe and in San Jose. (Mot. at 4.)

APT argues that Atmel's equivocal statement that its documents are either maintained in San Jose or are "reasonably accessible" from San Jose is not sufficient to show that Atmel's sources of proof weigh in favor of transfer to the Northern District of California. (Resp. at 8-9.) APT correctly observes that the focus of the current law is on the physical location of evidence and documents, and not merely where the evidence or documents may be conveniently accessed.

- 5 -

(Resp. at 8-9.)  In reply, Atmel submits a supplemental declaration by Mr. Swan.  The declaration explains that IT management is primarily done in San Jose, with the assistance of other IT employees in Colorado Springs or overseas.  (Swan Supp. Decl. at 1-2., Dkt. No. 27-2.) The declaration also explains that Atmel's legal department is located in San Jose, and this is where "all internal efforts to locate, preserve, search, and make available documentary evidence in this case" will occur.  (*Id.* at 1-2.)

From the briefing and the declarations, the Court concludes that Atmel is unwilling to identify where relevant documents are physically stored, apart from San Jose.  Mr. Swan's declaration very carefully identifies San Jose as a location where some documents are stored, but refuses to identify the other locations, and merely states that those documents can be accessed from San Jose.  Given Atmel's admissions that all design and development work occurs overseas, it seems likely that significant physical evidence or documents are maintained outside of San Jose.

Intervenor ARM has submitted a declaration by Guy Larri, who was formerly its CPU product manager.  ('019 Larri Decl., Case No. 2:11-CV-19, Dkt. No. 102-17.)  "ARM's corporate headquarters and primarily [sic] development facility for processor cores is located in Cambridge, United Kingdom."  (*Id.* at 3.)  Other development facilities are located in the United Kingdom and France.  (*Id.*)  ARM also has engineering and product development facilities in Cambridge, UK; Austin, Texas; and Silicon Valley, California.  (*Id.*)  With respect to the accused ARM products, Larri states that "[a]ny specific documentation related to these products would have been authored" in Cambridge, UK or Sophia Antipolis, France.  (*Id.* at 4.)

In response, APT argues that movants "not only fail to identify a single employee of ARM with discoverable information in the NDCA, but the supporting declarations confirm that

ARM's technical personnel with relevant knowledge are located in either the United Kingdom or France." ('019 Resp. at 6, Case No. 2:11-CV-19, Dkt. No. 109) APT argues that this fact should carry "substantial weight" because ARM itself argued that "the necessary technical information to defend the case is solely in ARM's possession – not that of the Defendants" in the motion to intervene in this suit. (*Id.* at 6 (quoting ARM's Mot. to Intervene at 8).)

Based on the evidence submitted, the Court finds that Atmel's and ARM's relevant sources of proof are located in the Northern District of California, in Colorado, and in Europe. However, the Court observes that the record is entirely devoid of any measure of the relative quantities of proof available at any location.

### Third Party Sources of Proof

*Inventors*

Inventors Shinichi Yoshioka, Ikuya Kawasaki, Susumu Narita, Saneaki Tarmaki, and Atushi Hasegawa reside in Japan, and any documents they have are located in Japan. (Loudermilk Decl. at 1, Docket No. 20-1.) Based upon the listing of inventors on the face of the '207 patent, which was filed in 1999, Rajesh Chopra is believed to be in Sunnyvale, California.

*Prosecuting Attorneys*

Prosecuting attorney Alan Loudermilk has an office in Marshall, Texas and has maintained his files at that location since early 2010. (Loudermilk Decl. at 1, Docket No. 20-1.) Attorneys Carl Brundige, David Lee, and Melvin Krauss are all located in Alexandria, Virginia. ('019 Farnum Decl. at 2-3, Case No. 2:11-CV-19, Dkt. No. 109-1.)

Movants identify J. Nicholas Gross (a lawyer presently in Berkeley, California), as one of the prosecuting attorneys for the asserted '207 patent. In response, APT submitted Mr. Loudermilk's declaration, which explains how Mr. Gross had no involvement in the prosecution of the '207 patent, and is only listed on the application's power of attorney "as a matter of

standard practice because [Gross] and [Loudermilk] shared certain portions of [their] respective patent prosecution practices at that time." ('019 Loudermilk Supp. Decl. at 3, Case No. 2:11-CV-19, Dkt. No. 109-3.) Movants have not challenged APT's explanation.

