IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 6:12-CV-499 LED |
| v. | § § | (LEAD CASE) |
| TEXAS INSTRUMENTS, INC., | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |
| BLUE SPIKE, LLC | § § | Civil Action No. 6:12-CV-647 LED |
| Plaintiff, | § § | (CONSOLIDATED WITH 6:12-CV-499) |
| v. | § § | |
| INNOVATRICS S.R.O.; SWIFT BIOMETRICS, INC. Defendants. | § § § § | |

## REQUEST FOR TERMINATION OF ELECTRONIC NOTICES

Now comes Robert C. Matz, of Makman & Matz LLP, and pursuant to Rule CV-11(f), hereby requests that the Clerk of the Court remove his name from the list of persons authorized to receive electronic notices in this case.

Dated: May 14, 2013   Respectfully submitted,

*/s/ Robert C. Matz*

Robert C. Matz (California State Bar No. 217822)
Makman & Matz LLP
655 Mariner's Island Blvd., Suite 306
San Mateo, CA 94404
Telephone:  650-242-1560
Facsimile: (650) 242-1547
Email:  robert@makmanmatz.com

*Counsel for Defendant Innovatrics S.R.O.*

0

<h2 style="text-align:center"><u>CERTIFICATE OF SERVICE</u></h2>

I hereby certify that on May 14, 2013, I electronically filed the foregoing:

**REQUEST FOR TERMINATION OF ELECTRONIC NOTICES**

with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record and allow them to access the document.

*/s/ Robert C. Matz*

Robert C. Matz

## I.   NOTICE OF MOTION, MOTION, AND GROUNDS FOR MOTION

Defendant Innovatrics S.R.O. ("Innovatrics") hereby gives notice of its motion, and hereby moves the Court, for an order dismissing the Complaint filed by Plaintiff Blue Spike, LLC ("Blue Spike") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim of direct, contributory, or willful infringement against Defendant Innovatrics, for an order dismissing the Complaint or quashing Blue Spike's attempt to serve process on Defendant Innovatrics under Federal Rule 12(b)(5), for an order dismissing this case for lack of personal jurisdiction over Defendant Innovatrics under Federal Rule 12(b)(3).

The grounds for Defendant Innovatrics' motion are (1) Blue Spike's Complaint fails to state a claim upon which relief can be granted for either direct, contributory, willful, or inducement of patent infringement against Defendant Innovatrics, (2) Blue Spike's attempt to serve process on Defendant Innovatrics, a Slovakian company, by serving the Texas Secretary of State does not comply with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention Re: Service of Process" or "Convention"), (3) Blue Spike's invalid service of process compels the conclusion that this Court has no personal jurisdiction over Defendant Innovatrics.[1]

## II.  REQUEST FOR JUDICIAL NOTICE

Defendant Innovatrics hereby requests that this Court take judicial notice of the text of the Hague Convention Re: Service of Process (specifically, Article 10(a)), the fact that the United States and the Slovak Republic are both signatories to this Convention, and that the Slovak Republic expressly objected to Article 10(a), which relates to service of process through "postal channels," when it acceded to the Convention. The foregoing facts are subject to judicial notice because they can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. *See* Fed.R.Evid. 201 (b)(2).

## III.  INTRODUCTION

Plaintiff Blue Spike's Complaint fails to state a claim of either direct, contributory, willful, or inducement of patent infringement against Defendant Innovatrics, and the method it used to serve process on Innovatrics does not comply with the Hague Convention Re: Service of Process. Therefore, Blue Spike's Complaint against Innovatrics should be dismissed.

Blue Spike's Complaint alleges that "Defendant," defined as Innovatrics *and* Swift Biometrics, Inc. ("Swift Biometrics") *collectively*, has infringed the patents-in-suit *either* through direct infringement, active inducement of infringement, *or* contributory infringement.

---

[1] Defendant Innovatrics submits the instant motion is suitable for disposition without oral argument and does not request a hearing on the motion.

Later, it asserts this same collective "Defendant" has willfully infringed the patents-in-suit. Blue Spike's definition of "Defendant" to include both Defendant Innovatrics *and* Defendant Swift Biometric is problematic in that these are two completely separate and independent companies, and the Complaint states no facts, nor supplies any legal theory, as to why these two separate companies should be treated as a single entity or alter egos of each other, nor why Innovatrics should be made to answer, much less be held liable for, the acts and products of Swift Biometric.  As presently drafted, Blue Spike's Complaint does not state claims against Defendant Innovatrics alone; rather, it seeks to state claims against a collective "Defendant" comprised of both Innovatrics *and* Swift Biometrics without supplying any facts or legal theory that would support proceeding in this manner.  Blue Spike's Complaint should be dismissed on this ground alone.  But there are many other grounds for dismissal of this deficient Complaint.

Blue Spike's allegations of direct infringement are equally flawed in that they cannot be read to implicate either Innovatrics or Swift Biometric individually, or even a "collective" Defendant comprised of both of these companies.  In its Complaint, Plaintiff Blue Spike identifies generic "end users" as the parties who are responsible for any direct infringement of the patents-in-suit in this case.  Importantly, "Defendant" is not identified as being part of this group of "end users" that are directly infringing the patents-in-suit.  And there is no allegation, nor any facts, explaining how, or under what circumstances, "Defendant," or Innovatrics, or Swift Biometrics, could be considered to be a generic "end user."  Despite this, in numerous paragraphs of its Complaint, and likely due to careless, cut and paste style drafting, Blue Spike repeatedly (and rotely) asserts causes of action for direct infringement against "Defendant."  As Blue Spike's Complaint makes it clear that it is the "end user" – not "Defendant" –who is responsible for any direct infringement of the patents-in-suit, Blue Spike has not and cannot state a claim for direct patent infringement against "Defendant," which includes Defendant Innovatrics.  Therefore, Blue Spike's claims for direct infringement should be dismissed without leave to amend.

3

Blue Spike's allegations of contributory infringement are also defective.  In addition to the ambiguities created by its identification of two separate companies as a single "Defendant," Plaintiff Blue Spike's Complaint also fails to identify which claims of the patents-in-suit are allegedly being indirectly infringed by this "Defendant," which methods or systems of this "Defendant" allegedly indirectly infringe the patents-in-suit, the actual direct infringer whose infringement this "Defendant" allegedly contributes (over and above a generic "end user"), and the material or component that is allegedly sold by this "Defendant" that has no substantial non-infringing use.  Since Plaintiff Blue Spike's Complaint fails to make, or sufficiently make, any of these necessary identifications, its Complaint should be dismissed.

Blue Spike's allegations of willful patent infringement are also insufficient.  In its Complaint, Blue Spike dutifully recites the elements of a claim for willful patent infringement (albeit against a "Defendant" comprised of two separate entities), it does not plead any actual facts supporting these elements, nor does its Complaint demonstrate a good faith basis for even asserting willful infringement against "Defendant."  This claim should be dismissed as well.

Finally, at the risk of putting the cart before the horse, Blue Spike's attempt to serve the Summons and Complaint on Innovatrics via the Texas Secretary of State under Texas law is invalid because this manner/method of service of process does not comply with the Hague Convention Re: Service of Process.  Innovatrics is a Slovakian entity.  Blue Spike is a U.S. entity.  The Slovak Republic and the U.S. are both parties to the Convention.  When the Slovak Republic acceded to the Convention, it availed itself of the right to "object" to certain forms of service of process, including transmitting the Summons and Complaint to Slovak entities "through postal channels."  This is exactly how Blue Spike attempted to serve the Summons and Complaint in this case; it served the Texas Secretary of State, who then sent these documents directly to Defendant Innovatrics in Slovakia through postal channels.  Accordingly, under long-established rules of international/treaty law, Constitutional law (*i.e.*, the Supremacy Clause), and controlling Fifth Circuit case law holding that service of process in this manner on a foreign defendant is invalid (which was supplied to counsel for Blue Spike during the meet

and confer process), the Complaint should be dismissed or, at the very least, the attempted service quashed. And since service of process was invalid, this Court has not acquired personal jurisdiction over Innovatrics, thus compelling the conclusion that the Complaint should be dismissed for lack of personal jurisdiction over Defendant Innovatrics.

## II.     BACKGROUND FACTS

Defendant Innovatrics submits the following facts in support of its motion:

### A.     Facts Re: Fatal Flaws of Pleading/Predicate Acts of Alleged Infringement

Defendant Innovatrics is a Slovakian limited liability corporation with its principal place of business in the Slovak Republic (*See* D.E. 1 in Civil Action 6:12-CV-647, ¶3). Defendant Swift Biometric is a Texas corporation with its principal place of business in San Antonio. (See D.E. 1 in Civil Action 6:12-CV-647, ¶4). There is no alter ego allegation in the Complaint, nor any allegations or statements of alleged fact that would support a finding that these two companies should be treated as a single entity, or that Defendant Innovatrics should be held liable for the acts and products of Swift Biometrics. (*See* D.E. 1 in Civil Action 6:12-CV-647, ¶¶1-63). And the allegations of direct, contributory, willful, and inducement of infringement in the Complaint are all made against this collective "Defendant," comprised of Innovatrics and Swift Biometrics. (*Id*. at ¶¶ 28, 36, 43, 44, 51, 52, 59 and 60). Thus, there is not a single claim or cause of action in Blue Spike's Complaint that is directed to Defendant Innovatrics alone, as presently stated. (*Id*. at ¶¶1-63).

In its Complaint, Blue Spike asserts that the direct infringers of the patents-in-suit are "the *end users* of the Accused Products." (D.E. 1 in Civil Action 6:12-CV-647, ¶¶ 28, 36, 43, 44, 51, 52, 59 and 60). But nowhere in the Complaint is "Defendant" identified as being part of this group of generic "end users" that are directly infringing the patents-in-suit. (*Id*. at ¶¶1-63). Despite this, in numerous paragraphs of its Complaint, Blue Spike repeatedly (and rotely) asserts causes of action for direct infringement against "Defendant." (Id. ¶¶ 28, 36, 43, 44, 51, 52, 59 and 60). However, there is no allegation, nor any facts, explaining how, or under what

circumstances, "Defendant," or Innovatrics, or Swift Biometrics, could be considered to be a generic "end user," such that it is liable for direct infringement. (*Id*. at ¶¶1-63).

With respect to its claims of contributory patent infringement, Blue Spike's Complaint alleges that "Defendant," again, defined "collectively" as Swift Biometrics *and* Innovatrics:

> has been and now is…contributing to the infringement by others of the [patents-in-suit] in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things…making, using, importing, offering for sale, and/or selling, without license or authority, products *for use in [unidentified]* <u>systems</u> *that fall within the scope of* <u>one or more claims</u> *of the [patents-in-suit]*. Such products include, without limitation, <u>one or more of the Accused Products</u>.

(*See* D.E. 1 in Civil Action 6:12-CV-647, ¶¶36, 44, 52, and 60). There is no indication in the Complaint as to which particular claims of the patents-in-suit are being allegedly indirectly infringed, which particular systems these allegedly infringing products are being incorporated into, and no facts from which the Court may infer that the allegedly infringing material or components have no substantial non-infringing uses. (*Id*.). And, as noted *supra*, Blue Spike's identification of the direct infringer to whose infringement the "Defendant" allegedly contributes is limited to a generic "end user."

Blue Spike's claims of willful patent infringement are based upon the threadbare allegations that "on information and belief:"

> Defendant [again, defined "collectively" as Innovatrics and Swift Biometrics] has continued to infringe [the patents-in-suit] since receiving notice of their infringement, at least by way of receiving notice of this lawsuit. [And that o]n information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk."

(*See* D.E. 1 in Civil Action 6:12-CV-647, ¶¶36, 44, 52, and 60). No facts are stated to support the allegations that there was an objectively high likelihood that Defendant's actions constituted infringement of a valid patent, or that Defendant knew or should have known of this allegedly high risk of infringement, or that allegedly "continued infringement" is "objectively reckless." (*Id*. at ¶¶1-63). Given this, there does not appear to even be a good faith basis for

6

asserting willful infringement.

Finally, with respect to service of process, personal jurisdiction, and use of the Texas Secretary of State to effect substitute service on Defendant Innovatrics, Blue Spike makes the conclusory allegation that Innovatrics "…does business in the State of Texas and in the Eastern District of Texas" (s*ee* D.E. 1 in Civil Action 6:12-CV-647, ¶3), but there are no actual facts stated in the Complaint that would support this bald accusation with respect to Defendant Innovatrics.  In its Complaint, Blue Spike alleges the infringing activity in question is that "Defendant [again, defined as both Innovatrics *and* Swift Biometrics] makes, uses, offers for sale and/or imports *into the U.S.* products, systems and/or services...," but this cannot be reasonably construed as an allegation that these allegedly infringing activities are taking place in the state of Texas, or the Eastern District of Texas for that matter.  (*See* D.E. 1 in Civil Action 6:12-CV-647, ¶28).  Moreover, in the personal jurisdiction section of the Complaint, Blue Spike alleges that it has personal jurisdiction over "Defendant" because:

> (1) Defendant has designated an agent for service of process in the State of Texas; (2) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (3) Defendant regularly does business or solicits business in the District and in Texas; (4) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (5) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here. Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

(D.E. ).  However, it is reasonable to infer that each of these allegations relate to Defendant Swift Biometrics – a Texas corporation with its principal place of business in San Antonio, Texas – not Defendant Innovatrics, which is located in the Slovak Republic.

### A.   Facts Re: Improper Service of Process

Defendant Innovatrics is a Slovakian limited liability corporation with its principal place of business in the Slovak Republic.  (*See* D.E. 1 in Civil Action 6:12-CV-647, ¶¶3).  Blue Spike is a Texas limited liability company with its headquarters and principal place of business in the United States.  (*Id*., ¶2).  The Slovak Republic and the United States are both signatories

7

to the Hague Convention Re: Service of Process. (*See* Hague Conference on International Law, Status Table, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited on January 2, 2013)).

Article 10 of the Convention expressly states "[p]rovided the State of destination does not object, the present Convention shall not interfere with….(a) the freedom to send judicial documents, by postal channels, directly to persons abroad…" (*Id*., Full Text of Convention, available at http://www.hcch.net/index_en.php?act=conventions.text&cid=17 (last visited January 2, 2013) (emphasis added)). However, when the Slovak Republic declared itself bound by the Convention, it included the reservations and declarations of made by Czechoslovakia, including the following reservation/objection to Article 10 of Convention – "in accordance with Article 10 of the Convention…*judicial documents may not be served by another Contracting State through postal channels*…" (*Id*., Type [of Accession], available at http://www.hcch.net/index_en.php?act=status.comment&csid=419&disp=type). Thus, when it acceded to the Convention, the Slovak Republic availed itself of the right to object to certain forms of service of process – here, attempts to serve process by directly sending the Summons and Complaint to a defendant in the Slovak Republic "through postal channels."

The Proof of Service filed by Plaintiff Blue Spike indicates that it attempted to serve the Summons and Complaint on Defendant Innovatrics by first serving a copy of these documents on Helen Lupercio, who is designated by law as the registered agent for service of process for the Texas Secretary of State. (*See* D.E. 63 in Civil Action 6:12-CV-499, p. 2). Under Texas law, when this manner of service is requested, the Texas Secretary of State must then send the Summons and Complaint directly to the foreign defendant via registered U.S. mail. *See* Tex. Civ. Prac. & Rem. Cod § 17.045 (a), (d) (Vernon Supp. 2002). Although Texas law does provide that a company can be deemed to be "doing business" in Texas if it, in whole or in part, commits a tort in the State of Texas, as to Defendant Innovatrics, Blue Spike's Complaint does not contain a single allegation of fact to support a finding that Innovatrics has commited any tortious act, in whole or in part, in the state of Texas, much less the Eastern District of Texas.

## IV. LEGAL STANDARD

Defendant Innovatrics submits the following legal standards apply to the instant motion:

### A. Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)

When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). A "patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). The United States Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers…'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009) (citing *Twombly*, 550 U.S. at 555).

#### 1. Elements Required for Claims of Direct Infringement

Courts in this District have held that the question of whether a complaint adequately pleads a cause of action for direct patent infringement is to be measured by the specificity required by Form 18. *See Inmotion Imagery Technologies v. Brain Damage Films*, Case No. 2:11-CV-414 (JRG), 2012 WL 3283371, *2 (Aug. 10, 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012); Fed.R.Civ.P. 84 ("The forms in the Appendix suffice under these rules….")). This same Court noted that the Federal Circuit has recently reiterated that one of the requirements of Form 18 is a statement that the "defendant" in question has been directly infringing the patent. *Id*. at *3, citing *Bill of Lading*, 681 F.3d at 1334.

#### 2. Elements Required for Claims of Contributory Patent Infringement

To state a viable claim for contributory patent infringement, this District requires plaintiffs to identify (1) which patent claims are allegedly infringed indirectly, (2) which methods or systems indirectly infringe, and (3) the direct infringer to whose infringement the

defendant supposedly contributes. *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538 (E.D. Tex. 2010); *Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, 2010 WL 3155888 (E.D. Tex. Mar. 29, 2010). Also, the plaintiff must (4) identify the material or component that is sold by the defendant for use in a patented process or system and plead sufficient facts supporting an inference that the material or components have no substantial non-infringing uses. *Id.*

### 3. Elements Required for Claims of Willful Patent Infringement

To establish a claim for willful patent infringement, a plaintiff must demonstrate either direct, or indirect, infringement, as well as the following elements (1) that there was an objectively high likelihood that the defendant's activities constituted infringement of a valid patent, and (2) either that the defendant subjectively knew of the risk of infringement or that the risk of infringement was so obvious, the defendant should have known of the risk." *See Inmotion Imagery Technologies v. Brain Damage Films*, Case No. 2:11-CV-414 (JRG), 2012 WL 3283371, *2 (Aug. 10, 2012) (citing *In re Seagate Technology*, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003 (Fed. Cir. 2012). At the pleading stage, the plaintiff must establish a good faith basis for alleging willful infringement. *Id.*, citing *Seagate*, 497 F.3d 1374.

### B. Legal Standard Under Federal Rule of Civil Procedure 12(b)(3)

Finally, "as with a challenge to jurisdiction, when service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity." *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980). A district court faced with a Rule 12(b)(5) motion has the discretion to either dismiss the action or simply quash service. *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985); see also *Raburn v. Dae Woo, Inc.*, No. 3:09-CV-1172-G, 2010 WL 743933, at *4 (N.D. Tex. Mar. 3, 2010) (citing *Montalbano* for this rule); *Nabulsi v. Nahyan*, No. H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex., June 12, 2009) (same).

### 1. Standard for Determining Applicability of the Hague Convention

To determine whether the Hague Convention applies to Plaintiff's method of serving Defendant, this Court must look to the internal law of Texas. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). If Texas law defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Convention applies. *Volkswagenwerk*, 486 U.S. at 700. The Hague Convention pre-empts inconsistent methods of service of process provided for under state law. *Id*. at 699.

### 2. Texas Law Re: Entities "Doing Business In Texas"

The Texas Civil Practice and Remedies Code provides that the Texas Secretary of State is an agent for service of process on a nonresident who engages in business in this state. See Tex. Civ. Prac. & Rem. Code §17.044(b). A nonresident is said to have "engaged in business" in Texas if it "commits a tort in whole or in part in [Texas]..." *Id*. at § 17.042(2). Properly read, this statute allows the Texas Secretary of State to serve as a foreign defendant's agent for service of process *provided that* he forwards the documents to the defendant via registered mail. *See* Tex. Civ. Prac. & Rem. Code §17.045(a), (d) (Vernon Supp. 2002).

## VI. ARGUMENT

Defendant Innovatrics submits the following arguments in support of its motion:

### A. Blue Spike's Complaint Fails to State A Claim Against Innovatrics Alone

Blue Spike's Complaint should be dismissed because, as presently drafted, the Complaint seeks to allege causes of action for direct, contributory, willful, and inducement of patent infringement against a collective "Defendant" comprised of two separate companies – Defendant Innovatrics and Defendant Swift Biometrics – but fails to state any facts, or supply any legal rationale, as to why Defendant Innovatrics should be held liable for the acts and products of Defendant Swift Biometrics.

Blue Spike states it is filing its Complaint "against Defendant Innovatrics s.r.o. *and* Swift Biometrics, Inc. (collectively "Defendant")." (D.E. ). The allegations of direct, contributory, willful, and inducement of infringement in the Complaint that are made thereafter are all made against this collective "Defendant." (*id*. at ¶¶ 28, 36, 43, 44, 51, 52, 59 and 60).

11

As such, there is not a single claim or cause of action stated in Blue Spike's Complaint that is directed to Defendant Innovatrics alone, as opposed to Defendant Swift Biometrics. (*Id*. at ¶¶1-63). Blue Spike's Complaint does not allege an alter ego or agency relationship between Defendant Innovatrics and Defendant Swift Biometrics, nor are there any allegations or statements of alleged fact that would support a finding that these two companies should be treated as a single entity, or that Defendant Innovatrics should be held liable for the acts and products of Swift Biometrics. (*See* D.E. 1 in Civil Action 6:12-CV-647, ¶¶1-63). Since Blue Spike cannot state a plausible claim that Innovatrics and Swift Biometrics, as alter egos or agents of the other, have collectively engaged in direct, contributory, willful, or inducement of infringement, Blue Spike's Complaint should be dismissed. *Twombly*, 550 U.S. at 555.

### B. Blue Spike Cannot State a Claim for Direct Infringement

Blue Spike's claims of direct infringement should be dismissed without leave to amend because its Complaint makes it clear that it is "end users" who directly infringe the patents-in-suit, not a collective "Defendant" comprised of Defendant Innovatrics and Defendant Swift Biometrics, or even Defendant Innovatrics alone. Again, as Blue Spike cannot state a plausible claim for direct infringement against Defendant, or Defendant Innovatrics, its Complaint should be dismissed without leave to amend.

### C. Blue Spike's Allegations of Contributory Infringement Are Deficient

Blue Spike's claims for contributory infringement should be dismissed because it has failed to
And, the Complaint should be dismissed given Blue Spike's failure to plead this with clarity. See *Parallel Networks LLC v. AEO, Inc.*, No. 6:20-cv-275, Slip op. at 4 (E.D. Tex. Feb. 10, 2011)(dismissing indirect infringement claims because complaint failed to identify which claims were indirectly infringed); *Clear With Computers LLC v. Bergdorf Goodman, Inc.*, No. 6:09-cv-481, 2010 WL 3155888 at *4 (E.D. Tex. Mar. 29, 2010)(dismissing plaintiff's indirect infringement claim because allegations failed to identify which claims were indirectly

12

infringed, which methods or systems indirectly infringed or the identities of the alleged direct infringers).

Blue Spike's failure to identify any third party direct infringer is also a fatal flaw. See *Adjustacam, LLC v. Amazon.com, Inc.*, No. 6:11cv329, slip op at 5-6 (E.D. Tex. Mar. 31, 2011)(dismissing indirect infringement claims where complaint failed to identify third party direct infringer); *Parallel Networks LLC*, slip op at 5 (same); *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09cv446, slip op at 5 (E.D. Tex. May 6, 2010).

### D. Blue Spike's Allegations of Willful Infringement Are Deficient

*See Parallel Networks LLC v. AEO, Inc.*, No. 6:20-cv-275, Slip op. at 6 (E.D. Tex. Feb. 10, 2011)(dismissing willfulness claim when Plaintiff did not plead facts sufficient to establish willful infringement as of the time that the Complaint was filed.)

### E. Blue Spike's Attempted Service of Process Was Invalid; It Didn't Comply with the Hague Convention Re: Service of Process, and Therefore This Court Cannot Exercise of Personal Jurisdiction Over Innovatrics

Plaintiff Blue Spike's attempt to serve process on Defendant Innovatrics *via* the Texas Secretary of State was invalid because this method of service requires the Summons and Complaint to be sent directly to Defendant Innovatrics by and through postal channels, which is in direct contravention of certain treaty obligations entered into between the Slovak Republic and the U.S. under the Hague Convention Re: Service of Process. And as Blue Spike's purported service of process was invalid, this Court cannot exercise personal jurisdiction over Defendant Innnovatrics.[2]

There is controlling Fifth Circuit case law confirming the foregoing analysis. In *Nuovo Pignone SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002), the Fifth Circuit was faced with a situation where the plaintiff sued an Italian defendant in Louisiana and served the defendant by Federal Express (*i.e.*, through postal channels). *Nuovo Pignone* at 374. Plaintiff argued that since Article 10 of the Convention allows for "judicial documents" to be "sent"

---

[2] More grounds, not waived.

directly to a foreign defendant through postal channels, service of process through postal channels was also proper under Article 10(a) of the Convention. *Id*. at []. After noting a split of authority on this issue, the Fifth Circuit "adopt[ed] the reasoning of courts that have decided that the Hague Convention does not permit service by mail" because the words "send" and "serve" are not synonymous (id. at []), thus concluding that "article 10(a) does not permit parties to effect service of process on foreign defendants by mail." Id. at []. Here, the case for invalidity of service of process is even stronger because, unlike many countries, the Slovak Republic adopted an express objection to Article 10(a) which stated "…***judicial documents may not be served by another Contracting State through postal channels***…" Thus, even if this Court were to somehow hold that the Fifth Circuit's decision was not binding upon it, this Court would still be left with an express objection by the Slovak Republic to "service" of judicial documents through postal channels.

    The only case cited by counsel for Plaintiff during the meet and confer process to support the propriety of service of process – *ATEN Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 121 (E.D. Tex. 2009) – is completely distinguishable from the instant case. *ATEN* involves a Taiwanese defendant. *ATEN*, 261 F.R.D. at 121. Taiwan is not a signatory to the Hague Convention Re: Service of Process and the U.S. and Taiwan cannot enter into treaty obligations with each other (for reasons that go beyond the scope of this motion), unlike the Republic of Slovakia, which is a signatory to the Convention. Moreover, although counsel for Blue Spike asserted during the meet and confer process that, under Texas law, a nonresident does business "if it comments a tort in whole or in part in Texas," it conveniently overlooks the fact that – other than a conclusory allegation that "Defendant" is doing business in the state of Texas and the Eastern District of Texas" (), there are no allegations or facts stated in the Complaint that could reasonably be construed to apply to Innovatrics

    Service is not a mere formality–the government of the Slovak Republic likely has important policy reasons that it wants to be informed through diplomatic channels every time one of its citizens or corporations is subject to the jurisdiction of the courts of the United States.

14

Alternatively, they may require service through the designated channels in order to ensure that the documents at issue are translated into the Slovak language so that defendants there have notice of the claims made against them in their native language. Whatever the reason, Innovatrics respectfully requests that this Court order Blue Spike to comply with international law.

IV.     **CONCLUSION**

This complaint should be DISMISSED with leave to amend, and Plaintiffs should be ordered that, if they wish to re-file it, they should their service should comply with the Hague Convention. Innovatrics and its counsel are mindful that Fed.R.Civ.P. 4(d) specifically states that foreign defendants have "a duty to avoid unnecessary costs of serving the summons." However, in light of the [],

                                            Respectfully submitted,

Dated: December 21, 2012        By: _____

                                            David A. Makman
                                            Robert C. Matz
                                            Makman & Matz LLP
                                            655 Mariner's Island Blvd., Suite 306
                                            San Mateo, CA 94404
                                            (650) 242-1560

                                            Attorneys for Defendant Innovatrics

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2012, I electronically filed the foregoing:

**ANTHEUS TECHNOLOOGY, INC.S ANSWER AND AFFIRMATIVE DEFENSES TO BLUE SPIKE, LLC'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT AND ITS DEMAND FOR A TRIAL BY JURY**

with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing

to all counsel of record and allow them to access the document.

*/s/ Robert C. Matz*
_____

Robert C. Matz