UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § § § | Case No. 6:12-cv-499-MHS |
| v. | § § | Lead Case |
| Texas Instruments, Inc., et al., | § § | Jury Trial Demanded |
| *Defendants*. | § § | |

**BLUE SPIKE'S OPPOSITION TO GOOGLE'S MOTION
TO TRANSFER VENUE [DKT. 678]**

Plaintiff Blue Spike, LLC—whose entire business operation is in the Eastern District of Texas—opposes Google's transfer motion for three reasons: (1) paramount considerations of judicial efficiency heavily weigh against transfer, since the case against Google is deeply intertwined with others in this District; (2) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—defeats transfer; and (3) Google has not shown that the other public and private interests make the Northern District of California "clearly more convenient" than this District.

**Introduction**

Blue Spike is a Texas LLC with its headquarters and principal place of business in Tyler, Texas. *See* Complaint ¶2. Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread "digital fingerprinting" technology, which is a means of identifying digital information via its unique markers. Many of the companies that employ

1

digital fingerprinting today—including Google—have profited by infringing Blue Spike's patents. Blue Spike has filed more than 80 lawsuits in this Court against alleged infringers on these same four patents. The Court consolidated the suits for pretrial purposes based on "common questions of law or fact," finding that consolidation "would promote efficient case management." *See* Ex. 1 (consolidation order).

Google's transfer motion is flawed. It (1) downplays the paramount concern of judicial efficiency, which clearly counsels against transfer; (2) ignores the interests of Blue Spike and Blue Spike's witnesses; (3) understates Google's ties to this forum; (4) overstates Google's difficulty in litigating here; (5) miscalculates the relative local interests of this District and the proposed transferee district; and (6) misapplies the docket-congestion factor. An objective assessment of the facts reveals that litigating in the Northern District of California would not be clearly more convenient.

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. §1404(a). Even so, a motion to transfer venue is only granted upon the movant showing good cause for transfer and proving that the proposed transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 315 (5th Cir. 2008) (en banc). In determining whether to

grant a transfer motion, courts weigh several private and public interests. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *Id*. Although not a distinct factor in the analysis, the plaintiff's choice of venue should always be accorded deference. *Id.* at 1320.[1] Public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in the outcome of the case; (3) the familiarity of the forum with applicable law; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Id*.

## Argument

I.  **The "Paramount" Federal Interest in Judicial Efficiency and Economy—Without More—Defeats Transfer, Especially Since the Case Against Google Involves the Very Same Technology at Issue in Some of the Other Consolidated Cases.**

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011). Judicial economy is so

---

[1] "While the Fifth Circuit does not independently consider the plaintiff's choice of forum as a paramount consideration or afford it great or substantial weight, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for transfer. Accordingly, a plaintiff's decision to file in this District places a significant burden on Defendants to show good cause for transfer, a burden that this Court does not take lightly." *Stragent, LLC v. Pioneer Elecs. (USA) Inc.*, Case No. 6:11-cv-00278-LED-JDL, at 5 (E.D. Tex. May 8, 2013) (attached as Ex.2) (internal punctuation and citations omitted).

important that it provides a sufficient basis to deny transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).[2]

Here, more than 80 cases involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the cases for pretrial purposes because they "involve a common question of law or fact" and because consolidation "would promote efficient case management." *See* Ex. 1 at 14-15. Google itself concedes that the patents at issue in every one of Blue Spike's suits "share a common specification." Dkt. 678 at 2.

Making transfer even more inappropriate, this case does not merely share patents-in-suit with other consolidated cases; instead, the case against Google is deeply intertwined with some of the other consolidated cases. Blue Spike's claims against Google are based partly on Google's use of technology licensed from a company called Audible Magic.[3] Blue Spike sued Audible Magic in this District (Case No. 6:12-cv-576), and Audible Magic has not moved for transfer. Granting Google's transfer motion would thus guarantee

---

[2] *See also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that a defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

[3] At a minimum, Google's YouTube division employs Audio Magic technology. *See* Ex. 3 (Maxcy Decl.); Ex. 4 at 2 (Audio Magic's audio-fingerprinting software is a key component of YouTube's content-recognition capabilities). N.B.: although the Maxcy declaration is labeled "Highly Confidential," it turns up using ordinary Google searches.

4

that at least two federal courts would have to weigh identical issues and issue potentially conflicting rulings.

The situation could get messier still, as Blue Spike has sued several other defendants in this District based on their use of the very same Audible Magic technology, and those defendants are from all over the country—and around the world. *See* Case No. 6:12-cv-576, Dkt. 1, ¶¶4-26. If the Court transfers some suits related to Audible Magic's technology while others remain here, then federal courts nationwide will face identical issues and risk creating an archipelago of conflicting rulings.

Given this possibility, it is no surprise that the Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 5). Denying transfer, the Court reasoned that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id.* Other recent cases—all on point—likewise counsel against transfer. *See, e.g., Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 6) (holding that because plaintiff had filed multiple suits in this District on the same four patents, concerns of judicial economy

5

weighed heavily against transfer because "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 7) (denying motion to transfer patent suit that had already been consolidated with another suit, because "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Google's argument that transfer would not cause inefficiency (Dkt. 678 at 11) relies heavily on Judge Schneider's transfer order in *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 8). There, Judge Schneider held that even though the plaintiff had filed numerous suits in this District concerning a single patent, transferring one of those suits elsewhere would not cause inefficiency because the plaintiffs' suits had no significant "common issues." *Id.* at 10. This suit, in contrast, is deeply entwined with others in this District (as explained above).

Google also suggests that transfer is warranted merely because this Court has granted other Google transfer motions. *See* Dkt. 678 at 1. Yet Google ignores the many cases in which this Court has denied Google's transfer motions. *See, e.g.*, *Gemalto S.A. v. HTC Corp.*, No. 6:10-cv-561 LED-JDL, Dkt. 133 (E.D. Tex. Nov. 18, 2011) (attached as Ex. 9); *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, Dkt. 424 (E.D. Tex. Sept. 28, 2010) (attached as

Ex. 10); *Aloft Media, LLC v. Yahoo! Inc.*, No. 6:08–CV–509, 2009 WL 1650480 (E.D. Tex. June 10, 2009). More important, Google is not entitled to special treatment. What happened in other cases does not matter, because "[t]he propriety of transfer obviously depends upon the particular circumstances of each case." *Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986). Here, transfer would guarantee inefficiency. Google wants the Court to ignore this "paramount" consideration and instead force other courts to expend duplicative efforts considering common questions of law and fact, creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 F. App'x at 296. The Court should decline to do so.

## II. The Serious Health Condition of Blue Spike's CEO and Inventor—an Essential Witness—Also Make Transfer Improper.

"The health concerns of a party or witness can be an important factor in the determination of whether a § 1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases). Indeed, a party's health concerns can, without more, dictate the result of a transfer motion. *See, e.g.*, *BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (granting defendants' motion to transfer venue from New York to Florida, even though (1) contract in dispute contained choice-of-venue clause that required case to be litigated in New York and (2) many other factors weighed against transfer, because defendant who resided in Florida had health problems that made traveling to New York very difficult).

Here, transfer would cause serious hardship for Scott Moskowitz, the CEO and inventor at Blue Spike, as he suffers from a medical condition that makes traveling very painful. Moskowitz Decl. ¶¶12,13,14. Google suggests that Moskowitz travels frequently to Northern California (Dkt. 678 at 5, 10), but that is simply untrue; the last time he went was there was in 2003. Moskowitz Decl. ¶12. Moskowitz resides in this district full-time, and the only place he regularly travels to is Florida—and that is because he receives medical treatment there that he cannot receive elsewhere. *Id*. ¶¶4,5.

### III. The Other Interest Factors Favor Keeping the Case in this District, and Google Has Certainly Not Met its Burden of Showing that the Northern District of California Is Clearly More Convenient.

#### A. The Private-Interest Factors Weigh Against Transfer—and Certainly Do Not Show the District of California To Be Clearly More Convenient.

##### 1. *Blue Spike's Interests—Including the Location of and Burdens on Blue Spike, its Witnesses, and its Sources of Proof—Also Count in the Transfer Analysis.*

Google forgets that this case is not only about it; there is a plaintiff in this case whose interests and burdens are relevant, too. Blue Spike plans to call witnesses from Texas; its inventor and CEO lives in Tyler; it was incorporated in Texas one year ago; it has its headquarters and principal place of business in this District; and its employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl. ¶¶1-11; Compl. ¶2.

While Google suggests that these connections to this forum were manufactured to manipulate venue and should therefore be disregarded (Dkt.

678 at 6), this Court's precedent dictates otherwise. *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created solely to manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010) (holding that plaintiff's presence in this District was not "recent" or "ephemeral" where plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

Litigating this action in the Northern District of California would be inconvenient and burdensome for Blue Spike and for Moskowitz. A transfer would dramatically increase the costs of litigation for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious personal hardship for Moskowitz due to his medical condition (as explained in Part II above). Moskowitz Decl. ¶¶11-16. Those burdens are critically important in the transfer analysis because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

9

Also important, Google does not contend that it lacks extensive contacts with this forum. Indeed, it admits that it has operations throughout Texas, including an office in this District. Dkt. 678-1 ¶12. Nor does Google contend that litigating here rather than in California would cause it undue hardship or expense. *See generally* Dkt. 678. Blue Spike, on the other hand, has no connection to the Northern District of California apart from its lead attorneys' residence there. *See* Moskowitz Decl. ¶12. And, unlike Google, Blue Spike is not one of the world's most successful and ubiquitous companies. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize. All these facts are relevant in weighing the relative burdens of litigating in this District versus in California. *Peterson v. Nat'l Sec. Techs., LLC*, No. 12–CV–5025–TOR, 2012 WL 3264952, at *5 (E.D. Wash. Aug. 9, 2012) ("[T]he parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration."). Further, it is extremely unlikely that the Northern District of California could exercise personal jurisdiction over Blue Spike on claims made against it, including any Google counterclaims.

Apart from the relative burdens on the parties themselves, other private-interest factors also counsel against transfer.

### 2. *The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.*

Google claims that the majority of its likely evidence is located in California. Dkt. 678 at 7-8. Even if true, this is only part of the story, as all of

10

Blue Spike's evidence is located here. *See* Moskowitz Decl. ¶¶7,11; Compl. ¶2. Google wants the Court to disregard this fact, but the location of Blue Spike's evidence matters. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached as Ex. 11) (holding that the fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer). Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; its entire operation has been here for over a year. *See* Moskowitz Decl. ¶6. This means that the presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5 (presence of plaintiff's evidence in this District weighed against transfer given that plaintiff's connection to this District was not "recent" or "ephemeral," as plaintiff had opened its office here four months before filing suit, and two of its principals lived here).

### 3. *The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.*

Google argues that the California court will have compulsory process power over more nonparty witnesses than this Court will. Dkt. 678 at 8-9. This argument is speculative given that this lawsuit is in its early stages, making it far from clear which witnesses will ultimately prove relevant. *See Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 8 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 12) (noting "the speculative nature of weighing this factor as to convenience for trial at the early stages of [a] proceeding").

11

### 4. The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.

Google argues that trial in California would be cheaper and more convenient for willing witnesses. Dkt. 678 at 9-10. But, again, Google completely ignores that *all* of Blue Spike's known witnesses reside in this District. *See* Moskowitz Decl. ¶11. Further, as explained in Part I above, this suit is partly based on Google's use of Audible Magic technology, and Blue Spike has sued numerous other companies in this District based on their use of this same technology. Those companies' employees are potential witnesses in this suit, and Google has not made any sort of showing regarding their cost of attendance.[4] Assigning much weight to the costs of attendance for willing witnesses is also premature given that the parties have not even exchanged Rule 26 disclosures, so it is far from clear which potential witnesses will actually end up testifying. *See GHJ Holdings, Inc. v. Mag Instrument, Inc.*, No. 5:10-cv-230, Dkt. No. 26 (E.D. Tex. Feb. 5, 2011) (attached as Ex. 13) (holding supplemental briefing regarding disclosures should be submitted before a transfer motion is considered).

### B. The Public-Interest Factors Do Not Show the Northern District of California To Be Clearly More Convenient.

None of the public-interest factors supports transfer—much less shows that the Northern District of California is a "clearly more convenient" forum. *In re Volkswagen,* 545 F. 3d at 315. Google contends that the Northern District

---

[4] Blue Spike notes that those companies are based in Texas, Florida, New York, Massachusetts, Sweden, France, and Germany, among other places. *See* Case No. 6:12-cv-576, Dkt. 1, ¶¶4-26.

of California has a greater local interest in this case than this District does. Dkt. 678 at 12-13. Google simply ignores half the equation. The allegations in this case are that Google infringed Blue Spike's patents, harming Tyler-based Blue Spike and its Texas-based owner and employees. *See Atmel*, Ex. 11 at 16 ("The residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business.").

Next, while it is true that this District and the District of California are both competent to apply federal patent law, this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology, since the Court is adjudicating over 80 other suits involving the same patents-in-suit (including other suits involving identical infringing technology, as explained in Part I above).

Last, Google misapplies the relative-court-congestion factor. It compares caseloads by citing only the number of patent cases in each court (Dkt. 678 at 12), while overlooking that the Northern District of California has more than twice the number of civil cases on its docket. *See* Dkt. 678-28 at 2-3. While Google cites general civil-docket statistics to argue that the Northern District of California resolves cases more quickly than this Court, the "reliance on general civil statistics provides the Court with little guidance as to the speed with which *patent* cases reach trial." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:12-cv-398-MHS-JDL, 2013 WL 1363613, at *5 (E.D. Tex. Apr. 2, 2013). Google's data and argument on the relative-

congestion factor are simply unhelpful, and the relative-congestion factor carries little weight anyway. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (explaining that relative court congestion is "the most speculative" public-interest factor, as "case-disposition statistics may not always tell the whole story").

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny Google's transfer motion.

Respectfully submitted,

  /s/ Randall Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  randall.garteiser@sftrialattorneys.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@sftrialattorneys.com
Christopher S. Johns
  Texas Bar No. 24044849
  chris.johns@sftrialattorneys.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## Certificate of Service

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on May 20, 2013.

                                                                 /s/ Randall Garteiser