# Exhibit 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EOLAS TECHNOLOGIES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:09-CV-446 |
| | § | PATENT CASE |
| ADOBE SYSTEMS, INC., et al | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendants' Motion to Transfer to the U.S. District Court for the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Docket No. 214) is before the Court. Having considered the parties' written submissions, the Court **DENIES** the motion.

**BACKGROUND**

In its Complaint, Eolas Technologies Incorporated accuses twenty-three defendants of infringing U.S. Patent No. 5,838,906, entitled "Distributed hypermedia method for automatically invoking external application providing interaction and display of embedded objects within a hypermedia document," and U.S. Patent No. 7,599,985, entitled "Distributed hypermedia method and system for automatically invoking external application providing interaction and display of embedded objects within a hypermedia document."

Adobe Systems, Inc., Amazon.com, Inc., Apple Inc., Blockbuster Inc., eBay Inc., The Go Daddy Group, Inc., Google Inc., New Frontier Media, Inc., Playboy Enterprises International, Inc., Sun Microsystems Inc., Yahoo! Inc., and YouTube, LLC. ("Defendants") move to transfer the case

1

to the Northern District of California. CDW Corporation, JP Morgan Chase & Co., and Staples, Inc. join in the motion to transfer. Citigroup, Inc., Frito-Lay, Inc., J.C. Penney Company, Office Depot, Inc., Perot Systems Corp., Rent-A-Center, Inc., and Texas Instruments, Inc. have not joined in nor opposed the motion to transfer. Alternatively, if the Court determines that any defendant is an obstacle to transfer, Defendants request that those defendants be severed and the remaining defendants be transferred to the Northern District of California.

The Regents of the University of California own both patents in suit and are not a party to this suit. Eolas is an exclusive licensee to the patents. Eolas conducts research and development to create technologies in the areas of interactive embedded and distributed applications, systems, data analysis, visualization, collaboration and networking. Eolas is incorporated in Texas, and its principal place of business is in Tyler, Texas, in the Eastern District of Texas.

Seven defendants reside in California: Adobe, Apple, Sun, eBay, Google, Yahoo!, and YouTube. Six defendants reside in Texas. Texas Instruments and Blockbuster are headquartered in Dallas, Texas. Perot Systems, Frito-Lay, J.C. Penney, and Rent-A-Center are headquartered in Plano, Texas, in the Eastern District of Texas.

Nine other defendants are located throughout the country. Amazon's headquarters are in Seattle, Washington. Citigroup's headquarters are in New York City. CDW is headquartered in Vernon Hills, Illinois. Go Daddy's principal place of business is in Scottsdale, Arizona. J.P Morgan is headquatered in New York City. New Frontier Media's headquarters are in Colorado. Office Depot's headquarters are in Boca Raton, Florida. Playboy's headquarters are in Chicago, Illinois. Staples' headquarters are in Framingham, Massachusetts.

## SEVERANCE

The Court **DENIES** Defendants' request to sever any defendants. Severance would not promote judicial economy. All defendants are accused of infringing the patents in suit, and adjudicating infringement will require construing the claims and evaluating the patents' innovation over the prior art. Thus, determining defendants' liability will involve substantially overlapping questions of law and fact. *See MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004) (Davis, J.); *see also* FED. R. CIV. P. 42(a) (authorizing courts to consolidate or join for trial actions that involve common questions of law or fact). For multiple courts to simultaneously address these identical issues would be a waste of the courts' and parties' resources and could potentially lead to inconsistent results. Moreover, the record before the Court does not show that the products or methods at issue are so different that determining infringement in one case is less proper or efficient than determining infringement in multiple cases. Nor does the record show that any defendant will be so prejudiced by joinder that severance is necessary to prevent an inequitable process or result. *See* FED. R. CIV. P. 42(b). Accordingly, the Court will not at this time sever any defendant and will consider all defendants in its transfer analysis.

## APPLICABLE TRANSFER LAW

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

*The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Defendants argue that transfer will be more convenient for all defendants, including those that do not reside in the Northern District of California, as evidenced by those defendants' joinder or non-opposition to the motion. Just as the Court will not presume that this venue is convenient for a plaintiff because it filed suit here, but considers the actual location of a plaintiff's witnesses and documents, the Court will not presume that a proposed transferee venue is convenient for defendants.

Seven defendants are located in California, and it will be substantially more convenient for their party witnesses and documents to try this case in the Northern District of California. Conversely, seven parties are located in Texas, and five of them are within the Eastern District of Texas. For these parties, it will be substantially more convenient for the case to continue in the Eastern District of Texas. Of the remaining nine parties, four reside on the east coast, one on the

west coast, one in the mid-west, and two in the west. Thus, the remaining parties are split nearly in half on whether they would benefit from transfer.

Defendants argue that Eolas's location in the Eastern District of Texas should not be given any weight. To be clear, the Court does not give weight to Eolas's choice of venue, as that is already accounted for by Defendants' burden in proving transfer is clearly warranted. However, the Court does consider Eolas's location in determining whether transfer would be more convenient for it, just as the Court considers every other party's location for the same purpose. *In re Volkswagen I*, 71 F.3d at 204 (considering all of the parties and witnesses and claims and controversies in the case in the transfer analysis).

Defendants contend that Eolas's location in the Eastern District should be disregarded because it is recent and insubstantial. While Eolas did recently relocate to the Eastern District of Texas, Eolas is conducting its normal business here. Its Chief Legal Officer and his family have relocated here and own a home here. Eolas's only corporate office is located in Tyler, Texas, and board of directors meetings are conducted here. Most of Eolas's tangible and intangible property, including all of the company's electronic and non-electronic files, books, and records, are located in Tyler. Eolas is currently testing its AnatLab product at the University of Texas at Tyler and employs seven people in Tyler to conduct the testing. Defendants contend that Eolas's recent relocation from Illinois to Texas is an attempt to manipulate venue, but Eolas points out that it receives more favorable tax treatment in Texas than in Illinois. Defendants also discount Eolas's employees, saying they are merely part-time college students. Eolas responds that it is conducting its beta testing in the normal course of its business. While Eolas's relocation is recent, it is not ephemeral. *See In re Apple, Inc.*, 374 Fed. Appx. 997, 999 (Fed. Cir. May 12, 2010) (unpublished)

(discounting a plaintiff's state of incorporation and presence in Texas as "recent and ephemeral"). Eolas appears to have genuinely relocated its business to Texas and is conducting its business affairs in the normal course of its business in this District. The Court will not create a time-based litmus test for how long a plaintiff must reside in this District before bringing suit here. It would be substantially more convenient for Eolas to continue suit here. The Court will not ignore Eolas's location simply because it is unfavorable to Defendants' transfer argument.

The patents in suit are owned by the Regents of the University of California, located in the Northern District of California. The patented subject matter was invented in the Northern District of California, and the patents were prosecuted in the Northern District of California. Defendants contend that key prior art witnesses are located in the Northern District of California. However Eolas presents evidence that one prior art witness (Mr. Wei) may no longer be in the Northern District of California and another piece of prior art (the Mosiac browser) cited by Defendants was actually developed in Illinois. Additionally, Eolas also identifies prior art witnesses located in Texas.

Finally, Defendants contend that the Texas-based defendants should not defeat transfer and imply that they were only named as defendants to manufacture venue. However, Eolas did not sue small, local businesses such that the cost of bringing suit would overwhelm any monetary or equitable damages that Eolas could hope to recover. Rather, Eolas sued large, billion dollar companies, and the Court will not presume that Eolas only sued them to manipulate venue. Defendants also contend that the Northern California defendants' documents are more important than other defendants' documents because the other defendants use software developed by the Northern California defendants. However, as Eolas points out, while the other defendants may run

software developed by the Northern California defendants, the accused systems and functionalities appear to be developed in-house and not by the Northern California defendants.

This factor slightly favors transfer to the extent that relevant documents or witnesses related to developing the patented inventions and prosecuting the patents may be in the Northern District of Texas. The parties themselves are nearly evenly split between being located in California or Texas and California or Texas being more convenient. As for prior art witnesses, both sides have identified witnesses closer to their preferred location.

***The Availability of Compulsory Process to Secure the Attendance of Witnesses***

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

As described above, the parties have identified potential third-party prior art witnesses located in California, Texas, and elsewhere in the United States. Neither District would have absolute subpoena power, and this factor is neutral.

***The Cost of Attendance for Willing Witnesses***

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a

potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204—205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id*. (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

The parties themselves are nearly evenly split between being located in or closer to California or Texas, and both sides have identified witnesses closer to their preferred location. Accordingly, neither District would be more convenient for the majority of witnesses. In either District, about half of the witnesses would be inconvenienced by the trial's location. This factor weighs against transfer.

### *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

Eolas argues that this factor weighs against transfer because trials in the Northern District of California are typically longer than trials in the Eastern District of Texas, increasing the expense for both parties and witnesses. Defendants do not dispute this.

This factor does not favor transfer.

### *The Administrative Difficulties Flowing from Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id.*

10

This case is currently set for trial in this District in October 2011. Eolas contends that the earliest trial setting a transferred case could get in the Northern District of California is thirty months from now.

This factor does not favor transfer.

***The Local Interest in Having Localized Interests Decided at Home***

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *Id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Both Districts have a specific local interest in this case. The Northern District of California is home to several defendants, the Eastern District of Texas is home to Plaintiff and several defendants, and Texas itself is home to several other Defendants. As already discussed and rejected, the Court will not ignore Eolas's location in this District. This factor does not favor transfer.

***The Familiarity of the Forum with the Law that Will Govern the Case* and *Avoidance of Unnecessary Problems of Conflict of Laws***

These factors are inapplicable.

11

## CONCLUSION

Only the relative ease of access to sources of proof factor slightly favors transfer, and that factor only favors transfer to the extent that relevant documents or witnesses related to developing the patented inventions and prosecuting the patents may be in the Northern District of California. The remaining factors are either neutral or weigh against transfer. Accordingly, Defendants have not shown that transfer is clearly more convenient for the parties and witnesses. *Cf. HTI IP LLC v. DriveOK, Inc.*, 2010 WL 3075200 (E.D. Tex. Aug. 4, 2010) (Davis, J.) (transferring a patent case where the case's connection to Texas was nominal, but the connection to the transferee district was strong).

Defendants' attempt to move this trial from the Eastern District of Texas to the Northern District of California would merely shift the inconvenience of trial from one set of parties to another. Defendants criticize Eolas's recent relocation to this District as an attempt to manipulate venue. However Defendants' arguments are dubious, at best. Defendants ask the Court to discount Eolas's contacts with the Eastern District because those contacts do not serve Defendants' desire for transfer. Eolas has not clearly set up a sham location in this District to manipulate venue. *See In re Apple, Inc.*, 374 Fed. Appx. at 999 (discounting a plaintiff's state of incorporation and presence in Texas as "recent and ephemeral" when the plaintiff's Texas office was that of its litigation counsel and plaintiff did not employ anyone in Texas ). Rather Eolas appears to have genuinely moved its business to this District and is operating within the normal course of its business within this District. Contrary to what Defendants may believe, many businesses choose to relocate to Texas and to Tyler, Texas each year for reasons that are unrelated to venue. Eolas points out the tax benefits it receives in Texas, and additionally, many people find that Tyler is a wonderful place to live and work. The

Court will not ignore Eolas's location merely because it does not suit Defendants.

Similarly, Defendants ask the Court to sever any defendant for whom transfer would be less convenient and imply that Eolas only sued certain defendants in an attempt to manipulate venue. Eolas chose to sue multiple large corporations, some of whom are located in Texas. Defendants contend that if the Court does not discount the existence of the Texas defendants in this case, the Court will encourage a policy of suing Texas defendants in order for a plaintiff to maintain venue in this District. It is not within the Court's proper role to encourage or discourage suit against certain parties. As the plaintiff, Eolas is the master of its suit. Within the rules, Eolas is entitled to decide who it will sue, where and when it will bring suit, and on what causes of actions or patent claims it will sue. The Texas defendants are all large companies, likely with substantial damages exposure. The Court will not ignore or sever them merely because their existence in this case weighs against Defendants' motion for transfer.

The Court strongly encourages the parties to work together in a more cooperative manner to resolve their differences. The Court **DENIES** the motion.

**So ORDERED and SIGNED this 28th day of September, 2010.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**