## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION,<br>FACEBOOK, INC., MYSPACE, LLC,<br>SPECIFIC MEDIA, LLC,<br>PHOTOBUCKET.COM, INC.,<br>DAILYMOTION, INC., DAILYMOTION<br>S.A., SOUNDCLOUD, INC.,<br>SOUNDCLOUD LTD., MYXER, INC.,<br>QLIPSO, INC., QLIPSO MEDIA<br>NETWORKS LTD., YAP.TV, INC.,<br>GOMISO, INC., IMESH, INC.,<br>METACAFE, INC., BOODABEE<br>TECHNOLOGIES, INC., TUNECORE,<br>INC., ZEDGE HOLDINGS, INC.,<br>BRIGHTCOVE INC., COINCIDENT.TV,<br>INC., ACCEDO BROADBAND NORTH<br>AMERICA, INC., ACCEDO<br>BROADBAND AB, AND MEDIAFIRE,<br>LLC<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br>v.<br><br>WIOFFER, LLC<br>　　*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-570 MHS<br><br>CONSOLIDATED CASE |

**DEFENDANT AUDIBLE MAGIC CORPORATION'S AND ITS CUSTOMERS'
MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

Pursuant to 28 U.S.C. § 1404(a), the Moving Defendants[1] respectfully request that this action be transferred to the Northern District of California.

## I.     INTRODUCTION

Plaintiff Blue Spike, LLC ("Blue Spike") is a non-practicing entity with no real ties to this district.  This case involves the type of venue manipulation and forum shopping that threatens to "undermine the principals underpinning transfer law and the recently enacted America Invents Act."  *GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. 114, at 11 (E.D. Tex. Jan. 14, 2013).  Since August 9, 2012, Blue Spike has filed over 80 cases in this District, suing more than 150 defendants over a wide variety of products and services.  Yet, Blue Spike did not even exist until May 11, 2012, less than three months before its litigation campaign began.  And, the patents-in-suit were not transferred to Blue Spike until August 4, 2012—only five days before the litigation campaign began.  The inventors of the asserted patents are in Florida and Seattle, Washington.  Since 2000, the patents-in-suit were assigned to Blue Spike, Inc., a Florida corporation, which had relevant dealings with the predecessor company of defendant Audible Magic Corp. ("Audible Magic") in the late 1990s, in California, not Texas.

Blue Spike alleges that the Moving Defendants infringe four patents.  Blue Spike accuses Audible Magic's content recognition technology and has sued both Audible Magic and Customer Defendants[2] alleged to use Audible Magic's technology.  Thus, the facts relating to Blue Spike's infringement claims lie almost wholly with Audible Magic.  Audible Magic is headquartered in Los Gatos, California, in the Northern District of California ("NDCA").  All of Audible Magic's

---

[1] "Moving Defendants" refers collectively to: Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

[2] "Customer Defendants" refers to all of the Moving Defendants except for Audible Magic.

executives and staff making significant decisions regarding the accused products work at Audible Magic's NDCA headquarters.  To the extent Customer Defendants use Audible Magic's technology, they are connecting to and using Audible Magic's servers, software and databases located in NDCA.  Key witnesses and documents from third parties are located in NDCA and have no connection to this District.  There is also a strong local interest in resolving this dispute in NDCA, given the number of content recognition and digital media companies located there.

Accordingly, the Moving Defendants respectfully request that this court transfer the action to the NDCA, a venue that is significantly more convenient to the parties, where Audible Magic's accused technology is located, and where many Moving Defendants are either headquartered or have a presence and connections directly related to the present litigation.

## II.     FACTUAL BACKGROUND

Blue Spike filed suit against the Moving Defendants on August 27, 2012, alleging that Audible Magic's "Live TVid, SmartSync, CopySense, SmartID, Audini and automated content recognition (ACR) digital fingerprint-based software, systems, and technology" (the "Audible Magic Accused Systems") infringe U.S. Patent Nos. 7,346,472 (the '472 patent), 7,660,700 (the '700 patent), 7,949,494 (the '494 patent), and 8,214,175 (the '175 patent) (collectively, the "Asserted Patents"). (Dkt. 1, ¶31.)  Blue Spike contends that "each of the [Customer Defendants'] accused products and methods use the common and related infringing technologies—Audible Magic's digital fingerprint based technology for automatic content recognition." (Dkt. 1, ¶30.)  As described below, the relevant facts weigh in favor of transfer.

### A.     Witnesses And Documents Regarding The Accused Systems Are Located In Northern California

Since its founding, Audible Magic has been headquartered in NDCA. (Ikezoye Decl., ¶4). The Audible Magic Accused Systems were developed at Audible Magic and its predecessor companies in Los Gatos, California and in Berkeley, California. (*Id.* at ¶6).  The relevant

2

engineers have at all times worked there. (*Id.* at ¶9.)  The same is true of the Audible Magic

employees responsible for negotiating and entering into contracts with the Customer Defendants

for the Audible Magic Accused Products. (*Id.* at ¶12.)  The Audible Magic employees who

operate and support the software, servers and databases used by Audible Magic's customers are

also in the NDCA. (*Id.* at ¶13.)  Such servers and databases are all located in Los Gatos,

California and San Jose, California. (*Id.*)  Audible Magic's most significant business decisions

are made by senior executives at Audible Magic's headquarters. (*Id.* at ¶5.)

All relevant documents relating to the development of the Audible Magic Accused

Systems are located at Audible Magic in Los Gatos, California and Berkeley, California. (*Id.* at

¶10.)  Documents relating to accounting, sales, and marketing of the Audible Magic accused

products are located in Los Gatos, California. (*Id.* at ¶13.)  Finally, all of the source code

repositories, containing sensitive, trade-secret source code relating to the Audible Magic

Accused Systems, are located in Los Gatos, California and Berkeley, California. (*Id.* at ¶11.)

Relevant evidence and witnesses regarding Audible Magic's predecessor companies

Muscle Fish, LLC ("Muscle Fish") and Wired Air LLC are and were located in Los Gatos,

California and Berkeley, California. (*Id.* at ¶17.)  Muscle Fish operated in Berkeley California

beginning in 1992. (*Id.*)  Prior to forming Muscle Fish, the developers of Audible Magic's

accused products worked at Yamaha Music Technologies in the NDCA. (*Id.*)  Third party

witnesses who interacted with and did business with Muscle Fish and Wired Air LLC are located

in the NDCA. (*Id.*)  In particular, evidence regarding interactions between the named inventors,

Mike Berry (who was contracting for Muscle Fish in the late 1990s), Scott Moskowitz and Blue

Spike, Inc., and employees of Audible Magic's predecessor company Muscle Fish are located in

NDCA. (*Id.* at ¶18)  A significant volume of very old paper documents, electronic documents,

backup tapes and code regarding the history of Audible Magic and its predecessor companies are

located in Los Gatos, California and Berkeley, California. (*Id*. at ¶17)  The engineers who

developed Audible Magic accused products have continuously resided in the NDCA. (*Id*.)

### B.   Blue Spike's Allegations Target The Customer Defendants' Use Of Audible Magic's Technology

Blue Spike's claims against the Customer Defendants are based on their alleged use of

"Audible Magic's digital fingerprint based technology for automatic content recognition." (Dkt.

1, ¶ 30.)  The Customer Defendants have no access to or ability to change the proprietary source

code used to run the Audible Magic Accused Systems. (Ikezoye Decl., ¶15).  The Customer

Defendants utilize or access servers, databases, and/or software located in and/or originating

from Audible Magic in the NDCA. (*Id*.)  The only reason the Customer Defendants are in this

lawsuit is because they use Audible Magic's Accused Systems and connect to those systems

located in NDCA.  (*Id.*)  Audible Magic is defending its customers in this case; the facts

underlying plaintiff's infringement allegations, therefore, will necessarily and almost exclusively

relate to the systems, documents and source code of Audible Magic, all located in NDCA.

### C.   Many Of The Customer Defendants Have Substantial Ties To NDCA Independent Of The Accused Audible Magic Technology Located There And None Have Ties To The Eastern District Of Texas

No Customer Defendant has any operations, employees or property in this District. (*See*

Customer Decls.[3])  Rather, a number of Customer Defendants are headquartered in NDCA or

other parts of California.[4]  The remaining Customer Defendants are headquartered in various

places in the United States and Europe, but none in the Eastern District of Texas.[5] (*Id.*)  The facts

---

[3] "Customer Decls." refer to the Declarations of M. Lantz, J. Coogan, C. Johnston, D. Kaiser, G. de Martino, S. Perng Lee, D. Labian, S. Arend, Z. St. Martin, G. Wollman, A. Pakula, T. Stout, J. Jordan, M. Clark, A. Ljung, T. Severson, T. Lee, O. Shabtai, and J. Reich filed concurrently herewith.

[4] Facebook, Inc., SoundCloud Inc., Yap.tv, Inc., GoMiso, Inc., Metacafe, Inc, Coincident.TV, Inc., and Accedo Broadband North America, Inc. are in NDCA.  Myspace, LLC, Specific Media LLC and Qlipso Media Networks, Ltd. are in Southern California.

[5] Colorado, France, Germany, Florida, Israel, New York, Massachusetts, Sweden and Houston.

4

relating to the accused technology of *all* Customer Defendants are located in NDCA.  Further,

Audible Magic's technology is at all times under control of Audible Magic and located in

NDCA. (*Id.*)  No Customer Defendant has the ability to access or alter Audible Magic's

proprietary source code, which is housed in NDCA. (*Id.*; *see also* Ikezoye Decl., ¶15.)  Audible

Magic personnel, located in NDCA, retain the right to reject the registration of any prospective

end users with regard to some Customer Defendants as well. (*Id.*)

### D.      There Is Substantial Third Party Evidence In Northern California

Third party documents and witnesses are also concentrated in Northern California, home

to numerous software and hardware companies and research institutions.  Indeed, prior art

references cited during the prosecution of the Asserted Patents alone identify many inventors and

companies situated in Northern California.  For example, during the prosecution of the '472

patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior

art references. (Ex.[6] 1.)  Among them, at least nine patent assignees are based in Northern

California and at least 24 prior art inventors reside in Northern California.[7]

### E.      Northern District Of California Has A Strong Local Interest In This Case

The San Francisco Bay Area historically has a high concentration of research institutions

and companies regarding content recognition, audio engineering, electronic musical instruments,

musical applications of computers and digital content technologies. (Ikezoye Decl., ¶19

---

[6] "Ex." references herein are attached to the Declaration of Alyssa M. Caridis ("Caridis Decl.").

[7] Apple (Cupertino), Cisco (San Jose), Cryptography Research (San Francisco), Hewlett-Packard (Palo Alto), Intel (Santa Clara), InterTrust Technologies (Sunnyvale), Macrovision (Sunnyvale), Sun Microsystems (Mountain View; acquired by Northern California-based Oracle in 2010), and Stanford University (Stanford).  (Dkt. 1-1.).  G. Boccon-Gibod (Los Altos), W. Macy (Palo Alto), M. Ming-Yee Yeung (Sunnyvale), P. Kocher (San Francisco), P. Wehrenberg (Palo Alto), M. Hellman (Stanford), R. Merkle (Palo Alto), B. Diffie (Berkeley), M. Stefik (Woodside), M. Casey (Morgan Hill), R. Lu (Sunnyvale), B. Yeo (Sunnyvale), T. Collart (Los Altos), J. Laroche (Santa Cruz), D. Ullum (San Jose), T. Edsall (Mountain View), S. Hang (Sunnyvale), D. Nelson (Menlo Park), G. Petrie (Los Gatos), N. Briggs (Palo Alto), N. Hardy (Portola Valley), E. Hill (Palo Alto), D. Van Wie (Sunnyvale), and J. Barton (Los Gatos).  (Dkts. 1-1 and 1-2.)

(illustrative examples).)  More generally, many of the most significant audio engineering companies have been centered in the San Francisco Bay Area and Silicon Valley, as well as many other startups in this space.  As a result, there is a local industry and strong local interest in content engineering technologies in the San Francisco Bay Area and Silicon Valley. (*See, id.*)

### F.       The Inventors Reside Outside Of This District

The named inventors of the Asserted Patents, Scott Moskowitz and Michael Berry, do not reside in this District.  In a declaration submitted to the PTO in 2000 during prosecution of the original patent application, Moskowitz and Berry declared their residence in Florida and New Mexico, respectively. (Dkts. 1-1-4.)  From late 2005 to 2008, Moskowitz himself prosecuted the application from his residence in Florida. (Exs. 2 and 3.)  In March 2008, the '472 patent issued, which identifies Moskowitz and Berry as Florida and New Mexico residents. (Dkt. 1-1.)

From 2007 to 2010, Moskowitz prosecuted two patent applications from his residence in Florida. (Exs. 4 and 5.)  These two applications (issued as the '700 and '494 patents) identify Moskowitz as still residing in Florida. (Dkt. 1-2; 1-3.)  A third continuation application issued as the '175 patent in July 2012, and identified Moskowitz and Berry as residing in Florida and Washington, respectively. (Dkt. 1-4.)

Moskowitz continues to live in Florida.  For example, his patent application published after the start of this litigation identifies his residence in Florida. (Ex. 6.)  Further, Moskowitz has been an officer of at least three Florida-based companies: Blue Spike, Inc., Canopus Medical LLC, and Wistaria Trading Inc. (Exs. 7-9.)  Two of these companies filed annual reports with the Secretary of State of Florida in *January 2013* indicating that Mr. Moskowitz currently resides in Florida. (Exs. 10-11.)  Mr. Moskowitz's personal actions and representations further confirm his continuing presence in Florida. (*See, e.g.*, Exs. 12-14.)

While living in Florida, Moskowitz has frequently traveled to Northern California.  He

allegedly founded "The Dice Company," which was based at one time in Palo Alto, California. (Dkt. 1, ¶38; Ex. 15.)  He has spoken several times at the RSA Data Security Conference, a cryptography conference held annually in San Francisco. (Dkt. 1, ¶39; Ex. 16.)  Mr. Moskowitz, the only officer of Blue Spike, also retained lead counsel in this action who is based in NDCA. (*See* Dkt. 1 at page 30 (signature block for Garteiser Honea, P.C.).)

### G.      Blue Spike Was Incorporated In This District For This Litigation

In 2000, 2007, and 2009, Moskowitz and Berry assigned the Asserted Patents to Blue Spike, Inc., a Florida-based company. (Exs. 17-19.)  On May 14, 2012, three months before bringing this action, Moskowitz incorporated Blue Spike LLC in Tyler, Texas. (Ex. 20.)  On August 4, 2012, less than a week before filing the lead case in this District, Moskowitz, on behalf of Blue Spike, Inc., assigned the Asserted Patents to Blue Spike. (Ex. 21.)  It appears that Moskowitz is the only employee of Blue Spike and there is no customer or contractor of Blue Spike, much less any in this District.

### III.    ARGUMENT

Section 1404(a) of 28 U.S.C. provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The inquiries under 28 U.S.C. § 1404(a) are, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-315 (5th Cir. 2008).  The relevant factors clearly favor transferring this action to the Northern District of California.

### A.      Venue Is Proper In The Northern District Of California

As a threshold inquiry, a determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004).  (A case could have been brought in

the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case.)

There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a).

Audible Magic and the Customer Defendants are subject to specific jurisdiction.  Specific jurisdiction arises out of or relates to the cause of action even if those contacts are isolated and sporadic.  *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  In this case, each Customer Defendant specifically contracted with Audible Magic's personnel in Los Gatos, California to use Audible Magic's products.  (*See* Customer Decls.)  As part of their agreements with Audible Magic, the Customer Defendants have utilized or accessed Audible Magic's servers, databases, and software operating the accused systems, all of which are located in and/or originate from Audible Magic in Los Gatos, California.  (*See, id.*)  These specific contacts with Audible Magic regarding the technology at the heart of Blue Spike's infringement claims against Audible Magic and the Customer Defendants establish specific jurisdiction.

General jurisdiction exists whenever a defendant has continuous and systematic contacts with the state.  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).  In this case, most of the Moving Defendants are either headquartered in California (Audible Magic, Facebook, MySpace, SoundCloud Inc., Qlipso, Yap, GoMiso, Metacafe, Coincident and Accedo) or regularly conduct business in the state.  (*See* Customer Decls.)

Venue in a patent infringement action is proper in the district where the defendant resides, or where the defendant has (allegedly) committed acts of infringement.  28 U.S.C. §§ 1400(b); 1391(c) ("[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced").  Given that the accused acts of infringement occurred with respect to Audible Magic's Accused Systems, located in the

8

NDCA, and that defendants operate on a national scale, there can be no dispute that this action could have been brought in the NDCA. (*See* Customer Decls.).

> **B.     Private Interest Factors Strongly Favor Transfer To The Northern District Of California**

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.  All of these factors weigh in favor of transfer to the Northern District of California.

> **1.     Easier Access To Sources of Proof Favors The Northern District Of California**

In analyzing the first private interest factor, this Court recognizes that:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.

*GeoTag*, Case No. 2:11-cv-403-MHS, Dkt. 114, at 3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Here, as discussed above, Audible Magic's relevant documents are most readily accessible from Northern California,[8] and Audible Magic employees with relevant knowledge and likely to testify are located in Northern California.[9]

In contrast, Blue Spike was formed a mere three months before filing its first lawsuit in this District.  The limited documents created since Blue Spike's formation, or those trucked into Texas for purposes of this litigation, do not merit keeping the case here.  *See Optimum Power*

---

[8] Although documentary evidence may be stored electronically, the Court considers its physical location. *Genentech*, 566 F.3d at 1345-46.  In this case there is a large volume of historical Audible Magic paper documents and code repositories most easily accessed in California.

[9] For example, Audible Magic anticipates that at least the following employees (who reside in NDCA) will have relevant knowledge about the facts of this case: Erling Wold, Doug Keislar, Thom Blum, and Jim Wheaton.  (Ikezoye Decl., ¶17).

*Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) (noting that documents transferred to a venue in anticipation of litigation should not be considered).

As the accused infringers, the Moving Defendants are likely to possess a larger volume of documents relevant to this litigation. *See In re Genentech*, 566 F.3d at 1345.  Accordingly, the relevant evidence in this action is more readily accessible from the Northern District of California, favoring transfer to that district.  *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at \*2 (E.D. Tex. Jan. 9, 2012) (granting motion to transfer to the Northern District of California where majority of documents and evidence, along with several witnesses, were likely to be in that district).

### 2.    Availability Of Compulsory Process Favors The Northern District Of California

A venue is favored when it has subpoena power to compel attendance of deposition and trial over the majority of non-party witnesses.  *Hoffman-La Roche*, 587 F.3d at 1337-38.  Here, a great number of potential non-party defense witnesses are located in the Northern District of California, home to universities and high-tech companies who were active in the field of endeavor relevant to this action in the relevant timeframe.  As discussed above, the inventors themselves identified to the PTO at least 24 different third party prior art inventors (and at least nine different prior art entities) who reside in Northern California.  In addition, third parties who interacted with and did business with the predecessors of Audible Magic, and therefore have relevant information about Audible Magic's own prior art systems, are located in the San Francisco Bay Area.  To the extent these non-party prior art witnesses are unwilling to attend trial, NDCA has the authority to compel their attendance.

In contrast, there are no known third party witnesses who would be subject to the subpoena power of this district.  Blue Spike is a non-practicing entity and has no known affiliates

10

that are under this Court's subpoena power.  One of the co-inventors is an employee of the

plaintiff, and the other, resides in the state of Washington.  The Moving Defendants are unaware

of any likely non-party defense witnesses who are subject to this Court's subpoena power.

Because the Northern District of California has absolute subpoena power over a

significant number of known prior art witnesses, the availability of such power favors transfer to

the Northern District of California.  *Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL

3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when

numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside

in the transferee venue compared with few or none in the chosen forum).

### 3.   Cost Of Attendance For Willing Witnesses Favors The Northern District Of California

This Court recognizes that "[o]ne of the most important factors [in considering transfer]

is the cost of attendance for witnesses."  *GeoTag*, No. 11-cv-403-MHS, Dkt. 114, at 8.  While

courts analyze the convenience of both party and non-party witnesses, "the convenience to non-

party witnesses is afforded greater weight than that of party witnesses."  *Id*.  As the Federal

Circuit has confirmed, the question is not whether "*all* of the witnesses" reside in the transferee

forum, but whether a "substantial number" are there.  *In re Genentech*, 566 F.3d at 1345.

Here, with respect to party witnesses, Audible Magic's likely witnesses in this action,

including its engineers, managers, and executives, reside and work within NDCA.  In addition, to

the extent that the Customer Defendants have any evidence relevant to this case, a large number

of them are located in California, while none of them are located in this District.  (*See* Customer

Decls.)  As for Blue Spike, it appears to have a single employee, Mr. Moskowitz, who is a long

time resident of Florida.  For him, travel to Northern California is no more inconvenient than

travel to this Court.  Indeed, as discussed above, Mr. Moskowitz routinely visits the Bay Area to

attend conferences and conduct business.

With respect to non-party witnesses, numerous engineers familiar with prior art instrumentalities are centralized in Northern California and would also have to travel over 1,500 miles to attend trial in this District (to the extent they are willing).  And, Mr. Berry, the co-inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to Northern California than to this Court.  *Droplets, Inc.*, 2012 WL 3578605, at \*5 (noting that location of relevant third-party witnesses in, and closer to, the transferee venue favored transfer).

In sum, the locations of both party and non-party witnesses also favor transfer to the Northern District of California.[10]  *See In re Genentech*, 566 F.3d at 1345 ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer"); *In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be "clear error").

### 4.    All Other Concerns Weigh In Favor Of Transfer

The remaining considerations also favor transfer to NDCA.  First, this case is still in its infancy: no case management conference has been scheduled, no scheduling order has been issued, and no discovery has taken place.  *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.,* No. 10-cv-023, 2011 WL 2292961, at \*8 (E.D. Tex. Jun 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, Courts must ensure the purposes of venue laws are not frustrated by a party's attempted manipulation.  *See Hertz Corp., v. Friend*, 130 S. Ct. 1181, 1195 (2010).  Accordingly, Blue Spike's contacts with this forum must be disregarded because they are "recent, ephemeral,

---

[10] Even if this Court were to consider Mr. Moskowitz's apparently litigation-induced "relocation" to this District, it cannot override the fact that "a substantial number of material witnesses reside within the transferee venue and the state of California." *In re Genentech*.

and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

Finally, the pendency of other related cases in this District does not counsel against

transfer. As this Court recently emphasized, filing multiple cases against separate defendants in

a single district cannot be used as a means to establish venue:

> The Court will not permit the existence of separately filed cases to sway its
> transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing
> cases within a single district.

*GeoTag*, No. 11-cv-403-MHS, Dkt. 114, at 11 (citing Leahy-Smith America Invents Act, 35

U.S.C. § 299 (2011)). Here, Blue Spike was formed in this District only months before

commencing a filing spree of over 80 lawsuits against over 150 defendants concerning different

products and services. Permitting Blue Spike to manufacture venue in this fashion is contrary to

28 U.S.C. § 1404(a), which is designed to temper forum shopping, and would defeat the purpose

of a key provision of the recently enacted America Invents Act, which limits joinder of unrelated

parties in patent cases. *See id.* at 11; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed.

Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in

anticipation of litigation and for the likely purpose of making that forum appear convenient").

### C. Public Interest Factors Support Transfer To The Northern District Of California

In addition to private interest factors, courts also consider public interest factors[11] in

deciding whether transfer is appropriate. These factors also weigh in favor of transfer.

### 1. Relative Court Congestion Supports Transfer

The first public interest factor generally "favors a district that can bring a case to trial

faster." *Id.* at 11. NDCA resolves cases more quickly than the Eastern District of Texas. (Ex.

---

[11] The public interest factors include: "(1) the administrative difficulties flowing from court
congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity
of the forum with the law that will govern the case; and (4) the avoidance of unnecessary
problems of conflict of laws in the application of foreign law." *Volkswagen AG*, 371 F.3d at 203.

22 (N.D. Cal. has a median time interval from filing to disposition of 6.4 months compared to 10.1 months for E.D. Tex.)  Thus, the court congestion factor favors transfer.

### 2.    Local Interest Favors The Northern District Of California

Because the accused systems in this case are available nationwide, NDCA—where the Audible Magic Accused Systems were developed and are still maintained and managed by Audible Magic staff, engineers, and managers in Northern California—has a particularized local interest in resolving this dispute.  *See, e.g.*, *PersonalWeb Techs.*, No. 11-cv-656, Dkt. 131 at 37-38; *GeoTag*, No. 11-cv-403-MHS, Dkt. 114, at 12; *In re Volkswagen AG*, 371 F.3d at 206.

In addition, NDCA has historically contained a high concentration of research institutions and companies related to content recognition, audio engineering, electronic musical instruments, musical applications of computers and digital content technologies. (Ikezoye Decl., ¶19.)  And many of the most significant audio engineering companies have been centered in NDCA.  (*Id.*)  As a result there is a local industry and strong local interest in content engineering technologies in the San Francisco Bay Area and Silicon Valley.

In contrast, there is no legitimate local interest in this District, where, as discussed above, Blue Spike's ties to this District are ephemeral and entirely manufactured in anticipation of litigation.  Local interest, thus, strongly favors transfer to the Northern District of California. *See, e.g.*, *Network Prot. Sciences LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the Northern District of California where defendants were headquartered, developed the accused products and employed thousands of people); *PersonalWeb Techs.*, No. 11-cv-656, Dkt. 131 at 37-38.

### 3.    Both Forums Are Familiar With The Governing Law

This factor is neutral; both courts are equally familiar with patent law.

14

### 4. There Is No Conflict Of Laws Questions

This case does not implicate conflicts of law and thus this factor is neutral.

### D. Judicial Efficiency Cannot Override All Other Factors

The Moving Defendants expect Blue Spike will argue that this case should not be transferred simply because Blue Spike chose to file 80 different cases in this District, and therefore judicial efficiency should mandate against transfer.  (*See, e.g.*, Dkt. 696 at 5-7 (opposing Tygart's motion to transfer); Case No. 12-cv-688 Dkt. 17 at 3-5 (opposing ImageWare's motion to transfer).)  As discussed above, this Court has already recognized that filing multiple cases against separate defendants in a single district cannot be used as a means to manipulate the venue analysis.  (*See*, *supra* at §III.A.4.) Further, the Federal Circuit has expressly renounced Blue Spike's proposed bright-line rule that judicial economy should trump all other factors:

> To be clear, we are not suggesting that the judicial economy of having the same judge handle multiple suits involving the same patents should dominate the transfer inquiry.  After all, the MultiDistrict Litigation Procedures exist to effectuate this sort of efficiency.

*In re EMC Corp.*, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013); *see also PersonalWeb Techs.*, No. 11-cv-656, Dkt. 131 (Judge Davis granted transfer as to some defendants, despite judicial economy weighing against a transfer).[12]

## IV. CONCLUSION

For the foregoing reasons, balancing all of the private and public factors demonstrates that the NDCA is clearly more convenient than this district for this action.  The Moving Defendants respectfully requests that this Court grant the requested transfer to the NDCA.

---

[12] Although some courts have ultimately determined that judicial economy carries extra importance where, for example, the court had already spent significant resources on the case or was involved with prior litigation of the asserted patents, such considerations are not present here.  Further, Moving Defendants are unaware of any case or authority that allows Blue Spike to circumvent America Invents Act and artificially manipulate the venue determinations.

Dated:  May 22, 2013

By:                            /s/ Eric H. Findlay

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

I. Neel Chatterjee – *LEAD ATTORNEY*
Gabriel M. Ramsey
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Attorneys for Defendants Audible Magic, Corp.,
Facebook, Inc., Myspace LLC, Specific Media LLC,
Photobucket.com, Inc., DailyMotion, Inc.,
DailyMotion S.A., SoundCloud, Inc., SoundCloud
Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media
Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh,
Inc., Metacafe, Inc., Boodabee Technologies, Inc.,
Zedge Holdings, Inc., Brightcove Inc., Coincident.TV,
Inc., Accedo Broadband North America, Inc., Accedo
Broadband AB, MediaFire, LLC, WiOffer LLC, and
Harmonix Music Systems, Inc.

16

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULES CV-7(h) and (i)

I hereby certify that Defendants have complied with the meet and confer requirement of Local Rule CV-7(h).  On May 22, 2013, counsel for Moving Defendants (Gabriel Ramsey) met and conferred via telephone with counsel for Blue Spike, Inc. (Christopher Honea) regarding the present motion.  Counsel for Blue Spike, Inc. indicated that it opposes this motion and discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

Dated: May 22, 2013                              */s/ Gabriel Ramsey*
                                                          Gabriel Ramsey

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on May 22, 2013.

                                                          */s/ Eric H. Findlay*
                                                          Eric H. Findlay

17