UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § § § § § § § § § § | |
| *Plaintiff,* | | Case No. 6:12-cv-499-MHS |
| v. | | Lead Case |
| Texas Instruments, Inc. et al., | | Jury Trial Demanded |
| *Defendants.* | | |

**PLAINTIFF BLUE SPIKE'S SURREPLY TO AXXONSOFT INC.'S AND AXXONSOFT LTD.'S MOTION TO DISMISS [DKT. 645]**

**I.   Blue Spike Has Made a Prima Facie Case of Personal Jurisdiction.**

Defendants' reply misreads Blue Spike's complaint and takes excessive liberty in its attempt to disavow personal jurisdiction. AxxonSoft Inc. and AxxonSoft Ltd. (collectively "AxxonSoft" or "Defendants") argue that they have absolutely no Texas contacts.[1] The facts tell a different story. Defendants have integrated their infringing technology with partners who are either located in Texas or who operate extensively in Texas. *See* Opp'n [Dkt. 700] Exs. 2-14. From those undisputed facts, it is reasonable to infer that (1) Defendants' products end up and are used in Texas and (2) Defendants know and intend as much. Such inferences constitute a prima facie showing of personal jurisdiction. *See Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, No. 2:05-CV-185, 2005 WL 3299718, at *4 (E.D. Tex. Dec. 5, 2005) (denying defendant's motion to dismiss for lack of personal

---

[1] Dkt. 645 at 3 ("Neither AxxonSoft nor AxxonSoft US has any connection to the state of Texas or the Eastern District of Texas outside of this lawsuit."); *id.* at 8. ("[B]oth AxxonSoft and AxxonSoft US lack *any* contacts with the Eastern District of Texas."). Those conclusory statements are inaccurate, as explained below.

1

jurisdiction, even though its allegedly infringing products were in the forum as "the result of a unilateral decision by companies wholly unrelated to" the defendant, because "it is reasonably inferable that [defendant] knew and expected its [accused products] would be" marketed and sold here); *Nidec Corp. v. LG Innotek Co., Ltd.*, No. Civ. A. 6:07-CV-108, 2008 WL 7048882, at *6-7 (E.D. Tex. Dec. 11, 2008), *report and recommendation adopted*, No. Civ. A. 6:07-CV-108, 2009 WL 3673755 (E.D. Tex. Nov. 6, 2009) (reasonable inferences from the evidence can serve as basis for prima facie showing of personal jurisdiction).[2] Defendants cannot in good faith claim to be "stranger[s] to this district" when they knowingly integrate their technologies with companies located in Texas. *See* Opp'n [Dkt. 700] Ex. 2-6.

    Blue Spike has always maintained that Defendants operate pervasively in Texas. *See* Opp'n [Dkt. 700] at 6 ("Through its partners and resellers, AxxonSoft operates pervasively in Texas."). Blue Spike has never conceded the lack of specific jurisdiction. *Contra* Reply at 1 n.1. Instead, specific jurisdiction exists because, as Blue Spike has consistently argued, Defendants actively direct their infringing products to Texas. For example, Blue Spike noted that AxxonSoft has "integrated its software into a number of its partners' products, products that necessarily reach Texas through more than one partner's Texas headquarters." Opp'n [Dkt. 700] at 6. It would be a stretch to suggest that Defendants were not aware that their technology would reach Texas when they integrated their software into the products of businesses in Texas. This is more than enough to establish personal jurisdiction.

---

[2] *See also Philip Morris USA Inc. v. Lee*, 494 F.Supp.2d 544, 555 (W.D. Tex. 2007) (circumstantial evidence can serve as basis for showing of personal jurisdiction).

Further, minimum contacts may be established when, as here, "defendants generate income from forum residents," including income generated from partners. *Oasis Research, LLC v. Adrive, LLC*, 2011 U.S. Dist. LEXIS 80471 at *17 (recognizing personal jurisdiction when a defendant had a partnership with a company owning a plant and doing business in Texas).

Defendants' citations to cases involving a "third party's independent actions" are inapposite. Reply at 2 (citing *Garnet Digital, LLC v. Apple, Inc.*, Case No. 6:11-CV-647, slip op. at 4 (E.D. Tex. Sep. 27, 2012); *Advanced Biological Labs., SA v. Ameripath, Inc.*, Case No. 2:07-CV-31, 2008 U.S. Dist. LEXIS 30757, at *5-6 (E.D. Tex. Apr. 14, 2008)). Here, Blue Spike is not concerned with the independent acts of third parties whose unilateral actions are beyond Defendants' control. Instead, personal jurisdiction exists because Defendants purposefully (1) established relationships with businesses in Texas and (2) knowingly integrated their accused software into the products of those businesses. *See* Opp'n [Dkt. 700] Exs. 2-6.

Defendants cannot discount the impact of their Texas partnerships on the personal-jurisdiction calculus. AxxonSoft's partnership with inMotion involves infringing products that have been implemented "across the entire line of inMotion's video security offerings"—and, critically, inMotion's U.S. headquarters are located in the Eastern District of Texas, in Lewisville. *See* Opp'n [Dkt. 700] Ex. 5. One can reasonably infer that infringing products are located at inMotion's U.S. office, and Defendants do not argue otherwise. While AxxonSoft's German counterpart initially formed the partnership, it is difficult to believe that both AxxonSoft USA

3

(AxxonSoft's U.S. presence) and AxxonSoft Ltd. (the parent company) have no connection to inMotion's U.S. headquarters. Defendants' silence on this fact is telling. The infringing products that reach Texas through AxxonSoft's partnership with inMotion are sufficient to establish personal jurisdiction.

In addition to understating the impact of their Texas partnerships in the Court's analysis of personal jurisdiction, Defendants also make too little of their Texas-based reseller. For years Defendants have actively attempted to generate Texas sales by listing a Texas reseller on their site: Readev, Inc. While never denying that Readev is a Texas company, Defendants incorrectly argue that Blue Spike failed to provide "any actual evidence" that Readev operates in Texas. Reply at 5. This ignores Blue Spike's evidence that Readev has a Texas phone number and that Defendants' website lists Texas as part of Readev's sales area. Opp'n [Dkt. 700] at 6. Defendants try to blot out Readev's relevance by arguing that it consummated only one sale from Colorado in 2001 (Reply at 5), ignoring that Defendants' website continued to list Readev as the Texas reseller at least through the time that Blue Spike filed its opposition. Dkt. 645, Moss. Decl. ¶8; Opp'n [Dkt. 700] Ex. 14. Defendants have benefitted from years' worth of advertising directed at Texas and thus cannot disclaim its connections to the state.

Nor can Defendants discount the impact of their website, which is not as passive as Defendants paint it. The website lists resellers and offers links to connect website users with those resellers. *See* Opp'n [Dkt. 700] Exs. 13-15. Even by Defendants' standards, Defendants' "passive" website will help to establish

4

jurisdiction if Defendant is also "advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents of the forum state." Reply at 6 (*citing Autobytel, Inc. v. InsWeb Corp.*, Case No. 2:07-CV-524, 2009 U.S. Dist. LEXIS 31287, at *8-9 (E.D. Tex. Mar. 31, 2009)). Here, Defendants' contacts with its Texas partners and resellers satisfy those conditions, making jurisdiction proper.

Viewed in the light most favorable to Blue Spike, the facts and evidence included in Blue Spike's opposition constitute a prima facie showing of personal jurisdiction. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (per curiam).[3]

Even if Blue Spike's evidence were insufficient to establish a prima facie case of personal jurisdiction, the Court should not dismiss the case before allowing jurisdictional discovery. Blue Spike needs to make only a minimal showing to be entitled to jurisdictional discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the

---

[3] Defendants' other citations do not support their arguments on personal jurisdiction. *See* Reply at 10 n.2. Unlike the situations in *LBS Innovations* and *Acceleron*, Defendants' operations in this case directly involve Texas businesses that have used Defendants' infringing software. Dkt. 645 at 9 (citing *LBS Innovations LLC v. BP America*, Case No. 2:11-CV-00407, slip op. at 6 (E.D. Tex. Feb. 20, 2013); *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758 (E.D. Tex. 2009)). Next, *Innovative Automation LLC* involved a single sale by a third-party distributor, not a multi-year solicitation of Texas sales through its distributor. Dkt. 645 at 9 (*citing Innovative Automation LLC v. Audio and Video Labs, Inc.*, Case No. 6:11-CV-00234, slip op. at 3 (E.D. Tex. Sep. 27, 2012)). Last, *Advanced Biological Labs*, a patent case, required activities to be directed at the forum state; here, Defendants' have formed partnerships and solicited sales directed to Texas. Opp'n [Dkt. 700] at 9 (*Advanced Biological Labs., SA v. Ameripath, Inc.*, Case No. 2:07-CV-00031, 2008 U.S. Dist. LEXIS 307 (E.D. Tex. Apr. 14, 2008)).

plaintiff's right to conduct jurisdictional discovery should be sustained."); *Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, No. A-11-CA-1057 LY, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012) (showing required to warrant jurisdictional discovery "is less than a prima facie showing"). The reasonable inferences arising from Blue Spike's evidence exceed what is needed to obtain jurisdictional discovery. *Compare* evidence cited in pages 1-5, *supra*, *with Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234-35 (Fed. Cir. 2010) (holding that district court abused its discretion by denying jurisdictional discovery where defendant's website showed that several of defendant's customers operated in forum). Defendants' affidavits do not defeat Blue Spike's alternative request for jurisdictional discovery. *See, e.g., Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674 (S.D. Cal. 2001) (rejecting the argument that defendant's affidavit obviated jurisdictional discovery because "discovery propounded by Plaintiff may uncover additional information bearing on the jurisdictional inquiry which, perhaps, neither [Defendant's affiant] nor Defendant thought to include in [the affiant's] affidavit").

## II. Blue Spike Has Adequately Pleaded Induced Infringement and Contributory Infringement.

In arguing inadequate pleading of pre-suit knowledge and intent to induce infringement, Defendants' completely ignore the supporting evidence that Blue Spike filed with its opposition. *See* Opp'n [Dkt. 700] Ex. 18. This evidence shows that the accused products have specific infringing capabilities that Defendants aggressively market in an effort to induce consumer use. *Id.* at 13-15, 20-21. Such evidence shows intent to induce infringement. *See Metro-Goldwyn-Mayer Studios*

*Inc. v. Grokster, Ltd.*, 545 U.S. 913, 915 (2005) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe."); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (finding active inducement of infringement based on defendant's publications describing and promoting use of patented method).[4]

Blue Spike's evidentiary showing far surpasses what this Court found sufficient to defeat dismissal in *Imation*. There, the Court held that the plaintiff had "provide[d] a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement," *InMotion Imagery Techs., LLC v. Imation Corp.*, Case No. 2:12-CV-152-JRG-RSP, 2013 WL 1279055, *5 (E.D. Tex. Mar. 25, 2013), where the complaint merely stated that "Imation has had knowledge of the [patents-in-suit] at least as early as the filing of the Complaint in this action, and, upon information and belief, continues to encourage, instruct, enable, and otherwise cause end users and/or customers to use its products in a manner which infringes the [patents-in-suit]." *See* Case No. 2:12-cv-00298-JRG,

---

[4] *See also Symantec Corp. v. Veeam Software Corp.*, No. C-12-00700-SI, 2012 WL 1965832, at *5 (N.D. Cal. May 31, 2012) ("Specific intent can reasonably be inferred in this case from the allegations regarding defendant's marketing materials and offers to sell the infringing products."); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10-C-715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011) ("[A]llegations are sufficient to show specific intent as well, because the Court may infer that by selling their infringing products the defendants intended their customers to use them and thus infringe TT's patents."); *Cal. Inst. of Computer Assisted Surgery, Inc. v. Med–Surgical Servs., Inc.*, No. C–10–05067–CW, 2011 WL 672709, at *4 (N.D. Cal. Feb. 16, 2011) ("[O]ne can infer from the information on the website, publicizing the technologies, offering brochures describing the products and users' manuals, as well as listing company customers, that Defendants were advertising and intended to use or sell the technologies.").

*Inc. v. Grokster, Ltd.*, 545 U.S. 913, 915 (2005) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe."); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (finding active inducement of infringement based on defendant's publications describing and promoting use of patented method).[4]

Blue Spike's evidentiary showing far surpasses what this Court found sufficient to defeat dismissal in *Imation*. There, the Court held that the plaintiff had "provide[d] a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement," *InMotion Imagery Techs., LLC v. Imation Corp.*, Case No. 2:12-CV-152-JRG-RSP, 2013 WL 1279055, *5 (E.D. Tex. Mar. 25, 2013), where the complaint merely stated that "Imation has had knowledge of the [patents-in-suit] at least as early as the filing of the Complaint in this action, and, upon information and belief, continues to encourage, instruct, enable, and otherwise cause end users and/or customers to use its products in a manner which infringes the [patents-in-suit]." *See* Case No. 2:12-cv-00298-JRG,

---

[4] *See also Symantec Corp. v. Veeam Software Corp.*, No. C-12-00700-SI, 2012 WL 1965832, at *5 (N.D. Cal. May 31, 2012) ("Specific intent can reasonably be inferred in this case from the allegations regarding defendant's marketing materials and offers to sell the infringing products."); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10-C-715, 2011 WL 3946581, at *4 (N.D. Ill. Sept. 2, 2011) ("[A]llegations are sufficient to show specific intent as well, because the Court may infer that by selling their infringing products the defendants intended their customers to use them and thus infringe TT's patents."); *Cal. Inst. of Computer Assisted Surgery, Inc. v. Med–Surgical Servs., Inc.*, No. C–10–05067–CW, 2011 WL 672709, at *4 (N.D. Cal. Feb. 16, 2011) ("[O]ne can infer from the information on the website, publicizing the technologies, offering brochures describing the products and users' manuals, as well as listing company customers, that Defendants were advertising and intended to use or sell the technologies.").

Dkt. 9 at ¶¶12, 22. If that statement from *Imation*, which lacked any supporting evidence, was sufficient to defeat dismissal, then surely the combination of Blue Spike's allegations and supporting evidence in this case is sufficient to defeat dismissal.

Defendants also incorrectly argue that Blue Spike has inadequately pleaded the elements contributory infringement. Here, Blue Spike pleaded that the patents-in-suit are foundational to all of today's widespread biometric-information applications; that the accused products are biometric-information applications; and that the accused products have no substantial non-infringing use. *See* Case No. 6:13-cv-108-MHS, Dkt. 1 ¶¶25-27, 29, 35, 43, 51, 59. This Court has recently held that such allegations are sufficient to defeat dismissal "[a]bsent a showing in the pleadings . . . that [all of the accused] products *do* have substantial noninfringing uses." *Imation*, 2013 WL 1279055, at *6. This more than suffices to meet Blue Spike's burden for pleading that the accused products have no substantial non-infringing uses.

It is true that the complaint does not contain extensive analysis of why the accused product has no substantial non-infringing use. Opp'n [Dkt. 700] at 10-11. But as this Court has repeatedly held, a plaintiff need not plead "each individual element of a claim for indirect infringement" to survive dismissal. *LML Patent Corp. v. Nat'l Bank of Daingerfield*, No. 2:09-cv-00180-TJW, 2011 WL 1478517, at *2 (E.D. Tex. Mar. 24, 2011) (denying motion to dismiss that argued complaint was "deficient because it fails to allege the additional elements required to establish

8

induced and contributory infringement"). Further, Blue Spike's complaint alleges that Defendants had the requisite knowledge to make them liable for contributory infringement. Case No. 6-13-cv-108-MHS, Dkt. 1 ¶¶35, 43, 51, 59. Coupled with all the other allegations in the complaint, and with all reasonable inferences drawn in Blue Spike's favor, those allegations support a plausible claim of contributory infringement, fairly place Defendants on notice as to what they must defend, and therefore preclude dismissal. *See McZeal*, 501 F.3d at 1357. Viewing Blue Spike's allegations together, Blue Spike has provided "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009).

## Conclusion and Prayer

For these reasons plus those contained in the opposition (Dkt. 700), Blue Spike again asks the Court to deny Defendants' motion to dismiss Blue Spike's contributory-infringement and induced-infringement claims.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
Christopher S. Johns
Texas Bar No. 24044849
cjohns@ghiplaw.com
**GARTEISER HONEA, P.C.**
218 N. College Ave.
Tyler, Texas 75702
Telephone: (903) 705-0828
Facsimile: (903) 526-5477

Kirk J. Anderson
California Bar No. 289043
Peter S. Brasher
California Bar No. 283992
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*__Counsel for Blue Spike LLC__*

**CERTIFICATE OF SERVICE**

      I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this day. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                                 /s/ Randall T. Garteiser
                                                 Randall T. Garteiser