UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff,* | § § § | CASE NO. 6:12-cv-499 MHS |
| v. | § § | LEAD CASE |
| Texas Instruments, Inc. et al., | § § | Jury Trial Demanded |
| *Defendants.* | § § § | |

**PLAINTIFF BLUE SPIKE'S OPPOSITION TO AGNITIO'S
MOTION TO DISMISS [DKT. 679]**

Plaintiff Blue Spike, LLC opposes Agnitio Corp.'s motion to dismiss for lack of personal jurisdiction. Here, there is a prima facie case of personal jurisdiction over Agnitio because (1) Agnitio's accused products are actually used in Texas, (2) its own webpages—as well as other sources—confirm that Agnitio directs activity to Texas, and (3) Agnitio has many other meaningful contacts with Texas. Those jurisdictional facts defeat dismissal. Further, it would be inappropriate to dismiss the case before allowing jurisdictional discovery.

**Factual Background**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric identification and security systems. Many of today's biometric identification and security providers—including Agnitio—have built their companies by infringing Blue Spike's patents. The four patents-in-suit teach principles and methods of "digital fingerprinting" that are used in many of today's biometric and security products. Broadly speaking, digital

1

fingerprinting is a means to identify digital material—including video, audio, text, and images—based on unique digital markers within the material itself. At its most basic, digital fingerprinting involves at least three steps: (1) cataloging a digital file's identifying characteristics, (2) putting an abstract of the digital work into a database, and (3) scanning live events, other digital files, and recordings to see whether the content from those sources has the same "digital fingerprint" as the abstracted digital file in the database. By finding matches between "what's found out in the world" and "what's found in a database," the digital-fingerprinting process is able to provide unique security and identification services to banks, corporations, homeland security agencies, forensic laboratories, etc. In Agnitio's case, it uses the digital-fingerprinting process to provide voice recognition products by analyzing live events against a database. *See generally* Agnitio Website, www.agnitio.es (last accessed May 20, 2013).

## Legal Standards

Specific personal jurisdiction exists when a defendant purposefully directs activities at the forum, the plaintiff's claim relates to those activities, and the assertion of personal jurisdiction is reasonable and fair. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (per curiam). In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in plaintiff's favor. *Id.* at 1361. If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id.*

**Argument**

I. **Agnitio Directs its Accused Products to Texas, and Those Products Are Actually Used Here, Establishing Personal Jurisdiction.**

Agnitio's website shows that Agnitio directs business to Texas. Agnitio's customers and business partners actually use its products in Texas. For example:

- Through Agnitio's website, Texas consumers can request Agnitio's mobile voice biometric application, which can be used on Android smartphones in Texas. *See* Exs. 1-2 (showing how to download Agnitio's app from its website).

- Banco Bilbao Vizcaya Argentaria SA (BBVA)—Agnitio's customer—is the fourth largest bank in Texas and operates branches in Tyler, Texas. *See* Exs. 3-5.

- Hewlett Packard, Microsoft, and Telvent (Schneider Electric)—Agnitio's partners—operate extensively in Texas, and Agnitio "brings" its partners access to its infringing products. *See* Ex. 6-10.

- Agnitio is "working closely with [its] partners and customers worldwide" to protect citizens "in the fight against identity fraud, terrorism and criminal activity." *See* Ex. 11 (Agnitio's website explaining its products and relationship to its partners and customers).

Agnitio's claim that it is a total stranger to the State of Texas is inaccurate, because its products and services are used in and directed toward Texas.

A. **Agnitio's Products and Services Are Used in Texas.**

Federal courts consider where a defendant's products and services—especially their accused products—are actually used in reviewing personal jurisdiction. If the accused products are used in the forum, "[n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994); *see also Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (noting that personal

jurisdiction in patent-infringement cases turns on nature and extent of the commercialization of the accused products or services by defendant in the forum); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("[I]n patent litigation the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee."). Agnitio's products are being used in Texas and causing damage to Texas-based Blue Spike. The use of Agnitio's products in Texas is sufficient grounds to assert personal jurisdiction over Agnitio.

      1.     *Large Corporate Consumers Use Agnitio's Accused Products in Texas.*

Agnitio directs its products and services to large corporate customers located in Texas. One of Agnitio's corporate customers is the Banco Bilbao Vizcaya Argentaria SA ("BBVA"), a multinational Spanish banking group. *See* Ex. 3 (showing a list of Agnitio's corporate customers). BBVA is Texas's fourth largest bank, with several branches across the state, including in Tyler. *See* Exs. 4 and 5 (screenshots from BBVA's website showing how commercialized BBVA has become in Texas and the branch locations in Tyler, Texas). BBVA uses Agnitio's products to increase security and prevent identify theft. *See* Ex. 11. Agnitio's infringing products are being used in Tyler, Texas.

      3.     *Agnitio's Partners Also Use the Accused Products in Texas.*

Agnitio has also partnered with several corporate entities, including Hewlett Packard, Microsoft and Telvent (now Schneider Electric). *See* Ex. 6 (showing Agnitio's corporate partners). Agnitio worked closely with its partners to create its

"Kivok 4.0" product and service, which infringes the four patents-in-suit. *See* Ex. 7 (giving a brief description of its Kivok 4.0 product). According to Agnitio's website, it brings those products and services to its partners, and, working with its partners, it uses those products "world-wide"—including Texas—to help improve security. *See* Exs. 7 and 11. Those partners operate extensively in Texas. Hewlett Packard has one of its three corporate offices in Texas. *See* Ex. 8. Microsoft has a 32-acre campus with over 1,700 employees in Texas. *See* Ex. 9. Schneider Electric also has over 577 employees in Texas, including several in this District. *See* Ex. 10. Since these partners use Agnitio's offending products, it is evident that Agnitio's infringing products are used in Texas.

> 3. *Agnitio's Mobile-Phone Application Is Directed Toward (and Used by) Texas Consumers.*

Agnitio, through its website, currently offers its mobile phone application to smartphone users in Texas. *See* Ex. 1 (showing Agnitio's website with a hyperlink to download the app). Soon, it will begin to offer the infringing application via the Android marketplace, and Agnitio hopes to offer the same product to iPhone users shortly. *See* Ex. 12 (articulating the development of the smartphone technology for consumers and the plan to roll it out). In the words of Agnitio's CEO, the application is "very popular." *See* Ex. 13 (an interview with CEO of Agnitio on its recent growth in U.S. markets).[1] By targeting its technology to mobile phone users, Agnitio

---

[1] Agnitio is entering the U.S. Government market. To that end, Agnitio opened a U.S. office and appointed former Secretary of the Army, Dr. Francis J. Harvey, to the board of directors. *See* Exs. 13-14. Development of this mobile application was in coordination with, and was funded in part by, the federal government for counterterrorism purposes throughout the 50 states and abroad. *See* Exs. 13-16.

necessarily targets Texas consumers; it cannot offer mobile phone applications to a world market and exclude Texas.

All these different types of consumers—large corporate clients, business partners, and individual Texas consumers—all used Agnitio's products and services (including the accused products) in Texas. By itself, this meets the prima facie case for asserting personal jurisdiction over Agnitio.

### B. Agnitio Also Offers its Products and Services to Texas Customers on its Website.

Agnitio claims that it has a "non-interactive website" that Agnitio's potential customers cannot use to "order or purchase any products or services." *See* Dkt. 679 at 4. Agnitio's statements about its website are inaccurate. Agnitio's website is available worldwide to any individual, including potential customers in Texas. *See id*. at 4. Agnitio has in fact developed a voice-biometric application for mobile phones using the accused technology. *See* Ex. 17 (showing the elements, uses, and purposes of Agnitio's mobile app). Agnitio offers that mobile-phone application to Android smartphone users. *See* Ex. 1 (giving a brief description of the app and instructions on how to download the app). With the click of a button, potential customers in Texas can access Agnitio's site and then fill in their information to request the offending technology. *See* Ex. 18. Agnitio provides download instructions and even an installation manual for potential Texas customers. *See* Ex. 2 (showing the mobile application download page). After downloading the product, Texas customers can then record their voice and send the recording to Agnitio to be cataloged in Agnitio's database for later use by Agnitio's customers and partners.

6

*See* Exs. 1 and 17. Agnitio's statement that its website is "nothing more than a passive advertisement" is thus incorrect. *See* Dkt. 679 at 4. Under the Court's precedents, the interactivity of Agnitio's website alone is sufficient to establish personal jurisdiction. *See, e.g.*, *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (holding that Texas courts have personal jurisdiction over company whose "potential customers" in Texas can request and receive defendant's products and services from defendant's website).

## II. It Would Also Be Improper to Dismiss the Case Before Allowing Jurisdictional Discovery.

Here, Blue Spike has made a prima facie showing of personal jurisdiction. But even if Blue Spike's showing were somehow defective, the proper response would not be dismissal, but rather to allow Blue Spike to conduct jurisdictional discovery before ruling on Agnitio's motion. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). The showing required to warrant jurisdictional discovery "is less than a prima facie showing." *Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, No. A-11-CA-1057 LY, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012); *see also Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) ("It would . . . be counterintuitive to require a plaintiff, *prior* to conducting discovery, to meet the same burden" of alleging jurisdictional facts "that would be required in order to

7

defeat a motion to dismiss"). Blue Spike has met that threshold. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234-35 (Fed. Cir. 2010) (holding that a district court abused its discretion by denying jurisdictional discovery where defendant's website showed that several of defendant's customers operated in forum). Given Agnitio's many Texas connections, the motion should be denied outright, and it would be an abuse of discretion to dismiss the case before allowing jurisdictional discovery.

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny Agnitio's motion to dismiss.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
Christopher S. Johns
Texas Bar No. 24044849
cjohns@ghiplaw.com
**GARTEISER HONEA, P.C.**
218 N. College Ave.
Tyler, Texas 75702
Telephone: (903) 705-0828
Facsimile: (903) 526-5477

Kirk J. Anderson
California Bar No. 289043
Peter S. Brasher
California Bar No. 283992

                                    **GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Counsel for Blue Spike LLC*

**CERTIFICATE OF SERVICE**

      I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this day. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                                    /s/ Randall T. Garteiser
                                                    Randall T. Garteiser