**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-499-MHS |
| Plaintiff, | LEAD CASE |
| v. | |
| TEXAS INSTRUMENTS, INC., | Jury Trial Demanded |
| Defendant. | |

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-558-MHS |
| Plaintiff, | CONSOLIDATED CASE |
| v. | |
| GOOGLE INC., | ORAL ARGUMENT REQUESTED |
| Defendant. | Jury Trial Demanded |

**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

## I.      INTRODUCTION

Blue Spike, LLC's (Blue Spike's) opposition to Defendant Google Inc.'s (Google's) motion to transfer only confirms that transfer is appropriate here.  First, Blue Spike argues that the fact that it filed "more than 80" cases in this District means that transfer is unavailable for every named defendant in each separate case.  This is a misapprehension of the law, especially in light of the passage of the America Invents Act ("AIA").  *See PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, Dkt. No. 131 (E.D. Tex. Mar. 21, 2013) (transferring a case against Google and YouTube to the Northern District of California while declining to transfer certain cases with other defendants).

Second, Blue Spike relies on certain documents from five years ago to argue that Google's YouTube system may have used some technology supplied by another defendant Audible Magic Corp. ("Audible Magic") at some time.  Blue Spike argues that this means that Google should not be transferred to the Northern District of California because Audible Magic has not asked to be transferred to the Northern District of California.  Setting aside the stale allegations about YouTube, Audible Magic has now also filed a motion to transfer to the Northern District of California.  (Dkt. No. 771.)  Thus, under Blue Spike's logic, both matters are properly transferred to the Northern District of California.

Blue Spike raises several other arguments: (1) its CEO, Mr. Scott Moskowitz, who is one of the named inventors, can travel between Texas and Florida, but not to California, due to health concerns; (2) Blue Spike would suffer a financial hardship litigating in California, even though that is where its lawyers are based; and (3) Blue Spike would be inconvenienced by its employees having to travel to California, even though it fails to name even one person other than its CEO who actually works at Blue Spike.  Blue Spike's assertions do not change the fundamental facts established in Google's Opening Brief – the burden of litigating this case here

- 1 -

will fall far more heavily on Google than on a non-practicing entity like Blue Spike and Google simply has no relevant ties to this District.  Thus, the Northern District of California is far more convenient to Google than it is inconvenient to Blue Spike, especially considering that Blue Spike barely set up shop in Texas less than three months before instituting the first of its "more than 80" lawsuits.

## II.   THE PRIVATE FACTORS WEIGHT STRONGLY IN FAVOR OF TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

### A.   THE FACT THAT BLUE SPIKE HAS FILED MULTIPLE LITIGATIONS IN THIS FORUM CANNOT CREATE JUDICIAL EFFICIENCY

As an initial matter, Blue Spike greatly overplays the fact that it has tried to drown this Court in more than 80 lawsuits mere months after its formation in Texas.  (Opp. at 4.)  Blue Spike's assertion that its litigiousness means that none of these matters can be transferred is wrong on the law.

First, Blue Spike ignores the passage of the AIA, which required Blue Spike to file individual cases as provided by 35 U.S.C. § 299(b).  The existence of individual cases militates in favor of transfer, not against transfer, because now each individual case is evaluated under 28 U.S.C. § 1404, rather than making one transfer decision across all defendants in one multi-defendant litigation.  Indeed, Blue Spike's reliance on *In re Google Inc.*, 412 Fed.Appx. 295 (Fed. Cir. Mar. 4, 2011) suffers from this same flaw.  *In re Google* involved multiple defendants in one litigation where some defendants were seeking severance and then transfer.  412 Fed.Appx. at 295.  While the Federal Circuit did not grant mandamus review of a decision not to sever and transfer, it says nothing about whether a case (like this one) that solely involves a Northern California defendant should be kept in a jurisdiction merely because of the existence of other concurrent actions in the jurisdiction.

Blue Spike's reliance on *In re VistaPrint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) is also misplaced.  *In re VistaPrint* involved a patent litigation where the trial court had already been involved in prior litigation on the same patent.  628 F.3d at 1346.  The Federal Circuit, in

declining to grant mandamus, accepted the trial court's determination that judicial efficiency would largely benefit from the prior litigation and claim construction of the same patent. *Id.* There is no such facts here. Instead, Blue Spike attempts to inundate the Court with more than 80 litigations within about eight months after trying to create venue in this forum, and then argues that it should benefit from its own actions. This Court has already rejected arguments of this type. *See GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013).

Finally, Blue Spike's specific reliance on its lawsuit against Audible Magic as a reason for the Court to retain venue over Google also has no merit. In particular, Blue Spike's assertions about any overlap between Google and Audible Magic are nowhere in its pleadings. Instead, they are based on documents that, at best, appear to describe facts from years ago. (*See* Dkt. Nos. 766-6, 766-7 [Garteiser Decl., Exs. 3-4].) Regardless, Blue Spike argues that Google should not be transferred to Northern California because Audible Magic had not yet sought transfer to Northern California. Now that Audible Magic has also set forth the reasons why its cases should be transferred to Northern California (Dkt. No. 771), this argument only supports Google's transfer.

### B. THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE CONVENIENT

The remaining arguments in Blue Spike's opposition do not provide a basis for denial of the requested transfer.

***Access to Sources of Proof***: As discussed in the Opening Brief, Google's documents such as those relating to the development and operation of the accused systems are most readily accessible from Northern California and Google's likely witnesses relevant to the accused systems are located in Northern California. Because Blue Spike does not dispute these facts (Opp. at 8-10), the source of proof factor favors transfer. *See GeoTag*, Dkt. No. 114, at 3.

Blue Spike's argument that the location of its evidence should be given weight (Opp. at 8-9) is unavailing because its ties to this District are recent and ephemeral. Blue Spike does not

dispute that when the instant suit was filed (1) it had only been in existence for about three months; (2) it had no identifiable business activities in this District; and (3) its CEO, Mr. Moskowitz, had been living in Florida for over fifteen years.  On these facts, Blue Spike's location of evidence can be safely disregarded.  *See GeoTag*, Dkt. No. 114, at 4.  Further, Blue Spike cannot even specify what documents it has stored in Texas or whom (other than its CEO) it plans to call from Texas at trial.  (Moskowitz Decl., ¶¶ 7, 11.)  Thus, the relative ease of access to sources of proof favors transfer to the Northern District of California.

   ***Access to Third Parties***:  Blue Spike does not dispute that (1) potential prior art witnesses relevant to the technologies at issue are concentrated in Northern California and (2) there are no known nonparty witnesses residing in this District.  (Opp. at 11.)  Consequently, it is undisputed that the availability of compulsory process favors transfer to the Northern District of California.  While Blue Spike argues that it is too speculative to consider nonparty witnesses, the case Blue Spike relies on rejected that argument and found that the "identified six potential prior art witnesses over whom …[the transferee venue] would have absolute subpoena power" weighed in favor of transfer.  *Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-cv-706-LED-JDL, Dkt. No. 85, at 9 (E.D. Tex. Apr. 29, 2013); *see also In re EMC Corp.*, 501 Fed.Appx. 973, 975 (Fed. Cir. Jan. 29, 2013) (Transfer motions should be determined "at the outset of litigation.").

   ***Cost of Attendance For Willing Witnesses***:  There is no dispute that the vast majority of willing party and nonparty witnesses are located in the Northern California, as discussed in Google's Opening Brief.  Even accepting Blue Spike's allegations about Audible Magic as true (Opp. at 12), Audible Magic's witnesses are also based in the San Francisco Bay Area and each of them would have to travel more than 1,500 miles to attend trial in this District if transfer is not granted.  (*See* Declaration of Vance Ikezoye in Support of Defendant Audible Magic Corporation's Motion to Transfer Venue (Dkt. No. 771-2), ¶¶ 8, 12, 13, 17.)  Thus, if anything, Blue Spike's reliance on Audible Magic supports transfer to Northern California.  Furthermore, while Blue Spike suggests that all of its "known witnesses" reside in this District, it fails to

identify any such witnesses (other than Mr. Moskowitz) or state what their likely roles might be at trial.  (Opp. at 12.)  With respect to Mr. Moskowitz, while he states that it is painful for him to travel long distances, he does not explain how he is able to travel between Texas and Florida regularly, why he set up shop in Texas just before instituting these litigations, and why his stated medical condition prevents travel to California, but not to Texas or Florida.  (Moskowitz Decl., ¶ 12.)  Indeed, the fact that Mr. Moskowitz executed his declaration in Miami, Florida on May 20, 2013 after meeting with his lawyers in Texas in May 2013 undercuts much of his complaints about travel.[1]  (*Id.*)

## III. THE PUBLIC FACTORS ALSO SUPPORT TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

Blue Spike's argument that none of the public interest factors support transfer is also incorrect.  First, with respect to the court congestion factor, Blue Spike merely criticizes the judicial statistics submitted by Google as unhelpful, without citing any data to the contrary. Second, Blue Spike ignores that when, like here, the accused products are available nationwide, local interest arises in the community where the accused products are developed and managed. *See, e.g.*, *PersonalWeb Techs.*, Dkt. No. 131 at 23 (The fact that the "Google Defendants are headquartered in the Bay Area, and everything related to the accused products is located there" favors transfer on the local interest factor.).

## IV. CONCLUSION

For the reasons set forth above and in the Opening Brief, Google respectfully requests a transfer to the Northern District of California.

---

[1]  The cases Blue Spike cites (Opp. at 7) demonstrate that Mr. Moskowitz's unspecified medical condition is not a dispositive concern for transfer analysis.  *See BSB Bank & Trust Co. v. Morrison*, No. 02-cv-648, 2003 WL 1797845, at *2-*3 (N.D.N.Y. Apr. 4, 2003) (Doctors submitted evidence that elderly defendants were at risk "for sudden death."); *NGC Worldwide, Inc. v. Siamon*, No. 02-cv-1760, 2003 WL 1987001, at *1 (D. Conn. Apr. 21, 2003) (The treating physician opined that a seventy-two-year-old defendant would experience severe swelling of extremities and skin tearing and bleeding if he were forced to travel.).

Dated:  May 31, 2013                    Respectfully submitted,


                                        /s/ *Lance Lee*
                                        Lance Lee
                                        Texas Bar No. 24004762
                                        Attorney at Law
                                        5511 Plaza Drive
                                        Texarkana, TX 75503
                                        wlancelee@aol.com
                                        Phone: (903) 223-0276
                                        Fax: (903) 223-0210

                                        Michael A. Berta
                                        michael.berta@aporter.com
                                        Patrick J. Conti
                                        patrick.conti@aporter.com
                                        **ARNOLD &PORTER LLP**
                                        Three Embarcadero Center, 7th Floor
                                        San Francisco, CA 94111
                                        Phone: (415) 471-3100
                                        Fax: (415) 471-3400

                                        Wallace Wu
                                        wallace.wu@aporter.com
                                        Nicholas H. Lee
                                        nicholas.lee@aporter.com
                                        **ARNOLD &PORTER LLP**
                                        777 S. Figueroa Street, 44th Floor
                                        Los Angeles, CA 90017
                                        Phone:  (213) 243-4000
                                        Fax:  (213) 243-4199

                                        ATTORNEYS FOR DEFENDANT
                                        GOOGLE INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 31, 2013, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

/s/ *Lance Lee*
Lance Lee