UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:12-cv-499 |
| Texas Instruments, Inc. | § § | |
| Defendant | § § | |

---

| | | |
|---|---|---|
| Blue Spike, LLC | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:12-cv-00598 |
| Soundmouse, Ltd. | § § | |
| Defendant. | § § | |

## DEFENDANT SOUNDMOUSE, LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER

Defendant Soundmouse Ltd. ("Soundmouse") files its *Reply in Support of its Motion to Dismiss* the Complaint filed against it herein, for lack of personal jurisdiction, or, in the alternative, *Motion to Transfer* this case to a more appropriate venue. Soundmouse would respectfully show the Court as follows:

**I.     INTRODUCTION**

Plaintiff Blue Spike, LLC's ("Plaintiff") response consists of nothing more than assumptions supported by internet webpages and google searches. Plaintiff has failed to meet its burden to present evidence to the Court, and thus, the Court must dismiss this case, or, in the alternative, transfer this case to a more appropriate and less burdened venue.

1

With respect to the motion to dismiss, Plaintiff fails to present the Court with any evidence to support any connection between Soundmouse and Texas. The best Plaintiff can do is allege that there "must" be a connection because Soundmouse is successful and has customers. This is not evidence and Plaintiff has not met its burden. The evidence in this case establishes that Soundmouse's connection with Texas is minimal at best. Other than a test which did not result in any sales whatsoever, there is no relevant connection between Soundmouse and Texas. The case law is very clear: Soundmouse must "purposefully avail" itself of the forum state and "reasonably anticipate" being haled into this forum. The contacts cannot be random, fortuitous, or attenuated. In this case, Plaintiff has not met its burden and the case should therefore be dismissed.

With respect to the motion to transfer, there is little reason for this case to remain at this venue. Plaintiff has filed suit against 80 different defendants. Plaintiff alleges that this will expedite matters and make the cases more efficient. However, this clearly is not the case. Based on the current pace of this case, it is likely that it will take Soundmouse years, if not a decade to reach trial. Justice delayed is justice denied. Moreover, the factors to be considered for the transfer motion also support transfer. All of the key witnesses and evidence are located in New York and England. Other than the patents themselves, there is no evidence located in Tyler, Texas and only one relevant witness, the CEO for the Plaintiff. Efficiency and the relevant factors all point towards New York as the most appropriate venue.

For these reasons and the reasons stated below, Soundmouse respectfully requests that the Court dismiss this case or, in the alternative, transfer this case to New York.

## II.     PLAINTIFF FAILS TO PROVIDE EVIDENCE TO SUPPORT ITS RESPONSE.

Plaintiff's position with respect to Soundmouse's minimum contacts is as follows: In Texas, there are local musicians and news reporting groups. Of course, the same can be said for every state, city, and territory in the United States. In order for these musicians and news reporting organizations to make money, they must have a relationship with distributors for their works. For musicians, this includes worldwide organizations such as BMI. For local news reporting groups, this includes ABC, Disney, ESPN Television, NBC, etc. Essentially, a local Texas musician or news reporting group can make money by having their songs or broadcasts distributed on a greater scale by these groups, including broadcasts back into Texas. Plaintiff then asks the Court to "assume" that there is a connection between Soundmouse and Texas because Soundmouse "*must* employ its infringing technology in Texas" for these worldwide organizations. *See* Response, p. 6.

Essentially, Plaintiff is playing "connect the dots" and hoping that the Court will not require it to present any actual evidence of the connection. A closer look at the "evidence" demonstrates that these "connections" are not present. First, Plaintiff misrepresents the relationship between Soundmouse and these third parties' activities in Texas. Plaintiff relies upon its Exhibits 1-4. Exhibit 1 proves that Soundmouse has a relationship with British companies (*e.g.,* ITV, Channel 4, BSkyB, etc.), not Texas or US entities. Exhibit 2 states that ASCAP is "testing" Soundmouse's services, not that it is using the services, and further indicates that ASCAP is considering other third parties. Regardless, there is no indication from this Exhibit that any Soundmouse services are being done in Texas by Soundmouse or ASCAP. Exhibit 3 consists of pages from Soundmouse's website, which again makes no indication whatsoever that Soundmouse or any third party is employing any Soundmouse services for Texas. Exhibit 4 indicates that Soundmouse has provided services to certain news and television

entities, but does not indicate that any services were done in Texas or for any Texas entities or persons.

Moreover, many of the other documents relied upon by Plaintiff have nothing to do with the allegations made by Plaintiff.  For example, Plaintiff relies upon Exhibit 6 for the allegation that: "Soundmouse receives and processes data created in Texas from performing-rights organizations that operate in Texas." *See* Response, p. 6.  Exhibit 6 is a listing of LinkedIn pages for Dallas musicians.  This doesn't even remotely establish that Soundmouse receives data from Texas.  Plaintiff then relies on Exhibits 7 and 8 for the following assertion: "Soundmouse analyzes, compares, and extracts music data from public television, Internet, and radio broadcasts on behalf of Texas networks and producers." *See* Response, p. 6.  The "evidence" for this allegation is the television guide listings for Tyler, Texas.  This, again, has nothing to do with Soundmouse or its services, and certainly does not establish that Soundmouse provided services "on behalf of Texas networks and producers."  Finally, Plaintiff alleges that "this Texas data from broadcasts on Texas networks is reported back to the performing rights organizations in order to compensate Texas musicians" and relies upon Exhibit 3.  Exhibit 3 is a printout of a webpage from Soundmouse's website, and does not even remotely support this allegation.  In sum, none of the Exhibits offered by Plaintiff establish any connection between Soundmouse and Texas, and none of the Exhibits indicate that Soundmouse provides any services related to Texas.

As the Court is undoubtedly aware, a defendant must have certain "minimum contacts with it such that the maintenance of the suit does not '**offend traditional notions of fair play and substantial justice**.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (*quoting* Milliken v. Meyer, 311 U.S. 457, 463 (1940)) (emphasis added).  Moreover, the defendant must "**purposefully** avails [it]self of the privilege of conducting activities **within the forum state**, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253

(1958) (emphasis added). A defendant must "**reasonably anticipate** being haled into court." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (emphasis added). **Contacts solely as a result of random, fortuitous, or attenuated activities are not sufficient**. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis added).

There is nothing purposeful with respect to Soundmouse's conduct. As explained in the underlying motion, Soundmouse's alleged infringing conduct occurs in England, not in Texas. Plaintiff's response brief provides no evidence to the contrary. The extent of Plaintiff's rebuttal evidence is Plaintiff printing out pages from Soundmouse's website and alleging that Soundmouse "*must* employ its infringing technology in Texas." This is not evidence.

Plaintiff's response cites to two cases to allegedly support its position. For the first case, Plaintiff misrepresents the quote from Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005), by not fully quoting the language and not indicating to the Court that the quote is only a partial quote. The full quote is the following: "Second, in patent litigation the injury occurs at the place where 'the infringing activity directly impacts on the interests of the patentee,' which includes 'the place of the infringing sales.'" Id. Plaintiff improperly construes this language to mean that patent infringement occurs wherever it "impacts" the plaintiff, including the location where plaintiff allegedly resides. However, this is not what the court stated in Trintec. The court stated that there must be a direct connection between the defendant and the location (e.g., "the place of the infringing sales"), and, as established in the underlying motion, there is no connection between Soundmouse and the eastern district of Texas. Nothing else within this case supports Plaintiff's strained position in its response brief.

Plaintiff next cites to Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 245 (5th Cir. 2008). This case also does not support Plaintiff's position and Plaintiff has

again misrepresented and misquoted the language to the Court. The full quote is as follows: "While generally insufficient along to confer jurisdiction, 'the foreseeable effects of a tort' should be considered 'as *part* of the analysis of the defendants' relevant contacts with the forum.' " Id. First, this occurrence alone (which is all Plaintiff has alleged) is "generally insufficient to confer jurisdiction." Plaintiff fails to mention this in its brief. Moreover, Plaintiff hasn't proven any acts by Soundmouse that are similar to what the defendant in Walk were accused of doing. In Walk, the defendant was accused of making a "myriad" of communications to the plaintiff in the forum state which directly related to the cause of action (*i.e.,* failing to disclose that the defendant was representing another party in the transaction to which defendant was representing the plaintiff). *See* id. In other words, the defendant's communications to the plaintiff in the forum state created a reasonable foreseeability to cause the tort for which defendant was accused of committing in the forum state. In this case, Soundmouse has had no contact with Plaintiff or any of the persons identified by Plaintiff in Texas (*i.e.,* musicians and local news programs). It is therefore unreasonable for Soundmouse to foresee the alleged result of its actions (which have not been established by Plaintiff as even happening).

Plaintiff has failed to establish any reasonable connection between Soundmouse and Texas. The Court should therefore dismiss this case.

### III. SOUNDMOUSE'S WEBSITE IS NOT INTERACTIVE.

Plaintiff next alleges that Soundmouse's website establishes jurisdiction. See Response, p. 7. Plaintiff's allegations with respect to Soundmouse's website are also incorrect. In order to support its allegation, Plaintiff relies upon Exhibit 9 to Plaintiff's response, which is a printout of the "contact us" page from Soundmouse's website. The page allows the user to provide Soundmouse with their contact information (name, phone number, address, e-mail address) and

identify the type of services the person is interested in. It does not allow the person to "receive Soundmouse's services" (as alleged incorrectly by Plaintiff). *See* Response, p. 7.

Plaintiff also relies upon a page on Soundmouse's website which allows musicians to "register their musical works" with Soundmouse. *See* Exhibit 10 to Plaintiff's response. As shown in Exhibit 10, Soundmouse's website does not allow musicians to "register their work" but allows a musician to upload metadata for their music track for Soundmouse's users. Soundmouse is not providing any services to this musician, there is no back and forth interaction between Soundmouse and the musician, and this function does not make the website "interactive."

Soundmouse's website is clearly a passive website, and therefore does not create jurisdiction. *See* AdvanceMe, Inc. Rapidpay LLC, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (identifying a "passive website" as one "which only allows the owner to post information to the site"); Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002). The website does not allow users to order or apply for goods or services (as incorrectly asserted by Plaintiff), or interact back and forth with users.[1] For these reasons, the Court should find that the website does not create jurisdiction.

## IV. SOUNDMOUSE IS NOT "ACTIVELY" SOLICITING BUSINESS IN TEXAS.

Plaintiff finally asserts that Soundmouse is "actively" soliciting business in Texas. *See* Response, p. 8. Soundmouse's sole contact with Texas is random, fortuitous, and attenuated at

---

[1] Plaintiff also cites to various postings on websites to falsely allege that "Soundmouse is actively soliciting new business in the global marketplace, and more specifically North America and Texas." *See* Response, p. 8, n.4. Plaintiff's argument is not supported by any case law, and does not establish any connection between Soundmouse and Texas. The websites and postings have nothing to do with Texas. The Court should therefore disregard this argument as irrelevant.

best. As explained in detail in the underlying motion, Soundmouse temporarily placed equipment in Houston, Texas several years ago for testing only, but such tests did not result in the sale of any services or goods. Soundmouse also purchased a software license from a company in San Antonio, Texas, but such software is only used in England and is not specific to the product alleged to infringe by Plaintiff. These are insufficient contacts to establish jurisdiction under the standards set forth above.

In summary, Plaintiff has the burden to prove with evidence that jurisdiction is proper in this case. Plaintiff has failed to meet this burden. All Plaintiff has provided to the Court is assumptions with no evidentiary support or analysis. In most instance, the "evidence" does not even remotely support the allegations made by Plaintiff. For the reasons stated above, the Court should grant the motion to dismiss for lack of personal jurisdiction.

## V. THE COURT SHOULD NOT PERMIT ADDITIONAL DISCOVERY.

Plaintiff does not present the Court with any reason why jurisdictional discovery will assist Plaintiff to meet its burden's set forth above. In the case of <u>Ove William Akerblom v. Ezra Holdings Ltd.</u>, 848 F. Supp. 2d 673, 691 (S.D. Tex. 2012), the court denied additional discovery because the plaintiff "failed to demonstrate how additional discovery would help enhance the Court's analysis." The same analysis should be applied here. Simply requesting jurisdictional discovery without attempting to demonstrate how it will assist Plaintiff is insufficient.

## VI. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE CASE.

### A. There Will Be No Efficiency Advantages With this Case.

Plaintiff alleges that the "paramount" concern for this Court is judicial economy. *See* Response, pp. 9-11. Given the number of defendants in this suit, it is highly doubtful that any

efficiency or economy will be achieved. The only commonality in this case is the patents at issue. Therefore, the only potential economy will potentially be the claim construction. However, even that will be a long and difficult process.

Plaintiff has decided to sue 80 different defendants in this case. Due to the sheer number of defendants, this case will be extremely inefficient. For instance, Plaintiff filed this action against Soundmouse on September 9, 2013. The parties are now 9 months later and briefing for the motions to dismiss or transfer are not even complete. There are over 700 docket entries and the parties have not even had a scheduling conference yet. At this rate, the parties will be lucky to have venue decided within 18 months from the filing date, and it will be years before a claim construction is completed. Justice delayed is justice denied. There are simply too many cases pending before this Court for any efficiency to be achieved.

This case concerns 80 different accused products, invalidity challenges by 80 different defendants, non-infringement defenses for 80 different defendants, and claim construction challenges by 80 different defendants. Instead of considering these inefficiencies, Plaintiff focuses on its allegation that it is most efficient for only one court to construe the claims. However, it is not unheard of for multiple courts to construe claim language. Additionally, the courts that address the claims later can rely upon the guidance of the courts that have already considered the meaning of the claim terms. In other words, having two courts consider the meaning of the claims happens, and those courts can deal with those issues.

The focus of this Court should be on whether it is more efficient *overall* for this case to proceed before one court or multiple courts, not simply whether it is more efficient for claim construction purposes. Given the substantial delays in this case already, it is apparent that the most efficient result is for this Court to transfer this case. At this rate, it will take years, if not a decade, for Soundmouse to reach trial. This will prejudice Soundmouse and its ability to timely

reach the merits of this case. Moreover, there is no commonality between Soundmouse's case and the other 80 different cases, other than the Plaintiff and the asserted patents. As set forth in the underlying motion, many courts have granted transfers despite multiple defendants for these exact same reasons. *See* Optimum Power, J2 Global Communications, WRT, and Zimmer. The Court should apply this same analysis here in transferring the case.

### B. The Inventor's Health Concerns Should Not Be a Non-Factor.

Plaintiff alleges that its CEO and inventor's health concerns alone justify denying the motion to transfer. *See* Response, p. 11-12. According to Plaintiff, Mr. Moskowitz has a hernia condition. First, Plaintiff has not presented the Court with any medical records to support its allegations. Furthermore, Plaintiff has not presented the Court with any declarations from a physician to support its contentions.

Plaintiff's allegations are furthermore disputed by Mr. Moskowitz's declaration to the Court. Mr. Moskowitz admits that he already travels monthly from Tyler, Texas to Florida for medical treatments. *See* Declaration of Scott Moskowitz attached to the Response (wherein Mr. Moskowitz admits in paragraph 3 that he travels to Florida to receive medical treatments and admits in paragraph 11 that the treatments are monthly).

Soundmouse is willing to depose Mr. Moskowitz in Tyler, Texas. The only other travel that is mandatory will be for a jury trial, and that will only be one trip to New York and back. Mr. Moskowitz can participate in all other hearings by telephone. Given that Mr. Moskowitz already travels monthly to Florida, there is no reason why he could not make an additional trip for trial. This is therefore a non-factor for the Court to consider.

### C. The Other Private Interest Factors Support Transfer.

#### 1. Ease of Access to Sources of Proof and Cost of Witnesses.

Plaintiff alleges that its sources of proof are located in Tyler, Texas, and thus alleges that transfer only shifts the burden from Soundmouse to Plaintiff. *See* Response, pp. 13-15. Plaintiff's response fails to address the specific argument set forth in the underlying motion. Plaintiff's evidence in Tyler, Texas is inconsequential when compared to Soundmouse's evidence (located in New York and England). The most relevant evidence for patent cases comes from the defendant Soundmouse and its customers. *See* Wireless Recognition Techs., Inc. v. A9.com, Inc., 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012); *see also* Droplets, Inc. v. E*Trade Financial Corp., 2012 WL 3133398, at *2 (E.D. Tex. Mar. 5, 2012); In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases … the place where the defendant's documents are kept weighs in favor of transfer to that location"); Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (*citing* Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 482 n.17 (D.N.Y. 1993)). Plaintiff's response fails to rebut that Soundmouse's and its customer's evidence is more relevant and consequential than Plaintiff's alleged evidence.

Plaintiff also does not contest that Soundmouse has two customers headquartered in New York City. Plaintiff furthermore does not contest that all witnesses for the customers with knowledge of the accused products are located in New York City, and that all Soundmouse witnesses related to the design, development, operation and sales of the accused products and services live or work in the United Kingdom, which is significantly closer and more convenient to New York than Tyler, Texas. Plaintiff's witnesses (which consist of the inventor and certain unnamed employees) will not have knowledge regarding the central issues of

11

alleged infringement and damages against Soundmouse, and Plaintiff fails to specify what information at all those witnesses may provide for this case.

For these reasons, this factor also supports transfer. See Eon Corp. IP Holdings, LLC v. Sensus, USA, Inc., 2012 WL 122562, at *4 (E.D. Tex. Jan. 9, 2012) (transferring case because most of the relevant evidence was located there); Voxpath RS, LLC v. LG Elecs. U.S.A., Inc., 2012 WL 194370, at *5 (E.D. Tex. Jan. 23, 2012) (transferring case because "all documents relating to infringement" were there, and plaintiff "only has a limited number of sources of proof in the Eastern District of Texas"); WRT, 2012 WL 506669, at *3; Droplets, 2012 WL 3133398, at **2, 5-6; In re Genentech, Inc., 566 F.3d at 1345; On Semiconductor, 2010 WL 3855520, at *5.

### 2. Availability of Compulsory Process

Plaintiff alleges that Soundmouse's arguments with respect to compulsory process are undercut by Soundmouse not identifying the "particular witnesses and documents that would require compulsory process." See Response, p. 13. This is not true. As stated above and in the underlying motion, Soundmouse specifically identified the location of its customers and what information they will provide at trial. Plaintiff's response fails to provide any reason why this information and these witnesses will not be important to this case. Thus, this factor supports transfer.

### D. The Public Interest Factors Also Strongly Favor Transfer

Plaintiff again fails to address this factor in its response. Tyler, Texas has no relationship to the issues of this case. There is no connection between Soundmouse and Tyler, Texas, and Plaintiff has only been in Tyler, Texas for a short period of time. Plaintiff clearly moved to

Tyler in order to manufacture venue. The Court should therefore find that this factor supports transfer.

In conclusion, all of the factors relevant to the motion to transfer support transfer of this case to New York. There is no relevant connection between Soundmouse and Texas. The bulk of the witnesses and evidence is located in New York or closer to New York than Tyler. There are no efficiency advantages to maintaining this case in Tyler, and, in fact, keeping this case in Tyler ensures delay and inefficiency. For these reasons, the Court should grant the motion to transfer in the event that the Court does not grant the motion to dismiss.

DATED: June 3, 2013

    Respectfully submitted,

    /s/ Ryan T. Beard
    Eric B. Meyertons
     Texas State Bar No. 14004400
     emeyertons@intprop.com
    Ryan T. Beard
     Texas State Bar No. 24012264
     rbeard@intprop.com

    MEYERTONS, HOOD, KIVLIN, KOWERT & GOETZEL, P.C.
    1120 South Capital of Texas HWY
    Building 2, Suite 300
    Austin, Texas 78746
    (512) 853-8800 (telephone)
    (512) 853-8801 (facsimile)

    **ATTORNEYS FOR SOUNDMOUSE**

## CERTIFICATE OF SERVICE

      I hereby certify that on June 2, 2013 I electronically filed the foregoing pleading with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

                                          /s/ Ryan T. Beard
                                          Ryan T. Beard