**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | Civil Action No. 6:12-cv-499-MHS |
| | § | **(Lead case for Consolidation Issues)** |
| v. | § | Jury Trial Demanded |
| | § | |
| Texas Instruments, Inc., | § | |

| | | |
|---|---|---|
| Blue Spike, LLC | § | |
| | § | Civil Action No. 6:13-cv-128 |
| v. | § | |
| | § | |
| Enswers, Inc. | § | |

<u>**DEFENDANT ENSWERS, INC.'S**</u>
<u>**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**</u>

Defendant Enswers, Inc. ("Enswers" or "Defendant") hereby answers the Complaint for Patent Infringement (the "Complaint") filed by Plaintiff Blue Spike, LLC ("Blue Spike" or "Plaintiff") as follows:

<u>**NATURE OF THE SUIT**</u>

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**ANSWER:**

Enswers admits the allegations of this paragraph.

<u>**PARTIES**</u>

2.      Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703.  Blue Spike, LLC is the assignee of the Patents-in-Suit from Blue Spike, Inc. (a Florida

corporation), which was the assignee of the Patents-in-Suit from Scott Moskowitz and Michael

Berry.  Blue Spike, LLC and Blue Spike, Inc. are collectively referred to as "Blue Spike."  Blue

Spike CEO Scott Moskowitz is an inventor on more than 66 U.S. Patents related to managing,

monitoring, and monetizing digital content and informational assets.  Blue Spike has practiced

and has continued business plans to practice Moskowitz's patented inventions.  Many of Blue

Spike's patents are foundational to today's robust markets for content, which grew into their

present form only after using Blue Spike's technology to catalogue, manage, monitor, and

monetize that content.

     **ANSWER:**

     Enswers lacks sufficient information from which to admit or deny the allegations of this

paragraph, and therefore, denies the same.

     3.     On information and belief, Enswers, Inc. ("Enswers" or "Defendant") is a

California corporation, having its principal place of business at 153 Townsend St, Suite 9017,

San Francisco, California 94107.  Defendant can be served with process through its registered

agent, Chris Torres, located at 550 S. California Ave Suite 100, Palo Alto, California 94306.

Defendant does business in the State of Texas and in the Eastern District of Texas.

     **ANSWER:**

     Enswers admits that it can be served though its registered agent.  Enswers denies the

remaining allegation of this paragraph.

**JURISDICTION AND VENUE**

     4.     This lawsuit is a civil action for patent infringement arising under the patent laws

of the United States, 35 U.S.C. §101 *et seq*.  The Court has subject-matter jurisdiction pursuant

to 28 U.S.C. §§1331, 1332, 1338(a), and 1367.

**ANSWER:**

Enswers admits that this action arises under the patent laws of the United States and that this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

5.    The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.  Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

**ANSWER:**

Enswers denies the allegation of this paragraph.  Enswers specifically denies that the Court can assert personal jurisdiction over it.  Enswers reserves its the right to file a Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), if not voluntarily dimissed.

6.    Venue is proper in this judicial district under 28 U.S.C. §§1391(b)–(c) and 1400(b) because Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise

to Blue Spike's claims happened in the District, and Defendant is subject to personal jurisdiction in the District.

**ANSWER:**

Enswers denies the allegation of this paragraph.  Enswers specifically denies that venue is proper is this judicial district.

## FACTUAL BACKGROUND

A.     **Moskowitz's History**

7.     The owners of art, music, films, and other creations who want to sell and license their work in digital form over the Internet need an efficient way to manage, monitor, and monetize it.  Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such management possible, and which has parlayed with equal importance into other industries.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

8.     Moskowitz, who earned two degrees cum laude from the Wharton School of Finance and Commerce at the University of Pennsylvania, is an inventor of more than 66 U.S. Patents, including each of the Patents-in-Suit.

**ANSWER:**

Enswers admits that Moskowitz is identified as one of the inventors of the Patents-in-Suit.  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

9.      In 1992, Moskowitz entered the entertainment industry by doing agency work in Japan for a large U.S. wholesaler of music-related products.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

10.      In 1993, Moskowitz filed his first U.S. digital-content-management patent application.  That year, he also founded the software start-up The Dice Company, which would become widely recognized as a leader in digital watermarking.  Since that first patent, Moskowitz has continued to create patented inventions in the field of information management and security at a prodigious pace.  His goal from the outset has been to commercialize his patented inventions.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

11.      Moskowitz founded Blue Spike, Inc. in November 1997.  Just over two years later, he filed his first patent application related to signal recognition technology, which issued as the '472 Patent.  In describing this pioneering technology, Moskowitz coined the term "signal abstracting," which enhanced the ability to catalogue, archive, identify, authorize, transact, and monitor the use and/or application of signals, such as images (for example, photographs, paintings, and scanned fingerprints), audio (for example, songs, jingles, commercials, movies soundtracks, and their versions), video (for example, videos, television shows, commercials, and movies), and multimedia works.  This revolutionary technology greatly improves the efficiency and speed of monitoring, analyzing, and identifying signals as perceived, as well as enabling the

optimal compression of the signals and their associated signal abstracts for memory accommodation.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

12.     Moskowitz's status as a pioneer in this new field between cryptography and signal analysis is evident from the United States Patent and Trademark Office's categorization of his patent applications.  The USPTO was initially puzzled about how to classify his early inventions, as the then-existing patent categories in cryptography and signal analysis were, by themselves, inadequate.  The USPTO therefore created a new classification for his groundbreaking inventions: classification 713, subclass 176, called "Authentication by digital signature representation or digital watermark."

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

13.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications.  The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

14.     As an industry trailblazer, Moskowitz has been an active author and public figure on digital-watermarking and signal-recognition technologies since their emergence.  A 1995 *New*

*York Times* article—titled "TECHNOLOGY:  DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's The Dice Company as one of two leading software start-ups in this newly created field.  *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

15.     He has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates.  Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management.  This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark."  Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management.  Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality."  He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

16.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE).  As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

17.     Moskowitz has been at the forefront of industry-based tests—such as the MUSE Embedded Signaling Tests, Secure Digital Music Initiative ("SDMI"), and various tests by performance-rights organizations including ASCAP and BMI, as well as Japan's Nomura Research Institute.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

18.     Moskowitz has negotiated projects to incorporate his technologies with leaders in a gamut of industries.  For example, Moskowitz worked with EMI, Warner Brothers, and Universal Music Group on music-release tracking systems; with AIG on insurance and financial services; with IBM on watermarking its software and managing movie scripts; and with Juniper Networks on measuring and provisioning the bandwidth used on its routers.  Blue Spike is also registered with the Federal Government's Central Contractor Registry (managed under the

System for Award Management, "SAM") and participated in the Department of Defense Small

Business Innovative Research (SBIR) program.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this

paragraph, and therefore, denies the same.

19.     Moskowitz and his companies have always practiced or had business plans to

practice his patented inventions.  He has worked extensively to ensure that his technology's

powerful and patented Giovanni® suite of media security technologies can be licensed to all.

Before the industry understood where digital management of content was heading, Moskowitz

believed that copyright management was an invaluable element for dramatically expanding the

business of music, emphasizing that security must not be shrouded in secrecy and that his

patented techniques were the strongest to do so.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this

paragraph, and therefore, denies the same.

20.     Moskowitz and Blue Spike continued to produce new versions of its popular

digital-watermarking tools.  Under Moskowitz's control, Blue Spike also developed its unique

Scrambling technologies, which continue to gain currency.  Moskowitz and Blue Spike rolled

out its "end-to-end" solution for music security.  Music encoded with Blue Spike's watermark

had both security and CD-quality sound, even when integrated with text, image, and video

content.  To this day, Moskowitz and Blue Spike are working with artists to help them manage

and secure their valuable artistic contributions from its office in Tyler, Texas.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

**B.      Patents-in-Suit**

21.     As content becomes increasingly profitable and prevalent in the U.S. and around the globe, pirates will continue to proliferate and use increasingly sophisticated technologies to steal and illegally copy others' work, especially those works that are digitally formatted or stored.  The Patents-in-Suit comprise, in part, what Moskowitz has coined "signal abstracting," which encompasses techniques, among others, also known as "signal fingerprinting," "acoustic fingerprinting," or "robust hash functions."  These are among the most effective techniques available for combating piracy, which are completely undetectable to the thief, yet still enable content owners to easily search through large amounts of data to identify unauthorized copies of their works.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

22.     Broadly speaking, "signal abstracting" identifies digital information and material—including video, audio, graphics, multimedia, and text—based solely on the perceptual characteristics of the material itself.  If desired, however, the abstract need not be static, and other information or heuristics can be used to augment the perceptual characteristics, resulting in a more robust abstract.  In contrast, other technologies (such as digital watermarking) embed additional information or messages into the original source material to enable traceability of the subsequently watermarked content, much like an audit trail or the serial number on a dollar bill.

When a pirate attempts to remove embedded information or messages, ideally the quality of the content may be degraded, making the tampered copies unusable or of such poor quality that they have little commercial value.  Signal abstracting avoids watermarking's vulnerabilities by leaving the source signal unchanged and catalogues the signal's identifying features or perceptual characteristics in a database.

> **ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

23.    Content owners can also then monitor and analyze distribution channels, such as the Internet, radio broadcasts, television broadcasts, and other media sources, to determine whether any content from those sources has the same abstract as their catalogued works. Unauthorized versions of copies of content may then be successfully identified.  With the unauthorized copies identified, the content owner can then restrict access, compel payment for authorized use, and develop better intelligence about content markets and those consumers with a willingness to pay.  In some cases, new versions of the content can be observed and analyzed, creating more robust abstracts or new abstracts entirely, informing owners and content aggregators about new channels or new opportunities for consumption of their content.

> **ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

24.    Similarly, content recognition applications running on mobile devices, smartphones, and tablets can use abstracts to identify content for users who would like to know what it is they are listening to (such as applications that just identify content) or would like to

know more about that content (such as applications that are now popularly known as "second screen applications," which allow a television audience to identify and interact with the content they are consuming, whether it be, for example, TV shows, movies, music, or video games). Once identified by an abstract, songwriters, for example, can be given lyrics, or budding video producers can be provided related versions or background on a video identified.  Thus, value add in markets can be adjusted to meet the specific needs and consumption patterns of users.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

25.   This idea of "signal abstracting" applies equally to biometric identification and today's security systems, such as fingerprint, facial, and optic systems that analyze, catalogue, monitor, and identify a person's biometric features.  Once an image is created from the features of these biometric identifiers, signal abstracting can be used to optimally compress the signal and its associated abstract, resulting in less memory usage and increased accuracy and speed of signal analysis and identification.  Further, signal abstracts of the biometric information can be secured independently; this means that authentication and verification of the identifying abstract do not compromise the original information.  This separation of the abstracts from the original source material enables more secure environments, such as those dealing with the security of a person's biometrics.  Thus, fingerprint scanners are made more secure, as are systems requiring physical scans of a person's body.  The recent evolution to smaller and cheaper processors and memory storage has led to the proliferation of these biometric-identification systems, which rely on the inventions of the Patents-in-Suit to be implemented.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

26.     The four Patents-in-Suit are prime examples of Moskowitz's pioneering contributions to signal recognition technology.

**ANSWER:**

Enswers lacks sufficient information from which to admit or deny the allegations of this paragraph, and therefore, denies the same.

**C.     The Accused Products and Services**

27.     Defendant designs and develops software, applications, systems, and technology for automatic content recognition for connected Smart TVs, second screen devices, and search systems.  Defendant makes, uses, offers for sale and/or imports into the U.S. products, systems and/or services including, but not limited to, its automatic content recognition software for connected Smart TVs, second screen devices, and search systems, such as enswer.me, AdView, Platform-V, and Image2Play, ("Accused Products"), which infringe one or more claims of the Patents-in-Suit.

**ANSWER:**

Enswers admits that it designs and develops technology for automatic content recognition for connected Smart TVs, second screen devices, and search systems.  Enswers further admits that it has offered for sale such technology for second screen devices.  Enswers denies the remaining allegations of this paragraph.

28.     Defendant has not sought or obtained a license for any of Blue Spike's patented technologies.

**ANSWER:**

Enswers admits the allegation of this paragraph.

29.     Yet Defendant's Accused Products are using methods, devices, and systems

taught by Blue Spike's Patents-in-Suit.

**ANSWER:**

Enswers denies the allegation of this paragraph.

**COUNT 1:**
**INFRINGEMENT OF U.S. PATENT NO. 8,214,175**

30.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 29 of

this complaint.

**ANSWER:**

Enswers incorporates by reference its responses to paragraphs 1-29 as though fully set

forth herein.

31.     Blue Spike, LLC is assignee of the '175 Patent, titled "Method and Device for

Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '175

Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and

obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:**

Enswers admits that the USPTO has recorded Blue Spike, LLC, as the assignee of the

'175 Patent and that the '175 Patent is titled "Method and Device for Monitoring and Analyzing

Signals."  Enswers lacks sufficient information from which to admit or deny the remaining

allegations of this paragraph, and therefore, denies the same.

32.     The '175 Patent is valid, is enforceable, and was duly and legally issued on July 3,

2012.  A true and correct copy of the '175 Patent is attached as Exhibit A.

**ANSWER:**

Enswers admits that on July 3, 2012, the USPTO issued the '175 Patent.  Enswers also admits that a copy of the '175 Patent was attached as Exhibit A.  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

33.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '175 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

34.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '175 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '175 Patent. Such products include, without limitation, one or more of the Accused Products.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '175 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '175 Patent under 35 U.S.C. § 271.  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.  Defendant had knowledge of the '175

Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '175 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '175 Patent under 35 U.S.C. §271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

35.     Defendant's acts of infringement of the '175 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '175 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**ANSWER:**

Enswers denies the allegation of this paragraph.

36.     On information and belief, Defendant has continued to infringe the '175 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk.  Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '175 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:**

Enswers denies the allegation of this paragraph.

37.     On information and belief, Defendant has at least had constructive notice of the '175 Patent by operation of law.

**ANSWER:**

Enswers denies the allegation of this paragraph.

**COUNT 2:**
**INFRINGEMENT OF U.S. PATENT NO. 7,949,494**

38.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 37 of this complaint.

**ANSWER:**

Enswers incorporates by reference its responses to paragraphs 1-37 as though fully set forth herein.

39.     Blue Spike, LLC is assignee of the '494 Patent, titled "Method and Device for Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '494 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:**

Enswers admits that the USPTO has recorded Blue Spike, LLC, as the assignee of the '494 Patent and that the '494 Patent is titled "Method and Device for Monitoring and Analyzing Signals."  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

40.     The '494 Patent is valid, is enforceable, and was duly and legally issued on May 24, 2011.  A true and correct copy of the '494 Patent is attached as Exhibit B.

**ANSWER:**

Enswers admits that on May 24, 2011, the USPTO issued the '494 Patent.  Enswers also admits that a copy of the '494 Patent was attached as Exhibit B.  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

41.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '494 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

42.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '494 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '494 Patent.  Such products include, without limitation, one or more of the Accused Products.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '494 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '494 Patent under 35 U.S.C. §271.  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.  Defendant had knowledge of the '494

Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '494 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '494 Patent under 35 U.S.C. § 271.

> **ANSWER:**

Enswers denies the allegation of this paragraph.

43.     Defendant's acts of infringement of the '494 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '494 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

> **ANSWER:**

Enswers denies the allegation of this paragraph.

44.     On information and belief, Defendant has continued to infringe the '494 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk.  Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '494 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

> **ANSWER:**

Enswers denies the allegation of this paragraph.

45.     On information and belief, Defendant has at least had constructive notice of the
'494 Patent by operation of law.

**ANSWER:**

Enswers denies the allegation of this paragraph.

**COUNT 3:**
**INFRINGEMENT OF U.S. PATENT NO. 7,660,700**

46.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 45 of
this complaint.

**ANSWER:**

Enswers incorporates by reference its responses to paragraphs 1-45 as though fully set
forth herein.

47.     Blue Spike, LLC is assignee of the '700 Patent, titled "Method and Device for
Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '700
Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and
obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:**

Enswers admits that the USPTO has recorded Blue Spike, LLC, as the assignee of the
'700 Patent and that the '700 Patent is titled "Method and Device for Monitoring and Analyzing
Signals."  Enswers lacks sufficient information from which to admit or deny the remaining
allegations of this paragraph, and therefore, denies the same.

48.     The '700 Patent is valid, is enforceable, and was duly and legally issued on
February 9, 2010.  A true and correct copy of the '700 Patent is attached as Exhibit C.

**ANSWER:**

Enswers admits that on February 9, 2010, the USPTO issued the '700 Patent.  Enswers also admits that a copy of the '700 Patent was attached as Exhibit C.  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

49.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '700 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

50.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '700 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '700 Patent. Such products include, without limitation, one or more of the Accused Products.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '700 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '700 Patent under 35 U.S.C. §271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.  Defendant had knowledge of the '700

Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '700 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '700 Patent under 35 U.S.C. §271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

51.     Defendant's acts of infringement of the '700 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '700 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**ANSWER:**

Enswers denies the allegation of this paragraph.

52.     On information and belief, Defendant has continued to infringe the '700 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk.  Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '700 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:**

Enswers denies the allegation of this paragraph.

53.     On information and belief, Defendant has at least had constructive notice of the

'700 Patent by operation of law.

**ANSWER:**

Enswers denies the allegation of this paragraph.

**COUNT 4:**
**INFRINGEMENT OF U.S. PATENT NO. 7,346,472**

54.     Blue Spike incorporates by reference the allegations in paragraphs 1 through 53 of

this complaint.

**ANSWER:**

Enswers incorporates by reference its responses to paragraphs 1-53 as though fully set

forth herein.

55.     Blue Spike, LLC is assignee of the '472 Patent, titled "Method and Device for

Monitoring and Analyzing Signals," and has ownership of all substantial rights in the '472

Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and

obtain damages and other relief for past and future acts of patent infringement.

**ANSWER:**

Enswers admits that the USPTO has recorded Blue Spike, LLC, as the assignee of the

'472 Patent and that the '472 Patent is titled "Method and Device for Monitoring and Analyzing

Signals."  Enswers lacks sufficient information from which to admit or deny the remaining

allegations of this paragraph, and therefore, denies the same.

56.     The '472 Patent is valid, is enforceable, and was duly and legally issued on

March 18, 2008.  A true and correct copy of the '472 Patent is attached as Exhibit D.

**ANSWER:**

Enswers admits that on March 18, 2008, the USPTO issued the '472 Patent.  Enswers also admits that a copy of the '472 Patent was attached as Exhibit D.  Enswers lacks sufficient information from which to admit or deny the remaining allegations of this paragraph, and therefore, denies the same.

57.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '472 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

58.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '472 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '472 Patent. Such products include, without limitation, one or more of the Accused Products.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '472 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '472 Patent under 35 U.S.C. §271.  Those whom Defendant induces to infringe and/or whose infringement to which Defendant contributes are the end users of the Accused Products.  Defendant had knowledge of

the '472 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '472 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '472 Patent under 35 U.S.C. § 271.

**ANSWER:**

Enswers denies the allegation of this paragraph.

59.     Defendant's acts of infringement of the '472 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '472 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

**ANSWER:**

Enswers denies the allegation of this paragraph.

60.     On information and belief, Defendant has continued to infringe the '472 Patent since receiving notice of their infringement, at least by way of their receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk.  Accordingly, Blue Spike seeks a willfulness finding against Defendant relative to its infringement of the '472 Patent entitling Blue Spike to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

**ANSWER:**

Enswers denies the allegation of this paragraph.

61.     On information and belief, Defendant has at least had constructive notice of the '472 Patent by operation of law.

**ANSWER:**

Enswers denies the allegation of this paragraph.

## ENSWERS'S AFFIRMATIVE DEFENSES

Subject to the responses above, Enswers alleges and assert the following defenses in response to the allegations of the Complaint, undertaking the burden of proof only as to those defenses required by law.  In addition to the affirmative defenses described below, Enswers specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery.

## FIRST AFFIRMATIVE DEFENSE
### (LACK OF PERSONAL JURISDICTION)

1.     This Court does not have personal jurisdiction over Enswers.  Enswers has informed Plaintiff of this Court's lack of personal jurisdiction over it, and Enswers reserves it right to file a Motion to Dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2) and does not, by filing this answer, generally appear or waive its right to later file such a motion.  *See Koller v. West Bay Acquisitions, LLC*, No. C. 12-00117 CRB, 2012 WL 2862440, at *4 (July 11, 2012) (N.D. Cal.) (stating that "defendant's filing of an answer which raised the defense of lack of personal jurisdiction prior to the filing of a Rule 12(b)(2) motion did not remove the motion from consideration on the grounds that it is untimely.")

## SECOND AFFIRMATIVE DEFENSE
### (INVALIDITY)

2.     The claims of the '175, '494, '700 and '472 patents are invalid for failure to meet at least one of the conditions for patentability set forth in Title 35 of the United States Code,

including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNTERCLAIMS

Enswers, for its counterclaims against plaintiff Blue Spike and upon information and belief, states as follows:

## PARTIES

1.      Enswers is a corporation or other business entity organized under the laws of South Korea.

2.      Upon information and belief, Blue Spike is a Texas limited liability company with its principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

4.      By filing its Complaint, Blue Spike has consented to the personal jurisdiction of this Court.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## EXISTENCE OF ACTUAL CONTROVERSY

6.      Blue Spike alleges in its Complaint that it owns all rights, title and interest in the '175, '494, '700 and '472 patents as an assignee.

7.      Blue Spike alleges in its Complaint that Enswers has made, used, offered for sale, sold and/or caused to be made, used, offered for sale or sold products, systems, and/or services that infringes the '175, '494, '700 and '472 patents.

8.      Blue Spike alleges in its Complaint that the '175, '494, '700 and '472 patents are valid and complies with all of the requirements of 35 U.S.C. § 1 *et seq.*

**FIRST COUNTERCLAIM:**
**Declaratory Judgment of Non-Infringement of the '175 Patent**

9.      Enswers incorporates the allegations in paragraphs 1 through 8 of these

Counterclaims as if fully set forth herein.

10.      Enswers's products do not infringe, either directly or indirectly, or under the

doctrine of equivalents or otherwise, any claim of the '175 patent.

11.      Blue Spike's wrongful allegations of infringement of the '175 patent and

Enswers's denial of those allegations create the existence of an actual controversy under 28

U.S.C. §§ 2201 and 2202.  Enswers seeks a judgment that Enswers has not infringed and does

not infringe, under doctrine of equivalents or otherwise, any claim of the '175 patent, and that

Enswers has not contributed to or induced and are not contributing to or inducing infringement

of any claim of the '175 patent.

**SECOND COUNTERCLAIM:**
**Declaratory Judgment of Invalidity of the '175 Patent**

12.      Enswers incorporates the allegations in paragraphs 1 through 11 of these

Counterclaims as if fully set forth herein.

13.      The '175 patent is invalid for failure to satisfy one or more of the conditions of

patentability set forth Title 35 of the United States Code, including, but not limited to, 35 U.S.C.

§§ 101, 102, 103 and/or 112.

14.      Blue Spike's wrongful allegations of validity of the '175 patent and Enswers's

denial of those allegations create the existence of an actual controversy under 28 U.S.C. §§ 2201

and 2202.  Enswers seeks a judgment that the '175 patent is invalid for failure to satisfy one or

more of the requirements of Title 35, including without limitation, Sections 101, 102, 103, and/or

112.

**THIRD COUNTERCLAIM:**
**Declaratory Judgment of Non-Infringement of the '494 Patent**

15.     Enswers incorporates the allegations in paragraphs 1 through 14 of these
Counterclaims as if fully set forth herein.

16.     Enswers's products do not infringe, either directly or indirectly, or under the
doctrine of equivalents or otherwise, any claim of the '494 patent.

17.     Blue Spike's wrongful allegations of infringement of the '494 patent and
Enswers's denial of those allegations create the existence of an actual controversy under 28
U.S.C. §§ 2201 and 2202.  Enswers seeks a judgment that Enswers has not infringed and does
not infringe, under doctrine of equivalents or otherwise, any claim of the '494 patent, and that
Enswers has not contributed to or induced and are not contributing to or inducing infringement
of any claim of the '494 patent.

**FOURTH COUNTERCLAIM:**
**Declaratory Judgment of Invalidity of the '494 Patent**

18.     Enswers incorporates the allegations in paragraphs 1 through 17 of these
Counterclaims as if fully set forth herein.

19.     The '494 patent is invalid for failure to satisfy one or more of the conditions of
patentability set forth Title 35 of the United States Code, including, but not limited to, 35 U.S.C.
§§ 101, 102, 103 and/or 112.

20.     Blue Spike's wrongful allegations of validity of the '494 patent and Enswers's
denial of those allegations create the existence of an actual controversy under 28 U.S.C. §§ 2201
and 2202.  Enswers seeks a judgment that the '494 patent is invalid for failure to satisfy one or
more of the requirements of Title 35, including without limitation, Sections 101, 102, 103, and/or
112.

## FIFTH COUNTERCLAIM:
## Declaratory Judgment of Non-Infringement of the '700 Patent

21.      Enswers incorporates the allegations in paragraphs 1 through 20 of these

Counterclaims as if fully set forth herein.

22.      Enswers's products do not infringe, either directly or indirectly, or under the

doctrine of equivalents or otherwise, any claim of the '700 patent.

23.      Blue Spike's wrongful allegations of infringement of the '700 patent and

Enswers's denial of those allegations create the existence of an actual controversy under 28

U.S.C. §§ 2201 and 2202.  Enswers seeks a judgment that Enswers has not infringed and does

not infringe, under doctrine of equivalents or otherwise, any claim of the '700 patent, and that

Enswers has not contributed to or induced and are not contributing to or inducing infringement

of any claim of the '700 patent.

## SIXTH COUNTERCLAIM:
## Declaratory Judgment of Invalidity of the '700 Patent

24.      Enswers incorporates the allegations in paragraphs 1 through 23 of these

Counterclaims as if fully set forth herein.

25.      The '700 patent is invalid for failure to satisfy one or more of the conditions of

patentability set forth Title 35 of the United States Code, including, but not limited to, 35 U.S.C.

§§ 101, 102, 103 and/or 112.

26.      Blue Spike's wrongful allegations of validity of the '700 patent and Enswers's

denial of those allegations create the existence of an actual controversy under 28 U.S.C. §§ 2201

and 2202.  Enswers seeks a judgment that the '700 patent is invalid for failure to satisfy one or

more of the requirements of Title 35, including without limitation, Sections 101, 102, 103, and/or

112.

**SEVENTH COUNTERCLAIM:**
**Declaratory Judgment of Non-Infringement of the '472 Patent**

27.     Enswers incorporates the allegations in paragraphs 1 through 26 of these

Counterclaims as if fully set forth herein.

28.     Enswers's products do not infringe, either directly or indirectly, or under the

doctrine of equivalents or otherwise, any claim of the '472 patent.

29.     Blue Spike's wrongful allegations of infringement of the '472 patent and

Enswers's denial of those allegations create the existence of an actual controversy under 28

U.S.C. §§ 2201 and 2202.  Enswers seeks a judgment that Enswers has not infringed and does

not infringe, under doctrine of equivalents or otherwise, any claim of the '472 patent, and that

Enswers has not contributed to or induced and are not contributing to or inducing infringement

of any claim of the '472 patent.

**EIGHTH COUNTERCLAIM:**
**Declaratory Judgment of Invalidity of the '472 Patent**

30.     Enswers incorporates the allegations in paragraphs 1 through 29 of these

Counterclaims as if fully set forth herein.

31.     The '472 patent is invalid for failure to satisfy one or more of the conditions of

patentability set forth Title 35 of the United States Code, including, but not limited to, 35 U.S.C.

§§ 101, 102, 103 and/or 112.

32.     Blue Spike's wrongful allegations of validity of the '472 patent and Enswers's

denial of those allegations create the existence of an actual controversy under 28 U.S.C. §§ 2201

and 2202.  Enswers seeks a judgment that the '472 patent is invalid for failure to satisfy one or

more of the requirements of Title 35, including without limitation, Sections 101, 102, 103, and/or

112.

## RELIEF REQUESTED

WHEREFORE, Enswers respectfully requests the following relief:

1.      A judgment in favor of Enswers denying Blue Spike all relief requested in its Complaint in this action and dismissing Blue Spike's Complaint for patent infringement with prejudice;

2.      A judgment declaring that Enswers has not infringed and does not infringe any claim of the '175, '494, '700 and '472 patents, under the doctrine of equivalents or otherwise, and that Enswers has not contributed to or induced and is not contributing to or inducing infringement of any claims of the '175, '494, '700 and '472 patents;

3.      A judgment declaring that each claim of the '175 patent is invalid;

4.      A judgment declaring that each claim of the '494 patent is invalid;

5.      A judgment declaring that each claim of the '700 patent is invalid;

6.      A judgment declaring that each claim of the '472 patent is invalid;

7.      A judgment declaring this to be an exceptional case under 35 U.S.C. § 285 and awarding Enswers its costs, expenses, and reasonable attorneys' fees; and

8.      That the Court award Enswers such other and further relief as the Court deems just and proper.

DATED:        June 3, 2013                    Respectfully submitted,


                                             _/s/ Michael E. Jones_____
                                             Michael E. Jones
                                             State Bar No. 10929400
                                             mikejones@potterminton.com
                                             Allen F. Gardner
                                             State Bar No. 24043679
                                             allengardner@potterminton.com
                                             POTTER MINTON
                                             A Professional Corporation
                                             110 N. College, Suite 500
                                             Tyler, Texas 75702
                                             Tel: (903) 597-8311
                                             Fax: (903) 593-0846


*Of Counsel*:

Clement S. Roberts
croberts@durietangri.com
DURIE TANGRI
217 Leidesdorff Street
San Francisco, CA  94111
Tel: (415) 362-6666
Fax: (415) 236-6300

Benjamin L. Singer
bls@hsrslaw.com
HOPENFELD SINGER RICE & SAITO LLP
235 Montgomery Street
Suite 907
San Francisco, CA  94104
Tel: (415) 500-6080
Fax: (415) 534-6078

## **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 3, 2013.


                                             */s/ Michael E. Jones_____*