UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § | Case No. 6:12-cv-499-MHS |
| v. | § | Lead Case |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| *Defendants*. | § | |

**Blue Spike's Surreply to Google's Motion to Transfer Venue [Dkt. 678]**

The weightiest factors in the transfer analysis are the federal interest in judicial efficiency and the calculation of the relative burdens that a proposed transfer would impose on the parties and their witnesses. Here, those factors weigh against transfer, and the remaining private- and public-interest factors are either neutral or weigh in favor of keeping the case in this District. Because Google has not shown that transfer to the Northern District of California would be clearly more convenient, the motion should be denied.

**I.    The Federal Interest in Judicial Efficiency Weighs Strongly Against Transfer.**

There is simply no avoiding it: granting Google's transfer motion would guarantee that multiple courts will duplicate each other's efforts and issue potentially conflicting rulings. This is because Google's case does not merely involve the same four patents-in-suit as the other consolidated cases; it also involves some of the very same infringing technology. Google does not deny that it has used technology made by Audible Magic (*see generally* Dkt. 788),

1

which Blue Spike has also sued in this District along with twenty-three other Audible Magic customers. *See* Dkt. 766 at 4-5.

Google tries to downplay the significance of this overlap by noting that Audible Magic, joined by some (but not all) of its customers, recently filed its own motion for transfer to the Northern District of California, but that should not affect the Court's analysis of Google's motion for several stand-alone reasons: (1) transfer analysis depends on the state of affairs at the time suit was filed;[1] (2) the Court has not yet ruled on Audible Magic's transfer motion, which should be denied; (3) many of the Audible Magic customers whom Blue Spike has sued are not based in the Northern District of California; (4) not all of Audible Magic's customers have joined its transfer motion; and (5) other common issues of law and fact—including claim construction of the four patents-in-suit and the existence of other overlapping technologies and other related defendants—make it appropriate to keep the consolidated cases in this District. *See* Dkt. 766 at 5. Given these facts, it is virtually certain that at least some Blue Spike cases involving Audible Magic technology will proceed in this District, *not* in the Northern District of California.

Google's reply does not address Blue Spike's actual argument about the paramount federal concern in promoting judicial efficiency. Blue Spike never argued that transfer is improper merely because Blue Spike has filed numerous suits in this District. *Contra id*. at 2-3. Instead, the argument is

---

[1] *See In re EMC Corp.*, 501 Fed. App'x 973, 975 (Fed. Cir. Jan. 29, 2013); *Adaptix, Inc. v. LG Elecs., Inc.*, Case No. 6:12-cv-17, Dkt. 76 at 4 ("[P]ost-filing consent to jurisdiction in the transferee forum is irrelevant to the transfer analysis.").

2

that transfer will require multiple courts to engage in duplicative proceedings and issue rulings that might conflict with each other. *See* Dkt. 766 at 4-6. That is why judicial-efficiency concerns weigh so strongly against transfer.

## II. Private-Interest Factors—Including the Relative Burdens on the Witnesses and Parties—Do Not Support a Transfer.

As explained in the opposition (Dkt. 766 at 8-9), Blue Spike is a small Texas company. Its entire operation and all its employees have been here for over a year. Its witnesses and evidence are located in this District. Its CEO and inventor, Scott Moskowitz, is an essential witness, and he has a debilitating medical condition that makes travel very painful. He travels only to Florida in order to obtain medical treatment that he cannot obtain elsewhere. Given these facts, litigating in the Northern District of California would clearly be far harder for Blue Spike than litigating here would be for Google.

Google's reply tries to offset this reality by reiterating the canard that Blue Spike's ties to this forum are recent and ephemeral. Dkt. 788 at 3-4. As Blue Spike has already explained, this District's precedents clearly hold otherwise. *See* Dkt. 766 at 8-9. Google criticizes Blue Spike for failing to identify specific documents and witnesses located in this District (Dkt. 788 at 4), ignoring that (1) Blue Spike has identified Moskowitz as a necessary witness, (2) Blue Spike *has* alleged that *all* of its sources of proof are located here, and (3) as the movant, it is Google, not Blue Spike, that bears the burden of identifying specific documents and witnesses that impact the transfer

3

analysis. *See Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010). Finally, Google disingenuously suggests that Blue Spike's CEO and inventor, Scott Moskowitz, should have no problem traveling to California for this case since he travels regularly to Florida, ignoring that Moskowitz travels to Florida only to receive medical treatment for the very condition that makes traveling difficult. *See* Dkt. 766 at 8, Moskowitz Decl. ¶¶4-5, 12-14.

The Northern District of California may well house the majority[2] of Google's evidence and witnesses. But this case is not all about Google. A proper analysis also considers the paramount federal interest in judicial efficiency and the *relative* burdens on witnesses and the parties. After all, "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848. Here, the burden of transfer would fall extremely hard on Moskowitz and his small company. Google, in contrast, has vast financial resources and major operations in Texas. Google has not carried its burden of proving that transfer to the Northern District of California would be "clearly more convenient." *In re Volkswagen of Am, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

---

[2] "Vast majority" (Dkt. 788 at 4) may be an overstatement, however, given that, among other things, many of the likely witnesses relating to Audible Magic technology work for companies located outside the Northern District of California. *See* Dkt. 766 at 12.

### III.  Nor Do the Public-Interest Factors Support a Transfer.

Each of the public-interest factors either weighs against transfer or does not affect it. Google's reply persists in mischaracterizing the public-interest factors and Blue Spike's treatment of them. Blue Spike never argued that Google's case-disposition statistics are unhelpful based on other unnamed statistics. *Contra* Dkt. 788 at 5. Instead, Blue Spike's argument is that Google's case-disposition statistics are *inherently* unhelpful because, as Court itself has explained, they do not "tell the whole story." *See* Dkt. 766 at 13-14 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). And Blue Spike never denied that the Northern District of California has a local interest in this case. *Contra* Dkt. 788 at 5. Rather, it denied that this interest favors transfer, as this District has a strong local interest, too. *See* Dkt. 766 at 12-13.

### Conclusion and Prayer

For these reasons plus those contained in the opposition (Dkt. 766), Blue Spike again asks the Court to deny Google's transfer motion.

Respectfully submitted,

   /s/ Randall Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
**GARTEISER HONEA, P.C.**
218 N. College Ave.
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 (fax)


*Counsel for Blue Spike, LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on June 10, 2013.

    /s/ Randall Garteiser