IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DIETGOAL INNOVATIONS LLC** | § | |
| | § | |
| V. | § | No. 2:11cv418 |
| | § | |
| **ARBY'S RESTAURANT GROUP, INC.,** | § | |
| **ET AL.** | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motions are before the Court: Accord, Inc. d/b/a Taco Time Northwest's Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry #127); Defendants Tim Hortons Inc.'s and Tim Hortons USA Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry #210); and Defendant Rubio's Restaurants, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry #381). The Court, having reviewed the relevant briefing as well as hearing arguments of counsel August 29, 2012, recommends the motions be **DENIED WITHOUT PREJUDICE TO REFILING.**

### I. BACKGROUND

DietGoal Innovations LLC ("Plaintiff") filed its original complaint on September 15, 2011, alleging that multiple defendants infringed U.S. Patent No. 6,585,516 ("the '516 Patent"), titled "Method and System for Computerized Visual Behavior Analysis, Training, and Planning." (Docket Entry # 1). On November 3, 2011, Plaintiff filed its Second Amended Complaint ("Complaint"), adding multiple additional parties to the lawsuit, including Accord, Inc. d/b/a Taco Time

**EXHIBIT "D"**

Northwest's ("Taco Time");Tim Hortons Inc.'s and Tim Hortons USA Inc. ("Tim Hortons"); and Rubio's Restaurants, Inc. ("Rubio's")(collectively "Defendants") (Docket Entry # 78).

Plaintiff alleges Taco Time infringes the '516 Patent "by making and/or using in the United States the computer implemented website www.tacotimenw.com, which has a computerized meal planning interface at http://www.tacotimenw.com/tacotimemenu.aspx." *Id*. at ¶ 84. Plaintiff alleges Tim Hortons infringes the '516 Patent "by making and/or using in the United States the computer implemented website www.timhortons.com, which has a computerized meal planning interface at http://www.timhortons.com/ca/en/menu/nutritioncalculator.html." *Id*. at ¶ 86. Plaintiff alleges Rubio's infringes the '516 Patent "by making and/or using in the United States the computer implemented website www.rubios.com, which has a computerized meal planning interface at http://www.rubios.com/nutrition/calculator." *Id*. at ¶ 94.

In their current motions, Defendants assert they are non-resident companies; they conduct no business in Texas; and they lack the minimum contacts with this jurisdiction required to justify the exercise of personal jurisdiction.

## II. APPLICABLE LAW

A motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) permits a nonresident defendant to challenge the court's jurisdiction over the defendant's person or property. In a Rule 12(b)(2) motion, a nonresident defendant alleges he or she has insufficient contacts with the forum to justify the court's exercise of jurisdiction over him or her.

In a patent case, personal jurisdiction intimately relates to patent law and Federal Circuit law governs. *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed. Cir. 2003). Determining whether personal jurisdiction over a nonresident is proper is a two part inquiry: (1) whether a forum

2

state's long-arm statute permits service of process, and (2) whether the assertion of jurisdiction would be inconsistent with due process. *Electronics For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1249 (Fed. Cir. 2003). Because the "Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow,'" the only inquiry is whether the exercise of personal jurisdiction comports with federal constitutional due process requirements. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991)). Due process requires an out-of-state defendant to have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

A defendant's contacts with the forum may support either "specific" or "general" jurisdiction over the defendant. The Court may exercise specific jurisdiction over a defendant if "(1) the defendant purposefully directs activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (citations omitted). "Under this test, a court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts." *Id.* (citing *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1200 (Fed. Cir. 2000). Once these conditions are satisfied, the court must then determine whether the assertion of jurisdiction would "comport with fair play and substantial justice." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008).

General jurisdiction exists when defendant's contacts are unrelated to the cause of action but

3

are "continuous and systematic" and "substantial." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). "Neither the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant"s activities within a [forum] are 'continuous and systematic.'" *LSI Indus. Inc. v. Hubbel Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir. 2000).

To survive a motion to dismiss in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing of jurisdiction. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002); s*ee also Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 332 (5th Cir. 1982) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

### III. ANALYSIS

**A.     Statements of Jurisdictional Facts**

**1.     Taco Time**

Taco Time owns, operates, or franchises 72 neighborhood Mexican fast food restaurants in Washington State, primarily in the Puget Sound area surrounding Seattle. (Tonkin Decl. at ¶ 2). Taco Time has no restaurants in Texas and does not otherwise conduct business in Texas. *Id.* at ¶ 3. Taco Time's easternmost restaurant is in Moses Lake, Washington which is approximately 2000 miles from Marshall, Texas. *Id.* at ¶ 2.

Taco Time operates the allegedly infringing website at http://www.tacotimenw.com/tacotimemenu.aspx. *Id.* at ¶ 4. This website allows Taco Time's customers to determine the nutritional value of meals available at Taco Time's Washington restaurants. *Id.* The webpage user may select various items from the menu, but the user cannot

4

submit any personal information. *Id.* The sole interaction between the webpage and the user consists of the user's selection of meal items by pressing a button marked "Add to my meal." *Id.* This website has no application beyond Taco Time's menu. *Id.*

Taco Time maintains a separate webpage, http://store.tacotimenw.com/c-3-tacotime-gear.aspx, that allows users to purchase gift cards and merchandise. *Id.* at ¶ 5. The merchandise consists of a Taco Time 16-oz. Double Walled Cold Cup Tumbler and a Taco Time Relaxed Garment Washed Cotton Cap. *Id.* Taco Time has reported 2 internet sales of gift cards or merchandise to Texas residents.

**2.     Tim Hortons**

Tim Hortons Inc. is a foreign corporation organized under the laws of, and with a principal place of business in, Ontario, Canada. (Michetti Decl. at ¶ 6). Tim Hortons USA Inc. is a Delaware corporation with registered agent Corporation Trust Company in Wilmington, Delaware. *Id.* at ¶ 4. Neither Tim Hortons Inc. nor Tim Hortons USA Inc. has any agent for service of process in the State of Texas. *Id.* at ¶ 5.

Tim Hortons is a Canadian restaurant chain named after its founder, Canadian hockey player Myles "Tim" Horton. *Id.* at ¶ 6. Tim Hortons specializes in coffee, baked goods, and home-style lunches, and it has become the largest fast-food restaurant chain in Canada. *Id.* Approximately 80% of Tim Hortons restaurants are located in Canada. *Id.* at ¶ 7. The remaining 20% are located in the Northern portion of the United States (in Michigan, Maine, Connecticut, Rhode Island, Massachusetts, New York, Pennsylvania, Ohio, West Virginia and Kentucky). *Id.* There has never been a Tim Hortons restaurant in Texas or anywhere within 600 miles of Texas. *Id.*

Tim Hortons has never been registered to do business in the State of Texas, and it does not

5

operate or engage in any of its restaurant business there. *Id*. at ¶ 8. Tim Hortons does not maintain any facilities or property in Texas or even have a mailing address or P.O. box in Texas. *Id*. at ¶ 9. Nor has Tim Hortons solicited business from any Texas customer or advertised its business in Texas. *Id*. at ¶ 10. Tim Hortons has no officers, directors, or employees who live or work in Texas or who travel there to conduct company business. *Id*. at ¶ 11.

Although Tim Hortons operates a webpage from which customers anywhere in the world can purchase coffee, tea, hot chocolate, and accessories such as mugs and coffee makers, Tim Hortons asserts this webpage is directed only at customers of Tim Hortons' bricks-and-mortar restaurants in Canada and the Northern portion of the United States. (Wisch Decl. at ¶ 3). Tim Hortons' website is maintained outside of Texas, as are the servers and other equipment needed to operate it. *Id.* at ¶ 4. Tim Hortons does not use the website to solicit business from anyone in Texas. *Id.* at ¶ 5. According to Tim Hortons, there is no targeted advertising or special mention of Texas anywhere on the website; there are no products advertised on the website that are specially adapted for the Texas market; and there are no Texas contact addresses or Texas telephone numbers provided on the website. *Id*. Moreover, since Tim Hortons' website launched in October of 2010, shipments of Tim Hortons merchandise to Texas have amounted to approximately 0.001% of Tim Hortons' revenues. *Id.* at ¶ 6.

Plaintiff's sole infringement allegation in this case is based upon the Nutrition Calculator webpage of the Tim Hortons website. (Docket Entry #78 at ¶ 86). According to Tim Hortons, the Nutrition Calculator provides information about the food items available in Tim Hortons' restaurants in Canada and the Northern portion of the United States, but it cannot be used to obtain information about items purchased through the Tim Hortons website. (Wisch Decl. at ¶¶ 7-8). Tim Hortons

6

knows of no instances in which the Nutrition Calculator has been accessed from Texas. *Id*. at ¶ 8.

**3.     Rubio's**

Plaintiff's sole infringement allegation against Rubio's is based on a "Nutrition Calculator" webpage on Rubio's website. (Docket Entry # 78, ¶ 94). The "Nutrition Calculator" lists nutritional information for the menu items sold in Rubio's brick-and-mortar restaurants. (Henigman Decl. at ¶ 10). If a user enters quantities on the webpage, the "Nutrition Calculator" will calculate the nutritional information for those menu items by multiplying the number of items by their displayed caloric and nutritional content. *Id.* Users do not pay or register for the "Nutrition Calculator," and the menu items listed can only be purchased at Rubio's brick-and-mortar restaurants. *Id.*.

Rubio's, headquartered in Carlsbad, California, is a restaurant company specializing in fish tacos and fresh Mexican food. *Id*. at ¶ 2. Rubio's transacts business primarily in California, where it operates 155 restaurants. *Id.* at ¶ 3. In addition to its California restaurants, Rubio's also has restaurants in eight restaurants in Nevada, six in Utah, 27 in Arizona, and four in Colorado (collectively, "brick-and-mortar restaurants"). *Id*. Rubio's has never owned or operated restaurants in Texas. *Id.* The closest Rubio's restaurants to Texas are located near Denver, Colorado, and Tucson, Arizona. *Id.*

Rubio's is a Delaware corporation and does not have an agent for service of process in Texas. *Id*. at ¶ 2.  Rubio's has never registered to do business in the State of Texas. *Id.* at ¶ 4. It does not own any property or maintain any offices or facilities in Texas, and does not have a mailing address in Texas. *Id.* Rubio's has never advertised in Texas, and none of its officers, directors, or employees lives or works in Texas. *Id.*

7

**B.      Discussion**

Plaintiff's assertion of jurisdiction over Defendants in Texas is based primarily on Defendants' websites, websites which are accessible anywhere in the world. The mere existence of a website, however, does not establish jurisdiction. *See Mink v. AAA Dev. L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999). Instead, jurisdiction based on a website depends on "the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* at 336 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

According to Defendants, their websites are designed for customers of their brick-and-mortar restaurants, and they do not provide the level of commercial interactivity with Texas residents necessary to trigger the Court's jurisdiction. For example, although Rubio's website allows customers to order online using the "Catering" option, meals ordered through the website must be picked up or delivered from a Rubio's restaurant. (Henigman Decl. at ¶ 6). Because the closest restaurant to Texas is in the Denver, Colorado area, Rubio's asserts no one has ordered an online meal from a Texas address. *Id.*

Defendants further assert actual purchases of gift cards by Texas residents using their websites are virtually nonexistent. Taco Time has reported 2 internet sales of gift cards or merchandise to Texas residents. Since 2004, Rubio's has sold less than $5,000 worth of gift cards through its website to Texas users, which amounts to less than one tenth of one percent of its total gift card sales over that time frame. Similarly, Tim Hortons asserts Internet sales of merchandise to Texas residents have been 0.001% of Tim Hortons' revenues.

The Federal Circuit has suggested that specific jurisdiction may be appropriate when a defendant maintains an interactive website and performs additional acts to purposefully avail itself

8

of the forum state, such as advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents in the forum state. *Autobytel Inc. v. Insweb Corp.*, 2009 WL 901482, at *2 (E.D. Tex. 2009) (citing *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005)). These cases indicate that "something additional beyond a website is required to establish personal jurisdiction." *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (Fed. Cir. 2000)(holding that personal jurisdiction could not be based upon "mere accessibility" to an Internet site in the forum where defendants had no additional contacts).

The Court is inclined at this point to agree with Defendants that they are not purposefully availing themselves of the forum state. However, Plaintiff asserts Defendants have not provided web analytics, metrics data, or other evidence in support of their claims. In its responses to Defendants' motions, Plaintiff requests leave to take expedited discovery from Defendants regarding the extent of use of their websites by users in Texas and other contacts Defendants have had with this state. (Docket Entry # 199 at pg. 3)(Docket Entry # 243 at pg. 2)(Docket Entry #409 at pg. 3).

Plaintiff does not explain why it has not sought this discovery during the over eight months Defendants' motions have been pending. The Court normally would not consider lack of discovery in response to a dispositive motion when no formal discovery requests have ever been served on the moving party. However, considering the Court has not made known its expectations on this issue, the Court will allow Plaintiff additional time in which to seek limited jurisdictional discovery from Defendants.[1] Within ten days from the date of entry of this Order, Plaintiff may serve ten

---

[1] The Court puts the parties on notice that it expects a party who complains of lack of discovery in response to a motion to have been diligent in seeking the discovery it complains it is lacking. *See TQP Development, LLC v. CHS, Inc.*, Cause No. 2:11cv397 (Docket Entry # 220 at

9

interrogatories on each of the following Defendants (Taco Time, Tim Hortons, and Rubio), seeking information regarding, among other things, the extent of use of their websites by users in Texas and other contacts Defendants may have had with the State of Texas. Based on the foregoing, it is

**RECOMMENDED** that Accord, Inc. d/b/a Taco Time Northwest's Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry #127);Defendants Tim Hortons Inc.'s and Tim Hortons USA Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry #210); and Defendant Rubio's Restaurants, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry #381) be **DENIED WITHOUT PREJUDICE**. After Defendants produce the requested discovery, Defendants may refile their motions to dismiss.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir.1988).

**SIGNED this 25th day of September, 2012.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

---

pgs. 2-3).

10