IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Blue Spike, LLC, | § |
|     *Plaintiff,* | § Civil Action No. 6:12-cv-00499 |
| v. | § |
| Texas Instruments, Inc., et al., | § JURY TRIAL DEMANDED |
|     *Defendants.* | § |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ENSEQUENCE'S MOTION TO DISMISS**

INTRODUCTION

Plaintiff Blue Spike, LLC opposes Defendant Ensequence, Inc.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue. (Dkt 558). Ensequence's own website—and other online sources—disprove Ensequence's claim that it has no meaningful contacts with Texas.[1] Its website shows the ubiquity of Ensequence's products, services, and customers.[2] It also operates as a vehicle for soliciting business, not merely "passive" advertisements as Ensequence claims.[3] Perhaps most important, Ensequence's website reveals how Ensequence necessarily uses its contacts with Texas to accomplish the alleged infringement. These facts constitute a prima facie case for personal jurisdiction. At a minimum, the facts require the Court to permit jurisdictional discovery before ruling on Ensequence's motion.

---

[1] BlueSpike alleges that products advertised on Ensequence's website, ensequence.com, infringe Blue Spike's patents. *See* Compl. ¶1.
[2] *See* Ex. 1 (showing over 40 of Ensequence's well known clients).
[3] Nearly every page of Ensequence's website actively solicits customers, asking them to "Contact us today to get started with interactive television."

1

**FACTUAL BACKGROUND**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to the digital-fingerprinting industry. Indeed, most of today's digital-fingerprinting providers—including Ensequence—built their companies by infringing Blue Spike's patents. A basic understanding of digital fingerprinting helps explain why Ensequence necessarily uses Texas sources to infringe Blue Spike's patents.

Broadly speaking, digital fingerprinting is a means to identify digital material—including video, audio, and text—based on unique digital markers within the material itself. At its most basic, digital fingerprinting involves at least three steps: (1) cataloging a digital work's identifying characteristics, (2) putting an abstract of the digital work into a database, and (3) scanning television stations and other media sources to determine whether the digital content from those sources has the same "digital fingerprint" as the abstracted digital work in the database. By finding matches between what is found out in the world and what is found in a database of digital content, the digital-fingerprinting process is able to identify a transmitted work.

For example, a television programmer could create a new series and then take a recorded episode to a digital fingerprinter. The fingerprinter would identify particular characteristics about the recording (such as the exact placement of certain 1's and 0's in the digital stream), create an abstract of the recording, and

add the abstract to a database. A television viewer could then simultaneously operate a smartphone, or other media device, equipped with the fingerprinter's software. The software would identify the television show by comparing an abstract of that show with the digital markers in its database—to see whether there were any matches. Anytime there is a match with a television episode, the television programmer could then provide relevant content—such as trivia games or advertisements—to the media device.

In this case, Ensequence's infringing products use digital fingerprinting to detect audio signatures in TV shows, enabling programmers, service providers, and advertisers to create interactive experiences on mobile devices. Ensequence accomplishes this feat by creating a database of its clients' television programming, clients whose services presumably reach Texas.

## LEGAL STANDARD

In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id*; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

# ARGUMENT[4]

## 1. Ensequence's Own Websites Indicates Continuous and Systematic Contacts with Texas.

Ensequence claims that it has no presence in Texas, does not receive any revenue from Texas, and has never directed marketing or advertisements to Texas. *See* Mot. at 3. In short, Ensequence claims to be an utter stranger to Texas in every way. These claims are not credible given the nature of Ensequence's business and customers.

### A. Ensequence's Business Necessarily Involves Significant Contact with Texas.

Ensequence's website establishes the following facts about its iTV Manager product:

- The program allows programmers to "broadly deploy interactive television experiences" across "unlimited interactive programs and sponsorships." (Ex. 2);[5]

- The program "gives you the reach and branding power of television." (Ex. 3);

These "broadly deployed" activities involve significant amounts of content created, published, stored, streamed, or transmitted in Texas. *See, e.g.,* Ex. 4 (showing television products available in Tyler, TX by Comcast, a client of Ensequence). In short, Ensequence's claim to being "broadly deploy[ed]" with the "reach . . . of television" means that Ensequence directs a significant percentage of

---

[4] Blue Spike agrees with Ensequence that the analyses of venue and personal jurisdiction merge in this case. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."). This opposition only discusses personal jurisdiction, as Ensequence does not dispute that venue is proper if the exercise of personal jurisdiction is proper.
[5] The attached exhibits are screen shots from Ensequence's websites.

its business toward Texas. This makes it not merely foreseeable, but unavoidable, that Ensequence's infringing products harm Blue Spike in Texas—and that Ensequence has used content from Texas to infringe Blue Spike's patents. Thus, the Court has personal jurisdiction over Ensequence. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("[I]n patent litigation the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee."); *see also Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008) ("[T]he foreseeable effects of a tort" are "part of the analysis of the defendant's relevant contacts with the forum.").

### B. Ensequence Necessarily Uses Sources From Texas to Accomplish its Alleged Infringement.

As explained above, Ensequence infringes Blue Spike's patents through its digital-fingerprinting technology. This technology works only if Ensequence constantly and comprehensively trawls the relevant corners of television broadcasting to find out whether any data transmissions have fingerprints that match those in Ensequence's database. Given the prevalence and success of Ensequence's technology across North America, it defies logic that Ensequence somehow operates without casting its net across Texas, which is the nation's second-most-populous state and home to many of America's largest media markets. *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (holding that personal jurisdiction in patent-infringement cases turns on the

nature and extent of the commercialization of the accused products or services by defendant in the forum).

### C. Ensequence's Customers—and by Extension, Ensequence Itself—Operate Pervasively Throughout Texas.

Ensequence's websites establishes the following:

- Major television programmers employ Ensequence's products, including NBCUniversal, CNN, MSNBC, ESPN, HBO, MTV, and the Disney Channel (Ex. 1);

- Major service providers employ Ensequence's products, including Comcast, Cablevision, Time Warner Cable, Verizon, Dish Network, and DirecTV (Ex. 1);

- Fortune 500 companies utilize Ensequence's products, including Ford, Nike, Hewlett Packard, Chase, Visa, and Walgreens. (Ex. 1)

This who's-who customer base ensures that Ensequence's infringing products are used continuously and systematically throughout Texas. After all, America's most successful television programmers, service providers, and Fortune 500 companies are indisputably responsible for massive amounts of online content produced, published, stored, streamed, or transmitted in Texas. *See, e.g.,* Ex. 5 (showing Ensequence's client, MTV, casting in Texas)*;* Ex. 6 (showing Texas job openings for client ESPN); Ex. 7 (listing a Texas office for client Hewlett-Packard). Further, anyone who has ever turned on a TV knows that the major broadcast networks operate through local affiliates, including many in Texas. *See, e.g.*, KYTX CBS, DFW CBS, KVUE ABC, WFAA-TV ABC, KXAN-TV NBC, and KPRC-TV NBC. In order to fulfill its promise of broadly deployed interactive television

experiences, Ensequence necessarily monitors TV content created and transmitted in Texas by these affiliates, too.

Collectively, Ensequence's own representations about its business and its customers constitute a prima facie case supporting personal jurisdiction.

**2.  Ensequence Actively Solicits Business In Texas.**

Ensequence claims that its websites are merely "passive" advertisements. Mot. at 4. This is false. Ensequence's website directly solicits sales. Nearly every page of its website prompts visitors to "Contact us today to get started with interactive television." *See, e.g.,* Ex. 8. Clicking on the "Contact us" portion of that message takes a would-be customer to a contact page. *See* Ex 9. Such uses provide a basis for personal jurisdiction. *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (holding that Texas courts have personal jurisdiction over a company whose "potential customers" in Texas can "fill out an online form and apply for [the company's] services through its website").

Besides its own website, Ensequence has also issued press releases to advertise that its iTV Manager product "enable[s] programmers and advertisers" (i.e. its customer base) to take advantage of even more functionality. *See* Ex. 10; Ex. 11. Another press release states that "[n]early two-thirds of Americans surf the Internet and watch TV at the same time," and notes that content providers using Ensequence's software can "more deeply engage" with this audience. *See* Ex. 12; Ex. 13. These press releases indicate that Ensequence has a very broad customer base, including, presumably, customers in Texas.

7

**3.     At a Minimum, the Court Should Permit Jurisdictional Discovery Before Ruling on Ensequence's Motion to Dismiss.**

All these facts establish a prima facie showing of personal jurisdiction. But if the Court is not yet persuaded, it should permit Blue Spike to conduct jurisdictional discovery. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Blue Spike has met that threshold and should thus be allowed to conduct jurisdictional discovery if the Court is inclined to rule against Blue Spike on Ensequence's motion.

## CONCLUSION

For these reasons, Blue Spike respectfully asks the Court to deny Ensequence's Motion to Dismiss. Alternatively, Blue Spike asks the Court to postpone ruling on Ensequence's Motion until Blue Spike has had the opportunity to conduct jurisdictional discovery.

Respectfully submitted,

  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## C<small>ERTIFICATE OF</small> S<small>ERVICE</small>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 13, 2013 (re-filed from November 6, 2012 in closed Case No. 6:12-cv-00568 per Court's consolidated order, Dkt 530).

        /s/ Randall T. Garteiser