UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § § § § § § § § § | |
| *Plaintiff,* | | Case No. 6:12-cv-499-MHS |
| v. | | Lead Case |
| Texas Instruments, Inc. et al., | | Jury Trial Demanded |
| *Defendants.* | | |

**PLAINTIFF BLUE SPIKE'S SURREPLY OPPOSING SOUNDMOUSE LTD.'S MOTION TO DISMISS AND MOTION TO TRANSFER [DKT. 648]**

Plaintiff Blue Spike, LLC has made a prima facie showing of personal jurisdiction: (1) Soundmouse's reference database of protected music includes music from Texas; (2) Soundmouse targets and monitors Texas broadcasts, and (3) Soundmouse's website invites Texas users to fill out an online form to obtain services, including the accused products. Each of these activities would be enough, without more, to support jurisdiction—and each of those contacts is related to the accused products. As for transfer, the public- and private-interest factors weigh against transferring the case to another district. Last, because Soundmouse's reply (Dkt. 791) exceeds the 10-page limit, all of the pages and arguments made beyond the 10-page limit should be disregarded pursuant to Local Rule CV-7(l).

**I.    Soundmouse's Purposeful Contacts with Texas Support Exercising Personal Jurisdiction.**

Blue Spike has provided sufficient evidence to establish personal jurisdiction. A basic understanding of the patented technology—as compared with Soundmouse's

1

accused products—helps show why. The patents-in-suit teach several forms of digital content recognition. For example, a company using infringing audio recognition technology follows at least three essential steps: (1) it uses a database of protected musical works; (2) it then monitors public broadcasts referencing what is being played "out in the world" against what is found in its database of protected works; and (3) it reports music usage to organizations to ensure that artists are compensated. Soundmouse follows this basic protocol—and it necessarily targets Texas in providing its products to the market. Its database contains musical work created and produced by Texas musicians. Soundmouse monitors broadcast coming into and out of Texas. Soundmouse purposefully directs its services to Texas. And Soundmouse maintains an interactive website where customers and potential customers—including those in Texas—can login and access Soundmouse's services or fill out a form to request services.

First, Soundmouse's database of protected works contains music created in Texas. Soundmouse reports music usage "on behalf of" Broadcast Music, Inc. (BMI), ASCAP, and SESAC—U.S. performing rights organizations. *See* Opp'n [Dkt. 759], Ex. 3. Musicians register their musical work with these organizations, which then rely on Soundmouse's services to detect the usage of that protected work in broadcasts. Those three organizations represent Texas musicians and have significant presences in Texas. *See* Opp'n [Dkt. 759], Ex. 6 (showing a number of BMI, ASCAP, and SESAC employees in Texas and a small portion of the many musicians in Texas whose work is protected by BMI, ASCAP, and SESAC and by

extension Soundmouse). In fact, Governor Rick Perry directs Texas musicians to use these organizations to protect their work. *See* Opp'n [Dkt. 759], Ex. 5 (listing BMI, ASCAP, and SESAC as organizations that help musicians).[1] By representing these organizations and reporting "on behalf of" them, Soundmouse is collecting music from Texas sources for its database or protected work.

Second, Soundmouse's accused products also serve broadcasters by monitoring their programs to detect and report music usage—and this involves purposeful contacts with Texas. *See* Opp'n [Dkt. 759], Ex. 1 (Soundmouse executive explaining Soundmouse's relationship to broadcasters and performing rights organizations). Soundmouse admits to sending technicians and equipment to Texas to conduct a systems test of its offending technology on behalf of a broadcaster. *See* Mot. [Dkt. 648] at 8; Reply [Dkt. 791] at 8. This "single act by a defendant can be enough to confer personal jurisdiction" because it "gives rise to the claim being asserted."[2] Yet this act is not Soundmouse's only purposeful Texas contact involving broadcasters. Soundmouse monitors the broadcast of ABC, Discovery Communications, FOX News, FOX Sports, Disney ABC, ESPN Television, NBC Universal, and Sony Pictures Television. *See* Opp'n [Dkt. 759], Ex. 4. All eight of these US-based companies broadcast programming into and out of Texas. *See* Opp'n [Dkt. 759], Exs. 7-8 (showing some of the programs that Soundmouse's clients broadcast into Tyler, Texas); Opp'n [Dkt. 759] at 6 (showing a number of the Tyler-

---

[1] While Exhibit 2 to Docket Entry 759—an article from May 2012—states that ASCAP is "testing" Soundmouse's dirty audio recognition technology, Soundmouse's website (last accessed May 2013) lists ASCAP as an actual client.
[2] *See Phoenix Licensing, LLC v. Alliance Data Sys. Corp.*, Case No. 2:11-cv-286, Dkt. 390 at 5-6 (E.D. Tex. March 28, 2013) (attached as Ex. 1).

based news organizations owned and operated by these clients). Soundmouse purposefully uses its accused products to target broadcasts and music coming into and out of Texas, supporting the exercise of personal jurisdiction. *See TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 850 (Tex. App.—Fort Worth 2006, no pet.) (Texas court had personal jurisdiction over foreign company because it purposefully directed "data-gathering activity" toward Texas).[3] Such contacts are purposeful, not merely "random" and "fortuitous." *Contra* Reply [Dkt. 791] at 5.

Third, Soundmouse's website provides another independent basis for exercising jurisdiction. The website directs users—including Texas users—to fill in an online form to create a login and request Soundmouse's services, including music usage reports. This supports personal jurisdiction. *Compare* Opp'n [Dkt. 759], Ex. 9 *with AdvanceMe, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669, 673 (E.D. Tex. 2006) (holding that personal jurisdiction exists over company whose "potential customers" in Texas can "fill out an online form and apply for [the company's] services through its website"). Soundmouse tries to downplay the interactivity of its website by referring to Blue Spike's exhibit as the "contact us" page. *See* Reply [Dkt. 791] at 6. But Soundmouse's description of its own website is misleading. Soundmouse has no "contact us" page on its website; instead, it has a "New User Registration" page that invites customers to fill in their name, company, street address, and US state and to

---

[3] Attempting to distinguish cases cited by Blue Spike, Soundmouse misreads *Trintec Industries*, which states that "the place where 'the infringing activity directly impacts on the interests of the patentee' which includes 'the place of the infringing sales'." *See* Reply [Dkt. 791] at 5. The operative phrase "which includes" makes the phrase "the place of infringing sales" descriptive, not limiting. The place of the infringing sales is one place—but not the only place—where infringing activity has a direct impact on the patentee's interests.

4

request particular services—and, once this simple "application" is completed, Soundmouse allows registered users to use Soundmouse's accused services. *See* Opp'n [Dkt. 759], Ex. 9. Such a website is considered "interactive," supporting jurisdiction. *Oasis Research, LLC v. Adrive, LLC*, 2011 U.S. Dist. LEXIS 80466, at *14 (E.D. Tex. 2011).

Each of these kinds of purposeful contacts—targeting Texas content in creating a reference database, monitoring Texas content for artists and broadcasters, and targeting Texas users with an interactive website—is a sufficient ground for exercising personal jurisdiction. And, here, Soundmouse has failed to address any of the fundamental-fairness considerations outlined in *Stroman Realty, Inc. v. Wercinski* (*See* Ex. 1 at 4-5), providing yet another reason to deny the motion.

Finally, even if Blue Spike's jurisdictional evidence were somehow wanting, it would be improper to dismiss the case without granting jurisdictional discovery. Soundmouse questions how jurisdictional discovery could "assist Plaintiff to meet its burden." *See* Reply [Dkt. 791] at 8. Jurisdictional discovery would reveal many facts relevant to personal jurisdiction, including (1) the names of clients who operate in Texas, (2) the names of Texas musicians whose work is stored on Soundmouse's databases, (3) direct contact Soundmouse has had with Texas broadcasters and musicians including through its website, (4) the names of Texas broadcasters who have registered on Soundmouse's website, and (5) identification of specific broadcasts that Soundmouse monitors coming into and out of Texas. Only a minimal showing is needed to obtain jurisdictional discovery. *See* Opp'n [Dkt. 759]

5

at 8-9. Blue Spike's evidence provides a prima facie case for personal jurisdiction, which is even more than is required to get jurisdictional discovery. *Compare* evidence cited above and Opp'n [Dkt. 759] at 5-7 *with Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234-35 (Fed. Cir. 2010) (holding that the district court abused its discretion by denying jurisdictional discovery where defendant's website showed that several of defendant's customers operated in forum). Here, the Court should deny the motion to dismiss outright. In the alternative, it should grant jurisdictional discovery.

## II. The Paramount Interest of Judicial Efficiency, Moskowitz's Health Condition and Other Interest Factors Weigh Heavily Against Transfer.

As an initial matter, the Court should strike all arguments appearing after page 10 of Soundmouse's reply, which exceeds the page limitations of Local Rule CV-7(a)(1). But even considering all of Soundmouse's arguments, the public- and private-interest factors still weigh against transfer. Soundmouse has not carried its burden to show that the Southern District of New York is clearly more convenient.

First, the paramount federal interest of judicial efficiency weighs against transfer. The Court has already recognized that Blue Spike's consolidated cases share common issues of law and fact. *See* Opp'n [Dkt. 759] at 10. Transferring this case to the Southern District of New York will exacerbate the problems inherent in multi-forum litigation: waste, duplicative efforts, inconvenience, and the likelihood of conflicting factual and legal rulings. While other districts may be competent to apply federal patent law, this Court will be much more familiar with the legal and

factual issues involving Blue Spike's technology, since the Court is adjudicating over 80 other suits involving the same four patents-in-suit. Soundmouse mistakenly contends that "the only commonality in this case is the patents at issue" and states that "[t]his case concerns 80 different accused products." *See* Reply [Dkt. 791] at 9. But Soundmouse misses that its accused products are similar in many ways to the accused audio recognition products of other defendants.[4] And, here, there are also overlapping defendants. For example, BMI—one of the three U.S. performing rights organizations that Soundmouse represents—is a named defendant. *See* Case No. 6:12-cv-586, Dkt. 1. The federal interest in judicial efficiency is sufficient by itself to deny transfer. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) (holding that district court may properly deny §1404(a) transfer based on judicial economy even "when all of the convenience factors clearly favor transfer"); *see also Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

Second, as Soundmouse admits, Moskowitz's health condition is a factor in the venue analysis. *See* Reply [Dkt. 791] at 10. Indeed, as already explained, his health concerns are a serious factor. *See* Dkt. 759 at 11-12. Moskowitz is the inventor of the four patents-in-suit, the CEO of Blue Spike LLC, an expert in signals analysis, and the only named witness in this case. *See id.* at 12. He suffers

---

[4] *See, e.g.*, Case No. 6:12-cv-537, Dkt. 1 at ¶27 (Soundhound, Inc.); Case No. 6:12-cv-576, Dkt. 1 at ¶27 (Audible Magic Corp.); Case No. 6:12-cv-682, Dkt. 1 at ¶27 (BMAT Licensing S.L.); Case No. 6:12-cv-533, Dkt. 1 at ¶27 (Tunsat); *see also* Opp'n [Dkt. 759] Ex. 2.

from a health condition that makes it difficult to travel. *See id*. His presence at all stages of litigation is essential to proper resolution of this matter. Any solution advocating telephonic participation in depositions and hearings (*see* Reply [Dkt. 791] at 10) would only serve to isolate Moskowitz from the proceedings—and such accommodations would be equally available to Soundmouse's witnesses. Moskowitz's health concerns are a stand-alone reason to deny transfer.

Third, transfer is not proper because Soundmouse has failed to articulate any special burdens that would weigh more heavily on Soundmouse than on Blue Spike. "Transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848. Here, Blue Spike has explained the burdens that a transfer would create for it. Travel would pose a burden on Moskowitz personally as a result of his health issues and care. And Blue Spike is a small Tyler-based company with no connections to the Southern District of New York. Blue Spike has no clients and no employees in New York and has not sold any of its products to-date into New York. *See* Opp'n [Dkt. 759] at 15. Blue Spike is engaged in litigation in Tyler with 80 other defendants, many of whom are seeking transfer to distant forums. *See* Opp'n [Dkt. 759] at 9. While Soundmouse's burdens certainly count in the venue analysis, they do not outweigh the serious burdens Blue Spike and its witnesses would face if forced to litigate in the Southern District of New York. Indeed, Soundmouse already has a track record of sending

8

technicians and equipment to Texas, purchasing software in Texas, and working with clients who operate and broadcast in Texas. *See* Reply [Dkt. 791] at 8.

Fourth, Blue Spike has specifically identified its key witness—its CEO and inventor Scott Moskowitz—located in Tyler, Texas. *See* Opp'n [Dkt. 759], Moskowitz Decl. ¶6. In contrast, Soundmouse has still failed to identify a single witness. *See* Reply [Dkt. 791] at 11-12. This is a critical shortcoming, as its generic claim that its witnesses are in the United Kingdom and New York carries no weight. *See Adaptix, Inc. v. HTC Corp.*, 2013 U.S. Dist. LEXIS 44265 at *19-20 (E.D. Tex. 2012) (stating that when defendants generally refer to potential witnesses in various offices and locations without "specifically identify[ing] a single witness," the Court will "discount the location of these potential . . . witnesses" in the transfer analysis). Thus, the location of potential witnesses weighs against transfer.

Fifth, the local-interests factors weigh against transfer. The allegations here are that Soundmouse infringed Blue Spike's patents, causing harm to Tyler-based Blue Spike and its Texas-based owner and employees. In such cases, "[t]he residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business." *Advanced Processor Technologies LLC v. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, at 16 (E.D. Tex. Mar. 26, 2013). Soundmouse argues that "Tyler, Texas has no relationship to the issues of this case" because Blue Spike has "clearly moved to Tyler in order to manufacture venue." Reply [Dkt. 764] at 3. This allegation ignores sworn testimony that Blue Spike has been based here for more than a year, that its CEO and chief inventor are

domiciled here, and that all of its sources of proof are located here. *See* Opp'n [Dkt. 759], Moskowitz Decl. ¶¶1-6. Such connections are not considered "manufactured" when analyzing venue. *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010). Blue Spike's Texas operations and the Eastern District's interests weigh against transfer.

Finally, Soundmouse's motion is premature, as the parties have not yet exchanged Rule 26 Disclosures. *See* Opp'n [Dkt. 759] at 12-13. Soundmouse ignores this argument. Because initial disclosures provide essential evidence for the transfer analysis, it would be inappropriate to order transfer before initial disclosures change hands.

## Conclusion and Prayer

For these reasons, plus those contained in the Opposition (Dkt. 759), Blue Spike again asks the Court to deny Soundmouse's motion to dismiss and its alternative transfer motion.

Respectfully submitted,

  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 N. College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

       I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 18, 2013. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                               /s/ Randall T. Garteiser
                                               Randall T. Garteiser