UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| Plaintiff, | § | CASE NO. 6:12-cv-499 MHS |
| | § | |
| v. | § | LEAD CASE |
| | § | |
| Texas Instruments, Inc., et al., | § | Jury Trial Demanded |
| | § | |
| Defendants. | § | |

**PLAINTIFF BLUE SPIKE'S SURREPLY OPPOSING AGNITIO
CORPORATION'S MOTION TO DISMISS [DKT. 679]**

Blue Spike submits this surreply in support of its Opposition to Defendant Agnitio Corp.'s Motion to Dismiss [Dkt. 779]. Blue Spike has made a prima facie showing of personal jurisdiction: (1) Agnitio's products are used in and directed at Texas; and (2) Agnitio's website invites Texas users to fill out an online form to request one of Agnitio's accused products. Each of these activities would be enough, without more, to support jurisdiction—and each of those contacts is related to Blue Spike's claims giving rise to this action for patent infringement.[1]

---

[1] Agnitio's motion and reply accuse Blue Spike of a "general lack of diligence" for using the term "digital-fingerprinting" to describe Agnitio's voice-recognition software. "Digital-fingerprinting" is a metaphor used by industry technicians to describe the process of identifying the unique digital characteristics of an audio or visual event similar to identifying the unique features of a fingerprint. The industry standard term is not a contrivance of counsel or a misstatement of Agnitio's products or services, but simply a way to describe the technology in question. *See* www.HowStuffWorks.com/digital-fingerprinting.htm (explaining the metaphor and describing how the process is used in the music industry to identify song usage—such use of the term is not confused with actual fingerprinting).

I.    **Agnitio Directs its Products at Texas, and Agnitio's Products are Used Here, Supporting Personal Jurisdiction.**

Blue Spike has provided ample evidence to establish personal jurisdiction. As stated in Blue Spike's Opposition, Agnitio directs its accused products to Texas, and those products are actually used here. *See* Opp'n [Dkt. 779] at 3. In reply, Agnitio states that one customer, BBVA, is restricted from using Agnitio's products outside of Spain. *See* Reply [Dkt. 793] at 8. That settles nothing. BBVA is not Agnitio's only customer, and such limitations are not imposed on all of its customers. For example, the federal government purchases Agnitio's accused products and uses them across the country, including in Texas. Those sales are not random or unrelated to Blue Spike's claims but directly give rise to Blue Spike's claims. Agnitio sells the accused products to the federal government with the full knowledge and intent that the government will use those products in Texas, supporting the exercise of specific jurisdiction.

First, multiple examples show that Agnitio has sold and sells its accused products to the federal government—with knowledge the products will be used in Texas. Agnitio sold $126,938 in software and training to the Drug Enforcement Administration ("DEA"). *See* Supp'l Garteiser Decl., Ex. 19. Additionally, the Federal Bureau of Investigation ("FBI") stated on May 17, 2013 that it intends to enter into a contract for Agnitio's BATVOX software.

*See* Supp'l Garteiser Decl., Ex. 20.[2] Both the DEA and FBI have extensive operations throughout the 50 states, including in Texas. *See* Supp'l Garteiser Decl., Ex. 21 (describing DEA's "High Intensity Drug Trafficking Areas" ("HIDTA") in Texas and the other states); Supp'l Garteiser Decl., Ex. 22 (showing a map with three HIDTA Headquarters in Texas, and eleven "Intel Initiative" locations that coordinate efforts among law enforcement); Supp'l Garteiser Decl., Ex. 23 (listing four FBI field offices in Texas). Not only does the DEA operate throughout Texas, it coordinates efforts and intelligence work with state and local governments all across the Texas border and maintains some of its HIDTA headquarters in Dallas, Houston, and El Paso. *See* Supp'l Garteiser Decl., Exs. 21-22. Agnitio sells its accused products to these federal law-enforcement agencies knowing the products will necessarily be used throughout the 50 states, in collaboration with State and local governments, including Texas. The use, sale and distribution of Agnitio's products here supports specific jurisdiction since that distribution and usage give rise to the claims being asserted against Agnitio.

Second, Agnitio not only *sells* its accused products to the federal government but also directly *markets* those products to the federal government. As quoted in Blue Spike's opposition, Agnitio works with its customers to protect individuals "in the fight against identify fraud, counterterrorism and criminal activity." Opp'n [Dkt. 779] at 3 (quoting Ex. 11).

---

[2] As stated in Blue Spike's Opp'n [Dkt. 779], development of Agnitio's mobile app was in coordination with and funded in part by the federal government for counterterrorism purposes. *See* Opp'n [Dkt. 779] at 5, n.1.

Agnitio specifically tailors products to defense, intelligence, and law-enforcement agencies, claiming to be a "worldwide market leader[] in voice biometrics for the government sector." *See* Supp'l Garteiser Decl., Ex. 24. Agnitio opened an office in the U.S. and appointed the former Secretary of the Army to its board of directors in order to tap the U.S. government market. *See* Opp'n [Dkt. 779], Ex. 14. By actively targeting the U.S. government and selling products to federal law enforcement, Agnitio is necessarily directing its products to the 50 states, in particular to Texas given the length of Texas's border and the drug trade coming in from Mexico. Texas is a key market for national and government security given the size of that border. Such purposeful direction and sale of its products to the federal government supports personal jurisdiction. *See Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, No. 2:05-CV-185, 2005 WL 3299718, at *4 (E.D. Tex. Dec. 5, 2005) (denying defendant's motion to dismiss for lack of personal jurisdiction, even though its allegedly infringing products were in the forum as "the result of a unilateral decision by companies wholly unrelated to" the defendant, because "it is reasonably inferable that [defendant] knew and expected its [accused products] would be" marketed and sold here); *see also Nidec Corp. v. LG Innotek Co., Ltd.*, No. CIV.A. 6:07-CV-108, 2008 WL 7048882, at *6-7 (E.D. Tex. Dec. 11, 2008), *report and recommendation adopted*, No. CIV.A. 6:07-CV-108, 2009 WL 3673755 (E.D. Tex. Nov. 6, 2009) (reasonable inferences from the evidence can serve as basis for prima facie showing of personal

jurisdiction); *Philip Morris USA Inc. v. Lee*, 494 F. Supp. 2d 544, 555 (W.D. Tex. 2007) (circumstantial evidence can serve as basis for showing of personal jurisdiction). Agnitio knowingly directs its accused products to the federal government and sells its accused products to the federal government; those products necessarily are used in Texas giving rise to Blue Spike's cause of action against Agnitio.

While Agnitio "geographically restrict[s]" BBVA's use of Agnitio's "pilot" software (*see* Reply [Dkt. 793], Suppl. Castano Decl. ¶¶13-14), Agnitio does not limit the federal government's use of its products to certain states. Because Agnitio is selling its products to *federal* law enforcement, those products will be used in Texas and other states across the country. While Agnitio claims that "[its] products are not used in Texas," this blanket denial finds no support in either of Mr. Castano's declarations. *See* Mot. [Dkt. 679] Castano Decl.; Reply [Dkt. 793], Suppl. Castano Decl.

And Blue Spike's prima facie evidence about how Agnitio's partners use and operate Agnitio's products in Texas is based on Agnitio's own statements: "We work *closely* with our *partners*," and "KIVOX 4.0 *brings our partners* the full potential of real voice biometrics technology." *See* Opp'n [Dkt. 779], Exs. 1 and 7 (*emphasis added*). Blue Spike did not "speculate" about Agnitio's partners—including Microsoft, HP, and Televent. *Contra* Reply [Dkt. 793] at 2. Blue Spike simply relied on Agnitio's own statements about its business partners and practices. By promoting itself as a global leader in national

5

security and law enforcement and by actually selling accused products to the federal government, Agnitio knows its accused products will be used in Texas and chooses to direct its accused products to the state.

## II. Agnitio's Website Provides an Independent Basis for Establishing Personal Jurisdiction.

Agnitio's website is interactive and supports the exercise of personal jurisdiction. From its "Kivox App—download page," Agnitio directs users to fill in a form to request Agnitio's app. *See* Opp. [Dkt. 779], Ex. 2. The form directs the user to fill in his or her name, company, telephone number, and email address; allows the user to request software; and requires users to accept an Agnitio "Privacy Policy." *See* Opp. [Dkt. 779], Ex. 18. The website and forms are fully available to Texas consumers. Similar websites with client-request forms have been found to be sufficiently interactive and directed at Texas residents to support personal jurisdiction. *See Oasis Research, LLC v. Adrive, LLC*, 2011 U.S. Dist. LEXIS 80466, at *14 (E.D. Tex. 2011); *see also AdvanceMe, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669, 673 (E.D. Tex. 2006).

While Agnitio's website does not have a "calculation feature" similar to the defendant in *AdvanceMe*, Agnitio's website does not merely allow Agnitio to post information about its products on the website. *Cf. id.* Instead, Agnitio's website directs the user to "try out the app today!" by submitting information through the website, entering into a privacy policy agreement, and downloading the Kivox App installation manual. *See* Opp'n [Dkt. 779], Exs. 1-2. While users cannot download the app through the *website*, Agnitio directs

the exchange of information over the Internet for the purpose of marketing and conducting sales of its product. In that regard, Agnitio's website is distinguishable from other more passive sites that did not support personal jurisdiction. *See, e.g., Mink v. AAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (finding defendant's website was passive when users did not pass information through defendant's website). Agnitio's interactive website supports personal jurisdiction here.

### III.   It Would Be Improper to Dismiss the Case Without First Allowing Jurisdictional Discovery.

Blue Spike has provided sufficient evidence for the Court to exercise personal jurisdiction. But even if Blue Spike's jurisdictional evidence were somehow wanting, the proper outcome would be to allow jurisdictional discovery rather than to dismiss the case. Blue Spike needs to make only a minimal showing to be entitled to jurisdictional discovery.[3] Blue Spike's evidence here more than satisfies that standard. Agnitio questions what facts and evidence jurisdictional discovery will provide. Agnitio particularly argues that no amount of jurisdictional discovery will demonstrate that Blue Spike's claims "arise out of" Agnitio's provision of products since "Agnitio only provides the KIVOX App to a limited number of customers." *See* Reply [Dkt. 793] at 9. But Agnitio ignores that the U.S. government is the largest customer in the

---

[3] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts… the plaintiff's right to conduct jurisdictional discovery should be sustained."); *Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, No. A-11-CA-1057 LY, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012) (explaining that the showing required to warrant jurisdictional discovery "is less than a prima facie showing").

world; that it has extensive Texas operations; and that it is using the accused products in Texas, which gives rise to Blue Spike's claims in this case. Agnitio also fails to address the sale, distribution, and commercialization of its *other* accused products (BATVOX, ASIS, KIVOX, and BS[3] lines), and Agnitio fails to comment on its other customers that operate in Texas and are as yet unknown to Blue Spike.

Jurisdictional discovery will provide more evidence of Agnitio's Texas contacts, including (1) lists of Agnitio's clients, particularly those operating in Texas that use offending technology; (2) sales and distribution information of Agnitio's other products in Texas and to clients operating in Texas; and (3) Agnitio's contact with potential customers in Texas, including through its website. Agnitio's affidavits do not defeat Blue Spike's alternative request for such discovery. After all, jurisdictional discovery "may uncover additional information bearing on the jurisdictional inquiry which, perhaps, neither [Defendant's affiant] nor Defendant thought to include." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674 (S.D. Cal. 2001). Because Blue Spike has exceeded the standard necessary to grant jurisdictional discovery, the Court should deny the motion to dismiss.

## Conclusion and Prayer

For these reasons, plus those contained in the opposition [Dkt. 779], Blue Spike again asks the Court to deny Agnitio's motion to dismiss for lack of personal jurisdiction.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
 Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

CERTIFICATE OF SERVICE

  I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 20, 2013. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

  /s/ Randall T. Garteiser   
Randall T. Garteiser
