IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **Blue Spike, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | Cause No.   6:12-cv-499 |
| | § | |
| vs. | § | Jury Trial Demanded |
| | § | |
| **Texas Instruments Incorporated,** | § | |
| | § | |
| **Defendant.** | § | |

### DEFENDANT TEXAS INSTRUMENTS INCORPORATED'S REPLY TO PLAINTIFF BLUE SPIKE'S OPPOSITION

Defendant Texas Instruments Incorporated ("TI") does not believe that it necessary to respond to each argument made by Plaintiff Blue Spike ("Blue Spike") in its Opposition to TI's Motion to Sever (Docket No. 813) ("Opposition").  Nor does TI feel that a lengthy rebuttal is necessary.  The reason is that facts speak louder than words.

When TI filed its Motion to Sever ("Motion"), the Motion received docket entry number 777.  That means that for the consolidated case, before TI filed its Motion, there were already 776 previous docket entries.  This is for a case that is yet to have a status conference.  Blue Spike's reliance on judicial economy is simply not supported by the facts.

Blue Spike is correct that its case against TI may not be the simplest when compared to each of the other defendants, but that is not TI's contention.  TI contends that Blue Spike's case against TI is simpler, much simpler, than its case against the defendants in the aggregate.  And, that the most efficient way to resolve this matter (against TI and the other

defendants) is for Blue Spike to proceed in an expedited fashion against one of the defendants. TI is volunteering to be that defendant.

What TI is proposing is simple. A single plaintiff (Blue Spike), asserting patent claims against a single defendant (TI), with an expedited schedule resulting in a trial within one year. To further simplify things TI is willing to limit claim construction to three dispositive terms.

## I. Blue Spike Relies on Cases That Have Been Overruled

Prior to addressing the merits of TI's position, TI desires to bring to the Court's attention that Blue Spike is relying on case law that is no longer valid. In the section entitled "Legal Standard," Blue Spike asserts that "[a] common question of law or fact necessarily exists when suits share the same patents-in-suit, even if the defendants and their accused products are unrelated." (Opp. Br. at 2, Docket No. 813). In support of this allegation, Blue Spike cites *MyMail, Ltd. V. Am. Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004). The problem is that this case law was expressly overruled by 35 U.S.C. §299 when the Leahy-Smith America Invents Act or (AIA) was signed into law on September 16, 2011. Under the AIA, "[s]ection 299 [was created to] legislatively abrogate[] the construction of Rule 20(a) adopted in *MyMail, Ltd. v. America Online, Inc.,* 223 F.R.D. 455 (E.D. Tex. 2004)" and several other cases. H.R. Rep. No. 112-98, at 55, fn. 61 (2011). The new joinder rule states that:

> With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271(e)(2) has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, or counterclaim defendants only if
> (1) only if any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using,

        importing into the United States, offering for sale, or selling of the same accused product or process; and
        (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. §299 (2013). It was this provision that forced Blue Spike to file dozens of cases serially instead of one massive case, and, now, Blue Spike seeks to use this defunct case law to support its position that consolidation should be maintained.

Moreover, even assuming that this case law was not overruled, Blue Spike's reliance on this case law is misplaced. These cases stood for the proposition that defendants could be consolidated through trial, and consolidation here only pertains to pretrial matters. (*See* Docket Nos. 16 and 530). Under Blue Spike's scenario, the consolidated case will involve years of discovery followed by years of trial against each individual defendant.

## II. TI's Deconsolidation is in Everyone's Best Interest

As mentioned above, Blue Spike relies heavily on judicial economy to support consolidation. Part of this argument includes theorizing about perceived prejudices. However, there simply is no prejudice to Blue Spike, TI, or any other defendant, and all parties would be best served by having at least some certainty provided through litigating the patents-in-suit to judgment.

### A. Blue Spike is Not Prejudiced

Blue Spike alleged that it would be prejudiced by deconsolidating TI, but cannot substantiate that position. Specifically, Blue Spike alleges that "permitting TI to engage in its own expedited claim construction would prejudice Blue Spike." (Br. at 6, Docket No. 813). Yet, this does not lead to any prejudice. With TI, Blue Spike will have the opportunity to litigate its case against TI. With the remainder of the defendants, Blue Spike is not precluded from litigating against other defendants; it will have that opportunity. Any

prejudice to Blue Spike (to the extent any exists) is self-induced. There was no guarantee that the Court would consolidate the dozens of cases filed by Blue Spike for pretrial matters because the Court has wide discretion for consolidating pretrial matters, like claim construction. *See In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012). Blue Spike simply took a risk and chose to bring dozens of serially-filed cases, which will be individually and serially tried regardless of whether the cases are consolidated for pretrial matters.

### B. No One Else Is Prejudiced Either

Repeatedly, Blue Spike refers to potentially harming other defendants. (*See* Br. at 6 and 8-9, Docket No. 813). Principally, these arguments rely on the defendants' alleged inability to participate in claim construction or that the court would be required to repeat a claim construction later. *Id.* These arguments, though, beg the following question: how is this any different than cases that are serially litigated to judgment? Courts are oftentimes faced with the challenge of having to construe claims that have already been litigated and construed. TI's proposal in no way prejudices the other defendants because this is precisely the same situation that these defendants would otherwise face if the patents-in-suit had already been litigated. TI's proposal is nothing out of the ordinary, contrary to Blue Spike's hyperbole.

TI's proposal sets forth an accelerated schedule to resolve the case against TI, where such a solution would likely foster resolution in many of the other pending cases. In other words, a judgment in TI's case may provide some degree of guidance in the other cases. As part of the schedule, TI is suggesting that this case can be limited to three case dispositive terms, which can be addressed on brief and without a *Markman* hearing. This is similar to

that in *Parallel Networks, LLC v Abercrombie & Fitch Co.*, 2013 U.S. App. LEXIS 1077 (Fed. Cir. Jan. 16, 2013).

In the nine months or so since Blue Spike filed this case, TI has had the opportunity to evaluate the claims of the patents-in-suit, the accused product, and the prior art. In light of this analysis, TI's proposal is hardly premature for either TI or Blue Spike. TI suspects that Blue Spike is in an even better position than TI to understand the merits of its case. Blue Spike is required to perform a pre-suit investigation, and, before investing the time, effort, and money into litigation, TI assumes that Blue Spike vetted the patents-in-suit for validity purposes.

TI's position is well-founded, and this structure would be advantageous to resolution of TI's case and the remainder of the cases. It is only Blue Spike's objections that stand in the way. Why a plaintiff would object to having his day in court makes no sense.

## III. <u>Conclusion</u>

For at least the reasons set forth above and in its Motion (Docket No. 777), TI respectfully requests that the Court reconsider its October 9, 2012, Consolidation Order, that the Court sever the action against TI, and that the Court order a status conference in the severed case.

          Respectfully submitted,

By: *Amanda A. Abraham*
Carl R. Roth
cr@rothfirm.com
Brendan C. Roth
br@rothfirm.com
Amanda A. Abraham
aa@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 N. Wellington, Suite 200
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

**ATTORNEYS FOR DEFENDANT
TEXAS INSTRUMENTS INCORPORATED**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 24th day of June, 2013. Any other counsel of record will be served by facsimile transmission and/or first class mail.

*Amanda A. Abraham*
AMANDA A. ABRAHAM