UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § § § | Case No. 6:12-cv-499-MHS |
| v. | § § | Lead Case |
| Texas Instruments, Inc. et al., | § § | Jury Trial Demanded |
| *Defendants*. | § § | |

**BLUE SPIKE'S OPPOSITION TO THE AUDIBLE MAGIC DEFENDANTS' MOTION
TO TRANSFER VENUE [DKT. 771]**

**Introduction**

Plaintiff Blue Spike, LLC is a Texas company with its headquarters and principal place of business in Tyler, Texas. *See* Compl. ¶2. Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread digital abstracting, including certain "digital fingerprinting" technology, which is a means of identifying digital signals, or content, via its unique markers. The companies that employ digital abstracting today—including the Audible Magic Defendants—have profited by infringing Blue Spike's patents. Blue Spike has filed multiple lawsuits in this Court against the infringers on these same four patents. The Court consolidated the suits for pretrial purposes based on "common questions of law or fact," finding that consolidation "would promote efficient case management." *See* Ex. 1 (October 9, 2012 consolidation order) at 15; *see also* Ex. 2 (March 25, 2013 consolidation order) at 17.

The Audible Magic Defendants try to impugn Blue Spike's honor by calling Blue Spike a nonpracticing entity, but they never say what they mean by the term. *See* Dkt. 771 at 1. But by any measure, Blue Spike is emphatically a practicing entity. An affiliate of the

1

long-existent Blue Spike Inc., Plaintiff Blue Spike, LLC is wholly owned by the inventor of the patents-in-suit, and it actively markets and services its products. Moskowitz Decl. ¶¶1-6. Blue Spike is open for business.

Blue Spike—whose operations are all in the Eastern District of Texas—opposes the transfer motion for four reasons: (1) the Audible Magic Defendants have not shown that this case could have been brought in the proposed transferee district in the first place; (2) paramount considerations of judicial efficiency weigh heavily against transfer, since the case against the Audible Magic Defendants is deeply intertwined with others in this District; (3) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—defeats transfer; and (4) the Audible Magic Defendants have not shown that other public and private interests make the Northern District of California "clearly more convenient" than this District.[1]

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. §1404(a). "[T]he party seeking transfer . . . has the burden of

---

[1] Blue Spike uses the term "Audible Magic Defendants" as a synonym for the term "Moving Defendants" as used in the transfer motion. *See* Dkt. 771 at 2 n.1. Two related points are important to note:

First, the list of "Moving Defendants" should not include WiOffer LLC. In Case No. 6:12-cv-576, Blue Spike sued Audible Magic and 23 companies that use Audible Magic technology. In a separate case (No. 6:12-cv-570), Blue Spike sued WiOffer. Blue Spike's complaint in the Audible Magic case says nothing about WiOffer, and Blue Spike's complaint in the WiOffer case says nothing about Audible Magic. For some reason, however, WiOffer has attempted to join in Audible Magic's transfer motion (*see* Dkt. 771 at 2 n.1), claiming that "WiOffer is accused in the complaint in the above-referenced action based on Audible Magic's technology." Dkt. 771-19 at 2 (WiOffer decl.). This is false, as an even cursory reading of the WiOffer complaint reveals. *See generally* Case No. 6:12-cv-570, Dkt. 1. It is improper for WiOffer to try to stack the deck in favor of transfer by misrepresenting Blue Spike's allegations.

Second, one of the companies named as a codefendant in the Audible Magic suit, Tunecore, Inc., has not joined in Audible Magic's transfer motion. *See* Case No. 6:12-cv-576, Dkt 1. at ¶19 (naming Tunecore as a codefendant in the Audible Magic suit); Dkt. 771 at 2 n.1 (omitting Tunecore from list of "Moving Defendants"). The significance of this fact is discussed below, but for now the Court should note that the synonymous terms "Audible Magic Defendants" (as used by Blue Spike) and "Moving Defendants" (as used by Audible Magic) do not include Tunecore.

clearly establishing that the action properly could have been brought in the first instance in the transferee district." 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.12[3] (3d ed. 2012). The transfer movant must also show good cause for transfer and prove that the proposed transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 315 (5th Cir. 2008) (en banc). In evaluating whether a movant has made this showing, courts weigh several private- and public-interest factors. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Id.* Although not a distinct factor, the plaintiff's choice of venue should always be accorded deference. *Id.* at 1320. The public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in the outcome of the case; (3) the familiarity of the forum with applicable law; and (4) the avoidance of unnecessary problems of conflicts of laws. *Id.*

**Argument**

I.    **The Audible Magic Defendants Do Not Make the Required Threshold Showing That the Suits Could Have Been Brought in the Northern District of California.**

The Audible Magic Defendants have not carried their "burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district." MOORE'S FEDERAL PRACTICE § 111.12[3]. "Transfer of a suit involving multiple defendants is ordinarily proper only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court."

*Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009). This consideration precludes transfer for at least three stand-alone reasons.

First, not all of Audible Magic's customer codefendants have joined in this transfer motion. Codefendant Tunecore—a Delaware corporation with its principal place of business in New York (*see* Case No. 6:12-cv-576, Dkt. 1 at ¶19)—did not join the transfer motion. *See* Dkt. 771 at 2 n.1. The Moving Defendants do not acknowledge Tunecore's failure to join in the motion, nor have they shown that Blue Spike could have sued Tunecore in the Northern District of California. By itself, this fact precludes transfer. *See Intravisual, Inc. v. Fujitsu Ltd.*, 2:10-CV-90-TJW, 2011 WL 4378080, at *2 (E.D. Tex. Sept. 20, 2011) (denying transfer because "[n]ot all defendants in this case have joined in the motion to transfer venue, and the Moving Defendants in this case have failed to prove that the other defendants would be subject to personal jurisdiction in the Northern District of California").[2]

Second, 16 of Audible Magic's 23 customer codefendants—more than two-thirds of the movants—are not incorporated in California and do not have their principal places of business in the Northern District of California. *See* Case No. 6:12-cv-576, Dkt. 1 at ¶¶4-26. Those defendants would not necessarily be subject to personal jurisdiction in the Northern District of California. The movants attempt to address this issue with two brief assertions about their connections to the Northern District of California (Dkt. 771 at 8),

---

[2] On June 24, 2013, Tunecore filed a "Conditional Non-Opposition" to the Audible Magic Defendants' Transfer Motion. *See* Dkt. 834. This changes nothing, because (1) "post-filing consent to jurisdiction in the transferee forum is irrelevant to the transfer analysis" (*Adaptix, Inc. v. LG Elecs., Inc.*, Case No. 6:12-cv-17, Dkt. 76 at 4) and (2) there still has been no showing that Blue Spike could have sued Tunecore in the Northern District of California in the first instance. Severing Tunecore's case from the other Audible Magic cases would not fix the problem, because "the defendant over whom jurisdiction is retained [Tunecore] is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Balthasar*, 654 F.Supp.2d at 549. As Tunecore itself notes, severance would not promote judicial efficiency. Dkt. 834 at 2-3.

arguing that personal jurisdiction is proper because they contracted with Audible Magic and accessed its Northern California–based servers, databases, and software. *Contra Ray v. Experian*, No. 3:07-CV-1114-R, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) (holding that accessing servers located in a particular forum does not necessarily create specific personal jurisdiction there). The movants cite no authority for their claim that "[t]hese specific contacts with Audible Magic . . . establish specific jurisdiction." Dkt. 771 at 8. Without a more substantial showing of connections to the Northern District of California, the movants have failed to clearly establish that they would have been amenable to process there. *See Gemalto S.A. v. HTC Corp.*, No. 6:10-cv-561 LED-JDL, 2011 WL 5838212, at *2-3 (E.D. Tex. Nov. 18, 2011) (denying transfer motion filed by multiple defendants because they failed to make a sufficient showing that all of them would have been subject to personal jurisdiction in the Northern District of California).

Third, the Audible Magic Defendants have not carried their "burden of clearly establishing that the action properly could have been brought in the first instance"[3] under the venue statute in the Northern District of California as to the non-Californian movants. *See* 28 U.S.C. §1400(b) (patent case may only be brought in a "judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business"). None of the non-California-based movants "resides" in the Northern District of California, nor has any of them shown that it has "committed acts of infringement and has a regular and established place of business" there. *Id.* The Audible Magic Defendants have not stated *any* valid ground for establishing venue in California as to the non-Californian movants, thus failing to carry their burden and providing yet another ground for denying their transfer motion.

---

[3] MOORE'S FEDERAL PRACTICE § 111.12[3].

II.     **The "Paramount" Federal Interest in Judicial Efficiency—Without More—
        Defeats Transfer, Especially Since the Case Against the Movants Involves the
        Very Technology at Issue in Other Consolidated Cases.**

"Courts have consistently held that judicial economy plays a paramount role in

trying to maintain an orderly, effective administration of justice, and having one trial court

decide all of these claims clearly furthers that objective." *In re Google*, 412 F. App'x 295,

296 (Fed. Cir. 2011). Judicial economy is so important that it provides a sufficient basis to

deny transfer even "when all of the convenience factors clearly favor transfer." *In re

Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).[4] Multiple lawsuits involving

Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same

four patents. The Court has consolidated the cases for pretrial purposes because they

"involve a common question of law or fact" and because consolidation "would promote

efficient case management." *See* Ex. 1 at 15; Ex. 2 at 17. The defendants' motion second-

guesses that determination.

And, here, transfer is especially inappropriate because the consolidated cases share

more than just the patents-in-suit in common: the factual and legal issues and the

defendants themselves are deeply intertwined with each other. For example, Blue Spike

has sued other consolidated codefendants with accused products that are very similar

functionality to Audible Magic's—and some of those defendants seek transfer to yet other

courts. *See, e.g.*, Case No. 6:12-cv-682, Dkt. 1 at ¶27 (BMAT Licensing S.L.); Case No.

6:12-cv-598, Dkt. 1 at ¶27 (Soundmouse); Case No. 6:12-cv-568, Dkt. 1 at ¶30 (Zeitera);

---

[4] *See also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009)
("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would
impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden
on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of
inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-
467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that a defendant's "convenience alone fails
to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases
in different fora").

Case No. 6:12-cv-557, Dkt. 1 at ¶28 (Civolution); Case No. 6:12-cv-539, Dkt. 1 at ¶27 (Vobile); Case No. 6:12-cv-537, Dkt. 1 at ¶27 (Soundhound, Inc.); Case No. 6:12-cv-533, Dkt. 1 at ¶27 (Tunesat). Blue Spike has also sued Google in this District based partly on Google's use of Audible Magic technology. *See* Dkt. 766 at 4-5.[5] If the Court were to grant the Audible Magic Defendants' transfer motion but retain other related or similar lawsuits, it would guarantee that multiple courts would have to weigh identical issues, duplicate each other's efforts, and issue potentially conflicting rulings.

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 3). Denying transfer, the Court reasoned that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id*. Other recent cases—all on point—likewise counsel against transfer. *See, e.g.*, *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 4) (holding that because plaintiff had filed multiple suits in this District on the same four patents, concerns of judicial economy weighed heavily against transfer because "another court would have to spend significant

---

[5] While Google has also moved for transfer to the Northern District of California (*see* Dkt. 678), its motion should not affect the Court's analysis of the Audible Magic Defendants' motion for several reasons: (1) transfer analysis depends on the state of affairs at the time suit was filed, not on post-filing developments (*see In re EMC Corp.*, 501 Fed. App'x 973, 975 (Fed. Cir. Jan. 29, 2013); *Adaptix*, Case No. 6:12-cv-17, Dkt. 76 at 4 ("[P]ost-filing consent to jurisdiction in the transferee forum is irrelevant to the transfer analysis.")); (2) the Court has not yet ruled on Google's transfer motion, which should be denied; and (3) other common issues of law and fact—including claim construction of the four patents-in-suit and the existence of other overlapping technologies and other related defendants—make it appropriate to keep the consolidated cases in this District.

resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 5) (denying motion to transfer patent suit that had already been consolidated with another suit because "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Blue Spike has never argued that transfer would result in inefficiency "simply because Blue Spike chose to file 80 different case in this District." Dkt. 771 at 15. Rather, transfer would create inefficiency because this case shares not only the patents-in-suit with other consolidated cases but also "related defendants [and] overlapping products [and] services." *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 6). Granting a transfer would undermine the "paramount" consideration of judicial efficiency, forcing multiple federal courts to expend duplicative efforts considering common questions of law and fact and creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 F. App'x at 296. This is a stand-alone ground for denying transfer.

### III.  The Serious Health Problems of Blue Spike's CEO and Inventor—an Essential Witness—Also Defeat Transfer.

"The health concerns of a party or witness can be an important factor in the determination of whether a § 1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases). Indeed, a party's health concerns may, without more, control the result of a transfer motion. *See, e.g.*, *BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (granting defendants' motion to transfer venue from New

York to Florida based on defendant's health problems even though (1) the contract contained a New York choice-of-venue clause and (2) many other factors weighed against transfer). Here, transfer would cause serious hardship for Blue Spike's CEO and inventor Scott Moskowitz, who suffers from a medical condition that make traveling very painful. Moskowitz Decl. ¶11. The Audible Magic Defendants suggest that Moskowitz travels frequently to Northern California. Dkt. 771 at 6, 11. But that is simply untrue. The last time Moskowitz went was there was in 2003. Moskowitz Decl. ¶12. Moskowitz domiciles in this District. *Id.* ¶3. Florida is the only other place where he regularly spends time—and he does so to because of litigation concerning the condominium he owns there and to receive medical treatment unavailable elsewhere. *Id.*

IV.    **The Other Interest Factors Weigh Against Transfer, and the Audible Magic Defendants Have Not Met Their Burden of Showing That the Northern District of California Is Clearly More Convenient.**

   A.    **The Private-Interest Factors Weigh Against Transfer—and Certainly Do Not Show the District of California To Be Clearly More Convenient.**

      1.    *Blue Spike's Interests—Including the Location of and Burdens on Blue Spike and its Witnesses—Count in the Transfer Analysis.*

The Audible Magic Defendants forget that this case is not only about them; there is a plaintiff in this case whose interests and burdens are relevant, too. Blue Spike is a practicing entity located in Tyler, Texas; it actively markets and sells its products in Texas; it plans to call witnesses from Texas; Blue Spike's inventor and CEO lives in Tyler; it was incorporated in Texas over a year ago and is the result of 25 years of research, development and deployment of products and services; it has its headquarters and principal place of business in this District and rents server space in Tyler; Blue Spike's employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl. ¶¶1-6;

Compl. ¶2. By any definition, Blue Spike is a practicing entity.[6] While the Audible Magic Defendants suggest that those connections should be disregarded (Dkt. 771 at 9, 12-13), the Court's precedents dictate otherwise. *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created solely to manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010) (holding that plaintiff's presence was not "recent" or "ephemeral" where plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

Litigating this action in the Northern District of California would be inconvenient and burdensome for Blue Spike and Moskowitz. A transfer would make litigation more expensive for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious personal hardship for Moskowitz due to his medical condition. *See* Moskowitz Decl. ¶¶7-11; Part III, *supra*. Those burdens are critically important in the transfer analysis because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

Also important, the Audible Magic Defendants do not contend that they lack contacts with this forum or that litigating here rather than in California would cause undue

---

[6] Movant accuses Blue Spike of being a "nonpracticing entity" without providing any kind of definition. See Mot. [Dkt. 771] at 1. By any definition, Blue Spike is an active Tyler-based business working to market its products and services.

hardship or expense. *See generally* Dkt. 771. Blue Spike, on the other hand, has no connection to the Northern District of California apart from the fact that its lead attorneys have offices in both Northern California and in Tyler, Texas. *See* Moskowitz Decl. ¶7. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize. The relative burdens on the parties and their witnesses weigh in favor of denying transfer.

       2.      ***The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.***

The Audible Magic Defendants claim that the majority of the relevant evidence is located in the Northern District of California. Dkt. 771 at 7-8. This claim is doubtful given that 16 of Audible Magic's 23 customer codefendants do not have their principal places of business there. *See* Case No. 6:12-cv-576, Dkt. 1 at ¶¶4-26.[7] Even if the majority of technical evidence comes from Audible Magic itself (*see* Dkt. 771 at 4), its codefendants will also have evidence about their infringing activities—such as sales and marketing information—that will be equally important in resolving the suit. At this stage, there is no reasonable basis to conclude that the "majority" of the evidence is located in the Northern District of California.

Even if a significant portion of the relevant evidence were located in Northern California, this tells only part of the story. The location of Blue Spike's evidence matters— and all of Blue Spike's evidence is located here. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached

---

[7] Further, the codefendants that *do* have their principal places of business in Northern California do not identify what relevant evidence they keep there, preventing the Court from giving weight to their arguments. *See Stragent*, Ex. 2 at 9 (finding that the evidence presented "is insufficient to determine that the relevant sources of proof weigh in favor of transfer" because although movant BMW asserted that "the bulk of relevant documents [were] in Michigan, California, and Germany," it did not provide "specific identification of the types of documents" or "evidence of where the documents are physically located").

as Ex. 7) (holding that the fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer); Moskowitz Decl. ¶¶5-7; Compl. ¶2. Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; rather, its entire operation has been here for over a year. *See* Moskowitz Decl. ¶4. The presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5 (presence of plaintiff's evidence in this District weighed against transfer given that plaintiff's connection to this District was not "recent" or "ephemeral," as plaintiff had opened its office here four months before filing suit, and two of its principals lived here); *see also Geotag*, Ex. 6 at 5-6 (even if "the bulk of the relevant evidence" is located in the proposed transferee district, this factor weighs only "slightly" in favor of transfer when the plaintiff "maintains strong ties to the Eastern District of Texas").

### 3. The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.

Although the Audible Magic Defendants argue that the California court will have compulsory process power over more nonparty witnesses (Dkt. 771 at 10-11), their argument fails because the movants have not specifically identified nonparty witnesses.[8] The party seeking transfer bears the burden of identifying unwilling third-party witnesses that would benefit from transfer, and the weight attributed to such witnesses "is undercut by [a movant's] failure to identify particular witnesses or documents that would require compulsory process."[9]

---

[8] The movants do refer to Northern Californian "third party prior art inventors" whom Blue Spike's patents disclose (Dkt. 771 at 10), but they overlook the fact that Blue Spike's patents also disclose plenty of prior-art inventors who live elsewhere. The movants do not identify where these other inventors live or analyze which District would be more convenient for them.

[9] *Geotag* (Ex. 6) at 6-7; *see also Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses, it must at least identify the witnesses).

>    **4.     The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.**

Likewise, the Audible Magic Defendants' argument about the costs and convenience of willing witnesses is relatively weak, because the movants fail to identify any willing witnesses apart from four Audible Magic engineers. *See* Dkt. 771 at 9 n.9, 11-12. They do not specifically identify the Audible Magic "managers" and "executives" (*id*. at 11) who will allegedly be important witnesses, nor do they specifically identify (1) "engineers familiar with prior art instrumentalities" (*id*. at 12) who might be willing witnesses or (2) a single witness from any of the 23 customer codefendants.[10] This oversight is critical, as the Court must disregard all alleged willing witnesses who are not specifically identified. *See Geotag*, Ex. 6 at 8; *Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 9 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 8) (holding that the cost of attendance for willing witnesses does not favor transfer when "Defendants fail to specifically identify employees with relevant knowledge of the accused devices."). Further, the Audible Magic Defendants completely ignore that *all* of Blue Spike's known witnesses reside in this District. *See* Moskowitz Decl. ¶6. And the "cost" of attendance for these witnesses is not limited to money. As explained above, traveling is excruciatingly painful for Blue Spike's CEO, Scott Moskowitz, who is an essential witness. Traveling to the Northern District of California to protect his legal rights would exact a toll far greater than just the cost of airline tickets.

>    **B.     The Public-Interest Factors Do Not Show the Northern District of California to Be Clearly More Convenient.**

None of the public-interest factors supports transfer, much less shows that the Northern District of California is "clearly more convenient." *In re Volkswagen,* 545 F. 3d

---

[10] Only seven of the 23 movants are located in the Northern District of California. *See id.* at 4 n.4.

at 315. In contending that the Northern District of California has a greater local interest (Dkt. 678 at 12-13), the movants ignore half the equation. Here, the Audible Magic Defendants infringed Blue Spike's patents and harmed Tyler-based Blue Spike and its Texas-based owner and employees. In such a case, "[t]he residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business." *See Atmel*, Ex. 7 at 16. It makes sense that this District's interests would equal or exceed the interests of other districts in adjudicating the claims of a Tyler-based company, especially one that has made Blue Spike's positive contributions to civic, charitable, and business activities in Tyler. *See* Moskowitz Decl. ¶5.

Next, while it is true that this District and the Northern District of California are both competent to apply federal patent law, this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology, since the Court is adjudicating multiple other suits involving the same patents-in-suit, including other suits involving identical infringing technology (as explained in Part I above).

Last, the Audible Magic Defendants misapply the relative-court-congestion factor, citing *general* civil-docket statistics rather than data for *patent* cases. *See* Dkt. 771 at 13. As the Court has noted, "reliance on general civil statistics provides the Court with little guidance as to the speed with which *patent* cases reach trial." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:12-cv-398-MHS-JDL, 2013 WL 1363613, at *5 (E.D. Tex. Apr. 2, 2013). In addition to being unhelpful, the Audible Magic Defendants' data and argument on relative congestion do not carry much weight anyway. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (explaining that relative court

14

congestion is "the most speculative" public-interest factor, as "case-disposition statistics may not always tell the whole story").

### Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny the Audible Magic Defendants' transfer motion.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

**Certificate of Service**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on June 24, 2013.

    /s/ Randall Garteiser