IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 6:12-cv-00499 |
| v. | § § | JURY TRIAL DEMANDED |
| Texas Instruments, Inc., et al., | § § | |
| *Defendants.* | § | |

**PLAINTIFF'S SURREPLY TO DEFENDANT ENSEQUENCE'S MOTION TO DISMISS**

Plaintiff Blue Spike, LLC files this surreply to correct Ensequence's characterizations or avoidance of Blue Spike's jurisdictional arguments.

**I.   This Court Has Specific Personal Jurisdiction Over Defendant Ensequence Because It Offers to Sell, Has Sold, or Continues to Sell Infringing Products in Texas.**

Ensequence takes the position that Blue Spike "offers no evidence" that Ensequence has employed ACRS technology by Zeitera or other partners. Reply (Dkt. 23) at 1. Ensequence seems to have ignores the exhibits supporting Blue Spike's opposition, which rebut Ensequence's position. For example, the very first sentence of Blue Spike's Exhibit 12 (Dkt. 22-12) shows Ensequence's core product—iTV Manager—has been "updated to include audio detection capabilities" (*i.e.* ACRS). The same press release announces Ensequence's cooperation with Zeitera and other ACR-based companies. *See* Dkt. 22-12 at 3 ("Ensequence has integrated with several ACR providers, including Zeitera and Civolution, and will work with

1

any ACR provider that its customers select.").[1] Ensequence's software update is "broadly deploy[ed]" as a component of Ensequence's main product, a product used by many who's-who clients operating in Texas, including Comcast. Dkt. 22-1; Dkt. 22-4 ("Deals on Comcast Services in Tyler, TX Internet, Cable, HD, and Phone."); Dkt. 22-4 ("Great Comcast Deals for Tyler."); *see also* Dkt. 22-2. These facts subject Ensequence to jurisdiction here.

Even if Ensequence "has not made, used, sold, or offered to sell in Texas" products that infringe Blue Spike's patents—a position Blue Spike continues to reject—Ensequence has offered to sell such products in Texas in the past. Reply (Dkt. 23) at 1. Past sales entitle Blue Spike to an injunction and support Blue Spike's claims to lost profits. Regardless whether Ensequence has sold, sells, or intends to sell products that infringe Blue Spike's patents, Ensequence remains subject to the Court's jurisdiction.

## II. The Court Has General Personal Jurisdiction Over Ensequence, Because Ensequence Engages in Continuous and Systematic Business Activities Aimed at Texas.

Given the nature of Ensequence's products and services, Ensequence necessarily directs continuous and systematic business activities toward Texas. By virtue of the ACR fingerprinting process incorporated into its software[2], Ensequence "broadly" monitors Texas content, extracts information from it, and compares it to information in a reference database. This fact further supports the exercise of jurisdiction.

---

[1] *See also* http://www.civolution.com/clients-and-partners/partners (showing Ensequence listed among ACR company Civolution's list of partners) (last visited Nov. 25, 2012).
[2] *Id.*

2

Ensequence's motion to dismiss asserts that its clients are not Texas corporations. Dkt. 18 at 3. Its reply repeats the same claim. Reply (Dkt. 23) at 3. This claim is misleading.[3] While Texas might not be the state of incorporation for most Ensequence's clients, many of those clients are registered in Texas and do a substantial amount of their business here. For example, Walgreens, Neutrogena, Geico, Unilver, Hewlett-Packard, JP Morgan Chase Bank d/b/a Chase, the Disney Channel, and Nike are all registered in the state of Texas.[4] Many of Ensequence's clients are subsidiaries of larger corporations that are also registered in Texas, including Viacom (parent of clients Spike TV and Nickelodeon), General Electric (part parent of clients NBCUniversal, MSNBC, and Bravo), DirecTV and Sony Pictures Television (parents of client GSN), CBS (parent of client Showtime), and Time Warner (parent of clients CNN and HBO).[5]

In fact, some of Ensequence's clients are staples in Texas, such as Walgreens and Chase Bank. Walgreens claims 690 stores in Texas.[6] Chase has 686 Texas

---

[3] *See* Texas Secretary of State website, http://www.sos.state.tx.us/corp/foreignfaqs.shtml ("A foreign filing entity . . . must file an application for registration . . . if it 'transacts business' in Texas.") (last viewed Nov. 29, 2012).

[4] Walgreens (State of Texas corporate filing number 6289306); Neutrogena (State of Texas corporate filing number 7810906); Geico (State of Texas corporate filing number 800151430); Unilever (State of Texas corporate filing number 801594375); Hewlett Packard Co. (State of Texas corporate filing number 12093906); JP Morgan Chase Bank (State of Texas corporate filing number 7132); Disney Channel (State of Texas corporate filing number 5727606).

[5] Viacom (State of Texas corporate filing number 800987368); General Electric (State of Texas corporate filing number 453606); DirecTV (State of Texas corporate filing number 801582493); Sony Pictures Television (State of Texas corporate filing number 7804506); CBS (State of Texas corporate filing number 800983202); Time Warner (State of Texas corporate filing number 800990478).

[6] *See* http://news.walgreens.com/article_display.cfm?article_id=1044 (last viewed Nov. 29th 2012).

branches.[7] This who's-who roster of companies produces, publishes, stores, streams, or transmits massive amounts of online content in Texas. Because Ensequence uses and collects massive amounts of Texas data in its infringement of Blue Spike's patents, Ensequence is subject to personal jurisdiction in Texas. *See TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 850 (Tex. App.—Fort Worth 2006, no pet.) (Texas court had personal jurisdiction over foreign company because it purposefully directed "data-gathering activity" toward Texas); *Flowserve Corp. v. Midwest Pipe Repair, L.L.C.*, No. 3:05-CV-1357-N, 2006 WL 265521, at *3 (N.D. Tex. Feb. 3, 2006) (repeated, deliberate contact with in-state servers went "well beyond a mere fortuity," thereby supporting exercise of jurisdiction); *see also Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1248 (10th Cir. 2000) (cataloging numerous cases where courts held that "use of a computer or network service located in a particular state created sufficient contacts to establish personal jurisdiction").

Ensequence's website also creates personal jurisdiction here. Despite its argument to the contrary, Ensequence's website is not passive. The Court has held that a website that "offers its allegedly infringing services to customers in Texas" is sufficient to warrant jurisdiction. *AdvanceMe, Inc. v. Rapidpay, LLC*, 450 F. Supp. 2d 669, 673. Nearly every page of Ensequence's website prods a user to "Contact us today to get started with interactive television." The "Contact us" portion of that message, when clicked, takes the user to an interactive contact form. This

---

[7] *See* http://www.bank-locations.com/chase_locations/tx.html (last viewed Nov. 29th 2012).

interactive and sales-focused website, by itself, creates sufficient minimum contacts to subject Ensequence to the Court's jurisdiction.

Ensequence's cases are distinguishable.[8] The website in *Mink v. AAAA* provided a static, non-interactive page listing "a printable mail-in order form, AAAA's toll-free telephone number, a mailing address and an electronic mail ('e-mail') address." *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 337 (5th Cir. 1999). Unlike Ensequence's site, "orders [were] not taken through AAAA's website." *Id.* Ensequence tries to equate its website with the website in *Mink*, where the court held that AAAA's website alone did not support jurisdiction. Ensequence alleges that, like its own website, the AAAA website allowed users to email the company. Reply at 4. But Ensequence gets the facts exactly wrong. *See Mink,* 190 F.3d at 337 (explaining that AAAA's website did *not* allow users to email the company). Unlike AAAA's site, which provided no interactivity or pervasive solicitation, Ensequence's website is fully interactive and supports asserting jurisdiction here.

### III. If the Court Rules Blue Spike Has Not Shown a Prima Facie Case Supporting Jurisdiction, Jurisdictional Discovery Is Still Proper.

Even if the Court concluded that a prima facie case of personal jurisdiction is wanting, the proper response would be to allow jurisdictional discovery.[9] "If a

---

[8] Ensequence also cites *Revell v. Lidov* to support its passive website claim, yet *Revell* sidesteps the issue of website interactivity altogether. 317 F.3d 467, 472 (5th Cir. 2002). The claims in *Revell* were based on a theory of defamation and did "not arise out of the solicitation of subscriptions," so the court determined that the subscriptions "need not be considered." *Id.*

[9] In support of its argument, Ensequence also cites cases from the Northern District of Texas that are distinguishable. *Donotos* and *Bell Helicopter* involve deficiently vague claims. *See Donotos v. Vendomation NZ Ltd.*, Div. No. 3:11-CV-0553-K, 2012 WL 3702044 (N.D. Tex. Aug. 27, 2012); *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729

5

plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. Tex. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Plaintiff's complaint and reply delineate with reasonable particularity a prima facie case for personal jurisdiction over Ensequence: they point out Ensequence's interactive website reciting "Ready to get started?" with a hyperlink; an invitation to Texas advertisers to "Contact us to get started today," (Dkt. 22-8); its "broadly deploy[ed]" iTV Manager software; and clients with substantial presence in Texas. Dkt. 22-1. Jurisdictional discovery would further establish how Ensequence's website has generated clients in Texas, how other Texas-based clients are using Ensequence's software, and how Ensequence avails itself of Texas contacts in order to conduct its business.

Additionally, jurisdictional discovery is proper when a "motion to dismiss raises issues of fact." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). Here, in addition to questions of fact already noted, other discrepancies exist. For example, Ensequence's CEO represented that his company's software does not employ ACRS capabilities, a statement that conflicts with Ensequence's partners (*e.g.* Civolution) and press releases that state the opposite. Jurisdictional discovery would facilitate the resolution of material facts like these.

---

F.Supp.2d 789 (N.D. Tex. 2010) *rev'd*, 2012 U.S. App. Lexis 18825 (Fed. Cir. 2012). Here, in contrast, Blue Spike's claims are sufficiently particular. Further, neither case is binding precedent in this district.

Blue Spike's allegations already exceed the prima facie showing necessary to defeat dismissal, but at a minimum the Court should permit jurisdictional discovery before granting Ensequence's motion to dismiss.

Respectfully submitted,

 /s/ Randall T. Garteiser

Randall T. Garteiser
  Texas Bar No. 24038912
  randall.garteiser@sftrialattorneys.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@sftrialattorneys.com
Christopher S. Johns
  Texas Bar No. 24044849
  chris.johns@sftrialattorneys.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax


*Counsel for Blue Spike LLC*

7

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was re-filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel, who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on June 25, 2013 that was originally served on November 29, 2012.

                                                                        /s/ Randall T. Garteiser