UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Blue Spike, LLC, | § |
|     *Plaintiff*, | § Civil Action No. 6:12-cv-00499 |
| v. | § |
| | § JURY TRIAL DEMANDED |
| Texas Instruments, Inc., et al., | § |
|     *Defendants*. | § |

**Plaintiff Blue Spike's Opposition to Defendants L-1 Identity Solutions, Inc. and MorphoTrust USA, Inc.'s Motion to Transfer Venue [Dkt. 588]**

Plaintiff Blue Spike, LLC opposes Defendants L-1 Identity Solutions, Inc. and MorphoTrust USA, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). [Dkt. 588] The motion fails for several independent reasons: (1) considerations of judicial efficiency and economy weigh heavily against transfer, since the Court has consolidated this case with dozens of others based on common questions of law or fact related to the alleged infringement of Blue Spike's patents-in-suit; (2) Defendants do not meet even the threshold requirement for obtaining a transfer, as they have not shown that this suit could have been filed in the District of New Jersey; and (3) Defendants have not shown that public- and private-interest factors clearly weigh in favor of transfer.

**Factual Background**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric

1

identification and security systems. Many of today's biometric identification and security providers—including Defendants—have built their companies by infringing Blue Spike's patents. Blue Spike has filed over fifty lawsuits against patent infringers in this Court, which has consolidated the suits for pretrial purposes because the suits "involve a common question of law or fact." *See* Ex. 1 (consolidation order).

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The threshold inquiry in determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.12[3] (3d ed. 2012) ("[T]he party seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district."). If that threshold inquiry is met, the Court then balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).[1] The party seeking transfer must show good cause

---

[1] Private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

for transfer and also show that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *TS Tech*, 551 F.3d at 1319.

## Argument

Recent opinions from this Court, the Fifth Circuit, and the Federal Circuit show why the Court should deny Defendants' motion to transfer the case to the District of New Jersey.

**1. Interests of Judicial Efficiency and Economy Weigh Strongly Against Transfer.**

Blue Spike has a number of related suits in this district, so transferring this suit to another venue would be inefficient and waste judicial resources. Judicial economy is so important that it represents a sufficient basis to deny transfer even if all other factors in a case support transfer. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) (holding that district court may properly deny §1404(a) transfer based on judicial economy even "when all of the convenience factors clearly favor transfer"); *In re Google*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective

---

attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Nintendo*, 589 F.3d at 1198. Public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

administration of justice, and having one trial court decide all of these claims clearly furthers that objective."); *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

In this case, Blue Spike is the plaintiff in more than 50 lawsuits in this Court concerning the same four patents, and those suits have been consolidated for pretrial purposes. Ex. 1 at 15. Transferring Defendants' case to another venue would impose unjustified burdens on the federal court system, causing gross inefficiencies and wasting scarce judicial resources. *See Net Navigation Sys., LLC v. Alcatel-Lucent USA, Inc.*, No. 4:11-CV-663, at 8-10 (E.D. Tex. Aug. 27, 2012) (attached as Ex. 2) (denying transfer because, like this case, plaintiff had filed multiple suits concerning same four patents in this district and the Court had combined those suits for pretrial purposes, meaning that "another court would be required to conduct duplicative proceedings

4

regarding claim construction, expert discovery, and other issues"); *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 3) (holding that because plaintiff had filed multiple suits in this district concerning the same four patents, concerns of judicial economy weighed heavily against transfer; if the Court transferred the case, "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *see also Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 4) (denying motion to transfer patent suit that had already been consolidated with another suit, as "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Transfer is especially inappropriate here given the Court's findings that all of Blue Spike's cases in this district "involve a common question of law or fact" and that keeping them consolidated "would promote efficient case management." Ex. 1 at 14. Yet Defendants ask the Court to ignore this "paramount" consideration and instead force another court to expend duplicative efforts considering common questions of law and fact, thereby creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 Fed. Appx. at 296. The Court should decline to do so.

### 2. Defendants Have Not Made a Threshold Showing That the Suit Could Have Been Brought in the District of New Jersey.

A party seeking transfer must clearly establish that the action properly could have been brought in the transferee district in the first instance. V*olkswagen I*, 371 F.3d at 203; 17 MOORE'S FEDERAL PRACTICE § 111.12[3]. Defendants have failed to make this showing, as their brief two-paragraph discussion of the matter does not even mention defendant L-1 Identity Solutions; rather, Defendants discuss only MorphoTrust. (Dkt. 12 at 2, 7.) Defendants assert that L-1 Identity Solutions is a Delaware corporation, Dkt. 12 at 4, but this does not support their claim that New Jersey is a proper venue. *Cf.* 28 U.S.C. §1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."). By itself, this failure is a sufficient and proper reason to deny transfer (*Volkswagen I*, 371 F.3d at 203), as Defendants have not carried their burden to show that venue in New Jersey would have been proper for L-1. *See* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848 ("In suits against multiple defendants, transfer is proper only to a district in which all of the defendants would have been amenable to process and in which the venue would be proper for bringing an action against all of them.").

### 3. Defendants Have Not Shown that Public- and Private-Interest Factors Weigh in Favor of Transfer.

Defendants' discussion of the private- and public-interest factors is premature, incomplete, and misleading.

As an initial matter, Defendants cannot possibly know whether "the relative ease of access to sources of proof favors transfer to the District of New Jersey" (Dkt. 12 at 8), since the parties have not even exchanged Rule 26 disclosures yet, making Defendants' transfer motion premature. *See GHJ Holdings, Inc. v. Mag Instrument, Inc.*, No. 5:10-cv-230, Dkt. No. 26 (E.D. Tex. Feb. 5, 2011) (attached as Ex. 5) (holding supplemental briefing regarding disclosures should be submitted before a transfer motion is considered). Until the potential witnesses and sources of proof have been identified, it is not possible to weigh the level of convenience on many of the private-interest factors.[2]

Defendants also seem to ignore that this case is not all about them. There is a plaintiff in this case whose interests and burdens are relevant, too. Blue Spike plans to call witnesses from Texas, its inventor and CEO is domiciled in Tyler, Blue Spike has its headquarters and principal place of business in this district, and Blue Spike's computer servers, and sources of proof are located here. *See* Moskowitz Decl. ¶¶ 1, 2, 3, 4, 5, 6; Dkt. 1 ¶2.

---

[2] Defendants' assertion that the location of its documents weighs in favor of transferring the case to the District of New Jersey is unjustified, as a large amount of the information generated by companies (large and small) is stored digitally, making it as easy to produce and review documents in Tyler, Texas as in New Jersey. *See Sipco, LLC v. Control4 Corp.*, No. 6:10-cv-249-LED-JDL, 2011 WL 529336, at *2 (E.D. Tex. Feb. 8, 2011).

Litigating this action in New Jersey would be inconvenient and burdensome for both Blue Spike and for Scott Moskowitz, the CEO of and inventor at Blue Spike. A transfer would dramatically increase the costs of litigation for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious hardship for Moskowitz personally, as he suffers from medical issues that make it very painful to travel. Moskowitz Decl. ¶¶8, 9, 10. These burdens are critically important in the transfer analysis because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other". WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

Equally important, there are *many* reasons to doubt Defendants' claim that a Texas forum is too inconvenient for them. Defendant MorphoTrust claims it is a "Trusted partner of all 50 states" in providing secure identification services; that it has "approximately 1,200 employees across the country, with annual revenues of approximately $400 million"; and that it operates "a nationwide network of local ID service centers." MorphoTrust Company, http://www.morphotrust.com/pages/9-company (last visited Dec. 28, 2012). Incredibly, MorphoTrust has over 75 "MorphoTrust Enrollment Centers" in Texas, including several located in the Eastern District and one located right here in Tyler. MorphoTrust Enrollment Services, http://www.ibtfingerprint.com/locations/?st=tx (last visited Dec. 28, 2012). Further

8

weakening the case for transfer, Defendants concede that MorphoTrust "has a contract with the Texas Department of Public Safety supporting the production of Texas driver's licenses." (Dkt. 12 at 3.) Given that Defendants have voluntarily established this ongoing business relationship with Texas, it is hard to credit their assertion that litigating in Texas would be unduly burdensome. Defendants' contract with the Texas Department of Public Safety—which involves accused products—also casts doubt on Defendants' contention that "none of the equipment, documents, or electronically stored information relevant to the claims and defenses in this lawsuit is located in the Eastern District of Texas." *Id*.

Defendants also neglected to inform the Court that their new parent company, Safran USA,[3] maintains one of its largest offices in Grand Prairie, Texas. *See* Safran Locations Webpage, http://www.safran-na.com/spip.php?rubrique190&lang=en (last visited Dec. 28, 2012). Defendants' extensive Texas connections prevent them from making the necessary showing that New Jersey would be a "clearly more convenient" venue. *Volkswagen II*, 545 F.3d at 315 (party moving for transfer must show that transferee venue is "clearly more convenient" than transferor venue).

---

[3] An August 1, 2011 news article explains that "French defense company Safran recently completed its $1 billion acquisition of biometric solution provider L-1 Identity Solutions making it the world's market leader in biometrics." *See* Ex. 6 ("L-1 Identity Solutions specializes in developing fingerprint, palm, face, and iris biometric recognition solutions. Its products are currently deployed by the U.S. military, border patrol agents, local law enforcing agencies, and private companies.").

In contrast to Defendants' pervasive Texas contacts, Blue Spike has no such connections to New Jersey. Blue Spike has no offices, no employees, no customers, and no other meaningful contacts in New Jersey. Moskowitz Decl. ¶ 7. And, unlike Defendants, Blue Spike does not enjoy nine-figure revenues. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize. All these facts are relevant in weighing the relative burdens of litigating in this district versus in New Jersey. Further, it is extremely unlikely that the District of New Jersey could exercise personal jurisdiction over Blue Spike on claims made against it, including Defendants' counterclaims.

As for public interests, Defendants contend that the local-interest factor favors transferring the case to New Jersey (Dkt. 12 at 10), again ignoring that there is another side to consider. The allegations in this case are that Defendants has infringed Blue Spike's patents. That infringement has serious impacts on Tyler-based Blue Spike and its Texas-based owners and employees. Also, while it is true that this District and the District of New Jersey are both competent to apply federal patent law, this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology, since the Court is adjudicating over 50 other suits involving the same patents-in-suit.

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny Defendants' motion to transfer venue.

Respectfully submitted,

    /s/ Randall Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  randall.garteiser@sftrialattorneys.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@sftrialattorneys.com
Christopher S. Johns
  Texas Bar No. 24044849
  chris.johns@sftrialattorneys.com
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on June 28, 2013 that was originally served on December 28, 2012.

                                                                            /s/ Randall Garteiser