# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC ) | |
| ) | |
| Plaintiff, ) | Case No. 6:12-CV-00499-MHS |
| ) | |
| vs. ) | |
| ) | |
| TEXAS INSTRUMENTS, INC., et al. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |

## DEFENDANT TECHNICOLOR SA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND INSUFFICIENT SERVICE OF PROCESS (Dkt. # 560)

Blue Spike Inc.'s ("Blue Spike") response brief (ECF No. 858) failed to set forth any evidence: (1) rebutting the sworn statements in Adrien Cadieux's Declaration (ECF No. 560-1) confirming that Technicolor SA does not do any business in Texas or derive any revenue from Texas; or (2) showing that Technicolor SA is involved in any allegedly infringing activities, including those identified in the exhibits to, and the You Tube video referenced in, Blue Spike's opposition brief.  As set forth in the declarations of Micah Littleton and Eric Diehl,[1] attached hereto as Exhibits 1 and 2 and hereafter referred to as the "Littleton Decl." and "Diehl Decl.", respectively, Technicolor SA does not currently have, and never has had, any involvement in any of the activities Blue Spike alleges amount to patent infringement of the Blue Spike patents.

Moreover, Blue Spike's informal request for jurisdictional discovery (*see* ECF No. 858 at pp. 7-8) should be denied.  No amount of discovery will change the fact that Technicolor SA is not, and never has been, involved in the actions Blue Spike alleges amount to patent infringement.

Finally, Blue Spike has not provided any controlling authority to support its contention that it properly served Technicolor SA under the Hague Convention.

## I. This Court Does not Have Personal Jurisdiction Over Technicolor SA

### A. Blue Spike has Failed to Set Forth any Evidence Warranting the Assertion of Specific Jurisdiction Against Technicolor SA

The only theory of jurisdiction on which Blue Spike relies is specific jurisdiction. *See generally* ECF No. 858.  Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."  *Panda Brandywine Corp. v. Potomac Elec.*

---

[1] In its opening brief, Technicolor submitted the declaration of Adrien Cadieux, who is the General Secretary of Technicolor SA.  Mr. Littleton and Diehl are employees of the entities involved in the subject matter discussed in Exhibits 5-7 to Blue Spike's opposition brief, not employees of Technicolor SA.

*Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (internal quotations and citations omitted). In a patent case, the specific jurisdiction inquiry turns on the "nature and extent of the commercialization of the accused products or services by the defendant in the forum." *Avocent Huntsville Corp. v. Aten Int'l. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed Cir. 2008). While even controverted allegations from Blue Spike's complaint are accepted in its favor, "such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda*, 253 F.3d at 868 (citations omitted). Moreover, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Id.* at 869 (citations omitted).

Even if the Court finds that Blue Spike's allegations and arguments in support of specific personal jurisdiction are not conclusory and should be accepted as true, there is no evidence that Technicolor SA has ever: (1) engaged in any allegedly infringing activity in Texas; or (2) purposefully directed any such activity relevant to this litigation towards the State of Texas.

First, Blue Spike relies on a stream of commerce theory, arguing that Technicolor SA purposefully directed accused products and/or services to Texas through a stream of commerce, or at the very least, knew or should have known that the accused products or services enter Texas markets. *See* ECF No. 858 at p. 5.[2] However, the cases on which Blue Spike relies are distinguishable. For example, in *ATEN Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, the Court applied the stream of commerce theory to find personal jurisdiction over a foreign defendant that

---

[2] To the extent Blue Spike contends that a stream of commerce theory can be used to establish *general* jurisdiction, the Fifth Circuit has rejected such a theory. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987); *see also Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1331 (Fed Cir. 2008) (citing *Bearry v. Beech Aircraft*).

*admitted* it injected the accused products into stream of commerce through national distribution channels. 261 F.R.D. 112, 119-120 (E.D. Tex. 2009). Technicolor SA has not made any such admission; quite to the contrary, Technicolor SA has not injected any accused products into the stream of commerce. Blue Spike also relies on the *Avocent v. Huntsville* case to support its specific jurisdiction arguments; however, since Technicolor SA does not do any business in Texas (*see* ECF No. 560-1 (Cadieux Declaration) at ¶¶6-7), as a threshold matter, specific jurisdiction is improper. *See Avocent*, 552 F.3d at 1332. Moreover, even if there was evidence that Technicolor SA did at least *some* business in Texas, there is no evidence that Technicolor SA has commercialized any type of product or service relating to video fingerprinting technology, including the "Accused Products" as defined in Blue Spike's Complaint. Therefore, a stream of commerce theory is inapplicable here. *See Avocent*, 552 F.3d at 1332.

Second, Blue Spike makes conclusory arguments that jurisdiction is proper under the "effects test," arguing that "the foreseeable effects" of Technicolor's alleged patent infringement caused harm to Blue Spike in Texas sufficient enough to confer personal jurisdiction. *See* ECF No. 858 at p. 5 (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008)). Again, because Technicolor SA is not involved in any allegedly infringing activity, the "effects test" cannot be satisfied. Moreover, Blue Spike provided only a portion of the passage it quoted from *Walk Haydel*; the complete sentence is as follows: "*While generally insufficient alone to confer jurisdiction*, the foreseeable effects of a tort should be considered as *part* of the analysis of the defendant's relevant contacts with the forum." *Id.* at 245 (emphasis added) (internal quotations and citation omitted). Blue Spike's conclusory argument is simply not supported by the facts: Technicolor SA is not engaging in any act of infringement, and,

3

therefore, there never has been any actual harm to Blue Spike in Texas.  And even if there were such evidence, it could not, alone, be enough to satisfy jurisdiction.  *See id.* at 245.

None of the purported "evidence" cited in Blue Spike's brief supports its allegations that Technicolor SA has ever engaged, directly or indirectly, in any action that could be considered infringement of the Blue Spike patents (which is necessary to support a theory of specific jurisdiction) or that Technicolor SA has any contacts whatsoever with the State of Texas.  Specifically, Exhibits 1-4 to Blue Spike's brief (ECF No. 858-1 through 858-4) are screenshots from the website www.technicolor.com.  *See* Littleton Decl. at ¶¶6-9.  None of these screenshots identify any type of video fingerprinting technology of any Technicolor entity, including Technicolor SA.  *See id.*  Additionally, nothing in the You Tube video included in Blue Spike's brief (*see* ECF No. 858 at p. 2 and p. 7, n. 2) refers to Technicolor SA or any product or service of Technicolor SA.  *See* Littleton Decl. at ¶10; *see also* Diehl Decl. at ¶5.  Exhibit 5 to Blue Spike's brief, which is addressed in more detail below, also does not identify any product of Technicolor SA.  *See* Diehl Decl. at ¶3. Similarly, Exhibit 6 to Blue Spike's brief (ECF No. 858-6) is an online article interviewing Eric Diehl about a presentation he made in California.  *See* Diehl Decl. at ¶4.  The presentation Mr. Diehl gave at the conference, which he attended as an employee/representative of Technicolor R&D France, is attached as Exhibit A to his Declaration.  *Id.*  Nothing about his presentation related in any way to video fingerprinting techniques or technology.  *Id.*  Mr. Diehl also gave a similar presentation in Burbank, California, but he has never attended any trade shows in Texas on behalf of any Technicolor entity, including Technicolor SA.  *Id.*  He also has not ever traveled to Texas to give any presentations on behalf of any Technicolor entity, including Technicolor SA.  *Id.*  Finally, Exhibit 7 to Blue Spike's

4

brief, which is also discussed in more detail below, does not identify any product or service of Technicolor SA.  *See* Littleton Decl. at ¶11.

Therefore, even if the "effects test" or the "stream of commerce theory" were applicable to Technicolor SA, Blue Spike has failed to set forth any evidence that warrants this Court exercising personal jurisdiction over Technicolor SA.

### B. The Website www.technicolor.com is Insufficient to Confer Personal Jurisdiction

Finally, Blue Spike argues that the website www.technicolor.com is sufficient to confer jurisdiction.  *See* ECF No. 858 at p. 6 (citing *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006)).  In *AdvanceMe*, this Court noted that the Fifth Circuit has adopted the sliding scale approach for asserting jurisdiction via a website.  *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)).  The sliding-scale test requires the Court to analyze the interactivity between customers of a website in the context of a "sliding scale."  *Revell v. Lidov*, 317 F.3d 467, 470-472 (5th Cir. 2002); *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999).  As the Court summarized in *Mink*:

> The Zippo decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet. In this situation, personal jurisdiction is proper.  At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website. We find that the reasoning of Zippo is persuasive and adopt it in this Circuit.

*Mink*, 190 F.3d at 336 (internal quotations and citations omitted).

The website www.technicolor.com is not the type of interactive site found to confer jurisdiction, particularly since no video fingerprinting "Accused Product" has ever been commercialized and therefore cannot be purchased, whether through the website www.technicolor.com or otherwise. At most, a user of the accused website can contact a representative of a particular Technicolor entity to receive information about a particular product or service. *See* Littleton Decl. at ¶9. No one can purchase any product or services through Technicolor's website, including, for example, the "Accused Products" generally, or the research and development concepts discussed in Exhibit 5 to Blue Spike's brief. *Id.* As such, the accused website is insufficient to establish jurisdiction over Technicolor SA. *See Revel*, 317 F.3d at 470-72 (dismissing plaintiff's defamation complaint for lack of personal jurisdiction based on website that was used for limited Internet subscriptions not related to the plaintiff's defamation claim); *see also Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002) ("Sage Group's operation of a website containing company and product information and links to its U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction."); *Mink*, 190 F.3d at 336-37 (affirming dismissal of complaint for lack of personal jurisdiction based on passive website that did not allow customers to place orders but instead only allowed customers to email company) (citing *Stomp, Inc. v. NeatO, LLC,* 61 F. Supp. 2d 1074, 1078 n.7 (C.D. Cal 1999)).

## II. Jurisdictional Discovery is Not Warranted

In its response brief, Blue Spike requested jurisdictional discovery from Technicolor SA. *See* ECF No. 858 at pp. 7-8. "At a minimum, plaintiff must establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted. In other words, foreign nationals should not be subjected to a fishing expedition to determine whether personal

6

jurisdiction over them exists." *Encompass Ind./Mech. of TX, Inc. v. GTEC S.A.*, No. 4:02-CV-0780-A, 2003 WL 124483 at *2 (N.D. Tex. 2003) (citations omitted). Blue Spike has not satisfied, and cannot satisfy, its burden.

Not one of the exhibits referenced in Blue Spike's response brief (ECF No. 858) refers to Technicolor SA specifically or to any contacts Technicolor SA has in Texas. *See generally* ECF No. 858-1 through 858-7. Moreover, as already explained in the Declaration of Adrien Cadieux, which was an exhibit to Technicolor SA's opening brief (ECF No. 560-1), Technicolor SA does not do business in, and derives no revenue from, the State of Texas (*see* ECF No. 560-1 at ¶¶ 6-7). And as explained in the sworn declarations of Messrs. Littleton and Diehl (attached hereto as Exhibits 1 and 2, respectively), the exhibits cited in Blue Spike's brief also fail to raise even a colorable issue that Technicolor SA is involved in any way with any allegedly infringing activity.

As the undersigned has discussed with Blue Spike's counsel, no Technicolor entity, including Technicolor SA, has ever made, used, sold, or offered to sell any video fingerprinting technology in the United States, or imported any video fingerprinting technology into the United States, other than the limited research and development and demonstrations in California discussed below. *See* Littleton Decl. at ¶¶ 2-3. And as discussed below, those limited activities involved two Technicolor entities that are not parties to this lawsuit—Technicolor Creative Services and Technicolor R&D France.

Specifically, around 2008, Aaron Markham, a former employee of Technicolor Creative Services, which is a division of Technicolor Entertainment Services in California, began working on a project to implement video fingerprinting software, such as, for example, products offered by Vobile, Inc. at that time. *See* Ex. Littleton Decl., at ¶4. However, this project was never

7

completed; it was purely a research and development effort. *Id.* All of this research and development occurred in California. *Id.* And nothing about this project was related in any way to Technicolor SA or Technicolor USA, Inc. *Id.* This project is the same project identified in Exhibit 7 to Blue Spike's opposition brief (ECF No. 858-7). *See* Littleton Decl. at ¶11. Once again, Aaron Markham's work with Vobile, Inc.—the company referenced in ECF No. 858-7—was only a research and development project, and was not related to Technicolor SA in any way. *See* Littleton Decl. at ¶¶4, 11.

The second entity—Technicolor R&D France—has been involved in research and development efforts in Europe relating to, among many other things, video fingerprinting. *See* Ex. Diehl Decl., at ¶2; *see also* Littleton Decl. ¶5. One such research and development effort is the paper shown in Exhibit 5 to Blue Spike's opposition brief (ECF No. 858-5)[3] and the You Tube video cited in Blue Spike's brief. *See* Diehl Decl. at ¶¶ 2, 5. However, all of the video fingerprinting research and development work performed by Eric Diehl and others at Technicolor R&D France has occurred in Europe and none of it ever resulted in a product or service that was commercialized in the United States or elsewhere. *Id.* at ¶2. Additionally, employees of Technicolor R&D France have published academic articles on video fingerprinting, and demonstrated prototype video fingerprinting software in California. *Id.* No employee of any Technicolor entity has ever demonstrated any video fingerprinting software in

---

[3] Exhibit 5 to Plaintiff Blue Spike's brief (*see* ECF No. 858-5) is a fact sheet describing a video fingerprinting prototype developed by the Security & Content Protection Lab, which is a division of Technicolor R&D France. *See* Diehl Decl. at ¶3. The system shown and described in ECF No. 858-5 has never been offered for sale, sold, made, or used in the United States, or imported into the United States. *Id.* Moreover, the fact sheet does not identify any video fingerprinting technology of Technicolor SA or Technicolor USA, Inc. *Id.* In addition, Eric Diehl is listed as the contact person on the last page of this fact sheet, and he is not an employee of Technicolor SA or Technicolor USA, Inc. *Id.* Similarly, the You Tube video cited at ECF No. 858 p. 2 and p. 7, n. 2 does not refer to Technicolor SA or any product or service of Technicolor SA. Diehl Decl. at ¶5. Rather, portions of this video are describing research projects similar to those referenced in Exhibit 5 to Blue Spike's brief (discussed above), including the Spider project developed by Eric Diehl's team. *Id.* The Spider project never made it out of research, and was never used, made, sold, offered for sale, or imported into the United States. *Id.* The remaining portions of this video are describing the Genuine DVD Authentication ("GDA") concept, which is unrelated to video fingerprinting, and which is not a concept of Technicolor SA. *Id.*

Texas. *Id.* Moreover, none of the foregoing research and development work is related in any way to Technicolor SA. *Id.*

Since Blue Spike has not (nor can it) satisfied its burden and show even a colorable basis that Technicolor SA has any contacts with Texas, let alone any contacts sufficient to confer personal jurisdiction, the Court should not grant Blue Spike's request for jurisdictional discovery. "Courts should deny discovery requests where the plaintiff fails to show 'that further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction.'" *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1113 (D. Ariz. 2010) (quoting *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1023 (Fed. Cir. 2009)). "Such a showing is especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations." *Autogenomics*, 566 F.3d at 1023 (holding that district court did not abuse its discretion by denying jurisdictional discovery); *see also Mohamed v. Erinys Int'l Ltd.*, Civ. No. H-09-3362, 2010 WL 3359518 at *4 (S.D. Tex., August 23, 2010) (denying plaintiff's request to "explore the veracity" of witness's declaration through deposition, since plaintiff failed to "offer any basis whatsoever to support an inference that [declarant's] deposition testimony would contradict [his] sworn declarations." (quoting *Kelly v. Syria Shell Petrol. Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000)). When, as here, the evidence indicates that different entities were involved in research and development that may arguably be related to video fingerprinting, the more efficient and appropriate course of action is to grant Technicolor SA's motion to dismiss and deny any jurisdictional discovery. *See MMI*, 743 F. Supp. 2d at 1113 ("The Court does not wish to impose additional discovery against [defendant] where the

evidence suggests that the alleged patent infringement was actually committed by a separate legal entity.").[4]

### III. Blue Spike Improperly Served Technicolor SA

Blue Spike's arguments relating to whether it properly served Technicolor SA through the Texas Secretary of State do nothing to show that Blue Spike satisfied the requirements of the Hague Convention, which Blue Spike itself noted was the proper procedure for serving a foreign company under controlling Fifth Circuit precedent. *See* ECF No. 858 at 10. Moreover, Blue Spike altogether ignores a recent decision from the Southern District of Texas (cited in Technicolor SA's opening brief (*see* ECF No. 560 at 11)) which squarely rejects Blue Spike's attempted method of service in this case. *See Man Ferrostaal Inc. v. Oldendorff Carriers GMBH & Co.*, Civ. No. H-07-02983, 2009 U.S. Dist. LEXIS 125490 at **7, 11 (S.D. Tex., Jan. 23, 2009). Thus, Technicolor SA has nothing to add on this issue besides what was presented in its opening brief. Blue Spike's Complaint should also be dismissed for insufficient service of process.

### IV. Conclusion

Technicolor SA respectfully requests that the Court dismiss Blue Spike's Complaint against Technicolor SA.

Respectfully submitted,

 */s/ Andrew M. McCoy*
Wesley Hill (TX Bar No. 24032294)
**WARD & SMITH LAW FIRM**
1127 Judson Rd., Ste. 220

---

[4] To be clear, nothing in this briefing should be taken as an admission that: (1) even the limited research and development efforts discussed herein and in the declarations of Messrs. Littleton and Diehl amount to infringement of any Blue Spike patent, or (2) that this Court would have personal jurisdiction over either Technicolor Creative Services or Technicolor R&D France.

10

DMS_US 51272157v2

        Longview, TX 75601
        Office:  (903) 757-6400
        Direct:  (903) 212-3937
        Fax:  (903) 757-2323
        Email:      wh@wsfirm.com

R. Trevor Carter (IN Bar No. 18562-49) (Lead attorney)
Andrew M. McCoy (IN Bar No. 28297-49)
**FAEGRE BAKER DANIELS LLP**
300 North Meridian St., Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:      trevor.carter@faegrebd.com
             andrew.mccoy@faegrebd.com

*Counsel for Technicolor SA*

## CERTIFICATE OF SERVICE

      The undersigned certifies that on July 1, 2013 the foregoing document, which was originally filed on March 18, 2013, was re-filed electronically in the captioned matter, in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel of record who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

       /s/ Andrew M. McCoy

11