# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>*Plaintiff*, | § § § | Civil Action No. 6:12-CV-499 MHS |
| v. | § § | LEAD CASE |
| TEXAS INSTRUMENTS, INC.<br>*Defendants* | § § § | |

---

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>*Plaintiff*, | § § | Civil Action No. 6:12-CV-576 MHS |
| v. | § § | (Consolidated with 6:12-cv-499-MHS and closed) |
| AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § | |

---

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>*Plaintiff*, | § § | Civil Action No. 6:12-CV-570 MHS |
| v. | § § | (Consolidated with 6:12-cv-499-MHS and closed) |
| WIOFFER, LLC<br>*Defendant*. | § § § | |

**DEFENDANT AUDIBLE MAGIC CORPORATION'S AND ITS CUSTOMERS'
REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE
TO THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

## I.      <u>INTRODUCTION</u>

Blue Spike's opposition to Defendant Audible Magic Corp.'s and its customers' ("Moving Defendants") motion to transfer confirms that transfer is appropriate.  This action could have been brought in the Northern District of California against Audible Magic and all defendants named based on alleged use of Audible Magic's technology, and it is undisputed that the bulk of evidence and witnesses are located there.  Blue Spike argues that because it filed numerous cases in this District that transfer is unavailable for every named defendant in each separate case.  This is not the law, especially in view of the America Invents Act ("AIA").  *See PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, Dkt. No. 131 (E.D. Tex. Mar. 21, 2013) (transferring some cases and retaining others involving same patents).

Blue Spike's other arguments are also unavailing:  (1) its CEO, Scott Moskowitz travels between Texas and Florida each month, but purportedly and inexplicably not California, due to health concerns; (2) Blue Spike's lawyers are based in California, belying any alleged financial hardship litigating in California; and (3) Blue Spike fails to name a single other employee who would be inconvenienced by having to travel to California.  The burden of litigating this case here will fall far more heavily on Moving Defendants than on a non-practicing entity like Blue Spike and Moving Defendants have no relevant ties to this District.  Thus, transfer is appropriate.

## II.     <u>THE CASES AGAINST ALL OF THE AUDIBLE MAGIC CUSTOMERS COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA.</u>

Blue Spike's cases against Audible Magic and its customers could have been brought in the Northern District of California, contrary to Blue Spike's assertions.  As detailed in the opening brief and supporting declarations, each of the customer defendants is accused based on the Audible Magic systems located in that district.  This includes all customers named in the Audible Magic case, as well as WiOffer and CBS Interactive, named in their own, separate cases.  Each is accused based on use of content recognition technology, and the systems they use

1

in that regard are Audible Magic's.   Blue Spike puts forth no evidence that it predicates allegations against defendants on anything but Audible Magic's content recognition technology. Blue Spike also concedes a third of these defendants reside in California. (Opp. at 4).

Blue Spike alleges that TuneCore uses the same Audible Magic servers, databases and software as other defendants.  (Dkt. 1, 6:12-CV-576, ¶¶ 30, 64).  The evidence submitted with Moving Defendants' opening brief establishes that those systems are in Northern California and Blue Spike does not dispute that.  Blue Spike also does not dispute that TuneCore has interacted with California-based Audible Magic and that its claims are based on TuneCore's name appearing on Audible Magic's website.  *See* Dkt. 834-1, ¶¶ 3-5 (describing Audible Magic's interactions and knowledge regarding TuneCore and why TuneCore is listed on the website); Opp. at 4.  TuneCore recognizes that jurisdiction is proper in California, requesting that "Blue Spike's claims against TuneCore be transferred along with the rest of the Audible Magic action" pursuant to 28 U.S.C. § 1404(a), in the furtherance of judicial economy.  Dkt. 834 at p. 2-3.

Because Blue Spike asserts that defendants use allegedly infringing systems located in California and have interacted with Audible Magic in California, the cases could have been brought against all of the defendants in the Northern District of California, under settled principles of specific jurisdiction.  *See Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State…"; specific jurisdiction relates to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (internal quotation marks omitted); *Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*, 2013 U.S. Dist. LEXIS 48700, *13-14 (E.D. Tex. Mar. 19, 2013) (use of accused technology to communicate with systems in the transferee forum and associated communications established case could have been brought there)

2

### III.   THE PRIVATE FACTORS WEIGH STRONGLY IN FAVOR OF TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA.

#### A.   The Fact That Blue Spike Has Filed Multiple Cases In This Forum Cannot Create Judicial Efficiency.

Blue Spike's choice to file over 80 cases in this venue does not mean that particular matters cannot be transferred.  (Opp. at 6-8, noting unrelated defendants and technologies)  Blue Spike ignores the AIA (35 U.S.C. §299(b)), which required Blue Spike to file individual cases. Now each individual case is evaluated under 28 U.S.C. § 1404, rather than one transfer decision across all defendants.  Thus, it is appropriate to transfer each individual case based on Audible Magic's technology—including the Audible Magic case and cases against WiOffer and CBS Interactive—to California where the bulk of evidence and witnesses are located.  *See PersonalWeb Techs.*, No. 11-cv-656, Dkt. 131 (Judge Davis granted transfer as to some cases and retained some, involving same patents).  It will be *more* efficient to transfer the Audible Magic cases, so that idiosyncratic issues associated with that technology and the group of 28 Audible Magic defendants can be efficiently adjudicated in California, in the single most convenient court.  This will simplify matters for this Court and remaining defendants.

Blue Spike's reliance on the pre-AIA case, *In re Google Inc.*, 412 Fed.Appx. 295 (Fed. Cir. Mar. 4, 2011), improperly groups together disparate cases.  That opinion says nothing about whether cases involving the same Northern California-based Audible Magic technology should be kept in this venue merely because other actions against unrelated defendants are pending here. That is not the law.  *See e.g. PersonalWeb.*  Similarly, reliance on *In re VistaPrint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) is misplaced, as there the trial court had already overseen litigation on the same patent. 628 F.3d at 1346.  There are no such facts here.  Instead, Blue Spike flooded the Court with over 80 cases within months of contriving venue, and now argues it should benefit from its own actions.  This Court has already rejected such an argument.  *See GeoTag, Inc. v.*

*Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013).

**B.    The Northern District Of California Is Clearly More Convenient.**

The remaining arguments in Blue Spike's opposition do not warrant denial of transfer:

*Access to Sources of Proof*:   As discussed in the Opening Brief, the relevant documents regarding development and operation of the accused and prior art systems are most readily accessible in Northern California.  Because Blue Spike does not dispute these facts (Opp. at 11-12), this factor favors transfer.  *See GeoTag*, Dkt. No. 114, at 3.  Blue Spike's argument that the location of its evidence should be given weight (Opp. at 11-12) is unavailing because its ties to this District are recent and ephemeral.  Blue Spike does not dispute that when it filed this suit (1) it had only existed for about three months; (2) it had no identifiable business activities in this District; and (3) its CEO had been living in Florida for over fifteen years.  Thus, Blue Spike's location of evidence can be safely disregarded.  *See GeoTag*, Dkt. No. 114, at 4.  Blue Spike cannot even specify documents it has stored in Texas or whom (other than its CEO) it plans to call from Texas at trial. (Moskowitz Decl., ¶¶ 7, 11.).  This factor clearly favors transfer.

*Access to Third Parties*:   Blue Spike does not dispute that there are numerous specific individual and corporate witnesses in Northern California with knowledge of the prior art, the history of Audible Magic, its predecessor and their technology.  Nor does it dispute that there are no known nonparty witnesses in this District. (Opp. at 12-13.)   Thus, it is undisputed that availability of compulsory process favors transfer.  While Blue Spike argues that it is speculative to consider nonparty witnesses, the case Blue Spike relies on rejected that argument finding that the "identified six potential prior art witnesses over whom [the transferee venue] would have absolute subpoena power" weighed in favor of transfer.  *Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11 -cv-706-LED- JDL, Dkt. No. 85, at 9 (E.D. Tex. Apr. 29, 2013).

*Cost of Attendance For Willing Witnesses*: There is no dispute that the vast majority of

willing party and nonparty witnesses are located in the Northern California.  Blue Spike fails to identify any witnesses (other than Mr. Moskowitz) or state their likely role at trial. (Opp. at 13.) Mr. Moskowitz's statement that it is painful for him to travel long distances, is inexplicable, given that he is able to travel between Texas and Florida regularly and set up shop in Texas to do so, rather than filing these suits in Florida.  (Moskowitz Decl., ¶¶ 1-12)  Indeed, Mr. Moskowitz met with his lawyers in Texas in early May 2013, executed a declaration in Miami, Florida on May 20, 2013 (*see* Dkt. 766-2 at ¶12 & p. 3), then by June 24, 2013 was back in Texas to sign a declaration opposing Moving Defendants' motion (Dkt. 845-2 at p. 2).  This undercuts complaints about travel and shows that Mr. Moskowitz is still residing in Florida.[1]

## IV.    THE PUBLIC FACTORS ALSO SUPPORT TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA.

Blue Spike's argument that none of the public interest factors support transfer is also incorrect.  Blue Spike ignores and fails to rebut the extensive evidence submitted by Moving Defendants of a local interest in the Northern District of California regarding content engineering industries generally, and Audible Magic and its predecessor in particular, which have operated there since 1993.  By contrast, Mr. Moskowitz's "made for litigation" Blue Spike entity was formed in Texas shortly before the case was filed.  There can be no dispute that the Northern District of California has a stronger local interest in this dispute.

## V.    CONCLUSION

For the reasons above and in the Opening Brief, Moving Defendants respectfully request a transfer to the Northern District of California.

---

[1] Blue Spike's cited cases (Opp. at 8) demonstrate that Mr. Moskowitz's unsupported, unspecified medical condition is not dispositive.  *See BSB Bank & Trust Co. v. Morrison*, 2003 WL 1797845 at *2-3 (N.D.N.Y. Apr. 4, 2003) (Doctors submitted evidence that elderly defendants were at risk "for sudden death"); *NGC Worldwide, Inc. v. Siamon*, 2003 WL 1987001 at *1 (D. Conn. Apr. 21, 2003) (Treating physician opined that defendant would experience severe swelling of extremities and skin tearing and bleeding if he were forced to travel).

Dated:  July 3, 2013                          Respectfully submitted,


By: */s/ Eric H. Findlay*

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone:  (903) 534-1100
Facsimile:  (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

I. Neel Chatterjee – *LEAD ATTORNEY*
Gabriel M. Ramsey
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Attorneys for Defendants Audible Magic, Corp.,
Facebook, Inc., Myspace LLC, Specific Media LLC,
Photobucket.com, Inc., DailyMotion, Inc.,
DailyMotion S.A., SoundCloud, Inc., SoundCloud
Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media
Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh,
Inc., Metacafe, Inc., Boodabee Technologies, Inc.,
Zedge Holdings, Inc., Brightcove Inc., Coincident.TV,
Inc., Accedo Broadband North America, Inc., Accedo
Broadband AB, MediaFire, LLC, WiOffer LLC, and
Harmonix Music Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on

opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on July 3, 2013.

*/s/ Eric H. Findlay*
Eric H. Findlay
