UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff*, | § | Case No. 6:12-cv-499-MHS |
| v. | § | Lead Case |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| *Defendants*. | § | |

**BLUE SPIKE'S SURREPLY TO THE AUDIBLE MAGIC DEFENDANTS' MOTION TO TRANSFER VENUE [DKT. 771]**

Sometimes jokes fall flat, with no laughter from the audience. A few comedians report that the best way to deal with such failure is to tell the joke again—but with a voice that is slower and louder the second time. The Audible Magic Defendants' reply in support of their transfer motion (Dkt. 861) takes a similar tack. It offers nothing new. It does not rebut any of the dispositive points from Blue Spike's opposition (Dkt. 845). Instead, the reply merely rehashes the movants' original arguments and ignores the points raised in the opposition. The transfer motion fails for several stand-alone reasons.

First, the Audible Magic Defendants still have not shown—as they must—that Blue Spike could have initially sued all the relevant defendants in the Northern District of California. Those defendants are based throughout the world, and the movants have to show that every single one of them has sufficient contacts with the Northern District of California to be subject to personal jurisdiction there. The movants try to carry that burden by simply

1

asserting that all of the defendants "use" California-based infringing systems and "interact" with California-based Audible Magic (Dkt. 861 at 2), but that is not enough to discharge their burden. They also have to explain why the "use" and "interaction" are of such a nature that they give rise to personal jurisdiction. The movants offer nothing on point.[1]

Second, the Audible Magic Defendants do not show how a transfer would make the cases run more efficiently; instead, they ignore the obvious ways that a transfer would actually increase inefficiency and pile additional burdens onto the federal courts. They assert that transfer would actually increase efficiency because their cases are "idiosyncratic," but they give no evidence or analysis to support their conclusions about efficiency. Dkt. 861 at 3. The "idiosyncratic" argument deserves no confidence. As described in the opposition (Dkt. 861 at 6-7), the consolidated cases share not merely the four patents-in-suit but also other deeply intertwined factual and legal issues, including close similarity between Audible Magic's technology and the technology of other consolidated defendants that have sought transfer to other federal courts. The overlap between this case and others in this District

---

[1] The reply misreads a single case where this Court held that a defendant's use of accused technology to communicate with another forum subjected the defendant to personal jurisdiction there. *See* Dkt. 861 at 2 (citing *Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*, No. 6:11-cv-401 LED-JDL, 2013 WL 1729606, at *4 (E.D. Tex. Mar. 19, 2013). In *Wellogix*, personal jurisdiction was proper not because the defendant was communicating with the forum, but because it was *using the accused technology* to communicate with the forum. *See Wellogix*, 2013 WL 1729606 at *4 (holding that proposed transferee forum could exercise personal jurisdiction over defendant "as a result of [the defendant's] communications to suppliers *through the accused instrumentality*"; "the act of communicating to suppliers *using* the P2P messaging functionality—*a feature of the accused product*—provides a prima facie showing of jurisdiction") (emphasis added). Here, in contrast, Blue Spike does not allege that the movants use Audible Magic's infringing technology for the very act of communicating with the Northern District of California.

ensures that transfer will waste judicial resources, impose additional burdens on the plaintiff and its witnesses, and "create an unnecessary risk of inconsistent claim construction and adjudication." *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009).[2] The federal interest in preventing waste of judicial resources in such cases is a sufficient ground to deny transfer—even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).

Last, the Audible Magic Defendants have not—and cannot—show that transfer would be clearly more convenient, providing another stand-alone ground for denying transfer. They still base their convenience arguments on the canard that Blue Spike's connections to this forum are recent and ephemeral (*see* Dkt. 861 at 4-5), ignoring Blue Spike's cases and evidence showing that Blue Spike's connections to the District are real and deserve respect. *See* Dkt 845 at 9-10. The movants also overlook critical facts that undermine their transfer motion:

- 16 of the 23 of the Audible Magic Defendants are based—and house relevant evidence—outside the Northern District of California;

- they have not identified many of the nonparty witnesses who would allegedly benefit from a transfer and have ignored the nonparty witnesses located outside the Northern District of California (*see id.* at 12 n.8); and

---

[2] Blue Spike has never argued, as the movants repeatedly imply, that transfer is improper merely because Blue Spike has filed numerous suits in this District. *Contra* Dkt. 861 at 3. The real argument is that transfer will require multiple courts to engage in duplicative proceedings and to issue rulings that might conflict with each other. *See* Dkt. 845 at 6-8. That is why judicial-efficiency concerns weigh so strongly against transfer.

- they have not explained why Northern California is a more convenient forum for the many willing witnesses who are based outside it.

Arguing that Blue Spike should have no problem litigating in California, the Audible Magic Defendants repeat that false claim that Scott Moskowitz (Blue Spike's CEO and inventor) travels regularly. Dkt. 861 at 1, 5. Moskowitz has not been able to travel long distances, including to California, since his 2009 operation; indeed, Moskowitz has not traveled to California since 2003. Moskowitz's only regular travel is between Tyler, Texas and Miami, Florida— and he makes those trips only to receive medical treatment for the very condition that makes traveling long distances impossible. *See* Dkt. 845 at 8-9; Moskowitz Decl. ¶¶3, 8, 11. The movants also point to the fact that Blue Spike's attorneys have an office in California, but this ignores that the location of a party's attorneys carries little or no weight in the venue analysis. Rather, the critical consideration here is that the burdens that Blue Spike would suffer if forced to litigate in the Northern District of California would far outweigh the burden that the movants would face if their case remained in this District. *See* Dkt. 845 at 10; Moskowitz Decl. ¶¶7-11.

    The burdens that transfer would impose on Blue Spike, on its disabled CEO and inventor, and on the federal court system are real. They are serious. They are no joke.

4

## CONCLUSION

For these reasons plus those contained in the opposition (Dkt. 845), Blue Spike again asks the Court to deny the Audible Magic Defendants' transfer motion.

Respectfully submitted,

　/s/ Randall T. Garteiser　
Randall T. Garteiser
　Lead Attorney
　Texas Bar No. 24038912
　rgarteiser@ghiplaw.com
Christopher A. Honea
　Texas Bar No. 24059967
　chonea@ghiplaw.com
Christopher S. Johns
　Texas Bar No. 24044849
　cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
　California Bar No. 289043
Peter S. Brasher
　California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

5

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on July 15, 2013.

    /s/ Randall Garteiser