# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.,<br><br>      Defendant. | Civil Action No. 6:12-CV-499-MHS<br><br>LEAD CASE<br><br>Jury Trial Demanded |
| BLUE SPIKE, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INC.,<br><br>      Defendant. | Civil Action No. 6:12-CV-564-MHS<br><br>CONSOLIDATED CASE<br><br>ORAL ARGUMENT REQUESTED<br><br>Jury Trial Demanded |

**DEFENDANT ADOBE SYSTEMS INCORPORATED'S MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE <u>NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

                                                                                                                                               **Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................................................. 2

       A.    Witnesses And Documents Regarding Adobe's Accused Systems Are Located In Northern California ................................................................................ 2

       B.    Key Third-Party Witnesses with Relevant and Unique Knowledge Regarding the Development of the Accused Systems Reside in the Northern District of California ................................................................................. 3

       C.    Blue Spike Was Incorporated In This District For Purposes of This Litigation ..................................................................................................................... 4

III.  ARGUMENT ....................................................................................................................... 6

       A.    Venue Is Proper In The Northern District Of California ...................................... 6

       B.    Private Interest Factors Strongly Favor Transfer To The Northern District Of California ............................................................................................................. 7

               1.    Easier Access To Sources of Proof Favors The Northern District Of California ............................................................................................... 7

               2.    Availability Of Compulsory Process Favors The Northern District Of California ............................................................................................... 8

               3.    Cost Of Attendance For Willing Witnesses Favors The Northern District Of California ............................................................................... 10

               4.    All Other Concerns Weigh In Favor Of Transfer ..................................... 11

       C.    Public Interest Factors Support Transfer To The Northern District Of California ............................................................................................................... 13

               1.    Relative Court Congestion Supports Transfer ......................................... 13

               2.    Local Interest Favors The Northern District Of California ..................... 14

               3.    Both Forums Are Familiar With The Governing Law ............................. 14

               4.    There Is No Conflict Of Laws Question .................................................. 15

IV.  CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

Page

### FEDERAL COURT CASES

*Adaptix Inc. v. Motorola Mobility LLC*,
  No. 6:12-cv-00016-MHS (E.D. Tex. Mar. 28, 2013) ............................................................... 13

*Droplets, Inc. v. Amazon.com, Inc.*,
  No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) .......................................... 9, 10

*Droplets, Inc. v. E*Trade Fin. Corp.*,
  No. 11-cv-255, 2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) .................................................. 12

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
  No. 10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ...................................................... 9

*GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114
  (E.D. Tex. Jan. 14, 2013) ............................................................................... 7, 8, 10, 12, 13, 14

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) .................................................................................................. 9

*In re EMC Corp.*,
  _____ (Fed. Cir. 2013) ............................................................................................................ 12

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................ 7, 10

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ................................................................................................ 12

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ................................................................................................ 11

*In re Volkswagen AG*,
  371 F.3d 201 (Fed. Cir. 2004) ............................................................................................. 6, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304, 315 (5th Cir. 2008) ........................................................................................... 6, 7

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010) ................................................................................................ 12

*Internet Machs. LLC v. Alienware Corp.*,
  No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun 7, 2011) ................................................... 11

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
  No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ............................................... 12

*Network Prot. Sciences, LLC v. Juniper Networks, Inc.*,
  No. 10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .......................................... 14

*Nobel Biz, Inc. v. Five9, Inc.*,
    No. 6:12-cv-00243-MHS (E.D. Tex. Mar. 28, 2013) ............................................................... 12

*NovelPoint Learning LLC v. LeapFrog Enters.*,
    No. 10-cv-229-JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) .......................................... 8

*Optimum Power Solutions LLC v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex. 2011) ............................................................................... 8, 11

*Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*,
    No. 10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ......................................... 11

## FEDERAL STATUTORY AUTHORITIES

28 U.S.C. §1331 ............................................................................................................................. 6

28 U.S.C. §1338(a) ........................................................................................................................ 6

28 U.S.C. §1391(b) ........................................................................................................................ 6

28 U.S.C. §1404(a) ................................................................................................................. passim

35 U.S.C. §299 ............................................................................................................................. 12

Pursuant to 28 U.S.C. § 1404(a), Defendant Adobe Systems Inc. ("Adobe") respectively moves to transfer this action to the Northern District of California.

## I.      INTRODUCTION

Adobe is a corporation headquartered in San Jose, California. The witnesses knowledgeable about the accused products and services in this case reside in the Northern District of California. They work out of Adobe's facilities in San Jose or San Francisco, California, where they can most easily access documents relating to the accused products and services. Significantly, as detailed below, the accused digital fingerprinting technology was originally developed by a company called Auditude, Inc. based in Palo Alto, California. Prior to Adobe's acquisition of Auditude in late 2011, Auditude spun out its digital fingerprinting business to a separate company called IntoNow also based in Palo Alto, California, which was then acquired by non-party (and former defendant) Yahoo!, which is based in Sunnyvale, California. Former employees of IntoNow, residing in the Northern District of California, have unique knowledge relating to the historical development, usage, marketing, and financial performance of the accused digital fingerprinting technology.

In contrast, Plaintiff Blue Spike, LLC ("Blue Spike") has no real ties to this district and has created a scheme to manipulate venue here. Scott Moskowitz, co-inventor on the patents-in-suit and apparent CEO of Blue Spike, is a longtime resident of Florida who only recently started renting a room at a bed and breakfast in Tyler, Texas while maintaining several condominiums in Florida. Blue Spike was only created a little less than three months before its litigation campaign began, when it was formed on May 11, 2012. And the patents-in-suit were not transferred to Blue Spike until August 4, 2012 – only <u>five days</u> before the litigation campaign began. There is no discernable business that Blue Spike conducts with any customers or contractors in Texas or anywhere in the United States.

Consistent with these facts and this District's prior decisions, the Northern District of California is the "clearly more convenient" forum for this dispute. Accordingly, Adobe requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

## II.     FACTUAL BACKGROUND

Blue Spike filed suit against Adobe in this District on August 22, 2012, alleging that Adobe's Auditude, Project Primetime, Auditude's Connect 2.0, and Auditude's Connect Platform software, systems, applications, and technology (collectively, the "Accused Systems") infringe U.S. Patent Nos. 7,346,472 (the '472 patent), 7,660,700 (the '700 patent), 7,949,494 (the '494 patent), and 8,214,175 (the '175 patent) (collectively, the "Asserted Patents"). (Dkt. No. 1, ¶ 27.) To date, Blue Spike has filed more than 85 cases in this District, alleging infringement against a wide variety of unrelated audio, visual, and biometric products and services.

### A.     Witnesses And Documents Regarding Adobe's Accused Systems Are Located In Northern California

Adobe is headquartered in San Jose, California, which is in the Northern District of California. (Declaration of Jeremy Helfand In Support Of Defendant Adobe Systems Incorporated's Motion To Transfer Venue ("Helfand Decl."), ¶ 1.) Adobe's headquarters, located in San Jose, California, together with its significant presence in San Francisco, California, form the core of Adobe's strategic center, and accounts for 3,050 employees, including staff, engineers, product managers, and executives. (*Id*.) Most importantly, the design, development, product management, and marketing of the Accused Systems occurred primarily in San Jose and San Francisco. (*Id*., ¶ 10.)

To date, Adobe has determined that documents relating to the development, operation, maintenance, marketing, and financial performance of the Accused Systems are most easily accessible in San Jose and San Francisco where the engineers, product managers, and executives

who are knowledgeable about such documents reside. (*Id.*, ¶¶ 10-11.) Of the 41 Adobe employees who work primarily on the Accused Systems, 29 are in San Jose and San Francisco. (*Id.*, ¶ 10.) None are in Texas. (*Id.*) Adobe does not maintain any operations or facilities in the Eastern District of Texas that are involved in design or development of the Accused Systems. (*Id.*, ¶ 12.) Of the approximately 103 Adobe employees in Texas, none works on either design, development, product management, or marketing of the Accused Systems. (*Id.*, ¶ 13.)

      **B.    Key Third-Party Witnesses with Relevant and Unique Knowledge Regarding the Development of the Accused Systems Reside in the Northern District of California.**

Adobe's Accused Systems date back to a Silicon Valley start-up company called Auditude, Inc. that was formed in Palo Alto, California in 1999. (*Id.*, ¶ 3.) One aspect of Auditude's business involved technology for "digital fingerprinting," which is rapid content recognition performed by comparing online content to "fingerprints" of copyrighted material or other source material. (*Id.*, ¶ 4.) In 2009, Auditude developed a second and separate technology for selectively inserting advertisements into online media content. (*Id.*, ¶ 5.) This technology allowed media companies to monetize existing online media content by inserting into it advertisements specifically targeted to individual viewers. This aspect of Auditude's business was sometimes referred to as the "advertising platform." (*Id.*, ¶ 5.)

In December 2010, Auditude divested itself of its digital fingerprinting business, and a new company called IntoNow, Inc. took over the technology and business related to Auditude's digital fingerprinting technology. (*Id.*, ¶ 6.) The team that had developed the digital fingerprinting technology at Auditude joined IntoNow. *Id.* As part of the spin-off arrangement, Adam Cahan, the founder and former CEO of Auditude from 1999 till 2010, became the CEO of IntoNow. (*Id.*, ¶¶ 3, 6.) Jeremy Helfand took over for Mr. Cahan as CEO of Auditude, which maintained ownership over the advertising platform business. (*Id.*, ¶ 6.)

In April 2011, non-party (and former defendant) Yahoo! acquired IntoNow, its technology, and its key personnel, including Mr. Cahan, who is the current senior vice president of mobile and emerging products for Yahoo!  (*Id.*, ¶¶ 7, 8.)  Many of the former Auditude personnel, including Mr. Cahan, currently live and work in the San Francisco Bay Area.  *Id.*  Former Auditude employees like Mr. Cahan have unique and relevant knowledge about aspects of Auditude's digital fingerprinting technology, including its development, usage, marketing, and revenue.  (*Id.*, ¶ 8.)  To date, Adobe understands that Blue Spike's infringement allegations against Adobe have entirely focused on the digital fingerprinting technology developed by Auditude and transferred first to IntoNow and later to Yahoo!.

In November 2011, Auditude was acquired by Adobe and Mr. Helfand became an Adobe employee.  (*Id.*, ¶ 9.)  After acquisition, Adobe shut down Auditude's digital fingerprinting business by January 2012 and focused on developing Auditude's advertising platform technology.  (*Id.*)

### C. Blue Spike Was Incorporated In This District For Purposes of This Litigation

In 2000, 2007, and 2009, named inventors Scott Moskowitz and Mike Berry assigned their inventions in the Asserted Patents to Blue Spike, Inc., a private company based in Florida since 1997.  (Mar Decl., Exs. 12, 19.)  From late 2005 to 2008, Moskowitz himself prosecuted the '181 Application from his residence in Florida.  (*Id.*, Exs. 4, 5.)  In March 2008, the '181 Application issued as the '472 patent, which, on its face, identifies Moskowitz as a Florida resident.  (Dkt No. 1-1.)  From 2007 to 2010, Moskowitz prosecuted two continuation applications of the '181 Application, again from his residence in Florida.  (Mar Decl., Exs. 6, 7.)  These two applications, issued as the '700 and '494 patents, identify Moskowitz as still residing in Florida.  (Dkt No. 1-2; 1-3.)  In February 2011, Moskowitz submitted another inventor

declaration in the prosecution of a third continuation application of the '181 Application, averring his residence in Florida. (Mar Decl., Ex. 8.) This application issued as the '175 patent in July 2012, and identified Moskowitz as still residing in Florida. (Dkt No. 1-4.)

Moskowitz continues to live in Florida. For example, his patent applications and patents published or issued between August 2012 to January 2013 identify his residence in Florida. (Mar Decl., Ex. 9.) Further, Mr. Moskowitz has been an officer of at least three Florida-based companies: Blue Spike, Inc., Canopus Medical LLC, and Wistaria Trading Inc. (*Id.*, Exs. 11, 12, 13.) Two of these companies filed annual reports with the Secretary of State of Florida in January 2013 listing Florida as the principal place of business for both. (Mar Decl., Exs. 14, 15.) Notably, Mr. Moskowitz signed both of these filings on January 20, 2013, and indicated that he currently resides in Florida. (*Id.,* Exs. 14, 15.)

After this long, continual residence in Florida, Mr. Moskowitz suddenly changed his tune three months prior to filing these 85 suits and incorporated Blue Spike LLC in Tyler, Texas. (*Id.,* Ex. 20.) Despite this incorporation, there is no indication that any Blue Spike entity has ever conducted any business within the Eastern District of Texas or maintain any employees in Tyler. Mr. Moskowitz waited until August 4, 2012, less than a week before the lead case was filed in this District, to assign the Asserted Patents from his Florida company to his new Blue Spike shell company in Tyler. (*Id.,* Ex. 21.) Although Mr. Moskowitz claims to be a Tyler resident in his latest declaration in this case (Dkt no. 766-2, ¶ 3), his legal documents and social media profiles all confirm his continuing presence in Florida. For instance, his LinkedIn profile lists him as a Florida resident, and he is registered to vote in Florida. (*See* Mar Decl., Ex. 24 (LinkedIn profile); Ex. 25 (Florida vehicle registration); Ex. 26 (Florida voting record).) Even Mr. Moskowitz's declaration submitted in this case (Dkt. 766-2) indicates that he signed the

declaration in Miami, Florida, merely days after he allegedly met with his Blue Spike lawyers in Tyler. His Tyler-based address provided in his declaration refers to a bed and breakfast. (*Id.*, ¶ 3.)

### III. ARGUMENT

Section 1404(a) of 28 U.S.C. provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The inquiries under 28 U.S.C. § 1404(a) are, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008). As explained below, the relevant factors clearly favor transferring this action to the Northern District of California.

#### A. Venue Is Proper In The Northern District Of California

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004). A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case. *Id.* There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a). Nor is there any question that the Northern District of California has personal jurisdiction over Adobe and is a proper venue for this case because, as discussed above, Adobe regularly conducts business, maintains its headquarters, and employs the bulk of its personnel there. *See* 28 U.S.C. § 1391(b).

### B. Private Interest Factors Strongly Favor Transfer To The Northern District Of California

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. At least three of the four factors weigh in favor of transfer to the Northern District of California.

#### 1. Easier Access To Sources of Proof Favors The Northern District Of California

In analyzing the first private interest factor, this Court recognizes that:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.

*GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 3 (E.D. Tex. Jan. 14, 2013). (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, as discussed above, Adobe's documents relevant to this case are most readily accessible from Northern California, and Adobe employees with relevant knowledge who are likely to testify regarding the Accused Systems are located in Northern California. In contrast, Blue Spike was formed a mere three months before filing its first lawsuit in this District. The limited documents created since Blue Spike's formation, or those trucked into Texas for purposes of this litigation, do not merit keeping the case here. *See Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered); *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) ("[W]eight given to the location of [plaintiff's] documents is

determined by whether plaintiff is an 'ephemeral' entity."). Additionally, it is unclear what documents Blue Spike has in its possession in Texas that Blue Spike would rely on for trial.

Accordingly, the relevant evidence in this action is more readily accessible from the Northern District of California, favoring transfer to that district. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting motion to transfer to the Northern District of California where majority of documents, along with several witnesses, were likely to be in that district).

### 2. Availability Of Compulsory Process Favors The Northern District Of California

A venue is favored when it has subpoena power to compel attendance of deposition and trial over the majority of non-party witnesses. *GeoTag*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 5. While courts analyze the convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Id*. at 8.

As discussed above at section II.B, former Auditude personnel such as non-party witness Adam Cahan have relevant and unique knowledge pertaining to Adobe's accused digital fingerprinting technology inherited from Auditude. Specifically, Mr. Cahan and other former Auditude personnel can testify about the development, usage, marketing, and revenue associated with the digital fingerprinting technology that is the basis of Blue Spike's infringement accusations. Mr. Cahan and others at Yahoo! can testify as to what aspects of the Auditude business were acquired by Yahoo! from IntoNow, and to the extent IntoNow maintained relevant document sbaout Auditude's digital fingerprinting technology, they would reside with non-party

Yahoo! Both Mr. Cahan and Yahoo! reside in the San Francisco Bay Area. (Helfand Decl., ¶ 8.) Only a district court in the Northern District of California has subpoena power over Mr. Cahan.

Additionally, many prior art references cited during the prosecution of the Asserted Patents identify numerous inventors and companies situated in Northern California. Many or all of these third-parties may be key witnesses in the invalidity phase of the case. For example, during the prosecution of the '472 patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior art references. (Mar Decl., Ex. 1.) Among them, at least nine patent assignees are based in Northern California[1] and at least 24 prior art inventors reside in Northern California.[2] All of these potential witnesses are subject to the subpoena power of the Northern District of California.

Because the Northern District of California has absolute subpoena power over a significant number of known prior art witnesses, the availability of such power favors transfer to the Northern District of California. *Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in the chosen forum).

---

[1] These 9 assignees include Apple Computer, Inc. (Cupertino), Cisco Technology, Inc. (San Jose), Cryptography Research, Inc. (San Francisco), Hewlett-Packard Company (Palo Alto), Intel Corp. (Santa Clara), InterTrust Technologies Corp. (Sunnyvale), Macrovision Corp. (Sunnyvale), Sun Microsystems, Inc. (Mountain View, acquired by Northern California-based Oracle Corp. in 2010), and Stanford University (Stanford). (Dkt. No. 1-1; Ex. 1.)

[2] Gilles Boccon-Gibod (Los Altos), William Macy (Palo Alto), Minerva Ming-Yee Yeung (Sunnyvale), Paul Kocher (San Francisco), Paul Wehrenberg (Palo Alto), Martin Hellman (Stanford), Ralph Merkle (Palo Alto), Bailey Diffie (Berkeley), Mark Stefik (Woodside), Michalene Casey (Morgan Hill), Robert Lu (Sunnyvale), Boon-Lock Yeo (Sunnyvale), Tood Collart (Los Altos), Jean Laroche (Santa Cruz), Daneil Ullum (San Jose), Thomas Edsall (Mountain View), Soei-Shin Hang (Sunnyvale), Derek Nelson (Menlo Park), Glen Petrie (Los Gatos), Nicholas Briggs (Palo Alto), Norman Hardy (Portola Valley), Eric Hill (Palo Alto), David Van Wie (Sunnyvale), and James Barton (Los Gatos). (Dkt. No. 1-1; Exs. 1, 2.)

### 3. Cost Of Attendance For Willing Witnesses Favors The Northern District Of California

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses." *GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 8. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relation to the additional distance traveled." *In re Genentech*, 566 F.3d at 1343.

Here, with respect to party witnesses, Adobe's likely witnesses in this action, including its engineers, managers, and executives, reside and work within the Northern District of California. If this case is not transferred, these witnesses would each be burdened with travel of at least 1,500 miles each way to testify in this Court. *Droplets, Inc.*, 2012 WL 3578605, at *5. The same analysis applies for co-inventor Mike Berry, a current employee of Adobe residing in Seattle, Washington. Should Mr. Berry's testimony be required at trial, he would have to travel 3 times further from Seattle to Tyler (approximately 1,670 miles) as compared to a trip from Seattle to San Francisco (approximately 678 miles). (*See* Mar Decl., Exs. 31, 32).

As for Blue Spike, Section II(C) details how Blue Spike's sole employee and CEO, Scott Moskowitz, is a long-time resident of Florida and continues to reside there, maintaining a condominium in that state. (Dkt. 766-2, ¶ 5). Although Mr. Moskowitz alleges that he has suffered from a medical condition since 2006 that makes travel to California difficult and inconvenient, Mr. Moskowitz regularly travels between Florida and Tyler, his newly adopted residence created purely for litigation purposes. Given his frequent travels between Florida and Texas, it is simply not credible that Mr. Moskowitz cannot make occasional trips to the Northern District of California (where his lawyers *already* reside) to support his litigation there. And to

the extent Mr. Moskowitz is truly spending considerable time in Tyler, his frequent travels to Florida are as equally convenient as traveling to Northern District of California. There are 18 daily non-stop flights to San Francisco, California from Dallas/Fort Worth International airport as compared to 8 daily non-stops to Fort Lauderdale, Florida from Dallas/Fort Worth. (Mar Decl., Exs. 27, 29.) Flight times are about one hour longer to San Francisco than to Fort Lauderdale. (Mar Decl., Exs. 28, 30.)

In sum, the locations of both party and non-party witnesses also favor transfer to the Northern District of California. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be "clear error"); *Optimum Power Solutions*, 794 F. Supp. 2d at 702 (granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas); *Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at *3-4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district and no identified witness resides in plaintiff's chosen forum).

### 4.   All Other Concerns Weigh In Favor Of Transfer

The remaining considerations also favor transfer to the Northern District of California. First, this case is still in its infancy: no case management conference has been scheduled; no scheduling order has been issued; and no discovery has taken place. *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.,* No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer. There is no judicial economy here when Adobe shares no common underlying facts,

accused products, or accused technology with any other defendant in this case. As this Court recently emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue:

> The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.

*GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 11 (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)). Here, Blue Spike, formed in this District only three months before filing over 85 lawsuits in this District against over 150 defendants concerning different, non-overlapping products and services. Permitting Blue Spike to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping, and defeat the purpose of a key provision of the recently enacted America Invents Act, which limits the joinder of unrelated parties in patent cases. *See id.* at 11; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("Because the *cases involve different products . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.") (emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

Additionally, the Courts have emphasized that "motions to transfer venue are to be decided based on the situation which existed when suit was instituted." *In re EMC Corp.*, _____ (Fed. Cir. 2013); *Nobel Biz, Inc. v. Five9, Inc.*, No. 6:12-cv-00243-MHS (E.D. Tex. Mar. 28, 2013) (Schneider, J.). At the time of filing here, the Court had no familiarity with the 4

patents-in-suit or the technology. Absent a demonstration that the Court has experience with or is familiar with the patents in this case, the fact that there are overlapping cases does not equate to judicial economy. *Adaptix Inc. v. Motorola Mobility LLC,* No. 6:12-cv-00016-MHS, at 13-14 (E.D. Tex. Mar. 28, 2013) (Schneider, J.).

### C. Public Interest Factors Support Transfer To The Northern District Of California

In addition to private interest factors, courts also consider public interest factors in deciding whether transfer is appropriate. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *See GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 3. At least two of these factors weigh in favor of transfer.

#### 1. Relative Court Congestion Supports Transfer

The first public interest factor generally "favors a district that can bring a case to trial faster." *Id*. at 11. This District is more congested than the Northern District of California for patent litigation. The seven U.S. District Judges and eight Magistrate Judges in this District are burdened with 1,061 recently-filed patent cases, on top of more than 1,087 pending patent cases. (Mar Decl., Ex. 22.) In contrast, the Northern District of California has nineteen District Judges and eleven Magistrate Judges[3] to decide 265 recently-filed patent cases and 302 pending patent cases. (*Id.*) Given its lower caseload per judge, the Northern District of California resolves cases more quickly than the Eastern District of Texas. (*Id.,* Ex. 23 (N.D. Cal. has a median time

---

[3] *See* Judges - United States District Court, Northern District of California, http://www.cand.uscourts.gov/judges (last visited June 14, 2013).

interval from filing to disposition of 8.0 months, and 25.4 months for cases that went to trial; E.D. Tex has a median time of 8.6 months and 26.1 months, respectively.).)  Thus, the court congestion factor favors transfer.

### 2. Local Interest Favors The Northern District Of California

While the location of the alleged injury is traditionally an important consideration, this Court noted that "[w]hen the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district;" instead, the local interest lies in the district that is home to a party because "the suit may call into question the reputation of individuals that work in the community."  *GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 12; *see also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.").  Because the Accused Systems in this case are available nationwide, the Northern District of California—where the Accused Systems were developed and are still maintained and managed by Adobe staff, engineers, and managers in Northern California—has a particularized local interest in resolving this dispute.

Local interest, thus, strongly favors transfer to the Northern District of California.  *See, e.g.*, *Network Prot. Sciences, LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to California where defendants were headquartered, developed the accused products and employed thousands of people).

### 3. Both Forums Are Familiar With The Governing Law

This Court and the Northern District of California are equally familiar with patent law. Thus, this factor is neutral.

   **4.**  **There Is No Conflict Of Laws Question**

This case does not implicate conflicts of law and thus this factor is neutral.

**IV.**  **CONCLUSION**

For the foregoing reasons, balancing all of the private and public factors demonstrates that the Northern District of California is clearly more convenient than the Eastern District of Texas for this action. Adobe respectfully requests that this Court grant the requested transfer to the Northern District of California.

Dated: August 5, 2013      Respectfully submitted,

               /s/ *Deron Dacus*
               Deron R. Dacus
               Bar No. 00790553
               The Dacus Firm, PC
               821 ESE Loop 323, Suite 430
               Tyler, TX 75701
               (903) 705-1117

               Jeffrey M. Fisher (CA SBN 155284)
               jfisher@fbm.com
               Eugene Y. Mar (CA SBN 227071)
               emar@fbm.com
               Farella Braun + Martel LLP
               235 Montgomery Street, 17th Floor
               San Francisco, CA 94104
               Telephone: (415) 954-4400
               Facsimile: (415) 954-4480


               ATTORNEYS FOR DEFENDANT
               ADOBE SYSTEMS INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on August 5, 2013, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

/s/ *Deron Dacus*
Deron Dacus

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on June 27, 2013 via telephone conference with the following participants: Chris Honea for the Plaintiff and Eugene Mar for the Defendant. No agreement could be reached because the parties disagreed on the merits. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Deron Dacus*
Deron Dacus