IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § § | Civil Action No.:  6:12-CV-499 |
| Plaintiff, | § § | (*Consolidated from 6:12-CV-564*) |
| v. | § | |
| **TEXAS INSTRUMENTS, INC.,** | § § | |
| Defendant. | § § § § | |

**DECLARATION OF JEREMY HELFAND IN SUPPORT OF DEFENDANT ADOBE SYSTEMS INCORPORATED'S MOTION TO TRANSFER VENUE**

Pursuant to 28 U.S.C. § 1746, and under penalty of perjury under the laws of the United States of America, I declare that the following statements are true to the best of my knowledge, information, and belief, formed after reasonable inquiry under the circumstances:

1.  I began working at Adobe in October, 2011, and am currently Adobe's Vice President of Advertising Technology for Adobe Systems Incorporated ("Adobe").  Adobe is a Delaware corporation with its headquarters and principal place of business in San Jose, California.  Adobe's San Jose headquarters and its nearby San Francisco offices form its strategic center.  Adobe employs 3,050 people in these offices, including staff, engineers, product managers, and executives.

2.  As Vice President of Advertising Technology, my job responsibilities include oversight of the business that comprises Adobe Primetime and Adobe Auditude, Auditude Connect Platform, and Connect 2.0.  I understand that these are the products alleged to infringe the Plaintiff's patents in this case (the "accused products").

3. The accused Adobe products in this case contain advertising platform technology that was first developed by Auditude, Inc. (now an Adobe-owned subsidiary). Auditude was originally formed as an independent company with offices in Palo Alto, California in 1999. Auditude's CEO from 1999 through December 2010 was Adam Cahan, who on information and belief lived in the San Francisco Bay Area during this time.

4. One aspect of Auditude's business involved technology for "digital fingerprinting," which is rapid content recognition performed by comparing online content to "fingerprints" of copyrighted material or other source material.

5. A second, separate aspect of Auditude's business, developed in 2009, involved technology for selectively inserting advertisements into online media content. This technology allowed media companies to monetize existing online media content by inserting into it advertisements specifically targeted to individual viewers. This aspect of Auditude's business was sometimes referred to as the "advertising platform."

6. In December 2010, Auditude was split into two companies, both of which continued to be based in Palo Alto, California. A new company called "IntoNow," headed by Mr. Cahan, took over the technology and business related to Auditude's digital fingerprinting technology, which Blue Spike is apparently accusing of infringement in this action. The team that had developed the digital fingerprinting technology at Auditude joined IntoNow. At the same time, Auditude maintained the business and technology of the advertising platform. I joined Auditude as its new CEO to lead the advertising platform business.

7. In April 2011, Yahoo! acquired IntoNow. Yahoo! is based in Sunnyvale, California.

8. On information and belief, Mr. Cahan now works for Yahoo! in Sunnyvale, California as its Senior Vice President of Mobile and Emerging Products, and he still lives in the San Francisco Bay Area. Many other former Auditude employees also still live and work in the San Francisco Bay Area. Former Auditude employees like Mr. Cahan have unique and relevant knowledge about aspects of Auditude's digital fingerprinting technology, including its development, usage, marketing, and revenue.

9. In November 2011, Adobe acquired Auditude, and I became an employee of Adobe. After acquisition, Adobe shut down Auditude's digital fingerprinting business by January 2012 and focused on developing Auditude's advertising platform technology.

10. The products and services named in the Complaint relate to Adobe's advertising platform business. The overall design, development, management, and marketing of the accused products and services is and has been done primarily in Adobe's offices in San Francisco and San Jose, California. Specifically, including myself, 41 total Adobe employees work on the accused products worldwide. 29 of these are in San Francisco and San Jose, California. None of these are in Texas.

11. I am informed that Adobe's documents related to the development, operation, maintenance, marketing, and financial performance of the accused products are most easily accessible in San Francisco and San Jose. It is my understanding that none of the Adobe documents related to the accused products are located in Texas.

12. I understand that Adobe does not have any operations or facilities in the Eastern District of Texas that are involved in design or development of the accused products.

13. I understand that Adobe employs 103 people in Texas. The majority of those employees work on social analytics and worldwide customer support. I do not believe that any

28386\3627865.3

Adobe employees in Texas worked on either design, development, product management, or marketing of the accused products.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this __5__ day of __August__, 2013, in __San Jose__, CA.

                                                   JEREMY HELFAND