**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-499-MHS |
| Plaintiff, | LEAD CASE |
| v. | |
| TEXAS INSTRUMENTS, INC., | Jury Trial Demanded |
| Defendant. | |

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-537-MHS |
| Plaintiff, | CONSOLIDATED CASE |
| v. | |
| SOUNDHOUND, INC., | ORAL ARGUMENT REQUESTED |
| Defendant. | Jury Trial Demanded |

**DEFENDANT SOUNDHOUND, INC.'S MOTION TO TRANSFER VENUE
TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    FACTUAL BACKGROUND ........................................................................ 2

    A.    Witnesses And Documents Regarding The Accused Systems Are Located In Northern California ............................................................................................ 2

    B.    Key Third Party Witnesses Concerning Blue Spike's Inequitable Conduct And Invalidity Of The Asserted Patents Reside In California ............................... 3

    C.    A Large Number Of Additional Prior Art Entities And Witnesses Are Also In Northern California ............................................................................................ 5

    D.    The Inventors Also Reside Outside Of This District ................................................ 5

    E.    Blue Spike Was Incorporated In This District For Purposes of This Litigation ..... 7

II.    ARGUMENT ........................................................................................................ 7

    A.    Venue Is Proper In The Northern District Of California ....................................... 8

    B.    Private Interest Factors Strongly Favor Transfer To The Northern District Of California ............................................................................................................ 8

        1.    Easier Access To Sources of Proof Favors The Northern District Of California ............................................................................................ 8

        2.    Availability Of Compulsory Process Favors The Northern District Of California .......................................................................................... 10

        3.    Cost Of Attendance For Willing Witnesses Favors The Northern District Of California .......................................................................... 11

        4.    All Other Concerns Weigh In Favor Of Transfer ..................................... 12

    C.    Public Interest Factors Support Transfer To The Northern District Of California .......................................................................................................... 13

        1.    Relative Court Congestion Supports Transfer ......................................... 14

        2.    Local Interest Favors The Northern District Of California ...................... 14

        3.    Both Forums Are Familiar With The Governing Law ............................... 15

        4.    There Is No Conflict Of Laws Question .................................................. 15

III.    CONCLUSION .................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Balthasar Online, Inc. v. Network Solutions, LLC*,
 654 F. Supp. 2d 546 (E.D. Tex. 2009) ..................................................................2

*Droplets, Inc. v. Amazon.com, Inc.*,
 No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) ........................11, 12

Droplets, Inc. v. E*Trade Fin. Corp.,
 No. 11-cv-255, 2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) ..........................13, 14

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
 No. 10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ...................................9

*Hoffman v. Blaski*,
 363 U.S. 335 (1960) ...............................................................................................6

*In re Acer Am. Corp.*,
 626 F.3d 1252 (Fed. Cir. 2010) .............................................................................9

*In re Biosearch Techs., Inc.*,
 No. 995, 2011 WL 6445102 (Fed. Cir. Dec. 22, 2011) .........................................9

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009) .....................................................................8, 9, 11

*In re Hoffman-La Roche, Inc.*,
 587 F.3d at 1337 (Fed. Cir. 2009) ........................................................................10

*In re Microsoft Corp.*,
 630 F.3d 1361 (Fed. Cir. 2011) ...........................................................................13

*In re TS Tech USA*,
 551 F.3d 1315 (Fed. Cir. 2008) ...........................................................................12

*In re Volkswagen AG*,
 371 F.3d 201 (Fed. Cir. 2004) ........................................................................8, 15

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ............................................................................7, 8

*In re Zimmer Holdings, Inc.*,
 609 F.3d 1378 (Fed. Cir. 2010) ...........................................................................13

*Internet Machs. LLC v. Alienware Corp.*,
    No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun 7, 2011) ...................................................13

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
    No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ................................................13

*Network Protection Scis. LLC v. Juniper Networks, Inc.*,
    No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012).................................2, 15

*NovelPoint Learning LLC v. LeapFrog Enters.*,
    No. 10-cv-229-JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ...........................................9

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
    No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)..............................................2

*Optimum Power Solutions v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex. 2011) ........................................................................2, 9, 12

*PersonalWeb Techs., LLC v. Google Inc.*,
    No. 6:11-cv-656-LED, Dkt. No. 131 (E.D. Tex. Mar. 21, 2013) .......................................2, 15

*Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*,
    No. 10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012)..........................................12

**STATUTES**

28 U.S.C. § 1331 ................................................................................................................................8

28 U.S.C. § 1338(a) ..........................................................................................................................8

28 U.S.C. § 1391(b) ..........................................................................................................................8

28 U.S.C. § 1404(a) ................................................................................................................. *passim*

35 U.S.C. § 299 ...............................................................................................................................13

Pursuant to 28 U.S.C. § 1404(a), SoundHound, Inc. ("SoundHound") respectively moves to transfer this action to the United States District Court for the Northern District of California.

The present case has no relation to this District beyond the fact that Blue Spike, LLC ("Blue Spike") was formed just months before the case was filed for the purpose of pursuing this and other actions.  The patents-in-suit were transferred to Blue Spike on August 4, 2012 – only five days before Blue Spike's litigation campaign began.  And neither inventor, nor any identified witness of Blue Spike, resided in this District at the time the suit was instituted.  One co-inventor, Scott Moskowitz, is a long time resident of Florida and was a resident of Florida at the time this case was filed[1]; the other, Michael Berry, lives in Seattle, Washington.  Since the filing of the earliest application in 2000, the patents-in-suit belonged to Blue Spike, Inc., a long-standing Florida corporation, with no identifiable activities in Texas, much less in this District.

This case, however, maintains very significant ties to the Northern District of California.  All of SoundHound's executives and staff making significant decisions regarding the accused systems work at SoundHound's Santa Clara headquarters.  None reside in Texas.  To the extent customers use SoundHound's technology, they are connecting to and using SoundHound's servers, software and databases located in the Northern District of California.

Most importantly, key third party witnesses and documents are located in the Northern District of California.  To date, SoundHound has identified six third party witnesses with unique knowledge regarding Blue Spike's inequitable conduct before the United States Patent and Trademark Office ("USPTO").  These fact witnesses possess critical testimony, yet cannot voluntarily attend SoundHound's trial in Texas due to work and other obligations.  Those witnesses, as well many additional prior art witnesses, reside in Northern California.

---

[1] As addressed below, Mr. Moskowitz was a Florida resident at the time this case was instituted, which is the relevant period for the purposes of this motion.

1

The Eastern District has repeatedly recognized that transfer is appropriate in cases like this one, where neither party has substantial ties to this District and the Northern District of California is clearly the more convenient forum.[2]  Consistent with these facts and this District's prior decisions, the Northern District of California is the "clearly more convenient" forum for this dispute.  Accordingly, SoundHound requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

## I.      FACTUAL BACKGROUND

Blue Spike filed suit against SoundHound in this District on August 16, 2012, alleging that SoundHound's "Sound2Sound and SoundHound software, applications, systems, and technology" (the "Accused Systems") infringe U.S. Patent Nos. 7,346,472 (the '472 patent), 7,660,700 (the '700 patent), 7,949,494 (the '494 patent), and 8,214,175 (the '175 patent) (collectively, the "Asserted Patents").  (C.A. 12-cv-537, Dkt. 1, ¶ 27.)  The Asserted Patents share a common specification and purportedly relate to methods and systems for identifying matching text, visual, audio, and video signals.  As described below, the relevant facts weigh in favor of transfer to the Northern District of California.

### A.      Witnesses And Documents Regarding The Accused Systems Are Located In Northern California

Since its founding in 2005, SoundHound has been headquartered in the Northern District of California.  (Declaration of Kamyar Mohajer In Support Of SoundHound's Motion To Transfer ("Mohajer Decl."), ¶ 3.)  SoundHound's current headquarters, located in Santa Clara,

---

[2] *See, e.g., PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, Dkt. No. 131 (E.D. Tex. Mar. 21, 2013); *Network Protection Scis. LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012); *Optimum Power Solutions v. Apple, Inc.*, 794 F. Supp. 2d 696 (E.D. Tex. 2011); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010); *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546 (E.D. Tex. 2009).

California, is SoundHound's strategic and operational center.  (*Id*.)   All significant decisions relating to SoundHound's overall business, including the sales, marketing and engineering decisions relating to the Accused Systems, are made by senior executives residing in Santa Clara, California.  (*Id*. at ¶¶ 4-10.)  With the exception of a handful of sales representatives, none of which reside in Texas, all of SoundHound's personnel, including its staff, engineers, product managers, and executives, work in Northern California.  (*Id*., ¶ 4.)  All engineers and other persons with relevant knowledge regarding the Accused Systems are based in Santa Clara.  (*Id*.) Specifically, Keyvan Mohajer, Founder, President and Chief Executive Officer, and Tim Stonehocker, Chief Technology Officer, possess relevant knowledge concerning the design and operation of SoundHound's Accused Systems.  (*Id*., ¶¶ 5-6.)  Both are employed at SoundHound's Santa Clara, California location.  (*Id*., ¶¶ 5-6.)  Kathleen McMahon, Vice President of Sales and Marketing, possesses relevant knowledge regarding the sales and marketing of the Accused Systems.  (*Id*., ¶ 8.)  Ms. McMahon works in Santa Clara.  (*Id*.)

All documents, including all electronic documents, relating to the development of the Accused Systems are located at SoundHound's Santa Clara headquarters.  (*Id*., ¶ 7.)  Documents relating to accounting, sales, and marketing of the Accused Systems are also located in Santa Clara, California.  (*Id*., ¶ 9.)  Finally, all of the source code repositories, containing sensitive, trade-secret source code relating to the Accused Systems are located in Santa Clara, California. (*Id*., ¶ 7.)  No documents or witnesses with knowledge relating to the Accused Systems are located in this District.  (*Id*., ¶ 10.)

### B.   Key Third Party Witnesses Concerning Blue Spike's Inequitable Conduct And Invalidity Of The Asserted Patents Reside In California

The claimed inventions of the Asserted Patents are not novel.  As set forth in Facebook, Inc.'s Amended Answer to Original Complaint for Patent Infringement ("Facebook's Amended

Answer"),[3] the named inventor and Blue Spike's president, Scott Moskowitz, knew of material prior art systems offered by a company named Muscle Fish LLC ("Muscle Fish").[4]  (Dkt. 868, ¶¶ 15-35.)  Muscle Fish was founded in 1992 in Northern California by Erling Wold, Doug Keislar, Thom Blum and Jim Wheaton.  (*Id.*, ¶ 17.)  During the mid 1990s, Muscle Fish developed a technology "for looking up and comparing known and unknown content based on a set of features of content called 'MFCCs.'"  (*Id.*, ¶ 18.)  Muscle Fish later merged with Audible Magic Corporation.  (*Id.*, ¶ 20.)  Vance Ikezoye and James Schrempp of Audible Magic built on Muscle Fish's technology, creating a system "for identifying media content presented over a media playing device."  (*Id.*. ¶ 20; Declaration of Bryan Kohm in Support of Motion to Transfer Venue ("Kohm Decl."), Ex. 26 (U.S. Patent No. 6,834,308), abstract.)[5]

The Muscle Fish and Audible Magic technologies predate the Blue Spike patents, the first of which was filed in 2000.  Mr. Moskowitz knew of these technologies.  He had multiple discussions with Muscle Fish about its technology during the late 1990s, and even had licensing discussions regarding the technology in 2001 with Audible Magic.  (Dkt. 868, ¶¶ 24, 27.)  During the prosecution of the asserted patents, Mr. Moskowitz concealed the commercially available implementations of the Muscle Fish and Audible Magic systems from the USPTO.  (*Id.*, ¶¶ 25-26, 28.)  The materiality of these technologies is demonstrated by the simple fact that Blue Spike now accuses those technologies of infringing the asserted patents.  (*Id.*, ¶ 29.)

The Muscle Fish and Audible Magic prior art systems are relevant to not just inequitable conduct but also to invalidity, as they invalidate claims of the asserted patents.  All six of the

---

[3] SoundHound is in the process of amending its answer to include the same inequitable conduct allegations as set forth in Facebook's Amended Answer.

[4] The factual statements in this section are based on the factual allegations in Facebook's Amended Answer.

[5] All exhibits cited in this motion are attached to the Kohm Declaration.

inventors of Muscle Fish and Audible Magic technologies reside in Silicon Valley.[6]  Due to their work obligations, they are unable to travel to Texas for SoundHound's trial.[7]

### C.     A Large Number Of Additional Prior Art Entities And Witnesses Are Also In Northern California

Northern California also is home to numerous companies and research institutions with relevant prior art.  Indeed, prior art references cited during the prosecution of the Asserted Patents alone identify many inventors and companies situated in Northern California.  For example, during the prosecution of the '472 patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior art references.  (Kohm Decl., Ex. 1.)  Among them, at least nine patent assignees and at least 24 prior art inventors reside in Northern California.  (Kohm Decl., ¶ 5-6, Exs. 2, 3.)  These witnesses possess information relevant to the state of the art and validity of the asserted patents.

### D.     The Inventors Also Reside Outside Of This District

The named inventors of the Asserted Patents, Scott Moskowitz and Michael Berry, also do not reside in this District.  In an inventor declaration submitted to the Patent Office in 2000 during the prosecution of U.S. Patent Application Serial No. 09/657,181 (the "'181 Application") (the original application that led to the Asserted Patents), Moskowitz and Berry declared their residence in Florida and New Mexico, respectively.  (Ex. 4.)  From late 2005 to 2008, Moskowitz himself prosecuted the '181 Application from his residence in Florida.  (Exs. 5, 6.)  In March 2008, the '181 Application issued as the '472 patent, which, on its face, identifies Moskowitz and Berry as Florida and New Mexico residents, respectively.  (Dkt. 1-4.)

---

[6] See paragraph 3 of the Declarations in Support of Motion to Transfer Venue of James Schrempp, Douglas Keislar, Thomas Blum, Vance Ikezoye, James Wheaton, and Erling Wold filed with the present motion (collectively, "Witness Declarations").

[7] Witness Declarations, ¶ 4.

From 2007 to 2010, Moskowitz prosecuted two continuation applications of the '181 Application, again from his residence in Florida.  (Exs. 7, 8.)  These two applications, issued as the '700 and '494 patents, identify Berry as a resident of Virginia (the '700 patent) and Washington (the '494 patent) and Moskowitz as still residing in Florida.  (Dkt. 1-2; 1-3.)

In February 2011, Moskowitz and Berry submitted another inventor declaration in the prosecution of the '181 Application, averring their residence in Florida and Washington, respectively.  (Ex. 9.)  This application issued as the '175 patent in July 2012, and identified Moskowitz and Berry as still residing in Florida and Washington, respectively.  (Dkt. 1-1.)

Although Mr. Moskowitz now claims to be a resident of Texas (see Dkt. 766-2, ¶ 3), the evidence demonstrates that he was a Florida resident when this case was instituted and still today.[8]  Mr. Moskowitz voted in the general elections in Florida in November 2012, well after the present suit was initiated.  (Ex. 18 (Florida voting record).)  Under Florida law, Mr. Moskowitz was eligible to vote in the November 2012 Florida election only if he was a resident of Florida at the time.[9]  Mr. Moskowitz's LinkedIn profile indicates that he lives in Florida and he maintains a Florida registration for his vehicle.  (*See* Exs. 16 (LinkedIn profile), 17 (Florida vehicle registration).)  His patent applications and patents published or issued between August 2012 to January 2013 identify his residence in Florida.  (Ex. 10.)  Further, Mr. Moskowitz has

---

[8] It is unnecessary for the Court to determine Mr. Moskowitz's current residency status.  Motions to transfer venue are to be decided based on the "situation which existed when suit was instituted."  *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

[9] A person may be registered and permitted to vote in a county in Florida only if that person is a legal resident of that county.  (Ex. 19 (excerpts of Florida elections laws for 2012), p. 6 at section 97.042).  If Mr. Moskowitz had, in fact, changed his residence to Texas before the present action was filed, Florida law requires that he notify the Florida supervisor of elections of his change in residence address.  (Ex. 19, p. 13 at section 97.1031.)  Given that Mr. Moskowitz made no such notification and voted in the November 2012 elections in Florida, there can be no question that he was a Florida resident at that time.

been an officer of at least three Florida-based companies: Blue Spike, Inc., Canopus Medical LLC, and Wistaria Trading Inc.  (Exs. 11, 12, 13.)  Two of these companies filed annual reports with the Secretary of State of Florida in January 2013 listing Florida as the principal place of business for both.  (Exs. 14, 15.)  Notably, Mr. Moskowitz signed both of these filings on January 20, 2013, and indicated that he currently resides in Florida.  (*Id*.)  Even Mr. Moskowitz's declaration filed in this case (Dkt. 766-2) was executed in Miami, Florida.  And the address he claims as his residence in Tyler is a bed and breakfast.  (Ex. 20; Dkt. 766-2, ¶ 3.)

### E.  Blue Spike Was Incorporated In This District For Purposes of This Litigation

In 2000, 2007, and 2009, Moskowitz and Berry assigned their inventions in the Asserted Patents to Blue Spike, Inc., a private company based in Florida since 1997.  (Ex. 21.)  There is no indication that Blue Spike, Inc. has ever conducted any business within the Eastern District of Texas.  On May 14, 2012, a mere three months before bringing this action, Mr. Moskowitz incorporated Blue Spike LLC in Tyler, Texas.  (Ex. 22.)  On August 4, 2012, less than a week before filing the lead case in this District, Moskowitz, on behalf of Blue Spike, Inc., assigned the Asserted Patents to Blue Spike.  (Ex. 23.)  It appears that Moskowitz is the only employee of Blue Spike and there is no customer or contractor of Blue Spike, much less any in this District.

## II.  ARGUMENT

The determination of whether a case should be transferred pursuant 28 U.S.C. § 1404(a) is based on, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).  The relevant factors clearly favor transferring this action to the Northern District of California.

A.       **Venue Is Proper In The Northern District Of California**

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004).  A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case.  *Id*.  There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a).  Nor is there any question that the Northern District of California has personal jurisdiction over SoundHound and is a proper venue for this case given SoundHound's presence there.  *See* 28 U.S.C. § 1391(b).

B.       **Private Interest Factors Strongly Favor Transfer To The Northern District Of California**

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.  All of these factors weigh in favor of transfer to the Northern District of California.

1.       **Easier Access To Sources of Proof Favors The Northern District Of California**

In analyzing the first private interest factor, this Court recognizes that:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.

*GeoTag*, Case No. 2:11-cv-403-MHS, Dkt. No. 114, at 3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Here, as discussed above, SoundHound's documents relevant to

this case are located in Northern California,[10] as are SoundHound's employees who will testify regarding the Accused Systems.

In contrast, Blue Spike was formed a mere three months before filing its first lawsuit in this District. The limited documents created since Blue Spike's formation, or those trucked into Texas for purposes of this litigation, do not merit keeping the case here. *See Optimum Power Solutions*, 794 F. Supp. 2d 696 at 701 (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered); *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) ("[W]eight given to the location of [plaintiff's] documents is determined by whether plaintiff is an 'ephemeral' entity.").

As the accused infringers, SoundHound is likely to possess a larger volume of documents relevant to this litigation. *See In re Genentech*, 566 F.3d at 1345. Accordingly, the relevant evidence in this action is more readily accessible from the Northern District of California, favoring transfer to that district. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102, at *2-3 (Fed. Cir. Dec. 22, 2011) (ordering transfer to the Northern District of California where neither party had identified any witnesses in the Eastern District of Texas); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting transfer to the Northern District of California where majority of documents and evidence, and several witnesses, were likely to be in that district).

---

[10] Although documentary evidence may be stored electronically, the Court considers the physical location of where those documents are stored. *Genentech*, 566 F.3d at 1345-46. In this case, SoundHound stores nearly all of its relevant documents in the Northern District of California. (Mohajer Decl., ¶¶ 7, 9.) None are stored in this District. (*Id.*, ¶ 10)

### 2. Availability Of Compulsory Process Favors The Northern District Of California

A venue is favored when it has subpoena power to compel attendance at deposition and trial over the majority of non-party witnesses. *GeoTag*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 5 (citing *Hoffman-La Roche*, 587 F.3d at 1337-38). Here, a great number of potential non-party defense witnesses are located in the Northern District of California, home to universities and high-tech companies who were active in the field of endeavor relevant to this action in the relevant timeframe. As discussed above, it would be too burdensome for the six Muscle Fish and Audible Magic witnesses to attend SoundHound's trial if it were to proceed in Texas. (Witness Declarations, ¶ 4.) But because they reside in Silicon Valley, they are subject to compulsory process in the Northern District of California.[11] (Witness Declarations, ¶ 3.)

In addition, the inventors themselves identified to the PTO at least 24 different third party prior art inventors (and at least nine different prior art entities) who reside in Northern California. To the extent these non-party prior art witnesses are unwilling to attend deposition or trial, the Northern District of California has the authority to compel their attendance.

In contrast, there are no known third party witnesses who would be subject to the subpoena power of the Eastern District of Texas. Blue Spike is a non-practicing entity and has no known affiliates that are under this Court's subpoena power. One of the co-inventors is an employee of the plaintiff, and the other currently resides in Washington. SoundHound is unaware of any non-party defense witnesses who are subject to this Court's subpoena power.

Since the Northern District of California has absolute subpoena power over a significant

---

[11] Although Blue Spike has sued Audible Magic in a separate action, the Muscle Fish and Audible Magic witnesses are third parties as to the action between SoundHound and Blue Spike, and therefore this Court lacks subpoena power over those witnesses for the purpose of SoundHound's trial.

number of known third party witnesses, including both inequitable conduct and prior art witnesses, the availability of such power favors transfer to the Northern District of California. *Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in the chosen forum).

### 3.     Cost Of Attendance For Willing Witnesses Favors The Northern District Of California

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses." *GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 8. While courts analyze the convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Id*. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relation to the additional distance traveled." *In re Genentech*, 566 F.3d at 1343. Moreover, the question is not whether "*all* of the witnesses" reside in the transferee forum, but whether a "substantial number" are there. *Id.* at 1345.

Here, with respect to party witnesses, SoundHound's witnesses in this action, including its engineers, managers, and executives, reside and work within the Northern District of California. If this case is not transferred, these witnesses would each be burdened with travel of at least 1,500 miles each way to testify in this Court. *Droplets, Inc.*, 2012 WL 3578605, at *5. Since SoundHound is a small but growing company, the simultaneous travel of multiple witnesses to trial will cause significant disruption to its business operations at home. As for Blue Spike, it appears to have a single employee, Mr. Moskowitz, who is a long time resident of

Florida.  For him, travel to Northern California is no more inconvenient than travel to this Court.

With respect to non-party witnesses, numerous engineers familiar with prior art instrumentalities are centralized in Northern California and would also have to travel over 1,500 miles to attend trial in this District (to the extent they are willing).  These non-party witnesses will have to bear the burden and expense of airfare, hotels, meals, and other expenses associated with travel away from home.  More importantly, these non-party witnesses will suffer additional days of absence from their work and other endeavors if they need to travel to this District for trial as opposed to trial in Northern California.  And, Mr. Berry, the co-inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to Northern California than to this Court.  *Droplets, Inc.*, 2012 WL 3578605, at \*5 (noting that location of relevant third-party witnesses in, and closer to, the transferee venue favored transfer).

In sum, the locations of both party and non-party witnesses also favor transfer to the Northern District of California.  *See In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be "clear error"); *Optimum Power Solutions*, 794 F. Supp. 2d at 702 (granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas); *Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at \*3-\*4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district).

### 4.     All Other Concerns Weigh In Favor Of Transfer

The remaining considerations also favor transfer to the Northern District of California. First, this case is still in its infancy: no case management conference has been scheduled; no scheduling order has been issued; and no discovery has taken place.  *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961, at \*8 (E.D. Tex. Jun 7, 2011)

(recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer.  As this Court recently emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue:

> The Court will not permit the existence of separately filed cases to sway its transfer analysis.  Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.

*GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 11 (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)).  Here, Blue Spike was formed in this District only three months before this action.  Permitting Blue Spike to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping, and defeat the purpose of a key provision of the recently enacted America Invents Act, which limits the joinder of unrelated parties in patent cases.  *See id.* at 11; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("Because the *cases involve different products . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.") (emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

### C.   Public Interest Factors Support Transfer To The Northern District Of California

Courts also consider public interest factors in deciding whether transfer is appropriate.

The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law."  *See GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 3.  These factors also weigh in favor of transfer.

### 1.  Relative Court Congestion Supports Transfer

The first public interest factor generally "favors a district that can bring a case to trial faster."  *Id*. at 11.  This District is more congested than the Northern District of California for patent litigation.  The seven District Judges and eight Magistrates in this District are burdened with 1,061 recently-filed patent cases, on top of more than 1,087 pending patent cases.  (Ex. 25.)  In contrast, the Northern District of California has twenty District Judges and eleven Magistrates to decide 265 recently-filed patent cases and 302 pending patent cases.[12]  (*Id.*)  Given its greater resources, the Northern District of California resolves cases more quickly than the Eastern District of Texas.  (Ex. 26 (N.D. Cal. has a median time interval from filing to disposition of 8.0 months, and 25.4 months for cases that went to trial; E.D. Tex has a median time of 8.6 months and 26.1 months, respectively.).)  Thus, this factor slightly favors transfer.

### 2.  Local Interest Favors The Northern District Of California

While the location of the alleged injury is traditionally an important consideration, this Court noted that "[w]hen the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district;" instead, the local interest lies in the district that is home to a party because "the suit may call into question the reputation of individuals that work in the community."  *GeoTag*, No. 11-cv-403-MHS, Dkt. No. 114, at 12;

---

[12] *See* Judges - United States District Court, Northern District of California, http://www.cand.uscourts.gov/judges (last visited August 6, 2013).

*see also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.").  Even if the Accused Systems in this case are deemed to be available nationwide, the Northern District of California – where the Accused Systems were developed and are still maintained and managed by SoundHound staff, engineers, and managers – has a particularized local interest in resolving this dispute.  *See, e.g.*, *PersonalWeb Techs.*, No. 11-cv-656, Dkt. No. 131, at 23 (finding the Northern District of California to have a strong local interest in a case because that was where the defendant was headquartered and the accused products were developed).

In contrast, there is no legitimate local interest with respect to the alleged infringement in this District, where, as discussed above, Blue Spike's ties to this District are ephemeral and entirely manufactured in anticipation of litigation.  Local interest, thus, strongly favors transfer to the Northern District of California.  *See, e.g.*, *Network Prot. Sciences LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the Northern District of California where defendants were headquartered, developed the accused products and employed many people).

### 3.    Both Forums Are Familiar With The Governing Law

Both venues are equally familiar with patent law.  Thus, this factor is neutral.

### 4.    There Is No Conflict Of Laws Question

This case does not implicate conflicts of law and thus this factor is neutral.

## III.   CONCLUSION

For the foregoing reasons, SoundHound respectfully requests that this Court grant the requested transfer to the Northern District of California.

Dated:  August 7, 2013                    Respectfully submitted,


                                          */s/ Bryan A. Kohm*
                                                 Bryan A. Kohm
                                                 bkohm@fenwick.com

                                          Teresa M. Corbin, CA Bar No. 132360
                                          (Admitted E.D. Texas)
                                          Bryan A. Kohm, CA Bar No. 233276
                                          (Admitted E.D. Texas)
                                          David Lacy Kusters, CA Bar No. 241335
                                          (Admitted E.D. Texas)
                                          FENWICK &WEST LLP
                                          555 California Street, 12th Floor
                                          San Francisco, California 94104
                                          Telephone: (415) 874-2300
                                          Facsimile: (415) 281-1350

                                          Darren E. Donnelly, CA Bar No. 194335
                                          (Admitted E.D. Texas)
                                          FENWICK &WEST LLP
                                          Silicon Valley Center
                                          801 California Street
                                          Mountain View, California 94041
                                          Telephone: (650) 955-8500
                                          Facsimile: (650) 983-5200
                                          Attorneys for Defendant
                                          SOUNDHOUND, INC.

16

## CERTIFICATE OF SERVICE

I hereby certify that, on August 7, 2013, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

/s/ *Bryan A. Kohm*
Bryan A. Kohm

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on July 11, 2013 via telephone conference with the following participants:  Kirk Anderson for the Plaintiff and Bryan Kohm for the Defendant.  No agreement could be reached because the parties disagreed on the merits.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Bryan A. Kohm*
Bryan A. Kohm