# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff,* | § | Case No. 6:12-cv-499-MHS |
| | § | |
| v. | § | Lead Case |
| | § | |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| | § | |
| *Defendants.* | § | |

### BLUE SPIKE'S OPPOSITION TO SOUNDHOUND'S MOTION TO TRANSFER VENUE [DKT. 916]

## Introduction

Plaintiff Blue Spike, LLC is a Texas company with its headquarters and principal place of business in Tyler, Texas. *See* Compl. ¶2. Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread digital abstracting—including certain "digital fingerprinting" technology—which is a means of identifying digital content via its unique markers. The companies that employ digital abstracting today— including SoundHound—have profited from infringing Blue Spike's patents. Blue Spike has filed multiple lawsuits in this Court against infringers on these same four patents. The Court consolidated the suits for pretrial purposes based on "common questions of law or fact," finding that consolidation "would promote efficient case management." *See* Ex. 1 (October 9, 2012 consolidation order) at 15; *see also* Ex. 2 (March 25, 2013 consolidation order) at 17.

SoundHound impugns Blue Spike, calling Blue Spike a non-practicing entity without explaining what it means by the term. *See* Dkt. 916 at 10. Still, sticks and stones do not change the fact that, by any measure, Blue Spike is a practicing entity. An affiliate of the long-existent Blue Spike Inc., Plaintiff Blue Spike, LLC is wholly owned by the inventor of the patents-in-suit, and it actively markets and services its products. Moskowitz Decl. ¶¶1-6. Blue Spike is open for business.

Blue Spike—whose operations are all in the Eastern District of Texas— opposes SoundHound's transfer motion for three reasons: (1) paramount considerations of judicial efficiency weigh heavily against transfer, since the case against SoundHound is deeply intertwined with others in this District; (2) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—defeats transfer; and (3) SoundHound has not shown that other public and private interests make the Northern District of California "clearly more convenient" than this District.

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. §1404(a). "[T]he party seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district." 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.12[3]

2

(3d ed. 2012). The transfer movant must also show good cause for transfer and prove that the proposed transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 315 (5th Cir. 2008) (en banc). In evaluating whether a movant has made this showing, courts weigh several private-interest and public-interest factors. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Id.* Although not a distinct factor, the plaintiff's choice of venue should always be accorded deference. *Id.* at 1320. The public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in the outcome of the case; (3) the familiarity of the forum with applicable law; and (4) the avoidance of unnecessary problems of conflicts of laws. *Id.*

## Argument

## I.    The "Paramount" Federal Interest in Judicial Efficiency— Without More—Defeats Transfer.

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F.App'x 295, 296 (Fed. Cir. 2011). Judicial economy is so important that it provides a sufficient basis to deny transfer even "when all of

the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).[1] Multiple lawsuits involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the cases for pretrial purposes because they "involve a common question of law or fact" and because consolidation will "promote efficient case management." *See* Ex. 1 at 15; Ex. 2 at 17. SoundHound's motion second-guesses that determination.

Here, transfer is especially inappropriate because the consolidated cases share more than just the patents-in-suit: the factual and legal issues, and the defendants themselves, are deeply intertwined. For example, other consolidated defendants' accused products have very similar functionality to SoundHound's. *See, e.g.*, Case No. 6:12-cv-500, Dkt. 1 at ¶27 (Shazam). And SoundHound's own transfer motion discusses at length how this suit relates to technology owned by Audible Magic, Inc. (*see* Dkt. 916 at 3-5), which Blue Spike has also sued in this District along with 23 other companies that use Audible Magic's technology. *See generally* Case No. 6:12-cv-576, Dkt. 1. That technology, in turn, has very similar functionality to that of many other

---

[1] *See also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that a defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

consolidated codefendants. *See, e.g.*, Case No. 6:12-cv-682, Dkt. 1 at ¶27 (BMAT Licensing S.L.); Case No. 6:12-cv-598, Dkt. 1 at ¶27 (Soundmouse); Case No. 6:12-cv-568, Dkt. 1 at ¶30 (Zeitera); Case No. 6:12-cv-557, Dkt. 1 at ¶28 (Civolution); Case No. 6:12-cv-539, Dkt. 1 at ¶27 (Vobile); Case No. 6:12-cv-533, Dkt. 1 at ¶27 (Tunesat). All of this overlap proves that if the Court were to grant SoundHound's transfer motion but retain other related or similar lawsuits, it would guarantee that multiple courts would have to weigh identical issues, duplicate each other's efforts, and issue potentially conflicting rulings.

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 3). There, the Court denied transfer, reasoning that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id*. Other recent cases—all on point—likewise counsel against transfer. *See, e.g.*, *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-00416-JRG, Dkt. 416, at (E.D. Tex. Aug. 9, 2013) (attached as Ex. 4) (denying transfer because, as here, some groups of consolidated defendants had asked for transfer to different districts while others had not, meaning the

case would "be split into three parallel co-pending actions involving the same asserted patents . . . and unavoidably risk duplicative proceedings involving the same or similar issues between three different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions"); *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 5) (holding that, where plaintiff had filed multiple suits in this District on the same four patents, transfer was improper because "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 6) (denying motion to transfer a consolidated patent suit because "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

Transfer would create inefficiency because this case shares not only the patents-in-suit with other consolidated cases but also "related defendants [and] overlapping products [and] services." *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 7). A transfer would undermine the "paramount" consideration of judicial efficiency, forcing multiple federal courts to expend duplicative efforts considering common questions of law and fact and creating an unnecessary

risk of inconsistent claim construction and adjudication. *In re Google*, 412 F.App'x at 296. This is a stand-alone ground for denying transfer.

## II. The Serious Health Problems of Blue Spike's CEO and Inventor—an Essential Witness—Also Defeat Transfer.

"The health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases). A party's health concerns may, without more, control the result of a transfer motion. *See, e.g.*, *BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (granting defendants' transfer motion based on defendant's health problems even though the contract contained a choice-of-venue clause and many other factors weighed against transfer). Here, transfer would cause serious hardship for Blue Spike's CEO and inventor, Scott Moskowitz, who suffers from a medical condition that makes traveling very painful. Moskowitz Decl. ¶11. SoundHound dispenses medical advice in suggesting that travel to Northern California would not "inconvenience" Moskowitz. Dkt. 916 at 12. But SoundHound has never interviewed Moskowitz or his treating physician, who explains that such travel would inflict pain and risk serious medical harm. Moskowitz Decl. ¶11. Moskowitz resides in this District. *Id.* ¶3.[2] Florida is the only other place where he regularly spends time—and he does so only to

---

[2] SoundHound tries to argue that Moskowitz actually resides in Florida. *See* Dkt. 916 at 5-7. He does not. He used to reside there and still owns a condominium there, but he has resided in Tyler since before this case was filed. Moskowitz Decl. ¶3.

receive medical treatment unavailable elsewhere and in order to finalize matters related to hurricane-related damage to his condominium there. *Id*.

III. **The Other Interest Factors Weigh Against Transfer, and SoundHound Has Not Met Its Burden of Showing That the Northern District of California Is Clearly More Convenient.**

 A. **The Private-Interest Factors Weigh Against Transfer—and Certainly Do Not Show the District of California to Be Clearly More Convenient.**

 1. *Blue Spike's Interests—Including the Location of and Burdens on Blue Spike and its Witnesses—Count in the Transfer Analysis.*

The transfer analysis is not solely about what is convenient for SoundHound. The plaintiff's interests and burdens are relevant, too. Blue Spike is a practicing entity located in Tyler, Texas; it actively markets and sells its products in Texas; it plans to call witnesses from Texas; Blue Spike's inventor and CEO lives in Tyler; Blue Spike was incorporated in Texas over a year ago and is the result of 25 years of research, development, and deployment of products and services; it has its headquarters and principal place of business in this District and has its server in Tyler; and Blue Spike's employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl. ¶¶1-6; Compl. ¶2. By any definition, Blue Spike is a practicing entity.[3] And while SoundHound suggests that Blue Spike's ties to

---

[3] Movant accuses Blue Spike of being a "non-practicing entity" without providing any kind of definition. *See* Dkt. 916 at 10. Blue Spike is emphatically not an NPE; rather, it is an active, Tyler-based business that markets and sells its products and services.

this District should be disregarded (Dkt. 916 at 7, 9), the Court's precedents dictate otherwise.[4]

Litigating this action in the Northern District of California would be extremely inconvenient and burdensome for Blue Spike and Moskowitz. A transfer would make litigation more expensive for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious personal hardship for Moskowitz due to his medical condition. *See* Moskowitz Decl. ¶¶7-11; Part II, *supra*. Those burdens are critically important in the transfer analysis because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848.

Blue Spike has no connection to the Northern District of California apart from the fact that its lead attorneys have offices in both Northern California and in Tyler, Texas. *See* Moskowitz Decl. ¶7. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize. The relative burdens on the parties and their witnesses weigh against transfer.

---

[4] *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created solely to manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010) (holding that plaintiff's presence was not "recent" or "ephemeral" where plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

2.    *The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.*

SoundHound claims that the majority of its relevant evidence is located in the Northern District of California. Dkt. 916 at 8-9. Even if true, this tells only part of the story. The location of Blue Spike's evidence also matters—and all of Blue Spike's evidence is located here. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached as Ex. 8) (holding that the fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer); Moskowitz Decl. ¶¶5-7; Compl. ¶2. Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; rather, its entire operation has been here for over a year. *See* Moskowitz Decl. ¶4. The presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5; *see also Geotag*, Ex. 7 at 5-6 (even if "the bulk of the relevant evidence" is located in the proposed transferee district, this factor weighs only "slightly" in favor of transfer when the plaintiff "maintains strong ties to the Eastern District of Texas").

3.    *The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.*

SoundHound identifies six nonparty witnesses who live in Northern California—all of whom are affiliated with consolidated defendant Audible Magic—and argues that "it would be too burdensome" for these witnesses "to attend SoundHound's trial if it were to proceed in Texas." Dkt. 916 at 10. In

fact, none of these witnesses claims that attending trial in Texas would be "too burdensome"; each of them claims only that attending trial in Texas would be "burdensome." *See* Dkt. 916-1 at ¶4, Dkt. 916-2 at ¶4, Dkt. 916-3 at ¶4, Dkt. 916-5 at ¶4, Dkt. 916-6 at ¶4, Dkt. 916-7 at ¶4. Attending trial anywhere is always "burdensome" for busy professionals. The question is whether the witnesses would refuse to attend trial unless subpoenaed. Because none of the witnesses claims that he would, the Northern District of California's subpoena power over those witnesses does not weigh in favor of transfer. *See Geotag* (Ex. 7) at 6-7 (weight attributed to location of third-party witnesses "is undercut by [a movant's] failure to identify particular witnesses or documents *that would require compulsory process*") (emphasis added).

SoundHound also argues that litigating in Northern California would be more convenient for some "third party prior art inventors" identified in Blue Spike's patents (Dkt. 916 at 10), overlooking the fact that Blue Spike's patents also disclose numerous prior-art inventors who live elsewhere. SoundHound does not identify where these other inventors live or analyze which District would be more convenient for them. SoundHound has failed to show that the locations of potential third-party witnesses—most of whom SoundHound does not identify—weigh in favor of transfer to the Northern District of California.

4.    *The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.*

SoundHound's argument about the costs and convenience of willing witnesses is relatively weak because the movants fail to identify any willing

witnesses apart from three SoundHound employees. *See* Dkt. 916 at 3. They do not specifically identify the other "engineers and other persons" who allegedly possess "relevant knowledge." *Id*. This oversight is critical, as the Court must disregard all alleged willing witnesses who are not specifically identified. *See Geotag*, Ex. 7 at 8; *Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 9 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 9) (holding that the cost of attendance for willing witnesses does not favor transfer when "Defendants fail to specifically identify employees with relevant knowledge of the accused devices"). SoundHound also completely ignores that *all* of Blue Spike's known witnesses reside in this District. *See* Moskowitz Decl. ¶6. The "cost" of attendance for those witnesses is not limited to money or mere inconvenience. As explained above, traveling is excruciatingly painful for Blue Spike's CEO, Scott Moskowitz, who is an essential witness. Traveling to the Northern District of California to protect his legal rights would exact a toll far greater than just the cost of airline tickets.

### B.    The Public-Interest Factors Do Not Show the Northern District of California to Be Clearly More Convenient.

None of the public-interest factors supports transfer, and none shows that the Northern District of California is "clearly more convenient." *In re Volkswagen*, 545 F.3d at 315. In contending that the Northern District of California has a greater local interest (Dkt. 916 at 14-15), the movants ignore half the equation. SoundHound infringed Blue Spike's patents and harmed Tyler-based Blue Spike and its Texas-based owner and employees. In such a

case, "[t]he residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business." *See Atmel*, Ex. 8 at 16. It makes sense that this District's interests would equal or exceed the interests of other districts in adjudicating the claims of a Tyler-based company, especially one that has made Blue Spike's positive contributions to civic, charitable, and business activities in Tyler. *See* Moskowitz Decl. ¶5.

Next, it is true that this District and the Northern District of California are both competent to apply federal patent law. But this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology, since the Court is adjudicating multiple other suits involving the same patents-in-suit—some of which involve very similar infringing technology (as explained in Part I, *supra*).

Last, SoundHound misapplies the relative-court-congestion factor. It cites *general* civil-docket statistics rather than data for *patent* cases in arguing that the Northern District of California "resolves cases more quickly." *See* Dkt. 916 at 14. As the Court has noted, "reliance on general civil statistics provides the Court with little guidance as to the speed with which *patent* cases reach trial." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:12-cv-398-MHS-JDL, 2013 WL 1363613, at *5 (E.D. Tex. Apr. 2, 2013). In addition to being unhelpful, SoundHound's data and argument on relative congestion do not carry much weight anyway. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347

(Fed. Cir. 2009) (explaining that relative court congestion is "the most speculative" public-interest factor, as "case-disposition statistics may not always tell the whole story").

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny SoundHound's transfer motion.

Respectfully submitted,


  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on August 26, 2013.

/s/ Randall Garteiser