# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., ET AL., | § § § | |
| Plaintiffs, | § § | CASE NO. 6:12-CV-462-LED |
| v. | § § | (Lead Consolidated Case) |
| DISTINCTIVE DEVELOPMENT LTD., | § § § | |
| Defendant. | § § | |

# MEMORANDUM OPINION AND ORDER

Before the Court are the following seven motions to transfer venue to the Northern District of California ("N.D. of California"): Defendant Distinctive Development Ltd.'s Motion to Transfer Venue (6:12-CV-462, Dkt. No. 19); Defendant Electronic Arts Inc.'s Motion to Transfer Venue to the N.D. of California (6:12-CV-463, Dkt No. 18); Defendant Gameloft S.A.'s Motion to Transfer Venue (6:12-CV-466, Dkt. No. 18); Defendant Halfbrick Studios Pty Ltd.'s Motion to Transfer Venue (6:12-CV-467, Dkt. No. 17); Defendant Laminar Research, LLC's Motion to Transfer Venue (6:12-CV-468, Dkt. No. 18); Defendant Mojang A.B.'s Motion to Transfer Venue (6:12-CV-470, Dkt. No. 19); and Defendant Square Enix, Inc.'s Motion to Transfer Venue (6:12-CV-472, Dkt. No. 18). For the reasons set forth below, the motions are **DENIED**.

## BACKGROUND

Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively "Uniloc") filed ten different lawsuits alleging that each individual Defendant infringes U.S Patent No. 6,847,067 by "making, using, offering for sale, selling and or importing Android based applications for use

1

on cellular phones and/or tablet devices that require communication with a server to perform a license check to prevent unauthorized used of said application." 6:12-CV-462—64, 466—72, Dkt. No. 1 at 3. Defendant Electronic Arts, Inc. ("EA") seeks transfer to the N.D. of California under 28 U.S.C. § 1404(a). 6:12-CV-463, Dkt. No. 18. Defendants, Distinctive Development Ltd. ("Distinctive"); Gameloft S.A. ("Gameloft"); Halfbrick Studios Pty Ltd. ("Halfbrick"); Laminar Research LLC ("Laminar"); Mojang A.B. ("Mojang"); and Square Enix, Inc. ("Square Enix") (collectively, "Joining Defendants"), each filed a separate motion to transfer, but join and incorporate by reference EA's Motion to Transfer. 6:12-CV-462, Dkt. No. 19 at 1; 6:12-CV-466, Dkt. No. 18 at 1; 6:12-CV-467, Dkt. No. 17 at 1; 6:12-CV-468, Dkt. No. 18 at 1; 6:12-CV-470, Dkt. No. 19 at 1; 6:12-CV-472, Dkt. No. 18 at 1. This order addresses all seven transfer motions. However, each defendant is evaluated individually. *See Consolidation Order*, 6:12-CV-462, Dkt. No. 43 at 4 ("The Court will consider [motions to transfer] only as to the defendants in the originally filed (member) cases, not as to all defendants in the pretrial consolidated case."). As there are many issues common to all defendants and the Parties incorporate by reference the arguments made in EA's Motion to Transfer, the Court addresses the common issues in relation to EA's motion and separately addresses issues unique to each defendant.

Defendants allege that transfer is warranted because relevant witnesses, including non-party prior-art-system owners and inventors, are located in the N.D. of California. Uniloc asserts that this District is more convenient for the majority of the witnesses and that Defendants do not meet their burden of showing that the N.D. of California is "clearly more convenient," thus, transfer is not warranted.

## APPLICABLE LAW

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a) to the N.D. of California. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice

of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

### *Eligibility for Transfer*

Defendant EA asserts that jurisdiction is proper in the N.D. of California because EA's Redwood City, California headquarters lie within the N.D. of California, and EA has the requisite minimum contacts to be subject to personal jurisdiction there. Dkt. No. 18 at 2, 5. The Joining Defendants state that they are also subject to the jurisdiction of N.D. of California because they have offered for sale and sold products there. 6:12-CV-462, Dkt. No. 19 at 2; 6:12-CV-466, Dkt. No. 18 at 2; 6:12-CV-467, Dkt. No. 17 at 2; 6:12-CV-468, Dkt. No. 18 at 2; 6:12-CV-470, Dkt. No. 19 at 2; 6:12-CV-472, Dkt. No. 18 at 2. Uniloc admits that the cases could have been brought in the N.D. of California. 6:12-CV-463, Dkt. No. 32 at 4. Thus, the threshold inquiry is satisfied.

### *Public Factors*

### *The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See Id.* This factor will turn upon which party will most probably have the greater

volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See*, *e.g.*, *In re Volkswagen II*, 545 F.3d at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

EA argues that this factor favors transfer because its headquarters are located in the N.D. of California and its relevant witnesses and documents are located on the West Coast. Dkt. No. 18 at 6. EA also argues that documents related to two prior-art systems developed or obtained by non-party companies GraphOn and InterTrust are likely located in the N.D. of California. *Id.* at 3. EA further contends that Uniloc's relevant documents are located in Irvine, California, which is closer to the N.D. of California. *Id.* at 6.

Uniloc responds that, by EA's own admission, relevant EA documents are not located in the N.D. of California, but in Los Angeles, California; Seattle, Washington; and Quebec, Canada. Dkt. No. 32 at 8. Uniloc also argues that EA presents no evidence that prior art systems exist or that any relevant evidence is in the possession of GraphOn or Intertrust. *Id.* at 9. Thus, because EA's statement that GraphOn and Intertrust are likely to have relevant documents is pure speculation, it should be dismissed. *Id.* Finally, Uniloc states that the documents related to this litigation, including those pertaining to prosecution, assignment, and the provisional application, are located in its headquarters in the Eastern District of Texas, not in N.D. of California as EA contends. *Id.*

None of the relevant documents are located in the N.D. of California. The accused product, Bejeweled 2, was principally researched, designed, developed, and maintained in Quebec, Canada and Los Angeles, California. Dkt. No. 18, Exhibit 1. Therefore, the documents are located outside the N.D. of California. Some documents are also located in Seattle, Washington. *Id.* While the documents located along the West Coast are located closer to the N.D. of California, the documents located in Quebec, Canada are located closer to this District. By contrast, Uniloc's relevant documents are located in Plano, Texas, which is within the Eastern District of Texas. While EA contends that GraphOn and Intertrust are likely to have documents in the N.D. of California, EA fails to identify any specific relevant evidence that might be located in that district. *See Invitrogen Corp. v. GE*, No. 6:08-CV-112, 2009 U.S. Dist. LEXIS 9127, at *8 (E.D. Tex. Feb. 9, 2009) ("[G]eneral statements [referring to documents] fail to show that transfer would make access to sources of proof either more or less convenient for the parties.") Still, even including these potential documents in the analysis, taking into account the location of documents in relation to the transferee and transferor venues, neither venue is clearly more accessible for a greater volume of documents. Therefore, this factor is neutral.

*Square Enix*

Square Enix argues that its relevant documents are located in N.D. of California as well as overseas. 6:12-CV-472, Dkt. No. 18 at 2. Uniloc responds that Square Enix's only activities in California pertain to public relations, thus the documents located there are not relevant to the issues of infringement or validity. 6:12-CV-472, Dkt. No. 32 at 2. Therefore, the documents relevant to issues present in the case are located in Japan, not in California. *Id*.

The relevant documents are located in Japan as the research, design, development and maintenance of the accused product, Final Fantasy III for Android devices, was performed in

6

Tokyo, Japan. 6:12-CV-472, Dkt. No. 18, Exhibit 1. Because overseas documents must be transported a significant distance to either venue, the Court discounts them for purposes of this analysis. *See In re Genentech*, 566 F.3d at 1344. Moreover, Uniloc's relevant documents are located in this District. Accordingly, this factor counsels against transfer.

### *Distinctive, Mojang, and Halfbrick*

Distinctive is an English company. 6:12-CV-462, Dkt. No. 19, Exhibit 1. The documents relating to the research, design, development and maintenance of the accused product, Rugby Nations 11, are located at Distinctive's headquarters in Sheffield, England. *Id*.

Mojang is incorporated and headquartered in Stockholm, Sweden. 6:12-CV-470, Dkt. No. 19, Exhibit 1. The research, design, development and maintenance of Minecraft, the accused product, was performed in Stockholm. *Id.* Thus, the relevant documents are located in Sweden.

Halbrick is an Australian company headquartered in Brisbane, Queensland, Australia. 6:12-CV-467, Dkt. No. 17, Exhibit 1. The documents regarding the design, development and maintenance of the accused product, Fruit Ninja, are located in Australia. *Id*.

Distinctive, Mojang and Halfbrick's relevant documents are located overseas. Because the inconvenience for parties and witnesses located overseas does not carry much weight and Uniloc's relevant documents are located in this District, this factor counsels against transfer. *In re Genentech*, 566 F.3d at 1344.

### *Gameloft and Laminar*

Gameloft is a French corporation with offices in Paris, New York, Seattle, and San Francisco. 6:12-CV-466, Dkt. No. 18, Exhibit 1. The documents relating to the research, design, development, and maintenance of Uno, the accused product, are located in New York. *Id.*

7

Laminar is headquartered in South Carolina. 6:12-CV-468, Dkt. No. 18, Exhibit 1. The documents regarding the design, development and maintenance of the accused product, X-Plane, are located in Connecticut and in South Carolina. *Id*.

Gameloft and Laminar's documents are located along the East Coast in New York, Connecticut, and South Carolina. The greater volume of documents relevant to the litigation is closer to this District, and not the N.D. of California. *In re Nintendo*, 589 F.3d at 1199. Accordingly, this factor counsels against transfer.

*The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

EA argues that the availability of compulsory process for non-party witnesses located in California weighs in favor of transfer.[1] 6:12-CV-463, Dkt. No. 18 at 6. EA contends that the accused product uses Google Play Licensing and that Chris Pruett and Daniel Galpin, non-party Google employees with knowledge of Google Play Licensing, reside in the N.D. of California. *Id.* EA also contends that the inventors and owners of prior-art patents are located in the N.D. of California. *Id.* at 3.

Uniloc responds that EA does not show why the testimony of the witnesses named is necessary, or how it would be relevant. 6:12-CV-463, Dkt. No. 32 at 6. Uniloc argues that Mr.

---

[1] The Joining Defendants incorporate by reference EA's arguments, but provide no other information regarding the availibity of compulsory process for non-party witnesses. Therefore, the Court's analysis of this factor also applies to the Joining Defendants.

8

Pruett is no longer a Google employee and that EA provides no information concerning his involvement with the accused instrumentality. *Id.* Uniloc also argues that Mr. Galpin does not appear in EA's initial disclosures; and the only information provided about him is an address in Santa Cruz, California. *Id.* Furthermore, Uniloc argues that the location of Google's employees is irrelevant, as it does not accuse Google of infringement, but EA. *Id.* at 2. So, even if EA may have borrowed code from Google, the relevant inquiry regarding infringement is based on the operation of EA's products. *Id.* Uniloc further argues that the testimony of inventors of alleged prior-art patents is unnecessary as only the patents themselves are needed to use the references as anticipatory prior art. *Id.* at 7. Finally, Uniloc contends that the patent-in-suit's inventor and prior owner, both non-party witnesses, are located in Atlanta, Georgia, and Freehold, New Jersey, thus their locations do not favor transfer. *Id.*

      EA points to the presence of Google and the development of Google Play in the N.D. of California as supporting transfer. EA states that it worked with Chris Pruett, a Google employee, regarding Google Play licensing. 6:12-CV-463, Dkt. No. 18, Exhibit 1. Google Play is a free, publicly available service to distribute Android applications that allows license verification. 6:12-CV-463, Dkt. No. 18, Exhibit 3. To use the services, one need only agree to the Developer Distribution Agreement and acquire a valid Developer Account. *Id.* EA has presented no evidence of Google's relevance to this case, other than the necessary contact with a Google employee to distribute the accused application on the Google Play website. Further, neither party has subpoenaed Google for any documents or for the deposition of any witness, nor stated that Google is a necessary party in this case. *See In re HTC Corp.*, 494 Fed. Appx. 81, 82 (Fed. Cir. Sept. 20, 2012). Accordingly, there are no facts before the Court to support a contention that

9

Google has documents or witnesses relevant to this lawsuit, so EA fails to establish that Google's presence in the N.D. of California should serve as a basis for transfer of this case.

EA also points to inventors and owners of prior-art patents the reside in the N.D. of California as supporting transfer. Uniloc points to two third-party witnesses, one in Georgia and one in New Jersey which are outside the subpoena power of the N.D. of California. The number of third-party witnesses located within the subpoena power of the N.D. of California is small, and the majority of non-party witnesses are beyond the subpoena power of both the transferor and transferee districts. At best, this factor slightly weighs in favor of transfer.

*The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the 100-mile rule, the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective

distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The 100-mile rule favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. However, the 100-mile rule should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the 100-mile-rule analysis. *Id.* (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

EA argues this factor favors transfer because all of its witnesses are located in California or on the West Coast, so travel to the N.D. of California would be more convenient. 6:12-CV-463, Dkt. No. 18 at 7. Uniloc responds that EA has only identified Mr. Boyapalle in Los Angeles, California and Mr. Birkenshaw in Quebec, Canada. 6:12-CV-463, Dkt. No. 32 at 10. So, while the N.D. of California would be more convenient for Mr. Boyapalle, the Eastern District of Texas would be more convenient for Mr. Birkenshaw. *Id.* Uniloc argues that, if the case were transferred, its employees would have to travel more than 1,700 miles from Plano, Texas, in the Eastern District of Texas to the N.D. of California. *Id.* at 11. Furthermore, several

11

willing non-party witnesses, including the inventor and the prosecuting attorneys, would be significantly inconvenienced by having to travel a greater distance from Georgia, New Jersey, and New York to California. *Id.*

Several of Uniloc's witnesses live in Plano, Texas, which is within this District. Further, all but one of the identified witnesses are much closer to Eastern District of Texas, than to the N.D. of California. Therefore, the Eastern District of Texas is more convenient for the majority of identified potential witnesses and this factor weighs against transfer.

*Gameloft*

Gameloft identifies one potential witness, Baudouin Corman, located in the N.D. of California. 6:12-CV-466, Dkt. No. 18, Exhibit 1. Uniloc points out that the research, design, development, and maintenance of the accused product was conducted by Adrien Gilmate in New York. 6:12-CV-466, Dkt. No. 34 at 2.

On balance this factor weighs against transfer. Several of Uniloc's witnesses live in Plano, Texas, which is within this District. Further, all but one of the identified witnesses are much closer to this District than to the N.D. of California. Therefore, the Eastern District of Texas is more convenient for the majority of identified potential witnesses.

*Square Enix*

Square Enix argues that its relevant witnesses are located in the N.D. of California as well as overseas. 6:12-CV-472, Dkt. No. 18 at 2. Uniloc responds that Square Enix fails to identify any witnesses in the N.D. of California and that all relevant witnesses appear to be located in Japan. 6:12-CV-472, Dkt. No. 32 at 2.

The research, design, development, maintenance and marketing decision regarding the accused product, Final Fantasy III for Android devices, was performed by Square Enix Co.,

12

Ltd.'s employees in Tokyo, Japan. 6:12-CV-472, Dkt. No. 18, Exhibit 1. Thus, Square Enix's relevant witnesses are located in Japan. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the 100-mile-rule analysis. *See In re Genentech*, 566 F.3d at 1344 (discounting European witnesses in the convenience analysis when reviewing a denial of transfer from Texas to California). Because all of the willing witnesses are located either within this district or live much closer to this District than to the N.D. of California, this factor counsels against transfer.

*Distinctive, Mojang, and Halfbrick*

Distinctive identifies ten potential witnesses that worked on the research, design, development and maintenance of the accused product and are located in Sheffield, England. 6:12-CV-462, Dkt. No. 19, Exhibit 1. Mojang states that its employees with knowledge of the accused product are located in Stockholm, Sweden. 6:12-CV-470, Dkt. No. 19, Exhibit 1. Halbrick states that its employees are located in Australia. 6:12-CV-467, Dkt. No. 17, Exhibit 1.

Distinctive, Mojang and Halfbrick's relevant witnesses are located overseas. Witnesses that are required to travel "a significant distance no matter where they testify," are discounted for purposes of the 100-mile-rule analysis. *See In re Genentech*, 566 F.3d at 1344. Because all of the willing witnesses are located either within this district or live much closer to this District than to the N.D. of California, this factor counsels against transfer.

*Laminar*

Laminar's witnesses are located in Connecticut and in South Carolina. 6:12-CV-468, Dkt. No. 18, Exhibit 1. Therefore, none of the willing witnesses are located in the N.D. of California. As all of the witnesses either live within the Eastern District of Texas, or are located much closer to this District than to the N.D. of California, this factor weighs against transfer.

13

*Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily for or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

EA argues that this factor favors transfer because Uniloc has litigated cases in California in the past.[2] 6:12-CV-463, Dkt. No. 18 at 7. EA also argues that, of the ten defendants that Uniloc sued alleging infringement of the asserted patent, seven seek transfer to the N.D. of California. *Id.* Uniloc responds that none of the cases it has litigated in California are related to the current case or the patent-in-suit, therefore, there is no judicial economy to be gained by transferring the case to the N.D. of California. 6:12-CV-463, Dkt. No. 32 at 12. Uniloc also argues that transfer motions are evaluated as to the parties in a particular case, not collectively across related cases. *Id.* Therefore, the fact that seven defendants seek transfer does not necessarily mean that transfer is warranted. *Id.*

Uniloc sued ten defendants in ten separate cases in this District, alleging infringement of the '067 patent. Seven Defendants seek transfer. Each moving Defendant is evaluated individually. However, the existence of duplicative suits involving the same or similar issues creates practical difficulties that counsel for the cases to be handled by the same court. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (noting that it promotes judicial economy for the same judge to hear related cases); *In re Volkswagen III*, 566 F.3d at 1351. As the Court will construe the patent's claims and rule on dispositive substantive motions in the cases before

---

[2] The Joining Defendants merely incorporate by reference EA's arguments as to this factor.

14

it, it is highly inefficient to transfer a related case when this Court must already oversee Uniloc cases involving the patent-in-suit. Accordingly, this factor weighs against transfer.

*Public Factors*

*The Administrative Difficulties Flowing from Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id.*

Defendants argue that the time to trial is neutral because both the N.D. of California and the Eastern District of Texas show similar time-to-trial statistics. 6:12-CV-463, Dkt. No. 18 at 9. Uniloc counters that the median time to trial in this District is 2.17 years, contrasted with 2.72 years in the N.D. of California. 6:12-CV-463, Dkt. No. 32 at 13.

If a case is transferred to the N.D. of California, it would take approximately six months longer for the cases to get to trial. Thus, the faster time to trial in the Eastern District of Texas weighs against transfer.

*The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not

15

have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

EA argues that Uniloc and the named Defendants have little connection to Texas. Dkt. No. 18 at 8. Further, EA argues that Uniloc is a California entity that has utilized the California courts, therefore, this factor favors transfer. *Id.* Uniloc counters that it is a Texas corporation, headquartered in the Eastern District of Texas, and that Defendants incorrectly assert that Uniloc is a California-based company. 6:12-CV-463, Dkt. No. 32 at 1, 12. Uniloc states that while it was originally a Rhode Island corporation with offices in California and Texas, it became a Texas corporation in 2010. *Id*. at 1. In April 2012, Uniloc closed its operations in California and transferred its headquarters to Plano, Texas. *Id*. Uniloc further states that several full-time employees and principals work in Uniloc's Plano headquarters. *Id.* Therefore, Uniloc argues that Texas has an interest in adjudicating this dispute. *Id*. at 12.

*EA*

Uniloc has maintained a place of business in the Eastern District of Texas since 2007. *Uniloc USA, Inc. v. Sony Corp. of Am.*, No. 6:10-CV-373, 2011 U.S. Dist. LEXIS 155927, at *11. (E.D. Tex. Sept. 20, 2011). Uniloc is also headquartered in Plano, Texas, which is in this District. Therefore, the Eastern District of Texas has a strong interest and connection to this litigation. EA states that it is headquartered in Redwood City, California, which is in the N.D. of California. Thus, the transferee venue also has a local connection to this litigation. All of these interests are significant; therefore, neither venue's interests outweigh those of the other venue. This factor is neutral.

*Gameloft*

Gameloft is a French corporation with offices in Paris, New York, Seattle, and San

16

Francisco. 6:12-CV-466, Dkt. No. 18, Exhibit 1. Therefore, the N.D. of California has a relation to the litigation. Uniloc is headquartered within this District, in Plano, Texas. Thus, citizens of this District also have a particularized interest in deciding the dispute. As neither venue's interests outweigh those of the other venue, this factor is neutral.

*Square Enix*

Square Enix states that it is a Washington corporation with its principal office located in California. 6:12-CV-472, Dkt. No. 18, Exhibit 1. However, Square Enix only identifies offices within the N.D. of California that belong to an affiliate, not to Square Enix itself. Because Uniloc is headquartered within Eastern District of Texas and this District has a particularized local interest in the dispute, while the N.D. of California does not, this factor counsels against transfer.

*Distinctive, Mojang, Halfbrick, and Laminar*

Distinctive is an English company headquartered in Sheffield, England. 6:12-CV-462, Dkt. No. 19, Exhibit 1. Mojang is incorporated and headquartered in Stockholm, Sweden. 6:12-CV-470, Dkt. No. 19, Exhibit 1. Halbrick is an Australian company headquartered in Brisbane, Queensland, Australia. 6:12-CV-467, Dkt. No. 17, Exhibit 1. Laminar is headquartered in South Carolina. 6:12-CV-468, Dkt. No. 18, Exhibit 1. Accordingly, the N.D. of California has no relation to the litigation. On the other hand, Uniloc is headquartered in the Eastern District of Texas. Therefore, this factor counsels against transfer.

***The Familiarity of the Forum with the Law that Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws***

Neither party addressed either factor, and neither factor appears to be relevant to this transfer analysis. These factors are neutral.

17

***The Balance of Factors Weighs Against Transfer***

*EA*

Of the private factors, two weigh against transfer, one weighs slightly in favor of transfer, and one is neutral. Of the four public factors, one weighs against transfer and three are neutral. In total, three factors weigh against transfer, one weighs in favor of transfer, and the remaining four are neutral. *See Portal Techs. LLC v. Yahoo! Inc.*, 2012 WL 3242205, at *6 (E.D. Tex. Aug. 7, 2012) (denying a motion to transfer when one factor favored transfer and two weighed against transfer).

*Gameloft*

Of the private factors, three factors weigh against transfer and one weighs slightly in favor of transfer. Of the public factors, one weighs against transfer and three are neutral. In total, four factors weigh against transfer, one weighs slightly in favor of transfer, and the remaining three are neutral.

*Square Enix, Distinctive, Mojang, Halfbrick, and Laminar*

Of the private factors, three factors weigh against transfer and one weighs slightly in favor of transfer. Of the public factors, two weigh against transfer and two are neutral. In total, five factors weigh against transfer, one weighs slightly in favor of transfer, and the remaining two are neutral.

In sum, Defendants seek to transfer these cases to the N.D. of California because some potential witnesses are located there. However, the majority of the evidence and the witnesses is located overseas, in the Eastern District of Texas, or closer to this District. Thus, it cannot be said that the N.D. of California is "clearly more convenient" than this District. *See In re Volkswagen II*, 545 F.3d at 315. Therefore, transfer is not warranted.

18

## CONCLUSION

For all the foregoing reasons, Defendants' motions to transfer venue to the N.D. of California are **DENIED**.

**So ORDERED and SIGNED this 5th day of August, 2013.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**