# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-cv-499-MHS |
| Plaintiff, | (Lead case for Consolidation Issues) |
| v. | JURY TRIAL DEMANDED |
| TEXAS INSTRUMENTS, INC., ET AL., | |
| Defendants. | |
| BLUE SPIKE, LLC, | Civil Action No. 6:13-CV-00125-MHS |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| ENTROPIC COMMUNICATIONS, INC., | |
| Defendant. | |

**DEFENDANT ENTROPIC COMMUNICATIONS, INC.'S MOTION TO DISMISS
PLAINTIFF BLUE SPIKE, LLC'S FIRST AMENDED COMPLAINT
FOR INDIRECT AND WILLFUL PATENT INFRINGEMENT FOR FAILURE
TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY.................................................................................. 3

III.   STATEMENT OF RELEVANT FACTS ............................................................ 4

IV.    APPLICABLE LEGAL STANDARD ................................................................. 6

     A.     Motions to Dismiss for Failure to State a Facially Plausible Claim ....................... 6

     B.     Indirect and Willful Patent Infringement ................................................................. 7

V.     BLUE SPIKE'S INDIRECT AND WILLFULNESS CLAIMS SHOULD BE

     DISMISSED ......................................................................................................... 8

     A.     Blue Spike Fails to Adequately Plead the Facts Required for Inducement ............ 8

     B.     Blue Spike Fails to Adequately Plead the Facts Required for Contributory

           Infringement ........................................................................................................... 12

     C.     Blue Spike Fails to Adequately Plead the Facts Required for Willfulness ........... 14

VI.    CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... *passim*

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... *passim*

*DSU Med. Corp. v. JMS Co., LTD,*
  471 F. 3d 1293 (Fed. Cir. 2006) .............................................................................7

*Execware, LLC v Staples, Inc.,*
  No. 11-836, 2012 WL 6138340 (D. Del. Dec. 10, 2012) ......................................15

*Global-Tech Appliances, Inc. v. SEB S.A.,*
  131 S. Ct. 2060 (2011) ...........................................................................7, 8, 10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
  681 F.3d 1323 (Fed. Cir. 2012) ..........................................................6, 9, 10, 12

*In re Seagate Tech., LLC,*
  497 F.3d 1360 (Fed. Cir. 2007) ...............................................................7, 14

*Norris v. Hearst Trust,*
  500 F.3d 454 (5th Cir. 2007) ...............................................................................6

*Papasan v. Allain,*
  478 U.S. 265 (1986) .............................................................................................6

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,*
  No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199 (E.D. Tex. July 27, 2012) .......10, 11, 12, 13

*Rhodes v. Prince,*
  360 Fed. Appx. 555 (5th Cir. 2010) .......................................................................6

*Water Techs. Corp. v. Calco, Ltd.,*
  850 F.2d 660 (Fed. Cir. 1988) ...............................................................................7

*Webmap Tech., LLC v. Google, Inc.,*
  No. 2:09-CV-343-DF-CE, 2010 WL 3768097 (E.D. Tex. Sept. 28, 2010) ..........................15

**Statutes**

35 U.S.C. §271 ................................................................................................................5

35 U.S.C. §271(b) .........................................................................................................7, 8

35 U.S.C. §271(c) ........................................................................................................7, 12

**Other Authorities**

Fed. R. Civ. P. 8(b) .........................................................................................................14

Fed. R. Civ. P. 11(b) .......................................................................................................14

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

Fed. Rule Civ. P. 15(a).................................................................................................1, 3, 4

Defendant Entropic Communications, Inc. ("Entropic") respectfully submits the following memorandum of points and authorities in support of its motion to dismiss under Fed. R. Civ. P. 12(b)(6) the allegations of indirect infringement and willful infringement in the First Amended Complaint ("Amended Complaint") filed by Blue Spike, LLC ("Blue Spike").   Blue Spike improperly filed its Amended Complaint on August 13, 2013 (*see* D.N. 923) without leave of court while Entropic's first motion to dismiss (*See* D.N. 533) Blue Spike's original complaint was still pending.  *See* Fed. Rule Civ. P. 15(a).  Regardless, Blue Spike's Amended Complaint does not cure the deficiencies of its predecessor and therefore still fails to meet the requisite pleading standard of indirect and willful patent infringement.

Entropic is not required to meet and confer with Blue Spike before filing this motion to dismiss. [1]  *See* Local Civil Rule 7(i)(1) (stating "neither the 'meet and confer' nor the 'certificate of conference" requirements are applicable to…the following motions: (1) [motions] to dismiss.')  Entropic submits that this motion is appropriate for decision without oral argument and does not request such a hearing on this motion.

## I.      INTRODUCTION

Blue Spike's Amended Complaint for patent infringement against Entropic should be dismissed because it still fails to meet the standard for pleadings established in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Blue Spike accuses Entropic's "set-top box (STB) system-on-a-chip (SoC) platform software, systems and technology enabled with automatic content recognition ("ACR"), including ACR provided by Audible Magic Corp. and Free Stream Media Corp" of infringing four Blue Spike patents.

---

[1]  Although not required to do so, Entropic did confer with counsel for Blue Spike by telephone and email before filing their original motion to dismiss.  *See* D.N. 533-1.

Although Blue Spike pleads disjunctively, alleging that Entropic has infringed "directly, contributorily, or by inducement," the Amended Complaint pointedly neither  alleges direct infringement by itself nor recites a single fact in support of that allegation, because Blue Spike would lack any basis to do so.  Rather, in each of the four counts, Blue Spike accuses Entropic of indirect infringement.  Each count also alleges that such indirect infringement is willful.  But the Amended Complaint alleges no facts that, even if proven, could plausibly show that Entropic had the requisite knowledge and intent for either.  Instead, the Amended Complaint alleges no more than that Entropic knew of the Blue Spike patents before the filing of the lawsuit because the patents are "are prominent, pioneering patents in the field" and "have been forward-cited in at least 10 U.S.-issued patents and patent applications, including patents originally assigned to such prominent companies as Microsoft, Agilent, Nvidia, and Avaya."  These claims of indirect and willful infringement are insufficient as a matter of law, at least as to any pre-filing conduct.

With respect to any post-filing conduct, Blue Spike's allegations of inducement and willfulness rest solely on the bare averment that Entropic's purported indirect infringement is "continuing" and Entropic knows of the patents "[t]hrough the filing and known attempted service of the original Complaint in this lawsuit in February 2013," unsupported by any facts concerning any conduct by Entropic inducing or contributing to any direct infringement.  Such an approach does not fairly place Entropic on notice of the allegations against it.

The deficiencies of Blue Spike's complaint are unsurprising, given that it has sued at least 109 defendants based on virtually the same boilerplate allegations, notwithstanding that the defendants differ vastly in the technologies they employ and the markets they serve.  If Blue Spike has a good faith basis to accuse Entropic of direct or indirect infringement either before the original complaint was filed or thereafter, it should be required to state plausible factual

allegations that rise above the level of mere speculation.  If not, Entropic should not be put to the expense of defending against "formulaic recitations of elements of a cause of action" and "naked assertions devoid of 'further factual enhancement," which are insufficient to state a claim.  *See Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 555).

II.     **PROCEDURAL HISTORY**

Blue Spike filed its original complaint ("Complaint") against Entropic on February 6, 2013.  *See* Case No. 6:13-CV-00125, D.N. 1 (Complaint).  That matter was then consolidated into this case, cause number 6:12-cv- 499, on March 26, 2013.  *See* D.N. 530 (Order of Consolidation).  Entropic filed its motion to dismiss Blue Spike's original complaint on March 8, 2013, and then re-filed it in the consolidated matter on March 27, 2013.  *See* D.N. 533 (Motion to Dismiss).  The parties completed briefing on the motion to dismiss Blue Spike's Complaint on May 10, 2013.  *See* D.N. 740 (Sur-Reply filed May 10, 2013); *see also* D.N. 640 (Opposition filed April 11, 2013); D.N. 685 (Reply filed April 25, 2013).

On August 13, 2013, before this Court had ruled on Entropic's motion to dismiss (D.N. 533), Blue Spike filed an Amended Complaint against Entropic.  *See* D.N. 923.  However, Blue Spike's filing of the Amended Complaint against Entropic is improper under Federal Rule of Civil Procedure ("Rule") 15(a).  Rule 15(a) provides, in part:

> (a) Amendments Before Trial.
>
>> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>>
>>> (A) 21 days after serving it, or
>>>
>>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

> (2) Other Amendments. In all other cases, a party may
> amend its pleading only with the opposing party's written
> consent or the court's leave.  The court should freely give
> leave when justice so requires."

*See* Fed. R. Civ. P. 15(a)

Blue Spike filed its Amended Complaint approximately 189 days after it filed its original complaint and 158 days after Entropic filed its motion to dismiss, and therefore did not do so within the time frames provided by Rule 15(a)(1).  *See* Fed. R. Civ. P. 15(a)(1).  This Court has not granted Blue Spike leave to amend its complaint nor has Blue Spike requested (meaning Entropic did not provide) Entropic's written consent to file an amended pleading.  Therefore, Blue Spike does not fall within any of the exceptions listed in Rule 15(a)(2), and did not properly file its Amended Complaint.

In any event, Blue Spike's Amended Complaint fails to cure, but instead merely perpetuates, the pleading deficiencies that compelled its dismissal of its original Complaint. Therefore, Entropic moves to dismiss Blue Spike's Amended Complaint as well.

III.    **STATEMENT OF RELEVANT FACTS**

The entirety of Blue Spike's indirect infringement claim, which it repeats for each of the four patents-in-suit (and which remains unchanged from the Complaint to the Amended Complaint) is as follows:

> Defendant has been and now is indirectly infringing by way of
> inducing infringement by others and/or contributing to the
> infringement by others of the [asserted patents] in the State of
> Texas, in this judicial district, and elsewhere in the United States,
> by, among other things, making, using, importing, offering for
> sale, and/or selling, without license or authority, products for use
> in systems that fall within the scope of one or more claims of the
> [asserted patents].  Such products include, without limitation, one
> or more of the Accused Products.  Such products have no
> substantial non-infringing uses and are for use in systems that
> infringe the [asserted patents]. By making, using, importing [*sic*]
> offering for sale, and/or selling such products, Defendant injured

> Blue Spike and is thus liable to Blue Spike for infringement of the [asserted patents] under 35 U.S.C. §271.  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.  Defendant had knowledge of the [asserted patents] as early as the service of this complaint and is thus liable for infringement of one or more claims of the [asserted patents] by actively inducing infringement and/or is liable as a contributory infringer of one or more claims of the [asserted patents] under 35 U.S.C. §271.

Complaint, D.N. 923, ¶ 34; *see also* ¶¶ 42, 50, 58.  Nothing in this "formulaic recitation" reflects a single fact specific to Entropic or its technology.  Blue Spike does not state a single fact from which there is any plausible inference that Entropic had knowledge of the patents-in-suit before Blue Spike filed its Complaint.  Blue Spike also does not allege any facts in its Amended Complaint concerning any conduct by Entropic that might plausibly induce infringement by others even after the filing of the Complaint or the Amended Complaint, save for the rote recitation that Entropic's alleged infringement is "continuing."

The Amended Complaint is equally deficient as to willfulness.  In its sole paragraph on willful infringement, which was revised in the Amended Complaint, Blue Spike alleges:

> On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patents-in-Suit, including but not limited to at least one or more of the following:  a. The Patents-in-Suit are prominent, pioneering patents in the field of monitoring and analyzing signals. This is evidenced, in part, by the extent to which each of these patents has been forward-cited as prior art in connection with the examination of subsequently-issued U.S. patents. The Patents-in-Suit have been forward-cited in at least 10 U.S.-issued patents and patent applications, including patents originally assigned to such prominent companies as Microsoft, Agilent, Nvidia, and Avaya.  b. Through the filing and known attempted service of the original Complaint in this lawsuit in February 2013.

Complaint, D.N. 923, ¶36; *see also* ¶¶ 44, 52, 60.  Blue Spike's preening regarding the supposed importance of its patents cannot hide its continuing failure to allege that Entropic had any actual

knowledge of the patents before Plaintiff filed its Complaint.  These allegations also remain

devoid of any facts specific to Entropic or its products, and provide not a single fact to support

Blue Spike's conclusory allegations of willful infringement or that Entropic's alleged conduct

"continues to be willful." Blue Spike's allegations merely recite the bare legal elements of a

willfulness claim rather than allege facts that might plausibly support one.

IV.    **APPLICABLE LEGAL STANDARD**

      A.    **Motions to Dismiss for Failure to State a Facially Plausible Claim**

To withstand a motion to dismiss, "a Complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 678

(quoting *Twombly,* 550 U.S. at 570).  The Court defined "facial plausibility" as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged …. Threadbare
> recitals of elements of the elements of a cause of action, supported
> by mere conclusory statements, do not suffice.

*Id.* at 678.  The factual allegations of a complaint must be "enough to raise a right to relief above

the speculative level."  *Twombly,* 550 U.S. at 555.

Because a motion to dismiss in a patent case "raises a purely procedural issue," courts

apply the law of the regional circuit.  *In re Bill of Lading Transmission & Processing Sys. Patent

Litig.,* 681 F.3d 1323, 1331 (Fed. Cir. 2012).  In the Fifth Circuit, while well-pleaded facts must

be accepted as true, courts "'are not bound to accept as true a legal conclusion couched as a

factual allegation.'"  *Norris v. Hearst Trust,* 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Papasan

v. Allain,* 478 U.S. 265 (1986); *see also Rhodes v. Prince,* 360 Fed. Appx. 555, 557-58 (5th Cir.

2010).

### B.    Indirect and Willful Patent Infringement

It is by now axiomatic that both forms of indirect infringement, inducement under  35

U.S.C. §271(b) and contributory infringement under 35 U.S.C. §271(c), require a showing of

specific knowledge and intent.  Both require the plaintiff to show that the defendant knew of the

patent alleged to be infringed (or in the case of inducement, was willfully blind as to its

existence).  *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2068 (2011) ("[W]e

proceed on the premise that §271(c) requires knowledge of the existence of the patent that is

infringed …. [And] we now hold that induced infringement under §271(b) requires knowledge

that the induced acts constitute patent infringement.")

In addition, for inducement claims a plaintiff must show the defendant's specific intent to

induce infringement, i.e., that the defendant "actively and knowingly aid[ed] and abet[ed]

another's direct infringement."  *DSU Med. Corp. v. JMS Co., LTD,* 471 F. 3d 1293, 1305 (Fed.

Cir. 2006) (quoting *Water Techs. Corp. v. Calco, Ltd.,,* 850 F.2d 660, 668 (Fed. Cir. 1988)).  It is

not enough to show mere knowledge of possible infringement by others; "'specific intent and

action to induce infringement must be proven.'"  *Id.*  For allegations of contributory

infringement, in addition to knowledge of the patent, a plaintiff must also show a defendant's

knowledge that an accused product is especially made for infringement and has no substantial

non-infringing use.  *Global-Tech Appliances,* 131 S. Ct. at 2068.  With respect to willfulness, the

plaintiff must show that the defendant acted with at least "objective recklessness" as to

infringement and must have a good faith basis for alleging willful infringement..  *In re Seagate

Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007).

V.     **BLUE SPIKE'S INDIRECT AND WILLFULLNESS CLAIMS SHOULD BE DISMISSED**

A.     **Blue Spike Fails to Adequately Plead the Facts Required for Inducement**

Liability for inducing infringement under 35 U.S.C. §271(b) requires that the defendant (1) know of the patent, and (2) act with specific intent to encourage others to infringe the known patent.  *Global-Tech Appliances*, 131 S. Ct. at 2068.  Thus, to withstand a motion to dismiss, Blue Spike's Amended Complaint must plead facts plausibly showing that Entropic specifically intended the direct infringers, here ostensibly "end users" [Complaint, D.N. 923, ¶ 34; *see also* ¶¶ 42, 50, 58], to infringe the patents-in-suit and that Entropic knew their acts constituted infringement.  Blue Spike fails to allege any facts linking Entropic with end users of any allegedly infringing product, or from which it might plausibly be inferred that Entropic intended end users or, for that matter, any downstream customers, to infringe.  Instead, the Amended Complaint relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," of the kind found wanting in *Iqbal,* 129 U.S. at 678, *Twombly,* 127 U.S. at 555, and by this district.

1.     *Blue Spike Does Not Sufficiently Plead Knowledge of the Patents*

In *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,* No. 6:12-cv-366 MHS-JDL, slip op. at 2 (E.D. Tex. Feb. 7, 2013) (Love, M.J.) (attached as Exhibit A) Magistrate Judge Love recommended granting a motion to dismiss *inter alia* an indirect infringement claim alleging that defendants "had actual or constructive knowledge of the [patent], yet continue to infringe said patent..."  The Court found that such allegations failed to "establish a plausible inference that [defendant] had...knowledge that those actions amounted to infringement."  *Id.* at 6.  In so finding, the Court relied on the "well-established [rule] that 'naked assertions devoid of further factual enhancement' are insufficient to state a claim."  *Id.* (citing *Iqbal*, 556 U.S. 662. at 678;

*Twombly*, 550 U.S. at 555); *see also Klausner Techs., Inc. v. Oracle Corp.* Case No. 6:11-cv-556, slip op. at 4 (E.D. Tex. Sept. 10, 2012) (Davis, J.) (attached as Exhibit B) (granting motion to dismiss *inter alia* indirect infringement claim because the plaintiff "must include some factual support that would allow this Court 'to draw a reasonable inference that [defendant] is liable for the misconduct alleged") (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 556).[2]

Similarly, in *MacroSolve, Inc. v. Con'l Airlines, Inc.,* No. 6:11-cv-694, (slip op.) (E.D. Tex. July 30, 2012) (Love, M.J.) (attached as Exhibit C), the Magistrate Judge recommended granting a motion to dismiss a complaint as to allegations of indirect infringement.  In that case, the plaintiff alleged that the direct infringers were end users, as Blue Spike does here.  The court stated:

> It is well-established that formulaic recitations of elements of a cause of action and "naked assertions devoid of 'further factual enhancements' are insufficient to state a claim." [citing *Iqbal*] Although MacroSolve's complaint alleges a direct infringer, namely Defendants' customers, MacroSolve nevertheless neglects to (1) recite the elements of an inducement claim and (2) allege any facts that, if taken as true, establish[] a plausible inference that Defendants had knowledge of the '816 patent, the specific intent to induce a third party to infringe, and knowledge that such action amounted to infringement.  Thus, MacroSolve's complaint as to its inducement allegations fails to provide adequate notice to Defendants.

*Id.* slip op. at 6.  The Magistrate Judge's recommendations were adopted in their entirety by Judge Davis.  *MacroSolve, Inc. v. United Airlines, Inc.,* No. 6:11-cv-694, slip op. at 1-2 (E.D. Tex. Aug. 22, 2012) (Davis, J.) (attached as Exhibit D).

---

[2] Both *U.S. Ethernet* and *Klausner* reaffirm that the principles of *Twombly* and *Iqbal*, not Fed. R. Civ. P. Form 18, control as to indirect infringement.  *U.S. Ethernet*, slip op. at 5; *Klausner*, slip op. at 4; *see also Bill of Lading*, 681 F.3d at 1336–37 (reasoning "b]ecause Form 18 addresses only direct infringement, we must look to Supreme Court precedent for guidance regarding the pleading requirements for claims of indirect infringement.")

As in the *MacroSolve* case, here there is no allegation, let alone any fact on the basis of which an allegation might be plausible, that the Defendant, Entropic, had any affirmative knowledge of the patents-in-suit prior to the filing of the Complaint.  Knowledge of the patent is a basic element of an inducement or contributory infringement claim, as the U.S. Supreme Court held in *Global-Tech,* 131 S. Ct. at 2068.  Blue Spike's allegations of inducement in the Amended Complaint are not limited to post-filing conduct.  Therefore, at a minimum the Court should grant the motion to dismiss Blue Spike's claims to the extent they arise from any pre-filing activity.[3]

### 2. *Blue Spike Also Does Not Adequately Plead Intent to Induce Infringement*

"[T]o survive [a] motion to dismiss, [a] complaint must contain sufficient facts plausibly showing that Defendants specifically intended a third party to infringe the [asserted] patent[s] and knew the third party's acts constituted infringement."  *MacroSolve, Inc.,* slip op. at 5-6 (citing *Bill of Lading,* 681 F.3d at 1339; *see also U.S. Ethernet Innovations, LLC*, slip op. at 2.

In *U.S. Ethernet,* plaintiff USEI argued "that a reasonable inference of intent and knowledge can be made from the…allegations in its complaint [that]…Yamaha supplies 'infringing systems and components to [its] customers,' and…Yamaha's 'customers who purchase systems and components thereof and operate such systems and components thereof in

---

[3] In *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,* No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199 (E.D. Tex. July 27, 2012), Magistrate Judge Love suggested that lack of pre-filing knowledge was not alone a basis to dismiss allegations of indirect infringement.  But in that case Magistrate Love found that the complaint alleged facts that provide a plausible post-filing basis to infer intent to induce infringement.  That case involved an accused method of "authoring" DVD and Blu-Ray discs "with their content-addressing features."  Defendants were alleged to have infringed the patent by authoring DVDs with content addressable video [and] contracting with others to author DVDs with content addressable videos."  *Id.* at *16.  There are no similar factual allegations involving Entropic in this case.

accordance with [Yamaha's] *instructions* directly infringe one or more claims.'"   6:12-cv-366, slip op. at 6 (emphasis added).   The Court rejected this argument, reasoning that "USEI's allegations that Yamaha 'supplies' infringing systems and components and provides 'instructions' to its customers who allegedly infringe does not create a reasonable inference of inducement."   *Id.*   Thus, the Court found "USEI's complaint…fails to…allege any facts that, if taken as true, establish a plausible inference that Yamaha had the specific intent to induce its customers actions, and knowledge that those actions amounted to infringement."   *Id.*

Similarly, in *MacroSolve.*, the complaint alleged that the defendant "induced infringement and/or contributed to the infringement of one or more of the claims of the '816 patent by its customers."   6:11-cv-694*,* slip op. at 6.   The Court found this bare allegation insufficient, reasoning that the "complaint alleges a direct infringer, namely Defendants' customers, [but fails] to…allege any facts that, if taken as true, establishes a plausible inference that Defendants had knowledge of the '816 patent, the specific intent to induce a third party to infringe, and knowledge that such action amounted to infringement."   *Id.*

By contrast, in *Patent Harbor*, the Court found that the plaintiff had met the required intent standard through plaintiff's allegation that "Defendants either perform that method themselves or 'direct[] and control[]' others to do so 'through contract.'"   *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,* No. 6:11-cv-229, slip op. at 10 (E.D. Tex. July 27, 2012) (Love, M.J.) (D.N. 640-2).   The Court reasoned "a plausible inference from these allegations is that Defendants induced others to infringe the '514 patent by ***directing and controlling them through contract***."   *Id.* (emphasis added).   In other words, in *Patent Harbor*, the Court found intent and knowledge could be inferred through the defendants' alleged direct contractual relationship with the alleged direct infringers, through which the defendants could *direct* and

*control* the alleged directly infringing activities.

Blue Spike does not and could not allege such a direct contractual relationship here between Entropic and the putative direct infringers (the alleged "end users"), whereby Entropic is "directing and controlling" the end users' purported direct infringement.  Without this key allegation of a direct contractual relationship, no sufficient inference of intent and knowledge can be made from Blue Spike's formulaic allegations, any more than such an inference could be drawn from similar allegations in *U.S. Ethernet* and *MacroSolve.*  Accordingly, Blue Spike's inducement claim is insufficient for failure to allege any concrete facts tending to show Entropic had the requisite intent to induce infringement and should be dismissed under *Iqbal* and *Twombly*.

### B.    Blue Spike Fails to Adequately Plead the Facts Required for Contributory Infringement

Liability for contributory infringement requires not only knowledge of the patent alleged to be infringed, but also that the Accused Products were "especially made or especially adapted for use in an infringement."  35 U.S.C. §271(c).  The Amended Complaint does not plead that Entropic had knowledge of the patents-in-suit before Blue Spike filed its Complaint, and therefore, as with inducement, at a minimum the Court should grant the motion to dismiss as to pre-filing contributory infringement.

As with inducement, however, the failures of the Amended Complaint are broader in scope.  "[T]o state a claim for contributory infringement, [a plaintiff] must, among other things: (1) identify the 'material or apparatus for use in practicing [the] patented process' that is sold or offered for sale by Defendants; and (2) 'plead facts that allow an inference that [these] components . . . have no substantial non-infringing uses.'"  *U.S. Ethernet*, 6:12-cv-366, slip op. at 7 (citing *Bill of Lading*, 681 F.3d at 1331).  *Patent Harbor, MacroSolve,* and *U.S. Ethernet* are

all in accord that a complaint for contributory infringement should be dismissed when it "fails to identify the components used in the infringing method and is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses.'" *Patent Harbor*, 6:11-cv-229, slip op. at 11 (dismissing contributory infringement claim); *see also MacroSolve*, 6:11-cv-694, slip op. at 6-7; *U.S. Ethernet*, 6:12-cv-366, slip op. at 7.

Like the plaintiffs in *Patent Harbor, MacroSolve,* and *U.S. Ethernet*, Blue Spike in its Amended Complaint fails to identify the specialty components provided by Entropic that it contends are used as a part of the products and systems accused of infringement. For example, Blue Spikes' vague allegation in its complaint that it is the Accused Products - and not specifically identified components thereof - that "have no substantial non-infringing uses and are for use in systems that infringe the [Asserted] Patent[s]" (Complaint at ¶ 34; *see also* ¶¶ 42, 50, 58) is no different than the allegation this Court found insufficient in *MacroSolve.* 6:11-cv-694, slip op. at 6 (dismissing claim that "fails to identify the components of the accused products—the Continental app and United Airlines Mobile app—used to infringe the '816 patent.")

Blue Spike also fails to allege how these as of yet unidentified components lack any substantial non-infringing uses. Blue Spike's Amended Complaint is deficient not simply because it is missing any such analysis, but also because it is entirely devoid of any factual allegations that make *plausible* a claim that the products in question have no non-infringing use. *See, e.g., U.S. Ethernet*, 6:12-cv-366, slip op. at 7 (dismissing contributory infringement claim that "is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses.'"); *MacroSolve*, 6:11-cv-694, slip op. at 6 (same). Blue Spike's contributory infringement claim is deficient and should be dismissed

because its "formulaic recitation" of the elements of contributory infringement does not meet the test of *Iqbal* and *Twombly*.

### C. Blue Spike Fails to Adequately Plead the Facts Required for Willfulness

Liability for willfulness requires that a defendant engage in infringing conduct with knowledge of the asserted patent, at least an objectively reckless disregard of the known risk of infringing it, and because a plaintiff must have a good faith basis for alleging willful infringement [Fed. R. Civ. P. 8, 11(b)], ordinarily "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Seagate*, 497 F.3d at 1374.  In explaining its general rule, the Federal Circuit contrasted the need to base a complaint on pre-filing willfulness with the remedies available to curb post-filing willfulness: "By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction …. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages [for willfulness] based solely on the infringer's post-filing conduct." *Id.* at 1374. Moreover,. *Id.* at 1371.

Blue Spike does not allege in its Amended Complaint that Entropic had specific knowledge of any of the patents-in-suit before Blue Spike filed its Complaint.  Instead, Blue Spike relies on the filing of the Complaint to supply the request knowledge.  However, "[a]bsent additional allegations, the filing of an infringement suit alone is insufficient to give rise to a post-filing willful infringement claim." *Touchscreen Gestures LLC v. Research in Motion Limited*, No. 6:12-cv-263, slip op. at 4 (E.D. Tex. March 27, 2013) (Schneider, D.J.) (attached as Exhibit E).  In *Touchscreen Gestures*, the plaintiff argued "that the filing of th[e] [law]suit provides sufficient notice to support post-filing willful infringement claims." *Id.*  The Court disagreed,

noting that a willful infringement claim in an "'amended complaint that relies solely on allegations that [defendant] was made aware of the [asserted patents] by the filing of the original complaint in the present action… must fail'" *Id.* (citing *Execware, LLC v Staples, Inc.,* No. 11-836, 2012 WL 6138340, at *7 (D. Del. Dec. 10, 2012)).   The Court in *Touchscreen Gestures* accordingly dismissed plaintiff's willfulness claims. *Id.* at 5.

There is no reason, and Blue Spike adverts to none in its Amended Complaint, why the general rule that a willfulness claim cannot be based solely on the filing of a complaint should not obtain here.  Under that rule, Blue Spike's willfulness claims must be wholly dismissed. *See Webmap Tech., LLC v. Google, Inc.,* No. 2:09-CV-343-DF-CE, 2010 WL 3768097, at *4 (E.D. Tex. Sept. 28, 2010) (Everingham, M.J.) (recommending dismissal of a willfulness claim based on allegations of post-filing conduct because "[n]o extenuating circumstances have been alleged" that would justify a departure from the "general rule" announced in *Seagate*) (adopted in its entirety in *Webmap Tech., LLC, v. Google, Inc.,* No. 2:09-CV-343-DF-CE, 2010 WL 3835118, at *1 (E.D. Tex. Sept. 28, 2010) (Folsom, J.)).

VI.     **CONCLUSION**

For the foregoing reasons, Entropic respectfully requests that the Court dismiss Blue Spike's claims for indirect and willful infringement for failure to state a claim upon which relief can be granted.

DATED:  August 30, 2013                         Respectfully submitted,


By */s/ Alan H. Blankenheimer*
   Alan H. Blankenheimer
   ablankenheimer@cov.com
   Jo Dale Carothers
   jcarothers@cov.com
   COVINGTON & BURLING LLP
   9191 Towne Centre Drive, 6th Floor
   San Diego, CA 92122-1225

Telephone: (858) 678-1800
Facsimile:  (858) 678-1600

Michael E. Jones
SBN: 10929400
Potter Minton, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com


Attorneys for Defendant,
Entropic Communications, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 30, 2013.

<u>/s/ Alan H. Blankenheimer</u>