**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | Civil Action No. 6:12-CV-499 MHS |
| *Plaintiff,* | § | |
| | § | LEAD CASE |
| v. | § | |
| | § | |
| TEXAS INSTRUMENTS, INC. | § | |
| *Defendants* | § | |

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | Civil Action No. 6:12-CV-576 MHS |
| *Plaintiff,* | § | |
| v. | § | CONSOLIDATED CASE |
| AUDIBLE MAGIC CORPORATION, | § | |
| FACEBOOK, INC., MYSPACE, LLC, | § | |
| SPECIFIC MEDIA, LLC, | § | |
| PHOTOBUCKET.COM, INC., | § | |
| DAILYMOTION, INC., DAILYMOTION | § | |
| S.A., SOUNDCLOUD, INC., | § | |
| SOUNDCLOUD LTD., MYXER, INC., | § | |
| QLIPSO, INC., QLIPSO MEDIA | § | |
| NETWORKS LTD., YAP.TV, INC., | § | |
| GOMISO, INC., IMESH, INC., | § | |
| METACAFE, INC., BOODABEE | § | |
| TECHNOLOGIES, INC., TUNECORE, | § | |
| INC., ZEDGE HOLDINGS, INC., | § | |
| BRIGHTCOVE INC., COINCIDENT.TV, | § | |
| INC., ACCEDO BROADBAND NORTH | § | |
| AMERICA, INC., ACCEDO | § | |
| BROADBAND AB, AND MEDIAFIRE, | § | |
| LLC | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | Civil Action No. 6:12-CV-570 MHS |
| *Plaintiff,* | § | |
| v. | § | CONSOLIDATED CASE |
| | § | |
| WIOFFER, LLC | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT AUDIBLE MAGIC CORPORATION'S RESPONSE TO BLUE SPIKE
LLC'S SUPPLEMENTAL SURREPLY  REGARDING AUDIBLE MAGIC'S MOTION
TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE
<u>NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)</u>**

Audible Magic Corporation ("Audible Magic") submits this response to Blue Spike LLC's Supplemental Sur-reply (Dkt. 935), pursuant to the Court's order granting leave to file supplemental briefing.  (Dkt. 928.)

As Audible Magic explained in its original briefing, this action should be transferred to the Northern District of California.  (*See* Dkt. 771 and 861.)  After completing briefing on its transfer motion, Audible Magic amended its counterclaims to include causes of action against Blue Spike LLC, Blue Spike, Inc. and Scott Moskowitz.[1]  (*See, e.g.*, Dkt. 885 at 25.)  As pointed out in its amended pleading, the new counterclaims are specifically based on activities that took place in the Northern District of California and therefore transfer to that district is appropriate, even in light of the new claims.  (*See, e.g.*, *id*. at p. 26, ¶5).  Blue Spike LLC ignores this and presents zero facts or evidence in its supplemental papers in support of its assertion that the counterclaims defeat transfer.[2]  Because the counterclaims arise out of Blue Spike, Inc. and Scott Moskowitz's activities in the Northern District of California, transfer is still appropriate.

A.      Jurisdiction

In the Ninth Circuit (which law is applied to answer whether the suit could have been brought there), personal jurisdiction over a nonresident defendant is proper if permitted by a

---

[1]      Blue Spike implies that Audible Magic was required to seek leave of the Court before adding new parties.  However, Audible Magic understands that the practice of this Court is to set a deadline to add new parties and amend pleadings (without leave of the Court) at the Case Management Conference, as reflected in the model scheduling and discovery order: http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22617.  Because this Court has not yet conducted a Case Management Conference, the deadline to add new parties without leave of the Court has not yet lapsed.  Accordingly, Audible Magic does not believe it was required to seek leave to add counterclaims against Blue Spike Inc. and Scott Moskowitz.

[2]      As the party who requested this additional briefing, Blue Spike LLC should not be permitted to sandbag Audible Magic by adding evidence in its response to this brief.  Given the record, if Blue Spike had any actual evidence (as opposed to unsupported conclusory statements), those should have been included in the supplemental sur-reply.  It would be extremely prejudicial to Audible Magic to allow Blue Spike to enter evidence into the record at a point in time when Audible Magic has no ability to respond.

state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). The Ninth Circuit uses the following three-part test to analyze whether the Court can exercise specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

In this case, the "[a]cts giving rise to the [new] counterclaims . . . occurred in the Northern District of California." (Dkt. 885 at p. 26, ¶5.) For example, Audible Magic alleged counterclaims predicated on Blue Spike, Inc.'s and Mr. Moskowitz's taking of Audible Magic's intellectual property in California. Specifically, Audible Magic alleges that Blue Spike Inc. and Mr. Moskowitz "have taken information, technology and ideas from Audible Magic and its predecessor Muscle Fish." (*Id.* at 33.) This claim is based, in part, on the assertions that:

- In the summer of 1997, Moskowitz contacted Muscle Fish (in the Northern District of California) and inquired about Muscle Fish's technology. At that time, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server." (Dkt. 885 at 20);

- In a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value, Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products,

"SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology (*Id.*); and

- Blue Spike Inc. and Moskowitz took information, technology and ideas from Audible Magic and Muscle Fish – both headquartered in the Northern District of California – without authorization.  (Dkt. 885 at p. 33-34.)

In other words, the very acts that form the premise of Audible Magic's allegations – Moskowitz's and Blue Spike Inc.'s discussions and interactions with Audible Magic and Muscle Fish – took place in the Northern District of California and were directed at residents of that district.   In addition, in support of its Motion to Transfer, Audible Magic submitted the declaration of Vance Ikezoye.  (Dkt. 916-2.)  In that declaration, Mr. Ikezoye explained that:

> Evidence regarding interactions between Mike Berry, Scott Moskowitz, and Blue Spike Inc . . . and employees of Audible Magic's predecessor company Muscle Fish, LLC are located in Los Gatos, California and Berkeley, California. . . . Moskowitz, Berry and Blue Spike, Inc. had interactions with Muscle Fish, LLC, on behalf of Blue Spike, Inc., in the late 1990s.

(Dkt. 916-2 at ¶5.)  Blue Spike has never challenged these assertions.

### B.    Venue

All of the reasons that Audible Magic articulated in its original briefing for why venue is more appropriate in the Northern District of California are equally applicable here.  A majority of the facts and third party witnesses are located in that district.  Blue Spike fails to identify any additional sources of proof or witnesses that should alter the venue determination.  The one individual who Blue Spike does identify – Mr. Moskowitz – was discussed at length in the parties' original briefing.  The additional counterclaims do not alter the venue analysis with respect to Mr. Moskowitz.

## C.     Blue Spike's Improper Briefing

Upon Blue Spike's request, the parties filed a joint motion seeking leave "to submit supplemental briefing on the transfer motion to address the impact, if any, that the new third party claims and the addition of new parties have on the transfer analysis."  (Dkt. 927 at ¶2.)  In its "supplemental sur-reply" Blue Spike violated the parties' agreement by going outside the permissible scope of material to be briefed.  Specifically, Blue Spike attempts to cite additional case authority and makes unsupported allegations about an alleged "Audible Magic customer," a company called Entropic. (Dkt. 935 at p. 3-4.)  These arguments and statements are irrelevant to the issue of whether the new third party claims and parties have any impact on the venue determination and should be disregarded by the Court.[3]

*          *          *          *          *          *

In its amended counterclaims, Audible Magic already articulated reasons why venue in this case is proper in the Northern District of California, even for the newly added claims.  Blue Spike has presented no evidence or arguments to rebut that showing.  Accordingly, Audible Magic respectfully requests that, consistent with Audible Magic's briefing on this matter, the Court transfer this action to the Northern District of California.

---

[3]     If this Court were to consider Blue Spike's statements about Entropic, it bears noting that Blue Spike amended its complaint against Entropic on August 13, 2013.  (Dkt. 923.)  That amended complaint, for the first time, accuses Entropic of infringement based on Entropic's alleged use of Audible Magic technology.  *Compare* Dkt. 923 ¶27 *with* Case No. 6:13-cv-125, Dkt. 1 ¶27.  Not only are the Entropic allegations post-filing facts that should not factor into the venue determination of the present case (*see In re EMC Corp*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013), but the parties have not had time to assess these allegations and take any appropriate actions regarding a potential transfer request.  <u>Indeed, it is Audible Magic's understanding that Entropic *will* be moving to transfer to the Northern District of California.</u>

Dated:  August 30, 2013

By:                              */s/ Eric H. Findlay*                         

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone:  (903) 534-1100
Facsimile:  (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

I. Neel Chatterjee – *LEAD ATTORNEY*
Gabriel M. Ramsey
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Attorneys for Defendants Audible Magic, Corp.,
Facebook, Inc., Myspace LLC, Specific Media LLC,
Photobucket.com, Inc., DailyMotion, Inc.,
DailyMotion S.A., SoundCloud, Inc., SoundCloud
Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media
Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh,
Inc., Metacafe, Inc., Boodabee Technologies, Inc.,
Zedge Holdings, Inc., Brightcove Inc., Coincident.TV,
Inc., Accedo Broadband North America, Inc., Accedo
Broadband AB, MediaFire, LLC, WiOffer LLC, and
Harmonix Music Systems, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served electronically on

opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on August 30, 2013.

*/s/ Eric H. Findlay*
Eric H. Findlay
