# Exhibit 4

Case 2:11-cv-00416-JRG   Document 416   Filed 08/09/13   Page 1 of 16 PageID #: 9591

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| SIMPLEAIR, INC., | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:11-cv-416-JRG |
| | § | |
| v. | § § | |
| MICROSOFT CORP., *et al.*, | § § § | |
| Defendants. | § § § § | |

**<u>ORDER AND OPINION</u>**

## I.      INTRODUCTION

Pending before the Court is Microsoft Corporation's Motion to Transfer Venue (Dkt. No. 168), Microsoft Corporation's Motion to Sever Plaintiff's Claims Against Microsoft (Dkt. No. 170) and Defendants' Motion to Sever and Transfer Severed Claims to the United States District Court for the Northern District of California (Dkt. No. 172). Microsoft Corporation ("Microsoft") seeks to be severed from the other defendants in this case and then have its then severed claims transferred to the Western District of Washington. Separately, the group of defendants including Google, Inc. ("Google Defendants")[1] also seeks severance from the remaining defendants, and for their then severed claims to be transferred to the Northern District of California. Defendants Ericsson Inc. and Nokia Inc. do not join in these motions and have not otherwise moved the Court

---

[1] The Google Defendants are collectively Google Inc., Motorola Mobility LLC, Futurewei Technologies, Inc., Huawei Technologies Co., Ltd., HTC America, Inc., HTC Corporation, LG Electronics Mobilecomm U.S.A., Sony Mobile Communications (USA) Inc.

Case 2:11-cv-00416-JRG Document 416 Filed 08/09/13 Page 2 of 16 PageID #: 9592

for a severance or transfer.

## II. BACKGROUND

SimpleAir filed suit on September 15, 2011, which was before the effective date of the Leahy-Smith America Invents Act. SimpleAir alleges infringement of two patents, U.S. Patent Nos. 6,021,433 ("the '433 patent) and 7,035,914 ("the '914 patent"), against sixteen separate Defendants, which are informally structured into nine Defendant groups: Microsoft, Nokia, Samsung, Sony Mobile, Ericsson, Huawei, Google, HTC, and LG. The accused technology relates to wireless messaging and notification services.

There are four accused notification services in this case: (1) Microsoft's Push Notification services (MPNS) on Windows Phone smartphones, (2) Google's Android Cloud to Device Messaging (C2DM) service on Android smartphones and tablets, (3) Nokia Notification Services on Symbian smartphones, and (4) Ericsson Mobile Push Service on Android smartphones and J2ME (Java) smartphones. Additionally, SimpleAir accuses Motorola, Samsung, Sony Mobile, Huawei, HTC, and LG of jointly infringing the asserted patents with Google because they each manufacture Android phones and tablets that are used in conjunction with Google's C2DM service. SimpleAir further alleges that Samsung, Huawei, HTC, and LG manufacture Windows Phones that are relevant to its allegations against Microsoft.[2]

## III. MICROSOFT AND GOOGLE DEFENDANTS' MOTION TO SEVER

The Court first considers the two severance motions. Microsoft and the Google Defendants contend that they were improperly joined in this lawsuit under *In re EMC (In re EMC I)*, 677 F.3d 1351 (Fed. Cir. 2012) and Rule 20 because SimpleAir has accused four disparate products of

---

[2] Defendants contend that allegations of joint infringement between any mobile device company and Microsoft does not appear in the initial pleadings or infringement contentions, and is being alleged now for the first time by SimpleAir. However, the Court will presume these allegations to be proper for purposes of the joinder analysis.

Case 2:11-cv-00416-JRG Document 416 Filed 08/09/13 Page 3 of 16 PageID #: 9593

infringement:

- Microsoft's MPNS

- Google's Android C2DM

- Nokia's Notifications API; and,

- Ericsson's Mobile Push API, DroidPush API, and Mobile Java Push.

Microsoft contends that SimpleAir alleges separate and distinct infringement contentions against it that are not related to claims against any other defendant because SimpleAir's infringement contentions make no mention of Microsoft in connection with any other defendant. The Google Defendants concede that SimpleAir sets forth contentions relating to Google's Android C2DM service and presents alternative joint infringement theories directed against Motorola, Samsung, Sony Mobile, Huawei, HTC, and LG. However, no theory of infringement is asserted between the Google Defendants and any of the other defendants. Both Microsoft and the Google Defendants also argue that the four accused products were independently developed by unrelated companies.

SimpleAir responds by analyzing various limitations of claim 1 of the '914 patent; purportedly, to show that the claims are being asserted against each of the four accused products in the same manner. As examples of evidentiary overlap between the defendants, SimpleAir points to (i) evidence that the same application providers, such as CNN, Facebook, etc., transmit data to the "central broadcast servers," (ii) the same software within the carrier networks (*e.g.* AT&T) and the ISP networks (*e.g.* Comcast) constitute the "information gateway" and "transmission gateway," (iii) the same Android smartphones and tablets (and their components) meet the "receivers" and "computing devices" limitations for both the Google Defendants and Ericsson, and (iv) the same

data channels provided by the application providers satisfy the "data channels" limitation for both Microsoft and the Google Defendants.

In the *In re EMC I* opinion, the Federal Circuit clarified the test for joinder by holding that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." 677 F.3d at 1359. In addition, "joinder is not appropriate where different products or processes are involved." *Id.* "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." *Id.* at 1356. The parties do not appear to dispute that there is at least one common question of law between the defendants. Therefore, the Court's obligation is to determine whether the claims share an aggregate of operative facts.

Here, SimpleAir affirms it accuses four notification services provided by four independent companies:

- The MPNS is used to process and transmit notification data to applications on the Windows Phone smartphones;

- The C2DM service is used to process and transmit notification data to applications on the Android smartphones and tablets;

- The Nokia Notifications Service is used to process and transmit notification data

Case 6:21-cv-00499-RWS-CMC   Document 946-6   Filed 09/03/13   Page 6 of 17 PageID #: 95995
Case 2:11-cv-00416-JRG   Document 416   Filed 08/09/13   Page 5 of 16 PageID #:
11062

to applications on the Symbian smartphones; and

- The Ericsson mobile Push Service is used to process and transmit notification data to applications on Android smartphones and J2ME (Java) smartphones.

(*See* Dkt. No. 285 at 5 and 8.) SimpleAir bases satisfaction of the joinder requirement on the general contention that "Defendants' accused notifications are very similar with respect to how they are alleged to infringe"; therefore, there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant to satisfy the same transaction-or-occurrence test. (*See* Dkt. No. 285-1, Eichman Decl. ¶ 2.)

While each of the four accused products may operate in a similar manner, the Court does not find each claim of infringement to share an aggregate of operative facts adequate to meet Rule 20's transaction-or-occurrence test. SimpleAir does not dispute that the four accused instrumentalities are different products and are independently manufactured by four unrelated companies. These defendants are, in fact, competitors in the smartphone marketplace. SimpleAir never alleges the presence of a contractual relationship adequate to bind Microsoft, Google, Nokia or Ericsson's accused products, within the context of its infringement allegations. Furthermore, SimpleAir makes no argument that the four accused products use commonly sourced components. In light of *In re EMC*, the fact that all of the accused products employ similar but independent notification services is insufficient to prevent severance.

On review of the evidence presented, it appears to the Court that SimpleAir's arguments may have been adequate to deny severance under the previous standard of "not dramatically different." *In re EMC*, 677 F.3d at 1359. However, the prior standard has been supplanted by the Federal Circuit and replaced by the "aggregate of operative facts" and "actual link" standard now

5

Case 2:11-cv-00416-JRG   Document 416   Filed 08/09/13   Page 6 of 16 PageID #: 5996

in place.

The Court does not find an actual link between the facts underlying each claim of infringement against Microsoft and the Google Defendants. Rather, independently developed products using differently sourced parts are alleged to infringe the same claims of the same patents. Even assuming as valid SimpleAir's joint infringement allegations against Samsung, Huawei, HTC, and LG with **both** Google and Microsoft, that overlap in prospective evidence is not sufficient to constitute an actual link between all the defendants in this case. Accordingly, the Court finds that Microsoft's MPNS and Google Defendants' C2DM are not part of the same transaction or occurrence.

## IV.    MICROSOFT'S MOTION TO TRANSFER

Since Microsoft has shown that severance is proper, the Court next turns to whether the severed action should be transferred to the Western District of Washington (WDWA). Under 28 U.S.C. § 1404 (a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. If the transferee district is a proper venue, then the court must weigh the relative public and private

Case 6:12-cv-00499-RWS-CMC Document 946-6 Filed 09/03/13 Page 8 of 17 PageID #: 5997

factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors, none of which are given dispositive weight. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

SimpleAir has been a Texas corporation since 2009 with a principal place of business in Plano, Texas, which is within the Eastern District of Texas (EDTX). (Dkt. No. 285-4, Payne Decl. ¶ 9.) Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. The Court finds there to be no dispute that this suit could have originally been brought in the Western District of Washington. Accordingly, the Court next moves to consider the public and private interest factors as outlined above.

a.      **Private Interest Factors**

i.      *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a valid private interest factor. *See Volkswagen II*,

Case 2:11-cv-00416-JRG   Document 416   Filed 08/09/13   Page 8 of 16 PageID #: 9598

545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

Microsoft states that the vast majority of its relevant documents and electronic files concerning the design and development of the MPNS are located in WDWA. (*See* Dkt. No. 168-6, Kuhn Decl.) The design and development of the accused MPNS took place in or around Redmond, Washington. (*Id.*) Also, it's not aware of any documents relevant to Microsoft's design and development of the MPNS that are maintained in EDTX. (*Id.*) On the other hand, SimpleAir stores relevant documentation and evidence within EDTX in its office in Plano, Texas. (Dkt. No. 285-4, Payne Decl. ¶ 8.) Such documents relate to the development of the asserted patents and the AirMedia Live Services (the commercial service that the inventions originated from), original prosecution and ownership documents, and physical units of the AirMedia Internet Antenna and software. (*Id.*)

Microsoft urges the Court to disregard the presence of SimpleAir's documents in EDTX as part of the transfer analysis because the documents were moved to EDTX in anticipation of litigation. (Dkt. No. 168 at 7.) From Microsoft's recount of SimpleAir's history of first incorporating in California in 2004 and then in Texas in 2009, it essentially asks this Court to conclude that SimpleAir was organized and structured in this District specifically to avail itself of the judicial system within EDTX and that its presence here is "recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). The Federal Circuit

has found that an entity is ephemeral if it does not have (1) employees in the transferor forum; (2)

principals that reside in the transferor forum; or (3) research and development-type activities in the

transferor forum. *Novelpoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229-JDL,

2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) (citing *In re Zimmer*, 609 F.3d at 1381).

Additionally, "[t]his is certainly true where the formation of the entity could be characterized as

recent." Here, the President of SimpleAir and lead inventor on the asserted patents, John Payne,

states that he uses the Plano office to conduct business relating to SimpleAir. (Dkt. No. 285-4,

Payne Decl. ¶ 10). Such business includes meetings with patent prosecution counsel and litigation

counsel. (*Id.*) Additionally, SimpleAir has been a Texas corporation for approximately five years.

Its formation cannot be fairly characterized as recent or ephemeral and Microsoft has not met its

burden to show that SimpleAir was incorporated in EDTX only to manipulate venue.

Returning to the § 1404(a) analysis, the Court finds that SimpleAir has shown that

significant sources of proof exist within EDTX at least as relates to the Plaintiff. Additionally,

sources of proof relating to Microsoft also exist in Texas since the accused MPNS product utilizes

servers in data centers located in San Antonio, Texas. (Dkt. No. 292 at 2.) On balance, the Court

finds this factor is neutral.

ii.     *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the

attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition

and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316.  Rule 45 of the

Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party

witnesses who work or reside more than 100 miles from the courthouse. *Id.* Based on its invalidity

contentions, Microsoft has identified five individuals with potentially relevant knowledge about prior art who are believed to reside within Washington and are subject to WDWA's absolute subpoena power. (Dkt. No. 168 at 8.) Microsoft also points out that Jeffrey Wang, a named inventor of both asserted patents, lives in Bellevue, Washington and is also subject to WDWA's absolute subpoena power.

On the other hand, SimpleAir identifies Samsung, Futurewei, and Nokia,[3] who all have locations within or close to EDTX, as possessing evidence relevant to the claims and defenses between SimpleAir and Microsoft. (Dkt. No. 285-1, Eichman Decl. ¶ 8.) Third parties AT&T Mobility, Verizon Wireless, and Metro PCS are alleged to have information concerning the servers in their data networks that may be relevant to SimpleAir's infringement allegations. (*Id.*)  Their relevant offices are located in Plano, Texas and Dallas, Texas. (*Id.*) In addition, the prosecuting attorneys of the asserted patents, Chris Rourk and John M. Cone, are both based in Dallas, Texas. (*Id.*) SimpleAir has also specifically identified and named former employees of AirMedia, numerous technical witnesses with knowledge of prior art (some identified by Defendants), and other relevant third parties who are subject to the absolute subpoena power of EDTX or, if outside such subpoena power, are otherwise located in the State of Texas. (*Id.* at ¶ 9.)

SimpleAir has identified numerous non-party witnesses that are within the absolute subpoena power of EDTX for depositions, and more within the subpoena power of EDTX for trial. Certainly, there may be many more relevant third parties outside of both Texas and Washington. However, based upon the evidence presented, Microsoft has not shown that WDWA is comparable to Texas in this regard. On balance, the Court finds that the availability of compulsory process

---

[3]  Once Microsoft is severed out from Cause No. 2:11-416, Samsung, Futurewei and Nokia will become third parties to the Microsoft action.

Case 6:12-cv-00499-RWS-CMC   Document 946-6   Filed 09/03/13   Page 12 of 17 PageID #: 11068

factor weighs against transfer.

> ### iii.     Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342.   The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.   Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis."  *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

The non-party witnesses identified by SimpleAir and Microsoft in the Court's discussion of the second factor show that they are spread across the entire country, including some in Washington and many in Texas. Regarding party witnesses, Microsoft identified five technical employees with knowledge of the design and development of aspects of the MPNS who work in its Redmond, Washington office: Scott Bragg, Abolade Gbadegesin, Reid Kuhn, Dan McBride, and Sameer Tejani. (Dkt. No. 168 at 9.) Additionally, Microsoft identified, and SimpleAir does not dispute, four current or former officers and/or directors of SimpleAir who reside in Southern California: John Payne, Tim von Kaenel, Seth Weisberg, and Michael Mirel. (*Id.* at 9-10.) For the Plaintiff's witnesses, the distance between their locations in Southern California and the Marshall

11

Case 2:11-cv-00416-JRG   Document 416   Filed 08/09/13   Page 12 of 16 PageID #: 6002

courthouse is on average 1,595 miles compared to the distance to the Seattle courthouse, which is on average 1,168 miles. Despite the extra distance of 427 miles, John Payne, the current President of SimpleAir, attests that he considers EDTX to be more convenient because he frequently travels to the Dallas area for other business meetings. (Dkt. No. 285-4, Payne Decl. at ¶ 12.) In contrast, he rarely travels to Seattle for any purpose. (*Id.*) As a result, this is a situation where the plaintiff claims one location is more convenient and the defendant urges another location is more convenient. On balance and taking into account the widespread and disparate locations of the non-party witnesses, the Court finds this factor to be neutral.

        *iv.*    *Other Practical Problems*

Microsoft submits that there are no other practical problems to prevent transfer while SimpleAir contends that there are. Practical problems include those that are rationally based on judicial economy. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at \*6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011); *see also Volkswagen II,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice … [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

As severance is granted here, as previously discussed, for both Microsoft and the Google Defendants, this case will consequently be split into three parallel co-pending actions involving the same asserted patents and allegations of infringement. This Court will clearly be responsible

Case 2:11-cv-00416-JRG   Document 416   Filed 08/09/13   Page 15 of 16 PageID #: 6003

for what remains of this case because Nokia and Ericsson have not moved for a severance or transfer. To transfer the Microsoft Action to WDWA, and Google Defendants to NDCA while keeping the Nokia and Ericsson case in EDTX would unavoidably risk duplicative proceedings involving the same or similar issues between three different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions. Due to such real and practical dangers, the Court finds that the traditional notions of judicial economy lead the Court to find that the "Other Practical Problems" factor weighs against transfer in this case.

**b.      Public Interest Factors**

Having addressed the private interest factors in the § 1404(a) transfer analysis, the Court now turns to the public interest factors. The only two factors the parties dispute are court congestion and local interest. The parties concede that the other factors are neutral.

*i.       Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Microsoft argues that WDWA is less congested because it has fewer total civil cases and fewer patent cases compared to EDTX. However, this case was filed in September 2011 and trial in EDTX is only five months away. Even if transfer was granted immediately when this motion first became ripe for consideration in December 2012, a trial set in WDWA would most likely be much later than the present trial date of January 2014. Accordingly, on balance, the Court finds that this factor weighs against transfer.

ii.        *Local Interest*

The Court must also consider local interest in the litigation, because "[j]ury duty is a

burden that ought not to be imposed upon the people of a community which has no relation to the

litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to

any judicial district or division in the United States," such as the nationwide sale of infringing

products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318;

*In re TS Tech*, 551 F.3d at 1321.

Microsoft argues that it has a strong interest in having this dispute settled in WDWA

because (i) it employs numerous employees in the Puget Sound area, (ii) relevant evidence is

located in Redmond, Washington, and (iii) SimpleAir's connections to EDTX are inspired by

litigation. (Dkt. No. 168 at 12-13.) SimpleAir responds that it has been a Texas corporation and a

member of the local community in this district for several years. (Dkt. No. 285, at 23-4.)

Additionally, the original commercialization of the asserted patents by AirMedia took place in

Plano, Texas, which is within this District. (*Id.*) However, SimpleAir concedes that WDWA has a

substantial local interest in this case due to Microsoft's significant presence in the Redmond,

Washington. (*Id.* at 23.) On balance, this factor weighs in favor of transfer.

**c.     Conclusion**

On weighing the evidence, one factor weighs in favor of transfer to WDWA, three factors

weigh against transfer, and four are neutral. The balance of the private and public factors

demonstrates that the Microsoft has fallen short of meeting its burden to show that transfer is

clearly more convenient.

14

## V.    GOOGLE DEFENDANTS' MOTION TO TRANSFER

Based upon much the same arguments advanced by Microsoft, the Google Defendants move to transfer their severed case to the Northern District of California (NDCA). However, the Google Defendants include Futurewei Technologies, Inc., who is headquartered in Plano, Texas (within EDTX); Huawei Technologies Co., headquartered in China; Sony Mobile, headquartered in Atlanta, Georgia; HTC America, headquartered in Bellevue, Washington; HTC Corporation, headquartered in Taiwan; LG Electronics Mobilecomm, headquartered in San Diego, California; Motorola Mobility, headquartered in Libertyville, Illinois; Samsung Electronics America, headquartered in Ridgefield Park, New Jersey; and Samsung Telecommunications America, headquartered in Richardson, Texas. (*See generally* Dkt. No. 172, Exhibits 1-7.) Their sources of proof and relevant witnesses are likewise scattered across the country and the globe. (*Id.*) In fact, with the exception of Google itself, all of the other moving defendants are located elsewhere within the country (outside NDCA) or overseas. Futurewei Technologies, Inc. is located within EDTX and Samsung Telecommunications is located either within, or very close to (if not adjacent to) this district. None of the moving defendants are actually headquartered in NDCA except for Google. Therefore, the facts surrounding the Google Defendants' motion to transfer are significantly less persuasive to the Court in conducting the § 1404(a) analysis than the facts Microsoft set forth.

Accordingly, based on the same reasoning as discussed in Microsoft's transfer motion above, the Court finds that transfer of the Google Defendants to NDCA is not clearly more convenient.

15

Case 2:11-cv-00416-JRG Document 416 Filed 08/09/13 Page 16 of 16 PageID #: 6006

## VI.    CONCLUSION

The Court **GRANTS** Microsoft's Motion to Sever Plaintiff's Claims Against Microsoft (Dkt. No. 170) and **GRANTS-IN-PART** Defendants' Motion to Sever and Transfer Severed Claims to the United States District Court for the Northern District of California (Dkt. No. 172) as to the matter of severance. Accordingly, the Court hereby **ORDERS** that the claims pertaining to Microsoft and the Google Defendants be severed into separate causes of action. SimpleAir shall pay the filing fee for those cases within ten (10) days of this order issuing to avoid having the severed cause of action dismissed with prejudice.

Further, the Court **ORDERS** the two (2) new cases to be **CONSOLIDATED** for all pretrial issues (except venue) with the lead case, 2:11-CV-416. The parties are instructed to file any future motions in the lead case until further Order of the Court. The docket control, discovery, and protective orders entered in the lead case will govern the consolidated action, including the claims pertaining to Microsoft and the Google Defendants.

For the reasons discussed above, the Court **DENIES** Microsoft's Motion to Transfer Venue to the Western District of Washington (Dkt. No. 168) and **DENIES-IN-PART** Defendants' Motion to Sever and Transfer Severed Claims to the United States District Court for the Northern District of California (Dkt. No. 172), being specifically denied as to the transfer issue.

**So ORDERED and SIGNED this 9th day of August, 2013.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

16