**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-499-MHS |
| Plaintiff, | LEAD CASE |
| v. | |
| TEXAS INSTRUMENTS, INC., | Jury Trial Demanded |
| Defendant. | |
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-537-MHS |
| Plaintiff, | CONSOLIDATED CASE |
| v. | |
| SOUNDHOUND, INC., | ORAL ARGUMENT REQUESTED |
| Defendant. | Jury Trial Demanded |

**DEFENDANT SOUNDHOUND, INC.'S REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
UNDER 28 U.S.C. § 1404(a)**

1

## **TABLE OF CONTENTS**

**Page**

I. THE FACT THAT BLUE SPIKE HAS FILED MULTIPLE CASES IN THIS FORUM CANNOT CREATE JUDICIAL EFFICIENCY ................................................. 1

II. LACK OF COMPULSORY PROCESS OF KEY NON-PARTY WITNESSES FAVORS TRANSFER ................................................................................ 3

III. COST OF ATTENDANCE FOR WILLING WITNESSES FAVORS CALIFORNIA ................................................................................................................ 3

IV. THE ONLY EVIDENCE PRESENT IN TEXAS IS THE EVIDENCE TRUCKED TO TYLER BY BLUE SPIKE MONTHS BEFORE THE CASE BEGAN ........................................................................................................................ 5

V. BLUE SPIKE'S REMAINING ARGUMENTS ARE UNAVAILING ............................ 5

VI. CONCLUSION ................................................................................................................ 5

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*BSB Bank & Trust Co. v. Morrison*,
  No. 02-cv-648, 2003 WL 1797845 (N.D.N.Y. Apr. 4, 2003)....................................................4

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) (Schneider, J.) .............1, 2, 3, 5

*Hoffman v. Blaski*,
  363 U.S. 335 (1960)....................................................................................................................3

*In re Google Inc.*,
  412 Fed. App'x 295 (Fed. Cir. 2011).........................................................................................1

*In re VistaPrint Ltd.*,
  628 F.3d 1342 (Fed. Cir. 2010)..................................................................................................2

*Internet Machs. LLC v. Alienware Corp.*,
  No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun 7, 2011) .....................................................3

*Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*,
  No. 6:11-cv-0173, slip op. at 10 (E.D. Tex. Sept. 27, 2012) .....................................................2

*Net Navigation Sys., LLC v. Alcatel-Lucent USA*,
  No. 4:11-CV-663, slip op. at 8-9 (E.D. Tex. Aug. 24, 2012) ....................................................2

*NGC Worldwide, Inc. v. Siamon*,
  No. 02-cv-1760, 2003 WL 1987001 (D. Conn. Apr. 21, 2003).................................................4

*Oasis Research, LLC v. Pro Softnet Corp.*,
  No. 4;12-CV-531, slip op. at 8 (E.D. Tex. Aug. 21, 2012 .........................................................2

*PersonalWeb Techs. LLC v. Google Inc.*,
  No. 11-cv-656, slip op. at 23 (E.D. Tex. Mar. 21, 2013)...........................................................5

*SimpleAir, Inc. v. Microsoft Corp.*,
  No. 2:11-cv-416-JRG, slip. op. (E.D. Tex. Aug. 9, 2013).........................................................2

**STATUTES**

28 U.S.C. § 1404...............................................................................................................................1

35 U.S.C. § 299.................................................................................................................................1

35 U.S.C. § 299(b) ............................................................................................................................1

Fla. Stat. § 104.041 ...........................................................................................................................4

Blue Spike's opposition brief confirms that transfer is appropriate.

## I. THE FACT THAT BLUE SPIKE HAS FILED MULTIPLE CASES IN THIS FORUM CANNOT CREATE JUDICIAL EFFICIENCY

Blue Spike greatly overplays its argument that transfer should be denied because it flooded this Court with almost a hundred lawsuits mere months after its formation in Texas. (Dkt. 931, Opp. at 3-4.) This argument flies in the face of Congress's enactment of 35 U.S.C. § 299 of the America Invents Act ("AIA."), which required Blue Spike to file individual cases as provided by § 299(b). The existence of individual cases militates in favor of transfer because now each individual case is evaluated under 28 U.S.C. § 1404, rather than making one transfer decision across all defendants in one multi-defendant litigation.[1] This Court has already rejected this precise position, holding that it "will not permit the existence of separately filed cases to sway its transfer analysis." *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at * 6 (E.D. Tex. Jan. 14, 2013) (Schneider, J.).

In *GeoTag*, this Court made clear that the AIA precludes a plaintiff from "manufactur[ing] venue" based on the filing of multiple lawsuits in a single district. 2013 WL 890484 at *6 (citing 35 U.S.C. § 299). Similar to the situation here, the combined *GeoTag* litigation involved over a hundred separate lawsuits with hundreds of individual defendants. *Id.* The Court granted transfer, in part, because GeoTag failed to identify issues common *to all of the lawsuits*. *Id.* Blue Spike pays lip service to this requirement by asserting that "other consolidated defendants' accused products have very similar functionality to SoundHound's." (Opp. at 4-5) (citing 8 other cases). False. SoundHound developed its own products and services. (Dkt. No 916-4, Mohajer Decl. ¶ 4.) Blue Spike offers no facts (*i.e.* product-by-product

---

[1] Blue Spike's reliance on *In re Google Inc.*, 412 Fed. App'x 295 (Fed. Cir. 2011) is misplaced. *In re Google*, a pre-AIA opinion, involved multiple defendants *in a single lawsuit* where some defendants were seeking severance and then transfer. *Id.* at 295.

1

technical comparisons), let alone proof, to support this allegation that SoundHound's products are related to those entities identified on pages 4-5 of its Opposition. Even if true, it is an irrelevant fact. What is at issue is whether any of the patent claims can be read on any specific product or service, not whether any of the defendants' *separate* products seem similar to a user in terms of functionality.

The cases Blue Spike relies on in support of its position are readily distinguishable. For example, *In re VistaPrint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010), which predated the AIA, involved a patent litigation where the trial court had already been involved in prior litigation on the same patent. *Id.* at 1346. The Federal Circuit, in declining to grant mandamus, accepted the trial court's determination that judicial efficiency would largely benefit from the prior litigation and claim construction of the same patent. *Id.* In *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-416-JRG, slip. op. at 13 (E.D. Tex. Aug. 9, 2013) (slip. op.), the Court denied transfer where the case had been filed nearly two years earlier, well before the AIA, and trial was only five months away. Here, this case is still in its infancy: no case management conference has been scheduled; no scheduling order has been issued; and no discovery has taken place.[2] *See, e.g., Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun 7, 2011) (recognizing transfer is more convenient when request comes before initial

---

[2] The remaining cases cited by Blue Spike, all governed by the pre-AIA statute, are also distinguishable. In *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4;12-CV-531, slip op. at 8 (E.D. Tex. Aug. 21, 2012), the Court denied transfer after noting that "the parties and the Court have already expended significant resources negotiating issues of scheduling, discovery, and protective orders." Here, no scheduling order is in place and discovery has not begun. In *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-cv-0173, slip op. at 10 (E.D. Tex. Sept. 27, 2012), the Court denied transfer after the basis of that motion, consolidating actions with an declaratory action filed in the Northern District of California, was mooted by the California court's transfer of the DJ action to this Court. And in *Net Navigation Sys., LLC v. Alcatel-Lucent USA*, No. 4:11-CV-663, slip op. at 8-9 (E.D. Tex. Aug. 24, 2012), the plaintiff had filed only two other suits in this District, and thus there was no issue, as the case here and in *GeoTag*, that the plaintiff was "undermin[ing] the principals underpinning transfer law and the [AIA]" by "manipulat[ing] venue by serially filling [sic] cases within a single district." *GeoTag*, 2013 WL 890484 at *6.

disclosures or the entry of a scheduling order).

## II.   LACK OF COMPULSORY PROCESS OF KEY NON-PARTY WITNESSES FAVORS TRANSFER

Blue Spike does not dispute that (1) relevant prior art witnesses are concentrated in Northern California and (2) there are no known non-party witnesses residing in this District. (Opp. at 10-11.) Nor does it dispute the relevancy of the key six non-party witnesses regarding Blue Spike's inequitable conduct. Instead, Blue Spike seemingly tries to argue that those witnesses will voluntarily appear at trial. No evidence exists to support that position. Those witnesses reside in the Northern District of California, outside of this Court's trial subpoena authority, and have provided affidavits that it would be burdensome to appear at trial. Nothing in the record suggests they will voluntarily appear at trial. Since the Northern District of California "has absolute subpoena power over all of the identified [non-]party witnesses [and] [t]he Eastern District of Texas does not have absolute subpoena power over any identified non-party witnesses . . . this factor weighs heavily in favor of transfer." *GeoTag*, 2013 WL 890484 at *4.

## III.   COST OF ATTENDANCE FOR WILLING WITNESSES FAVORS CALIFORNIA

No dispute exists that the vast majority of willing party and non-party witnesses are located in Northern California—as Blue Spike fails to identify any witness other than Mr. Moskowitz. With respect to Mr. Moskowitz, Blue Spike also misrepresents to this Court that he was a resident of this District before this case was filed in August 2012.[3] (Opp. at 7 n.2.) As explained in SoundHound's Opening Brief, Mr. Moskowitz voted in the Florida elections in November 2012—a right available only to legal Florida residents. (Dkt. No. 916 at 6 and Exs. 18 & 19). Fraud in connection with casting a vote is a third degree felony. Fla. Stat. § 104.041. SoundHound trusts that Mr. Moskowitz is not the type of individual to engage in voter fraud by

---

[3] Motions to transfer venue are to be decided based on the "situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

3

voting in Florida while a resident of Texas. Indeed, his declaration does not dispute that he voted in Florida after this suit was commenced and makes no representation that he was a resident of Texas in August 2012. (Dkt. 931-2, ¶ 3.)

Blue Spike's remaining arguments concerning Mr. Moskowitz are unavailing. Mr. Moskowitz claims to have a medical condition preventing him from traveling to California, but fails to explain why he nevertheless is capable of frequent travel between Texas and Florida. Despite the facial implausibility of this position, he fails to even identify this alleged medical condition, much less provide any medical evidence of its existence or how travel to California as opposed to Texas and Florida would harm his health. In fact, Mr. Moskowitz's own conduct raises very significant questions regarding the veracity of Blue Spike's argument. Mr. Moskowitz claims that a 3.5 hour flight threatens his health (Moskowitz Decl. ¶¶ 8, 11), yet he set up shop in Texas just before instituting these litigations, and admittedly needs to frequently travel between Florida and Texas (a 3 hour flight). *Id.* at ¶ 3. It defies logic that Mr. Moskowitz would decide to move to Tyler after more than thirteen years in Florida if doing so was extremely painful and created a risk of serious medical harm.[4]

Further, if the six non-party witnesses addressed above were willing witnesses, this factor would weigh even more heavily in favor as transfer, as they all would need to travel to Texas.

---

[4] The cases Blue Spike cites (Opp. at 7) demonstrate that Mr. Moskowitz's unspecified medical condition is not a dispositive concern for transfer analysis. In those cases, doctors submitted medical evidence that severe harm would be suffered. *See BSB Bank & Trust Co. v. Morrison*, No. 02-cv-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (Doctors submitted evidence that elderly defendants were at risk "for *sudden death*."); *NGC Worldwide, Inc. v. Siamon*, No. 02-cv-1760, 2003 WL 1987001, at *1 (D. Conn. Apr. 21, 2003) (The treating physician opined that a seventy-two-year-old defendant would experience severe swelling of extremities and *skin tearing and bleeding* if he were forced to travel.). Blue Spike offers not a shred of medical evidence, much less any that suggests Mr. Moskowitz would suffer severe medical harm.

4

## IV. THE ONLY EVIDENCE PRESENT IN TEXAS IS THE EVIDENCE TRUCKED TO TYLER BY BLUE SPIKE MONTHS BEFORE THE CASE BEGAN

Blue Spike does not dispute that the only evidence residing in Texas is its own materials trucked there just before the case was filed, and that the overwhelming majority of evidence for *this case*, including SoundHound's sources of proof and non-party witnesses, are located in the Northern District of California. Given that Blue Spike's materials had just been trucked to Texas from Florida, moving them to California would not be burdensome. Blue Spike also fails to even specify what documents it has stored in Texas or whom (other than its CEO) it plans to call from Texas at trial. (Moskowitz Decl., ¶¶ 5, 6.) Because Blue Spike does not dispute these facts (Opp. at 8-10), the source of proof factor favors transfer. See *GeoTag*, 2013 WL 890484 at *2-3.

## V. BLUE SPIKE'S REMAINING ARGUMENTS ARE UNAVAILING

Blue Spike claims financial hardship if forced to litigate in California, but it offers not a shred of evidence supporting its claim—likely because no hardship would ensue.

Blue Spike's argument that none of the public interest factors support transfer is also incorrect. Blue Spike ignores that when, like here, the accused products are available nationwide, local interest arises in the community where the accused products are developed and managed. *See, e.g., PersonalWeb Techs. LLC v. Google Inc.*, No. 11-cv-656, slip op. at 23 (E.D. Tex. Mar. 21, 2013). By contrast, Mr. Moskowitz's "made for litigation" entity was formed in Texas shortly before the case was filed. There can be no dispute that the Northern District of California has a stronger local interest in this dispute.

## VI. CONCLUSION

For the foregoing reasons, SoundHound respectfully requests that this Court grant the requested transfer to the Northern District of California.

Dated: September 13, 2013            Respectfully submitted,

*/s/ Bryan A. Kohm*
Bryan A. Kohm
bkohm@fenwick.com

Teresa M. Corbin, CA Bar No. 132360
(Admitted E.D. Texas)
Bryan A. Kohm, CA Bar No. 233276
(Admitted E.D. Texas)
David Lacy Kusters, CA Bar No. 241335
(Admitted E.D. Texas)
FENWICK &WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 874-2300
Facsimile: (415) 281-1350

Darren E. Donnelly, CA Bar No. 194335
(Admitted E.D. Texas)
FENWICK &WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone: (650) 955-8500
Facsimile: (650) 983-5200

Attorneys for Defendant
SOUNDHOUND, INC.

6

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 13, 2013, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

/s/ *Bryan A. Kohm*
Bryan A. Kohm