# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:12-cv-499 |
| | § | |
| v. | § | LEAD CASE |
| | § | |
| TEXAS INSTRUMENTS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action Case No. 6:13-cv-40 |
| | § | |
| v. | § | CONSOLIDATED CASE |
| | § | |
| AOPTIX TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT AOPTIX TECHNOLOGIES, INC.'S MOTION TO STRIKE BLUE SPIKE'S IMPROPERLY-FILED SUPPLEMENTAL COMPLAINT AND TO DISMISS THE ACTION FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEDURAL BACKGROUND .................................................................... 3

III.    FACTUAL BACKGROUND ............................................................................. 4

IV.     ARGUMENT ....................................................................................................... 5

       A.      The Court Should Strike The Improperly-Filed Supplemental
            Complaint ................................................................................................. 5

       B.      The Court Lacked Personal Jurisdiction Over AOptix When The
            Original Complaint Was Filed ................................................................ 6

            1.      AOptix Is Not Subject To General Jurisdiction In The Eastern
                 District Of Texas .......................................................................... 7

            2.      AOptix Is Not Subject To Specific Jurisdiction In The Eastern
                 District Of Texas .......................................................................... 8

                a.      AOptix's Single Visit To Texas, The 2010 ASIS
                     International Trade Show, Does Not Establish Specific
                     Jurisdiction ........................................................................ 9

                b.      Blue Spike's Remaining Boilerplate Allegations Fail To
                     Establish Specific Jurisdiction .................................... 11

       C.      If The Court Were To Consider The Supplemental Complaint, It
            Should Still Be Dismissed For Lack of Personal Jurisdiction Or, In
            The Alternative, Because It Is The Second-Filed Action ..................... 12

            1.      The Supplemental Complaint Does Not Relate Back ............................. 12

            2.      Blue Spike's Post-Filing Allegations Fail To Establish Personal
                 Jurisdiction ................................................................................ 12

            3.      If The Supplemental Complaint Were The Operative Complaint,
                 The Court Should Dismiss Or Transfer The Action To The
                 Northern District Of California Under The "First-To-File" Rule ........... 14

       D.      Venue Is Improper With Respect to AOptix ........................................ 16

V.      CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012)............................................................................11

*Am. Type Culture Collection, Inc. v. Coleman*,
83 S.W.3d 801 (Tex. 2002).....................................................................................6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................8

*Campbell Pet Co. v. Miale*,
542 F.3d 879 (Fed. Cir. 2008).................................................................................7

*Compliance Software Solutions, Corp. v. Moda Tech. Partners, Inc.*,
No. 07-cv-6752, 2008 U.S. Dist. LEXIS 60602
(N.D. Ill. July 31, 2008).........................................................................................10

*Elecs. for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005).............................................................................15

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
935 F.2d 1263 (Fed. Cir. 1991) (Newman, J., concurring)....................................12

*Fielding v. Hubert Burda Media, Inc*.,
415 F.3d 419 (5th Cir. 2005) .................................................................................6

*Genentech, Inc. v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993)...............................................................................15

*Gro Master, Inc. v. Farmweld, Inc.*,
920 F. Supp. 2d 974 (N.D. Iowa 2013)..................................................................10

*Grober v. Mako Prods., Inc.*,
686 F.3d 1335 (Fed. Cir. 2012)...............................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).............................................................................................6, 7

*HollyAnne Corp. v. TFT, Inc.*,
199 F.3d 1304 (Fed. Cir. 1999)..................................................................... *passim*

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
599 F.3d 1377 (Fed. Cir. 2010)..........................................................5, 14, 15, 16

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)............................................................................................6

*James Avery Craftsman, Inc. v. Lugosch*,
   486 F. Supp. 2d 595 (W.D. Tex. 2007)...........................................................13

*McGill Tech. Ltd. v. Gourmet Techs., Inc.*,
   300 F. Supp. 2d 501 (E.D. Mich. 2004)..........................................................13

*Med. Solutions, Inc. v. C Change Surgical, L.L.C.*,
   541 F.3d 1136 (Fed. Cir. 2008)........................................................................10

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005).......................................................................10

*Milliken v. Meyer*,
   311 U.S. 457 (1940)............................................................................................6

*Mink v. AAAA Dev. LLC*,
   190 F.3d 333 (5th Cir. 1999) ...........................................................................13

*Moldflow Corp. v. Simcon, Inc.*,
   296 F. Supp. 2d 34 (D. Mass. 2003) ...............................................................10

*Pennington Seed, Inc. v. Produce Exchange No. 299*,
   457 F.3d 1334 (Fed. Cir. 2006)..........................................................................6

*Powerhouse Prods., Inc. v. Widgery*,
   564 F. Supp. 2d 672 (E.D. Tex. 2008)...............................................................7

*Rannoch, Inc. v. Rannoch Corp.*,
   52 F. Supp. 2d 681 (E.D. Va. 1999) ................................................................13

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998)........................................................................13

*Reynolds v. United States*,
   748 F.2d 291 (5th Cir. 1984) ...........................................................................12

*Rotec Indus. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000)..........................................................................9

*Spectronics Corp. v. H.B. Fuller Co.*,
   940 F.2d 631 (Fed. Cir. 1991)..........................................................................12

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir.2009)...........................................................................7

*White v. Sloan*,
  C.A. No. 9:06cv141, 2006 U.S. Dist. LEXIS 76902
  (E.D. Tex. Oct. 6, 2006)............................................................................................6

## STATUTES

28 U.S.C. § 271(a) ..................................................................................................14

28 U.S.C. § 1391(c) ................................................................................................16

28 U.S.C. § 1400(b) ...........................................................................................16, 17

35 U.S.C. § 271(a) .............................................................................................9, 14

## RULES

Fed. R. Civ. P. 12(b)(3)...........................................................................................17

Fed. R. Civ. P. 15(c) ...............................................................................................16

Fed. R. Civ. P. 15(d) ....................................................................................1, 5, 6, 14

Fed. R. Civ. P. 30(b)(6)...........................................................................................3

I.    **INTRODUCTION**

Defendant AOptix Technologies, Inc. ("AOptix") moves the Court to strike Blue Spike, Inc.'s ("Blue Spike") supplemental complaint—incorrectly captioned "First Amended Complaint for Patent Infringement Against AOptix Technologies, Inc." (Dkt. No. 944) ("Supplemental Complaint")—and to dismiss the present action for lack of personal jurisdiction and improper venue.

In its Original Complaint for Patent Infringement ("Original Complaint"), Blue Spike asserted, in a blanket allegation, that the Court has personal jurisdiction over AOptix on the grounds that it regularly does business in Texas and within the Eastern District of Texas, engages in persistent conduct and derives substantial revenue from sales made in Texas and within the Eastern District of Texas, established systematic contacts with the Eastern District of Texas, and committed acts of infringement in the State of Texas and within the Eastern District of Texas.  *See* Original Complaint, Dkt No. 1 (No. 6:13-cv-00040), at ¶¶ 3, 5.  As explained in AOptix's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. No 518, filed March 11, 2013) ("Motion to Dismiss"), none of those allegations are true.

Because it possessed no facts to substantiate its jurisdictional allegations, Blue Spike requested jurisdictional discovery and leave to file a response to the motion once jurisdictional discovery was complete.  The Court granted Blue Spike's unopposed request and AOptix has provided the discovery.  But rather than respond to AOptix's Motion to Dismiss head on, Blue Spike filed a supplemental complaint in a misguided attempt to cure the jurisdictional deficiencies by alleging new facts arising *after* the Original Complaint was filed.

Blue Spike's attempt to cure the jurisdictional deficiencies fails.  To begin, Blue Spike improperly filed the Supplemental Complaint in violation of Federal Rule of Civil Procedure 15(d), which permits the filing of a supplemental pleading only "on motion and reasonable

notice."  Neither occurred here.  Blue Spike's Supplemental Complaint should therefore be stricken.

Jurisdiction in this matter is thus properly evaluated based on the facts as they existed in January 2013, when the Original Complaint was filed.  As of that time, no dispute exists that AOptix had no customers, employees, offices or any other physical presence in Texas.  AOptix never sold or offered to sell any products in Texas.  Indeed, as Blue Spike seems to acknowledge in the Supplemental Complaint, AOptix's sole contact with Texas as of January 2013 was its attendance at a single trade show.  AOptix made no offers to sell, solicited no Texas customers, nor made any other efforts to do business in Texas at that trade show.  AOptix merely demonstrated its product at the show—an event the case law conclusively establishes is insufficient to establish jurisdiction.  The exercise of general or specific jurisdiction is therefore improper.

Even if Blue Spike's Supplemental Complaint were properly considered, which it is not, this Court still lacks personal jurisdiction over AOptix.  Regarding the new allegations, on the day the Supplemental Complaint was filed, Blue Spike downloaded an application[1] developed by AOptix from Apple's App Store.  Case law flatly rejects the notion that a party may engage or induce another to engage in an act to manufacture jurisdiction.  Blue Spike also incorrectly contends that AOptix sells devices in Texas through distributors.  AOptix never aimed its products at Texas, directly or through distributors.  Nor has AOptix made a single sale or generated a single cent of revenue from Texas—apart from Blue Spike's attempt to manufacture jurisdiction.

Further, because a supplemental pleading does not relate back to the original pleading, the Supplemental Complaint should be dismissed because it is the second-filed action.  AOptix filed a

---

[1] The application was not released until April 2013 and therefore was not even available for download in January 2013.

complaint for declaratory judgment against Blue Spike in the United States District Court for the Northern District of California on March 11, 2013.  As such, the Supplemental Complaint, filed on August 30, 2013, is the second-filed action and should be dismissed under the first-to-file rule.

Given AOptix's complete lack of ties to this forum, personal jurisdiction is improper under Texas's long-arm statute as well as the Constitution's due process requirements.  AOptix therefore respectfully requests that the case be dismissed for lack of personal jurisdiction and improper venue.

## II.   <u>PROCEDURAL BACKGROUND</u>

Blue Spike filed the Original Complaint against AOptix in this action on January 8, 2013.  Dkt. No. 1.  AOptix filed a request for an extension to respond to the Complaint on February 5, 2013, and the Court granted that extension on the same day.  Dkt. 482.  On March 11, 2013, AOptix filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.  Dkt. No. 518.  On March 27, 2013, Blue Spike filed an unopposed motion for an extension until April 18, 2013 to respond to the Motion to Dismiss.  Dkt. No. 541.  On May 2, 2013, Blue Spike acknowledged that it lacked factual support for its jurisdictional allegations by filing an Unopposed Motion for Leave to Serve Jurisdictional Discovery on AOptix Technologies, Inc. and for Extension of Time to Respond to Motion to Dismiss.  Dkt. No. 708 ("Prior to responding, Blue Spike *needs* jurisdictional discovery.") (emphasis added).  The next day, the Court granted the motion, and extended the time for Blue Spike to respond until after jurisdictional discovery is taken.  Dkt. No. 711.

Blue Spike served interrogatories and requests for production, to which AOptix has responded.  Blue Spike also issued a Rule 30(b)(6) deposition notice but has not yet taken the deposition.  Rather than file a response to AOptix's motion, as required by the Court, on August 30, 2013, Blue Spike filed the Supplemental Complaint without filing a motion or otherwise

seeking leave.  The Supplemental Complaint alleges new jurisdictional facts taking place *after* the

filing of its Original Complaint.  Dkt. No. 944.  For example, AOptix released its Stratus App

product on April 9, 2013 (*see* Declaration of Thomas Rainwater in Support of Defendant's Motion

to Strike Blue Spike's Improperly-Filed Supplemental Complaint and  to Dismiss the Action for

Lack of Personal Jurisdiction and Improper Venue ("Rainwater Decl."), ¶ 13), and Blue Spike

added this to the list of accused AOptix products.  Dkt. No. 944, ¶ 27.  Blue Spike also amended

its jurisdictional section to include (baseless) allegations of the sale of this product in Texas and

the single download (for the purpose of this litigation) of the Stratus App by a person (presumably

Blue Spike's CEO) in Tyler, Texas, on the same day the Supplemental Complaint was filed.  *Id.* at

¶ 5.  Blue Spike even added allegations of AOptix's attendance at a *future* trade show in Dallas,

scheduled for November 2013.  *Id.*  The only new allegations predating the Original Complaint

relates to AOptix's attendance of the 2010 trade show in Texas.  *Id.*

## III.   FACTUAL BACKGROUND

AOptix has no presence in the state of Texas.  Rainwater Decl., ¶¶ 3-9, 11, 15-16.  AOptix

does not sell any goods and services in the State of Texas.  *Id.* at ¶¶ 15-16.  It does not have any

employees, offices or any other physical presence in Texas. *Id.* at ¶¶ 3, 5.  It does not own any

property in the state (either real property or personal property, such as computer servers), and it

does not maintain any facilities or equipment in Texas.  *Id.* at ¶¶ 3, 7-8.  AOptix is not registered

to do business in Texas.  *Id.* at ¶ 4.  AOptix maintains no bank accounts in Texas.  *Id.* at ¶ 6.

AOptix has no customers in Texas, and has never sold or offered to sell any products, including

the products accused of infringement, in Texas.[2]  *Id.* at ¶¶ 15-16.  AOptix maintains a website,

---

[2] Because (i) AOptix is not able to confirm whether alleged download of the Stratus software by
Blue Spike took place in Texas, (ii) if it did occur, Apple made the sale, and (iii) Blue Spike's
attempt to manufacture jurisdiction is not properly deemed a sale for jurisdictional purposes,
AOptix does not consider Blue Spike's actions with respect to the Stratus App an actual sale.

www.aoptix.com, that is available to users anywhere in the world.  *Id.* at ¶ 10.  The website serves

only an informational purpose.  *See id.*  Users cannot consummate sales through the website.  *Id.*

AOptix's only contact with Texas consists of attendance at a single trade show in Texas,

the ASIS International Trade Show, for three days in 2010.  *Id.* at ¶ 12.  AOptix's efforts at the

trade show were directed at a wide range of entities from around the country.  AOptix is not aware

of speaking with or soliciting even a single Texas company.  *Id.*  AOptix did not offer for sale or

sell any products at that trade show.  *Id.*

## IV.   ARGUMENT

### A.   The Court Should Strike The Improperly-Filed Supplemental Complaint

Because Blue Spike filed the Supplemental Complaint without motion, notice or otherwise

seeking leave of this Court, it should be stricken.

The August 30 complaint is a supplemental complaint, not an amended complaint.  The

Supplemental Complaint contains allegations concerning alleged sales activities and downloads of

AOptix's Stratus product, which was released in April 2013, well after the Original Complaint

was filed.  Supplemental Complaint, ¶¶ 5, 27; Rainwater Decl., ¶ 13.  Indeed, the alleged

download of the Stratus application took place on August 30, 2013.  Supplemental Complaint, ¶ 5.

Given the allegations regarding events occurring after the date of the Original Complaint, the

complaint filed on August 30 is a supplemental, not an amended, pleading.  *See Innovative*

*Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1384 (Fed. Cir. 2010) (trial court

correctly "treated the Amended Complaint as a supplemental, rather than amended, pleading"

because it alleged "events that post-date the original pleading").

Federal Rule of Civil Procedure 15(d) permits the filing of a supplemental pleading only

"[o]n motion and reasonable notice."  As this Court has recognized, "[a] party must have

permission from the Court to file supplemental pleadings about occurrences or events that

occurred since the date of the pleading sought to be supplemented." *White v. Sloan*, C.A. No. 9:06cv141, 2006 U.S. Dist. LEXIS 76902, at *10-11 (E.D. Tex. Oct. 6, 2006) (citing Fed. R. Civ. P. 15(d)).

Blue Spike did not file a motion or otherwise seek permission from the Court prior to filing the Supplemental Complaint, as required by Federal Rule of Civil Procedure 15(d). AOptix thus respectfully submits that this Court should strike the Supplemental Complaint.

## B.   The Court Lacked Personal Jurisdiction Over AOptix When The Original Complaint Was Filed

In patent cases, the determination of whether a Court has personal jurisdiction over a defendant is governed by the law of the Federal Circuit. *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006). Personal jurisdiction over an out-of-state defendant is only proper if it is permitted under the forum state's long-arm statute and the exercise of that jurisdiction comports with the due process requirements of the Constitution of the United States. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999). Texas's Supreme Court has interpreted its state's long arm statute as coextensive with the limits of due process. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424-25 (5th Cir. 2005); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts… such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). Minimum contacts can be analyzed in terms of general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Blue Spike bears the burden of demonstrating that the Court can exercise either general or specific jurisdiction over

AOptix.  *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1294 (Fed. Cir.2009) ("[T]he plaintiff bears the burden of proof as to whether the defendant is subject to personal jurisdiction."); *Powerhouse Prods., Inc. v. Widgery*, 564 F. Supp. 2d 672, 677 (E.D. Tex. 2008) ("the burden of establishing the district court's jurisdiction lies with the party seeking to invoke the court's jurisdiction").  As more fully laid out below, Blue Spike cannot meet its burden on either front.

### 1.    AOptix Is Not Subject To General Jurisdiction In The Eastern District Of Texas

AOptix cannot be subject to general jurisdiction in the Eastern District of Texas, because it has no real presence in the State of Texas at all—let alone the "continuous and systematic" contacts necessary to subject it to general jurisdiction.  A defendant is subject to general jurisdiction only if the defendant has had "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales*, 466 U.S. at 416.  These continuous and systematic contacts must be so extensive as to make it fundamentally fair to require the defendant to answer in a Texas court in any litigation arising out of any transaction or occurrence taking place anywhere in the world.  *Id*. at 414.

As of January 2013, AOptix's only contact with Texas was its attendance at a trade show in 2010.  AOptix also maintained a website accessible to anyone with a computer.  Sporadic attendance at trade shows combined with nationally focused websites are insufficient to establish general jurisdiction.  *See Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012) (finding no general jurisdiction where defendant made unspecified shipments and attended a trade show in forum state); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 881-84 (Fed. Cir. 2008) (finding no general jurisdiction from twelve sales yielding about $14,000 in revenue, conference attendance in forum where products are demonstrated and orders taken, and a generally accessible

website).

Blue Spike's remaining allegations touching on general personal jurisdiction are made without detail or particularity. It instead merely alleges that AOptix engages in persistent conduct and derives substantial revenue from sales made in Texas and within the Eastern District of Texas, and regularly does business in and has established systematic contacts with the Eastern District of Texas. Supplemental Complaint, ¶ 5. These allegations are simply not correct. AOptix does not sell any goods and services in Texas. Rainwater Decl., ¶¶ 15-16. It has no employees, offices or other physical presence in the state, has no property in the state (either real property or personal property, such as computer servers), and it does not maintain any facilities or equipment in the state. *Id.* at ¶¶ 3-9. In sum, AOptix has not attempted to take advantage of this forum in any continuous or systematic way. Accordingly, Blue Spike has fallen far short of demonstrating that the Court can exercise general jurisdiction over AOptix.

### 2. AOptix Is Not Subject To Specific Jurisdiction In The Eastern District Of Texas

Under specific jurisdiction, a defendant can only be subjected to jurisdiction when the contacts with the forum arise from, or are directly related to, the cause of action asserted. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). In patent cases, the Federal Circuit has established that specific jurisdiction exists only if the following three conditions are satisfied: (1) the defendant purposefully directed its activities at the residents of the forum; (2) the alleged infringement arose out of or is related to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *See HollyAnne Corp.*, 199 F.3d at 1307-08. Not a single one of these conditions is satisfied with respect to AOptix, and accordingly it is not subject to specific jurisdiction in this district.

As demonstrated by the facts described above, AOptix has not purposefully directed

activities toward the residents of Texas.  AOptix does not sell any goods and services in Texas.

Rainwater Decl., ¶¶ 15-16.  AOptix does not have any employees, offices or any other physical

presence in Texas.  *Id*. at ¶¶ 3-9.  It does not own any property in Texas, and it does not maintain

any facilities or equipment in Texas.  *Id*.

###### a.   AOptix's Single Visit To Texas, The 2010 ASIS International Trade Show, Does Not Establish Specific Jurisdiction

Blue Spike contends that AOptix's attendance at a single 2010 trade show in Texas

somehow confers specific jurisdiction.  Supplemental Complaint, ¶ 5.[3]  Not true.  To begin, the

ASIS International Trade Show is an internationally-focused and attended security technology

trade show held once annually at a different city in the United States.  Rainwater Decl., ¶ 12.

Although the 2010 ASIS trade show happened to be located in Dallas, AOptix's efforts at the

trade show were directed at a wide range of entities from around the United States and the world.

*Id.*  AOptix does not believe that it directed any solicitation efforts at the trade show toward a

company residing in Texas.  *Id*.  Accordingly, AOptix did not *purposefully* direct its activities to

residents of Texas.  *HollyAnne Corp.*, 199 F.3d at 1307.

Regarding sales, AOptix neither sold nor offered to sell any of its products at the trade

show, much less those Blue Spike accuses of infringement.  Supplemental Complaint, ¶ 5.  When

determining whether an "offer for sale" was made under 35 U.S.C. § 271(a), the Federal Circuit

instructs that courts are to employ traditional contract principles.  *Rotec Indus. v. Mitsubishi

Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).  Thus, an "offer for sale" is only made when the

offer includes specific terms and sufficient definiteness such that "an offer creates the power of

acceptance in the offeree. . . . That is, once an offer has been made, the offeree has the power to

---

[3] Although the Supplemental Complaint should be stricken, facts arising prior to January 2013
are properly considered for jurisdictional purposes.  As such, to the extent that the Supplemental
Complaint provides allegations reflecting Blue Spike's contentions regarding jurisdiction as of
January 2013, AOptix cites to the Supplemental Complaint.

accept it and create a binding contract without any further action by the [offeror]." *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 44 (D. Mass. 2003); *see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375-76 (Fed. Cir. 2005) (communications lacking price terms could not be construed as offers to sell because the recipient could not bring the sender "into a binding contract by simple acceptance").  Although AOptix promoted its products at the 2010 ASIS International Trade Show, it made no offer for sale under traditional contract principles such as by making accused products available for sale to attendees at the show or taking orders for accused products.  *See* Rainwater Decl., ¶ 12.  Accordingly, no specific jurisdiction arose from any sales or "offers for sale" at the 2010 ASIS International Trade Show as there were none.

Moreover, AOptix did not "use" any infringing products at the 2010 ASIS International Trade Show sufficient to establish personal jurisdiction.  AOptix demonstrated the retina scanning biometric technology in its accused InSight™ product.  *Id.*  But demonstration of an accused product at a trade show is not "use" sufficient to establish specific jurisdiction.  *See Med. Solutions, Inc. v. C Change Surgical, L.L.C.*, 541 F.3d 1136, 1141 (Fed. Cir. 2008) (rejecting the assertion that display of the allegedly infringing product at a trade show, without more, constituted "use" under the Patent Act that would support specific personal jurisdiction); *HollyAnne Corp.*, 199 F.3d at 1305 (affirming dismissal for lack of personal jurisdiction even though defendant made a presentation of the allegedly infringing product in the forum); *Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974, 982-83 (N.D. Iowa 2013) (demonstration of accused animal feeder at trade show in Des Moines combined with sales of a single accused animal feeder to a customer in Iowa was insufficient to satisfy the first two prongs of specific jurisdiction); *Compliance Software Solutions, Corp. v. Moda Tech. Partners, Inc.*, No. 07-cv-6752, 2008 U.S.

Dist. LEXIS 60602, at *7-8 (N.D. Ill. July 31, 2008) (demonstration of allegedly infringing software at trade show in Illinois was insufficient to constitute "use" for the purposes of establishing specific jurisdiction).  Accordingly, AOptix's demonstration of the InSight product at the 2010 ASIS International Trade Show in Dallas is insufficient to establish specific jurisdiction in this district.

### b.   Blue Spike's Remaining Boilerplate Allegations Fail To Establish Specific Jurisdiction

Blue Spike's Supplemental Complaint repeats its generalized accusations from the Original Complaint accusing AOptix of making, using, providing, offering to sell, and selling accused products in Texas, and of contributing to and inducing the alleged infringement of others in Texas.  *See* Supplemental Complaint, ¶¶ 5-6, 35, 43, 51, 59.  Again, Blue Spike is mistaken.  AOptix's operations are based in California, and it has never sold or even offered to sell the accused products in Texas.  Rainwater Decl., ¶¶ 15-16.  Nor has it induced or contributed to another's alleged infringement in the State of Texas.  *See id.*  AOptix, therefore, has not engaged in a single act in Texas giving rise or related to the claims asserted by Blue Spike, much less establish that Texas "was part of [] defendant's continuous, established distribution channels" required to support a viable stream-of-commerce theory.  *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012).

With respect to the final condition for specific jurisdiction, it would be unreasonable and unfair to subject AOptix to specific jurisdiction in light of the foregoing facts.  There is simply no connection between the alleged acts of infringement and the State of Texas.

**C.** **If The Court Were To Consider The Supplemental Complaint, It Should Still Be Dismissed For Lack of Personal Jurisdiction Or, In The Alternative, Because It Is The Second-Filed Action**

Even if the Court granted leave to permit Blue Spike to supplement its Original Complaint, Blue Spike's new allegations fail to establish that the Court has personal jurisdiction over AOptix.

### 1. The Supplemental Complaint Does Not Relate Back

"[I]n personam and subject matter jurisdictional facts must be pleaded, and proved when challenged, and [] later events may not create jurisdiction where none existed at the time of filing." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991). Blue Spike's Supplemental Complaint, therefore, does not relate back to the January 2013 filing date of the Original Complaint. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1266 (Fed. Cir. 1991) (Newman, J., concurring) ("a complaint flawed by absence of jurisdiction cannot be cured by amendment based on events that occurred after the complaint was filed"); *Reynolds v. United States*, 748 F.2d 291, 293 (5th Cir. 1984) (an amended complaint cannot cure a jurisdictional defect).

### 2. Blue Spike's Post-Filing Allegations Fail To Establish Personal Jurisdiction

To the extent the Court considers Blue Spike's allegations regarding post-filing activities, these allegations also fail to establish the Court's general or specific jurisdiction over AOptix.

Blue Spike points to prospective activity by AOptix in Texas at a conference scheduled for November 2013. Supplemental Complaint, ¶ 5. If actual attendance at a trade show is insufficient to create personal jurisdiction, it is inconceivable that *future* trade show activity can establish jurisdiction.

Blue Spike's next allegation that AOptix "has sold and sells its Stratus App which uses infringing technology to smartphone users in Texas through an in-phone (sic) application store" is

false for several reasons.  First, AOptix does not "sell," nor has it ever sold its products in Texas. Rainwater Decl., at ¶¶ 15-16.  The "in-phone" application store identified in Exhibit 3 of the Supplemental Complaint, an apparent screen shot from an iPhone, comes from the Apple App Store and not from AOptix's website.  Indeed, the limited functions of AOptix's website do not represent the type of interactivity required for personal jurisdiction to arise.  *See, e.g. Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (website providing users with an email address, a printable order form and toll free number on a website without more, is insufficient to establish personal jurisdiction); *Rannoch, Inc. v. Rannoch Corp.,* 52 F. Supp. 2d 681, 685 (E.D. Va. 1999).  AOptix's website is for information purposes only.  AOptix's website, hosted on servers in California, does not take any customer orders and only serves to provide information regarding its product and services.  Rainwater Decl., ¶ 10.

Blue Spike's allegation that an unnamed resident of Tyler, Texas "downloaded the application and used it to capture voice and face biometric information on August 30, 2013" is a barefaced attempt to manufacture jurisdiction where none exists.  *See* Supplemental Complaint, ¶ 5.  Whether this "Tyler resident" was an attorney of Blue Spike, Blue Spike's CEO, Mr. Scott Moskowitz, or one of their acquaintances, "a defendant's response to the unilateral acts of a plaintiff is not a contact with the forum state sufficient to establish personal jurisdiction." *James Avery Craftsman, Inc. v. Lugosch*, 486 F. Supp. 2d 595, 599 (W.D. Tex. 2007) (dismissing complaint for lack of personal jurisdiction where the paralegal of plaintiff's attorney attempted to order defendant's product by calling phone number provided on defendant's website); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) ("contacts resulting from the 'unilateral activity' of others do not count" towards determination of personal jurisdiction); *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501, 505-06

(E.D. Mich. 2004) (solicitation of defendant's product by relative of plaintiff's counsel did not constitute defendant's purposeful availment of the forum because "[personal] jurisdiction may not be manufactured by the conduct of others").

Finally, download of the Stratus App by someone in Texas cannot "'give rise' to a cause of action under [28 U.S.C. §] 271(a)" as required to satisfy the second prong of specific jurisdiction.  *HollyAnne Corp.*, 199 F.3d at 1310.  The AOptix Stratus App must be used in conjunction with AOptix Stratus MX, a hardware attachment to the smartphone, in order to capture and analyze biometric information in anyway allegedly related to the claims of the asserted patents.   *See* Rainwater Decl., ¶ 13.  The Stratus App by itself can only be used for face and voice capture using functionality already present on the smartphone—*i.e.* using the iPhone Camera to capture face biometric information and using the iPhone Voice Memos feature to capture voice biometric information.  *Id.*.  The Supplemental Complaint does not allege that the unidentified Tyler, Texas resident acquired the Stratus MX hardware attachment in Texas and used it there in conjunction with the Stratus App.  *See* Supplemental Complaint, ¶ 5.  Accordingly, it is impossible for a download of the Stratus App, by itself, to give rise to patent infringement under 28 U.S.C. § 271(a), which is necessary to establish specific jurisdiction.

### 3.    If The Supplemental Complaint Were The Operative Complaint, The Court Should Dismiss Or Transfer The Action To The Northern District Of California Under The "First-To-File" Rule

As already discussed, Blue Spike's Supplemental Complaint is governed by Federal Rule of Civil Procedure 15(d).  Thus, if the Court were to permit Blue Spike's Supplemental Complaint to survive, Blue Spike's newly alleged jurisdictional facts still cannot relate back to cure jurisdictional deficiencies in the Original Complaint.  *See Innovative Therapies*, 599 F.3d at 1384.

The operative timing of Blue Spike's complaint is significant for the purposes of transfer

- 14 -

under first to file.  On March 11, 2013, AOptix filed a declaratory judgment action in the

Northern District of California against Blue Spike seeking a declaration of invalidity of the

patents asserted in this lawsuit and non-infringement of AOptix's products and services Blue

Spike accuses in this action.  *See* Declaration of Bryan A. Kohm in Support of Defendant's

Motion to Strike Blue Spike's Improperly-Filed Supplemental Complaint and to Dismiss the

Action for Lack of Personal Jurisdiction and Improper Venue, Ex. 1 (Complaint for Declaratory

Judgment of Patent Noninfringement & Patent Invalidity, Case 4:13-cv-01105, N.D. Cal., filed

Mar. 11, 2013).  Since Blue Spike's Original Complaint is jurisdictionally deficient and its

Supplemental Complaint was filed after the California action, AOptix respectfully requests the

Court to dismiss the action or, in the alternative, to transfer it to the Northern District of

California under the "first-to-file" rule.  *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341,

1347 (Fed. Cir. 2005) ("We apply the general rule favoring the forum of the first-filed case,

'unless considerations of judicial and litigant economy, and the just and effective disposition of

disputes, requires otherwise.'"); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir.

1993) ("The general rule favors the forum of the first-filed action, whether or not it is a

declaratory action.").

   The Federal Circuit's analysis in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.* is

directly on-point.  There, the plaintiff filed a complaint in the District of Delaware that was

jurisdictionally deficient.  *Innovative Therapies*, 599 F.3d at 1383.  After the defendant filed suits

in the Middle District of North Carolina and Texas state court, the plaintiff amended its complaint

to cure the jurisdictional deficiencies with factual allegations that occurred after the original filing.

*Id.*  The trial court determined that the amended complaint was, in fact, a supplemental complaint

and that the operative date of filing for first-to-file purposes was the later filing of the amended

complaint.  *Id.* at 1384.  On review, the Federal Circuit first noted "that unless there was jurisdiction at the filing of the original complaint, jurisdiction could not be carried back to the date of the original pleading."  *Id.*  The court then affirmed the trial court's ruling:

> *Federal Rule of Civil Procedure 15(c)* does not treat events that post-date the original pleading as if they had occurred at an earlier time. The district court so recognized when it treated the Amended Complaint as a supplemental, rather than amended, pleading. We discern no error in the district court's conclusion that ITI's supplemental complaint did not establish an actual controversy at the time of the original pleading, and that jurisdiction based on subsequent events did not relate back to the filing date of the initial complaint.

*Id.*

Like in *Innovative Therapies*, if the Court permits supplementation, it will still need to determine whether Blue Spike has shown that the Court had personal jurisdiction over AOptix at the date of Original Complaint, January 8, 2013.  AOptix has already established that there was no such jurisdiction.  *See* Dkt. No. 518, Motion to Dismiss.  Indeed, if Blue Spike could somehow demonstrate that personal jurisdiction did exist over AOptix when it filed the Original Complaint, it would have filed a response to the Motion to Dismiss rather than "amending" its complaint with post-filing jurisdictional allegations.  Accordingly, the Court should dismiss this action or transfer it to the Northern District of California as the second-filed action if it chooses not to strike the Supplemental Complaint.

### D.      Venue Is Improper With Respect to AOptix

Under 28 U.S.C. § 1400(b), a civil action for patent infringement may be brought in (1) the judicial district where the defendant resides, or (2) where the defendant has committed acts of infringement and has an established place of business.  For the purpose of venue, a corporation is considered a resident of any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391(c).  Given that AOptix is not subject to personal jurisdiction in the Eastern District of Texas, as discussed *supra*, it is not considered a resident of

that district.  Because AOptix also lacks a place of business in this district and has not committed any alleged acts of infringement here, venue is therefore improper under 28 U.S.C. § 1400(b).  Accordingly, AOptix should be dismissed under rule 12(b)(3) of the Federal Rules of Civil Procedure.

## V.    <u>CONCLUSION</u>

For the reasons stated above, AOptix respectfully requests that the Court strike Blue Spike's Supplemental Complaint and dismiss Blue Spike's claims against AOptix.

Dated:    September 19, 2013                    FENWICK & WEST LLP


By:   /s/ Bryan A. Kohm
                    Bryan A. Kohm
                    bkohm@fenwick.com

Teresa M. Corbin, CA Bar No. 132360
(Admitted E.D. Texas)
Bryan A. Kohm, CA Bar No.233276
(Admitted E.D. Texas)
David Lacy Kusters, CA Bar No.241335
(Admitted E.D. Texas)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:      (415) 874-2300
Facsimile:      (415) 281-1350

Darren E. Donnelly, CA Bar No. 194335
(Admitted E.D. Texas)
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California  94041
Telephone:      (650) 955-8500
Facsimile:      (650) 983-5200

Attorneys for Defendant
AOptix Technologies, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 19, 2013.

*/s/ Bryan A. Kohm*
Bryan A. Kohm