**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC,<br>Plaintiff,<br>v.<br>TEXAS INSTRUMENTS, INC.,<br>Defendant. | Civil Action No. 6:12-CV-499-MHS<br>LEAD CASE<br>Jury Trial Demanded |
| BLUE SPIKE, LLC,<br>Plaintiff,<br>v.<br>ADOBE SYSTEMS INC.,<br>Defendant. | Civil Action No. 6:12-CV-564-MHS<br>CONSOLIDATED CASE<br>ORAL ARGUMENT REQUESTED<br>Jury Trial Demanded |

**DEFENDANT ADOBE SYSTEMS INCORPORATED'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

The Northern District of California (N.D. Cal.) is the only forum where this case can be fairly tried. Blue Spike's infringement assertions against Adobe Systems ("Adobe") center entirely around the digital fingerprinting technology developed by a company acquired by Adobe in November 2011 known as Auditude Inc. (Dkt. 905-2, ¶ 9). Prior to the Adobe acquisition, Auditude spun out its digital fingerprinting technology and business into a separate company called IntoNow, which was subsequently acquired by non-party (and former defendant) Yahoo! in April 2011.[1] (*Id.*, ¶¶ 6-7). In January 2012, three months after acquiring Auditude and seven months before Blue Spike filed this lawsuit, Adobe shut down what remained of Auditude's digital fingerprinting service. (*Id.*, ¶ 9). As a result, many of the witnesses who have critical knowledge about the development, operation, functionality, marketing, and sales of Auditude's digital fingerprinting technology either went with IntoNow to Yahoo!, headquartered in Sunnyvale, California, or left Adobe and continue to reside in N.D. Cal. Similarly, documents that were transferred to Yahoo! as part of the IntoNow acquisition along with Adobe's limited documents and remaining employees who have any knowledge of the Auditude's technologies are all located in the N.D. Cal. as well. (Dkt. 905, at 2-3).

In view of this compelling need to have the case transferred to California, Blue Spike opposes based on several misguided arguments. First, Blue Spike argues that its decision to file over 80 cases in this District on these patents means that transfer is unavailable. But this Court has held that "the Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district." *GeoTag, Inc. v. Zoosk, Inc.*, No. 2:11-cv-403-MHS (E.D. Tex. Jan. 14, 2013), Dkt. 114 at 11. Blue Spike then falls back on its argument that its CEO and named inventor Scott Moskowitz cannot travel to California for trial due to health concerns, and that it is financially burdensome to litigate in

[1] Adobe acquired Auditude to develop and implement Auditude's separate and unrelated advertising platform business, which is not accused in this case. (Dkt. 905-2, ¶ 9).

California. But these arguments ring hollow as Blue Spike's lawyers reside and work in N.D. Cal., and Blue Spike only set up shop in Texas scarcely three months before filing suit in order to manipulate venue. Most importantly, it does not change the fundamental fact that critical witnesses who are knowledgeable about the accused technology are only available in N.D. Cal. Thus, the N.D. Cal. is far more convenient to Adobe and third-party witnesses than it is inconvenient to Blue Spike.

# I. THE PRIVATE FACTORS WEIGH STRONGLY IN FAVOR OF TRANSFER

## A. Witnesses and Documents Relating to the Accused Technology Are Only Available in the N.D. Cal.

***Access to Third Parties and Sources of Proof:*** The availability and testimony of former Auditude employees and current Yahoo! employees are critical to any trial on the merits. This list includes Adam Cahan, a co-founder and former CEO of Auditude and IntoNow, who now works at Yahoo!, headquartered in Sunnyvale, CA.[2] (Reply Helfand Decl., ¶ 6). In those capacities, Mr. Cahan has unique knowledge about the development and usage of Auditude's digital fingerprinting technology, what aspects of Auditude's business were acquired by Yahoo! through IntoNow, and what documents concerning the digital fingerprinting technology reside at Yahoo![3] Additionally, former Auditude Chief Scientist, Sergiy Bilobrov, developed the algorithms used in Auditude's digital fingerprinting technology and has unique knowledge about the operation and functionality of the accused technology. Mr. Bilobrov continues to reside in the San Francisco Bay Area. (*Id*., ¶ 5).

[2] Blue Spike urges the Court to dismiss Mr. Helfand's testimony about Mr. Cahan by mistakenly relying on *Bolen v. Dengel*, 340 F.3d 300 (5th Cir. 2003), which examined the sufficiency of a declaration under Fed.R.Civ.P. 56(e) in the context of summary judgment. This is a motion for transfer of venue, not summary judgment. Furthermore, this argument is moot as Mr. Helfand does have personal knowledge of Mr. Cahan's residence and work in the San Francisco Bay Area (Helfand Reply Decl., ¶ 6).

[3] Prior to settling and dismissing the Yahoo! case, Blue Spike accused Yahoo! of infringing the same patents with "its IntoNow and SoundPrint software, applications, systems, and technology." *Blue Spike LLC v. Yahoo! Inc.*, No. 6:12-CV-556-MHS (E.D. Tex. Aug. 22, 2012), Dkt. 1, ¶ 27.

Former Auditude Vice President of Finance, Lily Teng, another San Francisco Bay Area resident, can provide relevant testimony concerning Auditude's past profits, revenue, and cost. (*Id.*, ¶ 3). Former Auditude Chief Revenue Officer Mark Gaffney, who lives in Orange County, California (within the subpoena power of the N.D. Cal.), can provide testimony concerning Auditude's marketing, sales, and customers related to the digital fingerprinting business. (*Id.*, ¶ 4). All of these critical witnesses are outside the subpoena power of this Court.

Blue Spike's reliance on *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG (E.D. Tex. Jan. 14, 2013), Dkt 585 is unavailing because in that case, the party urging transfer identified no witnesses or documents that would require compulsory process. In this case, Adobe has identified numerous former Auditude officers and employees as critical witnesses and 24 prior art inventors who reside in Northern California. (Dkt. 905, at 9 n.2). In contrast, Blue Spike has not identified any non-party witness whose testimony could be compelled in this district.

***Cost of Attendance for Willing Witnesses:*** Although a significant portion of evidence and witnesses with relevant knowledge about the accused technology are with third parties, the cost of attendance for Adobe's witnesses would be signficantly lessened if the case was tried in the N.D. Cal. For instance, Adobe identified and submitted a declaration from former Auditude CEO and current Adobe employee Jeremy Helfand, who resides in the San Francisco Bay Area. (Dkt. 905-2). Adobe additionally submitted evidence that 29 of its 41 employees who work primarily on the Accused Systems are in Northern California while none reside in Texas. (Dkt. 905 at 3). Finally, Adobe noted that named inventor and current Adobe employee Mike Berry resides in Seattle, which is significantly closer by distance to N.D. Cal than to Tyler. Applying the Fifth Circuit's "100-mile rule," N.D. Cal. is a more convenient venue for these Adobe witnesses, Mike Berry, and the former Auditude witnesses identified above, and this strongly favors transfer. *See In re Volkswagen of Am.,*

*Inc.*, 545 F.3d 304, 317 (5th Cir. 2008); *Droplets, Inc. v. Amazon.com, Inc.*, No. 2:11-cv-392, 2012 WL 3578605, at *5-6 (E.D. Tex. June 27, 2012).

In contrast, despite Blue Spike's pleas that its party "witnesses" reside in Tyler, it only has **one** witness—named inventor and Blue Spike owner Scott Moskowitz. Blue Spike has never identified any other witness who currently works for Blue Spike and works in Tyler. Blue Spike's argument entirely turns on Mr. Moskowitz's self-reported health issues that allegedly prevent him from traveling to California. (Dkt. 946 at 7-8).

Mr. Moskowitz's testimony is unsubstantiated by any medical professional, a glaring weakness highlighted by the cases cited by Blue Spike. In *NGC Worldwide, Inc. v. Siamon*, 2003 WL 1987001 (D. Conn. Apr. 21, 2003), the party urging medical necessity submitted a physician's declaration that travel by his patient would cause swelling, tearing, and bleeding. *Id.* at *1. The *Siamon* Court stated that "preference for the opinion of a treating physician runs throughout the law." *Id*. at *2 n.1. And in Blue Spike's other cited case, the party urging medical necessity submitted declarations from three doctors, and the court granted a transfer "[i]n the face of this significant medical evidence." *BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003). No such medical evidence exists here.[4]

### B. BLUE SPIKE CANNOT CREATE JUDICIAL ECONOMY BY SERIALLY FILING 80+ LAWSUITS TO MANIPULATE VENUE.

Blue Spike claims the benefit of judicial economy and manipulate venue by wrongly filing 80+ lawsuits in this District—a maneuver this Court disdained in *GeoTag, Inc. v. Zoosk, Inc*. This Court warned that it ***"will not permit the existence of separately filed cases to sway its transfer***

[4] Blue Spike argues that "Adobe has never interviewed Moskowitz or his treating physician" (Dkt. 946 at 7), but this argument ignores the fact that discovery is not open, Mr. Moskowitz has never identified his treating physician, and medical privacy laws may prevent informal interviews of physicians. Additionally, Blue Spike has chosen not to provide any medical evidence in support of its claim of medical necessity in its opposition.

***analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district."*** *GeoTag*, Dkt. No. 114, at 11 (emphasis added). Blue Spike should not be so rewarded.

"Motions to transfer venue are to be decided based on the 'situation which existed when suit was instituted.'" *In re EMC Corp.*, 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013); *NobelBiz, Inc. v. Five9, Inc.*, No. 6:12-cv-00243-MHS (E.D. Tex. Mar. 28, 2013) (Schneider, J.), Dkt. 52 at 9. At the time of filing, this Court was no more familiar with the four patents in-suit or the technology than any other court. Absent any such familiarity with the patents or the technology, overlapping cases do not automatically equate to judicial economy. *Adaptix Inc. v. Motorola Mobility LLC*, No. 6:12-cv-00016-MHS (E.D. Tex. Mar. 28, 2013) (Schneider, J.), Dkt. 124, at 13-14.

In a moment of sheer fabrication, Blue Spike wrongly states, without any support, that "this case shares … 'related defendants [and] overlapping products [and] services.'" (Dkt. 946 at 6.). There is no such overlap. Third-party Yahoo! is the only entity that shares any overlap in technology with Adobe by virtue of its acquisition of IntoNow and Auditude's digital fingerprinting technology, and this fact counsels strongly in favor of transfer because Yahoo! is headquartered in the N.D. Cal.

## II. THE PUBLIC FACTORS ALSO FAVOR TRANSFER.

Blue Spike's arguments regarding the public interest factors do not suggest transfer is inappropriate. First, with respect to the court congestion factor, Blue Spike merely criticizes the judicial statistics submitted by Adobe as unhelpful, without citing any data to the contrary. Second, Blue Spike ignores that when, like here, the accused products are available nationwide, local interest arises in the community where the accused products were developed and managed. *PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED (E.D. Tex. Mar. 21, 2013), Dkt. 131 at 23.

## III. CONCLUSION

For the reasons set forth above and in Adobe's Opening Motion (Dkt. 905), Adobe respectfully requests this case be transferred to the Northern District of California.

Dated:  September 20, 2013                    Respectfully submitted,

/s/ *Deron Dacus*
Deron R. Dacus
Bar No. 00790553
The Dacus Firm, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1117

Jeffrey M. Fisher (CA SBN 155284)
jfisher@fbm.com
Eugene Y. Mar (CA SBN 227071)
emar@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

ATTORNEYS FOR DEFENDANT
ADOBE SYSTEMS INC.

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 20, 2013, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

/s/ *Deron Dacus*
Deron Dacus

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on June 27, 2013 via telephone conference with the following participants: Chris Honea for the Plaintiff and Eugene Mar for the Defendant. No agreement could be reached because the parties disagreed on the merits. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Deron Dacus*
Deron Dacus