# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br>v.<br>IMAGEWARE SYSTEMS, INC.<br>　　*Defendant*. | §§§§§§§§§§ | Lead Case No. 6:12-cv-499-LED<br><br>(LEAD CASE)<br><br>JURY TRIAL DEMANDED |
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br>v.<br>IMAGEWARE SYSTEMS, INC.,<br>　　*Defendant*. | §§§§§§§§§§§§§ | Civil Action No. 6:12-CV-688-LED<br><br>(EXCEPT FOR VENUE, CONSOLIDATED WITH 6:12-CV-499)<br><br>JURY TRIAL DEMANDED |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT IMAGEWARE SYSTEMS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

I.     ARGUMENT

    **A. Blue Spike's Indirect Infringement Allegations Are Deficient.**

As Blue Spike concedes, in order state a viable claim for contributory infringement, a patentee must plead facts from which the Court may plausibly infer that the defendant "sells or offers to sell a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent." D.E. No. 967 at 4 (*citing In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).[1]

Here, however, Blue Spike merely alleges that ImageWare commits contributory infringement by selling the accused products to unidentified "end users" for use in unspecified "systems" that infringe. "Such products have no substantial non-infringing uses and are for use in systems that infringe the [patents in suit]." D.E. No. 919, ¶¶ 35, 43, 51, 59. These indirect infringement allegations are defective for multiple reasons.

First, Blue Spike completely ignores the "materiality" requirement. Blue Spike claims that ImageWare's accused products comprise the "material or apparatus" used in unidentified "systems" that infringe. But Blue Spike fails to plead any facts suggesting that ImageWare's products are "*material*" to practicing the invention. This failure requires dismissal of Blue Spike's contributory infringement claims. *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, Case No. 6:11-cv-229-LED-JDL, D.E. No. 486 at 11 (E.D. Tex. Jul. 27, 2012); *Radiation Stabilization Solutions LLC v. Accuray Inc.*, 2012 U.S. Dist. LEXIS 3621256, at *5 (N.D. Ill. Aug. 21, 2012) (dismissing claims because plaintiff did "not plead a single fact from which this Court can infer . . . the accused [component] constitutes a material part of the invention.").

---

[1] Blue Spike argues "a plaintiff need not even identify which claims it asserts are being infringed." *In re Bill of Lading*, 681 F.3d at 1335. This statement, however, was made with reference to the plaintiff's claims for *direct* infringement, not indirect infringement. Moreover, the Federal Circuit *affirmed* the dismissal of the plaintiff's contributory infringement claims. *Id.* at 1347. Consequently, *In re Bill of Lading* is unavailing to Blue Spike.

Second, Blue Spike's identification of unspecified "end users" as the direct infringers is insufficient. *Landmark Technology LLC v. Aeropostale*, 2010 WL 3155888, at *3-4 (E.D. Tex. Mar. 29, 2010); *PA Advisors, LLC v. Google Inc.*, 2008 WL 4136426, at *8 (E.D. Tex. Aug. 8, 2008) (a plaintiff's identification of "users" as the direct infringers "is not sufficient").[2]

Third, Blue Spike fails to specify any "method or system" that supposedly infringes. Blue Spike argues that the "fingerprint-based biometric software, systems and technology" it identifies in the amended complaint are the "methods or systems" that infringe, but those "fingerprint-based biometric software, systems and technology" are ImageWare's *own* accused products. D.E. No. 919, ¶ 27 ("Defendant designs, develops and manufactures fingerprint-based biometric software, systems, and technology."). ImageWare's accused products cannot comprise *both* the "methods or systems" that allegedly infringe *and* the "material or apparatus" within those systems that contributes to infringement. These are separate pleading requirements, yet Blue Spike improperly conflates them. *In re Bill of Lading*, 681 F.3d at 1335. For this additional reason, Blue Spike's indirect infringement allegations are defective.[3]

Fourth, Blue Spike fails to allege which claims are indirectly infringed, as required. *Realtime Data*, 721 F. Supp. 2d at 544; *Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, 2010 WL 3155888, at *4 (E.D. Tex. Mar. 29, 2010) (dismissing the plaintiff's indirect infringement allegations because they "fail to identify which claims are indirectly infringed, fail

---

[2] Blue Spike's reliance on *Lone Star Document Management, LLC v. Atalasoft, Inc.*, 2012 WL 4033322 (E.D. Tex. Sep. 12, 2012), is curious. There, the Court *dismissed* Lone Star's indirect infringement allegations because "Lone Star does not include any discussion of other uses for Compulink's device" nor "does Lone Star mention any alternative use for Compulink's products. Lone Star, consequently, fails to adequately plead contributory infringement." *Id.* at 4. Therefore, *Lone Star* supports ImageWare's position.

[3] Blue Spike argues that ImageWare's accused products comprise the "material or apparatus" that infringes indirectly because these products operate as components of a larger system. *i4i*, 598 F.3d at 849. But the Federal Circuit explained that "a particular tool within a larger software package may be the relevant 'material or apparatus' when that tool is a separate and distinct feature." *Id*. Here, Blue Spike has not shown whether any accused product is a separate and distinct feature of any larger "system," nor has Blue Spike identified any such larger "system."

to identify which methods or systems indirectly infringe, and fail to identify a direct infringer in reference to its indirect infringement claims").

Blue Spike argues that *Realtime Data* cites the improper standard for pleading contributory infringement, but that is incorrect. Contrary to Blue Spike's suggestion, the Court in *Realtime Data* did not relieve plaintiffs from the obligation to identify which claims are indirectly infringed, which methods or systems indirectly infringe, and a direct infringer for each indirect infringement claim. Rather, the Court "examines the context of the complaint to determine whether specific claims must be identified as indirectly infringed." *Realtime Data*, 721 F. Supp. 2d at 539-40. With this clarification, this Court adopted (not rejected) Magistrate Judge Love's report and recommendation as the findings of the Court. *Id*. at 540. In the complex context of this case--in which four patents containing 114 claims (including method, system, process and apparatus claims) are asserted against countless accused products--Blue Spike is required to specify which claims are asserted indirectly against whom, which component(s) is/are supposedly used in which specific method or system, and to whose direct infringement each defendant supposedly contributes for each claim. *Realtime Data*, 721 F. Supp. 2d at 544; *Clear With Computers*, 2010 WL 3155888, at *4.

Fifth, the amended complaint is "devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses,'" as required. *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366-MHS-JDL (Feb. 7, 2013), D.E. No. 69 [Report and Recommendation of U.S. Magistrate Judge at 5]; *Patent Harbor,* Case No. 6:11-cv-229-LED-JDL, D.E. No. 486 at 11 (E.D. Tex. Jul. 27, 2012) (same). *See also*, *InMotion Imagery Technologies v. Brain Damage Films*, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012). Blue Spike argues that the Court may infer from the names of ImageWare's accused products that they have no substantial, non-infringing use. But product names are not facts from which the Court can infer the required pleading element that any components within those products (which Blue Spike does not identify) have no substantial, non-infringing use.

Sixth, Blue Spike does not plead (or allege any facts to support) the last required element of contributory infringement, namely, that ImageWare sold the material or component "with knowledge that the component was especially made or adapted for use in an infringing manner." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 840 (Fed. Cir. 2010); *Aguirre v. Powerchute Sports, LLC*, 2011 WL 3359554, at *5 (W.D. Tex. Aug. 4, 2011).  Because Blue Spike ignores this required pleading element, dismissal is required.

For all these reasons, Blue Spike's contributory infringement allegations are defective and should be dismissed.

### B. Blue Spike's Willful Infringement Allegations Should Be Dismissed.

Citing *Novelpoint Sec. LLC v. Samsung Elecs. Am., Inc.*, No. 2:12-cv-100 (E.D. Tex. Jul. 22, 2013), Blue Spike hypothesizes that "ImageWare likely knew of Blue Spike's patents pre-suit due to the patents' [alleged] prominence" and because ImageWare has three pending patent applications regarding biometric matching technology.  D.E. No. 967 at pp.7, 8.  But this argument lacks merit for several reasons.

To start, the Supreme Court's plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Instead, a plaintiff must plead facts allowing a "court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id*.  Those standards apply to pleading willfulness. *Ipventure Inc. v. Lenovo Group Ltd.*, 2013 U.S. Dist. LEXIS 2594, at *8 (D. Del. Jan. 8, 2013)  Here, however, the blind conjecture that ImageWare may be aware of Blue Spike's patents because of their so-called "prominence" (whatever that means) and because Blue Spike's patents were cited as prior art in patent applications prosecuted by *unrelated* third parties is nothing more than a "sheer possibility" and lacks any facts from which the Court can plausibly infer willfulness on ImageWare's part.  Accordingly, Blue Spike's willfulness allegations are deficient under *Iqbal*.

Moreover, the willfulness allegations accepted in *Novelpoint* are completely distinguishable from Blue Spike's.  There, Novelpoint based its willfulness claim not just on the asserted patents' alleged prominence, but also on the defendant's membership "at the

'Contributor' level of the Trusted Computing Group ('TCG') industry consortium that establishes and promulgates the standards for the TPM chip that is a critical part" of defendant's alleged infringement.  D.E. No. 967 (attachment 1 at p.2).  Because defendant's own affiliate was a member of the standards consortium that set the standards for the very chips accused of infringement, the Court declined to dismiss Novelpoint's willfulness claims.  By contrast here, ImageWare is not part of any standards committee related to products that allegedly practice the patents in suit.  Accordingly, Blue Spike's reliance on *Novelpoint* is misplaced.

Citing *Clouding IP, LLC v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 73655 (D. Del. May 24, 2013), Blue Spike next argues that the filing of Blue Spike's original complaint in September, 2012 put ImageWare on notice of Blue Spike's patents, but the filing of a lawsuit does not show pre-suit knowledge of the patents in suit.  Instead, a plaintiff's willfulness allegations "must necessarily be grounded exclusively in the accused infringer's **pre-filing** conduct."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (emphasis added).

Moreover, *Clouding* has no application to this case.  There, plaintiff Clouding did not allege willful infringement in its original complaint, but instead asserted willfulness for the first time in its amended complaint filed months later.  *Id*. at *12.  Because the defendants "did not cease their allegedly infringing activity following filing of the original complaint, their continued infringement—**after** the filing of the original complaint but **before** the filing of the amended complaint, containing for the first time an allegation of willful infringement"--could plausibly be willful.  *Id*. (emphasis in original).  In contrast here, Blue Spike did allege willfulness in its original complaint.  Unlike in *Clouding*, therefore, there is no intervening time period during which ImageWare could plausibly be liable for willful infringement.

In short, Blue Spike's willfulness allegations are deficient and should be dismissed.

## II.  CONCLUSION

For the foregoing reasons, Blue Spike's allegations of contributory patent infringement and willful infringement should be dismissed.

DATED:  September 23, 2013                    Respectfully submitted,

                        By:  */s/James V. Fazio, III*
                             James V. Fazio, III (Admitted Pro Hac Vice)
                             SAN DIEGO IP LAW GROUP LLP
                             12526 High Bluff Drive, Suite 300
                             San Diego, CA 92130
                             Telephone:  858-792-3446
                             Facsimile:  858-792-3447
                             jamesfazio@sandiegoiplaw.com

                             Michael Jones (SBN 10929400)
                             POTTER MINTON
                             110 N. College, Suite 500
                             Tyler, TX 75703
                             Telephone: 903-597-8311
                             mikejones@potterminton.com

                             Attorneys for Defendant
                             IMAGEWARE SYSTEMS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on this 23rd day of September, 2013.

                             */s/James V. Fazio, III*
                             James V. Fazio, III