# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **NOVELPOINT LEARNING LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **No. 6:10-cv-229 JDL** |
| | § | |
| **LEAPFROG ENTERPRISES,** | § | **JURY DEMANDED** |
| **INC., et al,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendants' Motion to Transfer Venue to the Northern District of California.  (Doc. No. 44).  The matter has been fully briefed.  (Doc. Nos. 49, 54 & 56).  Having considered the parties' arguments, the Court **DENIES** Defendants' motion.

**BACKGROUND**

In this suit, Plaintiff NovelPoint Learning LLC ("NovelPoint") alleges that Defendants LeapFrog Enterprises, Inc. ("LeapFrog"), VTech Holdings Limited, ("VTech Holdings"), and VTech Electronics North America, LLC ("VTech North America")[1] (collectively, "Defendants") infringe U.S. Patent No. 6,330,427 ("the '427 patent").

On January 6, 2010, NovelPoint[2] incorporated as a limited liability company under Texas law, with its principal place of business located in Allen, Texas in the Eastern District of Texas. NOVELPOINT'S RESPONSE AT 3.  NovelPoint's principal place of business is at the residence of one of its co-founders and managing members.  *Id.*  One of NovelPoint's other co-founders and managing members lives in Texas, the other resides in Illinois.  *Id.*  All of NovelPoint's physical

---

[1] Since the filing of the Complaint, Defendant Small World Toys has been dismissed.  (Doc. No. 50).

[2] NovelPoint was originally created under the name Intuit Educational Ventures LLC.  DFTS' MOTION AT 4.

documents are located in its Allen office, including all the inventor's original documents and prototypes. *Id.* NovelPoint is also securing the original prosecution documents from a location in Illinois, but will eventually house all documents in its Texas office. *Id.* at 4-5.

Defendants' places of incorporation and principal places of business are scattered. LeapFrog is incorporated in Delaware, with its headquarters in the Northern District of California. *Id.* at 2. VTech Holdings is a foreign company incorporated in Bermuda with its principal place of business in Hong Kong, and VTech North America is headquartered in Illinois. *Id.* Despite the fact that VTech North America is headquartered in Illinois, it contends the Northern District of California is more convenient than the Eastern District of Texas. *Id.* at 1.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice.  The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("*Volkswagen I*").  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law.  *Id.*

## DISCUSSION

### I.    Whether the Suit Could Have Been Filed in the Northern District of California

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *Volkswagen I*, 371 F.3d at 203.  In a patent infringement case, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28. U.S.C. § 1400(b).

Well-established authority makes clear that a transferee court must have jurisdiction over the defendants in the transferred complaint.  *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)); *Chirife v. St. Jude Medical, Inc.,* 2009 WL 1684563, at *3-4 (E.D. Tex. June 16, 2009).  Therefore, the defendant has the burden to prove both personal jurisdiction and venue in the transferee court.  *Chirife*, 2009 WL 1684563, at *1 (internal

citations omitted); *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009) ("Transfer of a suit involving multiple defendants is ordinarily proper 'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'") (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147 (5th Cir. 1987)).  The "critical time" when making this threshold inquiry is the time when the lawsuit was filed.  *Balthasar*, 654 F. Supp. 2d at 549 (citing *Hoffman*, 363 U.S. at 343).

NovelPoint disputes whether the action could have originally been brought in the Northern District of California because Defendants have failed to show that VTech Holdings, a Hong Kong company, is subject to personal jurisdiction in the Northern District of California.  NOVELPOINT'S RESPONSE AT 6.  NovelPoint further argues that any consent to personal jurisdiction in the Northern District of California is not determinative to show the lawsuit could have originally been brought in the transferee district.  *Id.*

Defendants, on the other hand, argue that the accused products are sold throughout the United States, and therefore California may assert specific jurisdiction over Defendants.  DFTS' MTN AT 2.  Although "VTech's accused 'Bugsby' products are sold throughout the United States," Defendants have made no showing that *VTech Holdings* sells products in the United States, much less the Northern District of California.  *See* DFTS' MTN AT 2.  Defendants point to the Declaration of William To to show that the VTech Bugsby product is sold nationally.  *See id.* (citing EX. BB, DECL. OF WILLIAM TO at ¶ 3(Doc. No. 45-28)).  William To, however, is the president of VTech North America, and nowhere in his declaration does he state that VTech Holdings sells the Bugsby product, or any other product, within California.  (Doc. No. 45-28).  Furthermore, VTech Holdings states it

4

"has no offices, facilities, distribution facilities, or employees in the United States." Ex. AA, Decl. of Pang King Fai at ¶ 6(Doc. No. 45-27). Thus, Defendants have not shown that VTech Holdings is subject to personal jurisdiction in the Northern District of California such that this lawsuit could have been originally filed there.

VTech Holdings hopes to create personal jurisdiction in the transferee forum by stating it "will not contest personal jurisdiction or venue in the Northern District of California." Dfts' Mtn at 7. Such consent, however, is insufficient to conclude this lawsuit could have been filed in the Northern District of California. *See U.S. Ethernet Innovation, LLC v. Acer, Inc.*, 2010 WL 2771842, at *4 (E.D. Tex. July 13, 2010); *Chirife*, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). "[I]t is immaterial [to the transfer analysis] that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum." *Chirife*, 2009 WL 1684569, at *1 (quoting *Hoffman*, 363 U.S. at 344). Because VTech Holdings' consent to personal jurisdiction is immaterial, the Court finds that VTech Holdings has not shown that it has sufficient minimum contacts in California to be subject to personal jurisdiction. Therefore, the lawsuit could not have been originally filed in the Northern District of California. As such, Defendants have not met the threshold inquiry under the § 1404(a) analysis with respect to VTech Holdings, and therefore the case as a whole. Failure to satisfy the threshold question weighs against transfer.[3]

## II.    The Private Interest Factors

Turning to a discussion of the private interest factors outlined in *Volkswagen I*, the Court

---

[3] Even if VTech Holdings could show it is subject to personal jurisdiction in the Northern District of California, the Court finds the case should not be transferred given that the other factors weigh against transfer.

finds these factors do not favor transfer.

**A.    The Relative Ease of Access to Sources of Proof**

Defendants argue that the bulk of the relevant physical evidence in this case is located in or near the Northern District of California.   DFTS' MTN AT 2. Moreover, Defendants contend that NovelPoint's presence in Texas is "a fiction entitled to no weight," and therefore this factor weighs in favor of transfer.  *Id.* at 10.

On the other hand, NovelPoint asserts it is a *bona fide* citizen of Texas and that its relevant documents, including the inventor's original documents, are located in the Eastern District of Texas. NOVELPOINT'S RESPONSE AT 9.   In addition, NovelPoint argues any weight given to documents located in the Northern District of California is tempered by the volume of documents in VTech North America's possession, which are located in Illinois.  *Id.* at 10.   According to NovelPoint, the documents in Illinois are much closer to the Eastern District of Texas than the Northern District of California.  *Id.*

The Court must consider the location and volume of documents[4] possessed by each party in relation to the transferee and transferor venues.  *See e.g., Volkswagen II*, 545 F.3d at 314-315; *In re Nintendo Co. Ltd*, 589 F.3d 1194, 1199 (Fed. Cir. 2009).   However, in a patent infringement suit, the bulk of the relevant evidence is in the defendant's possession.  *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

The location of LeapFrog's physical evidence lends weight to transfer.   LeapFrog is

---

[4] The Federal Circuit, interpreting Fifth Circuit law, has concluded that the convenience of electronic documents in patent cases does not play a role in analyzing the ease of access to sources of proof.  *But see Unomedical A/S v. Smiths Medical MD, Inc.*, No. 1:09-cv-4375, 2010 WL 2680144 (N.D. Ill. June 30, 2010) (citing *Abbott Labs v. Church & Dwight, Inc.*, No 07 C 3428, 2007 WL 3120007 (N.D. Ill. Oct. 23, 2007); *CoolSavings.com, Inc.*, v. *IQ Commerce Corp.*, 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999); *Lancelot Investors Fund v. TSM Holdings*, No. 07 C 4023, 2007 U.S. Dist. LEXIS 78881 (N.D. Ill. Oct. 24, 2007)).

headquartered in the Northern District of California, and the design and engineering team for LeapFrog's accused products are located in the transferee forum. D<small>FTS</small>' M<small>TN AT</small> 2. All design, sales, marketing, and financial documents related to LeapFrog's accused products are also located in California. *Id.* at 2-3. Additionally, a number of former LeapFrog employees with knowledge of the accused products live in or around Northern California.[5]  *Id.* at 2.

However, the entirety of documents and physical evidence relevant to the case are not concentrated in or near the transferee forum. Defendant VTech North America is headquartered in Illinois, and all of its documents, witnesses, and other physical evidence relevant to VTech's accused product are located in Illinois, as are the '427 patent prosecution documents.[6]  *Id.* at 4. Because Illinois is closer to Texas than it is to California, it is more convenient to transport documents from Illinois to Tyler[7] than from Illinois to San Francisco.[8]

As to NovelPoint's contention that its documents are located in Allen, Texas,[9] weight given to the location of NovelPoint's documents is determined by whether NovelPoint is an "ephemeral" entity. Defendants contend that NovelPoint's relationship to Texas is a fiction to manipulate venue. The Court disagrees. It appears that the Federal Circuit has concluded that an entity that does not

---

[5] LeapFrog has failed to identify any former employees in particular.

[6] NovelPoint contends it is in the process of transferring the prosecution documents from Illinois to Texas. N<small>OVEL</small>P<small>OINT</small>'<small>S</small> R<small>ESPONSE AT</small> 4-5. Whether the documents are in Illinois or Texas, Texas is still more convenient.

[7] According to NovelPoint's Response, it is 949 miles from VTech North America's headquarters in Illinois to the Tyler Courthouse.

[8] According to NovelPoint's Response, it is 2,140 miles from VTech North America's headquarters in Illinois to the San Francisco Courthouse.

[9] In addition to NovelPoint's corporate and financial documents, the inventor's original documents and prototypes are also located in Texas. The inventor has a contractual obligation to provide all relevant documents to NovelPoint. N<small>OVEL</small>P<small>OINT</small>'<small>S</small> R<small>ESPONSE AT</small> 4. If there are any additional, relevant documents, they would be located in Florida, where the inventor resides. *Id.*

have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum is an "ephemeral" entity. *See In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2009) (granting transfer when plaintiff had a principal place of business in Texas, but no employees in Texas); *In re Microsoft*, 2010 WL 4630219, at *3-4 (Fed. Cir. Nov. 8, 2010) (granting transfer because plaintiff had no employees in Texas, even though plaintiff incorporated in Texas and had a principal place of business and documents in Texas). This is certainly true where the formation of the entity could be characterized as recent.

In this case, however, the Court finds that since NovelPoint filed its complaint four months after incorporation,[10] NovelPoint's formation in Texas is not "recent" under Federal Circuit precedent. *See Zimmer*, 609 F.3d at 1381; *Microsoft*, 2010 WL 4630219, at *3-4. Further, NovelPoint has established, and Defendants do not dispute, that two of NovelPoint's three principals live in Texas.[11] Dfts' Mtn at 4-5. Because two of NovelPoint's principals reside in Texas, and NovelPoint's formation is not recent, the Court concludes NovelPoint's presence in Texas is not "recent" and "ephemeral" under Federal Circuit precedent. Therefore, NovelPoint's connections to Texas will be given some weight.

Furthermore, there is no reason to believe NovelPoint transported documents to Texas to create venue, as Defendants contend. In *In re Hoffmann-La Roche, Inc.*, the Federal Circuit determined the plaintiff attempted to manipulate venue by transferring documents to its litigation

---

[10] NovelPoint was established on January 6, 2010. Dfts' Mtn at 4. The Complaint was filed on April 30, 2010.

[11] The third principal lives in Illinois. Dfts' Mtn at 5.

counsel in Texas, despite no other connection to the Eastern District of Texas.  587 F.3d 1333, 1336-37 (Fed. Cir. 2009).  The court noted, "But, if not for this litigation, it appears that the documents would have remained a source of proof in [their original location].  Thus, the assertion that these are 'Texas' documents is a fiction."  *Id.* at 1337.  In *Zimmer*, the Federal Circuit reiterated that transporting files to an office shared by plaintiff and "another of its trial counsel's clients" was "recent, ephemeral, and an artifact of litigation."  609 F.3d at 1381.  Defendants, however, do not dispute that since its organization, NovelPoint has existed exclusively in Texas.  *Compare, with Microsoft*, 2010 WL 4630219, at *1 (noting the plaintiff, although incorporated in Texas, was operated from the United Kingdom).  Because of this exclusivity, and the fact that two of NovelPoint's three principals resides in Texas, most of NovelPoint's documents probably originated in Texas, despite this litigation.  For example, because NovelPoint's bank account is located in Texas, its financial and corporate records likely originated in Texas.  *See* NOVELPOINT'S SURREPLY AT 3.  Any documents that were transported to Texas[12] were done so for a legitimate business reason, namely as "part and parcel" of NovelPoint's acquisition of a business asset.  *Id.*  However, these transported documents are likely a small portion of the documents involved in this litigation.  Therefore, even if the Court discounted these particular documents, this factor does not favor transfer because the documents located in Illinois and Texas are more convenient to Texas than California.

The Court recognizes that NovelPoint may be in the process of transporting documents from Illinois to Texas.  The Court concludes, however, that these documents are not being transported to manipulate venue, but rather to aid in normal business functions, functions that originated in Texas.  NovelPoint has not created ties to Texas by virtue of transported documents; rather, NovelPoint has

---

[12] The Court is referring to the inventor's documents that originated in Florida.

had non-ephemeral ties to Texas since its inception by virtue of its exclusive presence in Texas and the residential status of two of its principals.

Accordingly, some weight will be given to the location of NovelPoint's physical evidence and documents, most, if not all, of which are located in Texas. Taking into account the evidence located in Illinois, combined with the evidence in the Eastern District of Texas, the majority of physical evidence is more easily accessed from Texas. Therefore, this factor does not favor transfer.

**B.    The Availability of the Compulsory Process to Secure the Attendance of Witnesses**

This factor weighs heavily for transfer if the majority of non-party witnesses are located within the Northern District of California. *See Volkswagen II*, 545 F.3d at 316; *see also Zimmer*, 609 F.3d at 1381 (stating the venue where potentially relevant witnesses are located weighs in favor of that venue).

Under these circumstances, however, this factor is neutral. The only non-parties referenced are former LeapFrog employees, the prosecuting attorney, and the inventor, to the extent he is considered a non-party. The prosecuting attorney lives in Illinois and the inventor lives in Florida. Therefore, both are outside either forum's subpoena power. In addition, LeapFrog has not identified any former employees in particular, nor has it stated the number of former employees located in California that are relevant to this litigation. Because the Court will not base its conclusions on unidentified witnesses, neither district has the ability to exercise subpoena power in this case.

**C.    The Cost of Attendance for Willing Witnesses**

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend

trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)(internal citations omitted).

At least between NovelPoint[13] and Leapfrog, the convenience of witnesses slightly favors transfer. However, the convenience of the remaining witnesses mitigates the weight given to LeapFrog's witnesses. Applying the 100 mile rule, the inconvenience to witnesses traveling to Tyler is less than the inconvenience generated by transferring the case to San Francisco.[14] As noted above, it is closer to travel from Illinois—where VTech North America's employees and one of NovelPoint's principals are located—to Tyler than it is from Illinois to San Francisco. Moreover, the inventor of the '427 patent, to the extent he is considered a non-party, lives in Florida, which is much more convenient to Texas than it is to California. Finally, the prosecuting attorney, a non-party witness, is presumed to reside in Illinois, which again, is more convenient to Texas than California. The Court notes that the long-standing Fifth Circuit principles give more weight to the convenience of non-party witnesses. *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711

---

[13] NovelPoint's ties to Texas are given weight because the Court has determined NovelPoint's presence in Texas is not "ephemeral."

[14] As to the Hong Kong witnesses, VTech Holdings cites *Genentech*, arguing that the convenience of these witnesses does "not impact the transfer analysis." DFTS' MTN AT 8, n.9. In *Genentech*, the Federal Circuit discounted the convenience of European witnesses in the transfer analysis because the witnesses would travel "a significant distance no matter where they testify." 566 F.3d at 1344. The Court agrees that the convenience of the Asian witnesses should be given negligible consideration. However, the Court is not prepared to categorically foreclose the possibility of considering the convenience of foreign witnesses because it is foreseeable that such convenience could become an issue, e.g., where the transferor and transferee forums each have an equal number of witnesses. *See Aloft Media, LLC v. Yahoo!, Inc.*, 2009 WL 1650480, at *5, n.8 (E.D. Tex. June 10, 2009).

(N.D. Tex. 2009) (giving convenience of non-party witnesses more weight than party witnesses); *Ternium Int'l USA Corp. v. Consol. Sys.*, No. 3:08-cv-816, 2009 WL 464953, at \*4 (N.D. Tex. Feb. 24, 2009) (same); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (same); *see also Remmers v. U.S.*, No. 1:09-cv-345, 2009 WL 3617597, at \*5 (E.D. Tex. Oct. 28, 2009) ("it is the convenience of non-party witnesses, rather than party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis.").

In addition, NovelPoint identifies four potentially relevant witnesses, all employed by Defendants, that are located in Austin, Texas and Arkansas. NovelPoint asserts that there are three LeapFrog employees in Austin who sell the accused products to schools in the Austin area. Novel Point's Response at 12. According to NovelPoint, sales to schools are an essential part of LeapFrog's business model. *Id.* at 12-13. NovelPoint further argues that VTech North America employs a salesman in Arkansas who is responsible for selling VTech's accused products to various retailers. Novel Point's Surreply at 5. Defendants merely respond that these witnesses do not have relevant information. Dfts' Reply at 5.

The analysis of this factor does not require that identified witnesses be "key witnesses." *Genentech*, 566 F.3d at 1343. Rather, the court need only "assess the relevance and materiality of the information the witness may provide." *Id.* In this case, the Austin and Arkansas witnesses likely have relevant and material information. As NovelPoint has pointed out, the sale of accused products to schools and retailers is likely relevant to the damages issues in this case. Because these witnesses have relevant and material information about the accused products, the Court will consider the convenience of these witnesses in relation to the transferee and transferor forums. Thus, the Court finds it will be more convenient for these witnesses to travel to Tyler from their respective locations

12

than to San Francisco.[15]

Accordingly, the Eastern District of Texas is more convenient for the majority of the parties and witnesses.  Therefore, this factor does not favor transfer.

## III.   The Public Interest Factors

### A.   The Administrative Difficulties Flowing from Court Congestion

This factor is the most speculative, and does not alone, outweigh other factors.  *Genentech*, 566 F.3d at 1347.  However, the speed with which a case may get to trial is relevant to the § 1404(a) analysis.  *Id.*

This case is set for trial in June 2012, about 19 months away.  Defendants contend the shortest time to trial in the Northern District of California is 24.5 months.  DFTS' MTN AT 15.  Given that the time to trial is slightly faster in the Eastern District of Texas, this factor does not favor transfer.

### B.   The Local Interest in Having Localized Interests Decided at Home

As stated above, the development of LeapFrog's accused products occurred in California.  Therefore, with respect to the LeapFrog accused products, the Northern District of California has a local interest in the outcome of the litigation.  *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.").  However, the design of VTech's accused products occurred in Hong

---

[15] It is 235 miles from Austin to Tyler, Texas, but 1,761 miles from Austin to San Francisco, California. Therefore, the convenience of the Austin witnesses is better served by a forum in Tyler, Texas.  NOVELPOINT'S RESPONSE AT 12.  Likewise, the distance from Rogers, Arkansas to Tyler, Texas is 397 miles, versus the 1,853 miles to San Francisco.  *Id.*

Kong and China.  EXH. BB, DECL. OF WILLIAM TO AT ¶ 6-7 (Doc. No. 45-28).  With respect to those accused products, California has no greater interest in the reputation of VTech's engineers than does the Eastern District of Texas.  However, the Eastern District of Texas has a local interest in the outcome of the case given that NovelPoint's connections to Texas are not "recent" and "ephemeral" under Federal Circuit precedent.  Therefore, this factor is neutral.

### C.      The Remaining Public Interest Factors

The remaining public interest factors are neutral.  Both courts are familiar with federal patent law and there are no conflicts of law to avoid.

Therefore, under these particular facts, the public interest factors do not favor transfer.

## CONCLUSION

For the foregoing reasons, Defendants have failed to show the Northern District of California is clearly more convenient.[16]  First, Defendants are unable to show that the case could have originally been filed in the Northern District of California.  Second, the relative ease of access to sources of proof, the cost of attendance for willing witnesses, and the administrative difficulties flowing from court congestion do not favor transfer.  The availability of compulsory process to secure the attendance of witnesses is neutral, as is the local interest in the outcome of the case.  Accordingly,

---

[16] This case is distinguishable from *In re Acer America Corp.* where the Federal Circuit granted a petition for a writ of mandamus and directed transfer to the Northern District of California.  No. 2010-M942, slip op. at 8 (Fed. Cir. Dec. 3, 2010).  In *Acer*, multiple defendants were located in the Northern District of California whereas, in this case, only one defendant is located in the transferee forum.  Furthermore, *Acer* noted that "[a]ll of the U.S.-based companies in this case except for Dell are headquartered in California."  *Id.* at 4.  That is not the case here.  One of the defendants in this case is based in Illinois, outside the state in which the transferee forum sits.  Moreover, NovelPoint has connections to the transferor forum, resulting from its non-ephemeral presence in the Eastern District of Texas.  In contrast, the plaintiff in *Acer* was headquartered in the transferee forum and seemingly had no ties to the transferor forum.  *See id.* at 3.

the factors do not favor transfer and the Court **DENIES** Defendants' Motion to Transfer.[17]

**So ORDERED and SIGNED this 6th day of December, 2010.**

*John D. Love*
_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

_____

[17] Once again, the Court laments, as shown by the cited list, the enormous amount of time and resources the Court and the parties invest in § 1404 convenience issues, issues that have absolutely nothing to do with the merits of the cases. *See KlausTech, Inc. v. Admob, Inc.*, Civil Action No. 6:10-cv-39 (Doc. No. 50) (E.D. Tex. Nov. 30, 2010) (granted); *MGM Well Services, Inc. v. Production Control Services, Inc.*, Civil Action No. 6:10-cv-88 (Doc. No. 76) (E.D. Tex. Nov. 22, 2010) (granted); *Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, Civil Action No. 6:09-cv-270, 2010 WL 4238879 (E.D. Tex.Oct. 27, 2010) (denied); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, Civil Action No. 6:09-cv-448, 2010 WL 2771842 (E.D. Tex. July 13, 2010) (granted); *Fractus, SA v. Samsung Electronics Co., Ltd.*, Civil Action No. 6:09-cv-203, 2010 WL 2773237 (E.D. Tex. June 10, 2010) (denied); *Tsera, LLC v. Apple, Inc.*, Civil Action No. 6:09-cv-312 (Doc. No. 230) (E.D. Tex. May 12, 2010) (denied); *All Voice Developments US, LLC v. Microsoft Corp.*, Civil Action No. 6:09-cv-366 (Doc. No. 59) (E.D. Tex. April 8, 2010) (denied); *Dura Operating Corp. v. Magna International Inc.*, Civil Action No. 6:08-cv-455 (Doc. No. 58) (E.D. Tex. Mar. 26, 2010) (granted); *Colorquick, L.L.C. v. Vistaprint Limited*, Civil Action No. 6:09-cv-323 (Doc. No. 59) (E.D. Tex. Mar. 23, 2010) (denied); *Realtime Data, LLC v. Stanley*, Civil Action No. 6:09-cv-326, 2010 WL 1064474 (E.D. Tex. Mar. 18, 2010) (denied); *Innovative Global Systems LLC v. Turnpike Global Technologies L.L.C.*, Civil Action No. 6:09-cv-157, 2009 WL 3754886 (E.D. Tex. Oct. 20, 2009) (denied); *Emanuel v. SPX Corp./OTC Tools Div.*, Civil Action No. 6:09-cv-220, 2009 WL 3063322 (E.D. Tex. Sept. 21, 2009) (denied); *Aloft Media, LLC v. Yahoo!, Inc.*, Civil Action No. 6:08-cv-509, 2009 WL 1650480 (E.D. Tex. June 10, 2009) (denied); *Document Generation Corp. v. Allscripts, LLC*, Civil Action No. 6:08-cv-479 (Doc. No. 83) (E.D. Tex. May 19, 2009) (denied); *Konami Digital Entertainment Co., Ltd. v. Harmonix Music Systems, Inc.*, Civil Action No. 6:08-cv-286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) (denied); *Realtime Data, LLC v. Packeteer, Inc.*, Civil Action No. 6:08-cv-144 (Doc. No. 239) (E.D. Tex. Mar. 5, 2009) (denied); *Invitrogen Corp. v. General Electric Co.*, Civil Action No. 6:08-cv-113, 2009 WL 331889 (E.D. Tex. Feb. 9, 2009) (denied); *Invitrogen Corp. v. General Electric Co.*, Civil Action No. 6:08-cv-112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009) (granted); *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995 (E.D. Tex. 2009) (granted); *J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, Civil Action No. 6:08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) (denied); *Aloft Media, LLC v. Adobe Systems Inc.*, Civil Action No. 6:07-cv-355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) (denied); *Humanscale Corp. v. Weber Knapp Co.*, Civil Action No. 6:07-cv-411 (Doc. No. 35) (E.D. Tex. Mar. 17, 2008) (denied); *Interactive Music Technology, LLC v. Roland Corp. U.S.*, Civil Action No. 6:07-cv-282 (Doc. No. 57) (E.D. Tex. Jan. 7, 2008) (granted). As the list shows, the Court, when confronted by a dizzying array of venue "facts" at the earliest stages of cases, has granted some motions while denying others. But the point is the utter waste of resources over just the past three years that has gone into resolving where it is more "convenient" to litigate a case.