UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
|     *Plaintiff*, | § § § | CASE NO. 6:12-cv-499 MHS |
| v. | § § | LEAD CASE |
| Texas Instruments, Inc., et al., | § § | Jury Trial Demanded |
|     *Defendants*. | § § § | |

**Blue Spike's Surreply to ImageWare's Motion to Dismiss the First Amended Complaint [Dkt. 940]**

**I.   Blue Spike Has Adequately Pleaded the Necessary Elements of Indirect Infringement**.

ImageWare's reply (Dkt. 996) again asks the Court to apply an incorrectly high pleading standard. To survive a motion to dismiss, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F.App'x, 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008)). Blue Spike's complaint meets this standard.

ImageWare argues that Blue Spike "fails to plead any facts suggesting that ImageWare's products are '*material*' to practicing the" inventions to which the accused products contribute. Dkt. 996 at 1 (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012)). On the

1

contrary, Blue Spike has alleged facts from which the Court can infer materiality. *See* Dkt, 919 at ¶¶35, 43, 51, 59. While Blue Spike's first amended complaint does not specifically address materiality, this Court does not treat materiality as a stand-alone element; rather, the Court folds its materiality review into the other elements, and as long as those elements are adequately pleaded, then dismissal is improper.[1]

Next, as Blue Spike has already explained, ImageWare's argument that Blue Spike must do more than "generically identif[y] direct infringers as the 'end users'" to maintain contributory-infringement claims (Dkt. 996 at 2) directly contradicts this Court's precedent. *See, e.g., Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-CV-242-JRG, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2012).

ImageWare again suggests that Blue Spike "does not identify any accused 'method or system' that supposedly infringes" (Dkt 996 at 3), but this argument fails. ImageWare itself acknowledges (1) that Blue Spike has identified infringing software products made by ImageWare and (2) that software can contribute to infringement by a "method or system" of which it is a component—a larger software suite, for example. *Id*. ImageWare apparently wants Blue Spike to plead additional details about exactly how ImageWare's software operates within the infringing

---

[1] *See, e.g., InMotion Imagery Techs., LLC v. Imation Corp.*, No. 2:12-CV-298-JRG, 2013 WL 1279055, at *6 (E.D. Tex. Mar. 26, 2013) (holding that plaintiff had adequately pleaded contributory infringement where it simply "alleged that the accused products . . . are especially made and/or adapted for uses that infringe the asserted patents, and are not staple articles or commodities of commerce suitable for substantial noninfringing use"); *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) (holding that "[t]o state a claim for contributory infringement, [a plaintiff] must at least (1) identify the 'material or apparatus for use in practicing [the] patented process' that is sold or offered for sale by Defendants and (2) plead facts that allow an inference that these components have no substantial non-infringing uses") (punctuation omitted).

methods or systems (*id.* at 2 n.2), but such details are not required to survive a motion to dismiss. *Cf. Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*, No. 2:09–cv–148–TJW, 2010 WL 1409245, at *4 (E.D. Tex. Apr. 1, 2010). It is enough for Blue Spike to allege that ImageWare makes biometric software that is deployed in the context of biometric-identification devices and software.

ImageWare's reply also repeats the fallacy that Blue Spike's complaint must identify which claims are infringed. Dkt. 996 at 3. This is false. *See In re Bill of Lading*, 681 F.3d at 1335 (to survive dismissal, "a plaintiff need not even identify which claims it asserts are being infringed"). ImageWare suggests that the sheer number of claims at issue in this case somehow imposes an additional pleading requirement on Blue Spike, but this position is simply not true. *See id.*

Next, ImageWare contends that Blue Spike has not pleaded sufficient facts to permit a reasonable inference that ImageWare's infringing products have no substantial non-infringing uses. Dkt. 996 at 3. To the contrary, Blue Spike has pointed to the very names of ImageWare's products—including Biometric Engine, Desktop Security, Law Enforcement, and EPI Builder Software Development Kit— as strong indicators that the products pertain specifically to biometric-identification and security systems, with no substantial non-infringing uses. Dkt. 967 at 6. ImageWare responds that the names of its infringing products "are not facts from which the Court can infer the required pleading element" (Dkt. 996 at 3), but cites no authority for that assertion. At this stage of litigation, it is eminently reasonable

3

for the Court to infer that ImageWare's products' names reflect their uses.[2] The matter would be different if documents already on file with the Court conclusively proved that the accused products have substantial non-infringing uses. *Cf. In re Bill of Lading*, 681 F.3d at 1338-39 (affirming dismissal because, unlike Blue Spike's allegations here, the complaints in *In re Bill of Lading* "actually make clear on their face that Appellees' products do have substantial non-infringing uses"). The matter might also be different if the accused products' names even *suggested* non-infringing uses, but they do not. Under the circumstances, given Blue Spike's allegation that its patents-in-suit are foundational to all of today's biometric-identification and security systems (Dkt. 919 ¶¶2, 25), the very names of ImageWare's accused products permit a reasonable inference that the products have no substantial non-infringing uses.

Last, as to the indirect-infringement claims, ImageWare again complains that Blue Spike has not alleged or pleaded any facts that suggest ImageWare sold the infringing material or component knowing that it was especially made or adapted for use in an infringing manner. Dkt. 996 at 4. This is incorrect; the complaint states that ImageWare has had knowledge of Blue Spike's patents since "at least as early as the service of this complaint." *Compare* Dkt. 919 ¶¶35, 43, 51, 59 *with Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229 (E.D. Tex. July 27, 2012), Dkt. No. 486, at 9 (rejecting argument that plaintiff had

---

[2] *See Titanide Ventures, LLC v. Int'l Bus. Machines Corp.*, No. 4:12-CV-196, 2012 WL 5507327, at *2 (E.D. Tex. Oct. 18, 2012), *report and recommendation adopted*, No. 4:12-CV-196, 2012 WL 5507316 (E.D. Tex. Nov. 14, 2012) (to survive dismissal, plaintiff's allegations must simply raise a reasonable expectation that discovery will reveal the proof required).

inadequately alleged knowledge because "the Complaint clearly alleges that the Defendants have actual notice of the [patent-in-suit] at least as early as the filing of this Original Complaint"; "[t]o the extent Defendants' arguments relate to [plaintiff's] failure to allege pre-suit knowledge, these arguments are unpersuasive" because "[f]ailing to allege pre-suit knowledge is not a basis to dismiss [Plaintiff's] indirect infringement claims; as it cannot be disputed that [Plaintiff] does sufficiently plead that the Moving Defendants had knowledge of the asserted patent for at least some time during the infringing period."). Further, even if ImageWare were correct that Blue Spike had not alleged knowledge, a plaintiff is not required to plead "each individual element of a claim for indirect infringement" at this stage of the proceedings. *Lodsys, LLC v. Brother Int'l Corp.*, 2:11-cv-90-JRG, 2012 WL 760729, at *3 (E.D. Tex. Mar. 8, 2012).[3]

## II. Blue Spike Has Adequately Pleaded Willful Infringement.

Blue Spike stands by the three willfulness arguments in its opposition (*see* Dkt. 967 at 7-8) and notes that ImageWare's reply does not address one of them—namely, that ImageWare should have become aware of Blue Spike's patents while conducting due diligence for its own pending patents. *Id* at 8. This is a stand-alone reason to deny the motion to dismiss Blue Spike's willfulness claims.

---

[3] *Accord Eolas Techs., Inc. v. Adobe Sys., Inc.*, 6:09-cv-446, 2010 WL 2026627, at *3 (E.D. Tex. May 6, 2010) (to survive dismissal of indirect-infringement claims, plaintiff needs to plead existence of direct infringers but not other "material elements" of indirect infringement); *PA Advisors, LLC v. Google Inc.*, No. 2:07-cv-480 DF, 2008 WL 4136426, at *8 (E.D. Tex. Aug. 8, 2008) (noting that "no cases have required any further details for [pleading] inducement of infringement or contributory infringement other than the identification of users that directly infringe[]").

## CONCLUSION

For these reasons plus those contained in its opposition, Blue Spike respectfully asks the Court to deny ImageWare's motion to dismiss.

Respectfully submitted,

 /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on the 3rd day of October, 2013.

                                              /s/ Randall T. Garteiser