# hIN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:12-cv-499 LED |
| | § | |
| **TEXAS INSTRUMENTS, INC.,** | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| Plaintiff, | § | |
| | § | Case No. 6:13-cv-106 MHS |
| v. | § | [Consolidated with |
| | § | Case No. 6:12-cv-499 LED] |
| **AXXONSOFT US, INC and** | § | |
| **AXXONSOFT LTD.,** | § | |
| Defendants. | § | |

## AXXONSOFT US INC. AND AXXONSOFT LTD.'S MOTION TO DISMISS BLUE SPIKE, LLC'S COMPLAINT FOR PATENT INFRINGEMENT

Defendants AxxonSoft US, Inc. ("AxxonSoft US") and AxxonSoft Ltd. ("AxxonSoft") (collectively "Defendants") respectfully request that the Court dismiss the Complaint for Patent Infringement (D.I. 1, "Complaint") filed by Plaintiff Blue Spike, LLC ("Blue Spike") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, for failure to state a claim for indirect infringement and willful infringement upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of its motion, Defendants submit the following Brief and the Declarations of Joel Moss, CEO of AxxonSoft US, and Murat Altuev, a director of AxxonSoft, which are attached hereto as Exhibits 1 and 2.

## I.   INTRODUCTION

In its rush to the courthouse, Blue Spike has filed a Complaint that is entirely devoid of any factual allegations specific to this case.  Blue Spike's Complaint utterly fails to show that either AxxonSoft or AxxonSoft US has any connection to the Eastern District of Texas and that personal jurisdiction is appropriate in this case.  Instead, Blue Spike relies on vague generalizations and boilerplate recitations of the law in a thinly veiled attempt to avoid the requirements of due process and drag Defendants into Blue Spike's venue *du jour*.  Blue Spike offers no facts, analysis, or legal authority in support of haling into this Court two out-of-state defendants with no contacts in the Eastern District, or even in the entire state of Texas.  Blue Spike's failure to support its claims against AxxonSoft and AxxonSoft US is unsurprising in light of the fact that Blue Spike has sued over 100 defendants in nearly 90 separate cases in this District using virtually the same canned allegations.  While some of these defendants are sure to be amenable to suit in this District, the facts of *this* case clearly show that neither AxxonSoft nor AxxonSoft US is subject to personal jurisdiction in the Eastern District of Texas.

The Complaint's deficiencies are further highlighted by Blue Spike's unsupported allegations of indirect and willful infringement.  Yet again, Blue Spike relies on boilerplate allegations lacking any facts specific to *this* case and *these* Defendants' technology.  Instead, Blue Spike employs mere recitations of the elements of these causes of action and naked assertions lacking any factual support.

Because Blue Spike has plainly ignored the dictates of federal due process and the pleading requirements of the Federal Rules of Civil Procedure, *Twombly*, and *Iqbal*, Defendants AxxonSoft and AxxonSoft US respectfully request that Blue Spike's Complaint be dismissed.

## II.   STATEMENT OF FACTS

On January 29, 2013, Blue Spike filed an action against AxxonSoft and AxxonSoft US

alleging that AxxonSoft's "Face Intellect module" (the "Accused Product") infringes Blue Spike's U.S. Patents Nos. 7,346,472; 7,660700; 7,949,494; and 8,214,175 (the "Patents-in-Suit"). Blue Spike LLC is a Texas limited liability company with its principal place of business in Tyler, Texas. Complaint ¶ 2. Blue Spike, Inc., a Florida corporation, assigned the Patents-in-Suit to Blue Spike LLC. *Id.* AxxonSoft is a Cyprus limited company with its principal place of business in Cyprus. Altuev Decl. ¶ 4. AxxonSoft US is a Virginia corporation with its principal place of business in Great Falls, Virginia. Moss Decl. ¶ 4.

AxxonSoft develops software solutions for intelligent video analytics, video management software, facial recognition, video surveillance, and physical security information management. Among its various products, solutions, and software suites, AxxonSoft offers facial recognition modules that can automatically identify people by their video images. AxxonSoft US is a subsidiary of AxxonSoft based in Virginia employing one individual who is also based in Virginia. Moss Decl. ¶¶ 2-4. Neither AxxonSoft nor AxxonSoft US has any connection to the state of Texas or the Eastern District of Texas outside of this lawsuit. Moss Decl. ¶ 9; Altuev Decl. ¶ 10. Importantly, AxxonSoft and AxxonSoft US:

- Have not manufactured, used, sold offered for sale, or imported the Accused Product in Texas (Moss Decl. ¶ 10; Altuev Decl. ¶ 9);

- Have never traveled to Texas to solicit or conduct business (Moss Decl. ¶ 25; Altuev Decl. ¶ 24);

- Have no offices, facilities, or other places of business in Texas (Moss Decl. ¶¶ 11, 12; Altuev Decl. ¶¶ 10, 11);

- Have no directors, officers or employees that live or work in Texas (Moss Decl. ¶¶ 13, 14; Altuev Decl. ¶¶ 12, 13);

- Have no personal or real property in Texas (Moss Decl. ¶¶ 17-20; Altuev Decl.

3

¶¶ 16-19);

- Have not registered as foreign corporations authorized to do business in Texas or designated a registered agent to accept service of process in Texas (Moss Decl. ¶¶ 22, 23; Altuev Decl. ¶¶ 21, 22);

- Are not required to pay income or business taxes to Texas (Moss Decl. ¶ 21; Altuev Decl. ¶ 20);

- Have never maintained a mailing address in Texas (Moss Decl. ¶ 16; Altuev Decl. ¶ 15);

- Have no bank accounts in Texas (Moss Decl. ¶ 15; Altuev Decl. ¶ 14);

- Have not manufactured, programmed, installed, serviced, or maintained inventory of any product in Texas (Moss Decl. ¶¶ 27-29; Altuev Decl. ¶¶ 26-28);

- Have no corporate or business records stored in Texas (Moss Decl. ¶ 30; Altuev Decl. ¶ 29); and

- Have no witnesses, documents, or other evidence relevant to this litigation located in Texas (Moss Decl. ¶ 31; Altuev Decl. ¶ 30).

## III.  PERSONAL JURISDICTION AND VENUE

### A.  Legal Standards

#### 1.  Personal Jurisdiction

Personal jurisdiction over an out-of-state defendant is permissible only where the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *LSI Indus. Inc. v. Hubbell Lighting, Inc.* 232 F.3d 1369, 1371 (Fed. Cir. 2000).[1]  "The Texas long-arm statute reaches 'as far as the

---

[1] "When analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law applies." *LSI Indus.*, 232 F.3d at 1371.

federal constitutional requirements of due process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.S.*, 815 S.W.2d 223, 226 (Tex. 1991)).  Accordingly, an analysis of Texas's long-arm statute and a federal due process inquiry are one and the same.  Ex. 3, *Secure Axcess LLC v. Bank of Am. Corp.*, Case No. 6:10-CV-670, slip op at 2 (E.D. Tex. Mar 30, 2012) (Davis, J.).  Federal due process demands that an out-of-state defendant have "minimum contacts" with the forum such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

In evaluating whether the exercise of personal jurisdiction satisfies due process requirements, the Federal Circuit employs a three-prong test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).  "The plaintiff bears the burden of proving the first two prongs, which correlate to the minimum contacts requirement." Ex. 3, *Secure Axcess*, slip op. at 3 (citing *Inamed*, 249 F.3d at 1360).  If plaintiff carries this burden, then defendant must show that the exercise of jurisdiction is constitutionally unreasonable. *Id.*

## 2.     Venue

Venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990); *see* 28

U.S.C. 1391(c).

### B. Defendants Have No Connection Whatsoever to the Eastern District of Texas

Without any support or analysis whatsoever, Blue Spike alleges that this Court has personal jurisdiction over both AxxonSoft and AxxonSoft US for four reasons:

"(1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent course of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here."

Complaint ¶ 6. Blue Spike provides ***absolutely no factual support*** for these sweeping claims, and instead relies on wholly unsupportable assertions about Defendants' actions and operations. *Id.*

*First*, Blue Spike has not, and cannot, point to a single act in this District or in the entire state of Texas that allegedly constitutes infringement. Defendants have not used, manufactured, sold, or offered for sale any of their products in this District or in Texas. Moss Decl. ¶¶ 10, 27; Altuev Decl. ¶¶ 9, 26. Defendants have never programmed, installed, or serviced any product in this District or in Texas. Moss Decl. ¶ 28; Altuev Decl. ¶ 27. Defendants have never manufactured any product in this District or in Texas. Moss Decl. ¶ 27; Altuev Decl. ¶ 26. Defendants have no inventory of any kind in this District or in Texas. Moss Decl. ¶ 29; Altuev Decl. ¶ 28. Defendants have no customers or end users in this District or in Texas. Moss Decl. ¶¶ 10, 25, 28; Altuev Decl. ¶¶ 9, 24, 27. While Defendants deny that they have committed any acts of infringement, there is simply no basis for the claim that any such acts occurred in this District or in Texas, potentially granting personal jurisdiction.

*Second*, Defendants do not regularly conduct or solicit business in this District or in

Texas. Moss Decl. ¶ 25; Altuev Decl. ¶ 24. AxxonSoft is a Cyprus company with its principal place of business in Cyprus and offices in Russia. Altuev Decl. ¶ 4. AxxonSoft US is a Virginia company with its principal place of business in Virginia. Moss Decl. ¶ 4. Defendants do not maintain offices or other places of business in this District or in Texas. Moss Decl. ¶ 11; Altuev Decl. ¶ 10. Defendants do not solicit or receive any business from this District or from Texas. Moss Decl. ¶ 25; Altuev Decl. ¶ 24. Again, there is simply no basis for the claim that Defendants do *any* business in this District or in Texas, let alone with sufficient regularity to confer personal jurisdiction.

**Third**, Defendants have not engaged in "other persistent course of conduct" or derived "substantial revenue" from this District or Texas. Without *any* instances of what might constitute Defendants' alleged "other persistent course of conduct," it is difficult to determine what Blue Spike hoped to accomplish with its allegations beyond merely parroting case law in its attempt to manufacture jurisdiction. Moreover, Defendants have not sold or offered for sale any product in this District or in Texas and accordingly have derived *no* revenue from this District or from Texas. Moss Decl. ¶ 10; Altuev Decl. ¶ 11. Blue Spike's unsupported and factually inaccurate claims are wholly insufficient to establish a "persistent course of conduct" or of "substantial revenue" received by Defendants to grant this Court personal jurisdiction.

**Fourth**, Blue Spike fails to identify even a single "substantial, systematic, and continuous contact" that Defendants have established with this District such that they should "reasonably expect to be haled into court here." Complaint ¶ 6. Indeed, Defendants' only connection with this District is the fact that Blue Spike has unreasonably haled them into court here. Defendants do not own real or personal property in this District or Texas. Moss Decl. ¶¶ 17-20; Altuev Decl. ¶¶ 16-19. Defendants' employees, officers, and directors do not live in, work in, or travel to this District or Texas to conduct business. Moss Decl. ¶¶ 13, 14, 25; Altuev Decl. ¶¶ 12, 13, 24.

Defendants do not pay taxes, own bank accounts, or maintain mailing addresses, offices or other facilities in this District or Texas.  Moss Decl. ¶¶ 11, 12 15, 16, 21; Altuev Decl. ¶¶ 10, 11 14, 15, 20.  Neither Defendant has registered as a foreign corporation authorized to do business in Texas and neither Defendant has a registered agent for service of process within Texas.  Moss Decl. ¶¶ 22, 23; Altuev Decl. ¶¶ 21, 22.  Without any meaningful connection to Texas outside of this litigation, it is simply not credible for Blue Spike to maintain that Defendants have "substantial, systematic, and continuous contact" with this District sufficient to justify this Court's exercise of personal jurisdiction.

Far from having the "minimum contacts" required by federal due process, both AxxonSoft and AxxonSoft US lack *any* contacts with the Eastern District of Texas.  Blue Spike has simply failed to carry its burden regarding personal jurisdiction.  *See* Ex. 3, *Secure Axcess*, slip op. at 3 (citing *Inamed*, 249 F.3d at 1360).

Blue Spike's complaint lacks any support for the proposition that Defendants have purposefully directed *any* activities at residents of this District.  *Inamed*, 249 F.3d at 1360.  Defendants do not solicit business from, offer to sell, or advertise to residents of this District with the possible exception of Defendants' non-interactive website, www.axxonsoft.com.  Moss Decl. ¶¶ 10, 25, 26; Altuev Decl. ¶¶ 9, 24, 25.  Defendants' website does not, however, specifically advertise or target customers in this District and visitors to the website cannot consummate sales of any AxxonSoft product through use of the website.  Moss Decl. ¶ 26; Altuev Decl. ¶ 25.  As such, Defendants' website does not subject them to jurisdiction in the Eastern District of Texas.  *See* Ex. 4, *Klausner Techs., Inv. v. Taridium, LLC*, 6:11-CV-593-LED, slip op. at 4 (E.D. Tex. Sep. 24, 2012) (finding venue improper and lack of jurisdiction based on website advertising).

Blue Spike's Complaint also fails to show that the claims of this litigation arise out of or

relate to Defendants' activities with this District. *Inamed*, 249 F.3d at 1360. As noted *supra*, Defendants have no connection to this District outside of the present litigation. Defendants have not committed *any* acts within this District that could even potentially constitute infringement of the Patents-in-Suit. As such, there is simply no way that Blue Spike can maintain that its claims arise from or relate to Defendant's activities within the Eastern District of Texas.

Neither AxxonSoft nor AxxonSoft US is subject to personal jurisdiction within the Eastern District of Texas. Rather than discharge its burden, Blue Spike relies on vague and over-generalized allegations devoid of any actual connection to this case and to these Defendants. Simply put, the exercise of personal jurisdiction over AxxonSoft and AxxonSoft US in the Eastern District would violate federal due process. As courts in this District have done time and again, Blue Spike's unsupported and unsupportable Complaint should be dismissed for lack of personal jurisdiction. *See, e.g.,* Ex. 5, *LBS Innovations LLC v BP America*, Case No. 2:11-cv-00407, slip op. at 6 (E.D. Tex. Feb. 20, 2013) (dismissing for lack of personal jurisdiction where regional grocery store chain headquartered in Pennsylvania conducted no business in Texas and therefore lacked minimum contacts); Ex. 6, *Innovative Automation LLC v. Audio and Video Labs, Inc.*, Case No. 6:11-cv-00234, slip op. at 3 (E.D. Tex. Sep. 27, 2012) (Davis, J.) (dismissing for lack of personal jurisdiction because "[o]ne sale by a third-party distributor is a tenuous tie to this district and there is no precedent to support that such a showing is enough to establish sufficient minimum contacts for personal jurisdiction purposes"); *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758 (E.D. Tex. 2009) (Davis, J.) (dismissing for lack of personal jurisdiction where defendant had no business relationships in Texas, had not appointed an agent for service of process in Texas, and had never made, used, sold, imported or offered to sell any of the accused products in Texas) ; *Advanced Biological Labs., SA v. Ameripath, Inc.*, Case No. 2:07-cv-00031, 2008 U.S. Dist. LEXIS 30757 (E.D. Tex. Apr. 14, 2008) (Davis, J.) (exercise of

9

specific jurisdiction requires patent infringement claim to arise out of or relate to activities directed at residents of the forum state).

### C. Venue in the Eastern District of Texas is Improper as to AxxonSoft US

Neither prong of § 1400(b) authorizes venue in this District with respect to AxxonSoft US: (i) AxxonSoft US does not reside in this District; and (ii) AxxonSoft US has not committed acts of infringement and does not have a regular and established place of business in this District. 28 U.S.C. § 1400(b).

First, as demonstrated above, AxxonSoft US is not subject to personal jurisdiction in the Eastern District of Texas. *See, supra*, § III.B.1. As such AxxonSoft US does not reside in this District for the purpose of determining venue. *See VE Holdings*, 917 F.2d at 1584; 28 U.S.C. 1391(c); *see also N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994) ("The venue issue is subsumed in the personal jurisdiction issue.").

Second, AxxonSoft US has not committed any act of infringement in this District nor does it have a regular and established place of business in this District. Indeed, Blue Spike's Complaint is devoid of *any* factual support tying any alleged infringement to this judicial district and contains merely a rote recitation of the elements of infringement. (Complaint ¶¶ 7, 35-36, 43-44, 51-52, 59-60.) Putting aside Blue Spike's unsupported claims of infringement, AxxonSoft US simply does not have a "regular and established place of business" in the Eastern District of Texas. 28 U.S.C. § 1400(b). AxxonSoft US is a Virginia company with its principal place of business in Virginia. Moss Decl. ¶ 4. AxxonSoft US has no other offices in the United States. Moss Decl. ¶ 5. As such, venue is undeniably improper in this case. *See Garnet Digital LLC v. Apple, Inc.*, Case No. 6:11-cv-647, 2012 WL 4465260, at *3 (E.D. Tex. Sep. 27, 2012) (Davis, J.) (granting motion to dismiss for improper venue where defendant was Delaware corporation with principal place of business in Illinois).

## IV.    FAILURE TO STATE A CLAIM

### A.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The Supreme Court made clear in *Twombly* that "a formulaic recitation of the elements of a cause of action will not do," and a plaintiff must include factual allegations sufficient to "raise a right to relief above the speculative level."  *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  While well-pleaded facts must be accepted as true, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Norris v. Hearst Trust,* 500 F.3d 454, 464 (5th Cir. 2007) [2] (quoting *Papasan v. Allain*, 478 U.S. 265 (1986)).

### B.    Blue Spike's Indirect Infringement Claims are Wholly Unsupported by Facts

Blue Spike's claims of indirect infringement are mere "naked assertions devoid of any factual enhancement" unique to Defendants and their products.  *Iqbal*, 556 U.S. at 678.  For each Patent-in-Suit, Blue Spike's indirect infringement allegations read:

Defendant has been and now is indirectly infringing by way of inducing

---

[2] Because a motion to dismiss raises a purely procedural issue, the law of the regional circuit applies.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.* 681 F.3d 1323, 1331 (Fed. Cir. 2012).

infringement by others **and/or** contributing to the infringement by others of the [Patent-in-Suit] in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the [Patent-in-Suit]. Such products include, without limitation, one or more of the Accused Products*. **Such products have no substantial non-infringing uses** and are for use in systems that infringe the [Patent-in-Suit]. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the [Patent-in-Suit] under 35 U.S.C. §271. ***Those whom Defendant induces to infringe and/or whose infringement to which Defendant contributes are the end users of the Accused Products***. Defendant had knowledge of the [Patent-in-Suit] ***at least as early as the service of this complaint*** and is thus liable for infringement of one or more claims of the [Patent-in-Suit] by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the [Patent-in-Suit] under 35 U.S.C. § 271.

Complaint ¶¶ 36, 44, 52, 60 (emphasis added).  Blue Spike's boilerplate allegations fail to state a claim that is plausible on its face, at a minimum, because (i) Blue Spike failed to plead pre-filing knowledge of the Patents-in-Suit; (ii) Blue Spike failed to show a lack of substantial non-infringing uses; and (iii) Blue Spike failed to plead specific intent to induce infringement.

### 1.      Blue Spike Fails to Plead Pre-Suit Knowledge

Indirect infringement under § 271(b) or § 271(c) requires, at a minimum, "knowledge of the existence of the patent that is infringed."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067-68 (2011).  Blue Spike alleges only that "Defendant had knowledge of the [Patent-in-Suit] ***at least as early as the service of this complaint***."  Complaint ¶¶ 36, 44, 52, 60 (emphasis added).  Apparently, the only factual support that Defendants had knowledge of the Patents-in-Suit contained in Blue Spike's Complaint is the Complaint itself.  In essence, Blue Spike asserts that the filing of its Complaint established Defendants' knowledge of the Patents-in-Suit, thereby justifying the filing of its indirect infringement claims in the first place.  This impossibly circular logic ignores the reality that "a defendant can not be held liable because it induced or contributed to another's acts *before* the defendant had knowledge, because to do so

effectively holds a defendant liable for acts it did without knowledge." *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) (dismissing with prejudice indirect infringement claims without pre-filing knowledge); *see also* Ex. 7, *Secured Mail Solutions, LLC v. Advanced Image Direct, LLC*, No. SACV 12-1090 (C.D. Cal. Jan. 30, 2013) (same). Blue Spike does not allege that Defendants knew of any of the Patents-in-Suit prior to the filing of this lawsuit, nor does Blue Spike have any basis for such an allegation. Blue Spike should not be permitted to sue Defendants for allegedly knowingly inducing or contributing to infringement of a patent that Defendants did not even know about.

Even if the Court does not adopt the well-founded reasoning followed by other courts, the Court should, at a minimum, limit Blue Spike's claims of indirect infringement to post-filing activity. Knowledge of a patent is a required element of indirect infringement claims. *Global-Tech Appliances*, 131 S. Ct. at 2067. Yet Blue Spike's allegations of indirect infringement are not limited to post-filing conduct. As such, if the Court does not grant Defendants' motion and dismiss Blue Spike's claims of indirect infringement in their entirety, the Court should and dismiss the claims to the extent they are based on any pre-filing activity.

### 2.    Blue Spike's Contributory Infringement Allegations Fail to Address Substantial Non-Infringing Uses

At the outset, a patentee alleging contributory infringement under § 271 (c) must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading*, 681 F.3d at 1337. "[T]he inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Id.* at 1338 (emphasis in original). A substantial non-infringing use is "any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Id.* (citing *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327-29 (Fed. Cir. 2009)).

*In re Bill of Lading* makes clear that to plead contributory infringement, a patentee must allege more than the bare statutory language that a component is not "suitable for substantial noninfringing use," and cannot merely allege that a component can be used to infringe. *In re Bill of Lading*, 681 F.3d at 1337. The patentee must "plead facts that allow an inference" that the accused component has <u>no</u> substantial non-infringing uses. *Id.* Importantly, Blue Spike pleads *no facts* supporting *any* inference regarding *any* use of the Accused Product other than the bare recitation that the Accused Products "have no substantial non-infringing uses and are for use in systems that infringe." Complaint ¶¶ 36, 44, 52, 60. Blue Spike has done nothing more than couch a legal conclusion as fact; failing even to identify which components of the Accused Product are not suitable for non-infringing use.

At best, Blue Spike's conclusory allegations are of the kind explicitly rejected in *In re Bill of Lading*: "These allegations are tailored too narrowly; they say nothing more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.'" 681 F.3d at 1338. The Complaint fails to plead "facts that allow an inference" that any accused AxxonSoft component has <u>no</u> substantial non-infringing use. Accordingly, Blue Spike's Complaint fails to state a proper claim for contributory infringement and should be dismissed on this basis.

### 3. Blue Spike Fails to Plead Specific Intent to Induce

Induced infringement under § 271(b) requires that the alleged infringer "knowingly induced infringement and ***possessed specific intent*** to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (internal quotation marks omitted) (emphasis added). To survive a motion to dismiss, Blue Spike's must plead facts showing that Defendants specifically intended that the unidentified "end users" infringe on the Patents-in-Suit. Blue Spike's threadbare allegations contain no mention whatsoever of

14

Defendants' specific intent other than to conclusorily allege that Defendants "actively induce" infringement. Blue Spike provides no examples of Defendants' alleged inducement; no actions by Defendants that would allow the Court to draw an inference of specific intent to cause infringement; and no facts *whatsoever* to support its sweeping claims of induced infringement. Rather, Blue Spike relies solely on a "formulaic recitation" the elements of induced infringement contrary to the dictates of the Supreme Court in *Twombly* and *Iqbal*, and the sound reasoning of courts in this district. *See, e.g., In re Bill of Lading*, 681 F.3d at 1346 (stating that to survive a Motion to Dismiss, the Complaint must contain sufficient facts alleging a direct infringer and plausibly showing that the defendant specifically intended a third party to commit acts that it knew constituted infringement); Ex. 8, *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, Case No. 6:12-cv-00366, slip op. at 6 (E.D. Tex. Feb. 7, 2013) ("[Plaintiff's] allegations that [Defendant] 'supplies' infringing systems and components and provides 'instructions' to its customers who allegedly infringe do not create a reasonable inference of inducement."); Ex. 9, *Klausner Techs., Inc. v. Oracle Corp. et al.*, Case No. 6:11-cv-00556 (E.D. Tex. Sep. 10, 2012) (Davis, J.) (dismissing induced infringement claims for failing to provide any factual support for allegations); *Joao Control & Monitoring Sys. of Texas, LLC v. Playboy Ent. Inc.*, Case No. 6:09-cv-00499, slip op. at 6 (E.D. Tex. Mar. 29, 2010) (Davis, J.) (dismissing induced infringement claims where Plaintiff only pleaded "[u]pon information and belief, [defendant] … actively induced others infringe one or more claims of the '010 patent").

### C.    Blue Spike's Willfulness Claims are Fatally Flawed

To establish willful infringement, a plaintiff must demonstrate infringement as well as the following additional elements: (1) that there was an objectively high likelihood that the defendant's activities constituted infringement of a valid patent, and (2) that the defendant knew or should have known of the risk of infringement. *See In re Seagate Tech., LLC*, 497 F.3d 1360,

1371 (Fed. Cir. 2007) (en banc). At the pleading stage, a plaintiff must allege, at a minimum, the facts that form the basis for its good faith belief that defendants willfully infringed the Patents-in-Suit at the time the complaint was filed. *See Realtime Data, LLC v. Morgan Stanley*, 721 F. Supp. 2d 538, 545 (E.D. Tex. 2010) (granting motion to dismiss willfulness claims lacking factual support). Moreover, "a willfulness claim asserted in the original complaint must necessarily be grounded *exclusively in the accused infringer's pre-filing conduct.*" *Seagate*, 497 F.3d at 1374 (emphasis added). Similarly, a party cannot willfully infringe a patent of which is had no knowledge. *Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508, 511 (Fed. Cir. 1990). "Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit." *Id.*

Blue Spike alleges only that "On information and belief, Defendant has continued to infringe the [Patent-in-Suit] since receiving notice of their infringement, ***at least by way of their receiving notice of this lawsuit***." Complaint ¶¶ 38, 46, 54, 62 (emphasis added). The Complaint does not allege, nor can it, that AxxonSoft or AxxonSoft US had any notice of any Patent-in-Suit prior to the filing of the original complaint. Instead, Blue Spike solely relies on a near verbatim recitation of *Seagate's* test for willfulness: "On information and belief, such continued infringement has been objectively reckless including because Defendant has (1) acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk." Complaint ¶¶ 38, 46, 54, 62. Blue Spike offers no facts to support this formulaic recitation of the law, directly contravening the pleading requirements of *Iqbal* and *Twombly*.

Blue Spike's willfulness claim further fails because under *Seagate* and subsequent case law, "evidence of post-litigation conduct cannot serve as the sole basis for a willful infringement

16

finding." Ex. 11, *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, Case No. 6:06-CV-222, slip op. at 2 (E.D. Tex. May 28, 2008) (Davis, J.) (citing *In re Seagate*, 497 F.3d at 1374). *Seagate* makes clear that unlike "pre-filing conduct" that may give rise to willfulness, "when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement." *In re Seagate*, 497 F.3d at 1374. Significantly, Blue Spike did not request a preliminary injunction in this matter. *See id.* ("A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct."). As courts in this District have done in similar cases, the Court should dismiss Blue Spike's defective willfulness claim because there is no allegation that either AxxonSoft or AxxonSoft US had any pre-suit knowledge of the asserted patent. *See, e.g.,* Ex. 12, *U.S. Ethernet Innovations, LLC v. Digi Int'l, Inc.*, Case No. 6:12-cv-00235, slip op. at 6 (E.D. Tex. Apr. 2, 2013) (dismissing willful infringement claims because "conclusory assertion that Defendants had knowledge of the asserted patents and continued to infringe" failed to provide notice); Ex. 13, *Touchscreen Gestures LLC v. Research in Motion Ltd.*, Case No. 6:12-cv-00263, slip op. at 3 (E.D. Tex. Mar. 27, 2013) (dismissing willful infringement claims because"[t]he absence of any allegation of pre-filing knowledge of the patents is fatal to [Plaintiff's] willful infringement claims."); Ex. 9, *U.S. Ethernet Innovations*, Case No. 6:12-cv-00366 (E.D. Tex. Feb. 7, 2013) (finding that conclusory assertions that Defendant had knowledge of the asserted patents was insufficient for claims of willful infringement); *Achates Reference Publ'g, Inc. v. Symantec Corp*, Case No. 2:11-cv-00294, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) (dismissing willful infringement claims because the "bare assertion that [Defendant's] infringement was willful is not sufficient to plead a plausible claim for relief").

## V.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court GRANT the Motion and DISMISS Blue Spike's Complaint in its entirety for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2).  Defendants respectfully requests that the Court GRANT the Motion and DISMISS Blue Spike's Complaint as to AxxonSoft US for improper venue pursuant to Federal Rule 12(b)(3) .  In the alternative, Defendants respectfully request that the Court DISMISS Blue Spike's unsupported allegations of indirect infringement and willful infringement for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6).

To the extent that the Court grants the Motion and agrees with Defendants' arguments herein, Defendants specifically reserve the right to seek their attorneys' fees in connection with filing this Motion.


Dated:  April 12, 2013                             Respectfully submitted,

                                                   By:  */s/ Erik B. Milch*
                                                   _____
                                                        COOLEY LLP
                                                        Erik B. Milch
                                                        emilch@cooley.com
                                                        One Freedom Square
                                                        Reston Town Center
                                                        11951 Freedom Drive
                                                        Reston, Virginia 20190-5656
                                                        Tel:  703 456-8000
                                                        Fax:  703 456-8100

                                                   *Attorneys for Defendants AxxonSoft US, Inc. and
                                                   AxxonSoft Ltd.*

**CERTIFICATE OF SERVICE**

I, Erik B. Milch, do hereby certify that on this 12th day of April, 2013, I caused a true and correct copy of the foregoing **AXXONSOFT US INC. AND AXXONSOFT LTD.'S MOTION TO DISMISS BLUE SPIKE, LLC'S COMPLAINT FOR PATENT INFRINGEMENT** to be electronically filed with Clerk of the Court using CM/ECF which will send notification to all registered attorneys of record.

*/s/ Erik B. Milch*