UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Blue Spike, LLC, | § |
|     *Plaintiff,* | § CASE NO. 6:12-cv-499 MHS |
| v. | § Lead Case |
| Texas Instruments, Inc. et al., | § Jury Trial Demanded |
|     *Defendants.* | § |

**BLUE SPIKE'S OPPOSITION TO AOPTIX TECHNOLOGIES' MOTION TO STRIKE AND DISMISS THE AMENDED COMPLAINT [DKT. 968]**

Plaintiff Blue Spike, LLC opposes AOptix Technologies, Inc.'s "Motion to Strike Blue Spike's Improperly-Filed Supplemental Complaint and to Dismiss the Action for Lack of Personal Jurisdiction and Improper Venue" (Dkt. 968). Striking Blue Spike's *amended* (not "supplemental") complaint is unwarranted. Dismissing the complaint is also unwarranted because Blue Spike's allegations are sufficient to make a prima facie showing of personal jurisdiction. At minimum, the Court should permit jurisdictional discovery before ruling on AOptix's motion to dismiss.

**Factual Background**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread biometric identification and security systems. Many of today's biometric identification and security providers—including AOptix—have built their companies by infringing Blue Spike's patents.

1

Blue Spike filed its original complaint against AOptix on January 8, 2013. *See* Case No. 6:13-cv-040, Dkt. 1. The original complaint contained the following allegations relevant to personal jurisdiction:

> The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here. Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

*Id*. at ¶5. The original complaint identified the accused products as "products, systems, and/or services including, but not limited to, [Defendant's] InSight Duo, InSight ESS, InSight VM, and Dash Six Iris Recognition Enterprise Software Development Kit." *Id*. ¶27. Finally, the original complaint alleged that AOptix was willfully infringing because it had knowledge of its infringement "at least by way of [its] receiving notice of this lawsuit." *Id*. ¶¶37, 45, 53, 61.

Blue Spike filed its first amended complaint against AOptix on August 30, 2013. *See* Dkt. 944. The amended complaint repeats the original complaint's allegations relevant to personal jurisdiction and adds three new ones: (1) "Defendant attended a trade show in Texas where for three days Defendant offered for sale and used its infringing products and networked with potential partners and customers"; (2) "Defendant is a 'Panel Sponsor' for a conference and expo scheduled for November 2013 in Texas"; and (3) "Defendant has sold and sells

its Stratus App which uses infringing technology to smartphone users in Texas through an in-phone application store." *Id.* at ¶5. The amended complaint also adds three accused products to those identified in the original complaint: the Stratus MX, the Stratus App, and the Stratus SDK. *Id.* ¶27. Finally, to support Blue Spike's willful-infringement claims, the amended complaint provides additional detail regarding AOptix's pre-suit knowledge, including that AOptix likely knew of the patents-in-suit because they are "prominent, pioneering patents" that have been repeatedly forward-cited by prominent companies. *Id.* ¶¶37, 45, 53, 61.

AOptix asks the Court to strike or dismiss Blue Spike's amended complaint on the basis that it is really a "supplemental" complaint rather than an "amended" complaint. Dkt. 968 at 5-6, 14-16. AOptix also argues that, regardless of whether or not the Court considers the new allegations in the amended complaint, Blue Spike has failed to present a prima facie case of personal jurisdiction. *Id.* at 6-14. Finally, AOptix argues that venue is improper in this District. *Id.* at 16-17. AOptix's arguments are not correct.

## Legal Standards

Specific personal jurisdiction exists when a defendant purposefully directs activities at the forum, the plaintiff's claim relates to those activities, and the assertion of personal jurisdiction is reasonable and fair. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (per curiam). In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all

controverted allegations in plaintiff's favor. *Id.* at 1361. If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id.*

## Argument

Blue Spike's amended complaint is not a "supplemental" complaint as AOptix argues, so the Court should disregard the consequences that purportedly flow from that designation. Additionally, Blue Spike's amended complaint presents a prima facie case of personal jurisdiction over AOptix, making dismissal improper.[1]

### I. Blue Spike's Amended Complaint Is Not a "Supplemental" Complaint.

AOptix argues that Blue Spike's amended complaint is really a "supplemental" complaint and that two major consequences flow from this distinction. First, AOptix argues that the Court should strike the amended complaint because Blue Spike did not follow the procedures outlined in Rule 15(d). Dkt. 968 at 5-6. Second, AOptix argues that the "supplemental" complaint does not relate back to the date that the original complaint was filed, so the Court should dismiss or transfer this case under the "first to file" rule because Blue Spike filed its "supplemental" complaint after AOptix filed a declaratory-judgment action in the Northern District of California. *Id.* at 15-16. AOptix is wrong to make these arguments.

---

[1] The analyses of personal jurisdiction and venue merge in this case because "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005). Thus, this opposition does not address venue separately from personal jurisdiction, as the Court's conclusion on the latter will dictate the result for the former.

4

An amended complaint "relates to matters that occurred prior to the filing of the original pleading and entirely replaces such pleading." *Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 397, 401 (E.D. Wis. 2008). A supplemental complaint, on the other hand, "addresses events occurring subsequent to the initial pleading and adds to such pleading." *Id*. Thus, by definition, allegations concerning matters that occurred before the filing of the original complaint *cannot* be part of a "supplemental" complaint. *See id.; Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (claims arising from conduct that occurred before filing of original complaint "could not . . . be brought as supplemental pleadings under Rule 15(d). The *only available mechanism* for adding these claims was an amended complaint pursuant to Rule 15(a).") (emphasis added) (citations omitted).

Blue Spike's amended complaint contains new allegations that indisputably relate to matters that occurred before the filing of the original complaint: (1) the allegation that AOptix attended a trade show in Texas in 2010 and offered to sell its products there (*see* Dkt. 944 at ¶5; Dkt. 944-1); and (2) the allegation that AOptix knew of the patents-in-suit before Blue Spike filed its original complaint because they are "prominent, pioneering patents" that have been repeatedly forward-cited by prominent companies. *Id*. ¶¶37, 45, 53, 61. Blue Spike *had* to raise these new allegations in an amended complaint rather than a supplemental complaint. *See* FED. R. CIV. P. 15(d); *Eid*, 621 F.3d at 874.

Some of the new allegations in the amended complaint do, admittedly, relate to events that postdate the filing of the original complaint: (1) the downloading and

5

use of one of the infringing products in Texas in August 2013 and (2) the fact that AOptix will be serving as a "panel sponsor" for a conference and expo scheduled to occur in Texas in November 2013. Dkt. 944 at ¶5.[2] Thus, Blue Spike probably should have titled its pleading an "amended and supplemental complaint" rather than simply an "amended complaint."[3] But titling the most recent complaint solely as a "supplemental complaint" would have been a mistake.

Two consequences follow from this fact:

First, the Court should not strike the complaint for failure to follow the procedures set forth in Rule 15(d) (*contra* Dkt. 968 at 5-6), as Rule 15(d) applies only to purely supplemental complaints. *See* FED. R. CIV. P. 15(d). Here, Blue Spike did not need to obtain leave to file an amended complaint, as AOptix contends. *Contra* Dkt. 968 at 5-6. In filing the amended complaint without first seeking leave, Blue Spike followed the Court's plain instructions established to minimize unnecessary motion practice and to avoid wasting judicial resources on motions unrelated to the merits of the case. *See* Ex. 1 (Judge Schneider's Model Scheduling and Discovery Order at ¶2, reciting "Parties must request leave to amend pursuant

---

[2] Two of the new allegations in the amended complaint may relate to pre-filing events, post-filing events, or both: (1) the allegation that AOptix "has sold and sells its Stratus App which uses infringing technology to smartphone users in Texas through an in-phone application store" (Dkt. 944 at ¶5); and (2) the allegation that AOptix's infringing products include "the Stratus MX, the Stratus App, and the Stratus SDK" (*id*. ¶27). AOptix will presumably maintain that these allegations relate only to post-filing events. While discovery will reveal the truth of the matter, ultimately it does not affect the current analysis because it does not change the fact that at least some of the amended complaint's new allegations indisputably relate to pre-filing events only.

[3] For the sake of efficiency, Blue Spike asks the Court to consider all of the complaint. *See Lamoureux v. AnazaoHealth Corp.*, 669 F.Supp.2d 227, 237 (D. Conn. 2009) (granting leave to file and considering all the allegations in an "amended" complaint, even though the complaint included some causes of action that accrued after original complaint was filed, because "there is substantial authority for allowing supplemental pleadings where the new infringement claims relate to the same technology").

to P.R. 3-6(b) if the amended pleadings will affect infringement or invalidity contentions. A request for leave is also required if the amendment seeks to add a new patent. Otherwise, a request for leave is not required.") The parties are so early in the case that there is not even a date scheduled to exchange infringement contentions or invalidity contentions, and Blue Spike's amended complaint does not add an additional patent. Blue Spike complied with the Court's guidelines for filing an amended complaint without seeking leave. *See* Ex. 1 at ¶2 (citing FED. R. CIV. P. 16(b)(1)).

Second, AOptix's "first-to-file" argument (Dkt. 968 at 14-16) fails because Blue Spike's pleading is indisputably at least partially an amended complaint, and amended complaints "relate back" to the filing date of the original complaint. FED. R. CIV. P. 15(c). Blue Spike filed its original complaint roughly two months before AOptix filed its separate declaratory-judgment suit in the Northern District of California, so the latter suit cannot warrant dismissal or transfer of this suit on a "first-filed" theory.

## II. Blue Spike's Amended Complaint Presents a Prima Facie Case for Specific Jurisdiction.

Blue Spike's amended complaint makes out a prima facie case for *specific* personal jurisdiction. It offers the following bases for exercising personal jurisdiction over AOptix: (1) AOptix has infringed the patents-in-suit and has induced acts of patent infringement on these same patents by others in this District and elsewhere in Texas; (2) AOptix attended a trade show in Texas in 2010 where for three days it offered for sale and used its infringing products and networked

7

with potential partners and customers; (3) AOptix is a "Panel Sponsor" for a conference and expo scheduled for November 2013 in Texas; (4) AOptix has sold and sells its Stratus App, which uses infringing technology, to smartphone users in Texas through an in-phone application store; (5) AOptix—alone and through partners or distributors—regularly does business or solicits business in this District and in Texas; (6) AOptix—alone and through partners or distributors—engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (7) AOptix has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here. Dkt. 944 at ¶5; *see also* Dkts. 944-1 (showing details about 2010 conference), 944-2 (showing details about upcoming panel sponsorship), 944-3 (showing details about Stratus App).[4]

AOptix asks the Court to ignore its attendance at the 2010 conference, claiming that it (1) "does not believe" (whatever that means) "that it directed any solicitation efforts at the trade show" towards Texas residents, (2) "neither sold nor

---

[4] AOptix suggests that the Court should disregard the jurisdictional allegations that relate to events postdating the filing of the original complaint, but that is not the law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994) (because direct infringement and inducing infringement are "continuous tort[s], it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction."); *Baden Sports, Inc. v. Molten*, No. C06-0210P, 2007 WL 171897, at *4 n.3 (W.D. Wash. Jan. 18, 2007) (citing *Beverly Hills Fan* in rejecting argument that the court should not consider post-filing contacts in evaluating personal jurisdiction: "the Federal Circuit has held that a court may consider evidence of contacts with the forum occurring subsequent to the events giving rise to the patent infringement litigation."); *Caddy Prods., Inc. v. Greystone Int'l, Inc.*, No. CIV. 05-301 JRTFLN, 2005 WL 3216689, t *2 n.3 (D. Minn. Nov. 29, 2005) (holding that *Beverly Hills Fan* "foreclosed" the argument that courts should disregard post-filing activities in evaluating personal jurisdiction); *see also Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 703 (D. Del. 2001) (citing *Beverly Hills Fan* in holding that "where there is some evidence of pre-filing contacts, post-filing sales are relevant to the court's determination of jurisdiction").

offered to sell any of its products at the trade show," and (3) did not "use" any of its products at the trade show. Dkt. 968 at 9-10. AOptix admits, however, that it did "promote" and "demonstrate" its products at the trade show. *Id*. at 10. This admission prevents the Court from disregarding the trade show altogether, as determining whether AOptix's activities at the show actually constitute a basis for personal jurisdiction is an inherently fact-intensive inquiry. *See, e.g., Med. Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1141 (Fed. Cir. 2008) (leaving open the possibility that "demonstrating" a product at a trade show may constitute "using" it).[5] Bearing in mind that the Court must view the facts in the light most favorable to Blue Spike, AOptix's admitted promotion and demonstration of accused products in Texas supports a prima facie showing of personal jurisdiction.

AOptix also asks the Court to ignore Blue Spike's allegations of post-filing activities related to personal jurisdiction, including (1) AOptix's panel sponsorship for a conference and expo scheduled for November 2013 in Texas and (2) sales of its infringing Stratus App in this District. Dkt. 968 at 12-14. AOptix provides no basis for ignoring the panel sponsorship, instead simply characterizing it as an "inconceivable" basis for personal jurisdiction. *Id*. at 12. On the contrary, participating prominently in—and presumably financially subsidizing—a

---

[5] AOptix misrepresents *Med. Solutions*, claiming that it held that "demonstration of an accused product at a trade show is not 'use' sufficient to establish personal jurisdiction." Dkt. 968 at 10. In fact, the opinion explicitly left open the possibility that demonstration might equal "use"; it held only that the demonstration at issue *in that case* did not equal "use" because of the nature of the defendant's specific product. 541 F.3d at 1141.

9

conference and expo in Texas certainly counts as a purposeful direction of activities towards Texas residents and Texas markets.

AOptix makes three arguments regarding the sales of the Stratus App to forum residents. First, it seems to argue that sales of the app would have to occur through its own website rather than through Apple's App Store (which is what Blue Spike alleges) to support the exercise of personal jurisdiction. Dkt 968 at 13. AOptix provides no authority that supports this proposition, which is unsurprising given that sales through intermediaries routinely give rise to personal jurisdiction. *See, e.g., Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 866 (E.D. Tex. 2012).

Second, AOptix speculates that any download of its app in this District must have been done by someone affiliated with Blue Spike and argues that such "unilateral acts" by a plaintiff cannot establish personal jurisdiction. Dkt. 968 at 13-14. In the cases that AOptix cites, however, the plaintiffs unilaterally *reached out* to the defendant to initiate transactions; the defendants did not engage in any "affirmative conduct . . . which promote[d] the transaction of business within the forum state." *James Avery Craftsman, Inc. v. Lugosch*, 486 F. Supp. 2d 595, 599 (W.D. Tex. 2007). Here, in contrast, AOptix has affirmatively chosen to offer its Stratus App for sale through Apple's App Store, knowing that this makes the app available for purchase in Texas, which counts as "affirmative conduct" to promote sales here. *Cf. Zherebko v. Reutskyy*, No. C 13-00843 JSW, 2013 WL 4407485, at *4

10

(N.D. Cal. Aug. 12, 2013) (offering product for sale through Apple App Store can create jurisdictional nexus).

Third, AOptix contends that the download of its Stratus App in this District does not support specific personal jurisdiction because the App cannot infringe without the use of a related hardware attachment—the Stratus MX, which is also an accused product—and Blue Spike does not allege that the Stratus MX has also been acquired by a resident of this District. Dkt. 968 at 14. This argument relies far too heavily on the specifics of exactly how AOptix's products operate. In the context of a motion to dismiss, the only question is whether Blue Spike's allegations make out a prima facie showing of personal jurisdiction. AOptix does not deny that its Stratus App (1) captures and analyzes biometric information and (2) has been purchased in this District. Instead, it relies on assertions about how its App interacts with iPhone hardware in the absence of Stratus MX hardware. *Id*. These assertions are unavailing because they rely on complex technical facts that are not in evidence, let alone conclusively established in AOptix's favor.[6] AOptix is effectively arguing that its Stratus App "by itself" does not actually infringe, but that argument is fundamentally beside the point in a motion to dismiss: "personal jurisdiction, not liability for patent infringement, is at issue here." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1298 (Fed. Cir. 2009).

---

[6] If, as Aoptix asserts, the Stratus App can function by relying on technology already present in the iPhone (Dkt. 968 at 14), that would appear to support Blue Spike's contributory-infringement claims. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (reciting elements of contributory-infringement claims).

What matters is this: Blue Spike has alleged several bases for concluding that AOptix has sufficient contacts with this forum to be subject to specific jurisdiction here. AOptix has not provided sufficient reason to disregard any of the allegations. Interpreted in the light most favorable to Blue Spike, the allegations dictate that dismissal is unwarranted.

### III. It Would Be Improper to Dismiss the Case Before Allowing Jurisdictional Discovery.

Blue Spike has made a prima facie showing of personal jurisdiction. But even if Blue Spike's showing were somehow defective, the proper response would not be dismissal—it would be to allow Blue Spike to conduct jurisdictional discovery before ruling on AOptix's motion. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). The showing required to warrant jurisdictional discovery is "less than a prima facie showing,"[7] which is itself a "low threshold."[8] *See also Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) ("It would . . . be counterintuitive to require a plaintiff, *prior* to conducting discovery, to meet the same burden" of alleging jurisdictional facts "that would be required in order to defeat a motion to dismiss"). Blue Spike

---

[7] *Royal Ten Cate USA, Inc. v. TTAH Trust Co. Ltd.*, No. A-11-CA-1057 LY, 2012 WL 2376282, at *2 (W.D. Tex. June 22, 2012).
[8] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 n.8 (5th Cir. 2000); *see also* 5B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE JURISDICTION 3D §1351 (explaining that the burden to make a prima facie showing of personal jurisdiction "normally is not a heavy one").

has met this threshold. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234-35 (Fed. Cir. 2010) (holding that district court abused its discretion by denying jurisdictional discovery where defendant's website showed that several of defendant's customers operated in forum; while exact extent of defendant's activities in forum was uncertain and plaintiff's "proffered documents may be insufficient in themselves to establish a prima face case," "this incomplete record nevertheless supports the need for additional discovery to determine the merits of personal jurisdiction").

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny AOptix's motion to strike and dismiss the first amended complaint. Alternatively, Blue Spike asks the Court to postpone ruling on the motion to dismiss until Blue Spike has had the opportunity to conduct jurisdictional discovery.

Respectfully submitted,

　/s/ Randall T. Garteiser　
Randall T. Garteiser
　Lead Attorney
　Texas Bar No. 24038912
　rgarteiser@ghiplaw.com
Christopher A. Honea
　Texas Bar No. 24059967
　chonea@ghiplaw.com
Christopher S. Johns
　Texas Bar No. 24044849
　cjohns@ghiplaw.com

        GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## Certificate of Service

       The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on October 7, 2013.

                                                        /s/ Randall Garteiser