# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | |
| Plaintiff, | § § | Civil Action No. 6:12-cv-499 |
| v. | § § | LEAD CASE |
| TEXAS INSTRUMENTS, INC., *et al.*, | § § § | |
| Defendants. | § § § § § | |
| | § | |
| BLUE SPIKE, LLC, | § § § | |
| Plaintiff, | § § | Civil Action Case No. 6:13-cv-40 |
| v. | § § | CONSOLIDATED CASE |
| AOPTIX TECHNOLOGIES, INC., | § § § | |
| Defendant. | § § § § | |

**DEFENDANT AOPTIX TECHNOLOGIES, INC.'S**
**REPLY IN SUPPORT OF MOTION TO STRIKE BLUE SPIKE'S**
**IMPROPERLY-FILED SUPPLEMENTAL COMPLAINT AND TO**
**DISMISS THE ACTION FOR LACK OF PERSONAL JURISDICTION**
**AND IMPROPER VENUE**

## **TABLE OF CONTENTS**

|      |                                                                                                                                                                                      | **Page** |
|------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------|
| I.   | BLUE SPIKE'S POSITION RELIES ON FALSE AND MISLEADING STATEMENTS.............................................................................................................. | 1 |
| II.  | BLUE SPIKE CONCEDES THAT ITS "AMENDED" COMPLAINT IS SUPPLEMENTAL AND THEREFORE IT SHOULD BE STRICKEN ......................... | 2 |
| III. | THE COURT SHOULD CONSIDER ONLY JURISDICTIONAL ALLEGATIONS PRE-DATING THE ORIGINAL COMPLAINT OR ELSE TRANSFER THE ACTION UNDER THE "FIRST-TO-FILE" RULE ........................... | 3 |
| IV.  | AOPTIX'S SINGLE VISIT TO TEXAS, THE 2010 ASIS INTERNATIONAL TRADE SHOW, DOES NOT ESTABLISH PERSONAL JURISDICTION ............................................................................................................... | 4 |
| V.   | THE COURT SHOULD DISREGARD BLUE SPIKE'S REMAINING JURISDICTIONAL ARGUMENTS .............................................................................. | 5 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
 21 F.3d 1558 (Fed. Cir. 1994)...............................................................................................3

*Compliance Software Solutions, Corp. v. Moda Tech. Partners, Inc.*,
 No. 07-cv-6752, 2008 U.S. Dist. LEXIS 60602
 (N.D. Ill. July 31, 2008).........................................................................................................5

*Gro Master, Inc. v. Farmweld, Inc.*,
 920 F. Supp. 2d 974 (N.D. Iowa 2013)..................................................................................5

*HollyAnne Corp. v. TFT, Inc.*,
 199 F.3d 1304 (Fed. Cir. 1999)..............................................................................................5

*InfoNow Corp. v. Zyme Solutions, Inc.*,
 No. 12-cv-03255, 2013 U.S. Dist. LEXIS 113324
 (D. Colo. Aug. 6, 2013) .........................................................................................................5

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
 599 F.3d 1377 (Fed. Cir. 2010).....................................................................................2, 3, 4

*Johnston v. Multidata Sys. Int'l Corp.*,
 523 F.3d 602 (5th Cir. 2008) .................................................................................................2

*Med. Solutions, Inc. v. C Change Surgical, L.L.C.*,
 541 F.3d 1136 (Fed. Cir. 2008)..........................................................................................4, 5

*Spectronics Corp. v. H.B. Fuller Co.*,
 940 F.2d 631 (Fed. Cir. 1991)................................................................................................3

*White v. Sloan*,
 C.A. No. 9:06cv141, 2006 U.S. Dist. LEXIS 76902 (E.D. Tex. Oct. 6, 2006) .....................2

**STATUTES**

35 U.S.C. § 271(a) .........................................................................................................................5

**RULES**

Fed. R. Civ. P. 11...........................................................................................................................1

Fed. R. Civ. P. 15(c) ......................................................................................................................4

Fed. R. Civ. P. 15(d) ......................................................................................................................2

Blue Spike's opposition brief confirms that dismissal is appropriate, or in the alternative, that this lawsuit should be transferred to the Northern District of California.

## I. BLUE SPIKE'S POSITION RELIES ON FALSE AND MISLEADING STATEMENTS

Blue Spike attempts to manufacture jurisdiction by asserting numerous false, misleading and conclusory statements. Those statements are addressed below.

- Blue Spike asserts that "AOptix has infringed the patents-in-suit and has induced the acts of patent infringement on these same patents by others in this District." Dkt. No. 1024, Opp. At 7. **FALSE**. AOptix has never sold, offered for sale, used or made a product in this District. Dkt. No. 968-3, Declaration of Thomas Rainwater ("Rainwater Decl."), ¶¶ 11, 12, 15, 16; Declaration of Bryan A. Kohm in Support of Defendant's Reply ("Kohm Decl."), Ex. B. (Rog. Response Nos. 1, 2, 3, 6, 7). The only event occurring in this District is *Blue Spike's download* of software (which is incapable of infringement) from the Internet.

- Blue Spike asserts that AOptix "offered for sale" its product at the 2010 trade show. Opp. at. 7. **FALSE**. AOptix has submitted a declaration stating no such offer for sale occurred. Rainwater Decl., ¶ 12. Blue Spike has no evidence or basis, as required by Federal Rule of Civil Procedure 11, to assert otherwise.

- Blue Spike asserts that "AOptix—alone and through partners or distributors—regularly does business or solicits business in this District." Opp. at 8. **FALSE**. Neither AOptix nor its partners/distributers[1] have done business or solicited business in this District. No evidence exists otherwise. Rainwater Decl. ¶¶ 3-11, 15-16; Supplemental Declaration of Thomas Rainwater in Support of Motion to Dismiss ("Rainwater Supplemental Decl."), ¶¶ 2-3; Kohm Decl., Ex. A at 1-2 (Plaintiff's Interrogatories), Ex. B. (Resp. Nos. 1, 2, 5-7, 9).

- Blue Spike asserts that "AOptix—alone and through partners or distributors—engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas." Opp. at 8. **FALSE**. Aside from the $200 Blue Spike paid to Apple for its download of the Stratus App, AOptix and its partners/distributers have never generated a single cent of revenue from Texas, much less this District. Rainwater Decl. 3-11, 15-16; Rainwater Supplemental Decl., ¶¶ 2-3; Decl. Kohm Decl., Ex. A at 1-2 (Plaintiff's Interrogatories), Ex. B. (Resp. Nos. 1, 2, 5-7, 9).

- Blue Spike criticizes AOptix's belief that Blue Spike was the party that downloaded the Status App in this District as "speculat[ion]." Opp. at 10. **MISLEADING**. The App was downloaded the same day that Blue Spike filed its Supplemental Complaint, and Blue Spike knew about the download that same day. *See* Supplemental Complaint, ¶ 5. No plausible explanation exists other than it was Blue Spike that downloaded the app. Notably, Blue Spike does not deny it, but instead attempts to pull the wool over the Court's eyes by suggesting that AOptix's belief is unfounded speculation.

---

[1] AOptix's knowledge of its partners/distributors' activities, and accordingly its statements regarding those activities, are limited to AOptix's products or services.

1

Blue Spike suggests that it may demonstrate jurisdiction by merely asserting these conclusory, false and misleading statements, which in its view establishes a prima facie showing of jurisdiction that the truth cannot rebut. Opp. at 7-8. But, despite having taken jurisdictional discovery, it offers no evidence of these statements. In fact AOptix disproves them, and thus they are not a proper basis for finding jurisdiction over AOptix. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (***only "uncontroverted allegations in the complaint must be taken as true***") (emphasis added).

## II.     BLUE SPIKE CONCEDES THAT ITS "AMENDED" COMPLAINT IS SUPPLEMENTAL AND THEREFORE IT SHOULD BE STRICKEN

Blue Spike concedes that its "Amended" Complaint contains "new allegations . . . [which] admittedly, relate to events that postdate the filing of the original complaint." (Opp. at 5). Blue Spike also agrees that its "Amended" Complaint is a supplemental complaint. *Id.* at 6 ("Blue Spike probably should have titled its pleading an 'amended and supplemental complaint'"). Nevertheless, Blue Spike makes the remarkable assertion that the Court should ignore the requirements of Rule 15(d) because it "applies only to purely supplemental complaints." *Id* (citing only the rule and no other authority). Rule 15(d) says no such thing: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out ***any transaction, occurrence, or event*** that happened ***after*** the date of the pleading to be supplemented."[2] Fed. R. Civ. P. 15(d) (emphasis added); *see also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1384 (Fed. Cir. 2010) (trial court correctly "treated the Amended Complaint as a supplemental, rather than amended, pleading" because it alleged "events that post-date the original pleading"). The Court should accordingly strike Blue Spike's Supplemental Complaint. *See White v. Sloan*, C.A. No. 9:06cv141, 2006 U.S. Dist. LEXIS

---

[2] Blue Spike's reliance on Judge Schneider's Model Scheduling and Discovery Order is misplaced because it governs only amended and not supplemental pleadings. (Opp. at 6, Ex. 1).

76902, at *10-11 (E.D. Tex. Oct. 6, 2006) ("[a] party must have permission from the Court to file supplemental pleadings about occurrences or events that occurred since the date of the pleading sought to be supplemented.").

### III. THE COURT SHOULD CONSIDER ONLY JURISDICTIONAL ALLEGATIONS PRE-DATING THE ORIGINAL COMPLAINT OR ELSE TRANSFER THE ACTION UNDER THE "FIRST-TO-FILE" RULE

Blue Spike's Supplemental Complaint violates unambiguous precedent that facts supporting personal jurisdiction "must be pleaded, and proved when challenged, and [] *later events may not create jurisdiction where none existed at the time of filing*." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991); *see also Innovative Therapies*, 599 F.3d at 1384 ("unless there was jurisdiction at the filing of the original complaint, jurisdiction could not be carried back to the date of the original pleading."). Blue Spike ignores this controlling authority in its opposition, and the cases it cites to support its post-filing jurisdictional allegations are distinguishable.[3] Moreover, the only argument Blue Spike raises to counter AOptix's first-to-

---

[3] Blue Spike cites *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) for the proposition that it can allege facts from well after commencement of its suit to support jurisdiction. Opp. at 8 n.4. However, *Beverly Hills Fan* made clear that the post-filing evidence was relevant because it supported jurisdiction *at the time of the filing of the complaint*. 21 F.3d at 1563 ("The information in the second Shaneyfelt Declaration was obtained about 3 months after the complaint was filed. In conjunction with the first Shaneyfelt Declaration, it indicates that, *contemporaneously with the filing of the complaint*, defendants were engaged in continuous shipment of substantial numbers of the accused fan into Virginia." (emphasis added)). That is not the situation here, and Blue Spike is not raising an analogous stream of commerce theory where the court must identify when accused products entered the forum state. Furthermore, unlike *Beverly Hills* and the remaining cases Blue Spike cites in footnote 4, none of Blue Spike's post-filing jurisdictional allegations relate to products that were accused in the original complaint or even available in the market at the time the original complaint was filed. Thus, these post- filing allegations cannot establish that personal jurisdiction existed at the time the original suit was filed. *See Spectronics*, 940 F.2d at 635. Moreover, those cases did not consider "first-to-file" situations where priority is granted to the first party who filed a jurisdictionally-valid complaint. In *Innovative Therapies*, the Federal Circuit recognized the unfairness of allowing a party to amend its complaint with post-filing allegations to maintain priority over a subsequent properly-filed action. 599 F.3d at 1384. There, the court reiterated its

3

file position is that the Supplemental Complaint "relate[s] back" under Fed. R. Civ. P. 15(c). (Opp. at 7). Not so. The Federal Circuit holds that "*Federal Rule of Civil Procedure 15(c)* does not treat events that post-date the original pleading as if they had occurred at an earlier time." *Innovative Therapies*, 599 F.3d at 1384. Accordingly, for the purposes of this motion to dismiss, the Court may only consider jurisdictional facts that occurred before the original complaint was filed on January 8, 2013—AOptix's single attendance at the 2010 trade show in Dallas. Even if the Court were to consider the post-filing allegations, the case should be dismissed or transferred to the Northern District of California under the "first-to-file" rule.

### IV.   AOPTIX'S SINGLE VISIT TO TEXAS, THE 2010 ASIS INTERNATIONAL TRADE SHOW, DOES NOT ESTABLISH PERSONAL JURISDICTION

The only pre-filing act that Blue Spike identifies in support of personal jurisdiction is AOptix's single attendance at the 2010 ASIS International Trade Show in Dallas where an accused product was promoted and demonstrated. (Opp. at 8-9). However, Blue Spike fails to cite ***a single case*** where a court found personal jurisdiction from the ***single demonstration*** or use of a product at a trade show or other event. (*See id*). All Blue Spike could muster in response was to note that in *Med. Solutions, Inc. v. C Change Surgical, L.L.C.*, 541 F.3d 1136 (Fed. Cir. 2008), the Federal Circuit declined to hold that there could never be a case wherein a demonstration of a product at a trade show could be sufficient to establish infringing use. Opp. at 9. The *Medical Solutions* court, however, "recognize[d] [that] other courts have held that demonstrations of a device are not proper evidence of 'use' because using a device means using it to perform its actual function or service, not using it as a demonstrative display." 541 F.3d at 1141 n.4. Indeed, Blue Spike ignores the overwhelming case authority, including those cited in AOptix's opening brief, ***that actual use and demonstration at a single trade show or other event does not establish***

---

"rule that unless there was jurisdiction at the filing of the original complaint, jurisdiction could not be carried back to the date of the original pleading." *Id.*

4

*specific jurisdiction*.[4]  Courts consistently reject personal jurisdiction where only single instances of marketing or sales of an accused product in a forum are identified.[5]

## V. THE COURT SHOULD DISREGARD BLUE SPIKE'S REMAINING JURISDICTIONAL ARGUMENTS

Consideration of Blue Spike's post-filing activities serves no purpose because these occurred after AOptix filed its declaratory complaint in the Northern District of California—which would become the first-filed action if AOptix's one pre-filing trade show contact is found insufficient to establish personal jurisdiction.  That said, Blue Spike fails to explain how alleged post-filing activities *by AOptix* "'give rise' to a cause of action under 35 U.S.C. § 271(a)" as required to establish personal jurisdiction in a patent case.[6]  *HollyAnne Corp.*, 199 F.3d at 1310; *see also* AOptix's Opening Brief (Dkt. No. 968, at 12-14).[7]

---

[4] *See, e.g., HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1305 (Fed. Cir. 1999) (affirming dismissal for lack of personal jurisdiction even though defendant made a presentation of the allegedly infringing product in the forum); *Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974, 982-83 (N.D. Iowa 2013) (demonstration of accused animal feeder at trade show in Des Moines combined with sales of a single accused animal feeder to a customer in Iowa was insufficient to satisfy the first two prongs of specific jurisdiction); *Compliance Software Solutions, Corp. v. Moda Tech. Partners, Inc.*, No. 07-cv-6752, 2008 U.S. Dist. LEXIS 60602, at *7-8 (N.D. Ill. July 31, 2008) (demonstration of allegedly infringing software at trade show in Illinois was insufficient to constitute "use" for the purposes of establishing specific jurisdiction).

[5] *See, e.g. InfoNow Corp. v. Zyme Solutions, Inc.*, No. 12-cv-03255, 2013 U.S. Dist. LEXIS 113324, at *14-15, 21 (D. Colo. Aug. 6, 2013) (single visit to potential customer in forum for the purposes of selling accused product was insufficient to support specific jurisdiction).

[6] For example, Blue Spike fails to explain how an announcement regarding attendance at a future trade show is infringing now. (Opp. at 9-10)  Nor does Blue Spike explain how download of the Stratus App is infringing.  (Opp. at 11).  The Stratus App simply uses integrated iPhone features enabling the capture of an image or voice, and thus cannot create nor otherwise involves abstracts as required by all claims of the patents-in-suit. *See Med. Solutions,* 541 F.3d at 1141 (finding no personal jurisdiction where plaintiff failed to show how alleged forum activity "practic[ed] all of the elements of any one claim").

[7] Blue Spike's final argument that "it would be improper to dismiss the case before allowing jurisdictional discovery" is just plain bizarre.  (Opp. at 12).  Blue Spike has taken jurisdictional discovery and, as required by the Court, filed its Opposition "after the jurisdictional discovery [was] taken."  Dkt. No. 711.

5

Dated: October 18, 2013					FENWICK & WEST LLP


By: _/s/ Bryan A. Kohm_
  Bryan A. Kohm
  bkohm@fenwick.com

Teresa M. Corbin, CA Bar No. 132360
(Admitted E.D. Texas)
Bryan A. Kohm, CA Bar No.233276
(Admitted E.D. Texas)
David Lacy Kusters, CA Bar No.241335
(Admitted E.D. Texas)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:	(415) 874-2300
Facsimile:	(415) 281-1350

Darren E. Donnelly, CA Bar No. 194335
(Admitted E.D. Texas)
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California  94041
Telephone:	(650) 955-8500
Facsimile:	(650) 983-5200

Attorneys for Defendant
AOptix Technologies, Inc.

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 18, 2013.

/s/ Bryan A. Kohm
Bryan A. Kohm