# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S SUR-REPLY IN
OPPOSITION TO SCOTT MOSKOWITZ'S MOTION TO DISMISS
<u>AUDIBLE MAGIC CORPORATION'S COUNTERCLAIMS</u>**

In its Reply, Moskowitz does not dispute the sufficiency of Audible Magic's unjust enrichment claims. Instead, Moskowitz claims that unjust enrichment is never an independent cause of action. This is simply not true. Furthermore, Moskowitz makes no attempt to show that Audible Magic failed to sufficiently *plead* a Lanham Act claim. And even if it had, cases have recognized Lanham Act claims based on the same types of misleading statements at issue here. Accordingly, Moskowitz's motion to dismiss is legally insufficient and must be denied.

## I.   THE TEXAS SUPREME COURT AGREES UNJUST ENRICHMENT IS A CAUSE OF ACTION

Audible Magic's unjust enrichment claim is a classic example of a situation where one party unfairly benefits at the expense of another. Muscle Fish (Audible Magic's predecessor) began to develop systems for analyzing content and signals in 1992. D.I. 885 at ¶18. Muscle Fish engineers spent years developing, marketing, and patenting these systems. *Id.* at ¶¶18-19. By contrast, in the mid-90s, Moskowitz tried to establish his digital watermarking business, but had technical difficulties and no workable software. *Id.* at ¶¶21-23. In 1997, Moskowitz contacted Muscle Fish, in California, inquiring about Muscle Fish's technology. *Id.* at ¶¶24, 26. Through those and subsequent interactions with Muscle Fish, Moskowitz learned about Muscle Fish's technology and products. *Id.* Moskowitz and Blue Spike then used the ideas learned from Muscle Fish for their own benefit. Indeed, they filed patents purporting to cover content recognition and now accuse the same Muscle Fish technology that predated the patents by years. *Id.* at ¶¶27-28, 33. Moskowitz' and Blue Spike's unauthorized use of Muscle Fish's and Audible Magic's proprietary technology and ideas has caused irreparable harm to Audible Magic. *Id*

Audible Magic's unjust enrichment claim therefore seeks restitution for Moskowitz' and Blue Spike's unauthorized use of Audible Magic ideas and technology. D.I. 885 at p. 34. Unjust enrichment, as a separate cause of action, was intended to cover this exact type of situation. *See, e.g.*, *Drawhorn v. Qwest Communs. Int'l*, 121 F. Supp. 2d 554, 562-563 (E.D. Tex. 2000)

1

("Under Texas law, a cause of action for unjust enrichment requires the plaintiffs to allege and prove that the defendants have obtained a benefit from another by fraud, duress, or taking an undue advantage"); *see also Sullivan v. Leor Energy LLC*, 600 F.3d 542, 550 (5th Cir. Tex. 2010) (A plaintiff may recover under an unjust enrichment theory "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage").

Moskowitz cites a handful of lower courts that found, in various circumstances, unjust enrichment was not a separate cause of action. D.I. 1052 at 1-2. But rather than an absolute rule, Moskowitz's cases illustrate a split in authority in Texas *lower* courts. *See, e.g.*, *Newington Ltd. v. Forrester*, 2008 U.S. Dist. LEXIS 92601, 9-12 (N.D. Tex. Nov. 13, 2008). In *Newington*, the Court rejected the argument that unjust enrichment is not a recognized cause of action under Texas law. The Court noted that there was a split in authority, but concluded that:

> [g]iven that the Supreme Court has stated that unjust enrichment is a cause of action, and that Texas courts seem willing to award recovery based on unjust enrichment, even if it is nothing more than a theory, the court concludes that Newington's claim for unjust enrichment should proceed. Forrester's motion to dismiss the unjust enrichment claims pursuant to Rule 12(b)(6) is denied.

*Id.* Regardless whether there are mixed or vague opinions in Texas lower courts, it is undisputed that **the Texas Supreme Court recognizes unjust enrichment as an independent cause of action**, and Moskowitz's motion should therefore be denied. *Id.*[1]

## II. AUDIBLE MAGIC PROPERLY PLED A VIOLATION OF THE LANHAM ACT, WHICH MOSKOWITZ DOES NOT CONTEST

Moskowitz does not argue that Audible Magic failed to properly plead its Lanham Act

---

[1] *See also Team Healthcare/Diagnostic v. Blue Cross & Blue Shield of Tex.*, 2012 U.S. Dist. LEXIS 63760, at *20-21 (N.D. Tex. May 7, 2012) ("Defendant finally argues that Plaintiff's unjust enrichment claim should be dismissed because unjust enrichment is not an independent cause of action. While Defendant is correct that some Texas appellate courts do not recognize unjust enrichment as an independent cause of action, the Texas Supreme Court and the Fifth Circuit have recognized unjust enrichment claims"); *Fisher v. Blue Cross Blue Shield of Tex.*, 2011 U.S. Dist. LEXIS 86172, at *25-26 (N.D. Tex. June 27, 2011) ("Defendant avers Plaintiffs' unjust enrichment claim should be dismissed because unjust enrichment is not an independent cause of action. However, the Texas Supreme Court, the Court of Appeals for the Fifth Circuit, and federal courts sitting in Texas have specifically recognized claims for unjust enrichment").

2

claim, but instead attempts various legal arguments based on interpretations of the pleaded facts.

Apparently now able to find the website cited by Audible Magic, Moskowitz argues that the website states only that another defendant ("Shazam") was not the "first to create" and utilize content fingerprinting technology, but not that Blue Spike *was* the first to do so. D.I. 1052. That argument is incredibly disingenuous. There is nothing ambiguous about the website. Its entire purpose is to state, falsely and misleadingly, that Blue Spike was the first to create and utilize content fingerprinting in its Giovanni product. Indeed, Blue Spike makes the website statement in the context of describing its suit against Shazam and others on patents related to content fingerprinting technology that Blue Spike claims on the site is used by the Giovanni product.[2] The website refers to the content fingerprinting technology "powering [Moskowitz's] Blue Spike products since the turn of the century," refers to the content fingerprinting technology as "its invention," and proclaims to a competitor that it will "box itself into a coffin of borrowed technology." D.I. 1022, at Ex. C. These statements all evidence Blue Spike's intent to proclaim itself the exclusive and first creator and provider of content fingerprinting technology with its Blue Spike Giovanni® Abstraction Machine™. That is entirely false and misleading.

Moskowitz again vaguely argues that its "first to create" statement is not directed to Blue Spike products and therefore is not actionable under *Baden Sports*. D.I. 1052, at 3 (citing *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009)).[3] *Baden Sports*, however, involved attribution of authorship of an *idea*. Audible Magic is not claiming that Blue

---

[2] If Moskowitz's argument is true, then its patents are necessarily invalid because it was not the "first to create" the content recognition technology covered by those patents.

[3] Moskowitz alleges that Audible Magic "wholly ignores" Moskowitz's arguments on this issue. However, each page of Audible Magic's Response Brief alleges that the false statements were directed to the Giovanni products. *See, e.g.*, D.I. 1022, at 5-10; at 5 ("Blue Spike made false and misleading statements regarding the Giovanni® Abstraction Machine™ on the www.bluespike.com website"); at 6 (heading C(2)(A) "The Blue Spike Webpage Exists and Contains the False Statements About the Giovanni Abstraction Machine"), and 7 ("these statements are directly related to the Giovanni product").

Spike improperly attributed authorship of an abstract idea.  To the contrary, Blue Spike made statements (1) that its Giovanni *product* and *technology* were "first," and (2) that its competitors, including Audible Magic, are improperly using "borrowed technology" from Blue Spike.  These false statements directly concern "the nature, characteristics, qualities, or geographic origin of [Blue Spike's] or [Audible Magic's] or another person's goods, services, or commercial activities."  15 U.S.C. §1125(a)(1)(B); *United Services Auto. Assoc. v. Mitek Sys.*, 2013 U.S. Dist. LEXIS 33466, at *12 (W.D. Tex. Feb. 15, 2013).  Such statements do not concern who was the first to create an abstract idea, but rather connote to the public who was the first to use the technology in a product.  *See Zobmondo Ent. LLC v. Imagination Int'l Corp.*, 2009 U.S. Dist. LEXIS 132334, at *15 (C.D. Cal. June 23, 2009) (distinguishing *Baden Sports* and denying motion to dismiss Lanham Act claim based on company's use of "original" in title of board game).  Audible Magic pled that Blue Spike's false statements were directed to the Giovanni products as well as competitor products.  Nothing more is required at the pleading stage.

Moskowitz also realleges that certain words are inherently vague, so the phrase "first to create" is not actionable.  D.I. 1052 at 3.  Moskowitz incorrectly tells the Court that Audible Magic attempted only to distinguish "[Blue Spike's cited cases] on their facts…" *Id.* at 3.  To the contrary, Audible Magic distinguished the cited cases because they are legally irrelevant:

> No court evaluating a claim under the Lanham Act has held that the terms "create," "content," or "technology" are by themselves vague.  Blue Spike's reliance on a case from the Bankruptcy Court in the Southern District of New York is irrelevant.  *See* D.I. 994 (citing *In re Modansky*, 159 B.R. 139, 142 (Bankr. S.D.N.Y. 1993)).  Blue Spike ignores that the Fifth Circuit has specified a framework to determine language that is non-actionable.

D.I. 1022 at 8.  Moskowitz cannot ignore contrary case law and misrepresent arguments by Audible Magic in an attempt to support its motion.

Moskowitz incorrectly argues that literal falsity has no bearing on materiality. D.I. 1052 at 5.  A literally false statement, however, is material without proof of public

4

reaction or consumer reliance. *Pizza Hut*, 227 F.3d at 497; *see also* D.I. 1022 at 9. A claim may also be deemed literally false, and material, for Lanham Act purposes if it is "false by necessary implication." *Eastman Chem. Co. v. Plastipure, Inc. & Certichem*, 2013 U.S. Dist. LEXIS 124340, *10-11 (W.D. Tex. August 30, 2013) (citing *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1367 (Fed. Cir. 2013)). Under this criterion, "if the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required." *Hall*, 705 F.3d at 1367. Thus, even if Blue Spike's false statements are found to only imply that Blue Spike was the "first to create" content recognition technology with its Giovanni products, such statements are still actionable under the Lanham Act.[4] The only reasonable implication of Blue Spike's statements is to persuade consumers not to buy competitors' products. That is all Audible Magic was required to plead.

Moskowitz then tries to absolve itself of liability. Moskowitz owns and registered the Blue Spike website. Even if, as Moskowitz claims, he did not personally participate in the publishing of the article, he must have given permission to whomever did publish it. The website belongs to Moskowitz, and therefore, he is personally responsible for any and all content – especially for content related to personal declarations by Moskowitz. *See, e.g., Controls Int'l v. Kinetrol Ltd.*, 1998 U.S. Dist. LEXIS 1842, *6 (N.D. Tex. 1998) ("[c]orporate employees can be held individually liable under the Lanham Act for actions taken within the scope of their employment"). Moskowitz makes no credible argument for dismissing the claim against him.

---

[4] *See, e.g., Healthpoint, Ltd. v. River's Edge Pharms., L.L.C.*, 2005 U.S. Dist. LEXIS 3646, 25-26 (W.D. Tex. Feb. 14, 2005) (finding complaint properly pled Lanham Act claim based upon "first to market" statement that misrepresented nature of products)*; United Services Auto*, 2013 U.S. Dist. LEXIS 33466, at *12 (finding that falsely suggesting or implying that a product is a knock-off through a press release and patent infringement lawsuit were actionable under the Lanham Act).

5

Dated: October 25, 2013

By:                               */s/ Eric H. Findlay*

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

I. Neel Chatterjee – *LEAD ATTORNEY*
Gabriel M. Ramsey
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on October 25, 2013.

*/s/ Eric H. Findlay*
Eric H. Findlay
