## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff,*<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendant.*<br>_____ | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-cv-499<br>(Lead Case)<br><br>JURY TRIAL DEMANDED |
| BLUE SPIKE, LLC<br>　　*Plaintiff,*<br><br>v.<br><br>ACCU-TIME SYSTEMS, INC.<br>　　*Defendant.*<br>_____ | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:13-cv-037<br>(Consolidated with 6:12-CV-499)<br><br>JURY TRIAL DEMANDED |

**DEFENDANT ACCU-TIME SYSTEMS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO ACCU-TIME'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**I.     INTRODUCTION**

Defendant Accu-Time Systems, Inc. ("ATS") hereby responds to Blue Spike, LLC's ("Blue Spike") Opposition ("Second Opposition") [*Dkt. No. 1056*] to Accu-Time's Second Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) [*Dkt. No.* 1009]. Blue Spike's Second Opposition and Amended Complaint are replete with unsupported legal conclusions and ATS continues to be without sufficient notice of the claims it must defend. Blue Spike's alleged "additional evidence" submitted with its Second Opposition supports ATS's position and demonstrates that Blue Spike's claims are not supported.

Blue Spike's contributory infringement and willful infringement claims ignore this Court's recent Order granting dismissal of Blue Spike's contributory and willful infringement claims against a consolidated Defendant, ImageWare Systems, Inc. [September 27, 2013 Order, *Dkt. No. 1006 in Case No. 6:13-cv-00499*].

Blue Spike's pleadings continue its strategy of using the expense of discovery and trial preparation to extort a settlement from ATS. This strategy was decried by the Supreme Court in *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007), and *Twombly* is at complete odds with in Blue Spike's Second Opposition statement that:

> "[I]t is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement." *Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*, No. CIV.A 209CV148TJW, 2010 WL 1409245, at *4 (E.D. Tex. Apr. 1, 2010). "Until then, a statement that a defendant makes an embodying device would provide that defendant with sufficient notice as to what it will be required to defend." Id. Applying this standard, Blue Spike has adequately pleaded both induced infringement and contributory infringement.

Second Opposition at p. 8. For the reasons set forth herein, Blue Spike's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. ARGUMENT

### A. *Blue Spike's Amended Complaint Fails to Inform ATS as to What it Must Defend*

The combination of Blue Spike's Amended Complaint and its Second Opposition still does not inform ATS as to what it must defend. Blue Spike itself appears to be confused as to the identity of the Accused Products. For example, Blue Spike's Amended Complaint limits the Accused Products to "biometric solutions-comprising a Universal or Global series terminal with a fingerprint reader…" Amended Complaint at p. 10, ¶ 27. However, Blue Spike's Second Opposition Exhibit 4 relates to the AccuTouchUSB, which does not have a Universal or Global series terminal and is not listed as an Accused Product in the Amended Complaint. Blue Spike's Amended Complaint now identifies seven Accused Products, none of which include the AccuTouchUSB. Id. Blue Spike's Exhibits relating to products outside its own alleged "definition" of Accused Products improperly seeks to introduce evidence outside of the scope of the Amended Complaint.

The Amended Complaint also does not identify which of the patents-in-suit is being asserted against each allegedly infringing product. The four patents-in-suit include 114 claims, which the Amended Complaint vaguely describes as being infringed by an equally vague product grouping, loosely termed as "Accused Products." Amended Complaint at p. 10, ¶ 27. Blue Spike's Second Opposition mistakenly relies on in *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F.Supp2d 349, 353 (D. Del. 2010) for the argument "that a complaint need not even 'identify specific products' to avoid dismissal; simply identifying 'a general category of products' suffices." Second Opposition at pp. 2-3. Blue Spike's Amended Complaint does not come within

even this liberal holding because it accuses a multiple of "Accused Products" in multiple "general categories" without identifying whether any of the four patents-in-suit or 114 asserted claims applies to any category. Blue Spike's Accused Products are in multiple "general categories" which, as shown in Blue Spike's Exhibit 3, originate from multiple third party vendors that supply product to ATS. Second Opposition at Exhibit 3, p. 16.[1] The Amended Complaint requires ATS to guess which one or more of the "Accused Products" is alleged to infringe which of the four patents-in-suit or which of the 114 claims.

Blue Spike's definition for "Accused Products" appears to change with each filing. For example, Blue Spike's Amended Complaint states:

> Defendant makes, uses, offers for sale and/or imports into the U.S. products, systems and/or services including, but not limited to, its biometric solutions—comprising a Universal or Global series terminal with fingerprint reader **such as** FLEXpoint, PEOPLEpoint, SMARTpoint, OPTIMUS2, AccuTouch, Maximus, and Prodigy time and attendance terminals ("Accused Products"). (Emphasis Added.)

Amended Complaint at p. 10, ¶ 27. However, in the Second Opposition, Blue Spike attempts to redefine the "Accused Products" as follows:

> Second, the complaint names the accused products and **only those product options equipped** "with [a] fingerprint reader." (Emphasis Added.)

Second Opposition at p. 7. Blue Spike's confusion as to the definition and scope the Accused Products is shared by ATS.

In the case where the plaintiff is asserting a single patent against a single product, additional detail may not be necessary. However, when there are multiple patents with more than one hundred (100) claims asserted against multiple accused products, merely asserting that "one

---

[1] Each of the biometric suppliers, Lumidigm, Inc. (Case No. 6:12-cv-681), 3M Cogent (Case No. 6:12-cv-686), Suprema, Inc., et al. (Case No. 6:13-cv-57), Morphotrak, Inc., et al. (Case No, 6:13-cv-89), and Ingersoll-Rand Co. (Case No. 6:13-cv-108), is currently a defendant in companion litigations.

2725634-2

- 3 -

or more of the Accused Products" is alleged to infringe the patents-in-suit does not give the defendant adequate notice of what it must defend. *See Synchronoss Techs. Inc. v. Dashwire, Inc., 2011 U.S. Dist. LEXIS 157282 (W.D. Wis. Apr. 8, 2011)* (dismissing complaint for failing to identify asserted claims and accused products). This later circumstance clearly fails to meet the standards established by *Iqbal*. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).

### B. The Court Should Dismiss Blue Spike's Contributory Infringement Claim

Blue Spike concedes that "the complaint itself does not contain ***extensive*** analysis of why the accused products have no substantial non-infringing uses." Emphasis added. Amended Complaint at p. 7. More accurately, the Amended Complaint does not contain ***any*** analysis of why the Accused Products have no substantial non-infringing uses or facts that would support any such analysis.

Blue Spike's contributory infringement claims rely on its self-laudatory conclusion that "the patents-in-suit are foundational to **all** of today's widespread biometric-identification applications." *See* Second Opposition at p. 7 (erroneously citing to the Amended Complaint at ¶25, emphasis added). Blue Spike's statement is not only factually WRONG, it is an insufficient basis for pleading contributory infringement. That Blue Spike's statement is WRONG is evident from the very patents-in-suit which list hundreds of prior art patents and publications dating back to 1976. In addition, the attached Exhibit 1 is a history of biometric identification technologies available well before the earliest priority date of the patents-in-suit. At best, the patents-in-suit, to the extent they even apply to biometrics, are directed to a minor improvement in a mature art. To survive a motion to dismiss, Blue Spike had to plead "***facts*** plausibly showing that the [defendants] specifically intended their customers to infringe the [patent] and knew that the customers' acts constituted infringement." *In re Bill of Lading Transmission and Processing*

*System Patent Litigation*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). (Emphasis added). Blue Spike has not done this.

Contributory infringement also requires that the Accused Products have "no substantial non-infringing uses." *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005). Blue Spike's Second Opposition unsuccessfully attempts to introduce support for its contributory infringement claims. *See* Second Opposition, Exhibits 5-10. Had Blue Spike performed even a cursory examination of each of the documents it cited, it would have identified substantial non-infringing uses. For example, the pictured apparatus in Exhibit 6 is an example of a non-infringing use for the Optimus2 terminal. The text in Exhibit 6 states "these terminals *can* be equipped with fingerprint biometric readers." (Emphasis added.) The Maximus, Optimus2, Prodigy, Flexpoin, Smartpoint and Peoplepoint devices shown in Exhibits 5-10 **all** come equipped with card readers, which are all substantial non-infringing uses. *See* Second Opposition at Exhibits 5-10. Blue Spike not only failed to provide sufficient facts that that the Accused Products have no substantial non-infringing uses, its own Exhibits provide the contrary evidence of substantial non-infringing use.

Blue Spike alleges that "Accu-Time ignores the exhibit describing the accused AccuTouch," and that this "silence speaks volumes." ATS has repeatedly pointed out to Blue Spike that Exhibit 4 to Blue Spike's Second Opposition relates to the AccuTouchUSB, which is a separate product line and not identified as Accused Product.[2] Blue Spike's Amended Complaint still does not include AccuTouchUSB as an Accused Product.

---

[2] Blue Spike's original Complaint cited 4 "Accused Products," and the AccuTouchUSB was not among them. Complaint at p. 9. When Blue Spike identified the AccuTouch USB as an "Accused Product" in its Opposition to ATS's original Motion to Dismiss, ATS notified Blue Spike that the AccuTouchUSB is not an "Accused Product." ATS' Reply to Plaintiff's Opposition to Motion to Dismiss [DKT. 686] at p. 9.

Because the Amended Complaint insufficiently pleads contributory infringement, this claim should be dismissed.

### C. The Court Should Dismiss Blue Spike's Inducement Claim

Blue Spike's induced infringement allegation lacks any factual basis. Inducement of infringement requires four distinct elements:

(1) There was direct infringement by the induced party;

(2) the inducer had knowledge of the asserted patents;

(3) the inducer 'possessed specific intent and [not] merely . . . knowledge of the acts alleged' to induce;

(4) there was active inducement of the direct infringer.

*Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-702-XR, 2011 U.S. Dist. LEXIS 86207, at *14 (W.D. Tex. Aug. 4, 2011); see also *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003). The Second Opposition again relies on the already discredited argument that "the patents-in-suit are foundational to **all** of today's widespread biometric-identification applications," to support the inducement claim. The statement should be rejected for the same reasons articulated above.

In further support of its induced infringement claim, Blue Spike's states the following:

> The Patents-in-Suit are prominent, pioneering patents in the field of monitoring and analyzing signals. This is evidenced, in part, by the extent to which each of these patents has been forward-cited as prior art in connection with the examination of subsequently-issued U.S. patents. The Patents-in-Suit have been forward-cited in at least 10 U.S.-issued patents and patent applications, including patents originally assigned to such prominent companies as Microsoft, Agilent, Nvidia, and Avaya."

Amended Complaint ¶¶37(a), 45(a), 53(a), 61(a)

Blue Spike's proposal to replace the knowledge requirement for a claim of inducement with its own newly devised standard that Accu-Time "likely knew of the patents pre-suit due to the patents' prominence is wide of the mark. Blue Spike attempts to support it newly devised standard by citing to *Novelpoint Sec. LLC v. Samsung Elecs. Am., Inc.*, No. 2:12-cv-100, Dkt. 126, at 3 (E.D. Tex. July 22, 2013) (wherein one patent was forward cited in 64 subsequently-issued U.S. Patents and a second patent was forward cited in at least 186 subsequently issued patents). The fact in the Novelpoint case were unique and of no relevance to the current Patents-in-Suit. As of October 25, 2013, all four of the Patents-in-Suit have been forwarded cited in a total of twelve (12) subsequently-issued U.S. patents in the aggregate and four (4) patent applications. More particularly, the '472 Patent has been forward cited in six (6) subsequently-issued U.S. patents and one (1) patent application. The '700 Patent has been forward cited in three (3) subsequently-issued U.S. patents and one patent application. The '494 Patent has been forward cited in one (1) subsequently-issued U.S. patent and zero (0) patent applications. Finally the '175 Patent has been forward cited in three (3) subsequently-issued U.S. patents and one (1) patent application. Blue spike's reliance on the alleged "prominence" of its Patents-in-Suit due to a handful of forward citations fails to support its claim that ATS had knowledge of the asserted patents, as required for a claim of inducement.

The Second Opposition again relies on Magistrate Judge Love's Report and Recommendation in *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229 (E.D. Tex. July 27, 2012) as legal support for Blue Spike's inducement claim. And Blue Spike again fails to note that the Recommendation in *Patent Harbor* was objected to and the case was dismissed without the Report and Recommendation ever being ruled upon or accepted.

The only "facts" in the Amended Complaint relevant to inducement are: 1) knowledge of the patent-in-suit as early as the service of the Complaint; and 2) selling one or more of the accused products to "end users." The rest of the alleged "facts" are legal conclusions that cannot serve as a factual basis from which to draw any inference that ATS had the specific intent under § 271(b) to encourage the end users to infringe the patent-in-suit. *Iqbal* at 1949-50 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal citations and quotations omitted). Further, Blue Spike ignores multiple substantial non-infringing uses that are identified in the very evidence Blue Spike points to in its Second Opposition. *See* Second Opposition Exhibits 4, 5 and 6.

Blue Spike's Amended Complaint alleges no facts from which one may plausibly infer that ATS formed and possessed the specific intent to induce infringement of the patents-in-suit.

### D. Blue Spike Failed to Plead Willful Infringement with Specificity

Blue Spike's Opposition offers a 180° change from its previous concession that "Blue Spike concedes that it has no basis for alleging pre-filing willfulness at this point, although future discovery may change that." Opposition [Dkt. 651] at p. 9.

Blue Spike's apparent "future discovery" is that "that Accu-Time likely knew of Blue Spike's patents pre-suit due to the patents' prominence," because the Patents-in-Suit have "been forward-cited in at least 10 U.S.-issued patents and patent applications."[3] Opposition at p. 9 and Amended Complaint ¶¶37(a), 45(a), 53(a), 61(a). ATS debunked this alleged "prominence" above and Blue spike's allegations cannot save it on this issue.

---

[3] Blue Spike points to the Amended Complaint at ¶¶36(a), 44(a), 52(a), 60(a) as support. In fact, there is no¶¶36(a), 44(a), 52(a), 60(a). ATS assumed Blue Spike is referring to the Amended Complaint ¶¶37(a), 45(a), 53(a), 61(a).

Blue Spike's failed to address this Court's recent Order granting dismissal of Blue Spike's contributory and willful infringement claims against Defendant ImageWare Systems, Inc. [September 27, 2013 Order, *Dkt. No. 1006 in Case No. 6:13-cv-00499*]. In that Order, this Court dismissed Blue Spike's contributory infringement claims for insufficiently alleging "contributory infringement based on [defendant's] accused products that are incorporated in 'systems' and that 'have no substantial non-infringing purpose.'" *Id.* at 3. Similarly, this Court dismissed Blue Spike's willful infringement claims stating that "the filing of an infringement suit alone is insufficient to give rise to a post-filing willful infringement claim." *Id.* at 5.

As set forth herein, Blue Spike's contributory infringement and willful infringement claims filed against ATS includes nearly identical accusations and should be dismissed for the same reasons. Blue Spike's states, without any supporting authority, "that [the previously cited] order, however, was in reference to the original complaint and does not address the pleadings found in the operative complaint against Accu-time." Second Opposition at p. 9. ATS disagrees that there is a lower threshold in pleading willful infringement in the Amended Complaint, as Blue Spike apparently alleges. Even taking these merged pleadings in the light most favorable to Blue Spike, there is nothing to save Blue Spike's claim from dismissal.

The Amended Complaint fails to adequately plead willful infringement, and it should be dismissed.

### III. CONCLUSION

Blue Spike's Amended Complaint is woefully lacking in sufficient facts or specificity for its claims of direct infringement, contributory infringement, induced infringement and willful infringement. The Amended Complaint does not allow ATS to meaningfully address the claims

being made against it. Accordingly, the Amended Complaint it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

            Respectfully submitted,

By: :  s/Anthony S. Volpe
    Anthony S. Volpe (pro hac vice, PA  24,733)
    Ryan W. O'Donnell (pro hac vice. PA 89775)
    Aneesh A. Mehta (pro hac vice, PA  205878)
    VOLPE AND KOENIG, P.C.
    United Plaza, 30 S. 17th Street
    Philadelphia, PA 19103
    Phone: (215) 568-6400
    Fax: (215) 568-6499
    Avolpe@vklaw.com
    RODonnell@vklaw.com
    Amehta@vklaw.com

*Attorneys for Defendant,*
*Accu-Time Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Defendant Accu-Time Systems, Inc.'s Reply to Plaintiff's Opposition to Accu-Time's Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** is being on all counsel of record via the Court's CM/ECF system on this 28th day of October 2013.

                                                By:  s/Anthony S. Volpe
                                                Anthony S. Volpe (pro hac vice , PA 24,733)
                                                Ryan W. O'Donnell (pro hac vice , PA 89775)
                                                Aneesh A. Mehta (pro hac vice , PA 205878)
                                                VOLPE AND KOENIG, P.C.
                                                United Plaza, 30 S. 17th Street
                                                Philadelphia, PA 19103
                                                Phone: (215) 568-6400
                                                Fax: (215) 568-6499
                                                Avolpe@vklaw.com
                                                RODonnell@vklaw.com
                                                Amehta@vklaw.com