# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FUSIONBRANDS, INC.,

        Plaintiff,

v.

SUBURBAN BOWERY OF SUFFERN,
INC.,

        Defendant.

CIVIL ACTION NO.

1:12-cv-0229-JEC

## ORDER & OPINION

    This case is before the Court on defendant's Motion to Dismiss or Alternatively to Transfer Venue ("Def.'s Mot. to Dismiss") [17] and plaintiff's Motion for Oral Argument [19]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motion [17] should be **DENIED** and plaintiff's motion [19] should be **DENIED as moot**.

## BACKGROUND

    This case involves an intellectual property dispute. (Compl. [1].) Plaintiff manufactures and sells a silicone egg poacher under the trademarked name poachpod. (*Id.* at ¶ 1.) Plaintiff holds a design patent, a utility patent, and two trademarks covering the poachpod. (*Id.* at Exs. A, B, C & D.) In the complaint, plaintiff alleges that, through the websites Tigerchef.com and Amazon.com,

defendant has marketed products that infringe the poachpod patents and trademarks. (*Id.* at Ex. E.)

Defendant initially failed to respond to the complaint. (Mot. for Entry of Default [4].) Plaintiff thus moved for an entry of default, which the clerk entered on March 14, 2012. (Order [11] at 1.) On the same day, the Court received an *ex parte* letter from defendant's owner, Jacob Stefansky. (Def.'s Letter [7].) In the letter, Stefansky wrote that he was a small business owner who lacked the resources to defend the litigation. (*Id.*) Stefansky admitted in the letter to purchasing 1,000 poachpods for $0.99 each and selling them through the Tigerchef, Amazon and eBay websites. (*Id.*) According to Stefansky, he offered to remit all of his profits from the poachpod sales to plaintiff and to return any unsold inventory, but plaintiff refused his offer. (*Id.*)

In response to the above letter, plaintiff wrote its own letter requesting that the Court refuse to consider defendant's *ex parte* communication. (Pl.'s Letter [8].) In its letter, plaintiff refuted defendant's characterization of the facts, pointing to evidence of willful infringement by defendant. (*Id.*) In addition, plaintiff cited evidence that it had engaged in good faith negotiations with defendant, but that defendant had been inconsistent in its positions. (*Id.*)

After reviewing both letters, the Court issued an order vacating

2

the clerk's entry of default and directing defendant to obtain counsel and respond to plaintiff's complaint by August 12, 2012. (Order [11].) A few days before that deadline, defendant filed a motion to dismiss the case for improper venue under Federal Rule 12(b)(3) or to transfer the case to the Southern District of New York under 28 U.S.C. § 1404(a). (Def.'s Mot. to Dismiss [17].) That motion is now before the Court, along with plaintiff's related motion for oral argument. (Pl.'s Mot. for Oral Argument [19].)

## DISCUSSION

I. **DEFENDANT'S MOTION TO DISMISS**

A. **Legal Standard**

On a Rule 12(b)(3) motion to dismiss, the plaintiff bears the burden of showing that venue in its chosen forum is proper. *Pinson v. Rumsfeld*, 192 Fed. App'x 811, 817 (11th Cir. 2006). In deciding the motion, the Court must accept the facts alleged in the complaint as true to the extent they are uncontested. *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012). If the parties submit conflicting affidavits concerning the alleged facts, the Court must construe disputed facts in the light most favorable to plaintiff. *Id.* However, assuming that affidavits and other evidence is presented on the issue, the Court may look beyond the allegations of the complaint to determine whether venue is proper. *Id.*

3

**B.    Parties' Contentions and Findings of Fact**

Plaintiff contends that venue is proper under § 1391(b)(2). (Pl.'s Resp. [18] at 8-10.)  Section 1391(b)(2) provides that a civil action may be brought in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  Plaintiff alleges in the complaint that through its own "website and an Amazon.com storefront" defendant "actively solicits business from, and completes sales with, customers in the Northern District of Georgia."  (Compl. [1] at ¶ 11.)  In addition, plaintiff attaches exhibits to its complaint showing at least one purchase of the accused product that was delivered to an address in Atlanta, Georgia.  (*Id.* at Ex. F.)

However, plaintiff concedes that the Atlanta purchase that could be a purported basis for venue in this case was made by a legal assistant of plaintiff's counsel.  (Def.'s Mot. to Dismiss [17] at 4-5.)  Such attempts to manufacture venue are disfavored.  *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)(instructing the lower courts to closely guard against the danger of manufactured venue in D.C. via the joinder of a government official) and *Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999)(defendants did not purposefully avail themselves of the chosen forum where their sales in the forum were orchestrated by the plaintiff).  The Court is not inclined to find that venue is

4

proper based solely on an "event" in the district that was orchestrated by plaintiff or its counsel.

Nevertheless, plaintiff argues that venue under § 1391(b)(2) is proper because defendant failed to contest the allegation that infringing sales were made through an Amazon.com storefront to customers in this district. (Pl.'s Resp. [18] at 9-10.) As mentioned, the Court must, for the purpose of this motion, accept the facts alleged in the complaint as true "to the extent they are uncontroverted by defendants' affidavits." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). Defendant submitted an affidavit in support of its motion, which plaintiff did not rebut. (Stefansky Aff. [17].) To resolve the venue issue, the Court must therefore determine whether defendant's affidavit directly contradicts the allegation that the complaint concerning infringing sales in the district. If it does not, then the Court must accept the allegation as true.

In the affidavit, Stefansky admits to purchasing 1,000 of the accused products from the Pillar Stone Group ("PSG"), a third party located in New York. (*Id.* at ¶¶ 3 & 4.) He states that he only sold the product to two customers through his own website, Tigerchef.com. (*Id.* at ¶ 5.) The first customer was located in Merrimac, Massachusetts. (*Id.*) The second customer was the legal secretary of plaintiff's counsel in Atlanta. (*Id.* at ¶ 6.) The Stefansky

5

Affidavit does not address plaintiff's claim that infringing products were also sold through defendant's storefront at Amazon.com. In fact, the Affidavit is conspicuously devoid of any explanation as to where the infringing sales occurred that would account for the $6,874 in revenue defendant admittedly generated by selling the accused devices. (Def.'s Letter [7] at 1.)

As there is no evidence to contradict it, the Court accepts as true plaintiff's allegation that defendant made infringing sales in the district through a storefront at Amazon.com. (Compl. [1] at 5.) The allegation is supported by defendant's: (1) admission that it sold enough of infringing products to generate over $6,000 in revenue and (2) failure to explain where these sales occurred or present any evidence that the sales did not occur in this district.

C. **Venue Under §§ 1391(b)(2) and 1400**

Although the Court must accept plaintiff's allegation as true, it does not necessarily follow that venue in the this district is proper under § 1391(b)(2). As an initial matter, the Court rejects plaintiff's argument that by merely having an Amazon.com storefront, defendant can properly be sued under § 1391(b)(2) in this or any district in the United States. (Pl.'s Resp. [18] at 10.) That is an incorrect statement of the law. By its plain terms, the statute does not provide for venue based on the possibility that events *could* occur in a district that would give rise to the claims asserted where

6

there is no proof that the events actually occurred there. 28 U.S.C. § 1391(b)(2).

In addition, the Court must consider the effect of § 1400, the venue statute that is specifically applicable to copyright and patent cases. 28 U.S.C. § 1400. That statute provides for venue in a patent case either: (1) in the district "where the defendant resides" or (2) in the district "where the defendant has committed acts of infringement **and** has a regular and established place of business." 28 U.S.C. § 1400(b)(emphasis added). Both parties seem to be in agreement that if infringing acts occurred in this district, venue is proper under § 1391(b)(2). However, Congress clearly did not intend for that to be the result in cases involving patent infringement because § 1400(b) explicitly requires more than just a showing of infringing acts to establish venue. *Id*. Despite defendant's acquiescence, the Court will not interpret § 1391(b)(2) in a way that would render the extra requirement of a "regular and established place of business" in the patent specific venue statute superfluous. *In re Griffith*, 206 F.3d 1389, 1393 (11th Cir. 2000) ("courts should disfavor interpretations of statutes that render language superfluous").

As mentioned, however, § 1400(b) does provide for venue in the district where a defendant "resides." 28 U.S.C. § 1400(b). Section 1391(c) states that a corporation's residency for venue purposes is

in "any judicial district in which [the corporation] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). The Eleventh Circuit has held that this provision applies to § 1400.[1] *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). Pursuant to *VE Holding*, venue is thus proper under § 1400(b) if the Court has personal jurisdiction over defendant.[2]

**D. Personal Jurisdiction Inquiry For Venue Purposes**

The law of the Federal Circuit governs the issue of jurisdiction in patent infringement cases. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir. 1995); *see also Elec. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003)(holding that the district court erred when it applied regional circuit law on personal jurisdiction). Under the applicable Federal Circuit law, "[d]etermining whether

---

[1] In so holding, the *VE Holding* Court noted that its reading of § 1391(c) did not render the second test under § 1400 superfluous or meaningless. Acknowledging that a corporation satisfying the acts of infringement and regular place of business prong of § 1400 would necessarily also be subject to personal jurisdiction in that district, the Eleventh Circuit reasoned that § 1391(c) only applied to corporate defendants so the distinctions between the two tests still applied with respect to defendants who were not corporations. *VE Holding Corp.*, 917 F.2d at 1580 n.17.

[2] The defendants did not raise any personal jurisdiction objections in their motion, which sought only to dismiss the case for improper venue under Rule 12(b)(3). (Def's Mot. to Dismiss [17].) Therefore, they have waived the defense that the court lacks personal jurisdiction over them. FED. R. CIV. P. 12(h).

8

personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). Where there has been no evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction. *Elec. for Imaging, Inc.,* 340 F.3d at 1349.

      1.   <u>Georgia's Long-Arm Statute</u>

Georgia's long-arm statute provides for personal jurisdiction over "any nonresident . . . as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state." O.C.G.A. § 9-10-91. The Georgia Supreme Court has held that this provision "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts **any** business in [Georgia]" and is only limited by constitutional due process. *Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675 (2005)(emphasis added). As reasoned above, the Court must accept plaintiff's allegation that sales of the infringing product occurred in this district. Thus, defendant "transacted business" within Georgia and is within the reach of Georgia's long-arm statute.

9

2.   <u>General Personal Jurisdiction</u>

Having determined that Georgia's long-arm statute is satisfied, the Court must next determine whether a finding that personal jurisdiction exists in this case comports with constitutional due process. Personal jurisdiction can be established through general or specific jurisdiction. "Specific jurisdiction arises out of or relates to the cause of action even if those contacts are isolated and sporadic [while] general jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1358 (Fed. Cir. 2012).

The only "contact" defendant has had with this district is the alleged sales through defendant's Amazon.com storefront. The Supreme Court recently reiterated its opinion that "mere purchases made in the forum State, even if occurring at regular intervals, are not enough to warrant a State's assertion of general jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011)(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)); *accord Hockerson-Halberstadt, Inc. v. Propet USA, Inc.,* 62 Fed. App'x 322, 336-38 (Fed. Cir. 2003)(affirming the district court's finding that

10

it lacked general personal jurisdiction over defendant even though, through its website, defendant sold to people in the chosen forum). Plaintiff here can only demonstrate that defendant sold the infringing device in this district and nothing more. That contact, alone, cannot justify subjecting the defendant to general personal jurisdiction.

3.    <u>Specific Personal Jurisdiction</u>

Specific jurisdiction is available where: (1) a defendant purposefully directs its activities at the forum, (2) the asserted claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009).    The parties have not briefed the Court on this issue. However, based on the Court's independent research, all of requirements for specific personal jurisdiction are met in this case.

a.    **Activities In The Forum**

The internet has provided a unique context for the "purposefully directed" prong of the specific jurisdiction analysis.  Possibly the most cited case in this realm is the district court decision by Judge McLaughlin in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Penn. 1997).  In *Zippo,* Judge McLaughlin first reviewed the traditional framework of establishing personal jurisdiction and the scant decisions that had dealt with the issue of personal

11

jurisdiction and the internet at the time. He concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. "At one end of the spectrum are situations where a defendant clearly does business over the Internet." *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) as an example). On the other end are passive websites that simply convey information to its visitors, who, due to the nature of the internet, can be anywhere in the world. In the middle are websites that allow some interaction between their visitors but are not purely commercial in nature. *Id.* Judge McLaughlin concluded that in these types of cases, the level of interaction and commercial nature of the website dictates whether jurisdiction is proper. *Id.*

Many district courts, including several in this district, have utilized the *Zippo* sliding scale test to determine if specific personal jurisdiction can be constitutionally exercised in cases involving internet activities. *See Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367 (N.D. Ga. 2009)(Evans, J.) and *Barton S. Co., Inc. v. Manhole Barrier Sys., Inc.*, 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004)(Hunt, J.). Judge Evans correctly notes in her opinion that the Eleventh Circuit has not adopted or rejected *Zippo* and thus its applicability in this circuit is unclear. *Imageline, Inc.*, 663 F.

12

Supp. 2d at 1376 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1224 (11th Cir. 2009)). The Court does not adopt *Zippo* wholesale or consider it controlling, but finds its reasoning and analytical structure helpful in analyzing whether defendant's activities in the district.

That said, the Court notes that this case falls into the first category identified by Judge McLaughlin: where a defendant clearly does business over the internet. An illustrative case is *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999)(Carter, J.). *Stomp* also involved the issue of "whether [a party's] website constitutes minimum contacts with the forum state sufficient to exercise personal jurisdiction over it." *Id.* at 1077. Like the instant case, the party disputing jurisdiction in *Stomp* maintained a "highly commercial" website. *Id.* at 1078. Although there were portions of the website that provided information about the company, "a substantial portion of the site [was] dedicated to allowing the consumer to purchase [the allegedly infringing] products on-line." *Id.* The *Stomp* court found "although the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." *Id.* (citing *CompuServe*, 89 F.3d at 1265.).

The *Stomp* court also found that the party disputing jurisdiction

13

could not credibly claim that its contacts in the chosen forum were "mere[ly] fortuitous," as in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In *World-Wide Volkswagen*, plaintiff brought suit in Oklahoma against a New York citizen who had sold a car to New York residents, who then had then driven the car to Oklahoma where the plaintiff was injured. *Id.* at 287. The Supreme Court found that the contact with Oklahoma too attenuated to comply with constitutional due process. *Id.* at 298. As in the present case, the party disputing jurisdiction in *Stomp* could not claim that their contact with the chosen forum was so attenuated because they had marketed and sold their products over the internet to residents in the chosen forum. *Stomp*, 61 F. Supp. 2d at 1078-79.

In this case, the Court accepts plaintiff's unrebutted allegation that defendant made over $6,000 worth of sales of the infringing product through its online store hosted by Amazon.com. On the Amazon.com storefront, customers could purchase the allegedly infringing products and have them shipped to them. (Compl. [1] at 2-3.) Construing these undisputed facts in a light most favorable to plaintiff, defendant made sales of the accused devices and shipped them to this district. The fact that the sales were made through a storefront on Amazon.com, rather than the defendant's own website, makes little difference. An Amazon.com storefront allows a business to add products to their customized storefront, notifies the business

14

when orders are placed for those products so that the business can ship the products to the customers, and then deposits the payments made into the business's bank account. *See Selling on Amazon*, Amazon.com (May 3, 2013), available at http://services.amazon.com/content/sell-on-amazon.htm/ref=as_404_soa. The Court thus finds that in maintaining its Amazon.com storefront, defendant actively directed its sales activities to this district.[3]

### b. Arises Out Of Or Relates To The Claim

In order to comply with due process for asserting personal jurisdiction, plaintiff's claim must arise out of or relate to the defendant's activities in the forum. *Synthes*, 563 F.3d at 1297 and *Helicopteros*, 466 U.S. at 414. In *Synthes*, the Federal Circuit held that this requirement was fulfilled because "[plaintiff's] claim of patent infringement arises out of [defendant's] activities in the United States. [Plaintiff's] complaint alleges that [defendant] has been, and still is, making, using, offering for sale, selling, and/or importing into the United States products, systems, and/or apparatuses that infringe the [plaintiff's patent], all in violation of 35 U.S.C. § 271(a)." *Synthes*, 563 F.3d at 1298 (emphasis added.)

---

[3] Defendant also does not dispute plaintiff's allegation that it uses its Amazon.com storefront to "actively solicit[] business from, and complete[] sales with, customers in the Northern District of Georgia." (Compl. [1] at ¶ 11.) Therefore, the Court must take this allegation as true that defendant is actively participating the Amazon.com storefront.

15

Plaintiff Fusionbrands similarly alleges violations of 35 U.S.C. § 271 based on the alleged activities of the defendant within this forum. (Compl. [1] at ¶ 44.) Therefore, the second factor is satisfied.

### c.  Reasonable And Fair

Finally, due process requires that the assertion of personal jurisdiction be "reasonable and fair." *Synthes*, 563 F.3d at 1299. The Supreme Court has recognized that where it is found a defendant has purposefully directed his activities at forum residents and then seeks to defeat jurisdiction, the defendant must present a "compelling case." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).  The following factors are relevant to the inquiry: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) plaintiff's interest in obtaining convenient forum and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the sates in futhering fundamental substantive social policies. *Id.* at 476-77 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

The *Burger King* Court explicitly notes that many of the considerations for deciding whether asserting jurisdiction in an appropriate case would "offend [the] 'traditional notions of fair

16

play and substantial justice'"[4] may be "accommodated through means short of finding jurisdiction unconstitutional . . . [such as] a defendant claiming substantial inconvenience may seek a change of venue." *Id.* at 477. Here, defendant has done just that. As discussed *infra*, the relevant factors do not weigh in favor of a transfer under § 1404(a). As defendant has failed to meet its burden of showing that the relevant convenience and efficiency factors favor a transfer under § 1404(a), it necessarily fails to meet the more demanding burden of showing that this is "one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Synthes*, 563 F.3d at 1300 (quoting Justice Brennan's concurrence in *Asahi Metal Indus. Co., Ltd., v. Super. Ct. of Ca., Solano Cnty.*, 480 U.S. 102, 116 (1987)(internal quotation marks omitted)). Accordingly, the Court concludes that it may properly exercise specific jurisdiction over defendant and that venue is therefore proper in this district under § 1400(b).

---

[4] This oft-cited phrase comes from the Supreme Court's seminal case in the area of personal jurisdiction, *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). The Federal Circuit recognized that the third factor of their test corresponds with the "fair play and substantial justice" prong of personal jurisdiction analysis. *Grober v. Mako Prod., Inc.,* 686 F.3d 1335, 1346 (Fed. Cir. 2012).

17

II.   **DEFENDANT'S MOTION TO TRANSFER**

    A.   **Legal Standard**

    As an alternative to dismissal for improper venue, defendant argues that this case should be transferred to the Southern District of New York. (Def.'s Mot. to Dismiss [17] at 7.) Defendant's motion to transfer is governed by 28 U.S.C. § 1404(a), which states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action could have brought in the Southern District of New York. (*Id.*) The question is thus whether transfer is "in the interest of justice." *Id.*

    Defendant bears the burden of establishing the propriety of a transfer under § 1404(a).[5] *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The following factors are relevant to the decision:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded

---

[5]   The Federal Circuit maintains exclusive authority of any appeal in this patent case, but defendant's motion to transfer is a procedural matter that is governed by Eleventh Circuit law.  *See* 28 U.S.C. § 1295 and *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000)(applying the law of the regional circuit to a motion under § 1404(a)).

18

a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). However, "the plaintiff's choice of forum [will not] be disturbed" unless it is clearly outweighed by other considerations. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Acrotube, Inc. v. J.K. Fin. Grp., Inc.*, 653 F.Supp. 470, 477 (N.D. Ga 1987)("absent clear justification, courts in this district have consistently refused to override a plaintiff's choice of forum, especially where, as here, the plaintiff has brought suit in its home district").

### B.    Convenience Of The Witnesses And Parties

Witness convenience is one of the most important factors in evaluating a motion to transfer under § 1404(a), with a focus on "key witnesses." *Ramsey v. Fox News Network, LLC,* 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004). Additionally, party witnesses are assumed to be more willing to testify in a different forum than non-party witnesses. *Id.* Thus, the convenience of non-party witnesses carries more weight on a district court's decision to transfer. *Id.*

Defendant argues that PSG is a key non-party witness. (Def.'s Mot. to Dismiss [17] at 8.) PSG allegedly sold the infringing products to defendant. (*Id.*) Thus, according to defendant, PSG's testimony will be important to determine whether defendant's infringement was willful or intentional. (*Id.*) Defendant also

19

points out that other potential non-party witnesses reside in Seattle and New Mexico. (*Id.* at 8-9.)

The fact that some potential non-party witnesses reside in Seattle and New Mexico obviously bears no weight in the analysis. It would be equally inconvenient for these witnesses to travel to Georgia or New York. As to PSG, the relevance of its potential testimony as described by defendant is limited to damages rather than liability. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007)(because "patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted"). As such, PSG's New York residence bears less weight in the analysis than it might otherwise. *See Ramsey,* 323 F. Supp. 2d at 1356-57 (focusing on "witnesses which will be key to conducting the trial").

Defendant's liability for infringement will be determined by the accused products that were marketed and sold and the infringing character of those products. Key witnesses for this inquiry are the parties themselves and possibly expert witnesses and customers. Defendant has not produced any evidence concerning the location of these potential experts and customers. As to the parties themselves, it is equally inconvenient for plaintiff to travel to New York as it is for defendant to travel to Georgia. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)(Transferring venue is

20

not appropriate when it would "merely shift inconvenience from the defendants to the plaintiffs.").

### C.   Location Of Relevant Documents

Defendant argues that the relevant documents are located at their office in New York and thus, New York is a more convenient forum.  (Def.'s Mot. to Dismiss [17] at 8.)  Defendant does not present any evidence as to what these relevant documents might be, how expansive the document list is, or why transporting the necessary documents would be prohibitively expensive or inconvenient for them. Plaintiff notes that this is not a document-intensive case.  (Pl.'s Resp. [18] at 13.)  For these reasons, the Court does not believe this factor weighs in either direction.

### D.   Relative Means Of The Parties

Plaintiff argues that this factor weighs in its favor because defendant purports to be a "leading online source for restaurant equipment" and have large hotel chains as clients.  (*Id.* at 15-16.) Plaintiff further contends that it has had to expend significant resources defending its intellectual property rights.  Court records indicate that plaintiff has filed five other patent infringement suits in the Northern District of Georgia.  However, all of those cases settled well before any substantive motions or briefing took place.  Plaintiff presents no evidence that the costs of defending its intellectual property rights have been a net loss, let alone a

21

financial drain on the company. Based on the record, it appears that plaintiff and defendant are both small business owners with no major difference in their available resources. Accordingly, this factor is neutral.

**E. Weight Accorded To A Plaintiff's Choice Of Forum**

As previously mentioned, the Eleventh Circuit has held that "the plaintiff's choice of forum should not be disturbed unless [the movant can show that] it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260. Further, "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Plaintiff's home forum is the Northern District of Georgia. (Compl. [1] at ¶ 6.) Accordingly, this factor weighs heavily in favor of plaintiff.

**F. Trial Efficiency And Interest Of Justice**

Finally, in addition to the private concerns of the parties, the Court must consider the public interest factors in "the interest of justice." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). Plaintiff claims that efficiency concerns support denying the motion to transfer because there are approximately double the number of filings and four times the number of cases currently pending in the Southern District of New York as compared to the Northern District of Georgia. However, defendant rightly points out

22

that these numbers fail to take into account the simple fact that the Southern District of New York has more judges than the Northern District of Georgia. Neither party provides the Court with any convincing evidence that transferring the action to New York would lead to a speedier resolution.

Defendant argues that this factor weighs in its favor because of its "want or need to implead [PSG] as a third-party defendant." (Def.'s Mot. to Dismiss [17] at 9.) Defendant emphasize that there is no evidence before the Court to suggest that PSG can be sued anywhere except the Southern District of New York. (Def.'s Reply [20] at 6.) However, defendant presents no actual evidence that PSG cannot be sued in this district nor does it present any evidence that defendant will be able to implead PSG in a New York action. Patent infringement is a strict liability offense. Therefore, if infringement has occurred, both defendant and PSG are independently liable to plaintiff regardless of each other's actions unless there is an indemnification agreement between the parties. Without any evidence of such an agreement or other evidence that PSG is a necessary party to this action, the trial-efficiency factor does not dictate a transfer to New York.

**G.  Other Factors And Conclusion**

Defendant concedes that the remaining factors do not weigh in its favor. (Def.'s Reply [20] at 4.) Given that concession, and

23

weighing all of the factors discussed above, defendant has failed to meet its burden of showing that a § 1404(a) transfer is warranted. Accordingly, defendant's motion to transfer [17] should be **DENIED.**

## III. MEDIATION

Plaintiff has filed at least six intellectual property infringement actions concerning the poachpod in this district alone. Of those six, five settled in the earliest stages of litigation. Early negotiations between the parties in this case broke down. However, given the professed willingness of the parties to settle the case, the Court believes that mediation would be beneficial. Accordingly, the Court **DIRECTS** the Clerk to refer this case to a Magistrate Judge for mediation. *See* LR 16.7, NDGa. and FED. R. CIV. P. 16. Discovery and all other deadlines will be **STAYED** pending the mediation.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion to Dismiss or to Transfer Venue [17] and **DENIES as moot** plaintiff's Motion for Oral Argument [19]. The case is **STAYED** pending mediation.

SO ORDERED, this 26th day of September, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE


24

AO 72A
(Rev.8/82)