UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § § § § § § § § | |
| *Plaintiff*, | | CASE NO. 6:12-cv-499 MHS |
| v. | | LEAD CASE |
| Texas Instruments, Inc., et al., | | Jury Trial Demanded |
| *Defendants*. | | |

**PLAINTIFF BLUE SPIKE'S SURREPLY TO ACCU-TIME'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [DKT. 1009]**

Accu-Time Systems, Inc.'s reply in support of its motion to dismiss (Dkt. 1074) continues to apply an incorrect pleading standard and misinterprets Blue Spike's complaint and opposition.

**I.  Blue Spike Has Clearly Identified What Accu-Time Must Defend.**

As explained in the opposition (Dkt. 1056 at 2-3), the pleading rules do not require Blue Spike to tie specific patents to particular accused products or to provide a comprehensive list of accused products at this point. *See InMotion Imagery Techs., LLC v. Imation Corp.*, No. 2:12-cv-298-JRG, 2013 WL 1279055, at *5 (E.D. Tex. Mar. 26, 2013); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F.Supp.2d 349, 353 (D. Del. 2010). Nor is Blue Spike required to specify which claims of the patents-in-suit are at issue (*contra* Dkt. 1074 at 4). *See Atwater Partners of Tex. LLC v. AT&T, Inc.*, No. 2:10-CV-175-TJW, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011) ("[T]here is no requirement that the complaint specify which specific

1

claims the plaintiff is asserting")[1]. Blue Spike only has to "plead facts sufficient to place the alleged infringer on notice as to what [it] must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). [2]

Blue Spike has met that required pleading burden. Blue Spike first identifies a general category of products: Accu-Time's "Universal" Series of terminals and Accu-Time's "Global series terminal[s]." *See* Dkt. 920 ¶27. That alone is sufficient to put Accu-Time on notice as to what it must defend. *See Xpoint*, 730 F.Supp.2d at 353. Even so, Blue Spike goes further by identifying specific products in the Universal Series—"FlexPoint, PeoplePoint, SmartPoint, [and] AccuTouch[3]"—and in the Global Series—"Optimus 2, . . . Maximus, and Prodigy time attendance terminals." *See* Dkt. 920 ¶27. And Blue Spike also states that the Universal and Global series terminals equipped "with a fingerprint reader" are accused. *See id.* Blue Spike identifies the patents-in-suit and articulates how today's biometric identification systems, including those marketed and sold by Accu-Time, likely

---

[1] Accu-Time cites one case from the Western District of Wisconsin to support its position (*see* Dkt. 1074 at 4), but that case is not controlling and does not articulate the standard applied in the Eastern District of Texas.

[2] "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.'" *Morgan v. Hubert*, 335 F.App'x 466, 470 (5th Cir. 2009) (*quoting In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008)).

[3] Accu-Time argues that the AccuTouch-USB does not infringe because Blue Spike only references "AccuTouch," which is, according to Accu-Time, a "separate product line." *See* Dkt. 1074, at 5. But there is no AccuTouch product other than the AccuTouch-USB. Moreover, Blue Spike accuses both of Accu-Time's product lines (Universal and Global), and AccuTouch-USB is specifically listed as part of Accu-Time's Universal Series product line. *See* Dkt. 920 ¶27; *see also* Ex. 1.

infringe the patents-in-suit. *See* Dkt. 920 ¶25. Blue Spike has met its burden and identified what Accu-Time must defend.

## II. Blue Spike Has Adequately Pleaded Contributory Infringement.

Accu-Time wades deep into the issue of the prominence of the patents-in-suit and the issue of substantial noninfringing uses of its products, comparing the patents-in-suit to other biometric technology and parsing the language of its promotional materials. *See* Dkt. 1074, at 4-5. This approach is fundamentally inappropriate in a 12(b)(6) context. Indeed, Accu-Time attempts to hold an entire evidentiary hearing in the course of its reply. Yet, to survive a 12(b)(6) dismissal, a plaintiff need not plead "each individual element of a claim for indirect infringement." *LML Patent Corp. v. Nat'l Bank of Daingerfield*, No. 2:09-cv-00180-TJW, 2011 WL 1478517, at *2 (E.D. Tex. Mar. 24, 2011). "[I]t is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support various theories of infringement." *Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*, No. CIV.A 209CV148TJW, 2010 WL 1409245, at *4 (E.D. Tex. Apr. 1, 2010).

Further, Accu-Time oversteps by dictating which products are accused, unilaterally removing the AccuTouch product from Blue Spike's list of accused products. *See* Dkt. 1074, at 5. Contrary to Accu-Time's protests, the AccuTouch terminal *is* an accused product named in the complaint. *See* Dkt. 920 ¶27. And the

3

AccuTouch product has no substantial noninfringing use. *See* Dkt. 1056-5, Ex. 4.[4] That single product alone defeats Accu-Time's arguments regarding "substantial noninfringing use." Additionally, Accu-Time markets its other terminals as "biometric" terminals, supporting the inference that those products have no substantial noninfringing use. *See* Dkt. 1056-4, Ex. 3.

Though Accu-Time may have confused the issues, the salient facts are these: Blue Spike pleaded that the patents-in-suit are foundational to all of *today*'s widespread biometric technology (and Accu-Time's citation to *yesterday*'s technology does not disprove that, *contra* Dkt. 1074 at 4); Accu-Time makes biometric products; and at least some of Accu-Time's biometric products have no substantial noninfringing use. This Court has recently held that such allegations are sufficient to defeat dismissal "[a]bsent a showing in the pleadings . . . that [all of the accused] products *do* have substantial noninfringing uses." *Imation*, 2013 WL 1279055, at *6. Blue Spike has adequately pleaded contributory infringement.

## III. Blue Spike Has Also Adequately Pleaded Induced Infringement.

Contrary to Accu-Time's assertions, Blue Spike nowhere seeks "to replace the knowledge requirement for a claim of inducement with [Blue Spike's] own newly devised standard." *Contra* Dkt. 1074 at 7. Blue Spike applies the standard accepted

---

[4] *See Nielson Co. (US), LLC v. comScore, Inc.*, 819 F.Supp.2d 589, 602 (E.D. Va. 2011) (denying a motion to dismiss even though plaintiff did not plead extensive detail regarding "substantial non-infringing use"; "[A] component either has or does not have a substantial noninfringing use. Particularly in light of the necessarily negative nature of this allegation—i.e., that the accused components have no substantial noninfringing use—it is difficult to conceive how such an allegation could have been more factually detailed.").

in the Eastern District of Texas. *See* Dkt. 1056, at 3-6 (*quoting Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, Dkt. 486 at 9 (E.D. Tex. July 27, 2012) (rejecting defendant's argument that plaintiff failed to allege knowledge when "the Complaint clearly alleges that the 'Defendants have actual notice of the [patents-in-suit] at least as early as the filing of this Original Complaint'")); *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345-46 (Fed. Cir. 2012) (finding complaints that alleged knowledge "at the latest . . . when [defendant] was served with the complaint" were sufficient when pleaded in conjunction with facts plausibly showing intent to induce).

Blue Spike alleges that Accu-Time had knowledge of the patents-in-suit as early as the filing of this complaint. *See* Dkt. 920 ¶¶35, 43, 51, 59. Blue Spike has specifically identified several infringing products that Accu-Time markets and sells. *Id*. ¶27. The identification of those specific consumer products permits a reasonable inference that Accu-Time intends its customers to use them. Those facts, without more, constitute a facially plausible claim for induced infringement. But Blue Spike has gone further and submitted evidence that the accused products have specific infringing capabilities that Accu-Time markets in an effort to induce use. *See* Dkt. 1056-4, Ex. 3. This evidentiary showing surpasses what this Court found sufficient to defeat dismissal in *Imation*. There, the Court held that the plaintiff had "provide[d] a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement," 2013 WL 1279055, at *5, where the complaint merely stated that "[Defendant] has had knowledge of the [patents-in-

suit] as least as early as the filing of the Complaint in this action, and, upon information and belief, continues to encourage, instruct, enable, and otherwise cause end users and/or customers to use its products in a manner which infringes the [patents-in-suit]." *See* Case No. 2:12-cv-00298-JRG, Dkt. 9 ¶¶12, 22. In *InMotion Imagery Technologies v. Brain Damage Films*, the Court held that plaintiff's pleadings were sufficient to defeat dismissal when the plaintiff alleged only the following:

> Upon information and belief, [Defendant] has infringed and continues to infringe one or more claims of the [patent-in-suit] by making, using, providing, offering to sell, and selling (directly or through intermediaries), in this district and elsewhere in the United States, [accused products].
>
> Upon information and belief, [Defendant] has also contributed to the infringement of one or more claims of the [patent-in-suit] and/or actively induced others to infringe one or more claims of the [patent-in-suit], in this district and elsewhere in the United States.

No. 2:11-CV-414-JRG, 2012 WL 3283371, at *1-2 (E.D. Tex. Aug. 10, 2012). Despite the fact that the allegations there did "not explicitly plead facts to show that [Defendant] had a specific intent to induce infringement," the Court nevertheless held that dismissal was improper because "it is not necessary to provide detailed factual support for each and every element of inducement." *Id*. at *2. Rather, a plaintiff's inducing-infringement allegations sufficiently notify an alleged infringer of what it must defend if they (1) describe the functionality of the patent-in-suit and (2) allege that defendant induced others to infringe it. *See id*. Blue Spike has met that threshold, making dismissal inappropriate here.

6

### IV. Blue Spike Has Adequately Pleaded Willful Infringement.

Regarding willful infringement, Accu-Time once again misinterprets the law and misreads Blue Spike's filings. Nowhere does Blue Spike allege that there is a "lower threshold" for a willfulness pleading for the amended complaint. *Contra* Dkt. 1074 at 9. In its motion and reply, Accu-Time alleges that the pleading in the amended complaint against Accu-Time is "nearly identical" to the pleading this Court recently dismissed in Dkt. No. 1006. *See* Dkt. 1074, at 9. Accu-Time is incorrect. The Court's recent order referenced the original complaint and did not contemplate all of Blue Spike's amended pleadings, which include pre-filing willfulness. *See* Dkt. 1056, at 9; *see also* 920 ¶¶ 37(a), 45(a), 53(a), and 61(a). Accu-Time attempts to undermine Blue Spike's willful infringement allegation by attacking the prominence of Blue Spike's patents (*see* Dkt. 1074, at 7). But, at this stage of litigation, the Court must accept the allegations as true in the context of the motion to dismiss. *See* Dkt. 1056-3, Ex. 2, *NovelPoint Sec. LLC v. Samsung Elecs. Am., Inc.*, No. 2:12-cv-100, Dkt. 126, at 3 (E.D. Tex. July 22, 2013) (overruling a motion to dismiss on the grounds that the plaintiff's pleadings plausibly stated a claim for relief when the plaintiff pleaded the prominence of the patents). Further, Accu-Time provides no evidence or citation to support its claim, just bald assertions. *See* Dkt. 1074 at 7. A search of the USPTO's website shows that one of the patents-in-suit is forward cited in at least 50 U.S. issued patents (*see* Ex. 2), directly contradicting and calling into question Accu-Time's unsupported figures. Blue Spike has pleaded that Accu-Time likely had pre-filing knowledge of the patents-in-suit

due to the patents' prominence, and Accu-Time certainly knew of the patents-in-suit at least as early as the filing of this suit. *See* Dkt. 1056, at 8-9. Blue Spike has thus adequately pleaded willful infringement, making dismissal inappropriate here.

## Conclusion

For these reasons plus those contained in the opposition, Blue Spike respectfully asks the Court to deny Accu-Time's motion to dismiss.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike LLC*

## CERTIFICATE OF SERVICE

       I, Randall T. Garteiser, am the ECF User whose ID and password are being used to file this document. I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 7, 2013. Pursuant to Federal Rule of Civil Procedure 5, this document was served via U.S. Mail and electronic means to counsel for Defendant that are not receiving this document via CM/ECF.

                                                                     /s/ Randall T. Garteiser
                                                                     Randall T. Garteiser