**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | |
| Plaintiff, | § § | CASE NO. 6:12-CV-499-LED |
| vs. | § § | LEAD CASE |
| TEXAS INSTRUMENTS, INC., | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | |
| Plaintiff, | § § | CASE NO. 6:12-CV-534-LED |
| vs. | § § | CONSOLIDATED CASE |
| VERCURY, INC., | § § | **ORAL ARGUMENT REQUESTED** |
| Defendant. | § | **JURY TRIAL DEMANDED** |

**DEFENDANT VERCURY, INC.'S MOTION TO TRANSFER VENUE
TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA UNDER 28 U.S.C. §1404(a)**

1

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 2

II. FACTUAL BACKGROUND ......................................................................................... 2

   A. Vercury Has No Ties to this District and Does Not Do Business in this District or Elsewhere in Texas ................................................................................................................ 2

   B. A Large Number Of Prior Art Entities And Witnesses Are Also In Northern California .. 3

   C. The Inventors Also Reside Outside Of This District ........................................................ 4

   D. Blue Spike Was Incorporated In This District For Purposes Of This Litigation ................ 5

III. ARGUMENT .................................................................................................................. 5

   A. Venue Is Proper In The Northern District Of California ................................................... 6

   B. Private Interest Factors Strongly Favor Transfer To The Northern District Of California. 6

      1. Easier Access To Sources Of Proof Favors The Northern District Of California ........... 7

      2. Availability Of Compulsory Process Favors The Northern District Of California ......... 7

      3. Cost Of Attendance For Willing Witnesses Favors The Northern District Of California 8

      4. All Other Concerns Weigh In Favor Of Transfer ............................................................. 9

   C. Public Interest Factors Support Transfer To The Northern District OF California .......... 10

      1. Relative Court Congestion Supports Transfer ................................................................ 10

      2. Local Interest Favors The Northern District Of California ........................................... 11

      3. Both Forums Are Familiar With The Governing Law ................................................... 11

      4. There Is No Conflict Of Laws Question ......................................................................... 11

IV. CONCLUSION ............................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page**

*Droplets, Inc. v. Amazon.com, Inc.*,
    2012 WL 3578605 (E.D. Tex. June 27, 2012) .................................................................. 8, 10

*GeoTag, Inc. v. Zoosk, Inc.*,
    No. 2-11-cv-403-MHS, Dkt. No. 114 (E.D. Tex. Jan 14, 2013) ................................. 7, 8, 9, 10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................ 7, 8

*In re Hoffman-La Roche*,
    587 F.3d at 1333 (Fed. Cir. 2009) ............................................................................................ 7

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011) .............................................................................................. 10

*In re TS Tech USA*,
    551 F.3d 1315 (Fed. Cir. 2008) ................................................................................................ 9

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .................................................................................................... 6

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................................................................... 6

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) .............................................................................................. 10

*Internet Machs. LLC v. Alienware Corp.*,
    2011 WL 2292961 (E.D. Tex. Jun. 7, 2011) ............................................................................. 9

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
    2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ........................................................................ 10

*Optimum Power Solutions, LLC v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex 2011) ....................................................................................... 9

*PersonalWeb Techs. LLC v. Google, Inc.*,
    No. 6:11-cv-656-LED, (E.D. Tex Mar. 21, 2013) .................................................................. 11

*Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*,
    WL 194370 (E.D. Tex. Jan. 23, 2012) ...................................................................................... 9

**Statutes**

28 U.S.C. §1331 ................................................................................................................. 6
28 U.S.C. §1338(a) ........................................................................................................... 6
28 U.S.C. § 1391(b) .......................................................................................................... 6
28 U.S.C. § 1404(a) ................................................................................................... passim
35 U.S.C. § 299 (2011) ..................................................................................................... 9

Pursuant to 28 U.S.C. §1404(a), Defendant Vercury Inc. ("Vercury") respectively moves to transfer this action to the United States District Court for the Northern District of California.

## I.     INTRODUCTION

Vercury is a tiny company based in the Northern District of California with no ties, substantial or otherwise, to his District. It does no business in Texas generally or in this District in particular, and has no sales of the systems accused of infringement there. Plaintiff Blue Spike, LLC ("Blue Spike") has no real ties to this District either, and did not even exist until it was formed on May 11, 2012, less than three months before its litigation campaign began. The patents-in-suit were not transferred to Blue Spike until August 4, 2012 – only five days before the litigation campaign of which this is just one case began. One co-inventor, Scott Moskowitz, is a long-time resident of Florida; the other, Michael Berry, lives in Seattle, Washington. Since the filing of the earliest application in 2000, the patents-in-suit belonged to Blue Spike, Inc., a long-standing Florida corporation, with no identifiable activities in Texas, much less in this District. Consistent with these facts and this District's prior decisions, the Northern District of California is the clearly more convenient forum for this dispute and this matter belongs in the Northern District of California. Accordingly, Vercury requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

## II.    FACTUAL BACKGROUND

Blue Spike filed suit against Vercury in this District on August 15, 2012, alleging that Vercury's Trace and TraceSync technologies ("Accused Systems") infringe U.S. Patent Nos. 7,346,472 (the " '472 patent"), 7,660,700 (the " '700 patent"), 7,949,494 (the " '494 patent"), and 8,214,175 (the " '175 patent") (collectively, the "Asserted Patents") (Dkt. No. 1, ¶ 27.) The Asserted Patents share a common specification and generally relate to methods and systems for identifying matching text, visual, audio, and video signals. As described below, the relevant facts weigh in favor of transfer to the Northern District of California.

### A.     Vercury Has No Ties to this District and Does Not Do Business in this District or Elsewhere in Texas

Vercury is a very small company with its sole office in Palo Alto, California, within the Northern District of California. (Declaration of Jun Zhang in Support of Motion to Transfer to the Northern District of California ("Zhang Decl.) at ¶ 3.) Jun Zhang is the sole employee of Vercury and lives in Dublin, California, within the Northern District of California. (Zhang Decl. at ¶ 4.) Vercury has made very few sales of the Accused Products anywhere, and none in this District in particular or Texas in general. (Zhang Decl. at ¶ 6.) Vercury has no distributor, sales agent, or other representative in this District or in Texas generally. (Zhang Decl. at ¶ 5.) Vercury's website, vercury.com, may be used to obtain product information but not to make purchases. (Zhang Decl. at ¶ 7.) In short, Vercury has no ties, substantial or otherwise, to this District. (Zhang Decl. at ¶ 8.)

All of the documents related to the Accused Systems are in the Northern District of California where Vercury has its only office – none are in Texas generally or the Eastern District of Texas more particularly. (Zhang Decl. at ¶ 9.) All of the development of the Accused Systems was done in and around Vercury's Palo Alto office. (Zhang Decl. at ¶ 10.) All of the people involved in the development of the Accused Systems are in the Palo Alto area. (Zhang Decl. at ¶ 11.) Because Dr. Zhang is the sole employee of Vercury, it would be a great inconvenience for Vercury for Dr. Zhang to have to travel to the Eastern District of Texas. (Zhang Decl. at ¶ 12.)

> **B.     A Large Number Of Prior Art Entities And Witnesses Are Also In Northern California**

Third party documents and witnesses are also concentrated in Northern California, home to numerous software and hardware companies and research institutions. Indeed, prior art references cited during the prosecution of the Asserted Patents alone identify many inventors and companies situated in Northern California. For example, during the prosecution of the '472 patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior

3

art references. (Conti Decl., Ex. 1.3)[1] Among them, at least nine patent assignees are based in Northern California and at least 24 prior art inventors reside in Northern California.

### C. The Inventors Also Reside Outside Of This District

The named inventors of the Asserted Patents, Scott Moskowitz and Michael Berry, also do not reside in this District. In an inventor declaration submitted to the Patent Office in 2000 during the prosecution of U.S. Patent Application Serial No. 09/657,181 (the "'181 Application") (the original application that led to the Asserted Patents), Moskowitz and Berry declared their residence in Florida and New Mexico, respectively. (Dkt. Nos. 1-2 through 1-5; Conti Decl., Ex. 3.)

From late 2005 to 2008, Moskowitz himself prosecuted the '181 Application from his residence in Florida. (Conti Decl., Exs. 5, 6.) In March 2008, the '181 Application issued as the '472 patent, which, on its face, identifies Moskowitz and Berry as Florida and New Mexico residents, respectively. (Dkt No. 1-5.) From 2007 to 2010, Moskowitz prosecuted two continuation applications of the '181 Application, again from his residence in Florida. (Conti Decl., Exs. 7, 8.) These two applications, issued as the '700 and '494 patents, identify Berry as a resident of Virginia (the '700 patent) and Washington (the '494 patent) and Moskowitz as still residing in Florida. (Dkt. Nos. 1-3; 1-4.) In February 2011, Moskowitz and Berry submitted another inventor declaration in the prosecution of a third continuation application of the '181 Application, averring their residence in Florida and Washington, respectively. (Conti Decl., Ex. 9.) This application issued as the '175 patent in July 2012, and identified Moskowitz and Berry as still residing in Florida and Washington, respectively. (Dkt. No. 1-2.) Moskowitz continues to live in Florida. For example, his patent applications and patents published or issued between August 2012 to January 2013 identify his residence in Florida. (Conti Decl., Ex. 10.) Further, Mr. Moskowitz has been an officer of at least three Florida-based companies: Blue Spike, Inc.,

---

[1] References to the Conti Decl. are to the Declaration of Patrick J. Conti In Support of Google's Motion to Transfer to the Northern District of California Pursuant to 28 U.S.C. § 1404 (a), Document No. 678-2.  "Ex" refers to exhibits attached to the Conti Decl.

4

Canopus Medical LLC, and Wistaria Trading Inc. (Id., Exs. 11- 13.) Two of these companies filed annual reports with the Secretary of State of Florida in January 2013 listing Florida as the principal place of business for both. (Id., Exs. 14, 15.) Notably, Mr. Moskowitz signed both of these filings on January 20, 2013, and indicated that he currently resides in Florida. (Id.) Mr. Moskowitz's personal actions and representations further confirm his continuing presence in Florida. (See id., Ex. 16 (LinkedIn profile); Ex. 17 (Florida vehicle registration); Ex. 18 (Florida voting record).)

While living in Florida, Moskowitz has frequently traveled to Northern California. He allegedly founded "The Dice Company," which was based at one time in Palo Alto, California.(Dkt. No. 1, ¶ 10; Conti Decl., Ex. 19.) He has spoken several times at the RSA Data Security Conference, a cryptography conference held annually in San Francisco. (Dkt. No. 1, ¶ 15; Conti Decl., Ex. 20.) Mr. Moskowitz, the only officer of Blue Spike, also retained lead counsel in this action who are based in the Northern District of California. (Id., Ex. 21.)

### D.    Blue Spike Was Incorporated In This District For Purposes Of This Litigation

In 2000, 2007, and 2009, Moskowitz and Berry assigned their inventions in the Asserted Patents to Blue Spike, Inc., a private company based in Florida since 1997. (Id., Ex. 22.) There is no indication that Blue Spike, Inc. has ever conducted any business within the Eastern District of Texas. On May 14, 2012, a mere three months before bringing this action, Mr. Moskowitz incorporated Blue Spike, LLC in Tyler, Texas. (Id., Ex. 23.) On August 4, 2012, less than a week before filing the lead case in this District, Moskowitz, on behalf of Blue Spike, Inc., assigned the Asserted Patents to Blue Spike. (Id., Ex. 24.) It appears that Moskowitz is the only employee of Blue Spike and there is no customer or contractor of Blue Spike, much less any in this District.

### III.    ARGUMENT

Section 1404(a) of 28 U.S.C. provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

5

district or division where it might have been brought." The inquiries under 28 U.S.C. § 1404(a) are, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008). As explained below, the relevant factors clearly favor transferring this action to the Northern District of California.

### A. Venue Is Proper In The Northern District Of California

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case. *Id.* There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a). Nor is there any question that the Northern District of California has personal jurisdiction over Vercury and is a proper venue for this case because, as discussed above, Vercury regularly conducts business, maintains its headquarters, and employs its only employee there. See 28 U.S.C. § 1391(b).

### B. Private Interest Factors Strongly Favor Transfer To The Northern District Of California

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. All of these factors weigh in favor of transfer to the Northern District of California.

1. **Easier Access To Sources Of Proof Favors The Northern District Of California**

In analyzing the first private interest factor, this Court recognizes that:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.

*GeoTag, Inc. v. Zoosk, Inc.*, No. 2-11-cv-403-MHS, Dkt. No. 114 (E.D. Tex. Jan 14, 2013) ("*GeoTag*") at 3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, as discussed above, Vercury's documents relevant to this case are most readily accessible from Northern California, and Vercury's only employee with relevant knowledge regarding the Accused Products is located in Northern California.

2. **Availability Of Compulsory Process Favors The Northern District Of California**

A venue is favored when it has subpoena power to compel attendance of deposition and trial over the majority of non-party witnesses. *GeoTag*, Dkt. No. 114, at 5 (citing *In re Hoffman-La Roche*, 587 F.3d at 1337-38 (Fed. Cir. 2009). Here, a great number of potential non-party defense witnesses are located in the Northern District of California, home to universities and high-tech companies who were active in the field of endeavor relevant to this action in the relevant timeframe. As discussed above, the inventors themselves identified to the Patent and Trademark Office at least 24 different third party prior art inventors (and at least nine different prior art entities) who reside in Northern California. To the extent these non-party prior art witnesses are unwilling to attend deposition or trial, the Northern District of California has the authority to compel their attendance.

In contrast, there are no known third party witnesses who would be subject to the subpoena power of the Eastern District of Texas. Blue Spike is a non-practicing entity and has no known affiliates that are under this Court's subpoena power. One of the co-inventors is an employee of the plaintiff, and the other, Mr. Berry, currently resides in the state of Washington.

7

Vercury is unaware of any likely non-party defense witnesses who are subject to this Court's subpoena power. Since the Northern District of California has absolute subpoena power over a significant number of known prior art witnesses, the availability of such power favors transfer to the Northern District of California. *Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in plaintiff's chosen forum).

### 3. Cost Of Attendance For Willing Witnesses Favors The Northern District Of California

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses." *GeoTag*, Dkt. No. 114, at 8. While courts analyze the convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Id.* Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relation to the additional distance traveled." *In re Genentech*, 566 F.3d at 1343. Here, with respect to party witnesses, Vercury's likely witness in this action, Jun Zhang, resides and works within the Northern District of California. If this case were not transferred, he would be burdened with travel of at least 1,500 miles each way to testify in this Court. *Droplets, Inc.*, 2012 WL 3578605, at *5. As for Blue Spike, it appears to have a single employee, Mr. Moskowitz, who is a long time resident of Florida. For him, travel to Northern California is no more inconvenient than travel to this Court. Indeed, as discussed above, Mr. Moskowitz routinely visits the Bay Area to attend conferences and conduct business.

With respect to non-party witnesses, numerous engineers familiar with prior art instrumentalities are centralized in Northern California and would also have to travel over 1,500 miles to attend trial in this District (to the extent they are willing). And, Mr. Berry, the co-

8

inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to Northern California than to this Court.  *Id.*  (noting that location of relevant third-party witnesses in, and closer to, the transferee venue favored transfer).

In sum, the locations of both party and non-party witnesses also favor transfer to the Northern District of California.  See *In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be "clear error"); *Optimum Power Solutions, LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex 2011) (granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas); *Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at **3-4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district and no identified witness resides in plaintiff's chosen forum).

### 4.     All Other Concerns Weigh In Favor Of Transfer

The remaining considerations also favor transfer to the Northern District of California.  First, this case is still in its infancy: a case management conference has just been scheduled and a scheduling order just issued; and no discovery has taken place.  See, e.g., *Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun. 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer.  As this Court recently emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue:

The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district.  *GeoTag*, Dkt. No. 114, at 11 (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)).  Here, Blue Spike formed in this District only three months before commencing a filing

9

spree of over 80 lawsuits in this District against over 150 defendants concerning different, nonoverlapping products and services. Permitting Blue Spike to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping, and defeat the purpose of a key provision of the recently enacted America Invents Act, which limits the joinder of unrelated parties in patent cases.  See id. at 11; see also *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv- 211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("Because the cases involve different products . . . and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.") (emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

### C. Public Interest Factors Support Transfer To The Northern District OF California

In addition to private interest factors, courts also consider public interest factors in deciding whether transfer is appropriate.  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law."  See *GeoTag*, Dkt. No. 114, at 3. These factors also weigh in favor of transfer.

#### 1. Relative Court Congestion Supports Transfer

The first public interest factor generally "favors a district that can bring a case to trial faster." Id. at 11.  This District is more congested than the Northern District of California for patent litigation. The seven U.S. District Judges and eight Magistrate Judges in this District are burdened with 1,061 recently-filed patent cases, on top of more than 1,087 pending patent cases.

(Conti Decl., Ex. 25.)  In contrast, the Northern District of California has nineteen District Judges and eleven Magistrate Judges to decide 265 recently-filed patent cases and 302 pending patent cases. (Id.)  Given its greater resources, the Northern District of California resolves cases more quickly than the Eastern District of Texas. (Id., Ex. 26 (N.D. Cal. has a median time interval from filing to disposition of 6.4 months compared to 10.1 months for E.D. Tex.).)  Thus, the court congestion factor favors transfer.

### 2. Local Interest Favors The Northern District Of California

Because none of the Accused Systems were sold in this District or even in Texas, while the Accused Systems were developed, maintained and managed by Vercury in the Northern District of California – that Court – the Northern District of California - has a particularized local interest in resolving this dispute.  See, e.g., *PersonalWeb Techs. LLC v. Google, Inc.*, No. 6:11-cv-656-LED, (E.D. Tex Mar. 21, 2013) Dkt. No. 131, at 23 ("Google [is] headquartered in the Bay Area, and everything related to the accused products is located there. For these reasons, this factor favors transfer.").

### 3. Both Forums Are Familiar With The Governing Law

This Court and the Northern District of California are equally familiar with patent law. Thus, this factor is neutral.

### 4. There Is No Conflict Of Laws Question

This case does not implicate conflicts of law and thus this factor is neutral.

## IV. CONCLUSION

For the foregoing reasons, balancing all of the private and public factors demonstrates that the Northern District of California is clearly more convenient than the Eastern District of Texas for this action.  Vercury respectfully requests that this Court grant the requested transfer to the Northern District of California.

| | |
|---|---|
| Dated:  January 31, 2014 | Respectfully submitted,<br>*/s/ Margaret Elizabeth Day*<br>Margaret Elizabeth Day (CA Bar No. 177125)<br>Admitted to Practice<br>Email:  eday@feinday.com<br>Ian N. Feinberg (CA Bar No. 88324)<br>Pro Hac Vice<br>Email: ifeinberg@feinday.com<br>FEINBERG DAY ALBERTI & THOMPSON LP<br>1600 El Camino Real, Suite 280<br>Menlo Park, CA   94025<br>Telephone:  (650) 618.4360<br>Facsimile:   (650) 618.4368<br><br> Attorneys for Defendant<br> VERCURY, INC. |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this documents was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail or facsimile transmission, on January 31, 2014.

                                            */s/ Margaret Elizabeth Day*
                                            Margaret Elizabeth Day

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on January 31, 2014 at 3 p.m. via telephone conference with participants Randy Garteiser, counsel for Plaintiff, and Ian Feinberg, counsel for Defendant. No agreement could be reached because the parties disagreed on the merits of the motion. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

                                            */s/ Margaret Elizabeth Day*
                                            Margaret Elizabeth Day