# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:12-CV-499-MHS |
| | § | LEAD CASE |
| CLEAR CHANNEL BROADCASTING, INC., | § | |
| | § | Case No. 6:12-CV-595-MHS |
| Defendant. | § | CONSOLIDATED CASE |
| | § | |
| | § | **ORAL ARGUMENT REQUESTED** |
| | § | JURY TRIAL DEMANDED |

## DEFENDANT CLEAR CHANNEL BROADCASTING INC.'S
## MOTION TO TRANSFER VENUE
## <u>TO THE SOUTHERN DISTRICT OF NEW YORK UNDER 28 U.S.C. § 1404(a)</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................. 2

III.    ARGUMENT ...................................................................................................... 4

        A.      Venue Is Proper In The Southern District of New York ........................ 5

        B.      The Private Interest Factors Strongly Favor Transfer ........................... 5

                1.      SDNY will provide easier access to sources of proof ................ 5

                2.      SDNY provides better availability of compulsory process ........ 8

                3.      SDNY will lower the cost of attendance for witnesses .............. 9

                4.      SDNY is the better venue for all practical purposes ............... 12

        C.      The Public Interest Factors Strongly Favor Transfer .......................... 13

                1.      Relative court congestion favors transfer ................................. 13

                2.      Local interests favor transfer ................................................... 13

                3.      Both venues are familiar with the governing law and there is no
                        conflict of law concern ............................................................ 14

IV.     CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ........................................................................... 5

*Corbello v. DeVito*,
  No. 1:07CV985, 2008 WL 2097435 (E.D. Tex. May 19, 2008) ................................. 13

*Droplets, Inc. v. Amazon.com, Inc.*,
  No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) ................................... 9

*Droplets, Inc. v. E*Trade Fin. Corp.*,
  No. 11-cv-255, 2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) ................................... 12

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
  No. 10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ....................................... 6

*Fifth Generation Computer Corp. v. IBM*,
  No. 9:08-CV-205, 2009 WL 398783 (E.D. Tex. Feb. 17, 2009) ..................... 8, 11, 14

*FutureVision.com, LLC v. Time Warner Cable, Inc.*,
  No. 6:12-cv-386, 2013 WL 5496810 (E.D. Tex. Apr. 22, 2013) ..................... 4, 9, 10

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ................................. 12

*GeoTag, Inc. v. Zoosk, Inc.*,
  No. 2:11-cv-403, Dkt. No. 114 (E.D. Tex. Jan. 14, 2013) ........................................ 12

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ................................................................................. 6

*In re Biosearch Techs., Inc.*,
  452 F. App'x 986 (Fed. Cir. 2011) ........................................................................... 11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ..................................................................... 5, 7, 8, 10

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ................................................................................. 8

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003) .................................... 5

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ................................................................................ 12

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...................................................................... 14

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ..................................................................... 9, 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................. 4, 5, 8, 13

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)....................................................................... 7

*Internet Machs. LLC v. Alienware Corp.*,
    No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. June 7, 2011) ................................ 12

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
    No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ............................. 12

*Jackson v. Intel Corp.*,
    No. 2:08-CV-154, 2009 WL 749305 (E.D. Tex. Mar. 19, 2009) ........................... 14

*LT Tech, LLC v. FrontRange Solutions USA Inc.*,
    No. 3:13–cv–1901–M, 2013 WL 6181983 (N.D. Nov. 26, Tex. 2013) ................... 12

*Mohamed v. Mazda Motor Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. 2000)............................................................... 11

*Network Prot. Scis. LLC v. Juniper Networks, Inc.*,
    No. 10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ........................ 14

*NovelPoint Learning LLC v. LeapFrog Enters.*,
    No. 6:10-cv-229, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ........................... 5, 6

*Optimum Power Solutions LLC v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex. 2011)............................................................... 7

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*,
    614 F. Supp. 2d 772 (E.D. Tex. 2009)............................................................. 11

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
    No. 10-cv-160, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ............................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

28 U.S.C. § 1400 ........................................................................................................ 5

28 U.S.C. § 1404(a) ......................................................................................... 1, 4, 7, 12

35 U.S.C. § 299 ...................................................................................................... 12

Pursuant to 28 U.S.C. § 1404(a), Defendant Clear Channel Broadcasting, Inc. ("Clear Channel") respectfully moves to transfer this action to the United States District Court for the Southern District of New York.

## I.   INTRODUCTION

The Southern District of New York ("SDNY") is the most convenient forum for this action because the factors considered in a Section 1404(a) analysis all favor transfer. The private interest factors all weigh in favor of transfer. RCS and Media Monitors, the Clear Channel business units responsible for designing, developing, and selling the accused products in this case, are based in White Plains, New York, and have been since their creation. Because both are headquartered in White Plains, the vast majority of witnesses and documents related to the accused products are located in White Plains. Additionally, the SDNY has subpoena power over a number of non-party witnesses, including former RCS and Media Monitors employees and prior art witnesses. Because so many witnesses, both party and non-party, are located in or near the SDNY, the cost of attendance favors transfer as well. The cost for the vast majority of witnesses to travel to trial in the SDNY, located in either White Plains or Manhattan (both less than 35 miles from their headquarters), will be negligible compared to the cost for these witnesses to travel 1,500 miles to this District. Blue Spike can identify only one witness who may reside in this District, but the evidence demonstrates this witness actually resides in Florida. Finally, this case is still in its early stages and Clear Channel has no relationship to any other defendants, thus transfer is favored.

On balance, the public interest factors also favor transfer. The SDNY has a greater capacity to handle its pending civil cases, resulting in significantly fewer cases per district judge. Additionally, there are far fewer patent cases pending in the SDNY than in this District. The

SDNY also has a greater localized interest in the case. RCS has been based in White Plains since its creation in 1979, and Media Monitors since its creation in 2003. Together, they have nearly 120 full-time employees in White Plains, and have been a part of the community for 35 years. This District has little localized interest because Blue Spike was formed less than two years ago and has only one employee, who does not even reside here. The last two public factors are neutral because both courts are equally capable of handling patent law, and there will be no conflict of law issues.

The majority of the factors greatly favor transfer to the SDNY. The only factors that do not weigh heavily in favor of transfer are neutral, and therefore do not outweigh the significant gains in convenience that will be achieved by transferring this action to the Southern District of New York.

## II.   STATEMENT OF FACTS

In May 2012, Scott Moskowitz formed Blue Spike, LLC, as a Texas limited liability company, and brought this suit in the Eastern District of Texas ("EDTX") against Clear Channel four months later, on September 9, 2012. (Declaration of Ryan K. Yagura in Support of Clear Channel's Motion to Transfer Venue ("Yagura Decl.") ¶ 1; Ex. 1 (TX Sec of State)[1].) Blue Spike, LLC, alleges that Clear Channel infringes four patents: U.S. Patents Nos. 7,346,472 ("the '472 patent"), 7,660,700 ("the '700 patent"), 7,949,494 ("the '494 patent"), and 8,214,175 ("the '175 patent") (collectively, the "Asserted Patents"). (Dkt. 1 at Introduction.) Beginning on August 9, 2012, Blue Spike, LLC, brought suit for infringement of the Asserted Patents in nearly 100 cases in this district, 55 of which have been consolidated with this action for pretrial purposes. (Dkt. 10.) Blue Spike, Inc., a Florida corporation, assigned the Asserted Patents to

---

[1] All exhibits are attached to the concurrently filed Yagura Declaration, unless indicated otherwise.

Blue Spike, LLC, on August 4, 2012, one month before filing this suit (and only five days before filing the first suit asserting these patents). (Ex. 2.) Mr. Moskowitz, one of the named inventors, owns Blue Spike, LLC, and Blue Spike, Inc. (Exs. 1 and 3.) Mr. Moskowitz is a Florida resident and the sole employee of both Blue Spike entities. (Exs. 3 and 8). Clear Channel is unaware of any Blue Spike employees or potential witnesses who reside in EDTX. (Declaration of Richard Beck in Support of Clear Channel's Motion to Transfer ("Beck Decl.") ¶ 8.

The complaint alleges the "Media Monitors and RCS divisions" of Clear Channel offer "Media Monitors monitoring and verification software, systems, and technology ("Accused Products"), which infringe one or more claims of the Patents-in-Suit." (Dkt. 1 ¶ 27.) Media Monitors and RCS, however, are former subsidiary companies that merged with Clear Channel Management Services, Inc., with their own executive management and operations. (Beck Decl. ¶ 4.) In 1979, RCS was founded in Westchester County, New York, and the worldwide headquarters are in White Plains, New York. (*Id.* ¶ 3.) In 2003, RCS created Media Monitors, which was a subsidiary of RCS and is also based in White Plains. (*Id.*) In 2006, Clear Channel acquired RCS and its subsidiary, Media Monitors, but RCS maintained its offices and entire management team following the acquisition and later merger with Clear Channel Management Services, Inc. (*Id.* ¶ 4.) The vast majority of research and development for RCS and Media Monitors products occurs in White Plains. (*Id.* ¶ 6.) Together, RCS and Media Monitors have nearly 120 full-time employees in White Plains. (*Id.* ¶ 5.)

It appears that neither named inventor of the Asserted Patents lives in this District. During prosecution of the Asserted Patents, Mr. Moskowitz maintained residence in Florida, and Mr. Berry was identified as a resident of Washington. (Dkt. 1 at Exs. A, B, C, and D; *see also* Ex. 4.) Although Mr. Moskowitz filed a declaration in opposition to another defendant's motion

to transfer stating he had a residence in Tyler, this address is actually for a bed and breakfast in Tyler.  (Exs. 5 and 6.)  The evidence demonstrates that Mr. Moskowitz still resides in Florida.  (Exs. 7 and 8.)  Further, in addition to Blue Spike, Inc., Mr. Moskowitz has owned two other companies incorporated in Florida: Canopus Medical LLC and Wistaria Trading, Inc.  (Ex. 10.)  There is no evidence that Blue Spike has any customers or employees (other than Mr. Moskowitz) in the EDTX, or anywhere else.

Although this case is still in its infancy, potential third-party witnesses are located in the SDNY or within its subpoena power.  For example, prior art references cited during the prosecution of the Asserted Patents include at least 46 patents invented by or assigned to people or entities in the SDNY or within 100 miles.  (Ex. 11.)  Additionally, since RCS has been involved in design and development in this industry since 1979, former employees may have useful testimony, and are likely to be located in the New York area.

## III.   ARGUMENT

Section 1404(a) provides that a district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of parties and witnesses" and "in the interests of justice."  28 U.S.C. § 1404(a).  The inquiries under 28 U.S.C. § 1404(a) are, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).  "The plaintiff's choice of venue is not a factor in this analysis. . . . Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue."  *FutureVision.com, LLC v. Time Warner Cable, Inc.*, No. 6:12-cv-386, 2013 WL 5496810, at *2 (E.D. Tex. Apr. 22, 2013) (internal citations omitted).

A.        **Venue Is Proper In The Southern District of New York**

The threshold determination to be made under Section 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003). Civil actions for patent infringement may be instituted in the district in which the defendant resides or in a district where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400. Thus, the SDNY would be a proper venue for this action. Further, the SDNY would have personal jurisdiction over this case because it is the location of RCS's worldwide headquarters.

B.        **The Private Interest Factors Strongly Favor Transfer**

Once the threshold determination is met, the court must weigh the private interest factors. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen*, 545 F.3d at 315.

1.        **SDNY will provide easier access to sources of proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872 (E.D. Tex. 2013) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Where a plaintiff has manipulated venue and is an "ephemeral entity," little weight should be given to the location of its documents. *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010).

Because this is a patent infringement case, the location of Clear Channel's evidence is the most important consideration for the first private interest factor. Design and development of the

accused products occurred in White Plains, New York. (Beck Decl. ¶¶ 3, 6-7.) The financial information related to the accused products is located in White Plains. (*Id.*) Most employees with knowledge of the accused products work in White Plains. (*Id.*) Thus, the vast majority of evidence related to both infringement and damages is located in the transferee forum, and this factor clearly favors transfer. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting motion to transfer where majority of documents and evidence, along with several witnesses, were likely to be in the transferee forum).

An entity is considered ephemeral if it "does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum." *NovelPoint Learning*, 2010 WL 5068146, at *4. Blue Spike has only one employee and principal, Mr. Moskowitz, and evidence indicates he is not a resident of this District. His online presence and vehicle registration indicate he still resides in the condominium in Florida he owns. (Exs. 7, 8, 9, and 10.) Mr. Moskowitz's only local address is that of a bed and breakfast, probably where he stays while *visiting* Tyler. (Exs. 5 and 6.) If Mr. Moskowitz were a resident of Tyler, Texas law requires him to transfer his vehicle registration and obtain a driver license, which he has not done—he renewed the registration in Florida since instituting this action. (*Id.*; Ex. 12.) Further, because Mr. Moskowitz is the sole employee and Blue Spike sells no products and has no customers, all "research and development" must be done where Mr. Moskowitz resides—Florida. Thus, because Blue Spike is an ephemeral entity, *if* it has any evidence in this District, it is entitled to little weight under this factor.

The Federal Circuit has also noted that where the entity was formed "recently" and as an "artifact of litigation," a plaintiff's choice of venue is entitled to little weight. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). Mr. Moskowitz created the Blue Spike, **LLC**, entity only three months before beginning to file suits, and transferred the patents to the LLC entity from the Florida "Inc." entity (a prerequisite to having standing to bring the suits) on August 4—mere *days* before filing the first suits on August 9. (Ex. 2.) Blue Spike then filed nearly 100 suits against a broad swath of defendants without regard to their connections to this forum, as exemplified by the number of motions to transfer filed in these cases. This is exactly the sort of conduct that transfer under § 1404(a) is designed to prevent.

Further, the limited documents that may have been created since the LLC's formation, or shipped into this venue from Florida for the purposes of these suits, do not justify keeping this case here. *See Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered). Because the plaintiff will not offer *any* evidence that is based in this venue and Clear Channel has no employees or development activities related to the accused products in this venue, it is not a convenient forum.

Blue Spike may attempt to argue that it will offer evidence located outside the transferee forum; this will not diminish the convenience added by transfer. The first private factor still supports transfer even if some potentially relevant documents are located outside the transferee venue. *See, e.g.*, *In re Genentech*, 566 F.3d at 1345-46 (finding that the first factor weighed in favor of transfer where the documents related to the prosecution of the patents-in-suit were housed closer to the EDTX than to the transferee venue because such documents "would need to

be transported in any event"); *Fifth Generation Computer Corp. v. IBM*, No. 9:08-CV-205, 2009 WL 398783, at *4 (E.D. Tex. Feb. 17, 2009) (transferring the case to the SDNY and finding "not particularly relevant" to the first private factor that two Texas universities, outside the EDTX, were members of a consortium for the accused product).

Blue Spike may also try to argue that since most production will be electronic, this factor should be given little weight. The Fifth Circuit, however, has rejected this argument, holding that "advances in copying technology and information storage," the ease of access to the sources of proof "is a meaningful factor in the analysis." *In re Volkswagen*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."); *see also In re Genentech*, 566 F.3d at 1346. Clear Channel, as the accused infringer, holds the vast majority of potentially relevant evidence. All of the relevant sources of proof—potential witnesses and documents—are based in the SDNY, and no known sources are located in this District. Therefore, the ease of access to proof favors transfer.

## 2. SDNY provides better availability of compulsory process

The availability of subpoena power in the transferee forum favors transfer. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

A number of non-party witnesses are located in the SDNY, including former RCS and Media Monitors employees who were involved in the design and development of the accused products. Additionally, there are many universities, research institutions, and companies who were active in the field related to this action in the relevant timeframe located within the subpoena power of the SDNY. This is further exemplified by the number of prior art inventors and assignees located within the subpoena power of the SDNY. For example, in an information disclosure statement submitted during the prosecution of the Asserted Patents, at least 46

inventors and assignees were within the subpoena power of the SDNY. (Ex. 11.) These witnesses will likely have information relevant to the validity of the Asserted Patents, and to the extent they are unwilling to attend deposition or trial, the SDNY has the authority to compel their attendance.

Conversely, there are no known non-party witnesses located within the subpoena power of the EDTX. Blue Spike has no known affiliates, current or former employees, or customers within this Court's subpoena power. Of the two inventors, one is the sole employee of the plaintiff, and will therefore be made available wherever the case takes place. The other inventor, Mr. Berry, resides in Washington. Clear Channel is not aware of any non-party witnesses it intends to rely on who are subject to this Court's subpoena power. (Beck Decl. ¶ 8.) Because the SDNY has subpoena power over a significant number of known prior art witnesses and potential third-party witnesses, the availability of such power favors transfer to the SDNY. *See Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in plaintiff's chosen forum).

### 3.    SDNY will lower the cost of attendance for witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004). "All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial." *FutureVision.com*, 2013 WL 5496810, at *3. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of

inconvenience to witnesses increases in direct relation to the additional distance traveled." *In re Genentech*, 566 F.3d at 1343. "The '100 mile rule' favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue." *FutureVision.com*, 2013 WL 5496810, at *3.

The Fifth Circuit's 100-mile rule applies because the SDNY is approximately 1,500 miles from Tyler. (Ex. 13.) Application of this rule shows that defense witnesses would experience manifest inconvenience in traveling to Tyler. The majority of individuals knowledgeable about the accused products are located in White Plains, New York. (Beck Decl. ¶¶ 5-8.) The headquarters of RCS, where most of the pertinent witnesses work, is located only one mile from the SDNY courthouse in White Plains, and only 30 miles from the courthouse in Manhattan. (Ex. 14.) Thus, if this action is transferred, all currently identified witnesses for Clear Channel will have, at most, a 30-mile commute. That is a significant difference compared to the 1,500 miles these witnesses would have to travel to this District. Further, the only likely witnesses for plaintiff, the two named inventors (one of whom is also the sole employee of Blue Spike, LLC), do not reside in this District and will be forced to travel no matter what. Although Mr. Moskowitz has attempted to claim his residence is *now* in Tyler, the address provided appears to be a bed and breakfast, not an actual residence, and all other facts indicate that he is still a Florida resident. (Exs. 6-10.) Further, even if this Court believes that Mr. Moskowitz has truly relocated to Tyler, the impact of one material witness in the transferor forum will not override the considerations of convenience for the majority of other witnesses. *In re Genentech*, 566 F.3d at 1345 ("[b]ecause a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in

favor of transfer"); *Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 779 (E.D. Tex. 2009) (finding that the third private factor weighs in favor of transferring to the SDNY even though some witnesses resided in jurisdictions closer to the EDTX, including one in the SDTX); *Fifth Generation*, 2009 WL 398783, at *4-5 (finding that the third private factor weighed in favor of transfer out of the EDTX notwithstanding that one witness resided in Austin).

As for non-party witnesses, if any former employees are necessary, it is likely that they still live in the New York region. Further, Clear Channel has identified a number of potential prior art witnesses and other third party witnesses that are located much closer to the transferee forum. Additionally, an attorney located in Alexandria, Virginia, was involved in prosecuting at least two of the applications that resulted in the Asserted Patents. (Ex. 11 at 1.) Alexandria is located significantly closer to the Southern District of New York, and there are many transportation options between nearby Washington, D.C., and New York. (Ex. 15.) Thus, this factor weighs heavily in favor of transfer. *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160, 2012 WL 194370, at *3-4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district and no identified witness resides in plaintiff's chosen forum); *In re Biosearch Techs., Inc.*, 452 F. App'x 986 (Fed. Cir. 2011) (ordering transfer where neither party had identified any witnesses in the Eastern District of Texas). Because the vast majority of foreseeable witnesses are located in the SDNY, the cost of attendance factor weighs in favor of transfer. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000) ("Venue is considered convenient in the district or division where the majority of witnesses are located.").

11

### 4.    SDNY is the better venue for all practical purposes

The remaining considerations also favor transfer to the SDNY. First, this case is still in its beginning stages—there has been no case management conference, no scheduling order, and no discovery has taken place. *See, e.g., Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. June 7, 2011) (recognizing that transfer is more convenient when it occurs before discovery begins or the entry of a scheduling order).

Additionally, although this case has been consolidated with over 50 other cases involving the same patents for pretrial purposes, Blue Spike cannot be allowed to subvert the intent of 35 U.S.C. § 299 by filing numerous lawsuits as a way to establish proper venue. *See GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) ("The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer law and the recently enacted America Invents Act.").[2] In August 2012 alone, Blue Spike filed 37 cases in this District, undermining the purpose of § 1404(a) and 35 U.S.C. § 299. Clear Channel's accused products are unrelated to the other defendants, thus the

---

[2] *See also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (noting that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *GeoTag, Inc. v. Zoosk, Inc.*, No. 2:11-cv-403, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013) ("This litigation involves over 100 cases against in excess of 400 defendants. Although GeoTag asserts the '474 patent in each case, none of the cases involve related defendants or overlapping products or services. GeoTag argues that having a single court familiar with the facts and legal issues would produce significant gains in judicial economy. The Court disagrees."); *LT Tech, LLC v. FrontRange Solutions USA Inc.*, No. 3:13–cv–1901–M, 2013 WL 6181983, at *5 (N.D. Nov. 26, Tex. 2013) (citing *GeoTag* with approval); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7-8 (E.D. Tex. Mar. 5, 2012) ("Because the cases involve different products . . . and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.") (citation omitted); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008).

infringement analysis will be entirely different, and there is no overlap with other defendants. Thus, the existence of other lawsuits, filed to generate venue for defendants with no relationship to other defendants or this District, should not outweigh the overwhelming convenience of trying the case in the SDNY.

### C.    The Public Interest Factors Strongly Favor Transfer

After considering the private interest factors, district courts must also consider the public interest factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen*, 545 F.3d at 315.

#### 1.    Relative court congestion favors transfer

In the SDNY, only 161 patent cases were filed, and only 206 patent cases were pending, as of September 30, 2012. (Ex. 16 at 2.) Comparatively, in the same timeframe, 1,061 patent cases were filed, with 1,087 pending patent cases in EDTX. (*Id.* at 3.) The SDNY has a total of 49 U.S. District Judges, whereas the EDTX has seven. (Ex. 17 and 18.) Thus, even though the SDNY has a total 9,562 pending civil cases and the EDTX has only 3,744, on a per judge basis, that is only 195 civil cases per judge in the SDNY and 534 civil cases per judge in the EDTX. (Ex. 19.) This District is far more congested than the SDNY, and the SDNY has more resources to resolve cases. Therefore, the court congestion factor weighs heavily in favor of transfer.

#### 2.    Local interests favor transfer

Texas's interest in deciding the present conflict arising under federal patent laws is no greater than that of New York. *See, e.g.*, *Corbello v. DeVito*, No. 1:07CV985, 2008 WL 2097435, at *5 (E.D. Tex. May 19, 2008) (transferring to Nevada, finding that "Texas's interest in adjudicating a conflict arising under federal law is no greater than that of Nevada").

13

The only conceivable "local interest" is that citizens in the EDTX may have purchased some of the accused products. But the Federal Circuit unequivocally rejected the notion that the second public factor weighs against transfer where accused products are sold in the EDTX. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (adopting the holding of *Volkswagen* and finding that the sale of allegedly infringing headrests in the EDTX did not weigh against transfer). This Court's decisions are in accord. *See Jackson v. Intel Corp.*, No. 2:08-CV-154, 2009 WL 749305, at *3 (E.D. Tex. Mar. 19, 2009) (transferring to Illinois and finding that the second public factor weighs in favor of transfer even though allegedly infringing products are sold throughout the EDTX); *Fifth Generation*, 2009 WL 398783, at *5 (transferring to the SDNY and finding that the second public factor weighs in favor of transfer notwithstanding that the accused product is potentially available to customers in every district of the United States).

In contrast, RCS has been in business since 1979 in White Plains, and employs nearly 120 full-time employees there. The design and development of the allegedly infringing products took place there, involving citizens of New York. Thus, New York has a much greater local interest in the case. *See, e.g.*, *Network Prot. Scis. LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the transferee forum where defendants were headquartered, developed the accused products and employed thousands of people); s*ee also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.").

### 3. Both venues are familiar with the governing law and there is no conflict of law concern

The final two public interest factors are neutral because both venues are equally familiar with patent law, and there are no conflict of law concerns.

14

## IV.     CONCLUSION

The foregoing analysis establishes that whatever ephemeral ties Blue Spike has to this forum are significantly outweighed by the private and public factors favoring transfer.  This analysis demonstrates that the Southern District of New York is a clearly more convenient forum than the Eastern District of Texas for this action.  Clear Channel respectfully requests that this Court grant this motion to transfer venue to the Southern District of New York.

*/s/ Ryan K. Yagura*

Ryan K. Yagura (TX SBN 24075933)
ryagura@omm.com (CA SBN 197619)
O'Melveny and Myers LLP
400 S. Hope St.
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

15

## <u>CERTIFICATE  OF SERVICE</u>

I hereby certify  that on February 5, 2014, all counsel of record who have consented  to electronic  service  were served with  a copy of this document  via the Court's ECF system, pursuant  to Local Rule CV-5(a)(3).

*/s/ Ryan K. Yagura*
Ryan  K. Yagura

## <u>CERTIFICATE  OF CONFERENCE</u>

I hereby certify  that counsel for Defendant  has complied  with the meet and confer requirements  of Local Rule CV-7(h). This motion is opposed.  The parties engaged  in a telephonic  conference  on February 4, 2014, with  the following  participants:  Kirk Anderson  for Plaintiff  and Sarah Pfeiffer  for Defendant.   No agreement  was reached because the parties disagreed  as to the merits.   Discussions  have ended at an impasse.

*/s/ Ryan K. Yagura*
Ryan  K. Yagura
