IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-CV-499 MHS |
| | § | |
| TEXAS INSTRUMENTS, INC., | § | (LEAD CASE) |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| _____ | § | |
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-CV-582 |
| | § | |
| ACTV8, INC., | § | (CONSOLIDATED WITH 6:12-CV-499) |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| _____ | § | |

**DEFENDANT ACTV8, INC.'S MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant ACTV8, Inc. ("ACTV8"), whose relevant business operations are in the Central District of California, which has no connection to the facts at issue, respectfully moves the Court pursuant to 28 U.S.C. § 1404(a) for an order transferring the patent infringement action to the Central District of California, and states as follows:

**I.    INTRODUCTION**

This case is yet another example of forum shopping the Federal Circuit has repeatedly held must not be permitted. Under the guise of establishing a connection to the Eastern District, plaintiff Blue Spike, LLC ("Plaintiff") was formed as a Texas Corporation on May 14, 2012, and Blue Spike's founder and co-inventor Scott Moskowitz, who resides in Florida, established a part-time office and part-time residence in Tyler. These are Plaintiff's only connections to

the Eastern District of Texas. The other co-inventor resides in Seattle, Washington, and Plaintiff's lead attorney resides in California.

Transfer is warranted in this case under § 1404(a) and applicable Fifth Circuit and Federal Circuit precedent for the following reasons: (1) all of the material defense witnesses are located in the Central District of California and (2) the evidence is located in the Central District of California, not in the Eastern District of Texas. Moreover, the public interest factors for determining whether to transfer a case from the District either weigh in favor of transfer to the Central District of California, or are neutral and should not have any impact on the transfer analysis.

## II. BACKGROUND

The gravity of this suit is in the Central District Of California. On January 22, 2013, just eight months after incorporating in Texas,[1] Plaintiff filed the Complaint against ACTV8 alleging infringement of four U.S. patents by making, using, importing, selling and/or offering to sell audio fingerprinting software, systems, and technology. Complaint ¶ 27. Plaintiff has alleged infringement by numerous Accused Products[2] of ACTV8.

ACTV8's counsel informed Plaintiff's counsel that she believed venue was not proper in the Eastern District of Texas and that, unless Plaintiff agreed, ACTV8 would file a motion to transfer the matter to the Central District of California requesting that the Court transfer the case out of the Eastern District of Texas to the proper venue — Central District of California. Declaration of Myra Mormile in Support of ACTV8's Motion to Transfer ("Mormile Decl.") ¶

---

[1] The Articles of Organization and Texas Secretary of State website information are attached as Exs. 1 and 2, respectively, to the Mormile Decl.
[2] The Accused Products are ACTV's ACTV8 Platform, its Intelligent Synchronization Module, its Event Management System, its ActvAd Mobile Ad injection site, its Merchandise Management System, and its Catch applications, software, systems, and technology. Compl. ¶ 27.)

2

2. Plaintiff did not agree, and accordingly Defendant filed this motion requesting that the Court transfer the case out of the Eastern District of Texas to the proper venue— the Central District of California. ACTV8 seeks for this case to be transferred because it has no connection to the Eastern District of Texas and the named inventors reside outside the District.

### A.  ACTV8 Has No Connection To The Eastern District Of Texas.

ACTV8 is a Delaware corporation, with its major operations in one location – Beverly Hills, California. Declaration of Brian Shuster in Support of ACTV8's Motion to Transfer ("Shuster Decl.") ¶¶ 3, 5. No source of proof with respect to ACTV8 is located in the Eastern District of Texas. *Id.* ¶ 4. No likely ACTV8 fact witnesses or employees reside in the Eastern District of Texas. *Id.* None of the file servers, documents, or electronically stored information relevant to the claims and defenses in this lawsuit is located in the Eastern District of Texas. *Id.* ¶ 6.

The likely fact witnesses with respect to ACTV8 are in the Central District of California, rather than in the Eastern District, or any other Texas District. ACTV8's Beverly Hills, California office houses all of its current employees, including any potential ACTV8 material fact witnesses concerning the research, design, development and manufacturing of the Accused Products. *Id.* ¶ 7. As such, the majority of all foreseeable ACTV8 witnesses with information about the Accused Products and the claims and defenses in this lawsuit reside in the Central District of California. The distance from Beverly Hills, California to the District Court in Los Angeles, California is 9.1 miles, while the distance from Beverly Hills, California to Tyler, Texas is over 1,300 miles.[3]

The key sources of proof in this matter with respect to the Accused Products are all located in ACTV8's Beverly Hills, California office. The California office houses all of ACTV8's

---

[3] Distances calculated using http://www.infoplease.com/atlas/calculate-distance.html.

physical documents and electronically stored information relating to ACTV8's research, design, development and manufacture of the Accused Products as well as the servers and technical infrastructure associated with the research, design, development and manufacture of the Accused Products and documents relating to certain potential prior art relevant to the validity of the patents-in-suit. *Id.* ¶ 5.

### B. The Named Inventors Reside Outside Of The Eastern District Of Texas, And It Would Be More Convenient For At Least One Of Them To Travel To Los Angeles For Trial.

Both named inventors identified in the patents-in-suit reside outside of this District. The patents-in-suit identify two inventors, Scott A. Moskowitz and Michael W. Berry. Complaint Exs. A-D. Scott Moskowitz maintains a part-time office and part-time residence in Tyler, Texas but still resides in Sunny Isles Beach, Florida. Michael Berry resides in Seattle, Washington. *Id.* Ex. A. Moreover, it would be more convenient for inventor Berry to travel to Los Angeles for trial, rather than Tyler, Texas, as the distance from Seattle, Washington to Los Angeles, California is 960 miles, while the distance from Seattle to Tyler, Texas is nearly 2,000 miles.

### III. ARGUMENT

Federal law counsels that this action be transferred to the Central District of California because convenience dictates that it should be transferred, private and public interest factors weigh in favor of the transfer, all non-neutral factors weigh heavily in favor of transfer, and the fact that Plaintiff has filed many lawsuits in the Eastern District of Texas does not establish venue.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312

(5th Cir. 2008) (en banc) *(Volkswagen II)*.  Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted.  *Volkswagen II,* 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507-08 (1947).  The moving party must show good cause by demonstrating the transferee venue is clearly more convenient.  *Volkswagen II,* 545 F.3d at 314.  Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred.  *Id.* at 315 n.10.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Volkswagen II,* 545 F.3d at 315; *In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008). The relevant factors are divided between these private and public interests.  *Gilbert,* 330 U.S. at 508.  "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen II*, 545 F.3d at 315 (quotation omitted).  "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id.* (quotation omitted).  These factors are not exhaustive, and no single factor is dispositive.  *Id.*  The public and private interest factors weigh in favor of the transfer, and convenience dictates that the suit be transferred.

  **A.** **Convenience Dictates That This Suit Be Transferred To The Central District Of California.**

Convenience dictates that the suit be transferred to the Central District of California,

where all of ACTV8's witnesses and documents are located and where this suit should have originally been brought. A motion to transfer venue should be granted upon a showing that the transferee venue "is clearly more convenient" than the venue chosen by the plaintiff. *Volkswagen II*, 545 F.3d at 315 n.11 (en banc). The Federal Circuit has routinely held that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-21 (Fed. Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338, 1342-45 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).

The Federal Circuit has repeatedly required transfer in cases where all or most of the potential witnesses lived hundreds of miles, or over a thousand miles, from the Eastern District of Texas, even if the accused products were available for sale in the Eastern District of Texas as a part of a nationwide sales effort. For example, in *TS Tech*, the Federal Circuit reversed the District Court and transferred a case from the Eastern District because there was "no relevant connection between the actions giving rise to th[e] case and the Eastern District of Texas except that certain vehicles containing TS Tech's headrest assembly have been sold in the venue." 551 F.3d at 1321. Instead, the "vast majority of identified witnesses, evidence, and events leading to this case involve[d]" either Ohio (the proposed transferee forum) or Michigan. *Id.* Similarly, in *Genentech*, the Federal Circuit, in spite of inconvenience to the plaintiff, reversed the District Court and transferred an Eastern District case because "a substantial number of material witnesses reside within the transferee venue [the Northern District of California] and the state of California, and no witnesses reside within the Eastern District of Texas. . . ." 566 F.3d at 1345.

6

Likewise, in *Nintendo*, the Federal Circuit found the District Court erred by giving inadequate weight to the fact that witnesses would have to travel an additional 700 miles to attend trial in Texas versus the proposed transferee venue. *Id.* at 1198-1200.

The Federal Circuit has also rejected and condemned attempts by plaintiffs to manipulate venue and manufacture a local connection to the Eastern District of Texas by moving relevant information from other districts into the Eastern District of Texas and incorporating in Texas in anticipation of filing suit in the Eastern District. *See In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam) (reversing denial of motion to transfer and rejecting argument that plaintiff had connection to the Eastern District, stating that Texas offices were "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (transfer of documents to a company's offices in anticipation of litigation rather than to litigation counsel was a distinction without a difference for purposes of a § 1404(a) analysis). *See also In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336-37. ("[T]he assertion that these documents [75,000 pages of documents converted into electronic format demonstrating conception and reduction to practice and transferred to offices of litigation counsel in Texas] are 'Texas' documents is a fiction which appears to have been created to manipulate the propriety of venue.").

As in these cases, there is a stark difference here in convenience, relevance, and fairness between the two venues: (1) there is no link to the Eastern District of Texas other than the Plaintiff's movement of documents, one witness, and one corporate affiliation to the Eastern District just months prior to filing suit —possibly for no other purpose than to assist its venue arguments; (2) all of the witnesses and documents related to the Accused Products are in the Central District of California; and (3) no other convenience factors favor the venue chosen by

7

Plaintiff. Accordingly, this case should be transferred to the Central District of California.

Furthermore, this suit should have been brought in the Central District of California. A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312 (5th Cir. 2008) (en banc) *(Volkswagen II).* Under § 1400(b), venue is proper in any "judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For purposes of venue, a corporation is deemed to "reside" in any judicial district in which it is subject to personal jurisdiction when the action is commenced. 28 U.S.C. § 1391(c).

Plaintiff's claims against ACTV8 could have originally been brought in the proposed transferee forum, the Central District of California. Among other things, all of the foreseeable ACTV8 witnesses with information about the Accused Products and the claims and defenses in this lawsuit reside in the Central District of California. Shuster Decl. ¶ 7. All of ACTV8's documents relating to ACTV8's design, development, and manufacture of the Accused Products are located in ACTV8's Beverly Hills, California office. *Id.* ¶ 5. Therefore, venue is proper in the Central District of California.

   **B.** **The Private Interest Factors Weigh In Favor Of Transfer.**

The private interest factors strongly support transferring this action to the Central District of California. The relevant factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315.

   **1.** **Relative ease of access to sources of proof.**

The first private interest factor is the relative ease of access to sources of proof, and this

factor weighs in favor of transferring the action because all of the physical and documentary evidence that will be relevant to the Accused Products resides within ACTV8's offices in Beverly Hills, California. This factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. Although documentary evidence is often stored electronically, the Court considers the physical location of the evidence. *In re Genentech, Inc.*, 566 F.3d at 1345-46. Documents relocated in anticipation of litigation are not considered. *In re Hoffman-La Roche Inc.*, 587 F.3d at 1336-37.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.,* 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see In re Acer Am. Corp.,* 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Here, the relative ease of access to sources of proof favors transfer to the Central District of California because all of the physical and documentary evidence that will be relevant to the Accused Products resides with ACTV8's offices in Beverly Hills, California, within the Central District of California. *See Vasudevan Software, Inc. v. Int'l. Bus. Mach. Corp.*, No. 2:09-CV-105-TJW, 2009 WL 3784371, *2-*3 (E.D. Tex. Nov. 10, 2009) (ordering transfer where "[m]ost of the relevant IBM and Oracle documents [relating to the accused products] are located in the Northern District of California"); *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701-03 (E.D. Tex. 2011) (ordering transfer to California where most of the defendants were based and stating that ease of access to sources of proof "factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues.").

9

*See In re Acer*, 626 F.3d at 1256 (ordering transfer in part because majority of the defendants developed the accused products in Northern California and therefore "significant portion of the evidence will be located within the Northern District of California.").

All of the key witnesses and documents relating to the research, design, development, and manufacture of the Accused Products are in Beverly Hills, California. Shuster Decl. ¶¶ 4-7. Moreover, since ACTV8 has no witnesses, equipment, documents, or electronically stored information relevant to the claims and defenses in the Eastern District of Texas, no sources of proof with respect to these parties are located in this District. *Id. See, e.g., In re Acer*, 626 F.3d at 1256 ("sources of proof factor also weighs significantly in favor of transfer" where no likely proof in Eastern District).

> 2. **The availability of compulsory process to secure the attendance of witnesses.**

The availability of compulsory process to secure the attendance of witnesses favors transfer, as all of the witnesses regarding the Accused Products reside in Beverly Hills and none reside in this District. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche,* 587 F.3d at 1337-38. This factor requires the Court to look at non-party witness convenience rather than convenience of the party witnesses. *Mohamed v. Mazda Motor Corp.,* 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum. *See Volkswagen II,* 545 F.3d at 316; *see id.* at 304 (describing that Rule 45 of the Federal Rules of Civil Procedure protects non-party witnesses who live or work more than 100 miles from the courthouse).

Here, there are no known defense witnesses subject to the Court's subpoena power in the

Eastern District of Texas or within 100 miles of where trial will be held.  *See* FED. R. CIV. P. 45(b)(2).  The Central District of California, however, is home to the key individuals and relevant documents that are the basis for testimony regarding the technology at issue in the litigation.  Shuster Decl. ¶ 3-7.  Transfer is favored because the Central District of California can compel these witnesses to attend both depositions and trial, while the Eastern District of Texas cannot.  *See In re Acer*, 626 F.3d at 1255-56 ("This factor surely tips in favor of transfer" where subpoena powers of the Eastern District of Texas could only be invoked for the witnesses of one party, but Northern District of California had power to subpoena relevant witnesses of all the other parties).  Further, one of the two inventors lives outside of the District.  See Compl. Ex. A.  Potential prior art witnesses in California would also benefit from the transfer.  *See Azure Networks v. CSP PLC*, No. 6:11-cv-139, at 12 (E.D. Tex. June 25, 2012).

### 3. The cost of attendance for willing witnesses.

The cost of attendance for willing witnesses favors transfer, as all of the witnesses regarding the Accused Products reside in the Central District of California and none reside in this District.  One of the most important factors is the cost of attendance for witnesses.  In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and nonparty witnesses.  *See In re Volkswagen AG,* 371 F.3d 201, 204 (5th Cir. 2004) *(Volkswagen I)* (requiring courts to "contemplate consideration of the parties and witnesses").  Nevertheless, the convenience to non-party witnesses is afforded greater weight than that of party witnesses.  *NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.,* No. 6:10-cv-229 JDL, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010).  Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II,* 545 F.3d at 317.  The greater distance

witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. *See Volkswagen I*, 371 F.3d at 205.

This factor weighs in favor of transfer here because all of the foreseeable witnesses with information regarding the Accused Products are located in the Central District of California. *See Vasudevan Software, Inc.,* 2009 WL 3784371 at *2-*3 (ordering transfer where "[t]he vast majority of likely IBM and Oracle witnesses [knowledgeable about the accused products] are located in the Northern District of California."). By contrast, only one witness resides part time in the Eastern District of Texas, and only took up residence there months prior to filing suit. The witnesses identified in the Central District of California would experience great inconvenience in having to travel over 1,300 miles to this District for trial. Taking into account all parties, therefore, the Central District of California is clearly a more convenient forum.

### 4. Other practical problems that make trial of a case easy, expeditious, and inexpensive.

This case is in its infancy, as there has been no discovery. As such, no practical problems exist that should deter transfer to the Central District of California. A plaintiff is not permitted to manipulate venue by initiating patent infringement litigation against multiple, unrelated defendants located in different districts, and then rely on the problem of litigating in multiple forums as a justification to avoid transfer. *See Geotag, Inc. v. Aromatique, Inc.*, Case No. 2:10-cv-00570-JRG, at *10 (E.D. Tex. Jan. 14, 2013) (the Court "will not permit the existence of separately filed cases to sway its transfer analysis . . . Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer underpinning transfer law and the recently enacted America Invents Act."); *Secured Mail Solutions LLC v. Advanced Image Direct LLC, et. al.*, 8-12-cv-01090 (C.D. Cal. Jan. 30, 2013) (ordering transfer and stating "patent holders who sue multiple defendants located in different districts, for different allegedly

12

infringing products, may encounter the cost of multiple law suits in different forums."). This litigation involves over fifty cases against in excess of 100 defendants. Like in *Geotag*, "[a]lthough all of the cases [filed by Blue Spike] involve infringement claims, none of them share the same accused services" and there are no "common issues" that would not be present in all infringement cases. *Id.* at *10. This is not a situation where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute. The Court should not give any weight to the need to avoid transferring the case.

        C.       **The Public Factors Weigh In Favor Of Transfer.**

The public interest factors strongly support transferring this action to the Central District of California. The relevant factors are (1) the local interest in having localized interests decided at home, (2) the administrative difficulties flowing from court congestion, and (3) the familiarity of the forum with the law that will govern the case. *Volkswagen II*, 545 F.3d at 315.

        1.       **The local interest in having localized interests decided at home.**

Traditionally, the location of the alleged injury is an important consideration. *In re TS Tech,* 551 F.3d at 1321. When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *In re Hoffman-La Roche,* 587 F.3d at 1338. The local interest in the litigation is an important consideration because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I,* 371 F.3d at 206.

As in *TS Tech*, there is "no relevant connection between the actions giving rise to this case and the Eastern District of Texas." 551 F.3d at 1321. The Central District of California, on the other hand, has a far greater localized connection to this case. Nearly all of the likely

13

witnesses, evidence, and events leading to this case involve the Central District of California. ACTV8 does not have an office in the Eastern District of Texas; no likely witnesses reside in the Eastern District of Texas; and no evidence is located within the venue. Because this case has no meaningful connection with the Eastern District of Texas, and the Central District of California does have a localized interest in deciding this case, this factor favors transfer. *See Vasudevan Software, Inc.*, 2009 WL 3784371 at *2-*3 (transferee district had localized interest in the case where "[e]ach accused IBM and Oracle product was designed and developed in the Northern District of California, and the vast majority of the relevant documents and witnesses for the Defendants are located in the Northern District of California.").

### 2. The administrative difficulties flowing from court congestion.

There would not be any administrative difficulties that would arise from transferring or retaining this case. Accordingly, this factor is neutral.

### 3. The familiarity of the forum with the law that will govern the case.

This case will be governed by the Patent Laws of the United States. The Eastern District of Texas and the Central District of California are both familiar with the patent laws. This factor is neutral.

### 4. The avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

This case poses no conflicts of law issues and does not implicate foreign law. This factor is neutral.

### D. All Non-Neutral Factors Weigh Heavily In Favor Of Transfer.

The Central District of California is a more convenient venue than the Eastern District of Texas: (i) the sources of proof related to ACTV8 and its Accused Products are located in the Central District of California; (ii) none of the likely fact witnesses not reside in or near the

14

Eastern District of Texas; (iii) it is inconvenient and expensive for the parties' witnesses to travel to Tyler; and (iv) there are no sources of proof in the Eastern District of Texas.

## IV. CONCLUSION

For the foregoing reasons, Defendant ACTV8, Inc. respectfully requests that the Court grant its request to transfer this case to the Central District of California.

Dated: February 5, 2014

Respectfully submitted,

By: */s/ Myra Mormile*
David R. Yohannan *(Pro Hac Vice)*
KELLEY DRYE & WARREN LLP
The Washington Harbor
3050 K Street, N.W. Suite 400
Washington, D.C. 20007
Tel: (202) 342-8616
dyohannan@kelleydrye.com

Myra C. Mormile *(Pro Hac Vice)*
KELLEY DRYE & WARREN LLP
333 W. Wacker Drive, Suite 2600
Chicago, IL 60606
Tel: (312) 857-2501
mmormile@kelleydrye.com

Allen Franklin Gardner (Texas Bar No. 24043679)
Michael E. Jones (Texas Bar No. 10969400)
Daniel A. Noteware, Jr. (Texas Bar No. 24051123)
POTTER MINTON, P.C.
110 N. College
Suite 500
Tyler, Texas 75702
Telephone: 903-597-8311
Facsimile: 903-593-0846
allengardner@potterminton.com
mikejones@potterminton.com
dannynoteware@potterminton.com

*Attorneys for Defendant ACTV8, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 5, 2014.

>*/s/Myra Mormile*
>Myra Mormile

## CERTIFICATE OF CONFERENCE

This motion is opposed. Pursuant to Local Rule CV-7(h), I, Myra Mormile, counsel for ACTV8, Inc., contacted Plaintiff's counsel by telephone on February 5, 2014, requesting their consent to transfer this action to the Central District of California. Plaintiff's counsel did not agree to the transfer.

>*/s/Myra Mormile*
>Myra Mormile