**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-499-MHS |
| Plaintiff, | LEAD CASE |
| v. | Jury Trial Demanded |
| TEXAS INSTRUMENTS, INC., | |
| Defendant. | |
| BLUE SPIKE, LLC, | Civil Action No. 6:12-CV-685-MHS |
| Plaintiff, | CONSOLIDATED CASE |
| v. | ORAL ARGUMENT REQUESTED |
| 3M COGENT INC., | Jury Trial Demanded |
| Defendant. | |

**DEFENDANT 3M COGENT INC.'S MOTION TO TRANSFER VENUE**
**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**
**DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

       A.     Witnesses And Documents Regarding The Accused Products Are Located In Central California.................................................................... 2

       B.     3M Cogent Has Minimal or No Connection To The Eastern District Of Texas .... 3

       C.     Blue Spike's Only Connection to This District Was Contrived For the Purposes of Litigation ..................................................................................... 3

III.   ARGUMENT ...................................................................................................... 5

       A.     Venue Is Proper In The Central District Of California........................................ 8

       B.     Private Interest Factors Strongly Favor Transfer To The Central District Of California ............................................................................................. 8

              1.     Easier Access To Sources Of Proof Favors The Central District Of California ............................................................................ 8

              2.     Availability Of Compulsory Process Favors The Central District Of California ........................................................................... 10

              3.     Cost Of Attendance For Willing Witnesses Favors The Central District Of California .................................................................... 11

              4.     All Other Concerns Weigh In Favor Of Transfer .................................... 12

       C.     Public Interest Factors Support Transfer To The Central District Of California . 13

              1.     Administrative Difficulties Flowing From Court Congestion ................. 13

              2.     Local Interest Favors The Central District Of California ........................ 14

              3.     Both Forums Are Familiar With The Governing Law............................. 14

              4.     There Is No Conflict Of Laws Questions ................................................ 15

IV.    CONCLUSION.................................................................................................. 15

Pursuant to 28 U.S.C. § 1404(a), Defendant 3M Cogent, Inc. ("3M Cogent"), whose relevant business operations are in the Central District of California, respectively moves to transfer this action to the United States District Court for the Central District of California.

## I.       INTRODUCTION

Under the transfer jurisprudence of this District, this matter belongs in the Central District of California.  Plaintiff Blue Spike, LLC ("Blue Spike") has no real ties to the Eastern District of Texas.  Indeed, the type of venue manipulation and forum shopping Blue Spike is engaging in here threatens to "undermine the principals underpinning transfer law and the recently enacted America Invents Act."  *GeoTag, Inc. v Zoosk, Inc.*, No. 2:11-cv-403-MHS, Dkt. No. 114, at 11 (E.D. Tex. Jan. 14, 2013).  Blue Spike, LLC, the entity behind the spree of more than 80 suits against more than 150 defendants filed in this District in August 9, 2012, did not even exist until it was formed on May 11, 2012, less than three months before its litigation campaign began.  The patents-in-suit were only transferred to Blue Spike five days before the litigation campaign began.  Blue Spike, Inc., the prior owner of the patents-in-suit, is a long-standing Florida corporation with no identifiable activities in Texas, much less in this District.  One co-inventor of the patents-in-suit, Scott Moskowitz, is a long-time resident of Florida; the other, Michael Berry, lives in Seattle, Washington.

In contrast, 3M Cogent is a corporation headquartered in Pasadena, California.  Documents and electronic information relating to the products accused of infringement are located in its offices in Pasadena.  Witnesses knowledgeable about the accused products in this case reside in the Central District of California.  They work out of 3M Cogent's Pasadena offices, where they can most easily access documents relating to the accused products.  As such, the Central District of California is clearly the more convenient forum for this dispute.  Accordingly, 3M Cogent respectfully requests that this Court transfer this dispute under 28 U.S.C. § 1404(a) to the Central District of California.

## II.     FACTUAL BACKGROUND

Blue Spike filed suit against 3M Cogent in this District on September 21, 2012, alleging that 3M Cogent's "SA-4ii OEM Fingerprint Module, CAFIS, CAPFIS, LiveScan Scanners (such as CS 500e, CS1000e, CS500p, CS1000p), Mobile ID Solutions (such as BlueCheck II, Bluecheck II U, MI2, MI3, and Fusion), and Software Development Kits (such as FPCaptureAccess and FPCaptureExpress)" (collectively, the "Accused Products")  infringe U.S. Patent Nos. 8,214,175 (the " '175 patent"), 7,949,494 (the " '494 patent"), 7,660,700 (the " '700 patent"),  and 7,346,472 (the " '472 patent") (collectively, the "Asserted Patents").  (Dkt. No. 1, ¶ 27.)[1]  The Asserted Patents share a common specification and describe methods and systems for identifying text, visual, audio, and video signals that match signals stored in a database.  As described below, the relevant facts weigh in favor of transfer to the Central District of California.

### A.     Witnesses And Documents Regarding The Accused Products Are Located In Central California

3M Cogent is a wholly owned subsidiary of 3M Company, Inc.  3M Cogent maintains its headquarters in Pasadena, California.  (Declaration of David R. Kniffin In Support Of Defendants' Motion To Transfer dated February 5, 2014 ("Kniffin Decl."), ¶ 4.)  Since its founding in 1990, originally as Cogent Systems, Inc., in South Pasadena, California, 3M Cogent has been headquartered in the Central District of California.  (*Id.*, ¶ 6.)  3M Cogent's headquarters in Pasadena, California is its center of operations and home to a majority of its U.S. employees, including staff, engineers, and  managers, relevant to this action.  (*Id.*, ¶ 6.)

Decisions related to 3M Cogent's overall business, including the most significant sales, marketing and engineering decisions related to the Accused Products, are made by business and technical managers in the Pasadena, California office.  (*Id.*, ¶ 9.)  For example, the SA-4ii OEM Fingerprint Module (one of the Accused Products) was developed by 3M Cogent in Pasadena.

---

[1]  Unless otherwise noted, the docket ("Dkt.") citations are to *Blue Spike LLC v. 3M Cogent, Inc.*, Case No. 6:12-CV-685-MHS, which has now been consolidated with the lead case (*Blue Spike LLC v. Texas Instruments, Inc.*, Case No. 6:12-CV-499-MHS).

(*Id.*, ¶ 7.)  In particular, engineers with relevant knowledge regarding the SA-4ii OEM Fingerprint Module product and its fingerprint recognition functionality are based in Pasadena or ultimately report to individuals there.  (*Id.*, ¶ 7.)  Specifically, Anne Wang, Senior Technical Manager, Xu Chen, Finance Manager, and Michael Hollowich, Executive Vice President, Business Development and Proposals, are likely witnesses who possess relevant knowledge concerning the design and operation of 3M Cogent's biometric functionality (the technology at issue in the lawsuit), and both are employed at 3M Cogent's Pasadena, California location.  (*Id.*, ¶ 13.)

Similarly, 3M Cogent developed the other Accused Products – CAFIS, CAPFIS, LiveScan Scanners (such as CS 500e, CS1000e, CS500p, CS1000p), Mobile ID Solutions (such as BlueCheck II, Bluecheck II U, MI2, MI3, and Fusion), and Software Development Kits (such as FPCaptureAccess and FPCaptureExpress) – in Pasadena, California.  (Kniffin Decl., ¶ 7.) Engineers with relevant knowledge of these systems are also located in Pasadena, California. (*Id.*)  All relevant electronic documents, such as those generated by engineers or managers that relate to the development or operation of the Accused Products, are most easily accessible in Pasadena, California, as that is where the persons who can identify and locate such documents work.  (*Id.*, ¶¶ 8, 13.)

### B.      3M Cogent Has Virtually No Connection To The Eastern District Of Texas

As explained above, 3M Cogent maintains its corporate documents and employs the majority of its personnel relevant to this action at its headquarters in Pasadena.  (Kniffin Decl., ¶ 4.)  Additionally, no 3M Cogent employee or representative likely to be a witness in this matter resides in the Eastern District of Texas.  (*Id.*, ¶ 5.)  Furthermore, none of the file servers, documents or electronically stored information relevant to the claims and defenses in this lawsuit are maintained by 3M Cogent in the Eastern District of Texas.  (*Id.*, ¶ 10.)

### C.      Blue Spike's Only Connection to This District Was Contrived For the Purposes of Litigation

There is no indication that Blue Spike, Inc. has ever conducted any business within the Eastern District of Texas.  On May 14, 2012, a mere three months before bringing this action, Mr. Moskowitz incorporated Blue Spike in Tyler, Texas.  (Dkt. No. 678-24.)  On August 4, 2012, less than a week before filing the lead case in this District, Mr. Moskowitz, on behalf of Blue Spike, Inc., assigned the Asserted Patents to Blue Spike.  (Dkt. No. 678-25.)  There is no indication that Blue Spike has any employees other than Mr. Moskowitz, or that Blue Spike has any customers, in this District or elsewhere.

Despite stating in his April 2013 declaration opposing defendant Tygart Tech's motion to dismiss that he owned a condominium in Florida where he lives part-time when receiving medical treatment, Mr. Moskowitz in January 2014 lists only his Tyler, Texas address in opposing various defendants' motions to transfer.  *Cf.* (Dkt. Nos. 696-1; 1135.)  Notably, the address listed by Mr. Moskowitz as his Tyler residence, 433 S. Chilton Ave., is a bed and breakfast called the "Chilton Grand."  *See* (Dkt. Nos. 696-1; 1135; Kramer Decl., ¶ 3.) Furthermore, there is no indication in the public record that Mr. Moskowitz has sold, offered for sale, rented or otherwise disposed of his Florida condominium, which at the time of this filing was still listed as the contact address of Blue Spike, Inc. and has been listed since at least September 2000 as Mr. Moskowitz' address. (Kramer Decl., ¶ 4; Dkt. No. 678-6.)  Mr. Moskowitz used his Florida residence in registering a vehicle in November, 2012, and appears to have voted in Florida in November, 2012, both approximately three months after launching this litigation campaign and six months after registering Blue Spike as a Texas entity.  (Dkt. Nos. 678-19; 678-20.)

In contrast to his claim of recent relocation to Tyler, Texas, Mr. Moskowitz has used the address of his Florida condominium since at least 2000.  In an inventor declaration submitted to the Patent Office in 2000 during the prosecution of U.S. Patent Application Serial No. 09/657,181 (the "'181 Application") (the original application that led to the Asserted Patents), Mr. Moskowitz declared his residence as Florida.  (Dkt. Nos. 1-2 through 1-5; 678-4.)  From late 2005 to 2008, Mr. Moskowitz himself prosecuted the '181 Application from his residence in

Florida.  (Dkt. Nos. 678-6; 678-7.)  In March 2008, the '181 Application issued as the '472 patent, identifies, on its face, Mr. Moskowitz as a Florida resident.  (Dkt No. 1-5.)  From 2007 to 2010, Mr. Moskowitz prosecuted two continuation applications of the '181 Application, again from his residence in Florida.  (Dkt. Nos. 678-9; 678-10.)  These two applications, issued as the '700 and '494 patents, identify Moskowitz as still residing in Florida.  (Dkt. Nos. 1-3; 1-4.)

In February 2011, Mr. Moskowitz submitted another inventor declaration in the prosecution of a third continuation application of the '181 Application, averring his residence in Florida and Washington.  (Dkt. No. 678-11.)  That application, issued as the '175 patent in July 2012, identified Mr. Moskowitz as still residing in Florida.  (Dkt. No. 1-2.)

Moreover, Mr. Moskowitz' patent applications and patents published or issued between August 2012 to January 2013 identify his residence in Florida.  (Dkt. No. 678-12.)  Further, Mr. Moskowitz has been an officer of at least three Florida-based companies: Blue Spike, Inc., Canopus Medical LLC, and Wistaria Trading Inc.  (Dkt. Nos. 678-13; 678-14;  678-15.)  Two of these companies filed annual reports with the Secretary of State of Florida in January 2013 and January 2014 listing Florida as the principal place of business for both.  (Dkt. Nos. 678-16; 678-17.)  Notably, Mr. Moskowitz signed both of these filings on January 20, 2013, and January 13, 2014, respectively, all indicating that he currently resides in Florida.  (*Id.*; Kramer Decl. ¶ 2.)

## III.   ARGUMENT

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue.  *In re Volkswagen of Am., Inc*., 545 F.3d 304, 312 (5th Cir. 2008) (en banc).  Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted.  *Volkswagen*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

507-08 (1947).  The moving party must show good cause by demonstrating the transferee venue is clearly more convenient.  *Volkswagen*, 545 F.3d at 314.

Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice in determining whether transfer is proper.  *Volkswagen*, 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  The relevant factors include both private and public interests.  *Gilbert*, 330 U.S. at 508.  "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen*, 545 F.3d at 315 (quotation omitted).  "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id.* (quotation omitted).  These factors are not exhaustive, and no single factor is dispositive.  *Id.*

A motion to transfer venue should be granted upon a showing that the transferee venue "is clearly more convenient" than the venue chosen by the plaintiff.  *Volkswagen*, 545 F.3d at 315. The Federal Circuit has routinely held that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009).

The Federal Circuit has repeatedly required transfer in cases where all or most of the potential witnesses lived many hundreds or more than a thousand miles from the Eastern District of Texas, even if the accused products were available for sale in the District as a part of a nationwide sales effort.  The Federal Circuit reversed the district court in *TS Tech* and transferred

the case from the Eastern District because there was "no relevant connection between the actions giving rise to th[e] case and the Eastern District of Texas except that certain vehicles containing TS Tech's headrest assembly have been sold in the venue." 551 F.3d at 1321. Instead, the "vast majority of identified witnesses, evidence, and events leading to this case involve[d]" either Ohio (the proposed transferee forum) or Michigan. *Id.* Similarly, in *Genentech*, the Federal Circuit, in spite of inconvenience to the plaintiff, reversed the district court and transferred an Eastern District case to the Northern District of California because "a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas. . . ." 566 F.3d at 1345. Likewise, in *Nintendo*, the Federal Circuit found the district court erred by giving inadequate weight to the fact that witnesses would have to travel an additional 700 miles to attend trial in Texas versus the proposed transferee venue. *Id.* at 1198-1200.

The Federal Circuit has also rejected and condemned attempts by plaintiffs to manipulate venue and manufacture a local connection to the Eastern District of Texas by moving relevant information from other districts into the Eastern District of Texas and incorporating in Texas merely in anticipation of filing suit in the Eastern District. *See In re Microsoft Corp*., 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam) (reversing denial of motion to transfer and rejecting argument that plaintiff had a connection to the Eastern District, stating that Texas offices were "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (transfer of documents to a company's offices in anticipation of litigation rather than to litigation counsel was a distinction without a difference for purposes of a § 1404(a) analysis). *See also In re Hoffmann-La Roche Inc*., 587 F.3d at 1336-37. ("[T]he assertion that these documents [75,000 pages of documents converted into electronic format demonstrating conception and reduction to practice and transferred to offices of litigation counsel in Texas] are 'Texas' documents is a fiction which appears to have been created to manipulate the propriety of venue."). As explained

below, the relevant factors clearly favor transferring this action to the Central District of California.

### A. Venue Is Proper In The Central District Of California

Determination must first be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen II*). Cases could have been filed in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case. *Id.* There can be no dispute that the Central District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a), personal jurisdiction over 3M Cogent, and is a proper venue for this case because 3M Cogent is based there, conducts most of its business there and a substantial percentage of its employees are located there. *See* 28 U.S.C. § 1391(b).

### B. Private Interest Factors Strongly Favor Transfer To The Central District Of California

Courts consider a number of private interest factors in deciding whether to transfer a case, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. All of these factors favor transfer to the Central District of California.

#### 1. Easier Access To Sources Of Proof Favors The Central District Of California

The first private interest factor is the relative ease of access to sources of proof. When evidence could be more readily accessed from the proposed transferee district this factor weighs in favor of transfer. The Court should consider the physical location of the evidence, despite the fact that evidence is often stored electronically. *In re Genentech, Inc.*, 566 F.3d 1338, 1345-46 (Fed. Cir. 2009). "In patent infringement cases, the bulk of the relevant evidence usually comes

from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2447 (2011). Documents relocated in anticipation of litigation are not considered.  *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336-37.

Here, as discussed above, 3M Cogent's documents relevant to this case are most readily accessible in Pasadena, California, and 3M Cogent employees with relevant knowledge who are likely to testify regarding the Accused Products are located in Pasadena, California. *Vasudevan Software, Inc. v. Int'l. Business Machines Corp.*, 2009 WL 3784371, *2-*3 (E.D. Tex. Nov. 10, 2009) (ordering transfer where "Most of the relevant IBM and Oracle documents [relating to the accused products] are located in the Northern District of California"); *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701-03 (E.D. Tex. February 22, 2011) (ordering transfer to California where most of the defendants were based and stating that ease of access to sources of proof "factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues."). *See In re Acer*, 626 F.3d at 1256. (Ordering transfer in part because majority of the defendants developed the accused products in Northern California and therefore a "significant portion of the evidence will be located within the Northern District of California.").

In contrast, Blue Spike was formed a mere three months before it filed its first of dozens of lawsuits in this District and Scott Moskowitz, its only connection to the Eastern District of Texas, continued to live in Florida through at least January, 2013.  (Dkt. Nos. 678-16; 678-17.) Any limited documents created in the short time since Blue Spike was create or moved to the Eastern District of Texas for the purpose of this litigation are less relevant than those of the accused infringer. *See Optimum Power Solutions*, 794 F. Supp. 2d at 701 (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a

- 9 -

venue in anticipation of litigation should not be considered); *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) ("[W]eight given to the location of [plaintiff's] documents is determined by whether plaintiff is an 'ephemeral' entity.").

Here, evidence relevant to the question of infringement is located and more readily accessible in the Central District of California, favoring transfer to that district. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102, at *2-*3 (Fed. Cir. Dec. 22, 2011) (ordering transfer to the Northern District of California where neither party had identified any witnesses in the Eastern District of Texas); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting motion to transfer where majority of documents and evidence, along with several witnesses, were likely to be in that district).

### 2.     Availability Of Compulsory Process Favors The Central District Of California

Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses.  Absolute subpoena power means the power to compel attendance at both depositions and trial.  *Hoffman-La Roche*, 587 F.3d at 1337-38.  This factor requires the Court to look at non-party witness convenience rather than convenience of the party witnesses.  *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum.  See *Volkswagen*, 545 F.3d at 304 (describing that Rule 45 of the Federal Rules of Civil Procedure protects non-party witnesses who live or work more than 100 miles from the courthouse).

Here, there are no known non-party defense witnesses subject to the Court's subpoena power in the Eastern District of Texas or within 100 miles of where trial will be held. See Fed. R. Civ. P. 45(b)(2).  However, numerous customers of 3M Cogent that purchase the products at

issue in this case are located in the Los Angeles area.  Insofar as non-party customer witnesses have relevant testimony about 3M Cogent's products at issue, these non-party witnesses are located within the trial subpoena power of the court in the Central District of California. (Kniffin Decl., ¶ 17.)  Furthermore, the Central District of California is home to the key individuals and relevant documents that are the basis for testimony regarding the technology at issue in the litigation.  (*Id.*, ¶¶ 7, 9.)  Transfer is favored because the Central District of California can compel these witnesses to attend both depositions and trial, while the Eastern District of Texas cannot.  *In re Acer*, 626 F.3d at 1255-1256 ("This factor surely tips in favor of transfer" where subpoena powers of the Eastern District of Texas could only be invoked for the witnesses of one party, but Northern District of California had power to subpoena relevant witnesses of all the other parties).  Potential prior art witnesses in California would also benefit from the transfer.  See *Azure Networks v. CSP PLC*, No. 6:11-cv-139, at 12 (E.D. Tex. June 25, 2012).

### 3.      Cost Of Attendance For Willing Witnesses Favors The Central District Of California

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses," affording greater weight to non-party witnesses.  *GeoTag*, Dkt. No. 114, at 8.  For distances over 100 miles between the existing venue and a proposed venue under § 1404(a), "the factor of inconvenience to witnesses increases in direct relation to the additional distance traveled."  *In re Genentech*, 566 F.3d at 1343.

In this case, 3M Cogent's likely witnesses, including engineers and managers, reside and work within the Central District of California.  Maintaining this action in the Eastern District of Texas forces each of these witnesses to travel nearly 1,500 miles each way to testify in this Court. *Droplets, Inc.*, 2012 WL 3578605, at *5.  In contrast, there is no indication Blue Spike has any employees other than Mr. Moskowitz, a longtime resident of Florida who claims to now live in a Tyler, Texas bed and breakfast while maintaining his Florida condominium as the headquarters of Blue Spike, Inc., Wistaria Trading and his other companies.

With respect to non-party witnesses, Mr. Berry, the co-inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to the Central District of California than to this Court, and numerous customers, non-party engineers and others familiar with the prior art are located in California. *Droplets, Inc.*, 2012 WL 3578605 at *5 (noting that location of relevant third-party witnesses in, and closer to, the transferee venue favored transfer); (Dkt. No. 678-1 at 4.)

Accordingly, the locations of both party and non-party witnesses weigh in favor of transfer to the Central District of California. *See In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard of forcing witnesses to travel over 900 miles to attend trial to be "clear error"); *Optimum Power Solutions*, 794 F. Supp. 2d at 702 (granting motion to transfer where no witnesses were identified in the Eastern District of Texas); *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at **3-4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district and no identified witness resides in plaintiff's chosen forum).

### 4.      All Other Concerns Weigh In Favor Of Transfer

With respect to the remaining concerns, each also favors transfer to the Central District of California. This case has, at the time of this filing, not progressed beyond the initial case management conference. Infringement and invalidity contentions have not been disclosed and no discovery on infringement or invalidity has been taken. *See, e.g., Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun. 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the fact that Blue Spike has filed dozens of cases in this District, nearly all of which are pending, does not counsel against transfer. As this Court recently noted, transfer analysis cannot be swayed or manipulated by serially filing cases within a single district. *GeoTag*, Dkt. No. 114, at 11 ("The Court will not permit the existence of separately filed cases to sway its

- 12 -

transfer analysis.  Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district. ") (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)).  Here, Blue Spike was formed as a spin-off entity, apparently with a single employee who lists as his address a bed and breakfast, for the exclusive purpose of litigation in this District only three months before launching a campaign of over 80 lawsuits against over 150 defendants in this District concerning a wide variety of distinct products and services.

Permitting Blue Spike to manipulate litigation through a clear attempt to manufacture venue runs afoul of 28 U.S.C. § 1404(a) and its purpose of controlling forum shopping, as well as contravening one of the key purposes of the recently enacted America Invents Act– limiting the joinder of unrelated parties in patent cases.  *See  GeoTag*, Dkt. No. 114,. at 11; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (stating that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv- 211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E\*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("'Because the *cases involve different products . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.'") (emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

###   C.   Public Interest Factors Support Transfer To The Central District Of California

Alongside private interest factors, public factors are also considered.  Those include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *See GeoTag*, Dkt. No. 114, at 3.  These factors also weigh in favor of transfer.

###   1.   Administrative Difficulties Flowing From Court Congestion

There would not be any administrative difficulties that would arise from transferring or retaining this case.  Accordingly, this factor is neutral.

### 2.    Local Interest Favors The Central District Of California

As this Court has noted, when accused products and services are sold nationwide, the alleged injury "does not create substantial local interest in any particular district." *GeoTag*, Dkt. No. 114, at 12; *see also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.").  Local interest in such cases lies in the home district to a party because "the suit may call into question the reputation of individuals that work in the community."  Here, the Accused Products are sold nationwide but are developed, maintained, managed and marketed from the Central District of California by the majority of 3M Cogent's U.S. workforce.  The Central District of California therefore has a particularized local interest in this matter.

In contrast, Blue Spike's only ties to or local interest in this District are manufactured and contrived for the purposes of mass litigation.  An LLC designed merely as a patent holding company, created on the eve of litigation and having a single employee living in a bed and breakfast creates little local interest that justifies maintaining this action in this District.  Stated differently, the ties of 3M Cogent to the Central District of California are well-established and strong where Blue Spike's are ephemeral, contrived and manufactured.  As such, this factor strongly favors transfer to the Central District of California.  *See, e.g., Network Prot. Sciences LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the Northern District of California where defendants were headquartered, developed the accused products and employed thousands of people).

### 3.    Both Forums Are Familiar With The Governing Law

The Central District of California is familiar with patent law, as is this Court.  Thus, this factor is neutral.

### 4.     There Is No Conflict Of Laws Questions

This case does not implicate conflicts of law.  This factor is neutral.


## IV.     CONCLUSION

For the foregoing reasons, balancing all of the private and public factors demonstrates that the Central District of California is clearly more convenient than the Eastern District of Texas for this action.  3M Cogent respectfully requests that this Court grant the requested transfer to the Central District of California.

Dated:  February 5, 2014                    Respectfully submitted,


                                            */s/ Robert F. Kramer*
                                            Robert F. Kramer
                                            CA Bar No. 181706 (admitted E.D. Texas)
                                            C. Gideon Korrell
                                            CA Bar No. 246188 (admitted to E.D. Texas)
                                            DENTONS US LLP
                                            1530 Page Mill Road, Suite 200
                                            Palo Alto, CA 94304
                                            Telephone:  (650) 798-0356
                                            Facsimile:  (650) 798-0310
                                            robert.kramer@dentons.com
                                            gideon.korrell@dentons.com

                                            ATTORNEYS FOR DEFENDANT
                                            3M COGENT, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 5, 2014, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's ECF system. Local Rule CV-5(a)(3).

*/s/ Robert F. Kramer*
Robert F. Kramer

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 4, 2014 via telephone conference with the following participants: Kirk Anderson for the Plaintiff and Cynthia Liu for the Defendant. No agreement could be reached because plaintiff declined to consent to transferring the case to the Central District of California. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Robert F. Kramer*
Robert F. Kramer
