# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:12-CV-499 LED |
| | § | |
| v. | § | |
| | § | |
| TEXAS INSTRUMENTS, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:12-CV-568 LED |
| | § | |
| v. | § | |
| | § | |
| ZEITERA, LLC, | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT ZEITERA, LLC'S
## MOTION TO TRANSFER VENUE TO
## THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)

# TABLE OF CONTENTS

Page

I.   FACTUAL BACKGROUND ........................................................................2

    A.   Procedural Posture ........................................................................2

    B.   Witnesses and Documents Regarding the Zeitera Accused Products Are Located in Northern California ................................................3

    C.   Key Third-Party Witnesses Concerning Blue Spike's Inequitable Conduct and Invalidity of the Asserted Patents Reside in California....................4

    D.   A Large Number of Additional Prior Art Entities and Witnesses Are Also in Northern California ............................................................5

    E.   The Inventors Also Reside Outside of this District .................................6

    F.   Blue Spike Was Incorporated in this District for Purposes of this Litigation ........................................................................6

II.  ARGUMENT ........................................................................6

    A.   Venue Is Proper in the Northern District of California............................6

    B.   Private Interest Factors Strongly Favor Transfer to the Northern District of California ........................................................................7

        1.   Easier Access to Sources of Proof Favors the Northern District of California ........................................................................7

        2.   Availability of Compulsory Process Favors the Northern District of California ........................................................................8

        3.   Cost of Attendance for Willing Witnesses Favors the Northern District of California ........................................................................9

        4.   All Other Concerns Weigh in Favor of Transfer ........................................12

    C.   Public Interest Factors Support Transfer ................................................13

        1.   Relative Court Congestion Is Neutral ....................................................13

        2.   Local Interest Favors The Northern District Of California ......................13

        3.   Both Forums Are Familiar With The Governing Law..............................14

        4.   There Is No Conflict Of Laws Question ..................................................14

## **<u>TABLE OF CONTENTS</u>**
### **(Continued)**

**<u>Page</u>**

III.     CONCLUSION ................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Balthasar Online, Inc. v. Network Solutions, LLC*,
   654 F. Supp. 2d 546 (E.D. Tex. 2009) ................................................................................2

*Droplets, Inc. v. Amazon.com, Inc.*,
   No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) ..........................................9, 10

*Droplets, Inc. v. E\*Trade Fin. Corp.*,
   No. 11-cv-255, 2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) ................................................12

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
   No. 10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ....................................................8

*GeoTag, Inc. v. Zoosk, Inc.*,
   Case No. 2:11-cv-403-MHS, Dkt. No. 114 ("*GeoTag Order*").................................... *passim*

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)................................................................................................8

*In re Biosearch Techs., Inc.*,
   No. 995, 2011 WL 6445102 (Fed. Cir. Dec. 22, 2011) ..........................................................8

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)......................................................................................7, 8, 10

*In re Hoffman-La Roche*,
   587 F.3d 1333 ..........................................................................................................................8

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)..............................................................................................12

*In re TS Tech USA*,
   551 F.3d 1315 (Fed. Cir. 2008)..............................................................................................11

*In re Volkswagen AG*,
   371 F.3d 201 (Fed. Cir. 2004).............................................................................................6, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ...............................................................................................6, 7

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)..............................................................................................13

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Internet Machs. LLC v. Alienware Corp.*,
No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun 7, 2011) ...................................................12

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ..............................................12

*Network Protection Scis. LLC v. Juniper Networks, Inc.*,
No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012)..................................2, 14

*NovelPoint Learning LLC v. LeapFrog Enters.*,
No. 10-cv-229-JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ..........................................8

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)..............................................2

*Optimum Power Solutions v. Apple, Inc.*,
794 F. Supp. 2d 696 (E.D. Tex. 2011)...........................................................................2, 7, 11

*PersonalWeb Techs., LLC v. Google Inc.*,
No. 6:11-cv-656-LED, 2013 U.S. Dist. LEXIS 46296
(E.D. Tex. Mar. 21, 2013).................................................................................................2, 14

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
No. 10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ........................................11

**STATUTES**

28 U.S.C. § 1331...................................................................................................................6

28 U.S.C. § 1338(a) ..............................................................................................................6

28 U.S.C. § 1391(b)...............................................................................................................7

28 U.S.C. § 1404(a) ...................................................................................................... *passim*

35 U.S.C. § 299
Leahy-Smith America Invents Act (2011)............................................................................12

Pursuant to 28 U.S.C. § 1404(a), Zeitera, LLC, d/b/a Zample ("Zeitera") respectfully files this Motion to Transfer Venue to the United States District Court for the Northern District of California.

The present case has no relation to this District beyond the fact that plaintiff Blue Spike, LLC ("Blue Spike") was formed in Texas for the purpose of pursuing this and other actions just months before its litigation activity began.  The patents-in-suit were transferred to Blue Spike on August 4, 2012—only five days before Blue Spike's litigation campaign began against other defendants.  And neither inventor, nor any identified witness of Blue Spike, resided in this District at the time the lead suit was instituted.  One co-inventor, Scott Moskowitz, is a long time resident of Florida and was a resident of Florida at the time this case was filed on January 8, 2013[1]; the other, Michael Berry, lives in Seattle, Washington.  Since the filing of the earliest application in 2000, the patents-in-suit belonged to Blue Spike, Inc., a longstanding Florida corporation, with no identifiable activities in Texas, much less in this District.

This case, however, maintains very significant ties to the Northern District of California. All of Zeitera's executives and staff making significant decisions regarding the accused systems work at Zeitera's headquarters in Sunnyvale, California.  None are in Texas.  To the extent customers use Zeitera's technology, they are connecting to and using Zeitera's servers, software and databases primarily located in the Northern District of California, and none in Texas.

Most importantly, key third-party witnesses and documents are located in the Northern District of California.  To date, Zeitera has identified six third-party witnesses with unique knowledge regarding Blue Spike's inequitable conduct before the United States Patent and Trademark Office ("USPTO").  These fact witnesses possess critical testimony, yet voluntary

---

[1] As addressed below, Mr. Moskowitz was a Florida resident at the time this case was instituted, which is the relevant period for the purposes of this motion.

attendance at Zeitera's trial in Texas is unlikely due to work and other obligations.  Those witnesses, as well as many additional prior art witnesses, reside in Northern California.

This Court has repeatedly recognized that transfer is appropriate in cases like this one, where neither party has substantial ties to this District and the Northern District of California is clearly the more convenient forum.[2]  Consistent with these facts and this District's prior decisions, the Northern District of California is the "clearly more convenient" forum for this dispute.  Accordingly, Zeitera requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

## I.   FACTUAL BACKGROUND

### A.   Procedural Posture

Blue Spike filed suit against Texas Instruments, Inc. on August 9, 2012.  (Case No. 12-cv-499, Dkt. No. 1.)[3]  This suit was later designated the Lead Case, as this Court began consolidating other complaints filed by Blue Spike.  (Dkt. No. 16.)

Blue Spike filed suit against Zeitera in this District on August 23, 2012.  (Case No. 12-cv-00568-LED, Dkt. No. 1.)  On March 25, 2013, the Court consolidated that case into cause number 6:12-cv-499, *Blue Spike, LLC v. Texas Instruments, Inc.*, for all pretrial purposes.  (*Id.*, Dkt. No. 32.)  Blue Spike alleges that Zeitera "makes, uses, offers for sale and/or imports into the U.S. products, systems and/or services including, but not limited to, its Vvid, TangoAV, and ACR fingerprinting software, systems, and technology ('Zeitera Accused Products')."  (*Id.*, Dkt.

---

[2] *See, e.g., PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, 2013 U.S. Dist. LEXIS 46296 (E.D. Tex. Mar. 21, 2013); *Network Protection Scis. LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012); *Optimum Power Solutions v. Apple, Inc.*, 794 F. Supp. 2d 696 (E.D. Tex. 2011); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010); *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546 (E.D. Tex. 2009).

[3] Except where otherwise noted, citations to docket numbers will be to Case No. 12-cv-499.

No. 1 ¶ 30.)  Blue Spike asserts infringement of U.S. Patent Nos. 7,346,472 ("'472 Patent"), 7,660,700 ("'700 Patent"), 7,949,494 ("'494 Patent"), and 8,214,175 ("'175 Patent") (collectively, "Asserted Patents").  (*Id.* at 1.)  The Asserted Patents share a common specification and purportedly relate to methods and systems for identifying matching text, visual, audio, and video signals.

> ### B.  Witnesses and Documents Regarding the Zeitera Accused Products Are Located in Northern California

Since its founding, Zeitera has been headquartered in the Bay Area, California, within the Northern District of California—in the cities of San Jose, Mountain View, and now Sunnyvale. (Declaration of Shashank Merchant in support of Zeitera's Motion to Transfer ("Merchant Decl.") ¶ 4.)  Zeitera's headquarters in Sunnyvale is its strategic and operational center.  (*Id.*)

Zeitera's witnesses with relevant knowledge all work in Sunnyvale, California.  All significant decisions relating to Zeitera's overall business, including the sales, marketing and engineering decisions relating to the Accused Systems, are made by senior executives working in Sunnyvale, California.  (*Id.* ¶¶ 5–9.)  All of Zeitera's personnel, including its staff, engineers, product managers, and executives, work in Northern California.  (*Id.* ¶¶ 4, 11.)  Key employees in Sunnyvale, California include Shashank Merchant, VP of Engineering, and Yasha Spong, Director of Business Development.  (*Id.* ¶¶ 6–9.)  These employees possess relevant knowledge concerning the development, operation, marketing, and sales of the Accused Systems.  (*Id.*)

Most of Zeitera's documents, including electronic documents, are located at Zeitera's Sunnyvale headquarters.  (*Id.* ¶ 8.)  These materials include documents relating to the development and operation of the Accused Systems, source code repositories, containing sensitive, trade-secret source code relating to the Accused Systems, and documents relating to

sales and marketing for the Accused Systems.  (*Id.* ¶¶ 8, 9.)  No documents or witnesses with knowledge relating to the Accused Systems are located in this district.  (*Id.* ¶ 10.)

### C.   Key Third-Party Witnesses Concerning Blue Spike's Inequitable Conduct and Invalidity of the Asserted Patents Reside in California

The claimed inventions of the Asserted Patents are not novel.  As set forth in Facebook, Inc.'s Amended Answer to Original Complaint for Patent Infringement ("Facebook's Amended Answer"),[4] the named inventor and Blue Spike's president, Scott Moskowitz, knew of material prior art systems offered by a company named Muscle Fish LLC ("Muscle Fish").[5]  (Dkt. No. 868, ¶¶ 15–35.)  Muscle Fish was founded in 1992 in Northern California by Erling Wold, Doug Keislar, Thom Blum and Jim Wheaton.  (*Id.* ¶ 17.)  During the mid 1990s, Muscle Fish developed a technology "for looking up and comparing known and unknown content based on a set of features of content called 'MFCCs.'"  (*Id.* ¶ 18.)  Muscle Fish later merged with Audible Magic Corporation.  (*Id.* ¶ 20.)  Vance Ikezoye and James Schrempp of Audible Magic built on Muscle Fish's technology, creating a system "for identifying media content presented over a media playing device."  (*Id.*; Declaration of Bryan Kohm in Support of Motion to Transfer Venue ("Kohm Decl."), Ex. 25 (U.S. Patent No. 6,834,308), at Abstract.)[6]

The Muscle Fish and Audible Magic technologies predate the Blue Spike patents, the first of which was filed in 2000.  Mr. Moskowitz knew of these technologies.  He had multiple discussions with Muscle Fish about its technology during the late 1990s, and even had licensing discussions regarding the technology in 2001 with Audible Magic.  (Dkt. No. 868, ¶¶ 24, 27.)

---

[4] AOptix is in the process of amending its answer to include the same inequitable conduct allegations as set forth in Facebook's Amended Answer.

[5] The factual statements in this section are based on the factual allegations in Facebook's Amended Answer.

[6] All exhibits cited in this motion are attached to the Kohm Declaration.

During the prosecution of the asserted patents, Mr. Moskowitz concealed the commercially available implementations of the Muscle Fish and Audible Magic systems from the USPTO.  (*Id.* ¶¶ 25–26, 28.)  The materiality of these technologies is demonstrated by the simple fact that Blue Spike now accuses those technologies of infringing the asserted patents.  (*Id.* ¶ 29.)

The Muscle Fish and Audible Magic prior art systems are relevant to not just inequitable conduct but also to invalidity, as they invalidate claims of the asserted patents.  All six of the inventors of Muscle Fish and Audible Magic technologies reside in Silicon Valley.[7]  Due to their work obligations, they are unable to travel to Texas for Zeitera's trial.[8]

### D. A Large Number of Additional Prior Art Entities and Witnesses Are Also in Northern California

Northern California also is home to numerous companies and research institutions with relevant prior art.  Indeed, prior art references cited during the prosecution of the Asserted Patents alone identify many inventors and companies situated in Northern California.  For example, during the prosecution of the '472 Patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior art references.  (Ex. 1.)  Among them, at least nine patent assignees and at least 24 prior art inventors reside in Northern California.  (Kohm Decl. ¶¶ 5–6; Exs. 2, 3.)  These witnesses possess information relevant to the state of the art and validity of the asserted patents.

---

[7] *See* paragraph 3 of the Declarations in Support of Defendant SoundHound's Motion to Transfer Venue of James Schrempp, Douglas Keislar, Thomas Blum, Vance Ikezoye, James Wheaton, and Erling Wold filed with the present motion.  (Dkt. Nos. 916-1 ("Blum Decl."), 916-2 ("Ikezoye Decl."), 916-3 ("Keislar Decl."), 916-5 ("Schrempp Decl."), 916-6 ("Wheaton Decl."); 916-7 ("Wold Decl.") (collectively, "Witness Declarations").)

[8] Witness Declarations, ¶ 4.

### E.      The Inventors Also Reside Outside of this District

The location of the named inventors was comprehensively addressed in pending motions to transfer venue, including SoundHound, Inc.'s Motion to Transfer Venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a), which is hereby incorporated by reference.  *See* Dkt. No. 916, pp. 5–7.

### F.      Blue Spike Was Incorporated in this District for Purposes of this Litigation

Blue Spike's incorporation in this District was comprehensively addressed in pending motions to transfer venue, including SoundHound, Inc.'s Motion to Transfer Venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a), which is hereby incorporated by reference.  *See* Dkt. No. 916, p. 7.

## II.     ARGUMENT

Whether a case should be transferred pursuant to 28 U.S.C. § 1404(a) turns on, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate the proposed transferee venue is clearly more convenient.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).  The relevant factors strongly favor transferring this action to the Northern District of California.

### A.      Venue Is Proper in the Northern District of California

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004) (citation omitted).  A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case.  *See id*. There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a).  Nor is there any question that

6

the Northern District of California has personal jurisdiction over Zeitera and is a proper venue for this case given Zeitera's presence there.  *See* 28 U.S.C. § 1391(b).

### B.   Private Interest Factors Strongly Favor Transfer to the Northern District of California

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.  All of these factors weigh in favor of transfer to the Northern District of California.

### 1.   Easier Access to Sources of Proof Favors the Northern District of California

In analyzing the first private interest factor, this Court recognizes that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *GeoTag, Inc. v. Zoosk, Inc.*, Case No. 2:11-cv-403-MHS, Dkt. No. 114 ("*GeoTag Order*"), at 3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Here, as discussed above, Zeitera's documents relevant to this case are located in Northern California,[9] as are Zeitera's employees who will testify regarding the Accused Systems.

In contrast, Blue Spike was formed a mere three months before filing its first lawsuit in this District. The limited documents created since Blue Spike's formation, or those trucked into Texas for purposes of this litigation, do not merit keeping the case here. *See Optimum Power*

---

[9] Although documentary evidence may be stored electronically, the Court considers the physical location of where those documents are stored.  *Genentech*, 566 F.3d at 1345–46.  In this case, Zeitera stores all of its relevant documents in the Northern District of California.  (Merchant Decl. ¶ 8.)  None are stored in this District.  (*Id*. ¶ 10.)

*Solutions*, 794 F. Supp. 2d 696 at 701 (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered); *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) ("[W]eight given to the location of [plaintiff's] documents is determined by whether [plaintiff] is an 'ephemeral' entity.'"). As the accused infringers, Zeitera is likely to possess a larger volume of documents relevant to this litigation. *See Genentech*, 566 F.3d at 1345. Accordingly, the relevant evidence in this action is more readily accessible from the Northern District of California, favoring transfer to that district. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102, at *2–3 (Fed. Cir. Dec. 22, 2011) (ordering transfer to the Northern District of California where neither party had identified any witnesses in the Eastern District of Texas); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting transfer to the Northern District of California where majority of documents and evidence, and several witnesses, were likely to be in that district).

## 2. Availability of Compulsory Process Favors the Northern District of California

A venue is favored when it has subpoena power to compel attendance at deposition and trial over the majority of non-party witnesses. *See GeoTag Order* at 5 (citing *In re Hoffman-La Roche*, 587 F.3d 1333, 1337–38). Here, a great number of potential non-party defense witnesses are located in the Northern District of California, home to universities and high-tech companies which were active in the field of endeavor relevant to this action in the relevant timeframe. As discussed above, it would be too burdensome for the six Muscle Fish and Audible Magic witnesses to attend Zeitera's trial if it were to proceed in Texas. (Witness Declarations, ¶ 4.)

But because they reside in Silicon Valley, they are subject to compulsory process in the Northern District of California.[10]  (*Id.*, ¶ 3.)  In addition, the inventors themselves identified to the PTO at least 24 different third-party prior art inventors (and at least nine different prior art entities) who reside in Northern California.  To the extent these non-party prior art witnesses are unwilling to attend deposition or trial, the Northern District of California has the authority to compel their attendance.

In contrast, there are no known third-party witnesses who would be subject to the subpoena power of the Eastern District of Texas.  Blue Spike is a non-practicing entity and has no known affiliates that are under this Court's subpoena power.  One of the co-inventors is an employee of the plaintiff, and the other currently resides in Washington.  Zeitera is unaware of any non-party defense witnesses who are subject to this Court's subpoena power.  Since the Northern District of California has absolute subpoena power over a significant number of known third-party witnesses, including both inequitable conduct and prior art witnesses, the availability of such power favors transfer to the Northern District of California.  *See Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in the chosen forum).

### 3.    Cost of Attendance for Willing Witnesses Favors the Northern District of California

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses."  *GeoTag Order* at 8.  While courts analyze the

---

[10] Although Blue Spike has sued Audible Magic in a separate action, the Muscle Fish and Audible Magic witnesses are third parties as to the action between AOptix and Blue Spike, and therefore this Court lacks subpoena power over those witnesses for the purpose of Zeitera's trial.

convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Id*. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Genentech*, 566 F.3d at 1343 (citation omitted). Moreover, the question is not whether "*all* of the witnesses" reside in the transferee forum, but whether a "substantial number" are there. *See id.* at 1345 (emphasis in the original). Here, with respect to party witnesses, Zeitera's witnesses in this action, including its engineers, managers, and executives, reside and work within the Northern District of California. If this case is not transferred, these witnesses would each be burdened with travel of at least 1,500 miles each way to testify in this Court. *See Droplets, Inc.*, 2012 WL 3578605, at *5. Since Zeitera is a small but growing company, the simultaneous travel of multiple witnesses to trial will cause significant disruption to its business operations at home.

As for Blue Spike, it appears to have a single employee, Mr. Moskowitz, who is a long time resident of Florida. In opposition to other transfer motions pending in this consolidated case, Blue Spike claims that Mr. Moskowitz is now present in Texas and has a medical condition that makes it difficult for him to travel and even asserts that travel over long distances by car or plane is "life threatening." See Dkt. No. 1135, ¶ 17. The veracity of Mr. Moskowitz's assertion is belied by his own Google+ webpage, which shows that he travelled between Fort Lauderdale, Florida and New Orleans, Louisiana between July 25 and 29, 2012, apparently to attend Jazz Fest. (Exs. 26–27). Even if Mr. Moskowitz's assertion were true, Blue Spike could always elect to put any trial testimony of Mr. Moskowitz on by videotaped deposition. The convenience of this one witness does not outweigh the inconvenience, work disruption, and cost to virtually all

of the other party and non-party witnesses who would otherwise have to travel to this District. Indeed, given that Mr. Moskowitz voluntarily moved to Texas, at least allegedly, with full knowledge of his condition for the purpose of filing the present lawsuit, permitting his condition to trump the convenience of all other witnesses would be to sanction his and Blue Spike's forum shopping.

With respect to non-party witnesses, numerous engineers familiar with prior art instrumentalities are centralized in Northern California and would also have to travel over 1,500 miles to attend trial in this District (to the extent they are willing). These non-party witnesses will have to bear the burden and expense of airfare, hotels, meals, and other expenses associated with travel away from home. More importantly, these non-party witnesses will suffer additional days of absence from their work and other endeavors if they need to travel to this District for trial as opposed to trial in Northern California. And, Mr. Berry, the co-inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to Northern California than to this Court. *See id.* (noting that location of relevant third-party witnesses in, and closer to, the transferee venue favored transfer).

In sum, the locations of both party and non-party witnesses also favor transfer to the Northern District of California. *See In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be "clear error"); *Optimum Power Solutions*, 794 F. Supp. 2d at 702 (granting motion to transfer to the Northern District of California where no witnesses were identified in the Eastern District of Texas); *Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at *3–4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple potential witnesses reside in the transferee district).

### 4.     All Other Concerns Weigh in Favor of Transfer

The remaining considerations also favor transfer to the Northern District of California. First, this case is still in its infancy: no case management conference has been scheduled; no scheduling order has been issued; and, no discovery has taken place.  *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.,* No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun 7, 2011) (recognizing transfer is more convenient when request comes before initial disclosures or the entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against transfer.  As this Court recently emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue:  "The Court will not permit the existence of separately filed cases to sway its transfer analysis.  Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district." *GeoTag Order* at 11 (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)).  Here, Blue Spike was formed in this District only three months before this action.  Permitting Blue Spike to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping, and defeat the purpose of a key provision of the recently enacted America Invents Act, which limits the joinder of unrelated parties in patent cases. *See id*.; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("Because the *cases involve different products . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.")

12

(emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

### C.   Public Interest Factors Support Transfer

Courts also consider public interest factors in deciding whether transfer is appropriate. The public interest factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law."  *See GeoTag Order* at 3 (citation omitted).  These factors also weigh in favor of transfer.

#### 1.    Relative Court Congestion Is Neutral

The first public interest factor generally "favors a district that can bring a case to trial faster."  *Id*. at 11 (citation omitted).  Based on the most recently available statistics from the Federal Judicial Center, this District has a median time from filing to disposition of 8.7 months, and for cases going to trial 25.5 months, while the Northern District of California has a median time of 6.4 months, and for cases going to trial 27.5 months.  (Ex. 24.)  Given California's slightly shorter median time and this District's slightly short trial time, this factor is neutral.

#### 2.    Local Interest Favors The Northern District Of California

While the location of the alleged injury is traditionally an important consideration, this Court noted that "[w]hen the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district;" instead, the local interest lies in the district that is home to a party because "the suit may call into question the reputation of individuals that work in the community."  *GeoTag Order* at 12; *see also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.") (citation omitted).  Even if the Accused

13

Systems in this case are deemed to be available nationwide, the Northern District of California—where the Accused Systems were developed and are still maintained and managed by Zeitera staff, engineers, and managers—has a particularized local interest in resolving this dispute.  *See, e.g.*, *PersonalWeb Techs.*, 2013 U.S. Dist. LEXIS 46296, at *39 (finding the Northern District of California to have a strong local interest in a case because that was where the defendant was headquartered and the accused products were developed).  In contrast, there is no legitimate local interest with respect to the alleged infringement in this District, where, as discussed above, Blue Spike's ties to this District are ephemeral and entirely manufactured in anticipation of litigation. Local interest, thus, strongly favors transfer to the Northern District of California.  *See, e.g.*, *Network Prot. Scis.*, 2012 WL 194382, at *7 (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the Northern District of California where defendants were headquartered, developed the accused products and employed many people).

### 3.    Both Forums Are Familiar With The Governing Law

Both venues are equally familiar with patent law.  Thus, this factor is neutral.

### 4.    There Is No Conflict Of Laws Question

This case does not implicate conflicts of law and thus this factor is neutral.

## III.    CONCLUSION

For the foregoing reasons, Zeitera respectfully requests that this Court grant the requested transfer to the Northern District of California.

Dated:    February 5, 2014                    FENWICK & WEST LLP


                                              By: */s/ Bryan A. Kohm*
                                                     Bryan A. Kohm

                                              Teresa M. Corbin, CA Bar No. 132360
                                              (Admitted E.D. Texas)
                                              Bryan A. Kohm, CA Bar No.233276
                                              (Admitted E.D. Texas)
                                              David Lacy Kusters, CA Bar No.241335
                                              (Admitted E.D. Texas)
                                              Fenwick & West LLP
                                              555 California Street, 12th Floor
                                              San Francisco, California 94104
                                              Telephone:      (415) 874-2300
                                              Facsimile:      (415) 281-1350

                                              Darren E. Donnelly, CA Bar No. 194335
                                              (Admitted E.D. Texas)
                                              Fenwick & West LLP
                                              Silicon Valley Center
                                              801 California Street
                                              Mountain View, California 94041
                                              Telephone:    (650) 955-8500
                                              Facsimile:      (650) 983-5200

                                              Attorneys for Defendant
                                              Zeitera, LLC

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 4, 2014 via telephone conference with the following participants: Peter Brasher for the Plaintiff and Teresa Corbin for the Defendant. No agreement could be reached because the parties disagreed on the merits. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Bryan A. Kohm*
Bryan A. Kohm

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 5, 2014.

/s/ *Bryan A. Kohm*
Bryan A. Kohm