# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § § | Civil Action No. 6:12-CV-499 LED |
| Plaintiff, | § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| TEXAS INSTRUMENTS, INC., | § § | |
| Defendant. | § § § | |
| BLUE SPIKE, LLC, | § § § | Civil Action No. 6:13-cv-00040-MHS |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| AOPTIX TECHNOLOGIES, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT AOPTIX TECHNOLOGIES, INC.'S
MOTION TO TRANSFER VENUE TO
THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND ................................................................2

    A.      Procedural Posture ............................................................2

    B.      Witnesses and Documents Regarding the Accused Systems Are Located in Northern California ..................................................3

    C.      Key Third-Party Witnesses Concerning Blue Spike's Inequitable Conduct And Invalidity of the Asserted Patents Reside in California....................4

    D.      A Large Number of Additional Prior Art Entities And Witnesses Are Also in Northern California ..................................................6

    E.      The Inventors Also Reside Outside of this District .................................6

    F.      Blue Spike Was Incorporated in this District for Purposes of this Litigation........................................................................6

II. ARGUMENT .....................................................................................7

    A.      Venue Is Proper in the Northern District of California............................7

    B.      Private Interest Factors Strongly Favor Transfer to the Northern District of California ........................................................7

            1.      Easier Access to Sources of Proof Favors the Northern District of California ......................................................8

            2.      Availability of Compulsory Process Favors the Northern District of California ......................................................9

            3.      Cost of Attendance for Willing Witnesses Favors the Northern District of California ................................................10

            4.      All Other Concerns Weigh in Favor of Transfer .......................12

    C.      Public Interest Factors Support Transfer .............................................13

            1.      Relative Court Congestion Is Neutral .......................................14

            2.      Local Interest Favors the Northern District of California..........................14

            3.      Both Forums Are Familiar with the Governing Law................................15

            4.      There Is No Conflict of Laws Question .....................................15

# **TABLE OF CONTENTS**
### **(Continued)**

**Page**

III.     CONCLUSION ................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AOptix Technologies, Inc. v. Blue Spike, LLC*,
No. 13-cv-1105-EDL (N.D. Cal.) (filed Mar. 11, 2013) ...........................................2

*Balthasar Online, Inc. v. Network Solutions, LLC*,
654 F. Supp. 2d 546 (E.D. Tex. 2009).......................................................................2

*Droplets, Inc. v. Amazon.com, Inc.*,
No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) ...................................10, 11, 12

*Droplets, Inc. v. E*Trade Fin. Corp.*,
No. 11-cv-255, 2012 WL 3133398 (E.D. Tex. Mar. 5, 2012) ................................13

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
No. 10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ....................................9

*GeoTag, Inc. v. Zoosk, Inc.*,
Case No. 2:11-cv-403-MHS, Dkt. No. 114 ("*GeoTag Order*"), at 3 ............................. *passim*

*In Re Hoffman-La Roche*,
587 F.3d 1333 (Fed. Cir. 2009).................................................................................9

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010).................................................................................9

*In re Biosearch Techs., Inc.*,
No. 995, 2011 WL 6445102 (Fed. Cir. Dec. 22, 2011) ...........................................9

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).................................................................................8, 10

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011).................................................................................13

*In re TS Tech USA*,
551 F.3d 1315 (Fed. Cir. 2008).................................................................................12

*In re Volkswagen AG*,
371 F.3d 201 (Fed. Cir. 2004)...................................................................................7, 14

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ....................................................................................7, 8

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010) ............................................................................13

*Internet Machs. LLC v. Alienware Corp.*,
No. 10-cv-023, 2011 WL 2292961 (E.D. Tex. Jun 7, 2011) .................................12

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) .............................13

*Network Protection Scis. LLC v. Juniper Networks, Inc.*,
No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ..................2, 15

*NovelPoint Learning LLC v. LeapFrog Enters.*,
No. 10-cv-229-JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ..........................8

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ............................2

*Optimum Power Solutions v. Apple, Inc.*,
794 F. Supp. 2d 696 (E.D. Tex. 2011) ..........................................................2, 8, 12

*PersonalWeb Techs., LLC v. Google Inc.*,
No. 6:11-cv-656-LED, 2013 U.S. Dist. LEXIS 46296
(E.D. Tex. Mar. 21, 2013) ...............................................................................2, 14

*Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*,
No. 10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ........................12

**STATUTES**

28 U.S.C. § 1331 .........................................................................................................7

28 U.S.C. § 1338(a) ....................................................................................................7

28 U.S.C. § 1391(b) ....................................................................................................7

28 U.S.C. § 1404(a) ........................................................................................... *passim*

35 U.S.C. § 299,
Leahy-Smith America Invents Act (2011) ...........................................................13

**RULES**

Fed. R. Civ. P. 12(b)(2) .............................................................................................1

iv

AOptix Technologies, Inc. ("AOptix") has moved to dismiss the present action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Dkt. No. 968.) Because no decision regarding that motion has been issued and in light of the Court's order requiring that all motions to transfer be filed on or before February 5, 2014, AOptix respectfully files this Conditional Motion to Transfer Venue to the United States District Court for the Northern District of California.  AOptix requests this relief in the alternative to its motion to dismiss this action for lack of personal jurisdiction over AOptix.[1]  (*Id.*)

The present case has no relation to this District beyond the fact that plaintiff Blue Spike, LLC ("Blue Spike") was formed in Texas for the purpose of pursuing this and other actions just months before its litigation activity began.  The patents-in-suit were transferred to Blue Spike on August 4, 2012—only five days before Blue Spike's litigation campaign began against other defendants.  And neither inventor, nor any identified witness of Blue Spike, resided in this District at the time the lead suit was instituted.  One co-inventor, Scott Moskowitz, is a long time resident of Florida and was a resident of Florida at the time this case was filed on January 8, 2013[2]; the other, Michael Berry, lives in Seattle, Washington.  Since the filing of the earliest application in 2000, the patents-in-suit belonged to Blue Spike, Inc., a longstanding Florida corporation, with no identifiable activities in Texas, much less in this District.

This case, however, maintains very significant ties to the Northern District of California. All of AOptix's executives and staff making significant decisions regarding the accused systems work at AOptix's headquarters in Campbell, California.  None are in Texas.  To the extent customers use AOptix's technology, they are connecting to and using AOptix's servers, software

---

[1] Should the Court grant AOptix's motion to dismiss, the present motion would be moot.
[2] As addressed below, Mr. Moskowitz was a Florida resident at the time this case was instituted, which is the relevant period for the purposes of this motion.

and databases located in the Northern District of California.  Further, AOptix has filed a declaratory judgment action in the Northern District of California, styled *AOptix Technologies, Inc. v. Blue Spike, LLC*, No. 13-cv-1105-EDL (N.D. Cal.) (filed Mar. 11, 2013), which has been stayed pending this Court's resolution of AOptix's motion to dismiss.

Most importantly, key third-party witnesses and documents are located in the Northern District of California. To date, AOptix has identified six third-party witnesses with unique knowledge regarding Blue Spike's inequitable conduct before the United States Patent and Trademark Office ("USPTO"). These fact witnesses possess critical testimony, yet voluntary attendance at AOptix's trial in Texas is unlikely due to work and other obligations. Those witnesses, as well as many additional prior art witnesses, reside in Northern California.

This Court has repeatedly recognized that transfer is appropriate in cases like this one, where neither party has substantial ties to this District and the Northern District of California is clearly the more convenient forum.[3] Consistent with these facts and this District's prior decisions, the Northern District of California is the "clearly more convenient" forum for this dispute. Accordingly, AOptix requests that this Court grant a transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

I.    **FACTUAL BACKGROUND**

A.    **Procedural Posture**

Blue Spike filed suit against Texas Instruments, Inc. on August 9, 2012.  (Dkt. No. 1.)[4]

---

[3] *See, e.g., PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-cv-656-LED, 2013 U.S. Dist. LEXIS 46296 (E.D. Tex. Mar. 21, 2013); *Network Protection Scis. LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012); *Optimum Power Solutions v. Apple, Inc.*, 794 F. Supp. 2d 696 (E.D. Tex. 2011); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010); *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546 (E.D. Tex. 2009).

[4] Except where otherwise noted, citations to docket numbers will be to Case No. 12-cv-499.

This suit was later designated the Lead Case, as this Court began consolidating other complaints filed by Blue Spike.  (Dkt. No. 16.)

Blue Spike filed suit against AOptix in this District on January 8, 2013.  (Case No. 13-cv-00040-MHS, Dkt. No. 1.)  On March 25, 2013, the Court consolidated that case into cause number 6:12-cv-499, *Blue Spike, LLC v. Texas Instruments, Inc.*, for all pretrial purposes.  Blue Spike supplemented its complaint[5] on August 30, 2013, alleging that AOptix "makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Stratus MX, Stratus App, Stratus SDK, InSight Duo, InSight ESS, InSight VM, and Dash Six Iris Recognition Enterprise SDK ('Accused Products')."  (Dkt. No. 944, ¶ 27.)  Blue Spike asserts infringement of U.S. Patent Nos. 7,346,472 ("'472 Patent"), 7,660,700 ("'700 Patent"), 7,949,494 ("'494 Patent"), and 8,214,175 ("'175 Patent").  (*Id.* at 1.)  The patents-in-suit share a common specification and purportedly relate to methods and systems for identifying matching text, visual, audio, and video signals.  On September 19, 2013, AOptix moved to strike Blue Spike's improperly-filed supplemental complaint and to dismiss the action for lack of personal jurisdiction and improper venue.  (Dkt. No. 968.)  That motion is fully briefed and awaiting resolution.

### B.    Witnesses and Documents Regarding the Accused Systems Are Located in Northern California

Since its founding in 2000, AOptix has been headquartered in Campbell, California, a city within the Northern District of California.  (Declaration of Tom Rainwater in support of AOptix's Motion to Transfer ("Rainwater Decl.") ¶ 3.)  AOptix's Campbell headquarters is its strategic and operational center.  (*Id.*)

---

[5] Blue Spike captioned its August 30 filing as an Amended Complaint but, as it contains allegations concerning events occurring after the date the Original Complaint was filed, the complaint filed on August 30 is a supplemental, not an amended pleading.  (Dkt. No. 968 at 5.)

AOptix's witnesses with relevant knowledge all work in Campbell, California. All significant decisions relating to AOptix's overall business, including the sales, marketing and engineering decisions relating to the Accused Systems, are made by senior executives working in Campbell, California.  (*Id.* ¶¶ 4, 6–9, 11.)  All of AOptix's personnel, including its staff, engineers, product managers, and executives, work in Northern California. (*Id.* ¶¶ 4, 11.) AOptix briefly employed a sales employee in Washington, D.C., but that person has left the company and all potentially discoverable documents have been returned to Campbell, California. (*Id.* ¶ 5.)  Key employees in Campbell, California include Joseph Pritikin, Director of Product Marketing, Pamela Bogart, Director of Business Systems, Tom Rainwater, Contracts Manager, and Malcolm Northcott, Chief Technology Officer.  (*Id.* ¶¶ 6–9.)  These employees possess relevant knowledge concerning the development, operation, marketing, and sales of the Accused Systems.  (*Id.*)

AOptix's documents, including electronic documents, are located at AOptix's Campbell headquarters.  (*Id.* ¶ 10.)  These materials include documents relating to the development and operation of the Accused Systems, source code repositories, containing sensitive, trade-secret source code relating to the Accused Systems, and documents relating to sales and marketing for the Accused Systems. (*Id.* ¶¶ 10, 11.)  No documents or witnesses with knowledge relating to the Accused Systems are located in this district.  (*Id.* ¶ 12.)

### C.   Key Third-Party Witnesses Concerning Blue Spike's Inequitable Conduct And Invalidity of the Asserted Patents Reside in California

The claimed inventions of the Asserted Patents are not novel.  As set forth in Facebook, Inc.'s Amended Answer to Original Complaint for Patent Infringement ("Facebook's Amended

Answer"),[6] the named inventor and Blue Spike's president, Scott Moskowitz, knew of material

prior art systems offered by a company named Muscle Fish LLC ("Muscle Fish").[7] (Dkt. No.

868, ¶¶ 15–35). Muscle Fish was founded in 1992 in Northern California by Erling Wold, Doug

Keislar, Thom Blum and Jim Wheaton. (*Id.* ¶ 17.) During the mid 1990s, Muscle Fish

developed a technology "for looking up and comparing known and unknown content based on a

set of features of content called 'MFCCs.'" (*Id.* ¶ 18.) Muscle Fish later merged with Audible

Magic Corporation. (*Id.* ¶ 20.) Vance Ikezoye and James Schrempp of Audible Magic built on

Muscle Fish's technology, creating a system "for identifying media content presented over a

media playing device." (*Id.*; Declaration of Bryan Kohm in Support of Motion to Transfer

Venue ("Kohm Decl."), Ex. 26 (U.S. Patent No. 6,834,308), at Abstract).[8]

The Muscle Fish and Audible Magic technologies predate the Blue Spike patents, the first

of which was filed in 2000. Mr. Moskowitz knew of these technologies. He had multiple

discussions with Muscle Fish about its technology during the late 1990s, and even had licensing

discussions regarding the technology in 2001 with Audible Magic. (Dkt. No. 868, ¶¶ 24, 27.)

During the prosecution of the asserted patents, Mr. Moskowitz concealed the commercially

available implementations of the Muscle Fish and Audible Magic systems from the USPTO. (*Id.*

¶¶ 25-26, 28.) The materiality of these technologies is demonstrated by the simple fact that Blue

Spike now accuses those technologies of infringing the asserted patents. (*Id.* ¶ 29.)

The Muscle Fish and Audible Magic prior art systems are relevant to not just inequitable

conduct but also to invalidity, as they invalidate claims of the asserted patents. All six of the

---

[6] AOptix is in the process of amending its answer to include the same inequitable conduct allegations as set forth in Facebook's Amended Answer.

[7] The factual statements in this section are based on the factual allegations in Facebook's Amended Answer.

[8] All exhibits cited in this motion are attached to the Kohm Declaration.

inventors of Muscle Fish and Audible Magic technologies reside in Silicon Valley.[9]  Due to their work obligations, they are unable to travel to Texas for AOptix's trial.[10]

### D.   A Large Number of Additional Prior Art Entities And Witnesses Are Also in Northern California

Northern California also is home to numerous companies and research institutions with relevant prior art. Indeed, prior art references cited during the prosecution of the Asserted Patents alone identify many inventors and companies situated in Northern California.  For example, during the prosecution of the '472 patent, the inventors submitted an Information Disclosure Statement identifying pertinent prior art references.  (Ex. 1.)  Among them, at least nine patent assignees and at least 24 prior art inventors reside in Northern California. (Kohm Decl. ¶¶ 5–6; Exs. 2, 3.)  These witnesses possess information relevant to the state of the art and validity of the asserted patents.

### E.   The Inventors Also Reside Outside of this District

The location of the named inventors was comprehensively addressed in pending motions to transfer venue, including SoundHound, Inc.'s Motion to Transfer Venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a), which is hereby incorporated by reference.  *See* Dkt. No. 916, pp. 5–7.

### F.   Blue Spike Was Incorporated in this District for Purposes of this Litigation

Blue Spike's incorporation in this District was comprehensively addressed in pending motions to transfer venue, including SoundHound, Inc.'s Motion to Transfer Venue to the United

---

[9] *See* paragraph 3 of the Declarations in Support of Defendant SoundHound's Motion to Transfer Venue of James Schrempp, Douglas Keislar, Thomas Blum, Vance Ikezoye, James Wheaton, and Erling Wold filed with the present motion.  (Dkt. Nos. 916-1 ("Blum Decl."), 916-2 ("Ikezoye Decl."), 916-3 ("Keislar Decl."), 916-5 ("Schrempp Decl."), 916-6 ("Wheaton Decl."); 916-7 ("Wold Decl.") (collectively, "Witness Declarations").

[10] Witness Declarations, ¶ 4.

States District Court for the Northern District of California under 28 U.S.C. § 1404(a), which is hereby incorporated by reference.  *See* Dkt. No. 916, p. 7.

## II.   ARGUMENT

The determination of whether a case should be transferred pursuant to 28 U.S.C. § 1404(a) is based on, first, whether the suit could have been brought in the proposed transferee venue, and second, whether private and public interests demonstrate that the proposed transferee venue is clearly more convenient.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).  The relevant factors strongly favor transferring this action to the Northern District of California.

### A.   Venue Is Proper in the Northern District of California

As a threshold inquiry, determination must be made as to "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (Fed. Cir. 2004) (citation omitted).  A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case.  *See id.* There is no question that the Northern District of California has subject matter jurisdiction over Blue Spike's patent claims under 28 U.S.C. §§ 1331 and 1338(a).  Nor is there any question that the Northern District of California has personal jurisdiction over AOptix and is a proper venue for this case given AOptix's presence there.  *See* 28 U.S.C. § 1391(b).

### B.   Private Interest Factors Strongly Favor Transfer to the Northern District of California

In deciding whether to transfer a case, courts consider a number of private interest factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. All of these factors weigh in favor of transfer to the Northern District of California.

1. **Easier Access to Sources of Proof Favors the Northern District of California**

In analyzing the first private interest factor, this Court recognizes that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *GeoTag, Inc. v. Zoosk, Inc.*, Case No. 2:11-cv-403-MHS, Dkt. No. 114 ("*GeoTag Order*"), at 3 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, as discussed above, AOptix's documents relevant to this case are located in Northern California,[11] as are AOptix's employees who will testify regarding the Accused Systems.

In contrast, Blue Spike was formed a mere three months before filing its first lawsuit in this District. The limited documents created since Blue Spike's formation, or those trucked into Texas for purposes of this litigation, do not merit keeping the case here. *See Optimum Power Solutions*, 794 F. Supp. 2d 696 at 701 (noting that the accused infringer's documents are usually more relevant, and that documents transferred to a venue in anticipation of litigation should not be considered); *NovelPoint Learning LLC v. LeapFrog Enters.*, No. 10-cv-229-JDL, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) ("[W]eight given to the location of [plaintiff's] documents is determined by whether [plaintiff] is an 'ephemeral' entity.'"). As the accused infringers, AOptix is likely to possess a larger volume of documents relevant to this litigation. *See Genentech*, 566 F.3d at 1345. Accordingly, the relevant evidence in this action is more

---

[11] Although documentary evidence may be stored electronically, the Court considers the physical location of where those documents are stored. *Genentech*, 566 F.3d at 1345–46. In this case, AOptix stores all of its relevant documents in the Northern District of California. (Rainwater Decl. ¶ 10.) None are stored in this District. (*Id.* ¶ 12.)

readily accessible from the Northern District of California, favoring transfer to that district.  *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (finding presence of evidence in transferee venue favored transfer); *In re Biosearch Techs., Inc.*, No. 995, 2011 WL 6445102, at *2–3 (Fed. Cir. Dec. 22, 2011) (ordering transfer to the Northern District of California where neither party had identified any witnesses in the Eastern District of Texas); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-cv-448, 2012 WL 122562, at *2 (E.D. Tex. Jan. 9, 2012) (granting transfer to the Northern District of California where majority of documents and evidence, and several witnesses, were likely to be in that district).

2. **Availability of Compulsory Process Favors the Northern District of California**

A venue is favored when it has subpoena power to compel attendance at deposition and trial over the majority of non-party witnesses.  *GeoTag Order* at 5 (citing *In re Hoffman-La Roche*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009)).  Here, a great number of potential non-party defense witnesses are located in the Northern District of California, home to universities and high-tech companies who were active in the field of endeavor relevant to this action in the relevant timeframe.  As discussed above, it would be too burdensome for the six Muscle Fish and Audible Magic witnesses to attend AOptix's trial if it were to proceed in Texas.  (Witness Declarations, ¶ 4.)  But because they reside in Silicon Valley, they are subject to compulsory process in the Northern District of California.[12]  (*Id.*, ¶ 3.)  In addition, the inventors themselves identified to the PTO at least 24 different third-party prior art inventors (and at least nine different prior art entities) who reside in Northern California.  To the extent these non-party prior art witnesses are unwilling to attend deposition or trial, the Northern District of California has

---

[12] Although Blue Spike has sued Audible Magic in a separate action, the Muscle Fish and Audible Magic witnesses are third parties as to the action between AOptix and Blue Spike, and therefore this Court lacks subpoena power over those witnesses for the purpose of AOptix's trial.

the authority to compel their attendance.

In contrast, there are no known third-party witnesses who would be subject to the subpoena power of the Eastern District of Texas.  Blue Spike is a non-practicing entity and has no known affiliates that are under this Court's subpoena power.  One of the co-inventors is an employee of the plaintiff, and the other currently resides in Washington.  AOptix is unaware of any non-party defense witnesses who are subject to this Court's subpoena power.  Since the Northern District of California has absolute subpoena power over a significant number of known third-party witnesses, including both inequitable conduct and prior art witnesses, the availability of such power favors transfer to the Northern District of California.  *See Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in the chosen forum).

3.     **Cost of Attendance for Willing Witnesses Favors the Northern District of California**

This Court recognized that "[o]ne of the most important factors [in considering transfer] is the cost of attendance for witnesses." *GeoTag Order* at 8.  While courts analyze the convenience of both party and non-party witnesses, "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Id*.  Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Genentech*, 566 F.3d at 1343.  Moreover, the question is not whether "*all* of the witnesses" reside in the transferee forum, but whether a "substantial number" are there. *Id.* at 1345 (emphasis in the original).  Here, with

respect to party witnesses, AOptix's witnesses in this action, including its engineers, managers, and executives, reside and work within the Northern District of California. If this case is not transferred, these witnesses would each be burdened with travel of at least 1,500 miles each way to testify in this Court.  *See Droplets, Inc.*, 2012 WL 3578605, at *5.  Since AOptix is a small but growing company, the simultaneous travel of multiple witnesses to trial will cause significant disruption to its business operations at home.

As for Blue Spike, it appears to have a single employee, Mr. Moskowitz, who is a long time resident of Florida. In opposition to other transfer motions pending in this consolidated case, Blue Spike claims that Mr. Moskowitz is now present in Texas and has a medical condition that makes it difficult for him to travel and even asserts that travel over long distances by car or plane is "life threatening."  (*See* Dkt. No. 1135, ¶ 17.)  The veracity of Mr. Moskowitz's assertion is belied by his own Google+ webpage, which shows that he travelled between Fort Lauderdale, Florida and New Orleans, Louisiana between July 25 and 29, 2012, apparently to attend Jazz Fest.  (*See* Kohm Decl. ¶¶ 29–30; Exs. 26–27.)  Even if Mr. Moskowitz's assertion were true, Blue Spike could always elect to put any trial testimony of Mr. Moskowitz on by videotaped deposition.  The convenience of this one witness does not outweigh the inconvenience, work disruption and cost to virtually all of the other party and non-party witnesses who would otherwise have to travel to this District.  Indeed, given that Mr. Moskowitz voluntarily moved to Texas, at least allegedly, with full knowledge of his condition for the purpose of filing the present lawsuit, permitting his condition to trump the convenience of all other witnesses would be to sanction his and Blue Spike's forum shopping.

With respect to non-party witnesses, numerous engineers familiar with prior art instrumentalities are centralized in Northern California and would also have to travel over 1,500

miles to attend trial in this District (to the extent they are willing).  These non-party witnesses

will have to bear the burden and expense of airfare, hotels, meals, and other expenses associated

with travel away from home.  More importantly, these non-party witnesses will suffer additional

days of absence from their work and other endeavors if they need to travel to this District for trial

as opposed to trial in Northern California.  And, Mr. Berry, the co-inventor of the Asserted

Patents, lives in Seattle, Washington, which is much closer to Northern California than to this

Court.  *See Droplets, Inc.*, 2012 WL 3578605, at *5 (noting that location of relevant third-party

witnesses in, and closer to, the transferee venue favored transfer).

In sum, the locations of both party and non-party witnesses also favor transfer to the

Northern District of California.  *See In re TS Tech USA*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)

(finding court's disregard that witnesses would have to travel over 900 miles to attend trial to be

"clear error"); *Optimum Power Solutions*, 794 F. Supp. 2d at 702 (granting motion to transfer to

the Northern District of California where no witnesses were identified in the Eastern District of

Texas); *Voxpath RS , LLC v. LG Elecs. U.S.A., Inc.*, No. 10-cv-160-JRG, 2012 WL 194370, at

*3–4 (E.D. Tex. Jan. 23, 2012) (finding cost of attendance to favor transfer where multiple

potential witnesses reside in the transferee district).

### 4.  All Other Concerns Weigh in Favor of Transfer

The remaining considerations also favor transfer to the Northern District of California.

First, this case is still in its infancy: no case management conference has been scheduled; no

scheduling order has been issued; and, no discovery has taken place.  *See, e.g.*, *Internet Machs.*

*LLC v. Alienware Corp.,* No. 10-cv-023, 2011 WL 2292961, at *8 (E.D. Tex. Jun 7, 2011)

(recognizing transfer is more convenient when request comes before initial disclosures or the

entry of a scheduling order).

Second, the pendency of other related cases in this District does not counsel against

transfer. As this Court recently emphasized, filing multiple cases against separate defendants in a single district cannot be used as a means to establish venue: "The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district." *GeoTag Order* at 11 (citing Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011)).  Here, Blue Spike was formed in this District only three months before this action. Permitting Blue Spike to manufacture venue in this fashion would run counter to 28 U.S.C. § 1404(a), which is designed to temper forum shopping, and defeat the purpose of a key provision of the recently enacted America Invents Act, which limits the joinder of unrelated parties in patent cases.  *See id.*; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (emphasizing that courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 11-cv-255, 2012 WL 3133398, at *7 (E.D. Tex. Mar. 5, 2012) ("Because the *cases involve different products . . . and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.") (emphasis in original) (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

## C.      **Public Interest Factors Support Transfer**

Courts also consider public interest factors in deciding whether transfer is appropriate. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *See GeoTag Order* at 3.  These

factors also weigh in favor of transfer.

### 1.      Relative Court Congestion Is Neutral

The first public interest factor generally "favors a district that can bring a case to trial faster." *Id*. at 11 (citation omitted).  Based on the most recently available statistics from the Federal Judicial Center, this District has a median time from filing to disposition of 8.7 months, and for cases going to trial 25.5 months, while the Northern District of California has a median time of 6.4 months, and for cases going to trial 27.5 months.  (Ex. 24.)  Given California's slightly shorter median time and this District's slightly short trial time, this factor is neutral.

### 2.      Local Interest Favors the Northern District of California

While the location of the alleged injury is traditionally an important consideration, this Court noted that "[w]hen the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district;" instead, the local interest lies in the district that is home to a party because "the suit may call into question the reputation of individuals that work in the community."  *GeoTag Order* at 12; *see also In re Volkswagen AG*, 371 F.3d at 206 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.") (citation omitted).  Even if the Accused Systems in this case are deemed to be available nationwide, the Northern District of California—where the Accused Systems were developed and are still maintained and managed by AOptix staff, engineers, and managers—has a particularized local interest in resolving this dispute. *See, e.g.*, *PersonalWeb Techs.*, 2013 U.S. Dist. LEXIS 46296, at *39 (finding the Northern District of California to have a strong local interest in a case because that was where the defendant was headquartered and the accused products were developed).  In contrast, there is no legitimate local interest with respect to the alleged infringement in this District, where, as discussed above, Blue Spike's ties to this District are ephemeral and entirely manufactured in anticipation of litigation.

14

Local interest, thus, strongly favors transfer to the Northern District of California.  *See, e.g.*, *Network Prot. Scis.*, 2012 WL 194382, at *7 (finding local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to the Northern District of California where defendants were headquartered, developed the accused products and employed many people).

3. **Both Forums Are Familiar with the Governing Law**

Both venues are equally familiar with patent law. Thus, this factor is neutral.

4. **There Is No Conflict of Laws Question**

This case does not implicate conflicts of law and thus this factor is neutral.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, AOptix respectfully requests that this Court grant the requested transfer to the Northern District of California, in the alternative to its motion to dismiss for lack of personal jurisdiction.

Dated:    February 5, 2014                           FENWICK & WEST LLP


                                            By: */s/ Bryan A. Kohm*
                                                 Bryan A. Kohm

                                            Teresa M. Corbin, CA Bar No. 132360
                                            (Admitted E.D. Texas)
                                            Bryan A. Kohm, CA Bar No.233276
                                            (Admitted E.D. Texas)
                                            David Lacy Kusters, CA Bar No.241335
                                            (Admitted E.D. Texas)
                                            Fenwick & West LLP
                                            555 California Street, 12th Floor
                                            San Francisco, California 94104
                                            Telephone:      (415) 874-2300
                                            Facsimile:      (415) 281-1350

                                            Darren E. Donnelly, CA Bar No. 194335
                                            (Admitted E.D. Texas)
                                            Fenwick & West LLP
                                            Silicon Valley Center
                                            801 California Street
                                            Mountain View, California 94041
                                            Telephone:    (650) 955-8500
                                            Facsimile:      (650) 983-5200

                                            Attorneys for Defendant
                                            AOptix Technologies, Inc.

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 4, 2014 via telephone conference with the following participants: Peter Brasher for the Plaintiff and Teresa Corbin for the Defendant. No agreement could be reached because the parties disagreed on the merits. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Bryan A. Kohm*
Bryan A. Kohm

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 5, 2014.

*/s/ Bryan A. Kohm*
Bryan A. Kohm