UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 12-cv-499 MHS |
| | § | |
| v. | § | Consolidated Case |
| | § | |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| | § | |
| *Defendants*. | § | |
| | § | |

**PLAINTIFF BLUE SPIKE, LLC'S OPPOSITION TO DEFENDANTS' MOTION
TO STAY ALL PROCEEDINGS (DKT. 1244)**

Plaintiff Blue Spike, LLC ("Blue Spike") opposes the motion to stay all

proceedings pending disposition of 19 motions to transfer venue to districts across the

country.[1] The indefinite stay that the movants request would benefit no one and would

significantly prejudice both Blue Spike and the nonmoving defendants. The moving

defendants have not shown that they need a stay or that they would suffer prejudice

without one. The Court should deny the motion and allow this case to proceed to the

merits.

**LEGAL STANDARDS**

A party requesting a stay "bears the burden of showing that the circumstances

justify" one. *Neken v. Holder*, 556 U.S. 418, 433-34 (2009). When, as here, a party

---

[1] The Southern District of California (Dkt. No. 540), the District of New Jersey (Dkt. No. 588), the District of Massachusetts (Dkt. Nos. 610 and 625), the Southern District of New York (Dkt. Nos. 648 and 1148), the Central District of California (Dkt. Nos. 611, 1149 and 1150), the Southern District of Florida (Dkt. No. 625), and the Northern District of California (Dkt. Nos. 678, 771, 834, 836, 905, 916, 960, 1412, 1155 and 1157).

requests an indefinite stay,[2] the Court "must first identify a pressing need for the stay." *Evolutionary Intelligence, LLC v. Facebook, Inc.*, Case No. 6:12-cv-784-MHS-CMC, Dkt. No. 31 at 3 (E.D. Tex. Feb. 27, 2013). If the Court identifies a pressing need, it should then consider (1) the potential prejudice to nonmoving parties from a stay, (2) the hardship and inequity to the moving parties if the action is not stayed, and (3) the judicial resources that a stay would save. *See Nguyen v. BP Exploration & Prod., Inc.*, 2010 U.S. Dist. LEXIS 80068, at *2 (S.D. Tex. Aug. 9, 2010). "The propriety of a stay is dependent upon the circumstances of the particular case." *Indiana State Police Pension Trust v. Chrysler, LLC*, 556 U.S. 960, 961 (2009) (internal punctuation omitted).

## ARGUMENT

### I.      There Is No Pressing Need for a Stay.

The moving defendants cannot demonstrate the required "clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Their only basis for requesting a stay is a purported "risk [of] expending duplicative time and resources" in discovery and claim construction without first determining the pending transfer motions. Dkt. No. 1245 at 5 and 9. Yet the Federal Circuit has specifically stated "that the desire to avoid duplicative litigation and conserve judicial resources is insufficient, by itself, to warrant a stay." *Prati v. The United States*, 82 Fed. Cl. 373, 378 (2008) (punctuation omitted). This is why, even in multi-defendant patent cases where transfers are granted, this Court routinely retains jurisdiction over all Defendants through the claim construction process. Retaining jurisdiction actually conserves judicial resources by

---

[2] A stay is indefinite if it depends on some future event that has no deadline or target date for completion. *See SanDisk Corp. v. Phison Electronics Corp.*, 538 F.Supp.2d 1060, 1065-1066 (W.D. Wis. 2008).

"[f]irst…requiring only one district court to address the disputed claim terms, and second, it eliminates the risk of inconsistent claim constructions." *See*, *e.g.*, *PersonalWeb Techs., LLC v. NEC Corp.*, No. 6:11-cv-0655-LED, Dkt. No. 74 at 4, 45 (E.D. Tex Mar. 21, 2013).

Reflecting this policy, the local patent rules provide that "absent [a] court order to the contrary, a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue." L.R. CV-26(a). Here, the defendants seek an "order to the contrary" based on their motions to transfer, but "[s]uch motions are specifically identified by Local Rule CV-26(a) as not warranting a stay of discovery, regardless of the ground asserted therein." *GHJ Holdings, LLC, v. Plasticade Prods. Corp.,* No. 5:10-cv-220, Dkt. No. 29 at 2 (E.D. Tex. May 31, 2011). In short, the moving defendants' basis for a stay is insufficient under binding law.

The defendants rely heavily on *In re Fusion-IO*, *see* Dkt. No. 1244 at 5 and 7, but that case does not help them. *In re Fusion-IO* neither mandates nor supports the entry of the requested stay. In its petition, Fusion-IO sought transfer out of the Eastern District of Texas, not an order regarding how the Eastern District should manage its docket in a pending case. *See* 489 Fed. App'x 465, 466 (Fed. Cir. Dec. 21, 2012). In fact, neither party addressed or briefed whether a stay should issue pending a decision on a transfer motion. *See id*. Accordingly, the Federal Circuit neither mandated when a district court must consider a transfer motion nor found any abuse of discretion in the timing of the court in doing so. The defendants' citation from the Federal Circuit regarding stays and the timing of transfer decisions is dicta and is not binding.

The defendants' argument for a stay is mystifying in light of the defendants' proposed discovery order. Following precedent from the Eastern District and the recent rhetoric of patent defendants across the country, Blue Spike proposed a case-management plan in which it would bear the bulk of the upfront discovery costs. The plan allowed the parties to move forward toward resolution, giving the Court time to consider the transfer motions and lessening the burden on the defendants. *See* Plaintiff's Proposed Joint Case Management Statement at 24 (attached as Exhibit 1). The defendants, however, rejected that proposal in favor of full-blown discovery. *See* Defendants' Joint Case Management Statement at 36-40 (attached as Exhibit 2). Thus, while the defendants claim to seek a stay to reduce their costs, they advocate a case-management plan that will greatly increase their costs. This inconsistency raises questions about their true motivation for seeking a stay.

Defendants have failed to identify a pressing need for an indefinite stay. That alone is reason enough for the Court to deny Defendants' motion.

## II.     A Stay Will Significantly Prejudice the Nonmoving Parties.

A stay will prejudice Blue Spike by prolonging the infringement of its patents. "Plaintiffs have an interest in the timely enforcement of their intellectual property rights." *Ambato Media, LLC v. Clarion Co., Ltd.*, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012). This is true even when the parties are not direct competitors. *Cf. Volstar Techs., Inc. v. Superior Commc'ns., Inc.*, Case No. 2:12-cv-082-JRG, 2013 U.S. Dist. LEXIS 119190, at *6 (E.D. Tex. August 22, 2013). While Plaintiff does not directly compete with the moving defendants regarding the technology at issue here, several companies that are direct competitors of the moving defendants—for example, Yahoo!, Inc.,

Broadcast Music, Inc. (BMI), and Cross Match Technologies, Inc.—have lawfully obtained a license to practice the patents-in-suit. Continued delay will only devalue Blue Spike's inventions and nonparties' fairly-obtained licenses.

Furthermore, a stay will impair Blue Spike's "ability to present its case because as time passes, memories fade, witnesses move and costs increase." *Andrews v. U.S.*, Case No. 4:05-cv-419, 2007 U.S. Dist. LEXIS 58772, at *5 (E.D. Tex. Aug. 10, 2007). The first case involving the patents-in-suit was filed August 9, 2012, over one-and-a-half years ago. *See Blue Spike, LLC v. Texas Instruments, Inc.*, Case No. 6:12-cv-499, Dkt. No. 1. The newest case was filed February 6, 2013, over one year ago. *See Blue Spike, LLC v. Zvetco, LLC*, Case No. 6:13-cv-130, Dkt. No. 1. There is no firm deadline for resolution of the motion to stay or the pending transfer motions.[3] Indeed, Blue Spike is still briefing several late-filed motions to transfer and is also engaged in jurisdictional discovery with one defendant. *See* Declaration of Peter Brasher. A stay would compound these already-considerable delays for an indefinite period of time, increasing costs and making reliable testimony more difficult to obtain. *See Andrews*, 2007 U.S. Dist. LEXIS 58772 at *5.

It is not only Blue Spike's interests that the Court should consider. As this Court has recently recognized, a motion to stay an entire consolidated case pending determination of a transfer motion "would unduly prejudice both the [nonmoving] defendants' interests as well as the plaintiff's enforcement of its patent rights." *Lennon*

---

[3] During a conference call regarding the joint case management conference counsel for defendant AOptix Technologies, Inc. suggested that determination of the transfer motions could take six months. *See* Declaration of Peter Brasher. In other cases, briefing and determination of a motion to stay can itself take upwards of six months. *See, e.g., Kreonos, LLC v. Analog Devices, Inc., et al.*, Dkt. No. 709 (E.D. Texas Jan. 10, 2013) (denying defendants' motion to stay originally filed on June 22, 2013).

*Image Technologies v. Lumondi Inc*, Case No. 2:13-cv-238-JRG, Dkt. No. 24 (E.D. Texas Jan. 6, 2014). In this case, many defendants have not joined in the request for a stay, and some have expressed an affirmative desire to move forward expeditiously with the litigation. *See* Declaration of Peter Brasher. The moving defendants' stay request harms the nonmoving defendants' interest in the timely resolution of this matter as well as Blue Spike's. Blue Spike and the nonmoving defendants' interests weigh against granting a stay.

**III.    Determining the Pending Transfer Motions First Will Not Reduce the Movants' Discovery Costs or the Risk of Duplicative Litigation.**

The moving defendants would not actually benefit from a stay in the way they claim. They allege that a stay would reduce their discovery and claim-construction costs. *See* Dkt. No. 1245 at 9. This is incorrect because the pending transfer motions are not dispositive; the defendants will still have to engage in discovery no matter where their cases end up. In other words, while granting the stay will delay discovery costs, it will not reduce them. It appears that mere delay is the movants' true goal, as many of them (e.g. Axxonsoft US, Inc., Airborne Biometrics Group, Inc., Animetrics, Inc., Precise Biometrics, Inc.) have not filed their own transfer motions and therefore cannot gain anything from a stay beyond simply delaying discovery in this District.

The moving defendants also claim that a stay would prevent duplicative litigation, *see* Dkt. No. 1245 at 9, but that argument also fails since discovery, once taken, can be used in any venue across the country. *See Software Rights Archives, LLC v. Google Inc., et al.,* Case No. 2:07-cv-511-CE, Dkt. No. 288 at 1 (E.D. Texas May 26, 2010) ("[T]he defendants' motion is an effort to delay the disposition of the case… either in this court or any transferee court, as the [discovery] may be used in either forum."). Initial

disclosures need not be disclosed a second time; infringement contentions will not change from one district court to another; and invalidity contentions made in the Eastern District will retain their effectiveness elsewhere. Given that the pending transfer motions will not resolve the case or absolve the moving defendants of their discovery obligations, granting a stay will accomplish nothing more than delay. This weighs against granting a stay.

**IV.     A Stay Will Create Significant Risk of Judicial Inefficiency.**

Judicial efficiency is important, and moving cases forward is generally more efficient than delaying them. That is why this Court's local rules state that "a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue." L.R. 26(a). It is also why this Court generally keeps multi-defendant patent actions consolidated through claim construction. *See, e.g.*, *Uniloc USA, Inc. v. Slickedit, Inc.*, Case No. 6:12-cv-814-LED, Dkt. No. 36 at 7, (E.D. Tex. Dec. 9, 2013) ("Keeping these co-pending cases together will preserve time and resources for the parties and the Court and promotes judicial economy"); *PersonalWeb Techs.*, Case No. 6:11-cv-0655-LED, Dkt. No. 74 at 45 ("The Court will retain jurisdiction over all defendants through the claim construction process" in order to "conserve[] judicial resources by requiring only one district court to address the disputed claim terms, and eliminate[] the risk of inconsistent claim construction").

In this case, the Eastern District's position on transfer motions is borne out by the fact that this Court—in spite of the pending transfer motions—chose to enter an initial scheduling order and calendared a scheduling conference for all consolidated cases together. The moving defendants' stay undermines the Court's efforts to promote judicial efficiency in that it requires the parties to sit idle while the Court bears the entire burden

of moving this case forward. In short, a stay will actually *decrease* judicial efficiency,

which militates against the stay.

**V.      If the Court Grants Both the Stay and the Transfer Motions, Blue Spike
         Requests That the Court Conserve Judicial Resources and Avoid
         Inconsistent Claim Construction by Deferring the Transfers until after
         Claim Construction Is Completed.**

As Blue Spike has already explained, a stay would unfairly prejudice it and the

nonmoving defendants and would also increase the risk of judicial inefficiency.

Furthermore, as Blue Spike has briefed elsewhere, transfer would not serve the interests

of the Court, the parties, or Scott Moskowitz given his medical issues. Nevertheless, if

the Court decides to grant the stay and the transfer motions, Blue Spike respectfully

requests that the Court defer transfer until after claim construction is complete. Doing so

would be in keeping with the Court's usual policies and would be the most efficient way

to proceed. *See, e.g., PersonalWeb Techs.*, Case No. 6:11-cv-0655-LED, Dkt. No. 74 at

45.

## CONCLUSION

For the foregoing reasons, Blue Spike respectfully asks the Court to deny the

Defendants' motion to stay (Dkt. 1244).

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
 Lead Attorney
 Texas Bar No. 24038912
 rgarteiser@ghiplaw.com
Christopher A. Honea
 Texas Bar No. 24059967
 chonea@ghiplaw.com
Christopher S. Johns
 Texas Bar No. 24044849
 cjohns@ghiplaw.com

8

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
218 N. College Ave.
Tyler, Texas 75707
(903) 705-7420
(888) 908-4400 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

/s/ Randall T. Garteiser
Randall T. Garteiser