UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § § § § § § § | |
| *Plaintiff*, | | Case No. 6:12-cv-499-MHS |
| v. | | Lead Case |
| Texas Instruments, Inc. et al., | | Jury Trial Demanded |
| *Defendants*. | | |

**BLUE SPIKE'S OPPOSITION TO CLEAR CHANNEL'S MOTION
TO TRANSFER VENUE [DKT. 1148]**

## Introduction

Plaintiff Blue Spike, LLC is a Texas company with its headquarters and principal place of business in Tyler, Texas. *See* Compl. ¶2. Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread digital abstracting—including certain "digital fingerprinting" technology—which is a means of identifying digital content via its unique markers. The companies that employ digital abstracting today—including Clear Channel Broadcasting, Inc.—have profited from infringing Blue Spike's patents. Blue Spike has filed multiple lawsuits in this Court against infringers on these same four patents. The Court consolidated the suits for pretrial purposes based on "common questions of law or fact," finding that consolidation "would promote efficient case management." *See* Ex. 1 (October 9, 2012 consolidation order) at 15; *see also* Ex. 2 (March 25, 2013 consolidation order) at 17.

1

Clear Channel's transfer request is curious given that the company is based in Texas and has operations and employees throughout the state, including in this District. While happy to accept the benefits of operating in Texas, Clear Channel is apparently unwilling to answer claims of patent infringement here. Given the company's headquarters here and its ubiquitous presence and significant resources in Texas, Clear Channel cannot show how litigating in this District would impose the kind of burden needed to justify a transfer to New York.

Blue Spike—whose operations are all in the Eastern District of Texas—opposes Clear Channel's transfer motion for four reasons: (1) Clear Channel has not shown that this case could have been brought in the proposed transferee district in the first place; (2) paramount considerations of judicial efficiency weigh heavily against transfer, since the case against Clear Channel is deeply intertwined with others in this District; (3) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—defeats transfer; and (4) Clear Channel has not shown that other public and private interests make the Southern District of New York "clearly more convenient" than this District.

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. §1404(a). "[T]he party

2

seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district." 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE §111.12[3] (3d ed. 2012). The transfer movant must also show good cause for transfer and prove that the proposed transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 315 (5th Cir. 2008) (en banc). In evaluating whether a movant has made this showing, courts weigh several private-interest and public-interest factors. *In re TS Tech USA Corp.,* 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Id.* Although not a distinct factor, the plaintiff's choice of venue should always receive deference. *Id.* at 1320. The public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in the outcome of the case; (3) the familiarity of the forum with applicable law; and (4) the avoidance of unnecessary problems of conflicts of laws. *Id.*

**Argument**

I. **Clear Channel Does Not Make the Required Threshold Showing That This Suit Could Have Been Brought in the Southern District of New York in the First Place.**

Clear Channel does not carry its burden "of clearly establishing that the action properly could have been brought in the first instance in the transferee district." MOORE'S FEDERAL PRACTICE §111.12[3]. The company acknowledges this burden but then simply asserts, without explanation or evidence, that "the SDNY would be a proper venue for this action." *See* Dkt. 1148 at 5. There are two reasons why this conclusion is not as self-evident as Clear Channel assumes.

First, *Clear Channel Broadcasting, Inc.* is the defendant here—not its "business units" RCS and Media Monitors (Dkt. 1148 at 1). Clear Channel Broadcasting, Inc. is a Nevada Corporation with its principal place of business in San Antonio, Texas. Compl. ¶2. Clear Channel skirts this fact throughout its transfer motion, acting as though RCS and Media Monitors are the real defendants because those companies have offices in White Plains, New York. The question that matters is whether Blue Spike could have sued *Clear Channel* in the Southern District of New York, and the answer to that question is "no." *See Xerox Corp. v. Litton Indus., Inc.*, 353 F.Supp. 412, 414 (S.D.N.Y. 1973) (in a patent action against a parent corporation, venue does not lie in the Southern District of New York if the parent's only connection to the District is through subsidiaries). Clear Channel attempts no showing on that front.

4

Second, even if the Court focused its analysis on RCS and Media Monitors, it is still not clear that Blue Spike could have filed suit in the Southern District of New York. RCS and Media Monitors formally "merged" (Dkt. 1148 at 3) with Clear Channel subsidiary Clear Channel Management Services, Inc., which is a Texas corporation headquartered at the same San Antonio address as the defendant. *See* Ex. 3 (printout from Texas Secretary of State's website). Indeed, its entire board of directors works there. *Id*. And, ironically, so does the legal team that fields questions and complaints about RCS's and Media Monitors' intellectual property. *See* Ex. 4 (printout from RCS website) at 12-13, Ex. 5 (printout from Media Monitors website) at 15-16. It appears Clear Channel is willing to align its "business units" with whichever state is most convenient at the moment.

All of the corporate entities relevant to the venue analysis are located in Texas. Clear Channel provides no countervailing evidence and therefore fails to carry its burden of clearly establishing that Blue Spike could have sued it in the Southern District of New York. This is a stand-alone reason to deny transfer.

II. **The "Paramount" Federal Interest in Judicial Efficiency—Without More—Defeats Transfer.**

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F.App'x 295, 296 (Fed. Cir. 2011). Judicial economy is so

important that it provides a sufficient basis to deny transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).[1] Multiple lawsuits involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the cases for pretrial purposes because they "involve a common question of law or fact" and because consolidation will "promote efficient case management." *See* Ex. 1 at 15; Ex. 2 at 17. Clear Channel's motion second-guesses that determination.

Here, transfer is especially inappropriate because the consolidated cases share more than just the patents-in-suit: the factual and legal issues, and the defendants themselves, are deeply intertwined. For example, other consolidated defendants, like Civolution, has accused products with very similar functionality to Clear Channel's. *See, e.g.*, Case No. 6:12-cv-557, Dkt. 1 at ¶28. This overlap proves that if the Court were to grant Clear Channel's transfer motion but retain other related or similar lawsuits, it would guarantee that multiple courts would have to weigh identical issues, duplicate each other's efforts, and issue potentially conflicting rulings.

---

[1] *See also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that a defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

6

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 6). There, the Court denied transfer, reasoning that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id*. Other recent cases—all on point—likewise counsel against transfer.[2]

Transfer would create inefficiency because this case shares not only the patents-in-suit with other consolidated cases but also "overlapping products [and] services." *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 10). A transfer would undermine the "paramount" consideration of judicial efficiency, forcing multiple federal

---

[2] *See, e.g.*, *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-00416-JRG, Dkt. 416, at (E.D. Tex. Aug. 9, 2013) (attached as Ex. 7) (denying transfer because, as here, some groups of consolidated defendants had asked for transfer to different districts while others had not, meaning the case would "be split into three parallel co-pending actions involving the same asserted patents . . . and unavoidably risk duplicative proceedings involving the same or similar issues between three different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions"); *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 8) (holding that, where plaintiff had filed multiple suits in this District on the same four patents, transfer was improper because "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 9) (denying motion to transfer a consolidated patent suit because "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

courts to expend duplicative efforts considering common questions of law and fact and creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 F. App'x at 296. This is another stand-alone ground for denying transfer.

### III. The Serious Health Problems of Blue Spike's CEO and Inventor—an Essential Witness—Also Defeat Transfer.

"The health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases). A party's health concerns may, without more, control the result of a transfer motion. *See, e.g.*, *BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (granting defendants' transfer motion based on defendant's health problems even though the contract contained a choice-of-venue clause and many other factors weighed against transfer).

Here, transfer would cause serious hardship for Blue Spike's CEO and inventor, Scott Moskowitz, who suffers from a medical condition that makes traveling excruciating and dangerous. Moskowitz Decl., Dkt. No. 1135, at ¶¶12-18. Moskowitz resides in this District, and the only other place where he regularly spends time is Florida—where he goes to receive medical treatment unavailable elsewhere and to finalize matters related to hurricane-related

8

damage to a condominium he owns there. *Id.* ¶14.[3] Moskowitz's difficulty traveling weighs heavily against transfer.

## IV. The Other Interest Factors Weigh Against Transfer, and Clear Channel Has Not Met Its Burden of Showing That the Southern District of New York Is Clearly More Convenient.

### A. The Private-Interest Factors Weigh Against Transfer—and Certainly Do Not Show the Southern District of New York to Be Clearly More Convenient.

*1. Blue Spike's Interests—Including the Location of and Burdens on Blue Spike and its Witnesses—Count in the Transfer Analysis.*

The transfer analysis is not solely about what is convenient for Clear Channel. The plaintiff's interests and burdens are relevant, too. Blue Spike is a practicing entity located in Tyler, Texas; it actively markets and sells its products in Texas; it plans to call witnesses from Texas; Blue Spike's inventor and CEO lives in Tyler; Blue Spike was incorporated in Texas nearly two years ago and is the result of 25 years of research, development, and deployment of products and services; it has its headquarters, its principal place of business, and its server in Tyler; and Blue Spike's employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶4-6, 11; Compl. ¶2. While Clear Channel suggests that Blue Spike's ties to

---

[3] Clear Channel argues that Moskowitz actually resides in Florida. *See* Dkt. 1148 at 1, 3, 6. This is not true; instead, he splits his time between Tyler and Florida where he receives experimental medical treatment for his chronic inguinal neuropathy condition from Dr. Steven W. Unger. See Moskowitz Decl., Dkt. No. 1135, at ¶¶14-17.

9

this District should be disregarded (Dkt. 1148 at 6-7), the Court's precedents dictate otherwise.[4]

Litigating this action in the Southern District of New York would be extremely inconvenient and burdensome for Blue Spike and Moskowitz. A transfer would make litigation more expensive for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious personal hardship for Moskowitz due to his medical condition. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶12-18; Part III, *supra*. Further, Blue Spike has no connection to the Southern District of New York whatsoever. *See* Moskowitz Decl., Dkt. No. 1135, at ¶6. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize.

In stark contrast, Clear Channel is an international megacorporation that is headquartered in and operates pervasively throughout Texas, including in this District. Indeed, its in-house IP lawyers are in San Antonio. *See* Ex. 11 (printout from Clear Channel website) at 7-8. It cannot credibly claim that litigating here would present any sort of hardship. This fact is critical because

---

[4] *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created solely to manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010) (holding that plaintiff's presence was not "recent" or "ephemeral" where plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

"transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D §3848. The relative burdens on the parties and their witnesses weigh against transfer.

> 2. *The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.*

Clear Channel claims that most of its relevant evidence is located in the Southern District of New York. Dkt. 1148 at 5-6. Even if true, this tells only part of the story. The location of Blue Spike's evidence also matters—and all of Blue Spike's evidence is located here. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached as Ex. 12) (holding that the fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer); Moskowitz Decl., Dkt. No. 1135, at ¶¶4-7; Compl. ¶2. Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; rather, its entire operation has been here for nearly two years. *See* Moskowitz Decl., Dkt. No. 1135, at ¶4. The presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5; *see also Geotag*, Ex. 10 at 5-6 (even if "the bulk of the relevant evidence" is located in the proposed transferee district, this factor weighs only "slightly" in favor of transfer when the plaintiff "maintains strong ties to the Eastern District of Texas").

11

### 3. *The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.*

Clear Channel claims that litigating in New York would be more convenient because various unidentified third-party witnesses are subject to compulsory process there, including former RCS and Media Monitors employees. Dkt. 1148 at 8. Clear Channel admits, however, that it does not actually know where these former employees are now. *Id.* at 11 ("[I]f any former employees are necessary, it is *likely* that they still live in the New York region.") (emphasis added). Clear Channel also speculates that other unidentified third-party witnesses might be subject to compulsory process in the Southern District of New York because "there are many universities, research institutions, and companies who were active in the field related to this action in the relevant timeframe located within the subpoena power of the SDNY." *Id.* at 8. All of these musings do not affect the transfer analysis because the Court must disregard all witnesses who are not specifically identified. *See Geotag*, Ex. 10 at 8.

Clear Channel also argues that litigating in New York would allow compulsory process over some "third party prior art inventors" identified in Blue Spike's patents (Dkt. 1148 at 8), overlooking the fact that Blue Spike's patents also disclose numerous prior-art inventors who live elsewhere. Clear Channel does not identify where these other inventors live or analyze which District would be more convenient for them. Similarly, Clear Channel notes that "an attorney located in Alexandria, Virginia was involved in prosecuting

12

at least two of the applications that resulted in the Asserted Patents" (*id.* at 11), but Clear Channel (1) does not identify the attorney or where he lives now, (2) does not identify another other attorney who may have been involved, and (3) ignores that the application was filed almost fourteen years ago. In the end, Clear Channel has failed to show that compulsory-process considerations favor transfer because it has not identified a single unwilling witness who is subject to the subpoena power of the Southern District of New York.

    *4. The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.*

Clear Channel's argument about the costs and convenience of willing witnesses is weak because Clear Channel also fails to identify a single willing witness. Instead, it asserts generally that (1) "[t]he majority of individuals knowledgeable about the accused products are located in White Plains, New York" and (2) "Clear Channel has identified a number of potential prior art witnesses and other third party witnesses that are located much closer to the transferee forum." *Id.* at 10, 11. Again, these sorts of vagaries do not affect the transfer analysis. *See Geotag*, Ex. 10 at 8; *Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 9 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 13) (holding that the cost of attendance for willing witnesses does not favor transfer when "Defendants fail to specifically identify employees with relevant knowledge of the accused devices").

Clear Channel also completely ignores that *all* of Blue Spike's known witnesses reside in this District. *See* Moskowitz Decl., Dkt. No. 1135, at ¶11.

13

The "cost" of attendance for those witnesses is not limited to money or mere inconvenience. As explained above, traveling is excruciatingly painful and dangerous for Blue Spike's CEO, Scott Moskowitz, who is an essential witness. Traveling to the Southern District of New York to protect his legal rights would exact a toll far greater than just the cost of airline tickets.

### B. The Public-Interest Factors Do Not Show the Southern District of New York to Be Clearly More Convenient.

None of the public-interest factors supports transfer or shows that the Southern District of New York is "clearly more convenient." *In re Volkswagen*, 545 F.3d at 315. In contending that the Southern District of New York has a greater local interest, Clear Channel again pretends that RCS is the defendant. *See* Dkt. 1148 at 13-14. But the real defendant, Clear Channel, is headquartered in and does business throughout Texas, including in this District. Clear Channel also ignores the other half of the local-interest equation: Clear Channel infringed Blue Spike's patents and harmed Tyler-based Blue Spike and its Texas-based owner and employees. In such a case, "[t]he residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business." *See Atmel*, Ex. 12 at 16. It makes sense that this District's interests would equal or exceed the interests of other districts in adjudicating the claims of a Tyler-based company, especially one that has made Blue Spike's positive contributions to civic, charitable, and business activities in Tyler. *See* Moskowitz Decl., Dkt. No. 1135, at ¶5.

Next, while Clear Channel is correct that this District and the Southern District of New York are both competent to apply federal patent law (*see* Dkt. 1148 at 11), this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology because the Court is adjudicating multiple other suits involving the same patents-in-suit—some of which involve very similar infringing technology (as explained in Part I, *supra*).

Last, Clear Channel misapplies the relative-court-congestion factor, citing statistics about the numbers of cases filed but ignoring the relative speeds with which the two districts in question dispose of patent cases. *See* Dkt. 1148 at 11. As this Court has noted, "reliance on general civil statistics provides the Court with little guidance as to the speed with which patent cases reach trial." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:12-cv-398-MHS-JDL, 2013 WL 1363613, at *5 (E.D. Tex. Apr. 2, 2013). In fact, the most recent available statistics show that the median time to trial for civil cases is shorter in this District (25.5 months) than in the Southern District of New York (28.8 months). *See* Ex. 14 at 1, 2. In any event, Clear Channel's data and argument on relative congestion do not carry much weight to begin with. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009 ) (explaining that relative court congestion is "the most speculative" public-interest factor, as "case-disposition statistics may not always tell the whole story").

**Conclusion**

For these reasons, Blue Spike respectfully asks the Court to deny Clear Channel's transfer motion.

Respectfully submitted,

 /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on March 3, 2014.

    /s/ Randall Garteiser