# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **CELL AND NETWORK SELECTION, LLC,** | § § § | |
| *Plaintiff,* | § § | **CIVIL ACTION NO. 6:11-CV-706 LED-JDL** |
| V. | § § § | **JURY TRIAL DEMANDED** |
| **AT&T MOBILITY LLC, et al.** | § § | |
| *Defendants.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants'[1] Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) (Doc. No. 43) ("MTN."). Plaintiff Cell and Network Selection, LLC ("CNS") filed a response (Doc. No. 45) ("RESPONSE") to which Defendants replied (Doc. No. 55) ("REPLY") and CNS filed a Sur-Reply (Doc. No. 56) ("SUR-REPLY"). After considering the parties' arguments, the Court **DENIES** Defendants' Motion to Transfer Venue.

### BACKGROUND

On December 29, 2011, CNS filed the instant action against Defendants, alleging infringement of U.S. Patent No. 6,195,551 ("the '551 patent"). COMPLAINT at 4–5. On October 26, 2012, Defendants filed the instant motion requesting to transfer venue to the Southern District of California ("SDCA") (Doc. No. 43).

CNS is a Texas limited liability corporation with a principal place of business in Frisco, TX. DECLARATION OF DOOYONG LEE at ¶ 3 ("LEE DECL.") (Doc. No. 45-1). CNS's parent corporation, Acacia Research Group LLC ("Acacia"), is also a Texas company with a principal

---

[1] Moving Defendants are AT&T Mobility LLC, HTC Corporation, HTC America, Inc., Sierra Wireless, Inc., and Sierra Wireless America, Inc. (collectively "Defendants").

1

place of business in Frisco, TX. *Id.* CNS's CEO, Mr. Dooyong Lee, as well as its principals Mr. Marvin Key and Mrs. Tisha Stender, all work and/or reside in the Eastern District of Texas. *Id* at ¶ 5. All of CNS's licensing documents, documents related to corporate formation, and documents related to the '551 patent are located in Frisco, TX. *Id.* at ¶ 9.

HTC America is a Washington corporation with a principal place of business in Bellevue, Washington, and HTC Corp. is a Taiwanese corporation headquartered in Taoyuan, Taiwan. DECLARATION OF STEPHANIE BARIAULT at ¶ 3 ("BARIAULT DECL.") (Doc. No. 43-1). HTC Corp. is the parent corporation of HTC America. *Id.* The accused devices are manufactured by HTC Corp. primarily in China and Taiwan and imported by them into the United States. *Id.* at ¶ 4. HTC America sells the accused devices to distributors, carriers, and third-party vendors in the United States. *Id.* at ¶ 6. Documents related to the design, manufacture, and operation of the accused devices, as well as sales and marketing, are located primarily in Washington and Taiwan. *Id.* at ¶ 7. Most of the HTC engineers work and live in Taiwan, with only a small number in Washington. *Id.* at ¶ 8. Most of HTC's officers and personnel are located in Washington and Taiwan, aside from an office in San Francisco that has 21 employees who focus on industrial and usability design for HTC mobile devices. *Id.* at ¶¶ 5, 9. Finally, HTC utilizes a Qualcomm baseband processor in at least one of its accused devices. *Id.* at ¶ 10.

Sierra Wireless, Inc. is a Canadian Corporation with its principal place of business in Richmond, British Columbia, Canada. DECLARATION OF JAMES KIRKPATRICK at ¶ 2 ("KIRKPATRICK DECL.") (Doc. No. 43-2). Sierra Wireless America, Inc. is a wholly-owned subsidiary of Sierra Wireless, Inc., and is a Delaware corporation with a principal place of business in Carlsbad, CA. *Id.* at ¶ 3. Approximately 105 employees of Sierra Wireless America, Inc. are located in Carlsbad, CA. *Id.* at ¶ 6. The accused AirCard® 754S was jointly developed in

2

Canada and California, and personnel with knowledge of its design, development, sales, and marketing are located in Carlsbad, CA. *Id*. at ¶ 7. The accused AirCard® 754S also includes a baseband processor supplied by Qualcomm Corporation, a corporation located in the Southern District of California. *Id.* at ¶ 11.

AT&T Mobility LLC is a Delaware limited liability company with a principal place of business in Atlanta, GA. DECLARATION OF MICHAEL PRISE at ¶ 3 ("PRISE DECL.") (Doc. No. 43-3). AT&T sells the accused devices, which are manufactured by HTC and Sierra and utilize AT&T's 4G LTE network. *Id.*

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.* The clearly more convenient standard "places a significant burden on [Defendants] to show good cause for transfer;" a burden that this Court does not take lightly. *Id.* at 314 n. 10; *Cherokee Hard Drive Technologies, LLC v. Bass*

3

*Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012); *Texas Data Co., LLC v. Target Brands, Inc.,* 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

### I. Jurisdiction

As a threshold matter, the parties dispute whether CNS could have originally filed this suit in the Southern District of California. *See Volkswagen I*, 371 F.3d at 203 ("In applying the provisions of § 1404(a), . . . the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."). CNS contends that Defendants have failed to show that each Defendant is subject to personal jurisdiction in the Southern District of California. RESPONSE at 5.

Well-established authority makes clear that a transferee court must have jurisdiction over the defendants in the transferred complaint. *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)); *Chirife v. St. Jude Medical, Inc.,*

4

2009 WL 1684563, at *3-4 (E.D. Tex. June 16, 2009). Therefore, the movants have the *prima facie* burden to prove that both personal jurisdiction and venue are appropriate for all defendants in the transferee court. *Chirife*, 2009 WL 1684563, at *1 (internal citations omitted); *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549, 551 (E.D. Tex. 2009) ("Transfer of a suit involving multiple defendants is ordinarily proper 'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'") (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147 (5th Cir. 1987)). The "critical time" when making this threshold inquiry is the time when the lawsuit was filed. *Balthasar*, 654 F. Supp. 2d at 549 (citing *Hoffman*, 363 U.S. at 343).

Defendants maintain that this action could have been brought in the Southern District of California because Sierra Wireless America, Inc. is based in that district and HTC America has an office in San Francisco, California. MTN. at 9. As to the remaining Defendants, HTC Corp., Sierra Wireless, and AT&T Mobility, Defendants maintain that because those Defendants have joined in this motion to transfer, they have implicitly consented to personal jurisdiction. *Id.*

While the Court expresses no opinion whether HTC America's one office in San Francisco is sufficient to demonstrate the State of California would have personal jurisdiction over HTC America, Defendants make no effort to demonstrate that personal jurisdiction exists for HTC Corp., Sierra Wireless, Inc., and AT&T Mobility LLC. MTN. at 9. The Court declines to rely on Defendants' consent to personal jurisdiction in the transferee forum as its basis to conclude whether this lawsuit could have been filed there. *See Chirife,* 2009 WL 1684563, at *1 (stating that under § 1404(a) it is "immaterial [to the transfer analysis] that the defendant

subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum") (quoting *Hoffman v. Blaski,* 363 U.S. at 344). Accordingly, the Court finds that Defendants have failed to demonstrate that this action could have been brought in the Southern District of California.

Even if Defendants could successfully show that this case could have originally been filed in the transferee forum, Defendants have also failed to show that the Southern District of California is clearly more convenient.

## II. Convenience

### 1. Private Interest Factors

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet their burden, however, Defendants must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–cv–113, 2009 WL 331889, at *3, (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

6

Defendants generally state relevant documents related to the design, manufacture, and operation of the accused devices, as well as sales and marketing for the HTC accused devices are located primarily in Washington and Taiwan,[2] while relevant documents related to Sierra Wireless's accused products are in Carlsbad, CA. BARIAULT DECL. at ¶ 7; KIRKPATRICK DECL. at ¶ 7. Defendants fail to state the location of any AT&T documents other than to state its documents will have little relevance because AT&T does not develop or manufacture the accused devices. MTN. at 11.

The Court finds this evidence insufficient to determine that the relevant sources of proof weigh in favor of transfer. At best Defendants have generalized one of five Defendant's relevant documents are in the Southern District of California while another has documents closer to that district in Washington. CNS argues that AT&T's relevant documents are not of diminished importance because AT&T operates and controls the network on which the accused devices operate to allegedly meet the network claim limitation of the '551 patent. RESPONSE at 8. Without development of the issues in this case, the Court is reluctant to wholly disregard AT&T's documents. Accordingly, the Court finds this factor does not weigh in favor of transfer based on the evidence presented.[3]

---

[2] The Court disregards the location of documents located abroad. *See In re Genentech, Inc.,* 566 F.3d 1338, 1344 (Fed. Cir. 2009) (discounting European witnesses in the convenience analysis when reviewing a denial of transfer from Texas to California); *see also Wellogix Technology Licensing LLC v. Automatic Data Processing, Inc.*, No. 6:11-cv-401 2013 WL 1729606, at *5 (E.D. Tex. Mar. 19, 2013) ("[b]ecause any documents and witnesses located abroad will have to travel 'a significant distance no matter where they testify,' the inconvenience of transporting such documents or the inconvenience of any foreign witnesses will be discounted.")

[3] The Court finds a comparative analysis as to the information CNS has provided regarding the location of its relevant sources of proof would be purely speculative given the vague and uncertain nature of relevant sources Defendants have provided. Further, it is worth noting that while this Court has conducted extensive analysis on the recent and ephemeral nature of non-practicing entities filing suit in this District, and the weight to be given to such entities' contacts with the District, *see, e.g., NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, No. 6:10–cv–229, 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010)), at least one court in the Third Circuit has declined to engage in that analysis. *See Cradle IP, LLC v. Texas Instruments Inc.*, No. 1:11-cv-1254, 2013 WL 548454, at *4 (D. Del. Feb. 13, 2013) ("[t]he court declines to treat such non-practicing entities as anything less than holders of constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office.

7

*(b)The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Defendants identify 3 prior art witnesses in the Southern District of California, including two co-inventors of a prior art patent, Dr. Roberto Padovani and Roy F. Quick, and one inventor of another prior art patent, Dr. Samir Soliman. MTN. at 7. Defendants also identify three authors of prior art publications who reside in the Northern District of California, Dr. Daniel Wong, Dr. Tatsuya Suda, and Dr. Carlos Oliveria. *Id*. The Southern District of California would have absolute subpoena power[4] over these six potential third-party witnesses Defendants identify. Defendants also maintain relevant third-party witnesses from Qualcomm would be located in the Southern District of California, but do not specifically identify those witnesses. *Id.* at 6. Finally, Defendants identify the inventors of the '551 patent who are both located in Seoul, South Korea, and the prosecuting attorney who is located in Bethesda, Maryland. *Id.* at 3. Neither district would have subpoena power over these witnesses.

CNS does not identify any relevant third party witnesses at this stage of the proceedings and argues that weighing the compulsory process for these potential third party witnesses would be merely speculative at this point. RESPONSE at 12.

---

Therefore, the fact that a plaintiff is characterized as a 'litigation vehicle' does not detract from the weight accorded a plaintiff's choice of forum.").
[4] The Court's use of the term "absolute subpoena power" means subpoena power for both deposition and trial. *Volkswagen*, 545 F.3d at 316.

8

Of the witnesses specifically identified by the parties, six potential third-party witnesses are located in California, one is in Maryland, and two are in South Korea. The Court does note the speculative nature of weighing this factor as to convenience for trial at the early stages of this proceeding. As is very often the case, as cases proceed to trial, prior art references are narrowed and reduced in invalidity contentions, claims are dropped in infringement contentions or sometimes dismissed, and the witnesses for trial change accordingly. Nonetheless, Defendants have identified six potential prior art witnesses over whom the Southern District of California would have absolute subpoena power. Accordingly, giving these witnesses their due weight, the Court finds this factor weighs in favor of transfer.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

Defendants fail to specifically identify employees with relevant knowledge of the accused devices. Rather, they generally point out that Sierra Wireless America's and third-party Qualcomm's witnesses are likely located in the Southern District of California where they are headquartered. MTN. at 12. Further, Defendants only state generally that HTC witnesses would be coming from Washington, which is closer to the Southern District of California, and that witnesses from Sierra Wireless, Inc., would be coming from Richmond, British Columbia,

9

Canada, which is also closer to the Southern District of California. *Id.* at 13. Defendants fail to mention any relevant witnesses from AT&T, which maintains a principal place of business in Atlanta, GA and at least one network testing office in this District in Plano, Texas. Without naming any persons, their interest in the litigation, and where they reside, the Court can only speculate as to the difficulty and cost of travel. Accordingly, the Court finds this factor does not weigh in favor of transfer.

*(d) Other Practical Problems*

Defendants maintain that no practical problems arise from transferring this case to the Southern District of California. MTN. at 13. CNS maintains that judicial economy weighs against transfer because of the onset of co-pending litigation it later filed in this District. *See Cell and Network Selection LLC v. MetroPCS Comm., Inc. et al.*, No. 6:12-cv-802 (E.D. Tex. Oct. 2012). However, this argument by CNS is misplaced as the Court considers the situation that existed at the time the action was initiated. *See Hoffman*, 363 U.S. at 343 (indicating motions to transfer venue are to be decided based on "the situation which existed when the suit was instituted."); *In re EMC Corp.*, No. 10-cv-435 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013) ("Because the dismissal of [Plaintiff's] suits as to the other defendants occurred later, it is not relevant to the venue inquiry"). Accordingly, the Court finds there are no other practical problems that weigh for or against transfer.

## II. The Public Interest Factors

Defendants maintain all of the public interest factors are neutral except local interest. MTN. at 13–15.

*(b) The Local Interest in Having Localized Interests Decided at Home*

10

The location of the alleged injury is traditionally an important consideration in weighing this factor. *TS Tech,* 551 F.3d at 1321. However, in a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest may also be determined when a district is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *Hoffman–La Roche,* 587 F.3d at 1336.

As stated above, only one of the five defendants in the instant action maintains a principal place of business, or an office, in the Southern District of California. Defendants maintain that Sierra Wireless America, Inc.'s, as well as third-party Qualcomm's, presence in the Southern District of California creates a strong local interest in that district that justifies transfer. MTN. at 14. CNS contends this District has a local interest as it maintains its principal place of business in Frisco, TX, and three of its principals work and/or reside in this District. RESPONSE at 13.

Defendants attack CNS's ties to this district as an attempt to manipulate venue. Defendants note that CNS was incorporated in Texas just 6 months before filing suit. MTN. at 3. While Defendants' attack on CNS's ties does not render it a recent entity, *see NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, No. 6:10–cv–229 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010) (finding that plaintiff's filing of a complaint four months after incorporation did not render its presence "recent"), ultimately, the Court finds that undertaking unnecessary when, as here, Defendants have failed to establish the Southern District of California is a clearly more convenient venue. *See In re Apple Inc.*, 456 Fed. Appx. 907, 909 (Fed. Cir. 2012) ("Although in [Defendant's] papers much is made of [Plaintiff's] recent and ephemeral connections to the Eastern District of Texas—[Plaintiff] incorporated in Texas and established an office one month before filing this suit—the district court gave that consideration no weight in its

analysis. What is more, measured against cases like *Volkswagen*, *TS Tech*, *Genentech,* and *Acer,* there is a plausible argument that [Defendant] did not meet its burden of demonstrating below that the transferee venue is "clearly more convenient."). Accordingly, the Court finds this factor is neutral.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

For the aforementioned reasons, the Court finds that Defendants have not met their threshold requirement to demonstrate that this action could have been filed in the Southern District of California. Further, had that threshold requirement been met, the Court cannot find that the Southern District of California is a clearly more convenient forum. On balance of the evidence presented, only one convenience factor weighed in favor of transfer. Ultimately, Defendants have failed to show that the Southern District of California is clearly more convenient. *In re Apple Inc.*, 456 Fed. Appx. 907, 909 (Fed. Cir. 2012); *Core Wireless S.A.R.L v. Apple, Inc.*, 6:12-cv-100 (E.D. Tex. Feb. 22, 2013). Accordingly, the Court **DENIES** Defendants' Motion to Transfer.

**So ORDERED and SIGNED this 29th day of April, 2013.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE