UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC,<br><br>       *Plaintiff*,<br><br>v.<br><br>Texas Instruments, Inc. et al.,<br><br>       *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 6:12-cv-499-MHS<br><br>Lead Case<br><br>Jury Trial Demanded |

**BLUE SPIKE'S OPPOSITION TO 3M COGENT'S MOTION
TO TRANSFER VENUE [DKT. 1150]**

## Introduction

Plaintiff Blue Spike, LLC is a Texas company with its headquarters and principal place of business in Tyler, Texas. *See* Compl. ¶2. Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to today's widespread digital abstracting—including certain "digital fingerprinting" technology—which is a means of identifying digital content via its unique markers. The companies that employ digital abstracting today—including 3M Cogent, Inc.—have profited from infringing Blue Spike's patents. Blue Spike has filed multiple lawsuits in this Court against infringers on these same four patents. The Court consolidated the suits for pretrial purposes based on "common questions of law or fact," finding that consolidation "would promote efficient case management." *See* Ex. 1 (October 9, 2012 consolidation order) at 15; *see also* Ex. 2 (March 25, 2013 consolidation order) at 17.

3M Cogent requests transfer to the Southern District of California even though it has offices and customers in Texas and even though its parent corporation, 3M Company, operates pervasively throughout the state, including in this District. 3M Cogent is happy to "leverage the resources of" this "global leader with multi-industry experience and $26 billion in revenues" when it comes to reaping profits in Texas, but it is apparently unwilling to answer for patent infringement here. Ex. 3 (3M Cogent website printout) at 1. With no legitimate reason to complain about litigating here, 3M Cogent instead it builds its case for transfer on two inaccurate notions, claiming that Blue Spike "has no real ties" to this District and that its CEO Scott Moskowitz does not live here. Dkt. 1150 at 1. Neither premise of 3M's argument is true.

Blue Spike—whose operations are all in the Eastern District of Texas—opposes 3M Cogent's transfer motion for three reasons: (1) paramount considerations of judicial efficiency weigh heavily against transfer, since the case against 3M Cogent is deeply intertwined with others in this District; (2) the serious health condition of Blue Spike's CEO and inventor—an essential witness in the case—defeats transfer; and (3) 3M Cogent has not shown that other public and private interests make the Central District of California "clearly more convenient" than this District.

## Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or

division where it might have been brought." 28 U.S.C. §1404(a). "[T]he party seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district." 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.12[3] (3d ed. 2012). The transfer movant must also show good cause for transfer and prove that the proposed transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 315 (5th Cir. 2008) (en banc). In evaluating whether a movant has made this showing, courts weigh several private-interest and public-interest factors. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private-interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Id*. Although not a distinct factor, the plaintiff's choice of venue should always receive deference. *Id*. at 1320. The public-interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in the outcome of the case; (3) the familiarity of the forum with applicable law; and (4) the avoidance of unnecessary problems of conflicts of laws. *Id*.

**Argument**

I. **The "Paramount" Federal Interest in Judicial Efficiency—Without More—Defeats Transfer.**

"Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective administration of justice, and having one trial court decide all of these claims clearly furthers that objective." *In re Google*, 412 F.App'x 295, 296 (Fed. Cir. 2011). Judicial economy is so important that it provides a sufficient basis to deny transfer even "when all of the convenience factors clearly favor transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010).[1] Multiple lawsuits involving Blue Spike's patents-in-suit are before the Court, all dealing with infringement of the same four patents. The Court has consolidated the cases for pretrial purposes because they "involve a common question of law or fact" and because consolidation will "promote efficient case management." *See* Ex. 1 at 15; Ex. 2 at 17. 3M Cogent's motion second-guesses that determination.

Here, transfer is especially inappropriate because the consolidated cases share more than just the patents-in-suit: the factual and legal issues, and the defendants themselves, are deeply intertwined. For example, other

---

[1] *See also Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (holding that a defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora").

consolidated defendants' accused products have very similar functionality to 3M Cogent's. *See, e.g.*, Dkt. 918, ¶7 (Amended Complaint Against Dermalog Identification Systems, GMBH); *see also* Dkt. 944, ¶27 (Amended Complaint Against AOptix); Case No. 6:12-cv-680, Dkt. 1 at ¶28 (Complaint Against L-1 Identity Solutions, Inc. and MorphoTrust USA, Inc.). Indeed, many of those defendants are 3M Cogent's direct competitors in the biometrics marketplace, making very similar sorts of biometric devices for security and law-enforcement purposes. Thus, if the Court were to grant 3M Cogent's transfer motion but retain other related or similar lawsuits, it would guarantee that multiple courts would have to weigh identical issues, duplicate each other's efforts, and issue potentially conflicting rulings.

The Court's recent transfer decisions support keeping this case here. *Net Navigation*—like this consolidated action—involved multiple suits dealing with the same four patents. *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, at 8-10 (E.D. Tex. Aug. 24, 2012), *report and recommendation adopted*, 4:11-CV-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) (attached as Ex. 4). There, the Court denied transfer, reasoning that transferring one of the suits to another venue would mean that "another court would be required to conduct duplicative proceedings regarding claim construction, expert discovery, and other issues." *Id*. Other recent cases—all on point—likewise undermine the argument for transfer.[2]

---

[2] *See, e.g.*, *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-00416-JRG, Dkt. 416, at (E.D. Tex. Aug. 9, 2013) (attached as Ex. 5) (denying transfer because, as here, some

5

Transfer would create inefficiency because this case shares not only the patents-in-suit with other consolidated cases but also "overlapping products [and] services." *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-JRG, Dkt 585 (E.D. Tex. Jan. 14, 2013) (attached as Ex. 8). A transfer would undermine the "paramount" consideration of judicial efficiency, forcing multiple federal courts to expend duplicative efforts considering common questions of law and fact and creating an unnecessary risk of inconsistent claim construction and adjudication. *In re Google*, 412 F.App'x at 296. This is another stand-alone ground for denying transfer.

## II. The Serious Health Problems of Blue Spike's CEO and Inventor—an Essential Witness—Also Defeat Transfer.

"The health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases). A party's health concerns may, without more, control the result of a transfer motion. *See, e.g.*, *BSB Bank & Trust Co. v.*

---

groups of consolidated defendants had asked for transfer to different districts while others had not, meaning the case would "be split into three parallel co-pending actions involving the same asserted patents . . . and unavoidably risk duplicative proceedings involving the same or similar issues between three different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions"); *Oasis Research, LLC v. Pro Softnet Corp.*, No. 4:12-CV-531, at 11 (E.D. Tex. Aug. 21, 2012) (attached as Ex. 6) (holding that, where plaintiff had filed multiple suits in this District on the same four patents, transfer was improper because "another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues"); *Mosaid Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, at 9-10 (E.D. Tex. Sept. 27, 2012) (attached as Ex. 7) (denying motion to transfer a consolidated patent suit because "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily . . . against transfer").

6

*Morrison*, No. 02-CV-648, 2003 WL 1797845, at *2-3 (N.D.N.Y. Apr. 4, 2003) (granting defendants' transfer motion based on defendant's health problems even though the contract contained a choice-of-venue clause and many other factors weighed against transfer).

Here, transfer would cause serious hardship for Blue Spike's CEO and inventor, Scott Moskowitz, who suffers from a medical condition that makes traveling excruciating and dangerous. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶12-18. Moskowitz resides in this District, and the only other place where he regularly spends time is Florida—where he goes to receive medical treatment unavailable elsewhere and to finalize matters related to hurricane-related damage to a condominium he owns there. *Id.* ¶14. 3M Cogent argues that Moskowitz actually resides in Florida. *See* Dkt. 1150 at 4-5. This is simply not true. Moskowitz used to reside in the Miami area and still owns a condominium there, but he has resided in Tyler since before this case was filed. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶1-4. Moskowitz's difficulty traveling weighs heavily against transfer.

### III. The Other Interest Factors Weigh Against Transfer, and 3M Cogent Has Not Met Its Burden of Showing That the Central District of California Is Clearly More Convenient.

#### A. The Private-Interest Factors Weigh Against Transfer—and Certainly Do Not Show the Central District of California to Be Clearly More Convenient.

##### 1. *Blue Spike's Interests—Including the Location of and Burdens on Blue Spike and its Witnesses—Count in the Transfer Analysis.*

The transfer analysis is not solely about what is convenient for 3M Cogent. The plaintiff's interests and burdens are relevant, too. Blue Spike is a practicing entity located in Tyler, Texas; it actively markets and sells its products in Texas; it plans to call witnesses from Texas; Blue Spike's inventor and CEO lives in Tyler; Blue Spike was incorporated in Texas nearly two years ago and is the result of 25 years of research, development, and deployment of products and services; it has its headquarters and principal place of business in Tyler; and Blue Spike's employees, computer servers, and sources of proof are all located here. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶1-7; Compl. ¶2. While 3M Cogent suggests that Blue Spike's ties to this District should be disregarded (Dkt. 1150 at 1, 9-10), the Court's precedents dictate otherwise.[3]

---

[3] *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) ("Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is 'ephemeral' and created solely to manipulate venue."); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *4-5 (E.D. Tex. Dec. 6, 2010) (holding that plaintiff's presence was not "recent" or "ephemeral" where plaintiff had opened its office here four months before filing suit and two of its three principals lived here).

Litigating this action in the Central District of California would be extremely inconvenient and burdensome for Blue Spike and Moskowitz. A transfer would make litigation more expensive for Blue Spike, would increase the amount of time that Blue Spike's witnesses and employees would have to spend on the case, and would cause serious personal hardship for Moskowitz due to his medical condition. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶12-18; Part II, *supra*. Further, Blue Spike has no connection to the Central District of California whatsoever. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶6-9. Blue Spike is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize.

In stark contrast, 3M Cogent is a wholly owned subsidiary of an international megacorporation that operates pervasively throughout Texas, including in this District. Indeed, 3M Cogent itself operates across the country, and fewer than half of its employees work in its Southern California office. Dkt. 1150-5 at ¶11. It even has an office in Irving, Texas, barely more than a hundred miles from the Eastern District of Texas's Tyler courthouse. *Id.* ¶12. Given its resources, 3M Cogent cannot credibly claim that litigating here would present any sort of hardship beyond travel-related inconvenience for a few of its California employees. This fact is critical because "transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other." WRIGHT, MILLER & COOPER, FEDERAL

PRACTICE AND PROCEDURE: JURISDICTION 3D §3848. The relative burdens on the parties and their witnesses weigh against transfer.

> 2. *The Relative Ease of Access to Sources of Proof Does Not Clearly Weigh in Favor of Transfer.*

3M Cogent claims that most of its relevant evidence is located in the Central District of California. Dkt. 1150 at 2-3, 9. But, even if true, this tells only part of the story. All of Blue Spike's evidence is located here—and the location of this evidence matters. *See Advanced Processor Techs., LLC v. Atmel Corp.*, Civ. No. 2:12-CV-152-JRG-RSP, at 10 (E.D. Tex. Mar. 26, 2013) (attached as Ex. 9) (holding that the fact that "[a]ll of Plaintiff's evidence is located within this district" weighs against transfer); Moskowitz Decl., Dkt. No. 1135, at ¶¶4-5; Compl. ¶2. Blue Spike did not transfer its evidence to this District solely for purposes of this lawsuit; rather, its entire operation has been here for nearly two years. *See* Moskowitz Decl., Dkt. No. 1135, at ¶¶1-5. The presence of Blue Spike's evidence in this District weighs against transfer. *See NovelPoint Learning*, 2010 WL 5068146, at *4-5; *see also Geotag*, Ex. 8 at 5-6 (even if "the bulk of the relevant evidence" is located in the proposed transferee district, this factor weighs only "slightly" in favor of transfer when the plaintiff "maintains strong ties to the Eastern District of Texas").

> 3. *The Availability of Compulsory Process Does Not Clearly Weigh in Favor of Transfer.*

3M Cogent claims that litigating in California would be more convenient because "numerous customers of 3M Cogent that purchase the products at

issue in this case are located in the Los Angeles area." Dkt. 1150 at 10-11. Such vague claims do not support transfer, as 3M Cogent does not identify these customers or explain what sort of relevant testimony they might provide. *See Geotag*, Ex. 8 at 8 (the Court must disregard all witnesses who are not specifically identified). Indeed, 3M Cogent does not even claim that its Los Angeles customers are the only ones that might possess relevant knowledge; in other contexts, when it is not trying to downplay its Texas connections, 3M Cogent proudly boasts of working extensively with Texas customers. *See* Ex. 10 ("case study" from 3M Cogent website).

3M Cogent also argues that litigating in California would benefit unidentified "potential prior art witnesses." Dkt. 1150 at 11. While it is true that Blue Spike's patents identify some prior-art inventors who reside in California, they also identify numerous prior-art inventors who live elsewhere. 3M Cogent does not acknowledge these other inventors or analyze which District would be more convenient for them.

3M Cogent fails to show how compulsory-process considerations favor transfer, as it has not identified a single unwilling witness who is subject to the subpoena power of the Central District of California.

    4. *The Cost of Attendance for Willing Witnesses Does Not Clearly Weigh in Favor of Transfer.*

3M Cogent's argument about the costs and convenience of willing witnesses is relatively weak because 3M Cogent fails to identify any willing witnesses apart from four of its own employees. Dkt. 1150-5 at ¶13. It alludes

11

vaguely to other 3M Cogent "engineers and managers" and to "numerous customers, non-party engineers and others familiar with the prior art" (Dkt. 1150 at 11-12) who are located in California, but the Court must disregard these witnesses because they are not specifically identified. *See Geotag*, Ex. 8 at 8; *Cell & Network Selection, LLC v. AT&T Mobility LLC*, No. 6:11-CV-706-LED-JDL, Dkt. 85, at 9 (E.D. Tex. Apr. 29, 2013) (attached as Ex. 11) (holding that the cost of attendance for willing witnesses does not favor transfer when "Defendants fail to specifically identify employees with relevant knowledge of the accused devices").

3M Cogent also completely ignores that *all* of Blue Spike's known witnesses reside in this District. *See* Moskowitz Decl., Dkt. No. 1135, at ¶11. The "cost" of attendance for those witnesses is not limited to money or mere inconvenience. As explained above, traveling is excruciatingly painful and dangerous for Blue Spike's CEO, Scott Moskowitz, who is an essential witness. Traveling to the Central District of California to protect his legal rights would exact a toll far greater than just the cost of airline tickets.

**B.  The Public-Interest Factors Do Not Show the Central District of California to Be Clearly More Convenient.**

None of the public-interest factors supports transfer or shows that the Central District of California is "clearly more convenient." *In re Volkswagen,* 545 F.3d at 315. In contending that the Central District of California has a greater local interest than this District, 3M Cogent ignores the other half of the local-interest equation: 3M Cogent infringed Blue Spike's patents and

harmed Tyler-based Blue Spike and its Texas-based owner and employees. In such a case, "[t]he residents of the Eastern District clearly have a legitimate local interest in the enforcement of patents owned by a resident business." *See Atmel*, Ex. 9 at 16. It makes sense that this District's interests would equal or exceed the interests of other districts in adjudicating the claims of a Tyler-based company, especially one that has made Blue Spike's positive contributions to civic, charitable, and business activities in Tyler. *See* Moskowitz Decl., Dkt. No. 1135, at ¶5.

Additionally, while 3M Cogent is correct that this District and the Central District of California are both competent to apply federal patent law (*see* Dkt. 1150 at 15), this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology because the Court is adjudicating multiple other suits involving the same patents-in-suit—some of which involve very similar infringing technology (as explained in Part I, *supra*).

## Conclusion

For these reasons, Blue Spike respectfully asks the Court to deny 3M Cogent's transfer motion.

Respectfully submitted,

 /s/ Randall T. Garteiser
Randall T. Garteiser
 Lead Attorney
 Texas Bar No. 24038912
 rgarteiser@ghiplaw.com

13

        Christopher A. Honea
         Texas Bar No. 24059967
         chonea@ghiplaw.com
        Christopher S. Johns
         Texas Bar No. 24044849
         cjohns@ghiplaw.com
        GARTEISER HONEA, P.C.
        218 North College Avenue
        Tyler, Texas 75702
        (903) 705-0828
        (903) 526-5477 fax

        *Counsel for Blue Spike, LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on March 3, 2014.

                                                                                              /s/ Randall Garteiser