**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF TEXAS TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | Civil Action No. 6:12-CV-499-MHS |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| TEXAS INSTRUMENTS, INC., | § § | |
| Defendant. | § § § | |
| BLUE SPIKE, LLC, | § § § | Civil Action No. 6:12-CV-537-MHS |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| SOUNDHOUND, INC., | § § | |
| Defendant. | § § § | |

## AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS TO ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Defendant SoundHound, Inc. ("SoundHound"), for its Amended Answer to the Original

Complaint for Patent Infringement ("Complaint") of Blue Spike, LLC ("Blue Spike" or

"Plaintiff"), answers and alleges as follows:

### I.  ANSWER

### NATURE OF THE SUIT

1.      SoundHound admits that the Complaint purports to assert claims for patent

infringement under the patent laws of the United States, Title 35 of the United States Code.

SoundHound denies that it has infringed any patents.

## PARTIES

2.        SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies those allegations.

3.        SoundHound admits that it is a Delaware Corporation and that it can be served with process through its registered agent, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  SoundHound denies the remaining allegations of paragraph 3.

## JURISDICTION AND VENUE

4.        SoundHound admits that this lawsuit purports to be a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* SoundHound admits the Court has subject-matter jurisdiction.

5.        SoundHound denies the allegations of paragraph 5.

6.        SoundHound denies the allegations of paragraph 6.

## FACTUAL BACKGROUND

7.        SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies those allegations.

8.        SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies those allegations.

9.        SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies those allegations.

10.        SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies those allegations.

11.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies those allegations.

12.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies those allegations.

13.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies those allegations.

14.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies those allegations.

15.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies those allegations.

16.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies those allegations.

17.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies those allegations.

18.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies those allegations.

19.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19, and therefore denies those allegations.

20.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies those allegations.

21.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 and/or the allegations therein are too vague or speculative to enable SoundHound to form a belief as to the truth of the allegations, and therefore denies

those allegations.

22.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and/or the allegations therein are too vague or speculative to enable SoundHound to form a belief as to the truth of the allegations, and therefore denies those allegations.

23.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and/or the allegations therein are too vague or speculative to enable SoundHound to form a belief as to the truth of the allegations, and therefore denies those allegations.

24.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and/or the allegations therein are too vague or speculative to enable SoundHound to form a belief as to the truth of the allegations, and therefore denies those allegations.

25.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and/or the allegations therein are too vague or speculative to enable SoundHound to form a belief as to the truth of the allegations, and therefore denies those allegations.

26.     SoundHound denies the allegations of paragraph 26.

27.     SoundHound admits that it designs and develops software applications, systems, and technology which enable users to identify media and content.  SoundHound admits that it is successful with more than 80 million users.  SoundHound admits that it makes and distributes in the United States systems and services, including its Sound2Sound and SoundHound software applications. SoundHound denies the remaining allegations in paragraph 27.

28.     SoundHound admits the allegations in paragraph 28.

29.     SoundHound denies the allegations in paragraph 29.

## COUNT 1:

## INFRINGEMENT OF U.S. PATENT NO. 8,214,175

30.     Paragraphs 1-29 are incorporated by reference as if fully restated herein.

31.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31, and therefore denies those allegations.

32.     SoundHound admits that a document attached as Exhibit A to the Complaint appears to be a copy of United States Patent No. 8,214,175 ("the '175 patent"), which on its face bears the issue date July 3, 2012.  SoundHound denies that the '175 patent is valid and enforceable and that it was duly and legally issued.  SoundHound lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 32, and therefore denies those allegations.

33.     SoundHound denies the allegations of paragraph 33.

34.     SoundHound denies the allegations of paragraph 34.

35.     SoundHound denies the allegations of paragraph 35.

36.     SoundHound denies the allegations of paragraph 36.

37.     SoundHound denies the allegations of paragraph 37.

## COUNT 2:

## INFRINGEMENT OF U.S. PATENT NO. 7,949,494

38.     Paragraphs 1-37 are incorporated by reference as if fully restated herein.

39.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39, and therefore denies those allegations.

40.     SoundHound admits that a document attached as Exhibit B to the Complaint appears to be a copy of United States Patent No. 7,949,494 ("the '494 patent"), which on its face bears the issue date May 24, 2011.  SoundHound denies that the '494 patent is valid and enforceable and that it was duly and legally issued.  SoundHound lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 40, and therefore denies those allegations.

41.     SoundHound denies the allegations of paragraph 41.

42.     SoundHound denies the allegations of paragraph 42.

43.     SoundHound denies the allegations of paragraph 43.

44.     SoundHound denies the allegations of paragraph 44.

45.     SoundHound denies the allegations of paragraph 45.

<strong><u>COUNT 3:</u></strong>

<strong><u>INFRINGEMENT OF U.S. PATENT NO. 7,660,700</u></strong>

46.     Paragraphs 1-45 are incorporated by reference as if fully restated herein.

47.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47, and therefore denies those allegations.

48.     SoundHound admits that a document attached as Exhibit C to the Complaint appears to be a copy of United States Patent No. 7,660,700 ("the '700 patent"), which on its face bears the issue date February 9, 2010.  SoundHound denies that the '700 patent is valid and enforceable and that it was duly and legally issued.  SoundHound lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 48, and therefore denies those allegations.

49.     SoundHound denies the allegations of paragraph 49.

50.     SoundHound denies the allegations of paragraph 50.

51.     SoundHound denies the allegations of paragraph 51.

52.     SoundHound denies the allegations of paragraph 52.

53.     SoundHound denies the allegations of paragraph 53.

## COUNT 4:

## INFRINGEMENT OF U.S. PATENT NO. 7,346,472

54.     Paragraphs 1-53 are incorporated by reference as if fully restated herein.

55.     SoundHound lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55, and therefore denies those allegations.

56.     SoundHound admits that a document attached as Exhibit D to the Complaint appears to be a copy of United States Patent No. 7,346,472 ("the '472 patent"), which on its face bears the issue date March 18, 2008.  SoundHound denies that the '472 patent is valid and enforceable and that it was duly and legally issued.  SoundHound lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 56, and therefore denies those allegations.

57.     SoundHound denies the allegations of paragraph 57.

58.     SoundHound denies the allegations of paragraph 58.

59.     SoundHound denies the allegations of paragraph 59.

60.     SoundHound denies the allegations of paragraph 60.

61.     SoundHound denies the allegations of paragraph 61.

## RELIEF REQUESTED BY PLAINTIFF

SoundHound denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

## II. AFFIRMATIVE DEFENSES AND OTHER DEFENSES

### FIRST DEFENSE – NON-INFRINGEMENT

62.     SoundHound has not infringed and does not infringe, either directly, contributorily, or by inducement, any claim of the '175, '494, '700, and '472 patents (collectively, the "patents-in-suit") either literally or under the doctrine of equivalents, or in any other manner.

### SECOND DEFENSE – INVALIDITY

63.     One or more claims of the patents-in-suit are invalid for failing to meet one or more of the requisite conditions specified in 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicial doctrine of double patenting.

### THIRD AFFIRMATIVE DEFENSE – ESTOPPEL

64.     SoundHound is informed and believes, and on that basis avers, that the relief sought by Plaintiff is barred under the doctrine of prosecution history estoppel.

### FOURTH AFFIRMATIVE DEFENSE – LACHES

65.     SoundHound is informed and believes, and on that basis avers, that the relief sought by Plaintiff is barred under the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE – LIMITATION ON DAMAGES

66.     Plaintiff's claim for damages is barred, in whole or in part, by 35 U.S.C. § 287 and/or Plaintiff's failure to plead notice thereunder.

### SIXTH AFFIRMATIVE DEFENSE – COSTS BARRED IN ACTION FOR INFRINGEMENT OF A PATENT CONTAINING INVALID CLAIMS

67.     Pursuant to 35 U.S.C. § 288, Plaintiff is barred from recovering any costs.

### SEVENTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

68.    The Complaint fails to state a claim against SoundHound upon which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE – LACK OF PERSONAL JURISDICTION

69.    The allegations in the Complaint asserted against SoundHound should be dismissed for lack of personal jurisdiction and improper venue.

## NINTH AFFIRMATIVE DEFENSE – UNENFORCEABILITY OF PATENTS DUE TO INEQUITABLE CONDUCT

70.    The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

71.    During prosecution of the '472, '700, '494 and '175 patents, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and which they knew or should have known would have been important to a reasonable examiner. Upon information and belief, the applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.

## The Applicants Knew Of Highly Material Prior Art, Including Prior Art Of Audible Magic And Its Predecessor Company Muscle Fish LLC

72.    Upon information and belief, the applicants of the '472, '700, '494 and '175 patents knew of highly material prior art regarding content identification technologies. Despite having full knowledge of this material prior art, the applicants did not share it with the PTO. Upon information and belief, prior to filing and issuance of the '472, '700, '494 and '175 patents, the applicants investigated products or services that competed with or were otherwise relevant to the business of applicant Scott Moskowitz ("Moskowitz") and his company Blue Spike and to the patent claims being drafted by the applicants. Upon information and belief, the

applicants investigated products and services that carried out the monitoring, analysis and recognition of digital information and signals, including products and services that used content-based fingerprints in order to identify content or signals.

73.     Upon information and belief, prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were aware of prior art technology and systems of Audible Magic's predecessor company, a consulting company called Muscle Fish, LLC ("Muscle Fish"). Upon information and belief, prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were also aware of prior art technology and systems of Audible Magic.

74.     Upon information and belief, Muscle Fish was founded in Berkeley, California, in 1992, by engineers, mathematicians and musicians Erling Wold, Doug Keislar, Thom Blum and Jim Wheaton. Upon information and belief, these were some of the most experienced and brightest audio technologists in the world; they had worked with signal processing and sound technologies from the late 1970s through the early 1990s. Upon information and belief, by 1992, these gentlemen had advanced degrees in electrical engineering, computer science and computer applications to music synthesis and had extensive experience with acoustic models, signal processing, parameter estimation, non-linear and applied mathematics, software engineering, computer architecture, circuit design and computer music. Upon information and belief, one cofounded the Computer Music Association, and another conducted psycho-acoustical research at Stanford's Center for Computer Research in Music and Acoustics ("CCRMA"). Upon information and belief, all had been engineers for years at a variety of companies, including Yamaha Music Technologies, developing new music analysis and synthesis techniques.

75.     Upon information and belief, beginning in 1992, the Muscle Fish engineers

worked on systems for analyzing content and signals. Upon information and belief, in the 1990s, the Muscle Fish engineers designed a system for looking up and comparing known and unknown content based on a set of features of content called "MFCCs." Upon information and belief, the Muscle Fish engineers published papers about this technology. For example, on July 20, 1995, upon information and belief, they published a paper, "Audio Databases with Content-Based Retrieval," about MFCC-based fingerprints and presented it in August 1995 at the IJCAI Workshop on Intelligent Multimedia and also in September 1995, at the International Computer Music Conference. Upon information and belief, in January and May 1996, respectively, they gave talks to IBM and to the CCRMA called "Content-Based Classification, Search, and Retrieval of Audio." Upon information and belief, in 1996, Muscle Fish filed application No. 08/681,174 on aspects of its MFCC-based fingerprinting technology; a continuation-in-part application was filed on July 21, 1997, resulting in the issuance of U.S. Patent No. 5,918,223 ('223 Patent) on aspects of the MFCC-based technology on June 29, 1999.

76.     Upon information and belief, in the 1990s, interest in Muscle Fish's content recognition system was very high and the technology was known in the industry. Upon information and belief, Muscle Fish disclosed, marketed and sold its technology and systems to numerous companies, including database companies, advertising companies, content owners, performing rights societies, search engines, websites, online music stores, sound effects designers and musicians and multimedia companies. Upon information and belief, Muscle Fish offered standard code libraries and also developed custom implementations for its clients; these products went under various names, including the Muscle Fish "content-based recognition" system, "CBR," "cbrStream," "SoundFisher" and other names. Upon information and belief, a demo of the content-based recognition technology was available on Muscle Fish's website. Upon

information and belief, Muscle Fish publicized implementations of these technologies, including Audio Information Retrieval (AIR) DataBlade module for INFORMIX Universal Server, the Video Cataloger product by Virage, Inc., The Bulldog Group's media asset management system, R2, SURF and EAR among others. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of Muscle Fish technologies and implementations in the mid-1990s, but did not disclose them to the PTO.

77.     Upon information and belief, in 2000, Muscle Fish was merged into another company called Audible Magic Corp. Upon information and belief, Audible Magic Corp. had been formed in 1999 and was originally known as Wired Air, LLC. Upon information and belief, in 2000, Audible Magic Corp. acquired all of Muscle Fish's intellectual property, technology, contracts, assets and employees, and all rights therein. Upon information and belief, in 1999 and 2000, Audible Magic implemented the Muscle Fish technology in a content recognition system, one implementation of which was called "Clango." On February 17, 2000, Audible Magic filed the application for U.S. Patent No. 6,834,308, entitled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device," which issued on December 21, 2004. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of the Audible Magic technologies, but did not disclose them to the PTO.

78.     Upon information and belief, in 1992, by contrast to the extensive technical experience of the Muscle Fish engineers, upon information and belief, Scott Moskowitz ("Moskowitz"), one of the applicants for the '472, '700, '494 and '175 patents, had only worked in a low-level business role at Sony Japan in the late 1980s, obtained a bachelor's degree in Political Science, Finance and Japanese in 1991 and formed an import/export and marketing company, which shipped CDs to Japan. Upon information and belief, the other applicant for the

'472, '700, '494 and '175 patents, Michael Berry ("Berry") obtained a bachelor's degree in Music and Astronomy in 1991, and later obtained a master's degree in Music Composition in 1997 in the San Francisco Bay Area. Upon information and belief, in the mid-1990s, neither of the applicants nor Blue Spike, Inc. were developing or selling any technology to identify content or signals based on the content or signal itself.

79.     Upon information and belief, Moskowitz claims that he conceived of various inventions regarding "digital watermarking." Upon information and belief, in 1994, Moskowitz formed the DICE Company to develop a watermarking system called "Argent." Upon information and belief, he formed that company, which was based in Palo Alto, California, with Marc Cooperman, who had a technical background. Upon information and belief, Cooperman's job was to create a working digital watermarking system because Moskowitz had no technical ability to do so. Upon information and belief, Cooperman worked on this project between March 1995 and October 1996, but the two were unable to develop a working system. Thereafter, as alleged by Cooperman, Moskowitz took the existing assets and intellectual property of the DICE Company, without informing Cooperman, and ultimately moved them to a new company, called "Blue Spike, Inc.," thus freezing out Cooperman. These acts evidence Moskowitz's practice and strategy of appropriating intellectual property created by others and attempting to take and claim such for himself and Blue Spike, Inc., and as alleged further below, constitutes evidence of Moskowitz's culpable intent in carrying out the same strategy later by withholding material prior art from the PTO.

80.     Cooperman sued Moskowitz and Blue Spike, Inc. in two different lawsuits. Moskowitz asserted in a pleading in federal court that "by October 1996, Cooperman had not completed any workable software of any type for DICE." Going into 1997, upon information and

belief, Moskowitz was in litigation with Cooperman, had no technical person who could create any product for him, and lacking sufficient technical background to create such software systems, could not do it himself. As alleged further below, Moskowitz's difficulties in his business is evidence of Moskowitz's culpable motivation to later withhold material prior art from the PTO.

81.     Upon information and belief, at least as early as 1997, while Moskowitz's business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems. For example, upon information and belief, in the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology. At that time, upon information and belief, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server." Similarly, upon information and belief, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value, Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology. Upon information and belief, after his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997. As alleged further below, Moskowitz did not disclose the foregoing prior art to the PTO.

**The Applicants Failed To Disclose Known, Highly Material Prior Art To The Patent Office, With The Intent To Deceive**

82.     Upon information and belief, Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology. On September 7, 2000, the applicants filed the application for the '472 patent—the oldest patent

asserted by Blue Spike in this case. They failed to disclose any Muscle Fish prior art technology to the examiner during prosecution of that patent. During prosecution of the '700, '494 and '175 patents, the applicants failed to disclose Muscle Fish public embodiments, systems and documents, which were known to them, including but not limited to SoundFisher and the AIR Datablade systems.

83.     During prosecution of the '472, '700, '494 and '175 patents, the applicants disclosed prior art related to digital watermarking or general technical principles, but did not disclose relevant prior art relating to content-based recognition of content and signals, despite the fact that such was known to them. During prosecution of the '700, '494 and '175 patents, the later three patent applications, applicants filed an Information Disclosure Statement, disclosing the Muscle Fish '223 patent, but failed to disclose information and documents regarding Muscle Fish's implementations and commercial embodiments of that technology, despite the fact that such was known to them. The applicants did not disclose the '223 patent during prosecution of the initial '472 patent. But for the failure to disclose prior art known to the applicants, the '472, '700, '494 and '175 patents would not have issued.

84.     Upon information and belief, the applicants' failure to disclose the foregoing information to the examiner was intended to deceive. For example, upon information and belief, while the applicants were prosecuting the original '472 patent, in February 2001, Blue Spike, Inc. approached Audible Magic about licensing the Muscle Fish prior art content-based recognition technology that was known to Blue Spike, Inc. years before the filing of the original '472 patent. In other words, the applicants were prosecuting a patent that Blue Spike now asserts is related to content-based recognition, at the same time that they were attempting to license prior art content-based recognition technology, because, upon information and belief, they did not

have any such technology. Despite this affirmative knowledge and awareness of the Muscle Fish prior art, the applicants failed to disclose it to the PTO. This demonstrates intent to deceive.

85.     The fact that the applicants selectively withheld all Muscle Fish prior art in the initial '472 patent application and in later applications selectively disclosed only the Muscle Fish '223 patent, despite the fact that, upon information and belief, they knew about much more Muscle Fish prior art information, including commercial embodiments, is evidence that such failure to disclose was intended to deceive. Upon information and belief, the applicants intentionally or in bad faith withheld, concealed and/or mischaracterized the highly material prior art, with an intent to deceive the PTO. The applicants' knowledge and selective disclosure of the Muscle Fish patent in later prosecutions, despite knowledge of a much broader set of Muscle Fish prior art, demonstrates that the choice of what to disclose and what to withhold was deliberate.

86.     Upon information and belief, the prior art Muscle Fish technology, which predated the '472, '700, '494 and '175 patents and Blue Spike, Inc. by many years, was acquired by Audible Magic and Blue Spike purports to accuse the Muscle Fish technology in this case. This fact necessarily renders the prior art Muscle Fish technology highly material to prosecution of the patents in suit, under Blue Spike's own theory. Despite the high level of materiality of the Muscle Fish prior art, the applicants intentionally withheld that information from the examiner, with the intent to deceive the examiner.

87.     During prosecution of the application leading to the '472 patent, the applicants distinguished over prior art by arguing in a November 22, 2004 response to office action that the patent claimed a signal identifier that is not embedded in the original signal. Upon information and belief, the Muscle Fish prior art disclosed a signal identifier that is not embedded in the

original signal. If applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument. Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

88.     During prosecution of the application leading to the '700 patent, the applicants distinguished over prior art by arguing in an October 30, 2008 response to office action that the patent claimed identifying unknown signals, to distinguish over the prior art which allegedly disclosed identifying signals that were "already known." Upon information and belief, the Muscle Fish prior art disclosed identifying unknown signals. If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument. Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

89.     In the detailed description of the invention section of the '472, '700, '494 and '175 patents, the applicants affirmatively mischaracterized to the PTO the prior art, stating that the claimed invention was novel over the prior art watermarking systems because such watermarking required embedding an identifier into a signal, whereas the claimed invention could identify signals without embedding an identifier. Upon information and belief, the Muscle Fish prior art disclosed identifying a signal without embedding an identifier. If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have mischaracterized the prior art in this way. Thus, the Muscle Fish prior art would have been highly material to a

reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation in the detailed description of the invention is that it was made with intent to deceive the examiner.

90.     Upon information and belief, by the time that the applicants prosecuted the applications for the patents, they had previously been involved in patent prosecution activities and had worked in the area of content recognition. In particular, the sophistication of Moskowitz regarding patent prosecution and his prior involvement in this industry is evidence of the lack of an innocent explanation for withholding and mischaracterizing the Muscle Fish prior art and is evidence of culpable intent.

91.     During prosecution, the applicants signed and filed oaths with the Patent Office stating: "I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56." This explicit understanding of a duty to disclose material prior art is evidence of the lack of any credible explanation for withholding and mischaracterizing prior art and is evidence of culpable intent.

92.     Upon information and belief, Moskowitz was motivated to conceal the withheld prior art and intended to deceive the Patent Office. Upon information and belief, Moskowitz had strong financial and non-financial interests in obtaining the patents in suit. Upon information and belief, Moskowitz was motivated to conceal the withheld prior art, in order to obtain the patents, because the Blue Spike, Inc. digital watermarking business was failing and because its watermarking solution had not been adopted by a standards body working on a proposed digital watermarking industry standard, called "SDMI." Upon information and belief, according to an email from Blue Spike, Inc., the SDMI effort was "in the process of disintegrating." These

economic and non-economic motivations to conceal prior art is evidence of the lack of a credible explanation for the withholding and mischaracterization of prior art and is evidence of culpable intent.

## RESERVATION OF ADDITIONAL DEFENSES

93.     SoundHound reserves the right to assert additional affirmative defenses in the event that discovery or other analysis indicates that additional affirmative defenses are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, SoundHound respectfully requests this Court to enter judgment for Defendant SoundHound and against Plaintiff as follows:

A.     Dismissing the Complaint with prejudice;

B.     Finding that SoundHound does not infringe any claim of the patents-in-suit, or contribute to, or induce any such infringement;

C.     Finding that the claims of the patents-in-suit are, as to each of the claims asserted against SoundHound, invalid and/or unenforceable;

D.     Finding this to be an exceptional case in favor of SoundHound, and thus awarding SoundHound its costs and attorneys' fees pursuant to 35 U.S.C. § 285; and

E.     Granting such additional relief as the Court may deem appropriate.

## III.  COUNTERCLAIMS FOR DECLARATORY JUDGMENT

94.     In addition to its affirmative defenses, SoundHound further asserts the following counterclaims against Blue Spike LLC.

## THE PARTIES

95.     SoundHound is a Delaware corporation having a principal place of business at 3979 Freedom Circle, Floor 4, Santa Clara, CA 95054.

96.     On information and belief, Blue Spike is a Texas limited liability company having its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703.

## JURISDICTION AND VENUE

97.     SoundHound counterclaims against Blue Spike pursuant to the Patent Laws of the United States, Title 35 of the United States Code, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 13.

98.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 2201, 1338(a), 2201(a), and 2202.

99.     Venue over these counterclaims is proper in this District pursuant to 28 U.S.C. § 1400.

100.     An actual controversy exists between SoundHound and Blue Spike by virtue of the allegations of Blue Spike's Original Complaint in this action and SoundHound's Answer – i.e. as to whether the patents-in-suit are invalid and not infringed by SoundHound's products and services.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of the '175 Patent)

101.     Paragraphs 71-77 are incorporated by reference as if fully restated herein.

102.     Blue Spike asserts in this action that SoundHound has or is infringing one or more

claims of the '175 patent.

103.    SoundHound has not and is not infringing any claims of the '175 patent.

104.    Accordingly, SoundHound seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '175 patent.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '175 Patent)

105.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

106.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '175 patent.

107.    One or more claims of the '175 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicial doctrine of double patenting.

108.    Accordingly, SoundHound seeks a judgment declaring that one or more claims of the '175 patent are invalid.

## THIRD COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of the '494 Patent)

109.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

110.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '494 patent.

111.    SoundHound has not and is not infringing any claims of the '494 patent.

112.    Accordingly, SoundHound seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '494 patent.

## FOURTH COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '494 Patent)

113.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

114.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '494 patent.

115.    One or more claims of the '494 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicial doctrine of double patenting.

116.    Accordingly, SoundHound seeks a judgment declaring that one or more claims of the '494 patent are invalid.

## FIFTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of the '700 Patent)

117.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

118.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '700 patent.

119.    SoundHound has not and is not infringing any claims of the '700 patent.

120.    Accordingly, SoundHound seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the

'700 patent.

## SIXTH COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '700 Patent)

121.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

122.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '700 patent.

123.    One or more claims of the '700 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicial doctrine of double patenting.

124.    Accordingly, SoundHound seeks a judgment declaring that one or more claims of the '700 patent are invalid.

## SEVENTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of the '472 Patent)

125.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

126.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '472 patent.

127.    SoundHound has not and is not infringing any claims of the '472 patent.

128.    Accordingly, SoundHound seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '472 patent.

## EIGHTH COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '472 Patent)

129.    Paragraphs 71-77 are incorporated by reference as if fully restated herein.

130.    Blue Spike asserts in this action that SoundHound has or is infringing one or more claims of the '472 patent.

131.    One or more claims of the '472 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicial doctrine of double patenting.

132.    Accordingly, SoundHound seeks a judgment declaring that one or more claims of the '472 patent are invalid.

## PRAYER FOR RELIEF

WHEREFORE, SoundHound requests that this Court enter a judgment in its favor and against Blue Spike as follows:

A.    Dismissal of Blue Spike's claims for patent infringement with prejudice;

B.    Judgment against Blue Spike declaring the '175 patent not infringed by SoundHound;

C.    Judgment against Blue Spike declaring one or more claims of the '175 patent invalid;

D.    Judgment against Blue Spike declaring the '494 patent not infringed by SoundHound;

E.    Judgment against Blue Spike declaring one or more claims of the '494 patent invalid;

F.      Judgment against Blue Spike declaring the '700 patent not infringed by SoundHound;

G.      Judgment against Blue Spike declaring one or more claims of the '700 patent invalid;

H.      Judgment against Blue Spike declaring the '472 patent not infringed by SoundHound;

I.      Judgment against BlueSpike declaring one or more claims of the '700 patent invalid;

J.      A declaration that SoundHound's defenses and counterclaims present an exceptional case entitling it to, and therefore awarding, its reasonable attorneys' fees under 35 U.S.C. § 285;

K.      Award of costs to SoundHound; and

L.      Award to SoundHound such other relief as the Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) for the Federal Rules of Civil Procedure, Defendant and Counterclaimant SoundHound respectfully requests a jury trial on all issues so triable, including without limitation, Blue Spike's claims and SoundHound's defenses and counterclaims.

Dated: March 4, 2014                          Respectfully submitted,

                                              By:*/s/ Teresa Corbin*_____
                                                   Teresa Corbin

                                              Teresa Corbin (admitted E.D. Tex.)
                                              FENWICK & WEST LLP
                                              555 California Street, 12th Floor
                                              San Francisco, California  94104
                                              Email:  tcorbin@fenwick.com
                                              Telephone:     (415) 875-2300
                                              Facsimile:      (415) 281-1350

                                              Attorneys for Defendant
                                              SoundHound, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 4, 2014.


*/s/ Teresa Corbin*
Teresa Corbin