# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | Civil Action No. 6:12-CV-499-MHS |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| TEXAS INSTRUMENTS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| BLUE SPIKE, LLC, | § | |
| | § | Civil Action No. 6:13-CV-127-MHS |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INFINISOURCE, INC. and QQEST SOFTWARE SYSTEMS, INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS INFINISOURCE, INC.'S AND QQEST SOFTWARE SYSTEMS, INC.'S AMENDED ANSWER AND DEFENSES TO ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Defendants Infinisource, Inc. and Qqest Software Systems, Inc. (collectively, "Defendant"), for their Amended Answer to the Original Complaint for Patent Infringement ("Complaint") of Blue Spike, LLC ("Blue Spike" or "Plaintiff"), answer and allege as follows:

## I. ANSWER

### NATURE OF THE SUIT

1.     Defendant admits that the Complaint purports to assert claims for patent infringement under the patent laws of the United States, Title 35 of the United States Code. Defendant denies that it has infringed any patents.

### PARTIES

2.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies those allegations.

3.     Defendant admits that Infinisource is a Michigan corporation with its principal place of business at 15 E. Washington Street, Coldwater, Michigan 49036, and that it can be served with process through its registered agent, Gary Hart Haberl, located at the same address. Defendant admits that Infinisource has customers in the Eastern District of Texas.  Defendant denies the remaining allegations of paragraph 3.

4.     Defendant admits that Qqest is a Delaware corporation with its principal place of business at 9350 South 150 East, Suite 300, Sandy, Utah 84070, and that it can be served through its registered agent, National Registered Agents, Inc.  Defendant admits that Qqest has customers in the Eastern District of Texas.  Defendant denies the remaining allegations of paragraph 4.

### JURISDICTION AND VENUE

5.     Defendant admits that this lawsuit purports to be a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* and that this Court has subject matter over such claims.

6.     Defendant denies the allegations of paragraph 6.

7.     Defendant admits that it has customers in the Eastern District of Texas.

Defendant admits that venue is proper in this District and that this Court has personal jurisdiction.  Defendant denies that venue in this District is convenient.  Defendant denies the remaining allegations of paragraph 7.

## FACTUAL BACKGROUND

**A.    Moskowitz's History**

8.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies those allegations.

9.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies those allegations.

10.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies those allegations.

11.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies those allegations.

12.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies those allegations.

13.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies those allegations.

14.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies those allegations.

15.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies those allegations.

16.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies those allegations.

17.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies those allegations.

18.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies those allegations.

19.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19, and therefore denies those allegations.

20.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies those allegations.

21.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21, and therefore denies those allegations.

**B.   Patents-in-Suit**

22.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and/or the allegations therein are too vague or speculative to enable Defendant to form a belief as to the truth of the allegations, and therefore denies those allegations.

23.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and/or the allegations therein are too vague or speculative to enable Defendant to form a belief as to the truth of the allegations, and therefore denies those allegations.

24.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and/or the allegations therein are too vague or speculative to enable Defendant to form a belief as to the truth of the allegations, and therefore denies those allegations.

25.     Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 25 and/or the allegations therein are too vague or speculative to enable Defendant to form a belief as to the truth of the allegations, and therefore denies those allegations.

26.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 and/or the allegations therein are too vague or speculative to enable Defendant to form a belief as to the truth of the allegations, and therefore denies those allegations.

27.     Defendant denies the allegations of paragraph 27.

**C.     The Accused Products and Services**

28.     Defendant admits that it sells the IQ1000, Velocity 850, Velocity 850 Rugged, Velocity 800, and Velocity 800 Rugged (the "accused products").  Defendant denies the remaining allegations in paragraph 28.

29.     Defendant admits that it has not sought a license from Blue Spike but denies that a license is required.  Defendant denies the remaining allegations of paragraph 29.

30.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30, and therefore denies those allegations.

31.     Defendant admits that it does not have permission "to use Blue Spike's Patents-in-Suit" but denies that any permission is required.  Defendant denies the remaining allegations in paragraph 31.

**COUNT 1:**
**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 8,214,175**

32.     Defendant incorporates by reference its responses to the allegations in paragraphs 1-31 of Plaintiff's complaint as if fully restated herein.

33.     Defendant lacks knowledge or information sufficient to form a belief as to the

5

truth of the allegations of paragraph 33, and therefore denies those allegations.

34.     Defendant admits that a document attached as Exhibit A to the Complaint appears to be a copy of United States Patent No. 8,214,175 ("the '175 patent"), which on its face bears the issue date July 3, 2012.  Defendant denies the remaining allegations in Paragraph 34.

35.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35, and therefore denies those allegations.

36.     Defendant denies the allegations of paragraph 36.

37.     Defendant denies the allegations of paragraph 37.

38.     Defendant denies the allegations of paragraph 38.

39.     Defendant denies the allegations of paragraph 39.

## COUNT 2:
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,949,494

40.     Defendant incorporates by reference its responses to the allegations in paragraphs 1-39 of Plaintiff's complaint as if fully restated herein.

41.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41, and therefore denies those allegations.

42.     Defendant admits that a document attached as Exhibit B to the Complaint appears to be a copy of United States Patent No. 7,949,494 ("the '494 patent"), which on its face bears the issue date May 24, 2011.  Defendant denies the remaining allegations in paragraph 42 of the complaint.

43.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43, and therefore denies those allegations.

44.     Defendant denies the allegations of paragraph 44.

45.     Defendant denies the allegations of paragraph 45.

46.     Defendant denies the allegations of paragraph 46.

47.     Defendant denies the allegations of paragraph 47.

## COUNT 3:
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,660,700

48.     Defendant incorporates by reference its responses to the allegations in paragraphs 1-47 of Plaintiff's complaint as if fully restated herein.

49.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49, and therefore denies those allegations.

50.     Defendant admits that a document attached as Exhibit C to the Complaint appears to be a copy of United States Patent No. 7,660,700 ("the '700 patent"), which on its face bears the issue date February 9, 2010.  Defendant denies the remaining allegations in paragraph 50 of the complaint.

51.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51, and therefore denies those allegations.

52.     Defendant denies the allegations of paragraph 52.

53.     Defendant denies the allegations of paragraph 53.

54.     Defendant denies the allegations of paragraph 54.

55.     Defendant denies the allegations of paragraph 55.

## COUNT 4:
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,346,472

56.     Defendant incorporates by reference its responses to the allegations in paragraphs 1-55 of Plaintiff's complaint as if fully restated herein.

57.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57, and therefore denies those allegations.

58.     Defendant admits that a document attached as Exhibit D to the Complaint appears to be a copy of United States Patent No. 7,346,472 ("the '472 patent"), which on its face bears the issue date March 18, 2008.  Defendant denies the remaining allegations in paragraph 58 of the complaint.

59.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59, and therefore denies those allegations.

60.     Defendant denies the allegations of paragraph 60.

61.     Defendant denies the allegations of paragraph 61.

62.     Defendant denies the allegations of paragraph 62.

63.     Defendant denies the allegations of paragraph 63.

## RELIEF REQUESTED BY PLAINTIFF

Defendant denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

## II.  AFFIRMATIVE DEFENSES AND OTHER DEFENSES

## FIRST DEFENSE – NON-INFRINGEMENT

64.     Defendant lacks knowledge regarding the operation of the accused products as it relates to the asserted patents, and on that basis avers that Defendant has not infringed and does not infringe, either directly, contributorily, or by inducement, any claim of the '175, '494, '700, and '472 patents either literally or under the doctrine of equivalents, or in any other manner.

## SECOND DEFENSE – INVALIDITY

65.     One or more claims of the patents-in-suit are invalid for failing to meet one or more of the requisite conditions specified in 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicial

doctrine of double patenting.

## THIRD DEFENSE – ESTOPPEL

66.     Defendant is informed and believes, and on that basis avers, that the relief sought by Plaintiff is barred under the doctrine of prosecution history estoppel.

## FOURTH DEFENSE – LACHES

67.     Defendant is informed and believes, and on that basis avers, that the relief sought by Plaintiff is barred under the doctrine of laches.

## FIFTH DEFENSE – LIMITATION ON DAMAGES

68.     Plaintiff's claim for damages is barred, in whole or in part, by 35 U.S.C. § 287 and/or Plaintiff's failure to plead notice thereunder.

## SIXTH DEFENSE – COSTS BARRED IN ACTION FOR INFRINGEMENT OF A PATENT CONTAINING INVALID CLAIMS

69.     Pursuant to 35 U.S.C. § 288, Plaintiff is barred from recovering any costs.

## SEVENTH DEFENSE – FAILURE TO STATE A CLAIM

70.     The Complaint fails to state a claim against Defendant upon which relief can be granted.

## EIGHTH DEFENSE – UNENFORCEABILITY OF PATENTS DUE TO INEQUITABLE CONDUCT

71.     The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

72.     During prosecution of the '472, '700, '494 and '175 patents, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and which they knew or should have

known would have been important to a reasonable examiner. Upon information and belief, the

applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.

**The Applicants Knew Of Highly Material Prior Art, Including Prior Art Of Audible Magic And Its Predecessor Company Muscle Fish LLC**

73.     Upon information and belief, the applicants of the '472, '700, '494 and '175

patents knew of highly material prior art regarding content identification technologies. Despite

having full knowledge of this material prior art, the applicants did not share it with the PTO.

Upon information and belief, prior to filing and issuance of the '472, '700, '494 and '175

patents, the applicants investigated products or services that competed with or were otherwise

relevant to the business of applicant Scott Moskowitz ("Moskowitz") and his company Blue

Spike and to the patent claims being drafted by the applicants. Upon information and belief, the

applicants investigated products and services that carried out the monitoring, analysis and

recognition of digital information and signals, including products and services that used content-

based fingerprints in order to identify content or signals.

74.     Upon information and belief, prior to the filing of the applications for the '472,

'700, '494 and '175 patents, the applicants were aware of prior art technology and systems of

Audible Magic's predecessor company, a consulting company called Muscle Fish, LLC

("Muscle Fish"). Upon information and belief, prior to the filing of the applications for the '472,

'700, '494 and '175 patents, the applicants were also aware of prior art technology and systems

of Audible Magic.

75.     Upon information and belief, Muscle Fish was founded in Berkeley, California, in

1992, by engineers, mathematicians and musicians Erling Wold, Doug Keislar, Thom Blum and

Jim Wheaton. Upon information and belief, these were some of the most experienced and

brightest audio technologists in the world; they had worked with signal processing and sound

technologies from the late 1970s through the early 1990s. Upon information and belief, by 1992, these gentlemen had advanced degrees in electrical engineering, computer science and computer applications to music synthesis and had extensive experience with acoustic models, signal processing, parameter estimation, non-linear and applied mathematics, software engineering, computer architecture, circuit design and computer music. Upon information and belief, one cofounded the Computer Music Association, and another conducted psycho-acoustical research at Stanford's Center for Computer Research in Music and Acoustics ("CCRMA"). Upon information and belief, all had been engineers for years at a variety of companies, including Yamaha Music Technologies, developing new music analysis and synthesis techniques.

76.     Upon information and belief, beginning in 1992, the Muscle Fish engineers worked on systems for analyzing content and signals. Upon information and belief, in the 1990s, the Muscle Fish engineers designed a system for looking up and comparing known and unknown content based on a set of features of content called "MFCCs." Upon information and belief, the Muscle Fish engineers published papers about this technology. For example, on July 20, 1995, upon information and belief, they published a paper, "Audio Databases with Content-Based Retrieval," about MFCC-based fingerprints and presented it in August 1995 at the IJCAI Workshop on Intelligent Multimedia and also in September 1995, at the International Computer Music Conference. Upon information and belief, in January and May 1996, respectively, they gave talks to IBM and to the CCRMA called "Content-Based Classification, Search, and Retrieval of Audio." Upon information and belief, in 1996, Muscle Fish filed application No. 08/681,174 on aspects of its MFCC-based fingerprinting technology; a continuation-in-part application was filed on July 21, 1997, resulting in the issuance of U.S. Patent No. 5,918,223 ('223 Patent) on aspects of the MFCC-based technology on June 29, 1999.

77.    Upon information and belief, in the 1990s, interest in Muscle Fish's content recognition system was very high and the technology was known in the industry. Upon information and belief, Muscle Fish disclosed, marketed and sold its technology and systems to numerous companies, including database companies, advertising companies, content owners, performing rights societies, search engines, websites, online music stores, sound effects designers and musicians and multimedia companies. Upon information and belief, Muscle Fish offered standard code libraries and also developed custom implementations for its clients; these products went under various names, including the Muscle Fish "content-based recognition" system, "CBR," "cbrStream," "SoundFisher" and other names. Upon information and belief, a demo of the content-based recognition technology was available on Muscle Fish's website. Upon information and belief, Muscle Fish publicized implementations of these technologies, including Audio Information Retrieval (AIR) DataBlade module for INFORMIX Universal Server, the Video Cataloger product by Virage, Inc., The Bulldog Group's media asset management system, R2, SURF and EAR among others. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of Muscle Fish technologies and implementations in the mid-1990s, but did not disclose them to the PTO.

78.    Upon information and belief, in 2000, Muscle Fish was merged into another company called Audible Magic Corp. Upon information and belief, Audible Magic Corp. had been formed in 1999 and was originally known as Wired Air, LLC. Upon information and belief, in 2000, Audible Magic Corp. acquired all of Muscle Fish's intellectual property, technology, contracts, assets and employees, and all rights therein. Upon information and belief, in 1999 and 2000, Audible Magic implemented the Muscle Fish technology in a content recognition system, one implementation of which was called "Clango." On February 17, 2000, Audible Magic filed

the application for U.S. Patent No. 6,834,308, entitled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device," which issued on December 21, 2004. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of the Audible Magic technologies, but did not disclose them to the PTO.

79.     Upon information and belief, in 1992, by contrast to the extensive technical experience of the Muscle Fish engineers, upon information and belief, Scott Moskowitz ("Moskowitz"), one of the applicants for the '472, '700, '494 and '175 patents, had only worked in a low-level business role at Sony Japan in the late 1980s, obtained a bachelor's degree in Political Science, Finance and Japanese in 1991 and formed an import/export and marketing company, which shipped CDs to Japan. Upon information and belief, the other applicant for the '472, '700, '494 and '175 patents, Michael Berry ("Berry") obtained a bachelor's degree in Music and Astronomy in 1991, and later obtained a master's degree in Music Composition in 1997 in the San Francisco Bay Area. Upon information and belief, in the mid-1990s, neither of the applicants nor Blue Spike, Inc. were developing or selling any technology to identify content or signals based on the content or signal itself.

80.     Upon information and belief, Moskowitz claims that he conceived of various inventions regarding "digital watermarking." Upon information and belief, in 1994, Moskowitz formed the DICE Company to develop a watermarking system called "Argent." Upon information and belief, he formed that company, which was based in Palo Alto, California, with Marc Cooperman, who had a technical background. Upon information and belief, Cooperman's job was to create a working digital watermarking system because Moskowitz had no technical ability to do so. Upon information and belief, Cooperman worked on this project between March 1995 and October 1996, but the two were unable to develop a working system. Thereafter, as

alleged by Cooperman, Moskowitz took the existing assets and intellectual property of the DICE Company, without informing Cooperman, and ultimately moved them to a new company, called "Blue Spike, Inc.," thus freezing out Cooperman. These acts evidence Moskowitz's practice and strategy of appropriating intellectual property created by others and attempting to take and claim such for himself and Blue Spike, Inc., and as alleged further below, constitutes evidence of Moskowitz's culpable intent in carrying out the same strategy later by withholding material prior art from the PTO.

81.      Cooperman sued Moskowitz and Blue Spike, Inc. in two different lawsuits. Moskowitz asserted in a pleading in federal court that "by October 1996, Cooperman had not completed any workable software of any type for DICE." Going into 1997, upon information and belief, Moskowitz was in litigation with Cooperman, had no technical person who could create any product for him, and lacking sufficient technical background to create such software systems, could not do it himself. As alleged further below, Moskowitz's difficulties in his business is evidence of Moskowitz's culpable motivation to later withhold material prior art from the PTO.

82.      Upon information and belief, at least as early as 1997, while Moskowitz's business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems. For example, upon information and belief, in the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology. At that time, upon information and belief, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server." Similarly, upon information and belief, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value,

Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology. Upon information and belief, after his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997. As alleged further below, Moskowitz did not disclose the foregoing prior art to the PTO.

### The Applicants Failed To Disclose Known, Highly Material Prior Art To The Patent Office, With The Intent To Deceive

83.     Upon information and belief, Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology. On September 7, 2000, the applicants filed the application for the '472 patent—the oldest patent asserted by Blue Spike in this case. They failed to disclose any Muscle Fish prior art technology to the examiner during prosecution of that patent. During prosecution of the '700, '494 and '175 patents, the applicants failed to disclose Muscle Fish public embodiments, systems and documents, which were known to them, including but not limited to SoundFisher and the AIR Datablade systems.

84.     During prosecution of the '472, '700, '494 and '175 patents, the applicants disclosed prior art related to digital watermarking or general technical principles, but did not disclose relevant prior art relating to content-based recognition of content and signals, despite the fact that such was known to them. During prosecution of the '700, '494 and '175 patents, the later three patent applications, applicants filed an Information Disclosure Statement, disclosing the Muscle Fish '223 patent, but failed to disclose information and documents regarding Muscle Fish's implementations and commercial embodiments of that technology, despite the fact that such was known to them. The applicants did not disclose the '223 patent during prosecution of

the initial '472 patent. But for the failure to disclose prior art known to the applicants, the '472, '700, '494 and '175 patents would not have issued.

85.     Upon information and belief, the applicants' failure to disclose the foregoing information to the examiner was intended to deceive. For example, upon information and belief, while the applicants were prosecuting the original '472 patent, in February 2001, Blue Spike, Inc. approached Audible Magic about licensing the Muscle Fish prior art content-based recognition technology that was known to Blue Spike, Inc. years before the filing of the original '472 patent. In other words, the applicants were prosecuting a patent that Blue Spike now asserts is related to content-based recognition, at the same time that they were attempting to license prior art content-based recognition technology, because, upon information and belief, they did not have any such technology. Despite this affirmative knowledge and awareness of the Muscle Fish prior art, the applicants failed to disclose it to the PTO. This demonstrates intent to deceive.

86.     The fact that the applicants selectively withheld all Muscle Fish prior art in the initial '472 patent application and in later applications selectively disclosed only the Muscle Fish '223 patent, despite the fact that, upon information and belief, they knew about much more Muscle Fish prior art information, including commercial embodiments, is evidence that such failure to disclose was intended to deceive. Upon information and belief, the applicants intentionally or in bad faith withheld, concealed and/or mischaracterized the highly material prior art, with an intent to deceive the PTO. The applicants' knowledge and selective disclosure of the Muscle Fish patent in later prosecutions, despite knowledge of a much broader set of Muscle Fish prior art, demonstrates that the choice of what to disclose and what to withhold was deliberate.

87.     Upon information and belief, the prior art Muscle Fish technology, which

16

predated the '472, '700, '494 and '175 patents and Blue Spike, Inc. by many years, was acquired

by Audible Magic and Blue Spike purports to accuse the Muscle Fish technology in this case.

This fact necessarily renders the prior art Muscle Fish technology highly material to prosecution

of the patents in suit, under Blue Spike's own theory. Despite the high level of materiality of the

Muscle Fish prior art, the applicants intentionally withheld that information from the examiner,

with the intent to deceive the examiner.

88.     During prosecution of the application leading to the '472 patent, the applicants

distinguished over prior art by arguing in a November 22, 2004 response to office action that the

patent claimed a signal identifier that is not embedded in the original signal. Upon information

and belief, the Muscle Fish prior art disclosed a signal identifier that is not embedded in the

original signal. If applicants had disclosed the Muscle Fish prior art that they knew about, they

could not have made this argument. Thus, the Muscle Fish prior art would have been highly

material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish

prior art, the only reasonable inference from this express representation during prosecution is that

it was made with intent to deceive the examiner.

89.     During prosecution of the application leading to the '700 patent, the applicants

distinguished over prior art by arguing in an October 30, 2008 response to office action that the

patent claimed identifying unknown signals, to distinguish over the prior art which allegedly

disclosed identifying signals that were "already known." Upon information and belief, the

Muscle Fish prior art disclosed identifying unknown signals. If the applicants had disclosed the

Muscle Fish prior art that they knew about, they could not have made this argument. Thus, the

Muscle Fish prior art would have been highly material to a reasonable examiner. Given the

applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from

this express representation during prosecution is that it was made with intent to deceive the examiner.

90.     In the detailed description of the invention section of the '472, '700, '494 and '175 patents, the applicants affirmatively mischaracterized to the PTO the prior art, stating that the claimed invention was novel over the prior art watermarking systems because such watermarking required embedding an identifier into a signal, whereas the claimed invention could identify signals without embedding an identifier. Upon information and belief, the Muscle Fish prior art disclosed identifying a signal without embedding an identifier. If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have mischaracterized the prior art in this way. Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation in the detailed description of the invention is that it was made with intent to deceive the examiner.

91.     Upon information and belief, by the time that the applicants prosecuted the applications for the patents, they had previously been involved in patent prosecution activities and had worked in the area of content recognition. In particular, the sophistication of Moskowitz regarding patent prosecution and his prior involvement in this industry is evidence of the lack of an innocent explanation for withholding and mischaracterizing the Muscle Fish prior art and is evidence of culpable intent.

92.     During prosecution, the applicants signed and filed oaths with the Patent Office stating: "I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56." This explicit understanding of a duty to disclose material prior art is evidence of the lack of any

credible explanation for withholding and mischaracterizing prior art and is evidence of culpable intent.

93.     Upon information and belief, Moskowitz was motivated to conceal the withheld prior art and intended to deceive the Patent Office. Upon information and belief, Moskowitz had strong financial and non-financial interests in obtaining the patents in suit. Upon information and belief, Moskowitz was motivated to conceal the withheld prior art, in order to obtain the patents, because the Blue Spike, Inc. digital watermarking business was failing and because its watermarking solution had not been adopted by a standards body working on a proposed digital watermarking industry standard, called "SDMI." Upon information and belief, according to an email from Blue Spike, Inc., the SDMI effort was "in the process of disintegrating." These economic and non-economic motivations to conceal prior art is evidence of the lack of a credible explanation for the withholding and mischaracterization of prior art and is evidence of culpable intent.

## RESERVATION OF ADDITIONAL DEFENSES

94.     Defendant reserves the right to assert additional affirmative defenses in the event that discovery or other analysis indicates that additional affirmative defenses are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests this Court to enter judgment for Defendant and against Plaintiff as follows:

A.     Dismissing the Complaint with prejudice;

B.     Finding that Defendant does not infringe any claim of the patents-in-suit, or contribute to, or induce any such infringement;

     C.     Finding that the claims of the patents-in-suit are, as to each of the claims asserted against Defendant, invalid and/or unenforceable;

     D.     Finding this to be an exceptional case in favor of Defendant, and thus awarding Defendant its costs and attorneys' fees pursuant to 35 U.S.C. § 285; and

     E.     Granting such additional relief as the Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

In accordance with Rule 38(b) for the Federal Rules of Civil Procedure, Defendant respectfully requests a jury trial on all issues so triable, including without limitation, Blue Spike's claims and Defendant's defenses.

Dated:   March 4, 2014                          FENWICK & WEST LLP


                                                By:   */s/ Teresa M. Corbin*
                                                       Teresa M. Corbin
                                                       tcorbin@fenwick.com

                                                Teresa M. Corbin, CA Bar No. 132360
                                                (Admitted E.D. Texas)
                                                Bryan A. Kohm, CA Bar No.233276
                                                (Admitted E.D. Texas)
                                                David Lacy Kusters, CA Bar No.241335
                                                (Admitted E.D. Texas)
                                                FENWICK & WEST LLP
                                                555 California Street, 12th Floor
                                                San Francisco, California 94104
                                                Telephone:     (415) 874-2300
                                                Facsimile:     (415) 281-1350

                                                Darren E. Donnelly, CA Bar No. 194335
                                                (Admitted E.D. Texas)
                                                FENWICK & WEST LLP
                                                Silicon Valley Center
                                                801 California Street
                                                Mountain View, California  94041
                                                Telephone:       (650) 955-8500
                                                Facsimile:       (650) 983-5200

                                                Attorneys for Defendants
                                                Infinisource, Inc. and Qqest Software Systems,
                                                Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 4, 2014.

*/s/ Teresa M. Corbin*
Teresa M. Corbin