# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | |
| | § | |
| v. | § | Case No. 6:12-cv-499 |
| | § | |
| TEXAS INSTRUMENTS, INC. | § | |

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | |
| | § | |
| v. | § | Case No. 6:12-cv-598 |
| | § | |
| SOUNDMOUSE LTD. | § | |

## ORDER SEVERING AND TRANSFERRING TO SOUTHERN DISTRICT OF NEW YORK

Now before the Court is Defendant Soundmouse Ltd.'s motion to dismiss for lack of personal jurisdiction and in the alternative to transfer for the convenience of the parties (Doc. No. 648). Having considered the parties' briefing[1] and the applicable law, the Court finds that the Southern District of New York is a clearly more convenient venue and transfers this case to the Southern District of New York.[2] Furthermore, in view of this order, Defendant's motion to dismiss for insufficient service of process (Doc. No. 644), Defendant's motion to dismiss indirect

---

[1] Plaintiff correctly notes that Defendant's reply exceeds the 10-page limit under Local Rule CV-7(a)(1) and asks the Court to disregard arguments past page 10. The Court agrees that Defendant improperly exceeded the page limit, although the Court does not include the caption or signature portions of the brief when calculating the number of pages. However, the Court also notes that the Defendant's motion (as well as Plaintiff's response) addressed two alternative motions in far less than the permitted 30 pages. Thus, the Court will consider the final 2.5 pages of Defendant's reply. Furthermore, the Court notes that it would reach the same conclusion even without considering the challenged pages. The Court advises the parties that future motions in excess of the page limits may be stricken.

[2] Although the Court finds Defendant's position compelling, the Court does not reach the merits of Defendant's jurisdictional challenge.

and willful infringement claims (Doc. No. 1111), and Plaintiff's Motion to Authorize Jurisdictional Discovery (Doc. No. 902) are DENIED as moot.

## I.     BACKGROUND

This action involves dozens of cases against unrelated Defendants for infringement of four patents: U.S. Patent Nos. 7,346,472 (the '472 Patent), 7,660,700 (the '700 Patent), 7,949,494 (the '494 Patent), and 8,214,175 (the '175 Patent). The four related patents in suit describe a method and device for monitoring and analyzing signals. The inventor describes the patented technology as "signal abstracting" prevalent in the field of digital security, such as "digital fingerprinting." Plaintiff accuses Defendant's music and audio recognition software of directly and indirectly infringing each of the patents in suit.

The Court consolidated the cases into the above styled action. The consolidation was for pretrial purposes, including claim construction and discovery, but the Court affirmatively noted that the consolidation would not bear on any venue challenges. After the consolidation, Defendant moved to dismiss Plaintiff's complaint for lack of personal jurisdiction and, alternatively, to transfer the case to the Southern District of New York for the convenience of the parties. Plaintiff sought jurisdictional discovery.

## II.    MOTION TO TRANSFER FOR THE CONVENIENCE OF THE PARTIES

Defendant moves the Court to transfer this case to the Southern District of New York for the convenience of the parties. Defendant bases its argument largely on the following significant facts: (1) its headquarters—and thus its witnesses and evidence—are in London; and (2) its only two United States customers are headquartered in New York.

Plaintiff responds that Defendant asks the Court to ignore the effect of the requested transfer on Plaintiff. Plaintiff emphasizes two additional facts in support of its position: (1) the

pendency of dozens of related cases in this district, and (2) the presence of Plaintiff Blue Spike as well as Blue Spike CEO and Inventor Scott Moskowitz (who suffers from a serious health condition) in the Eastern District of Texas.

### a. Legal Standard

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The party seeking the transfer must show good cause, which means that the moving party must demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). A convenience determination consists of balancing the convenience and inconvenience resulting from plaintiff's choice of venue in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Id.*

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight of the plaintiff's choice of venue is reflected in the defendant's burden of proving that the proposed venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1320. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

### b. The Southern District of New York

Defendant must first establish that this action could have been brought in the Southern District of New York. 28 U.S.C. § 1404(a). Defendant argues—and Plaintiff does not dispute—that Soundmouse provided the accused services to two customers in New York City.

Soundmouse argues, and this Court agrees, that under these facts, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.[3]

---

[3] Clearly, these facts also establish minimum contacts between Defendant and the Southern District of New York.

### c. Private Interest Factors

#### i. *The Relative Ease of Access to Sources of Proof*

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of documents and hard copies across the country, this factor must still be considered in the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.*; *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 873 (E.D. Tex. 2013). This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the proposed and transferor venues. *See, e.g.*, *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). But documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Defendant represents that its relevant documents are in its London office and the relevant documents of its only two customers in the United States are located in the companies' New York offices. Plaintiff counters that its documents and servers are located in Texas.[4] On balance, the location of Defendant's sources of proof—particularly the location of evidence in the possession of Defendant's third-party customers—far outweighs the presence of Plaintiff's

---

[4] Defendant argues that Plaintiff's documents were moved to this district in anticipation of litigation and should be disregarded by the Court. The Court finds this factor favors transfer even if Plaintiff's documents are considered, and thus does not address Defendant's argument.

documents and servers in Texas. *See In re Nintendo*, 589 F.3d at 1199. Accordingly, this factor favors transfer.

### ii. *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the proposed venue. *See In re Volkswagen II*, 545 F.3d at 316; *In re Amazon.com Inc.*, 478 F. App'x 669, 670 (Fed. Cir. 2012). The factor weighs the heaviest in favor of transfer when a proposed venue is said to have "absolute subpoena power." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. "Absolute subpoena power" is subpoena power to compel attendance at both depositions and trial. *Id.*

Neither party has specifically identified any non-party witnesses who may fall within (or without) the absolute subpoena power of either forum. But Defendant has identified two non-party entities that have information relevant to the issues in this case. It is undisputed that both companies are headquartered in New York City. Defendant asserts that relevant fact witnesses from these companies are located at the company headquarters in New York City, and thus are subject to the absolute subpoena power of the Southern District of New York. A more detailed accounting of the relevant fact witnesses would weigh more heavily than the summary assertions made by Defendant in this case. *See Landmark Tech., LLC v. Ann Inc.*, No. 6:12-cv-672-MHS-JDL, 2013 WL 3354451, *3 (E.D. Tex. July 1, 2013) ("The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witness are likely located in a particular forum."). But the Court does not completely discount the reasonable claim that employees of Defendant's customers are also located in their New York City headquarters and thus subject to the absolute subpoena power of the Southern District of New

York. This is particularly true where neither party has specifically identified non-party witnesses. Accordingly, this factor weighs slightly in favor of transfer.

### iii. The Cost of Attendance for Willing Witnesses

This factor is analyzed by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* When applying the 100-mile rule, the threshold question is whether the transferor and proposed venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and proposed venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

But "the '100-mile rule' should not be rigidly applied." *In re Genentech*, 566 F.3d at 1344. When a particular witness "will be required to travel a significant distance no matter where they testify," that witness is discounted for purposes of the 100-mile rule analysis. *Id.* (discounting European witnesses and documents transported from Washington, D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

As to this factor, Defendant again summarily claims that its New York-based customers have employees with relevant information, all who work within the Southern District of New York. Defendant also points to its location in London, again summarily claiming that its relevant fact witnesses will have to travel from London. Plaintiff counters that its CEO and inventor of the technology in issue lives in this district. Plaintiff also summarily claims that its employees are located in Texas.

The Court weighs most heavily the convenience of non-party witnesses. *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2013). The only non-party witnesses addressed are the unnamed employees of Defendant's customers, based in New York. Conversely, the New York forum would be only slightly more convenient for Defendant's own employees in London. Although New York is closer to London that is the Eastern District of Texas, the witness will have to travel a significant distance to arrive at either forum. Thus, the Court discounts the inconvenience to these party witnesses. *See Genentech*, 566 F.3d at 1344 (explaining that witnesses who "will be required to travel a significant distance no matter where they testify" are discounted under the 100-mile rule).

As with Defendant's employees, Plaintiff's unidentified Texas employees do not weigh as heavily as the third-party witnesses in New York. However, although discounted, the Court gives some consideration to the inconvenience of these unnamed, party witnesses. The only

witness specifically identified by either party is Plaintiff's CEO Scott Moskowitz, a resident of this district. As a party witness, Moskowitz's inconvenience is also weighed less significantly than the third-party witnesses. But Plaintiff encourages the Court to give special consideration to Moskowitz's travel limitations imposed by his serious health condition: chronic inguinal neuropathy. Yet as Defendant points out, Moskowitz regularly travels to Florida for treatment, indicating he has some ability to travel long distances on a regular basis. Plaintiff has not addressed this issue or provided any health documentation to support his claim that he is medically unable to travel long distances. Accordingly, the Court will not give undue consideration to Moskowitz's health condition.

Having considered all of the facts discussed above, the Court finds that this factor weighs in favor of transfer. The Court is particularly compelled by the location of the third-party witnesses in New York.

### iv. *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter *In re Volkswagen III*).

Importantly, "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). "While considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed." *Id.* "[A] district court's experience with a patent in prior litigation and the co-

pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *Id.*

Both parties point to the high volume of related litigation in this district as supporting its position under this factor. Defendant argues that the pending litigation has slowed progress and is likely to continue to impede the prompt resolution of this case. Plaintiff counters that the volume of related litigation (at least some of which was filed prior to Plaintiff's claims against Defendant Soundmouse) compels the Court to deny transfer in order to jointly consider common issues such as claim construction. The Court finds both positions have merit.

As the Court has previously acknowledged, certain stages of the related litigation, such as claim construction and certain discovery matters, could be more efficiently managed through consolidated measures. *See In re EMC*, 677 F.3d 1351, 1360 (Fed. Cir. 2012). But the Court also acknowledges that in this instance, the excessively high volume of Defendants (much higher than in most Patent litigation in this district), with little overlap in the accused products, creates case management issues not normally encountered by the Court. Although the Court is confident that these issues can be effectively and efficiently managed, the presence of the additional case management burden cannot be ignored.

However, in view of the number of common or related issues among the related cases, the Court views the balance of this factor to weight slightly against transfer.

### d. Public Interest Factors

The parties only address one of the public interest factors: the local interest in the dispute. This factor is addressed below. The remaining three public interest factors are considered neutral.

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Defendant insists that the Southern District of New York has a particular interest in this litigation since Defendant's customers are both headquartered there. Defendant further insists that the Court should discredit Plaintiff's recently established connection with this District. Plaintiff notes that Blue Spike is headquartered in this district and Blue Spike's CEO lives in this district and is actively involved in the community (*see* Doc. No. 1135). The Court finds that both districts have a localized interest in the dispute. Accordingly, this factor is neutral.

### e. **Balance of Factors**

Three of the private interest factors favor transfer, while one factor weighs slightly against transfer. All of the public interest factors are neutral. Having considered each of these relevant factors, the Court finds that the Southern District of New York is a clearly more convenient forum.

## III. CONCLUSION

For the reasons discussed more fully above, the Court GRANTS Defendant Soundmouse Ltd.'s alternative motion to transfer (Doc. No. 648). Furthermore, the Court DENIES as moot Plaintiff's Motion to Authorize Jurisdictional Discovery (Doc. No. 902), Defendant's motion to dismiss for insufficient service of process (Doc. No. 644), and Defendant's motion to dismiss indirect and willful infringement claims (Doc. No. 1111).

Accordingly, Plaintiff's claims against Defendant Soundmouse Ltd. are SEVERED from the lead case back into the original cause number, 6:12-cv-598, and the clerk of the court is directed to TRANSFER the severed action to the Southern District of New York for further consideration.

**It is SO ORDERED.**

**SIGNED this 6th day of March, 2014.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE