UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § | |
| *Plaintiff,* | § § | Case No. 6:12-cv-499-MHS |
| v. | § § | Lead Case |
| Texas Instruments, Inc. et al., | § § | Jury Trial Demanded |
| *Defendants.* | § § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT VOBILE, INC.'S MOTION TO DISMISS [DKT. 1262]**

INTRODUCTION

Plaintiff Blue Spike, LLC opposes Defendant Vobile, Inc.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue. Vobile's own websites—and other online sources—disprove Vobile's claim that it has no meaningful contacts with Texas.[1] Its websites show the ubiquity of Vobile's products, services, and customers. They also operate as vehicles for soliciting business, not merely "passive" advertisements as Vobile claims. Perhaps most important, Vobile's websites reveal how Vobile necessarily uses its contacts with Texas to accomplish the alleged infringement. These facts constitute a prima facie case for personal jurisdiction. At a minimum, the facts require the Court to permit jurisdictional discovery before ruling on Vobile's motion.

---

[1] Vobile's websites include vobileinc.com and tvsync.com. The former is an umbrella website for all of Vobile's products and services; the latter specifically concerns a Vobile product called TVSync. Blue Spike alleges that all of the products advertised on these websites infringe Blue Spike's patents. *See* Compl. ¶27.

1

**FACTUAL BACKGROUND**

Blue Spike's four patents-in-suit teach bedrock principles and pioneering advancements essential to the digital-fingerprinting industry. Indeed, most of today's digital-fingerprinting providers—including Vobile—built their companies by infringing Blue Spike's patents. A basic understanding of digital fingerprinting helps explain why Vobile necessarily uses Texas sources to infringe Blue Spike's patents.

Broadly speaking, digital fingerprinting is a means to identify digital material—including video, audio, and text—based on unique digital markers within the material itself. At its most basic, digital fingerprinting involves at least three steps: (1) cataloging a digital work's identifying characteristics, (2) putting an abstract of the digital work into a database, and (3) scanning the Internet, radio stations, television stations, and other media sources to see whether the digital content from those sources has the same "digital fingerprint" as the abstracted digital work in the database. By finding matches between what's found out in the world and what's found in a database of protected digital content, the digital-fingerprinting process is able to detect the use of protected works.

For example, a band may write a song and then obtain a copyright for a particular recording of it. The band could then take the recording to a digital fingerprinter, who would identify particular characteristics about the recording (such as the exact placement of certain 1's and 0's in the digital stream) and create an abstract of the recording. After putting this abstract in a database, the

fingerprinter would trawl the Internet and other media outlets—comparing digital content out in the world with the digital markers in its database—to see whether there were any matches. Anytime there's a match with the band's song, the fingerprinter can identify who is using the song—and track how many times each source plays it. The content owner can then choose to let certain sources use the song, compel payment for using the song, or sue for copyright infringement.

In this case, Vobile's infringing products use digital fingerprinting to track and catalog unauthorized uses of proprietary content on the web and other media sources. For example, Vobile invites content owners to use one of Vobile's services to find out when someone has illicitly downloaded the content owner's video and put it on a file-sharing site. Vobile accomplishes this feat by creating a database of its clients' protected digital works and then trawling the Internet (including Texas sources) and media outlets around the country (including from Texas) to see whether any data transmissions bear fingerprints matching those in Vobile's database. Vobile's infringing products are, ironically, a very effective way to limit the misappropriation of intellectual property. Vobile also uses infringing digital-fingerprinting technology in its TVSync product, which allows developers to build smartphone, tablet, TV, and PC applications that automatically identify and synchronize with music, TV, and movie content.

## LEGAL STANDARD

In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court must accept plaintiff's uncontroverted, nonconclusory factual allegations as true

and resolve all controverted allegations in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). If the plaintiff presents a prima facie case supporting jurisdiction, dismissal is improper. *Id*; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

## ARGUMENT[2]

**1.   Vobile's Own Websites Indicate Continuous and Systematic Contacts with Texas.**

Vobile claims that it has never conducted any business or activities in Texas, has never solicited business in Texas, does not have any customers in Texas, does not receive any sales or revenue originating from Texas, does not render services to any Texas residents, and has no sales contracts with entities located in Texas. *See* Mot. at 2-3. In short, Vobile claims to be an utter stranger to Texas in every way. These claims are not credible given the nature of Vobile's business and customers.

**A.   Vobile's Business Necessarily Involves Significant Contact with Texas.**

Vobile's websites establish the following facts:

- Vobile's VideoTracker software provides "Comprehensive Coverage," meaning that it "Monitors all major video sharing sites worldwide" (Ex. 1);[3]

- Vobile's VideoTracker Live software provides "Comprehensive Coverage," meaning that it "Covers all major live streaming sites worldwide" (Ex. 2);

---

[2] Blue Spike agrees with Vobile that the analyses of venue and personal jurisdiction merge in this case. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."). This opposition only discusses personal jurisdiction, as Vobile does not dispute that venue is proper if the exercise of personal jurisdiction is proper.

[3] The attached exhibits are screen shots from Vobile's websites.

4

- Vobile's Internet Media Monitoring System provides "Comprehensive Coverage," meaning that it "Monitors major online video sharing sites" (Ex. 3);

- Vobile's Media Tracker Analytics service "covers major online media sites across North America" (Ex. 4);

- TVSync's "identification datacenters process[] more than 2 million videos per day. Each hour, TVSync identifies and tags more than 8,000 hours worth of audiovisual content" (Ex. 5); and

- Vobile is "the industry's most widely deployed content identification technology provider." (Ex. 6)

These "comprehensive" web activities involve significant amounts of content created, published, stored, streamed, or transmitted in Texas. *See, e.g.,* Ex. 13 (noting major video sharing site Break.com's Texas office). And Vobile does not merely monitor this content; rather, it actively processes it by extracting information from it, comparing it to information in a reference database, and generating "comprehensive metadata" on any resulting matches. Ex. 7. In short, Vobile's claim to "comprehensiveness" means that Vobile directs a significant percentage of its business towards Texas. This makes it not merely foreseeable, but unavoidable, that Vobile's infringing products harm Blue Spike in Texas—and that Vobile has used content from Texas to infringe Blue Spike's patents. Thus, the Court has personal jurisdiction over Vobile. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("[I]n patent litigation the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee."); *see also Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008) ("[T]he foreseeable

effects of a tort" are "part of the analysis of the defendant's relevant contacts with the forum.").

### B. Vobile Necessarily Uses Sources From Texas to Accomplish its Alleged Infringement.

As explained above, Vobile infringes Blue Spike's patents through its digital-fingerprinting technology. This technology works only if Vobile constantly and comprehensively trawls the relevant corners of the Internet—such as video-sharing and file-sharing sites—as well as other media sources to find out whether any data transmissions have fingerprints that match those in Vobile's database. Given the prevalence and success of Vobile's technology across North America, it defies logic that Vobile somehow operates without casting its net across Texas, which is the nation's second-most-populous state and home to many of America's largest media markets. *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (holding that personal jurisdiction in patent-infringement cases turns on the nature and extent of the commercialization of the accused products or services by defendant in the forum).

### C. Vobile's Customers—and by Extension, Vobile Itself—Operate Pervasively Throughout Texas.

Vobile's websites establish the following:

- "Leading content owners rely on Vobile services," including "6 of the 6 Major Hollywood Studios" and "5 of the 5 Leading Broadcasting TV Networks" (Ex. 8);

- "Leading video sites rely on Vobile services," including "3 of the 4 Largest Internet Video Sharing Sites" and "3 of the 5 Most Popular File Hosting Services" (Ex. 9);

6

- "Vobile is the leading provider of digital content identification and management services" (Ex. 8);

- Vobile's TVSync product is "Universally accepted" and "The trusted choice by virtually every major content company and publisher" (Ex. 10); and

- "TVSync's content identification technology has been commercially deployed for over 4 years by dozens of the world's largest content companies." (Ex. 5)

This who's-who customer base ensures that Vobile's infringing products are used continuously and systematically throughout Texas. After all, America's most successful movie studios, TV networks, video-sharing websites, and file-hosting services are indisputably responsible for massive amounts of online content published, stored, streamed, or transmitted in Texas. *See, e.g.,* Ex. 15 (noting major file sharing site MediaFire.com's Texas headquarters). Further, anyone who has ever turned on a TV knows that the major broadcast networks operate through local affiliates, including scores in Texas. *See, e.g.*, KYTX CBS, DFW CBS, KVUE ABC, WFAA-TV ABC, KXAN-TV NBC, and KPRC-TV NBC. In order to fulfill its promise of comprehensive media coverage, Vobile necessarily monitors web, radio, and TV content created in Texas by these affiliates, too.

Collectively, Vobile's own representations about its business and its customers constitute a prima facie case supporting personal jurisdiction.

**2.      Vobile Actively Solicits Business In Texas.**

Vobile claims that its websites are merely "passive" advertisements. Mot. at 2. This is false. Vobile uses one of its websites to directly solicit sales. *See* Ex. 11.[4] It uses another to register customers for its TVSync product. *See* Ex. 12. Such uses provide a basis for personal jurisdiction. *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (holding that Texas courts have personal jurisdiction over company whose "potential customers" in Texas can "fill out an online form and apply for [the company's] services through its website").

Besides its own websites, Vobile has also issued press releases through Texas media to advertise that its TVSync product (1) is "[a]vailable to broadcasters, cable companies, publishers, content providers and others"; (2) "cover[s] virtually any aspect of eCommerce, infotainment or social media"; and (3) is "ready to help both incumbent companies and entrepreneurs." Http://bit.ly/X9vZfO (website of South Texas news station KIII) (last visited October 26, 2012). This press release indicates not only that Vobile has a very broad customer base (including, presumably, customers in Texas) but also that Vobile is actively soliciting new business in Texas markets.

---

[4] Vobile's website is not like the one at issue in *Rannoch Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681 (E.D. Va. 1999), on which Vobile relies (Mot. at 8). The website in *Rannoch* merely provided "an interactive forum with spaces for comments," which did not support a finding of personal jurisdiction. *Id*. at 683. Vobile's website, by contrast, contains a webpage clearly titled "Contact—Sales" that allows potential customers to initiate direct contact with Vobile's salespeople. Ex. 11. In other words, Vobile's website is expressly designed to facilitate sales, not merely to allow people to "make comments." *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (holding that Texas courts have personal jurisdiction over company whose "potential customers" in Texas can "fill out an online form and apply for [the company's] services through its website").

### 3. At a Minimum, the Court Should Permit Jurisdictional Discovery Before Ruling on Vobile's Motion to Dismiss.

All these facts establish a prima facie showing of personal jurisdiction. But if the Court is not yet persuaded, it should permit Blue Spike to conduct jurisdictional discovery. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Blue Spike has met that threshold and should thus be allowed to conduct jurisdictional discovery if the Court is inclined to rule against Blue Spike on Vobile's motion.

## CONCLUSION

For these reasons, Blue Spike respectfully asks the Court to deny Vobile's Motion to Dismiss. Alternatively, Blue Spike asks the Court to postpone ruling on Vobile's Motion until Blue Spike has had the opportunity to conduct jurisdictional discovery.

Respectfully submitted,

  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 7th day of March 2014.

                                                         /s/ Randall T. Garteiser