# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 6:12-CV-499-MHS |
| § | LEAD CASE |
| CLEAR CHANNEL BROADCASTING, INC., § | |
| § | Case No. 6:12-CV-595-MHS |
| Defendant. § | CONSOLIDATED CASE |
| § | |
| § | **ORAL ARGUMENT REQUESTED** |
| § | JURY TRIAL DEMANDED |

**DEFENDANT CLEAR CHANNEL BROADCASTING INC.'S
REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE
<u>SOUTHERN DISTRICT OF NEW YORK UNDER 28 U.S.C. § 1404(a)</u>**

**I.     INTRODUCTION**

Blue Spike has not rebutted Clear Channel's showing that the Southern District of New York ("SDNY") is the most convenient forum for this action. The majority of the factors greatly favor transfer to the SDNY. The only factors that do not weigh heavily in favor of transfer are neutral, and therefore do not outweigh the significant gains in convenience.

**II.    ARGUMENT**

**A.     Venue Is Proper In The Southern District of New York**

Blue Spike argues that Clear Channel has not established that this action against Clear Channel could have been filed in the SDNY. This argument is meritless. Patent infringement actions may be instituted *in a district where the defendant has committed alleged acts of infringement and has a regular and established place of business*. *See* 28 U.S.C. § 1400(b). In the invalidity contentions served on February 26, 2014, Blue Spike accused only Media Monitors products of infringement. As established in the Declaration of Richard Beck filed in support of Clear Channel's Motion to Transfer (Dkt. 1148-1, "Beck Decl."), Media Monitors was created in White Plains, New York, and maintains its operations there, including design and sales. (Beck Decl. at ¶ 3-4.) Blue Spike alleges that this venue is proper because Clear Channel "actively markets and sells its products in Texas." (Dkt. 1298 at 9.) Clear Channel also markets and sells products in the SDNY. Thus, the SDNY would be a proper venue for this action.

**B.     Blue Spike Fails to Provide Evidentiary Support For Its Response**

Plaintiff makes several general arguments regarding why Tyler is a more efficient venue, but provides no evidence for its propositions. First, Blue Spike alleges that its CEO, Scott Moskowitz, cannot travel to the SDNY due to health concerns. But the only support for this is a declaration, filed nearly two months ago, by Scott Moskowitz himself. Blue Spike does not provide any corroborating evidence, such as a declaration from a doctor. Nor does Blue Spike

1

explain why these medical treatments are unavailable anywhere else, or why Mr. Moskowitz can manage to travel between Florida and Texas, but could not equally manage travel to the SDNY.

The cases that Blue Spike cites for the proposition that a party's health concerns alone can outweigh a more convenient venue involved significantly different circumstances. In each case, the party arguing for consideration of their health concerns offered supporting evidence from their treating doctors. *See NGC Worldwide, Inc. v. Siamon*, No. 3:02-cv-1760, 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (noting that the "detrimental effect of travel on Siamon's health [was] confirmed "firmly and with medical certainty" by his treating physician"); *see also BSB Bank & Trust Co. v. Morrison*, No. 02-cv-648, 2003 WL 1797845, at *2 (N.D.N.Y. Apr. 4, 2003) (noting that the elderly parties' treating physicians made written submissions to the court in support of the motion to transfer). As Blue Spike has not offered any detail regarding this argument, it cannot outweigh the showing that the SDNY is clearly more convenient.

Second, Blue Spike has also failed to rebut its ephemeral ties.[1] Although Blue Spike frequently laments that its employees are located in Tyler, Blue Spike has not offered any evidence that Blue Spike has more than one employee or witness. Nor has Blue Spike addressed the evidence regarding Mr. Moskowitz's recent presence in Tyler (such as explaining his most recent car registration in Florida or why his "residence" in Tyler is a bed and breakfast). Blue Spike has only one employee in Texas, and was formed only three months before filing these lawsuits. Any impact on Blue Spike should be tempered by its status as an ephemeral entity.

---

[1] The cases that Blue Spike cites to argue that its own ties are not ephemeral are distinguishable. (Dkt. 1298 at 10, n.4.) In each case cited, the plaintiff had more than one employee in this District and was incorporated in this District more than four months before instituting the action. *See, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2012 WL 506669, at *3 n.6 (E.D. Tex. Feb. 15, 2012) (granting motion to transfer despite plaintiff having nine employees in Texas); *NovelPoint Learning LLC v. LeapFrog Enters., Inc.*, 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010) (noting that two principals of plaintiff company lived in Texas). Scott Moskowitz, the sole employee, created Blue Spike only three months before filing suit.

### C. Blue Spike Cannot Rely Upon Serial Filings to Generate Judicial Efficiency

The remainder of Blue Spike's argument against transfer is that transfer is inefficient due to the number of pending cases in this District. Blue Spike cannot "serially fil[e] cases within a single district . . . to manufacture venue." *See GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013). In fact, the large number of defendants in this action makes case management more complicated, not more efficient.[2] Additionally, the Court's recent order transferring defendant Soundmouse Ltd. to the SDNY (Dkt. 1334) adds to the judicial economy of transferring Clear Channel. The transferee forum will be equally familiar with the patents and claim construction.

Blue Spike alleges that it believes the Media Monitors products operate similarly to other defendants' products and that this case involves "overlapping products [and] services." (Dkt. 1298 at 6 & 7.) This case may involve overlapping products between *other* defendants, but the accused Clear Channel products are independent of any other defendant. The only thing Clear Channel has in common with the other defendants is that Blue Spike has asserted the same patents against them all. This is insufficient to argue the cases "share an aggregate of operative facts." *See Simpleair, Inc. v. Microsoft Corp.*, Case No. 2:11-cv-416 at 5 (attached at Dkt. 1298-8). Thus, due to the complications inherent in a case with so many defendants and because there is a pending related case in the transferee forum, judicial economy and other practical considerations that make trial of a case easy, expeditious, and inexpensive favor transfer.

### D. On Balance, The Factors Favor Transfer

The ease of access to sources of proof and cost of attendance for witnesses greatly favor

---

[2] Blue Spike states that this Court consolidated the cases to promote efficient case management (Dkt. 1298 at 1), but this ignores that the Court's order explicitly stated that consolidation would not affect venue challenges. (Dkt. 530 at 17, n.1.)

3

transfer. Media Monitors' products, the only accused Clear Channel products, are designed in White Plains, New York. The sales and financial operations are based in White Plains, New York. At this time, it is difficult for Clear Channel to predict which specific witnesses it will rely upon at trial given the deficiencies in Blue Spike's infringement contentions, but the Beck Declaration demonstrates that the witnesses with the most knowledge are located in the SDNY and that no Clear Channel witnesses with knowledge reside in the EDTX. Blue Spike has only one witness, and likely the only documents will be the patent file histories[3] and license agreements. As the accused infringer, Clear Channel will have more evidence and witnesses, and these factors rely upon which party "has a greater volume of documents relevant to the litigation and their presumed location." *See Oasis Research, LLC v. Pro Softnet Corp.*, Case No. 4:12-cv-531 at 4-5 (attached at Dkt. 1298-9).

Blue Spike makes much of the fact that Clear Channel's headquarters are in San Antonio, Texas, which is not within this District. Blue Spike argues that the location of Clear Channel's in-house attorneys demonstrates that this District is convenient. (Dkt. 1298 at 10.) But the location of a party's attorneys is not relevant to the § 1404(a) analysis. *See Xerox Corp. v. Litton Indus., Inc.*, 353 F. Supp. 412, 415-416 (S.D.N.Y. 1973). Clear Channel's in-house attorneys did not develop the accused products, nor did any Texas employee.[4] RCS and Media Monitors were

---

[3] All patents were prosecuted before Blue Spike, LLC, was incorporated, and therefore these documents were moved to this District. This was likely only days before instituting the first action given that Blue Spike, LLC, acquired rights to the patents on August 4, 2012, and filed its first suit on August 9, 2012. *See Optimum Power Solutions LLC v. Apple, Inc*., 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) (noting that documents transferred to a venue in anticipation of litigation should not be considered).

[4] Blue Spike argues that Clear Channel, a large corporation, has employees in Texas, and thus cannot demonstrate burden or hardship (Dkt. 1298 at 10), but the appropriate standard is whether the transferee venue is more convenient. *See* 28 U.S.C. § 1404(a). Further, Blue Spike does not identify any relevant Clear Channel witnesses in this District, but Clear Channel has offered evidence that no such known witnesses reside in the EDTX. (Beck Decl. at ¶ 8.)

founded in New York in 1979 and 2003, were only acquired by Clear Channel in 2006, and are still based in New York. (Beck Decl. at ¶¶ 3-4.) The idea that Clear Channel's general in-house counsel will be the witnesses with the most relevant information regarding the accused products is absurd. Knowledgeable employees are located in the SDNY, where the accused Clear Channel products are designed, developed, and sold, not in Texas. (Beck Decl. at ¶¶ 6-8.)

Blue Spike also fails to rebut the public interest factors. Even assuming that Blue Spike is not an ephemeral entity, Blue Spike has only one employee and has been incorporated in Tyler for less than two years. No prosecution of the patents took place in Tyler.[5] Blue Spike has not offered any evidence that Blue Spike sells any products or has any customers. The only local interest is that the accused products may be sold in this District. But where this is the only connection, these public interest factors significantly favor transfer. *See Oasis Research,* (attached at Dkt. 1298-9) at 9. The divisions responsible for the accused Clear Channel products, RCS and Media Monitors, have 120 employees in the SDNY and have been in business there for 35 years, demonstrating a significantly greater local interest in the SDNY than in the EDTX. (Beck Decl. at ¶¶ 3-5.)

### III. CONCLUSION

Blue Spike has not rebutted Clear Channel's showing that the SDNY is a clearly more convenient forum. Blue Spike's recent and ephemeral ties to this forum do not outweigh the public and private factors that weigh heavily in favor of transfer. Clear Channel respectfully requests that this Court grant this motion to transfer venue to the Southern District of New York.

---

[5] Blue Spike argues that Clear Channel failed to identify the prosecuting attorney in Virginia. As Exhibit 4 (1148-6) shows, the law firm is Neifeld IP Law, PC.

5

March 13, 2014

    /s/ Ryan K. Yagura
Ryan K. Yagura - TX S.B. #240755933
ryagura@omm.com - CA S.B. #197619
Nicholas J. Whilt
nwhilt@omm.com – CA S.B. #247738
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Sarah A. Pfeiffer
spfeiffer@omm.com – CA S.B. #278205
O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

*Attorneys for Clear Channel Broadcasting, Inc.*

## CERTIFICATE OF SERVICE

  I hereby certify that on March 13, 2014, all counsel of record who have consented to electronic service were served with a copy of this document via the Court's ECF system, pursuant to Local Rule CV-5(a)(3).

                 */s/ Ryan K. Yagura*
                 Ryan K. Yagura