**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | |
| | § | |
| v. | § | Case No. 6:12-cv-499 |
| | § | |
| TEXAS INSTRUMENTS, INC. | § | |

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | |
| | § | |
| v. | § | Case No. 6:12-cv-564 |
| | § | |
| ADOBE SYSTEMS, INC. | § | |

**ORDER SEVERING AND TRANSFERRING
TO THE NORTHERN DISTRICT OF CALIFORNIA**

Now before the Court is Defendant Adobe Systems Inc.'s motion to transfer for the convenience of the parties (Doc. No. 905). Having considered the parties' briefing and the applicable law, the Court finds that the Northern District of California is a clearly more convenient venue and transfers this case to the Northern District of California.

## I.   BACKGROUND

This action involves dozens of cases against unrelated Defendants for infringement of four patents: U.S. Patent Nos. 7,346,472 (the '472 Patent), 7,660,700 (the '700 Patent), 7,949,494 (the '494 Patent), and 8,214,175 (the '175 Patent). The four related patents in suit describe a method and device for monitoring and analyzing signals. The inventor describes the patented technology as "signal abstracting" prevalent in the field of digital security, such as "digital fingerprinting." Plaintiff accuses Defendant's digital fingerprinting technology as infringing each of the patents in suit.

The Court consolidated the cases into the above styled action. The consolidation was for pretrial purposes, including claim construction and discovery, but the Court affirmatively noted that the consolidation would not bear on any venue challenges. After the consolidation, Defendant moved to transfer the case to the Northern District of California for the convenience of the parties.

## II.    MOTION TO TRANSFER FOR THE CONVENIENCE OF THE PARTIES

Defendant moves the Court to transfer this case to the Northern District of California for the convenience of the parties. Defendant bases its argument largely on the fact that its headquarters—and thus its witnesses and evidence—are in San Jose, California.

Plaintiff responds that Defendant asks the Court to ignore the effect of the requested transfer on Plaintiff. Plaintiff emphasizes two additional facts in support of its position: (1) the pendency of dozens of related cases in this district, and (2) the presence of Plaintiff Blue Spike as well as Blue Spike CEO and Inventor Scott Moskowitz in the Eastern District of Texas.

### a.    Legal Standard

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo*

*Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315,

1319 (Fed. Cir. 2008). The party seeking the transfer must show good cause, which means that

the moving party must demonstrate that the proposed transferee venue is "clearly more

convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d

304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). A convenience

determination consists of balancing the convenience and inconvenience resulting from plaintiff's

choice of venue in comparison with those of the proposed venue. This balancing includes

examining several private and public interest factors, none of which has dispositive weight. *Id.*

   The private interest factors are: (1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589

F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: (1) the

administrative difficulties flowing from court congestion; (2) the local interest in having

localized interests decided at home; (3) the familiarity of the forum with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application

of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS

Tech*, 551 F.3d at 1319.

   The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545

F.3d at 314–15 & n.10. Rather, the weight of the plaintiff's choice of venue is reflected in the

defendant's burden of proving that the proposed venue is "clearly more convenient" than the

transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re

TS Tech*, 551 F.3d at 1320. Furthermore, though the private and public factors apply to most

transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

### b.   The Northern District of California

Defendant must first establish that this action could have been brought in the Northern District of California. 28 U.S.C. § 1404(a). Defendant argues—and Plaintiff does not dispute— that Adobe Systems is headquartered in San Jose, California, and this Court agrees, that under these facts, venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391.

### c.   Private Interest Factors

#### i.   *The Relative Ease of Access to Sources of Proof*

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of documents and hard copies across the country, this factor must still be considered in the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.*; *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 873 (E.D. Tex. 2013). This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the proposed and transferor venues. *See, e.g.*, *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). But documents that have

been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Defendant represents that its relevant documents are in its offices in the Northern District of California. Plaintiff counters that its documents and servers are located in Texas.[1] On balance, the location of Defendant's sources of proof far outweighs the presence of Plaintiff's documents and servers in Texas. *See In re Nintendo*, 589 F.3d at 1199. Accordingly, this factor favors transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the proposed venue. *See In re Volkswagen II*, 545 F.3d at 316; *In re Amazon.com Inc.*, 478 F. App'x 669, 670 (Fed. Cir. 2012). The factor weighs the heaviest in favor of transfer when a proposed venue is said to have "absolute subpoena power." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. "Absolute subpoena power" is subpoena power to compel attendance at both depositions and trial. *Id.*

Defendant points to Adam Cahan, who resides in the San Francisco area. Mr. Cahan founded the company that developed the accused systems, and was later acquired by Defendant. Defendant also points to nine licensees and 24 prior art witnesses that are located in the Northern District of California. Plaintiff identifies no third-party witnesses that this Court would have absolute subpoena power over. Accordingly, this factor favors transfer.

---

[1] Defendant argues that Plaintiff's documents were moved to this district in anticipation of litigation and should be disregarded by the Court. The Court finds this factor favors transfer even if Plaintiff's documents are considered, and thus does not address Defendant's argument.

### *iii.   The Cost of Attendance for Willing Witnesses*

This factor is analyzed by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* When applying the 100-mile rule, the threshold question is whether the transferor and proposed venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and proposed venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

But "the '100-mile rule' should not be rigidly applied." *In re Genentech*, 566 F.3d at 1344. When a particular witness "will be required to travel a significant distance no matter where they testify," that witness is discounted for purposes of the 100-mile rule analysis. *Id.*

(discounting European witnesses and documents transported from Washington, D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

As to this factor, Defendant identifies numerous party and non-party witnesses that reside in the Northern District of California. Plaintiff counters that its CEO and inventor of the technology at issue lives in this district.

The Courts weighs most heavily the convenience of non-party witnesses. *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2013). Defendant identifies 34 potential non-party witnesses located in the transferee district. The only witness specifically identified in this district is Plaintiff's CEO and co-inventor, Scott Moskowitz. But co-inventor Michael W. Berry, a resident of Seattle, Washington, is located closer to the transferee district. Plaintiff encourages the Court to give special consideration to Moskowitz's travel limitations imposed by his serious health condition: chronic inguinal neuropathy. Plaintiff has not any health documentation to support his claim that he is medically unable to travel long distances. Accordingly, the Court will not give undue consideration to Moskowitz's health condition.

Having considered all of the facts discussed above, the Court finds that this factor weighs in in favor of transfer.

### iv.   Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter *In re Volkswagen III*).

Importantly, "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). "While considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed." *Id.* "[A] district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *Id.*

Both parties point to the high volume of related litigation in this district as supporting its position under this factor. Defendant argues that Plaintiff's decision to serially file dozens of cases in this District should not allow Plaintiff to establish venue. Plaintiff counters that the volume of related litigation compels the Court to deny transfer in order to jointly consider common issues such as claim construction. The Court finds both positions have merit.

As the Court has previously acknowledged, certain stages of the related litigation, such as claim construction and certain discovery matters, could be more efficiently managed through consolidated measures. *See In re EMC*, 677 F.3d 1351, 1360 (Fed. Cir. 2012). But the Court also acknowledges that in this instance, the excessively high volume of Defendants (much higher than in most patent litigation), with little overlap in the accused products, creates case management issues not normally encountered by the Court. Although the Court is confident that these issues can be effectively and efficiently managed, the presence of the additional case management burden cannot be ignored.

However, in view of the number of common or related issues among the related cases, the Court views the balance of this factor to weight slightly against transfer.

**d.  Public Interest Factors**

The parties only address two of the public interest factors: administrative difficulties due to relative court congestion and the local interest in the dispute. These factors are addressed below. The remaining two public interest factors are considered neutral.

### i.  Administrative Difficulties Flowing from Court Congestion

Defendant argues that relative court congestion favors transfer because the Eastern District of Texas has fewer judges and a longer median time-to-trial as compared to the Northern District of California. The Court finds that merely comparing the number of judges and median time to trials to be too speculative to determine any administrative difficulties from relative court congestion. Therefore, this factor is neutral.

### ii.  Local Interests

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Defendant insists that the Northern District of California has a particular interest in this litigation since Defendant is headquartered there. The Court finds that both districts have a localized interest in the dispute. Accordingly, this factor is neutral.

### e.  Balance of Factors

Three favor transfer and another weighs slightly against transfer. The one factor that slightly weighs against transfer does so only because Plaintiff serially filed dozens of cases in this district and, therefore, is of limited importance. *Cf. GeoTag v. Starbucks Corp.*, 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013).  All of the public interest factors are neutral. Having considered each of these relevant factors, the Court finds that the Northern District of California is a clearly more convenient forum.

### III.  CONCLUSION

For the reasons discussed more fully above, the Court GRANTS Defendant Adobe Systems Inc.'s motion to transfer venue (Doc. No. 905).  Accordingly, Plaintiff's claims against Adobe Systems Inc. are SEVERED from the lead case back into the original cause number, 6:12-cv-564, and the clerk of the court is directed to TRANSFER the severed action to the Northern District of California for further consideration.

It is SO ORDERED.

SIGNED this 13th day of March, 2014.


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE