IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC | § |
| | § |
| v. | § Case No. 6:12-cv-499 |
| | § |
| TEXAS INSTRUMENTS, INC. | § |

**ORDER DENYING AUDIBLE MAGIC CORPORATION AND CUSTOMERS'
MOTIONS TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

Now before the Court are Audible Magic and its Customer Defendants' motions to transfer for the convenience of the parties (Doc. Nos. 611, 836, 960). Having considered the parties' briefing and the applicable law, the Court finds that Defendants failed to satisfy their burden of showing this suit could have originally been brought in the Northern District of California. Accordingly, the Court DENIES the motions to transfer.

**I.     BACKGROUND**

In four separate actions,[1] Plaintiff accused Audible Magic Corporation and 26 of its customers (the Audible Magic Defendants) of infringing each patent in suit: U.S. Patent Nos.

---

[1] Plaintiff asserted claims against Audible Magic Corporation and the following 23 of its customer Defendants in cause number 6:12-cv-576 (the 576 case): Facebook, Inc.; MySpace, LLC; Specific Media, LLC; Photobucket.com, Inc.; Dailymotion, Inc.; Dailymotion S.A.; Soundcloud, Inc.; Soundcloud Ltd.; Myxer, Inc.; Qlipso, Inc.; Qlipso Media Networks Ltd.; Yap.tv, Inc.; GoMiso, Inc.; iMesh, Inc.; Metacafe, Inc.; Boodabee Technologies Inc.; Zedge Holdings, Inc.; Brightcove Inc.; Coinciden.TV, Inc.; Mediafire, LLC; Harmonix Music Systems, Inc.; Accedo Broadband North America, Inc.; Accedo Broadband AB. (Tunecore, Inc. was originally named in the 576 case, but has since been dismissed by agreement of the parties.) The accused products in the 576 case are Live TVid, SMartSyn, CopySense, SmartID, Audini and automated content recognition digital fingerprint-based software, systems, and technology.

  Plaintiff also asserted infringement claims against WiOffer LLC in cause number 6:12-cv-570. Plaintiff accuses WiOffer's WiO product of infringing all four patents in suit. Although Plaintiff initially challenged whether WiOffer should be considered an Audible Magic Defendant, Plaintiff has not countered Defendants' claim that WiOffer's accused product is based on Audible Magic's content recognition technology.

  Plaintiff also asserted infringement claims in cause number 6:13-cv-60 against CBS Interactive, Inc.'s CBS Sync software. Plaintiff accuses the CBS Sync product of infringing all four patents in suit. Noting that its claims against CBS Interactive (CBSi) never mention Audible Magic, Plaintiff challenges whether CBSi is properly grouped as an Audible Magic customer. Similarly, Plaintiff asserted infringement claims in cause number 6:13-cv-

7,346,472 (the '472 Patent), 7,660,700 (the '700 Patent), 7,949,494 (the '494 Patent), and 8,214,175 (the '175 Patent). The four related patents in suit describe a method and device for monitoring and analyzing signals. The inventor describes the patented technology as "signal abstracting" prevalent in the field of digital security, such as "digital fingerprinting." Plaintiff also filed 78 other cases with similar infringement claims asserted under these same four patents. The Court consolidated all 82 cases filed by Blue Spike into the above styled action (6:12-cv-499), which was the first filed of all the related cases. The consolidation was for pretrial purposes, including claim construction and discovery, and the Court affirmatively noted that the consolidation would not bear on any venue challenges.

After the Court consolidated the Blue Spike litigation, the Audible Magic Defendants moved to transfer this case to the Northern District of California.[2] On the same day that Plaintiff filed its surreply to the motion to transfer, Audible Magic filed an Amended Answer raising 11 counterclaims: nine invalidity, unenforceability, and noninfringement claims against Plaintiff Blue Spike, LLC; an unjust enrichment claim against Plaintiff Blue Spike, LLC and third-party Defendants Blue Spike, Inc. (BSI) and Scott Moskowitz, an inventor of the patents in suit and CEO of Blue Spike LLC; allegations under the Lanham Act against the Plaintiff and both third-

---

125 against Entropic Communications, Inc.'s set-top-box system-on-chip platform software, systems, and technology enabled with automatic content recognition. Plaintiff acknowledges that there is some overlap between its claims against Entropic and its claims against Audible Magic, but insists that its claims also accuse Entropic products that do not incorporate the Audible Magic technology. Thus, Plaintiff challenges whether Entropic is properly treated as an Audible Magic Defendant.

    Because the Court resolves the motions to transfer in Plaintiff's favor, the Court does not address Plaintiff's objection to grouping WiOffer, CBSi, and Entropic as Audible Magic Defendants. The Court addressed grouping of Defendants at the recent scheduling conference and referred the matter to a magistrate judge for further consideration. Accordingly, for purposes of this Order, reference to the Audible Magic Defendants includes Defendants WiOffer, CBSi, and Entropic.

    Furthermore, the parties have not objected to the Court's order consolidating these matters for pretrial purposes, and the Court finds that such consolidation is consistent with the America Invents Act and the joinder rules (*see* Doc. No. 16).

[2] Audible Magic and the 23 customers defendants named as Audible Magic customers by Plaintiff in cause number 6:12-cv-576 as well as Defendant WiOffer filed the original transfer motion in the consolidated case (Doc. No. 771). Defendants CBSi and Entropic subsequently filed motions to join the motion to transfer (Doc. Nos. 836, 960). The Court refers to all three of these motions collectively as "the motion to transfer."

party Defendants; and claims against Plaintiff and third-party Defendant BSI for infringement of U.S. Patent No. 6,834,308.

After Audible Magic amended its answer to add the counterclaims and join the third-party Defendants, the parties filed supplemental briefing to address the effect of the third-party Defendants on the venue analysis.

## II.     MOTION TO TRANSFER FOR THE CONVENIENCE OF THE PARTIES

The Audible Magic Defendants move the Court to transfer this case to the Northern District of California for the convenience of the parties. The Audible Magic Defendants base their argument largely on the fact that employees and third parties with information related to the research, design, and manufacturing of the accused products work in Los Gatos and Berkley, California. They also note that many of Audible Magic's customers and others in the content recognition industry have significant ties with the Northern District of California.

Plaintiff challenges that the Audible Magic Defendants have satisfied the threshold showing that the Northern District of California has personal jurisdiction over the entire action, including all of the Audible Magic Defendants as well as third-party Defendants BSI and Moskowitz. Plaintiff also emphasizes two additional facts: (1) the pendency of dozens of related cases in this district, and (2) the presence of Plaintiff Blue Spike as well as Blue Spike CEO and Inventor Scott Moskowitz in the Eastern District of Texas.

### a.  Legal Standard

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in

which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The party seeking the transfer must show good cause, which means that the moving party must demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). A convenience determination consists of balancing the convenience and inconvenience resulting from plaintiff's choice of venue in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Id.*

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight of the plaintiff's choice of venue is reflected in the defendant's burden of proving that the proposed venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1320. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

### b. The Northern District of California

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit originally could have been filed in the destination venue, here, the Northern District of California. *Volkswagen II*, 545 F.3d at 312. The movants bear the burden of establishing personal jurisdiction and venue as to all defendants—including third-party Defendants—in the transferee forum.[3] *See Chirife v. St. Jude Med., Inc.*, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (evaluating whether the transferee district had personal jurisdiction over third-party defendants); *Waxman v. Westin Hotels & Resorts, Inc.*, No. 94 CIV. 5796, 1995 WL 242055, at *1 (S.D.N.Y. April 26, 1995) (same).

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular

---

[3] A forum must independently have jurisdiction over third-party defendants. *Gundle Lining Contr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 210 (5th Cir. 1996). Thus, before transferring under 1404(a), the Court must consider whether jurisdiction is proper in the receiving forum as to the third-party defendants. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Although this requirement may conflict with the general rule that the Court consider the case at the time of filing, *see Hoffman v. Blaski*, 363 U.S. 335, 344 (1960), it is a necessary conflict. This Court cannot transfer a case to a forum with no authority to hear the matter. The Court further notes that the parties have not requested severance of the third-party claims, which, if granted, would eliminate the third-party Defendants from the Court's § 1404(a) analysis. *See In re EMC*, 677 F.3d 1351, 1353 (Fed. Cir. 2012).

and established place of business." 28 U.S.C. § 1400(b). A corporation resides in any division with which it has minimum contacts. 28 U.S.C. 1391(c) & (d).

The Audible Magic Defendants rely on the following allegations to demonstrate contacts between the third-party Defendants—BSI and Scott Moskowitz—and the Northern District of California: (1) Audible Magic's general statement that acts giving rise to the counterclaims occurred in the Northern District of California; (2) that in the summer of 1997, Moskowitz called Audible Magic's predecessor Muscle Fish (located in the Northern District of California) to inquire about Muscle Fish's technology and to suggest that Muscle Fish obtain a trademark for one of its products, and (3) BSI and Moskowitz took information from Muscle Fish and Audible Magic, both headquartered in the Northern District of California.

As Plaintiff points out, Audible Magic's allegations fall short of the necessary contacts to establish personal jurisdiction in the Northern District of California. First, Audible Magic's vague and conclusory allegation that the underlying acts occurred in California is insufficient to support jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Additionally, Moskowitz's call to Muscle Fish is a tenuous contact (at best) and cannot support personal jurisdiction. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). Audible Magic's final jurisdictional allegation is based solely on the location of Audible Magic and its predecessor, rather than the relationship between Moskowitz and BSI, the counterclaims, and the forum. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Thus, this allegation cannot support the Northern District of California's exercise of jurisdiction over the third-party Defendants.

### III. CONCLUSION

The Audible Magic Defendants failed to satisfy their burden on the threshold issue. Thus, their motions to transfer (Doc. Nos. 611, 836, 960) are DENIED.

**It is SO ORDERED.**

**SIGNED this 17th day of March, 2014.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE