## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | |
| *Plaintiff*, | § § | C.A. No. 6:12-cv-00499-MHS |
| v. | § § | **JURY TRIAL DEMANDED** |
| TEXAS INSTRUMENTS, INC., | § § | |
| *Defendant*. | § § | |

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | |
| *Plaintiff*, | § § | C.A. No. 6:12-cv-00500-MHS |
| v. | § § | **(CONSOLIDATED WITH 6:12-CV-499)** |
| SHAZAM ENTERTAINMENT LTD., | § § | **JURY TRIAL DEMANDED** |
| *Defendant*. | § § | |

| | | |
|---|---|---|
| SHAZAM ENTERTAINMENT LTD., | § § | |
| *Defendant*, | § § | |
| v. | § § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § § § | |
| *Counterclaim Defendants*. | § § § | |

## SHAZAM ENTERTAINMENT LIMITED'S AMENDED ANSWER TO BLUE SPIKE, LLC'S COMPLAINT AND COUNTERCLAIMS AGAINST BLUE SPIKE LLC, BLUE SPIKE, INC. AND SCOTT A. MOSKOWITZ

Defendant Shazam Entertainment Limited ("Shazam"), by and through its undersigned attorneys, hereby answers the Complaint for Patent Infringement (the "Complaint") filed against it by Plaintiff Blue Spike, LLC ("Blue Spike" or "Plaintiff") on August 9, 2012, as follows.

Shazam states that anything in Plaintiff's Complaint that is not expressly admitted is hereby denied.

## NATURE OF THE SUIT

1.      Shazam admits that the Complaint purports to bring an action under Title 35 of the United States Code, but Shazam denies the legal sufficiency of Plaintiff's claims and allegations and denies that Plaintiff has any viable claim thereunder.

## PARTIES

2.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint and, therefore, denies these allegations.  To the extent the allegations contained in Paragraph 2 of the Complaint contain factual allegations relating to Shazam, such allegations are denied.

3.      Shazam admits that it is incorporated in England and Wales, having its registered office and principal place of business at 26-28 Hammersmith Grove, London W6 7HA, United Kingdom.  Shazam has accepted service of the Summons and Complaint in this action.  Shazam admits that it does business in the United States, including in the State of Texas and in the Eastern District of Texas.

## JURISDICTION AND VENUE

4.      Shazam admits that the Complaint purports to bring a patent infringement action arising under the laws of the United States, 35 U.S.C. § 101 *et seq.* and that this Court has jurisdiction over the subject matter of this action, but denies the legal sufficiency of Plaintiff's claims and allegations and denies that Plaintiff has any viable claim thereunder.

5.      Shazam admits that this Court has personal jurisdiction over Shazam, but denies that it has committed acts of patent infringement and/or contributed to or induced acts of patent

infringement by others.  Shazam lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5 of the Complaint and, therefore, denies each and every remaining allegation of paragraph 5.

6.      Shazam does not challenge the propriety of venue in this District under 28 U.S.C. §§ 1391 and 1400(b), but denies that it has committed acts of patent infringement and reserves the right to move to transfer or move to change this case to a more convenient forum.

## FACTUAL BACKGROUND

**A.      Moskowitz's History**

7.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and, therefore, denies these allegations.

8.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and, therefore, denies these allegations.

9.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and, therefore, denies these allegations.

10.     Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and, therefore, denies these allegations.

11.     Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and, therefore, denies these allegations.

12.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and, therefore, denies these allegations.

13.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and, therefore, denies these allegations.

14.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and, therefore, denies these allegations.

15.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and, therefore, denies these allegations.

16.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and, therefore, denies these allegations.

17.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and, therefore, denies these allegations.

18.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and, therefore, denies these allegations.

19.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and, therefore, denies these allegations.

20.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and, therefore, denies these allegations.

**B.      Patents-in-Suit**

21.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and, therefore, denies these allegations.

22.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and, therefore, denies these allegations.

23.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and, therefore, denies these allegations.

24.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and, therefore, denies these allegations.

25.      Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and, therefore, denies these allegations.

26.     Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and, therefore, denies these allegations.

**C.      The Accused Products and Services**

27.     Shazam admits, based on its understanding of the words and phrases used in the Complaint, that it designs and develops applications and systems to be used with certain smartphones and tablets, but denies that it has committed acts of patent infringement.  Shazam denies that the "Accused Products" infringe one or more claims of the patents-in-suit.  Shazam lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 27 of the Complaint and, therefore, denies these allegations.

28.     Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint and, therefore, denies these allegations.

29.     Denied.

**COUNT 1:**
**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 8,214,175**

30.     Shazam incorporates by reference its above responses to Paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31.     Shazam admits that United States Patent No. 8,214,175 ("the '175 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Shazam lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 31 of the Complaint and, therefore, denies these allegations.

32.     Shazam admits that the '175 patent states on its face that it issued on July 3, 2012, and that what appears to be a copy of the '175 patent was attached as Exhibit A to the Complaint.

Shazam otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 32 of the Complaint and, therefore, denies these allegations.

33.     Denied.

34.     Shazam denies the allegations contained in Paragraph 34 of the Complaint and denies that it has, or is now, indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others any claim of the '175 patent.  Shazam denies that it has injured Plaintiff and denies that it is liable to Plaintiff under 35 U.S.C. § 271.  Shazam further denies that it had knowledge of the '175 patent prior to service of the Complaint in this action.  To the extent the allegations contained in Paragraph 34 refer to unidentified "systems," Shazam lacks knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies them.

35.     Denied.

36.     To the extent the allegations contained in Paragraph 36 of the Complaint relate to Shazam, Shazam denies them.

37.     Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint and, therefore, denies these allegations.

**COUNT 2:**
**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,949,494**

38.     Shazam incorporates by reference its above responses to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     Shazam admits that United States Patent No. 7,949,494 ("the '494 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Shazam lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

paragraph 39 of the Complaint and, therefore, denies these allegations.

40.     Shazam admits that the '494 patent states on its face that it issued on May 24,

2011, and that what appears to be a copy of the '494 patent was attached as Exhibit B to the

Complaint.  Shazam otherwise lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations of Paragraph 40 of the Complaint and, therefore, denies

these allegations.

41.     Denied.

42.     Shazam denies the allegations contained in Paragraph 42 of the Complaint and

denies that it has, or is now, indirectly infringing by way of inducing infringement by others

and/or contributing to the infringement by others any claim of the '494 patent.  Shazam denies

that it has injured Plaintiff and denies that it is liable to Plaintiff under 35 U.S.C. § 271.  Shazam

further denies that it had knowledge of the '494 patent prior to service of the Complaint in this

action.  To the extent the allegations contained in Paragraph 42 refer to unidentified "systems,"

Shazam lacks knowledge or information sufficient to form a belief as to the truth of those

allegations and, therefore, denies them.

43.     Denied.

44.     To the extent the allegations contained in Paragraph 44 of the Complaint relate to

Shazam, Shazam denies them.

45.     Shazam lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 45 of the Complaint and, therefore, denies these

allegations.

**COUNT 3:**
**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,660,700**

46.     Shazam incorporates by reference its above responses to Paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47.     Shazam admits that United States Patent No. 7,660,700 ("the '700 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Shazam lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47 of the Complaint and, therefore, denies these allegations.

48.     Shazam admits that the '700 patent states on its face that it issued on February 9, 2010, and that what appears to be a copy of the '700 patent was attached as Exhibit C to the Complaint.  Shazam otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48 of the Complaint and, therefore, denies these allegations.

49.     Denied.

50.     Shazam denies the allegations contained in Paragraph 50 of the Complaint and denies that it has, or is now, indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others any claim of the '700 patent.  Shazam denies that it has injured Plaintiff and denies that it is liable to Plaintiff under 35 U.S.C. § 271.  Shazam further denies that it had knowledge of the '700 patent prior to service of the Complaint in this action.  To the extent the allegations contained in Paragraph 50 refer to unidentified "systems," Shazam lacks knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies them.

51.     Denied.

52.     To the extent the allegations contained in Paragraph 52 of the Complaint relate to Shazam, Shazam denies them.

53.     Shazam lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint and, therefore, denies these allegations.

**COUNT 4:**
**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,346,472**

54.     Shazam incorporates by reference its above responses to Paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55.     Shazam admits that United States Patent No. 7,346,472 ("the '472 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Shazam lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55 of the Complaint and, therefore, denies these allegations.

56.     Shazam admits that the '472 patent states on its face that it issued on March 18, 2008, and that what appears to be a copy of the '472 patent was attached as Exhibit D to the Complaint.  Shazam otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 of the Complaint and, therefore, denies these allegations.

57.     Denied.

58.     Shazam denies the allegations contained in Paragraph 58 of the Complaint and denies that it has, or is now, indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others any claim of the '472 patent.  Shazam denies that it has injured Plaintiff and denies that it is liable to Plaintiff under 35 U.S.C. § 271.  Shazam further denies that it had knowledge of the '472 patent prior to service of the Complaint in this

action.  To the extent the allegations contained in Paragraph 58 refer to unidentified "systems,"
Shazam lacks knowledge or information sufficient to form a belief as to the truth of those
allegations and, therefore, denies them.

59.     Denied.

60.     To the extent the allegations contained in Paragraph 60 of the Complaint relate to
Shazam, Shazam denies them.

61.     Shazam lacks knowledge or information sufficient to form a belief as to the truth
of the allegations contained in Paragraph 61 of the Complaint and, therefore, denies these
allegations.

## PLAINTIFF'S REQUEST FOR RELIEF

Shazam denies that Plaintiff is entitled to the relief requested in Plaintiff's request for
relief, and to the extent that such request contains factual allegations relating to Shazam, such
allegations are denied.  Plaintiff's request for relief should be denied, with prejudice, in its
entirety.

## AFFIRMATIVE AND OTHER DEFENSES

62.     Further answering the Complaint, and as additional defenses thereto, Shazam
asserts the following affirmative and other defenses.  Shazam does not intend hereby to assume
the burden of proof with respect to those matters as to which, pursuant to law, Plaintiff Blue
Spike bears the burden.  Shazam reserves the right to add additional defenses and/or supplement
its defenses, as Shazam learns additional facts.

## FIRST DEFENSE (NON-INFRINGEMENT)

63.     Shazam has not infringed and does not infringe any valid and enforceable claim
of U.S. Patent Nos. 8,214,175 ("the '175 patent"), 7,949,494 ("the '494 patent"), 7,660,700 ("the

'700 patent) and 7,346,472 ("the '472 patent) (collectively, "the patents-in-suit"), neither literally nor by the doctrine of equivalents.  To the extent alleged by Plaintiff in its Complaint or in the future, Shazam has not infringed and does not infringe any valid and enforceable claim of the patents-in-suit directly, indirectly, contributorily, or by inducement, neither literally nor by the doctrine of equivalents, and has not infringed and does not infringe willfully.  Furthermore, Plaintiff is precluded under the doctrines of disclaimer and prosecution history estoppel from asserting a scope for the claims of the patents-in-suit patent that would encompass any Shazam product or service.

## SECOND DEFENSE (INVALIDITY)

64.     One or more claims of the '175 patent is invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, one or more claims is invalid in view of the references cited by the Examiner and arguments made by the Applicants during prosecution of the applications that issued as the '175 patent.

65.     One or more claims of the '494 patent is invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, one or more claims is invalid in view of the references cited by the Examiner and arguments made by the Applicants during prosecution of the applications that issued as the '494 patent.

66.     One or more claims of the '700 patent is invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, one or

more claims is invalid in view of the references cited by the Examiner and arguments made by the Applicants during prosecution of the applications that issued as the '700 patent.

67.     One or more claims of the '472 patent is invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, one or more claims is invalid in view of the references cited by the Examiner and arguments made by the Applicants during prosecution of the applications that issued as the '472 patent.

### THIRD DEFENSE (LICENSE, PATENT EXHAUSTION)

68.     Plaintiff's claims are barred in whole or in part by one or more of the following: express or implied license; and doctrine of patent exhaustion.  For example, Plaintiff's claims are precluded to the extent that any accused product or component thereof is supplied, directly or indirectly, to Shazam or another entity, having an express or implied license to the patents-in-suit or covenant not to sue.

### FOURTH DEFENSE (FAILURE TO MARK)

69.     Plaintiff's claims are barred in whole or in part for failure to plead compliance with patent marking pursuant to the requirement of 35 U.S.C. § 287(a).

### FIFTH DEFENSE (EQUITABLE BARS)

70.     Plaintiff's claims are barred in whole or in part by the doctrine of estoppel, prosecution laches, and/or other equitable doctrines.

### SIXTH DEFENSE (LACK OF STANDING)

71.     To the extent that Plaintiff was not the sole and total owner of the patents-in-suit as of the filing date of the Complaint, Plaintiff lacks standing to bring one or more claims in this lawsuit.

### SEVENTH DEFENSE (PROSECUTION LACHES)

72.     Plaintiff's claims are barred in whole or in part by the doctrine of prosecution laches.

### EIGHTH DEFENSE (FAILURE TO STATE A CLAIM)

73.     The Complaint fails to state a claim upon which relief can be granted.

### NINTH DEFENSE (NO ENTITLEMENT TO INJUNCTIVE RELIEF)

74.     Plaintiff is not entitled to any injunctive relief because Plaintiff has not suffered, and will not suffer, irreparable harm because of Shazam's conduct, Plaintiff has an adequate remedy at law, and the balance or hardships does not favor injunctive relief.

### TENTH DEFENSE (UNENFORCEABILITY OF '492, '700, '494, AND '175 PATENTS DUE TO INEQUITABLE CONDUCT)

75.     The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

76.     During prosecution of the '472, '700, '494 and '175 patents, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and which they knew or should have known would have been important to a reasonable examiner. Upon information and belief, the applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.

### The Applicants Knew Of Highly Material Prior Art, Including Prior Art Of Audible Magic And Its Predecessor Company Muscle Fish LLC

77.     Upon information and belief, the applicants of the '472, '700, '494 and '175 patents knew of highly material prior art regarding content identification technologies. Despite having full knowledge of this material prior art, the applicants did not share any of it with the

PTO. Upon information and belief, prior to filing and issuance of the '472, '700, '494 and '175 patents, the applicants investigated products or services that competed with or were otherwise relevant to the business of applicant Scott Moskowitz ("Moskowitz") and his company Blue Spike, Inc. ("Blue Spike, Inc.") and to the patent claims being drafted by the applicants. Upon information and belief, the applicants investigated products and services that carried out the monitoring, analysis and recognition of digital information and signals, including products and services that used content-based fingerprints in order to identify content or signals.

78.     Upon information and belief, prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were aware of prior art technology and systems of Audible Magic's predecessor company, a consulting company called Muscle Fish, LLC ("Muscle Fish"). Upon information and belief, prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were also aware of prior art technology and systems of Audible Magic.

79.     Upon information and belief, Muscle Fish was founded in Berkeley, California, in 1992, by engineers, mathematicians and musicians Erling Wold, Doug Keislar, Thom Blum and Jim Wheaton (collectively the "Muscle Fish Founders"). Upon information and belief, the Muscle Fish Founders had worked with signal processing and sound technologies from the late 1970s through the early 1990s. Upon information and belief, by 1992, the Muscle Fish Founders had advanced degrees in electrical engineering, computer science and computer applications to music synthesis and had extensive experience with acoustic models, signal processing, parameter estimation, non-linear and applied mathematics, software engineering, computer architecture, circuit design and computer music. Upon information and belief, one of the Muscle Fish Founders cofounded the Computer Music Association, and another conducted psycho-acoustical

research at Stanford's Center for Computer Research in Music and Acoustics ("CCRMA"). Upon and belief, all Muscle Fish Founders had been engineers for years at a variety of companies, including Yamaha Music Technologies, developing new music analysis and synthesis techniques.

80.      Upon information and belief, in the 1990s, engineers at Muscle Fish worked on systems for analyzing content and signals and designed a system for looking up and comparing known and unknown content based on a set of features of content called "MFCCs." Upon information and belief, the Muscle Fish engineers published papers about this technology. For example, on July 20, 1995, upon information and belief, they published a paper, "Audio Databases with Content-Based Retrieval," about MFCC-based fingerprints and presented it in August 1995 at the IJCAI Workshop on Intelligent Multimedia and also in September 1995, at the International Computer Music Conference. Upon information and belief, in January and May 1996, respectively, they gave talks to IBM and to the CCRMA called "Content-Based Classification, Search, and Retrieval of Audio." Upon information and belief, in 1996, Muscle Fish filed application No. 08/681,174 on aspects of its MFCC-based fingerprinting technology; a continuation-in-part application was filed on July 21, 1997, resulting in the issuance of U.S. Patent No. 5,918,223 ('223 Patent) on aspects of the MFCC-based technology on June 29, 1999.

81.      Upon information and belief, in the 1990s, interest in Muscle Fish's content recognition system was very high and the technology was known in the industry. Upon information and belief, Muscle Fish disclosed, marketed and sold its technology and systems to numerous companies, including database companies, advertising companies, content owners, performing rights societies, search engines, websites, online music stores, sound effects designers and musicians and multimedia companies. Upon information and belief, Muscle Fish

16

offered standard code libraries and also developed custom implementations for its clients; these products went under various names, including the Muscle Fish "content-based recognition" system, "CBR," "cbrStream," "SoundFisher" and other names. Upon information and belief, a demo of the content-based recognition technology was available on Muscle Fish's website. Upon information and belief, Muscle Fish publicized implementations of these technologies, including Audio Information Retrieval (AIR) DataBlade module for INFORMIX Universal Server, the Video Cataloger product by Virage, Inc., The Bulldog Group's media asset management system, R2, SURF and EAR among others. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of Muscle Fish technologies and implementations in the mid-1990s, but did not disclose them to the PTO.

82.     Upon information and belief, in 2000, Muscle Fish was merged into another company called Audible Magic Corp. Upon information and belief, Audible Magic Corp. had been formed in 1999 and was originally known as Wired Air, LLC. Upon information and belief, in 2000, Audible Magic Corp. acquired all of Muscle Fish's intellectual property, technology, contracts, assets and employees, and all rights therein. Upon information and belief, in 1999 and 2000, Audible Magic implemented the Muscle Fish technology in a content recognition system, one implementation of which was called "Clango." On February 17, 2000, Audible Magic filed the application for U.S. Patent No. 6,834,308, entitled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device," which issued on December 21, 2004. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of the Audible Magic technologies, but did not disclose them to the PTO.

83.     Upon information and belief, in 1992, by contrast to the extensive technical experience of the Muscle Fish engineers, upon information and belief, Scott Moskowitz

("Moskowitz"), one of the applicants for the '472, '700, '494 and '175 patents, had only worked in a low-level business role at Sony Japan in the late 1980s, obtained a bachelor's degree in Political Science, Finance and Japanese in 1991 and formed an import/export and marketing company, which shipped CDs to Japan. Upon information and belief, the other applicant for the '472, '700, '494 and '175 patents, Michael Berry ("Berry") obtained a bachelor's degree in Music and Astronomy in 1991, and later obtained a master's degree in Music Composition in 1997 in the San Francisco Bay Area. Upon information and belief, in the mid-1990s, neither of the applicants nor Blue Spike, Inc. was developing or selling any technology to identify content or signals based on the content or signal itself.

84. Upon information and belief, Moskowitz claims that he conceived of various inventions regarding "digital watermarking." Upon information and belief, in 1994, Moskowitz formed the DICE Company to develop a watermarking system called "Argent." Upon information and belief, he formed that company, which was based in Palo Alto, California, with Marc Cooperman, who had a technical background. Upon information and belief, Cooperman's job was to create a working digital watermarking system because Moskowitz had no technical ability to do so. Upon information and belief, Cooperman worked on this project between March 1995 and October 1996, but the two were unable to develop a working system. Thereafter, as alleged by Cooperman, Moskowitz took the existing assets and intellectual property of the DICE Company, without informing Cooperman, and ultimately moved them to a new company, called "Blue Spike, Inc.," thus freezing out Cooperman. These acts evidence Moskowitz's practice and strategy of appropriating intellectual property created by others and attempting to take and claim such for himself and Blue Spike, Inc., and as alleged further below, constitutes evidence of

18

Moskowitz's culpable intent in carrying out the same strategy later by withholding material prior art from the PTO.

85.     Cooperman sued Moskowitz and Blue Spike, Inc. in two different lawsuits. Moskowitz asserted in a pleading in federal court that "by October 1996, Cooperman had not completed any workable software of any type for DICE." Going into 1997, upon information and belief, Moskowitz was in litigation with Cooperman, had no technical person who could create any product for him, and lacking sufficient technical background to create such software systems, could not do it himself. As alleged further below, Moskowitz's difficulties in his business is evidence of Moskowitz's culpable motivation to later withhold material prior art from the PTO.

86.     Upon information and belief, at least as early as 1997, while Moskowitz's business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems. For example, upon information and belief, in the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology. At that time, upon information and belief, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server." Similarly, upon information and belief, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value, Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology. Upon information and belief, after his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997. As alleged further below, Moskowitz did not disclose the foregoing prior art to the PTO.

**The Applicants Failed To Disclose Known, Highly Material Prior Art To The Patent Office, With The Intent To Deceive**

87.     Upon information and belief, Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own, and the applicants derived ideas in their patent application from that prior art technology. On September 7, 2000, the applicants filed the application for the '472 patent—the earliest filed patent asserted by Blue Spike in this case. The applicants for the '472 Patent failed to disclose any Muscle Fish prior art technology to the examiner during prosecution of that patent. During prosecution of the '700, '494 and '175 patents, the applicants failed to disclose Muscle Fish public embodiments, systems and documents, which, upon information and belief, were known to them, including but not limited to, SoundFisher and the AIR DataBlade systems.

88.     During prosecution of the '472, '700, '494 and '175 patents, the applicants disclosed prior art related to digital watermarking or general technical principles, but did not disclose relevant prior art relating to content-based recognition of content and signals, despite the fact that, on information and belief, such was known to them. During prosecution of the '700, '494 and '175 patents, the later three patent applications, applicants filed an Information Disclosure Statement, disclosing the Muscle Fish '223 patent, but failed to disclose information and documents regarding Muscle Fish's implementations and commercial embodiments of that technology, despite the fact that, on information and belief, such was known to them. The applicants did not disclose the '223 patent during prosecution of the initial '472 patent. But for the failure to disclose prior art known to the applicants, the '472, '700, '494 and '175 patents would not have issued.

89.     Upon information and belief, the applicants' failure to disclose the foregoing information to the examiner was intended to deceive. For example, upon information and belief,

while the applicants were prosecuting the original '472 patent and before the '472 Patent issued, in February 2001, Blue Spike, Inc. approached Audible Magic about licensing the Muscle Fish prior art content-based recognition technology that was known to Blue Spike, Inc. years before the filing of the original '472 patent. In other words, the applicants were prosecuting a patent that Blue Spike now asserts is related to content-based recognition, at the same time that they were attempting to license prior art content-based recognition technology, because, upon information and belief, they did not have any such technology. Despite this affirmative knowledge and awareness of the Muscle Fish prior art, the applicants failed to disclose it to the PTO. This demonstrates intent to deceive.

90.     The fact that the applicants selectively withheld all Muscle Fish prior art in the initial '472 patent application and in later applications selectively disclosed only the Muscle Fish '223 patent, despite the fact that, upon information and belief, they knew about much more Muscle Fish prior art information, including commercial embodiments, is evidence that such failure to disclose was intended to deceive. Upon information and belief, the applicants intentionally or in bad faith withheld, concealed and/or mischaracterized the highly material prior art, with an intent to deceive the PTO. Upon information and belief, the applicants' knowledge and selective disclosure of the Muscle Fish patent in later prosecutions, despite knowledge of a much broader set of Muscle Fish prior art, demonstrates that the choice of what to disclose and what to withhold was deliberate.

91.     Upon information and belief, the prior art Muscle Fish technology, which predated the '472, '700, '494 and '175 patents and Blue Spike, Inc. by many years, was acquired by Audible Magic and Blue Spike purports to accuse the Muscle Fish technology in this case. This fact necessarily renders the prior art Muscle Fish technology highly material to prosecution

of the patents in suit, under Blue Spike's own theory. Despite the high level of materiality of the Muscle Fish prior art, the applicants intentionally withheld that information from the examiner, with the intent to deceive the examiner.

92.     During prosecution of the application leading to the '472 patent, the applicants distinguished over prior art by arguing in a November 22, 2004 response to office action that the patent claimed a signal identifier that is not embedded in the original signal. Upon information and belief, the Muscle Fish prior art disclosed a signal identifier that is not embedded in the original signal. If applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument. Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

93.     During prosecution of the application leading to the '700 patent, the applicants distinguished over prior art by arguing in an October 30, 2008 response to office action that the patent claimed identifying unknown signals, to distinguish over the prior art which allegedly disclosed identifying signals that were "already known." Upon information and belief, the Muscle Fish prior art disclosed identifying unknown signals. If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument. Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

94.     In the detailed description of the invention section of the '472, '700, '494 and '175 patents, the applicants affirmatively mischaracterized to the PTO the prior art, stating that the claimed invention was novel over the prior art watermarking systems because such watermarking required embedding an identifier into a signal, whereas the claimed invention could identify signals without embedding an identifier. Upon information and belief, the Muscle Fish prior art disclosed identifying a signal without embedding an identifier. If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have mischaracterized the prior art in this way. Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation in the detailed description of the invention is that it was made with intent to deceive the examiner.

95.     Upon information and belief, by the time that the applicants prosecuted the applications for the patents, they had previously been involved in patent prosecution activities and had worked in the area of content recognition. In particular, the sophistication of Moskowitz regarding patent prosecution and his prior involvement in this industry is evidence of the lack of an innocent explanation for withholding and mischaracterizing the Muscle Fish prior art and is evidence of culpable intent.

96.     During prosecution, the applicants signed and filed oaths with the Patent Office stating: "I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56." This explicit understanding of a duty to disclose material prior art is evidence of the lack of any credible explanation for withholding and mischaracterizing prior art and is evidence of culpable intent.

97.     Upon information and belief, Moskowitz was motivated to conceal the withheld prior art and intended to deceive the Patent Office. Upon information and belief, Moskowitz had strong financial and non-financial interests in obtaining the patents in suit. Upon information and belief, Moskowitz was motivated to conceal the withheld prior art, in order to obtain the patents, because the Blue Spike, Inc. digital watermarking business was failing and because its watermarking solution had not been adopted by a standards body working on a proposed digital watermarking industry standard, called "SDMI." Upon information and belief, according to an email from Blue Spike, Inc., the SDMI effort was "in the process of disintegrating." These economic and non-economic motivations to conceal prior art is evidence of the lack of a credible explanation for the withholding and mischaracterization of prior art and is evidence of culpable intent.

## COUNTERCLAIMS

Defendant and counterclaim-plaintiff Shazam, for its counterclaims against plaintiff and counterclaim-defendant Blue Spike LLC and counterclaim-defendants Blue Spike, Inc. and Scott A. Moskowitz, alleges as follows:

1.     Shazam incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

2.     Blue Spike's complaint has established an actual and justiciable controversy between Blue Spike LLC, Blue Spike, Inc., Scott A. Moskowitz and Shazam with respect to validity, infringement and unenforceability of the '175, '494, '700 or '472 patents (collectively, "the Blue Spike Asserted Patents"), and whether Blue Spike LLC, Blue Spike, Inc. and Scott A. Moskowitz have made false and misleading representations about such intellectual property rights.

3.      This Court has subject matter jurisdiction over Shazam's claims pursuant to 28 U.S.C. §§1331, 1332, 1338(a), 1367, 2201, 2202 and 15 U.S.C. §§ 1051, *et seq*.

4.      Shazam's false advertising and unfair competition claims arise under the Lanham Act, Title 15 of the United States Code.

5.      The exercise of personal jurisdiction and venue are proper as Counter-Defendants have availed themselves of this forum such that the exercise of jurisdiction over each would not offend traditional notions of fair play and substantial justice.

6.      Blue Spike, LLC is a Texas limited liability company, having its principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC can be served with process by serving its registered agent for service of process in the State of Texas, C T Corporation System, 350 North St. Paul St., Suite 2900, Dallas, TX 75201, and through its counsel of record in this action.

7.      Blue Spike, Inc. is a Florida corporation, having its principal place of business at 16711 Collins Avenue #3606, Sunny Isles Beach, FL 33160. Blue Spike, Inc. can be served with process by serving its registered agent for service of process in the State of Florida, C T Corporation System, 1200 South Pinke Island Road, Plantation, FL 33324 and through its counsel of record in this action.

8.      Scott A. Moskowitz is an individual, and principal of Blue Spike and Blue Spike, Inc., residing at 411 N. New River Drive East, Apt. 2204, Fort Lauderdale, FL 33301. Scott A. Moskowitz can be served with process by personally serving him at 411 N. New River Drive East, Apt. 2204, Fort Lauderdale, FL 33301, or any other location where he may be found, and through his counsel of record in this action.

## <u>COUNT ONE</u>

### (Violation Of The Lanham Act – 15 U.S.C. § 1125(a))

9.      Shazam incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

10.      Counter-Defendants make false and misleading statements regarding Shazam and its products and activities and Counter-Defendants and its products and activities.  Such false and misleading statements include, but are not limited to the following.

11.      In a first example, on the www.bluespike.com website, Blue Spike, Inc. published an article titled, "Shazam Has Hit a Spike in the Road . . ." A true and correct copy of the article is attached as Exhibit A.  The article includes a picture of the Shazam product and asks: "Does the patent match the technology in question? If so, a theft has occurred. So, does Blue Spike's patent match Shazam's software? (Spoiler Alert: The answer is 'Yes.')."  These commercial statements make false representations about Shazam or convey the misleading commercial impression to consumers that a theft has occurred and Blue Spike's patent matches Shazam's software.

12.      In a second example, the article attached as Exhibit A also states that "Blue Spike's CEO, Scott Moskowitz, has been an active author and public figure in the content management and monetization space, i.e. digital-watermarking or signal-recognition, since those technologies emerged, long before Shazam."  These commercial statements make false representations about Shazam and Counter-Defendants or convey the misleading commercial impression to consumers that Blue Spike's CEO, Scott Moskowitz, has been an active author and public figure in the content management and monetization space, i.e. digital-watermarking or signal-recognition, since those technologies emerged, long before Shazam.

13.     In a third example, the article attached as Exhibit A states "an infringement award worth 40+ million dollars is not out of the question…. Like many of Kleiner Perkins' budding start-ups, Shazam is continuing down the road to become public company. The hopeful startup needs to maintain a rosy reputation in order to achieve that goal. Unfortunately for Shazam, this rose doesn't have a thorn—it has a Blue Spike to deal with."  These commercial statements make false representations about Shazam or convey the misleading commercial impression to consumers that Shazam is liable for an infringement award worth 40+ million dollars.

14.     In a fourth example, also on the www.bluespike.com website, Blue Spike, Inc., Blue Spike and Moskowitz published an article titled "'Shazam' may have graduated from startup to verb, but Blue Spike patents threaten to make it past tense." A true and correct copy of the article is attached as Exhibit B.  This article states that Moskowitz and Blue Spike were the "first to create" content "fingerprinting" technology.  These commercial statements make false representations about Shazam or Counter-Defendants or convey the misleading commercial impression to consumers that Moskowitz was the first to invent fingerprinting technology.

15.     In a fifth example, the article attached as Exhibit B states that Shazam does not "own" its "technology…. if Shazam doesn't move quickly to minimize the damage, it may very well box itself into a coffin of borrowed technology, with Blue Spike acting as the proverbial nail."  These commercial statements make false representations about Shazam or convey the misleading commercial impression to consumers that Shazam does not own or borrows its technology.

16.     In a sixth example, on June 18, 2013, Blue Spike tweeted – posted a message or tweet to the commonly-used social network Twitter – "It's easier to copy than to #invent 'Shazam' may have graduated from startup to verb, but Blue Spike patents threaten to make it

past tense." A true and correct copy of Blue Spike's posting is attached as Exhibit C. These commercial statements make false representations about Shazam or convey the misleading commercial impression to consumers that Shazam copied Blue Spike technology.

17.     In a seventh example, Counter-Defendants have made statements in the article attached hereto as Exhibit A that "Shazam stole his signal abstracting technology to power its popular audio recognition application. Blue Spike claims it patented that technology, the same technology powering its own products such as The Giovanni® Abstraction Machine™." These commercial statements make false representations about Shazam or convey the misleading commercial impression to consumers that Shazam stole Blue Spike technology. These commercial statements make false representations about Counter-Defendants or convey the misleading commercial impression to consumers that Counter-Defendant's "The Giovanni® Abstraction Machine™" practices claims in the Blue Spike Asserted Patents.

18.     In an eighth example, Counter-Defendants have made statements in the article attached hereto as Exhibit B that "at least four of those patents specifically describe an abstracting process, also known as fingerprinting, that Shazam is now touting as its own. Moskowtiz [sic] claims this technology has powered his Blue Spike products since the turn of the century." These commercial statements make false representations about Shazam or convey the misleading commercial impression to consumers that Shazam stole Blue Spike technology. These commercial statements make false representations about Counter-Defendants or convey the misleading commercial impression to consumers that Counter-Defendant's "The Giovanni® Abstraction Machine™" practices claims in the Blue Spike Asserted Patents.

19.     The false and misleading statements in materials on Counter-Defendants' website and on the Twitter website, including but not limited to the examples listed above, are available

and accessible to Shazam's customers and potential customers. Counter-Defendants state or imply falsely and misleadingly, with no reasonable basis and, on information and belief, in bad faith that Counter-Defendants were first to invent "fingerprinting" technology, that Shazam did not invent its own technology, there is risk in using Shazam technology, that Counter-Defendants' product practices claims in the asserted patents, that Shazam stole Counter-Defendant's technology, that Shazam copied Counter-Defendants' technology, and that Shazam's products infringe claims of Blue Spike Asserted Patents.

20.     The false and misleading statements in materials on Counter-Defendants' website and on the Twitter website, including but not limited to the examples listed above constitute a false designation of origin, sponsorship, or approval and false description and representation as to the nature, characteristics, and/or qualities of Shazam's and Counter-Defendant's goods or services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

21.     The false and misleading statements in materials on Counter-Defendants' website and on the Twitter website, including but not limited to the examples listed above were designed and are likely to influence purchasing decisions.

22.     The goods or services promoted through the misleading statements on Counter-Defendants' website and on the Twitter website, including but not limited to, the examples listed above and Shazam's goods and services are being sold or offered for sale in interstate commerce.

23.     Counter-Defendants' false advertising, false representations, and acts of unfair competition have damaged or are likely to damage Shazam through various means, including but not limited to, lost sales, harm to reputation, and loss of goodwill in an amount to be determined at trial.

29

24.     Shazam has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

25.     As a result of their wrongful conduct, Counter-Defendants are liable to Shazam for violation of 15 U.S.C. § 1125(a), which provides in relevant part that a "person who, or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

26.     Shazam seeks injunctive relief and compensation and punitive damages in an amount to be proven at trial.

27.     Pursuant to 15 U.S.C. § 1117, Shazam is entitled to damages for Counter-Defendants' Lanham Act violations, an accounting of profits made by Counter-Defendant on sales of product and licensing activities, as well as recovery of the costs of this action.

28.     Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

29.     As a direct result of Counter-Defendants' actions, Shazam has suffered and continues to suffer irreparable harm for which Shazam has no adequate remedy at law, and which will continue unless Counter-Defendants' actions are enjoined, pursuant to 15 U.S.C. § 1116.

## SHAZAM'S PRAYER FOR RELIEF

FOR THESE REASONS, Shazam respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.    An order declaring that Blue Spike, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert with it, take nothing on the claims asserted in the Complaint against Shazam;

B.    A judgment dismissing Plaintiff's Complaint against Shazam with prejudice;

C.    A declaration that Shazam does not infringe, induce infringement, or contribute to any infringement of any valid and enforceable claim of the '175 patent;

D.    A declaration that Shazam does not infringe, induce infringement, or contribute to any infringement of any valid and enforceable claim of the '494 patent;

E.    A declaration that Shazam does not infringe, induce infringement, or contribute to any infringement of any valid and enforceable claim of the '700 patent;

F.    A declaration that Shazam does not infringe, induce infringement, or contribute to any infringement of any valid and enforceable claim of the '472 patent;

G.    A declaration that the claims of the '175 patent are invalid;

H.    A declaration that the claims of the '494 patent are invalid;

I.    A declaration that the claims of the '700 patent are invalid;

J.    A declaration that the claims of the '472 patent are invalid;

K.    A declaration that the '175 patent and all patents and patent applications based on and deriving from the '175 patent or its application are unenforceable;

L.    A declaration that the '494 patent and all patents and patent applications based on and deriving from the '494 patent or its application are unenforceable;

M.  A declaration that the '700 patent and all patents and patent applications based on and deriving from the '700 patent or its application are unenforceable;

N.  A declaration that the '472 patent and all patents and patent applications based on and deriving from the '472 patent or its application are unenforceable;

O.  A judgment that Blue Spike, Inc., Blue Spike, LLC and Scott A. Moskowitz are liable for violation of the Lanham Act;

P.  A preliminary injunction and thereafter a permanent injunction enjoining and restraining Blue Spike, Inc., Blue Spike LLC and Scott A. Moskowitz, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of violation of the Lanham Act;

Q.  A judgment awarding damages, including compensatory, consequential and incidental damages, for violation of the Lanham Act, according to proof;

R.  A judgment ordering disgorgement of any money, property, or the value of any other economic benefit that Blue Spike, Inc., Blue Spike, LLC and Scott A. Moskowitz received as a result of their conduct constituting violation of the Lanham Act;

S.  An award for damages pursuant to 15 U.S.C. § 1117;

T.  A judgment awarding punitive damages for violation of the Lanham Act;

U.  A finding that Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

V.    A judgment awarding interest as allowed by law for violation of the Lanham Act;

W.    A judgment awarding costs of suit, including all costs, fees and attorneys' fees, for violation of the Lanham Act;

X.    An order declaring that this is an exceptional case and awarding Shazam its costs, expenses, and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

Y.    Any such other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR A JURY TRIAL

Shazam demands a trial by jury on all issues so triable.


Date:  April 4, 2014                                      Respectfully submitted,

                                                         /s/  *Michael E. Jones*
                                                         _____

Josh A. Krevitt                                          Michael E. Jones
(NY Bar No. 2568228)                                     State Bar No. 10929400
Benjamin Hershkowitz                                     mikejones@potterminton.com
(NY Bar No. 2600559)                                     Allen F. Gardner
Joshua Furman                                            State Bar No. 24043679
(NY Bar No. 4612255)                                     allengardner@potterminton.com
R. Scott Roe                                             POTTER MINTON
(NY Bar No. 4480224)                                     A Professional Corporation
GIBSON, DUNN & CRUTCHER LLP                              110 N. College, Suite 500
200 Park Avenue                                          Tyler, TX 75702
New York, NY 10166                                       Tel: 903.597.8311
Ph. 212.351.4000                                         Fax: 903.593.0846
Fax: 212.351.6210
jkrevitt@gibsondunn.com
bhershkowitz@gibsondunn.com


                                                         *Counsel for Defendant*
                                                         *Shazam Entertainment Limited*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 4, 2014.

*/s/ Michael E. Jones*