# EXHIBIT A



| Art | Science | Technology | Company | Contact Us |

## Shazam Has Hit a Spike in the Road . . .

A Blue Spike to be exact. According to Blue Spike, LLC, a Texas based technology company, Shazam's infringement of its patent distills to this:



As an industry trailblazer, Blue Spike's CEO, Scott Moskowitz, has been an active author and public figure in the content management and monetization space, i.e. digital-watermarking or signal-recognition, since those technologies emerged, long before Shazam. A 1995 New York Times article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's The Dice Company as one of two leading software start-ups in this newly created field. Forbes interviewed Moskowitz for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. Moskowitz has also testified before the Library of Congress regarding the Digital Millennium Copyright Act. He is an innovator who has personally advanced these technologies.

Shazam is engaged with Moskowitz in a lawsuit alleging that Shazam stole his signal abstracting technology to power its popular audio recognition application. Blue Spike claims it patented that technology, the same technology powering its own products such as The Giovanni® Abstraction Machine™. Now Blue Spike is calling on the legal system to make things right.

Patents are the legal system's method of protecting inventors' novel creations. Acquiring patents isn't easy. Since the government is keen on ensuring only valid, worthy inventions make the cut, many patent applications are denied. It is a tribute to the contributions of Blue Spike's pioneering inventor that the US deemed it appropriate to issue Moskowitz's patents, now over 73 times. A patent owner earns the right to exclude others from making, using or offering to sell its claimed inventions. Instead of keeping the benefits of its innovations secret, Blue Spike shared its inventions publicly through the patent system in exchange for a monopoly of limited time, here until at least 2020.

Patent infringement hinges on one question: Does the patent match the technology in question? If so, a theft has occurred. So, does Blue Spike's patent match Shazam's software? (Spoiler Alert: The answer is "Yes.")

In order to determine if Shazam's technology matches Blue Spike's signal abstracting invention, let's dissect one of Blue Spike's patents. The '175 patent, for instance, repeatedly refers to "digital signal abstracts." The patent explains that a digital signal abstract is a smaller representation (an abstract) of a larger digital signal (such as a song or picture). This process is commonly referred to as "digital fingerprinting." In other words, just as a fingerprint can be used to represent a specific person, a digital fingerprint can represent a larger, more complex digital signal.

The magic behind Blue Spike's patented technology is this use of a small digital abstract rather than a large, raw digital source—using small abstracts saves search time and storage space. In particular, Blue Spike's patent contains the following characteristics:

1. A database built to hold digital fingerprints;
2. A way of creating digital fingerprints to be matched against;
3. A way of storing digital fingerprints in a database;
4. A way of sending new digital fingerprints to the database to be matched against digital fingerprints already stored.

When Shazam's software is analyzed against this patent, it doesn't take a specialist to recognize how clearly Shazam infringes. See for yourself:

| Blue Spike's Patent | Shazam's Software | Match? |
|---|---|---|
| A database built to hold digital fingerprints; | Shazam "can recognize any track that's in its ten million strong database."* | ✓ MATCH! |
| A way of creating digital fingerprints to be matched against; | "Each audio file is 'fingerprinted,' a process in which reproducible hash tokens are extracted."** | ✓ MATCH! |
| A way of storing digital fingerprints in a database; | Shazam "can recognize any track that's in its ten million strong database."* | ✓ MATCH! |
| A way of sending new digital fingerprints to the database to be matched against digital fingerprints already stored. | Shazam listens to an audio clip, sends a fingerprint of that clip to its database, and analyzes it to determine if a match exists. | ✓ MATCH! |
| Does Blue Spike's Patent Match Shazam? | YES | |

There's no denying a match exists. Whether purposefully, as alleged by Blue Spike, or inadvertently, Shazam has infringed Blue Spike's patent. Should a jury in the Eastern District of Texas agree, an infringement award worth 40+ million dollars is not out of the question. After all, Shazam recently paid millions to repurchase limited rights to just a handful of patents.

Like many of Kleiner Perkins' budding start-ups, Shazam is continuing down the road to become public company. The hopeful startup needs to maintain a rosy reputation in order to achieve that goal. Unfortunately for Shazam, this rose doesn't have a thorn—it has a Blue Spike to deal with.

Blue Spike, LLC v. Shazam Entertainment Ltd, Case No. 6:12-cv-500 (E.D. Tex. 2012). The most recent document filed October 22, 2012 was Shazam's answer to Blue Spike's complaint. Shazam asserted no counterclaims.

Blue Spike is represented by Garteiser Honea – IP Trial Attorneys.

Shazam is represented by Gibson, Dunn & Crutcher LLP.

* Shazam's website: http://www.shazam.com/music/web/help.html.

** Article by Shazam's cofounder: http://www.ee.columbia.edu/%7Edpwe/papers/Wang03-shazam.pdf

| Sitemap | Art | Science | Technology | Company | Contact Us |

Copyright © 1997-2013 Blue Spike, Inc. Giovanni, Scrambler, the Blue Spike logo, and the Giovanni logo are trademarks of Blue Spike, Inc. "Didya Use Protection," "Digi Use Protection" and "recognition, recognition, recognition" are also trademarks of Blue Spike, Inc. "Blue Spike" and "Giovanni" are registered trademarks. All other trademarks are the property of their respective owners. The Company reserves the right to make alterations or amendments to the information in this document and/or product specifications at its discretion. No freedom to use patents or other intellectual property rights is implied by the publication of materials on this Web site or to off-site documents to which it directs readers. Send comments and suggestions to webmaster@bluespike.com .