**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | Civil Action No. 6:12-CV-499-MHS |
| _Plaintiff_, | § § | |
| v. | § § | (LEAD CASE) |
| TEXAS INSTRUMENTS, INC. | § § | |
| _Defendants_. | § § § | JURY TRIAL DEMANDED |
| | § | |
| BLUE SPIKE, LLC, | § § | |
| _Plaintiff_ | § § | |
| v. | § § | Civil Action No. 6:12-CV-576-MHS |
| AUDIBLE MAGIC CORPORATION, ET AL. | § § § | (CONSOLIDATED WITH 6:12-CV-499) JURY TRIAL DEMANDED |
| _Defendants_ | § § § | |
| AUDIBLE MAGIC CORPORATION, | § § | |
| _Counterclaim Plaintiff_ | § § | |
| v. | § § | |
| BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ | § § § | |
| _Counterclaim Defendants_ | § | |

## AUDIBLE MAGIC CORPORATION'S SECOND AMENDED ANSWER TO BLUE SPIKE LLC'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS AGAINST BLUE SPIKE LLC, BLUE SPIKE, INC AND SCOTT A. MOSKOWITZ

Defendant Audible Magic Corporation ("Audible Magic") answers the Original

Complaint of Blue Spike LLC ("Blue Spike") as follows:

### NATURE OF THE SUIT

1.     The allegations in this paragraph state a legal conclusion to which no response is

required.   To the extent a response is deemed to be required, Audible Magic admits that paragraph 1 purports to assert a claim arising under the patent laws of the United States, Title 35 of the United States Code, and in all other respects denies the allegations of paragraph 1.

## PARTIES

2.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies them.

3.      Audible Magic admits that it is a California corporation and has a principal place of business at 985 University Avenue, Suite 35, Los Gatos, California 95032.  Audible Magic admits that it has appointed CAL Title-Search, Inc., located at 1005 12th Avenue, Suite E, Sacramento, California 95814 as its agent for service of process.  Audible Magic denies that it does business in the State of Texas or in the Eastern District of Texas.  Except as expressly admitted, Audible Magic denies the remaining allegations of paragraph 3.

4.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies them.

5.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies them.

6.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore denies them.

7.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies them.

8.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

11.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies them.

12.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

13.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies them.

14.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies them.

15.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies them.

16.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies them.

17.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies them.

18.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies them.

19.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19, and therefore denies them.

20.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies them.

21.     Audible Magic is without knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 21, and therefore denies them.

22.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore denies them.

23.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23, and therefore denies them.

24.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, and therefore denies them.

25.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, and therefore denies them.

26.      Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26, and therefore denies them.

## JURISDICTION AND VENUE

27.      The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Audible Magic admits that the Complaint purports to be an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq*.  Audible Magic admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1338(a) and 1331.  Except as expressly admitted, Audible Magic denies the remaining allegations of paragraph 27 that are directed to Audible Magic.

28.      The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Audible Magic denies that it is subject to the personal jurisdiction of this Court.  Audible Magic does not waive any argument that this Court lacks jurisdiction over Audible Magic by filing this answer.  Audible Magic denies that it has committed, contributed to, or induced any act of infringement.  Audible Magic

denies the remaining allegations of paragraph 28 that are directed to Audible Magic.  Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 that are directed to other defendants, and therefore denies them.

29.     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Audible Magic denies that venue is proper in the Tyler Division of the Eastern District of Texas, and denies that this judicial district is the most convenient forum for the parties and witnesses or in the interests of justice.  By filing this answer, Audible Magic does not waive any argument that venue is not proper in this District as to Audible Magic.  Audible Magic denies that it has committed any act of infringement.  Audible Magic denies the remaining allegations of paragraph 29 that are directed to Audible Magic.  Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 that are directed to other defendants, and therefore denies them.

## JOINDER

30.     The allegations in this paragraph state a legal conclusion to which no response is required.   To the extent a response is deemed to be required, Audible Magic denies the allegations of paragraph 30 that are directed to Audible Magic.  Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 that are directed to other defendants, and therefore denies them.

## FACTUAL BACKGROUND

31.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31, and therefore denies them.

32.     Audible Magic is without knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 32, and therefore denies them.

33.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33, and therefore denies them.

34.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies them.

35.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35, and therefore denies them.

36.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36, and therefore denies them.

37.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37, and therefore denies them.

38.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38, and therefore denies them.

39.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39, and therefore denies them.

40.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40, and therefore denies them.

41.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41, and therefore denies them.

42.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42, and therefore denies them.

43.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43, and therefore denies them.

44.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44, and therefore denies them.

45.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45, and therefore denies them.

46.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46, and therefore denies them.

47.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47, and therefore denies them.

48.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48, and therefore denies them.

49.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49, and therefore denies them.

50.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50, and therefore denies them.

51.     Audible Magic admits that it has products called Live TViD, SmartSync, CopySense, SmartID, Audini and Automated Content Recognition (ACR).  Audible Magic denies that it has committed any act of infringement.  Audible Magic denies the remaining allegations of paragraph 51.

52.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52, and therefore denies them.

53.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53, and therefore denies them.

54.     Audible Magic is without knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 54, and therefore denies them.

55.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55, and therefore denies them.

56.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56, and therefore denies them.

57.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57, and therefore denies them.

58.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58, and therefore denies them.

59.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59, and therefore denies them.

60.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60, and therefore denies them.

61.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61, and therefore denies them.

62.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62, and therefore denies them.

63.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63, and therefore denies them.

64.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64, and therefore denies them.

65.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65, and therefore denies them.

66.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66, and therefore denies them.

67.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67, and therefore denies them.

68.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68, and therefore denies them.

69.     Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 69, and therefore denies them.

70.     Audible Magic denies that it has committed any act of infringement.  Audible Magic denies the remaining allegations of paragraph 70 that are directed to Audible Magic. Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 that are directed to other defendants, and therefore denies them.

71.     Audible Magic denies that a license for any of Blue Spike's patented technologies is necessary.  Audible Magic admits that it has not sought a license from Blue Spike.  Audible Magic denies the remaining allegations of paragraph 71 that are directed to Audible Magic. Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 that are directed to other defendants, and therefore denies them.

72.     Audible Magic denies that it has committed any act of infringement.  Audible Magic denies the remaining allegations of paragraph 72 that are directed to Audible Magic. Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 that are directed to other defendants, and therefore denies them.

## COUNT 1

## INFRINGEMENT OF U.S. PATENT NO. 8,214,175

73.     Audible Magic incorporates by reference its responses to paragraphs 1 through 72

above.

74.     Audible Magic admits that, on its face, U.S. Patent No. 8,214,175 ("the '175 patent") is titled "Method and Device for Monitoring and Analyzing Signals."   Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 74, and therefore denies them.

75.     Audible Magic admits that, on its face, the '175 patent states that it was issued on July 3, 2012.   Audible Magic admits that the '175 patent is attached as Exhibit A to the complaint.  Audible Magic denies the remainder of the allegations of paragraph 75.

76.     Audible Magic denies the allegations of paragraph 76.

77.     Audible Magic denies the allegations of paragraph 77.

78.     Audible Magic denies the allegations of paragraph 78.

79.     Audible Magic denies the allegations of paragraph 79.

80.     Audible Magic denies the allegations of paragraph 80.

## COUNT 2

## INFRINGEMENT OF U.S. PATENT NO. 7,949,494

81.     Audible Magic incorporates by reference its responses to paragraphs 1 through 80 above.

82.     Audible Magic admits that, on its face, U.S. Patent No. 7,949,494 ("the '494 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 82, and therefore denies them.

83.     Audible Magic admits that, on its face, the '494 patent states that it was issued on May 24, 2011.   Audible Magic admits that the '494 patent is attached as Exhibit B to the complaint.  Audible Magic denies the remainder of the allegations of paragraph 83.

84.     Audible Magic denies the allegations of paragraph 84.

85.     Audible Magic denies the allegations of paragraph 85.

86.     Audible Magic denies the allegations of paragraph 86.

87.     Audible Magic denies the allegations of paragraph 87.

88.     Audible Magic denies the allegations of paragraph 88.

## COUNT 3

## INFRINGEMENT OF U.S. PATENT NO. 7,660,700

89.     Audible Magic incorporates by reference its responses to paragraphs 1 through 88 above.

90.     Audible Magic admits that, on its face, U.S. Patent No. 7,660,700 ("the '700 patent") is titled "Method and Device for Monitoring and Analyzing Signals." Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 90, and therefore denies them.

91.     Audible Magic admits that, on its face, the '700 patent states that it was issued on February 9, 2010. Audible Magic admits that the '700 patent is attached as Exhibit C to the complaint. Audible Magic denies the remainder of the allegations of paragraph 91.

92.     Audible Magic denies the allegations of paragraph 92.

93.     Audible Magic denies the allegations of paragraph 93.

94.     Audible Magic denies the allegations of paragraph 94.

95.     Audible Magic denies the allegations of paragraph 95.

96.     Audible Magic denies the allegations of paragraph 96.

## COUNT 4

## INFRINGEMENT OF U.S. PATENT NO. 7,346,472

97.     Audible Magic incorporates by reference its responses to paragraphs 1 through 96

above.

98.     Audible Magic admits that, on its face, U.S. Patent No. 7,346,472 ("the '472 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Audible Magic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 98, and therefore denies them.

99.     Audible Magic admits that, on its face, the '472 patent states that it was issued on March 18, 2008.  Audible Magic admits that the '472 patent is attached as Exhibit D to the complaint.  Audible Magic denies the remainder of the allegations of paragraph 99.

100.    Audible Magic denies the allegations of paragraph 100.

101.    Audible Magic denies the allegations of paragraph 101.

102.    Audible Magic denies the allegations of paragraph 102.

103.    Audible Magic denies the allegations of paragraph 103.

104.    Audible Magic denies the allegations of paragraph 104.

## REQUEST FOR RELIEF

Audible Magic incorporates by reference its responses to paragraphs 1 through 104 above.  Audible Magic denies that Blue Spike is entitled to any relief whatsoever against Audible Magic in this action, either as prayed for in the Original Complaint or otherwise.

Except as expressly admitted above, Audible Magic denies each and every allegation contained in the Original Complaint.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Forum Non Conveniens)

1.     The Eastern District of Texas is an inconvenient forum in which to litigate this action against Audible Magic under 28 U.S.C. § 1404(a).

## SECOND AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

2.     The Original Complaint for Patent Infringement fails to state a claim on which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

### (Non-infringement)

3.     Audible Magic has not and does not willfully or otherwise infringe, contribute to the infringement of, or actively induce others to infringe, any claim of the '175, '494, '700 or '472 patents.

## FOURTH AFFIRMATIVE DEFENSE

### (Invalidity)

4.     The '175, '494, '700 or '472 patents, including all of the claims, are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103, and 112.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mark)

5.     Prior to receiving a copy of the complaint in this action, Audible Magic did not have notice of Blue Spike's allegations of infringement.  Upon information and belief, neither Blue Spike nor Blue Spike's licensees have marked instrumentalities that embody any of the claims of the '175, '494, '700 or '472 patents with proper notice of the patents in compliance with 35 U.S.C. § 287.  Blue Spike is not entitled to any pre-filing damages pursuant to 35 U.S.C. § 287 for any claims to which 35 U.S.C. § 287 applies.

## SIXTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

6.      Based on proceedings before the United States Patent and Trademark Office ("PTO") during the prosecution of the application that ultimately issued as the '175, '494, '700 or '472 patents, Blue Spike is precluded or otherwise estopped from asserting any construction of the claims of the '175, '494, '700 or '472 patents that is inconsistent with its or its predecessor(s)-in-interest's representations before the PTO.   On information and belief, Blue Spike is estopped from asserting any construction of the claims sufficiently broad to cover or include any product made, used, sold, offered for sale within the United States, or imported into the United States, by Audible Magic.

## SEVENTH AFFIRMATIVE DEFENSE

### (Laches, Waiver, Acquiescence, Estoppel, and Unclean Hands)

7.      Blue Spike's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, acquiescence, estoppel, and/or unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

### (Limitation on Damages and Remedies)

8.      Blue Spike's claims and prayer for relief are barred in whole or in part by 35 U.S.C. §§ 286, 287, and/or 288.

## NINTH AFFIRMATIVE DEFENSE

### (Unavailability of Injunctive Relief)

9.      Blue Spike is not entitled to injunctive relief or any other equitable relief because any alleged injury to Blue Spike is not irreparable and because – had Blue Spike been injured – it would have an adequate remedy at law.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Standing/Failure to Join Necessary Party)

10.     Blue Spike lacks standing to bring a patent infringement action based on the '175,

'494, '700 or '472 patents and/or has failed to join a necessary party under Fed. R. Civ. P. 19.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Single Recovery Rule)

11.     Plaintiff's damages are barred in whole or in part by the single recovery rule.

## TWELFTH AFFIRMATIVE DEFENSE

### (License/Implied License/Patent Exhaustion)

12.     Plaintiff's damages are barred in whole or in part by the defenses of license, implied license, and/or patent exhaustion.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Unenforceability of '472, '700, '494 and '175 Patents Due to Inequitable Conduct)

13.     The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

14.     During prosecution of the '472, '700, '494 and '175 patents, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and which they knew or should have known would have been important to a reasonable examiner.  Upon information and belief, the applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.

### The Counter-Defendants Knew Of Highly Material Prior Art, Including Prior Art Of Audible Magic And Its Predecessor Company Muscle Fish LLC

15.     The applicants of the '472, '700, '494 and '175 patents knew of an enormous amount of highly material prior art regarding content identification technologies.  Despite having full knowledge of this material prior art, the applicants did not share any of it with the PTO. Prior to filing and issuance of the '472, '700, '494 and '175 patents, the applicants investigated

products or services that competed with or were otherwise relevant to the business of applicant Scott Moskowitz ("Moskowitz") and his company Blue Spike, Inc. ("Blue Spike, Inc.") and to the patent claims being drafted by the applicants. The applicants investigated products and services that carried out the monitoring, analysis and recognition of digital information and signals, including products and services that used content-based fingerprints in order to identify content or signals.

16.     Prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were aware of prior art technology and systems of Audible Magic's predecessor company, a consulting company called Muscle Fish, LLC ("Muscle Fish"). Prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were also aware of prior art technology and systems of Audible Magic.

17.     Muscle Fish was founded in Berkeley, California, in 1992, by engineers, mathematicians and musicians Erling Wold, Doug Keislar, Thom Blum and Jim Wheaton. These were some of the most experienced and brightest audio technologists in the world. They had worked with signal processing and sound technologies from the late 1970s through the early 1990s. By 1992, these gentlemen had advanced degrees in electrical engineering, computer science and computer applications to music synthesis. They had extensive experience with acoustic models, signal processing, parameter estimation, non-linear and applied mathematics, software engineering, computer architecture, circuit design and computer music. One co-founded the Computer Music Association. Another conducted psycho-acoustical research at Stanford's Center for Computer Research in Music and Acoustics ("CCRMA"). All had been engineers for years at a variety of companies, including Yamaha Music Technologies, developing new music analysis and synthesis techniques.

18.     Beginning in 1992, the Muscle Fish engineers worked on systems for analyzing content and signals.  In the 1990s, the Muscle Fish engineers designed a system for looking up and comparing known and unknown content based on a set of features of content called "MFCCs."  The Muscle Fish engineers published papers about this technology.  For example, on July 20, 1995, they published a paper, "Audio Databases with Content-Based Retrieval," about MFCC-based fingerprints and presented it in August 1995 at the IJCAI Workshop on Intelligent Multimedia and also in September 1995, at the International Computer Music Conference.  In January and May 1996, respectively, they gave talks to IBM and to the CCRMA called "Content-Based Classification, Search, and Retrieval of Audio."   In 1996, Muscle Fish filed application No. 08/681,174 on aspects of its MFCC-based fingerprinting technology.   A continuation-in-part application was filed on July 21, 1997, resulting in the issuance of U.S. Patent No. 5,918,223 ('223 Patent) on aspects of the MFCC-based technology on June 29, 1999.

19.     In the 1990s, interest in Muscle Fish's pioneering content recognition system was very high and the technology was known in the industry.  Muscle Fish disclosed, marketed and sold its technology and systems to numerous companies, including database companies, advertising companies, content owners, performing rights societies, search engines, websites, online music stores, sound effects designers and musicians and multimedia companies.  Muscle Fish offered standard code libraries and also developed custom implementations for its clients. These products went under various names, including the Muscle Fish "content-based recognition" system, "CBR," "cbrStream," "SoundFisher" and other names.  A demo of the content-based recognition technology was available on Muscle Fish's website.  Muscle Fish publicized implementations of these technologies, including Audio Information Retrieval (AIR) DataBlade module for INFORMIX Universal Server, the Video Cataloger product by Virage,

Inc., The Bulldog Group's media asset management system, R2, SURF and EAR among others. The applicants for the '472, '700, '494 and '175 patents were aware of Muscle Fish technologies and implementations in the mid-1990s, but did not disclose them to the PTO.

20.     In 2000, Muscle Fish was merged into another company called Audible Magic Corp.  Audible Magic Corp. had been formed in 1999 and was originally known as Wired Air, LLC.   In 2000 Audible Magic Corp. acquired all of Muscle Fish's intellectual property, technology, contracts, assets and employees, and all rights therein.  In 1999 and 2000, Audible Magic implemented the Muscle Fish technology in a content recognition system, one implementation of which was called "Clango."  On February 17, 2000, Audible Magic filed the application for U.S. Patent No. 6,834,308, entitled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device," which issued on December 21, 2004.  Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of the Audible Magic technologies, but did not disclose them to the PTO.

21.     In 1992, by contrast to the extensive technical experience of the Muscle Fish engineers, upon information and belief, Scott Moskowitz ("Moskowitz"), one of the applicants for the '472, '700, '494 and '175 patents, had only worked in a low-level business role at Sony Japan in the late 1980s, obtained a bachelor's degree in Political Science, Finance and Japanese in 1991 and formed an import/export and marketing company, which shipped CDs to Japan.  The other applicant for the '472, '700, '494 and '175 patents, Michael Berry ("Berry") obtained a bachelor's degree in Music and Astronomy in 1991, and later obtained a master's degree in Music Composition in 1997 in the San Francisco Bay Area.  Upon information and belief, in the mid-1990s, neither of the applicants nor Blue Spike, Inc. were developing or selling any technology to identify content or signals based on the content or signal itself.

22.     Moskowitz claims that he conceived of various inventions regarding "digital watermarking."  In 1994, Moskowitz formed the DICE Company to develop a watermarking system called "Argent."  He formed that company, which was based in Palo Alto, California, with Marc Cooperman, who had a technical background.  Cooperman's job was to create a working digital watermarking system because Moskowitz had no technical ability to do so. Cooperman worked on this project between March 1995 and October 1996, but the two were unable to develop a working system.  Thereafter, as alleged by Cooperman, Moskowitz took the existing assets and intellectual property of the DICE Company, without informing Cooperman, and ultimately moved them to a new company, called "Blue Spike, Inc.," thus freezing out Cooperman.  These acts evidence Moskowitz's practice and strategy of appropriating intellectual property created by others and attempting to take and claim such for himself and Blue Spike, Inc., and as alleged further below, constitutes evidence of Moskowitz's culpable intent in carrying out the same strategy later by withholding material prior art from the PTO and misappropriating intellectual property of Muscle Fish and Audible Magic.

23.     Cooperman sued Moskowitz and Blue Spike, Inc. in two different lawsuits. Moskowitz asserted in a pleading in federal court that "by October 1996, Cooperman had not completed any workable software of any type for DICE."  Going into 1997, upon information and belief, Moskowitz was in litigation with Cooperman, had no technical person who could create any product for him, and lacking sufficient technical background to create such software systems, could not do it himself.  As alleged further below, Moskowitz's difficulties in his business is evidence of Moskowitz's culpable motivation to later withhold material prior art from the PTO and misappropriate intellectual property of Muscle Fish and Audible Magic.

24.     Upon information and belief, at least as early as 1997, while Moskowitz's

business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems.  For example, in the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology.  At that time, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server."  Similarly, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value, Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology.  After his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997.  As alleged further below, Moskowitz did not disclose the foregoing prior art to the PTO.

25.    Muscle Fish expended tremendous resources to cultivate and develop valuable information and intellectual property, including source code and other intellectual property. Muscle Fish spent significant time, effort and money to develop valuable business trade secrets including, but not limited to source code, algorithms, ideas, formulas, designs, business plans, schematics, specifications, descriptions, prototypes and designs and other confidential intellectual property relating to content-based recognition technologies, systems and business. The development and use of such information enabled Muscle Fish and its successor Audible Magic to succeed in a competitive industry.

26.    Moskowitz and Blue Spike, Inc. were aware of Muscle Fish's content-based recognition technology, were struggling to develop Blue Spike, Inc.'s watermarking technology and, upon information and belief, believed that content-based recognition technology was a superior solution for identifying content than digital watermarking systems.

## The Counter-Defendants Failed To Disclose Known, Highly Material Prior Art To The Patent Office, With The Intent To Deceive

27.     Upon information and belief, Moskowitz and Blue Spike, Inc. obtained and used Muscle Fish's information regarding its content based recognition technology and ideas. Counter-Defendants' use of the Muscle Fish information, technology and ideas was without Muscle Fish's or Audible Magic's authorization or consent.  Counter-Defendants' unauthorized use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas has caused irreparable harm to Muscle Fish and Audible Magic and caused them to suffer damages. Upon information and belief, Counter-Defendants have profited unfairly from their unauthorized use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas. Counter-Defendants' use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas, coupled with the applicants' failure to disclose material public Muscle Fish and Audible Magic prior art, constitutes evidence of culpable intent.  This activity was carried out to the benefit of Moskowitz and Blue Spike, Inc. and to the injury of Muscle Fish and Audible Magic.

28.     Upon information and belief, Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology. On September 7, 2000, the applicants filed the application for the '472 patent—the oldest patent asserted by Blue Spike in this case.  They failed to disclose any Muscle Fish prior art technology to the examiner during prosecution of that patent.  During prosecution of the '700, '494 and '175 patents, the applicants failed to disclose Muscle Fish public embodiments, systems and documents, which were known to them, including but not limited to SoundFisher and the AIR

Datablade systems.

29.     Filing of patent applications including ideas derived from the undisclosed Muscle Fish prior art was carried out to the benefit of Counter-Defendants and to the injury of Muscle Fish and Audible Magic.

30.     During prosecution of the '472, '700, '494 and '175 patents, the applicants disclosed prior art related to digital watermarking or general technical principles, but did not disclose relevant prior art relating to content-based recognition of content and signals, despite the fact that such was known to them.  During prosecution of the '700, '494 and '175 patents, the later three patent applications, applicants filed an Information Disclosure Statement, disclosing the Muscle Fish '223 patent, but failed to disclose information and documents regarding Muscle Fish's implementations and commercial embodiments of that technology, despite the fact that such was known to them.  The applicants did not disclose the '223 patent during prosecution of the initial '472 patent.  But for the failure to disclose prior art known to the applicants, the '472, '700, '494 and '175 patents would not have issued.

31.     Upon information and belief, the applicants' failure to disclose the foregoing information to the examiner was intended to deceive.  For example, while applicants were prosecuting the original '472 patent, in February 2001, Blue Spike, Inc. approached Audible Magic about licensing the Muscle Fish prior art content-based recognition technology that was known to Blue Spike, Inc. years before the filing of the original '472 patent.  In other words, the applicants were prosecuting a patent that Blue Spike now asserts is related to content-based recognition, at the same time that they were attempting to license prior art content-based recognition technology, because, upon information and belief, they did not have any such technology.  Despite this affirmative knowledge and awareness of the Muscle Fish prior art, the

applicants failed to disclose it to the PTO.  This demonstrates intent to deceive.

32.     The fact that the applicants selectively withheld all Muscle Fish prior art in the initial '472 patent application and in later applications selectively disclosed only the Muscle Fish '223 patent, despite the fact that they knew about much more Muscle Fish prior art information, including commercial embodiments, is evidence that such failure to disclose was intended to deceive.  Upon information and belief, the applicants intentionally or in bad faith withheld, concealed and/or mischaracterized the highly material prior art, with an intent to deceive the PTO.  The applicants' knowledge and selective disclosure of the Muscle Fish patent in later prosecutions, despite knowledge of a much broader set of Muscle Fish prior art, demonstrates that the choice of what to disclose and what to withhold was deliberate.

33.     The prior art Muscle Fish technology, which pre-dated the '472, '700, '494 and '175 patents and Blue Spike, Inc. by many years, was acquired by Audible Magic and Blue Spike purports to accuse the Muscle Fish technology in this case.  This fact necessarily renders the prior art Muscle Fish technology highly material to prosecution of the patents in suit, under Blue Spike's own theory.  Despite the high level of materiality of the Muscle Fish prior art, the applicants intentionally withheld that information from the examiner, with the intent to deceive the examiner.

34.     During prosecution of the application leading to the '472 patent, the applicants distinguished over prior art by arguing in a November 22, 2004 response to office action that the patent claimed a signal identifier that is not embedded in the original signal.  The Muscle Fish prior art disclosed a signal identifier that is not embedded in the original signal.  If applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument.  Thus, the Muscle Fish prior art would have been highly material to a reasonable

examiner.  Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

35.     During prosecution of the application leading to the '700 patent, the applicants distinguished over prior art by arguing in an October 30, 2008 response to office action that the patent claimed identifying unknown signals, to distinguish over the prior art which allegedly disclosed identifying signals that were "already known."  The Muscle Fish prior art disclosed identifying unknown signals.  If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument.  Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner.  Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

36.     In the detailed description of the invention section of the '472, '700, '494 and '175 patents, the applicants affirmatively mischaracterized to the PTO the prior art, stating that the claimed invention was novel over the prior art watermarking systems because such watermarking required embedding an identifier into a signal, whereas the claimed invention could identify signals without embedding an identifier.  The Muscle Fish prior art disclosed identifying a signal without embedding an identifier.  If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have mischaracterized the prior art in this way.  Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner. Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation in the detailed description of the invention is that it was made with intent to deceive the examiner.

37.     By the time that the applicants prosecuted the applications for the patents, they had previously been involved in patent prosecution activities and had worked in the area of content recognition.  In particular, the sophistication of Moskowitz regarding patent prosecution and his prior involvement in this industry is evidence of the lack of an innocent explanation for withholding and mischaracterizing the Muscle Fish prior art and is evidence of culpable intent.

38.     During prosecution, the applicants signed and filed oaths with the Patent Office stating:  "I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56."  This explicit understanding of a duty to disclose material prior art is evidence of the lack of any credible explanation for withholding and mischaracterization of prior art and is evidence of culpable intent.

39.     Upon information and belief, Moskowitz was motivated to conceal the withheld prior art and intended to deceive the Patent Office.  Upon information and belief, Moskowitz had strong financial and non-financial interests in obtaining the patents in suit.  Upon information and belief, Moskowitz was motivated to conceal the withheld prior art, in order to obtain the patents, because the Blue Spike, Inc. digital watermarking business was failing and because its watermarking solution had not been adopted by a standards body working on a proposed digital watermarking industry standard, called "SDMI."  According to an email from Blue Spike, Inc., the SDMI effort was "in the process of disintegrating."  These economic and non-economic motivations to conceal prior art is evidence of the lack of a credible explanation for the withholding and mischaracterization of prior art and is evidence of culpable intent.

## **COUNTERCLAIMS**

Defendant and counterclaim-plaintiff Audible Magic, for its counterclaims against plaintiff and counterclaim-defendant Blue Spike LLC and counterclaim-defendants Blue Spike,

Inc. and Scott A. Moskowitz, alleges as follows:

1.      Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

2.      Blue Spike's complaint has established an actual and justiciable controversy between Blue Spike LLC, Blue Spike, Inc., Scott A. Moskowitz and Audible Magic with respect to validity, infringement and unenforceability of the '175, '494, '700 or '472 patents (collectively, "the Blue Spike Asserted Patents"), the ownership of the technology set forth in the Blue Spike Asserted Patents, whether Blue Spike LLC, Blue Spike, Inc. and Scott A. Moskowitz have taken intellectual property of Audible Magic and its predecessor company Muscle Fish, have made false and misleading representations about such intellectual property rights and whether Blue Spike, LLC's and Blue Spike, Inc.'s technology infringes upon the intellectual property of Audible Magic.

3.      This Court has subject matter jurisdiction over Audible Magic's claims pursuant to 28 U.S.C. §§1331, 1332, 1338(a), 1367, 2201, 2202 and 15 U.S.C. §§ 1051, *et seq*.

4.      Audible Magic's patent infringement counterclaims arise under the patent laws of the United States, Title 35 of the United States Code and its false advertising and unfair competition claims arise under the Lanham Act, Title 15 of the United States Code.

5.      The exercise of personal jurisdiction and venue are proper as Counter-Defendants have availed themselves of this forum such that the exercise of jurisdiction over each would not offend traditional notions of fair play and substantial justice.  Acts giving rise to the counterclaims herein have occurred in the Northern District of California.

6.      Audible Magic brings these counterclaims without waiving its right to argue that venue in the Eastern District of Texas is improper and inconvenient.

7.     Blue Spike, LLC is a Texas limited liability company, having its principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703.  Blue Spike, LLC can be served with process by serving its registered agent for service of process in the State of Texas, C T Corporation System, 350 North St. Paul St., Suite 2900, Dallas, TX 75201, and through its counsel of record in this action.

8.     Blue Spike, Inc. is a Florida corporation, having its principal place of business at 16711 Collins Avenue #3606, Sunny Isles Beach, FL 33160.  Blue Spike, Inc. can be served with process by serving its registered agent for service of process in the State of Florida, C T Corporation System, 1200 South Pinke Island Road, Plantation, FL 33324 and through its counsel of record in this action.

9.     Scott A. Moskowitz is an individual, and principal of Blue Spike and Blue Spike, Inc., residing at 411 N. New River Drive East, Apt. 2204, Fort Lauderdale, FL 33301.  Scott A. Moskowitz can be served with process by personally serving him at 411 N. New River Drive East, Apt. 2204, Fort Lauderdale, FL 33301, or any other location where he may be found, and through his counsel of record in this action.

10.    On December 21, 2004, United States Patent Number 6,834,308 ("the '308 Patent"), titled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device" was duly and lawfully issued by the United States Patent and Trademark Office. A true and correct copy of the '308 Patent, as issued, is attached as Exhibit A.

11.    Audible Magic is the assignee of the '308 Patent and holds the right to sue for and recover all damages and remedies for infringement, including damages for past infringement and injunctive relief.

12.    Without a license or permission from Audible Magic, Blue Spike and Blue Spike,

Inc. have been and are importing, making, having made, made on their behalf, designing, offering for sale, and/or selling, without license or authority, products, software and devices for the identification of content or signals, including, without limitation, "The Giovanni® Abstraction Machine™" (collectively "Accused Blue Spike Products") throughout the United States, which infringe one or more claims of the '308 Patent.

13.     Counter-Defendants make false and misleading statements regarding the "The Giovanni® Abstraction Machine™," about Counter-Defendants and about Counter-Defendants' activities.  Such false and misleading statements include, but are not limited to the following.  On the www.bluespike.com website, Blue Spike, Inc., Blue Spike and Moskowitz state that Moskowitz and Blue Spike was the "first to create" content "fingerprinting" technology.  These statements in commerce and in commercial advertising constitute a false and misleading description of fact and a false and misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and qualities of goods, services and commercial activities.

14.     These false and misleading statements in materials on Counter-Defendants' website are available and accessible to Audible Magic's customers and potential customers. Counter-Defendants state or imply falsely and misleadingly that there is risk in using technology of parties other than Counter-Defendants, including Audible Magic and others.  As detailed herein, the facts are contrary to Counter-Defendants' false and misleading statements that Counter-Defendants or their products or technology are "first" or expressly or impliedly superior for that reason.  Counter-Defendants' false and misleading statements omit facts, detailed herein, that demonstrate the falsity and misleading nature of the statements.

## COUNT ONE

**(Declaratory Judgment of Non-Infringement of the '175 Patent)**

15.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

16.     Blue Spike alleges that Audible Magic has infringed the '175 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '175 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

17.     Audible Magic does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '175 patent.

18.     Audible Magic is entitled to a declaratory judgment that it has not infringed and is not infringing the '175 patent.

## COUNT TWO

### (Declaratory Judgment of Invalidity of the '175 Patent)

19.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

20.     One or more claims of the '175 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

21.     Audible Magic is entitled to a declaratory judgment that one or more claims of the '175 patent are invalid.

## COUNT THREE

### (Declaratory Judgment of Non-Infringement of the '494 Patent)

22.     Audible Magic incorporates what is set out in each of the preceding paragraphs as

if fully set forth herein.

23.     Blue Spike alleges that Audible Magic has infringed the '494 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '494 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

24.     Audible Magic does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '494 patent.

25.     Audible Magic is entitled to a declaratory judgment that it has not infringed and is not infringing the '494 patent.

## COUNT FOUR

### (Declaratory Judgment of Invalidity of the '494 Patent)

26.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

27.     One or more claims of the '494 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

28.     Audible Magic is entitled to a declaratory judgment that one or more claims of the '494 patent are invalid.

## COUNT FIVE

### (Declaratory Judgment of Non-Infringement of the '700 Patent)

29.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

30.     Blue Spike alleges that Audible Magic has infringed the '700 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '700 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

31.     Audible Magic does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '700 patent.

32.     Audible Magic is entitled to a declaratory judgment that it has not infringed and is not infringing the '700 patent.

## COUNT SIX

### (Declaratory Judgment of Invalidity of the '700 Patent)

33.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

34.     One or more claims of the '700 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

35.     Audible Magic is entitled to a declaratory judgment that one or more claims of the '700 patent are invalid.

## COUNT SEVEN

### (Declaratory Judgment of Non-Infringement of the '472 Patent)

36.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

37.     Blue Spike alleges that Audible Magic has infringed the '472 patent, contributed

to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '472 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

38.    Audible Magic does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '472 patent.

39.    Audible Magic is entitled to a declaratory judgment that it has not infringed and is not infringing the '472 patent.

## COUNT EIGHT

### (Declaratory Judgment of Invalidity of the '472 Patent)

40.    Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

41.    One or more claims of the '472 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

42.    Audible Magic is entitled to a declaratory judgment that one or more claims of the '472 patent are invalid.

## COUNT NINE

### (Declaratory Judgment Of Unenforceability of '472, '700, '494 and '175 Patents Due to Inequitable Conduct)

43.    Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

40.    The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable

due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

44.　　During prosecution of the '472, '700, '494 and '175, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and the applicants, knew or should have known would have been important to a reasonable examiner.　The applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.　But for the failure to disclose and mischaracterization of the prior art, the '472, '700, '494 and '175 patents would not have issued.

45.　　The Blue Spike Asserted Patents are unenforceable because they were procured through fraud on the United States Patent and Trademark Office.　All patents and patent applications based on and deriving from the application for the '472 patent, including but not limited to the '472, '700, '494 and '175 patents, are unenforceable because they are infected by this fraud.

46.　　Audible Magic is entitled to a declaratory judgment that the '472, '700, '494 and '175 patents and all patents and patent applications deriving from the application for the '472 patent are unenforceable on the grounds of inequitable conduct.

## COUNT TEN

### (Unjust Enrichment)

47.　　Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

48.　　The acts of Counter-Defendants complained of herein constitute unjust enrichment of the Counter-Defendants at the expense of Audible Magic and its predecessor Muscle Fish in violation of the common law.

49.     Counter-Defendants have taken information, technology and ideas from Audible Magic and its predecessor Muscle Fish, without authorization.

50.     Counter-Defendants used, without authorization or license, the information, technology and ideas of Audible Magic and its predecessor Muscle Fish.

51.     Counter-Defendants have profited unjustly from their actions and unauthorized use of information, technology and ideas, by, among other things, claiming ideas that they do not own and did not invent and commercializing information, technology and ideas of Audible Magic and its predecessor Muscle Fish.

52.     Counter-Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of the information, technology and ideas of Audible Magic and its predecessor Muscle Fish, and the activities alleged herein.

53.     Retention by the Counter-Defendants of the profits they derived from their unauthorized and unlicensed use of information, technology and ideas of Audible Magic and its predecessor Muscle Fish, and the activities alleged herein, would be inequitable.

54.     Counter-Defendants' unauthorized and unlicensed use of the information, technology and ideas and the activities alleged herein, have damaged Audible Magic in an amount to be proven at trial, and Counter-Defendants should disgorge their ill-gotten profits.

55.     As a direct result of Counter-Defendants' actions, Audible Magic has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law, and which will continue unless Counter-Defendants' actions are enjoined.

## COUNT ELEVEN

### (Violation Of The Lanham Act – 15 U.S.C. § 1125(a))

56.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

57.     Counter-Defendants make false and misleading statements regarding the "The Giovanni® Abstraction Machine™," about Counter-Defendants and about Counter-Defendants' activities.  Such false and misleading statements include, but are not limited to the following.  On the www.bluespike.com website, Blue Spike, Inc., Blue Spike and Moskowitz state that Moskowitz and Blue Spike was the "first to create" content "fingerprinting" technology.

58.     These false and misleading statements in materials on Counter-Defendants' website are available and accessible to Audible Magic's customers and potential customers. Counter-Defendants state or imply falsely and misleadingly that there is risk in using technology of parties other than Counter-Defendants, including Audible Magic and others.   As detailed herein, the facts are contrary to Counter-Defendants' false and misleading statements that Counter-Defendants or their products or technology are "first" or expressly or impliedly superior for that reason.  Counter-Defendants' false and misleading statements omit facts, detailed herein, that demonstrate the falsity and misleading nature of the statements.

59.     These statements in commerce and in commercial advertising constitute a false and misleading description of fact and a false and misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and qualities of goods, services and commercial activities.

60.     As a result of their wrongful conduct, Counter-Defendants are liable to Audible Magic for violation of 15 U.S.C. § 1125(a), which provides in relevant part that a "person who, or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any

person who believes that he or she is likely to be damaged by such act."

61.     Audible Magic seeks injunctive relief and compensation and punitive damages in an amount to be proven at trial.

62.     Pursuant to 15 U.S.C. § 1117, Audible Magic is entitled to damages for Counter-Defendants' Lanham Act violations, an accounting of profits made by Counter-Defendant on sales of product and licensing activities, as well as recovery of the costs of this action.

63.     Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

64.     As a direct result of Counter-Defendants' actions, Audible Magic has suffered and continues to suffer irreparable harm for which Audible Magic has no adequate remedy at law, and which will continue unless Counter-Defendants' actions are enjoined, pursuant to 15 U.S.C. § 1116.

## COUNT TWELVE

### (Infringement of United States Patent No. 6,834,308)

### (Against Blue Spike LLC And Blue Spike, Inc.)

65.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

66.     Audible Magic is the assignee of the '308 Patent, titled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device," and has ownership of all substantial rights in the '308 Patent, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

67.     The '308 Patent is valid, is enforceable, and was duly and legally issued on

December 21, 2004.  A true and correct copy of the '308 Patent is attached as Exhibit A.

68.     Without a license or permission from Audible Magic, Blue Spike and Blue Spike, Inc., jointly or in the alternative, have infringed, contributed to the infringement of, and/or induced others to infringe, literally and/or under the doctrine of equivalents, one or more of the claims of the '308 Patent by importing, making, having made, made on their behalf, designing, offering for sale, and/or selling, without license or authority, products, software and devices that fall within the scope of one or more claims of the '308 Patent, including, without limitation, "The Giovanni® Abstraction Machine™," (collectively "Accused Blue Spike Products") throughout the United States, in violation of 35 U.S.C. §271.  Blue Spike's and Blue Spike, Inc.'s infringement is continuing.

69.     Blue Spike and Blue Spike, Inc. have been and now are indirectly infringing by way of inducing infringement of others and/or contributing to the infringement by others of the '308 Patent throughout the United States, by, among other things, importing, making, having made, made on their behalf, designing, offering for sale, and/or selling, without license or authority, products, software and devices that fall within the scope of one or more claims of the '308 Patent, including, without limitation, "The Giovanni® Abstraction Machine™" throughout the United States, in violation of 35 U.S.C. §271.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '308 Patent.  By importing, making, having made, made on their behalf, designing, offering for sale, and/or selling such products, Blue Spike and Blue Spike, Inc. have injured Audible Magic and are thus liable to Audible Magic for infringement of the '308 Patent under 35 U.S.C. §271.

70.     Those whom Blue Spike and Blue Spike, Inc. induce to infringe and/or to whose infringement Blue Spike and Blue Spike, Inc. contribute are the end users of the Accused Blue

Spike Products.  Blue Spike and Blue Spike, Inc. and their principal Moskowitz had knowledge of the '308 Patent prior to the filing of the instant lawsuit and at least as early as the service of these counterclaims and are thus liable for infringement of one or more claims of the '308 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the '308 Patent under 35 U.S.C. § 271.

71.     Blue Spike's and Blue Spike, Inc.'s acts of infringement of the '308 Patent have caused damage to Audible Magic, and Audible Magic is entitled to recover from Blue Spike and Blue Spike, Inc. the damages sustained as a result of Blue Spike's and Blue Spike's, Inc.'s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271 and 35 U.S.C. §284.

72.     Blue Spike's and Blue Spike, Inc.'s infringement of Audible Magic's exclusive rights under the '308 Patent will continue to damage Audible Magic, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

73.     On information and belief, Blue Spike and Blue Spike, Inc. have continued to infringe the '308 Patent since receiving notice of their infringement, at least by way of their prior notice of the '308 patent and receiving notice of this lawsuit.  On information and belief, such continued infringement has been objectively reckless because Blue Spike and Blue Spike, Inc. have (1) acted despite an objectively high likelihood that their actions constituted infringement of a valid patent and (2) knew or should have known of that objectively high risk.  Accordingly, Audible Magic seeks a willfulness finding against Blue Spike and Blue Spike, Inc. relative to their infringement of the '308 Patent entitling Audible Magic to increased damages under 35 U.S.C. §284 as well as attorneys' fees and costs under 35 U.S.C. §285.

74.     On information and belief, Blue Spike and Blue Spike, Inc. have had actual notice

38

of the '308 Patent and have had at least had constructive notice of the '308 Patent by operation of law.

## COUNT THIRTEEN

### (Common Law Unfair Competition)

75.     Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

76.     Audible Magic and its predecessor Muscle Fish have expended labor, skill, and money, in the development of valuable information, technology, ideas, products and unique pecuniary interests.

77.     Counter-Defendants have taken and used without authorization or license Audible Magic's information, technology, ideas, products and unique pecuniary interests, in competition with Audible Magic, thereby gaining a special advantage in that competition because Counter-Defendants are burdened with little or none of the expense incurred by Audible Magic.  Counter-Defendants have caused commercial damage to Audible Magic.

78.     Counter-Defendants make false and misleading statements regarding the "The Giovanni® Abstraction Machine™," about Counter-Defendants and about Counter-Defendants' activities.  Such false and misleading statements include, but are not limited to the following.  On the www.bluespike.com website, Blue Spike, Inc., Blue Spike and Moskowitz state falsely and misleadingly that Moskowitz and Blue Spike was the "first to create" content "fingerprinting" technology.

79.     Such false and misleading statements include, but are not limited to the following. On the www.bluespike.com website, Blue Spike, Inc., Blue Spike and Moskowitz state falsely and misleadingly that "fingerprinting" technology is "technology that has powered his Blue Spike products since the turn of the century," including the "The Giovanni® Abstraction

Machine<sup>TM</sup>."

80.     These false and misleading statements in materials on Counter-Defendants' website are available and accessible to Audible Magic's customers and potential customers. Counter-Defendants state or imply falsely and misleadingly that there is risk in using technology of parties other than Counter-Defendants, including Audible Magic and others.  As detailed herein, the facts are contrary to Counter-Defendants' false and misleading statements that Counter-Defendants or their products or technology are "first" or expressly or impliedly superior for that reason.  Counter-Defendants' false and misleading statements omit facts, detailed herein, that demonstrate the falsity and misleading nature of the statements.

81.     Counter-Defendants' conduct is wrongful, contrary to honest practice in industrial or commercial matters and constitutes unfair competition.  Counter-Defendants' appropriation and use, of information, technology, ideas, products and unique pecuniary interests created by Audible Magic through the expenditure of labor, skill, and money, in competition with Audible Magic, thereby gaining a special advantage in that competition because Counter-Defendants are burdened with little or none of the expense incurred by Audible Magic, and causing commercial damage to Audible Magic, constitutes unfair competition.

82.     As a result of their acts of unfair competition, Counter-Defendants are liable to Audible Magic.

83.     Audible Magic seeks injunctive relief and compensation and punitive damages in an amount to be proven at trial.

84.     Audible Magic is entitled to damages for Counter-Defendants' acts of unfair competition, an accounting of profits made by Counter-Defendant on sales of product and licensing activities, as well as recovery of the costs of this action.

85.     Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.

86.     As a direct result of Counter-Defendants' actions, Audible Magic has suffered and continues to suffer irreparable harm for which Audible Magic has no adequate remedy at law, and which will continue unless Counter-Defendants' actions are enjoined.

## AUDIBLE MAGIC'S PRAYER FOR RELIEF

Audible Magic incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.  Audible Magic prays for relief as follows and respectfully asks the Court to:

A.     enter judgment in favor of Audible Magic, and against Blue Spike LLC, Blue Spike, Inc. and Scott A. Moskowitz;

B.     find the '175, '494, '700 or '472 patents not infringed by Audible Magic;

C.     find the '175, '494, '700 or '472 patents invalid;

D.     find the '175, '494, '700 or '472 patents and all patents and patent applications based on and deriving from those patents or their applications unenforceable;

E.     enter a judgment that Blue Spike, Inc., Blue Spike, LLC and Scott A. Moskowitz are liable for unjust enrichment, violation of the Lanham Act and unfair competition.

F.     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Blue Spike, Inc., Blue Spike LLC and Scott A. Moskowitz, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of unjust enrichment, violation of the Lanham Act and unfair competition;

G.     enter a judgment awarding damages, including compensatory, consequential and

incidental damages, for unjust enrichment and violation of the Lanham Act, according to proof;

H.      enter a judgment ordering disgorgement of any money, property, or the value of any other economic benefit that Blue Spike, Inc., Blue Spike, LLC and Scott A. Moskowitz received as a result of their conduct constituting unjust enrichment, violation of the Lanham Act and unfair competition;

I.      enter a judgment awarding punitive damages for unjust enrichment, violation of the Lanham Act and unfair competition;

J.      enter an award for damages pursuant to 15 U.S.C. § 1117

K.      enter a finding that Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

L.      enter a judgment awarding interest as allowed by law for unjust enrichment, violation of the Lanham Act and unfair competition;

M.      enter a judgment awarding costs of suit, including all costs, fees and attorneys' fees, for unjust enrichment, violation of the Lanham Act and unfair competition;

N.      enter a judgment that Blue Spike LLC and Blue Spike, Inc. have directly infringed, contributorily infringed and/or induced infringement of one or more claims of the '308 Patent;

O.      enter a judgment awarding Audible Magic all damages adequate to compensate it for Blue Spike LLC's and Blue Spike, Inc.'s infringement of, direct or contributory, or inducement to infringe, the '308 Patent, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

P.      enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Blue

Spike LLC's and Blue Spike, Inc.'s willful infringement of the '308 Patent;

Q.     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Blue Spike LLC and Blue Spike, Inc., their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the '308 Patent;

R.     enter a finding that this action is exceptional under 35 U.S.C. § 285 and enter a judgment requiring Blue Spike LLC, Blue Spike, Inc. and Scott A. Moskowitz to pay the costs of this action, including all disbursements, costs, fees and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest;

S.     enter a judgment that Blue Spike take nothing by its Original Complaint for Patent Infringement against Audible Magic;

T.     grant Audible Magic such other and further relief as it deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Audible Magic demands a trial by jury on all issues so triable.

Dated:  April 4, 2014

By:

> */s/ Eric H. Findlay*
> Eric H. Findlay (Texas Bar No. 00789886)
> Walter W. Lackey, Jr. (Texas Bar No. 24050901)
> FINDLAY CRAFT, LLP
> 6760 Old Jacksonville Hwy, Suite 101
> Tyler, TX 75703
> Telephone:  (903) 534-1100
> Facsimile:  (903) 534-1137
> efindlay@findlaycraft.com
> wlackey@findlaycraft.com
>
> Gabriel M. Ramsey – *LEAD ATTORNEY*

I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (202) 612-2499
acaridis@orrick.com

Attorneys for Defendant and Counter-Claimant
AUDIBLE MAGIC CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on April 4, 2014.

*/s/ Eric H. Findlay*
Eric H. Findlay
