UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **Blue Spike, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-499** |
| | § | |
| **Texas Instruments, Inc.** | § | |
| | § | |
| **Defendants** | § | |

-------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **Blue Spike, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 6:13-cv-00124** |
| | § | |
| **Cognitec Systems Corporation** | § | |
| **Cognitec Systems GmbH** | § | |
| | § | |
| **Defendants** | § | |

COGNITEC SYSTEMS CORPORATION'S
ANSWER TO SECOND COMPLAINT, AND COUNTERCLAIM

Defendant Cognitec Systems Corporation ("Cognitec") answers the Second Amended Complaint (the "Complaint") of Blue Spike LLC ("Blue Spike") as follows:

**NATURE OF THE SUIT**

1.      The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Cognitec admits that paragraph 1 purports to assert a claim arising under the patent laws of the United States, Title 35 of the United States Code, and in all other respects denies the allegations of paragraph 1.

**PARTIES**

2.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies them.

3.     Cognitec admits that it is a Delaware corporation and that it has a place of business where indicated, and that has appointed Corporation Service Company as its agent for service of process. Cognitec denies the remainder of the allegations of paragraph 3.

4.     Cognitec admits that Cognitec Systems GmbH is a German limited liability company with an address as indicated. Cognitec denies the remaining allegations of paragraph 4.

**JURISDICTION AND VENUE**

5.     The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Cognitec admits that the Complaint purports to be an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq*. Cognitec admits that this Court has subject matter jurisdiction over an action pursuant to 28 U.S.C. §§ 1338(a) and 1331, and denies any allegations of paragraph 5 that are directed to Cognitec.

6.     Cognitec denies the allegations in paragraph 6.

7.     Cognitec denies the allegations in paragraph 7.

**FACTUAL BACKGROUND**

8.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

11.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies them.

12.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

13.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies them.

14.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies them.

15.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies them.

16.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies them.

17.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies them.

18.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies them.

19.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19, and therefore denies them.

20.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies them.

21.     Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21, and therefore denies them.

**PATENTS-IN-SUIT**

22.     The allegations in this paragraph state a legal or factual conclusion to which no response is required.  To the extent that a response is deemed to be required, Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore denies them to the extent that they are applicable to Cognitec.

23.     The allegations in this paragraph state a legal or factual conclusion to which no response is required.  To the extent that a response is deemed to be required, Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23, and therefore denies them to the extent that they are applicable to Cognitec.

24.     The allegations in this paragraph state a legal or factual conclusion to which no response is required.  To the extent that a response is deemed to be required, Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, and therefore denies them to the extent that they are applicable to Cognitec.

25.     The allegations in this paragraph state a legal or factual conclusion to which no response is required.  To the extent that a response is deemed to be required, Cognitec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, and therefore denies them to the extent that they are applicable to Cognitec.

26.     The allegations in this paragraph state a legal or factual conclusion to which no response is required.  To the extent that a response is deemed to be required, Cognitec denies the allegations in paragraph 26 to the extent that they are applicable to Cognitec.

27.     Cognitec denies the allegations in paragraph 27.

**THE ACCUSED PRODUCTS AND SERVICES**

28.     Cognitec admits that it offers for sale and imports into the United States the FaceVACS software, but denies the remaining allegations in paragraph 28.

29.     Cognitec admits that it has not sought or obtained a license from plaintiff, and denies that any such license is necessary.

30.     Cognitec denies the allegations of paragraph 30.

31.     Cognitec admits that it does not have or need permission to use plaintiff's alleged patents, but denies the remainder of the allegations of paragraph 31.

**COUNT 1**

**INFRINGEMENT OF U.S. PATENT NO. 8,214,175**

32.     Cognitec incorporates by reference its responses to paragraphs 1 through 31 above.

33.     Cognitec admits that, on its face, U.S. Patent No. 8,214,175 ("the '175 patent") is titled "Method and Device for Monitoring and Analyzing Signals."   Cognitec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 33, and therefore denies them.

34.     Cognitec admits that, on its face, the '175 patent states that it was issued on July 3, 2012.  Cognitec denies the remainder of the allegations of paragraph 34.

35.     Cognitec denies the allegations of paragraph 35.

36.     Cognitec denies the allegations of paragraph 36.

37.     Cognitec denies the allegations of paragraph 37.

38.     Cognitec denies the allegations of paragraph 38.

39.     Cognitec denies the allegations of paragraph 39.

<u>**COUNT 2**</u>

<u>**INFRINGEMENT OF U.S. PATENT NO. 7,949,494**</u>

40.     Cognitec incorporates by reference its responses to paragraphs 1 through 39 above.

41.     Cognitec admits that, on its face, U.S. Patent No. 7,949,494 ("the '494 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Cognitec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 41, and therefore denies them.

42.     Cognitec admits that, on its face, the '494 patent states that it was issued on May 24, 2011.  Cognitec denies the remainder of the allegations of paragraph 42.

43.     Cognitec denies the allegations of paragraph 43.

44.     Cognitec denies the allegations of paragraph 44.

45.     Cognitec denies the allegations of paragraph 45.

46.     Cognitec denies the allegations of paragraph 46.

47.     Cognitec denies the allegations of paragraph 47.

<u>**COUNT 3**</u>

<u>**INFRINGEMENT OF U.S. PATENT NO. 7,660,700**</u>

48.     Cognitec incorporates by reference its responses to paragraphs 1 through 47 above.

49.     Cognitec admits that, on its face, U.S. Patent No. 7,660,700 ("the '700 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Cognitec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 49, and therefore denies them.

50.     Cognitec admits that, on its face, the '700 patent states that it was issued on

February 9, 2010.  Cognitec denies the remainder of the allegations of paragraph 50.

51.     Cognitec denies the allegations of paragraph 51.

52.     Cognitec denies the allegations of paragraph 52.

53.     Cognitec denies the allegations of paragraph 53.

54.     Cognitec denies the allegations of paragraph 54.

55.     Cognitec denies the allegations of paragraph 55.

## COUNT 4

## INFRINGEMENT OF U.S. PATENT NO. 7,346,472

56.     Cognitec incorporates by reference its responses to paragraphs 1 through 55 above.

57.     Cognitec admits that, on its face, U.S. Patent No. 7,346,472 ("the '472 patent") is titled "Method and Device for Monitoring and Analyzing Signals."  Cognitec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 57, and therefore denies them.

58.     Cognitec admits that, on its face, the '472 patent states that it was issued on March 18, 2008.  Cognitec denies the remainder of the allegations of paragraph 58.

59.     Cognitec denies the allegations of paragraph 59.

60.     Cognitec denies the allegations of paragraph 60.

61.     Cognitec denies the allegations of paragraph 61.

62.     Cognitec denies the allegations of paragraph 62.

63.     Cognitec denies the allegations of paragraph 63.

## REQUEST FOR RELIEF

Cognitec incorporates by reference its responses to paragraphs 1 through 63 above.

Cognitec denies that Blue Spike is entitled to any relief whatsoever against Cognitec in this

action, either as prayed for in the Complaint.  Except as expressly admitted above, Cognitec denies each and every allegation contained in the plaintiff's complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

**(Forum Non Conveniens)**

1.      The Eastern District of Texas is an inconvenient forum in which to litigate this action against Cognitec under 28 U.S.C. § 1404(a).

### SECOND AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

2.      Plaintiff's complaint fails to state a claim on which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

**(Non-infringement)**

3.      Cognitec has not and does not willfully or otherwise infringe, contribute to the infringement of, or actively induce others to infringe, any claim of the '175, '494, '700 or '472 patents.

### FOURTH AFFIRMATIVE DEFENSE

**(Invalidity)**

4.      The '175, '494, '700 or '472 patents, including all of the claims, are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103, and 112.

### FIFTH AFFIRMATIVE DEFENSE

**(Failure to Mark)**

5.      Prior to receiving a copy of the complaint in this action, Cognitec did not have notice of Blue Spike's allegations of infringement.  Upon information and belief, neither Blue

Spike nor Blue Spike's licensees have marked instrumentalities that embody any of the claims of the '175, '494, '700 or '472 patents with proper notice of the patents in compliance with 35 U.S.C. § 287.  Blue Spike is not entitled to any pre-filing damages pursuant to 35 U.S.C. § 287 for any claims to which 35 U.S.C. § 287 applies.

## SIXTH AFFIRMATIVE DEFENSE

**(Prosecution History Estoppel)**

6.      Based on proceedings before the United States Patent and Trademark Office ("PTO") during the prosecution of the application that ultimately issued as the '175, '494, '700 or '472 patents, Blue Spike is precluded or otherwise estopped from asserting any construction of the claims of the '175, '494, '700 or '472 patents that is inconsistent with its or its predecessor(s)-in-interest's representations before the PTO.  On information and belief, Blue Spike is estopped from asserting any construction of the claims sufficiently broad to cover or include any product made, used, sold, offered for sale within the United States, or imported into the United States, by Cognitec.

## SEVENTH AFFIRMATIVE DEFENSE

**(Laches, Waiver, Acquiescence, Estoppel, and Unclean Hands)**

7.      Blue Spike's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, acquiescence, estoppel, and/or unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

**(Limitation on Damages and Remedies)**

8.      Blue Spike's claims and prayer for relief are barred in whole or in part by 35 U.S.C. §§ 286, 287, and/or 288.

**NINTH AFFIRMATIVE DEFENSE**

**(Unavailability of Injunctive Relief)**

9.      Blue Spike is not entitled to injunctive relief or any other equitable relief because any alleged injury to Blue Spike is not irreparable and because – had Blue Spike been injured – it would have an adequate remedy at law.

**TENTH AFFIRMATIVE DEFENSE**

**(Lack of Standing/Failure to Join Necessary Party)**

10.      Blue Spike lacks standing to bring a patent infringement action based on the '175, '494, '700 or '472 patents and/or has failed to join a necessary party under Fed. R. Civ. P. 19.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Single Recovery Rule)**

11.      Plaintiff's damages are barred in whole or in part by the single recovery rule.

**TWELFTH AFFIRMATIVE DEFENSE**

**(License/Implied License/Patent Exhaustion)**

12.      Plaintiff's damages are barred in whole or in part by the defenses of license, implied license, and/or patent exhaustion.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Unenforceability of '472, '700, '494 and '175 Patents Due to Inequitable Conduct)**

13.      The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

14.      Upon information and belief:  During prosecution of the '472, '700, '494 and '175 patents, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and which

they knew or should have known would have been important to a reasonable examiner.  Upon information and belief, the applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.

**The Counter-Defendants Knew Of Highly Material Prior Art**

15.     Upon information and belief:  The applicants of the '472, '700, '494 and '175 patents knew of an enormous amount of highly material prior art regarding content identification technologies.  Despite having full knowledge of this material prior art, the applicants did not share any of it with the PTO.  Prior to filing and issuance of the '472, '700, '494 and '175 patents, the applicants investigated products or services that competed with or were otherwise relevant to the business of applicant Scott Moskowitz ("Moskowitz") and his company Blue Spike, Inc. ("Blue Spike, Inc.") and to the patent claims being drafted by the applicants.  The applicants investigated products and services that carried out the monitoring, analysis and recognition of digital information and signals, including products and services that used content-based fingerprints in order to identify content or signals.

16.     Upon information and belief:  Prior to the filing of the applications for the '472, '700, '494 and '175 patents, the applicants were aware, or reasonably could have been aware, of prior art technology and systems of a consulting company called Muscle Fish, LLC ("Muscle Fish").

17.     Upon information and belief:  Muscle Fish was founded in Berkeley, California, in 1992, by engineers, mathematicians and musicians Erling Wold, Doug Keislar, Thom Blum and Jim Wheaton, who had worked with signal processing and sound technologies from the late 1970s through the early 1990s.

18.     Upon information and belief:  Beginning in 1992, the Muscle Fish engineers

worked on systems for analyzing content and signals. In the 1990s, the Muscle Fish engineers designed a system for looking up and comparing known and unknown content based on a set of features of content called "MFCCs." The Muscle Fish engineers published papers about this technology. For example, on July 20, 1995, they published a paper, "Audio Databases with Content-Based Retrieval," about MFCC-based fingerprints and presented it in August 1995 at the IJCAI Workshop on Intelligent Multimedia and also in September 1995, at the International Computer Music Conference. In January and May 1996, respectively, they gave talks to IBM and to the CCRMA called "Content-Based Classification, Search, and Retrieval of Audio." In 1996, Muscle Fish filed application No. 08/681,174 on aspects of its MFCC-based fingerprinting technology. A continuation-in-part application was filed on July 21, 1997, resulting in the issuance of U.S. Patent No. 5,918,223 ('223 Patent) on aspects of the MFCC-based technology on June 29, 1999.

19.    Upon information and belief: In the 1990s, interest in Muscle Fish's pioneering content recognition system was very high and the technology was known in the industry. Muscle Fish disclosed, marketed and sold its technology and systems to numerous companies, including database companies, advertising companies, content owners, performing rights societies, search engines, websites, online music stores, sound effects designers and musicians and multimedia companies. Muscle Fish offered standard code libraries and also developed custom implementations for its clients. These products went under various names, including the Muscle Fish "content-based recognition" system, "CBR," "cbrStream," "SoundFisher" and other names. A demo of the content-based recognition technology was available on Muscle Fish's website. Muscle Fish publicized implementations of these technologies, including Audio Information Retrieval (AIR) DataBlade module for INFORMIX Universal Server, the Video Cataloger

product by Virage, Inc., The Bulldog Group's media asset management system, R2, SURF and EAR among others. The applicants for the '472, '700, '494 and '175 patents were aware of Muscle Fish technologies and implementations in the mid-1990s, but did not disclose them to the PTO.

20. Upon information and belief: In 2000, Muscle Fish was merged into another company (Audible Magic) that was formed in 1999 and was originally known as Wired Air, LLC. In 2000 it acquired all of Muscle Fish's intellectual property, technology, contracts, assets and employees, and all rights therein. In 1999 and 2000, the company implemented the Muscle Fish technology in a content recognition system, one implementation of which was called "Clango." On February 17, 2000, Audible Magic filed the application for U.S. Patent No. 6,834,308, entitled "Method and Apparatus for Identifying Media Content Presented on a Media Playing Device," which issued on December 21, 2004. Upon information and belief, the applicants for the '472, '700, '494 and '175 patents were aware of the Audible Magic technologies, but did not disclose them to the PTO.

21. Upon information and belief: In 1992, by contrast to the extensive technical experience of the Muscle Fish engineers, upon information and belief, Scott Moskowitz ("Moskowitz"), one of the applicants for the '472, '700, '494 and '175 patents, had only worked in a low-level business role at Sony Japan in the late 1980s, obtained a bachelor's degree in Political Science, Finance and Japanese in 1991 and formed an import/export and marketing company, which shipped CDs to Japan. The other applicant for the '472, '700, '494 and '175 patents, Michael Berry ("Berry") obtained a bachelor's degree in Music and Astronomy in 1991, and later obtained a master's degree in Music Composition in 1997 in the San Francisco Bay Area. Upon information and belief, in the mid-1990s, neither of the applicants nor Blue Spike,

Inc. were developing or selling any technology to identify content or signals based on the content or signal itself.

22.     Upon information and belief:  Moskowitz claims that he conceived of various inventions regarding "digital watermarking."  In 1994, Moskowitz formed the DICE Company to develop a watermarking system called "Argent."  He formed that company, which was based in Palo Alto, California, with Marc Cooperman, who had a technical background.  Cooperman's job was to create a working digital watermarking system because Moskowitz had no technical ability to do so.  Cooperman worked on this project between March 1995 and October 1996, but the two were unable to develop a working system.  Thereafter, as alleged by Cooperman, Moskowitz took the existing assets and intellectual property of the DICE Company, without informing Cooperman, and ultimately moved them to a new company, called "Blue Spike, Inc.," thus freezing out Cooperman.  These acts evidence Moskowitz's practice and strategy of appropriating intellectual property created by others and attempting to take and claim such for himself and Blue Spike, Inc., and as alleged further below, constitutes evidence of Moskowitz's culpable intent in carrying out the same strategy later by withholding material prior art from the PTO and misappropriating intellectual property of Muscle Fish and Audible Magic.

23.     Upon information and belief:  Cooperman sued Moskowitz and Blue Spike, Inc. in two different lawsuits.  Moskowitz asserted in a pleading in federal court that "by October 1996, Cooperman had not completed any workable software of any type for DICE."  Going into 1997, upon information and belief, Moskowitz was in litigation with Cooperman, had no technical person who could create any product for him, and lacking sufficient technical background to create such software systems, could not do it himself.  As alleged further below, Moskowitz's difficulties in his business is evidence of Moskowitz's culpable motivation to later

14

withhold material prior art from the PTO and misappropriate intellectual property of Muscle Fish.

24.      Upon information and belief:  At least as early as 1997, while Moskowitz's business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems.  For example, in the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology.  At that time, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server."  Similarly, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value, Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology.   After his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997.  As alleged further below, Moskowitz did not disclose the foregoing prior art to the PTO.

25.      Upon information and belief:  Muscle Fish expended tremendous resources to cultivate and develop valuable information and intellectual property, including source code and other intellectual property.  Muscle Fish spent significant time, effort and money to develop valuable business trade secrets including, but not limited to source code, algorithms, ideas, formulas, designs, business plans, schematics, specifications, descriptions, prototypes and designs and other confidential intellectual property relating to content-based recognition technologies, systems and business.  The development and use of such information enabled Muscle Fish and its successor to succeed in a competitive industry.

26.      Upon information and belief:  Moskowitz and Blue Spike, Inc. were aware of

Muscle Fish's content-based recognition technology, were struggling to develop Blue Spike, Inc.'s watermarking technology and, upon information and belief, believed that content-based recognition technology was a superior solution for identifying content than digital watermarking systems.

**The Counter-Defendants Failed to Disclose Known, Highly Material Prior Art to the Patent Office, with the Intent to Deceive**

27.     Upon information and belief:  Moskowitz and Blue Spike, Inc. obtained and used Muscle Fish's information regarding its content based recognition technology and ideas. Counter-Defendants' use of the Muscle Fish information, technology and ideas was without Muscle Fish's or Audible Magic's authorization or consent.  Upon information and belief, Counter-Defendants have profited unfairly from their unauthorized use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas.  Counter-Defendants' use of Muscle Fish's and Audible Magic's proprietary information, technology and ideas, coupled with the applicants' failure to disclose material public Muscle Fish and Audible Magic prior art, constitutes evidence of culpable intent.  This activity was carried out to the benefit of Moskowitz and Blue Spike, Inc.

28.     Upon information and belief:  Moskowitz and Blue Spike, Inc. took ideas from Muscle Fish's old and pre-existing content-based recognition technology, claimed them as their own and the applicants derived ideas in their patent application from that prior art technology. On September 7, 2000, the applicants filed the application for the '472 patent—the oldest patent asserted by Blue Spike in this case.  They failed to disclose any Cognitec Systems GmbH and/or Muscle Fish prior art technology to the examiner during prosecution of that patent.  During prosecution of the '700, '494 and '175 patents, the applicants failed to disclose Muscle Fish

public embodiments, systems and documents, which were known to them, including but not limited to SoundFisher and the AIR Datablade systems.

29.     Upon information and belief:   Filing of patent applications including ideas derived from the undisclosed Muscle Fish prior art was carried out to the benefit of Counter-Defendants and to the injury of defendant.

30.     Upon information and belief:  During prosecution of the '472, '700, '494 and '175 patents, the applicants disclosed prior art related to digital watermarking or general technical principles, but did not disclose relevant prior art relating to content-based recognition of content and signals, despite the fact that such was known to them.  During prosecution of the '700, '494 and '175 patents, the later three patent applications, applicants filed an Information Disclosure Statement, disclosing the Muscle Fish '223 patent, but failed to disclose information and documents regarding Muscle Fish's implementations and commercial embodiments of that technology, despite the fact that such was known to them.  The applicants did not disclose the '223 patent during prosecution of the initial '472 patent.  But for the failure to disclose prior art known to the applicants, the '472, '700, '494 and '175 patents would not have issued.

31.     Upon information and belief:  The applicants' failure to disclose the foregoing information to the examiner was intended to deceive.  For example, while applicants were prosecuting the original '472 patent, in February 2001, Blue Spike, Inc. approached Audible Magic about licensing the Muscle Fish prior art content-based recognition technology that was known to Blue Spike, Inc. years before the filing of the original '472 patent.  In other words, the applicants were prosecuting a patent that Blue Spike now asserts is related to content-based recognition, at the same time that they were attempting to license prior art content-based recognition technology, because, upon information and belief, they did not have any such

technology.  Despite this affirmative knowledge and awareness of the Muscle Fish prior art, the applicants failed to disclose it to the PTO.  This demonstrates intent to deceive.

32.     Upon information and belief:  The fact that the applicants selectively withheld all Muscle Fish prior art in the initial '472 patent application and in later applications selectively disclosed only the Muscle Fish '223 patent, despite the fact that they knew about much more Muscle Fish prior art information, including commercial embodiments, is evidence that such failure to disclose was intended to deceive.  Upon information and belief, the applicants intentionally or in bad faith withheld, concealed and/or mischaracterized the highly material prior art, with an intent to deceive the PTO.  The applicants' knowledge and selective disclosure of the Muscle Fish patent in later prosecutions, despite knowledge of a much broader set of Muscle Fish prior art, demonstrates that the choice of what to disclose and what to withhold was deliberate.

33.     Upon information and belief:  The prior art Muscle Fish technology, which pre-dated the '472, '700, '494 and '175 patents and Blue Spike, Inc. by many years, was acquired by Audible Magic and Blue Spike purports to accuse the Muscle Fish technology in this case.  This fact necessarily renders the prior art Muscle Fish technology highly material to prosecution of the patents in suit, under Blue Spike's own theory.  Despite the high level of materiality of the Muscle Fish prior art, the applicants intentionally withheld that information from the examiner, with the intent to deceive the examiner.

34.     Upon information and belief:  During prosecution of the application leading to the '472 patent, the applicants distinguished over prior art by arguing in a November 22, 2004 response to office action that the patent claimed a signal identifier that is not embedded in the original signal.  The Muscle Fish prior art disclosed a signal identifier that is not embedded in the

original signal.  If applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument.  Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner.  Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

35.     Upon information and belief:  During prosecution of the application leading to the '700 patent, the applicants distinguished over prior art by arguing in an October 30, 2008 response to office action that the patent claimed identifying unknown signals, to distinguish over the prior art which allegedly disclosed identifying signals that were "already known."  The Muscle Fish prior art disclosed identifying unknown signals.  If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have made this argument.  Thus, the Muscle Fish prior art would have been highly material to a reasonable examiner.  Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation during prosecution is that it was made with intent to deceive the examiner.

36.     Upon information and belief:  In the detailed description of the invention section of the '472, '700, '494 and '175 patents, the applicants affirmatively mischaracterized to the PTO the prior art, stating that the claimed invention was novel over the prior art watermarking systems because such watermarking required embedding an identifier into a signal, whereas the claimed invention could identify signals without embedding an identifier.  The Muscle Fish prior art disclosed identifying a signal without embedding an identifier.  If the applicants had disclosed the Muscle Fish prior art that they knew about, they could not have mischaracterized the prior art in this way.  Thus, the Muscle Fish prior art would have been highly material to a reasonable

examiner.  Given the applicants' extensive knowledge of the Muscle Fish prior art, the only reasonable inference from this express representation in the detailed description of the invention is that it was made with intent to deceive the examiner.

37.    Upon information and belief:  By the time that the applicants prosecuted the applications for the patents, they had previously been involved in patent prosecution activities and had worked in the area of content recognition.  In particular, the sophistication of Moskowitz regarding patent prosecution and his prior involvement in this industry is evidence of the lack of an innocent explanation for withholding and mischaracterizing the Muscle Fish prior art and is evidence of culpable intent.

38.    Upon information and belief:  During prosecution, the applicants signed and filed oaths with the Patent Office stating:  "I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56."  This explicit understanding of a duty to disclose material prior art is evidence of the lack of any credible explanation for withholding and mischaracterization of prior art and is evidence of culpable intent.

39.    Upon information and belief:  Moskowitz was motivated to conceal the withheld prior art and intended to deceive the Patent Office.  Upon information and belief, Moskowitz had strong financial and non-financial interests in obtaining the patents in suit.  Upon information and belief, Moskowitz was motivated to conceal the withheld prior art, in order to obtain the patents, because the Blue Spike, Inc. digital watermarking business was failing and because its watermarking solution had not been adopted by a standards body working on a proposed digital watermarking industry standard, called "SDMI."  According to an email from Blue Spike, Inc., the SDMI effort was "in the process of disintegrating."  These economic and non-economic

20

motivations to conceal prior art is evidence of the lack of a credible explanation for the withholding and mischaracterization of prior art and is evidence of culpable intent.

## <u>COUNTERCLAIMS</u>

Defendant and counterclaim-plaintiff Cognitec, for its counterclaims against plaintiff and counterclaim-defendant Blue Spike LLC and counterclaim-defendants Blue Spike, Inc. and Scott A. Moskowitz, alleges as follows:

1.      Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

2.      Blue Spike's complaint has established an actual and justiciable controversy between Blue Spike LLC, Blue Spike, Inc., Scott A. Moskowitz and Cognitec with respect to validity, infringement and unenforceability of the '175, '494, '700 or '472 patents (collectively, "the Blue Spike Asserted Patents"), and the ownership of the technology set forth in the Blue Spike Asserted Patents.

3.      This Court has subject matter jurisdiction over Cognitec's claims pursuant to 28 U.S.C. §§1331, 1332, 1338(a), 1367, 2201, 2202 and 15 U.S.C. §§ 1051, *et seq*.

4.      The exercise of personal jurisdiction and venue are proper as Counter-Defendants have availed themselves of this forum such that the exercise of jurisdiction over each would not offend traditional notions of fair play and substantial justice.

5.      Cognitec brings these counterclaims without waiving its right to argue that venue in the Eastern District of Texas is improper and inconvenient to Cognitec.

6.      Upon information and belief:  Blue Spike, LLC is a Texas limited liability company, having its principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703.  Blue Spike, LLC can be served with process by serving its registered agent for service of

process in the State of Texas, C T Corporation System, 350 North St. Paul St., Suite 2900, Dallas, TX 75201, and through its counsel of record in this action.

7.      Upon information and belief:  Blue Spike, Inc. is a Florida corporation, having its principal place of business at 16711 Collins Avenue #3606, Sunny Isles Beach, FL 33160.  Blue Spike, Inc. can be served with process by serving its registered agent for service of process in the State of Florida, C T Corporation System, 1200 South Pinke Island Road, Plantation, FL 33324 and through its counsel of record in this action.

8.      Upon information and belief:  Scott A. Moskowitz is an individual, and principal of Blue Spike and Blue Spike, Inc., residing at 411 N. New River Drive East, Apt. 2204, Fort Lauderdale, FL 33301.  Scott A. Moskowitz can be served with process by personally serving him at 411 N. New River Drive East, Apt. 2204, Fort Lauderdale, FL 33301, or any other location where he may be found, and through his counsel of record in this action.

## COUNT ONE

**(Declaratory Judgment of Non-Infringement of the '175 Patent)**

9.      Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

10.     Blue Spike alleges that Cognitec has infringed the '175 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '175 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

11.     Cognitec does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '175 patent.

12. Cognitec is entitled to a declaratory judgment that it has not infringed and is not infringing the '175 patent.

## COUNT TWO

**(Declaratory Judgment of Invalidity of the '175 Patent)**

13. Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

14. One or more claims of the '175 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

15. Cognitec is entitled to a declaratory judgment that one or more claims of the '175 patent are invalid.

## COUNT THREE

**(Declaratory Judgment of Non-Infringement of the '494 Patent)**

16. Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

17. Blue Spike alleges that Cognitec has infringed the '494 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '494 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

18. Cognitec does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '494 patent.

19. Cognitec is entitled to a declaratory judgment that it has not infringed and is not

infringing the '494 patent.

## COUNT FOUR

**(Declaratory Judgment of Invalidity of the '494 Patent)**

20.     Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

21.     One or more claims of the '494 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

22.     Cognitec is entitled to a declaratory judgment that one or more claims of the '494 patent are invalid.

## COUNT FIVE

**(Declaratory Judgment of Non-Infringement of the '700 Patent)**

23.     Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

24.     Blue Spike alleges that Cognitec has infringed the '700 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '700 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

25.     Cognitec does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '700 patent.

26.     Cognitec is entitled to a declaratory judgment that it has not infringed and is not infringing the '700 patent.

24

## COUNT SIX

**(Declaratory Judgment of Invalidity of the '700 Patent)**

27.     Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

28.     One or more claims of the '700 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

29.     Cognitec is entitled to a declaratory judgment that one or more claims of the '700 patent are invalid.

## COUNT SEVEN

**(Declaratory Judgment of Non-Infringement of the '472 Patent)**

30.     Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

31.     Blue Spike alleges that Cognitec has infringed the '472 patent, contributed to the infringement of and/or actively induced others to literally and/or under the doctrine of equivalents infringe one or more claims of the '472 patent by having made, made on its behalf, offered for sale, sold, provided, used, maintained and supported infringing methods, products and/or systems listed in the Complaint.

32.     Cognitec does not and has not infringed, contributed to the infringement of, or induced others to literally and/or under the doctrine of equivalents infringe any claim of the '472 patent.

33.     Cognitec is entitled to a declaratory judgment that it has not infringed and is not infringing the '472 patent.

## COUNT EIGHT

### (Declaratory Judgment of Invalidity of the '472 Patent)

34.     Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

35.     One or more claims of the '472 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including Sections 101, 102, 103 and 112.

36.     Cognitec is entitled to a declaratory judgment that one or more claims of the '472 patent are invalid.

## COUNT NINE

### (Declaratory Judgment Of Unenforceability of '472, '700, '494 and '175 Patents Due to Inequitable Conduct)

37.     Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.

40.     The '472, '700, '494 and '175 patents, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '472, '700, '494 and '175 patents.

38.     During prosecution of the '472, '700, '494 and '175, the applicants failed to disclose, withheld, concealed and/or mischaracterized to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '472, '700, '494 and '175 patents under prosecution, and the applicants, knew or should have known would have been important to a reasonable examiner.  The applicants failed to disclose and mischaracterized the prior art with an intent to deceive the PTO.  But for the failure to disclose and mischaracterization of the prior art, the '472, '700, '494 and '175 patents would not have issued.

26

39.     The Blue Spike Asserted Patents are unenforceable because they were procured through fraud on the United States Patent and Trademark Office.  All patents and patent applications based on and deriving from the application for the '472 patent, including but not limited to the '472, '700, '494 and '175 patents, are unenforceable because they are infected by this fraud.

40.     Cognitec is entitled to a declaratory judgment that the '472, '700, '494 and '175 patents and all patents and patent applications deriving from the application for the '472 patent are unenforceable on the grounds of inequitable conduct.

## COGNITEC'S PRAYER FOR RELIEF

Cognitec incorporates what is set out in each of the preceding paragraphs as if fully set forth herein.  Cognitec prays for relief as follows and respectfully asks the Court to:

A.     enter judgment in favor of Cognitec, and against Blue Spike LLC, Blue Spike, Inc. and Scott A. Moskowitz;

B.     find the '175, '494, '700 or '472 patents not infringed by Cognitec;

C.     find the '175, '494, '700 or '472 patents invalid;

D.     find the '175, '494, '700 or '472 patents and all patents and patent applications based on and deriving from those patents or their applications unenforceable;

E.     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Blue Spike, Inc., Blue Spike LLC and Scott A. Moskowitz, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from asserting their alleged patents against Cognitec, or its parent company, subsidiaries, related companies, officers, directors, customers, successors and assigns;

F.      enter a judgment in favor of Cognitec awarding it its costs of suit, including all costs, fees and attorneys' fees;

G.      enter a judgment that Blue Spike take nothing by its complaint against Cognitec;

H.      grant Cognitec such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Cognitec demands a trial by jury on all issues so triable.

> /s/ Dwayne K. Goetzel
> Eric B. Meyertons
> Texas State Bar No. 14004400
> Dwayne K. Goetzel
> Texas State Bar No. 08059500
> Ryan T. Beard
> Texas State Bar No. 24012264
> MEYERTONS, HOOD, KIVLIN,
>    KOWERT & GOETZEL, P.C.
> 1120 S. Capital of Texas Hwy.
> Building 2, Suite 300
> Austin, Texas 78746
> (512) 853-8800 (telephone)
> (512) 853-8801 (facsimile)
>
> **ATTORNEYS FOR DEFENDANT**
> **COGNITEC SYSTEMS CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on April 7, 2014.

> /s/ Dwayne K. Goetzel
> Dwayne K. Goetzel