# UNITED STATES DISTRICT COURT
# FOR THE EASTER DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **Blue Spike, LLC** | § | |
| | § | |
|     **Plaintiff,** | § | |
| | § | |
| v. | § | Case No. 6:12-cv-499 |
| | § | |
| **Texas Instruments, Inc.** | § | |
| | § | |
|     **Defendants** | § | |

---

| | | |
|---|---|---|
| **Blue Spike, LLC** | § | |
| | § | |
|     **Plaintiff,** | § | |
| | § | |
| | § | |
| v. | § | Case No. 6:13-cv-00124 |
| | § | |
| **Cognitec Systems Corporation** | § | |
| **Cognitec Systems GmbH** | § | |
| | § | |
|     **Defendants** | § | |

## **COGNITEC SYSTEMS GMBH'S REFILED MOTION TO DISMISS**

Defendant Cognitec Systems GmbH ("Cognitec Germany") refiles its *Motion to Dismiss* the Complaint filed against it herein, for lack of personal jurisdiction, and would respectfully show the Court as follows:

On March 6, 2014, the Court issued an Order (Doc. No. 1324) concluding:

> For the reasons discussed more fully above, the Court DENIES Defendant Cognitec Systems GmBH's motion to dismiss for lack of personal jurisdiction without prejudice to refile (Doc. No. 626).  As the Court finds in favor of Defendant on all other issues, any further motion need only address the corporate relationship between the Cognitec entities (following limited discovery).

1

As the jurisdictional discovery is now complete and transcripts have been received, Cognitec Germany hereby refiles its *Motion to Dismiss* (Doc. No. 626) and, as ordered by the Court, will only address the corporate relationship between Cognitec Germany and its United States subsidiary Cognitec Systems Corporation ("Cognitec US").

In determining whether personal jurisdiction contacts of a domestic corporation apply to a foreign parent corporation, courts **presume** the independence of related corporations. *See* Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333 (1925); Freudensprung v. Offshore Tech. Serv. Inc., 379 F.3d 327, 346 (5th Cir. 2004). In order to rebut this presumption, the Plaintiff has the burden to present "**clear evidence**" that one corporate entity exerts sufficient control over the other to make it an agent or alter ego and thus "fuse the two together for jurisdictional purposes." Freudensprung, 379 F.3d at 346 (*quoting* Hargrave v. Fibreboard Corporation, 710 F.2d 1154 (5th Cir. 1983)); *see also* Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 n.18 (5th Cir. 2002).

As a general matter, courts "demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." Hargrave, 710 F.2d at 1160. In Hargrave, the Fifth Circuit set out the following factors for courts to consider:

(1) the amount of stock owned by the parent;
(2) whether the two corporations have separate headquarters;
(3) whether the corporations have common officers and directors;
(4) whether the corporations observe corporate formalities;
(5) whether the corporations maintain separate accounting systems;
(6) whether the parent exercises complete authority over general policy; and
(7) whether the subsidiary exercises complete authority over daily operations.

Id.; *see also* Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338-39 (5th Cir. 1999). The Court must consider the totality of the circumstances and no one factor is determinative. Sapic v. Gov't of Turkm., 345 F.3d 347, 359 (5th Cir. 2003).

The facts of this case establish that the Court should find that Cognitec Germany and Cognitec US are two separate and independent companies. The facts relative to the Hargrave factors are as follows: Cognitec Germany owns 100% of the stock of Cognitec US. *See* Deposition Transcript for Hrac Roger Kelesoglu, attached as **Exhibit 1**, p. 93, lines 10-12 ("Kelesoglu Depo"); Deposition Transcript for Alfredo Herrera, attached as **Exhibit 2**, p. 22, lines 8-12, p. 77, lines 14-16 ("Herrera Depo"). Cognitec Germany and Cognitec US have separate headquarters. *See* Kelesoglu Depo, **Exhibit 1**, p. 204 lines 2-5. Cognitec Germany is headquartered in Dresden, Germany. *See* Kelesoglu Depo, **Exhibit 1**, p. 203 lines 20-22; Herrera Depo, **Exhibit 2**, p. 75, lines 7-13, p. 77, lines 14-16. Cognitec US is headquartered in Rockland, Massachusetts. *See* Kelesoglu Depo, **Exhibit 1**, p. 203 lines 16-19. Cognitec Germany and Cognitec US have only one common officer or director. *See* Herrera Depo, **Exhibit 2**, p. 25, lines 1-5, p. 58, lines 15-20. Cognitec Germany and Cognitec US have both observed corporate formalities. For instance, Cognitec Germany and Cognitec US have separate bank accounts, separate accounting and payroll systems, separate insurance contracts, separate budgets (which are separately prepared and then consolidated with Cognitec Germany's other subsidiaries), and separate financial records. *See* Kelesoglu Depo, **Exhibit 1**, p. 204, line 6 to p. 205, line 18; Herrera Depo, **Exhibit 2**, p. 179, line 19 to p. 180, line 10, p. 180, lines 16-19, p. 181, lines 3-4. Both Cognitec Germany and Cognitec US file separate tax returns. *See* Kelesoglu Depo, **Exhibit 1**, p. 205, lines 19-23. Both Cognitec Germany and Cognitec US have separate shareholder and board of director meetings. *See* Herrera Depo, **Exhibit 2**, p. 179, lines

12-18. Moreover, there are no commingled assets between the two distinct corporations. *See* Kelesoglu Depo, **Exhibit 1**, p. 205 line 24 to p. 206, line 10.  Furthermore, Both Cognitec Germany and Cognitec US pay their own employees without assistance of the other entity, pay their own utilities, and have separate employee handbooks. *See* Herrera Depo, **Exhibit 2**, p. 180, lines 11-15 and 20-25, p. 181, line 23 to p. 182, line 5.  Cognitec US also negotiated, signed and pays for its own lease of its office space. *See* Herrera Depo, **Exhibit 2**, p. 180, lines 7-17.

With respect to internal operations, the facts establish that each entity controls itself. Each entity has control over its own general policy decisions, including product lines, hiring and firing, and approval of capital investments. *See* Kelesoglu Depo, **Exhibit 1**, p. 15, line 15 to p. 16, line 5, p. 45, lines 15-18; Herrera Depo, **Exhibit 2**, p. 182, lines 6-10 and 16-20. Furthermore, day-to-day business and operational decisions are controlled by each entity independently. *See* Kelesoglu Depo, **Exhibit 1**, p. 206, line 11 to p. 207, line 7; Herrera Depo, **Exhibit 2**, p. 182, lines 11-15.

The facts of this case closely mimic the facts in <u>Hargrave</u>.  In <u>Hargrave</u>, the Court found the following facts were present:

> In the instant case, T & N owned 100% of the stock of K & M from 1938 to 1962. During this entire period, T & N maintained its corporate headquarters in Manchester, England, while K & M was headquartered in Ambler, Pennsylvania. The two companies shared no common officers and at no time had more than one common director. The corporate formalities were scrupulously observed. T & N and K & M maintained separate bank accounts, accounting and payroll systems, insurance contracts, budgets, and financial records; they also filed separate tax returns. No assets of the corporations were commingled.
>
> In terms of K & M's internal affairs, it appears that T & N had complete authority over general policy decisions at K & M, including such matters as selection of product lines, hiring and firing of K & M officers, and approval of sizable capital investments. Day-to-day business and operational decisions, however, were made by K & M officers. K & M had sole responsibility for operation and management of its manufacturing facilities, research and development of new products, and marketing and sales strategies. Although T & N supplied the raw materials used to

4

> manufacture K & M products, K & M was in charge of determining its own supply requirements.

Hargrave, 710 F.2d at 1160.

The facts set forth in Hargrave are the same as this case. In Hargrave, the only factors supporting a finding of personal jurisdiction for the foreign parent corporation was stock ownership and one common officer/director. In this case, these are also the **only** factors that support a finding of personal jurisdiction over Cognitec Germany. However, the Fifth Circuit has held numerous times that these specific facts alone are **insufficient** to find personal jurisdiction. *See* Hargrave, 710 F.2d at 1160 ("We have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations"), *citing* Walker v. Newgent, 583 F.2d 163, 167 (5th Cir. 1978) (finding personal jurisdiction should not be imputed to the parent corporation because of 100% stock ownership and duplication of some or all of the directors or officers with the subsidiary); Turner v. Jack Tar Grand Bahama, Ltd., 353 F.2d 954, 956 (5th Cir. 1965) ("common stock ownership and/or identity of officers do not in themselves establish the agency relationship").

Following this principle, the Hargrave court held:

> Even given the appropriateness of applying a less stringent standard for alter ego jurisdiction than for alter ego liability, however, we do not believe that Nicolet has demonstrated that T & N possessed and exercised the nature and degree of control over K & M necessary to fuse the two corporations for purposes of the Texas long-arm statute. T & N and K & M maintained a degree of corporate separation that was more than superficial; they were two separate corporations joined by the common bond of stock ownership. **The policymaking authority held and exercised by T & N was no more than that appropriate for a sole shareholder of a corporation, and certainly not enough to warrant the extraterritorial exercise of jurisdiction over that shareholder under the Texas statute**. *Accord, Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir.1980); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d

5

> 406 (9th Cir.1977). The Lone Star of Texas may shine brightly throughout the world, but its long arm is not judicially all encompassing.

Hargrave, 710 F.2d at 1161 (emphasis added).

The only relevant commonality between Cognitec Germany and Cognitec US is one officer and the fact that Cognitec Germany owns 100% of the stock of Cognitec US. Under the case law cited above from the 5th Circuit, this is a normal relationship between two related corporations and does not justify this Court imputing the personal jurisdiction contacts of Cognitec US to Cognitec Germany.

For these reasons, Cognitec renews and refiles its *Motion to Dismiss* and respectfully requests that the Court dismiss Cognitec Germany from this case for a lack of personal jurisdiction.

A proposed order is attached.

6

/s/ Dwayne K. Goetzel
Eric B. Meyertons
Texas State Bar No. 14004400
Dwayne K. Goetzel
Texas State Bar No. 08059500
Ryan T. Beard
Texas State Bar No. 24012264
MEYERTONS, HOOD, KIVLIN,
  KOWERT & GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

**ATTORNEYS FOR DEFENDANT
COGNITEC SYSTEMS CORP.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), a meet and confer was not a required prerequisite to this motion; however, I did speak with plaintiff's counsel regarding the refiling of this motion and was informed that plaintiff opposes it.

/s/ Dwayne K. Goetzel
Dwayne K. Goetzel

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 18th day of April 2014.

/s/ Dwayne K. Goetzel