# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br> *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br> *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br> *Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br> *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

## AUDIBLE MAGIC CORPORATION'S MOTION TO STRIKE
## BLUE SPIKE'S INFRINGEMENT CONTENTIONS

## TABLE OF CONTENTS

FACTUAL BACKGROUND ....................................................................................................1

    I.  Blue Spike's Infringement Contentions Rely on Information and Belief ..............................................................................................................2

    II.  Audible Magic Provides Publicly Available Information Regarding Its Products ......................................................................................3

    III.  Blue Spike Provides Only a Boilerplate Statement for the Doctrine of Equivalents .....................................................................................4

    IV.  Blue Spike Produced and Identified No Documents to Show Conception and Reduction to Practice ..................................................................................5

    V.  Blue Spike's Amended Infringement Contentions ...........................................5

ARGUMENT ..................................................................................................................................6

    I.  Blue Spike's Claim Charts Fail to Comply with P.R. 3-1(c) ..............................7

        A.  The Infringement Contentions Improperly Rely on Information and Belief ...........................................................................7

        B.  Blue Spike's Amended Claim Charts Remain Deficient .......................9

        C.  Blue Spike Must Specifically Identify the Corresponding Elements in its Infringement Contentions if Granted Leave to Amend ..............12

        D.  Blue Spike Lacked a Rule 11 Basis to Allege Infringement.................12

    II.  Blue Spike Did Not Properly Allege Infringement Under the Doctrine of Equivalents Under P.R. 3-1(d) ..............................................................13

    III.  Blue Spike Fails to Specifically Identify Audible Magic Products ................14

        A.  The Infringement Contentions Identify Only a Generic Technology ..........................................................................................15

        B.  Blue Spike's Proposed Amended Contentions Identify Different Alleged Products and Include In-Person Meetings as Accused Products .........15

## TABLE OF AUTHORITIES

**CASES**

*Connectel, LLC v. Cicso Sys., Inc.,*
    391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) .................................................... 7, 9, 10, 12

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.,*
    2009 U.S. Dist. LEXIS 1644 (E.D. Tex. Jan. 12, 2009) .................................... 7, 13, 14

*Keranos, LLC v. Silicon Storage Tech., Inc.,*
    2013 U.S. Dist. LEXIS 145194 (E.D. Tex. Aug. 2, 2013) ....................................... 9, 14

*Linex Techs. Inc. v. Belkin Int'l, Inc.,*
    628 F. Supp. 2s 703, 712, 713 (E.D. Tex. 2008) ................................................ 9, 10, 12

*Nike, Inc. v. Adidas Am., Inc.,*
    479 F. Supp. 2d 664 (E.D. Tex. 2007) ......................................................................... 13

*Nazomi Communs., Inc. v. Samsung Telecomms., Inc.,*
    2013 U.S. Dist. LEXIS 112763 (N.D. Cal. Aug. 8, 2013) .......................................... 13

**OTHER AUTHORITIES**

Patent Rule 3-1 ................................................................................... 5, 9, 10, 13, 14, 15

35 U.S.C. § 101 ................................................................................................................ 15

Blue Spike's Infringement Contentions make clear that it is attempting to prosecute a phantom case. For 90 of the 110 claims Blue Spike initially asserted against Audible Magic, Blue Spike's only evidence was its own "information and belief." After selecting the 32 claims it will proceed with against Audible Magic, 26 of them are asserted on "information and belief." And even for the six claims that Blue Spike allegedly has some scintilla of evidence, it cannot even identify the infringing Audible Magic products. Audible Magic provided Blue Spike an opportunity to provide sufficient detail to warrant Blue Spike's fishing expedition, but Blue Spike has been completely unable to identify *any* evidence to support assertion of Claims 1, 11, 17, 20, 21 and 29 of the '494 Patent, Claims 1, 6, 7, 10, 11, 40, 49 and 50 of the '700 Patent, Claims 3, 4, 8 and 11 of the '472 Patent, and Claim 15 of the '175 Patent (collectively the "Baseless Asserted Claims"). Even if Blue Spike is granted leave to amend with respect to the 32 asserted claims, there is no reason that these particular claims should be part of the case.

Because Blue Spike's Infringement Contentions fall woefully short of compliance with the Local Patent Rules, Audible Magic submits this motion to strike Blue Spike's deficient Infringement Contentions. If Blue Spike is granted leave amend, it should be prevented from asserting the Baseless Asserted Claims for which it has no evidence. Audible Magic and its customers seek the following:

- The February 26, 2014 contentions against Audible Magic and its customers be struck;
- If the Court grants leave for Blue Spike to amend its contentions, it should be denied with respect to the Baseless Asserted Claims; and
- Any amended contentions regarding the 32 asserted claims must be provided for each of Audible Magic and its customers, and must (1) specifically identify evidence corresponding to each specific claim element, (2) describe in detail its position, on a claim by claim and element by element basis, for its doctrine of equivalents assertions, and (3) provide charts for each accused product (and Blue Spike must not be permitted to accuse Audible Magic "design consultation, custom content databases, de-duplication, and litigation support" services, as these are not even accused "products" at all)

**FACTUAL BACKGROUND**

1

Blue Spike initiated the present action against Audible Magic and its customers on August 27, 2012, broadly accusing Audible Magic's "automated content recognition (ACR) digital fingerprint-based software, systems, and technology." Complaint at 16. In its February 26, 2014 Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions"), Blue Spike provided even less detail with respect to the Audible Magic and its customers' accused products and alleged infringement by "Audible Magic's content recognition technology." Higgins Decl. Exh. 2-5. For most asserted claims (particularly asserted dependent claims), Blue Spike alleged infringement based solely on its own "information and belief." *Id*. Blue Spike also failed to identify any specific Audible Magic products.

As part of the meet and confer process, Blue Spike proposed a revised chart with respect to Audible Magic (but would not do so for Audible Magic's customers). In the revised chart, Blue Spike replaced the "information and belief" language with vague citations to Audible Magic's website that have absolutely nothing to do with the asserted claim language. Blue Spike refused to provide additional detail, leading to the instant motion.

I.  **Blue Spike's Infringement Contentions Rely on Information and Belief.**

In its initial February 26, 2014 Infringement Contentions to Audible Magic and its customers,[1] Blue Spike alleges infringement for at least one element of 90 of 110 claims on nothing more than "information and belief." The table below summarizes the deficient claims:

| Patent | 110 Asserted Claims | Claims Asserted on Information and Belief |
|---|---|---|
| 175 | Claims 1-19 | all claims |
| 472 | Claims 1-14 | 2-5, 8-14 |
| 494 | Claims 1-22; 24-29 | 6, 8-10, 12-22, 25, 26 |
| 700 | Claims 1-11; 13-27; 29-38; 40-51 | 2-17, 22, 23, 26-39, 41-51 |

---

[1] "Customers" refers to the following parties: Facebook, Inc., Myspace LLC/Specific Media LLC, Photobucket.com, Inc., Dailymotion, Inc./Dailymotion S.A., Soundcloud, Inc./Soundcloud Ltd., Myxer, Inc., Qlipso, Inc./Qlipso Media Networks Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Zedge Holdings, Inc., Brightcove, Inc., Coincident.tv, Inc., Accedo Broadband North America/Accedo Broadband AB, Mediafire LLC.

2

On April 4, 2014 Blue Spike made its election of 32 asserted claims required by the Court's Scheduling Order. As demonstrated in the table below, Blue Spike still alleges infringement for 26 of the 32 claims on information and belief:

| Patent | 32 Asserted Claims | Claims Asserted on Information and Belief |
|---|---|---|
| 175 | Claims 8, 11-13, 15-17 | all claims |
| 472 | Claims 3-4, 8, 11 | all claims |
| 494 | Claims 1, 4-5, 11, 17-18, 20-22, 29 | 17-18, 20-22 |
| 700 | Claims 1, 6-8, 10-11, 40, 49-51 | 6-8, 10-11, 49-51 |

The only evidence cited by Blue Spike in its Infringement Contentions are 5 pages from the Audible Magic website (www.audiblemagic.com), which give a generic overview of certain products and service, and one white paper authored by Audible Magic in 2011, which provides a general overview of the content delivery business environment, but does not discuss any specific Audible Magic products. Higgins Decl. Exh. 6.

Blue Spike's February 26, 2014 Infringement Contentions also fail to identify specific products of infringement. Instead, they accuse "Audible Magic's content recognition technology" as the infringing instrumentality. Exh. 2-5. Blue Spike admits, however, that Audible Magic's content recognition technology is a "solution" and not an actual product. *Id.*

## II. Audible Magic Provides Publicly Available Information Regarding Its Products.

Audible Magic's products are available for purchase and use. Blue Spike could have investigated the public operation of those products. Indeed, Audible Magic provides a wealth of publicly available information regarding the operations of its products. For example, Audible Magic hosts a Developer Portal (developers.amdevportal.com), which is free to register with and includes free downloads regarding Audible Magic SDKs, Documentation on Audible Magic products, and even sample Apps using Audible Magic technology. *See* https://developers.amdevportal.com/developers/sdks-documentation-and-sample-apps-0, last visited April 18, 2014. As shown below, these links are clearly marked and easy to find:

3

> **SDKs, Documentation, and Sample Apps**
>
> **Note well:** The below downloads do *not* include:
>
> - Configuration files required to run applications contained in the Audible Magic SDK.
> - E-mail or Phone support
>
> If you wish to run applications contained in the Audible Magic SDK or receive email and phone support, you must order one of the following licenses: Basic Developer Test License, Basic + Developer Test License, Custom Developer Test License, or Technical Support Incident (TSI).
>
> Downloads:
>
> - Audible Magic SDK & API Documentation for iOS, OSX, Android, Linux (32 & 64 bit), and Windows (32 bit).
> - TV Companion iOS Sample App
> - Smart Sync iOS Sample App

*Id.* For example, the Audible Magic SDK & API Documentation link is for a download of 179 MB of information related to Audible Magic products and services. Included in this batch of information are 100+ page User Guide's for Audible Magic APIs that run on Android, iOS, and Windows platforms. These user guides provide instructions and background information for evaluating the sample programs included in the download.

In addition, Audible Magic provides more in-depth testing and evaluation programs that cost a small fee of $499. *See* https://developers.amdevportal.com/developers/test-license-options, last visited April 18, 2014. These evaluation programs provide sample Audible Magic content recognition programs, pre-defined configuration files, and even application briefs regarding the operation of the products. *Id.* Blue Spike did not bother to even review, investigate or test these products, let alone cite to any of this publicly available information. Rather, in its contentions Blue Spike points only to very general statements on Audible Magic's website and attempts to use that as the basis to open wide ranging and unfocused discovery into Audible Magic's sensitive source code repositories and confidential technical documentation.

**III.    Blue Spike Provides Only a Boilerplate Statement for the Doctrine of Equivalents.**

In its February 26, 2014 contentions, the only reference to the doctrine of equivalents is on the cover page to Exhibit A in a boilerplate statement that "[e]ach elements of each asserted claim is present in the accused instrumentalities above either literally, or alternatively, under the

4

doctrine of equivalents." Higgins Decl. Exh. 1.

## IV. Blue Spike Produced and Identified No Documents to Show Conception and Reduction to Practice.

Blue Spike's Infringement Contentions allege that it has no "documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to P. R. 3-1(e)." Exh. 1, at 3. On the April 4, 2014 meet and confer, counsel for Blue Spike informed Audible Magic that it is in possession of documents responsive to P.R. 3-1(e), but that the documents are privileged, and thus are not being produced in this litigation.

## V. Blue Spike's Amended Infringement Contentions

Audible Magic provided a detailed letter to Blue Spike on March 14, 2014 that identified each of the deficiencies in Blue Spike's Infringement Contentions. Audible Magic provided a deadline of March 28, 2014 for Blue Spike to remedy the deficiencies and offered to meet and confer the following week. Audible Magic received no response from Blue Spike. Blue Spike indicated on March 27, 2014 that it was not prepared to meet and confer until April. Higgins Decl. Exh. 7, email from Honea to Higgins, at 2. The parties held a meet and confer on April 7th.

Blue Spike failed to provide its proposed Amended Infringement Contentions to Audible Magic until April 9th, 2014. Blue Spike did not provide amended contentions for any of Audible Magic's customer defendants, despite their request that Blue Spike do so. In response to Audible Magic's complaints regarding the contentions based on "information and belief," Blue Spike removed that language and substituted it with vague and irrelevant citations to Audible Magic's website that have nothing to do with the asserted claim language. *See, e.g.,* Higgins Decl. Exh. 10 at 15. In particular, it is clear from these amendments that Blue Spike has absolutely no evidence upon which to assert the following claims (the Baseless Asserted Claims; as set forth in the argument section below):

5

- Claims 1, 11, 17, 20, 21 and 29 of the '494 Patent,
- Claims 1, 6, 7, 10, 11, 40, 49 and 50 of the '700 Patent
- Claims 3, 4, 8 and 11 of the '472 Patent
- Claims 15 of the '175 Patent

It is obvious that Blue Spike has never acquired the accused Audible Magic products, studied or reverse-engineered them, or even attempted to avail itself of information on the Audible Magic Developer Portal (despite the last two years while this case was pending and despite being informed of them in the first meet and confer). Instead, Blue Spike went back on the internet and found three more generic webpages and included those in its Infringement Contentions to replace any language that previously stated "information and belief."

Blue Spike also added no detail regarding the doctrine of equivalents and maintains that a boilerplate recital is sufficient. Higgins Decl. Exh. 8-11; Higgins Decl. Exh. 13, April 9, 2014 Email from P. Brasher to Audible Magic ("Blue Spike has adequately plead DOE in our infringement contentions for this stage of the litigation.").

In its Amended Contentions, Blue Spike alleges that the Audible Magic accused products are (1) Copyright Compliance Service; (2) CopySense Appliance; (3) Custom Services; (4) Media Identification service; (5) Media Synchronization services; and (6) RepliCheck Application. In its original Infringement Contentions, however, Blue Spike alleged that the accused products were "Audible Magic's content recognition technology ("AM's CRT")— found, on information and belief, in its SmartID, CopySense Appliance, CopySense Custom, CopySense Premier, Live TViD, Music-Speech iD, SmartSync, and RepliCheck products and solutions." Exh. 1, at 2. Other than CopySense Appliance and RepliCheck, there is no overlap between the alleged accused products.

**ARGUMENT**

Blue Spike's Infringement Contentions fall woefully short of complying with the Patent Rules and demonstrate its complete lack of diligence in bringing suit against Audible Magic and

6

its customers. The Patent Rules require the disclosure of a plaintiff's infringement contentions prior to discovery for a reason – to focus discovery and to provide an accused infringer with notice of the accusations against its products. Blue Spike's Infringement Contentions accomplish neither. Blue Spike was required "to rigorously analyze all publicly available information before bringing suit and must explain with great detail [its] theories of infringement." *Connectel, LLC v. Cicso Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005). Even though Audible Magic's products and technical documentation have been available for years, and even after Audible Magic specifically directed Blue Spike to the location of publicly available information, Blue Spike failed to investigate and did not include any such information in its Amended Infringement Contentions. Blue Spike has left Audible Magic with no other choice than to involve the Court in a discovery dispute so early in the case. But when it is clear that a plaintiff who initially asserted over 100 claims against dozens of defendants failed to conduct an adequate pre-suit investigation and willingly chooses to ignore publicly available information, a motion to strike is the only option available to a defendant. Accordingly, Audible Magic requests that the Court strike Infringement Contentions against Audible Magic and its customers and deny any request by Blue Spike to serve the Amended Infringement Contentions provided to Audible Magic on April 9th with respect to the Baseless Asserted Claims.

I.      **Blue Spike's Claim Charts Fail to Comply with P.R. 3-1(c).**

      A.      **The Infringement Contentions Improperly Rely on Information and Belief.**

Blue Spike's claim charts fall woefully short of the high standard required by the Eastern District of Texas. For at least 90 of the 110 claims Blue Spike initially asserted against Audible Magic, Blue Spike alleges infringement for at least one element of those 90 claims on nothing more than "information and belief." *See, e.g., Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *7 (E.D. Tex. Jan. 12, 2009) ("A party may not rely on vague,

7

conclusory language or simply mimic the language of the claims."). For example, the claim chart for claim 13 of the '175 patent provided only the following recital of the claim language:

| 13. The system of claim 11, wherein said compare result indicates a match between said digital query signal abstract and a first digital reference signal abstracts of said plurality of digital reference signal abstracts stored in said database. | As established above, AM's CRT infringes Claim 11, and, on information and belief, the compare result could indicate a match between the digital query signal abstract to the plurality of digital reference signal abstracts stored in the database. Further discovery will be needed to chart the infringing instrumentality. |

Exh. 2, at 36. Looking only to its selection of 32 asserted claims, there are still 25 other claims with a similar statement parroting the claim language, evidencing a total lack of support:

| Patent | 32 Asserted Claims | Claims Asserted on Information and Belief |
|---|---|---|
| 175 | Claims 8, 11-13, 15-17 | all claims |
| 472 | Claims 3-4, 8, 11 | all claims |
| 494 | Claims 1, 4-5, 11, 17-18, 20-22, 29 | 17-18, 20-22 |
| 700 | Claims 1, 6-8, 10-11, 40, 49-51 | 6-8, 10-11, 49-51 |

Blue Spike had no basis to assert these claims against Audible Magic or its customers. Basing infringement contentions on "information and belief" shows that Blue Spike has no proof.

Blue Spike, relies upon "information and belief" because it failed to investigate the products it accuses, failed to review publicly available information before bringing this suit, and then failed to take advantage of the 18 months since the case was filed to review any publicly available information. If Blue Spike cannot follow the Rules of this Court and analyze publicly available information to prepare adequate infringement contentions, then Audible Magic should not be required to bear the burden and expense of overbroad discovery and a prolonged litigation. Blue Spike had, and continues to have, no proof of infringement for nearly all of its asserted claims. Its contentions fail to provide proper notice to Audible Magic and fail to establish any basis for the wide-ranging and burdensome discovery that Blue Spike's broad, unsupported claims would require. Accordingly, its Infringement Contentions for claims based only on information and belief should be struck.

8

### B. Blue Spike's Amended Claim Charts Remain Deficient.

Even if the Court were to permit Blue Spike leave to amend and enter its proposed Amended Infringement Contentions, Blue Spike's amended claim charts still fall woefully short of the high standard required by the Eastern District of Texas and do not identify where each element of each claim is found within the accused products. It is clear that Blue Spike still has not even attempted to study Audible Magic's publicly available software, SDKs, API documentation, test apps or other technical materials or to engage in any robust analysis or reverse engineering of the products it accuses. That material has been available to Blue Spike prior to August 2012 when this case was filed. Such diligent preparation was required prior to filing a complaint and is certainly required as part of the submission of infringement contentions under the Patent Local Rules. *See e.g. Keranos, LLC v. Silicon Storage Tech., Inc.*, 2013 U.S. Dist. LEXIS 145194 (E.D. Tex. Aug. 2, 2013) ("the burden is on Plaintiff, not Defendants, to search for and identify infringing products to the extent possible based on publically available information."); *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2s 703, 712 (E.D. Tex. 2008) (noting that "reverse engineering" would "evidence Plaintiff's diligence in preparing the Infringement Contentions" for a complex technology instead of just relying on product manuals).

Instead, Blue Spike just quotes broadly from the same marketing materials (irrespective of products) and seeks to aim in the most general way at a category of technology offered by Audible Magic and then embark on an enormous and burdensome fishing expedition, particularly with respect to the dependent claims. This is precisely what the Patent Local Rules are designed to *prevent*. *Connectel, LLC v. Cisco Sys.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) ("Patent Rule 3-1 requires the plaintiff to state "specific theories of infringement" in their PICs.") Parties must evaluate their infringement contentions early in litigation, so "the case takes a clear path, focusing discovery on building precise final infringement or invalidity

contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Id.* Blue Spike's attempted fishing expedition into Audible Magic's highly confidential source code in an attempt to find an infringing product flies in the face of this Court's Patent Rules.

Thus, notwithstanding that Blue Spike studiously removed the words "upon information and belief" from its amended contentions, Blue Spike did not even come close to meeting its obligations under the Patent Local Rules. Patent Rule 3-1(c) specifically requires a plaintiff to include a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." This Court has previously held that a patentee cannot simply cite to an accused infringer's product manuals and publications without identifying any corresponding elements of the asserted claims in those references. *Linex Techs.*, 628 F. Supp. 2d at 711. "Like *Connectel*, Plaintiff [Blue Spike] has failed to identify any structure, process, system, or apparatus within the Accused Products that corresponds to any claim limitation." *Id.* For example, the following particular claims—the Baseless Asserted Claims—have been asserted by Blue Spike with no relevant support whatsoever. If the court grants leave for Blue Spike to submit amended contentions, the 32 claims it has asserted should be reduced and it should be precluded from asserting these claims which have no factual basis at all:

- '494 Patent, Claims 20 and 21 and '700 Patent, Claims 10, 11, 49, and 50; Blue Spike fails to point to any evidence at all regarding any purported "cryptographic protocol," "hash" or "digital signature." Rather, Blue Spike makes an enigmatic citation to language from Audible Magic's website about the size of a database.

- '472 Patent, Claims 3, 4, 8 and '175 Patent, Claim 15; Blue Spike fails to point any evidence at all regarding creating a "counter corresponding to one of said at least one reference signals" which is "representative of the number of times a match is found between the abstract of said at least one query signal and the abstract of said at least one reference signal," "recording an occurrence of a match," a "recorder recording a number of times said at least one processor determines a match between a digital query signal abstract and first digital reference signal abstract of said plurality of digital reference signal abstracts" or "generating a report that identifies the reference signal whose abstract matched the abstract of said at least one query signal." Instead, Blue Spike just points to general language regarding monitoring content.

10

- '472 Patent, Claim 11; Blue Spike fails to point to any evidence regarding "a processor that creates an abstract of a signal using selectable criteria." Rather, Blue Spike merely points to a general recitation of content recognition technology that says nothing about any criteria that are "selectable" in the creation of any "abstract."

- '472 Patent, Claim 11; Blue Spike fails to point to any evidence regarding any alleged "comparing device" that "identifies at least two abstracts in the reference database that match the abstract of said at least one query signal and an index of relatedness to said at least one query signal for each of said at least two matching abstracts." Again, Blue Spike only points to general material about content recognition technology and there is no support for any "index of relatedness."

- '494 Patent, Claims 1, 11, 29 and '700 Patent, Claims 1, 6, 40; Blue Spike fails to point to any evidence regarding different "versions" of "signals." Rather, Blue Spike only points to general descriptions of technology to identify content.

- '494 Patent, Claim 17 and '700 Patent, Claim 7; Blue Spike fails to point to any evidence regarding any technology involving any alleged "data describing a portion of the characteristics of" any associated "reference signal." Instead, Blue Spike only references a general description of content identification technology.

*See* Exh. 8-11 (claim chart excerpts). Even though these asserted claims demonstrate the most serious lack of support, basic claim elements in other independent claims also show Blue Spike's lack of diligence and investigation. For example, a basic claim element such as a processor in the '175 patent, Blue Spike asserts only that "it is obvious to anyone skilled in the art that a processor is used to execute the technology's algorithms." *See* Exh. 8. Other examples include elements in the '494 patent such as "a comparing device," which Blue Spike points to "a server or other computer" with no specificity, "a first processor" and "a second processor," which Blue Spike contends are both present with no support, and "a first input" and "a second input," which Blue Spike also alleges must necessarily be present in any system in the world. *See* Exh. 10. Even the citations that Blue Spike seemingly provides for these elements are completely irrelevant. For example, with respect to "a second input" Blue Spike cites to Audible Magic's website describing the low rate of false positives. *Id.* If Blue Spike cannot even identify basic elements of an allegedly infringing system, then its contentions should be struck in their entirety.

At the least, the Baseless Asserted Claims should be struck without leave to amend. Blue

11

Spike is unable to even allege with any particularity the 32 asserted claims allotted by the Court. It should not be permitted to reach the 32 claim limit through complete conjecture, unsupported by any facts. This will provide an efficient path forward on the subset of the 32 asserted claims that Blue Spike has actually provided at least some evidence that relates to the claim language.

### C. Blue Spike Must Specifically Identify the Corresponding Elements in its Infringement Contentions if Granted Leave to Amend.

Because Blue Spike showed no diligence and failed to investigate publicly available information, it should be given little latitude if allowed to amend. *See Linex Techs.*, 628 F. Supp. 2d at 713 (requiring defendant to specifically link claim limitations all non-public information on the accused products). Thus, to the extent the Court provides Blue Spike with leave to further amend its Infringement Contentions with respect to the claims beyond the Baseless Asserted Claims, Blue Spike should be required in its claim charts "to highlight…the text of every piece of cited literature where elements of the asserted claims are found." *Connectel*, 391 F. Supp. 2d at 529 (requiring plaintiff to specifically identify each element in the cited documents in its claim charts after failing to initially do so). After two attempts Blue Spike has been unable to complete this most basic task under the Patent Rules. And as in *Connectel* and *Linex*, the pre-suit diligence here by Blue Spike is nearly nonexistent. Thus, highlighting the specific support is necessary to ensure that Blue Spike provides adequate contentions.

### D. Blue Spike Lacked a Rule 11 Basis to Allege Infringement.

It is also apparent that Blue Spike did not have any basis to allege infringement prior to April 1, 2014. Blue Spike's Amended Infringement Contentions now cite for nearly every claim element documentation that was not procured until at least April 1, 2014. Higgins Decl. Exh. 14 showing dates of April 1, 2014; Exs. 8-11 showing Exhibits 6 and 7 with a date of retrieval of April 7, 2014. All of these exhibits are publicly available and were not included in Blue Spike's February 26, 2014 Infringement Contentions. As indicated by the dates on the documents, that is

because Blue Spike obviously never even attempted to review them until April. Accordingly, Blue Spike had no Rule 11 basis to allege infringement by Audible Magic.[2]

## II. Blue Spike Did Not Properly Allege Infringement Under the Doctrine of Equivalents Under P.R. 3-1(d).

Blue Spike makes no claim of infringement under the doctrine of equivalents. The only reference to the doctrine of equivalents is on the cover page to Exhibit A in a boilerplate statement that "[e]ach element of each asserted claim is present in the accused instrumentalities above either literally, or alternatively, under the doctrine of equivalents." This is not the level of specificity required by P.R. 3-1(d) and courts in the Eastern District of Texas have routinely struck doctrine of equivalents allegations when they were not properly alleged in a plaintiff's infringement contentions. *See, e.g., Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664 (E.D. Tex. 2007); *see also Davis-Lynch, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *18 (requiring plaintiff to describe in detail its position, on a claim by claim basis, for either literal infringement or the doctrine of equivalents); *see also Nazomi Communs., Inc. v. Samsung Telecomms., Inc.*, 2013 U.S. Dist. LEXIS 112763, at *18 (N.D. Cal. Aug. 8, 2013) ("[a] boilerplate reservation is inadequate, and courts have frequently dismissed claims under the doctrine of equivalents based upon boilerplate language in their infringement contentions.").

In its Amended Infringement Contentions, Blue Spike now includes the same boilerplate statement in each independent claim. When confronted with this deficiency for a second time, Blue Spike's response to Audible Magic was that "Blue Spike has adequately plead DOE in our infringement contentions for this stage of the litigation." Higgins Decl. Exh. 13. We are well past the pleading stage and the Patent Rules set the bar much higher. Audible Magic gave Blue

---

[2] On March 27th, Blue Spike suggested that it planned to seek leave from the Court to assert an additional 39 claims. Blue Spike cannot even provide infringement contentions for the 32 claims it is currently asserting. If Blue Spike files a motion seeking leave to allege more claims, Audible Magic will seek its fees and costs associated with responding to such a baseless motion.

13

Spike a chance to remedy its deficiency, but Blue Spike refused. Blue Spike's improper attempt to keep the doctrine of equivalents in its back pocket must be struck.

### III. Blue Spike Fails to Specifically Identify Audible Magic Products.

Blue Spike's Infringement Contentions identify no specific products of infringement as required by P.R. 3-1(b), and therefore, fail to provide notice to Audible Magic of which products are at issue in the case. It is clear that Blue Spike has no clue what products it is targeting and its reliance on "information and belief" belie any statement to the contrary. If Blue Spike cannot identify specific products of infringement, its contentions must be struck.

#### A. The Infringement Contentions Identify Only a Generic Technology.

Blue Spike merely alleges that "Audible Magic's content recognition technology" is the infringing instrumentality. Exh. 2-5. Blue Spike admits, however, that Audible Magic's content recognition technology is just a "solution" and not an actual product. *Id.* In an attempt to remedy this lack of any accused products, Blue Spike asserts "on information and belief" that nine Audible Magic "products and solutions" include Audible Magic content recognition technology. Given the lack of proof for many of the claim elements asserted by Blue Spike, Audible Magic cannot identify which accused products contain the allegedly infringing "solution." Moreover, it is not Audible Magic's burden to search for and identify for Blue Spike which products should be accused of infringement based on overbroad and unsupported allegations. *Keranos, LLC v. Silicon Storage Tech., Inc.*, 2013 U.S. Dist. LEXIS 145194, at *14 (E.D. Tex. Aug. 2, 2013); *Davis-Lynch, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *15 ("A party may not blindly accuse every product a defendant produces and expect to narrow its claims at its own convenience."). The Patent Rules "demonstrate high expectations as to plaintiff's preparedness before bringing suit" and it is clear that Blue Spike was not prepared. *See Id.*

Accordingly, Blue Spike's Infringement Contentions fail to comply with P.R. 3-1(b).

14

Blue Spike cannot identify a single Audible Magic accused product based on any evidence other than "information and belief." As a result, its Infringement Contentions should be struck.

### B. Blue Spike's Proposed Amended Contentions Identify Different Alleged Products and Include In-Person Meetings as Accused Products.

Even if the Court were to permit Blue Spike leave to amend and enter its proposed Amended Infringement Contentions, such an exercise would be futile. In its Amended Infringement Contentions, Blue Spike now provides six separate claim charts for each patent directed to the following alleged products: (1) Copyright Compliance Service; (2) CopySense Appliance; (3) Custom Services; (4) Media Identification service; (5) Media Synchronization services; and (6) RepliCheck Application. Blue Spike alleges that all of these services infringe because they employ "Audible Magic's Automatic Content Recognition (ACR) technology." What is troubling is that Blue Spike labels this ACR technology as a "system" in some claims (e.g., claim 8 of the '175 patent), but then blindly labels the same ACR technology a "method" in other claims (e.g., claim 3 of the '175 patent). It cannot be both. Indeed, Blue Spike points to nothing in its claim charts that corresponds to any element of a system claim.

Even more troubling is Blue Spike's allegation that "design consultation, custom content databases, de-duplication, and litigation support" are "products" that infringe the asserted claims. Higgins Decl. Exh. 12, at 1. If Blue Spike is alleging that a design consultation between Audible Magic and a potential customer practices the asserted claims, then the claims are invalid under 35 U.S.C. §101. Any contentions related to these services should be struck.

Unless Blue Spike can identify specific Audible Magic products and provide corresponding claim charts that comply with P.R. 3-1(c), then Audible Magic should not be forced to engage in overbroad discovery. Blue Spike's Infringement Contentions should be struck and leave to amend should be denied.

15

Dated: April 21, 2014

By:

    */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

16

**CERTIFICATE OF CONFERENCE**

We hereby certify that Audible Magic complied with the meet and confer requirement in Local Rule CV-7(h). Blue Spike indicated that it opposes Audible Magic's motion. The parties conducted two meet and confers to discuss Blue Spike's Infringement Contentions. The first meet and confer was a telephonic conference held on April 3rd, 2014 at 2:30 EST. Present for Audible Magic were Gabriel Ramsey, Chris Higgins, and Alyssa Caridis. Present for Blue Spike were Randall Garteiser and Chris Honea. No agreement was reached. The parties agreed to conduct another meet and confer on April 7th, 2014 at 3:00 EST. Present for Audible Magic were Gabriel Ramsey, Chris Higgins, and Alyssa Caridis. Present for Blue Spike were Randall Garteiser and Chris Honea. No agreement was reached and the parties are at an impasse, requiring the Court's intervention.

*/s/ Eric H. Findlay*
Eric H. Findlay

*/s/ Gabriel M. Ramsey*
Gabriel M. Ramsey

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on April 21, 2014.

*/s/ Eric H. Findlay*
Eric H. Findlay