# Exhibit 8



# Developer Portal

*Enhance Your Applications With Automated Content Recognition*

Home

## Terms of Service

End User Agreement

PLEASE REVIEW THIS LIMITED DEVELOPERS KIT LICENSE & NON-DISCLOSURE AGREEMENT (THIS "AGREEMENT") CAREFULLY, AS IT CONSTITUTES A LEGAL AGREEMENT BETWEEN YOU ("YOU" OR "CUSTOMER") AND AUDIBLE MAGIC CORPORATION ("Audible Magic" OR "WE").

IN ORDER TO USE AUDIBLE MAGIC'S SERVICES, AS DESCRIBED MORE FULLY HEREIN, YOU MUST FIRST READ THIS AGREEMENT AND INDICATE YOUR ACCEPTANCE OF ALL OF THE TERMS AND CONDITIONS SET FORTH BELOW BY SELECTING THE "AGREE" CHECKBOX. IF YOU DO NOT ACCEPT ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU SHOULD NOT CHECK THE "AGREE" CHECKBOX, IN WHICH CASE YOU WILL NOT BE ALLOWED TO USE THE SERVICES. THIS IS AN AGREEMENT ONLY FOR THE SERVICES DESCRIBED HEREIN AND YOU ARE NOT BEING GRANTED A LICENSE TO ANY SOFTWARE OF ANY KIND.

1. LICENSE GRANT. Audible Magic grants Licensee a non-exclusive and non-transferable license to use the executable code version for the for the sole purpose of (i) evaluation and trial or (ii) development of non-revenue generating demonstration applications for internal use or for prospective customers, for a limited time. Licensee may not use the Products for any other purpose, including without limitation, operation of its business, development of other services and/or applications for ongoing use, or providing ongoing services to others. Licensee may make a limited number of copies of the Products as required to conduct its evaluation and application development and demonstration, provided each copy is governed by the terms of this Agreement. While Audible Magic intends to distribute a commercial release of the Products, Audible Magic reserves the right at any time not to release a commercial release of the Products or, if released, to alter prices, features, licensing terms, or other characteristics of the commercial release. The license granted here shall limits access to 200 look-up transactions per day against Audible Magic's reference database at a rate of no more than one transaction per second.

2. FEES. License fees are specified on this website at developer.audiblemagic.com. Each payment for the Developers Kit License is a non-refundable prepayment for Services provided during the Term of this Agreement. All amounts are expressed in and all payments shall be made in United States Dollars.

3. TERM AND TERMINATION. Either party may terminate this agreement at any time by providing proper written notice. The license will automatically terminate earlier if Licensee fails to comply with the limitations described herein. Licensee must destroy all copies of the Products upon termination.

4. PROPRIETARY RIGHTS. Title, ownership rights, and intellectual property rights in the Products shall remain in Audible Magic and/or its suppliers. Licensee acknowledges such ownership and intellectual property rights and will not take any action to jeopardize, limit or interfere in any manner with Audible Magic's or its suppliers' ownership of or rights with respect to the Products. The Products are protected by copyright and other intellectual property laws and by international treaties. Title and related rights in the content accessed through the Products are the property of the applicable content owner and are protected by applicable law. The license granted under this Agreement gives Licensee no rights to such content.

5. DEMONSTRATION APPLICATIONS. Licensee undertakes to ensure that every product demonstration or demonstration application incorporating or using the Products, made or developed by or on behalf of the Licensee under this agreement displays the Audible Magic logo and the words "Powered by Audible Magic"(the "Attribution") in a prominent manner. In the case of any application or visual demonstration, the Attribution shall be displayed on at least the opening and closing screens. Licensee is allowed to use Products to demonstrate Licensee's software to individual customers, partners, and investors on a limited basis without prior approval. Licensee will not without the prior written consent of Audible Magic, demonstrate any product or application incorporating or utilizing the Products in any public forum including, without limitation, in any press or media interviews, on the internet, in advertising or promotional material, or at any trade fair or conference. During and after the term of this agreement, Audible Magic may use any application developed by or on behalf of the Licensee under this agreement for the purposes of displaying and demonstrating the capability of Audible Magic products and services

to any third party provided that (i) the application has been publicly released, or (ii) Licensee has consented in writing to such use by Audible Magic.

6. PUBLICITY. Audible Magic shall have the right to use the name of Licensee in publicity, advertising, and sales promotion with the prior consent of Licensee, such consent not to be unreasonably withheld or delayed. Notwithstanding the foregoing, Audible Magic will not be required to obtain Licensee's prior consent to include Licensee's name in public lists of Audible Magic clients.

7. CONFIDENTIALITY AND NON-DISCLOSURE. Non-disclosure between Audible Magic and the Company is for the purpose of preventing the unauthorized disclosure of Confidential Information (as defined below) of the Disclosing Party (as defined below) which may be disclosed to the Receiving Party (as defined below) for the purpose of pursuing a business relationship between the parties. For purposes of this Agreement, the party who discloses Confidential Information shall be known as the "Disclosing Party" and the party who receives Confidential Information shall be known as the "Receiving Party."

For purposes of this Agreement, "Confidential Information" shall mean all information relating to the Disclosing Party's technology and business, including financial or business plans and affairs, financial statements, internal management tools and systems, marketing strategy and plans, clients, contracts, products and programs, metadata, business rules, unique Audible Magic identifiers, other identification information including identification information associating metadata with any identified files or other unique file identifier, product and program development plans, hardware, firmware, software programs and other technology disclosed by the Disclosing Party or its predecessors.

In consideration of the Disclosing Party's disclosure of Confidential Information to the Receiving Party, the Receiving Party hereby agrees as follows:

a. The Receiving Party shall hold and maintain the Confidential Information in confidence. The Receiving Party shall use the Confidential Information for the sole and exclusive purpose of evaluating pursuit of a business relationship with the Disclosing Party and for no other purpose and the Receiving Party shall not disclose the Confidential Information to any third party.

b. The Receiving Party shall not, without the prior written approval of the Disclosing Party, use, publish or otherwise disclose to others, any of the Confidential Information. Receiving Party may disclose the Confidential Information to its officers, directors, employees and professional advisors who need access to such information in order to advise Receiving Party. The Receiving Party will advise each of the persons to whom it provides access to any of the Confidential Information that such persons are strictly prohibited from making any use, publishing or otherwise disclosing to other any of the Confidential Information.

c. The Products and the Test are Confidential Information. Except as expressly permitted under Section 4, Licensee will not disclose Products or Test or any comments regarding Products or Test to any third party without the prior written approval of Audible Magic.

d. The Disclosing Party may terminate this Non-disclosure provision at any time upon written notice. Upon such termination, the Receiving Party will return all Confidential Information to the Disclosing Party in accordance with Section 5 below and the obligations set forth herein shall continue in full force and effect for a period of three (3) years from the date of termination of this Agreement.

e. The Receiving Party shall have no obligation with respect to any portion of such Confidential Information which (i) was known to it prior to receipt from the other party, (ii) is lawfully obtained by it from a third party under no obligation of confidentiality, (iii) is or becomes publicly available other than as a result of any act or failure to act of Receiving Party, or (iv) is disclosed pursuant to any judicial or governmental request, requirement or order; provided, however, the Receiving Party takes all reasonable steps to provide prompt and sufficient notice to the Disclosing Party so that the Disclosing Party may contest such request, requirement or order. If Receiving Party claims that Confidential Information received by it is subject to any of the exclusions contained in clauses (i) through (iv) above, it shall have the burden of establishing the applicability of such exclusion by clear and convincing documentary evidence.

f. The Receiving Party shall return to the Disclosing Party and erase from all electronic media (or, if requested by the Disclosing Party, destroy) any and all records, notes and other written, printed or tangible materials pertaining to the Confidential Information immediately upon termination of this Agreement or upon the written request of the Disclosing Party.

g. Nothing set forth herein shall be deemed to be a transfer or assignment of Confidential Information from the Disclosing Party to the Receiving Party.

h. The Receiving Party agrees that, due to the unique nature of the Confidential Information, the unauthorized disclosure or use of the Confidential Information will cause irreparable harm and significant injury to Disclosing Party, the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, Receiving Party agrees that Disclosing Party, in addition to

any other available remedies, shall have the right to seek an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement. Receiving Party shall notify Disclosing Party in writing immediately upon Receiving Party's becoming aware of any such breach or threatened breach.

8. RESTRICTIONS. Except as otherwise expressly permitted in this Agreement, and in addition to any other restrictions herein, Licensee may not: (i) modify or create any derivative works of the Products or documentation, including translation or localization; (ii) decompile, disassemble, reverse engineer, or otherwise attempt to derive the source code for the Products (except to the extent applicable laws specifically prohibit such restriction); (iii) redistribute, encumber, sell, rent, lease, sublicense, use the Products in a timesharing or service bureau arrangement, or otherwise transfer rights to the Products; (iv) copy the Products (except for an archival copy which must be stored on media other than a computer hard drive) or documentation; (v) remove or alter any trademark, logo, copyright or other proprietary notices, legends, symbols or labels in the Products; (vi) modify any header files or class libraries in the Products; (vii) create or alter tables or reports relating to the database portion of the Products (except as necessary for testing the Products); (viii) publish or disclose any results of benchmark tests run on the Products or disclose Products features, errors or bugs to a third party without Audible Magic's prior written consent; (ix) and use the Products for any purpose other than trial and evaluation or demonstration.

9. DISCLAIMER OF WARRANTY. THE PRODUCTS ARE PROVIDED ON AN "AS IS" BASIS, WITHOUT WARRANTY OF ANY KIND, INCLUDING WITHOUT LIMITATION THE WARRANTIES THAT IT IS FREE OF DEFECTS, MERCHANTABLE, FIT FOR A PARTICULAR PURPOSE OR NON-INFRINGING. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PRODUCT ARE BORNE BY LICENSEE. SHOULD THE PRODUCTS PROVE DEFECTIVE IN ANY RESPECT, LICENSEE AND NOT AUDIBLE MAGIC OR ITS SUPPLIERS ASSUMES THE ENTIRE COST OF ANY SERVICE AND REPAIR. THIS DISCLAIMER OF WARRANTY CONSTITUTES AN ESSENTIAL PART OF THIS AGREEMENT. NO USE OF THE PRODUCTS IS AUTHORIZED HEREUNDER EXCEPT UNDER THIS DISCLAIMER.

10. LIMITATION OF LIABILITY. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL AUDIBLE MAGIC OR ITS SUPPLIERS BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR INABILITY TO USE THE PRODUCTS, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER COMMERCIAL DAMAGES OR LOSSES, EVEN IF ADVISED OF THE POSSIBILITY THEREOF, AND REGARDLESS OF THE LEGAL OR EQUITABLE THEORY (CONTRACT, TORT OR OTHERWISE) UPON WHICH THE CLAIM IS BASED. IN ANY CASE, AUDIBLE MAGIC'S ENTIRE LIABILITY UNDER ANY PROVISION OF THIS AGREEMENT SHALL NOT EXCEED THE FEES LICENSEE PAID FOR THIS LICENSE (IF ANY), WITH THE EXCEPTION OF DEATH OR PERSONAL INJURY CAUSED BY THE NEGLIGENCE OF AUDIBLE MAGIC TO THE EXTENT APPLICABLE LAW PROHIBITS THE LIMITATION OF DAMAGES IN SUCH CASES. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THIS EXCLUSION AND LIMITATION MAY NOT BE APPLICABLE. AUDIBLE MAGIC IS NOT RESPONSIBLE FOR ANY LIABILITY ARISING OUT OF CONTENT PROVIDED BY LICENSEE OR A THIRD PARTY THAT IS ACCESSED THROUGH THE PRODUCTS AND/OR ANY MATERIAL LINKED THROUGH SUCH CONTENT.

11. MISCELLANEOUS. (a) This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof. (b) Audible Magic may modify the terms of this agreement at any time and without notice. (c) This Agreement shall be governed by the laws of the State of California, U.S.A., excluding its conflict of law provisions. (d) All disputes relating to this Agreement (excepting any dispute relating to intellectual property rights) shall be subject to final and binding arbitration in Santa Clara County, California with the losing party paying all costs of arbitration