UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **Blue Spike, LLC** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:12-cv-499 |
| **Texas Instruments, Inc.** | § § § | |
| Defendants | § | |

---

| | | |
|---|---|---|
| **Blue Spike, LLC** | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Case No. 6:13-cv-00124 |
| **Cognitec Systems Corporation** <br> **Cognitec Systems GmbH** | § § § § | |
| Defendants | § | |

**COGNITEC SYSTEMS GMBH'S REPLY
IN SUPPORT OF THE RE-FILED MOTION TO DISMISS**

1

Blue Spike, LLC's ("Blue Spike") response ("Response") to Defendant Cognitec Systems GmbH's ("Cognitec Germany") re-filed *Motion to Dismiss* **grossly** misstates and mischaracterizes the testimony of the two witnesses that Blue Spike deposed. Given the page limitations, Cognitec Germany has addressed these inaccuracies in detail in **Exhibit 4** to this brief. Regardless, the accurately stated testimony of these witnesses (as set forth in the re-filed motion and herein) demonstrates that the Court should dismiss Cognitec Germany because it is a separate corporate entity from its U.S. subsidiary (Cognitec Systems Corp., referred to herein as "Cognitec U.S.") under the relevant Hargrave factors.

With respect to the first Hargrave factor concerning headquarters, Blue Spike's sole evidence consists of two website pages which state that Dresden, Germany is the headquarters for Cognitec Germany and those webpages do not use the word "headquarters" for Cognitec U.S.'s headquarters in Massachusetts. *See* Response, p. 3. The testimony of both deposed witnesses is that Cognitec Germany is headquartered in Dresden, Germany and Cognitec U.S. is headquartered in Rockland, Massachusetts. *See* Kelesoglu Depo, 203:16-19 and 20-22, 204:2-5; Herrera Depo, 75:7-13, 77:14-16.[1] There is no evidence of the two companies ever sharing the same headquarters. The witnesses' testimony also did not change when they were showed these webpage printouts during deposition. Kelesoglu Depo, 94:9-19; Herrera Depo, 88:17-24 and 91:25 to 92:7. Blue Spike cites to no other relevant evidence in its Response.

Not content with this testimony, Blue Spike's Response then goes through numerous tangents which have nothing to do with the controlling case law,[2] makes numerous false

---

[1] Mr. Herrera's full deposition transcript was filed by Blue Spike as Exhibit 4 to the Response. Mr. Kelesoglu's full deposition transcript was filed by Blue Spike as Exhibit 5 to the Response.

[2] For instance, Blue Spike **misquotes** from the Hertz case that a "corporation's headquarters is the 'actual center of direction, control, and coordination' where a 'corporation's officers direct control, and coordinate the corporation's activities.' " *See* Response, p. 3. This case addressed the meaning of a "principal place of business" within certain

2

statements regarding the testimony of the witnesses,[3] and references allegations which are both false and irrelevant to the issue at hand.[4] Cognitec U.S. and Cognitec Germany are separately incorporated companies, with their own employees, and own offices. For these reasons, the Court should find that this Hargrave factor supports dismissal.

Blue Spike next falsely alleges that corporate formalities were not followed because annual shareholder meetings allegedly did not occur for Cognitec U.S. *See* Response, p. 5. There is no evidence cited by Blue Spike to support this allegation. In fact, each witness deposed for Cognitec U.S. and Cognitec Germany testified that shareholder meetings for Cognitec U.S. occurred annually. *See* Kelesoglu Depo, 83:24 to 84:9; Herrera Depo, 118:4-20. Moreover, Cognitec U.S. produced to Blue Spike documents from 2003, 2008, 2009, 2011, and

---

federal statutes, not whether a company's location is a "headquarters" with respect to Hargrave's personal jurisdiction factors. Blue Spike manipulated this quote by replacing the words "principal place of business" with "headquarters" within the quote. Regardless, the day-to-day operations of Cognitec U.S. are directed, controlled, and coordinated by Cognitec U.S. in Massachusetts. *See* Kelesoglu Depo, 206:11 to 207:7; Herrera Depo, 182:11-15. Thus, even under the Hertz standard, the headquarters for Cognitec U.S. is in Massachusetts.

[3] As detailed in **Exhibit 4**, Blue Spike's response is littered with numerous egregiously misrepresented and false statements. For instance, the following sentence appears on page 4 of the Response: "In fact, the only Cognitec Corp. employee with access to financial records and accounts is Mr. Herrera's assistant in Miami, Florida; but no employee has authority to sign checks." Blue Spike cites to the following deposition testimony to allegedly support these allegations:
>    Q. So can you explain to me what it means for the administrative assistant to report to the president?
>    A. Make sure that accounting firm gives the accounting books correctly and make sure that the payroll is paid. That's it.

Kelesoglu Depo, 33:12-18.
>    Q. When paychecks are issued, are they signed by the administrative assistant?
>    A. No. By APD.

Kelesoglu Depo, 111:17-19.
Mr. Kelesoglu never stated that there is one employee with access to the financial records and accounts and never stated that the employee is an assistant to Mr. Herrera. Mr. Kelesoglu also never stated that no employee has authority to sign checks. He was not even discussing checks; he was discussing paychecks for employees. This is just one example of the type of "support" Blue Spike is relying upon for its motion. The Court should carefully scrutinize every statement made by Blue Spike (as outlined in **Exhibit 4**).

[4] Blue Spike's Response cites to numerous irrelevant facts that the Court should not consider (and in many cases misrepresents the testimony of the witnesses as detailed in **Exhibit 4**). For example, it is irrelevant whether the President of Cognitec U.S. resides in Massachusetts or not. The day-to-day operations for Cognitec U.S. are still controlled at that location. It is irrelevant that the managers talk to the President by phone. It is irrelevant that the budgets for Cognitec U.S. are sent to the President of the company and consolidated with its parent corporation. *See* Blue Spike's Response, pp. 3-4. These are all typical occurrences in corporations.

3

2012, which demonstrate shareholder activity and/or shareholder meetings for Cognitec U.S. *See* CSC 00013-29, attached as **Exhibit 5**.[5]

With respect to the next Hargrave factor (re: accounting systems), Cognitec U.S. and Cognitec Germany have separate bank accounts, separate accounting and payroll systems, separate insurance contracts, separate budgets (which are separately prepared and then consolidated with Cognitec Germany's other subsidiaries), and separate financial records. *See* Kelesoglu Depo, 204:6 to 205:18; Herrera Depo, 179:19 to 180:10, 180:16-19, 181:3-4. This is uncontested.

Blue Spike's arguments with respect to this factor are irrelevant. *See* Response, p. 6. For instance, it is common for a parent corporation's financial department to coordinate with a subsidiary's financial department (to ensure consistency), and it is common for a subsidiary's budget to be consolidated with a parent company's budget to form an overall budget. *See* Response, p. 6. None of these allegations by Blue Spike prove that Cognitec U.S. and Cognitec Germany are not separate companies under the Hargrave analysis.

The final two factors concern the operation of the businesses on a general and day-to-day basis. Blue Spike does not dispute that each entity has control over its own general policy decisions, including product lines, hiring and firing, and approval of capital investments. Kelesoglu Depo, 15:15 to 16:5, 45:15-18; Herrera Depo, 182: 6-10 and 16-20. In response, Blue Spike's Response raises two irrelevant issues. First, Blue Spike states that the President of Cognitec U.S. wrote the Employee Manual. *See* Response, p. 6. It is typical for the President of

---

[5] Cognitec is an incorporated business in the United States, has issued U.S. stock, has issued U.S. corporate resolutions, pays its U.S. corporate taxes, issues U.S. financial statements, has its own U.S. corporate employee handbook, and has its own U.S. corporate insurance. *See* CSC 0001-182, attached hereto as **Exhibit 5**. These are all activities done by a valid and existing U.S. corporation following the applicable U.S. corporate formalities.

the company to be an author of the Employee Manual.[6] Second, Blue Spike states that Cognitec Germany's controller "instructs" Cognitec U.S.'s administrative assistant on how to book revenue consistent international best practices, and with the practices of Cognitec Germany. *See* Response, p. 6. Again, it is typical for a parent company to instruct a subsidiary in this regard, and Blue Spike does not explain how these practices are atypical between a parent and its subsidiary. Regardless, the day-to-day business and operational decisions are controlled by each entity independently. Kelesoglu Depo, 206:11 to 207:7; Herrera Depo, 182:11-15. In response, Blue Spike alleges that Mr. Kelesoglu allegedly could not define what "day-to-day" means, which is also untrue:

> Q. So to you, does day-to-day operations mean or entail things that happen every week, more than once through the week?
> A. Day-to-day operations **means**, to me, running the business day-to-day.

Kelesoglu Depo, 158:2-6 (emphasis added). Blue Spike's brief then goes through numerous examples of day-to-day operations done by Cognitec U.S., apparently attempting to somehow discredit or make fun of Mr. Kelesoglu (*e.g.*, replacing printer paper, employees cleaning up after themselves, etc.). *See* Response, p. 7. However, every hypothetical listed by Blue Spike in its Response (however ridiculous) is the result of questions asked by Blue Spike's attorneys during the deposition of Mr. Kelesoglu.[7] Kelesoglu Depo, 158:02 to 163:12. The remainder of

---

[6] Blue Spike also argues that the "majority" of the policies in the Employee Manual direct employees to contact the President of the company. *See* Response, p. 6. First, it is typical for a President of the company to be involved in certain issues such as sexual harassment. Second, Blue Spike's characterization of "majority" is misleading. The Employee Manual is 63 pages long and has only a handful of situations which involve the President of the company (many of which are optional involvement). Third, and most important, Mr. Kelesoglu testified that for all these examples, Cognitec U.S. does not consult with the President or Cognitec Germany on these issues and handles them in-house (regardless of the Employee Manual). Thus, all these issues are handled by Cognitec U.S.

[7] For instance, Blue Spike's attorney asked Mr. Kelesoglu about sick leave days, vacation, business hours, holidays, snow days, paycheck discrepancies, fires in the office, dress code, employee bulletin boards, and even if a printer needed paper added to it. Kelesoglu Depo, 158:02 to 163:12. In all instances, Mr. Kelesoglu testified that these are day-to-day operational issues that are handled by Cognitec U.S. *See* id.

Blue Spike's Response on this factor cites to case law that is simply not relevant[8] or is not controlling on this Court.[9] *See* Response, pp. 8-10.

It is Blue Spike's **burden** to rebut the presumption under Hargrave that Cognitec U.S. and Cognitec Germany are not separate entities when the Court considers personal jurisdiction. Blue Spike has not carried that burden. Blue Spike's Response is littered with false statements, misquoted deposition testimony and case law, and irrelevant "facts" intended to take digs at the witnesses. When the Court looks at the facts, the relevant case law, and the deposition testimony, it is clear that Cognitec U.S. is a separate U.S. corporation that has complied with the U.S. corporate formalities, has paid separate U.S. taxes, and is conducted as a separate U.S. business. The Court should conclude that Cognitec Germany is not subject to personal jurisdiction and should be dismissed from this case.

---

[8] Blue Spike cites to the In re Chinese Manufactured case for the argument that a relevant factor is a "shared department" between companies. *See* Response, p. 8. Blue Spike admits, however, that it has no evidence of a shared department between Cognitec U.S. and Cognitec Germany and furthermore this case law (even if it had factual support) is not controlling on the Court. *See* Response, p. 8. Blue Spike also alleges that Cognitec U.S. is "undercapitalized" but cites to no case law to support that this is a relevant factor for the Court and provides the Court with no analysis as to why this allegedly true. *See* Response, p. 8. Regardless, this allegation is untrue and irrelevant. Cognitec U.S. is a profitable company, and the financial records produced to Blue Spike prove this fact.

[9] Blue Spike cites to a "Datatreasury" case on page 8 of its Response, but that case does not have a citation, does not appear to be an actual case through Lexis searches, and is not included in Exhibit 1 as stated on page 2 of the Response. Given this, Cognitec Germany cannot comment on the case and the Court should disregard the case. Blue Spike also asks the Court to disregard its long established case law in Hargrave and adopt a new standard followed by district courts outside of the Fifth Circuit. *See* Response, pp. 9-10. Hargrave is the controlling case law and Blue Spike provides no reason why this Court should disregard a standard followed by this Court and the Fifth Circuit for many years. Additionally, even if the Court follows this case law, the result is the same. Essentially, Blue Spike argues that *but for* Cognitec U.S., Cognitec Germany would have to sell its own products in the United States. There is no factual or legal support for this claim. Cognitec Germany could easily license a third party foreign company to sell its products to a United States distributor or within the United States. Thus, Blue Spike's argument fails for many reasons.

        /s/ Dwayne K. Goetzel
Eric B. Meyertons
Texas State Bar No. 14004400
Dwayne K. Goetzel
Texas State Bar No. 08059500
Ryan T. Beard
Texas State Bar No. 24012264
MEYERTONS, HOOD, KIVLIN,
  KOWERT & GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

**ATTORNEYS FOR DEFENDANT
COGNITEC SYSTEMS GMBH**

## CERTIFICATE OF SERVICE

    I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 19th day of May 2014.

        /s/ Dwayne K. Goetzel