# EXHIBIT 4

| **False Statement Made by Blue Spike** | **Actual Testimony** |
|---|---|
| "For both Cognitec companies, Germany is the center of direction, control, and coordination." Response, p. 3. | There is no evidence cited by Blue Spike for this statement. Moreover, Cognitec U.S. is under its own direction, control, and coordination.<br><br>*See* Kelesoglu Depo, 206:11 to 207:7; Herrera Depo, 182:11-15. |
| "All Cognitec Corp. managers report by phone to Mr. Herrera in Germany. (Ex. 4, Herrera Depot. at 19:7-8)." Response, p. 4. | The citation listed by Blue Spike for this statement does not support that allegations made by Blue Spike. |
| "In fact, the only Cognitec Corp. employee with access to financial records and accounts is Mr. Herrera's assistant in Miami, Florida (Ex. 5, Kelesoglu Depot. at 33:12-18); but no employee has authority to sign checks. (Ex. 5, Kelesoglu Depot. at 111:17-19)." *See* Response, p. 4.<br><br>Blue Spike makes the same false allegation about checks on page 6 of the Response. | Blue Spike cites to the following deposition testimony for this statement:<br><br>Q. So can you explain to me what it means for the administrative assistant to report to the president?<br><br>A. Make sure that accounting firm gives the accounting books correctly and make sure that the payroll is paid. That's it.<br>Kelesoglu Depo, 33:12-18.<br><br>Q. When paychecks are issued, are they signed by the administrative assistant?<br><br>A. No. By APD.<br><br>Kelesoglu Depo, 111:17-19.<br><br>Mr. Kelesoglu never stated that there is one employee with access to the financial records and accounts and never stated that the employee is an assistant to Mr. Herrera. Mr. Kelesoglu also never stated that no employee has authority to sign checks. He was not even discussing checks; he was discussing paychecks for employees. |
| "Blue Spike believes that Cognitec Corp. has failed to hold regular shareholder meetings, but even if they have occurred, most or all occurred in Germany." *See* Response, p. 4. | Mr. Herrera testified extensively that annual shareholder meetings for Cognitec U.S. are held and provided Blue Spike with documentation to establish that the meetings occurred.<br><br>Herrera Depo pp. 118-128. |

| | Blue Spike cites no evidence to support the statement that "most or all occurred in Germany." |
|---|---|
| "Massachusetts is only home to its customer service representative and sales force." *See* Response, p. 4. | This sentence implies that Cognitec U.S. is the home for Cognitec Germany's service and sales force. This is false. Cognitec U.S. is a separate entity from Cognitec Germany. Cognitec Germany sells software to Cognitec U.S. pursuant to a license agreement and Cognitec U.S. then sells the software independently in the United States, and provides customer support for those sales. |
| "Mr. Kelesoglu declares that he is the highest ranking employee at Cognitec Corp. (Ex. 5, Kelesoglu Depot. 30:7-23), but admits that he is not privy to knowledge of the corporation's total assets (Ex. 5, Kelesoglu Depot. 224:14-17), its bank accounts (compare Ex. 5, Kelesoglu Depot. at 204:6-11 with 209:16-21), or its records (Ex. 5, Kelesoglu Depot. 175:14-23); and that the only employee he manages is his sales assistant (Ex. 5, Kelesoglu Depot. 29:18-19)." *See* Response, p. 4. | Mr. Kelesoglu's testimony never states that he is the highest ranking employee. The President of the company is clearly the highest ranking employee, but that question was never asked. Mr. Kelesoglu specifically stated that he was aware of all the assets in Massachusetts and never stated that he was unaware of any of the assets of Cognitec U.S.   Specifically, Mr. Kelesoglu testified as follows:<br><br>Q. The assets that Cognitec Systems Corporation has, are you in a position, are you aware of what all those assets are?<br><br>A. I am aware of all of the assets in Massachusetts, Rockland, Massachusetts.<br><br>Q. If there are assets in Miami, would you be aware or are you aware of – Okay. So then you are only aware of the assets here in Massachusetts; is that correct?<br><br>A. Yes.<br><br>Kelesoglu Depot. 224:14-17.<br><br>Mr. Kelesoglu was never asked about the assets in Miami and Blue Spike assumes he has no knowledge, but never bothered to ask that question.<br><br>Furthermore, the cited deposition testimony never states that Mr. Kelesoglu is unaware of Cognitec U.S.'s bank accounts and records. |

| | To the contrary, Mr. Kelesoglu testified that Cognitec U.S. and Cognitec Germany have separate bank accounts and records.<br><br>Kelesoglu Depo 204:6 to 205:18. |
|---|---|
| "President Alfredo Herrera testifies that he conducts shareholder meetings anytime he discusses issues concerning Cognitec Corp. during the normal course of business.  (Ex. 4, Herrera Depot. at 124:7-19)." *See* Response, p. 5. | Mr. Herrera never stated this and the deposition testimony does not state this. Here is his testimony:<br><br>Q. To restate the question, given the lapse of time, can you find a meeting -- minutes from the meeting of shareholders for 2008 in these documents?<br><br>A. Well, I would – I consider the – I think the page CSC-00024, that is a consent of a meeting of the shareholders, which – yeah, it's what we had to do in the – what we did in the shareholders meeting.<br><br>This section is a good example of the extent of mischaracterization done by Blue Spike. |
| "President Herrera also testifies that he holds impromptu meetings with no one but himself.  (Ex. 4, Herrera Depot. at 131:4-17)." *See* Response, p. 5. | Again, Blue Spike mischaracterizes his testimony.  His testimony from this cited section is as follows:<br><br>Q. – the initial meeting of Cognitec Systems Corporation, what persons attended that meeting, to the best of your recollection?<br><br>A. It was Filipe and Marcos Franz Flohr.  I think.<br><br>Q. I am handing back to the defendant – to the witness what has been marked as Exhibit 7 – just to refresh your memory.  I think if you turn to the third page of that document?<br><br>A. I believe there is a consent here for me to apply for an L-1 Visa, I know that.  You asked the question, so what do you mean what was discussed?  I know that – I know that there is a – there is a – basically, the board is providing the consent for – to assist me if I were to become …." |

| | |
|---|---|
| "… allowing employees to leave early is the German-located President's responsibility. (Ex. 9, CSC91)." *See* Response, p. 7. | The Employee Manual actually states: "A times, emergencies such as severe weather, fires, power failures, or earthquakes, can disrupt Company operations.  In extreme cases, these circumstances may require the closing of a work facility by the President and CEO."<br><br>These are "extreme cases" and not a request to leave work early.  Additionally, it says that the President "may" be involved. Regardless, Mr. Kelesoglu testified that these issues would be handled by the Cognitec U.S. managers, and not the President.<br><br>Kelesoglu Depo, 161:5. |
| "In fact, it is Cognitec Corp.'s policy to contact Mr. Herrera in Germany if there are any issues with employees changing printer settings, not replacing copy machines and printer paper trays, and not cleaning up after themselves. (Ex. 8, CSC107-108)." *See* Response, p. 7. | This is again a misrepresentation of what the Employee Manual actually states.  The manual states that an employee can contact the President if they have any "comments, concerns, or suggestions regarding these workplace etiquette guidelines" and then the manual lists out examples, including that employees should replace printer paper, clean up after themselves, etc.<br><br>Obviously, no employee contacts the President of the company on these issues, because these are common courtesies, and these issues are handled by the managers at Cognitec U.S. Regardless, Blue Spike's representation to the Court that these issues must be dealt with by Cognitec Germany is completely inaccurate. |
| "Cognitec Corp. must share departments with Cognitec GmbH because it only has one of its own: sales.   Cognitec Corp.'s employees consist of sales personnel, customer service personnel supporting the sales personnel (Ex. 5, Kelesoglu Depot. at 32:15-17), and Mr. Herrera's long distance administrative assistant. These are hardly the departments of a fully functioning company." *See* Response, p. 8. | Cognitec U.S. sells software and offers customer support.  These departments are all that are required, and they don't use any common departments with Cognitec Germany. Additionally, the administrative assistant (who handles all financial duties) is not Mr. Herrera's assistant (as detailed above). |

# EXHIBIT 5

850-617-6381          5/22/2008 2:38     PAGE 001/002    Florida Dept of State



# State of Florida

## Department of State

I certify the attached is a true and correct copy of the application by COGNITEC SYSTEMS CORPORATION, a Delaware corporation, authorized to transact business within the State of Florida on May 21, 2008 as shown by the records of this office.

I further certify the document was electronically received under FAX audit number H08000133878. This certificate is issued in accordance with section 15.16, Florida Statutes, and authenticated by the code noted below.

The document number of this corporation is F08000002315.

Authentication Code: 008A00032575-052208-F08000002315-1/1



Given under my hand and the Great Seal of the State of Florida, at Tallahassee, the Capital, this the Twenty-second day of May, 2008

Kurt S. Browning
Secretary of State

**Confidential - Attorneys' Eyes Only**          **CSC 00001**



May 22, 2008

**FLORIDA DEPARTMENT OF STATE**
Division of Corporations

COGNITEC SYSTEMS CORPORATION
5201 BLUE LAGOON DRIVE, SUITE 800
MIAMI, FL  33126

Qualification documents for COGNITEC SYSTEMS CORPORATION were filed on
May 21, 2008 and assigned document number F08000002315.  Please refer to
this number whenever corresponding with this office.

Your corporation is now qualified and authorized to transact business in
Florida as of the file date.

The certification you requested is enclosed.  To be official, the
certification for a certified copy must be attached to the original
document that was electronically submitted and filed under FAX audit
number H08000133878.

A corporation annual report/uniform business report will be due this
office between January 1 and May 1 of the year following the calendar year
of the file date.  A Federal Employer Identification (FEI) number will be
required before this report can be filed. If you do not already have an
FEI number, please apply NOW with the Internal Revenue by calling
1-800-829-4933 and requesting form SS-4.

Please be aware if the corporate address changes, it is the responsibility
of the corporation to notify this office.

Should you have any questions regarding this matter, please contact this
office at (850) 245-6913.

Diane Cushing
Document Specialist Supervisor
New Filing Section
Division of Corporations          Letter Number: 008A00032575

P.O BOX 6327 – Tallahassee, Florida 32314

**Confidential - Attorneys' Eyes Only**                    **CSC 00002**



PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "COGNITEC SYSTEMS US CORPORATION", FILED IN THIS OFFICE ON THE THIRTIETH DAY OF SEPTEMBER, A.D. 2003, AT 2:16 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3709983   8100

030628970

AUTHENTICATION: 2664322

DATE: 10-01-03

**Confidential - Attorneys' Eyes Only**

ENVIADO POR:ESC ADV TAVARES PAES          NO. TEL:021 22205050          05 MAR. 2004 18:29   P3

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:39 PM 09/30/2003
FILED 02:16 PM 09/30/2003
SRV 030628970 - 3709983 FILE

## CERTIFICATE OF INCORPORATION

**FIRST:** The name of this corporation shall be:

COGNITEC SYSTEMS US CORPORATION

**SECOND:** Its registered office in the State of Delaware is to be located at 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle and its registered agent at such address is CORPORATION SERVICE COMPANY.

**THIRD:** The purpose or purposes of the corporation shall be:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

**FOURTH:** The total number of shares of stock, which this corporation is authorized to issue, is One thousand (1,000) shares of common stock with a par value of .10.

**FIFTH:** The name and address of the incorporator is as follows:

Angela Creppon
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

**SIXTH:** The Board of Directors shall have the power to adopt, amend or repeal the by-laws.

**SEVENTH:** No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit. No amendment to or repeal of this Article Seventh shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

IN WITNESS WHEREOF, the undersigned, being the incorporator herein before named, has executed signed and acknowledged this certificate of incorporation this 30th day of September, A.D. 2003.

Name: Angela Creppon
Incorporator

**Confidential - Attorneys' Eyes Only**

CSC 00004

02/23/1996  19:06   2123629824                          AFS LEGAL-HAL DENTON

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:39 PM 09/30/2003
FILED 02:16 PM 09/30/2003
SRV 030629970 - 3709983 FILE

## CERTIFICATE OF INCORPORATION

FIRST: The name of this corporation shall be:
COGNITEC SYSTEMS US CORPORATION

SECOND: Its registered office in the State of Delaware is to be located at 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle and its registered agent at such address is CORPORATION SERVICE COMPANY.

THIRD: The purpose or purposes of the corporation shall be:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH: The total number of shares of stock, which this corporation is authorized to issue, is One thousand (1,000) shares of common stock with a par value of .10.

FIFTH: The name and address of the incorporator is as follows:

Angela Crippen
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

SIXTH: The Board of Directors shall have the power to adopt, amend or repeal the by-laws.

SEVENTH: No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit. No amendment to or repeal of this Article Seventh shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

IN WITNESS WHEREOF, the undersigned, being the incorporator herein before named, has executed signed and acknowledged this certificate of incorporation this 30th day of September, A.D. 2003.

Name: Angela Crippen
Incorporator

02/23/1996  19:06   2123629824                          AFS LEGAL-HAL DENTON                    PAGE  85

City of Wilmington
County of New Castle
Dated: September 30, 2003

## ORGANIZATION ACTION IN WRITING OF INCORPORATOR

OF

COGNITEC SYSTEMS US CORPORATION
(Organized September 30, 2003)

The following action is taken this day through this instrument by the incorporator of the above corporation:

1. The election of the following person to serve as the director of the corporation until the first annual meeting of stockholders and until their successors are elected and qualified or until their earlier resignation or removal:

Felipe Rodriguez

Angela Crippen, Incorporator

**Confidential - Attorneys' Eyes Only**                    CSC 00005

ENHUTADO PUR:ESL HUU THARRES PHES   NU. TEL:021 2290050   09 OUT. 2003 14:55
02/23/1996  19:05   2123529824   AFS LEGAL-HAL DENTUN   PAUL 04

State of DelaWare
Secretary of State
Division of Corporations
Delivered 02:39 PM 09/30/2003
FILED 02:16 PM 09/30/2003
RV 030628970 - 3709983 FILE

## CERTIFICATE OF INCORPORATION

FIRST: The name of this corporation shall be:

COGNITEC SYSTEMS US CORPORATION

SECOND: Its registered office in the State of Delaware is to be located at 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle and its registered agent at such address is CORPORATION SERVICE COMPANY.

THIRD: The purpose or purposes of the corporation shall be:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH: The total number of shares of stock, which this corporation is authorized to issue, is One thousand (1,000) shares of common stock with a par value of .10.

FIFTH: The name and address of the incorporator is as follows:

Angela Creppon
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

SIXTH: The Board of Directors shall have the power to adopt, amend or repeal the by-laws.

SEVENTH: No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit. No amendment to or repeal of this Article Seventh shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

IN WITNESS WHEREOF, the undersigned, being the incorporator herein before named, has executed signed and acknowledged this certificate of incorporation this 30th day of September, A.D. 2003.

Name: Angela Creppon
Incorporator

**Confidential - Attorneys' Eyes Only**

CSC 00006

City of Wilmington
County of New Castle
Dated: September 30, 2003

## ORGANIZATION ACTION IN WRITING OF INCORPORATOR

OF

COGNITEC SYSTEMS US CORPORATION
(Organized September 30, 2003)

The following action is taken this day through this instrument by the incorporator of the above corporation:

1. The election of the following person to serve as the director of the corporation until the first annual meeting of stockholders and until their successors are elected and qualified or until their earlier resignation or removal:

Felipe Rodriguez

_____
Angela Cheppon, Incorporator

DE BC D-ORGANIZATION ACTION 11/99 (DEACT)

**Confidential - Attorneys' Eyes Only**                CSC 00007

ENVIADO POR:ESC ADV TAVARES PAES        NO. TEL:021 22205050        05 MAR. 2004 18:29 P2



*Cognitec / Organizational Documents*

# Delaware
PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "COGNITEC SYSTEMS US CORPORATION", CHANGING ITS NAME FROM "COGNITEC SYSTEMS US CORPORATION" TO "COGNITEC SYSTEMS CORPORATION", FILED IN THIS OFFICE ON THE THIRTIETH DAY OF DECEMBER, A.D. 2003, AT 5:14 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3709983  8100

030844383

AUTHENTICATION: 2844237

DATE: 12-31-03

**Confidential - Attorneys' Eyes Only**        CSC 00008

## APPLICATION BY FOREIGN CORPORATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

*IN COMPLIANCE WITH SECTION 607.1503, FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED TO REGISTER A FOREIGN CORPORATION TO TRANSACT BUSINESS IN THE STATE OF FLORIDA.*

1. COGNITEC SYSTEMS CORPORATION
   (Enter name of corporation; must include "INCORPORATED," "COMPANY," "CORPORATION," "Inc.," "Co.," "Corp," "Inc," "Co," or "Corp.")

   (If name unavailable in Florida, enter alternate corporate name adopted for the purpose of transacting business in Florida)

2. Delaware     3. _____
   (State or country under the law of which it is incorporated)    (FEI number, if applicable)

4. September 30, 2003     5. Perpetual
   (Date of incorporation)     (Duration: Year corp. will cease to exist or "perpetual")

6. December 1, 2007
   (Date first transacted business in Florida. If corporation has not transacted business in Florida, insert "upon qualification.")
   (SEE SECTIONS 607.1501, 607.1502 and 817.155, F.S.)

7. 5201 Blue Lagoon Drive, Suite 800, Miami, FL 33126
   (Principal office address)

   5201 Blue Lagoon Drive, Suite 800, Miami, FL 33126
   (Current mailing address)

8. Any legal purpose
   (Purpose(s) of corporation authorized in home state or country to be carried out in state of Florida)

9. **Name and street address** of Florida registered agent: (P.O. Box or Mail Drop Box **NOT** acceptable)

   Name: Felipe Rodriguez

   Office Address: 5201 Blue Lagoon Drive, Suite 800

   Miami, FL    , Florida 33126
   (City)     (Zip code)

10. **Registered agent's acceptance:**
    *Having been named as registered agent and to accept service of process for the above stated corporation at the place designated in this application, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

    Felipe Rodriguez

    (Registered agent's signature)

11. Attached is a certificate of existence duly authenticated, not more than 90 days prior to delivery of this application to the Department of State, by the Secretary of State or other official having custody of corporate records in the jurisdiction under the law of which it is incorporated.

12. Names and business addresses of officers and/or directors:

**Confidential - Attorneys' Eyes Only**

CSC 00009

## A. DIRECTORS

Chairman: _____

Address: _____

_____

Vice Chairman: _____

Address: _____

_____

Director: Felipe Rodriguez _____

Address: 5201 Blue Lagoon Drive, Suite 800, Miami, FL 33126 _____

_____

Director: _____

Address: _____

## B. OFFICERS

President: Felipe Rodriguez _____

Address: 5201 Blue Lagoon Drive, Suite 800, Miami, FL 33126 _____

_____

Vice President: _____

Address: _____

_____

Secretary: Felipe Rodriguez _____

Address: 5201 Blue Lagoon Drive, Suite 800, Miami, FL 33126 _____

Treasurer: _____

Address: _____

**NOTE:** If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13. _____
     (Signature of Director or Officer listed in number 12 of the application)

14. Felipe Rodriguez, Director/President/Secretary _____
        (Typed or printed name and capacity of person signing application)

**Confidential - Attorneys' Eyes Only**          CSC 00010



# Delaware

PAGE  1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "COGNITEC SYSTEMS US CORPORATION", FILED IN THIS OFFICE ON THE THIRTIETH DAY OF SEPTEMBER, A.D. 2003, AT 2:16 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3709983  8100

030628970

AUTHENTICATION: 2664322

DATE: 10-01-03

Confidential - Attorneys' Eyes Only                    CSC 00011

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:39 PM 09/30/2003
FILED 02:16 PM 09/30/2003
SRV 030628970 – 3709983 FILE

## CERTIFICATE OF INCORPORATION

FIRST: The name of this corporation shall be:

COGNITEC SYSTEMS US CORPORATION

SECOND: Its registered office in the State of Delaware is to be located at 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle and its registered agent at such address is CORPORATION SERVICE COMPANY.

THIRD: The purpose or purposes of the corporation shall be:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH: The total number of shares of stock, which this corporation is authorized to issue, is One thousand (1,000) shares of common stock with a par value of .10.

FIFTH: The name and address of the incorporator is as follows:

Angela Creppon
2711 Centerville Road
Suite 400
Wilmington, Delaware 19808

SIXTH: The Board of Directors shall have the power to adopt, amend or repeal the by-laws.

SEVENTH: No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit. No amendment to or repeal of this Article Seventh shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

IN WITNESS WHEREOF, the undersigned, being the incorporator herein before named, has executed signed and acknowledged this certificate of incorporation this 30th day of September, A.D. 2003.

Angela Creppon

Name: Angela Creppon
Incorporator

**Confidential - Attorneys' Eyes Only**

## MINUTES OF FIRST MEETING OF SHAREHOLDERS
### OF
### COGNITEC SYSTEMS CORPORATION

### ("Corporation")

The first meeting of shareholders of the above captioned Corporation was held on the date, time and at the place set forth in the written Waiver of Notice signed by the shareholders, fixing such time and place, and prefixed to the minutes of this meeting.

The meeting was called to order by the President, heretofore elected by the Board of Directors, and the following shareholders being all of the shareholders of the Corporation, were present:

Cognitec Systems GmbH

Felipe Rodriguez

There was presented to the meeting the following

1. Copy of Certificate of Incorporation;

2. Copy of the By-Laws of the Corporation, duly adopted by the Incorporation Director;

3. Copy of an addendum to the By-laws of the Corporation;

4. Resolutions adopted by the Incorporation Director;

5. Minutes of First Meeting of Directors;

Upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the items listed above have been examined by all shareholders, and are all approved and adopted, and that all acts taken and decisions reached, as set forth in such documents, be, and they hereby are, ratified and approved by the shareholders of the Corporation.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the same was adjourned.

_____
Secretary

Attest:

_____

_____

**Confidential - Attorneys' Eyes Only**                         **CSC 00013**

# RESOLUTIONS ADOPTED BY INCORPORATION DIRECTOR

## OF

## COGNITEC US SYSTEMS CORPORATION
("Corporation")

The undersigned, being the sole Director of the Corporation named in an Organization Action in Writing of the Incorporator of the Corporation, hereby adopts the following resolutions:

(1) **RESOLVED,** that a copy of the Certificate of Incorporation of the Corporation, together with the original receipt showing payment of the statutory organization tax and filing fee, be inserted in the Minute Book of the Corporation

(2) **RESOLVED,** that the By-Laws be, and the same hereby are, adopted as and for the By-Laws of the Corporation, and that a copy thereof be placed in the Minute Book of the Corporation, directly following the Certificate of Incorporation.

(3) **RESOLVED,** that the name of the Corporation be, and the same hereby is, changed to become "Cognitec Systems Corporation" and that (i) all resolutions, minutes and documents hereafter shall bear such new name, and (ii) a new corporate seal be issued bearing such new corporate name.

(4) **RESOLVED,** that the following persons be, and they hereby are, elected as Directors of the Corporation, to serve until the first annual meeting of shareholders, and until their successors are elected and qualify:

Alfredo Herrera Hernandez

Felipe Rodriguez

Marcos Flohr

Date: November 13th, 2003

Felipe Rodriguez
Incorporation Director

**Confidential - Attorneys' Eyes Only**

CSC 00014

# WAIVER OF NOTICE OF FIRST MEETING OF SHAREHOLDERS
## OF

### COGNITEC SYSTEMS CORPORATION
("Corporation")

We, the undersigned, being all of shareholders of the Corporation, hereby agree and consent that the first meeting of shareholders of the Corporation be held on the date and time, and at place designated hereunder, and do hereby waive all notice whatsoever of such meeting and adjournment thereof.

We do further agree and consent that any and all lawful business may be transacted at such meeting, or at any adjournment or adjournments thereof, as may be deemed advisable by any shareholder present thereat. Any business transacted at such meeting, or at any adjournment or adjournments thereof, shall be as valid and legal and of the same force and effect as if such meeting or adjourned meeting were held after notice.

Place of Meeting: Miami, Florida

Date of Meeting: November 13th, 2003

Time of Meeting: 10.30 a.m.

Dated: November 13th, 2003

Cognitec Systems GmbH
Shareholder

_____
Felipe Rodriguez
Shareholder

**Confidential - Attorneys' Eyes Only**

# WAIVER OF NOTICE OF ORGANIZATION MEETING

## OF

## BOARD OF DIRECTORS

## OF

## COGNITEC SYSTEMS US CORPORATION
("Corporation")

We, the undersigned, being all of the Directors of the Corporation, hereby agree and consent that the first meeting of the Board of Directors of the Corporation be held on the date and time, and at the place designated hereunder, and do hereby waive all notice whatsoever of such meeting and of any adjournments thereof.

We do further agree and consent that any and all lawful business may be transacted at such meeting, or at any adjournment or adjournments thereof, as may be deemed advisable by the directors present thereat. Any business transacted at such meeting and of any adjournment or adjournments thereof, shall be as valid and legal and of the same force and effect as if such meeting or adjourned meeting were held after notice.

Place of Meeting: Miami, Florida

Date of Meeting: November 13th, 2003

Time of Meeting: 10.00 a.m.

Dated: November 13th, 2003

_____
Alfredo Herrera H.
Director

_____
Felipe Rodriguez
Director

_____
Marcos Flohr
Director

**Confidential - Attorneys' Eyes Only**                    **CSC 00016**

# MINUTES OF FIRST MEETING

## OF

## BOARD OF DIRECTORS

## OF

## COGNITEC SYSTEMS US CORPORATION
("Corporation")

The first meeting of the Board of Directors of the above-captioned Corporation was held on the date, time and at place set forth in the written Waiver of Notice signed by all the Directors, fixing such time and place, and prefixed to the minutes of this meeting.

There were present the following:

> Alfredo Herrera H.
>
> Felipe Rodriguez
>
> Marcos Flohr

Being all the members of the Board of Directors.

1 - The meeting was called to order by Mr. Alfredo Herrera H.

2 - It was moved, seconded and unanimously carried, that Mr. Alfredo Herrera H. act as Temporary Chairman, and that Mr. Marcos Flohr act as Temporary Secretary.

3 - The meeting then proceeded to the election of officers. Upon nominations duly made and seconded, the following were elected and qualified:

| | |
|---|---|
| President: | Mr. Felipe Rodriguez |
| Vice-President: | Mr. Felipe Rodriguez |
| Secretary: | Mr. Felipe Rodriguez. |
| Treasurer: | Mr. Felipe Rodriguez |

**Confidential - Attorneys' Eyes Only**          CSC 00017

4 - The President of the Corporation thereupon assumed the Chair, and the Secretary of the Corporation assumed his duties as Secretary of the meeting.

5 - The following documents were then presented for discussion:

   (i)     Copy of the Certificate of Incorporation. Upon motion duly made, seconded and unanimously carried, it was

        RESOLVED, that all the Certificate of Incorporation presented be, and it hereby is, approved, ratified and adopted by this Board of Directors.

   (ii)    Copy of the By-Laws of the Corporation, as adopted by the Incorporation Director. Upon motion duly made, seconded and unanimously carried, it was

        RESOLVED, that all the version of the By-Laws presented be, and it hereby is, approved, ratified and adopted by this Board of Directors.

   (iii)   Copy of the Addendum to the By-Laws of the Corporation. Upon motion duly made, seconded and unanimously carried, it was

        RESOLVED, that the contents of the Addendum to the Corporation's By-Laws presented be, and it hereby is, approved, ratified and adopted by this Board of Directors and that the contents thereof be inserted into the By-Laws of the Corporation prior to the next meeting of this Board of Directors.

   (iv)    Resolutions adopted by the Incorporation Director. Upon motion duly made, seconded and unanimously carried, it was

        RESOLVED, that all the acts taken and resolutions adopted by the Incorporation Director be, and they hereby are, approved, ratified and adopted by this Board of Directors.

6 – A discussion ensued relating to the adoption of a seal proposed for use as the corporate seal of the Corporation and the form of issuance of the share certificates to be issued by the Corporation. Upon motion duly made, seconded and unanimously carried, it was

        RESOLVED, that (i) the form of seal discussed in this meeting be, and it hereby is, approved and adopted as and for the corporate seal of this Corporation, and than an impression thereof be made on the margins of these minutes, and (ii) that the form of share certificate which was discussed during this meeting be, and the same hereby is, approved and adopted as the certificate to represent the shares of this Corporation; and it was further.

7 - The banking arrangements of the Corporation were then discussed. After discussion, on motion duly made, seconded and carried, it was

**Confidential - Attorneys' Eyes Only**

**CSC 00018**

**RESOLVED**, that

(i)  The Corporation be, and it hereby is, authorized to transact financial business with any financial institution located within the United States of America and which has been duly authorized to function as such by the applicable State and/or Federal authorities;

(ii)  That the President of the Corporation be, and he hereby is, authorized to open one or more deposit and investment accounts in the name of the Corporation with said financial institutions, as long as they have operating offices of branches in the States of Virginia or Florida (or both);

(iii)  That the President and the Treasurer of the Corporation be, and they hereby are, authorized as joint signatories to such bank accounts; _provided, however_, that neither are authorized to enter into agreements with such financial institutions (or others) that represent a liability to the Corporation of more than US$15,000.00 (fifteen thousand US dollars) individually, and US$50,000.00 (fifty thousand US dollars) in the aggregate in any calendar year, without prior written and specific authorization of the Board of Directors of the Corporation; and

(iv)  That the Secretary of the Corporation be, and he hereby is, authorized to furnish a Secretarial Certificate to the financial institutions with which the Corporation may transact business in regards to the contents of this banking resolution, if one such Certificate is required by any such financial institution.

8 - The need for Directors and Officers Insurance – D&O was then discussed. After discussion, on motion duly made, seconded and carried, it was

**RESOLVED**, that (i) the Corporation should carry this type of insurance; and (ii) that prior to the Corporation accessing the US market to purchase such financial product Mr. Alfredo Hernandez will investigate the availability of such financial products from the insurance company with whom Cognitec Systems GmbH transacts business in Germany and whether such products may be made available to the Corporation;

9 – Various matters relating to labor, health insurance, immigration and other matters were analyzed and discussed. After discussion, on motion duly made, seconded and carried, it was

**RESOLVED**, that

(i)  All employee agreements of the Corporation be entered into only as of January 1st, 2004 and should all contain a provision to the effect that all employees would be subject to a six-months

**Confidential - Attorneys' Eyes Only**

minimum trial period with the Corporation prior to becoming full employees of the Corporation and becoming eligible for the benefits that the Corporation may extent to its employees from time to time;

(ii)     An L-1 Visa be applied for in connection with Mr. Alfredo Herrera Hernandez, President of Cognitec Systems GmbH, in order for him to become eligible to be retained as an officer of the Corporation;

(iii)    The Corporation shall not carry a particular health insurance plan for its employees, officers and directors, but that it be authorized, as it hereby is, to pay up to 50% of the cost of the health insurance plan purchased by each such employee, officer and director from a list of eligible such plans to be furnished by the Corporation from time to time;

(iv)    The vacation policy of the Corporation be, and it hereby is, adopted for employees and officers of the Corporation as follows:

| Term with the Corporation | # of Weeks Vacation |
|---|---|
| 1 to 3 years | 2 weeks |
| 4 to 5 years | 3 weeks |
| after 5 years | 4 weeks |

10 - The location of the Corporation's headquarters and other offices was then discussed. After discussion, on motion duly made, seconded and carried, it was

**RESOLVED**, that

(i)      The Corporation shall have its headquarters in Reardon, Va., and that the President be authorized, as he hereby is, to locate a suitable real estate where to locate such headquarters and to retain the services that he considers necessary or appropriate for the proper operation of the Corporation's activities from such location; and

(ii)     The President of the Corporation be, as he hereby is, authorized to open an office of the Corporation in the Miami area, and to retain the services that he considers necessary or appropriate for the proper operation of the Corporation's activities from such location; in either case in accordance with the terms and condition of the Corporation's By-Laws and any Addendum thereto.

11 - The need for a Technology Licensing and Commercialization Agreement between the Corporation and its parent company, Cognitec Systems GmbH, in order to allow the Corporation to proper commercialize the products and software produced or belonging to its parent company, was then discussed, and a form of such agreement was discussed. After discussion, on motion duly made, seconded and carried, it was

**Confidential - Attorneys' Eyes Only**

RESOLVED, that the President of the Corporation be, as he hereby is, authorized to enter into a Technology Licensing and Commercialization Agreement on behalf of the Corporation, with Cognitec Systems GmbH, in the form of agreement adopted by the latter for transactions in general with its subsidiaries.

12 – Other sundry matters were then reported to the Board of Directors by others present at the meeting and the date and location of the next meeting of the Board of Directors was then discussed. After discussion, on motion duly made, seconded and carried, it was

RESOLVED, that this meeting be adjourned and that notice of the date and location of the next meeting of the Board of Directors shall be sent to each Director as contemplated by the Corporation's By-Laws; and

RESOLVED, that the officers of the Corporation be, and they hereby are, authorized, empowered and directed to take any and all steps, and to execute and deliver any and all instruments in connection with consummating the transactions contemplated by the Resolutions passed in this meeting of the Board of Directors and in connection with carrying such Resolutions into effect.

Dated: November 13th, 2003

_____
Alfredo Herrera H.
Director

_____
Felipe Rodriguez
Director

_____
Marcos Flohr
Director

**Confidential - Attorneys' Eyes Only**

**CSC 00021**

**COGNITEC SYSTEMS CORPORATION**
Action by Unanimous Written Consent of
the Board of Directors

February 19, 2008

THE UNDERSIGNED, constituting all of the shareholders and members of the board of directors of Cognitec Systems Corporation, a Delaware corporation (the "Corporation"), pursuant to the authority contained in Section 228 of the General Corporation Law of the State of Delaware, without the formality of convening a meeting, do hereby severally and collectively consent, as if adopted by the unanimous affirmative vote of the shareholders and members of the board of directors at a duly constituted meeting, to the following actions of the Company:

**WHEREAS,** the minute book of the Corporation may not contain the minutes for the annual meetings of the shareholders and Board of Directors of the Corporation for the calendar years 2004 through 2007; and

**WHEREAS,** the sole shareholder and sole director of the Corporation acknowledge and agree that they have held meetings where no written minutes were taken;

**NOW THEREFORE BE IT:**

**RESOLVED,** that the Resolutions adopted pursuant to this written consent shall be in lieu of the Annual Meeting of the Corporation's shareholders and Board of Directors for the years 2004 through 2008;

**FURTHER RESOLVED,** that Felipe Rodriguez has served as the sole member of the Board of Directors of the Corporation from the Corporation's date of incorporation through the present;

**FURTHER RESOLVED,** that Felipe Rodriguez has served as President, Secretary and Treasurer of the Corporation from the Corporation's date of incorporation through the present;

**FURTHER RESOLVED,** that all lawful actions of Felipe Rodriguez, as the sole member of the Board of Directors and the sole officer of the Corporation for the calendar years 2004 through 2007 in the course of his conduct on behalf of the Corporation are hereby approved and confirmed;

**FURTHER RESOLVED,** that Felipe Rodriguez shall continue to serve as the sole member of the Board of Directors of the Corporation to serve until the next annual meeting or until his successor(s) is/are appointed and qualified, or until his earlier resignation, death or removal from the office;

**Confidential - Attorneys' Eyes Only**

**FURTHER RESOLVED,** that Felipe Rodriguez shall continue to serve as President, Secretary and Treasurer of the Corporation to serve until the next annual meeting or until his successor(s) is/are appointed and qualified, or until his earlier resignation, death or removal from the office; and be it

**FURTHER RESOLVED,** that the executed copy of this consent shall be placed with the minutes of proceedings of the directors.

**IN WITNESS WHEREOF,** the undersigned shareholders and sole director have caused this consent to be executed as of the 19th day of February, 2008.

COGNITEC SYSTEMS GmbH

_____
Alfredo Herrera Hernández
Managing Director

_____
Felipe Rodriguez (shareholder of the Corporation until July 1, 2007)

**BOARD OF DIRECTORS:**

_____
Felipe Rodriguez

2

**Confidential - Attorneys' Eyes Only**

**CONSENT IN LIEU OF AN ANNUAL**
**MEETING OF THE SHAREHOLDERS AND BOARD OF DIRECTORS**
**OF**
**Cognitec Systems Corporation**

The undersigned, constituting all of the Shareholders and all of the members of the Board of Directors of Cognitec Systems Corporation, a Florida corporation (the "Corporation"), waive all requirements of notice and consent to the adoption of the following resolutions without a meeting, pursuant to the bylaws and Sections 607.0704 and 607.0821 of the Laws of the State of Florida:

WHEREAS, this consent is in lieu of an annual meeting of the Shareholders and Board of Directors.

RESOLVED, that all lawful actions of the Director(s) of the Corporation taken on behalf of the Corporation in good faith since the previous annual or organizational meeting or execution of the consent in lieu thereof, are hereby approved and confirmed.

RESOLVED, that the following persons shall serve as Directors of the Corporation and shall continue to serve until the next annual meeting as provided in the Bylaws or until their earlier death, resignation or removal from office:

RESOLVED, that all lawful actions of the Officer(s) of the Corporation taken on behalf of the Corporation in good faith since the previous annual or organizational meeting or execution of the consent in lieu thereof, are hereby approved and confirmed.

RESOLVED, that the following persons shall serve as Officers of the Corporation in the office indicated opposite their name and shall continue to serve until the next annual meeting or execution of the consent in lieu thereof as provided in the Bylaws or until their earlier death, resignation or removal from office:

Felipe Rodriguez                President
Felipe Rodriguez                Secretary and Treasurer



**Confidential - Attorneys' Eyes Only**                **CSC 00024**

RESOLVED, that any Director and/or Officer previously elected or appointed but not listed above as a current Director and/or Officer term of office shall be deemed to have expired effective upon the date hereof.

RESOLVED, that the requirement of Florida Statute 607.1620 with regard to the preparation of financial statements is hereby modified and that such statements shall be prepared at the discretion of the Officers of the Corporation.

RESOLVED, that this consent may be executed in one or more counterparts, all of which together constitute the original.

RESOLVED, that the executed copy of this consent shall be placed with the minutes of proceedings of the Shareholders and Board of Directors.

IN WITNESS WHEREOF, the undersigned execute(s) the foregoing written consent the January 30th 2009

_____
Alfredo Herrera Hernandez
Managing Director

_____
Felipe Rodriguez (shareholder of the Corporation until July 1, 2007)

BOARD OF DIRECTORS:

_____
Felipe Rodriguez

#.9160592_v1

2

**Confidential - Attorneys' Eyes Only**

CSC 00025

# WRITTEN CONSENT OF THE SHAREHOLDER
## OF
## COGNITEC SYSTEMS CORPORATION

The undersigned, being the sole shareholder of COGNITEC SYSTEMS CORPORATION, a Delaware corporation (the "Corporation"), hereby consents to and adopts the following resolutions by written consent:

WHEREAS, the Corporation desires to accept the resignation of Felipe Rodriguez, as a member of the Board of Directors.

WHEREAS, the Corporation desires to appoint Alfredo Herrera Hernández, as the sole member of the Board of Directors.

NOW, THEREFORE, IT IS

RESOLVED, that the Corporation hereby accepts the resignation of Felipe Rodriguez, as a member of the Board of Directors of the Corporation.

FURTHER RESOLVED, that Alfredo Herrera Hernández is hereby elected as the sole member of the Board of Directors of the Corporation until his successor(s) is/are elected and qualified, or until his earlier death, resignation, or removal.

FURTHER RESOLVED, that the filing of an amended annual report with the Florida Secretary of State to reflect the changes herein set forth is hereby authorized.

FURTHER RESOLVED, that the Officers of the Corporation shall take such further actions as they consider necessary or appropriate to effect the intent of the foregoing resolutions.

FURTHER RESOLVED, that this written consent may be executed in original form or by telefax, or in one or more counterparts, all of which together shall constitute one and the same document and facsimile signature(s) shall have the same effect as original signature(s).

IN WITNESS WHEREOF, the undersigned have executed this consent on this 7th day of January, 2011.

COGNITEC SYSTEMS GmbH, as sole shareholder of the Corporation

_____

Alfredo Herrera Hernández, as Managing Director

**Confidential - Attorneys' Eyes Only**          **CSC 00026**

## WRITTEN CONSENT OF THE BOARD OF DIRECTORS
### OF
### COGNITEC SYSTEMS CORPORATION

The undersigned, being all members of the Board of Directors of COGNITEC SYSTEMS CORPORATION, a Delaware corporation (the "Corporation"), hereby consent to and adopt the following resolutions by written consent:

WHEREAS, the Corporation desires to accept the resignation of Felipe Rodriguez, as President, Secretary and Treasurer of the Corporation.

WHEREAS, the Corporation desires to appoint Alfredo Herrera Hernández to serve as President, Secretary and Treasurer of the Corporation.

WHEREAS, the Corporation desires to terminate the bank authority granted to Felipe Rodriguez and to extend bank authority to Alfredo Herrera Hernández to act on behalf of the Corporation before banks, brokerage houses, trust companies and any other financial institution.

NOW, THEREFORE, IT IS

RESOLVED, that the Corporation hereby accepts the resignation of Felipe Rodriguez as President, Secretary and Treasurer of the Corporation.

FURTHER RESOLVED, that Alfredo Herrera Hernández is hereby elected as President, Secretary and Treasurer of the Corporation until his successor(s) is/are elected and qualified, or until his earlier death, resignation, or removal.

FURTHER RESOLVED, that Alfredo Herrera Hernández is hereby appointed to represent the Corporation before all financial institutions and is specifically authorized, at his discretion and without further action by the Board of Directors:

1.    To open, maintain, or discontinue accounts of the Corporation with any bank, brokerage house, trust Corporation and/or other financial institution;

2.    To deposit or cause to be deposited in those banks, brokerage houses, trust companies and/or other financial institutions any of the funds of the Corporation;

3.    To designate the person or persons authorized to draw on those accounts;

4.    To authorize banks, brokerage houses, trust companies and/or other financial institutions in which the Corporation maintains accounts to accept for deposit in those accounts checks and drafts made payable to the order of the Corporation; and

5.    To prescribe such rules and conditions pertaining to the accounts as he considers necessary or desirable to protect the interest of the Corporation.

FURTHER RESOLVED, that Alfredo Herrera Hernández is authorized to remove the name and signature of Felipe Rodriguez from any and all bank, brokerage, trust and other similar financial institution accounts opened in the name and/or on behalf of the

2



**Confidential - Attorneys' Eyes Only**          **CSC 00027**

07.01.2011  11:37                           03501571933                    PAGE.  3/  3

Corporation, and replace same with his name and signature and/or the name and signature of his designee.

FURTHER RESOLVED, that Alfredo Herrera Hernández in his capacity as President, signing singly, be, and hereby is authorized to certify any standard bank, brokerage house, trust Corporation, or other financial institution resolution necessary to effectuate the foregoing authorizations and to insert copies of those resolutions in the minute books of the Corporation as part of its permanent records.

FURTHER RESOLVED, that the Officers of the Corporation shall take such further actions as they consider necessary or appropriate to effect the intent of the foregoing resolutions.

FURTHER RESOLVED, that this written consent may be executed in original form or by telefax, or in one or more counterparts, all of which together shall constitute one and the same document and facsimile signature(s) shall have the same effect as original signature(s).

IN WITNESS WHEREOF, the undersigned have executed this consent on this 7th day of January, 2011.

_____
Alfredo Herrera Hernández, as sole member of the Board of Directors of the Corporation

#9500964_v1

3

**Confidential - Attorneys' Eyes Only**                    **CSC 00028**

### CERTIFICATE OF INCUMBENCY
### OF
### COGNITEC SYSTEMS CORPORATION

The undersigned, being the sole officer OF COGNITEC SYSTEMS CORPORATION, a Delaware corporation duly qualified to transact business in the State of Florida (hereinafter the "Corporation") hereby, certifies as follows:

1. That the Corporation is a Delaware corporation incorporated on September 30, 2003, whose file number with the Delaware Secretary of State is 3709983.

2. That the Corporation was qualified to transact business in the State of Florida on May 21, 2008, whose document number with the Florida Secretary of State is F08000002315.

3. That the principal address of the Corporation is 5201 Blue Lagoon Drive, Miami, Florida 33126.

4. That the registered agent of the Corporation in the State of Delaware is Corporation Service Company located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

5. That the registered agent of the Corporation in the State of Florida is Corporation Service Company located at 1201 Hays Street, Tallahassee, FL 32301.

6. That the sole shareholder of the Corporation is Cognitec Systems GmbH.

7. That the sole member of the Board of Directors is Alfredo Herrera Hernández.

8. That Alfredo Herrera Hernández is the current President, Secretary and Treasurer of the Corporation.

9. That to the best of my knowledge, information and belief, having made all appropriate enquiries, no action has been taken to wind up the affairs of the Corporation.

Dated:   September _18_, 2012

Alfredo Herrera Hernández,
President, Secretary and Treasurer

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me on this _18_ day of September, 2012, by Alfredo Herrera Hernández, who is personally known to me [ ] or who produced a driver's license [ ] or passport [ ] _____ as identification.

[SEAL]

Signature of Notary Public
#11545067 v1



David Caceros
COMMISSION # EE092421
EXPIRES: MAY 10, 2015
WWW.AARONNOTARY.com

**Confidential - Attorneys' Eyes Only**

**CSC 00029**

**Certificate**

Issued to  Cognitec Systems GmbH

Dated  June 1,  90  07

For  30  Shares

For whom transferred

Received Certificate No.

For _____ Shares

Dated _____ 90

on _____ 90

| No. of Original Certificate | No. of Original Shares | No. of Shares Transferred |
| --- | --- | --- |
| 3 | 90 | 30 |

1,000 shares par value $10 each common stock

a Delaware corporation

COGNITEC SYSTEMS CORPORATION

**This Certifies that**

Cognitec Systems GmbH

is hereby issued

Thirty (30)

fully paid and non-assessable Shares of the Capital Stock of the above named Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed this _____ day of June  A.D. 90  07

_____
PRESIDENT

_____
SECRETARY

**Confidential - Attorneys' Eyes Only**

CSC 00030

*For Value Received, _____ hereby sell, assign and transfer unto _____*

*_____ Shares represented by the within certificate and do hereby irrevocably constitute and appoint*

*_____ Attorney to transfer the said Shares on the books of the within named Corporation with full power of substitution in the premises.*

*Dated _____ 20 _____*

*In presence of _____*

*_____*      *_____*

NOTICE: THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THIS CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATSOEVER.

The shares represented by this certificate have been acquired, directly or indirectly, from the issuer without being registered under the Securities Act of 1933, as amended (the "Act"), or any other applicable securities laws, and are restricted securities as that term is defined under Rule 144 promulgated under the Act. These shares may not be sold, pledged, transferred, distributed or otherwise disposed of in any manner ("Transfer") unless they are registered under the Act and any applicable securities laws, or unless the request for Transfer is accompanied by a favorable opinion of counsel, reasonably satisfactory to the issuer, stating that the Transfer will not result in a violation of the Act or any applicable securities laws.

**Confidential - Attorneys' Eyes Only**

**CSC 00031**



**COGNITEC SYSTEMS CORPORATION**

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

**TOTAL AUTHORIZED ISSUE**
1,000 SHARES PAR VALUE $.10 EACH
COMMON STOCK

2

970

See Reverse for Certain Definitions

**This is to Certify that**  COGNITEC SYSTEMS GmbH  _is the owner of_

NINE HUNDRED AND SEVENTY ( 970 )  ***************************** _fully paid and non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed._

**Witness,** _the seal of the Corporation and the signatures of its duly authorized officers._

**Dated**  NOVEMBER 13, 2003

Co.18547-3  5544657943

PRESIDENT

© 1999 CORPEX BANKNOTE CO., BAY SHORE N.Y.

**Confidential - Attorneys' Eyes Only**   CSC 00032



COGNITEC SYSTEMS CORPORATION

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

2

970

TOTAL AUTHORIZED ISSUE
1,000 SHARES PAR VALUE \$.10 EACH
COMMON STOCK

See Reverse for
Certain Definitions

This is to Certify that     COGNITEC SYSTEMS GmbH       is the owner of

NINE HUNDRED AND SEVENTY ( 970 ) ************************************** *fully paid and*

*non-assessable shares of the above Corporation transferable only on the books of the*
*Corporation by the holder hereof in person or by duly authorized Attorney upon*
*surrender of this Certificate properly endorsed.*

*Witness, the seal of the Corporation and the signatures of its duly authorized officers.*

Dated   NOVEMBER 13, 2003

© 1999 CORPEX BANKNOTE CO., BAY SHORE N.Y.

Confidential - Attorneys' Eyes Only     CSC 00033

**Form of Offer to Purchase Stock**

*Nov. 13 2003*
(Date)

To the Board of Directors of

*COGNITEC SYSTEMS CORPORATION*
(Name of Corporation)

Gentlemen:

I, the undersigned, hereby offer to purchase *NINE HUNDRED SEVENTY (970)*
(Number)

shares of the *Common* stock of your corporation at a total purchase price

of *NINETY SEVEN DOLLARS ($97.00)*

Very truly yours,

*COGNITEC SYSTEMS GmbH*
(Name of Purchaser)

*Nov. 13 2003*
(Dated)

---

**Form of Offer to Sell Stock**
**Pursuant to Sec. 1244 I.R.C.**

_____
(Date)

To:_____
(Name of Prospective Stockholder)

Dear Sir:

Pursuant to the provisions of our plan to offer shares qualifying under Section 1244 of the

Internal Revenue Code, the corporation hereby offers to sell to you _____ shares of its

common stock at a price of $_____ per share.

Your signature on the enclosed copy of this letter shall constitute an acceptance of our offer

as of the date it is received by the corporation.

Very truly yours,

_____
(Name of Corporation)

By_____
President

The aforesaid offer is

hereby accepted.

_____

**Confidential - Attorneys' Eyes Only**

ATTACH CANCELLED CERTIFICATE HERE

CERTIFICATE NO: 2

ISSUED TO   COGNITEC SYSTEMS GmbH

FOR   970   SHARES

DATED   11/13/03

RECEIVED CERTIFICATE NO.   2

THIS   13   DAY OF   November,   2003

FOR   970   SHARES

USE FORM BELOW FOR TRANSFER FROM ORIGINAL ISSUE

FROM WHOM TRANSFERRED:

DATED

| ORIGINAL CERTIFICATE NUMBER | NUMBER ORIGINAL SHARES | NUMBER OF SHARES TRANSFERRED |
|---|---|---|

RECORD OF TRANSFER OF SURRENDER CERTIFICATE

| NEW CERTIFICATES ISSUED TO: | NUMBER OF SHARES TRANSFERRED | NUMBER OF NEW CERTIFICATES |
|---|---|---|

DATED

**Confidential - Attorneys' Eyes Only**

CSC 00035



**Confidential - Attorneys' Eyes Only**



**Confidential - Attorneys' Eyes Only**

**CSC 00037**

**IRS** Department of the Treasury
Internal Revenue Service

OGDEN   UT   84201-0038

In reply refer to:  0442745103
Mar. 17, 2006   LTR 147C  i0
20-0389387   000000 00 000
Input Op:  0442745103     02904
                    BODC: SB

COGNITEC SYSTEMS US CORPORATION
5201 BLUE LAGOON DR
MIAMI  FL  33126-2064995

9621

        Employer Identification Number:  ▬▬▬▬▬▬

    Dear Taxpayer:

    We received your request dated Mar. 08, 2006, asking us to verify
    your Employer Identification Number (EIN) and name.

    Your Employer Identification Number (EIN) is ▬▬▬▬▬.  Please keep
    this number in your permanent records.  You should enter your name
    and your EIN, exactly as shown above, on all business federal tax
    forms that require its use, and on any related correspondence
    documents.

    If you have any questions, please call us toll free at 1-800-829-0115.

    If you prefer, you may write to us at the address shown at the top
    of the first page of this letter.

    Whenever you write, please include this letter and, in the spaces
    below, give us your telephone number with the hours we can reach you.
    Also, you may want to keep a copy of this letter for your records.

    Telephone Number (    )_____  Hours_____

**Confidential - Attorneys' Eyes Only**                          CSC 00038

# State of Delaware
# Annual Franchise Tax Report

| CORPORATION NAME | | | | TAX YR. |
|---|---|---|---|---|
| COGNITEC SYSTEMS CORPORATION | | | | 2009 |

| FILE NUMBER | INCORPORATION DATE | RENEWAL/REVOCATION DATE | | |
|---|---|---|---|---|
| 3709983 | 2003/09/30 | 2010/03/02 | | |

**PRINCIPAL PLACE OF BUSINESS**
5201 Blue Lagoon Drive suite 800

**PHONE NUMBER**
305/629-3113

Miami FL 33126 United States

**REGISTERED AGENT**
CORPORATION SERVICE COMPANY

**AGENT NUMBER**
9000014

2711 CENTERVILLE ROAD
SUITE  400

WILMINGTON                  DE 19808

| AUTHORIZED STOCK | | DESIGNATION/ | NO. OF SHARES | PAR VALUE/ SHARE |
|---|---|---|---|---|
| BEGIN DATE | END DATE | STOCK CLASS | | |
| 2003/09/30 | | COMMON | 1,000 | .100000 |

| OFFICER | NAME | STREET/CITY/STATE/ZIP | TITLE |
|---|---|---|---|
| Felipe M. Rodriguez | | | President |

5201 Blue Lagoon Drive suite 800

Miami FL 33126 United States

| DIRECTORS | NAME | STREET/CITY/STATE/ZIP |
|---|---|---|

========================================================================
Total number of directors:1        an external document of directors follows

*NOTICE: Pursuant to 8 Del. C. 502(b), If any officer or director of a corporation required to make an annual franchise tax report to the Secretary of State shall knowingly make any false statement in the report, such officer or director shall be guilty of perjury.*

**AUTHORIZED BY (OFFICER, DIRECTOR OR INCORPORATOR)**            DATE        TITLE
Felipe M. Rodriguez

5201 Blue Lagoon Drive suite 800                                                        President
                                                    2010-08-26

Miami FL 33126 United States

**Confidential - Attorneys' Eyes Only**

CSC 00039

Cognitec Systems Corporation
CSC Company ID: 2222061
DE File # 3709983
Officers: Felipe Manuel Rodriguez.

**Confidential - Attorneys' Eyes Only**

# State of Delaware
# Annual Franchise Tax Report

| CORPORATION NAME | | TAX YR. |
|---|---|---|
| COGNITEC SYSTEMS CORPORATION | | 2009 |

| FILE NUMBER | FEDERAL EMPLOYER ID NO. |
|---|---|
| 3709983 | 20-0389387 |

ASSETS FOR REGULATED INVESTMENT CORPS
JAN. 1st.            DEC. 31st.

Date(s) of Inactivity
From            To

| TOTAL NUMBER OF SHARES ISSUED | TOTAL GROSS ASSETS | ASSET DATE |
|---|---|---|

| Franchise Tax | Penalty | 1.5% Monthly Interest | Annual Filing Fee | Prev Credit or Balance |
|---|---|---|---|---|
| 75.00 | 100.00 | 15.75 | 50.00 | 0.01 CR |

| Prepaid Qrty. Payments | Amount Due | Amount Paid | Check Number |
|---|---|---|---|
| 0.00 | 240.74 | 240.74 | |

**Confidential - Attorneys' Eyes Only**

CSC 00041

## 2011 FOR PROFIT CORPORATION AMENDED ANNUAL REPORT

DOCUMENT# F08000002315

**FILED**
**Jan 11, 2011**
**Secretary of State**

**Entity Name:** COGNITEC SYSTEMS CORPORATION

**Current Principal Place of Business:**

5201 BLUE LAGOON DRIVE, SUITE 800
MIAMI, FL 33126

**New Principal Place of Business:**

**Current Mailing Address:**

5201 BLUE LAGOON DRIVE, SUITE 800
MIAMI, FL 33126

**New Mailing Address:**

FEI Number: 20-0389387    FEI Number Applied For ( )    FEI Number Not Applicable ( )    Certificate of Status Desired ( )

**Name and Address of Current Registered Agent:**

RODRIGUEZ, FELIPE
5201 BLUE LAGOON DRIVE, SUITE 800
MIAMI, FL 33126    US

**Name and Address of New Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301    US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE:   BRYAN COURTNEY, VICE PRESIDENT                              01/11/2011
                        Electronic Signature of Registered Agent                                 Date

### OFFICERS AND DIRECTORS:

Title:         DPST
Name:       HERRERA HERNANDEZ, ALFREDO
Address:    5201 BLUE LAGOON DRIVE, SUITE 800
City-St-Zip:  MIAMI, FL 33126

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE:   ALFREDO HERRERA HERNANDEZ          DPST          01/11/2011
                        Electronic Signature of Signing Officer or Director                  Date

**Confidential - Attorneys' Eyes Only**          **CSC 00042**

# 2012 FOR PROFIT CORPORATION ANNUAL REPORT

**FILED**
**Jan 04, 2012**
**Secretary of State**

DOCUMENT# F08000002315

**Entity Name:**  COGNITEC SYSTEMS CORPORATION

**Current Principal Place of Business:**

5201 BLUE LAGOON DRIVE, SUITE 800
MIAMI, FL  33126

**New Principal Place of Business:**

**Current Mailing Address:**

5201 BLUE LAGOON DRIVE, SUITE 800
MIAMI, FL  33126

**New Mailing Address:**

FEI Number: 20-0389387     FEI Number Applied For ( )     FEI Number Not Applicable ( )     Certificate of Status Desired (X)

**Name and Address of Current Registered Agent:**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL  32301     US

**Name and Address of New Registered Agent:**

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                Date

### OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title: | DPST |
| Name: | HERRERA HERNANDEZ, ALFREDO |
| Address: | 5201 BLUE LAGOON DRIVE, SUITE 800 |
| City-St-Zip: | MIAMI, FL  33126 |

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE:  ALFREDO HERRERA               CEO          01/04/2012

Electronic Signature of Signing Officer or Director          Date

**Confidential - Attorneys' Eyes Only**          **CSC 00043**

# *State of Florida*
## *Department of State*

I certify from the records of this office that COGNITEC SYSTEMS CORPORATION is a corporation organized under the laws of Delaware, authorized to transact business in the State of Florida, qualified on May 21, 2008.

The document number of this corporation is F08000002315.

I further certify that said corporation has paid all fees due this office through December 31, 2012, that its most recent annual report was filed on January 4, 2012, and its status is active.

I further certify that said corporation has not filed a Certificate of Withdrawal.

*Given under my hand and the Great Seal of Florida, at Tallahassee, the Capital, this the Fifth day of January, 2012*

## *Secretary of State*



Authentication ID: **900215978119-010512-F08000002315**

To authenticate this certificate,visit the following site, enter this ID, and then follow the instructions displayed.
**https://efile.sunbiz.org/certauthver.html**

**Confidential - Attorneys' Eyes Only**          **CSC 00044**

COGNITEC SYSTEMS CORPORATION
BALANCE SHEET
As of December 31, 2009

ASSETS
CURRENT ASSETS
   Cash and Cash Equivalent     US$    $
   Accounts  receivable
   Prepaid taxes

PROPERTY AND EQUIPMENT
   Furniture and equipment
   Accumulated depreciation

DEPOSITS

TOTAL ASSETS    $

LIABILITIES AND SHAREHOLDERS' EQUITY
LIABILITIES
CURRENT LIABILITIES
   Accounts payable - Cognitec GMBH   US$   $
   Accrued Expenses
   Deferred Income

SHAREHOLDERS' EQUITY
   Common stock
   Additional Paid-In-Capital
   Retained earnings

TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY   $

**Confidential - Attorneys' Eyes Only**

COGNITEC SYSTEMS CORPORATION
STATEMENT OF INCOME (LOSS) AND RETAINED EARNINGS
FOR THE YEAR ENDED DECEMBER 31, 2009

**REVENUES**
Sales             US$    $
Exempt sales
License agreement
Cost of sales and Customer Training
 GROSS PROFIT        $

**OPERATING EXPENSES**
Accounting and legal    $
Auto expense
Bad debt
Computer parts
Deliveries
Dues and subscriptions
Income taxes
Insurance
Marketing expenses
Meals and entertainment
Office
Payroll processing fees
Professional fees and consulting
Recruiting
Rent
Repairs and maintenance
Salaries
Seminars
Service charges
Storage
Taxes, licenses and service
Telephone
Trade shows
Travel
Depreciation
 TOTAL OPERATING EXPENSES   $

Interest Income

NET INCOME    $

RETAINED EARNINGS AT BEGINNING

RETAINED EARNINGS AT ENDING   $

**Confidential - Attorneys' Eyes Only**

COGNITEC SYSTEMS CORPORATION
BALANCE SHEET
As of December 31, 2010

ASSETS
CURRENT ASSETS
   Cash and cash equivalent       US$    $   ██████████
   Accounts receivable                          ██████████
   Prepaid expense                           ██████

PROPERTY AND EQUIPMENT
   Furniture and equipment                     ██████
   Accumulated depreciation                  ██████

DEPOSITS                                  ██████

TOTAL ASSETS                     $   ██████████

LIABILITIES AND SHAREHOLDERS' EQUITY
LIABILITIES
CURRENT LIABILITIES
   Accounts payable - Cognitec GMBH   US$   $   ██████████
   Accrued expenses                        ██████████
   Income tax payable                      ██████████
   Deferred income                          ██████████

SHAREHOLDERS' EQUITY
   Common stock                           ██████
   Additional paid-in-capital               ██████████
   Retained earnings                     ██████████

TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY   $   ██████████

**Confidential - Attorneys' Eyes Only**        **CSC 00047**

COGNITEC SYSTEMS CORPORATION
STATEMENT OF INCOME (LOSS) AND RETAINED EARNINGS
FOR THE YEAR ENDED DECEMBER 31, 2010

REVENUES
Sales                                      US$      $     ▓▓▓▓▓▓
Exempt sales                                              ▓▓▓
License agreement                                        (▓▓▓▓▓)
Cost of sales and Customer Training
  GROSS PROFIT                                      $     ▓▓▓▓▓

OPERATING EXPENSES
Accounting and legal                                $     ▓▓▓▓
Auto expense                                             ▓▓▓▓
Bad debt                                                 ▓▓▓▓
Computer parts                                           ▓▓▓▓
Conferences                                              ▓▓▓▓
Donations                                                ▓▓▓▓
Dues and subscriptions                                   ▓▓▓▓
Income taxes                                             ▓▓▓▓
Insurance                                                ▓▓▓▓
Marketing expenses                                       ▓▓▓▓
Meals and entertainment                                  ▓▓▓▓
Moving expenses                                          ▓▓▓▓
Office                                                   ▓▓▓▓
Payroll processing fees                                  ▓▓▓▓
Rent                                                     ▓▓▓▓
Repairs and maintenance                                  ▓▓▓▓
Salaries                                                 ▓▓▓▓
Seminars                                                 ▓▓▓▓
Service charges                                          ▓▓▓▓
Shipping                                                 ▓▓▓▓
Storage                                                  ▓▓▓▓
Taxes, licenses and service                              ▓▓▓▓
Telephone                                                ▓▓▓▓
Trade Show                                               ▓▓▓▓
Travel                                                   ▓▓▓▓
Depreciation                                             ▓▓▓▓
  TOTAL OPERATING EXPENSES                          $     ▓▓▓▓

Interest Income                                           ▓▓▓▓

NET INCOME                                          $     ▓▓▓▓

RETAINED EARNINGS AT BEGINNING                           ▓▓▓▓

RETAINED EARNINGS AT ENDING                         $     ▓▓▓▓

**Confidential - Attorneys' Eyes Only**

CSC 00048

*lopez levi*
& associates, P.A., CPAs

COGNITEC SYSTEMS CORP.
5201 BLUE LAGOON DR
MIAMI, FL 33126-2064

We have compiled the accompanying statement of assets, liabilities and stockholders' equity - income tax basis of COGNITEC SYSTEMS CORP., a C-Corporation, as of December 31, 2011, and the related statements of revenues and expenses - income tax basis for the one month and twelve months then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. The financial statements have been prepared on the accounting basis used by the Company for income tax purposes, which is a comprehensive basis of accounting other than generally accepted accounting principles.

A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them.

A compilation differs significantly from a review or an audit of financial statements. A compilation does not contemplate performing inquiry, analytical procedures, or other procedures performed in a review. Additionally, a compilation does not contemplate obtaining an understanding of the entity's internal controls; assessing fraud risks; test of accounting records by obtaining sufficient appropriate audit evidence through inspection, observation, confirmation, the examination of source documents (for example, cancelled checks or bank images); or other procedures ordinarily performed in an audit. Therefore, a compilation does not provide a basis for expressing any level or assurance on the financial statements being compiled.
We are not independent with regard to the financial statement.

The owners have elected to omit substantially all of the disclosures and the Statement of Cash flows ordinarily included in financial statements prepared on the income tax basis of accounting. If the omitted disclosures and statements were included in the financial statements, they might influence the user's conclusions about the Company's assets, liabilities, stockholders' equity, revenues, expenses, and cash flows. Accordingly, these statements are not designed for those who are not informed about such matters.

Certified
Public Accountants
and Associates

Lopez Levi & Associates, P.A., CPAs

February 14, 2012

201 Alhambra Circle
Suite No 501
Coral Gables, FL
33134
(P) 305-774-2945
(FX) 305-774-1504

**Confidential - Attorneys' Eyes Only**                    **CSC 00049**

# COGNITEC SYSTEMS CORP.
## BALANCE SHEET
### As of December 31, 2011
### ASSETS

**CURRENT ASSETS**
JP Morgan Checking — $ 
EXECUTIVE NAT BANK-OPERATING
DRESDNER BANK A/C 00
DRESNER BANK A/C 70
PETTY CASH - MIAMI
ACCOUNTS RECEIVABLE
PETTY CASH - BOSTON
JP Morgan Savings
PREPAID EXPENSE
PREPAID TAXES

**Total Current Assets** 

**PROPERTY AND EQUIPMENT**
EQUIPMENT
A/D-EQUIPMENT
COMPUTER
A/D-COMPUTER
FURNITURE & FIXTURE
A/D-FURNITURE & FIXTURE 

**Net Property and Equipment** 

**OTHER ASSETS**
DEPOSIT-RENT
DEPOSIT OUTSTANDING

**Total Other Assets** 

**TOTAL ASSETS** $

## LIABILITIES AND SHAREHOLDERS'

**CURRENT LIABILITIES**
ACCOUNTS PAYABLE — $ 
SALARY PAYABLE
FEDERAL/FLORIDA INC/TAX
ACCRUED EXPENSE
Deferred Income
Due to Chase Card Services

**Total Current Liabilities**

**LONG-TERM LIABILITIES**

**Total Liabilities**

**EQUITY**
COGNITEC SYST GMBH-CAPITAL        110,000.00
RETAINED EARNING

CURRENT YEAR PROFIT-LOSS

See Accountants' Compilation Report

**Confidential - Attorneys' Eyes Only**            CSC 00050



## COGNITEC SYSTEMS CORP.
## BALANCE SHEET
### As of  December 31, 2011

Total Stockholders' Equity

TOTAL LIABILITIES AND
STOCKHOLDERS' EQUITY          $

See Accountants' Compilation Report
2

**Confidential - Attorneys' Eyes Only**          **CSC 00051**



**lopez levi**
& associates, P.A., CPAs

COGNITEC SYSTEMS CORP.
5201 BLUE LAGOON DR
Miami , FL 33126-2064

We have compiled the accompanying balance sheet of COGNITEC SYSTEMS CORP. (a Corporation) as of December 31, 2012, and the related income statement for the year then ended. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or provide any assurance about whether the financial statements are in accordance with accounting principles generally accepted in the United States of America.

Management is responsible for the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America and for designing, implementing, and maintaining internal control relevent to the preparation and fair presentation of the financial statements.

Our responsibility is to conduct the compilation in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. The objective of a compilation is to assist management in presenting financial information in the form of financial statements without undertaking to obtain or provide any assurance that there are no material modifications that should be made to the financial statements.

Management has elected to omit substantially all of the disclosures and the statement of cash flows required by accounting principles generally accepted in the United States of America. If the omitted disclosures and statements were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations, and cash flows. Accordingly, the financial statements are not designed for those who are not informed about such matters.

Lopez Levi & Associates, P.A., CPAs

October 24, 2013

Certified
Public Accountants
and Associates

201 Alhambra Circle
Suite No 501
Coral Gables, FL
33134
(P) 305-774-2945
(FX) 305-774-1504

**Confidential - Attorneys' Eyes Only**

# COGNITEC SYSTEMS CORP.
## Balance Sheet
## As of December 31, 2012

## ASSETS

**CURRENT ASSETS**
JP Morgan Checking
EXECUTIVE NAT BANK-OPERATING
BERENBERG BANK USD CHECKING
BERENBERG BANK EURO ACCOUN
PETTY CASH - MIAMI
BERENGER BANK # 658661
BERENGER BANK #658663
ACCOUNTS RECEIVABLE
PETTY CASH - BOSTON
JP Morgan Savings
Pay Pal Account
PREPAID EXPENSE
PREPAID TAXES



Total Current Assets

**PROPERTY AND EQUIPMENT**
EQUIPMENT
A/D-EQUIPMENT
COMPUTER
A/D-COMPUTER
FURNITURE & FIXTURE
A/D-FURNITURE & FIXTURE



Net Property and Equipment



**OTHER ASSETS**
DEPOSIT-RENT
DEPOSIT OUTSTANDING

Total Other Assets



TOTAL ASSETS

**CURRENT LIABILITIES**
ACCOUNTS PAYABLE
ACCOUNTS PAYABLE AND ACCRUE
ACCRUED EXPENSE
Deferred Income
Due to Chase Card Services



Total Current Liabilities

**LONG-TERM LIABILITIES**

See independent accountants' compilation report.

1

**Confidential - Attorneys' Eyes Only**            **CSC 00053**



# COGNITEC SYSTEMS CORP.
## Balance Sheet
### As of  December 31, 2012

Total Liabilities

**EQUITY**
COGNITEC SYST GMBH-CAPITAL     110,000.00
RETAINED EARNINGS
CURRENT YEAR PROFIT-LOSS

Total Stockholders' Equity

TOTAL LIABILITIES AND
STOCKHOLDERS' EQUITY    $

See independent accountants' compilation report.
2

**Confidential - Attorneys' Eyes Only**

CSC 00054



**Cognitec Systems Corporation**

# EMPLOYEE HANDBOOK

July 2012

**Confidential - Attorneys' Eyes Only**

**CSC 00055**

## EMPLOYEE ACKNOWLEDGEMENT FORM

I received my copy of the Employee Handbook, which I have read and understand.   The employee handbook describes important information about Cognitec, and I understand that I should consult my supervisor regarding any questions not answered in the handbook. *I acknowledge that there is no specified length of employment. Accordingly, either Cognitec or I can terminate my employment at will, with or without cause or notice, at any time, so long as there is no violation of applicable federal, state or local law.*

Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to the handbook may occur, except to Cognitec's policy of employment-at-will. I understand that Cognitec retains the right to modify, supplement, or in some cases, eliminate any of the published or unpublished policies, benefit programs and other practices at any time, with or without notice, and to change employee contributions to health and benefit programs with or without notice.   I understand that revised information may supersede, modify, or eliminate existing policies.

*Furthermore, I acknowledge that this handbook is neither a contract of employment nor a guarantee of any particular terms or conditions of employment.*

**EMPLOYEE'S NAME (print):**_____

**EMPLOYEE'S SIGNATURE:** _____

**DATE:**_____

2

**ACKNOWLEDGEMENT OF CONFIDENTIALITY AGREEMENT**

I hereby certify that I have read and understand Cognitec's Confidentiality and Non-Disclosure Agreement and will comply with the principles outlined therein during my association with the Company.

EMPLOYEE'S NAME (print):_____

EMPLOYEE'S SIGNATURE:_____

DATE:_____

3

**Confidential - Attorneys' Eyes Only**        **CSC 00057**



## PRESIDENT AND CEO'S WELCOME MESSAGE

July 10, 2012

Dear Cognitec Employee:

Cognitec is no doubt a very special company. Since our origin, our employees' contributions and "can do" spirit have been the principal catalysts to our growth and long-standing technology leadership in the face recognition market. Our employees are the key to our continued success and the core ingredient in delivering exceptional technology prowess and solid customer support.

As we continue our growth and Company expansion, it is imperative that everyone, all existing and new employees, fully understand their responsibility in conducting themselves in the most ethical and honorable manner possible. Doing what is right and good for our customers and fellow employees also involves abiding by all laws, statutes and regulations that govern our business and everyday lives. This is good business practice and simply the right thing to do. All employees of Cognitec are expected to conduct themselves professionally, in whatever situation they may find themselves, and exhibit behavior that includes respect, enthusiasm, cooperation and integrity.

We believe that each employee contributes directly to our growth and success, and we hope you will take pride in being a member of our team. Further, we hope that your experience here will be challenging, enjoyable, and rewarding.

On behalf of Cognitec and your colleagues, I wish you much success in your professional endeavors and career with us!

Cordially,

Alfredo Herrera Hernandez
President and CEO

4

**Confidential - Attorneys' Eyes Only**

## ABOUT THIS HANDBOOK

This handbook was developed and produced by Cognitec Systems Corporation ("Cognitec" or the "Company"). It is designed to acquaint you with Cognitec and provide you with basic information about some of your working conditions, employee benefits, and some of the policies affecting your employment.

This handbook is meant to be only a general guide and not a contract for employment. Exact descriptions of Cognitec's benefit provisions are contained in other Cognitec documents which you can get from your supervisor. This handbook supersedes all previous handbooks or general Company employment documents.

Cognitec retains the right to modify, supplement, or in some cases, eliminate any of the published or unpublished policies, benefit programs and other practices at any time, with or without notice, and to change employee contributions to health and benefit programs with or without notice. Every effort will be made to inform employees of such changes to the handbook as they occur. The only exception is that the Company's employment-at-will policy will never be modified. The employment-at-will policy permits you or Cognitec to terminate your employment for any reason or no reason, at any time without prior notice or cause.

*Your employment with Cognitec Systems Corporation is at will and can be terminated by you at any time. Just as any employee is free to end his or her employment with Cognitec at any time for any reason, Cognitec may, at any time, terminate an individual's employment with or without cause or prior notice, at its sole discretion. This handbook is not an employment contract, nor is it intended to give any expressed or implicit right of continued employment or employment for any specific duration.*

Only the President and CEO has the authority to enter into a written contract between the Company and an employee for employment for a specified period of time.

5

**Confidential - Attorneys' Eyes Only**          **CSC 00059**

## ABOUT COGNITEC SYSTEMS CORPORATION

The parent company of Cognitec Systems Corporation is Cognitec Systems GmbH (hereinafter "Cognitec GmbH" or the "Parent"). Cognitec GmbH was registered under German law effective May 28, 2002, and is headquartered in Dresden, Germany. Cognitec GmbH develops, markets and deploys the well-established and market-leading FaceVACS® face recognition software to global customers. Cognitecs GmbH's software experts have been developing face recognition technology since 1995, with initial use of its early-generation technology by industry and governmental customers commencing in 1996.

On September 30, 2003, Cognitec GmbH established the Company as a wholly-owned subsidiary under the laws of the state of Delaware to commercialize its FaceVACS technology and related products within the US.

Since its inception, Cognitec GmbH's FaceVACS software has repeatedly attained a market-leading technology position in various independent evaluation tests, including the Face Recognition Vendor Tests 2002 and 2006 as well as the recent Multiple Biometrics Evaluation 2010, performed by the US National Institute of Standards and Technology (NIST).

Cognitec GmbH has a proven track record of ten years in the biometric market, and 17 years of history for the technology. In this period, Cognitec GmbH has well positioned itself as a leading technology provider for face recognition. *Cognitec – The face recognition company*, the Parent's global marketing tag line, serves to promote the global vision of providing the best available, market-leading face recognition software product today.

While still a relatively young and pioneering company, Cognitec and its Parent have quickly solidified their operational prowess through proven face recognition technology solutions substantiated by a growing list of references.

In the US, Cognitec principal customers are Value-Added Resellers and Systems Integrators through which face recognition components are delivered to our partners who integrate such technology into their solutions for their end-customers. In selected cases, Cognitec delivers complete systems, including hardware (computers, cameras, networking, etc.).

Cognitec also continues works with end-customers in cases where its products allow the Company to cover special customer needs with a low adaptation effort; examples are FaceVACS-DBScan for ID document issuance authorities as well as law enforcement agencies.

6

**Confidential - Attorneys' Eyes Only**　　　　　　CSC 00060

# EMPLOYMENT

## Table of Contents

| | |
|---|---|
| Employment-At-Will | 8 |
| Working Together | 8 |
| Equal Employment Opportunity | 9 |
| Sexual and Other Unlawful Harassment | 9 |
| Investigation of Harassment, Discrimination and Retaliation Reports | 11 |
| Posting and Distribution | 13 |
| Disability Accommodation | 13 |
| Genetic Information and Nondiscrimination Act | 13 |
| Immigration Law Compliance | 14 |
| Probationary Period | 14 |
| Business Ethics and Conduct | 14 |
| Conflicts of Interest | 15 |
| Non-Disclosure of Confidential Information and Trade Secrets | 15 |
| Gifts | 16 |
| Outside Teaching, Lecturing and Consulting | 17 |
| Employment of Relatives and Personal Relationships in the Workplace | 17 |
| Outside Employment | 18 |
| Internal Transfers and Job Posting | 18 |
| Leaving Cognitec | 19 |
| Employment Classifications | 19 |
| Break Time for Nursing Mothers | 21 |
| Access to Personnel Files | 21 |
| Requests for References | 21 |
| Personal Data Changes | 21 |
| Creating Leadership Excellence | 21 |
| Job Descriptions | 22 |

**Confidential - Attorneys' Eyes Only**          **CSC 00061**

# EMPLOYMENT

## Employment-At-Will

This handbook is only a general guide. It is not intended to and cannot anticipate every situation or answer every question about employment. It is not an employment contract and is not intended to create contractual obligations of any kind.  Neither the employee nor Cognitec is bound to continue the employment relationship and the Company or the employee may choose to terminate employment at any time, without prior notice, for any or no reason.

The employment-at-will relationship between the employee and Cognitec cannot be modified by any other statement made in this handbook, or any other written or oral communication, except by a written contract entered into for that express purpose and signed by both the employee and the President and CEO of the Company. Employees should not rely on verbal or written comments made by anyone at Cognitec as a guarantee for special privileges, working conditions, or length of employment.

## Working Together

Cognitec believes that the work conditions, wages, and benefits it offers to its employees are competitive with those offered by other employers in this area and in this industry. If employees have concerns about work conditions or compensation, they are strongly encouraged to voice these concerns openly and directly to their supervisors.

The Company's experience is that when employees deal openly and directly with supervisors, the work environment can be excellent, communications can be clear, and attitudes can be positive. Cognitec believes that it demonstrates its commitment to employees by responding effectively to employee concerns.

We are a union-free operation. We believe a union would not work to our mutual benefit and that where there are unions, trouble, strikes and bitterness often follow.  Therefore, in an effort to protect and maintain direct employer/employee communications and protect the right of employees to speak for themselves, we intend to oppose unionism by every proper and lawful means, in particular, by treating our employees fairly at all times.

We know that no workplace is free from day-to-day problems.  Nevertheless, we believe that we can best work out our differences among ourselves.  We encourage you to bring your concerns to your supervisor or anyone in administration you feel can help you.  We promise to listen and give you a straight answer.

It is not necessary for any employee to pay union dues to receive fair treatment here.  Each employee is important to the Company, and we urge you to exercise your freedom to refuse to join any union or sign any union card.

Whenever you have any question about unions, or about the Company's policies or practices, please feel free to ask your supervisor or anyone else on the Company's management team.

8

**Confidential - Attorneys' Eyes Only**

**CSC 00062**

**Equal Employment Opportunity**

It is the continuing policy of Cognitec to seek and retain candidates for employment based on the qualifications which we feel are essential for the person to perform well at the Company. In order to provide equal employment and advancement opportunities to all individuals, employment decisions at Cognitec are based on merit, qualifications, and abilities. The Company prohibits discrimination and harassment in employment opportunities or practices on the basis of race, color, religion, sex, national origin, age, disability, marital status, genetic information, or any other characteristic protected by law. Cognitec also promotes equal employment opportunity in our policies and procedures including recruiting, hiring, training, promoting, transferring, disciplining, and compensation.

Because of the serious nature of discrimination in the workplace, employees with questions or concerns about this policy are encouraged to speak to the President and CEO or a supervisor. Employees who experience or observe discrimination in the workplace should immediately report it to a supervisor or the President and CEO. Supervisors must report any issue raised to them to the President and CEO within 24 hours. Although the Company strives to ensure employment actions further the principles of equal employment opportunity, all management personnel share the responsibility of meeting the objectives and assuring compliance with this policy.

Cognitec does not permit retaliation against employees raising reasonably held concerns about discrimination or harassment. Employees can raise concerns and make reports without fear of reprisal. Anyone found to be engaging in any type of unlawful discrimination or retaliation will be subject to disciplinary action, up to and including termination of employment.

**Sexual and Other Unlawful Harassment**

Cognitec is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment.

*Harassment*

The Company will not tolerate any actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, sexual orientation, , marital status, genetic information, or any other legally protected characteristic which harasses, disrupts, or interferes with another employee's work performance or which creates an intimidating, offensive or hostile work environment. All employees, whether managers, supervisors, or co-workers, are responsible for maintaining and preserving an environment free of harassment.

Examples of harassment include, but are not limited to: threats, insults, racial or religious slurs, jokes, gestures, physical contact and the display or circulation of obscene, derogatory or inappropriate written or other physical materials or pictures.

9

**Confidential - Attorneys' Eyes Only**          **CSC 00063**

*Sexual Harassment*

Sexual harassment is a form of sex discrimination that is illegal under both federal and state law. These laws define sexual harassment as unwelcome sexual advances, sexual favors, and other visual, verbal, or physical conduct of a sexual nature when: (1) submission to or rejection of such advances, requests, or conduct is made either explicitly or implicitly a term or condition of employment; (2) submission to or rejection of such advances, requests, or conduct is used as a basis for making employment decisions; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, humiliating, or sexually offensive work environment. This definition includes many forms of offensive behavior and includes gender-based harassment of a person of the same sex as the harasser. The following is a partial list of sexual harassment examples:

- Unwanted sexual advances
- Offering employment benefits in exchange for sexual favors
- Making or threatening reprisals after a negative response to sexual advances
- Visual conduct that includes leering, making sexual gestures, or displaying sexually suggestive objects or pictures, cartoons or posters
- Verbal conduct that includes making or using derogatory comments, epithets, slurs, or jokes
- Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, or suggestive or obscene letters, notes, pictures, videos, or invitations
- Nonverbal conduct that includes the display or circulation of posters, drawings, pictures, cartoons, or calendars; leering; whistling; suggestive or insulting looks, sounds, gestures
- Physical conduct that includes touching, assaulting, or impeding or blocking normal movements, intentional touching of the body (i.e., brushing, patting, pinching, kissing), inappropriate display of body parts, coerced acts of a sexual nature or other physical interference with work directed at an individual

In addition, Cognitec prohibits retaliation that includes retribution for reporting sexual or other unlawful harassment or discrimination, for having assisted another employee to report sexual or other unlawful harassment or discrimination, or for cooperating in an investigation of a complaint of sexual or unlawful harassment or discrimination.

*Reporting Harassment*

Employees who experience and/or observe the actions or words of another employee and believe those actions or words constitute harassment should immediately report it to a supervisor. If the employee feels comfortable doing so, he/she may also tell the harasser that the behavior is offensive, explaining how it felt and how it affected the employee's ability to work, but this is not required.

10

**Confidential - Attorneys' Eyes Only**

If the employee's direct supervisor is unavailable or if the employee is uncomfortable contacting that supervisor because, for example, the supervisor was involved in the harassment or is an associate of the person who engaged in the harassment in question, he/she should immediately contact another available supervisor or the President and CEO. Employees can raise concerns and make reports without fear of reprisal or retaliation.

Supervisors are required to contact the President and CEO, as soon as a claim of harassment is reported.

The President and CEO is currently designated by Cognitec as responsible for investigating complaints of unlawful sexual harassment, employment discrimination or harassment and retaliation as described under this Policy, and may also be contacted to initiate an investigation under the Policy:

**Investigation of Harassment, Discrimination and Retaliation Reports**

All allegations of sexual and other types of harassment, discrimination, or retaliation will be quickly and discreetly investigated. Immediate corrective or preventative action may be taken pending the outcome of the investigation. To the extent possible, an employee's confidentiality and that of any witnesses and the alleged harasser or discriminator will be protected against unnecessary disclosure. Reporting employees are expected to cooperate throughout the investigation. When the investigation is completed, the employee will be informed of the outcome of the investigation.

If the employee is not satisfied with the handling of a report, he/she may bring concerns to the attention of the President and CEO of Cognitec.

After the investigation, all employees who are determined to have engaged in harassment, discrimination, or retaliation in violation of this policy will be subject to appropriate disciplinary action, including, but not limited to, reprimand, change in work assignment, suspension, and immediate termination. Supervisors are expected to assist the President and CEO in implementing any remedial actions.

11

**Confidential - Attorneys' Eyes Only**                    CSC 00065

**State and Federal Agencies**

In addition to the above, if you believe you have been subjected to unlawful sexual harassment, harassment based on other protected categories, discrimination in the workplace and/or retaliation for making or cooperating in the investigation of a complaint of unlawful discriminatory and/or harassing conduct, you may file a formal complaint with either or both of the federal and state government agencies set forth below.  Referring the complaint for internal investigation as described herein does not prohibit you from filing a complaint with these agencies.

Employees may contact the following agencies:

**Boston Area EEOC Office**
John F. Kennedy Federal Building
475 Government Center
Boston, MA 02203
617-565-3200 or 800-669-4000

**The Massachusetts Commission Against Discrimination**
Boston Office:
One Ashburton Place
Sixth Floor, Rm. 601
Boston, MA 02108
617-994-6000
Springfield Office:
424 Dwight Street
Second Floor, Room 220
Springfield, MA 01103
413-739-2145

**Miami Area EEOC Office**
One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, Florida 33131
800-669-4000

**Florida Commission on Human Relations**
2009 Apalachee Parkway, Suite 100
Tallahassee, FL 32301
850- 488-7082

12

**Confidential - Attorneys' Eyes Only**       CSC 00066

**Posting and Distribution**

The Company's policy against discrimination and harassment are contained in this handbook.

**Disability Accommodation**

Cognitec is committed to complying fully with the Americans with Disabilities Act (ADA), and with all other applicable disability laws, and ensuring equal opportunity in employment for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis.

The Company will make reasonable accommodations for qualified individuals with known disabilities unless doing so would result in an undue hardship. This policy governs all aspects of employment, including selection, job assignment, compensation, discipline, termination, and access to benefits and training.

Post-offer medical examinations are required only for those positions in which it is job-related and consistent with business necessity. They are given to all persons entering the position only after conditional job offers. Medical records will be kept separate and confidential.

Cognitec is also committed to not discriminating against any qualified employees or applicants because they are related to or associated with a person with a disability. The Company will follow any state or local law that provides individuals with disabilities greater protection than the ADA.

This policy is neither exhaustive nor exclusive. The Company is committed to taking all other actions necessary to ensure equal employment opportunity for persons with disabilities in accordance with the ADA and all other applicable federal, state, and local laws.

**Genetic Information Nondiscrimination Act**

The Company complies with the Genetic Information Nondiscrimination Act of 2008 ("GINA"), which prohibits employers and other entities covered by GINA from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, the Company asks that you not provide any genetic information when responding to any request for medical information. 'Genetic information' as defined by GINA includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

13

**Confidential - Attorneys' Eyes Only**          **CSC 00067**

## Immigration Law Compliance

Cognitec is committed to employing only United States citizens and aliens who are authorized to work in the United States and does not unlawfully discriminate on the basis of citizenship or national origin.

Employees with questions or seeking information on immigration law issues are encouraged to contact the President and CEO. Employees may raise questions or complaints about immigration law compliance without fear of reprisal.

## Probationary Period

Your first 90 calendar day period of employment is a time for you to get acquainted with the Company and our operations and for us to get to know you. It is especially important that you make your supervisor aware of any questions or problems you may have during this period. As explained throughout this handbook, you must satisfactorily complete this probationary period before being considered for certain employment related benefits.

## Business Ethics and Conduct

The successful business operation and reputation of Cognitec is built upon the principles of fair dealing and ethical conduct of its employees. The Company's reputation for integrity and excellence requires careful observance of the spirit and letter of all applicable laws and regulations, as well as a scrupulous regard for the highest standards of conduct and personal integrity.

The continued success of the Company is to a significant extent dependent upon our customers' trust and we are dedicated to preserving that trust. Employees owe a duty to Cognitec, its customers, and shareholders to act in a way that will merit the continued trust and confidence of the public. The Company expects all employees to adhere to the highest ethical and professional standards.  You should always act in good faith, strive for excellence in the performance of your duties, treat everyone fairly and considerately, observe all laws and regulations governing the Company's business, compete fairly with others and use corporate assets only for legitimate and ethical purposes in accomplishing the Company's objectives.

Cognitec will comply with all applicable laws and regulations, and expects its directors, officers, and employees to conduct business in accordance with the letter, spirit, and intent of all relevant laws and to refrain from any illegal, dishonest, or unethical conduct.

In some instances, these laws and regulations may be difficult to understand. In general, the use of good judgment, based on high ethical principles, will guide you with respect to lines of acceptable conduct. If a situation arises where it is difficult to determine the proper course of action, the matter should be discussed openly with your immediate supervisor and, if necessary, with the President and CEO.

Compliance with this policy of business ethics and conduct is the responsibility of every Cognitec employee. Disregarding or failing to comply with this standard of business ethics and

14

**Confidential - Attorneys' Eyes Only**

**CSC 00068**

conduct could lead to disciplinary action, up to and including possible termination of employment.

**Conflicts of Interest**

Employees have an obligation to conduct business within guidelines that prohibit actual or potential conflicts of interest. A conflict of interest arises when something, which might be of benefit to an employee, friend or relative of an employee, is detrimental to or not in the best interests of Cognitec. An actual or potential conflict of interest occurs when an employee is in a position to influence a decision that may result in a personal gain for that employee or for a relative as a result of Cognitec's business dealings. For the purposes of this policy, a relative is any person who is related by blood or marriage, or whose relationship with the employee is similar to that of persons who are related by blood or marriage.

This policy establishes only the framework within which Cognitec wishes the business to operate. The purpose of these guidelines is to provide general direction so employees can seek further clarification on issues related to the subject of acceptable standards of operation. Contact the President and CEO for more information or questions about conflicts of interest.

**Non-Disclosure of Confidential Information and Trade Secrets**

The protection of Cognitec's confidential business information and trade secrets ("Confidential Information") is vital to the interests and the success of the Company. Employees are prohibited, both during and after their employment, from disclosing or otherwise using Confidential Information without the prior written approval of an authorized officer of the Company pursuant to a written agreement approved by the Company.

Confidential Information is anything known by or communicated to anyone at Cognitec which is not generally known and which has actual or potential value to Cognitec or its competitors. Confidential Information may include, but is not limited to the following:

- Software programs and codes
- Cognitec-designed, produced or assembled computer hardware
- Software and hardware processes
- Customer lists
- Customer preferences
- Financial information, including budgets, projections and forecasts, and financial results before public disclosure
- Marketing and commercial strategies
- Terms, effective dates, identification of parties involved in contracts with customers, clients and vendors
- Requests for proposals (both who requested and how we responded)
- Earnings forecasts
- New software or hardware and materials research
- Pending projects and proposals
- Proprietary production processes

15

**Confidential - Attorneys' Eyes Only**

- Research and development data and strategies
- Algorithm data and formulas
- Scientific formulae
- Prototypes of any kind
- Strategies (short-range and long-range goals, proposed programs, acquisition candidates, changes in management, etc.)
- Technological data

Confidential Information may be in the form of memos, reports, notes, meeting agendas and minutes, or informal conversations about any of the above topics.

Confidential Information does not include information about the terms and conditions of employment (including wages or benefits), unless the employee obtained wage or benefit information about other staff in the course of the employee's job duties or in violation of Cognitec policy or applicable law.

Confidential Information should be shared only with others inside the Company whose jobs require them to have access to the Confidential Information, or when the law requires release of such information. In the course of doing business, you may not realize the material you have is confidential and needs to be safeguarded. The best course of action is not to talk about the specifics of your work with persons not employed by the Company and to treat all information as Confidential Information.

Employees who improperly use or disclose Confidential Information will be subject to disciplinary action, up to and including termination of employment and legal action, even if they do not actually benefit from the violation of this policy.

Cognitec respects the intellectual property rights of others and consequently prohibits its employees from using trade secrets or the proprietary information of other businesses.

### Gifts

The solicitation of any gift or favor, or any form of preferential treatment either directly or indirectly by or on behalf of a Cognitec employee or friend from any supplier, dealer or customer doing or seeking to do business with the Company is absolutely prohibited.

The acceptance of a gift or favor (other than one of a nominal value, and involving normal sales promotions, advertising or publicity of less than $25.00 in value) by a Company employee from any supplier, dealer or customer doing or seeking to do business with the Company is also prohibited.

This is not intended to eliminate the acceptance of such items as a calendar, note pad, pencil or tie clip bearing the identification of the sender. Other items of value greater than $25.00 should be turned into the President and CEO, who will then return the gift with an appropriate letter explaining the Company's policy.

16

**Confidential - Attorneys' Eyes Only**          **CSC 00070**

This policy prohibits acceptance of gifts such as radios, food, money, gift certificates and tickets for athletic, theatrical or cultural events.

These guidelines are not intended to be all-inclusive or necessarily applicable in all circumstances. Every effort should be made to avoid any question of impropriety in any business relationship with suppliers, dealers, or customers.

Each supervisor has the responsibility to ensure that the policy is communicated to all their employees whose duties entail business relationships with suppliers, dealers or customers.

Employees with questions about this policy should contact the President and CEO.

## Outside Teaching, Lecturing and Consulting

Cognitec encourages its employees to utilize their talents by engaging in outside teaching, lecturing, and consulting activities with the Company's prior approval.

The President and CEO may approve an employee's request to engage in outside teaching, lecturing, and consulting activities provided:

- The President and CEO reviews and approves the materials and information used when teaching, lecturing or consulting.
- They represent reasonable time involvement and do not reduce regular job efficiency.
- The employee protects against the inadvertent release of any confidential information regarding the Company, its finances, processes, research efforts, etc.

Except for the employee's Cognitec compensation, an employee will not receive any form of payment, gift, or service for teaching, lecturing, and consulting services performed outside the Company while acting as its representative. Any outside activities the employee engages in cannot interfere with the employee's duties at Cognitec.

Employees may receive payment for their expenses, provided the payment is not duplicated by Cognitec.

Payment may be received for teaching, lecturing and consulting when the activity is not performed as a Company representative, is on the employee's own time (e.g., evenings, vacations,) and meets the approval criteria established above.

## Employment of Relatives and Personal Relationships in the Workplace

The employment of relatives, including spouses or individuals involved in a dating relationship, in the same area of an organization may cause serious problems with favoritism and employee morale. In addition to claims of partiality in treatment at work, personal conflicts from outside the work environment can be carried over into day-to-day working relationships. For these reasons, it is Cognitec's general policy, to the extent allowed by law, not to hire relatives of employees; however, special consideration will be given on a position-by-position basis. Further,

17

**Confidential - Attorneys' Eyes Only**

CSC 00071

to the extent allowed by law, employees involved in dating relationships, married to one another, or who are relatives will not be allowed to report one to the other, work under the supervision of a relative who has or may have a direct influence on the individual's progress, performance or earnings, or make recommendations or participate in decisions pertaining to any matter which may directly influence the appointment, promotion, salary or other status of interest to a relative. Employees who are related to each other and whose job responsibilities include the handling of money shall not be permitted to work together.

This policy may not be applicable everywhere Cognitec conducts business. Please contact the President and CEO if you have any questions about the scope of this policy, its application to your situation, or its application in the state and locality where you work.

For purposes of this policy, "relative" is defined as spouse, domestic partner, children, step-children, parents, parents-in-law, siblings, grandparents, grandchildren, cousins, nieces, nephews, aunts, uncles, or a legal guardian of any of the above or those same individuals related by marriage, or whose relation- ship with the employee is similar to that of persons who are related by blood or marriage.  Any other relative (e.g., brother-in-law), with whom the employee resides, is also subject to the terms of this policy.  A dating relationship is defined as a relationship that may be reasonably expected to lead to the formation of a consensual "romantic" or sexual relationship. The limitations on employment of relatives specified in this policy shall apply to the continued employment of persons who become relatives while employed by the Company.

**Outside Employment**

Employees may maintain employment in addition to their employment at Cognitec as long as they meet the performance standards of their job with Cognitec and the outside employment does not constitute a conflict of interest. All employees will be judged by the same performance standards and will be subject to Cognitec's scheduling demands, regardless of any existing outside work requirements. Employees may not receive any income or material gain from individuals outside the Company for materials produced or services rendered while performing their jobs with Cognitec.

**Internal Transfers and Job Posting**

Cognitec provides employees an opportunity to indicate their interest in open positions and advance within the organization according to their skills and experience. Job posting is a way to inform employees of openings and to identify qualified and interested applicants who might not otherwise be known to the hiring manager. In general, notices of all regular, full-time job openings are posted, although Cognitec reserves its discretionary right to not post a particular opening. Job openings will be posted on the employee bulletin board, where applicable, or, in some situations, on the Internet, and will normally remain posted for three business days. Other recruiting sources may also be used simultaneously to fill open positions in the best interest of the Company.

To be eligible to apply for a posted job, employees must have achieved expectations for a minimum of one year in the same position.  Employees who have a written warning on file

18

**Confidential - Attorneys' Eyes Only**                    **CSC 00072**

within the past 12 months, or who are on probation or suspension are not eligible to apply for posted jobs.

To apply for an open position, employees should submit a job posting application to their immediate supervisor for approval. Employees with questions or seeking information on this policy are encouraged to contact the President and CEO.

## Leaving Cognitec

Termination of employment is an inevitable part of personnel activity within any company, and many of the reasons for termination are routine.

Cognitec will generally schedule exit interviews at the time of employment termination. The exit interview will afford an opportunity to discuss such issues as employee benefits, conversion privileges, repayment of outstanding debts to Cognitec, or return of Cognitec-owned property. Suggestions, complaints, and questions can also be voiced. Prior to departure, employees are required to return Cognitec ID cards, keys to offices, desks, cars, cabinets, lockers, etc., any other material loaned by Cognitec, and all property of the Company, including but not limited to any and all office equipment, computers, copiers, fax machines, telephones, computer programs, documentation, memoranda, notes, records, manuals, or other documents pertaining to the Company's business, employment (including all copies thereof), cars, and all materials relating to any Confidential Information of the Company.

Although advance notice is not required, Cognitec requests at least two weeks' written notice of resignation from non-exempt employees and three weeks' written notice from exempt employees.

Employees should be aware that their direct deposit, if applicable, will be stopped and their last paycheck will be given to the employee by the President and CEO during the exit interview or mailed to the employee's home, in accordance with state regulations. The employee may be charged up to the full replacement value on any Company property not returned or damaged, including but not limited to such things as headsets, personal computers, etc.

Employee benefits will be affected by employment termination in the following manner to the extent permitted by state law.   Adjustments may be made to the employee's final paycheck to reflect vacation, sick and personal hours taken but not earned. Unused sick and personal hours are not paid. Upon termination of employment, employees will be paid for unused vacation time that has been earned through the last day of work.

Contact the President and CEO for more detailed information.

## Employment Classifications

Cognitec clarifies the definitions of employment classifications so employees understand their employment status and benefit eligibility. Your employment classification does not guarantee employment for any specified period of time. Accordingly, the right to terminate the employment relationship at will at any time is retained by both the employee and Cognitec.

19

**Confidential - Attorneys' Eyes Only**                    **CSC 00073**

Based on job work content and responsibilities, each employee is designated as either non-exempt (hourly) or exempt (salary) for purposes concerning federal and state wage and hour laws.

- Non-exempt employees are entitled to overtime pay under the specific provisions of federal and state laws.

- Exempt employees are excluded from specific provisions of federal and state wage and hour laws and, therefore, do not receive overtime pay.

In addition to the above categories, each employee belongs to one other employment category (subject to revision by Cognitec at any time, at its sole discretion):

- Regular full-time (RFT) employees are those who are not in a temporary status and who are regularly scheduled to work 40 hours in a workweek. Generally, RFTs are eligible for the then available Cognitec benefit package, provided the participation criteria for the particular benefit are met and, subject to the terms, conditions, and limitations of each benefit program.

- Regular part-time (RPT) employees are those who are not in a temporary status and who are regularly scheduled to work less than 40 hours per week, but at least 20 hours per week. RPTs are eligible for some available benefits sponsored by Cognitec, provided the participation criteria for the particular benefit are met, and subject to the terms, conditions, and limitations of each benefit program. (Please refer to the Employee Benefit Programs tab for benefit eligibility.)

- Part-time (PT) employees are those who are not assigned to a temporary status and who are regularly scheduled to work less than 20 hours per week. PTs are ineligible for Cognitec's benefit programs.

- Temporary (T) employees are those who are hired as interim replacements to temporarily supplement the work force or to assist in the completion of a specific project. Employment assignments in this category are of a limited duration. Employment beyond any initially stated period does not in any way imply a change in employment status. Temporary employees retain that status unless and until notified of a change. Ts are not eligible for Cognitec's benefit programs. In the event a temporary employee is offered regular employment, the employee's status change becomes effective on the date of the change. However, the length of service shall be retroactive to the employee's initial date of hire.

An employee is not eligible for rehire or reinstatement if their termination was for cause. Rehired or reinstated employees that return to work within six calendar months from the employment separation date are given their original Cognitec employment date and are generally re-enrolled in all benefit plans and programs immediately upon return to Cognitec, subject to individual plan specifications. Rehired or reinstated employees that return to work after six

20

**Confidential - Attorneys' Eyes Only**

calendar months from the employment separation date may not receive credit for service prior to the separation for the purpose of certain benefits, subject to individual plan specifications and the law.

### Break Time for Nursing Mothers

The Company will provide a reasonable amount of break time to a non-exempt employee who is breastfeeding and needs to express milk for her nursing child who is up to one year old, unless providing the break time would impose an undue hardship on the Company. The break time will be unpaid, unless it is taken at the same time as other paid break periods already provided. Non-exempt employees should clock out for any break time taken that does not run concurrently with normally scheduled paid break and lunch periods. The Company will provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public to express breast milk.

### Access to Personnel Files

Cognitec maintains a personnel file on each employee. The personnel file includes such information as the employee's job application, resume, records of training, documentation of performance appraisals and salary increases, and other employment records.

Personnel files are the property of Cognitec and access to the information they contain is restricted. Generally, only supervisors and management personnel of Cognitec who have a legitimate reason to review information in a file are allowed to do so.

Employees who wish to review their own file should contact the President and CEO.

### Requests for References

All requests from outside the Company for information about past or present employment should be referred to the President and CEO. Dates of Employment, Wage Rate(s) and Job Title(s) are the only information that will be released.

Other information may be released, but only after obtaining the written consent of the employee or former employee.

### Personal Data Changes

It is the responsibility of each employee to notify Cognitec promptly of any changes in personal data. If any personal data has changed, notify the Miami Administrative Assistant.

### Creating Leadership Excellence

Supervisors and employees are strongly encouraged to discuss job performance and goals on an informal, day-to-day basis. In addition, immediate supervisors will review all employees under their supervision. An employee's first performance evaluation will generally be conducted at the end of the employee's probationary period. Additional performance evaluations may be

**Confidential - Attorneys' Eyes Only**                              **CSC 00075**

conducted twice a year to provide both supervisors and employees the opportunity to discuss job tasks, identify and correct weaknesses, encourage and recognize strengths, and discuss positive, purposeful approaches for meeting goals. These performance evaluations will cover the "what" and "how" we do our job.

## Job Descriptions

Cognitec makes every effort to create and maintain accurate job descriptions for all positions within the organization. Employees should remember that job descriptions do not necessarily cover every task or duty that might be assigned, and that additional responsibilities may be assigned as necessary. Employees should contact their immediate supervisor or the President and CEO with any questions or concerns about job descriptions.

22

**Confidential - Attorneys' Eyes Only**            CSC 00076

## EMPLOYEE BENEFIT PROGRAMS

### Table of Contents

| | |
|---|---|
| Employee Benefits | 24 |
| Vacation Benefits | 24 |
| Holidays | 28 |
| Sick Leave | 29 |
| Personal Leaves of Absence | 30 |
| Massachusetts Maternity Leave | 31 |
| Military Leave | 31 |
| Workers' Compensation Insurance | 31 |
| Time Off to Vote | 32 |
| Bereavement Leave | 32 |
| Relocation Benefits | 32 |
| Jury Duty | 33 |
| Health Insurance | 33 |
| Benefits Continuation (COBRA) | 33 |

**Confidential - Attorneys' Eyes Only**       CSC 00077

## EMPLOYEE BENEFIT PROGRAMS

**Employee Benefits**

Eligible employees at Cognitec are provided a wide range of benefits.

Benefit eligibility is dependent upon a variety of factors, including employee classification.

Some benefit programs require contributions from the employee; some are fully paid by Cognitec. Employees should receive printed material describing these benefits in further detail upon initial hire or when the employee becomes eligible for the benefit. Questions and requests for information about these benefits should be directed to the President and CEO.

These benefits may change at any point in the future and employees may not be immediately advised of the change. Whenever there is a discrepancy between what is outlined in this handbook and what is stated in the plan document, the summary plan document, or the benefits contract, the information contained in the plan document, summary plan document, or benefits contract will control.

**Vacation Benefits**

Vacation time off with pay is available to eligible full-time employees to provide opportunities for rest, relaxation, and personal pursuits. Full-time employees in the following classifications are eligible for vacation benefits:

- Non-executive management employees
- Professional level employees
- Non-professional level employees

*Generally, a professional level employee has a college degree and specialized knowledge and advanced skills in a relevant area for the employment position. Generally, non-professional level employees are those positions for which a college degree or specialized knowledge is not required. Employees will be notified whether their position is eligible for vacation benefits upon initial hire, promotion or transfer to a new position.*

At the Company's sole discretion, certain founder or legacy employees may be awarded vacation and other benefits that may be in addition to their specific employee classification. Please consult with the President and CEO with questions regarding the definition of founder or legacy employees.

The "Vacation Year" is a calendar year, i.e., January 1 to December 31. Vacation hours begin accruing on the employee's first day of employment in an eligible position.

24

**Confidential - Attorneys' Eyes Only**          **CSC 00078**

1. **Non-executive Management Employees**

   Vacation benefits for full-time non-executive management employees are detailed in Table 1 below.

   As shown in Table 1, upon completion of 3 and 5 years of service, non-executive management employees are eligible for a higher rate of vacation hours beginning in the calendar year after the date of their anniversary of employment.

   **Table 1**
   **Vacation Time and Accrual Rates for Non-executive Management Employees**

   | Length of Service | Annual Eligible Vacation | Accrual Rate |
   | --- | --- | --- |
   | Up to 3 years | 15 days (120 hrs.) | 4.62 hrs. per pay period |
   | 3 to 5 years | 20 days (160 hrs.) | 6.15 hrs. per pay period |
   | 6+ years | 25 days (200 hrs.) | 7.69 hrs. per pay period |

2. **Professional Level Employees**

   Vacation benefits for full-time professional level employees are detailed in Table 2 below.

   As shown in Table 2, upon completion of 3, 5 and 10 years of service, professional level employees are eligible for a higher rate of vacation hours beginning in the calendar year after the date of their anniversary of employment.

   **Table 2**
   **Vacation Time and Accrual Rate for Professional Level Employees**

   | Length of Service | Annual Eligible Vacation | Accrual Rate |
   | --- | --- | --- |
   | Up to 3 years | 10 days (80 hrs.) | 3.08 hrs. per pay period |
   | 3 to 5 years | 15 days (120 hrs.) | 4.62 hrs. per pay period |
   | 5 to 10 years | 20 days (160 hrs.) | 6.15 hrs. per pay period |
   | More than 10 years | 25 days (200 hrs.) | 7.69 hrs. per pay period |

25

**Confidential - Attorneys' Eyes Only**

3.  **Non-Professional Level Employees**

Vacation benefits for full-time non-professional level employees are detailed in Table 3 below.

As shown in Table 3, upon completion of 3, 5 and 10 years of service, non-professional level employees are eligible for a higher rate of vacation hours beginning in the calendar year after the date of their anniversary of employment.

**Table 3**
**Vacation Time and Accrual Rate for Non-Professional Level Employees**

| Length of Service | Annual Eligible Vacation | Accrual Rate |
|---|---|---|
| Up to 3 years | 5 days (40 hrs.) | 1.54 hrs. per pay period |
| 3 to 5 years | 10 days (80 hrs.) | 3.08 hrs. per pay period |
| 5 to 10 years | 15 days (120 hrs.) | 4.62 hrs. per pay period |
| More than 10 years | 20 days (200 hrs.) | 6.15 hrs. per pay period |

4.  **Vacation After First Three Months of Employment**

Vacation hours are earned bi-weekly. Employees may use earned vacation benefits after the 3-month probationary period.

5.  **Earning Vacation Hours**

Vacation hours are not earned while an employee is on an unpaid leave of absence or during most leaves that occur prior to the completion of six months of service. In addition, vacation hours are only earned during the first cumulative 12 work weeks in a 12-month rolling forward period of any leave covered by the Family and Medical Leave Act and for any vacation time outside the 12-week period for which the employee is receiving pay. For all other leaves (i.e., jury and military duty, bereavement and workers' compensation), vacation hours are earned during the entire leave and without regard to the length of the leave.

The amount of paid vacation time employees receive each year depends on the employee's hire date with the Company or an adjusted service date as appropriate and the employee's grade level in the Company. The amount of paid vacation time increases with the length of service (calculated based on the first working day of the calendar year) as shown in Tables 1-3 above.

The length of eligible service is calculated on the basis of a "benefit year." This is the 12-month period that begins when the employee starts to earn vacation time. An employee's benefit year may be extended for any significant leave of absence except military leave of absence. Military leave has no effect on this calculation.

26

**Confidential - Attorneys' Eyes Only**                          **CSC 00080**

6.  **Using Vacation Hours**

Employees are encouraged to take all eligible vacation days during the calendar year for rest, relaxation, and personal pursuits. Employees must use paid vacation time in minimum one day increments. To take vacation, employees should request advance approval from their supervisors. Requests will be reviewed based on a number of factors, including business needs and staffing requirements. There may be extraordinary circumstances where a supervisor may require an employee to reschedule a previously approved vacation.

After completing six months of employment, an employee may take their full yearly allotted vacation, including using unearned vacation benefits not to exceed 40 hours of vacation time, with the prior approval of a manager. If an employee separates from Cognitec for any reason and has taken vacation time that was not yet earned, the employee will be responsible to repay those moneys directly to Cognitec.

7.  **Vacation Banking**

In the event that available vacation is not used by the end of the calendar year, employees may carry up to one and one-half times their annual vacation hours to the next calendar year. If the total amount of an employee's unused vacation time reaches one and one-half times the employee's annual vacation amount, the employee will no longer earn additional vacation hours until the employee uses paid vacation time.

8.  **Vacation Pay**

Vacation time off is paid at the employee's base pay rate at the time of vacation. It does not include overtime or any special forms of compensation such as incentives, commissions, bonuses, or shift differentials.

9.  **Benefit Hours Upon Separation**

Upon termination of employment, employees will be paid for unused vacation time that has been earned through the last day of work.

If an employee terminates and has used vacation hours before the hours are earned, the employee will be responsible to repay those moneys directly to Cognitec.

By signing the **"Employee Authorization for Recovery of Vacation Benefit Hours Upon Separation of Employment"** form, the employee authorizes Cognitec to deduct the used, unearned hours from the employee's final paycheck and/or employee agrees to repay those moneys directly to Cognitec that are not available from the employee's final paycheck.

27

**Confidential - Attorneys' Eyes Only**          **CSC 00081**

**Holidays**

Cognitec recognizes the holidays listed below.   The Company's offices are closed in observance of these holidays:

- New Year's Day
- President's Day (third Monday in February)
- Memorial Day (last Monday in May)
- Independence Day (July 4)
- Labor Day (first Monday in September)
- Columbus Day (second Monday in October)
- Thanksgiving (fourth Thursday in November)
- Day after Thanksgiving
- Christmas Day
- Personal Holiday (employee's choice of two days during the year)

Cognitec reserves the right to amend or change the holiday schedule, which will be reviewed at the end of each calendar year.

Certain eligible employees will receive pay for holiday time off.   Holiday pay will be calculated based on the employee's straight time pay rate (as of the date of the holiday) times the number of hours the employee is regularly scheduled to work on that day. Therefore, part-time employees will be paid holiday pay for the number of hours they are regularly scheduled to work.

Benefit-eligible employee classifications are:

- Non-executive management employees
- Professional level employees
- Non-professional level employees

To be eligible for holiday pay, employees must work the last scheduled day immediately preceding the holiday and the first scheduled day immediately following the holiday, unless the absence is pre-approved by their immediate supervisor.  If a holiday falls during an eligible employee's paid absence (such as vacation or sick leave), holiday pay will be provided instead of the paid time off benefit that would otherwise have applied.

Paid time off for holidays will not be counted as hours worked for the purposes of determining overtime for eligible employees.

If a recognized holiday falls on a Saturday or Sunday, the Company will indicate in advance the alternate day the holiday will be observed. When operations require staffing on the designated days, an employee scheduled to work will be granted an alternate day(s) off.  The supervisor is required to notify the President and CEO in advance of this occurrence.

28

**Confidential - Attorneys' Eyes Only**

**CSC 00082**

If eligible employees work on a recognized holiday, they will receive regular straight time pay plus holiday pay at one and one-half times their straight time rate for the hours actually worked on the holiday. However, if the hours worked on the holiday put the employee above 40 hours worked for the week, the employee will be paid at the rate of one and one-half times the regular rate for hours actually worked exceeding 40 and will not be paid double the overtime rate.

An employee that is not scheduled to work on a holiday will not receive regular or holiday pay for that holiday.

Eligible employees receive two (2) days per year as Personal Holidays. A Personal Holiday must be scheduled with the prior approval of the employee's supervisor. Personal Holidays must be used in whole day (8 hour) increments. Cognitec reserves the right to cancel an employee's scheduled Personal Holiday if required by Company business. Upon separation of employment, employees will not be paid for unused Personal Holidays. Additionally, an employee's unused Personal Holiday(s) will not carry forward into the next calendar year.

A holiday may not be considered as the first day of work for a new employee or the last day of work for a terminating employee. **Early release before a holiday: A decision will be made and communicated by the President and CEO. If the office does not close early, employees should not be allowed to leave early unless it is covered as vacation time.**

## Sick Leave

Cognitec provides paid sick leave benefits to all eligible employees for periods of temporary absence due to illnesses or injury. Benefit-eligible employee classifications are:

- Non-executive management employees
- Professional level employees
- Non-professional level employees

Eligible employees will earn up to ten (10) days annually of sick leave benefits at a rate of 3.08 hours per pay period.

Sick leave benefits are calculated on the basis of a "benefit year," the 12-month period that begins when the employee first starts to earn sick leave benefits. Sick leave hours are available only "as earned" to the date of the absence. Eligible employees begin earning sick time on the first day of employment.

Paid sick leave may only be used in minimum 8-hour increments or a full day for exempt employees and 1-hour increments for non-exempt (hourly) employees. Sick leave should be used for the employee's own illness or injury, or that of a child, parent, or spouse of the employee.

Employees who are unable to report to work due to illness or injury should notify their direct supervisor before the scheduled start of their workday, if possible, and not later than one

29

**Confidential - Attorneys' Eyes Only**

CSC 00083

hour after the scheduled start of their workday. The direct supervisor must also be contacted on each additional day of absence.

If an employee is absent for three or more consecutive days due to illness or injury, a physician's statement must be provided verifying the illness or disability and its beginning and expected ending dates. Such verification may be requested for any sick leave absences as well and may be required as a condition of receiving sick leave benefits. Before returning to work from a sick leave absence of three calendar days or more, an employee must provide a physician's verification that he or she may safely return to work.

Sick leave benefits will be calculated based on the employee's base pay rate at the time of absence and will not include any special forms of compensation, such as incentives, commissions, bonuses, or shift differentials. As an additional condition of eligibility for sick leave benefits, an employee on an extended leave of absence must apply for any other available compensation and benefits, such as workers' compensation. Sick leave benefits will be used to supplement any payments that an employee is eligible to receive from state disability insurance, workers' compensation or Cognitec-provided disability insurance programs. The combination of any such disability payments and sick leave benefits cannot exceed the employee's normal weekly earnings.

Unused sick leave benefits will be allowed to accumulate year after year until the employee has earned a total of 65 workdays worth of sick leave benefits. If the employee's benefits reach this maximum, the employee will not earn additional sick leave benefits until the employee has used some of the sick leave benefits.

Sick leave benefits are intended solely to provide income protection in the event of illness or injury. Unused sick leave benefits will not be paid to employees while they are employed or upon termination of employment.

**Personal Leaves of Absence**

When sufficient personal reasons require, an employee, at the Company's discretion, may be granted an extended leave of absence without pay. A leave of absence will be granted for an initial period of up to 60 days, and employees may request extensions of up to 30 days which may be granted at the Company's discretion. **No leave, however, may be extended beyond one year/six months from the beginning date of the leave.**

Leaves will be without pay except that employees may be required to use any earned vacation benefits, personal holidays, and sick leave during a leave. However, while on leave of absence, employees will not earn paid leave days of any kind.

The Company may continue to make its regular payment to continue to cover the employee under its then available group health plan through the end of the month in which the employee requests leave or whatever the Company selects. Thereafter, employees on leave may continue their benefits under the Company's group health insurance plan provided the employee pays the entire monthly premiums due during the leave. Employees who wish to continue their insurance coverage should so advise the President and CEO before beginning their leave.

30

**Confidential - Attorneys' Eyes Only** **CSC 00084**

Because operations sometimes require that vacant positions be filled, a personal leave of absence does not guarantee that the job will be available when the employee returns from a leave. An effort, however, will be made to place an employee in his/her previous position or a comparable job which the employee is qualified to perform upon return from leave. If no such position is available, the employee may be eligible for rehire as a new employee if the employee applies for an available position for which he/she is qualified and if the employee's prior work history warrants rehire.

## Massachusetts Maternity Leave

Every female full-time employee working in Massachusetts is entitled to eight weeks unpaid parental leave for the purpose of:

     i.     the birth of a child of the employee; or

     ii.    adopting a child under the age of 18; or

     iii.   adopting a child under the age of 23, if the child is mentally or physically disabled; and

To be eligible for this Maternity Leave, the employee must have been employed by Cognitec for at least three consecutive months as a full-time employee. This leave may be further supplemented with unused vacation time, but the employee is not required to do so. The employee will continue to receive any health benefits through the Fund if the employee received such benefits before taking parental leave, provided that the employee pays for the employee's share of the premium for such coverage that the employee would have paid if not on leave.

The employee must provide Cognitec at least two weeks written notice of the anticipated date of departure and a statement of intention to return to work.

## Military Leave

A military leave of absence will be granted to employees who are absent from work because of service in the U.S. uniformed services in accordance with federal law. Advance notice of military service is required, unless military necessity prevents such notice or it is otherwise impossible or unreasonable.

Contact the President and CEO for more information or questions about military leave.

## Workers' Compensation Insurance

Cognitec provides a comprehensive workers' compensation insurance program at no cost to employees. Employees who sustain work-related injuries or illnesses should inform their supervisor immediately. No matter how minor an on-the-job injury may appear, it is important that it be reported immediately. This will enable an eligible employee to qualify for coverage as quickly as possible. Workers' Compensation will run concurrent with FML.

31

**Confidential - Attorneys' Eyes Only**      **CSC 00085**

## Time Off to Vote

Cognitec encourages employees to fulfill their civic responsibilities by participating in elections. Employees are encouraged to find time to vote either before or after their regular work schedule. If employees are unable to vote in an election during their non-working hours, Cognitec will grant employees up to two (2) hours of unpaid time off to vote, unless the applicable law in the employee's jurisdiction requires that more time off be allowed.

Employees should request time off to vote from their supervisor at least two working days prior to the Election Day. Advance notice is required so that the necessary time off can be scheduled at the beginning or end of the work shift, whichever provides the least disruption to the normal work schedule.

## Bereavement Leave

Employees who wish to take time off due to the death of a family member should notify their supervisor immediately.

Four days of paid bereavement leave due to the death of an immediate family member or three days of bereavement leave due to the death of any other family member will be provided to benefit-eligible employees.

An additional two days of paid leave will be granted when the deceased family member resided more than 250 miles away from the employee's work location.

Bereavement pay is calculated based on the base pay rate at the time of absence and will not include any special forms of compensation, such as incentives, commissions, bonuses, or shift differentials.

If bereavement leave is granted, employees may, with their supervisors' approval, use any available vacation or personal holiday time (not sick time) for additional time off as necessary. The employee may also be required to furnish additional documentation, such as a death certificate or copy of an obituary notice.

Cognitec defines "immediate family" as the employee's spouse, parent, child, or sibling; the employee's spouse's parent, child, or sibling; the employee's child's spouse; grandparents or grandchildren; or domestic partner. Special consideration will also be given to any other person whose association with the employee was similar to any of the above relationships.

## Relocation Benefits

When Cognitec asks employees to relocate to a new area, certain relocation benefits may be provided to facilitate the transition.

**Confidential - Attorneys' Eyes Only**

CSC 00086

## Jury Duty

Cognitec encourages employees to fulfill their civic responsibilities by serving jury duty when required.   The Company pays employees who are absent because of jury duty in conjunction with applicable federal, state and local law.   Employees in eligible classifications who are not covered by any such laws may request time off for the length of time required for jury duty.   Employees will be paid straight time for the length of time required for jury duty.

Employees who have received a jury duty summons should contact the President and CEO to discuss their eligibility for paid leave, which may vary depending on where the employee works.   Further, employees must show the jury duty summons to their supervisor as soon as possible so that the supervisor may make arrangements to accommodate their absence.   Of course, employees are expected to report for work whenever the court schedule permits.

Either Cognitec or the employee may request an excuse from jury duty if, in Cognitec's judgment, the employee's absence would create serious operational difficulties.

Cognitec will continue to provide health insurance benefits, if and when available, to employees and employees will continue to earn vacation, sick leave, and holiday benefits for the full term of the jury duty whether or not the jury duty leave, or any part thereof, is unpaid.

## Health Insurance

Cognitec may offer a health insurance plan to eligible employees and their dependents to provide access to medical, dental, and vision care insurance benefits.   When a health insurance plan is made available by Cognitec, eligible employees may participate in the health insurance plan subject to all terms and conditions of the agreement then in place between Cognitec and the insurance carrier.

Until a health insurance plan is enacted, the Company may reimburse employees for up to half of the monthly health insurance premium of plans obtained outside of Cognitec, subject to a maximum $500 monthly reimbursement.   To seek reimbursement, employees must provide the Miami Administrative Assistant with the appropriate documentation evidencing payment of such outside health plan premiums each month.

## Benefits Continuation (COBRA)

The federal Consolidated Omnibus Budget Reconciliation Act (COBRA) gives employees and their qualified beneficiaries the opportunity to continue health insurance coverage at their own expense under Cognitec's health plan, when and if enacted, when a "qualifying event" would normally result in the loss of eligibility.   Some common qualifying events are termination of employment;   death of an employee;   a reduction in an employee's hours or a leave of absence;   an employee's divorce or legal separation;   and a dependent child no longer meeting eligibility requirements.   A notice describing benefits, rights and obligations will be sent to both the eligible employee and eligible beneficiaries when a qualifying event occurs.   Contact the President and CEO with any questions about COBRA coverage.

33

**Confidential - Attorneys' Eyes Only**

## TIMEKEEPING/PAYROLL

### Table of Contents

| | |
|---|---|
| Timekeeping | 35 |
| Paydays | 35 |
| Administrative Pay Corrections | 36 |
| Fair Pay | 36 |
| Exempt (Non-Hourly) Employees | 36 |
| Meal Periods | 37 |
| Overtime | 37 |
| Emergency Closings | 37 |
| Attendance and Punctuality | 38 |
| Flextime Scheduling Policy | 39 |

34

**Confidential - Attorneys' Eyes Only**

## TIMEKEEPING/PAYROLL

**Timekeeping**

Accurately recording time worked is the responsibility of every employee. Federal and state laws require Cognitec to keep an accurate record of time worked in order to calculate employee pay and benefits. Time worked is all the time actually spent on the job performing assigned duties.

Hourly employees should accurately record the time they begin and end their work, as well as the beginning and ending time of each meal period. They should also record the beginning and ending time of any split shift or departure from work for personal reasons. Should you forget to clock in or out, you must take your time card to your supervisor so that your supervisor may record and authorize your time.

Overtime work must always be approved before it is performed.

Altering, falsifying, tampering with time records, or recording time on another employee's time record may result in disciplinary action, up to and including termination of employment.

Hourly employees should report to work no more than 15 minutes prior to their scheduled starting time and may stay no more than 15 minutes after their scheduled stop time without the express prior authorization from their supervisor.

It is the employees' responsibility to sign their time records to certify the accuracy of all time recorded. The supervisor will review and then initial the time record before submitting it for payroll processing. In addition, if corrections or modifications are made to the time record, both the employee and the supervisor must verify the accuracy of the changes by initialing the time record.

**Paydays**

Employees are generally paid on the 15th and 30th of every month. In the event that a regularly scheduled payday falls on a day off such as a weekend or holiday, employees will receive their paycheck on the last day of work before the regularly scheduled payday.

Employees may have their paychecks directly deposited into their bank accounts if they provide advance written authorization to Cognitec. Employees will receive an itemized statement of wages when Cognitec makes direct deposits.

These paychecks represent the employee's compensation for work during the two weeks before payday. If an error has been made, or an employee has any questions concerning his/her paycheck, deductions from paychecks, or how deductions are calculated, the employee must contact the President and CEO immediately and before cashing the paycheck. Most pay errors can be prevented by accurately reporting time worked.

35

**Confidential - Attorneys' Eyes Only**

CSC 00089

For our employees' protection, no paycheck will be given to anyone except the employee whose name appears on the check.  An exception will be made where an employee has given written authorization to a proxy and submitted the authorization to the Miami Administrative Assistant.

## Administrative Pay Corrections

Cognitec takes all reasonable steps to ensure that employees receive the correct amount of pay in each paycheck and that all employees are paid promptly on the scheduled payday.

In the unlikely event that there is an error in the amount of pay, the employee must promptly bring the discrepancy to the attention of the President and CEO so that necessary corrections can be made as quickly as possible.

## Fair Pay

Cognitec strives to achieve consistent pay practices, comply with federal and state laws, mirror the Company's commitment to Equal Employment Opportunity, and offer competitive salaries within various labor markets. Because recruiting and retaining talented employees is critical to its success, Cognitec is committed to paying its employees equitable wages that reflect the requirements and responsibilities of their positions and are comparable to the pay received by similarly situated employees in other organizations in the area.

Employees should bring their pay-related questions or concerns to the attention of their immediate supervisors, who are responsible for the fair administration of departmental pay practices.

## Exempt (Non-Hourly) Employees

Subject to the exceptions listed below, an exempt employee must receive the full salary for any workweek in which the employee performs any work, regardless of the number of days or hours worked. Exempt employees do not need to be paid for any workweek in which they perform no work. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

### Circumstances in Which the Employer May Make Deductions from Pay

Deductions from pay are permissible when an exempt employee: is absent from work for one or more full days for personal reasons other than sickness or disability; for absences of one or more full days due to sickness or disability if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for salary lost due to illness or disability; to offset amounts employees receive as jury or witness fees, or for military pay; or for unpaid disciplinary suspensions of one or more full days imposed in good faith for workplace conduct rule infractions (see Company Policy on penalties for workplace conduct rule infractions). Also, an employer is not required to pay the full salary in the initial or terminal week of employment; for penalties imposed in good faith for infractions of safety rules of major significance; or for

36

**Confidential - Attorneys' Eyes Only**

weeks in which an exempt employee takes unpaid leave under the Family and Medical Leave Act. In these circumstances, either partial day or full day deductions may be made.

*Company Policy*

It is our policy to comply with the requirements of the Fair Labor Standards Act ("FLSA"). Therefore, we prohibit all company managers from making any improper deductions from the salaries of exempt employees. We want employees to be aware of this policy and that the Company does not allow deductions that violate the FLSA.

*What To Do If An Improper Deduction Occurs*

If you believe that an improper deduction has been made to your salary, you should immediately report this information to your direct supervisor, or to the President and CEO.

Reports of improper deductions will be promptly investigated. If it is determined that an improper deduction has occurred, you will be promptly reimbursed for any improper deduction made as soon as practicable and the Company will make a good faith commitment to comply with this policy in the future.

## Meal Periods

Full-time employees will be provided with one meal period of 60 minutes in length each workday. Supervisors will schedule meal periods to accommodate operating requirements. Employees will be relieved of all active responsibilities and restrictions during meal periods and will not be compensated for that time. All meal periods must be taken away from the employee's work area.

## Overtime

Because of the nature of our work, it may be necessary for employees to work overtime to meet critical needs. Overtime must be authorized by the employee's supervisor, and employees are expected to work overtime when requested. Every effort will be made to give employees adequate notice whenever overtime work will be required. Violations of this policy, such as working overtime without approval, may result in disciplinary action, up to and including termination.

Salaried (exempt) employees are not eligible for overtime regardless of the number of hours they work.

## Emergency Closings

At times, emergencies such as severe weather, fires, power failures, or earthquakes, can disrupt Company operations. In extreme cases, these circumstances may require the closing of a work facility by the President and CEO.

37

**Confidential - Attorneys' Eyes Only**            **CSC 00091**

When the decision to close is made AFTER the workday has begun, employees will receive official notification from their immediate supervisor. In these situations, time off from scheduled work will be paid for the whole day in question. When the decision to close is made BEFORE the workday has begun, every effort will be made to notify employees. If the Company officially closes the office, employees will be paid for the whole day.

In cases where an emergency closing is not authorized, employees who fail to report for work will not be paid for the time off unless the employees have requested and received approval to use available paid leave time such as unused vacation benefits. Employees must notify their immediate supervisor of their absence prior to the start of their workday.

Employees in essential operations may be asked to work on a day when operations are officially closed. In these circumstances, employees who work will receive regular pay.

### Attendance and Punctuality

To maintain a safe and productive work environment, Cognitec expects employees to be reliable and to be punctual in reporting for scheduled work. Absenteeism and tardiness place a burden on other employees and on Cognitec. In the rare instances when employees cannot avoid being late to work or are unable to work as scheduled, they should notify their supervisor as soon as possible in advance of the anticipated tardiness or absence.

Poor attendance and excessive tardiness are disruptive. Therefore, Cognitec takes absenteeism and tardiness seriously and unsatisfactory attendance will subject an employee to disciplinary action depending on the circumstances particular to the employee. Repeat absences or tardiness may result in the following disciplinary action:

- Three unexcused absences within a 3-month period may result in a written warning.
- Three unexcused incidents of tardiness within a 30-day period may result in a written warning.
- Any additional unexcused absence or incident or tardiness may result in further disciplinary action up to and including termination.

Examples of unexcused absences may include, but are not limited to, absences for:

- Illness of the employee or a family member not protected under ADA or FML, or related state and local laws
- Lack of transportation

The Company may combine, skip, repeat and/or accelerate the disciplinary guidelines set forth above.

An unexcused, unreported absence will be considered Job Abandonment on the third consecutive day of absence and an employee will be considered to have voluntarily resigned

38

**Confidential - Attorneys' Eyes Only**

employment. An absence that is not properly reported may result in disciplinary action, including termination of employment.

**Flextime Scheduling Policy**

Cognitec offers alternative work schedules as a method of staff retention through work/life balance and to maintain employee productivity through various forms of creative work scheduling. Flextime scheduling is available to assist employees in meeting their personal work performance goals and family needs, responding to the needs of staff for which the standard 8:30 a.m. to 5:30 p.m. schedule is not ideal.

All employees who have completed at least six months of employment are eligible to work flextime. Employees in their first six months in a new job must work the standard 8:30 a.m. to 5:30 p.m. schedule to assure appropriate training.

Flextime is approved by supervisors on an individual basis. Flextime might not be feasible within some departments or for certain or all positions within a department. Supervisors have the right to require employees to adhere to standard hours, diverting from a previously agreed upon flextime schedule to meet business needs, at any time and without notice.

**Cognitec has the right to cancel or suspend an employee's flextime privileges at any time, for any reason or for no reason. Daily and weekly work schedules can be modified at Cognitec's discretion to meet changing business conditions.**

**Flextime does not restrict exempt employees from working more than their scheduled flextime hours.**

39

**Confidential - Attorneys' Eyes Only**       **CSC 00093**

# WORK CONDITIONS

## Table of Contents

| | |
|---|---|
| Health, Safety and Environmental | 41 |
| HS&E Principles | 41 |
| Cognitec HS&E Approach and Employee Expectations | 41 |
| Use of Postal Mail System | 42 |
| Smoking | 42 |
| Use of Equipment and Vehicles | 42 |
| Business Travel Expenses | 42 |
| Visitors in the Workplace | 43 |
| Electronic and Telephonic Communications Systems | 43 |
| Social Media | 45 |
| Telephone Etiquette | 46 |
| Workplace Video Monitoring | 46 |
| Security Inspections | 46 |
| Workplace Violence Prevention | 47 |
| Employee Conduct and Work Rules | 48 |
| Drug and Alcohol Use and Testing | 49 |
| Alcohol Consumption at Social Events/Functions | 50 |
| Personal Appearance/Dress Code | 51 |
| Return of Property | 51 |
| Solicitation/Bulletin Boards | 51 |
| Discipline | 52 |
| Open Door Policy | 52 |
| Workplace Etiquette | 53 |

**Confidential - Attorneys' Eyes Only**                    **CSC 00094**

## WORK CONDITIONS

### Health, Safety and Environmental

At Cognitec, our objective is to provide safe and healthy workplaces, to prevent accidents, injuries and pollution, conserve resources and energy, minimize the use of hazardous materials and reduce waste.

Our commitment to continuous improvement in HS&E programs, the employment of a team or partnership approach to promote HS&E and involve all levels of employees, and the encouragement of workers to cultivate safe practices both at work and at home are important to us.

The general principles below serve as the framework for setting HS&E objectives and targets. These general principles should be brought to life in your plans, procedures and conduct. All employees should become familiar with these general principles and how they apply to his or her job. All employees are expected to adhere to the spirit as well as the letter of these general principles.

### HS&E Principles

At Cognitec, we recognize that all accidents can be prevented. We are committed to the continuous improvement in the reduction of work related injuries and illnesses. Our goal is to obtain world class safety performance and beyond. The Company is committed to protecting the welfare (health, safety and environmental quality) of all employees, visitors, contractors and the public.

### Cognitec HS&E Approach and Employee Expectations

Cognitec provides information to employees about workplace safety and health issues through regular internal communication channels such as supervisor-employee meetings, bulletin board postings, memos, or other written communications.

Some of the best safety improvement ideas come from employees. Those with ideas, concerns, or suggestions for improved safety in the workplace are encouraged to raise them with their supervisor, or with another supervisor or manager. Reports and concerns about workplace safety issues may be made anonymously, if the employee wishes, to the President and CEO. All reports can be made without fear of reprisal. Further, all persons are expected and encouraged to participate in the safety improvement process.

Each employee is expected to obey safety rules and to exercise caution in all work activities. Employees must immediately report any unsafe condition to the appropriate supervisor. Employees who violate safety standards, who cause hazardous or dangerous situations, or who fail to report or, where appropriate, remedy such situations, may be subject to disciplinary action up to and including immediate termination of employment, regardless of past performance, because of the potential for serious injury or death. Any visitor or contractor

41

**Confidential - Attorneys' Eyes Only**

CSC 00095

who engages in such actions is subject to immediate removal and barring from the Company's premises regardless of status or position.

Employees should immediately notify the President and CEO or the appropriate supervisor of accidents that result in injury, regardless of how insignificant the injury may appear. Such reports are necessary to initiate the corrective actions essential for preventing a reoccurrence or a more serious injury from occurring and to comply with laws and initiate insurance and workers' compensation benefits procedures. Failure to report an accident or injury may result in disciplinary action, up to and including termination, and denial of workers' compensation benefits.

### Use of Postal Mail System

The use of Cognitec-paid postage for personal correspondence is not permitted.

### Smoking

In keeping with Cognitec's intent to provide a safe and healthful work environment, smoking is prohibited throughout each facility. Smoking is allowed outside a building where cigarette receptacles are located. Employees may smoke before or after their shift, or during their meal periods and other authorized breaks only.  Smoking is not permitted in Company vehicles, whether leased or owned by Cognitec. This policy applies equally to all visitors and employees.

### Use of Equipment and Vehicles

Equipment and vehicles essential in accomplishing job duties are expensive and may be difficult to replace. When using Company property, or property rented or leased while on Company business, employees are expected to exercise care, perform required maintenance, and follow all operating instructions, safety standards, and guidelines.

Employees should notify their supervisor if any equipment, machines, tools, or vehicles appear to be damaged, defective, or in need of repair. Prompt reporting of damages, defects, and the need for repairs could prevent deterioration of equipment and possible injury to employees or others. The supervisor can answer any questions about an employee's responsibility for maintenance and care of equipment or vehicles used on the job.

Employees who are involved in an accident while traveling on business must promptly report the incident to their immediate supervisor. Vehicles owned, leased, or rented by Cognitec may not be used for personal use without prior approval.

### Business Travel Expenses

Cognitec will reimburse employees for reasonable business travel expenses incurred while on assignments away from the normal work location. All business travel must be pre-approved by the immediate supervisor or manager. Employees are expected to limit expenses to reasonable amounts.

**Confidential - Attorneys' Eyes Only**                    **CSC 00096**

Please refer to the Cognitec Expense Manual – Policies and Procedures for specific details regarding our Business Travel Expense reimbursement process.

## Visitors in the Workplace

To provide for the safety and security of employees and the facilities at Cognitec, only authorized visitors are allowed in the workplace. Restricting unauthorized visitors helps maintain safety standards, protects against theft, ensures security of equipment, protects confidential information, safeguards employee welfare, and avoids potential distractions and disturbances.

All visitors should enter Cognitec at the reception area in each facility. Authorized visitors will receive directions or be escorted to their destination. Employees are responsible for the conduct and safety of their visitors.

If an unauthorized individual is observed on Cognitec's premises, employees should immediately notify their supervisor or, if necessary, direct the individual to the reception area.

## Electronic and Telephonic Communications Systems

All of the electronic and telephonic communications systems and equipment provided directly or otherwise made available by Cognitec (hereafter the "Information Systems") for use by its employees, vendors, customers, and other third parties are the property of the Company and, as such, are to be used primarily for job-related purposes. Any personal use or use for non-Company business should be incidental, occasional, and kept to a minimum. Further, all messages, data, and any other communication or information transmitted, received, stored, or otherwise handled by the Company's Information Systems, including personal information, communications, electronic data, and back-up copies, are at all times the exclusive property of Cognitec – *not of the individual who transmitted or stored such information.* The use of a private password does not change this nor does it preclude the Company from monitoring and inspecting email all personal and business-related communications, voice messages, computer files or Internet usage. Finally, all use of the Company's Information Systems is subject to, and must be in conformity with, all other approved policies and procedures of Cognitec, particularly those dealing with confidentiality, anti-discrimination and anti-harassment, and personal conduct with respect to fellow employees and outsiders.

Management has the *right and the duty* to control the Company's Information Systems and their use. Consequently, all Cognitec personnel should be advised that it is the practice of the Company to *monitor the content of electronic communications* (but *not live* telephonic communications) and electronic information stored on the Company's Information Systems, and Cognitec may *access and disclose any and all information contained in its electronic communications systems and electronic information stored on the Company's Information Systems.*

43

**Confidential - Attorneys' Eyes Only**

CSC 00097

To ensure that the use of the Company's Information Systems is consistent with the Company's business interests, all employees should observe the broad guidelines articulated below in connection with their use of the Company's Information Systems:

- Under no circumstances should any Confidential Information (as defined in the Non-Disclosure of Confidential Information and Trade Secrets policy) be placed or posted on the Internet or otherwise transmitted outside of the Company, including posting on social media websites such as Facebook, MySpace, Twitter, YouTube, and LinkedIn, regardless of whether or not the Company's Information System is the vehicle for such transmissions, without the express written authorization to do so by the President and CEO of the Company.

- Employees should not use the Company's trademark or copyright materials for commercial use without the express written authorization of the President and CEO or his designee.

- The Information Systems are not to be used in ways that are inconsistent with or contrary to the policies of the Company; that are in violation of any federal, state, or local law or regulation, or that otherwise constitute an illegal activity; or in ways that would be detrimental to the professional image or best interests of the Company.

- The Information Systems also are not to be used in ways that are disruptive or offensive to others. Any communication that can be construed as harassment, bullying, discrimination or retaliation of others is specifically prohibited. Storage, display, receipt, or transmission of any such communications -- including messages, images, cartoons, or audio or video transmissions -- which are sexually explicit or suggestive or are derogatory, demeaning, or inflammatory are specifically and categorically prohibited.

- The Information Systems of the Company may not be used to solicit or address others regarding religious, charitable, social, or political causes, or for any other solicitations that are not directly work-related, except as specifically approved in writing by the President and CEO or his designee.

- Any use of the Information Systems of the Company to solicit or otherwise engage in any activity on behalf of outside business ventures is strictly prohibited.

- Use of the Company's Information System to access any Company information that is not otherwise routinely available to employees generally, except such information that is strictly required for the employee to perform his or her job requirements, is strictly and absolutely prohibited without exception. In particular, no employee is permitted to access, without specific written authorization by the President and CEO or his designee, Confidential Information of the Company, personal information contained in the Information System pertaining to other employees, or confidential information of third parties.

44

**Confidential - Attorneys' Eyes Only**

- All users are personally accountable for messages that they originate or forward using the Company's Information Systems. Misrepresenting, obscuring, suppressing, or replacing a user's identity on any communication is prohibited. Similarly, no employee may create or use, without the express written authorization of the President and CEO or his designee, a passcode for accessing any component of the Company's Information System unless such passcode has been authorized in advance by the President and CEO. The user's name, electronic mail address, electronic signature, organizational affiliation, time and date of transmission, and related information included with electronic messages or postings must always reflect the true originator, time, date, and place of origination of the messages or postings, as well as the true content of the original message.

- Without the specific prior written approval of the President and CEO or his designee, no employee may enter into the Information System any software of any type, whether or not owned by the Company or personally by the employee. Similarly, without the specific prior written approval of the President and CEO or his designee, no employee may use the Information System to subscribe to or participate in discussion groups, electronic mailing lists, news services or other similar Internet activities.

Employees who violate this policy may be subject to disciplinary action, up to and including termination.

### Social Media

Online social media are powerful communications tools. Examples include but are not limited to LinkedIn, Facebook and Twitter. The Company recognizes that many of its employees have personal accounts on various social networking sites, may create or contribute to blogs, and may post content to websites like YouTube. The Company has developed this policy to balance employees' reasonable social media activities while protecting the Company's legitimate business interests. Accordingly, the Company has adopted the following guidelines for social media activity:

- While at work, employees may engage in the personal use of social media only during authorized break times and meal periods and only from personally-owned cell phones or other personal electronic devices, unless the employee's use of social media is work-related.

- Employees using social media in a personal capacity must never represent their views and opinions as those of the Company. Employees may not post anything on the internet in the name of Cognitec or in a manner that could reasonably be attributed to the Company without prior written authorization from the President and CEO.

- Employees should not post or display statements or comments about coworkers or supervisors or the Company that are vulgar, obscene, threatening, intimidating, harassing, or a violation of the Company's workplace policies against discrimination, harassment, or hostility on account of age, race, religion, sex, national origin, color, disability, marital status, or any other protected characteristic.

45

**Confidential - Attorneys' Eyes Only**

**CSC 00099**

- Employees should not post or display statements or comments that violate the Company's workplace policies, including but not limited to the Non-Disclosure of Confidential Information and Trade Secrets policy.

- Employees should not disparage the Company's products or services, customers, carriers, vendors, competitors, or other third parties. Employees should not post any information or rumors that they know to be false about the Company, co-workers, customers, suppliers, vendors, people working on behalf of the Company, or competitors.

- Employees should not use the Company's trademark or copyright materials for commercial use without the express written approval of the President and CEO.

- Employees should not create a link from a social networking site to the Company's website without identifying that the employee is employed by the Company.

- Employees should comply with reasonable and legitimate requests from the Company that topics should not be discussed for confidentiality or legal compliance reasons.

Employees should keep in mind that they are liable for anything they post to social media sites and may be disciplined up to and including termination for a violation of this policy.

## Telephone Etiquette

Telephone courtesy establishes good public relations. To ensure effective telephone communications, employees should always use the approved greeting, identify their department and state their name and speak in a courteous and professional manner. Employees should confirm information received from the caller and hang up only after the caller has done so.

## Workplace Video Monitoring

Monitoring the workplace through video cameras or other devices may be conducted by Cognitec, to the extent allowed by law, to ensure quality control, employee safety, security, and customer satisfaction.

Because the Company is sensitive to the legitimate privacy rights of employees, every effort will be made to guarantee that workplace video monitoring is done in an ethical and respectful manner.

## Security Inspections

Cognitec wishes to maintain a work environment that is free of illegal drugs, alcohol, weapons, explosives, or other improper materials. To this end, the Company prohibits the possession, transfer, sale, or use of such materials on its premises. Cognitec requires the cooperation of all employees in administering this policy.

In accordance with Florida's Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008, an employee in Florida may possess a firearm while on Company premises only if all of the following conditions are met:

46

**Confidential - Attorneys' Eyes Only**          CSC 00100

- The firearm is legally-owned and lawfully possessed by the employee;
- The employee has a concealed weapon or firearm license;
- The firearm is locked inside the employee's vehicle or locked to the employee's vehicle, and is out of sight while the vehicle is in the Company's parking lot; and
- The employee is lawfully on Company premises.

Desks, lockers, and other storage devices may be provided for the convenience of employees but remain the sole property of Cognitec. To promote security, all vehicles, packages, handbags and other containers brought on or off Company premises by employees are subject to inspection or search, as are employees' outer garments (coats, jackets, etc.). Lockers and office furniture, such as desks and cabinets, on Company premises also are subject to inspection and search at any time with or without notice. If a Company locker is secured by a lock for which the Company has not been provided a key or a combination, the lock is subject to being removed by the Company. The Company may notify the appropriate law enforcement agency that an employee may have illegal drugs in his or her possession.

## Workplace Violence Prevention

Cognitec is committed to preventing workplace violence and to maintaining a safe work environment. Cognitec has adopted the following guidelines to prevent intimidation, harassment, and threats of and actual violence that may occur during business hours, on Company premises, or between colleagues.

- All employees, including supervisors and temporary employees, should be treated with courtesy and respect at all times. Employees are expected to refrain from fighting, "horseplay," or other conduct that may be dangerous to others.

- Conduct that threatens, intimidates, bullies, or coerces another employee, a customer, or a member of the public at any time, including off-duty periods, will not be tolerated. This prohibition includes all acts of harassment, including harassment that is based on an individual's sex, race, age, or any characteristic protected by federal, state, or local law.

- All threats of or actual violence, both direct and indirect, should be reported as soon as possible to an employee's immediate supervisor or any other member of management. This includes threats by employees, as well as threats by customers, vendors, solicitors, or other members of the public. When reporting a threat of violence, be as specific and detailed as possible.

- All suspicious individuals or activities should also be reported as soon as possible to a supervisor. At no time should an employee place himself or herself in peril; if commotion or disturbance is observed, do not try to intercede or see what is happening.

Cognitec will promptly and thoroughly investigate all reports of threats of or actual violence and of suspicious individuals or activities. The identity of the individual making a report will be protected as much as is practical. In order to maintain workplace safety and the

47

**Confidential - Attorneys' Eyes Only**                    **CSC 00101**

integrity of its investigation, Cognitec may suspend employees, either with or without pay, pending investigation.

Cognitec encourages employees to bring their disputes or differences with other employees to the attention of their supervisors or the President and CEO before the situation escalates into potential violence. Cognitec is eager to assist in the resolution of employee disputes, and will not discipline employees for raising such concerns.

**Employee Conduct and Work Rules**

To ensure orderly operations and provide the best possible work environment, Cognitec expects employees to follow rules of conduct that will protect the interests and safety of all employees and the organization. The Company has adopted work rules to promote fair and even handed treatment of all employees and to insure that working conditions will be free from the dangerous, disrupting and costly behavior of others. The following work rules are not intended to be a complete description of inappropriate conduct but, rather, are set forth as examples of conduct which the Company considers to be grounds for discipline, up to and including discharge in appropriate circumstances.

1.   Refusing to obey orders of a supervisor.

2.   Destruction or damage of the Company's property or the property of other employees.

3.   A slow-down, interference or delay of your work or of the work of other employees.

4.   Theft or unauthorized possession of the Company's property or property of other employees.

5.   Bringing to the workplace any intoxicant, illegal drug or controlled substance. Reporting for work or being on the job under the influence of (or having consumed) alcoholic beverages or having in your body any illegal drugs or controlled substances, including marijuana (not prescribed by a physician).

6.   Dishonesty, including falsifying an application for employment or other data requested by the Company.

7.   Immoral or indecent conduct.

8.   Fighting.

9.   Sleeping on the job.

10.  Accepting gifts or tips from customers or vendors.

11.  Refusal to complete assigned work schedule or leaving the job without approval of immediate supervisor.

48

**Confidential - Attorneys' Eyes Only**

CSC 00102

12. Clocking the time card of another employee, having another employee clock your time card, altering a time card, or falsifying a time sheet.

13. Loitering or loafing during working hours.

14. Smoking (except in designated areas).

15. Creating or contributing to unsanitary conditions.

16. Violation of safety rules or practices.

17. Neglect of the Company's equipment and property.

18. Excessive absenteeism or tardiness.

19. Use of obscene or abusive language or loud arguing.

20. Horseplay.

21. Threatening, intimidating, or coercing customers, vendors or other employees at any time for any purpose.

22. Gambling, lottery, or any other game of chance on the Company's property.

23. Violation of Company practices, policies and procedures communicated to employees by inclusion in this handbook or otherwise.

24. Any illegal conduct or other conduct which is contrary to the Company's best interest.

Concerning off-the-job conduct, employees should conduct themselves in such a manner as not to reflect adversely on the Company or other employees.

The violation of any Company policy or rule by any employee at any time could subject such an employee to discipline, up to and including termination.

## Drug and Alcohol Use and Testing

It is Cognitec's desire to provide a drug-free, healthful, and safe workplace. To promote this goal, employees are required to report to work in appropriate mental and physical condition to perform their jobs in a satisfactory manner.

While on Cognitec premises and while conducting business-related activities outside Cognitec premises, no employee may use, possess, distribute, sell, or be under the influence of alcohol, illegal drugs, or prescription drugs for which the employee does not have a valid prescription. The legal use of medication for which an employee has a valid prescription is permitted on the job only if it does not impair an employee's ability to perform the essential

49

**Confidential - Attorneys' Eyes Only**

functions of the job effectively and in a safe manner that does not endanger him/herself or other individuals in the workplace.

To inform employees about important provisions of this policy, Cognitec has established a drug-free awareness program. The program provides information on the dangers and effects of substance abuse in the workplace, resources available to employees and consequences for violations of this policy.

Employees with questions or concerns about substance dependency or abuse may discuss these matters with their supervisor or the President and CEO to receive assistance or referrals to appropriate resources in the community.

Employees with drug or alcohol problems that have not resulted in, and are not the immediate subject of disciplinary action may be granted a leave to seek treatment in the Company's sole discretion if the employee agrees to comply with this policy, and abides by all Cognitec policies, rules, and prohibitions relating to conduct in the workplace.

Under the Drug-Free Workplace Act, an employee who performs work for a government contract or grant must notify Cognitec of a criminal conviction for drug-related activity occurring in the workplace. The report must be made within five days of the conviction.

Employees with questions on this policy or issues related to drug or alcohol use in the workplace should raise their concerns with their supervisor or the President and CEO without fear of reprisal.

Violations of this policy may result in disciplinary action, up to and including termination.

**Alcohol Consumption at Social Events/Functions**

Cognitec is opposed to irresponsible or excessive drinking at business-related functions. If employees are in a situation where they may consume alcohol at a business-related function or while entertaining clients for a business purpose, any irresponsible or excessive drinking will be considered outside the scope of the employee's duties and Cognitec will not accept responsibility for the employee's negligent acts arising from such consumption. Further, alcohol use or the illegal use of other substances is not an excuse for improper conduct or violations of any of the Company's policies or work rules.

In no event are employees permitted to consume alcoholic beverages while working during normal business hours, regardless of whether or not business is discussed. In addition, employees are not to consume alcohol while driving a Company-owned, rented or leased vehicle.

In the case of Company sponsored events after normal business hours, alcoholic beverages may be served. Employees should not consume alcohol to excess at Company-sponsored events. Intoxicated employees are prohibited from driving home or away from the event, and Cognitec will provide transportation to ensure the safety of the Company's employees and/or guests.

50

**Confidential - Attorneys' Eyes Only**

Violations of this policy may be cause for immediate discharge from employment, or other discipline, at the sole discretion of the Company.

## Personal Appearance/Dress Code

Each employee's dress and grooming should be appropriate to the work situation. The Company expects employees to dress in business casual attire and maintain proper personal grooming for the workplace. Radical changes from conventional dress or personal grooming standards will not be accepted. Please contact your supervisor or the President and CEO if you have any questions.

If a supervisor determines that an employee's personal appearance is inappropriate, the employee may be asked to leave the workplace and return properly dressed or groomed. Under such circumstance, employees may be subject to discipline in appropriate circumstances, including, but not limited to the loss of pay for the time it takes the employee to return to work properly dressed or groomed.

Reasonable accommodations will be made for a person with a disability or religious need.

## Return of Property

Employees are responsible for all Cognitec property, materials, or written information, and Confidential Information issued to them or in their possession or control. Employees on or before their last day of work must return all Cognitec property. Cognitec may take all action deemed appropriate to recover or protect its property.

## Solicitation/Bulletin Boards

In an effort to ensure a productive and harmonious work environment, persons not employed by Cognitec may not come onto Company property to solicit or distribute literature at any time for any purpose. All employees should immediately report to their supervisor any solicitation or distribution of literature in violation of this rule by non-employees.

Cognitec recognizes that employees may have interests in events and organizations outside the workplace. The following rules shall apply to solicitation or distribution of literature by employees on the Company's property:

1. There shall be no solicitation during working time.

2. There shall be no distribution of literature during working time or any other time in any working area.

"Working time" means time designated for performing actual job duties, either by the person soliciting or distributing the literature or the person being solicited or receiving the literature, but does not include lunch periods, work breaks, or any other periods in which employees are not on duty.

**Confidential - Attorneys' Eyes Only**

CSC 00105

Examples of "solicitation" include, but are not limited to, solicitations for magazines or periodical subscriptions, political contributions, or membership in organizations. Examples of "distribution" include, but are not limited to, distribution of political literature, subscription forms or informational bulletins.

The Company's bulletin boards display important information posted for the benefit of employees. Only matters pertaining to official Company business may be posted on the bulletin boards. Notices, announcements or advertisements for individuals or outside organizations or groups are prohibited. Employees should consult the bulletin boards frequently for:

- Employee announcements
- Internal memoranda
- Job openings
- Organization announcements
- Payday notices
- Workers' compensation insurance information
- State disability insurance/unemployment insurance information

If employees have a work-related message, they may submit it to the President and CEO for approval. The Company will post all messages pertaining to official Company business on the bulletin boards. Self-posting of notices on the bulletin boards is not allowed.

## Discipline

The Company maintains a strong position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace. Cognitec's own best interest lies in ensuring fair treatment of all employees and in making certain that disciplinary actions are prompt, uniform, and impartial. The major purpose of any disciplinary action is to correct the problem, prevent recurrence, and prepare the employee for satisfactory service in the future.

It is within the Company's sole discretion to issue disciplinary actions which the Company deems appropriate considering the circumstances of the employee's infraction as well as the employee's performance record and work history. However, there are numerous violations of work rules and policies that are serious enough to justify immediate termination.

## Open Door Policy

Cognitec is committed to providing a respectful work environment that encourages an open exchange between employees and management. To further this goal, Cognitec has developed the open door "steps" described below. Employees are encouraged to use this procedure to express concern, in a reasonable business-like manner, about workplace rules, policies and practices; and/or to bring to management's attention a condition of employment or a decision affecting the employee that the employee believes is unjust, inequitable, or personally offensive.

52

**Confidential - Attorneys' Eyes Only**

1. The employee should first try to resolve the issue through the employee's immediate supervisor. The employee should present the issue to his/her immediate supervisor within five calendar days after the incident occurs or as soon thereafter as possible. If the supervisor is unavailable or the employee believes it would be inappropriate to contact that person, the employee may present the issue to the President and CEO.

2. The supervisor will try to respond to the issue during the discussion with the employee or within five calendar days after consulting with appropriate management or the President and CEO as necessary. The supervisor will document the discussion with the employee.

3. If the employee is unsatisfied with the supervisor's resolution of the issue, or the issue continues, the employee may present the issue directly to the President and CEO within five calendar days or as soon as possible.

4. The President and CEO will review and consider the issue, which may include counseling and advising the employee, assisting the employee in putting the issue in writing, and visiting with the employee's manager(s) if necessary. The President and CEO should inform the employee of his resolution of the issue as soon as possible, and will document the discussion in the employee's file.

We promise to make our best effort to address your concerns. Although not every problem can be resolved to everyone's total satisfaction, only through understanding and discussion of these issues can employees and management develop confidence in each other. This confidence is important to the operation of an efficient and harmonious work environment.

## Workplace Etiquette

Cognitec strives to maintain a positive work environment where employees treat each other with respect and courtesy. Sometimes issues arise when employees are unaware that their behavior in the workplace may be disruptive or annoying to others. Many of these day-to-day issues can be addressed by politely talking with a co-worker to bring the perceived problem to his or her attention. In most cases, common sense will dictate an appropriate resolution. Cognitec encourages all employees to keep an open mind and graciously accept constructive feedback or a request to change behavior that may be affecting another employee's ability to concentrate and be productive.

The following workplace etiquette guidelines are not necessarily intended to be hard and fast work rules with disciplinary consequences. They are simply suggestions for appropriate workplace behavior to help everyone be more conscientious and considerate of co-workers and the work environment. Please contact the President and CEO if you have comments, concerns, or suggestions regarding these workplace etiquette guidelines:

- Return copy machine and printer settings to their default settings after changing them.
- Replace paper in the copy machine and printer paper trays when they are empty.

53

**Confidential - Attorneys' Eyes Only**

CSC 00107

- Retrieve print jobs in a timely manner and be sure to collect all your pages.
- Avoid public accusations or criticisms of other employees. Address such issues privately with those involved or your supervisor.
- Try to minimize unscheduled interruptions of other employees while they are working.
- Be conscious of how your voice travels, and try to lower the volume of your voice when talking on the phone or to others in open areas.
- Keep socializing to a minimum, and try to conduct conversations in areas where the noise will not be distracting to others.
- Refrain from using inappropriate language (including swearing) that others may overhear.
- Avoid discussions of your personal life/issues in public conversations that can be easily overheard.
- Monitor the volume when listening to music, voice mail, or a speakerphone that others can hear.
- Clean up after yourself and do not leave behind waste or discarded papers.

**Confidential - Attorneys' Eyes Only**          **CSC 00108**



**Proposal created for:**
Cognitec Systems Us *Corporation*



## Automatic Data Processing Insurance Agency, Inc.

**Mauren Aquino**
5201 Blue Lagoon Dr
Miami, FL 33126
Phone : (786) 208-3487
Email : mauren@cognitec.com

Hello, attached is an updated quote for your business. This quote reflects all locations and correct employee count. The quote is through Hartford with an effective date of Friday December 10, 2011. To accept this quote I just need you to sign and return the six signature pages to me.

Since we are requesting an effective date in the past, I must receive the signed paperwork by the end of day Tuesday December 20, 2011. The proposed effective date is not guaranteed. Once the carrier has confirmed the policy can be issued with the proposed effective date, I will confirm with you.

**Presented by:**

**Meagan Duarte**
Associate Account Executive, Licensed Agent in 22 states
Automatic Data Processing Insurance Agency, Inc.
Phone : (866) 501-0474 Ext. 6254
Fax : (973) 845-1860
Email : Meagan.Duarte@ADP.com
California License # 0H37670

Please note, this is a quote, failure to return the signed documents by the date indicated could affect your policy issuance.

Thank you again for the opportunity to earn your Workers Compensation business – I look forward to providing you with ADP's Pay-by-Pay® premium payment program along with our World Class Service.

---

**Price:** (based on current workforce)
Estimated Annual premium:
**ADP requires $0.00 upfront premium deposit**

**Payment Method:**
ADP's Pay-by-Pay® Premium Payment Plan for Workers Compensation:
- Processing fee is  $12 Per Payroll
- Premium payments are based on actual, real-time payroll data and carrier rates that help minimize miscalculations at year-end audit
- Detailed, online premium payment report

**Next Steps:**
- Please return all signed documents to me by  Tuesday December 20, 2011
  Fax:  (973) 845-1860   or
  Email: Meagan.Duarte@ADP.com
  It is important that you provide a confidential & secure email address, to which you will receive policy information.
- An Implementation Specialist will reach out to you to set up your account, schedule the first premium payment.

This is only a proposal to provide workers compensation insurance. In order to bind coverage an authorized representative must execute the attached documents and return to  Meagan Duarte

---

**Table of Contents:**

| PAGE | NAME | NEED TO SIGN | SIGN PAGES |
|------|------|--------------|------------|
| 1 | Abridged Coversheet for Pay-By-Pay | No | |
| 2 | Hartford Carrier Services | No | |
| 3 | Quote - Hartford for Cognitec Systems Us | Yes | 10 |
| 11 | ADP Pay-By-Pay Service Agreement | Yes | 12 |
| 13 | Debit Authorization | Yes | 13 |
| 14 | Loss History Affidavit | Yes | 14 |
| 15 | MA Officer Exclusion for Cognitec Systems Us | Yes | 15 |
| 16 | questionnaire - Attachment | Yes | 17 |

*Rates are subject to change, may apply.*

Certain services are available through carrier partners of Automatic Data Processing Insurance Agency, Inc. and may not be available in all states. You must qualify for certain services and some carriers may charge additional services.

All insurance products will be offered and sold only through Automatic Data Processing Insurance Agency, Inc. its licensed agents or its licensed insurance partners. CA license 0D04044, FL License, NY license, CA license 0D04044

The ADP logo and pay-by-pay are registered trademarks of ADP, Inc. ©2010 ADP, Inc.

Page 1



---

**Confidential - Attorneys' Eyes Only**                    **CSC 00109**



**Proposal created for:**

Cognitec Systems *Us Corporation*



**Automatic Data Processing Insurance Agency, Inc.**



THE
HARTFORD

### Carrier's Services: The Hartford
For general policy coverage information visit www.thehartford.com.
Register or Login for 24 hour Claims Reporting.

## Loss Prevention / Safety Classes
Hartford is a leader providing superior Loss Control and risk management services for businesses and industries, ranging from the simple to the extremely complex.

The Hartford's Loss Control Consultants can assist with loss prevention by:

- Conducting on-site surveys to identify potential workplace hazards (where applicable).
- Developing appropriate recommendations for eliminating or controlling those hazards.
- Working with your organization's management to implement appropriate, agreed-upon improvements.

Your organization benefits through:

- Reductions in insurance premiums and other costs.
- Improved efficiency and productivity.
- Fewer accidents and delays.
- Working with expertly trained Loss Control Consultants.

## Claims Management
All Sections to follow are part of Claims Management

## Medical Network Referrals
Our network partners include credentialed providers in locations convenient to your business. All are selected for their proficiency in treating workplace injuries and willingness to work with The Hartford's nurse care managers.

The Hartford facilitates the referral process by:

- Offering lists of network providers for each of your locations.
- Helping employees find a provider nearby.
- Delivering information on your state's laws.

Visit The Hartford's online provider search database:
http://www.tallspoint.com/htfd/external/

## Fraud Investigation
To report suspicious claims activity call The Hartford's confidential Fraud Hotline at (800) 547-WARN.

- **The Claims Handlers** - where most fraud investigations start.
- **The Investigative Analysts** - evaluate and process potential fraud cases.
- **The Special Investigators** - Special Investigation Unit (SIU) collects evidence in possible fraud cases, visit accident sites and inspect physical evidence, interview witnesses, and record statements, take photographs, and search for clues.
- **The Intelligence Specialists** - Explore information to identify fraud and fraud trends.

## Medical Bill Review
Millions of dollars in workers' compensation claim savings can be lost if medical providers mischarge for their services. To help avoid excess charges The Hartford has a staff of professionals who are dedicated to the review and reconciliation of workers' compensation billing. Proprietary medical-review software:

- Applies rates negotiated with network providers.
- Identifies duplicate invoices, line items and unbundled or up-coded charges.
- Verifies the accuracy of billing codes and injury dates.
- Checks for compliance with state-allowed procedures.

## Medical Case Managers
The Hartford uses experienced registered nurses to provide expertise in medical cases that are complex or involve time away from work:

- Nurse Case Managers coordinate between the injured worker, medical providers, claims handler, and employer.
- Facilitate timely and appropriate care and help the injured employee return to gainful employment as soon as medically possible.

## Return-to-Work Programs
Hartford's Return-to-Work Programs:

- Assist injured workers in returning to full time employment as soon as is safe and practical.
- Ensures that injured workers remain an integral part of the company team, and also assists in reducing the overall cost of injuries.

All insurance products are offered and sold only through the licensed agents of Automatic Data Processing Insurance Agency, Inc. or its affiliated insurance agencies. Certain services may not be available in all states. The ADP Logo is a registered trademark of ADP of North America, Inc. Pay-by-Pay is a trademark of ... Inc. CA license 0D04044. This brochure is for marketing purposes only and is not a contract. It provides only ...

Page 2





Meagan Edelman
Phone – 866-501-0474 ext – 6254
Fax – 973-845-1860
meagan_edelman@adp.com



## THE HARTFORD

Workers' Compensation Proposal
Prepared for:

### COGNITEC SYSTEMS US INC
### 2711 CENTERVILLE RD SUITE 400
### WILMINGTON, DE 19808

Proposed by Automatic Data Processing Insurance Agency, Inc.
1 ADP Boulevard, Roseland, NJ 07068

This document is a proposal of insurance for the applicant indicated above. It is not to be used as proof of coverage, unless bound by agent signature.

Proposal Date 12/19/2011

*Regardless of whether an authorized representative has bound coverage, the premium amounts stated herein are determined based on the coverages and limits selected together with the specific characteristics of the insured. Changes to coverages, changes to limits, or incomplete or inaccurate insured characteristics may result in changes in premium and may only be determined by The Hartford or its automated submission system.*

*Coverage bound may be cancelled immediately upon notice to the insured and/or its agent subject to applicable state laws. Coverage will expire upon the expiration of the 30-day period without further notice, unless extended in writing with consent of The Hartford. Coverage cannot be backdated without a signed no-loss letter and consent of The Hartford.*

*The coverage descriptions in the proposal are abbreviated. Any coverage bound in accordance with the terms of this proposal is subject to the terms, conditions, limitations and exclusions of the applicable policy(ies). If there is any conflict between the coverage statements within this proposal and the applicable insurance policy(ies), the policy provisions will prevail. For questions regarding this proposal, contact your independent Hartford agent or authorized Hartford representative.*



**Confidential - Attorneys' Eyes Only**                    CSC 00111



## Why The Hartford?

**Company:**
- Founded in 1810, The Hartford is a leading provider of business property and casualty, personal automobile and homeowners, investment products, life insurance and group benefits

**Product:**
- Broad coverages at competitive prices – The Hartford and (Agency Name) are committed to bringing value to you at an affordable price.

**Claims Excellence:**
- Claim reporting available any time, day or night
- State-of-the-art technology enables fast claim settlements

**Numerous Premium Payment Options:**
- Pay by phone or by check
- Or, take advantage of Electronic Funds Transfer (EFT) – no check, stamp or worries



**Confidential - Attorneys' Eyes Only**

CSC 00112



*Worker's Compensation Proposal*
*Proposed with*
*Hartford Fire & Its Consolidated Affiliates*
*12/16/2011 to 12/16/2012*

**Part I – Workers' Compensation Insurance (Coverage A and C)**

Statutory Coverage as provided by the following states:
Delaware
Florida
Massachusetts
Nevada
Wisconsin
Coverage includes Medical and Loss of Income Benefits for injuries arising out of a work related injury.

| Part II – Employers Liability Insurance (Coverage B) | Limits of Insurance | |
|---|---|---|
| Bodily Injury By Accident | $ 1,000,000 | Each Accident |
| Bodily Injury By Disease | $ 1,000,000 | Policy Limit |
| Bodily Injury By Disease | $ 1,000,000 | Each Employee |

## Rating Information:

| State: | Delaware | Location: | 01 |
|---|---|---|---|

Location Address: 2711 Centerville Rd Suite 400
Wilmington, DE 19808

| Class Code | Description: | Rate: | Premium Basis (Rate per $100 of Exposure) | Class Premium: |
|---|---|---|---|---|
| 0953 | Clerical Office Employees | .32 | | $ 0.00 |

### State Recap: *** Pending Rates ***

| | | |
|---|---|---|
| Total Class Premium | $ | 0.00 |
| Total Estimated Annual Standard Premium | $ | 0.00 |
| Expense Constant 0900 | $ | 270.00 |
| Expense Constant 0900 | .0100 | $ 0.00 |
| Total Estimated Annual Premium | $ | 270.00 |

| State: | Florida | Location: | 02 |
|---|---|---|---|

Location Address: 5201 Blue Lagoon Dr Suite 800
Miami, FL 33126

| Class Code | Description: | Rate: | Premium Basis (Rate per $100 of Exposure) | Class Premium: |
|---|---|---|---|---|
| 8810 | Computer System Designers Or | .25 | 32,000 | $ 80.00 |

**Confidential - Attorneys' Eyes Only**



Programmers: Exclusively

### State Recap:

| | | | |
|---|---|---|---|
| Total Class Premium | | $ | 80.00 |
| Increased Limits Part Two | 1.40 % | $ | 1.00 |
| Total Estimated Annual Standard Premium | | $ | 81.00 |
| Terrorism (9740)         32,000 | .0200 | $ | 6.00 |
| Total Estimated Annual Premium | | $ | 87.00 |

State:   Massachusetts          Location:   03

Location Address:          100 Ledgewood Place Suite 302
                           Rockland, MA 02370

| Class Code | Description: | Rate: | Premium Basis (Rate per $100 of Exposure) | | Class Premium: |
|---|---|---|---|---|---|
| 8742 | Salespersons, Collectors Or Messengers - Outside | .15 | 144,000 | $ | 216.00 |
| 8803 | Computer System Designers Or Programmers: Traveling | .04 | 150,000 | $ | 60.00 |

### State Recap:

| | | | |
|---|---|---|---|
| Total Class Premium | | $ | 276.00 |
| MA Rate Deviation Premium Credit (9037) | .20 | $ | -55.00 |
| Increased Limits Part Two | 2.00 % | $ | 4.00 |
| Loss Constant | | $ | 20.00 |
| Total Estimated Annual Standard Premium | | $ | 245.00 |
| Massachusetts DIA Assessment | 5.90 % | $ | 16.00 |
| Terrorism (9740)         294,000 | .0300 | $ | 88.00 |
| Total Estimated Annual Premium | | $ | 349.00 |

State:   Nevada          Location:   04

Location Address:          No Specific Location
                           In State Of, NV 89142

| Class Code | Description: | Rate: | Premium Basis (Rate per $100 of Exposure) | | Class Premium: |
|---|---|---|---|---|---|
| 8803 | Computer System Designers Or Programmers: Traveling | .19 | 70,000 | $ | 133.00 |

### State Recap:

| | | | |
|---|---|---|---|
| Total Class Premium | | $ | 133.00 |
| Increased Limits Part Two | 2.80 % | $ | 4.00 |
| Total Estimated Annual Standard Premium | | $ | 137.00 |



**Confidential - Attorneys' Eyes Only**

CSC 00114



| | | | | |
|---|---|---|---|---|
| Terrorism (9740) | 70,000 | .0100 | $ | 7.00 |
| Catastrophe (9741) | 70,000 | .0100 | $ | 7.00 |
| Total Estimated Annual Premium | | | $ | 151.00 |

State:  Wisconsin      Location:   05

Location Address:        No Specific Location
                        In State Of, WI 53121

| Class Code | Description | Rate | Premium Basis (Rate per $100 of Exposure) | Class Premium |
|---|---|---|---|---|
| 8803 | Computer System Designers Or Programmers: Traveling | .15 | 94,000 | $    141.00 |

### State Recap:

| | | | |
|---|---|---|---|
| Total Class Premium | | $ | 141.00 |
| Increased Limits Part Two | 2.80 % | $ | 4.00 |
| To Equal Increased Limits Minimum Premium | | $ | 137.00 |
| Total Estimated Annual Standard Premium | | $ | 282.00 |
| Terrorism (9740) | 94,000 | .0200 | $ | 19.00 |
| Catastrophe (9741) | 94,000 | .0100 | $ | 9.00 |
| Total Estimated Annual Premium | | $ | 310.00 |

*0004940800305-*

**Confidential - Attorneys' Eyes Only**          **CSC 00115**



_Notes:_

Premium is based on an estimated payroll and subject to annual audit.

At the inception of the policy period our records show that you have employees located in the following states:
Delaware
Florida
Massachusetts
Nevada
Wisconsin
If you have employees working in any other states, please notify our office immediately.

Sole Proprietors are not automatically covered for Workers' Compensation Coverage and must elect to be covered.

No single endorsement combines as many workers' compensation enhancements as our broad form. Both our no-cost basic version and our inexpensive extended version, exceed legal requirements.

Merit Mods are tentative and subject to final calculation.

➤ Our basic broad form offers a number of enhancements _at no additional charge_. A few of these coverages include: _(not applicable in all states)_

- Voluntary Compensation Covered
- Employer Liability Stop Gap in Monopolistic States
- Pay for reasonable Expenses, including Loss of Earnings

➤ Our Extended broad form includes coverages in the Basic broad form and provides several additional coverages _for an added charge_: _(not applicable in all states)_

- 500/500/500 Employers Liability Limits
- Foreign Voluntary Compensation
- Longshore and Harbor Workers' Compensation Act Coverage Endorsement

Page 8

**Confidential - Attorneys' Eyes Only**

CSC 00116



*0004040800307-*

*Recommendations and Comments*

*Premium Summary*                                                    12/16/2011 to 12/16/2012
                                                                     Term

---

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT**

On December 26, 2007, legislation was enacted extending the Terrorism Risk Insurance Act (as amended "TRIA"). In accordance with TRIA, we are required to offer you coverage for "certified acts of terrorism" in policies for which this act applies. However, coverage for "certified acts of terrorism" is limited by the terms, conditions, exclusions, limits, endorsements and other provisions of your policy(ies), as well as any applicable rules of law to which this coverage quote applies.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism. The criteria contained in TRIA for a "certified act of terrorism" include the following:

    1.    The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

    2.    The act resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

    3.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Disclosure of Premium**
In accordance with TRIA, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for "certified acts of terrorism" under TRIA. The portion of your premium attributable to this terrorism coverage is shown in the premium section(s) of this quote proposal.

**Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Department of the Treasury will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of such insured losses that exceeds the applicable insurer deductible. However, if aggregate industry insured losses attributable to certified acts of terrorism under TRIA exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of such losses that exceeds $100 billion.

**Cap on Insurer Participation in Payment of Terrorism Losses**
If aggregate industry insured losses attributable to "certified acts of terrorism" under TRIA, exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

    PLEASE CONTACT YOUR AGENT, BROKER OR REPRESENTATIVE IF YOU HAVE QUESTIONS

---

*Total WC Estimated Annual Premium*                            $        1,167.00

ADP's pay-by-pay option requires _No_ deposit, _No_ down payment and premiums are impounded each payroll period based on reported gross payroll. All impounds include a transaction fee of $10.00 per payroll.



*0004940800307-*

**Confidential - Attorneys' Eyes Only**                    CSC 00117



Acknowledged and Accepted By

_____   On   12/20/2014
(Signature of Life Insured)              (Date)

This is a premium indication ONLY based upon information provided at the time of operation. The coverage descriptions in this proposal are abbreviated. You will need to refer to the policy(ies) for all terms, conditions, limitations and exclusions. If there is any conflict between the coverage statements within this proposal and the actual insurance policy, the policy provisions will prevail.



**Confidential - Attorneys' Eyes Only**

**CSC 00118**



## ADP INSURANCE SERVICES ADDENDUM

This Addendum ("Addendum") is between ADP, Inc. ("ADP"), the party listed below as Client ("Client") and Automatic Data Processing Insurance Agency, Inc. ("Agency") and supplements the agreement between Client and ADP that governs your payroll services (the "Agreement").

1. **The Services.** Subject to the following terms and conditions, ADP will provide Client with ADP's Pay-By-Pay services for workers' compensation insurance and any other insurance products supported by the Pay-By-Pay Premium Payment Program. The Agency will provide Client with certain services as an insurance agent.

2. **Availability of Pay-by-Pay Services.** Client acknowledges that the Pay-By-Pay service is only available to Clients that have been approved by the participating insurance carrier (the "Carrier") for Pay-by-Pay and who remain ADP payroll and tax filing clients. If Client signs up for Pay-By-Pay services and payroll/tax filing services at the same time, Client understands that if it fails to commence using the payroll/tax filing services within 30 days of the effective date of a) Client's workers' compensation insurance policy, and/or b) any insurance product supported by the Pay By Pay Premium Payment Program, Client's workers' compensation insurance and any other insurance product premiums will be converted to the Carrier's standard premium payment plan, if made available to Client by the Carrier. In addition, if the ADP payroll services and/or tax filing services are terminated at any time while Client is receiving the Pay-By-Pay services, Client's workers' compensation insurance and any other insurance products policies will be converted to the Carrier's standard premium payment plan, if made available to Client by the Carrier. Client understands that if the Carrier elects not to make available a payment plan for Client and Client does not pay the policy premiums in full, Client's policies may be cancelled by the Carrier. Client agrees that it will immediately notify Agency in the event that it has elected not to use or to terminate its ADP payroll and/or tax filing services.

3. **Selection of Insurance Carriers.** Client acknowledges that Agency has and/or may in the future assist Client with obtaining insurance from insurance carriers. Client understands that neither ADP nor Agency is making this insurance available to Client; neither ADP nor Agency is representing Client in the selection of the insurance carrier; and that neither ADP nor Agency is an affiliate of any of the insurance carriers. Client acknowledges that Agency works with a limited number of insurance carriers, that Agency may not obtain quotes from all available insurance carriers, and in most instances will obtain only one quote. Neither ADP nor Agency guarantees the financial stability or performance of any such insurance carriers. Therefore, Client should make sure that it is and remains satisfied with the financial stability and performance of the insurance carrier from whom it chooses to obtain insurance. Client further acknowledges that Agency receives compensation from insurance carriers in the form of commissions on insurance that Agency has assisted Client in obtaining from insurance carriers.

4. **Carrier Applications and Paperwork.** Agency may assist Client with the completion of applications and other paperwork required to be submitted to insurance carriers, including assignment of classification codes to its employees. Client will be responsible for reviewing all such applications and paperwork and will promptly notify Agency of any incorrect information included in such applications and paperwork. Client, not Agency, will be responsible for any incorrect information included in such applications and/or paperwork.

5. **Premium Audit Report.** If Agency has obtained Client's power of attorney to complete the premium audit report required by Client's Carrier, Agency may complete the paperwork on behalf of Client. Client will be responsible for reviewing such paperwork and will promptly notify Agency of any incorrect information included in such paperwork. Client acknowledges that the information included by Agency in the paperwork will be based on Client information provided to ADP or Agency by Client or contained in ADP systems or reports that have been accessible to Client. Therefore, Client, not Agency, will be responsible for any such Client information included in such paperwork.

Automatic Data Processing Insurance Agency, Inc., 1 ADP Boulevard, Roseland, NJ 07068

Confidential - Attorneys' Eyes Only

CSC 00119



6. Notifications to Agency.  If Client wishes to request policy changes, change payment terms and/or terminate its policy and desires Agency to assist Client in facilitating these changes with the Carrier, Client will provide Agency with a formal written notice of such request.  If Client fails to provide the Agency with a formal written notice of such request, the Carrier may decline to process the request and in certain cases, could cancel Client's policy.  All such notices shall be provided to the Agency at 71 Hanover Road, MS 625, Florham Park, NJ 07932 or such other address as the Agency may provide to you in writing from time to time.

7. Single Class Code Information.  Client acknowledges in certain instances where only one classification code is assigned to employees, no catch up premium is owed, and annual premium is no more than five thousand dollars ($5000.00), ADP will begin at the next scheduled payroll, calculating and processing the Pay-By-Pay Service.  Client understands ADP will communicate confidential employee information to the Client at the e-mail address provided below and it is Client's responsibility to ensure the confidentiality and security of the provided email address below.

8. Pay-by-Pay Service Fees.

   PAY-BY-PAY SERVICE FEE        $12 Per Payroll

   ADP may change this Pay-By-Pay service fee upon 30 days prior written notice to Client if the fee change is a result of a general price change by ADP to its Pay-By-Pay services clients.  ADP will debit the Pay-By-Pay service fee from your designated account.  Please sign the Debit Authorization terms below to set up this pre-authorized debit.

9. Application of Agreement to Agency.  Client acknowledges that all the general rights and obligations of ADP set forth in the Agreement (e.g., performance standards, confidentiality, limitations of liability, termination, etc.) shall also apply to the Agency.

The terms of this Addendum are in addition to, and subject to, the terms of the Agreement.  All other terms of the Agreement shall remain in full force and effect.  In the event of any conflict between the terms of this Addendum and the Agreement, this Addendum shall prevail.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum.

| CLIENT | AUTOMATIC DATA PROCESSING INSURANCE AGENCY, INC. | ADP, INC. |
|---|---|---|
| By: X | By: _Janet Cohen_ | By: _____ |
| Name: A Arcila Hurtra | Name: Janet Cohen | Name: Victor Saliterman |
| Title: President | Title: Vice President | Title: Senior DVP/GM |
| Date: 12/30/2011 | Date: 12/19/2011 | Date: 12/19/2011 |

Confidential Client E-Mail Address

_maurcu@coguitc.com_

Automatic Data Processing Insurance Agency, Inc., 1 ADP Boulevard, Roseland, NJ 07068

**Confidential - Attorneys' Eyes Only**                 **CSC 00120**



*0004040804801-1*

## DEBIT AUTHORIZATION

In connection with the ADP Pay-By-Pay services, you hereby authorize ADP, Inc. ("ADP") or Automatic Data Processing Insurance Agency, Inc. ("Agency") to debit the following: (a) the amount of the approximate premium due to your workers compensation insurance carrier ("Carrier") and any additional insurance products purchased and supported by the Pay-By-Pay Premium Payment Program, (b) premium adjustments assessed by your Carrier and (c) ADP's fees for the service, in each case from the bank account from which ADP debits your payroll taxes. The terms of the Debit Authorization, which you signed for the debit of your payroll taxes are incorporated herein and shall be binding upon you with respect to debits authorized hereunder except that the bank accounts for direct wires and reverse wires shall be as indicated below. This authorization shall remain in effect until terminated by you and until ADP, the Agency, and your bank have had a reasonable opportunity to act thereon. If you desire to change this authorization, you should provide ADP with a new Debit Authorization and voided check for the new account at least twenty days prior to the effective date of such change.

Company Name: Cognitec Systems US *Corporation*            Client Code(s): E5/KZX

Representative: *Alfredo Herrera*            Title: *President*

(Must be an authorized signatory on the account listed above)

Signature X _____            Date *8/20/2011*

For Reverse Wires or Direct Wires, all funds are to be wire transferred to the applicable bank account listed below, (unless/and until changed by notice from ADP).

| BANK | ABA | DDA | DESCRIPTION |
|------|-----|-----|-------------|
| JP Morgan Chase | 021000021 | 304-940917 | Direct Wire Impound Account |
| JP Morgan Chase | 021000021 | 304-939315 | Reverse Wire Impound Account |

In consideration for the additional costs incurred by ADP in providing wire transfer service, Client agrees to pay a reasonable fee (currently $10.00) for each wire transfer.

ISS: 5 May 2011

Automatic Data Processing Insurance Agency, Inc., 1 ADP Boulevard, Roseland, NJ 07068

*0004040804001-*

**Confidential - Attorneys' Eyes Only**            **CSC 00121**

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
1/13/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Rob Griffin |
|---|---|
| Beecher Carlson Insurance Agency, LLC<br>6970 E. Chauncey Lane<br>Suite 110<br>Phoenix            AZ  85054 | PHONE (A/C, No, Ext): 602-494-6706   FAX (A/C, No): 602-494-1175<br>E-MAIL ADDRESS: rgriffin@beechercarlson.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A : Gemini Insurance Company | |
| Cognitec Systems Corp. | INSURER B : | |
| 100 Ledgewood Place, Suite 302 | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| Rockland          MA  02370 | INSURER F : | |

**COVERAGES**    **CERTIFICATE NUMBER:** CL1211311550    **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>   CLAIMS-MADE  X  OCCUR | | | To Follow: | 1/13/2012 | 1/13/2013 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY  PRO- JECT  LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>ALL OWNED AUTOS  SCHEDULED AUTOS<br>HIRED AUTOS  NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB  OCCUR<br>EXCESS LIAB  CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | DED  RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | WC STATU- TORY LIMITS  OTH- ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**
Certificate holder included as additional insured as respects general liability on a primary & noncontributory basis where required by written contract. This form is subject to policy terms conditions & exclusions.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Lane County and its divisions, its commissioners, officers, agents, and employees<br>125 E. 8th Ave.<br>Eugene, OR  97401 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>Robert Griffin/RGALL |

ACORD 25 (2010/05)
INS025 (201005).01
© 1988-2010 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

**Confidential - Attorneys' Eyes Only**     CSC 00122



THE
HARTFORD

Commercial Programs Center
55 FARMINGTON AVE., SUITE 301

HARTFORD                                 CT 06115

Telephone (877) 287-1316

## INSURANCE ENDORSEMENT ATTACHED

### *** PLEASE REVIEW THE CHANGE ***

Enclosed is an endorsement for your business insurance policy. Please review it at your convenience. If you have questions or need to make further changes, please call us at (877) 287-1316 between 8 A.M. and 6 P.M. EASTERN TIME Monday through Friday.

You can expect information about the premium billing soon.

Thank you for allowing us to service your business needs.





The Hartford
Hartford Fire Insurance Company and its Affiliates.
Hartford Plaza, Hartford, Connecticut 06115

**Confidential - Attorneys' Eyes Only**            **CSC 00123**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CHANGE IN INFORMATION PAGE

**INSURER:** SEE ATTACHED ENDORSEMENT
**NCCI Company Number:** 10448                              AUDIT PERIOD:  ANNUAL
POLICY EFFECTIVE DATE:  12/16/11            POLICY EXPIRATION DATE:  12/16/12
**Policy Number:** 76 WEG ER4762        **Endorsement Number:** 01     HOUSING CODE:  76
**Effective Date:** 12/16/11     Effective hour is the same as stated in the Information Page of the policy.
**Named Insured and Address:**  COGNITEC SYSTEMS, CORP.

                       2711 CENTERVILLE RD SUITE 400
                       WILMINGTON, DE 19808

**FEIN Number:** 200389387                   PRO RATA FACTOR:  1.000
**PRODUCER NAME:**  AUTOMATIC DATA PROCESSING INS AGCY          PRODUCER CODE:  250717
**It is agreed that the policy is amended as follows:**
ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.  IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR
BANK ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
                       THIS IS NOT A BILL.

IN CONSIDERATION OF NO CHANGE IN PREMIUM IT IS AGREED THAT:

NAMED INSURED IS AMENDED TO READ FOR INSURED 01
COGNITEC SYSTEMS, CORP.

FORM NUMBERS OF ENDORSEMENTS DELETED FROM THIS POLICY AT
ENDORSEMENT ISSUE:

Countersigned by _____         _____
                                            Authorized Representative

**Form WC 99 00 06 A**    **(1)** Printed in U.S.A.        Page 1
**Process Date:** 12/22/11                    **Policy Expiration Date:** 12/16/12

                       ORIGINAL

**Confidential - Attorneys' Eyes Only**                    CSC 00124



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Policy Number:** 76 WEG ER4762          **Endorsement Number:** 01
**Effective Date:** 12/16/11     Effective hour is the same as stated on the Information Page of the policy.
**Named Insured and Address:** COGNITEC SYSTEMS, CORP.

                        2711 CENTERVILLE RD SUITE 400
                        WILMINGTON, DE 19808

THE POLICY IS AMENDED TO PROVIDE COVERAGE BY THE FOLLOWING INSURERS
IN THE FOLLOWING JURISDICTIONS:

| INSURER | | JURISDICTION |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | 14397 | WI |
| HARTFORD PLAZA, HARTFORD, CONNECTICUT 06115 | | |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY | 10448 | MA NV |
| HARTFORD PLAZA, HARTFORD, CONNECTICUT 06115 | | |
| HARTFORD UNDERWRITERS INSURANCE COMPANY | 10456 | FL |
| HARTFORD PLAZA, HARTFORD, CONNECTICUT 06115 | | |
| TWIN CITY FIRE INSURANCE COMPANY | 14974 | DE |
| HARTFORD PLAZA, HARTFORD, CONNECTICUT 06115 | | |

THE COVERAGE PROVIDED IN EACH JURISDICTION IS WITH RESPECT TO THE LOCATIONS
OF THE NAMED INSURED IN THAT JURISDICTION IN ACCORDANCE WITH THE WORKERS'
COMPENSATION LAW OF THAT JURISDICTION. AS USED IN THIS POLICY, "COMPANY,"
"WE," "US" AND "OUR" MEAN THE MEMBER INSURANCE COMPANIES OF THE HARTFORD
INSURANCE GROUP COLLECTIVELY PROVIDING THIS INSURANCE.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or information of the policy, other than as herein stated.

This endorsement shall not be binding unless countersigned by a duly authorized agent of the company, provided that if this endorsement takes effect as of the effective date of the policy and, at issue of said policy, forms a part thereof, countersignature on the Information Page of said policy by a duly authorized agent of the company shall constitute valid countersignature of this endorsement.

Countersigned by _____

_____
Authorized Representative

Form G-2240-2DT Printed in U.S.A.
**Process Date:** 12/22/11                          **Policy Expiration Date:** 12/16/12

*000276ER47620212  00793

**Confidential - Attorneys' Eyes Only**                    CSC 00125

*C. Card*
*March*

Mauren Aquino

From:      orders@dandb.com
Sent:      Tuesday, March 27, 2012 10:30 AM
To:      mauren@cognitec.com
Subject:      Order Confirmation Details - Order Reference Id ████████

 

03/27/12

Thank you for your order from D&B Credibility Corp.

Your Confirmation number is: ████████

**Order Summary:**

| Product | Duns | List Price | Qty | Tax | Amount Charged |
|---------|------|-----------|-----|-----|----------------|
| CreditBuilder | ████████ | $799.00 | 1 | $0.00 | $599.00 |

**Billing Information:**

Mauren Aquino
5201 blue lagoon drive
ste #800, Miami FL 33126
Credit Card Number: ████████

Thank you for your recent purchase from Dun & Bradstreet Credibility Corp. This email confirms your purchase. Please check it for accuracy and reply immediately or contact us if anything is incorrect. By purchasing a product, you also agree that the Terms of Service applicable to our products apply to you, and you agree to abide by all of those Terms of Service. Click here to review our Terms of Service.

This is a notification regarding your product subscription with Dun & Bradstreet Credibility Corp. Your privacy is important to us, please see our privacy policy. To view our terms of service, please click here. If you have any questions , email us at customersupport@DandB.com . Please do not reply to this email.
©2012 Dun & Bradstreet Credibility Corp. Dun & Bradstreet Credibility Corp. 103 JFK Parkway, Short Hills, NJ 07078

in-box
Cognitec Systems Corp.

MAR 2 6 2012

1

**Confidential - Attorneys' Eyes Only**      **CSC 00126**



# Invoice

FBI-LEEDA, Inc.
5 Great Valley Parkway
Suite 125
Malvern, PA 19355
877-772-7712
EIN 36-3885342

in-box
Cognitec Systems Corp.
MAR 2 6 2013

13-35-0176

| | d/p | Date |
|---|---|---|
| ExecNat | | |
| JPM | ✓ | 4-10-13 |
| CC | | |
| CostCenter | | 100 |
| DD | ✓ | 4-70-13 |

**Bill To:**
Cognitec Systems
100 Ledgewood Place
Rockland, MA 02370

| Date | Invoice No. | P.O. Number | Terms | Project |
|---|---|---|---|---|
| 03/26/13 | 5 | | Net 30 | |

| Item | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| Conference Exhibitor Registrati | Booth and Representative Registration Fee | 1 | 1,250.00 | 1,250.00 |
| | | | **Total** | **$1,250.00** |

**Confidential - Attorneys' Eyes Only**

CSC 00127

```
in-box
Cognitec Systems Corp.

MAR 2 6 2013

[barcode]
```

| | d/p | Date |
|---|---|---|
| ExecNat | -- | |
| JPM | | |
| CC | | |
| CostCenter | | |
| DD | | |

# FBI-LEEDA

## 22nd Annual Executive Training Conference

May 19-22, 2013
Marriott Louisville Downtown
Louisville, Kentucky

### Exhibition Registration Form

Company Name: *Cognitec Systems*

Company Contact: *Kevin Haskins*

Address: *100 Ledgewood Place*

City/State/Zip: *Rockland, MA  02370*

Telephone: *781-616-0600*   Facsimile: *781-881-0456*

E-mail: *info @ cognitec.com*

Website: *www.cognitec.com*

Expected Conference Attendees

Two (2) complimentary registrations are included with the exhibit booth.  Please contact FBI-LEEDA if additional company representatives need to be considered.

Representative: *Kevin Haskins*

Title: *Business Development Manager*

eMail: *kevin @ cognitec.com*

Telephone: *781-616-0600*

Representative:

Title:

eMail:

Telephone:

Booth Order and Payment

[X]  10' wide x 8' deep exhibit space - $1,250.00   _____  20' wide x 8' deep exhibit space - $2,000.00

Credit Card Number:

Name on Card

Expiration Date:

Card Billing Address:

Checks may be made payable to FBI-LEEDA and mailed to FBI-LEEDA, 5 Great Valley Parkway, Suite 125, Malvern, PA 19355.  FBI-LEEDA Tax ID No. 36-3885342.

Please fax this completed form to 562-683-0413 or email to mlorimer@fbileeda.org.

The FBI-LEEDA Conference will contact you regarding booth assignment based on best availability.

**Confidential - Attorneys' Eyes Only**

CSC 00128

**STAPLES**

that was easy.

For Customer Service, call
1-800-333-3330, or email at
support@orders.staples.com. Order
online, by phone or by fax 24
hours a day, 7 days a week.

STAPLES that was easy

COGNITEC SYSTEMS CORPORATION
JUNE PAPA
Floor: 1
100 LEDGEWOOD PLACE SUITE 302
ROCKLAND, MA  023701075
Contact: (781) 616-0600 EXT. 01 - JUNE PAPA

| REFER TO THIS ORDER NO. FOR ALL INQUIRIES | | |
|---|---|---|
| CUSTOMER NO. | PURCHASE ORDER NO. | ORDER NO. |
| | 2/25/13 SHIP DATE | 9337633289-001002 ORDER NO. |
| COST CENTER | | 9337633289-001002.001 RELEASE NO. |
| | | REQUISITIONER |

SHIPPING LOCATION: Montgomery, NY FC

CARRIER ROUTE: SHA/COU   /72

TOTAL PACKAGES:   1

in-box
Cognitec Systems Corp.

APR 25 2013

| | ExecNat | dp | Date |
|---|---|---|---|
| | M | | |
| | CC | | |
| | CostCenter | 1 | 2-26-13 |
| | DD | 100 | 4-26-13 |

13-35-0245

| ITEM NUMBER | ITEM / MODEL DESCRIPTION / NUMBER | UNIT OF MEAS | QTY ORDERED | QTY SHIPPED | Staples Price | Extended Amount |
|---|---|---|---|---|---|---|
| 371982 | BP NDX-12 GRAY DISPENSER /21894-CC | EA | 3 | 3 | 4.99 | 14.97 |
| 917883 | BROTHER TZE-241 18MM BK ON WHT/Tze-241 | EA | 1 | 1 | 19.99 | 19.99 |

Material Safety Data Sheets (MSDS) may be found by visiting http://msds.cexp.com/msds/371982.pdf
Material Safety Data Sheets (MSDS) may be found by visiting http://msds.cexp.com/msds/917883.pdf

SPECIAL INSTRUCTIONS
Order Date: 02/25/2013

Coupons and other adjustments are deducted after the Merchandise Total.

Check your order status online by going to www.staples.com and clicking on "My Orders".

| | |
|---|---|
| Merchandise Total | 34.96 |
| Delivery | .00 |
| Tax | 2.19 |
| **TOTAL VALUE OF ORDER:** | **37.15** |

Need to return something? Please call Customer Service to process a return.

oci

*Thank You For Your Order! Staples, Inc.*          *THIS IS NOT AN INVOICE.*

Confidential - Attorneys' Eyes Only          CSC 00129

**national**grid

2013255

**C 031     040172

COGNITEC SYSTEM CORP
5201 BLUE LAGOON DR # S800
MAIMI, FL                    33126-2064

| | |
|---|---|
| **Amount Due** | **NONE** |

53328-18133
Account Number

Please mail this part of bill with your payment
Make checks payable to National Grid.
Write your account number on check.

Tear here    National Grid address on the back must show in return envelope window

| Service To | | Account Number | | Next Meter Reading | Bill Date |
|---|---|---|---|---|---|
| COGNITEC SYSTEM CORP | | | | Oct 07 '13 | Sep 11 '13 |
| 100 LEDGEWOOD PL | S302 | Rate  G-41 | | | |
| ROCKLAND,MA 02370 | | Commercial Hea | | For Customer Assistance Please call (800) 231-5325 | |

## CURRENT BILL ITEMIZED

**In 34 days you used 0 therms:**

| | |
|---|---|
| Sep 11 2013 reading ACTUAL | 1001 |
| Aug 08 2013 reading ACTUAL | 1001 |
| CCF Used for METER# 00X146593 | 0 |

| | |
|---|---|
| Thermal Factor | x1.0337 |
| Total therms used | 0 |

**Your Cost is determined as follows:**

| | |
|---|---|
| Minimum Charge $.7000 per day for 34 days | $23.80 |
| Distribution Adjustment: 0 therms x 0.08140 per therm | .00 |
| **GAS DELIVERY CHARGE** | **$23.80** |
| GAS SUPPLY CHARGE @ $.46440 /therm | .00 |
| 6.2500 % Sales Tax | 1.49 |
| **TOTAL CURRENT CHARGES** | **$25.29** |

## SUMMARY OF CHARGES

| | |
|---|---|
| Total Current Charges | $25.29 |
| Amount Due Last Bill | -53.08 |
| **Balance In Your Favor (DO NOT PAY)** | **$-27.79** |

### GAS USE HISTORY

| | Days | | Therms | | Days | | Therms |
|---|---|---|---|---|---|---|---|
| Sep 13 | 34 | Act | 0 | Jan 13 | 31 | Act | 205 |
| Aug 13 | 30 | Act | 0 | Dec 12 | 32 | Act | 126 |
| Jul 13 | 28 | Act | 0 | Nov 12 | 30 | Est | 55 |
| Jun 13 | 63 | Act | 51 | Oct 12 | 31 | Act | 19 |
| Apr 13 | 29 | Act | 119 | Sep 12 | 30 | Act | 0 |
| Mar 13 | 28 | Act | 194 | Aug 12 | 30 | Act | 0 |
| Feb 13 | 32 | Est | 174 | Jul 12 | 29 | Act | 0 |

## IMPORTANT MESSAGES

**Your unique online Access Code is:** ▉▉▉▉▉▉▉
We're online, anytime! View and pay your bill, check your balance, submit meter readings. The code above provides free, instant access with "My Account" - visit www.nationalgridus.com. Many automated services are also available at the telephone number above.

We sincerely appreciate the prompt way you pay your bills.

Need assistance? Although we provide both natural gas and electricity, customer assistance for each service is handled separately. Please use the telephone number above for calls regarding gas service only.

in-box
Cognitec Systems Corp.

SEP 19 2013

**Confidential - Attorneys' Eyes Only**    CSC 00130

**salesforce.com**

salesforce.com, Inc.
San Francisco, CA 94105
United States

INVOICE

Bill To:
Cognitec Systems Corporation
Attn: Ms. Mauren Aquino
5201 Blue Lagoon Drive, Suite 800
Miami, FL 33126
US

Ship To:
Miami, FL 33126
US

| Invoice Number: | 05341413 |
|---|---|
| Invoice Date: | 11/13/2013 |
| Invoice Due Date: | 11/13/2013 |
| Payment Terms: | Due Upon Receipt |
| Payment Method: | Direct Debit |
| Account Number: | |
| Contract Number: | |
| Invoice Amount: | USD 8,336.25 |

| | d/p | Date |
|---|---|---|
| ExecNat | | |
| JPM | ✓ | 11-14-13 |
| CC | | |
| CostCenter | | 100 |
| DD | ✓ | 11-20? |

Remittance Information

*13-35-0641*

Please Do Not Send Payment - Direct Debit Information on File with salesforce.com.

in-box
Cognitec Systems Corp.
NOV 19 2013

## Invoice Details

Vendor: Salesforce.com

| | Service | Quote # | Months | Qty | Unit Price+ | Tax Rate | Tax | Total |
|---|---|---|---|---|---|---|---|---|
| 1 | Sales Cloud - Enterprise Edition | Q-1148426 | 3.00 | 14 | 115.00 | 0% | 0.00 | 4,830.00 |
| | Service Dates: 11/14/2013 - 2/13/2014 | | | | | | | |
| 2 | Sales Cloud - Enterprise Edition | Q-1148426 | 3.00 | 7 | 106.25 | 0% | 0.00 | 2,231.25 |
| | Service Dates: 11/14/2013 - 2/13/2014 | | | | | | | |
| 3 | Sales Cloud - Enterprise Edition | Q-1557161 | 3.00 | 1 | 106.25 | 0% | 0.00 | 318.75 |
| | Service Dates: 11/14/2013 - 2/13/2014 | | | | | | | |
| 4 | Sales Cloud - Enterprise Edition | Q-1307243 | 3.00 | 1 | 106.25 | 0% | 0.00 | 318.75 |
| | Service Dates: 11/14/2013 - 2/13/2014 | | | | | | | |
| 5 | Sales Cloud - Enterprise Edition | Q-1541710 | 3.00 | 1 | 106.25 | 0% | 0.00 | 318.75 |
| | Service Dates: 11/14/2013 - 2/13/2014 | | | | | | | |
| 6 | Sales Cloud - Enterprise Edition | Q-1160775 | 3.00 | 1 | 106.25 | 0% | 0.00 | 318.75 |
| | Service Dates: 11/14/2013 - 2/13/2014 | | | | | | | |

Subtotal: USD 8,336.25

Salesforce.com Total Charges: USD 8,336.25

+ The unit price shown above has been rounded to two decimal places for display purposes. As many as eight decimal places may be present in the actual price. The total price for this invoice was calculated using the actual price, rather than the unit price displayed above, and is the true and binding total for this Invoice.

Please note: Access to salesforce.com CRM subscription services is through remote Internet browser. This on-demand CRM service does not include the transfer of any software.

**Confidential - Attorneys' Eyes Only**

**TMC Travel Management Meeting Planning & Cruises**
Phone: (305)374-0550

## Electronic Invoice

**Prepared For:**
**ROTHWELL/GARY RICHARD**

| | |
|---|---|
| SALES PERSON | RB |
| INVOICE NUMBER | 0296807 |
| INVOICE ISSUE DATE | 20 Sep 2013 |
| RECORD LOCATOR | |
| CUSTOMER NUMBER | COGNIT |

*in-box Cognitec Systems Corp. DEC 03 2013*

**Client Address**

COGNITEC SYSTEMS CORPORATION
5201 BLUE LAGOON DRIVE
SUITE 800
MIAMI, FL 33126
ATTENTION MAUREN AQUINO

**Delivery Address**

TMC OFFICE HOURS AND PHONE CONTACT
305-374-0550 9AM-6PM EST
877-877-1053 TOLL FREE
AFTER HOURS RESERVATION CTR 24/7
800-492-2573 VIT CODE SS105

### DATE: Sun, Oct 20

**Flight: SOUTHWEST AIRLINES 1479**

| | | | |
|---|---|---|---|
| From | ST LOUIS INTL, MO | Departs | 9:25am |
| To | PHILADELPHIA, PA | Arrives | 12:35pm |
| Departure Terminal | 2 | Arrival Terminal | E |
| Duration | 02hr(s) :10min(s) | Class | Economy |
| Type | 73C | Meal | |
| Stop(s) | Non Stop | | |

### DATE: Wed, Oct 23

**Flight: SOUTHWEST AIRLINES 5112**

| | | | |
|---|---|---|---|
| From | PHILADELPHIA, PA | Departs | 12:57pm |
| To | ATLANTA, GA | Arrives | 3:06pm |
| Departure Terminal | E | Class | Economy |
| Duration | 02hr(s) :09min(s) | Meal | |
| Type | BOEING 717 JET | | |
| Stop(s) | Non Stop | | |

### DATE: Sat, Jul 26

**Others**

HOLD THIS
RETENTION LINE
WILL SAVE YOUR
RECORD UNTIL
THE DATE
INDICATED. THIS
DATE IS NOT A
TRAVEL DATE.
XD  0594460604

| | d/p | Date |
|---|---|---|
| ExecNat | | |
| JPM | | |
| CC | ✓ | 9-20-13 |
| CostCenter | | 100 |
| DD | ✓ | 12-4-13 |

13-35-0692

ROTHWELL GARY
RICHARD

Billed to:                                                    USD * 29.00

## Ticket Information

| Ticket Number | WN 2158878422 | Passenger | ROTHWELL GARY RICAHRD |
|---|---|---|---|

**Confidential - Attorneys' Eyes Only**

CSC 00132



**Your Statement**                                            Page. 1 of 5

Statement For:     COGNITEC SYSTEMS US CORP
Account Number:    753829459

### Important Information

Thank you for using EasyPay. Amount will be forwarded for automatic processing. Do not pay this bill or mail remittance.

AT 01 013968 87404B 56 A**3DGT

COGNITEC SYSTEMS US CORP
ATTN: FELIPE RODRIGUEZ
5201 BLUE LAGOON DR STE 805
MIAMI FL 33126-2064

### Summary

| | | |
|---|---|---|
| Previous Balance | $ | 79.98 |
| Pmt Rec'd - Thank You | $ | (79.98) |
| **Total Past Due** | $ | - |
| *(Due Immediately)* | | |
| Monthly Recurring Chgs | $ | 79.98 |
| **Total Current Charges** | $ | 79.98 |
| Current Charges Due By | | 12/09/13 |
| **Grand Total** | $ | 79.98 |

in-box
Cognitec Systems Corp.
DEC 0 2 2013

| | d/p | Date |
|---|---|---|
| ExecNat | | |
| JPM | | |
| CC | ✓ | 11-7-10 |
| CostCenter | | 100 |
| DD | ✓ | 1-29-14 |

10-35-0050

PLEASE DETACH THIS PORTION AND RETURN WITH YOUR PAYMENT PLEASE MAKE SURE ADDRESS SHOWS THROUGH WINDOW.

**T··Mobile·**

Statement For:    COGNITEC SYSTEMS US CORP
Account Number:

| Amount Due By 12/09/13 | Amount Enclosed |
|---|---|
| $79.98 | EasyPay |

T-MOBILE
PO BOX 790047
ST. LOUIS MO 63179-0047

☐ For EasyPay Option - check box and complete the reverse side

☐ If you have changed your address - check box and record new address on the reverse side.

040753829459120913000007998333126 2064

**Confidential - Attorneys' Eyes Only**                    CSC 00133

# national grid

COGNITEC SYSTEMS CORP
100 LEDGEWOOD PLAZA #902,
B 1
ROCKLAND MA 02370

Dec 6, 2013 to Jan 9, 2014

| ACCOUNT NUMBER | PLEASE PAY BY | AMOUNT DUE |
|---|---|---|
| | Feb 5, 2014 | $ 449.38 |

| | | |
|---|---|---|
| www.nationalgrid.com | **ACCOUNT BALANCE** | |
| CUSTOMER SERVICE | Previous Balance | 508.04 |
| 1-800-322-3223 | Payment Received on JAN 7 (*Check*)    *THANK YOU* | - 330.42 |
| CREDIT DEPARTMENT | Payment Received on DEC 11 (*Check*)    *THANK YOU* | - 177.62 |
| 1-888-211-1313 | Current Charges | + 449.38 |
| POWER OUTAGE OR DOWNED LINE | **Amount Due ▶** | **$ 449.38** |
| 1-800-465-1212 | | |

EMAIL BILLING INQUIRES
customerservice@us.ngrid.com

*To avoid late payment charges of 0.82%, $ 449.38 must be received by Feb 5 2014.*

CORRESPONDENCE ADDRESS
PO Box 960
Northborough, MA 01532-0960

Your deposit has earned interest of $ 0.23 . This amount has been credited to your bill account.

ELECTRIC PAYMENT ADDRESS
PO Box 11737
Newark, NJ 07101-4737

*14-35-0064*

DATE BILL ISSUED
Jan 10, 2014

**DETAIL OF CURRENT CHARGES**

| | d/p | Date |
|---|---|---|
| ExecNat | | |
| JPM | ✓ | 2-10-14 |
| CC | | 100 |
| CostCenter | | |
| 2561 | ✓ | 2-11-17 |

**Enrollment Information**

To enroll with a supplier you will need the following information about your account:
Loadzone SEMA
Acct No: _____ Cycle: 8, COGN

**Delivery Services**

| Type of Service | Current Reading | Previous Reading | Meter Multiplier | Total Usage |
|---|---|---|---|---|
| Energy | 50429 *Actual* | 47868 *Actual* | | 2561 kWh |
| | | | **Total Energy** | **2561 kWh** |

METER NUMBER 71477306      NEXT SCHEDULED READ DATE  Feb 10
SERVICE PERIOD  Dec 6 - Jan 9    NUMBER OF DAYS IN PERIOD  34
RATE    General Service - Small C/I G-1  VOLTAGE DELIVERY LEVEL   0 - 2.2 kv

**Electric Usage History**

| Month | kWh | Month | kWh |
|---|---|---|---|
| Jan 13 | 990 | Aug 13 | 1831 |
| Feb 13 | 813 | Sep 13 | 2033 |
| Mar 13 | 1027 | Oct 13 | 1404 |
| Apr 13 | 996 | Nov 13 | 1135 |
| May 13 | 1235 | Dec 13 | 1904 |
| Jun 13 | 1810 | Jan 14 | 2561 |
| Jul 13 | 2028 | | |

| | | | |
|---|---|---|---|
| Customer Charge | | | 10.00 |
| Dist Chg First 2000 KWH | 0.03817 x 2000 kWh | | 76.34 |
| Dist Chg Next 501 KWH | 0.05589 x 561 kWh | | 31.36 |
| Transition Charge | 0.00159 x 2561 kWh | | 4.07 |
| Transmission Charge | 0.01767 x 2561 kWh | | 45.25 |
| Energy Efficiency Chg | 0.00563 x 2561 kWh | | 14.42 |
| Renewable Energy Chg | 0.0005 x 2561 kWh | | 1.28 |
| **Total Delivery Services** | | | **$ 182.72** |

in-box
Cognitec Systems Corp.

JAN 22 2014

KEEP THIS PORTION FOR YOUR RECORDS.

**Confidential - Attorneys' Eyes Only**                    CSC 00134

# Regus

# Renewal Agreement

| Client Details | |
|---|---|
| **Company Name:** Cognitec Systems Corporation | **Center:** Miami Airport - Blue Lagoon Center 174 |
| **Contact Name:** Amelia Japaz-Calatrava | **Reference No.:** 5104929 |

## Office Details (excluding VAT/Tax and Services)

| Office Number | Monthly Office Price | | |
|---|---|---|---|
| | 12 Months | ____ Months | ____ Months |
| | Option A | Option B | Option C |
| 971 | 1.525,00 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Total per Month** | 1.525,00 | | USD |

**Start Date of Renewal:** February 1, 2013

**Comments:**

Please place an **"X"** in the shaded box next to your preferred option:

**Option A:  I agree** ☒

**Option B:  I agree** ☐

**Option C:  I agree** ☐

**I do not wish to renew** ☐

Cognitec Systems Corporation
5201 Blue Lagoon Drive Suite 800
Miami, FL, 33126
USA

SIGNED on your behalf (Client)

01/23/2014
Date

# Terms & Conditions

**1. This Agreement**
1.1    Nature of this agreement:   This agreement is the commercial equivalent of an agreement for accommodation(s) in a hotel.  The whole of the Center remains in Regus' possession and control. THE CLIENT ACCEPTS THAT THIS AGREEMENT CREATES NO TENANCY INTEREST, LEASEHOLD ESTATE OR OTHER REAL PROPERTY INTEREST IN THE CLIENT'S FAVOUR WITH RESPECT TO THE ACCOMMODATION(S).  Regus is giving the Client the right to share with Regus the use of the Center on these terms and conditions, as supplemented by

4.3    Insurance:  It is the Client's responsibility to arrange insurance for its own property which it brings in to the Center and for its own liability to its employees and to third parties. Regus strongly recommends that the Client put such insurance in place.
**5. Use**
5.1    The Client must only use the accommodation(s) for office purposes.  Office use of a "retail" or "medical"

**Confidential - Attorneys' Eyes Only**

10/05/2010  13:11     17817499783                                                    PAGE  01/01

**South Shore Business Center, Inc.**

## Cognitec Systems Corp lease addendum

Effective November 1, 2010, Cognitec Systems will occupy office 9 annex.

All conditions for the office will be the same as the lease agreement between South Shore Business Center and Cognitec Systems that was signed January 28, 2010.

As agreed, the monthly rent will be $█████████

This price will stay the same until September 2011.

At that time, the monthly rent will increase to ████████

Accepted by: _____
*Felipe Rodriguez, President*
Print name and title

Date: 09 - 30 -10

South Shore Business, Inc.
Date: 10 / 4 / 2010

350 Lincoln Place, Suite 2400, Hingham, MA  02043
Tel: (781) 749-2830 • Fax: (781) 749-9783
Email: info@ssbcinc.com

**Confidential - Attorneys' Eyes Only**                    **CSC 00136**

## *South Shore Business Center, Inc.*

---

This letter will set forth our agreement to rent an office located at the address shown below.   Please sign one copy and return to us with security deposit.

**Parties:**       This Agreement made and entered into this 8th day of January 2010 by **Cognitec Systems Corporation** of Miami Florida and between South **Shore Business Center Inc.**, herein referred to as **SSBC**.

**Premises:**    Consists of a two single offices located within the leased space of South Shore Business Center, Inc., at the below address and known as Annex office 3 and office 11.   Rent includes furnished office, (**Customer to provide own Internet access**), two telephone sets, two business lines, two voice mail boxes, one fax line, use of common reception area, incoming mail handling, use of kitchen area, conference room (8 hours per month). Maximum number of occupants in office suite 3 not to exceed 4 people and not to exceed 3 people in office 11.  Utilities and office cleaning are included in the base rent.

**Security Deposit:**    The amount equal to one month's rent is due upon signing this agreement. Security deposit plus final statement will be sent within 30 days of last date of occupancy

**Last Month:**   The amount equal to one month's rent is due upon signing this agreement.

**Rent:**       The amount of ████████is due upon receipt of monthly invoice each month beginning Feb 15, 2010.   Rate is guaranteed for a period of one year.   **Late Fee:** If rent is not received by the 10th day of the month in which due there shall be added to the payment amount due a late payment service charge of 1½% of the amount due for each month the rent is late. The late payment service charge is not interest, but a service fee to compensate SSBC for additional administrative and clerical time associated with collecting and accounting for the late payment.

**Term:**       One year occupancy is guaranteed by Cognitec Systems Corp.   The lease will self extend for a second year unless **SSBC** receives a written notice of termination by December 1 2010. (**two months** prior to the end of the lease year).

**Use:**        Client agrees to use the assigned office space exclusively for office uses.  Client will not store or use in the office any machinery, chemicals, food or other matter that will increase the fire hazard, cause any abnormal amount of noise, create any smell or use an abnormally large amount of electricity. Offices are to be kept in an orderly and professional fashion. Small refrigerators, stand-alone copy machines are permitted for an additional $10.00 per month each. Any other high energy consuming devices must be negotiated prior to installation. Tenant must use the SSBC T1 internet access (**waived**). No DSL or other internet access is permitted (**Waived**). Tenant must use the SSBC Voice over T1 telephone system. No WEB hosting is allowed without written permission (N/A). Space heaters of any kind are prohibited by the local fire laws. All tenants using the T1 internet access provided by SSBC are required to sign the **Internet Access Agreement.**  No office sub-leasing is allowed without written approval. Adding additional tenants must be approved in writing.

**Initials**

350 Lincoln Place, Suite 2400, Hingham, MA  02043
Tel: (781) 749-2880 • Fax: (781) 749-9783
Email:  SSBCINC@aol.com

**Confidential - Attorneys' Eyes Only**            CSC 00137

**Signage:**   SSBC will provide your company name outside the main office door at no additional charge. However, should you terminate your lease within the first six months, SSBC can deduct the cost of the signage from any security deposit monies.

**Damage:**   SSBC is not liable for any damage to personal property owned by Client or its invitees unless SSBC's gross negligence or willful misconduct, or that of its employee's causes the damage.  Each party shall be responsible for carrying such insurance, as it deems advisable to protect its own interest.

**Insurance:**   Tenant agrees to maintain during the term hereof, insurance coverage with respect to the Business Center, comprehensive general liability insurance coverage in the amount of not less than $1,000,000 per single occurrence and $1,000,000 property damage, with current Certificates of Insurance to be furnished to SSBC with South Shore Business Center, Inc. named as additional insured.

**Additional Services:**   Will be billed at the end of each month, payable upon receipt of invoice, and are as follows:

| | |
|---|---|
| Use of SSBC copy machine | $.12 each |
| Color printing | $.75 per page |
| Incoming faxes on SSBC Fax | $.75 each |
| Outgoing faxes on SSBC Fax | $.15 each |
| Use of SSBC postage machine | To be billed as used plus 20% |
| Secretarial Services | $25.00 per hour |
| Add'l Conference Room Hours | $20.00 per hour (over 8 hours) |
| Basic Telephone Answering | No Charge (calls ring directly to your office) |
| Calls answered by our staff | $30.00 per month |
| Telephone Connection(s) one time | One time installation fee (about $75.00) |
| Internet Service | $20.00 monthly for additional workstations |
| Lost key charge | $10.00 |
| Failure to return keys upon termination | $100.00 |
| Telephone Usage charges of .025 per local call and .07 per long distance per minute | (subject to change) |
| | $10.00 minimum monthly charge - main line |
| | $2.00 minimum monthly charge – fax line |
| 800 numbers | $25.00 per month plus incoming call charges |
| Foreign exchange numbers | $20.00 per month |
| Second phone extension in one office | $20 per month |
| Each additional line (over the 2) | $23 per month |
| TV in your office | Rates based on channels requested - $60 minimum |

Accepted by: _____

FELIPE RODRIGUEZ  PRESIDENT
Print name and title

Date: Jan. 28, 2010

South Shore Business, Inc.

Date: Feb 2, 2010

Rev. July 2009

# *South Shore Business Center, Inc.*

---

This letter will set forth our agreement to rent offices located at the address shown below.   Please sign one copy and return.

**Parties:** This Agreement made and entered into this 4th day of January 2011 by **Cognitec Systems Corporation** of Miami Florida and between South **Shore Business Center Inc.**, herein referred to as **SSBC**.

**Premises:** Consists of a three single offices located within the leased space of South Shore Business Center, Inc., at the below address and known as Annex offices 3, 9 and 11.   Rent includes furnished offices, **(Customer to provide own internet access)**, three telephone sets, one business phone line, two voice mail boxes, one fax line, use of common reception area, incoming mail handling, use of kitchen area, conference room (8 hours per month). Maximum number of occupants in office suite 3 not to exceed 4 people, not to exceed 2 people in office 11 and not to exceed 2 people in office 9.  Utilities and office cleaning are included in the base rent.

**Rent:** The amount of $▮▮▮▮▮▮ is due upon receipt of monthly invoice each month beginning Feb 1, 2011.  As agreed, the rent for office 9 increases $25.00 on September 1, 2011.  **Late Fee:** If rent is not received by the 10th day of the month in which due there shall be added to the payment amount due a late payment service charge of 1½% of the amount due for each month the rent is late. The late payment service charge is not interest, but a service fee to compensate SSBC for additional administrative and clerical time associated with collecting and accounting for the late payment.

**Term:** One year occupancy is guaranteed by Cognitec Systems Corp.   The lease will self extend for a third year unless **SSBC** receives a written notice of termination by December 1 2011. **(two months** prior to the end of the lease year).

**Use:** Client agrees to use the assigned office space exclusively for office uses.  Client will not store or use in the office any machinery, chemicals, food or other matter that will increase the fire hazard, cause any abnormal amount of noise, create any smell or use an abnormally large amount of electricity. Offices are to be kept in an orderly and professional fashion. Small refrigerators, stand-alone copy machines are permitted for an additional $10.00 per month each. Any other high energy consuming devices must be negotiated prior to installation. Tenant must use the SSBC T1 internet access **(waived)**. No DSL or other internet access is permitted **(Waived)**. Tenant must use the SSBC Voice over T1 telephone system. No WEB hosting is allowed without written permission (N/A). Space heaters of any kind are prohibited by the local fire laws. All tenants using the high speed internet access provided by SSBC are required to sign the **Internet Access Agreement**.  No office sub-leasing is allowed without written approval. Adding additional tenants must be approved in writing.

Initials

350 Lincoln Place, Suite 2400, Hingham, MA  02043
Tel: (781) 749-2880 • Fax: (781) 749-9783
Email:  SSBCINC@aol.com

**Confidential - Attorneys' Eyes Only**

CSC 00139

**Signage:**       SSBC will provide your company name outside the main office door at no additional charge. However, should you terminate your lease within the first six months, SSBC can deduct the cost of the signage from any security deposit monies.

**Damage:**        SSBC is not liable for any damage to personal property owned by Client or its invitees unless SSBC's gross negligence or willful misconduct, or that of its employee's causes the damage. Each party shall be responsible for carrying such insurance, as it deems advisable to protect its own interest.

**Insurance:**     Tenant agrees to maintain during the term hereof, insurance coverage with respect to the Business Center, comprehensive general liability insurance coverage in the amount of not less than $1,000,000 per single occurrence and $1,000,000 property damage, with current Certificates of Insurance to be furnished to SSBC with South Shore Business Center, Inc. named as additional insured.

**Additional Services:**       Will be billed at the end of each month, payable upon receipt of invoice, and are as follows:

| | |
|---|---|
| Use of SSBC copy machine | $.12 each |
| Color printing | $.75 per page |
| Incoming faxes on SSBC Fax | $.75 each |
| Outgoing faxes on SSBC Fax | $.15 each |
| Use of SSBC postage machine | To be billed as used plus 20% |
| Secretarial Services | $25.00 per hour |
| Add'l Conference Room Hours | $20.00 per hour (over 8 hours) |
| Basic Telephone Answering | No Charge (calls ring directly to your office) |
| Calls answered by our staff | $30.00 per month |
| Telephone Connection(s) one time | One time installation fee (about $75.00) |
| Internet Service | $20.00 monthly for additional workstations |
| Lost key charge | $10.00 |
| Failure to return keys upon termination | $100.00 |
| Telephone Usage charges of .025 per local call and .07 per long distance per minute | (subject to change) |
| | $10.00 minimum monthly charge - main line |
| | $2.00 minimum monthly charge – fax line |
| 800 numbers | $25.00 per month plus incoming call charges |
| Foreign exchange numbers | $20.00 per month |
| Second phone extension in one office | $20 per month |
| Each additional line (over the 2) | $23 per month |
| TV in your office | Rates based on channels requested - $60 minimum |

Accepted by: _____

ALFREDO HERRERA
Print name and title

Date: 02/02/2011

South Shore Business, Inc.

Date: _____

Rev. July 2009

**Confidential - Attorneys' Eyes Only**

CSC 00140

## Lease Amending Agreement

**THIS LEASE AMENDING AGREEMENT** dated this 17th day of March, 2011

**BETWEEN:**

South Shore Business Center, Inc.
(the "Landlord")

**OF THE FIRST PART**

- AND -

Cognitec Systems Corp.
(the "Tenant")

**OF THE SECOND PART**

### Background

A. The Landlord and the Tenant entered into the lease (the "Lease") dated January 4, 2011, for the premises (the "Premises") located at 350 Lincoln Place, Annex offices 3, 9 and 11.

B. The Landlord and the Tenant desire to amend the Lease on the terms and conditions set forth in this lease amending agreement (the "Agreement").

C. This Agreement is the first amendment to the Lease.

**IN CONSIDERATION OF** the Landlord and Tenant agreeing to amend their existing Lease, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, both parties agree to keep, perform, and fulfill the promises, conditions and agreements below:

### Amendments

1. The Lease is amended as follows:
    a. Term section is hereby amended by deleting "One year occupancy is guaranteed by Cognitec Systems Corp. The lease will self extend for a third year unless SSBC receives a written notice of termination by December 1 2011. (two months prior to the end of the lease year)" and replaced by the phrase "Agreement will terminate effective March 31, 2011, except as it relates to Annex office 9 which will continue to be rented at a monthly rate of ████ until the earlier of August 31, 2011, or such a time when SSBC is able to secure a new tenant for Annex office 9.".



**Confidential - Attorneys' Eyes Only**            **CSC 00141**

**No Other Change**

2. Except as otherwise expressly provided in this Agreement, all of the terms and conditions of the Lease remain unchanged and in full force and effect.

**Miscellaneous Terms**

3. Capitalized terms not otherwise defined in this Agreement will have the meanings ascribed to them in the Lease. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine include the feminine and vice versa. The words "Lessor" and "Lessee" as used in this Agreement include the plural as well as the singular; no regard for gender is intended by the language in this Agreement.

**Governing Law**

4. Subject to the terms of the Lease, it is the intention of the parties that this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the Commonwealth of Massachusetts, without regard to the jurisdiction in which any action or special proceeding may be instituted.

**IN WITNESS WHEREOF,** the Landlord and Tenant have executed this Lease Amending Agreement as of the date first above written.

South Shore Business Center, Inc.

Witness _____        per: _____ (seal)

Witness _____        Cognitec Systems Corp.

COGNITECSYS 02/26/2009 4:37 PM

| Form **1120** | U.S. Corporation Income Tax Return | OMB No. 1545-0123 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | For calendar year 2008 or tax year beginning _____, ending _____ ▶ See separate instructions. | **2008** |

**A** Check if:
1a Consolidated return (attach Form 851) .....
1b Life/nonlife consolidated return .....
2 Personal holding co. (attach Sch. PH) .....
3 Personal service corp. (see instructions) .....
4 Schedule M-3 attached

Use IRS label. Otherwise, print or type.

**Name** Number, street, and room or suite no. City or town, state, and ZIP code
If a P.O. box, see instructions.

COGNITEC SYSTEMS CORP

5201 BLUE LAGOON DR

MIAMI          FL 33126-2064

**B** Employer identification number

**C** Date incorporated
10/01/2003

**D** Total assets (see instructions)
$

**E** Check if: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change

| | Income | | |
|---|---|---|---|
| 1a | Gross receipts or sales | | 1c |
| | b Less returns and allowances | c Bal ▶ | |
| 2 | Cost of goods sold (Schedule A, line 8) | | 2 |
| 3 | Gross profit. Subtract line 2 from line 1c | | 3 |
| 4 | Dividends (Schedule C, line 19) | | 4 |
| 5 | Interest | | 5 |
| 6 | Gross rents | | 6 |
| 7 | Gross royalties | | 7 |
| 8 | Capital gain net income (attach Schedule D (Form 1120)) | | 8 |
| 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 9 |
| 10 | Other income (see instructions—attach schedule)          See Stmt 1 | | 10 |
| 11 | **Total income.** Add lines 3 through 10 ▶ | | 11 |

| | Deductions (See instructions for limitations on deductions.) | | |
|---|---|---|---|
| 12 | Compensation of officers (Schedule E, line 4) | | 12 |
| 13 | Salaries and wages (less employment credits) | | 13 |
| 14 | Repairs and maintenance | | 14 |
| 15 | Bad debts | | 15 |
| 16 | Rents | | 16 |
| 17 | Taxes and licenses | | 17 |
| 18 | Interest | | 18 |
| 19 | Charitable contributions | | 19 |
| 20 | Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | | 20 |
| 21 | Depletion | | 21 |
| 22 | Advertising | | 22 |
| 23 | Pension, profit-sharing, etc., plans | | 23 |
| 24 | Employee benefit programs | | 24 |
| 25 | Domestic production activities deduction (attach Form 8903) | | 25 |
| 26 | Other deductions (attach schedule)          See Stmt 2 | | 26 |
| 27 | **Total deductions.** Add lines 12 through 26 ▶ | | 27 |
| 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 |
| 29 | Less: a Net operating loss deduction (see instructions) | 29a | |
| | b Special deductions (Schedule C, line 20) | 29b | 29c |

| | Tax, Refundable Credits, and Payments | | |
|---|---|---|---|
| 30 | **Taxable income.** Subtract line 29c from line 28 (see instructions) | | 30 |
| 31 | Total tax (Schedule J, line 10) | | 31 |
| 32a | 2007 overpayment credited to 2008 | 32a | |
| b | 2008 estimated tax payments | 32b | |
| c | 2008 refund applied for on Form 4466 | 32c ( ) | d Bal ▶ 32d |
| e | Tax deposited with Form 7004 | | 32e |
| f | Credits: (1) Form 2439 ____ (2) Form 4136 ____ | | 32f |
| g | Refundable credits from Form 3800, line 19c, and Form 8827, line 8c | 32g | 32h |
| 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☒ | | 33 |
| 34 | Amount owed. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | 34 |
| 35 | Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | 35 |
| 36 | Enter amount from line 35 you want: Credited to 2009 estimated tax ▶ ____ Refunded ▶ | | 36 |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

▶ _____   _____   _____
Signature of officer          Date      Title

**Paid Preparer's Use Only**

| Preparer's signature | Raimundo Lopez-Lima Levi, CPA | Date 2/26/09 | Check if self-employed ☐ | Preparer's SSN or PTIN P65059862 |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | LOPEZ LEVI & ASSOCIATES, P.A., CPAS 201 Alhambra Cir Ste 501 Coral Gables, FL 33134 | | EIN | Phone no. 305-774-2945 |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1120** (2008)

**Confidential - Attorneys' Eyes Only**          CSC 00143

COGNITECSYS 03/01/2010 5:16 PM

**Form 1120**
Department of the Treasury
Internal Revenue Service

## U.S. Corporation Income Tax Return

For calendar year 2009 or tax year beginning ............... , ending ...............
▶ See separate instructions.

OMB No. 1545-0123

**2009**

A Check if:
1a Consolidated return (attach Form 851) ☐
b Life/nonlife consolidated return ☐
2 Personal holding co. (attach Sch. PH) ☐
3 Personal service corp. (see instructions) ☐
4 Schedule M-3 attached ☐

Use IRS label. Otherwise, print or type.

Name
**COGNITEC SYSTEMS CORP**
Number, street, and room or suite no. If a P.O. box, see instructions.
**5201 BLUE LAGOON DR, SUITE 800**
City or town, state, and ZIP code
**MIAMI          FL 33126-2064**

B Employer identification number
████████████

C Date incorporated
**10/01/2003**

D Total assets (see instructions)

E Check if: (1) Initial return (2) ☐ Final return (3) ☐ Name change (4) ☒ Address change ☐  $

| | | | | |
|---|---|---|---|---|
| **Income** | 1a Gross receipts or sales | **1,484,965** | b Less returns and allowances | c Bal ▶ 1c ████████ |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 ████████ |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 ████████ |
| | 4 Dividends (Schedule C, line 19) | | | 4 |
| | 5 Interest | | | 5 ████ |
| | 6 Gross rents | | | 6 |
| | 7 Gross royalties | | | 7 |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | 8 |
| | 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 9 |
| | 10 Other income (see instructions—attach schedule) | **See Stmt 1** | | 10 ████████ |
| | 11 Total income. Add lines 3 through 10 | | ▶ | 11 ████████ |

| | | |
|---|---|---|
| **Deductions (See instructions for limitations on deductions.)** | 12 Compensation of officers (Schedule E, line 4) | ▶ 12 ████████ |
| | 13 Salaries and wages (less employment credits) | 13 ████████ |
| | 14 Repairs and maintenance | 14 |
| | 15 Bad debts | 15 ████████ |
| | 16 Rents | 16 ████████ |
| | 17 Taxes and licenses | 17 ████████ |
| | 18 Interest | 18 ████ |
| | 19 Charitable contributions | 19 |
| | 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | 20 ████████ |
| | 21 Depletion | 21 |
| | 22 Advertising | 22 |
| | 23 Pension, profit-sharing, etc., plans | 23 |
| | 24 Employee benefit programs | 24 |
| | 25 Domestic production activities deduction (attach Form 8903) | 25 |
| | 26 Other deductions (attach schedule)    **See Stmt 2** | 26 ████████ |
| | 27 Total deductions. Add lines 12 through 26 | ▶ 27 ████████ |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 ████████ |
| | 29 Less: a Net operating loss deduction (see instructions) | 29a |
| | b Special deductions (Schedule C, line 20) | 29b |
| | | 29c ████████ |

| | | |
|---|---|---|
| **Tax, Refundable Credits, and Payments** | 30 Taxable income. Subtract line 29c from line 28 (see instructions) | 30 ████████ |
| | 31 Total tax (Schedule J, line 10) | 31 ████████ |
| | 32a 2008 overpayment credited to 2009 | 32a |
| | b 2009 estimated tax payments | 32b ████████ |
| | c 2009 refund applied for on Form 4466 | 32c ( ) d Bal ▶ 32d ████████ |
| | e Tax deposited with Form 7004 | 32e |
| | f Credits: (1) Form 2439            (2) Form 4136 | 32f |
| | g Refundable credits from Form 3800, line 19c, and Form 8827, line 8c | 32g |
| | | 32h ████████ |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | 33 |
| | 34 Amount owed. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | 34 |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | 35 1████ |
| | 36 Enter amount from line 35 you want: Credited to 2010 estimated tax ▶          Refunded ▶ | 36 1████ |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer          Date          Title

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

| Preparer's signature | Date | Check if self-employed | Preparer's SSN or PTIN |
|---|---|---|---|
| **Raimundo Lopez-Lima Levi, CPA** | **03/01/10** | ☐ | **P65059862** |

Firm's name (or yours if self-employed), address, and ZIP code ▶
**LOPEZ LEVI & ASSOCIATES, P.A., CPAS**
**201 Alhambra Cir Ste 501**
**Coral Gables, FL          33134**

EIN

Phone no. **305-774-2945**

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1120** (2009)

**Confidential - Attorneys' Eyes Only**          CSC 00144

COGNITECSYS 03/01/2010 5:15 PM

| Form **5472**<br>(Rev. December 2007)<br><br>Department of the Treasury<br>Internal Revenue Service | **Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business**<br>(Under Sections 6038A and 6038C of the Internal Revenue Code)<br>For tax year of the reporting corporation beginning **01/01/09**, and ending **12/31/09**<br>Note. Enter all information in English and money items in U.S. dollars. | OMB No. 1545-0805 |
|---|---|---|

## Part I — Reporting Corporation (see instructions). All reporting corporations must complete Part I.

**1a** Name of reporting corporation
COGNITEC SYSTEMS CORP

**1b** Employer identification number
▓▓▓▓▓▓▓

Number, street, and room or suite no. (if a P.O. box, see instructions)
5201 BLUE LAGOON DR, SUITE 800

**1c** Total assets

City or town, state, and ZIP code (if a foreign address, see instructions)
MIAMI, FL  33126-2064

$ ▓▓▓▓▓▓

**1d** Principal business activity ▶ **Software**

**1e** Principal business activity code ▶ ▓▓▓▓

**1f** Total value of gross payments made or received (see instructions) reported on this Form 5472
$ ▓▓▓▓▓▓

**1g** Total number of Forms 5472 filed for the tax year
1

**1h** Total value of gross payments made or received (see instructions) reported on all Forms 5472
$ ▓▓▓▓▓▓

**1i** Check here if this is a consolidated filing of Form 5472 ▶ ☐

**1j** Country of incorporation
USA

**1k** Country(ies) under whose laws the reporting corporation files an income tax return as a resident
USA

**1l** Principal country(ies) where business is conducted
USA

**2** Check here if, at any time during the tax year, any foreign person owned, directly or indirectly, at least 50% of **(a)** the total voting power of all classes of the stock of the reporting corporation entitled to vote, or **(b)** the total value of all classes of stock of the reporting corporation ▶ ☒

## Part II — 25% Foreign Shareholder (see instructions)

**1a** Name and address of direct 25% foreign shareholder
COGNITEC SYSTEMS GMBH
GROSSENHAINER STR. 101
DRESDEN         .         Germany

**1b** U.S. identifying number, if any
N/A

**1c** Principal country(ies) where business is conducted
Germany

**1d** Country of citizenship, organization, or incorporation
Germany

**1e** Country(ies) under whose laws the direct 25% foreign shareholder files an income tax return as a resident
Germany

**2a** Name and address of direct 25% foreign shareholder

**2b** U.S. identifying number, if any

**2c** Principal country(ies) where business is conducted

**2d** Country of citizenship, organization, or incorporation

**2e** Country(ies) under whose laws the direct 25% foreign shareholder files an income tax return as a resident

**3a** Name and address of ultimate indirect 25% foreign shareholder

**3b** U.S. identifying number, if any

**3c** Principal country(ies) where business is conducted

**3d** Country of citizenship, organization, or incorporation

**3e** Country(ies) under whose laws the ultimate indirect 25% foreign shareholder files an income tax return as a resident

**4a** Name and address of ultimate indirect 25% foreign shareholder

**4b** U.S. identifying number, if any

**4c** Principal country(ies) where business is conducted

**4d** Country of citizenship, organization, or incorporation

**4e** Country(ies) under whose laws the ultimate indirect 25% foreign shareholder files an income tax return as a resident

## Part III — Related Party (see instructions)

Check applicable box: Is the related party a ☒ foreign person or ☐ U.S. person?
All reporting corporations must complete this question and the rest of Part III.

**1a** Name and address of related party
COGNITEC SYSTEMS GMBH
Grossenhainer Straasse 101
Dresden            01127      Germany

**1b** U.S. identifying number, if any

**1c** Principal business activity ▶ SOFTWARE DEVELOPME

**1d** Principal business activity code ▶ ▓▓▓▓▓

**1e** Relationship-Check boxes that apply: ☐ Related to reporting corporation  ☐ Related to 25% foreign shareholder ☒ 25% foreign shareholder

**1f** Principal country(ies) where business is conducted
Germany

**1g** Country(ies) under whose laws the related party files an income tax return as a resident
Germany

For Paperwork Reduction Act Notice, see page 4.
DAA

Form **5472** (Rev. 12-2007)

**Confidential - Attorneys' Eyes Only**          CSC 00145

COGNITECSYS 03/01/2010 5:16 PM

Form 5472 (Rev. 12-2007)   COGNITEC SYSTEMS CORP                    20-0389387                         Page 2

## Part IV — Monetary Transactions Between Reporting Corporations and Foreign Related Party (see instructions)

**Caution:** Part IV **must** be completed if the "foreign person" box is checked in the heading for Part III.

If estimates are used, check here ▶ ☐

| | | |
|---|---|---:|
| 1 Sales of stock in trade (inventory) | 1 | |
| 2 Sales of tangible property other than stock in trade | 2 | |
| 3a Rents received (for other than intangible property rights) | 3a | |
| b Royalties received (for other than intangible property rights) | 3b | |
| 4 Sales, leases, licenses, etc., of intangible property rights (e.g., patents, trademarks, secret formulas) | 4 | |
| 5 Consideration received for technical, managerial, engineering, construction, scientific, or like services | 5 | |
| 6 Commissions received | 6 | |
| 7 Amounts borrowed (see instructions)   a Beginning balance _____   b Ending balance or monthly average ▶ | 7b | |
| 8 Interest received | 8 | |
| 9 Premiums received for insurance or reinsurance | 9 | |
| 10 Other amounts received (see instructions) | 10 | |
| 11 **Total.** Combine amounts on lines 1 through 10 | 11 | 0 |
| 12 Purchases of stock in trade (inventory) | 12 | |
| 13 Purchases of tangible property other than stock in trade | 13 | |
| 14a Rents paid (for other than intangible property rights) | 14a | |
| b Royalties paid (for other than intangible property rights) | 14b | |
| 15 Purchases, leases, licenses, etc., of intangible property rights (e.g., patents, trademarks, secret formulas) | 15 | ▓▓▓▓ |
| 16 Consideration paid for technical, managerial, engineering, construction, scientific, or like services | 16 | |
| 17 Commissions paid | 17 | |
| 18 Amounts loaned (see instructions)   a Beginning balance _____   b Ending balance or monthly average ▶ | 18b | |
| 19 Interest paid | 19 | |
| 20 Premiums paid for insurance or reinsurance | 20 | |
| 21 Other amounts paid (see instructions) | 21 | |
| 22 **Total.** Combine amounts on lines 12 through 21 | 22 | ▓▓▓▓ |

## Part V — Nonmonetary and Less-Than-Full Consideration Transactions Between the Reporting Corporation and the Foreign Related Party (see instructions)

Describe these transactions on an attached separate sheet and check here ▶ ☐

## Part VI — Additional Information

All reporting corporations must complete Part VI.

| | | |
|---|---|---|
| 1 Does the reporting corporation import goods from a foreign related party? | ☐ Yes | ☒ No |
| 2 a If "Yes," is the basis or inventory cost of the goods valued at greater than the customs value of the imported goods? | ☐ Yes | ☐ No |
| If "No," **do not** complete b and c below. | | |
| b If "Yes," attach a statement explaining the reason or reasons for such difference. | | |
| c If the answers to questions 1 and 2a are "Yes," were the documents used to support this treatment of the imported goods in existence and available in the United States at the time of filing Form 5472? | ☐ Yes | ☐ No |

DAA

**Confidential - Attorneys' Eyes Only**                                          CSC 00146

| Form **4549-A**<br>(Rev. May 2008) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Discrepancy Adjustments** | | Page _____ of _____ |
|---|---|---|---|

| Name and Address of Taxpayer<br>Cognitec Systems US Corporation<br>5201 Blue Lagoon Dr<br>Miami, Florida 33126 | Taxpayer Identification Number<br>20-0389387 | Return Form No.:<br>1120 |
|---|---|---|
| | Person with whom examination changes were discussed. | Name and Title: |

| 1. Adjustments to Income | Period End<br>12/31/2009 | Period End | Period End |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. **Total Adjustments** | 0.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | ▬▬▬ | | |
| 4. **Corrected Taxable Income**<br>   Tax Method<br>   Filing Status | ▬▬▬ | | |
| 5. **Tax** | ▬▬▬ | | |
| 6. **Additional Taxes / Alternative Minimum** | 0.00 | | |
| 7. Corrected Tax Liability | ▬▬▬ | | |
| 8. **Less**<br>**Credits**   a.<br>b. Total Credits (See attached schedule)<br>c.<br>d. | 0.00 | | |
| 9. **Balance** *(Line 7 less total of Lines 8a thru 8d)* | ▬▬▬ | | |
| 10. **Plus**<br>**Other**<br>**Taxes**   a.<br>b. Other Taxes (See attached schedule)<br>c.<br>d. | 0.00 | | |
| 11. Total Corrected Tax Liability *(Line 9 plus Lines 10a thru 10d)* | ▬▬▬ | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | ▬▬▬ | | |
| 13. Adjustments to: a.<br>       b.<br>       c. | | | |
| 14. Deficiency-Increase in Tax or *(Overassessment - Decrease in Tax)*<br>*(Line 11 less Line 12 adjusted by Lines 13a through 13c)* | 0.00 | | |
| 15. Adjustments to Prepayment Credits-Increase *(Decrease)* | 0.00 | | |
| 16. **Balance Due or (Overpayment)** - *(Line 14 adjusted by Line 15)*<br>*(Excluding interest and penalties)* | 0.00 | | |

| Catalog Number 23110T | www.irs.gov | Form **4549-A** (Rev. 5-2008) |
|---|---|---|

**Confidential - Attorneys' Eyes Only**      CSC 00147

| Form **4549-A**<br>(Rev. May 2008) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Discrepancy Adjustments** | Page_____ of _____ |
|---|---|---|

| Name of Taxpayer<br>Coanitec Systems US Corporation | Taxpayer Identification Number | Return Form No.:<br>1120 |
|---|---|---|

| 17. Penalties/ Code Sections | Period End<br>12/31/2009 | Period End | Period End |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | 0.00 | | |
| Underpayment attributable to negligence: *(1981-1987)*<br>*A tax addition of 50 percent of the interest due on the*<br>*underpayment will accrue until it is paid or assessed.* | 0.00 | | |
| Underpayment attributable to fraud: *(1981-1987)*<br>*A tax addition of 50 percent of the interest due on the*<br>*underpayment will accrue until it is paid or assessed.* | 0.00 | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT).*<br>Interest will accrue and be assessed at 120% of underpayment<br>rate in accordance with IRC 6621(c). | 0.00 | | |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 0.00 | | |
| b. Penalties *(Line 18)* - computed to 11/10/2011 | 0.00 | | |
| c. Interest *(IRC § 6601)* - computed to 11/10/2011 | 0.00 | | |
| d. TMT Interest - computed to 11/10/2011 *(on TMT underpayment)* | 0.00 | | |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 0.00 | | |

Other Information:

NO CHANGE - Subject to Area Director's Approval

| Examiner's Signature:<br><br>F. Imam | Employee ID:<br><br>0857743 | Office:<br><br>Miami, Florida | Date:<br><br>10/11/2011 |
|---|---|---|---|

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

| Catalog Number 23110T | www.irs.gov | Form **4549-A** (Rev. 5-2008) |
|---|---|---|

**Confidential - Attorneys' Eyes Only**                    CSC 00148

COGNITECSYS 03/09/2011 12:54 PM



**2010 Form 355** MA1039711022
Business or Manufacturing Corporation Excise Return

Year beginning  01012010  Ending  12312010

COGNITEC SYSTEMS CORP
5201 BLUE LAGOON DR, SUI MIAMI                    FL 331262064
350 Lincoln St, Ste 2400 Hingham                  MA 02043

| | | | | | |
|---|---|---|---|---|---|
| 1. | Is the corporation incorporated within Massachusetts? | | ▶ | Yes | X No |
| 2. | Type of corporation ▶ | Section 38 manufacturer | Mutual fund service | | |
| 3. | Type of corporation ▶ | R&D | Classified manufacturing | RIC | REIT |
| 4. | Did the corporation or predecessor file Form 3F in 2008? | | ▶ | Yes | X No |
| 5. | Is the corporation filing a Massachusetts unitary return? | | ▶ | Yes | X No |
| 6. | Is the corporation an insurance mutual holding corporation? | | ▶ | Yes | X No |
| 7. | Is the corporation requesting alternate apportionment? | | ▶ | Yes | X No |
| 8. | Is this a final Massachusetts return? | | ▶ | Yes | X No |
| 9. | Principal business code | | | ▶ 9 | |
| 10. | FID of principal reporting corporation if answer to line 5 is Yes | | | ▶ 10 | |
| 11. | Average number of employees in Massachusetts | | | 11 | |
| 12. | Average number of employees worldwide | | | 12 | |
| 13. | Date of charter or first date of business in Massachusetts | | | 13 | |
| 14. | Last year audited by IRS | | | ▶ 14 | |
| 15. | Have adjustments been reported to Massachusetts? | | | Yes | No |
| 16. | Is the corporation deducting intangible or interest expenses paid to a related entity? | | ▶ | Yes | X No |
| 17. | Is the taxpayer enclosing a Taxpayer Disclosure Statement? | | ▶ | Yes | X No |
| 18. | Is the taxpayer claiming exemption from the income measure of the excise pursuant to PL 86-272? | | ▶ | Yes | X No |

**SIGN HERE.** Under penalties of perjury, I declare that to the best of my knowledge and belief this return and enclosures are true, correct and complete.

Signature of appropriate officer          Date

Title

Are you signing as an authorized delegate
of the appropriate officer of the corporation?
(see instructions)   Yes  **X** No

Print paid preparer's name
**Raimundo Lopez-Lima**   ▶

Paid preparer's phone
**305-774-2945**

Paid preparer's signature
**Raimundo Lopez-Lima**

Paid preparer's SSN or PTIN
**P65059862**

Paid preparer's EIN
**65-0846275**

Date
**03092011**       Check if self-employed

**PRIVACY ACT NOTICE AVAILABLE UPON REQUEST**

**Confidential - Attorneys' Eyes Only**          CSC 00149

# LOPEZ LEVI & ASSOCIATES, P.A., CPAS
## 201 Alhambra Cir Ste 501
## Coral Gables, FL 33134
## 305-774-2945

March 9, 2011

**CONFIDENTIAL**

COGNITEC SYSTEMS CORP
5201 BLUE LAGOON DR, SUITE 800
MIAMI, FL 33126-2064

Dear Client:

We have prepared the following returns from information provided by you without verification or audit:

> U.S. Corporation Income Tax Return (Form 1120)
> Information Return of a 25% Foreign-Owned U.S. Corporation (Form 5472)
> Florida Corporate Income/Franchise and Emergency Excise Tax Return (Form F-1120)
> Massachusetts Business or Manufacturing Corporation Excise Return (Form 355)

We suggest that you examine these returns carefully to fully acquaint yourself with all items contained therein to ensure that there are no omissions or misstatements. Attached are instructions for signing and filing each return. Please follow those instructions carefully.

We recommend that you use certified mail with postmarked receipts for proof of timely filing.

The following private delivery services have been designated by the IRS to meet the "timely mailing as timely filing/paying" rule for tax returns and payments.

> **Federal Express (FedEx):** FedEx Priority Overnight, FedEx Standard Overnight, FedEx 2Day, FedEx International Priority, and FedEx International First

> **United Parcel Service (UPS):** UPS Next Day Air, UPS Next Day Air Saver, UPS 2nd Day Air, UPS 2nd Day Air A.M., UPS Worldwide Express Plus, and UPS Worldwide Express

Your filing date will be the date received by the designated delivery service as recorded or marked by the delivery service. Services provided by other carriers and other services provided by FedEx, and UPS will be considered filed on the date received by the IRS.

The private delivery service can tell you how to get written proof of the mailing date. Please note that private delivery services cannot deliver items to P.O. boxes. You must use the U.S. Postal Service to mail any item to an IRS P.O. box address.

Also enclosed is any material you furnished for use in preparing the returns. If the returns are examined, requests may be made for supporting documentation. Therefore, we recommend that you retain all pertinent records for at least seven years.

Tax professionals, like all providers of personal financial services, are now required by law to inform their clients of their policies regarding privacy of client information. Our firm has been

**Confidential - Attorneys' Eyes Only**

and continues to be bound by professional standards of confidentiality that are even more stringent than those required by law. Therefore, we have always protected your right to privacy.

**Types of Nonpublic Personal Information We Collect**

We collect nonpublic personal information about you that is provided to us by you or obtained by us with your authorization.

**Parties to Whom We Disclose Information**

For current and former clients, we do not disclose any nonpublic personal information obtained in the course of our practice except as required or permitted by law. Permitted disclosures include, for instance, providing information to our employees, and in limited situations, to unrelated third parties who need to know that information to assist us in providing services to you. In all such situations, we stress the confidential nature of information being shared.

**Protecting the Confidentiality and Security of Current and Former Clients' Information**

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical, electronic, and procedural safeguards that comply with our professional standards.

In order that we may properly advise you of tax considerations, please keep us informed of any significant changes in your financial affairs or of any correspondence received from taxing authorities.

If you have any questions, or if we can be of assistance in any way, please call.

Sincerely,


LOPEZ LEVI & ASSOCIATES, P.A., CPAS

IRS CIRCULAR 230 DISCLOSURE REQUIREMENT: IRS Circular 230 requires us to notify you that any tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed by law.

**Confidential - Attorneys' Eyes Only**

# Filing Instructions

## COGNITEC SYSTEMS CORP

## Form 1120

### U.S. Corporation Income Tax Return

### Taxable Year Ended December 31, 2010

**Date Due:**      March 15, 2011

**Remittance:**   None is to be filed with Form 1120, but a payment in the amount of ▮▮▮▮▮▮
should be made by a method of Electronic Funds Transfer (EFT) at least 1
business day before the above date.  Contact the EFTPS Financial Agent of the
U.S. Treasury and direct the Agent to initiate a withdrawal from your account.

**Mail To:**       Department of the Treasury
Internal Revenue Service Center
Ogden, UT  84201-0012

**Signature:**    The return should be signed and dated by an authorized officer of the
corporation.

**Other:**         Initial and date the copy, and retain it for your records.

**Confidential - Attorneys' Eyes Only**                    CSC 00152

COGNITECSYS 03/09/2011 12:54 PM

Form **1120**
Department of the Treasury
Internal Revenue Service

## U.S. Corporation Income Tax Return

For calendar year 2010 or tax year beginning ............ , ending ........................

▶ See separate instructions.

OMB No. 1545-0123

**2010**

**A Check if:**
1a Consolidated return (attach Form 851) ....
b Life/nonlife consolidated return ....
2 Personal holding co. (attach Sch. PH) ....
3 Personal service corp. (see instructions) ....
4 Schedule M-3 attached ..

**Print or Type**

Name  Number, street, and room or suite no.  City or town, state, and ZIP code
If a P.O. box, see instructions.

COGNITEC SYSTEMS CORP

5201 BLUE LAGOON DR, SUITE 800

MIAMI                    FL 33126-2064

**B Employer identification number**

**C Date incorporated** 10/01/2003

**D Total assets (see instructions)** $ 2,152,754

**E Check if:** (1) [ ] Initial return  (2) [ ] Final return  (3) [ ] Name change  (4) [ ] Address change

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales | | 1c |
| | | b Less returns and allowances | c Bal ▶ | |
| | 2 | Cost of goods sold (Schedule A, line 8) | | 2 |
| | 3 | Gross profit. Subtract line 2 from line 1c | | 3 |
| | 4 | Dividends (Schedule C, line 19) | | 4 |
| | 5 | Interest | | 5 |
| | 6 | Gross rents | | 6 |
| | 7 | Gross royalties | | 7 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | | 8 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 9 |
| | 10 | Other income (see instructions – attach schedule)   See Stmt 1 | | 10 |
| | 11 | **Total income.** Add lines 3 through 10 ▶ | | 11 |
| **Deductions (See instructions for limitations on deductions.)** | 12 | Compensation of officers (Schedule E, line 4) ▶ | | 12 |
| | 13 | Salaries and wages (less employment credits) | | 13 |
| | 14 | Repairs and maintenance | | 14 |
| | 15 | Bad debts | | 15 |
| | 16 | Rents | | 16 |
| | 17 | Taxes and licenses | | 17 |
| | 18 | Interest | | 18 |
| | 19 | Charitable contributions   See Stmt 2 | | 19 |
| | 20 | Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | | 20 |
| | 21 | Depletion | | 21 |
| | 22 | Advertising | | 22 |
| | 23 | Pension, profit-sharing, etc., plans | | 23 |
| | 24 | Employee benefit programs | | 24 |
| | 25 | Domestic production activities deduction (attach Form 8903) | | 25 |
| | 26 | Other deductions (attach schedule)   See Stmt 3 | | 26 |
| | 27 | **Total deductions.** Add lines 12 through 26 ▶ | | 27 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 |
| | 29 | **Less: a** Net operating loss deduction (see instructions) | 29a | |
| | | **b** Special deductions (Schedule C, line 20) | 29b | 29c |
| **Tax, Refundable Credits, and Payments** | 30 | **Taxable income.** Subtract line 29c from line 28 (see instructions) | | 30 |
| | 31 | **Total tax** (Schedule J, line 10) | | 31 |
| | 32a | 2009 overpayment credited to 2010 | 32a | |
| | b | 2010 estimated tax payments | 32b | |
| | c | 2010 refund applied for on Form 4466 | 32c ( ) d Bal ▶ | 32d |
| | e | Tax deposited with Form 7004 | | 32e |
| | f | Credits: (1) Form 2439 (2) Form 4136 | | 32f |
| | g | Refundable credits from Form 3800, line 19c, and Form 8827, line 8c | | 32h |
| | 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ [ ] | | 33 |
| | 34 | **Amount owed.** If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | 34 |
| | 35 | **Overpayment.** If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | 35 |
| | 36 | Enter amount from line 35 you want: **Credited to 2011 estimated tax** ▶  Refunded ▶ | | 36 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

May the IRS discuss this return with the preparer shown below (see instructions)? [X] Yes [ ] No

Signature of officer _____ Date _____ Title _____

| **Paid Preparer Use Only** | Print/Type preparer's name Raimundo Lopez-Lima Levi, | Preparer's signature Raimundo Lopez-Lima Levi, | Date 03/09/11 | Check [ ] if self-employed | PTIN P65059862 |
|---|---|---|---|---|---|
| | Firm's name ▶ LOPEZ LEVI & ASSOCIATES, P.A., CPAS | | | Firm's EIN ▶ 65-0846275 | |
| | Firm's address ▶ 201 Alhambra Cir Ste 501 Coral Gables, FL      33134 | | | Phone no. 305-774-2945 | |

For Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1120** (2010)

**Confidential - Attorneys' Eyes Only**

CSC 00153

COGNITECSYS 03/09/2011 12:54 PM

**Florida Corporate Income/Franchise and Emergency Excise Tax Return**

FEIN ▓▓▓▓▓▓▓▓▓

CSOL
F-1120, R. 01/11
Rule 12C-1.051
Florida Administrative Code
Effective 01/11

For calendar year 2010 or tax year beginning _____ ending _____

| | |
|---|---|
| Name | COGNITEC SYSTEMS CORP |
| Address | |
| Address | 5201 BLUE LAGOON DR, SUITE 800 |
| City/State/ZIP | MIAMI          FL 33126-2064 |

☐ Check here if any changes have been made to name or address

**Computation of Florida Net Income and Emergency Excise Tax**

| | | | |
|---|---|---|---|
| 1. | Federal taxable income (see instructions) | Check here if negative ___ | ▓▓▓▓.00 |
| | **Attach pages 1-5 of federal return** | | |
| 2. | State income taxes deducted in computing federal taxable income (attach schedule) | Check here if negative ___ Stmt 1 | ▓▓▓▓.00 |
| 3. | Additions to federal taxable income (from Schedule I) | Check here if negative ___ | .00 |
| 4. | Total of Lines 1, 2 and 3. | Check here if negative ___ | ▓▓▓▓.00 |
| 5. | Subtractions from federal taxable income (from Schedule II) | Check here if negative ___ | 0.00 |
| 6. | Adjusted federal income (Line 4 minus Line 5) | Check here if negative ___ | ▓▓▓▓.00 |
| 7. | Florida portion of adjusted federal income (see instructions) | Check here if negative ___ | ▓▓▓▓.00 |
| 8. | Nonbusiness income allocated to Florida (from Schedule R) | Check here if negative ___ | 0.00 |
| 9. | **Florida exemption** | | ▓▓▓▓.00 |
| 10. | Florida net income (Line 7 plus Line 8 minus Line 9) | | ▓▓▓▓.00 |
| 11. | Tax due: 5.5% of Line 10 or amount from Schedule VI, whichever is greater (see instructions for Schedule VI) | | ▓▓▓▓.00 |
| 12. | Credits against the tax (from Schedule V) | | .00 |
| 13. | Emergency excise tax due (from Schedule A) | | 0.00 |
| 14. | Total corporate income/franchise and emergency excise tax due (see instructions). | | |
| 15. | a) Penalty: F-2220 _____ . b) Other _____ . | | |
| | c) Interest: F-2220 _____ . d) Other _____ . Line 15 Total ▶ | | .00 |
| 16. | Total of Lines 14 and 15 | | ▓▓▓▓.00 |
| 17. | Payment credits:   Estimated tax payments   17a $ 6,032 . | | |
| | Tentative tax payment   17b $ _____ Stmt 2 | | |
| 18. | Total amount due: Subtract Line 17 from Line 16. If positive, enter amount due here and on payment coupon | | |
| | If the amount is negative (overpayment), enter on Line 19 and/or Line 20 | | ▓▓▓▓.00 |
| 19. | Credit: Enter amount of overpayment **credited** to next year's estimated tax here and on payment coupon | | .00 |
| 20. | Refund: Enter amount of overpayment to be **refunded** here and on payment coupon | | .00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Florida Corporate Income Tax Return**

CSOL
F-1120
R. 01/11

**Do Not Detach**          YEAR ENDING **12/31/10**

To ensure proper credit to your account, enclose your check with tax return when mailing.

**Return is Due 1st Day of the 4th Month After Close of the Taxable Year**

Check here if you transmitted funds electronically ▶ ☐

| | |
|---|---|
| Name | COGNITEC SYSTEMS CORP |
| Address | |
| Address | 5201 BLUE LAGOON DR, SUITE 800 |
| City/State/ZIP | MIAMI          FL 33126-2064 |

| | | | |
|---|---|---|---|
| 200389387 | 0 | 0 | 0 |
| 20100101 | 0 | 0 | 0 |
| 20101231 | ▓▓▓▓ | 0 | 0 |
| 00000000 | . | 0 | |
| 001 | 0 | ▓▓▓▓ | 0 |
| 202 | 0 | ▓▓▓▓ | 0 |
| 26128000 | 0 | 0 | 0 |
| 1491600 | ▓▓▓▓ | 0 | ▓▓▓▓ |

674100                    ▓▓▓▓▓▓▓▓▓ 0002005031 ▓ ▓▓▓▓▓▓▓▓ 0000 1

**Confidential - Attorneys' Eyes Only**          CSC 00154

# Filing Instructions

## COGNITEC SYSTEMS CORP

### Estimated Tax Payments

### Taxable Year Ended December 31, 2011

**Instructions:** Your required estimated tax payments are shown below. Each payment should be made by a method of Electronic Funds Transfer (EFT) at least 1 business day before the dates below. Contact the EFTPS Financial Agent of the U.S. Treasury and direct the Agent to initiate a withdrawal from your account.

**Due Dates:**   4/18/11
6/15/11
9/15/11
12/15/11

**Remittances:**

**Other:** Reminders for the estimated federal tax installments will not be sent to you. Therefore you should establish your own reminder system for making timely deposits.

**Confidential - Attorneys' Eyes Only**          CSC 00155

COGNITECSYS 03/09/2011 12:54 PM

**Massachusetts**

## 355-ES    Corporation Estimated Tax Payment Voucher

(on bottom of page)

- - - - - - - - - - - - - - - - - - CUT HERE - - - - - - - - - - - - - - - - - - -



COGNITECSYS 03/02/2012 10:25 AM

1022

| | |
|---|---|
| Form M-8453C<br>Corporate Tax Declaration<br>for Electronic Filing | **2011**<br>Massachusetts<br>Department of<br>Revenue |

**Please print or type. Privacy Act Notice available upon request. For the year January 1–December 31, 2011.**

| Corporation name | | |
|---|---|---|
| COGNITEC SYSTEMS CORP | Declaration control number<br>1 2 –        –           – 2 | |
| Mailing address<br>5201 BLUE LAGOON DR, SUITE 800 | Federal Identification number<br>20-0389387 | |
| City/Town<br>MIAMI | State<br>FL | Zip<br>33126-2064 | Form filed   X  355   355U   355S   355SC |

### Part 1. Tax Return Information for Electronic Filing



| | | |
|---|---|---|
| 1 | Excise due before credits (from Form 355, line 6; Form 355U, line 24; Form 355S, line 9; or Form 355SC, line 7) | 1 |
| 2 | Total credits (from Form 355, line 7; Form 355U, lines 25 and 26; Form 355S, line 10; or Form 355SC, lines 8 through 14) | 2 |
| 3 | Excise due before voluntary contributions (from Form 355, line 11; Form 355U, line 27; Form 355S, line 14; or Form 355SC, line 17) | 3 |
| 4 | Overpayment amount (from Form 355, line 20; Form 355U, line 37; Form 355S, line 23; or Form 355SC, line 23) | 4 |
| 5 | Balance due (from Form 355, line 23; Form 355U, line 40; Form 355S, line 26; or Form 355SC, line 26) | 5 |

### Part 2. Declaration and Signature of Taxpayer

Under pains and penalties of perjury, I declare that I have reviewed the information on my return with the information I have provided to my Electronic Return Originator and that the amounts shown on my 2011 Massachusetts return. To the best of my knowledge and belief this information is true, correct and complete. I consent that my return, including this declaration and accompanying schedules, forms and statements be sent to the Massachusetts Department of Revenue by my Electronic Return Originator. I authorize DOR to inform my Electronic Return Originator and/or the transmitter when my electronic return has been accepted. In the event that it is rejected, I authorize DOR to identify the reasons for rejection so that the return can be corrected and re-transmitted. If I have filed a balance due return, I understand that if DOR does not receive full and timely payment of my tax liability, I will remain liable for the tax liability and all applicable penalties and interest.

| Your signature | | |
|---|---|---|
| *[signature]*  President – Alfredo Herrera | Date  06/08/2012 | |

### Part 3. Declaration and Signature of Electronic Return Originator (ERO)

I declare that I have reviewed the above taxpayer's return and that the entries on this M-8453C are complete and correct to the best of my knowledge. (Collectors are not responsible for reviewing the taxpayer's return; however, they must ensure that the M-8453C accurately reflects the data on the return.) I have obtained the taxpayer's signature before submitting this return to the Massachusetts Department of Revenue. I have provided the taxpayer with a copy of all forms and information filed with the Massachusetts Department of Revenue. If I am also the paid preparer, under pains and penalties of perjury I declare that I have examined the above taxpayer's return and accompanying schedules and statements and to the best of my knowledge and belief, they are true, correct and complete. I declare that I have verified the taxpayer's proof of account and it agrees with the name(s) shown on this form. This declaration of paid preparer (other than taxpayer) is based on all information of which the preparer has any knowledge. Original Forms M-8453C should not be sent to DOR, but must instead be retained by the ERO on the ERO's business premises for a period of three years from the date the return to which the M-8453C relates was filed.

| ERO's signature and SSN or PTIN | | Date | EIN | Check if<br>self-employed |
|---|---|---|---|---|
| Raimundo Lopez-Lima Levi, CPA | P65059862 | 03/02/12 | | |
| Firm name (or yours, if self-employed) and address<br>LOPEZ LEVI & ASSOCIATES, P.A., CPAS<br>201 Alhambra Cir Ste 501 | City/Town<br>Coral Gables | | State  Zip<br>FL  33134 | X  Check if also<br>paid preparer |

### Part 4. Declaration and Signature of Paid Preparer (if other than ERO)

Under pains and penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief it is true, correct and complete. This declaration of paid preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

| Paid preparer's signature and SSN or PTIN | | Date | EIN | Check if<br>self-employed |
|---|---|---|---|---|
| Firm name (or yours, if self-employed) and address | | City/Town | State  Zip | |

**Confidential - Attorneys' Eyes Only**            CSC 00157

Filing Instructions

**COGNITEC SYSTEMS CORP**

Form M-8453C - Corporate Tax Declaration for Electronic Filing

Taxable Year Ended December 31, 2011

**Date Due:**    March 15, 2012

**Remittance:**    None is to be made with the return, but a payment in the amount of ███████ should be made by a method of Electronic Funds Transfer (EFT). Refer to your Massachusetts EFT instructions for the proper method of payment.

**Signature:**    The form should be signed and dated by an authorized officer of the corporation and returned to:

LOPEZ LEVI & ASSOCIATES, P.A., CPAS
201 Alhambra Cir Ste 501
Coral Gables, FL 33134

**Other:**    Initial and date the copy, and retain it for your records.

Your return is being filed electronically with the Massachusetts Department of Revenue and is not required to be mailed. If you mail a paper copy of your return to the MDOR, it will delay processing of your return.

**Confidential - Attorneys' Eyes Only**            **CSC 00158**

**Filing Instructions**

**COGNITEC SYSTEMS CORP**

**TD F 90-22.1 - Report of Foreign Bank and Financial Accounts**

**2011 Calendar Year**

| | |
|---|---|
| **Date Due:** | June 30, 2012 |
| **Mail To:** | U.S. Department of the Treasury<br>P.O. Box 32621<br>Detroit, MI 48232-0621 |
| **Signature:** | The form should be signed and dated by an authorized officer of the corporation. |
| **Other:** | Initial and date the copy, and retain it for your records. |

**Confidential - Attorneys' Eyes Only**        **CSC 00159**

COGNITECSYS 02/17/2012 3:56 PM

## TD F 90-22.1

(Rev. January 2012)
Department of the Treasury
Do not use previous editions of this form

### REPORT OF FOREIGN BANK AND FINANCIAL ACCOUNTS

Do NOT file with your Federal Tax Return

OMB No. 1545-2038

1 This Report is for Calendar Year Ended 12/31

**2011**

Amended ☐

---

### Part I    Filer Information

2 Type of Filer

a ☐ Individual   b ☐ Partnership   c ☒ Corporation   d ☐ Consolidated   e ☐ Fiduciary or Other—Enter type _____

| 3 U.S. Taxpayer Identification Number | 4 Foreign Identification (Complete only if item 3 is not applicable.) | | 5 Individual's Date of Birth MMDD/YYYY |
|---|---|---|---|
| ▓▓▓▓▓▓▓ | a Type: ☐ Passport ☐ Other | | |
| If filer has no U.S. Identification Number complete Item 4. | b Number _____ | c Country of Issue: _____ | |

| 6 Last Name or Organization Name | 7 First Name | 8 Middle Initial |
|---|---|---|
| COGNITEC SYSTEMS CORP | | |

9 Address (Number, Street, and Apt, or Suite No.)

5201 BLUE LAGOON DR, SUITE 800

| 10 City | 11 State | 12 Zip/Postal Code | 13 Country |
|---|---|---|---|
| MIAMI | FL | 33126-2064 | USA |

14 Does the filer have a financial interest in 25 or more financial accounts?

☐ Yes    If "Yes" enter total number of accounts: _____

(If "Yes" is checked, do not complete Part II or Part III, but retain records of this information)

☒ No

---

### Part II    Information on Financial Account(s) Owned Separately

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below: |
|---|---|
| 17 Name of Financial Institution in which account is held | |

| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
|---|---|

| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |
|---|---|---|---|

### Signature

| 44 Filer Signature | 45 Filer Title, if not reporting a personal account | 46 Date (MM/DD/YYYY) |
|---|---|---|

---

**File this form with: U.S. Department of the Treasury, P.O. Box 32621, Detroit, MI 48232-0621**

This form should be used to report a financial interest in, signature authority, or other authority over one or more financial accounts in foreign countries, as required by the Department of the Treasury Regulations 31 CFR 1010.350 (formerly 31 CFR 103.24). No report is required if the aggregate value of the accounts did not exceed $10,000. **See Instructions For Definitions.**

### PRIVACY ACT AND PAPERWORK REDUCTION ACT NOTICE

Pursuant to the requirements of Public Law 93-579 (Privacy Act of 1974), notice is hereby given that the authority to collect information on TD F 90-22.1 in accordance with 5 USC 552a (e) is Public Law 91-508; 31 USC 5314; 5 USC 301; 31 CFR 1010.350 (formerly 31 CFR 103.24).

The principal purpose for collecting the information is to assure maintenance of reports where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings. The information collected may be provided to those officers and employees of any constituent unit of the Department of the Treasury who have a need for the records in the performance of their duties. The records may be referred to any other department or agency of the United States upon the request of the head of such department or agency for use in a criminal, tax, or regulatory investigation or proceeding. The info. collected may also be provided to appropriate state, local, and foreign law enforcement and regulatory personnel in the performance of their official duties. Disclosure of this info. is mandatory. Civil and criminal penalties, including in certain circumstances a fine of not more than $500,000 and imprisonment of not more than five years, are provided for failure to file a report, supply information, and for filing a false or fraudulent report. Disclosure of the Social Security number is mandatory. The authority to collect is 31 CFR 1010.350 (formerly 31 CFR 103.24). The Social Security number will be used as a means to identify the individual who files the report.

The estimated average burden associated with this collection of information is 75 minutes per respondent or record keeper, depending on individual circumstances. Comments regarding the accuracy of this burden estimate, and suggestions for reducing the burden should be directed to the Internal Revenue Service, Bank Secrecy Act Policy, 5000 Ellin Road C-3-242, Lanham MD 20706.

Apprv 271

Form **TD F 90-22.1** (Rev. 1-2012)

**Confidential - Attorneys' Eyes Only**                    CSC 00160

COGNITECSYS 02/17/2012 3:56 PM

| Part IV | Information on Financial Account(s) Where Filer has Signature Authority but No Financial Interest in the Account(s) | Form TD F 90-22.1 |
|---|---|---|
| | **Complete a Separate Block for Each Account** | Page Number |
| | This side can be copied as many times as necessary in order to provide information on all accounts. | 1 of 1 |

| 1 Filing for calendar year<br>2011 | 3-4 Check appropriate Identification Number<br>[X] Taxpayer Identification Number<br>[ ] Foreign Identification Number<br>Enter identification number here: | 6 Last Name or Organization Name<br><br>COGNITEC SYSTEMS CORP |

| 15 Maximum value of account during calendar year reported | 16 Type of account  a [X] Bank  b [ ] Securities  c [ ] Other—Enter type below |
|---|---|

| 17 Name of Financial Institution in which account is held<br>Dresdner Bank AG |||
|---|---|---|
| 18 Account number or other designation<br>2700406208570 | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held<br>Postfach ||
| 20 City<br>Berlin | 21 State, if known | 22 Zip/Postal Code, if known<br>10877 | 23 Country<br>Germany |
| 34 Last Name or Organization Name of Account Owner<br>COGNITEC SYSTEMS CORP. || 35 Taxpayer Identification Number of Account Owner |
| 36 First Name | 37 Middle initial | 38 Address (Number, Street, and Apt. or Suite No.)<br>5201 BLUE LAGOON DR. SUITE 800 |
| 39 City<br>MIAMI | 40 State<br>FL | 41 Zip/Postal Code<br>33126 | 42 Country<br>US |
| 43 Filer's Title with this Owner ||||

| 15 Maximum value of account during calendar year reported | 16 Type of account  a [X] Bank  b [ ] Securities  c [ ] Other—Enter type below |
|---|---|

| 17 Name of Financial Institution in which account is held<br>Dresdner Bank AG |||
|---|---|---|
| 18 Account number or other designation<br>2700406208500 | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held<br>Postfach ||
| 20 City<br>Berlin | 21 State, if known | 22 Zip/Postal Code, if known<br>10877 | 23 Country<br>Germany |
| 34 Last Name or Organization Name of Account Owner<br>COGNITEC SYSTEMS CORP. || 35 Taxpayer Identification Number of Account Owner |
| 36 First Name | 37 Middle initial | 38 Address (Number, Street, and Apt. or Suite No.)<br>5201 BLUE LAGOON DR. STE. 800 |
| 39 City<br>MIAMI | 40 State<br>FL | 41 Zip/Postal Code<br>33126 | 42 Country<br>US |
| 43 Filer's Title with this Owner ||||

| 15 Maximum value of account during calendar year reported | 16 Type of account  a [ ] Bank  b [ ] Securities  c [ ] Other—Enter type below |
|---|---|

| 17 Name of Financial Institution in which account is held |||
|---|---|---|
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held ||
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |
| 34 Last Name or Organization Name of Account Owner || 35 Taxpayer Identification Number of Account Owner |
| 36 First Name | 37 Middle initial | 38 Address (Number, Street, and Apt. or Suite No.) |
| 39 City | 40 State | 41 Zip/Postal Code | 42 Country |
| 43 Filer's Title with this Owner ||||

Form **TD F 90-22.1** (Rev. 1-2012)

Apprv 271

**Confidential - Attorneys' Eyes Only**        **CSC 00161**

**LOPEZ LEVI & ASSOCIATES, P.A., CPAS**
**201 Alhambra Cir Ste 501**
**Coral Gables, FL 33134**
**305-774-2945**

February 17, 2012

**CONFIDENTIAL**

COGNITEC SYSTEMS CORP
5201 BLUE LAGOON DR, SUITE 800
MIAMI, FL 33126-2064

Dear Client:

We have prepared the following returns from information provided by you without verification or audit:

> U.S. Corporation Income Tax Return (Form 1120)
> Information Return of a 25% Foreign-Owned U.S. Corporation (Form 5472)
> Florida Corporate Income/Franchise and Emergency Excise Tax Return (Form F-1120)

We suggest that you examine these returns carefully to fully acquaint yourself with all items contained therein to ensure that there are no omissions or misstatements. Attached are instructions for signing and filing each return. Please follow those instructions carefully.

Also enclosed is any material you furnished for use in preparing the returns. If the returns are examined, requests may be made for supporting documentation. Therefore, we recommend that you retain all pertinent records for at least seven years.

Tax professionals, like all providers of personal financial services, are now required by law to inform their clients of their policies regarding privacy of client information. Our firm has been and continues to be bound by professional standards of confidentiality that are even more stringent than those required by law. Therefore, we have always protected your right to privacy.

**Types of Nonpublic Personal Information We Collect**

We collect nonpublic personal information about you that is provided to us by you or obtained by us with your authorization.

**Parties to Whom We Disclose Information**

For current and former clients, we do not disclose any nonpublic personal information obtained in the course of our practice except as required or permitted by law. Permitted disclosures include, for instance, providing information to our employees, and in limited situations, to unrelated third parties who need to know that information to assist us in providing services to you. In all such situations, we stress the confidential nature of information being shared.

**Protecting the Confidentiality and Security of Current and Former Clients' Information**

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical,

**Confidential - Attorneys' Eyes Only**          **CSC 00162**

electronic, and procedural safeguards that comply with our professional standards.

In order that we may properly advise you of tax considerations, please keep us informed of any significant changes in your financial affairs or of any correspondence received from taxing authorities.

If you have any questions, or if we can be of assistance in any way, please call.

Sincerely,


LOPEZ LEVI & ASSOCIATES, P.A., CPAS

IRS CIRCULAR 230 DISCLOSURE REQUIREMENT: IRS Circular 230 requires us to notify you that any tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed by law.

**Confidential - Attorneys' Eyes Only**                    **CSC 00163**

## Filing Instructions

## COGNITEC SYSTEMS CORP

## Form 8453-C

## U.S. Corporation Income Tax Declaration for an IRS *e-file* Return

## Taxable Year Ended December 31, 2011

**Date Due:**      March 15, 2012

**Remittance:**   None is to be filed with Form 1120, but a payment in the amount of ▇▇▇▇ should be made by a method of Electronic Funds Transfer (EFT) at least 1 business day before the above date. Contact the EFTPS Financial Agent of the U.S. Treasury and direct the Agent to initiate a withdrawal from your account.

**Signature:**     The form should be signed and dated by an authorized officer of the corporation and returned to:

LOPEZ LEVI & ASSOCIATES, P.A., CPAS
201 Alhambra Cir Ste 501
Coral Gables, FL 33134

The form will be included as an attachment to the electronic file and therefore must be signed and returned before the electronic file is transmitted to the IRS.

**Other:**          Initial and date the copies of the Declaration for an IRS *e-file* Return and Form 1120, and retain them for your records.

Your return is being filed electronically with the IRS and is not required to be mailed. If you mail a paper copy of Form 1120 to the IRS it will delay processing of your return.

**Confidential - Attorneys' Eyes Only**          **CSC 00164**

COGNITECSYS 02/17/2012 3:56 PM

| Form **8453-C** | U.S. Corporation Income Tax Declaration for an IRS e-file Return | OMB No. 1545-1866 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | File electronically with the corporation's tax return. Do not file paper copies. For calendar year 2011, or tax year beginning _____, ending _____ | **2011** |

Name of corporation
**COGNITEC SYSTEMS CORP**

Employer identification number
███████████

### Part I  Tax Return Information (Whole dollars only)

| | | | |
|---|---|---|---|
| 1 | Total income (Form 1120, line 11) | **1** | ██████ |
| 2 | Taxable income (Form 1120, line 30) | **2** | ██████ |
| 3 | Total tax (Form 1120, line 31) | **3** | ██████ |
| 4 | Amount owed (Form 1120, line 34) | **4** | ██████ |
| 5 | Overpayment (Form 1120, line 35) | **5** | |

### Part II  Declaration of Officer (see instructions) Be sure to keep a copy of the corporation's tax return.

6a ☐ I consent that the corporation's refund be directly deposited as designated on the **Form 8050**, Direct Deposit of Corporate Tax Refund, that will be electronically transmitted with the corporation's 2011 federal income tax return.

b ☒ I do not want direct deposit of the corporation's refund or the corporation is not receiving a refund.

c ☐ I authorize the U.S. Treasury and its designated Financial Agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of the corporation's federal taxes owed on this return, and the financial institution to debit the entry to this account. To revoke a payment, I must contact the U.S. Treasury Financial Agent at **1-888-353-4537** no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment.

If the corporation is filing a balance due return, I understand that if the IRS does not receive full and timely payment of its tax liability, the corporation will remain liable for the tax liability and all applicable interest and penalties.

Under penalties of perjury, I declare that I am an officer of the above corporation and that the information I have given my electronic return originator (ERO), transmitter, and/or intermediate service provider (ISP) and the amounts in Part I above agree with the amounts on the corresponding lines of the corporation's 2011 federal income tax return. To the best of my knowledge and belief, the corporation's return is true, correct, and complete. I consent to my ERO, transmitter, and/or ISP sending the corporation's return, this declaration, and accompanying schedules and statements to the IRS. I also consent to the IRS sending my ERO, transmitter, and/or ISP an acknowledgment of receipt of transmission and an indication of whether or not the corporation's return is accepted, and, if rejected, the reason(s) for the rejection. If the processing of the corporation's return or refund is delayed, I authorize the IRS to disclose to my ERO, transmitter, and/or ISP the reason(s) for the delay, or when the refund was sent.

**Sign Here** ▶ Signature of officer  ANDREAS JEGLINSKY    Date _____    Title  PRESIDENT

### Part III  Declaration of Electronic Return Originator (ERO) and Paid Preparer (see instructions)

I declare that I have reviewed the above corporation's return and that the entries on Form 8453-C are complete and correct to the best of my knowledge. If I am only a collector, I am not responsible for reviewing the return and only declare that this form accurately reflects the data on the return. The corporate officer will have signed this form before I submit the return. I will give the officer a copy of all forms and information to be filed with the IRS, and have followed all other requirements in Pub. 3112, IRS e-file Application and Participation, and Pub. 4163, Modernized e-File (MeF) Information for Authorized IRS e-file Providers for Business Returns. If I am also the Paid Preparer, under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. This Paid Preparer declaration is based on all information of which I have any knowledge.

| ERO's Use Only | ERO's signature ▶ Raimundo Lopez-Lima Levi, CPA | Date 02/17/12 | Check if also paid preparer ☒ | Check if self-employed ☒ | ERO's SSN or PTIN P65059862 |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ LOPEZ LEVI & ASSOCIATES, P.A., CPAS  201 Alhambra Cir Ste 501  Coral Gables        FL 33134 | | | EIN 65-0846275 | Phone no. 305-774-2945 |

Under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. This declaration is based on all information of which I have any knowledge.

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.

Form **8453-C** (2011)

DAA

**Confidential - Attorneys' Eyes Only**         CSC 00165

COGNITECSYS 02/17/2012 3:56 PM

**Form 1120**
Department of the Treasury
Internal Revenue Service

## U.S. Corporation Income Tax Return

For calendar year 2011 or tax year beginning _____ , ending _____
► See separate instructions.

OMB No. 1545-0123

**2011**

| A Check if: | | |
|---|---|---|
| 1a Consolidated return (attach Form 851) | | ☐ |
| b Life/nonlife consolidated return | | ☐ |
| 2 Personal holding co. (attach Sch. PH) | | ☐ |
| 3 Personal service corp. (see instructions) | | ☐ |
| 4 Schedule M-3 attached | | ☐ |

**TYPE OR PRINT**

Name. Number, street, and room or suite no. City or town, state, and ZIP code. If a P.O. box, see instructions.

COGNITEC SYSTEMS CORP
5201 BLUE LAGOON DR, SUITE 800
MIAMI                    FL 33126-2064

B Employer identification number

C Date incorporated
10/01/2003

D Total assets (see instructions)
$

E Check if: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change

| | | | | |
|---|---|---|---|---|
| **1a** Merchant card and third-party payments. For 2011, enter -0- | | **1a** | 0 | |
| **b** Gross receipts or sales not reported on line 1a (see instructions) | | **1b** | ▓▓▓ | |
| **c** Total. Add lines 1a and 1b | | **1c** | ▓▓▓ | |
| **d** Returns and allowances plus any other adjustments (see instructions) | | **1d** | | |

**Income**

| | | | |
|---|---|---|---|
| **1e** Subtract line 1d from line 1c | | **1e** | ▓▓▓ |
| **2** Cost of goods sold from Form 1125-A, line 8 (attach Form 1125-A) | | **2** | ▓▓▓ |
| **3** Gross profit. Subtract line 2 from line 1e | | **3** | ▓▓▓ |
| **4** Dividends (Schedule C, line 19) | | **4** | |
| **5** Interest | | **5** | ▓▓▓ |
| **6** Gross rents | | **6** | |
| **7** Gross royalties | | **7** | |
| **8** Capital gain net income (attach Schedule D (Form 1120)) | | **8** | |
| **9** Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | **9** | |
| **10** Other income (see instructions – attach schedule) | See Stmt 1 | **10** | ▓▓▓ |
| **11** Total income. Add lines 3 through 10 | ► | **11** | ▓▓▓ |

**Deductions (See instructions for limitations on deductions)**

| | | | |
|---|---|---|---|
| **12** Compensation of officers from Form 1125-E, line 4 (attach Form 1125-E) | ► | **12** | |
| **13** Salaries and wages (less employment credits) | | **13** | ▓▓▓ |
| **14** Repairs and maintenance | | **14** | ▓▓▓ |
| **15** Bad debts | | **15** | |
| **16** Rents | | **16** | ▓▓▓ |
| **17** Taxes and licenses | | **17** | ▓▓▓ |
| **18** Interest | | **18** | |
| **19** Charitable contributions | | **19** | |
| **20** Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | **20** | ▓▓▓ |
| **21** Depletion | | **21** | |
| **22** Advertising | | **22** | |
| **23** Pension, profit-sharing, etc., plans | | **23** | |
| **24** Employee benefit programs | | **24** | |
| **25** Domestic production activities deduction (attach Form 8903) | | **25** | |
| **26** Other deductions (attach schedule) | See Stmt 2 | **26** | ▓▓▓ |
| **27** Total deductions. Add lines 12 through 26 | ► | **27** | ▓▓▓ |
| **28** Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | **28** | ▓▓▓ |
| **29a** Net operating loss deduction (see instructions) | **29a** | | |
| **b** Special deductions (Schedule C, line 20) | **29b** | | |
| **c** Add lines 29a and 29b | | **29c** | |

**Tax, Refundable Credits, and Payments**

| | | | |
|---|---|---|---|
| **30** Taxable income. Subtract line 29c from line 28 (see instructions) | | **30** | ▓▓▓ |
| **31** Total tax (Schedule J, Part I, line 11) | | **31** | ▓▓▓ |
| **32** Total payments and refundable credits (Schedule J, Part II, line 21) | | **32** | |
| **33** Estimated tax penalty (see instructions). Check if Form 2220 is attached ► ☒ | | **33** | ▓▓▓ |
| **34** Amount owed. If line 32 is smaller than the total of lines 31 and 33, enter amount owed | | **34** | |
| **35** Overpayment. If line 32 is larger than the total of lines 31 and 33, enter amount overpaid | | **35** | |
| **36** Enter amount from line 35 you want: Credited to 2012 estimated tax ►_____ Refunded ► | | **36** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer: ANDREAS JEGLINSKY

Date: _____

Title: PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | |
|---|---|
| Print/Type preparer's name | Raimundo Lopez-Lima Levi, |
| Preparer's signature | Raimundo Lopez-Lima Levi, CPAS |
| Date | 02/17/12 |
| Check ☐ if self-employed | |
| PTIN | P65059862 |
| Firm's name ► | LOPEZ LEVI & ASSOCIATES, P.A., |
| Firm's EIN ► | 65-0846275 |
| Firm's address ► | 201 Alhambra Cir Ste 501  Coral Gables, FL  33134 |
| Phone no. | 305-774-2945 |

For Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1120** (2011)

**Confidential - Attorneys' Eyes Only**

CSC 00166

Welcome To EFTPS - Payments                                             Page 1 of 1

TAXPAYER NAME: COGNITEC SYSTEMS US CORPORATION          TIN: xxxxx9387

## Deposit Confirmation

**Your payment has been accepted.**

### Payment Successful

An EFT Acknowledgement Number has been provided for this payment. Please keep this number for your records.

### REMINDER: REMEMBER TO FILE ALL RETURNS WHEN DUE!

| EFT ACKNOWLEDGEMENT NUMBER: | 270159495246846 |
|---|---|

| Payment Information | Entered Data |
|---|---|
| Taxpayer EIN | ▨▨▨▨▨▨ |
| Tax Form | 1120 Corporation Income Tax Return |
| Tax Type | Federal Tax Deposit |
| Tax Period | Not Required/2011 |
| Payment Amount | ▨▨▨▨▨▨ |
| Settlement Date | 07/13/2011 |

https://www.eftps.gov/eftps/payments/payment-confirmation-flow?execution=e2s2          7/12/2011

**Confidential - Attorneys' Eyes Only**                    CSC 00167

**Internal Revenue Service**
**Small Business and Self-Employed**

**Department of the Treasury**
51 SW 1st Ave
Stop 4428-FI
Miami FL 33130

Cognitec Systems US Corporation
5201 Blue Lagoon Dr
Miami FL 33126

**Date:**
October 13, 2011
**Taxpayer Identification Number:**
█████████

**Form:**
1120
**Tax Period(s) Ended:**
200912

**Person to Contact:**
F. Imam

**Contact Telephone Number:**
305-982-5092
**Employee Identification Number:**
0857743

Dear Cognitec Systems US Corporation:

I have completed the examination of your tax return for the year(s) shown above. I am pleased to inform you I'm proposing no change to your tax return. As indicated in the enclosed Form 4549, *Income Tax Examination Changes*, or 4549-A, *Income Tax Discrepancy Adjustments (Examination No Change Report)*, my findings are subject to the Area Director's approval. We will send you a final letter when we finish processing your file.

If you have any questions, please call or write me at the telephone number or address shown above. If you write, please include your telephone number, the best time for me to call in case I need to contact you, and a copy of this letter.

Thank you for your cooperation.

Sincerely yours,

F. Imam
Revenue Agent

Enclosures:
Form 4549 or 4549-A

**Letter 3401 (Rev. 7-2009)**
Catalog Number 30903E

**Confidential - Attorneys' Eyes Only**          **CSC 00168**

**Filing  Instructions**

**COGNITEC SYSTEMS CORP**

**Form F-1120 – Income/Franchise Tax Return**

**Taxable Year Ended December 31, 2012**

| | |
|---|---|
| **Date Due:** | October 1, 2013 |
| **Remittance:** | None is required. There is a total overpayment of ▓▓▓▓, which is to be refunded in its entirety. |
| **Other:** | Initial and date the copy, and retain it for your records. |
| | Every business entity with active status is required to file an annual report each year with the Department of State, Division of Corporations to maintain active status. The annual report may be filed online using the Division's website, www.Sunbiz.org. |
| | Your return is being filed electronically with the Florida Department of Revenue and is not required to be mailed. If you mail a paper copy of your return, it will delay processing of your return. |

**Confidential - Attorneys' Eyes Only**

CSC 00169

**Filing Instructions**

**COGNITEC SYSTEMS CORP**

**Estimated Tax Payments**

**Taxable Year Ended December 31, 2012**

**Instructions:** Your required estimated tax payments are shown below. Each payment should be made by a method of Electronic Funds Transfer (EFT) at least 1 business day before the dates below. Contact the EFTPS Financial Agent of the U.S. Treasury and direct the Agent to initiate a withdrawal from your account.

**Due Dates:** 4/17/12
6/15/12
9/17/12
12/17/12

**Remittances:**

**Other:** Reminders for the estimated federal tax installments will not be sent to you. Therefore you should establish your own reminder system for making timely deposits.

**Confidential - Attorneys' Eyes Only**                    **CSC 00170**

Filing Instructions

COGNITEC SYSTEMS CORP

Form(s) 355-ES - Estimated Tax Payments

Taxable Year Ended December 31, 2012

**Instructions:**  Your required estimated tax payments are shown below.  Each payment should be made by a method of Electronic Funds Transfer (EFT).  Refer to your Massachusetts EFT instructions for the proper method of payment.

**Due Dates:**   3/15/12
6/15/12
9/17/12
12/17/12

**Remittances:**

**Other:**   Reminders for estimated tax installments will not be sent to you.  Therefore you should establish your own reminder system for making timely deposits.

**Confidential - Attorneys' Eyes Only**                    CSC 00171

COGNITECSYS 05/09/2013 2:40 PM

**Florida Corporate Income/Franchise Tax Return**

FEIN ▉▉▉▉▉▉

CSOL
F-1120, R. 01/13
Rule 12C-1.051
Florida Administrative Code
Effective 01/13

For calendar year 2012 or tax year beginning _____ ending _____

83250201212310002005037732003893870001

| Name | COGNITEC SYSTEMS CORP |
|---|---|
| Address | |
| Address | 5201 BLUE LAGOON DR, SUITE 800 |
| City/State/ZIP | MIAMI          FL 33126-2064 |

**Computation of Florida Net Income and Emergency Excise Tax**        ☐ Check here if any changes have been made to name or address

| | | | |
|---|---|---|---|
| 1. | Federal taxable income (see instructions) | | |
| | Attach pages 1-5 of federal return | Check here if negative  **X** | ▉▉▉ .00 |
| 2. | State income taxes deducted in computing federal taxable income | | |
| | (attach schedule) | Check here if negative  ___ | .00 |
| 3. | Additions to federal taxable income (from Schedule I) | Check here if negative  ___ | ▉▉ 0 |
| 4. | Total of Lines 1, 2 and 3. | Check here if negative  **X** | ▉▉▉▉ |
| 5. | Subtractions from federal taxable income (from Schedule II) | Check here if negative  ___ | ▉▉▉▉ |
| 6. | Adjusted federal income (Line 4 minus Line 5) | Check here if negative  **X** | ▉▉▉ |
| 7. | Florida portion of adjusted federal income (see instructions) | Check here if negative  **X** | ▉▉▉ |
| 8. | Nonbusiness income allocated to Florida (from Schedule R) | Check here if negative  ___ | 0.00 |
| 9. | Florida exemption | | 0.00 |
| 10. | Florida net income (Line 7 plus Line 8 minus Line 9) | | 0.00 |
| 11. | Tax due: 5.5% of Line 10 or amount from Schedule VI, whichever is greater | | |
| | (see instructions for Schedule VI) | | 0.00 |
| 12. | Credits against the tax (from Schedule V) | | .00 |
| 13. | Total corporate income/franchise tax due (Line 11 minus Line 12) | | 0.00 |
| 14. a) | Penalty: F-2220 _____ . b) Other _____ . | | |
| c) | Interest: F-2220 _____ . d) Other _____ . Line 14 Total ▶ | | .00 |
| 15. | Total of Lines 13 and 14 | | 0.00 |
| 16. | Payment credits:   Estimated tax payments   16a $ ▉▉▉▉ | | |
| | Tentative tax payment   16b $ ▉▉▉         Stmt 1 | | ▉▉▉▉ |
| 17. | Total amount due: Subtract Line 16 from Line 15. If positive, enter amount due here and on payment coupon | | |
| | If the amount is negative (overpayment), enter on Line 18 and/or Line 19 | | .00 |
| 18. | Credit: Enter amount of overpayment credited to next year's estimated tax here and on payment coupon | | .00 |
| 19. | Refund: Enter amount of overpayment to be refunded here and on payment coupon | | ▉▉▉ |

---

**Florida Corporate Income Tax Return**

CSOL
F-1120
R. 01/13

**Do Not Detach**          YEAR ENDING  **12/31/12**

To ensure proper credit to your account, enclose your check with tax return when mailing.

Return is Due 1st Day of the 4th Month After Close of the Taxable Year

Check here if you transmitted funds electronically  ▶ ☐

| Name | COGNITEC SYSTEMS CORP |
|---|---|
| Address | |
| Address | 5201 BLUE LAGOON DR, SUITE 800 |
| City/State/ZIP | MIAMI          FL 33126-2064 |

| | | | |
|---|---|---|---|
| ▉▉▉▉ | ▉▉▉ | 0 | ▉▉▉▉ |
| | | 0 | |
| | | 0 | 0 |
| ▉▉▉▉ | | 0 | 0 |
| | 0 | | 0 |
| ▉▉▉ | 0 | ▉▉▉ | 0 |
| 0 | 0 | 0 | 0 |

0          8325 0 20121231 0002005037 7 3200389387 0000 1

**Confidential - Attorneys' Eyes Only**          CSC 00172

COGNITECSYS 05/09/2013 2:40 PM

COGNITEC SYSTEMS CORP

FEIN ▆▆▆▆▆▆

CSOL
F-1120
R. 01/13
Page 2

**This return is considered incomplete unless a copy of the federal return is attached.**

If your return is not signed, or improperly signed and verified, it will be subject to a penalty. The statute of limitations will not start until your return is properly signed and verified. Your return must be completed in its entirety.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

**Sign here** — Signature of officer (must be an original signature) — Title ▶ **PRESIDENT**

**Paid preparers only**

Preparer's signature ▶ **Raimundo Lopez-Lima Levi, CPA**  Date **05/09/13**

Preparer check if self-employed ☐   Preparer's PTIN ▶ **P65059862**

Firm's name (or yours if self-employed) and address ▶ **LOPEZ LEVI & ASSOCIATES, P.A., CPAS**
**201 Alhambra Cir Ste 501**
**Coral Gables         FL**

FEIN ▶ ▆▆▆▆▆▆
ZIP ▶ **33134**

**All Taxpayers Must Answer Questions A Through M Below. — See Instructions.**

A. State of incorporation: **FL**

B. Florida Secretary of State document number: **F08000002315**

C. Florida consolidated return? YES ☐ NO ☒

D. ☐ Initial return    ☐ Final return (final federal return filed)

E. Taxpayer election section (s.) 220.03(5), Florida Statutes (F.S.) ☒ General Rule
   ☐ Election A    ☐ Election B

F. Principal Business Activity Code (as pertains to Florida)
   **541519**

G. A Florida extension of time was timely filed? YES ☒ NO ☐

H-1. Corporation is a member of a controlled group? YES ☐ NO ☒ If yes, attach list.

H-2. Part of a federal consolidated return? YES ☐ NO ☒ If yes, provide:
   FEIN from federal consolidated return: _____
   Name of corporation: _____

H-3. The federal common parent has sales, property, or payroll in Florida? YES ☐ NO ☐

I. Location of corporate books:
   **5201 BLUE LAGOON DR, SUITE 800**
   City: **MIAMI**    State: **FL**
   ZIP: **33126-2064**

J. Taxpayer is a member of a Florida partnership or joint venture? YES ☐ NO ☒

K. Enter date of latest IRS audit:
   a) List years examined: _____

L. Contact person concerning this return: **R. Lopez-Lima Levi, CPA**
   a) Contact person telephone number: **305-774-2945**

M. Type of federal return filed ☒ 1120    ☐ 1120S or _____

**Where to Send Payments and Returns**

Make check payable to and mail with return to:
   Florida Department of Revenue
   5050 W Tennessee Street
   Tallahassee FL 32399-0135

If you are requesting a **refund** (Line 19), send your return to:
   Florida Department of Revenue
   PO Box 6440
   Tallahassee FL 32314-6440

**Remember:**

✓ Make your check payable to the Florida Department of Revenue.

✓ Write your FEIN on your check.

✓ Sign your check and return.

✓ Attach a copy of your federal return.

✓ Attach a copy of your Florida Form F-7004 (extension of time) if applicable.

**Confidential - Attorneys' Eyes Only**          CSC 00173

Filing Instructions

## COGNITEC SYSTEMS CORP

### Form M-8453 C - Corporate Tax Declaration for Electronic Filing

### Taxable Year Ended December 31, 2012

**Date Due:**    AS SOON AS POSSIBLE

**Remittance:**    None is to be made with the return, but a payment in the amount of █████ should be made by a method of Electronic Funds Transfer (EFT). Refer to your Massachusetts EFT instructions for the proper method of payment.

**Signature:**    The form should be signed and dated by an authorized officer of the corporation and returned to:

LOPEZ LEVI & ASSOCIATES, P.A., CPAS
201 Alhambra Cir Ste 501
Coral Gables, FL 33134

**Other:**    Initial and date the copy, and retain it for your records.

Your return is being filed electronically with the Massachusetts Department of Revenue and is not required to be mailed. If you mail a paper copy of your return to the MDOR, it will delay processing of your return.

**Confidential - Attorneys' Eyes Only**

COGNITECSYS 05/09/2013 2:40 PM

1022

| | | |
|---|---|---|
| | Form M-8453C<br>Corporate Tax Declaration<br>for Electronic Filing | **2012**<br>Massachusetts<br>Department of<br>Revenue |

**Please print or type. Privacy Act Notice available upon request. For the year January 1–December 31, 2012.**

| Corporation name | Declaration control number |
|---|---|
| **COGNITEC SYSTEMS CORP** | 0 0 –    –    – 3 |

| Mailing address | Federal Identification number |
|---|---|
| **5201 BLUE LAGOON DR, SUITE 800** | ███████████ |

| City/Town | State | Zip | Form filed: ☒ 355  ☐ 355U  ☐ 355S  ☐ 355SC |
|---|---|---|---|
| **MIAMI** | **FL 33126-2064** | | |

**Part 1. Tax Return Information for Electronic Filing**

1. Excise due before credits (from Form 355, line 6; Form 355U, line 24; Form 355S, line 9; or Form 355SC, line 7) .... **1** ████
2. Total credits (from Form 355, line 7; Form 355U, lines 25 and 26; Form 355S, line 10; or Form 355SC, lines 8 through 14) ......... **2** 
3. Excise due before voluntary contributions (from Form 355, line 11; Form 355U, line 27; Form 355S, line 14; or Form 355SC, line 17) ...... **3** ████
4. Overpayment amount (from Form 355, line 20; Form 355U, line 37; Form 355S, line 23; or Form 355SC, line 23) .... **4** 
5. Balance due (from Form 355, line 23; Form 355U, line 40; Form 355S, line 26; or Form 355SC, line 26) ............ **5** ████

**Part 2. Declaration and Signature of Taxpayer**

Under pains and penalties of perjury, I declare that I have reviewed the information on my return with the information I have provided to my Electronic Return Originator and that the amounts above agree with the amounts shown on my 2012 Massachusetts return. To the best of my knowledge and belief this information is true, correct and complete. I consent that my return, including this declaration and accompanying schedules, forms and statements be sent to the Massachusetts Department of Revenue by my Electronic Return Originator. I authorize DOR to inform my Electronic Return Originator and/or the transmitter when my electronic return has been accepted. In the event that it is rejected, I authorize DOR to identify the reasons for rejection so that the return can be corrected and re-transmitted. If I have filed a balance due return, I understand that if DOR does not receive full and timely payment of my tax liability, I will remain liable for the tax liability and all applicable penalties and interest.

| Your signature | Date |
|---|---|
| _signature_ | 05 / 29 / 13 |

**Part 3. Declaration and Signature of Electronic Return Originator (ERO)**

I declare that I have reviewed the above taxpayer's return and that the entries on this M-8453C are complete and correct to the best of my knowledge. (Collectors are not responsible for reviewing the taxpayer's return; however, they must ensure that the M-8453C accurately reflects the data on the return.) I have obtained the taxpayer's signature before submitting this return to the Massachusetts Department of Revenue. I have provided the taxpayer with a copy of all forms and information filed with the Massachusetts Department of Revenue. If I am also the paid preparer, under pains and penalties of perjury I declare that I have examined the above taxpayer's return and accompanying schedules and statements and to the best of my knowledge and belief, they are true, correct and complete. I declare that I have verified the taxpayer's proof of account and it agrees with the name(s) shown on this form. This declaration of paid preparer (other than taxpayer) is based on all information of which the preparer has any knowledge. Original Forms M-8453C should not be sent to DOR, but must instead be retained by the ERO on the ERO's business premises for a period of three years from the date the return to which the M-8453C relates was filed.

| ERO's signature and SSN or PTIN | | Date | EIN | ☐ Check if self-employed |
|---|---|---|---|---|
| **Raimundo Lopez-Lima Levi, CPA** | P65059862 | 05/09/13 | 65-0846275 | |

| Firm name (or yours, if self-employed) and address | City/Town | State | Zip | ☒ Check if also paid preparer |
|---|---|---|---|---|
| **LOPEZ LEVI & ASSOCIATES, P.A., CPAS**<br>**201 Alhambra Cir Ste 501** | Coral Gables | FL | 33134 | |

**Part 4. Declaration and Signature of Paid Preparer (if other than ERO)**

Under pains and penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief it is true, correct and complete. This declaration of paid preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

| Paid preparer's signature and SSN or PTIN | Date | EIN | ☐ Check if self-employed |
|---|---|---|---|
| | | | |

| Firm name (or yours, if self-employed) and address | City/Town | State | Zip |
|---|---|---|---|
| | | | |

**Confidential - Attorneys' Eyes Only**          **CSC 00175**

COGNITECSYS 05/09/2013 2:40 PM

 

**2012 Form 355** MA1239711022
Business or Manufacturing Corporation Excise Return

Year beginning 01012012 Ending 12312012

COGNITEC SYSTEMS CORP
5201 BLUE LAGOON DR, SUI MIAMI          FL 331262064
350 Lincoln St, Ste 2400 Hingham        MA 02043

| | | | | |
|---|---|---|---|---|
| 1. | Is the corporation incorporated within Massachusetts? | ► | Yes | X No |
| 2. | Type of corporation ►   Section 38 manufacturer   Mutual fund service | | | |
| 3. | Type of corporation ►   R&D   Classified manufacturing   RIC   REIT | | | |
| 4. | Is the corporation filing a Massachusetts unitary return? | ► | Yes | X No |
| 5. | Is the corporation's tax year different from the 355U? | ► | Yes | No |
| 6. | Is the corporation an insurance mutual holding corporation? | ► | Yes | X No |
| 7. | Is the corporation requesting alternate apportionment? | ► | Yes | X No |
| 8. | Is this a final Massachusetts return? | ► | Yes | X No |
| 9. | Principal business code | | ►9 | |
| 10. | FID of principal reporting corporation if answer to line 4 is Yes | | ►10 | |
| 11. | Average number of employees in Massachusetts | | 11 | |
| 12. | Average number of employees worldwide | | 12 | |
| 13. | Date of charter or first date of business in Massachusetts | | 13 | |
| 14. | Last year audited by IRS | | ►14 | |
| 15. | Have adjustments been reported to Massachusetts? | | Yes | No |
| 16. | Is the corporation deducting intangible or interest expenses paid to a related entity? | ► | Yes | X No |
| 17. | Is the taxpayer enclosing a Taxpayer Disclosure Statement? | ► | Yes | X No |
| 18. | Is the taxpayer claiming exemption from the income measure of the excise pursuant to PL 86-272? | ► | Yes | X No |

SIGN HERE. Under penalties of perjury, I declare that to the best of my knowledge and belief this return and enclosures are true, correct and complete.

| Signature of appropriate officer | Date | Print paid preparer's name | Paid preparer's SSN or PTIN |
|---|---|---|---|
| | | Raimundo Lopez-Lima ► | P65059862 |

Title
PRESIDENT

Paid preparer's phone
305-774-2945

Paid preparer's EIN
65-0846275

Are you signing as an authorized delegate
of the appropriate officer of the corporation?
(see instructions)   Yes  X  No

Paid preparer's signature
Raimundo Lopez-Lima

Date
05092013

Check if self-employed

PRIVACY ACT NOTICE AVAILABLE UPON REQUEST

05/08/2013 14:40:31                    2D Barcode Version 1

**Confidential - Attorneys' Eyes Only**                    CSC 00176

Filing  Instructions

COGNITEC SYSTEMS CORP

Form  8879-C

U.S. Corporation Income Tax Declaration for an IRS *e-file* Return
with Electronic Filing Personal Identification Number

Taxable Year Ended December 31, 2012

| | |
|---|---|
| **Date Due:** | September 16, 2013 |
| **Remittance:** | None is required. No amount is due or overpaid. |
| **Signature:** | You are using the Personal Identification Number (PIN) for signing your return electronically.  The IRS *e-file* Signature Authorization form should be signed and dated by an authorized officer of the corporation and returned to: |
| | LOPEZ LEVI & ASSOCIATES, P.A., CPAS<br>201 Alhambra Cir Ste 501<br>Coral Gables, FL 33134 |
| | ***Important:* Your return will not be filed with the IRS until the signed IRS *e-file* Signature Authorization form has been received by this office.** |
| **Other:** | Initial and date the copies of the IRS *e-file* Signature Authorization and Form 1120, and retain them for your records. |
| | Your return is being filed electronically with the IRS and is not required to be mailed.  If you mail a paper copy of Form 1120 to the IRS it will delay processing of your return. |

**Confidential - Attorneys' Eyes Only**

CSC 00177

COGNITECSYS 05/09/2013 2:40 PM

| Form **8879-C** | IRS e-file Signature Authorization for Form 1120 | OMB No. 1545-1864 |
|---|---|---|
| | For calendar year 2012, or tax year beginning _____ , ending _____ . | **2012** |
| Department of the Treasury Internal Revenue Service | ► Do not send to the IRS. Keep for your records. ► Information about Form 8879-C and its instructions is at www.irs.gov/form1120. | |

| Name of corporation | Employer identification number |
|---|---|
| COGNITEC SYSTEMS CORP | 20-0389387 |

**Part I    Tax Return Information (Whole dollars only)**

| | | | |
|---|---|---|---|
| 1 | Total income (Form 1120, line 11) | 1 | |
| 2 | Taxable income (Form 1120, line 30) | 2 | |
| 3 | Total tax (Form 1120, line 31) | 3 | 0 |
| 4 | Amount owed (Form 1120, line 34) | 4 | |
| 5 | Overpayment (Form 1120, line 35) | 5 | |

**Part II    Declaration and Signature Authorization of Officer (Be sure to get a copy of the corporation's return)**

Under penalties of perjury, I declare that I am an officer of the above corporation and that I have examined a copy of the corporation's 2012 electronic income tax return and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the corporation's electronic income tax return. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the corporation's return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) the reason for any delay in processing the return or refund, and (c) the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of the corporation's federal taxes owed on this return, and the financial institution to debit the entry to this account. To revoke a payment, I must contact the U.S. Treasury Financial Agent at **1-888-353-4537** no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I have selected a personal identification number (PIN) as my signature for the corporation's electronic income tax return and, if applicable, the corporation's consent to electronic funds withdrawal.

Officer's PIN: check one box only

[X] I authorize **LOPEZ LEVI & ASSOCIATES, P.A., CPAS** to enter my PIN [▮▮▮▮] as my signature
   ERO firm name                          do not enter all zeros
on the corporation's 2012 electronically filed income tax return.

[ ] As an officer of the corporation, I will enter my PIN as my signature on the corporation's 2012 electronically filed income tax return.

Officer's signature ►  ~~ANDREAS JECZENSKY~~ Alfredo Herrera    Date ► 05/29/13    Title ► PRESIDENT

**Part III    Certification and Authentication**

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN.    | 60094046275 |
                                                                                              do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2012 electronically filed income tax return for the corporation indicated above. I confirm that I am submitting this return in accordance with the requirements of Pub. 3112, IRS e-file Application and Participation, and Pub. 4163, Modernized e-File (MeF) Information for Authorized IRS e-file Providers for Business Returns.

ERO's signature ►  **Raimundo Lopez-Lima Levi, CPA**    Date ► 05/09/13

**ERO Must Retain This Form — See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

For Paperwork Reduction Act Notice, see instructions.                                    Form **8879-C** (2012)

DAA

**Confidential - Attorneys' Eyes Only**                    CSC 00178

COGNITECSYS 05/09/2013 2:40 PM

| Form **1120** | | U.S. Corporation Income Tax Return | | | OMB No. 1545-0123 |
|---|---|---|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2012 or tax year beginning _____ , ending _____
► Information about Form 1120 and its separate instructions is at www.irs.gov/form1120.

**2012**

| A Check if: | | | | B Employer identification number |
|---|---|---|---|---|
| 1a Consolidated return (attach Form 851) | | TYPE OR PRINT | Name **COGNITEC SYSTEMS CORP** | |
| 1b Life/nonlife consolidated return | | | Number, street, and room or suite no. If a P.O. box, see instructions. **5201 BLUE LAGOON DR, SUITE 800** | C Date incorporated **10/01/2003** |
| 2 Personal holding co. (attach Sch. PH) | | | City or town, state, and ZIP code **MIAMI          FL 33126-2064** | D Total assets (see instructions) $ |
| 3 Personal service corp. (see instructions) | | | | |
| 4 Schedule M-3 attached | | E Check if: (1) Initial return (2) Final return (3) Name change (4) Address change | | |

| | | | | | |
|---|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales | 1a | | |
| | b | Returns and allowances | 1b | | |
| | c | Balance. Subtract line 1b from line 1a | | 1c | |
| | 2 | Cost of goods sold (attach Form 1125-A) | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | 3 | |
| | 4 | Dividends (Schedule C, line 19) | | 4 | |
| | 5 | Interest | | 5 | |
| | 6 | Gross rents | | 6 | |
| | 7 | Gross royalties | | 7 | |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | | 8 | |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 9 | |
| | 10 | Other income (see instructions—attach statement)      See Stmt 1 | | 10 | |
| | 11 | **Total income.** Add lines 3 through 10 | ► | 11 | |
| **Deductions (See instructions for limitations on deductions.)** | 12 | Compensation of officers (see instructions—attach Form 1125-E) | ► | 12 | |
| | 13 | Salaries and wages (less employment credits) | | 13 | |
| | 14 | Repairs and maintenance | | 14 | |
| | 15 | Bad debts | | 15 | |
| | 16 | Rents | | 16 | |
| | 17 | Taxes and licenses | | 17 | |
| | 18 | Interest | | 18 | |
| | 19 | Charitable contributions | | 19 | |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | 20 | |
| | 21 | Depletion | | 21 | |
| | 22 | Advertising | | 22 | |
| | 23 | Pension, profit-sharing, etc., plans | | 23 | |
| | 24 | Employee benefit programs | | 24 | |
| | 25 | Domestic production activities deduction (attach Form 8903) | | 25 | |
| | 26 | Other deductions (attach statement)      See Stmt 2 | | 26 | |
| | 27 | **Total deductions.** Add lines 12 through 26 | ► | 27 | |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 | |
| | 29a | Net operating loss deduction (see instructions) | 29a | | |
| | b | Special deductions (Schedule C, line 20) | 29b | | |
| | c | Add lines 29a and 29b | | 29c | |
| **Tax, Refundable Credits, and Payments** | 30 | **Taxable income.** Subtract line 29c from line 28 (see instructions) | | 30 | |
| | 31 | Total tax (Schedule J, Part I, line 11) | | 31 | 0 |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) | | 32 | |
| | 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached | ► ☐ | 33 | |
| | 34 | Amount owed. If line 32 is smaller than the total of lines 31 and 33, enter amount owed | | 34 | |
| | 35 | Overpayment. If line 32 is larger than the total of lines 31 and 33, enter amount overpaid | | 35 | |
| | 36 | Enter amount from line 35 you want: Credited to 2013 estimated tax ►      Refunded ► | | 36 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No |
|---|---|---|---|
| | ► Signature of officer  ANDREAS DEGUINSEA  _(signature)_  Date 05/09/13 | ► Title  PRESIDENT | |

| Paid Preparer Use Only | Print/Type preparer's name **Raimundo Lopez-Lima Levi** | Preparer's signature **Raimundo Lopez-Lima Levi** | Date **05/09/13** | Check ☐ if self-employed | PTIN **P65059862** |
|---|---|---|---|---|---|
| | Firm's name ► **LOPEZ LEVI & ASSOCIATES, P.A., CPAS** | | | | Firm's EIN ► **65-0846275** |
| | Firm's address ► **201 Alhambra Cir Ste 501  Coral Gables, FL      33134** | | | | Phone no. **305-774-2945** |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1120** (2012)

DAA

**Confidential - Attorneys' Eyes Only**          CSC 00179

**LOPEZ LEVI & ASSOCIATES, P.A., CPAS**
**201 Alhambra Cir Ste 501**
**Coral Gables, FL 33134**
**305-774-2945**

May 9, 2013

CONFIDENTIAL

COGNITEC SYSTEMS CORP
5201 BLUE LAGOON DR, SUITE 800
MIAMI, FL 33126-2064

Dear Client:

We have prepared the following returns from information provided by you without verification or audit:

    U.S. Corporation Income Tax Return (Form 1120)
    Florida Corporate Income/Franchise and Emergency Excise Tax Return (Form F-1120)
    Massachusetts Business or Manufacturing Corporation Excise Return (Form 355)

We suggest that you examine these returns carefully to fully acquaint yourself with all items contained therein to ensure that there are no omissions or misstatements. Attached are instructions for signing and filing each return. Please follow those instructions carefully.

Also enclosed is any material you furnished for use in preparing the returns. If the returns are examined, requests may be made for supporting documentation. Therefore, we recommend that you retain all pertinent records for at least seven years.

Tax professionals, like all providers of personal financial services, are now required by law to inform their clients of their policies regarding privacy of client information. Our firm has been and continues to be bound by professional standards of confidentiality that are even more stringent than those required by law. Therefore, we have always protected your right to privacy.

**Types of Nonpublic Personal Information We Collect**

We collect nonpublic personal information about you that is provided to us by you or obtained by us with your authorization.

**Parties to Whom We Disclose Information**

For current and former clients, we do not disclose any nonpublic personal information obtained in the course of our practice except as required or permitted by law. Permitted disclosures include, for instance, providing information to our employees, and in limited situations, to unrelated third parties who need to know that information to assist us in providing services to you. In all such situations, we stress the confidential nature of information being shared.

**Protecting the Confidentiality and Security of Current and Former Clients' Information**

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical,

**Confidential - Attorneys' Eyes Only**                           **CSC 00180**

electronic, and procedural safeguards that comply with our professional standards.

In order that we may properly advise you of tax considerations, please keep us informed of any significant changes in your financial affairs or of any correspondence received from taxing authorities.

If you have any questions, or if we can be of assistance in any way, please call.

Sincerely,


LOPEZ LEVI & ASSOCIATES, P.A., CPAS

IRS CIRCULAR 230 DISCLOSURE REQUIREMENT: IRS Circular 230 requires us to notify you that any tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed by law.

**Confidential - Attorneys' Eyes Only**

# *State of Florida*
## *Department of State*

I certify from the records of this office that COGNITEC SYSTEMS CORPORATION is a corporation organized under the laws of Delaware, authorized to transact business in the State of Florida, qualified on May 21, 2008.

The document number of this corporation is F08000002315.

I further certify that said corporation has paid all fees due this office through December 31, 2012, that its most recent annual report was filed on January 4, 2012, and its status is active.

I further certify that said corporation has not filed a Certificate of Withdrawal.

*Given under my hand and the Great Seal of Florida, at Tallahassee, the Capital, this the Fifth day of January, 2012*



## *Secretary of State*

Authentication ID: 900215978119-010512-F08000002315

To authenticate this certificate, visit the following site, enter this ID, and then follow the instructions displayed.

**https://efile.sunbiz.org/certauthver.html**

**Confidential - Attorneys' Eyes Only**                    **CSC 00182**