# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>    *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>    *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>    *Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S OPPOSITION TO SCOTT MOSKOWITZ'S MOTION TO DISMISS AUDIBLE MAGIC CORPORATION'S COUNTERCLAIM**

Audible Magic Corporation ("Audible Magic") submits this memorandum in opposition to Scott Moskowitz's Motion to Dismiss Audible Magic Corporation's Counterclaim (Dkt. 1508) ("Supplemental Motion to Dismiss").[1]

## I.     INTRODUCTION

Blue Spike and Scott Moskowitz have created their own fictional world for the sole purpose of extracting fees from companies not willing to call their bluff.  Their deceptive scheme in this case is to put forward a steady stream of factual assertions in websites, in pleadings, and in the world at large, that it created the Giovanni Abstraction Machine "at the turn of the century" and that its products with fingerprinting "technology" were purportedly "first."  They make these false and/or misleading factual assertions about their product(s) to give the veneer of legitimacy to their patent case and create pressure on decision makers to take licenses for substantial amounts of money from Blue Spike.  To accomplish this, Blue Spike and Scott Moskowitz attempted to create the impression in the market that Blue Spike is not just another patent troll, but rather the purported "first" producer of a signal "abstracting" product that has been purportedly wronged.  The problem is that is simply not true and Blue Spike and Moskowitz have made these statements fully aware of the misleading and false nature of them.  It is even more egregious given that, while Blue Spike is telling the world that it had better take a license to these patents from a sympathetic product manufacturer who was purportedly "first," Blue Spike has disclaimed its attempt to rely on any product at all as practicing its patents.  And nowhere in the briefing or pleadings on this matter does Blue Spike actually attempt to defend the false and/or misleading statements on the website that the Giovanni Abstraction Machine actually existed in 2000 or at any other time.  It is an implicit admission that the website is

---

[1] The Court need not reach the merits of Blue Spike's Supplemental Motion to Dismiss because it was filed after the deadline imposed by the Scheduling and Discovery Order (Dkt. 1332). Motions to Dismiss were required to be filed by May 2, 2014.  Blue Spike did not file its Motion until May 3, 2014.  Thus, it is untimely and should be denied on that basis alone.

nothing more than false statements to the market and potentially an attempt to tamper with juries, who on the first day of trial are likely to head straight to their favorite Internet search engine to see what this "Blue Spike" is all about. It is not honest. It is deceptive. It is false. It is misleading. And it is simply wrong. For these reasons, the statements are actionable as false and/or misleading, and actionable under both the Lanham Act and as common law unfair competition.

## II.  FACTUAL BACKGROUND

In response to Blue Spike's Complaint, Audible Magic asserted counterclaims of, *inter alia*, patent infringement, unjust enrichment, and Lanham Act violations against Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz. (Dkt. 885). Audible Magic then filed an Amended Answer asserting a counterclaim of common law unfair competition. (Dkt. 1404). Blue Spike filed an Amended Complaint on the same day (Dkt. 1400), to which Audible Magic responded and asserted the common law unfair competition counterclaim. (Dkt. 1438). As Moskowitz notes in its Motion to Dismiss, by agreement of the parties, the only counterclaim to be addressed in Moskowitz's Supplemental Motion to Dismiss was the common law unfair competition counterclaim. Dkt. 1508, at 2.

Moskowitz's Supplemental Motion to Dismiss (Dkt. 1508), however, is based entirely on an argument that Audible Magic failed to plead the requirements for its Lanham Act counterclaim. In its initial original Motion to Dismiss the Lanham Act counterclaim Moskowitz never made this argument. Indeed, and as pointed out by Audible Magic in its response to that Motion (Dkt. 1020, 1021, and 1022), Moskowitz never even mentions the factors to establish a claim under the Lanham Act, nor made an argument that Audible Magic failed to plead them. *See id.*

### III. ARGUMENT

Moskowitz's entire argument is that if Audible Magic's Lanham Act counterclaim is dismissed, then its unfair competition counterclaim must fail as well.  Thus, all arguments and facts related to Moskowitz's Motion to Dismiss the unfair competition counterclaim should have already been presented in its previous Motion to Dismiss the Lanham Act counterclaim. (Dkt. 995).  Audible Magic, therefore, incorporates the entirety of its responses to Blue Spike's and Moskowitz's initial Motions to Dismiss, which can be found at Docket Entries 1020, 1021, 1022, 1069, 1070, and 1071.

### A.   Blue Spike's Argument Has Been Waived

Whether Audible Magic properly plead its Lanham Act counterclaim was the subject of Moskowitz's previous Motion to Dismiss. (Dkt. 995).  Moskowitz failed to properly raise the argument then because it failed to even allege that Audible Magic did not plead the required factors for a Lanham Act claim.  Moskowitz only argued that certain language in the statements on the Blue Spike website was "not actionable under the Lanham Act" because it was allegedly too vague and immaterial.[2]  Moskowitz never argued, nor presented the issue to the Court, that Audible Magic failed to properly *plead* the elements of a Lanham Act claim.  Thus, Moskowitz has waived any argument that Audible Magic failed to properly plead the elements to its Lanham Act claim.  Accordingly, the Court need not separately reach Moskowitz's Supplemental Motion to Dismiss Audible Magic's common law unfair competition claim because Moskowitz admits that it rises or falls with Audible Magic's Lanham Act counterclaim, which Moskowitz failed to even address its initial Motion to Dismiss (Dkt. 995).

---

[2] Blue Spike also argued that the statements were not directed to a product and that Blue Spike could not find the statements on its website or after searching on the internet.  Those statements were both shown to be false in later briefing.

3

### B. Even If Moskowitz Had Properly Argued that Audible Magic Failed to Plead the Elements for a Lanham Act Claim, Audible Magic Met the Pleading Requirements

Whether Audible Magic properly plead a claim under the Lanham Act has been thoroughly briefed in response to Moskowitz's first Motion to Dismiss (Dkt. 995). And even though Moskowitz never raised the argument that Audible Magic failed to plead the required factors for a claim under the Lanham Act, Audible Magic nonetheless addressed each factor in its Oppositions. For the convenience of the Court, these arguments are summarized again below in conjunction with new arguments untimely presented by Moskowitz.

#### 1. The "First to Create" Statement Was Properly Plead

Blue Spike claims on its website that it was the "first to create" content "fingerprinting" technology with its Giovanni® Abstraction Machine™. Audible Magic's counterclaim specifically pleads this factual assertion regarding Blue Spike's product. Moskowitz's Motion to Dismiss ignores these facts and attempts to argue the merits and to dispute the facts, rather than focus on whether the alleged facts meet the minimum requirements to support a pleading. For at least these reasons, Moskowitz's motion must be denied.

Audible Magic unquestionably asserted a plausible claim for violation of section 43(a) of the Lanham Act, 35 U.S.C. §1125(a). Audible Magic alleged that Moskowitz made a false statement about its Giovanni product that Moskowitz has placed in interstate commerce, this false statement has the potential to deceive a substantial segment of Audible Magic's customers and influence their purchasing decisions, and Audible Magic has been injured by Moskowitz's false statement. These facts, which must be accepted as true at the pleading stage, meet Fed. R. Civ. P. 8 pleading standards that are applicable to claims under the Lanham Act. *See, e.g., Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 966 (S.D. Tex. 2012) (collecting cases from the 5th Circuit).

For the first time, Moskowitz now alleges that Audible Magic failed to plead the specific requirements of a Lanham Act claim. In doing so, however, Moskowitz devotes only **one sentence** to its argument that Audible Magic failed to plead **5 factors**. (Dkt. 1508 at 5). As noted in its previous Oppositions, Audible Magic specifically plead the following five factors in its Lanham Act claim: (1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue. *Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 495 (5th Cir. Tex. 2000). Even a cursory review of Audible Magic's counterclaim shows that it pleads these elements. For example, Audible Magic alleges that:

- Moskowitz made false and misleading statements regarding the Giovanni® Abstraction Machine™ on the www.bluespike.com website that with this product Blue Spike was the "first to create" content "fingerprinting" technology. Dkt. 885 at ¶57.

- Moskowitz's false statements on www.bluespike.com are accessible to Audible Magic's customers. Dkt. 885 at ¶58.

- Moskowitz's statements mislead Audible Magic's potential customers that the Giovanni Abstraction Machine is superior technology. Dkt. 885 at ¶58.

- Moskowitz's statements are in interstate commerce and constitute a false statement of fact and misleading representation of fact that Moskowitz uses to promote the Giovanni Abstraction Machine over Audible Magic's technology. Dkt. 885 at ¶59.

- Audible Magic suffered irreparable harm as a result of Moskowitz's false and misleading statements. Dkt. 885 at ¶¶61-64.

These allegations provide Moskowitz with notice of the types of false advertising that Moskowitz engaged, why that conduct was false or misleading, and how it influences Audible Magic's potential customers. Under Rule 8's liberal pleading standards, these allegations are more than sufficient to support a proper pleading.

That Audible Magic's common law unfair competition counterclaim is sufficiently plead is fully supported by the cases Moskowitz relies on in its Supplemental Motion to Dismiss. *See* Dkt. 1508 citing (*Wellpath Solutions, Inc. v. Wellpath Energy Servs., LLC*, No. 6:12-cv-286, 2013 WL 1314423, at *4 (E.D. Tex. Mar. 28, 2013) (denying motion to dismiss and finding that because the complaint alleged a violation of the Lanham Act, it is sufficient to support a claim for common law unfair competition); *Axxiom Mfg. Inc. v. McCoy Inves., Inc.*, Civ. No. A. H-09-3735, 2010 WL 254584, at *7 (S.D. Tex. June 21, 2010) (denying motion to dismiss in part and noting that arguing the facts was more appropriate for summary judgment); *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008) (denying motion to dismiss because plaintiffs need not prove the unfair competition claim in the pleading stage, but merely plead it sufficiently to provide notice)). As noted above, Audible Magic plead each required element of a Lanham Act or common law unfair competition claim. No more is required at the pleading stage.

### 2. The "Fingerprinting technology has powered Blue Spike products" Statement Was Properly Plead

Moskowitz attempts to impart its own meaning to the statements on the Blue Spike website regarding the Giovanni Abstraction Machine being powered by Blue Spike's fingerprinting technology since the turn of the century, but completely misses the mark. That is, it is not just the falsity of the timeframe that Moskowitz claims to have incorporated his patented technology into Blue Spike's products, but rather it is the fact that Moskowitz claims to have incorporated *any* of his patented technology into *any* of Blue Spike's products. Moskowitz argues in its Motion that

> given what Blue Spike's statement actually says, the only way it could be false or misleading would be **if fingerprinting technology had not in fact powered Blue Spike's products** since the turn of the century. **Audible Magic does not make that claim, nor could it without veering into literal-falsehood territory itself**.

6

(Dkt. 1508, at 10) (emphasis added).  But that is exactly what Audible Magic is arguing.

Moskowitz's statement that Audible Magic is veering into "literal-falsehood territory itself" is incredibly disingenuous, especially given that Blue Spike confirmed Audible Magic's belief in its recent Interrogatory Responses.  Audible Magic propounded the following Interrogatory to Blue Spike

> Describe in detail the first public use, public disclosure, offer for sale, sale, and importation of each product or service developed, offered for sale, or sold by Blue Spike that embodies any of the alleged invention(s) claimed in the Blue Spike Patents-in-Suit.

Plaintiff Blue Spike LLC's Responses to Defendant Audible Magic's First Set of Interrogatories, Interrogatory No. 2.  Blue Spike's substantive response was only the following:

> Subject to and without waiving its General and Specific Objections, Blue Spike, LLC responds that **it has never sold any product or service embodying the inventions claimed in the Blue Spike Patents-in-Suit**.

*Id.*  This is directly contrary to the statements on Blue Spike's website that its Giovanni Abstraction Machine uses technology claimed in the Blue Spike patents-in-suit.  Thus, according to Blue Spike's interrogatory response, the statement on Blue Spike's website is literally false and clearly actionable under the Lanham Act and common law unfair competition.

### 3. Audible Magic Was Not Required to Plead Bad Faith, But Did Nonetheless

Moskowitz also claims that Audible Magic was required to plead a sixth element (bad faith) because the false statements concerned a patent.  Dkt. 1508, at 5.  This is incorrect.  First, the Moskowitz false statements were not simply alleging that it owned a patent and a party was infringing.  *See Zenith Elecs., Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999) (bad faith is required as an element under 43(a) when the statement is about marketplace activity of the patent or about potential infringement).  The Moskowitz false statements are about Blue Spike claiming to own the market, being first to create content recognition technology with its Giovanni Abstraction Machine, and proclaiming that its own product incorporated its patented

7

technology, when in fact it did not. This does not fall within the ambit of *Zenith*. Second, the Federal Circuit in *Zenith* noted that:

> if the patentee knows the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out. Furthermore, statements to the effect that a competitor is incapable of designing around the patent are inherently suspect. They are suspect not only because with sufficient effort it is likely that most patents can be designed around, but also because such a statement appears nearly impossible to confirm *a priori*. For these reasons, the bad faith element may be much easier to satisfy for statements of this type.

*Id.* at 1355. Audible Magic plead specific facts showing that Scott Moskowitz and Blue Spike knew of prior art that was intentionally withheld from the patent office, knew that the invention in the patents-in-suit was invalid, knew that it was not the first to invent content recognition technology, and knew that its products did not include its own patented technology. *See* Dkt. 1438, Audible Magic Answer to Blue Spike's First Amended Complaint, at Counterclaim ¶¶ 13-41. And discovery in this case has only confirmed Audible Magic's belief that the statements on the Blue Spike website were intentionally made to harm competitors and made with full knowledge that they were false. *See* Section III.B.2 *supra* describing Blue Spike's interrogatory response. Accordingly, even if an element of bad faith was required to be plead, Audible Magic more than satisfied that standard.

   **C. Moskowitz Fails to Address the Properly Plead Common Law Unfair Competition Allegations Based on the Misappropriation of Audible Magic Technology**

Moskowitz's Supplemental Motion to Dismiss completely fails to address portions of Audible Magic's common law unfair competition claim related to misappropriation, and on that basis alone, should be denied.

Audible Magic plead, in addition to the false statements made by Moskowitz, that Moskowitz misappropriated Audible Magic and its predecessor company Muscle Fish technology and claimed it as his own. Specifically, Audible Magic plead the following:

8

> 103. Audible Magic and its predecessor Muscle Fish have expended labor, skill, and money, in the development of valuable information, technology, ideas, products and unique pecuniary interests.
>
> 104. Counter-Defendants have taken and used without authorization or license Audible Magic's information, technology, ideas, products and unique pecuniary interests, in competition with Audible Magic, thereby gaining a special advantage in that competition because Counter-Defendants are burdened with little or none of the expense incurred by Audible Magic. Counter-Defendants have caused commercial damage to Audible Magic.

Dkt. 1438, at 49. In addition, Audible Magic provided even further specific details on Scott Moskowitz' and Blue Spike's misappropriation:

> 26. Upon information and belief, at least as early as 1997, while Moskowitz's business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems. For example, in the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology. At that time, Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server." Similarly, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value, Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology. After his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997. As alleged further below, Moskowitz did not disclose the foregoing prior art to the PTO.
>
> 27. Muscle Fish expended tremendous resources to cultivate and develop valuable information and intellectual property, including source code and other intellectual property. Muscle Fish spent significant time, effort and money to develop valuable business trade secrets including, but not limited to source code, algorithms, ideas, formulas, designs, business plans, schematics, specifications, descriptions, prototypes and designs and other confidential intellectual property relating to content-based recognition technologies, systems and business. The development and use of such information enabled Muscle Fish and its successor Audible Magic to succeed in a competitive industry.

*Id.* at 33-34.

These allegations plead by Audible Magic constitute an individual basis for its counterclaim of common law unfair competition. Moskowitz did not even address them, and therefore, its Supplemental Motion to Dismiss must be denied.

9

## IV.     CONCLUSION

Rather than attempt to show that Audible Magic's counterclaim failed to provide Moskowitz with sufficient notice, Moskowitz resorts to improper argument regarding the facts underlying Audible Magic's claim.  In doing so, it presents no credible argument that Audible Magic's pleading is deficient.  For this reason alone Moskowitz's motion must be denied.  And even if Moskowitz's arguments on the merits are considered, they are wrong for myriad reasons, as Audible Magic's allegations are legally sufficient to state a claim. Audible Magic respectfully requests that Moskowitz's Motion to Dismiss and its Supplemental Motion to Dismiss be denied in their entirety.


Dated:  May 22, 2014

By:                              */s/ Eric H. Findlay*

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave, Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey – *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on May 22, 2014.

>*/s/ Eric H. Findlay*
>Eric H. Findlay