UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff,* | § | Case No. 6:12-cv-499-MHS |
| v. | § | Lead Case |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| *Defendants.* | § | |

**BLUE SPIKE, LLC'S SURREPLY TO AUDIBLE MAGIC CORPORATION'S
MOTION TO STRIKE INFRINGEMENT CONTENTIONS [DKT. 1469]**

This surreply corrects misstatements in Audible Magic Corporation's ("Audible Magic's") reply in support of its motion to strike Blue Spike, LLC's ("Blue Spike's") infringement contentions.

First, Audible Magic continues to misconstrue Local Rule CV-7(h). Despite what Audible Magic would lead this Court to believe, L.R. CV-7(h) requires more than a meet and confer[1]—it requires that *both* parties agree that "discussions have conclusively ended in an impasse." Yet the parties made no such agreement. On the contrary, Audible Magic admits it planned to rush to the courthouse as early as April 5th despite ongoing discussions. Reply at 2. While Blue Spike continued to cooperate in good faith—meeting and conferring on April 7th and providing revised infringement contentions on April 9th

---

[1] Audible Magic disregards L.R. CV-7(h) in favor of its own theory that "two meet-and-confers (with both lead and local counsel present), two letters, multiple e-mails, and over a month of delay" warrant court involvement. Reply at 3. Even if taken at face value, Audible Magic's formula ignores that the meet and confer process resulted in 440 pages of revised infringement contentions. Opp., Ex. 5.

1

(Reply at 2)—Audible Magic was drafting its motion to strike. Audible Magic did not act in good faith, thus contravening L.R. CV-7(h)'s requirement that a party act with "honesty in one's purpose to discuss meaningfully the dispute" and to "secure information without court intervention." Audible Magic's failure to meet and confer is a serious issue, as "[a]n unreasonable failure to meet and confer violates Local Rule AT-3 and is grounds for disciplinary action." L.R. CV-7(h). Therefore, Audible Magic's motion to strike should be dismissed because there was no impasse, nor did the parties mutually agree that an impasse had arisen.

Second, Audible Magic abused the discovery process by misleading Blue Spike. As noted above, Audible Magic intended to file a motion to strike even before it received Blue Spike's revised infringement contentions (Opp., Ex 5). Reply at 2. Audible Magic allowed Blue Spike to labor over those revised contentions, all the while knowing they were doomed. This is not good faith conduct. Nor was it good faith conduct for Audible Magic to file its motion after expressing a willingness to "discuss with Blue Spike how we can avoid motion practice and court involvement." Opp., Ex. 2. Clearly, we cannot accept Audible Magic's explanation that "avoid[ing] motion practice" merely indicated a desire to "narrow the issues in its Motion to Strike" as Audible Magic now argues. Reply at 3. Blue Spike relied on Audible Magic's promises to its detriment. Audible Magic's abuses of the discovery process undermine the purpose of L.R. CV-7(h) and should not be tolerated.

Third, Audible Magic continues to mischaracterize Blue Spike's infringement contentions. Blue Spike's infringement contentions are not "complete conjecture, unsupported by any facts" (Mot. at 12); they cite evidence that tracks the claim language, offer interpretations of the claim language, and highlight evidence language that correlates with the claims. *See* Opp., Ex. 5. And contrary to Audible Magic's assertion that Blue Spike's revised contentions "corrected none" of Audible Magic's concerns (Reply at 3), Blue Spike's revised contentions incorporate doctrine of equivalents assertions in each claim, include supplemental evidence, provide additional claim explanations, and substitute all "on information and belief" language with detailed explanations. *See* Opp., Ex 6. Blue Spike's revised infringement contentions underscore the importance of the meet and confer process. Moreover, Blue Spike's revised contentions identify individual products, even though such detail was not warranted considering Audible Magic's "black-box" software.[2] *See Mobile Telecomms. Techs., LLC v. Sprint Nextel Corp.*, No. 2:12-cv-832, Dkt. 152, at *3 (E.D. Tex. Apr. 25, 2014) (" [T]his rule does not require a separate infringement chart for each accused device – especially where, as is the case here, there is no dispute that the many devices function virtually identically to each other.") (attached to Opp. as Ex. 3); Opp., Ex. 5. Audible

---

[2] During Rule 26(f) conferences and meet and confers, Audible Magic maintained that its product is a "black box" that its customers incorporate without modification. Yet Audible Magic demanded revised infringement contentions from Blue Spike *within two days* for all 17 customers who only "plug-in" Audible Magic's product, despite indicating that Blue Spike only needed to address Audible Magic's charts at this stage.

3

Magic was convinced Blue Spike's revised contentions would be insufficient before it ever received them, just as it is convinced now that future revisions "would be futile." Mot. at 15. Audible Magic's rigid demands run counter to the spirit of the Local Rules.

Fourth, Audible Magic's reply demonstrates a characteristically heavy-handed approach. Audible Magic falsely claims Blue Spike provided "no proof whatsoever" of infringement (Reply at 5) and "refused to address any substantive issues" (Reply at 1). On the contrary, Blue Spike provided 440 pages of notice supported by evidence. Opp., Ex. 5. Audible Magic's overbroad statements are reminiscent of those criticized in *Mobile Telecomms. Techs.*, and should be disregarded. *See Mobile Telecomms. Techs.*, at *4. ("The Court is left with no recourse but to deny [Defendant's] broad, sweeping challenge to [Plaintiff's] hundreds of pages of infringement contentions.")

Also Audible Magic never asked Blue Spike to incorporate development code into the infringement contentions. *Contra* Reply at 4. While Audible Magic may have directed Blue Spike to view its website generally, it *never* directed Blue Spike to its *development* website. Audible Magic failed to mention its development code altogether, apparently waiting to raise the issue with the court. *Contra* Reply at 4. Blue Spike does not contend that Audible Magic has a burden to signal publically available resources. But as Blue Spike noted in its opposition, the terms and conditions protecting Audible Magic's development code precluded its use for non-commercial purposes. Opp. at 9.

4

Had the parties met and conferred on the issue, Blue Spike's hesitancy to breach the code's terms of service likely could have been resolved.

Audible Magic does not seek relief—it seeks an unfair advantage. Audible Magic did not seek relief when it misled Blue Spike and failed to properly meet and confer. Nor does it merely seek relief by demanding that the Court strike Blue Spike's infringement contentions entirely. Mot. at 1. A motion to strike infringement contentions is a "death penalty sanction" (*See* Opp. at 3 (*citing H-W Tech., L.C. v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 121271, at *19 (N.D. Tex. Aug. 2, 2012)) that should not be wielded as a weapon to gain advantage at the expense of the Court's and the parties' resources; it is a last recourse that may be filed "without the required conference only when the non-movant has acted in bad faith by failing to meet and confer." L.R. CV-7(h). Blue Spike did not act in bad faith, nor did it fail to meet and confer. On the contrary, Blue Spike provided sufficient original contentions and revised those contentions in the spirit of accommodation.

## Conclusion

Audible Magic did not properly meet and confer before filing its motion to strike. Moreover, its motion is premature and fails to show that striking Blue Spike's contentions is justified. For these reasons, Blue Spike respectfully asks the Court to deny Audible Magic's motion to strike. Additionally, Blue Spike respectfully asks the Court to award Blue Spike its attorney's fees associated with this motion.

Respectfully submitted,

  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

6

## Certificate of Service

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on May 23, 2014.

                                              /s/ Randall Garteiser