# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:12-CV-499-MHS |
| | § | LEAD CASE |
| CLEAR CHANNEL BROADCASTING, INC., | § | |
| | § | Case No. 6:12-CV-595-MHS |
| Defendant. | § | CONSOLIDATED CASE |
| | § | |
| | § | |
| | § | |

**DEFENDANT CLEAR CHANNEL BROADCASTING, INC.'S**
**INITIAL DISCLOSURES**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Court's March 6, 2014 Scheduling and Discovery Order (Dkt. No. 1332), Defendant Clear Channel Broadcasting, Inc. ("Clear Channel"), makes the following initial disclosures of information to Plaintiff Blue Spike, LLC ("Blue Spike").

These disclosures are based upon a reasonable investigation conducted in the time available. This investigation is ongoing, however, and Clear Channel expressly reserves the right to supplement these disclosures in the future. By making this disclosure of information and documents, Clear Channel does not waive, but expressly preserves, any and all objections, claims of privilege and/or work product protections it may have to the disclosure and/or admissibility of all such information and documents.

1

**CORRECT NAMES OF THE PARTIES**

Pursuant to paragraph 2(a) of the Court's Scheduling Order (Dkt. No. 1332), and to the extent known by Clear Channel the correct names of the parties to Civil Action No. 6:12-CV-595 are: Blue Spike, LLC and Clear Channel Broadcasting, Inc.

**IDENTIFICATION OF POTENTIAL PARTIES**

Pursuant to paragraph 2(b) of the Court's Scheduling Order (Dkt. No. 1332), Clear Channel identifies Channel Management Services, Inc. as a potential party. Based on the allegations in the complaint, the complaint incorrectly names Clear Channel Broadcasting, Inc. as a defendant in this case. Clear Channel is currently unaware of any other additional potential parties to this litigation.

**INITIAL DISCLOSURE OF LEGAL THEORIES**

Pursuant to paragraph 2(c) of the Court's Scheduling Order (Dkt. No. 1332), Clear Channel identifies the following legal theories and general factual bases for its defenses. Clear Channel intends to rely on the theories identified in its Answer (Dkt. No. 314) for its defenses, including non-infringement of the patents-in-suit, invalidity of the patents-in-suit under §§ 101, 102, 103, 111, 112, 116, 132, and/or 251, laches, estoppel, waiver, acquiescence, and that Blue Spike is not entitled to an injunction. Clear Channel's investigation is ongoing and this disclosure is based upon information Clear Channel has acquired to date. In addition, expert disclosures and discovery have not occurred. Clear Channel reserves the right to rely on the opinions and factual support identified by any experts disclosed in this litigation. The following theories and general factual bases are presented without limitation. Consistent with Federal Rule of Civil Procedure 26(e), Clear Channel will modify, amend, and/or further supplement this disclosure as additional evidence and information becomes available.

Clear Channel asserts that it does not infringe the patents-in-suit because Blue Spike cannot meet its burden to establish that the accused products perform each limitation of each asserted claim, literally or under the doctrine of equivalents. Clear Channel asserts that the patents-in-suit are invalid because the claimed invention was disclosed by printed publications and systems in public use and on sale before the relevant priority dates. Clear Channel will provide additional detail regarding its invalidity defenses with the production and accompanying charts under P.R. 3.3 and 3.4. Blue Spike is not entitled to an injunction because it does not manufacture any products and cannot establish that monetary damages would not be sufficient or that it has suffered irreparable harm. Blue Spike cannot meet its burden to show that Clear Channel willfully infringed the patents-in-suit because Blue Spike has not alleged knowledge of the patents prior to the filing of this suit, and knowledge based on the filing of a complaint is insufficient to demonstrate knowledge for a willfulness allegation. Moreover, Blue Spike has alleged no facts to demonstrate that Clear Channel's defenses are objectively unreasonable or that Clear Channel has acted under an objectively high likelihood that its actions constitute infringement.

Blue Spike cannot demonstrate that it is entitled to damages for the reasons set forth above, and Blue Spike is barred from recovering damages under the doctrines of estoppel, laches, disclaimer and/or waiver because Clear Channel has used broadcast monitoring publicly since at least 1991 (a system that anticipates the patents-in-suit, and is further described by U.S. Patent No. 5,437,050, which also anticipates the patents-in-suit on its own), yet litigation was not instituted until the later portion of 2012. Additionally, Clear Channel is entitled to fees under 35 U.S.C. § 285 because this is a case that "stands out from others" because information regarding the prior art broadcast monitoring system and patent described above was publicly available

prior to the filing of the complaint, brought to Blue Spike's attention before the scheduling conference, and the prior art patent and system were cited within Blue Spike's infringement contentions. *See Octane Fitness, LLC v. ICON Health & Fitness*, 572 U.S. ___, 7-8 (Apr. 29, 2014).

Discovery is ongoing, and Clear Channel is not limiting its right to develop its factual bases for these or other defenses as the case progresses. Claim construction is set to proceed under the Court's Scheduling Order (Dkt. No. 1332), and Clear Channel reserves the right to rely on any claim construction positions properly raised under the Court's schedule.

### **RULE 26(a)(1)(A)(i) INDIVIDUALS**

Clear Channel discloses that it is currently aware of the following persons likely to have discoverable information that Clear Channel may use to support its claims or defenses in this action, excluding those individuals who may have discoverable information that Clear Channel may use solely for impeachment. Clear Channel anticipates that other individuals may also have discoverable information and specifically reserves the right to identify additional witnesses as discovery proceeds. By indicating the general subject matter of information these individuals possess, Clear Channel is not limiting its right to call any individual listed to testify concerning other subjects.

| Name | Subject(s) | Contact Information |
|---|---|---|
| Corporate Representative of Blue Spike, LLC | Blue Spike's acquisition of the Patent-in-Suit; Blue Spike's business model, finances, and valuation reporting; Blue Spike's corporate identity and history; Blue Spike's licensing practices, efforts, and agreements of the Patent-in-Suit. | Best known to Blue Spike |

| Name | Subject(s) | Contact Information |
|---|---|---|
| Corporate Representative of Blue Spike, Inc. | Blue Spike, Inc.'s prosecution of the Patent-in-Suit; Blue Spike, Inc.'s business model, finances, and valuation reporting; Blue Spike, Inc.'s corporate identity and history; Blue Spike, Inc.'s licensing practices, efforts, and agreements of the Patent-in-Suit, Blue Spike, Inc.'s relationship with Blue Spike. | Best known to Blue Spike |
| Scott Moskowitz | The alleged conception, reduction to practice, development, and subject matter of the claimed invention of the Patent-in-Suit; prosecution of the Patent-in-Suit and related foreign and U.S. patents and patent applications; ownership of the Patent-in-Suit; Blue Spike, Inc.'s and Blue Spike's licensing practices, efforts, and agreements of the Patent-in-Suit, Blue Spike, Inc.'s relationship with Blue Spike. | Best known to Blue Spike |
| Mike W. Berry | The alleged conception, reduction to practice, development, and subject matter of the claimed invention of the Patent-in-Suit; prosecution of the Patent-in-Suit and related foreign and U.S. patents and patent applications; ownership of the Patent-in-Suit. | Best known to Blue Spike |
| Prosecuting Attorney at Neifeld IP Law, PC | Blue Spike's prosecution and licensing of the Patent-in-Suit and/or related patents and patent applications. | Best known to Blue Spike |
| Dyon Anniballi | Technical aspects, development, and operation of the accused "Media Monitors Service" and RCS/Media Monitors Prior Art System | c/o O'Melveny & Myers LLP |
| Richard Beck | Clear Channel's financial and sales information for accused "Media Monitors Service" | c/o O'Melveny & Myers LLP |
| Philippe Generali | Clear Channel's marketing, financial, sales, and licensing information for accused "Media Monitors Service" and RCS Media Monitors Prior Art System | c/o O'Melveny & Myers LLP |

| Name | Subject(s) | Contact Information |
|---|---|---|
| Third parties, including AirCheck (before purchase by RCS) and named inventors on U.S. Patent Nos. 5,437,050 and 7,386,047 | Information with knowledge of the technical aspects and operation, and invention of accused "Media Monitors Service" and RCS/Media Monitors Prior Art System | Unknown |
| Individuals with information regarding prior art | Relevant Prior Art (including systems) | Unknown |

Clear Channel may also rely on persons identified by Blue Spike, persons identified by one or more of the other defendants in this action, or persons who may be identified in documents produced or to be produced by any party or non-party in connection with this action, to support its claims or defenses. Clear Channel also reserves the right to rely on Clear Channel employees and/or other witnesses to describe the particular functionality, hardware and software accused of infringing that have not yet been proffered by Plaintiff.

Clear Channel also expects to rely upon expert testimony and will disclose any such experts as required by Rule 26(a)(2).

**RULE 26(A)(1)(a)(ii) DOCUMENTS**

Pursuant to Rule 26(a)(1)(A)(ii), Clear Channel provides the following description by category and location of documents, data compilations, and tangible things in Clear Channel's possession, custody, or control, that Clear Channel may use to support its claims or defenses, unless solely for impeachment:

- The Patent-in-Suit and their prosecution histories;

- Documents relating to the inventorship, prosecution, and/or ownership of the Patent-in-Suit;

- Prior art to the Patent-in-Suit, including, but not limited to, U.S. and foreign patents and published patent applications, articles, presentations, proposals, product literature, products, and other materials;

- Prior art systems that were in public use and/or on sale or offered for sale in the United States more than one year prior to the filing date of the Patents-in-Suit, including AirCheck and RCS/Media Monitors Prior Art System, and any systems practicing the disclosure of U.S. Patent No. 5,437,050

- Documents relating to the unenforceability of the Patent-in-Suit;

- Documents relating to Clear Channel's non-infringement of the Patent-in-Suit;

- Documents relating to the operation of the Clear Channel products that are accused of infringement in the present lawsuit, including, but not limited to, documents concerning the design, development, and manufacturing of said products;

- Documents relating to the sales, marketing, and advertising of the Clear Channel products that are accused of infringement in the present lawsuit; and

- Documents relating to Clear Channel's defenses of estoppel, waiver, and the inappropriateness of an injunction.

All such documents are located at the offices of Clear Channel subsidiaries RCS and Media Monitors, or at the offices of Clear Channel's counsel in this matter, O'Melveny & Myers LLP. By providing this description, Clear Channel does not waive, but expressly preserves, any

and all objections as to the relevance and admissibility of the documents. Clear Channel also states that, although they are not within Clear Channel's possession custody or control, Clear Channel may use documents produced by Blue Spike, other defendants, or third parties in this action to support its claims or defenses.

### RULE 26(A)(1)(a)(iii) DAMAGES

At this time, Clear Channel has not asserted a claim for damages against Blue Spike in this action. Clear Channel seeks its attorneys' fees, litigation expenses, and costs in connection with this case.

### RULE 26(A)(1)(a)(iv) INSURANCE

Clear Channel is currently unaware of any insurance agreement under which any person or entity carrying on an insurance business may be liable to satisfy part or all of any judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy any such judgment.

Dated:  May 1, 2014                                         */s/ Ryan K. Yagura*

                                    Ryan K. Yagura
                                    ryagura@omm.com - TX S.B. #240755933
                                  Nicholas J. Whilt
                                  nwhilt@omm.com – CA S.B. #247738
                                  O' MELVENY & MYERS LLP
                                  400 South Hope Street
                                  Los Angeles, California 90071-2899
                                  Telephone:  (213) 430-6000
                                  Facsimile:  (213) 430-6407

                                  Sarah A. Pfeiffer
                                  spfeiffer@omm.com – CA S.B. #278205
                                  O' MELVENY & MYERS LLP
                                  610 Newport Center Drive
                                  Newport Beach, California 92660
                                  Telephone:  (949) 823-6900
                                  Facsimile:  (949) 823-6994

                                  *Attorneys for Clear Channel Broadcasting, Inc.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 1, 2014, Plaintiff's counsel of record Randall T. Garteiser, Christopher Honea, and Peter Brasher were served with a copy of this document via electronic mail.

                */s/ Ryan K. Yagura*
                Ryan K. Yagura