# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> TEXAS INSTRUMENTS, INC., <br><br> *Defendant*. | C.A. No. 6:12-cv-00499-MHS <br><br> **JURY TRIAL DEMANDED** |
| BLUE SPIKE, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> SHAZAM ENTERTAINMENT LTD., <br><br> *Defendant*. | C.A. No. 6:12-cv-00500-MHS <br><br> **(CONSOLIDATED WITH 6:12-CV-499) <br> JURY TRIAL DEMANDED** |
| SHAZAM ENTERTAINMENT LTD., <br><br> *Defendant,* <br><br> v. <br><br> BLUE SPIKE, LLC, BLUE SPIKE, INC. and SCOTT A. MOSKOWITZ <br><br> *Counterclaim Defendants.* | |

**DEFENDANT SHAZAM ENTERTAINMENT LIMITED'S OPPOSITION TO BLUE SPIKE, LLC'S, BLUE SPIKE, INC.'S, AND SCOTT MOSKOWITZ'S MOTION TO DISMISS SHAZAM ENTERTAINMENT LIMITED'S COUNTERCLAIM [DKT. 1397]**

# TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................................................ 1

II.  Factual Background ........................................................................................................... 1

III. Standard Of Review ........................................................................................................... 3

IV.  Argument ........................................................................................................................... 3

   A. Shazam Has Properly Pled All Elements of a Lanham Act Claim For False Advertising . 3

   B. Blue Spike's Advertisements Are False and Materially Misleading ................................. 5

   C. Blue Spike's Advertisements Have Harmed and Will Harm Shazam .............................. 8

   D. Intent Is Not an Element of a Lanham Act Claim, But Blue Spike's Bad Faith Is Clearly Alleged Anyway ................................................................................................................. 9

   E. Blue Spike's Attempts to Argue the Merits of Shazam's Lanham Act Claim Do Not Provide a Basis for Dismissal at the Pleading Stage ......................................................... 11

   F. Blue Spike Founder and CEO Is Liable for Statements He Made ................................... 13

V.   Conclusion ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 3

*Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*,
  888 F. Supp. 2d 718 (M.D.N.C. 2012) ................................................................................ 5, 10

*Buztronics, Inc. v. Theory3, Inc.*,
  1:04-CV-1485-DFH-VSS, 2005 WL 1865512 (S.D. Ind. 2005) .......................................... 6, 10

*Champion Cooler Corp. v. Dial Mfg.*,
  No. 3:09-CV-1498-D, 2010 WL 1644193 (N.D. Tex. April 22, 2010) ................................... 11

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ................................................................................................. 13

*Forest Group, Inc. v. Bon Tool Co.*,
  No. H-05-4127, 2008 WL 2962206 (S.D. Tex. July 29, 2008) ................................................. 7

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
  No. S-09-580 FCD/JFM, 2009 WL 2462505 (E.D. Cal. Aug. 11, 2009) .................................. 8

*Graco, Inc. v. PMC Global, Inc.*,
  No. 08-1304 (FLW), 2009 WL 904010 (D.N.J. March 31, 2009) ............................................ 8

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) ............................................................................................ 11, 14

*IMCS, Inc. v. D.P. Tech. Corp.*,
  264 F. Supp. 2d 193 (E.D. Pa. 2003) ....................................................................................... 7

*In re Bill of Lading Transmission & Processing System Patent Litigation*,
  681 F.3d 1323 (Fed. Cir. 2012) ............................................................................................... 3

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007) ............................................................................................... 3

*Merck Eprova AG v. Brookstone Pharm., LLC*,
  920 F. Supp. 2d 404 (S.D.N.Y. 2013) ................................................................................... 14

*Microsoft Corp. v. Suncrest Enter.*,
  C03-5424 JF (HRL), 2006 WL 1329881 (N.D. Cal. 2006) ................................................... 14

*MPT, Inc. v. Marathon Labels, Inc.*,
  1:04 CV 2357, 2005 WL 2086069 (N.D. Ohio 2005) .............................................................. 6

*Pizza Hut v. Papa John's Int'l*,
  227 F.3d 489 (5th Cir. 2000) ......................................................................................... 4, 6, 12

*POM Wonderful LLC v. Purely Juice, Inc.*,
  362 Fed.Appx. 577 (9th Cir. 2009) .......................................................................................... 9

# **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Schering-Plough Healthcare Prod. v. Schwarz Pharma, Inc.*,
  586 F.3d 500 (7th Cir. 2009) ................................................................................................... 7

*Spotless Enters., Inc. v. Carlisle Plastics, Inc.*,
  56 F. Supp. 2d 274 (E.D.N.Y. 1999) ....................................................................................... 5

*Synopsys, Inc. v. Magma Design Automation*,
  No. CIVA 05-701(GMS), 2006 WL 1452803 (D. Del. May 25, 2006) ................................... 8

*Teirstein v. AGA Medical Corp.*,
  No. 6:08cv14, 2009 WL 704138 (E.D. Tex. March 16, 2009) ................................................ 3

*Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*,
  902 F. Supp. 2d 958 (S.D. Tex. 2012) ..................................................................... 3, 5, 8, 10

*Zenith Elec. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999) ........................................................................................ 9, 10

**Statutes**

35 U.S.C. § 102(e) ........................................................................................................................ 11

35 U.S.C. § 102(g)(2) ................................................................................................................... 11

I.      INTRODUCTION

Shazam Entertainment Limited ("Shazam") respectfully submits this memorandum in opposition to Blue Spike, LLC's, Blue Spike, Inc.'s ("Blue Spike") and Scott Moskowitz's Motion to Dismiss Shazam's Counterclaim (Dkt. 1472, Dkt. 1582, and Dkt. 1583)[1] (hereinafter "Motion").[2] In its Motion, Blue Spike asks this Court to exonerate it—based on nothing more than its say so—for an advertising campaign that Shazam has properly alleged is false and likely to cause it substantial injury by calling into question its right to offer consumers its mobile music recognition applications. The details of that campaign are set forth in detail in Shazam Entertainment Limited's Amended Answer to Blue Spike, LLC's Complaint and Counterclaims Against Blue Spike, LLC, Blue Spike, Inc., and Scott A. Moskowitz (Dkt. 1397) (hereinafter "Shazam Counterclaim"). In particular, Shazam's well-pled allegations make clear that Blue Spike has promoted numerous factually incorrect statements to consumers about Shazam's products, that these statements are likely to deceive consumers in ways that are likely to affect their purchasing decisions, and that Shazam has been harmed as a result. Blue Spike's motion, in contrast, offers up nothing more than base denials that cannot be asserted on a threshold motion to dismiss. Accordingly, its Motion can and should be summarily denied.

II.     FACTUAL BACKGROUND

Without advance notice, on August 9, 2012, Blue Spike filed a complaint against Shazam alleging infringement of four Blue Spike patents: U.S. Patent Nos. 7,346,472; 7,660,700;

---

[1] Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz filed three substantially identical motions to dismiss Shazam's Counterclaims—Dkt. 1472, Dkt. 1582, and Dkt. 1583—this responds to all three motions. Responses to arguments made by Blue Spike apply equally to those arguments made by Mr. Moskowitz.

[2] Blue Spike, LLC is the original plaintiff in this case and appears to be the current assignee of the patents-in-suit. Complaint at 1. Blue Spike, Inc. appears to be an entity founded by Scott Moskowitz in 1997. *Id.* Both are referred to herein collectively as "Blue Spike."

1

7,949,494; and 8,214,175 (hereinafter "patents-in-suit").  *See* Dkt. 1 in Case No. 6:12-cv-00500 (hereinafter "Complaint").  The patents-in-suit share a common specification and all list Scott A. Moskowitz, the CEO and founder of Blue Spike, as the first named inventor. *See Id.* at 1, 4.

Blue Spike did not stop with just suing Shazam, but initiated a very public promotional campaign that was designed to cause consumers to refrain from purchasing Shazam products, both in "articles" on its website www.bluepsike.com[3] and from the company's @bluespike Twitter account.  These promotional communications, riddled with falsehoods, specifically tell consumers that Shazam's products are, among other things, "stolen," the result of "theft," and "copied" and that Blue Spike will make the "verb" "Shazam" "past tense."  *See* Shazam Counterclaim at ¶¶ 11–18.  This organized campaign, moreover, was clearly designed to frighten consumers into refraining from purchasing and downloading Shazam's music recognition application in favor of Blue Spike's competing product by falsely claiming:  (a) that Blue Spike's Giovanni Abstraction Machine and fingerprinting technology predate Shazam's technology (in particular that this technology has powered Blue Spike products since the turn of the century); and (b) that Blue Spike's Scott Moskowitz has been an active figure in the content management space long before Shazam.  *See id.*  Faced with this direct—and false—challenge to Shazam's ability to sell its products, Shazam had no choice but to bring a Lanham Act counterclaim.

On April 4, 2014, Shazam filed the Shazam Counterclaim, which asserts a Lanham Act claim against both Blue Spike entities and Mr. Moskowitz.  All counterclaim defendants filed nearly identical motions to dismiss seeking the same relief (Dkt. 1472, Dkt. 1582, and Dkt. 1583).

---

[3] Neither of the Blue Spike entities, in its respective motions, deny ownership of the www.bluespike.com web site or @bluespike Twitter account nor deny responsibility for its content.

2

## III. STANDARD OF REVIEW

As a matter of well-settled law, "[t]he central issue" of Blue Spike's Motion "is whether, in the light most favorable to the [Shazam], the [Counterclaim] states a valid claim for relief." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) (applying Fifth Circuit law); *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (motion to dismiss governed by regional Circuit law).[4] The operative pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The liberal notice pleading standard, moreover, applies to Lanham Act claims such as those asserted here, and not the heightened pleading requirements applicable to fraud claims. *See Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 966 (S.D. Tex. 2012) (collecting cases from the 5th Circuit). Importantly, there is no requirement that Shazam muster all its evidence supporting its claim at the pleading stage, and the facts alleged must be accepted as true for the purpose of this motion. *Id.*

## IV. ARGUMENT

### A. Shazam Has Properly Pled All Elements of a Lanham Act Claim For False Advertising

The Shazam Counterclaim correctly pleads all elements of a claim for relief under Section 43(a) of the Lanham Act: (1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's

---

[4] Counterclaims and affirmative defenses are subject to the same pleading requirements as complaints. *See Teirstein v. AGA Medical Corp.*, No. 6:08cv14, 2009 WL 704138, at *2 (E.D. Tex. March 16, 2009) (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)).

3

purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue. *Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 495 (5th Cir. 2000).

Each of these elements is clearly set forth in numbered allegations based on specific facts. For example:

- *Element One*: The Counterclaim lists particularized false and misleading statements that were issued by Blue Spike regarding Shazam's products on its website and via Twitter. Shazam Counterclaim at ¶¶ 11, 13–18. In particular, the Counterclaim makes clear that Blue Spike's statements stating that Blue Spike was the first to invent "fingerprinting" technology, that Shazam did not invent its own technology, that there is a risk in using Shazam technology, that Shazam stole Counter Defendants' technology, that Shazam copied Counter Defendants' technology, and that Shazam's products infringe claims of Blue Spike's Patents-in-Suit are literally false. *Id.* at ¶ 19. The counterclaim further alleges that Blue Spike made false and misleading statements regarding Blue Spike's own product, the Giovanni Abstraction Machine, including that Blue Spike was the first to create fingerprinting technology for that product. *Id.* at ¶¶ 12, 14, 17–18. As set forth in the Counterclaim, these messages are false.

- *Element Two*: The Counterclaim also alleges that these statements either deceived, or had the capacity to deceive a substantial segment of potential consumers. As set forth in the Counterclaim, Blue Spike's false statements "constitute a … false description of and representation as to the nature, characteristics, and/or qualities of Shazam's and Counter-Defendant's goods or services," *Id.* at ¶¶ 20-21. The counterclaim also alleges that Blue Spike's false statements are available on its website and via Twitter and are therefore accessible to a large segment of Shazam's customers. *Id.* at ¶ 19.

- *Element Three*: The Counterclaim also specifically alleges that the false statements listed above are material in that they "were designed and are likely to influence purchasing decisions." *Id.* ¶ 21. Indeed, it is beyond reasonable dispute that consumers of mobile application products generally want to have the best products, and purchase products from innovators rather than copycats.

- *Element Four*: The Counterclaim alleges that the products at issue are being sold or offered for sale in interstate commerce. *Id.* at ¶ 22. Blue Spike cannot seriously dispute that products bought through Apple's App Store and Google Play over mobile communications devices around the world are not being sold in interstate commerce.

- *Element Five*: The Counterclaim further specifically alleges that Blue Spike's statements have damaged or are likely to damage Shazam through various means including lost sales, harm to reputation, and loss of goodwill. *Id.* at ¶ 23.

4

These allegations more than provide Blue Spike with notice of Shazam's claims and the grounds for those claims. Under Rule 8's liberal pleading standards these allegations, taken as true and in the light most favorable to Shazam, state a claim that survives a threshold motion to dismiss. *See, e.g.*, *Tempur-Pedic Int'l, Inc.*, 902 F. Supp. 2d at 963.

### B.  Blue Spike's Advertisements Are False and Materially Misleading

In apparent recognition of the fact that each of these elements was specifically pled, the bulk of Blue Spike's Motion incorrectly challenges Shazam's Counterclaim as somehow failing to allege statements that can be considered false and materially misleading. Blue Spike is incorrect.

As an initial matter, Blue Spike only argues that "*most* of the statements on which the claim is based are inactionable as a matter of law." *See* Motion at 4 (emphasis added). By definition, this concedes that at least *some* of the statements are indeed actionable. Specifically, Blue Spike fails to address examples 1, 5 and 6 in Shazam's counterclaim. *See* Shazam Counterclaim at ¶¶ 11, 15–16. On this basis alone, Blue Spike's argument fails.

Even with respect to the remaining false statements alleged in the complaint, there can be nothing more material and deceptive than a direct challenge to a technology company's use of technology. This is why courts in multiple jurisdictions have correctly held that "such false statements were likely to deceive and influence [counterclaim plaintiff's] customers as to their purchasing decisions." *See Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 723 (M.D.N.C. 2012). For example:

- In *Spotless Enters., Inc. v. Carlisle Plastics, Inc.*, 56 F. Supp. 2d 274, 278 (E.D.N.Y. 1999), the court concluded that false claims that a product infringes a patent "may subject purchasers to suit, or other problems, are as harmful to fair competition and as material to a decision to purchase as [similar and valid] claims [arising in the false comparative advertising context]."

5

- Similarly, in *MPT, Inc. v. Marathon Labels, Inc.*, 1:04 CV 2357, 2005 WL 2086069, at *7 (N.D. Ohio 2005), the court refused to find that it would be futile to amend a complaint to add Lanham Act claims based on false accusations of infringement because "the instant case falls squarely within the circumstances identified by *Zenith* which may support a claim under § 43(a)" of the Lanham Act.

- In *Buztronics, Inc. v. Theory3, Inc.*, 1:04-CV-1485-DFH-VSS, 2005 WL 1865512, at *1, 3 (S.D. Ind. 2005), the court refused to dismiss Lanham Act claims based on allegations that the defendant had communicated accusations of patent infringement to Plaintiff's customers where the Defendant allegedly knew its patent was invalid.

Shazam's allegations provide as much or more detail than the complaints found to be sufficient in these cases. As detailed in the Counterclaim, Blue Spike's statements "deceived or had the capacity to deceive a substantial segment of potential consumers." Each accused advertisement is specified, and the Counterclaim alleges that each one is a "false representation[] about Shazam" and "convey[s] the misleading commercial impression to consumers" specified in the communication. *See* Shazam Counterclaim at ¶¶ 10–18. The Counterclaim, moreover, itemizes the various falsehoods contained in those statements, including "that Counter-Defendants were first to invent 'fingerprinting' technology, that Shazam did not invent its own technology, that there is risk in using Shazam technology, that Counter-Defendants' product practices claims in the asserted patents, that Shazam stole Counter-Defendant's technology, that Shazam copied Counter-Defendants' technology, and that Shazam's products infringe claims of Blue Spike Asserted Patents." *Id.* at ¶ 19. Shazam further alleged that these statements are widely available as a result of being posted on Twitter and Blue Spike's website. *Id.*

As a matter of law, because Shazam has alleged that each of these statements is literally false, the materiality of these false statements is presumed. It is black-letter law that if a statement of fact is shown to be literally false, it is actionable without proof of public reaction or consumer reliance. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) (finding that because the defendant "made literally false statements, [it]s argument that it did not

mislead the customers . . . is inconsequential"); *Schering-Plough Healthcare Prod. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009) (finding that an indisputably false statement is typically done for a malign purpose and "since it was a lie why waste time on costly consumer surveys" to prove deception). Here, because the facts alleged in Shazam's counterclaim must be accepted as true, the literally false statements on Blue Spike's website and on the Twitter website satisfies the materiality standard required to bring a claim under the Lanham Act.

The cases that Blue Spike relies on, in contrast, are inapposite. For example, Blue Spike cites *Forest Group, Inc. v. Bon Tool Co.*, No. H-05-4127, 2008 WL 2962206, at *7–8 (S.D. Tex. July 29, 2008) for the proposition that a false claim of patent infringement "is not, as a matter of law, actionable" "unless and until those patents are invalidated." Motion at 8–9. *Forest Group*, however, says nothing of the sort. To the contrary, the court concluded that the defendant **had** "made a false statement of fact when it represented that its stilts were covered by the '515 Patent," but that the plaintiff had failed to present evidence on other elements—following the completion of a **bench trial** where the court was empowered to weigh facts. 2008 WL 2962206, at *7–8. As a result, *Forest Group* does not support dismissal on a threshold motion to dismiss.

Similarly, Blue Spike improperly relies on *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F. Supp. 2d 193, 197 (E.D. Pa. 2003) for the proposition that any statement regarding a patentee's own product practicing a patent is not actionable. *See* Motion at 8–9. Blue Spike grossly overstates the holding of *IMCS*. In *IMCS*, the allegation was that the plaintiff had violated the Lanham Act: (1) "by filing the instant patent infringement lawsuit"; and (2) "by advertising that [its own] software is protected by [a] patent." 264 F. Supp. 2d at 197. The *IMCS* case, which dismissed the Lanham Act claim, simply stands for the unremarkable proposition that filing a patent infringement lawsuit and claiming that your own product is covered by an actual patent does not

7

give rise to a separate Lanham Act claim. Here, in contrast, the allegation is not that Blue Spike falsely claimed that its patent covered *its own* product, but that *consumers* should steer clear of *Shazam's products* because they infringe. Since the Counterclaim alleges that those promotional statements—directed at consumers—are false and misleading, *ICMS* does not apply.

        **C.    Blue Spike's Advertisements Have Harmed and Will Harm Shazam**

Blue Spike also makes the conclusory assertion that the Counterclaim lacks specific factual allegations that Shazam has been or is likely to be injured as a result of Blue Spike's statements. *See* Motion at 3. Again, Blue Spike is wrong.

Shazam has properly pled a likely injury as a result of Blue Spike's statements, including but not limited to, lost sales, harm to reputation, and loss of goodwill. *See* Shazam Counterclaim at ¶ 23. At this stage these allegations must be taken as true. *See Tempur-Pedic Int'l, Inc.*, 902 F. Supp. 2d at 963. This is why courts have routinely found that allegations comparable to Shazam's are sufficient to withstand a motion to dismiss. *See, e.g.*, *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701(GMS), 2006 WL 1452803, at *3 (D. Del. May 25, 2006) (finding "injury . . . adequately pleaded by the allegation that Synopsys' campaign of disparagement [by falsely claiming that Magma sells infringing products] has damaged Magma"); *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, No. S-09-580 FCD/JFM, 2009 WL 2462505, at *5 (E.D. Cal. Aug. 11, 2009) (finding plaintiff sufficiently pleaded injury by alleging it "suffered direct diversion of sales and/or lessening of the goodwill associated with its products"); *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304 (FLW), 2009 WL 904010, at *25 (D.N.J. March 31, 2009) (finding plaintiff sufficiently pleaded injury in a trademark dilution case by alleging there is a "likelihood of injury to the Gusmer goodwill that it purchased and damages from the name's dilution.").

### D. Intent Is Not an Element of a Lanham Act Claim, But Blue Spike's Bad Faith Is Clearly Alleged Anyway

Blue Spike also inexplicably argues that the Counterclaim should be dismissed because Shazam did not present factual allegations to support the assertion that Blue Spike made the false and misleading statements in "bad faith." *See* Motion at 3. This argument fails for two reasons.

First, intent is not an element of a Lanham Act claim. *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (§ 43 does not require bad faith) (citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n. 3 (5th Cir. 1996)).[5] To the extent that intent is relevant, it is only necessary to distinguish the false advertisements at issue from garden variety recitations of a company's patent litigation position. But, not all of Blue Spike's false and misleading statements identified by Shazam relate to patent infringement, and the additional requirement is therefore inapplicable. As a result, there was no need for Shazam to allege bad faith with respect to Blue Spike's statements related to the quality of its products and any comparison to the quality of Shazam's products. In particular, the Counterclaim points to Blue Spike's false advertisement that its technology powers the Giovanni machine, a non-existent product that has been removed from Blue Spike's website. *See* Shazam Counterclaim at ¶ 17.[6] Further, Blue Spike's CEO engaged in promotional communications designed to confuse consumers into falsely believing that Blue Spike was active in the signal recognition space long before Shazam and that Blue Spike was the first to invent signal recognition and fingerprinting technology. *Id.* at ¶¶ 12, 14. Blue Spike also made statements on the Twitter website that Shazam copied Blue Spike's technology. *Id.* at ¶ 16. Because these are not false accusations of patent infringement, there

---

[5] *See also POM Wonderful LLC v. Purely Juice, Inc.*, 362 Fed. App'x. 577, 579 (9th Cir. 2009) ("It is settled that intent is not an element of a Lanham Act false advertising claim.").

[6] Blue Spike's Disclosure Pursuant To Patent Rule 3-1(c) requiring "If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention" was "Not Applicable."

9

was no need for Shazam to allege that these statements were made in "bad faith." *See, e.g., Zenith*, 182 F.3d at 1353–54.

Second, and more fundamentally, Blue Spike's argument also fails because Shazam has, in fact, alleged that Blue Spike's statements regarding its patents were in fact made in bad faith. *See* Shazam Counterclaim at ¶ 19. In particular, the Counterclaim alleges with specificity that Blue Spike made statements concerning its patents knowing that they were invalid and unenforceable. *See id.* at pp. 20–24. Again, for purposes of a motion to dismiss, these allegations are presumed to be true. *See Tempur-Pedic Int'l, Inc.*, 902 F. Supp. 2d at 963. This is why courts have rejected the precise argument that Blue Spike advances here. For example, in *Blue Rhino*, the court held that bad faith was demonstrated "by making objectively baseless statements about [Plaintiff's] products." *See* 888 F. Supp. 2d at 725 (false advertising claims "need not contain 'detailed factual allegations' to survive a motion to dismiss . . . even if 'it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'") (citations omitted).

Here, Shazam's allegation that Blue Spike is enforcing a knowingly unenforceable and invalid patent is, itself, sufficient to establish bad faith. *See Zenith*, 182 F.3d at 1354 ("if a patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out"); *see also Buztronics, Inc.*, 2005 WL 1865512, at *4 (denying a motion to dismiss a Lanham Act claim where, even if allegations are unclear, "the plaintiff might prove any set of facts consistent with the allegations that would give it a right to relief").

Shazam's Counterclaim, however, goes above and beyond this standard. In particular, the allegations of Shazam's inequitable conduct defense, which was incorporated fully into its

10

counterclaim, sets out facts supporting the allegation that Blue Spike is asserting a knowingly unenforceable patent. *See* Shazam Counterclaim (Dkt. 1397) at pp. 14–24. Shazam also alleges that Blue Spike's CEO knew of highly material prior art, including the Muscle Fish content-based recognition systems, and failed to disclose these systems to the Patent Office with the intent to deceive. *Id.* at pp. 20–24. And Blue Spike's own statement in Exhibit A—"After all, Shazam recently paid millions to repurchase limited rights to just a handful of patents"—is evidence that Blue Spike is asserting a knowingly invalid patent. At least one of those Shazam patents is prior art to Blue Spike's Patents-in-Suit.[7] As a result, Shazam's allegations of bad faith are not only supported by well-pled allegations but also by Blue Spike's own evidence.

### E. Blue Spike's Attempts to Argue the Merits of Shazam's Lanham Act Claim Do Not Provide a Basis for Dismissal at the Pleading Stage

Finally, Blue Spike is not entitled to a dismissal of the Counterclaim by quibbling with the implications of the false and misleading statements identified. *See* Motion at 4–9. A motion to dismiss is not the correct forum to resolve factual issues which, in any event, must be resolved in favor of the non-moving party. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) ("when evaluating a motion to dismiss under Rule 12(b)(6), a court must 'accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff'"); *accord Champion Cooler Corp. v. Dial Mfg.*, No. 3:09-CV-1498-D, 2010 WL 1644193, at *3 (N.D. Tex. April 22, 2010) (finding that a motion to dismiss does not present a proper procedural mechanism for the court to evaluate facts related to bad faith in a trademark infringement case).

---

[7] Shazam's patent, U.S. Patent No. 6,990,453 claims priority to U.S. Provisional Application No. 60/222,023, which was filed on July 31, 2000 and therefore qualifies as prior art at least under 35 U.S.C. §§ 102(e) and 102(g)(2) (pre-AIA) to the Blue Spike Patents-in-Suit.

11

In any event, Blue Spike's criticisms do not withstand scrutiny. For example, Blue Spike wrongly argues that certain of its statements do not refer to "the characteristics of a good or service *itself*." *See* Motion at 4. But when these statements are properly viewed in the overall context in which they appear, they all relate to the characteristics of Shazam's or Blue Spike's products, as Shazam properly pled. *See* Shazam Counterclaim at ¶ 20 and Ex. A (article containing various Blue Spike statements addressed to Shazam's products), Ex. B (second article containing other Blue Spike statements discussing "Shazam's flagship product."). This is sufficient to state a claim for false advertising. *See, e.g., Pizza Hut*, 227 F.3d at 501 (finding that even a statement of opinion can be deemed to be false advertising when considered in the overall context in which it appears).

Similarly, Blue Spike alleges that the "first to create" fingerprinting technology statement is too vague as a matter of law to support a Lanham Act claim. *See* Motion at 6–7. But the Counterclaim alleges in detail that the "article states that Moskowitz and Blue Spike were the 'first to create' content 'fingerprinting' technology" and that this statement "make[s] false representations about Shazam or Counter-Defendants or convey[s] the misleading commercial impression to consumers that Moskowitz was the first to invent fingerprinting technology." Shazam Counterclaim at ¶ 14. There is no reasonable basis to conclude that this allegation is vague.

Blue Spike is also incorrect that Shazam bases its claim on the assertion that Blue Spike's products, including the Giovanni Abstraction Machine, are powered by its patented technology. *See* Motion at 8–9. To the contrary, the allegation about the Giovanni Abstraction Machine is not just based on a false claim that it is patented, but also that it had been removed from Blue

12

Spike's website and was not for sale. Shazam Counterclaim at ¶¶ 17–18. Any comparisons of the Giovanni machine to Shazam's products were therefore, by definition, false.

Accordingly, Blue Spike's criticisms cannot be reconciled with the record before the Court. And even if Blue Spike had raised a legitimate factual dispute about these allegations, it would still not be ripe at the motion to dismiss stage. *See, e.g., Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted.").

### F. Blue Spike Founder and CEO Is Liable for Statements He Made

Blue Spike's founder, CEO, and apparently sole employee, Scott Moskowitz, wrongly argues that he should not be liable for false statements he made on Blue Spike's web site or on Twitter. *See* Scott Moskowitz's Motion To Dismiss Shazam Entertainment Limited's Counterclaim (Dkt. 1583) at 10. This is incorrect. The articles published on Blue Spike's website specifically cited in Shazam's counterclaim use Blue Spike, LLC and Moskowitz interchangeably, attributing the false statements to both Moskowitz and his one-man company. For example, the article cited as Exhibit B in Shazam's counterclaim states that "***Moskowitz claims*** this technology has powered ***his Blue Spike products*** since the turn of the century." Shazam Counterclaim, Exh. B (emphasis added). This statement by Moskowitz directly attributes the "first to create" statement to him and his products.

Furthermore, the article cited as Exhibit A states that "***Shazam is engaged with Moskowitz*** in a lawsuit ***alleging that Shazam stole his signal abstracting technology*** to power its popular audio recognition application." Shazam Counterclaim, Exh. A (emphasis added). This statement attributes the misleading statement that Shazam stole Moskowitz's

13

technology to him. In addition, this statement is immediately followed by "***Blue Spike claims*** it patented that technology, the same technology powering its own products such as The Giovanni® Abstraction Machine™. Now ***Blue Spike is calling on the legal system*** to make things right," further evidencing the interchangeability of using "Blue Spike" and "Moskowitz" in the article. *Id*. BlueSpike itself attributes the false and misleading statements to Moskowitz and he therefore should be held liable. *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 426 (S.D.N.Y. 2013) ("Employees who direct, control, ratify, participate in, or are the moving force behind a Lanham Act violation can be held personally liable for those violations"); *Microsoft Corp. v. Suncrest Enter.*, C03-5424 JF (HRL), 2006 WL 1329881 (N.D. Cal. 2006) ("[w]hile a corporate officer is not necessarily individually liable for torts committed on behalf of the corporation, personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind the defendant corporation's infringement). Moreover, a motion to dismiss is not the correct vehicle for such arguments on the merits. *See, e.g., Harold H. Huggins Realty, Inc.*, 634 F.3d at 803. Shazam has properly plead that Moskowitz himself is liable for violation of the Lanham Act.

## V.   CONCLUSION

For the foregoing reasons, Shazam respectfully requests that Blue Spike's motion to dismiss be denied.

14

Date: June 9, 2014

Respectfully submitted,

*/s/ Joshua Furman, with permission by Michael E. Jones*

| | |
|---|---|
| Josh A. Krevitt | Michael E. Jones |
| NY Bar No. 2568228 | State Bar No. 10929400 |
| jkrevitt@gibsondunn.com | mikejones@potterminton.com |
| Benjamin Hershkowitz | Allen F. Gardner |
| NY Bar No. 2600559 | State Bar No. 24043679 |
| bhershkowitz@gibsondunn.com | allengardner@potterminton.com |
| R. Scott Roe | POTTER MINTON |
| NY Bar No. 4480224 | A Professional Corporation |
| sroe@gibsondunn.com | 110 N. College, Suite 500 |
| Joshua Furman | Tyler, TX 75702 |
| NY Bar No. 4612255 | Tel: 903.597.8311 |
| jfurman@gibsondunn.com | Fax: 903.593.0846 |
| GIBSON, DUNN & CRUTCHER LLP | |
| 200 Park Avenue | |
| New York, NY 10166 | |
| Ph. 212.351.4000 | |
| Fax: 212.351.6210 | |

*Counsel for Defendant
Shazam Entertainment Limited*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 9, 2014.

*/s/ Michael E. Jones*