UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 6:12-cv-499-MHS |
| v. | § § | Lead Case |
| Texas Instruments, Inc. et al., | § § | Jury Trial Demanded |
| *Defendants*. | § § § | |

**BLUE SPIKE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SHAZAM ENTERTAINMENT LIMITED'S COUNTERCLAIM [DKT. 1582]**

Blue Spike's motion to dismiss explained that Shazam wholly failed to plead two of the six required elements of its Lanham Act counterclaim (elements two and three). *See* Dkt. 1582 at 3. Blue Spike also explained that Shazam offered nothing but conclusory allegations for two other elements of its counterclaim (elements five and six). *Id*. Shazam's opposition (Dkt. 1607) does not remedy these deficiencies, confirming that dismissal is required.

**Element Two.** Blue Spike's motion noted that Shazam did not even plead the second element of its Lanham Act counterclaim, namely, that Blue Spike's statements "deceived or had the capacity to deceive a substantial segment of potential consumers." Dkt. 1582 at 3. In response, Shazam argues that it adequately pleaded this element through the combination of two statements: that (1) Blue Spike's allegedly false statements "constitute a . . . false description of and representation as to the nature, characteristics, and/or qualities of Shazam's and Counter-Defendant's goods or services" and (2) "Blue Spike's false statements are available on its website and via Twitter and are therefore accessible to a large segment of Shazam's customers." Dkt. 1607 at 4.

1

These passages do not add up to an allegation that Blue Spike's statements "deceived or had the capacity to deceive a substantial segment of potential consumers." The first passage merely alleges that Blue Spike's statement were false, but not every false statement actually deceives or has the capacity to deceive.[1] The second passage is a non sequitur—the question is whether Blue Spike's statements "deceived or had the capacity to deceive a substantial segment of potential consumers," not whether the statements were hypothetically widely accessible. Shazam does not (and could not honestly) allege that a "substantial segment of potential consumers" were or might have been deceived by the statements in question. Shazam fails in its after-the-fact effort to cobble together element two of its Lanham Act claim.

**Element Three.** Blue Spike's motion noted that Shazam did not even plead the third element of its Lanham Act counterclaim, namely, that the alleged deception caused by Blue Spike's statements "is material, in that it is likely to influence the purchasing decision." Dkt. 1582 at 3. In response, Shazam argues that "it is beyond reasonable dispute that consumers of mobile application products generally want to have the best products, and purchase products from innovators rather than copycats." Dkt. 1607 at 4. This conclusory statement does not make up for Shazam's failure to plead the materiality of Blue Spike's statements. Further, even if the Court overlooked this pleading deficiency, Shazam's explanation of materiality still falls flat. It is true that consumers "generally want to have the best products," but none of Blue Spike's statements actually asserts that Blue Spike's products are "the best." And Shazam offers no support for its assumption that consumers are influenced in their decision-making process by whether a "mobile

---

[1] For example, a statement that Blue Spike's CEO was the king of France would obviously be false, but it would neither deceive nor have the capacity to deceive any rational person.

application product" was made by an innovator or a clever copycat. In the real world, consumers generally give no thought about who invented the technology when buying a product. Consumers buy MP3 players from Apple, Sony, and other multinational companies, not from Karlheinz Brandenburg and the Fraunhofer-Gesellshaft company where he developed MP3 technology. And consumers buy mobile phones from Samsung and Apple because they perform well or are trendy. While they may still buy mobile phones from Motorola, their purchases have little or nothing to do with the fact that Motorola was the first company to mass market a mobile phone back in 1984, the sleek and stylish DynaTAC:



Shazam is wrong simply to assume that Blue Spike's claim to be an innovator is actually material to consumers' decisions to buy a particular product or service; more important,

Shazam is wrong to argue that it can survive dismissal when it has made no effort to plead any allegations about why Blue Spike's statements were material.

Shazam also argues that Blue Spike's statements are presumed material because Shazam alleges that the statements are "literally false." *Id*. at 6. But Shazam does *not* actually allege that the statements are literally false, let alone that the statements' literal falsity makes them material. *See generally* Dkt. 1397 at 26-30. Indeed, as Blue Spike explained in its motion, its statements are not the sort capable of literal falsity. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) ("Bald assertions of superiority or general statements of opinion cannot form the basis of Lanham Act liability. Rather the statements at issue must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.") (citations and internal punctuation omitted). Shazam fails to cite any allegation in its pleading that supports element three of its Lanham Act claim.

**Element Five.** Blue Spike's motion noted that Shazam offered nothing but bare legal conclusions to support the fifth element of its Lanham Act counterclaim, namely, that it "has been or is likely to be injured as a result of" Blue Spike's statements. Dkt. 1582 at 3. In response, Shazam merely points to the exact same conclusory statements and baldly asserts that they are enough to preclude dismissal. *See* Dkt. 1607 at 4, 8. Such statements are not enough to survive a motion to dismiss. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (to survive dismissal, legal conclusions must be supported by factual allegations).

**Element Six.** Blue Spike's motion noted that Shazam offered nothing but bare legal conclusions to support the sixth element of its Lanham Act counterclaim, namely,

4

that Blue Spike made the statements in question in "bad faith." Dkt. 1582 at 3. In response, Shazam argues that bad faith is not a required element for the statements that do not relate to patent infringement, and that "[a]s a result, there was no need for Shazam to allege bad faith with respect to Blue Spike's statements related to the quality of its products and any comparison to the quality of Shazam's products." Dkt. 1607 at 9. This argument is self-defeating, however, because by admitting that some of Blue Spike's statements relate to the quality of products, Shazam is necessarily conceding that those statements cannot be literally false. *See Pizza Hut, Inc.*, 227 F.3d at 496 (statements of opinion about quality cannot be literally false). As discussed above, literal falsity is Shazam's basis for arguing that it adequately pleaded materiality. *See* Dkt. 1607 at 6.

With regard to those Blue Spike statements that do concern patent infringement, Shazam attempts to show that it adequately pleaded bad faith by pointing to its allegations that Blue Spike engaged in inequitable conduct before the USPTO. *See* Dkt. 1607 at 10-11. But "[o]btaining a patent through inequitable conduct does not violate" the portion of the Lanham Act that "prohibits false designations of origin or false or misleading descriptions of goods or services"; rather, "the established remedy for inequitable conduct is unenforceability of the patent." *Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575 (Fed. Cir. 1996); *accord Advanced Magnetic Closure, Inc. v. Rome Fastener Corp.*, No. 98 CV 7766 (GBD), 2005 WL 1241896, at *11 (S.D.N.Y. May 24, 2005) ("[A]n assertion that a patent was procured through inequitable conduct does not state a cause of action for false advertising under the Lanham Act."). Apart from its irrelevant allegations of inequitable conduct before the USPTO, Shazam points to nothing that suggests Blue Spike made any of the contested statements in bad faith.

5

Shazam's opposition (Dkt. 1607) fails to show that Shazam has adequately pleaded all elements of its Lanham Act counterclaim or that the Blue Spike statements in question are even actionable under the Lanham Act. For these reasons plus those contained in its motion to dismiss (Dkt. 1582), Blue Spike respectfully reiterates its request that the Court dismiss Shazam's Lanham Act counterclaim with prejudice.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-0828
(903) 526-5477 fax

Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
44 North San Pedro Road
San Rafael, California 94903
(415) 785-3762
(415) 785-3805 fax

*Counsel for Blue Spike, LLC*

**Certificate of Service**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on June 19, 2014.

                                                                  /s/ Randall Garteiser