## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendants* | §§§§§§§§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br><br>v.<br><br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>　　*Defendants*. | §§§§§§§§§§§§§§§§§§§§§§§§§§§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY BLUE SPIKE LLC, BLUE SPIKE INC. AND SCOTT MOSKOWITZ AND RESPONSES TO INTERROGATORIES
<u>AND MOTION FOR SANCTIONS</u>**

## TABLE OF CONTENTS

FACTUAL BACKGROUND ...................................................................................................3

    I.  Document Production .................................................................................................3
    II. Interrogatory Objections and Responses ..............................................................6
    III. Source Code ..............................................................................................................6

ARGUMENT ...................................................................................................................................7

    I.  Blue Spike's Deficient Document Production.......................................................7

        a.  Documents and Source Code related to the Giovanni Abstraction Machine ...............................................................................7

        b.  Documents Related to Blue Spike's Watermarking Technology ..........8

        c.  All documents related to the prosecution of the Blue Spike patents-in-suit, including prior art, drafts of applications and office action responses, and any communications related to any applications or issued patents..................................................................9

        d.  All documents and communications related to the formation of and business activities of Blue Spike, Inc. and Blue Spike, LLC, including communications regarding the patents-in-suit, the Giovanni Abstraction Machine, Audible Magic Corporation, or Muscle Fish, LLC...........................................................9

        e.  Documents related to Marc Cooperman, including all documents produced and filed in the lawsuits between Marc Cooperman and Scott Moskowitz........................................................11

        f.  All documents related to the matters set forth in the "Factual Background" section of Blue Spike's Amended Complaint and set forth in Audible Magic's Answer and Counterclaims.....................12

    II.  Blue Spike's Deficient Interrogatory Objections and Responses ...................12

    III.  Blue Spike Should Pay for Audible Magic's Fees and Costs Related to Filing This Motion and Should Face Sanctions for Its Discovery Misconduct...............................................................................................15

Audible Magic is yet again forced to seek the Court's intervention because Blue Spike believes it is exempt from this Court's Local Civil Rules and Local Patent Rules. Blue Spike has refused to produce relevant documents and provided nonsensical interrogatory responses and objections that serve no other purpose but to delay and hinder Audible Magic's ability to defend itself from Blue Spike's claims and prosecute its claims against Blue Spike, LLC, Blue Spike, Inc. and Scott Moskowitz (collectively the "Blue Spike parties"). Audible Magic needs sufficient discovery now, in order to start taking depositions and develop its case.

This dispute involves a broad array of issues and correspondingly robust discovery is necessary. Blue Spike's Amended Complaint put at issue the entire business and inventive history of Blue Spike, LLC, Blue Spike Inc. and Mr. Moskowitz, including their digital watermarking business and the alleged evolution of that business into content-based recognition technology. *See* Dkt. 1400. Audible Magic's Answer and Counterclaims implicate a broad array of historical issues, given Mr. Moskowitz's knowledge of prior art, the interactions and history between Audible Magic's predecessor entity Muscle Fish LLC and Blue Spike, Inc. and Mr. Moskowitz. *See* Dkt. 1404. Blue Spike recognizes that broad discovery is necessary, demanding that Audible Magic retain and produce all business and technical materials from 1999 to present. *See* Higgins Declaration in Support of Motion to Compel ("Higgins Decl."), Exs. 14 and 15. Audible Magic has taken these requests seriously, and preserved and produced about 2.4 million documents, including old backup tapes, email and paper communications, historical business information back to 1993, documents about Muscle Fish's interactions Blue Spike and inventors Moskowitz and Berry, product information old and new, information about the accused products and code. Audible Magic's production reflects the full scope of issues in play in this dispute.

Unfortunately, the Blue Spike parties do not believe that they have to play by the same rules, producing only a handful of documents totaling only about 19,000 pages. Most of this was

1

generic printouts of public websites regarding the accused products of all 100+ defendants sued by Blue Spike LLC, along with a very small number of historical emails, 100 pages at most. In short, the Blue Spike parties are attempting to hide the facts in their possession. They refuse to produce detailed, full historical information about Blue Spike Inc. and Mr. Moskowitz, their business activities, their knowledge of the prior art, their knowledge of and interactions with Muscle Fish and Audible Magic, or information about the accused Blue Spike products.

Audible Magic expended significant time and resources attempting to explain to Blue Spike why categories of seemingly routine documents are relevant to a claim or defense in this case. Audible Magic provided a list of document categories that tracked Blue Spike's own Amended Complaint and Audible Magic's Counterclaims and, when Blue Spike complained it was not enough, provided a more detailed description of how each category is relevant under Local Rule 26(d). Blue Spike then complained that reliance on Local Rule 26(d) was inappropriate and it needed case law. To avoid motion practice, Audible Magic sent Blue Spike a five-page email with citations to relevant cases. Blue Spike's only response was that it did not agree. The Local Civil Rules of the Eastern District of Texas, however, are intended "to eliminate the need for lengthy and costly paper discovery and depositions that formerly had to be used to worm even basic information out of an opponent." *Personal Audio, LLC v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 146756, at *6 (E.D. Tex. 2011). Blue Spike apparently disagrees and its "refusal to disclose information without substantial justification is ground for sanctions." *Id.*

Audible Magic seeks an order requiring (1) Blue Spike to produce all documents relevant to this litigation (as outlined below); (2) Blue Spike to withdraw its improper objections to Audible Magic's Interrogatories and fully respond to each Interrogatory; (3) Blue Spike to reimburse Audible Magic for its costs and fees related to this motion; and (4) sanctions against Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz for their discovery misconduct.

2

## FACTUAL BACKGROUND

### I. Document Production

The Scheduling and Discovery Order required that on May 1, 2014 parties were to produce "all documents relevant to any party's claim or defense in this litigation." Dkt. 1332, at 6. Blue Spike produced documents in only three categories: (1) publicly available documents on certain defendants' products and the prosecution histories for the Blue Spike patents-in-suit; (2) license agreements; and (3) less than 100 pages of emails from Scott Moskowitz at the DICE Company (circa 1998-1999) generally related to his efforts to promote the Argent Software. Blue Spike has produced no documents related to Audible Magic's counterclaims and no documents related to any of the facts Blue Spike included in its Complaint.

Beginning on May 9, 2014, Audible Magic informed Blue Spike of the deficiencies in its document production. Higgins Decl. Ex. 1. Audible Magic provided Blue Spike with nine general categories of documents that should be produced:

- All documents related to the Giovanni Abstraction Machine.
- All documents related to the prosecution of the Blue Spike patents-in-suit, including prior art, drafts of applications and office action responses, and any communications related to any applications or issued patents.
- All documents and files related to the Blue Spike website (www.bluespike.com).
- All documents related to the formation of and business practices of Blue Spike, Inc. and Blue Spike, LLC, including corporate structure, employees, products, investors, financial data, and customers.
- All documents related to the dissolution of the DICE Company.
- All documents related to Marc Cooperman, including all documents produced and filed in the lawsuits between Marc Cooperman and Scott Moskowitz.
- All documents related to Audible Magic Corporation.
- All documents related to Muscle Fish, LLC.
- All communications between Scott Moskowitz and any third parties regarding the patents-in-suit, the Giovanni Abstraction Machine, Audible Magic Corporation, or Muscle Fish, LLC.

The parties met and conferred on May 13. Blue Spike stated that it did not believe any of the documents were relevant and that it would follow up on these requests. Blue Spike agreed to produce additional documents in the requested categories by May 23, 2014. Audible Magic

3

promptly provided a more detailed list of relevant documents specifically tied to issues raised by Blue Spike in its Amended Complaint and raised in Audible Magic's counterclaims. *See* Higgins Decl., Ex. 2.

On May 23 (the day that Blue Spike agreed to supplement its production), Blue Spike's counsel sent Audible Magic an email purporting to provide a "summary of the documents you requested Blue Spike Inc., Blue Spike LLC and Scott Moskowitz produce and our position with respect to each category." Higgins Decl. Ex. 3. Not only was this list incomplete with respect to the documents requested by Audible Magic, but it provided no position other than requesting that Audible Magic "provide case law" to show that the documents are relevant. Later that day, Blue Spike produced only 160 documents related to prosecution histories of related patents.

On May 28, Audible Magic sent Blue Spike another letter demanding that it remedy its deficient document production. *See* Higgins Decl. Ex. 4. Audible Magic described how each category of requested document is relevant to a claim or defense according to Civil Local Rule 26(d). *Id.* Audible Magic requested a second meet and confer on May 30, 2014. Blue Spike never responded to Audible Magic's request for a May 30 meet and confer. Blue Spike finally responded by email, complaining that Audible Magic relied on Civil Local Rule 26 and did not provide any case law. *Id.* Dumfounded by Blue Spike's complaint that Local Civil Rule 26 purportedly does not apply, Audible Magic nonetheless provided Blue Spike with citations to case law regarding the obvious relevancy of documents related to Audible Magic's claims and issues raised by Blue Spike in its Amended Complaint. *See* Higgins Declaration, Ex. 5.

The parties conducted a second meet and confer on June 3, 2014 to discuss Blue Spike's deficient document production and deficient interrogatory responses (see below). Blue Spike was once again unprepared to substantively discuss issues related to its lack of a document production. The parties walked through the categories of documents that Blue Spike should have

4

produced, but Blue Spike could not provide a definitive answer on any topic. That is, for each category Blue Spike could not (1) confirm whether any documents exist and (2) if documents do exist, whether Blue Spike would produce them or withhold them on some basis, or whether Blue Spike has destroyed the documents and when. Blue Spike, however, agreed that the parties are at an impasse as to the relevancy of each category of documents. Blue Spike also agreed to provide a further response by June 6, 2014. Blue Spike provided no response.

Audible Magic again followed up with Blue Spike on June 10, 2014. In Audible Magic's June 10 email, it again laid out the specific categories of documents that Blue Spike must produce. Higgins Decl. Ex. 6. It requested that Blue Spike provide the following information:

**A - Whether documents in the category exist, and**
**B - If documents exist, whether the documents will be produced and when, or whether the documents will be withheld and on what grounds, or**
**C - If no documents presently exist, whether such documents were destroyed and when the destruction occurred.**

This was intended to narrow the scope of the document requests and narrow the scope of this Motion. If no documents ever existed in a particular category, Audible Magic would not move to compel them. Two days later, counsel for Blue Spike responded that "…I plan to respond tomorrow to your email below along with supplemental ROGs like we discussed." Higgins Decl. Ex. 7. Blue Spike failed to provide either.

In a last effort to avoid motion practice, Audible Magic sent Blue Spike an email indicating that it was being forced to file a motion to compel and seek sanctions, given Blue Spike's statements that the parties were at an impasse and its refusal to provide a full production. *See* Higgins Decl. Ex. 8. Rather than provide a response, Blue Spike's counsel sent a nonsensical email that did nothing to clarify any of the issues in dispute.[1] *See* Higgins Dec. Ex.

---

[1] Blue Spike's counsel did indicate that "[t]here are no documents or files related to www.bluespike.com to produce." Audible Magic removed that issue from its motion, even

5

9. Audible Magic advised Blue Spike that it would move to compel and seek sanctions.

Blue Spike's counsel, however, requested yet another extension with the promise that they would produce the requested documents, including those that are in their office for at least a week, but they had not yet reviewed. *See* Higgins Decl. Ex. 16. Audible Magic offered Blue Spike a deadline of noon on June 24, 2014 to produce all of the requested documents. *Id.* Instead, Blue Spike produced 22 total pages on June 24. Higgins Decl. ¶19.

## II. Interrogatory Objections and Responses

Audible Magic served its First Set of Interrogatories to Blue Spike on April 2, 2014. *See* Higgins Decl. Ex. 10. After granting Blue Spike an extension to answer to May 16, 2014, Audible Magic received a nonsensical set of objections and responses that contradict publicly available information and contradict information in Blue Spike's complaint. *See* Higgins Decl. Ex. 11. Audible Magic described the deficiencies in a May 28, 2014 letter and the parties discussed these issues on the June 3 meet and confer. Higgins Decl. Ex. 4. Blue Spike agreed that many of its answers may not be sufficient and agreed to provide supplemental responses by June 13. Blue Spike never sent any supplemental responses.

Audible Magic offered Blue Spike a third chance and gave Blue Spike an extension to June 24 at noon to provide supplemental responses. *See* Higgins Decl. Ex. 16. Blue Spike again failed to do so. Blue Spike instead granted itself a unilateral extension and served what are purportedly supplemental responses, but in a form never before seen. *See* Higgins Decl. Ex. 17.

## III. Source Code

Blue Spike refuses to confirm whether source code ever existed for the accused Giovanni Abstraction Machine. The Giovanni Abstraction Machine was offered for sale by Blue Spike,

---

though it is hard to believe that no documents exist for a website that is still in operation. Audible Magic will later seek sanctions should Blue Spike's statement prove to be false.

6

Inc. and/or Blue Spike, LLC at least during 2012 and 2013, yet Blue Spike now asserts that there is no source code to produce. Blue Spike has not confirmed whether it is, or was ever, in possession of *any* source code for the Giovanni Abstraction Machine, or any other Blue Spike product similar in function. The only response Audible Magic received was "There is no code to produce in response to your request with respect to the accused device." Higgins Decl. Ex. 12. Audible Magic requested clarification of what this meant, but Blue Spike never clarified.

**ARGUMENT**

**I.      Blue Spike's Deficient Document Production**

The Scheduling and Discovery Order (Dkt. 1332) required Blue Spike, Inc., Blue Spike, LLC, and Scott Moskowitz to produce on May 1, 2014 "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and ***that are relevant to the claim or defense of any party***." The Blue Spike parties failed to comply with the Court's Order. Moreover, the Blue Spike parties argue that they are exempt from the Court's Scheduling and Discovery Order, the Federal Rules of Civil Procedure, and the Civil Local Rules of the Eastern District of Texas. Such an absurd belief has made the meet and confer process result in a clear impasse between the parties.

Rather than step through each category of documents requested by Audible Magic, the following sections address broad categories to which common issues apply. *See Laserdynanics, Inc. v. Asus Computer Int'l*, 2009 U.S. Dist. LEXIS 3878, *16 (E.D. Tex. 2009) (addressing disputes over document production by "overarching issues" rather than individual requests). And because "Local Rule 26(d) provides guidance regarding whether a particular piece of information is "relevant to the claim or defense of any party," Audible Magic provides citations to the relevant portions of Rule 26(d) that support its positions. *See Personal Audio, LLC*, 2011 U.S. Dist. LEXIS 146756, at *6.

7

### a. Documents and Source Code related to the Giovanni Abstraction Machine

The Giovanni Abstraction Machine is the accused product in Audible Magic's patent infringement counterclaim, and it is a subject of Audible Magic's Lanham Act counterclaim, unjust enrichment counterclaim, and common law unfair competition counterclaim. Notwithstanding its importance to the case, Audible Magic has received no technical or business documents related to the Giovanni Abstraction Machine, nor has it received any source code for the Giovanni Abstraction Machine or any related product. P.R. 3-4(a) requires the alleged infringer to produce any and all documents describing the operation of any aspects or elements of an accused instrumentality. *Ioli Trust v. Avigilon Corp.*, 2012 U.S. Dist. LEXIS, *7 (E.D. Tex. 2012). Not only is this information required to be produced under the Patent Rules, but it is also relevant information under Civil Local Rule 26(d)(1) and (d)(3)-(5).

### b. Documents Related to Blue Spike's Watermarking Technology

Blue Spike refuses to produce information regarding any of its watermarking products, which are relevant to Audible Magic's counterclaim for inequitable conduct, Lanham Act violations, and unfair competition. Blue Spike and Mr. Moskowitz made false and misleading statements that their "fingerprinting" technology in the asserted patents is "technology that has powered [Moskowitz's] Blue Spike products since the turn of the century," Audible Magic is entitled to explore the nature of all of Mr. Moskowitz's products at or near "the turn of the century" in order to determine whether this statement is true.

In addition to the relevance to Audible Magic's Lanham Act claim, technical information regarding Blue Spike's and Mr. Moskowitz's watermarking technology is relevant to their motivation to withhold material prior art from the USPTO, and is thus relevant to Audible Magic's inequitable conduct counterclaim. In each of Mr. Moskowitz's asserted patents he includes a section entitled "Cross-Reference to Related Applications." In these sections he lists

all of his watermarking patent applications and states that the applications "claim[] the benefit of" those watermarking applications. In subsequent certificates of correction, Mr. Moskowitz changed this language to state that the prior watermarking applications are "related to" the asserted patents. Thus, Mr. Moskowitz and Blue Spike appear to have asserted that their prior watermarking technology is relevant to the asserted patents and Audible Magic is entitled to explore that prior technology thoroughly in discovery, in order to understand the relationship between that work and the asserted patents.[2]

> c. **All documents related to the prosecution of the Blue Spike patents-in-suit, including prior art, drafts of applications and office action responses, and any communications related to any applications or issued patents.**

Blue Spike has still not produced Scott Moskowitz's personal files related to his prosecution of the Blue Spike patents-in-suit. Scott Moskowitz is not an attorney and prosecuted at least the '472 and '700 patents pro se. Therefore, his personal files related to the prosecution of the patents-in-suit must be produced. These documents are relevant to Blue Spike's claims of patent infringement and at least Audible Magic's counterclaim for unenforceability under Civil Local Rule 26(d)(1) and (d)(3)-(5).

> d. **All documents and communications related to the formation of and business activities of Blue Spike, Inc. and Blue Spike, LLC, including communications regarding the patents-in-suit, the Giovanni Abstraction Machine, Audible Magic Corporation, or Muscle Fish, LLC.**

Blue Spike has produced no documents related to the business history of the Blue Spike parties. This includes, but is not limited to, all internal communications regarding the building of

---

[2] For example, if the prior undisclosed watermarking products and technologies on sale and publicly disclosed by Blue Spike involved features or elements (for example, the allegedly novel "abstracting" process) that were material to the applications for the asserted patents then withholding such would very likely constitute inequitable conduct. It does not matter that the undisclosed prior art product is different from the asserted patents. *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) (uncited reference was material even assuming that it disclosed a device that "operates differently" because a differently-operating device "may nonetheless have relevant features.")

9

the Blue Spike business and assessment of competitors, competing or similar technologies, all analyses, conversations, discussion, documents, and emails relating to Muscle Fish and Audible Magic, or any other company providing content-recognition technologies. It further includes documents describing the formation of, business practices and business history of Blue Spike, Inc. and Blue Spike, LLC. Blue Spike and Mr. Moskowitz appear to be withholding emails, correspondence and documents that relate to the subject matter of this action. This includes documents reflecting or relating to the interactions of employees of Blue Spike with the Audible Magic/Muscle Fish parties and their knowledge and activities regarding the Audible Magic/Muscle Fish technology and business. These documents are directly relevant to Audible Magic's counterclaims under Civil Local Rule 26(d)(1); (d)(3)-(5).

More specifically, this category includes documents and information related to Blue Spike's watermarking products. This information is highly relevant to Audible Magic's inequitable conduct, unjust enrichment and unfair competition defenses/counterclaims. As expressly alleged in the counterclaims, and established directly through the 2.4 million documents produced by Audible Magic, Mr. Moskowitz was struggling to get the Blue Spike, Inc. watermarking business off the ground, the watermarking technology was ultimately not adopted by any standard setting body, and some standard setting efforts had failed altogether. At the same time, Audible Magic's evidence shows that throughout this period, Mr. Moskowitz was repeatedly exposed to Muscle Fish's content based recognition technology, he needed its technology, he wanted to use it, he needed Muscle Fish's technical help, and before filing his initial application even went so far as to tell Muscle Fish that it should get a trademark on one of the prior art products that he withheld from the patent office. He likely was aware of other content-based recognition technologies as well. He withheld all of this from the Patent Office.

Audible Magic is now entitled to see the other side of the proverbial coin – i.e. the full

10

documentary record of activities and communications from Blue Spike's files and records. The documentary history of Blue Spike's watermarking product and business activities are the relevant context in which the asserted patents were filed and are relevant to establish Blue Spike's and Mr. Moskowitz's culpable intent. *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys.*, 1993 U.S. App. LEXIS 22042, 13-15 (Fed. Cir. 1993) (intent to deceive inferred from broader commercial context in which the prosecution took place and in particular the "competitive pressure" placed on the applicant by a competitor who used different, superior technology). Also, Blue Spike put the watermarking products and business activities of Mr. Moskowitz and Blue Spike, Inc., as well as the DICE Company and its activities squarely at issue. *See* Paragraphs 31-44 of Blue Spike's Amended Complaint. For this reason alone, Blue Spike cannot avoid producing these documents.

>    **e. Documents related to Marc Cooperman, including all documents produced and filed in the lawsuits between Marc Cooperman and Scott Moskowitz.**

Scott Moskowitz' and Blue Spike's documents regarding Marc Cooperman are relevant, under at least Local Rule 26(d)(4), to Audible Magic's counterclaims, particularly the counterclaims for unenforceability, invalidity by derivation and unjust enrichment. Cooperman was a former business partner of Scott Moskowitz at the DICE Company, which was operating in the digital content recognition space. The DICE Company and its principals communicated with, and competed against, other companies offering content recognition, including Muscle Fish, LLC. Cooperman later sued Moskowitz on the basis that Moskowitz misappropriated Mr. Cooperman's watermarking software and used that technology to unilaterally form Blue Spike, Inc., freezing Mr. Cooperman out of the business and taking his intellectual property and technology. These allegations and any documents related to Cooperman are relevant to Moskowitz's business practices and habit of stealing other's inventions and labeling them as his own. *See e.g. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir.

11

1990) (finding relevant materials related to prior lawsuits that sought evidence related to habit or routine practice, which was relevant to prove that conduct on particular occasion was in conformity with habit or routine practice). Further, Blue Spike put at issue the DICE Company and its activities. *See* Paragraphs 31-44 of Blue Spike's Amended Complaint (Dkt. 1404). Accordingly, the materials regarding the dispute between Cooperman and Moskowitz regarding the DICE Company are relevant to Audible Magic's counterclaims.

> **f. All documents related to the matters set forth in the "Factual Background" section of Blue Spike's Amended Complaint and set forth in Audible Magic's Answer and Counterclaims.**

In Audible Magic's May 18th correspondence to Blue Spike, Audible Magic provided categories of documents and information that are relevant based on explicit statements in Blue Spike's Amended Complaint and in Audible Magic's Answer and Counterclaims. *See* Higgins Decl. Ex. 2. Nonetheless, Blue Spike has asserted that any such documents are not relevant to a claim or defense of any party. Because these topics were introduced to the case and directly put at issue by Blue Spike or Audible Magic, it cannot skirt its responsibility to produce documents related to each topic. Audible Magic cannot prosecute its claims nor can it adequately prepare its defense to Blue Spike's claims while Blue Spike stonewalls Audible Magic during discovery. Accordingly, for each category of documents described above in sections (a) – (f), Blue Spike should be ordered to make a full and complete document production.

**II. Blue Spike's Deficient Interrogatory Objections and Responses**

Blue Spike's responses to Interrogatories 6-10 include improper objections and responses that contradict the public record and common sense. Indeed, Blue Spike objected to providing any response on behalf of Blue Spike, Inc. or its CEO Scott Moskowitz, but included responses

12

that could only have been garnered from those two parties.[3] Audible Magic attempted to work with Blue Spike to correct the errors in its objections and responses, but Blue Spike first refused and then attempted to supplement with further nonsensical answers..

*Interrogatory No. 6:* This Interrogatory asks Blue Spike to identify the date it contends that it gave Audible Magic notice of the patents-in-suit and to describe that event in detail. Blue Spike objects that such information is privileged and that the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Blue Spike, however, cannot maintain in good faith that the date it alleges that notice was provided to Audible Magic is not relevant or somehow privileged. It must withdraw these objections to the extent it is withholding a full and accurate response. Blue Spike's initial response – that it gave Audible Magic notice of the patents-in-suit in 2006, is more troubling than its improper objections. Blue Spike, LLC did not exist in 2006, and it is impossible to provide notice in 2006 for patents that did not even issue until at least March 18, 2008. Recognizing the impossibility of its initial answer, Blue Spike now contends that "Blue Spike placed defendants on notice by listing the patents-in-suit on its website." Higgins Decl. Ex. 17. This response is nearly as absurd as its initial response. Blue Spike must withdraw its improper objections and provide a response that is legally sufficient.

*Interrogatory No. 7:* This Interrogatory seeks Blue Spike's first knowledge of the Audible Magic accused products, including the date, how the knowledge was acquired, and the person who possessed such knowledge. Blue Spike responds only that "Blue Spike, LLC responds that all pre-suit investigations are covered by the attorney client privilege and the work product immunity doctrine." This objection is improper in the Eastern District of Texas at least

---

[3] In paragraph 2 of its Amended Complaint Blue Spike treated these entities as synonymous: "Blue Spike, LLC and Blue Spike, Inc. are collectively referred to as 'Blue Spike'" Notwithstanding Audible Magic's disagreement with Blue Spike, LLC's tactics, Audible Magic since served complementary interrogatories on Blue Spike, Inc. and Scott Moskowitz. If similar issues arise regarding the responding entity, Audible Magic will address those at a later date.

13

because Audible Magic has made a claim under §285 that this is an exceptional case. *See, e.g., Ultimatepointer, LLC v. Nintendo Co.*, 2013 U.S. Dist. LEXIS 169920, at *18 (E.D. Tex. 2013); *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-cv-248, Docket No. 290 (E.D. Tex. 2013). Even if Blue Spike is contending that the documents evidencing Blue Spike's first knowledge of the accused products are privileged, it still must fully answer the Interrogatory with the facts contained in those documents. *See, e.g, Proctor & Gamble Co. v. S.C. Johnson & Son, Inc.*, Civ. Action No. 9:08-cv-143, at 8 (E.D. Tex. 2009) (noting that "[i]t is difficult to imagine how the factual information SCJ seeks – i.e., the actual test results, without commentary or analyses from any of P&G's scientists or attorneys – can be privileged"). Blue Spike must respond fully to Interrogatory No. 7 because it seeks only the underlying factual information related to Blue Spike's pre-suit activities.

> ***Interrogatory No. 8:*** This Interrogatory seeks Blue Spike's validity contentions. Blue Spike provides no substantive response, arguing that the interrogatory is premature because claim construction has not occurred. But that argument has been squarely rejected by this Court. *Personal Audio, LLC v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 144281, at *6 (E.D. Tex. 2010).

> ***Interrogatory No. 9:*** This Interrogatory seeks Blue Spike's first knowledge of the asserted Audible Magic patent (U.S. Patent 6,834,308). Blue Spike's supplemental response is now that it became aware of the Audible Magic patent "on or about December 26, 2007" but fails to provide the facts surrounding its answer or identify the individual(s) that had this knowledge. Blue Spike must completely answer this interrogatory.

> ***Interrogatory No. 10:*** This Interrogatory seeks an identification of offers for sale, sales, and licenses of the Accused Blue Spike Product. Blue Spike, however, objects to the Interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. It is difficult to fathom how information related to offers for sale of the Accused Product is not

14

relevant. Further, Blue Spike objects that the facts related to any sales and offers for sale of the Giovanni Abstraction Machine are privileged. Such information cannot be privileged. Blue Spike's substantive response is difficult to make sense of. Blue Spike responds on behalf of Blue Spike, LLC that Blue Spike, LLC (not Blue Spike, Inc.) offered the Giovanni Abstraction Machine for sale "from early 2012 until August 2012." This is clearly inaccurate because the Giovanni Abstraction Machine was available for purchase at least until December 13, 2003. *See* Higgins Decl. Ex. 12. Moreover, this website appears to have been operated by Scott Moskowitz and Blue Spike, Inc., not Blue Spike, LLC. Blue Spike should be ordered to provide the exact dates that the Giovanni Abstraction Machine was offered for sale correct and provide complete logs for the Blue Spike website supporting its answer.

### III. Blue Spike Should Pay for Audible Magic's Fees and Costs Related to Filing This Motion and Should Face Sanctions for Its Discovery Misconduct.

Blue Spike's discovery misconduct obviates the purpose of the Local Rules to eliminate costly discovery to "worm even basic information out of an opponent." *Personal Audio*, 2011 U.S. Dist. LEXIS 146756, at *6. Blue Spike has provided no "substantial justification" for its failure to produce relevant documents and properly respond to interrogatories. *Id.* Accordingly, its conduct is ground for sanctions. *Id.*

This Court has ordered sanctions on defendants in patent infringement cases based on (1) the failure to produce relevant documents, (2) the imposition of numerous improper objections, and (3) the failure to meet and confer in good faith to resolve disputes. *See Laserdynanics,* 2009 U.S. Dist. LEXIS 3878, *19-20. Blue Spike is guilty of all three grounds for sanctions and in addition should be sanctioned for its dishonest interrogatory responses that contradict prior pleadings and the public record. Audible Magic, therefore requests that the Court order appropriate sanctions against Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz and award Audible Magic its costs and fees associated with filing this motion.

Dated: June 26, 2014 Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## **CERTIFICATE OF CONFERENCE**

We hereby certify that Audible Magic complied with the meet and confer requirement in Local Rule CV-7(h).  Blue Spike indicated that it opposes Audible Magic's motion.  The parties conducted two meet and confers to discuss Blue Spike's lack of document product and insufficient interrogatory responses.  The first meet and confer was a telephonic conference held on May 13, 2014.  Present for Audible Magic were Gabriel Ramsey, Chris Higgins, Alyssa Caridis, and Walter Lackey.  Present for Blue Spike were Randall Garteiser and Chris Honea.  No agreement was reached.  The parties conducted a second meet and confer on  June 3, 2014.  Present for Audible Magic were Gabriel Ramsey, Chris Higgins, Alyssa Caridis, Eric Findlay, and Walter Lackey.  Present for Blue Spike were Randall Garteiser and  Chris Honea.   The parties were unable to reach agreement that any of the deficiencies were resolved.  After two meet and confers and additional communications in attempt to remedy the deficiencies, the parties are at an impasse.


*/s/ Eric H. Findlay*
Eric H. Findlay

*/s/ Gabriel M. Ramsey*
Gabriel M. Ramsey

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on June 26, 2014.

                                      */s/ Eric H. Findlay*
                                      Eric H. Findlay