# Exhibit 4



ORRICK, HERRINGTON & SUTCLIFFE LLP
COLUMBIA CENTER
1152 15TH STREET, N.W.
WASHINGTON, D.C.  20005-1706

tel  +1-202-339-8400
fax  +1-202-339-8500
WWW.ORRICK.COM

May 28, 2014

Christopher J. Higgins
(202) 339-8418
chiggins@orrick.com

Randall Garteiser
Garteiser Honea, PC
218 North College Avenue
Tyler, Texas 75702

Re:   *Blue Spike, LLC v. Audible Magic Corporation, et al., 6:12-cv-576 (E.D. Texas)*

Dear Randall:

I write to address the deficiencies in Blue Spike, LLC's, Blue Spike, Inc.'s, and Scott Moskowitz's document production and Interrogatory responses.

**<u>Document Production Deficiencies</u>**

Blue Spike's document production remains deficient.  Audible Magic provided specific details of the deficiencies in Blue Spike's document production in my letter of May 9, 2014 and our subsequent meet and confer on May 13, 2014.  We also provided to Blue Spike a detailed list of relevant documents on May 18, 2014, a copy of which is attached to this letter.  Since then, Blue Spike has done nothing more than produce a handful of prior art references and unrelated prosecution histories.

None of the deficiencies in Blue Spike's document production has been remedied by Blue Spike to date, including its May 23, 2014 production of 160 documents of several prosecution histories and prior art.  Blue Spike has done nothing in response other than delay its document production obligations by claiming it does not understand how any documents are relevant.  Indeed, your email of May 23, 2014 to Gabe Ramsey demonstrates Blue Spike's delay tactics.  First, you purport to provide a "summary of the documents [Audible Magic] requested Blue Spike, Inc., Blue Spike LLC and Scott Moskowitz produce…"  Your list, however, is incomplete and fails to address many types of documents we requested.  Below is our list again, with an explanation of relevance to the claims in the lawsuit.  Second, your email provides nothing other than vague assertions that entire categories of documents are "not relevant" to which you then request "case law in support" of our position.  Audible Magic is not going to spend its time and resources researching basic case law that describes fundamental document production responsibilities that are clearly outlined in the Eastern District of Texas Local Civil Rules.  As you are aware, the Local Rules provide for broad discovery into anything relevant to a claim or defense in the litigation:

Randall Garteiser
May 28, 2014
Page 2

(d) Relevant to the Claim or Defense. The following observations are provided for counsel's guidance in evaluating whether a particular piece of information is "relevant to the claim or defense of any party:"

(1) it includes information that would not support the disclosing parties' contentions;

(2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

(3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;

(4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and

(5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

Local Civil Rule 26(d).

Audible Magic addressed the relevance of the documents it seeks in multiple letters, Gabe Ramsey's email to you of May 18, 2014 that included a list of relevant topics with respect to allegations plead by parties in their complaints, and in the parties' meet and confer on May 13, 2014.  Nonetheless, to provide further guidance to Blue Spike, Audible Magic describes again how each category of documents is relevant to this action:

- All communications between Scott Moskowitz and any third parties regarding the patents-in-suit, the Giovanni Abstraction Machine, Audible Magic Corporation, or Muscle Fish, LLC.   Blue Spike and Mr. Moskowitz appear to be withholding emails, correspondence and documents detailing the history, technology and business of Blue Spike, Inc., Blue Spike LLC, and Mr. Moskowitz that relate to the subject matter of this action and their activities.  This includes documents reflecting or relating to the interactions of these people and entities with the Audible Magic/Muscle Fish parties and their knowledge and activities regarding the Audible Magic/Muscle Fish technology and business.  The business history of Blue Spike, LLC and Blue Spike, Inc. are directly relevant to Audible Magic's counterclaims under Civil Local Rule 26(d)(1); (d)(3)-(5).

- All documents related to the Giovanni Abstraction Machine.  Audible Magic has received no technical documents related to the Giovanni Abstraction Machine.  These documents are relevant at least to Audible Magic's patent infringement counterclaim, Lanham Act counterclaim, unjust enrichment counterclaim, and common law unfair competition counterclaim under Civil Local Rule 26(d)(1) and (d)(3)-(5).

Randall Garteiser
May 28, 2014
Page 3

- All documents related to the prosecution of the Blue Spike patents-in-suit, including prior art, drafts of applications and office action responses, and any communications related to any applications or issued patents.  Blue Spike produced on May 23, 2014 copies of publicly-available prosecution histories for patent applications filed by Scott Moskowitz on behalf of the Wistaria Trading Co.  This production also included copies of certain prior art references.  Blue Spike has still not produced Scott Moskowitz's personal files related to his prosecution of the Blue Spike patents-in-suit.  These documents are relevant to Blue Spike's claims of patent infringement and at least Audible Magic's counterclaim for unenforceability under Civil Local Rule 26(d)(1) and (d)(3)-(5).

- All documents and files related to the Blue Spike website (www.bluespike.com).  You informed Audible Magic that Blue Spike does not "understand the significance of such information and how it pertains to the claims asserted in this lawsuit."  Audible Magic asserted counterclaims based on specific statements on the Blue Spike website.  We fail to see how Blue Spike can maintain a good faith belief that any documents related to the website are not relevant and could not be considered to "have an influence on or affect the outcome of a claim or defense."

- All documents related to the formation of and business practices of Blue Spike, Inc. and Blue Spike, LLC, including corporate structure, employees, products, investors, financial data, and customers.  These documents are related to Blue Spike's claims for patent infringement and Audible Magic's counterclaims under Civil Local Rule 26(d)(1)-(5).  We have not received any documents in this category.

- All documents related to the dissolution of the DICE Company.  Blue Spike selectively produced emails from Scott Moskowitz while working at the DICE Company.  It cannot then withhold other documents related to the DICE Company.  These documents are relevant at least to Audible Magic's counterclaims of unenforceability and unjust enrichment under Local Civil Rule 26(d)(2)-(5).

- All documents related to Marc Cooperman, including all documents produced and filed in the lawsuits between Marc Cooperman and Scott Moskowitz.  Scott Moskowitz' and Blue Spike's communications with Marc Cooperman are directly relevant to Audible Magic's counterclaims in this suit, particularly the counterclaims for unenforceability and unjust enrichment under at least Civil Local Rule 26(d)(4).  Moreover, Audible Magic disclosed that it intends to depose Marc Cooperman, who is a relevant individual under Local Civil Rule 26(d)(2).

Audible Magic requested that Blue Spike supplement its production by May 23, 2014 to remedy the above-indentified deficiencies.  Blue Spike failed to do so and offered little more than a self-serving statement that Audible Magic is pursuing counterclaims "where Audible Magic knows there are no damages."  *See* Email from Garteiser to Brasher (cc'ing Audible Magic) of May 12, 2014.  First, whether damages exist is not for Blue Spike to independently determine.  Indeed, Audible Magic believes that Blue Spike has no damages for its claims in the case, but nonetheless produced millions of pages of documents to comply with its obligations under the

Randall Garteiser
May 28, 2014
Page 4

Eastern District of Texas Local Rules.  Second, because Blue Spike has produced so few documents related to Audible Magic counterclaims, it is impossible for Audible Magic to accurately determine the amount of damages attributable to the Blue Spike entities.  Audible Magic can assure you, however, that it would not bring claims that it believes have no damages. To the contrary, Audible Magic provided in its damages disclosure the amount of damages it seeks.

In addition, Blue Spike still has not confirmed whether it has in its possession source code for the Giovanni Abstraction Machine, the accused product in Audible Magic's patent infringement counterclaim.  This is inexcusable.  Blue Spike must know whether it has in its possession source code for one of only two products it offered for sale through December 2013.  Blue Spike must confirm by May 30, 2014 whether it has any source code for the Giovanni Abstraction Machine in its possession, custody, or control.

To the extent that Blue Spike alleges that any relevant documents have been destroyed or are no longer in its possession, custody, or control, it must explain why.  Blue Spike entities have been engaged in litigation since 2004 and accordingly, have been under a duty to maintain documents. With the start of claim construction approaching next week, Blue Spike's utter failure to provide even a partially complete document production is prejudicing Audible Magic.  Audible Magic believes the parties are at an impasse on this issue, but is willing to meet and confer with Blue Spike again on May 30, 2014 to the extent Blue Spike intends to remedy any of the deficiencies noted in this letter.  Any issues not directly remedied by Blue Spike prior to or in the May 30, 2014 meet and confer will be deemed ripe for Court involvement.

## Blue Spike Interrogatory Responses

Blue Spike's responses to Audible Magic's First Set of Interrogatories are troubling in many respects.  As a general matter, Blue Spike attempted to limit its responses to "Blue Spike, LLC" but yet responded with information that could have only been obtained through Scott Moskowitz or Blue Spike, Inc.  Blue Spike, LLC relies on documents that have been produced on behalf of all Blue Spike entities for its responses, relies on the activities of Blue Spike, Inc. to allegedly establish notice of the patents-in-suit in 2006, and responds to Interrogatories directed only to Scott Moskowitz.  Blue Spike cannot have it both ways.  It has waived any objection it could have made by responding on behalf of all Blue Spike entities.  To the extent an Interrogatory was not fully answered on the basis of this improper objection, the Blue Spike entities must provide a complete response.

Deficiencies with respect to individual Interrogatories are provided below.

*Interrogatory No. 1:*  Blue Spike fails to answer the Interrogatory.  Interrogatory No. 1 requests, among other things, an identification of the date of conception and reduction to practice of each asserted claim and the date of first use.  Blue Spike provides no date for any asserted claim for conception, reduction to practice, or first use.  Rather, it states that Moskowitz and Mike Berry filed a patent application related to "signal abstracting" and then refers to a range of 2,261 pages of the prosecution histories of the patents.  Blue Spike has now failed to provide a date for

Randall Garteiser
May 28, 2014
Page 5

conception and reduction to practice in its Patent Rule disclosures and in response to this Interrogatory. Blue Spike is precluded from offering a date prior to the September 7, 2000 filing date of the patents-in-suit.

In previous meet and confers related to Blue Spike's conception and reduction to practice disclosure under the Local Patent Rule, you indicated that documents evidencing the conception and reduction to practice are privileged. We fail to see how Blue Spike, LLC can assert privilege for events that occurred over ten years prior to its institution. Please advise as to whether Blue Spike, LLC has withheld any documents relevant to conception and reduction to practice on the basis of privilege.

**Interrogatory No. 6:** Blue Spike's Response is improper and flat-out wrong for several reasons. First, the Interrogatory asks Blue Spike to identify the date it contends that it gave Audible Magic notice of the patents-in-suit and to describe that event in detail, but Blue Spike provides several improper objections. Blue Spike first objects that such information is privileged. Audible Magic's Interrogatory seeks communications with a third party (Audible Magic), which clearly cannot be privileged. Blue Spike must confirm that it is not withholding any information on the basis of any privilege. Blue Spike also objects that the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and that it is compound. Blue Spike, however, cannot maintain in good faith that the date it alleges that notice was provided to Audible Magic is not relevant. Additionally, unless Blue Spike can provide the specific number of subparts this Interrogatory (and any other to which a similar objection was made) allegedly comprises and the reasons for such, the objection is waived.

Blue Spike's actual response is more troubling than its improper objections. First, Blue Spike is clearly responding on behalf of either Blue Spike, Inc. or Scott Moskowitz because Blue Spike, LLC did not exist in 2006, when it alleges it provided notice to Audible Magic. As noted above, Blue Spike has waived any objection that its responses are somehow limited to Blue Spike, LLC. In addition, it is impossible for Audible Magic to have been given notice in 2006 of the patents-in-suit because the first of those four patents did not even issue until March 18, 2008. Indeed, Blue Spike provides no details for the basis for this date of alleged notice.

Finally, Blue Spike states that it could not provide a complete response because discovery has only just commenced. This Interrogatory, however, seeks information that is within Blue Spike, LLC, Blue Spike, Inc., and/or Scott Moskowitz' possession or personal knowledge to which no discovery is needed. Blue Spike must supplement its response to provide details on how a nonexistent entity can provide notice to Audible Magic of a nonexistent patent in 2006. Blue Spike must also withdraw its inappropriate objections to this Interrogatory.

**Interrogatory No. 7:** This Interrogatory seeks Blue Spike's first knowledge of the Audible Magic accused products, including the date, how the knowledge was acquired, and the person who possess such knowledge. Blue Spike responds only that "Blue Spike, LLC responds that all pre-suit investigations are covered by the attorney client privilege and the work product immunity doctrine." This objection is improper in the Eastern District of Texas at least because Audible Magic has made a claim under §285 that this is an exceptional case. *See, e.g.,*

Randall Garteiser
May 28, 2014
Page 6

*Ultimatepointer, LLC v. Nintendo Co.*, 2013 U.S. Dist. LEXIS 169920, at *18 (E.D. Tex. Dec. 3, 2013); *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-cv-248, Docket No. 290 (E.D. Tex. 2013). Even if Blue Spike is contending that the actual documents evidencing Blue Spike's first knowledge of the Accused Functionalities of the Audible Magic accused products are privileged, it still must fully answer the Interrogatory with the facts contained in those documents. *See, e.g, Proctor & Gamble Co. v. S.C. Johnson & Son, Inc.*, Civ. Action No. 9:08-cv-143, at 8 (E.D. Tex. May 27, 2009) (noting that "[i]t is difficult to imagine how the factual information SCJ seeks – i.e., the actual test results, without commentary or analyses from any of P&G's scientists or attorneys – can be privileged"). Blue Spike must respond fully to Interrogatory No. 7.

***Interrogatory No. 8:*** Blue Spike provides no substantive response to this Interrogatory. Blue Spike received Defendants' Invalidity Contentions on May 15, 2014. To the extent Blue Spike disagrees with any of the contentions in Defendants' Invalidity Contentions, this Interrogatory seeks those contentions. Because Blue Spike just received Defendants' Invalidity Contentions on May 15, 2014, Audible Magic is willing to provide Blue Spike until June 16, 2014 to provide a response.

***Interrogatory No. 9:*** Blue Spike responds that it first became aware of U.S. Patent No. 6,834,308 (the Audible Magic Asserted Patent) upon the filing of Audible Magic's counterclaim in July 2013. This cannot be correct at least because this Audible Magic patent was cited as prior art in one of the Blue Spike patents-in-suit, which was personally prosecuted by Scott Moskowitz and filed on December 26, 2007. Blue Spike must correct its response and explain the reason for the discrepancy.

***Interrogatory No. 10:*** Blue Spike's response to Interrogatory No. 10 borders upon bad faith. First, Blue Spike vaguely objects to the Interrogatory, which seeks information regarding the Accused Product, as not reasonably calculated to lead to the discovery of admissible evidence. It is difficult to fathom how information related to offers for sale of the Accused Product is not relevant. Further, Blue Spike objects that the facts related to any sales and offers for sale of the Giovanni Abstraction Machine are privileged. Such information cannot be privileged, and to the extent Blue Spike has withheld any information on the basis of privilege, it must notify Audible Magic.

Blue Spike's substantive response is difficult to make sense of. Blue Spike responds on behalf of Blue Spike, LLC alleging that Blue Spike, LLC (not Blue Spike, Inc.) offered the Giovanni Abstraction Machine for sale "from early 2012 until August 2012." This is clearly inaccurate because the Giovanni Abstraction Machine was available for purchase at least until December 13, 2003 *See* https://web.archive.org/web/20131213022122/http://blue-spike.myshopify.com/, last visited May 27, 2014. Moreover, this website appears to have been operated by Scott Moskowitz and Blue Spike, Inc., not Blue Spike, LLC. The discrepancies in Blue Spike's response to this Interrogatory underscore the relevance and need for discovery related to the Blue Spike website as noted above. Blue Spike must correct the errors in its Response to Interrogatory No. 10 and provide complete logs for the Blue Spike website, including the exact date that the Giovanni Abstraction Machine was no longer offered for sale.

Randall Garteiser
May 28, 2014
Page 7


***Interrogatory No. 11:***  Blue Spike responds that all communications between Scott Moskowitz and Muscle Fish LLC, Wire Air LLC or Audible Magic Corporation have been produced within the 15 pages noted in its Response.  Please confirm that no other documents exist and no other communications occurred that are not described or transcribed in the documents provided.

To the extent Blue Spike has withheld any documents based on its highly improper objections (e.g., overbroad, oppressive, meant to harass, privilege) please confirm the basis for withholding the documents.

***Interrogatory No. 12:***  Blue Spike responds that all facts and information in the possession of Scott Moskowitz that are related to Muscle Fish LLC, Wire Air LLC or Audible Magic Corporation have been produced within the 15 pages noted in its Response.  It is highly suspect that all facts and information known by the CEO and only employee of Blue Spike are contained within 15 pages of documents.  Blue Spike must provide a narrative answer to this Interrogatory to include all information not within the 15 pages cited in its Response.

To the extent Blue Spike has withheld any documents or information based on its highly improper objections (e.g., overbroad, oppressive, meant to harass, privilege) please confirm the basis for withholding the documents.

Audible Magic is available to meet and confer regarding each issue in this letter on May 30, 2014.  Please provide Blue Spike's availability.


Sincerely,

Christopher J. Higgins

**Scope Of Relevance Of Moskowitz And Blue Spike Document Production In View Of Matters Alleged In Blue Spike's Complaint And Audible Magic's Answer And Counterclaims**

- Every single document related to the activities and business of Mr. Moskowitz and Blue Spike Inc., during the critical period 1997-2001. Obviously there are many more relevant materials beyond this range of dates, but Scott Moskowitz' and Blue Spike's activities in this time are of particular importance. This encompasses not only the communications and documents of Scott Moskowitz, but also Michael Berry and any other employees, consultants, contractors, agents or volunteers working with or for Scott Moskowitz or Blue Spike in this exceedingly relevant timeframe. This includes, but is not limited to, all internal communications regarding the building of the Blue Spike business and assessment of competitors, competing or similar technologies, etc. All analysis, conversation, discussion, documents, emails etc. relating to Muscle Fish and Audible Magic, or any other company providing content-recognition technologies.

- Inventors Scott Moskowitz and Michael Berry and their activities in relation to Blue Spike, LLC, Blue Spike, Inc. (collectively "Blue Spike" here), the asserted patents or any related matters

- The activities of Blue Spike CEO Scott Moskowitz in relation to the alleged more than 66 U.S. Patents related to managing, monitoring, and monetizing digital content and informational assets.

- Blue Spike's, and Scott Moskowitz' activities relating to the allegation that they have "practiced and has continued business plans to practice Moskowitz's patented inventions."

- Blue Spike's use of its technology to catalogue, manage, monitor, and monetize that content.

- Blue Spike's pre-suit investigation of the accused products of Audible Magic and its customers, including all technical analysis and results

- All matters set forth in the "Factual Background" section of Blue Spike's Amended Complaint.

- All matters relating to Scott Moskowitz' and Blue Spike's business and technical background and activities from 1990 to present, including all matters relating to Scott Moskowitz' and Blue Spike's development of and business relating to watermarking technology and business, and the technology in the asserted patents.

- Scott Moskowitz' and Blue Spike's involvement in industry-based tests—such as the MUSE Embedded Signaling Tests, Secure Digital Music Initiative ("SDMI"), and various tests by performance-rights organizations including ASCAP and BMI, as well as Japan's Nomura Research Institute.

- Scott Moskowitz' and Blue Spike's projects to incorporate technologies with leaders in a gamut of industries, including but not limited to work with EMI, Warner Brothers, and Universal Music Group on music-release tracking systems; with AIG on insurance and financial services; with IBM on watermarking its software and managing movie scripts; and with Juniper Networks on measuring and provisioning the bandwidth used on its routers.

- Blue Spike's activities relating to its status as registered with the Federal Government's Central Contractor Registry (managed under the System for Award Management, "SAM") and participation in the Department of Defense Small Business Innovative Research (SBIR) program.

- Scott Moskowitz' and Blue Spike's work on the Giovanni® suite of media security technologies.

- Scott Moskowitz' and Blue Spike's production of digital-watermarking tools and Scrambling technologies, and "end-to-end" solution for music security and encoding of Blue Spike's watermark.

- Scott Moskowitz' and Blue Spike's activities relating to the development and commercialization of "signal abstracting," "signal fingerprinting," "acoustic fingerprinting," or "robust hash functions."

- The differences between and relative benefits of the technology of the asserted patents compared to watermarking, or watermarking compared to the technology of the asserted patents.

- All matters set forth in the "Inequitable Conduct" allegations in Audible Magic's Second Amended Answer And Counterclaims

- All prior art known to Scott Moskowitz and Blue Spike during prosecution of the asserted patents.

- All technology, products or companies or their activities known to Scott Moskowitz and Blue Spike that relate to the substance of the asserted patents

- Prosecution history relating to the asserted patents, including decisions not to disclose prior art

- Scott Moskowitz' and Blue Spike's knowledge of Muscle Fish, Audible Magic, their principals, employees and/or contractors, products, activities or business.

- All documents relating to Michael Berry.

- All documents relating to Muscle Fish, Audible Magic, their principals, employees and/or contractors, products, activities or business.

- All documents relating to the DICE Company and Marc Cooperman, including the dispute between Scott Moskowitz and Marc Cooperman.

- All documents relating to "Argent"

- All documents relating to the development (in whole or in part) and offering of the "Giovanni Abstraction Machine"

- All documents relating to the statements of Mr. Moskowitz and Blue Spike at issue in Audible Magic's counterclaims.

These are not exhaustive categories, but merely representative, and provided to guide Scott Moskowitz' and Blue Spike's document production obligations.