# Exhibit 5

# Higgins, Christopher J.

| | |
|---|---|
| **From:** | Higgins, Christopher J. |
| **Sent:** | Monday, June 02, 2014 9:19 AM |
| **To:** | Randall Garteiser |
| **Cc:** | Peter Brasher; Eric Findlay; wlackey@findlaycraft.com; bluespike@ghiplaw.com; Christopher Honea (chonea@ghiplaw.com); Kirk Anderson; Colin Jensen; AudibleMagic-BlueSpike; Chatterjee, I. Neel; Fischer, Janna; Armon, Orion; Ramsey, Gabriel M.; Caridis, Alyssa |
| **Subject:** | RE: Blue Spike v. Texas Instruments, et al. - Audible Magic Source Code |

Randall,

We have provided numerous reasons why each of the categories of documents and information requested by Audible Magic is relevant.  In addition, we further note that Local Civil Rule 26 is intended to initiate broad discovery and its purpose "was to eliminate the need for lengthy and costly paper discovery and depositions that formerly had to be used to worm even basic information out of an opponent."  *Personal Audio, LLC v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 146756, at *6 (E.D. Tex. June 16, 2011).  "A refusal to disclose information without substantial justification is ground for sanctions."  *Id.*  Blue Spike has provided no substantial justification for not producing relevant information and instead requested caselaw supporting the position that a party in the Eastern District of Texas may rely on an Eastern District of Texas Local Civil Rule that provides guidance on what is relevant in discovery.  Nonetheless, we provide below additional reasons why the documents are relevant and citations to cases that confirm the obvious.  Should Blue Spike have any arguments why any of the documents and information requested by Audible Magic are not relevant, Blue Spike should be prepared on Tuesday's meet and confer to provide its arguments with respect to Audible Magic's specific reasons (as set forth in numerous letters, emails, and the previous meet and confer), Local Civil Rule 26, and the caselaw cited below.

1. Business documents related to Blue Spike Inc.'s watermarking product Giovanni, and any of its watermarking related activities from 1993 to 2003.  This includes documents related to the activities and business of Mr. Moskowitz and Blue Spike Inc., during the critical period 1997-2001 (including but not limited to communications and documents of Scott Moskowitz, Michael Berry and any other employees, consultants, contractors, agents or volunteers working with or for Scott Moskowitz or Blue Spike, Inc. in this timeframe.  It includes, but is not limited to, internal communications regarding the building of the Blue Spike business and assessment of competitors, competing or similar technologies, etc.  All analysis, conversation, discussion, documents, emails etc. relating to Muscle Fish and Audible Magic, or any other company providing content-recognition technologies, or customers and users of such technologies (RIAA, etc).  This information is highly relevant to Audible Magic's inequitable conduct, unjust enrichment and unfair competition defenses/counterclaims.  As expressly alleged in the counterclaims, and as established directly through the 2.5 million pages of evidence produced by Audible Magic, Mr. Moskowitz was struggling to get the Blue Spike, Inc. watermarking business off the ground, the watermarking technology was ultimately not adopted by any standard setting body, and some standard setting efforts (notably SDMI) had failed altogether.  At the same time, Audible Magic's evidence shows that throughout this period, Mr. Moskowitz was repeatedly exposed to Muscle Fish's content based recognition technology, he needed its technology, he wanted to use it, he needed Muscle Fish's technical help, and before filing his initial application even went so far as to tell Muscle Fish that it should get a trademark on one of the prior art products that he withheld from the patent office.  He likely was aware of other content-based recognition technologies as well.  He intentionally withheld all of this from the PTO.  Audible Magic is now entitled to see the other side of the proverbial coin – i.e. the full documentary record of activities and communications from Blue Spike's files and records.  <u>The documentary history of Blue Spike's</u>

watermarking product and business activities are the relevant context in which the asserted patents were filed and are relevant to establish Blue Spike's and Mr. Moskowitz's culpable intent. *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys.*, 1993 U.S. App. LEXIS 22042, 13-15 (Fed. Cir. 1993) (intent to deceive inferred from broader commercial context in which the prosecution took place and in particular the "competitive pressure" placed on the applicant by a competitor who used different, superior technology; relevant to showing intent was the "outline of events illustrating the competitive pressure [defendant] were placing on [plaintiff who procured patent by inequitable conduct]"; relevant evidence established that defendant was perceived as "as an ever-increasing business threat" and evidence of these pressures precipitating and during prosecution of the application procured by fraud established motivation to deceive the PTO); *Therasense, Inc. v. Becton, Dickinson & Co.*, 864 F. Supp. 2d 856, 869 (N.D. Cal. 2012) (evidence regarding applicant's commercial and competitive context and motivation was relevant to finding of inequitable conduct; evidence that applicants "were keen to win an allowance quickly in order to meet competition in the marketplace" supported inference of intent; applicant "was willing to conceal important evidence to get the patent and immediately use it to suppress the competition"); *Impax Labs., Inc. v. Aventis Pharmaceuticals, Inc.*, 468 F.3d 1366, 1374-75 (Fed. Cir. 2006) ("intent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct"); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993) ("Intent can only be determined upon consideration of all the facts and circumstances involving the conduct in question."). This material is relevant to Mr. Moskowitz's motivations for concealing prior art, and his motivation for filing these patent applications in general. Audible Magic is entitled to documents and communications that establish the entire context of Mr. Moskowitz's and Blue Spike, Inc.'s knowledge, awareness and business activities concerning how the Blue Spike, Inc. watermarking business related to content based recognition companies/technologies, particularly Muscle Fish/Audible Magic, how those technologies were viewed competitively and what was said about them. These things are relevant to Mr. Moskowitz's motivation to withhold material prior art and to his knowledge of such prior art, unjust enrichment and unfair competition. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence"); *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009) (same); *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1235-1236, 1241-1242 (Fed. Cir. 2008) (applicant's contemporaneous notes discussing and more fully describing a particular prior art reference which had been disclosed by applicant to the PTO in more limited form, were relevant and formed the basis of a finding of inequitable conduct); *Baxter International Inc. v. McGaw Inc.*, 149 F.3d 1321 (Fed. Cir. 1998) (materials establishing applicants' business activities and competitive activities relating to material prior products, knowledge of prior art products and commercial relationship with producer of prior art product were relevant and formed basis of inequitable conduct). Finally – Blue Spike has put the watermarking products and business activities of Mr. Moskowitz and Blue Spike, Inc., as well as the Dice Company and its activities squarely at issue in this case. *See* Paragraphs 31-44 of Blue Spike's 4/4/2014 Amended Complaint. For this reason alone, the materials in the above categories are relevant.

2. Watermarking technical documents. These materials are relevant because, *inter alia*, Blue Spike and Mr. Moskowitz have made false and misleading statements that their "fingerprinting" technology in the asserted patents is "technology that has powered [Moskowitz's] Blue Spike products since the turn of the century," which are the subject of Audible Magic's counterclaim for Lanham Act violations and unfair competition. Audible Magic is entitled to explore the nature of all of Mr. Moskowitz's products at or near "the turn of the century" in order to determine whether this statement is true, including the watermarking products. Further, technical information regarding Blue Spike's and Mr. Moskowitz's watermarking technology will shed light on its limitations and problems, which is relevant to Mr. Moskowitz's and Blue Spike's motivation to withhold material prior art from the USPTO, and is thus relevant to Audible Magic's

inequitable conduct counterclaim.  Finally, in each of Mr. Moskowitz's asserted patents at the outset he includes a section entitled "Cross-Reference to Related Applications."  In these sections he lists all of his watermarking patent applications and states that the applications "claim[] the benefit of" those watermarking applications.  In subsequent certificates of correction, Mr. Moskowitz changed this language to state that the prior watermarking applications are "related to" the asserted patents.  Thus, Mr. Moskowitz and Blue Spike appear to have asserted that their prior watermarking technology is relevant to the asserted patents and Audible Magic is entitled to explore that prior technology thoroughly in discovery, in order to understand the relationship between that work and the asserted patents.  For example, if the prior undisclosed watermarking products and technologies on sale and publicly disclosed by Blue Spike involved features or elements (for example, the allegedly novel "abstracting" process) that were material to the applications for the asserted patents then withholding such would very likely constitute inequitable conduct.  It does not matter that the undisclosed prior art product is different from the asserted patents.  *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) (uncited reference was material even assuming that it disclosed a device that "operates differently" because a differently-operating device "may nonetheless have relevant features.")

3. Bug logs and all other technical documentation reflecting the operation of the Giovanni Abstraction Machine.  Bug logs regarding the Giovanni Abstraction Machine are relevant to show how the product operates.  *See e.g. Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 558 F. Supp. 2d 909 (W.D. Wis. 2008) (in ruling on summary judgment motions regarding infringement, the court relied on "bug reports" reflecting product tests, that revealed the products functionality).  Indeed, all information that shows the operation of the accused product are relevant under the local rules.  Audible Magic has produced records from its bug tracking system to Blue Spike.  Blue Spike must do the same.

4. Mark Cooperman related documents.  Mr. Moskowitz asserts repeatedly in the complaint that he is a pioneering "inventor."  Indeed, on the Blue Spike website he extends these claims of being the first inventor of fingerprinting so far as to be false and misleading.  Mr. Cooperman's dispute with Mr. Moskowitz regarding whether Mr. Moskowitz had merely taken the fruits of Mr. Cooperman's technological work and then attempted to appropriate that for himself by forming Blue Spike, are very similar to the way that Mr. Moskowitz engaged with Muscle Fish and misappropriated their ideas (at the same time concealing their work from the patent office).  These activities are all utterly inconsistent with Mr. Moskowitz's assertion that he is the inventive force that he claims.  After putting his inventive prowess at issue, Mr. Moskowitz cannot now prevent discovery of material that undermines that claim – and shows that Mr. Moskowitz instead takes the ideas of others and claims them for himself.  *See e.g. SEC v. Peters*, 978 F.2d 1162, 1172 (10th Cir. 1992) (where party put at issue their character and competence, evidence of prior suits was probative to test those assertions and avoid a "one-sided picture"; "the prior suits are particularly relevant, as they both involved allegations similar to those at issue in this suit. Both prior suits involved fraud…").  Indeed, the prior Cooperman lawsuit and the materials related to that dispute establish Mr. Moskowitz's pattern, habit and practice of taking the work and ideas of others and claiming them for himself, and are relevant for that reason as well.  Evidence of other lawsuits is relevant if the lawsuits involve similar claims and can be used to establish a pattern or a habit or routine practice.  *See e.g. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) (In law firm's action against former client for collection of legal fees, the law firm's request for materials related to prior lawsuits against attorneys sought evidence related to habit or routine practice, which was relevant to prove that conduct on particular occasion was in conformity with habit or routine practice); *Johnson v. City of Philadelphia*, 1994 U.S. Dist. LEXIS 15872, (E.D.Pa. 1994) (Information concerning prior lawsuits involving the defendant officers alleging claims similar to those in the present case were discoverable); *Orangeburg Pecan Co., Inc. v. Farmers Inv. Co.*, 869 F.Supp. 351 (D.S.C. 1994) (Plaintiff's counsel permitted to obtain

information relevant to prior lawsuits against the defendant that might have a bearing on its Unfair Trade Practices Act ("UTPA") claims); *Brandon v. Beard*, 140 F.R.D. 328, 330 (M.D.Pa. 1991) (grievance complaints that may reveal the existence of a habit are discoverable); *Nagel v. First of Michigan Corp.*, 784 F.Supp. 429 (W.D.Mich. 1991) (Pension plan that sued bank that handled plan's investments was entitled to discover information regarding prior lawsuits against bank, despite bank's objection that request was unreasonably cumulative, unduly burdensome and prejudicial since the information sought was relevant and necessary to RICO allegations).  Further, Blue Spike put at issue the Dice Company and its activities at issue in this case.  *See* Paragraphs 31-44 of Blue Spike's 4/4/2014 Amended Complaint.  On this basis alone, the materials regarding the dispute between Mr. Cooperman and Mr. Moskowitz regarding the Dice Company are relevant.

-Chris

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Friday, May 30, 2014 7:10 PM
**To:** Higgins, Christopher J.; Caridis, Alyssa; Ramsey, Gabriel M.
**Cc:** Peter Brasher; Eric Findlay; wlackey@findlaycraft.com; bluespike@ghiplaw.com; Christopher Honea (chonea@ghiplaw.com); Kirk Anderson; Colin Jensen; AudibleMagic-BlueSpike; Chatterjee, I. Neel; Fischer, Janna; Armon, Orion
**Subject:** Re: Blue Spike v. Texas Instruments, et al. - Audible Magic Source Code

Thanks Mr. Higgins,

We are in receipt of your letter requesting a meet and confer on May 30, however, this date does not work for us, but the following business day, will work from 1 pm to 4 pm Central, or propose another date.  Previously, we requested that you provide case law in support of your clients' position and it appears in response you've provided extensive citations to Civil Local Rule 26.  Is it safe assume Audible Magic is not going to provide any case law, and instead save it for its motion to compel?  Part of the meet and confer process is attempting to avoid motion practice by vetting relevant case law, if any.  For example, the rationale in Audible Magic's most recent communication (Mr. Higgins Letter dated May 28, 2014) still does not explain why Mr. Cooperman is relevant to this case.  Audible Magic now indicates that he will be deposed.  That doesn't make him relevant to this lawsuit where Mr. Cooperman is not a named inventor.  Audible Magic, Facebook, any defendant has the ability to depose someone, now that person may object and simply noticing a deposition doesn't make him relevant.  Under your current logic, every prior accusation of patent infringement is relevant to Blue Spike LLC's allegation that Facebook infringes its patents willfully — look Facebook is doing it again, others have accused Facebook of patent infringement so they must be guilty. It seems premature to burden the Court with motion practice pertaining to Mr. Cooperman until Audible Magic at least obtains some case law in support of its reliance on Civil L.R. 26.

Be well,



**Randall Garteiser** / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On May 28, 2014, at 9:15 AM, Higgins, Christopher J. <chiggins@orrick.com> wrote:

Randall,

4

Please see the attached letter.

Regards,
Chris

---

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Friday, May 23, 2014 3:20 PM
**To:** Ramsey, Gabriel M.
**Cc:** Peter Brasher; Caridis, Alyssa; Eric Findlay; wlackey@findlaycraft.com; bluespike@ghiplaw.com; Christopher Honea (chonea@ghiplaw.com); Kirk Anderson; Colin Jensen; AudibleMagic-BlueSpike; Higgins, Christopher J.; Chatterjee, I. Neel
**Subject:** Re: Blue Spike v. Texas Instruments, et al. - Audible Magic Source Code

Gabe,

We write to follow up on our meet and confer last week, Tuesday, May 13th. Below is a summary of the documents you requested Blue Spike Inc., Blue Spike LLC and Scott Moskowitz produce and our position with respect to each category.

1. Business documents related to Blue Spike Inc.'s watermarking product Giovanni, and any of its watermarking related activities from 1993 to 2003. These documents are not relevant, admissible, or likely to lead to admissible evidence, as they relate to inventions and technology different to the technology at issue in this case. To the extent you disagree, please provide case law in support of your position that different technology is relevant to the issues of patent infringement or your client's other claims, which still relate to the technology of the patents in suit.

2. Watermarking technical documents. As explained in (1), these documents are not relevant, inadmissible, and will not lead to admissible material. To the extent you disagree, please provide case law in support of your position.

3. Bug Logs. Thanks for your separate email on this topic. If there is case law on point, we would appreciate you sharing it with us. To the extent these documents may exist, we will need to pull backup files and are in the process of obtaining those.

4. Mark Cooperman related documents. You reiterated that your client felt that Mark Cooperman was related to this litigation, but Blue Spike disagrees. You indicated that Blue Spike should have already had these documents ready to be produced. We disagreed as the description of Mark Cooperman in Defendant's counterclaim is not related to any claim or defense asserted by Audible Magic. In fact, he is not mentioned in any document produced by Audible Magic. Audible Magic mentions him in passing in an attempt to discredit Blue Spike's CEO. At last week's meet and confer, I requested that your client provide case law to support its position that a civil accusation made by a

former employee about a former employer in a lawsuit involving an unrelated contract dispute is likely to lead to discoverable information in this lawsuit.  Until your client provides the case law showing the relevancy, of which we are not aware of any, we will not undertake the procedure, and expense to attempt to push other law firms to produce these documents that they may or may not still have, or bother our client to search for such information.

5. Source code of Giovanni Signal Abstract Machine.  The parties agreed to review Blue Spike's code the week of June 2 to the extent it exists.  We explained to you that this product is no longer offered by Blue Spike Inc., and was never offered for sale by Scott Moskowitz as an individual or Blue Spike LLC.  You mentioned that on a Shopify account linked to Blue Spike it was on sale for $10,000.  I researched this after our meet and confer, and there is a product being offered related to Giovanni watermarking, but not the accused product in the counterclaim asserted by your client.

6. Prior website related documents. You've also asked Blue Spike to produce historical files pertaining to its website.  We don't understand the significance of such information and how it pertains to the claims asserted in this lawsuit.  Please assist us with making this connection.  In the meantime, we will request such information from our client in order to facilitate the production of such documents to the extent they exist.  We do note that Waybackmachine.org is also available to assist you with your request.

7. Patent applications and all related documents.

Although May 23 was rather aggressive to produce documents, Blue Spike is preparing another production in response to your requests.



**Randall Garteiser** / Partner
888.908.4400 x104 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On May 13, 2014, at 11:06 AM, Ramsey, Gabriel M. <gramsey@orrick.com> wrote:

6

Counsel:  I have confirmed with local counsel that 2:30pm Central or 3:00pm Central today work for a call to discuss the matters in my email below.  Please confirm which of those times you prefer and I will send a calendar invitation and dial-in information.

Gabe Ramsey

---

**From:** Ramsey, Gabriel M.
**Sent:** Monday, May 12, 2014 9:54 PM
**To:** 'Randall Garteiser'; Peter Brasher
**Cc:** Caridis, Alyssa; Eric Findlay; wlackey@findlaycraft.com; bluespike@ghiplaw.com; Christopher Honea (chonea@ghiplaw.com); Kirk Anderson; Colin Jensen; AudibleMagic-BlueSpike; Higgins, Christopher J.
**Subject:** RE: Blue Spike v. Texas Instruments, et al. - Audible Magic Source Code

Counsel:

**Audible Magic's Discovery Requests To Blue Spike and Mr. Moskowitz, And Their Willful Refusal To Produce Documents And Their Willful Violation Of The Federal Rules of Civil Procedure, Discovery Order And Local Rules**

First of all, thank you for acknowledging that you received our concerns about your discovery and our request to you last week that you immediately meet your discovery obligations.  You produced about 300 pages of documents.  That is a breathtaking failure that does not afford us the opportunity to pursue our claims against the defendants and to respond to the patent matters asserted by Blue Spike in this case.  We graciously gave you until the close of business today to confirm that you would remedy your wholly deficient production and the other matters set forth in Mr. Higgins' letter to you and my email to you last week.  As I explained in my correspondence on Friday, if by close of business today you (a) failed to agree to produce the materials that we requested on the timeframe requested or (b) made a non-responsive email like the one below, then we would have to have a meet and confer on our discovery demands, to give you the opportunity to let you agree or alternatively to promptly get the court involved yet again, as you are again ignoring the rules by simply refusing to produce documents.  The urgency in having that meet and confer is required of course, by the fact that you have persistently dragged out all manner of requests and pursuit of a tactic of non-responsiveness, in order to deny us our right to pursue our claims against the outrageously fraudulent conduct of the Moskowitz/Blue Spike defendants and our rightful claim for damages.  It is now close of business today and, as evidenced by your non-responsive answer to our requests, set forth in the email below, you have failed to meet our demand.  In fact, if I read your email right – you are saying that simply because you unilaterally disagree with Audible Magic's inequitable conduct, unclean hands and other defenses, and you disagree with Audible Magic's unjust enrichment, Lanham Act, false advertising and patent infringement counterclaims – that you are willfully refusing to provide discovery.  It is rather unbelievable, honestly.  I assure you that we disagree with your client's patents, procured through fraud, yet nonetheless, Audible Magic complied with its obligations and – in fact – produced millions of pages of material that is relevant to the case, so that you are able to pursue your clients' claims and are able to attempt to defend your clients' wrongfuly activity.  Your refusal to play by the same rules is truly unfair.  I believe and trust that the Court will see it the same way – i.e. you brought this case against my client and put all these matters in dispute.  Accordingly, I am confident that you *will* make a full and complete production of all material that inculpates your client, and you will not conceal that material, as you are attempting to do.

I therefore agree that a meet and confer is ripe on these issues.  Thank you for letting us know that you are free all day tomorrow.  I am free between 11:30am Central and later, other than 12:30am-1:00pm Central.  Messrs. Lackey and Findlay, apologies for the late notice – but I would appreciate you letting us all

know when you are free to confer with Blue Spike's counsel tomorrow.  Once we confirm the time, I'll circulate the calendar entry and dial-in information.

**Audible Magic's Code**
I was very clear in my email to you on Friday that we are working on preparing Audible Magic's source code for review, and that will be available for you to look at in Orrick's San Francisco or Silicon Valley office the last week of May.  I asked when you are available to come look at that code during the last week of May, but you did not respond with dates that week that work.  Please let us know when outside counsel from your firm are free to come review that material at Orrick's offices the last week of May.  Understand that the review of Audible Magic's code that week is limited to outside counsel from your firm, who must agree that they are bound by ethical obligations not to use Audible Magic's code for patent prosecution, patent acquisition, or any other business or competitive purpose of Blue Spike, Moskowitz or any other party, or otherwise contribute to the abuse of Audible Magic's intellectual property, or you will be subject to all forms of appropriate relief.  Along these lines, as I now understand from Facebook's counsel at the Cooley firm – you are taking the position that the current patent prosecution activities of Blue Spike's expert are not subject to a patent prosecution bar.  That is unacceptable, and I believe that matter will have to go to the court on motion practice.  Indeed, we are certainly not going to allow Blue Spike's expert to come review Audible Magic's code, then be free from the patent prosecution bar in a manner that allows him or her to take what he or she learns from that code and use Audible Magic's information unfairly.  Enough of that activity has already been carried out by Mr. Moskowitz and Blue Spike, and we simply cannot afford to have Audible Magic's intellectual property abused further.  In any event, the default protective order that is currently in place does not allow sharing of any confidential or attorneys eyes only material with your expert in any event.  All of this said, obviously once there is an acceptable protective order with a sound prosecution bar in place by the Court, and the expert agrees to be bound fully by it, we can revisit this matter.  But, in the interim, we will simply have to trust that you, as counsel, will adhere to your obligations when you come to review the code the last week of May.  And I'll be frank Mr. Garteiser, I do not trust you, Mr. Honea or anyone at your firm to be anywhere near my client's code.  Nonetheless, I'll just have to trust that the extremely serious duties placed on you by the State Bar of California, the State Bar of Texas and the Court will cause you to stay on the proper side of ethical behavior.  So, again, please let us know some days the last week of May that work for a review at Orrick's offices (and which office, San Francisco or Menlo Park, you prefer to review the code in).

Given that we have agreed to make the code available, I am not sure why wee need a meet and confer on this topic, as I indicated on Friday, but I am happy to discuss it on our call tomorrow.

Sincerely,

Gabe Ramsey

---

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Monday, May 12, 2014 8:58 PM
**To:** Peter Brasher
**Cc:** Ramsey, Gabriel M.; Caridis, Alyssa; Eric Findlay; wlackey@findlaycraft.com; bluespike@ghiplaw.com; Christopher Honea (chonea@ghiplaw.com); Kirk Anderson; Colin Jensen; AudibleMagic-BlueSpike
**Subject:** Re: Blue Spike v. Texas Instruments, et al. - Audible Magic Source Code

Dear Counsel for Audible Magic:

Blue Spike provided two different days to meet and confer on the time sensitive issue of dates to review Audible Magic's Source Code.  As explained below, last week Blue Spike explained the need to quickly meet

and confer given impeding court deadlines, and offered all day today (Monday) and all day tomorrow (Tuesday).  Instead of providing a date and time to meet and confer, Mr. Ramsey provided Blue Spike a laundry list of demands pertaining to its counterclaims where Audible Magic knows there are no damages.

Its Local Counsel has undoubtable explained to Audible Magic's West Coast Counsel at Orrick there is no excuse to refuse to agree to a meet and confer request from opposing counsel, especially one made now 3 days ago.  Blue Spike is still available to meet and confer tomorrow anytime between 9:30 a.m. and 7:00 p.m. Central.   Again, time is of the essence given the scheduling order and impeding claim construction briefing.

We look forward to receiving confirmation of one or two times tomorrow that lead and local counsel for Audible Magic are available to discuss Blue Spike's motion to compel dates to review Audible Magic's source code, pursuant to Civil L.R. 7(h).

Be well,



**Randall Garteiser** / Partner
888.908.4400 x104 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On May 9, 2014, at 4:40 PM, Peter Brasher <pbrasher@ghiplaw.com> wrote:

Counsel,

As this is the first request to review the mentioned source code, we will confer with our client regarding a date and time to make the same available for review.

Since you have failed again to provide any dates and times that Blue Spike can review Audible Magic's source code, Blue Spike is available to meet and confer on Monday and Tuesday between 9:30 am and 7:00 pm central. When can lead and local counsel confer regarding Audible Magic's delay?

If Audilble Magic continues to delay or refuses to meet and confer at an agreeable time, Blue Spike will seek redress directly with the Court.

Regards,



**Peter Brasher** / Attorney
888.908.4400 x104 / pbrasher@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On May 9, 2014, at 4:02 PM, Ramsey, Gabriel M. <gramsey@orrick.com> wrote:

Counsel:

Thank you for your email.  Please let us known when and where the Giovanni Abstraction Machine source code will be made available for review.

Regarding Audible Magic's code, we are working on this.  Please let us know when you plan to submit the agreed stipulated protective order that includes the protective provisions regarding source code, and prosecution/acquisition bar etc.  As I understand it, you agreed to all of its provisions.  Once we get that in place with the court, with sufficient protections against further abuse of Audible Magic's intellectual property by Blue Spike, we can proceed.  I understand that other defendants in the group have been taking the lead with you on getting that stipulated protective order on file.  Can you please let us know where things stand?  But, in any event, we are working on a way to securely provide for on-premises access to Audible Magic's code at Orrick's San Francisco or Silicon Valley office.  We will let you know what solution we have, once we get it in place, and once the protective order is in place.

Thank you.

Gabe Ramsey

**From:** Peter Brasher [mailto:pbrasher@ghiplaw.com]
**Sent:** Friday, May 09, 2014 1:54 PM
**To:** Caridis, Alyssa
**Cc:** Eric Findlay; wlackey@findlaycraft.com; bluespike@ghiplaw.com; Randall Garteiser; Christopher Honea (chonea@ghiplaw.com); Kirk Anderson; Colin Jensen; AudibleMagic-BlueSpike
**Subject:** Re: Blue Spike v. Texas Instruments, et al. - Audible Magic Source Code

Counsel,

It has been several weeks since Blue Spike's request and your initial response. Provide a time and location that counsel for Blue Spike can review Audible Magic's source code or in the alternative provide a time that lead and local counsel can meet and confer on Audible Magic's failure to make the source code available for review.

Regards,



**Peter Brasher** / Attorney
888.908.4400 x104 / pbrasher@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



========================================================
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.
========================================================
NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/
========================================================
<2014-05-28 Letter to Garteiser re BS Doc Production and ROG Responses.pdf>

11