# Exhibit 7

**Higgins, Christopher J.**

| | |
|---|---|
| **From:** | Randall Garteiser [rgarteiser@ghiplaw.com] |
| **Sent:** | Thursday, June 12, 2014 4:39 PM |
| **To:** | Higgins, Christopher J. |
| **Cc:** | Christopher Honea; bluespike@ghiplaw.com; AudibleMagic-BlueSpike |
| **Subject:** | Re: Update on Blue Spike production. |

Hi Chris,
I've been transit, and have an in person meet and confer this afternoon, so I plan to respond tomorrow to your email below along with supplemental ROGs like we discussed.

Be well,
Randall


On Jun 10, 2014, at 2:19 PM, "Higgins, Christopher J." <chiggins@orrick.com> wrote:

> Randall,
>
> When do you expect to provide Blue Spike's positions on the remaining categories of documents?  You promised us those positions by last Friday but what you sent on Friday is not a response.  It was nothing more than an evasive statement regarding the Giovanni Abstraction Machine source code.  Indeed, my email of June 9 noting that we have received no response from Blue Spike remains accurate.  Provide Blue Spike's positions on each of the following categories of documents by close of business tomorrow.
>
> Blue Spike's positions with respect to each category of documents below must include the following:
>
> **A - Whether documents in the category exist, and**
> **B - If documents exist, whether the documents will be produced and when, or whether the documents will be withheld and on what grounds, or**
> **C - If no documents presently exist, whether such documents were destroyed and when the destruction occurred.**
>
> 1. All documents related to the Giovanni Abstraction Machine.
>
> 2. All documents related to the prosecution of the Blue Spike patents-in-suit, including prior art, drafts of applications and office action responses, and any communications related to any applications or issued patents.  This includes any documents or communicates drafted by Scott Moskowitz during the time he prosecuted any of the Blue Spike patents.
>
> 3. All documents and files related to the Blue Spike website (www.bluespike.com).
>
> 4. All documents related to the formation of and business practices of Blue Spike, Inc. and Blue Spike, LLC, including corporate structure, employees, products, investors, financial data, and customers.
>
> 5. All documents related to the dissolution of the DICE Company.
>
> 6. All documents related to Marc Cooperman, including all documents produced and filed in the lawsuits between Marc Cooperman and Scott Moskowitz.
>
> 7. All documents related to Audible Magic Corporation.
>
> 8. All documents related to Muscle Fish, LLC.

1

9. All communications between Scott Moskowitz and any third parties regarding the patents-in-suit, the Giovanni Abstraction Machine, Audible Magic Corporation, or Muscle Fish, LLC.

10. All documents related to the activities and business of Mr. Moskowitz and Blue Spike Inc., during the critical period 1997-2001. Obviously there are many more relevant materials beyond this range of dates, but Scott Moskowitz' and Blue Spike's activities in this time are of particular importance. This encompasses not only the communications and documents of Scott Moskowitz, but also Michael Berry and any other employees, consultants, contractors, agents or volunteers working with or for Scott Moskowitz or Blue Spike in this exceedingly relevant timeframe. This includes, but is not limited to, all internal communications regarding the building of the Blue Spike business and assessment of competitors, competing or similar technologies, etc. All analysis, conversation, discussion, documents, emails etc. relating to Muscle Fish and Audible Magic, or any other company providing content-recognition technologies.

11. All documents related to inventors Scott Moskowitz and Michael Berry and their activities in relation to Blue Spike, LLC, Blue Spike, Inc. (collectively "Blue Spike" here), the asserted patents or any related matters.

12. All documents related to the activities of Blue Spike CEO Scott Moskowitz in relation to the alleged more than 66 U.S. Patents related to managing, monitoring, and monetizing digital content and informational assets.

13. All documents related to Blue Spike's, and Scott Moskowitz' activities relating to the allegation that they have "practiced and has continued business plans to practice Moskowitz's patented inventions."

14. All documents related to Blue Spike's use of its technology to catalogue, manage, monitor, and monetize content.

15. All documents related to Blue Spike's pre-suit investigation of the accused products of Audible Magic and its customers, including all technical analysis and results

16. All documents related to the matters set forth in the "Factual Background" section of Blue Spike's Amended Complaint.

17. All documents related to Scott Moskowitz' and Blue Spike's business and technical background and activities from 1990 to present, including all matters relating to Scott Moskowitz' and Blue Spike's development of and business relating to watermarking technology and business, and the technology in the asserted patents.

18. All documents related to Scott Moskowitz' and Blue Spike's involvement in industry-based tests—such as the MUSE Embedded Signaling Tests, Secure Digital Music Initiative ("SDMI"), and various tests by performance-rights organizations including ASCAP and BMI, as well as Japan's Nomura Research Institute.

19. All documents related to Scott Moskowitz' and Blue Spike's projects to incorporate technologies with leaders in a gamut of industries, including but not limited to work with EMI, Warner Brothers, and Universal Music Group on music-release tracking systems; with AIG on insurance and financial services; with IBM on watermarking its software and managing movie scripts; and with Juniper Networks on measuring and provisioning the bandwidth used on its routers.

Each of these categories of documents has been provided to Blue Spike in Audible Magic's numerous letters and emails of at least May 9, May 18, and May 28, 2014.  Should Blue Spike fail by close of business tomorrow to provide a response to any category of documents above, Audible Magic will move to compel those documents.

Your statement regarding the source code requires clarification.  Is it your position that no code for the Giovanni Abstraction Machine (or a similar device or program performing content recognition) ever existed?  If that is not the case, please clarify whether such code existed and was destroyed, with the date of destruction.  If such code does exist, in any form, please indicate why Blue Spike has not produced that code.

It has now been over a month since Audible Magic first raised these issues related to Blue Spike's document production.  In that same time frame Audible Magic has produced several million pages of documents and made its source code available for inspection.  The fact that you have failed to even

identify whether any documents exist, let alone whether you will produce them, in this time frame is unacceptable.  To the extent Audible Magic is forced to file a motion to compel to garner this basic information that was required by the Court on May 1, it will seek sanctions.

-Chris

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Friday, June 06, 2014 10:59 PM
**To:** AudibleMagic-BlueSpike
**Cc:** Christopher Honea; bluespike@ghiplaw.com
**Subject:** Update on Blue Spike production.

There is no code to produce in response to your request with respect to the accused device.

I have more updates that I will follow-up with you on at the beginning on next week.



**Randall Garteiser** / Partner
888.908.4400 x104 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



================================================================
IRS Circular 230 disclosure: To ensure compliance with requirements
imposed by the IRS, we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not intended or
written to be used, and cannot be used, for the purpose of (i) avoiding
tax-related penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any tax-related matter(s)
addressed herein.
================================================================
NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY
THE INTENDED RECIPIENT OF THE TRANSMISSION, AND
MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU
RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE,
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS
E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US
IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND
PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM.
THANK YOU IN ADVANCE FOR YOUR COOPERATION.
 For more information about Orrick, please visit http://www.orrick.com/
================================================================