*Prior Art*

Movants argue that "prior art and associated witnesses are predominantly centered in the [Northern District of California.]" ('019 Mot. at 2 and 11, Dkt. No. 2:11-CV-19, Dkt. No. 108.) In support of this contention, Movants attached a highlighted listing of prior art references included in Defendants' invalidity contentions where 33 of the 80 references are highlighted. ('019 Mot. Ex. H, Dkt. No. 102-8.) Movants represent to the Court that each highlighted reference "have inventors or authors located in the Northern District." (*Id.* at 11.) Movants also identify MIPS Technologies, Inc. as a designer of "one primary invalidating" reference. ('019 Mot. at 11.) MIPS has a primary place of business in the Northern District of California. (*Id.*)

APT raises several concerns with respect to Movants' identification of prior artisans. First, there is no declaration that identifies who prepared the listing and identified the locations of the authors and inventors. ('019 Resp. at 11.) The exhibit itself does not list any of the authors and inventors, and does not list their locations. (*Id.*) Given the age of a number of the references, there is no evidence that any of the authors or inventors of the highlighted references "are even still alive, much less whether they currently reside in [the Northern District of California.]" (*Id.*) APT argues that no weight should be given "to the speculative assertion that any of these prior art witnesses may currently reside in [the Northern District of California.]" (*Id.* ar 12.) With respect to MIPS, APT argues that there is "no evidence that MIPS has actual relevant information in [the Northern District of California]," and that the only basis for

Case 6:12-cv-00499-RWS-CMC Document 349-10 Filed 05/13/13 Page 10 of 17 PageID #:
7167
Case 2:12-cv-00182-JRG-RSP Document 93 Filed 05/20/13 Page 9 of 16 PageID #: 789

Movants' argument is a "website printout showing that MIPS has its headquarters in the NDCA
and other US offices in Oregon." (*Id.* at 12.)

Movants offer little in response to APT's concerns other than arguing that APT's
"speculation that the prior art somehow have moved away from the Northern District is
nonsensical," and that there is no requirement that Movants prognosticate on what "witness
MIPS or Sun [Microsystems] might identify in response to a 30(b)(6) notice." ('019 Reply at 4-
5, Case No. 2:11-CV-19, Dkt. No. 114.)

The Court has reviewed Movants' listing of prior art references. The 80 references
comprise patents, user manuals, and technical articles, dated as early as 1974 and as late as 1994.
All but a handful of the highlighted references are U.S. or foreign patents or patent applications.
On balance, the Court finds that some weight, but not substantial weight, should be accorded the
33 references. First, movants have not identified what other relevant evidence may be available
from the prior artisans. As patents and printed publications, their principal evidentiary value lies
in the content of the patents and publications themselves. This does not appear to be a situation
where the authors and inventors may have important evidence to offer that is not reflected in the
writings, such as evidence to establish a prior public use or an on-sale bar.

*Other Third Parties*

In its reply brief, Atmel identifies Vachellia LLC (Newport Beach, California) ("a prior
assignee of the asserted patents") and Renesas Electronics America, Inc. (headquartered in Santa
Clara, California) ("a subsidiary of the successor of prior assignee Renesas Tech. Corp.") as
potential sources of evidence. (Reply at 2.) Atmel suggests that Vachellia LLC and Renesas
Electronics America may have evidence regarding "marking, standing, licensing, chain of title,
and valuation with respect to the asserted patents." (Reply at 3.) As to Renesas Electronics

America, APT argues that Renesas Technology Corp. is in Japan, and that Atmel's only basis for identifying Renesas Electronics America as a potential source of information is that it is "a subsidiary of the successor of prior assignee Renesas Tech. Corp." (Sur-Reply at 3.)

The Court finds that the sources of proof factor does not favor transfer to the Northern District of California. All of Plaintiff's evidence is located within this district. Movants evidence is split between the Northern District of California and Europe, where "necessary" technical evidence resides. Movants fail to provide any indication of how much evidence resides at any of the various locations. With respect to third party sources of proof, one of the prosecuting attorney's files reside in this district, and none exist in the Northern District of California. Finally, there is some indication that prior art witnesses reside in the Northern District of California, but there is only speculation as to what relevant evidence these witnesses may possess beyond what is already provided by the prior art patents, patent applications, and printed publications themselves. Moreover, Movants have chosen not to provide any location information for any of the remaining 47 prior art references, which suggests that third party sources of prior art evidence are more distributed than perhaps is suggested by Movants' highlighted prior art references.

## 2. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should assess the relevance and materiality of

the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

### APT's Witnesses

"A majority of APT's Board of Directors, including [Dooyong Lee] (CEO of APT), Mr. Marvin Key (officer of APT), and Ms. Tisha Stender (officer of APT) work primarily from their respective offices in the Eastern District of Texas. All of those officers have knowledge of relevant facts and are potential witnesses in this case." (Lee Decl. at 3, Dkt. No. 109-4.) "At least two Acacia employees - Mr. Fahim Aftab (who has technical knowledge relating to the patents in APT's patent portfolio), and Ms. Annie Le Blanc (who has knowledge of certain licensing practices and agreements relating to APT's patent portfolio) - are potential witnesses with knowledge of relevant facts. Both of them work primarily or exclusively from their offices in the Eastern District of Texas. They also live in Texas." (*Id.* at 4.) As discussed above, there is no evidence that any of Acacia Research Corporation's California-based employees are likely witnesses. Nonetheless, Atmel argues that APT employees Mr. Lee and Mr. Key are also managers at Acacia Research Corporation, so a California venue would not be more inconvenient for them. However, it is uncontroverted that Mr. Lee and Mr. Key both reside in Texas.

### Defendant Atmel's and Intervenor ARM's Witnesses

Atmel has 5,100 employees worldwide, and over 500 work at its San Jose, California headquarters. (Inserra Decl at 1, Dkt. No. 12-2.) "The Atmel Accused Products are part of Atmel's Microcontroller and Touch Business Unit. The leadership [of the unit] is located in part in San Jose, California, at Atmel's headquarters, and in part overseas." (*Id.* at 2.) "[T]he likely employee witnesses regarding the marketing, sales, revenues and operation of the relevant

features of the Atmel Accused Products, as well as potential invalidity of the Asserted Patents, are located at either Atmel's headquarters in San Jose or overseas." (*Id.* at 3.) "Atmel witnesses regarding the technical design or operation of the Atmel accused products are located overseas." (Mot. at 6.)

APT argues that this evidence shows that the Northern District of California is not more convenient because all of Atmel's technical witnesses reside overseas, and some sales and marketing witnesses are also overseas. (Resp. at 6-7.)

In reply, Atmel submits an additional declaration by Peter Jones, vice president of the Microcontroller and Touch Business Unit. (Jones Decl., Dkt. No. 27-1.) Mr. Jones states that he is the co-leader of the business unit and is located in San Jose, California. (*Id.* at 2.) His co-leader is Vegard Wollan, who is based in Norway but "frequently travels to Atmel's headquarters in San Jose, California during the ordinary course of his Atmel business activities." (*Id.*) "Alfredo Vadillo, who has overall responsibility for Atmel's ARM Products, and reports to Mr. Wollan and [Mr. Jones], is based in France." (*Id.*) Mr. Vadillo also travels in the ordinary course of business to San Jose, California. (*Id.*) Mr. Jones reiterates Atmel's position that "the likely employee witnesses regarding the marketing, sales, revenue, design and operation of the relevant features of the Atmel Accused Products, as well as potential invalidity of the Asserted Patents, and any hypothetical negotiation regarding licensing of the Asserted Patents, are all located at either Atmel's headquarters in San Jose or overseas." (*Id.*) Mr. Jones posits that "[t]o the extent that any of Atmel's overseas personnel would be required to travel to the United States to testify in this case, travel to the Northern District of California would be more convenient for these witnesses . . . ." (*Id.* at 3.)

ARM's employees with technical knowledge reside exclusively in Europe. With respect to "the ARM1136J, ARM11MP, and ARM926EJ-S ARM cores, the individuals with direct knowledge of the overall functionality of these products would be located in Cambridge." ('019 Larri Decl. at 5.) With respect to the "Cortex A9 core, the individuals with direct knowledge of the overall functionality of these products would be located in Sophia (sic), France." (*Id.* at 5.)

In response, APT notes that ARM has failed to specifically identify a single relevant witness. ('019 Resp. at 6 and 11.) In reply, ARM identifies three witnesses in the Northern District of California (Saumil Shah, Christine Cong Tran, and Ehab Youssef) that have "relevant knowledge of the licensing of the accused ARM cores." (Hodgson Decl. at 4, Dkt. No. 114-6.)

Based on the evidence submitted, the Court finds that Atmel's and ARM's relevant technical witnesses are located in Europe. Peter Jones and unidentified sales and marketing witnesses are located in the Northern District of California. Other specifically identified Atmel witnesses (Vegard Wollan and Alfredo Vadillo) are located in Europe. Although Mr. Wollan and Mr. Vadillo frequently travel to the Northern District of California, that is not where they reside and a trial in the Northern District of California would entail inconvenience to them nonetheless. ARM has specifically identified only three witnesses in the Northern District of California, with the remaining relevant witnesses in Europe.

**Third Party Witnesses**

The parties argued the convenience of venue for third party witnesses along with the identification of third party sources of proof. The Court's analysis and findings with respect to third party sources of proof are also applicable to this convenience factor and are incorporated herein.

The Court finds that the cost of attendance for willing witnesses factor does not favor transfer to the Northern District of California. All of Plaintiff's party witnesses reside within this

district.  Atmel has only identified one specific witness that resides in the Northern District of California, and other important witnesses reside in Europe.  ARM has identified three witnesses relevant to licensing of its processor cores that are located in the Northern District of California. Although ARM has taken the position in its motion to intervene that it alone possesses "necessary" technical information relevant to infringement, ARM has failed to identify any specific technical witnesses.  Given that ARM's declarations establish that its technical witnesses reside in Europe, it appears that ARM does not bother specifically identifying relevant technical witnesses because it would show that defense witnesses are not concentrated in the Northern District of California.  The only prosecuting attorney in either forum is located in the Eastern District.  One inventor is located in the Northern District of California.  No specific third party prior art witnesses are identified, but for some, the Northern District of California would be more convenient.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Most of the identified potential witnesses located in the Northern District of California are party witnesses.  One inventor may still reside in the Northern District of California. Although movants offer evidence identifying relevant prior art witnesses that is somewhat suspect, it appears that there may be a few witnesses within the Northern District of California's subpoena power.  The Court finds that this factor weighs in favor of transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Atmel argues that this factor is neutral.  APT argues that there are judicial economy benefits to retaining this case here because other related cases are still pending.  The Court finds that this factor is neutral.

C. **Public Interest Factors**

   1. **Administrative Difficulties Flowing From Court Congestion**

   The Court finds this factor neutral.

   2. **Local Interest in Having Localized Interests Decided at Home**

   "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-LaRoche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009.) Atmel argues that it is headquartered in the Northern District of California and that "[m]any of the day-to-day decisions related to the accused products take place there." (Mot. at 9.) Atmel observes that "[o]ne of the patents-in-suit appears to have arisen entirely from an alleged invention in the Northern District of California," and that the prosecuting attorneys were based in the Northern District of California. (*Id.*) Atmel argues that APT has no real connection to the Eastern District of Texas. (*Id.*)

   Atmel's briefing suggests that this Court should view APT's presence in the Eastern District of Texas with suspicion, and disregard evidence that it has a legitimate presence in the district because APT is a non-practicing entity. As another court has recognized, "many businesses and academic institutions enforce their patent rights through private companies [like APT]; such a business strategy is not nefarious." *Cradle IP, LLC v. Texas Instruments, Inc.*, Case No. 11-CV-1254-SLR, slip op. (D. Del. February 12, 2013) (Robinson, J.). Moreover, it would be improper to "treat such non-practicing entities as anything less than holders of constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office." (*Id.*)

   The evidence shows that APT was formed in 2010, before this lawsuit was filed, and that APT's employees are residents in the Eastern District of Texas. APT and Acacia Research Group operate a legitimate patent licensing business. Atmel offer no persuasive evidence to the

contrary. The residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business.

The Northern District of California also has a legitimate local interest in suits involving a resident business. However, Atmel does not identify any controlling law that requires giving a preference to larger businesses over smaller ones. Accordingly, this factor is neutral.

### 3-4. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

These factors are neutral.

## CONCLUSION

The Court finds that Movants have not established that the Northern District of California is a clearly more convenient forum than the Eastern District of Texas. Accordingly, Atmel's Motion to Transfer Venue to the Northern District of California (Dkt. No. 12) is **DENIED**.

**SIGNED this 26th day of March, 2013.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE