# Exhibit 15



Counsel for Audible Magic Corp.

Eric Hugh Findlay
Walter W. Lackey, Jr.
Findlay Craft PC
102 N. College Ave. Ste. 900
Tyler, TX 75702
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Alyssa Margaret Caridis
Bas De Blank
Christopher J. Higgins
Christopher R. Ottenweller
Gabriel M. Ramsey
Indra N. Chatterjee
Orrick Herrington & Sutcliffe LLP
1000 Marsh Rd.
Menlo Park, CA 94025
Audiblemagic-bluespike@orrick.com

Counsel for Blue Spike, LLC

Randall Garteiser
Christopher A. Honea
Chris Johns
Kirk J. Anderson
Peter S. Brasher
Garteiser Honea PLLC
218 N. College Ave
Tyler, TX 75702
(888) 908-4400 (phone and fax)
rgarteiser@ghiplaw.com
chonea@ghiplaw.com
cjohns@ghiplaw.com
kanderson@ghiplaw.com
pbrasher@ghiplaw.com

> Re: Blue Spike, LLC v. Texas Instruments Inc., et al., No. 6:12-CV-499-MHS (E.D. Tex.), Audible Magic Corp.'s Disclosure Obligations

Date: April 30, 2014

Dear Counsel:

I write to provide guidance about Audible Magic Corp.'s ("Audible Magic" or "Defendant") disclosure obligations. The Discovery Order in this case requires disclosure of documents without request. Further, the disclosure requirements place upon each party the affirmative obligation to ascertain what is subject to disclosure. In determining the documents subject to disclosure, each party is guided by Local Rule CV-26(d), which addresses relevance to a claim or defense.

To facilitate discovery in the case, this letter is intended to inform Defendant concerning at least some of the categories of documents that Blue Spike ("Blue Spike" or "Plaintiff") expects to see from Defendant. Of course, this is only a preliminary, and not exhaustive, list of documents, and it is not intended to encompass all documents subject to production. Rather, this letter merely serves to outline Blue Spike's beliefs as to the appropriate scope of discovery. It does not alter Defendant's burden to produce documents relevant to any claim or defense, nor does it alter the scope of production required of Defendant. Blue Spike expects that Defendant will produce all relevant, non-privileged documents in Defendant's possession, custody, or



control, including without limitation all documents in the possession of any parent, subsidiary, affiliate or any other entity with whom Defendant has sufficient closeness, connection and practical interaction to allow it control over that entity's documents and information.

As used in this letter, the term "Accused Functionality" means and refers to the ability to generate, process, catalogue, archive, identify, authorize, transact, compare and monitor the use and/or application of signal abstracts or similar functionality, regardless of a Product's name, designation, or version, and Includes any feature in any of Defendant's products that uses signal abstracts such as for images, audio, video, and/or multimedia works. Further, "Accused Functionality" should be understood to Include the charted functionality illustrated in Blue Spike's Infringement Contentions as amended or supplemented, and any similar functionality, that is incorporated into any of Defendant's products, regardless of the name, designation, or version of such product. The term "Product Incorporating the Accused Functionality" means and refers to any product (including without limitation all products identified in Blue Spike's Infringement Contentions, as amended or supplemented) that includes the Accused Functionality and that has been or will be made, used, offered for sale or licensing, sold, imported, licensed, distributed, and/or made available by Defendant at any time.

Also, as used in this letter, "Executed License Agreement" means any hardware, software and/or firmware license or assignment, excluding end user license agreements, whereby Defendant either gains access to or use of another's pending or issued patents, intellectual property, products or technology (as Licensee) or grants access to or use of its pending or issued patents, intellectual property, products or technology to another (as Licensor), regardless of form or title. "License Negotiation" means any communication or effort directed toward or related to reaching or creating an Executed License Agreement, regardless of whether any Executed License Agreement resulted from such communication or effort, and regardless of whether Defendant is or was a Licensee, prospective Licensee, Licensor or prospective Licensor. "Consummated License Negotiation" means any License Negotiation that resulted in an Executed License Agreement, and "Unconsummated License Negotiation" means any License Negotiation that did not result in an Executed License Agreement.

Blue Spike believes that Defendant should at least search the paper and electronic records of each person ever employed or contracted by Defendant and identified in its disclosures under Section II, Paragraph 2 of the Court's Discovery Order [Dkt. Nos. 1331 and 1332] in this action, as well as all current and former Defendant employees (including without limitation all supervisory personnel) and contractors whose duties or responsibilities relate or have ever related to:

a)    the design, development, manufacturing, testing, assembly or packaging of the Accused Functionality or any Product Incorporating the Accused Functionality, including without limitation the incorporation of the Accused Functionality into any such Product;

b)    the advertising, marketing, distribution, sales, licensing or financial accounting of any Product Incorporating the Accused Functionality;



    c)      assessing any actual or forecasted economic value, benefits, importance or impact on customer demand or market share of the Accused Functionality incorporated into any Product Incorporating the Accused Functionality;

    d)      customer service, training or public relations relating to the Accused Functionality or any Product Incorporating the Accused Functionality;

    e)      evaluating, obtaining or maintaining any intellectual property rights relating to the Accused Functionality or any Product Incorporating the Accused Functionality; or

    f)      assessing, negotiating, approving, executing or maintaining any License Negotiations (including without limitation Executed License Agreements) to which Defendant is or has been a party, signatory or beneficiary.

Defendant's source code production for review to Blue Spike should include, but not be limited to, at least the following categories:

1.      All software and firmware source code related to the asserted claims, including all program files, library files, and compiling files. If relevant code exists in prior versions, Defendant should produce that as well.

2.      All files and documents related to said source code, including, but not limited to, all internal and external documentation regarding the source code, including all readme files, specifications, pseudo code, flow charts, and other descriptions of the operation of the source code.

3.      All files and documents related to modifications of said source code, including, but not limited to, all change requests, emails regarding said modifications, and other relevant specifications and documentation.

4.      All files and documents related to testing of said source code, including but not limited to, bug tracking logs, unit tests, emails regarding said tests, and other relevant test specifications and documentation.

Defendant's document production should include, but not be limited to, at least the following categories:

1.      Documents sufficient to show Defendant's corporate structure and organization from January 1, 1999 to present, including without limitation its relationship to all parent, subsidiary and affiliated entities, the dates of any reorganizations, and the changes made as a result of any reorganizations.

2.      Documents sufficient to show the location of each corporate office or facility where any Product Incorporating the Accused Functionality is designed, developed, manufactured, tested, assembled, packaged, advertised, marketed, distributed, sold, licensed, supported or financially analyzed.


3.     Documents (including without limitation organizational charts) sufficient to identify every current or former Defendant employee (including without limitation all supervisory personnel) and contractor whose duties or responsibilities relate or have ever related to:

a)     the design, development, manufacturing, testing, assembly or packaging of the Accused Functionality or any Product Incorporating the Accused Functionality, including without limitation the incorporation of the Accused Functionality into any such Product;

b)     the advertising, marketing, distribution, sales, licensing or financial accounting of any Product Incorporating the Accused Functionality;

c)     assessing any actual or forecasted economic value, benefits, importance or impact on customer demand or market share of the Accused Functionality incorporated into any Product Incorporating the Accused Functionality;

d)     customer service, training or public relations relating to the Accused Functionality or any Product Incorporating the Accused Functionality;

e)     evaluating, obtaining or maintaining any intellectual property rights relating to the Accused Functionality or any Product Incorporating the Accused Functionality; or

f)     assessing, negotiating, approving, executing or maintaining any License Negotiations (including without limitation Executed License Agreements) to which Defendant is or has been a party, signatory or beneficiary.

4.     All deposition transcripts of any person ever employed or contracted by Defendant and identified in its disclosures under Section II, Paragraph 2 of the Court's Discovery Order [Dkt. Nos. 1331 and 1332] in this action.

5.     All documents containing any internal project names or other words, phrases, code names, labels, terms or descriptors relating to the Accused Functionality or any Product Incorporating the Accused Functionality (including without limitation any components of or infrastructure that supports any such Product).

6.     All documents relating to the design, development, manufacturing, testing, assembly or packaging of any Product Incorporating the Accused Functionality, including without limitation any documents comprising or relating to

a)     product proposals;
b)     functional requirements;
c)     design requirements;
d)     user interface requirements;
e)     user interface studies;
f)     focus groups;
g)     guidelines;



h)      technical specifications;

i)      technical reports;

j)      laboratory or engineering notes;

k)      meeting minutes;

l)      schematics;

m)      flow charts;

n)      artwork;

o)      formulas; or

p)      source code (including without limitation high-level source code and assembly language source code).

7.      All documents that relate to Defendant's outsourcing to any persons or entities of any projects relating to the Accused Functionality or any Product Incorporating the Accused Functionality, including without limitation documents sufficient to identify such persons or entities and the nature of all such outsourced projects.

8.      All documents relating to any internal or external investigations, studies, focus groups, research (including without limitation marketing research) or forecasts concerning the economic value, benefits, importance or impact on customer demand or market share of the Accused Functionality incorporated into any Product Incorporating the Accused Functionality.

9.      All documents relating to any internal or external investigations, studies, focus groups, research (including without limitation marketing research) or forecasts concerning any product features that impact customer demand or market share for any Product Incorporating the Accused Functionality.

10.      All documents relating to the advertising or marketing of any Product Incorporating the Accused Functionality, such documents including without limitation all documents comprising or relating to any:

a)      advertising plans;

b)      marketing plans;

c)      marketing presentations;

d)      advertisements;

e)      promotional materials;

f)      product brochures;

g)      bulletins; or

h)      catalogs.



11.	All documents relating to Defendant's revenue that is attributable to any Product Incorporating the Accused Functionality since March 18, 2008, including without limitation all documents relating to any:

a)	sales or licensing of any Product Incorporating the Accused Functionality;

b)	upgrade or maintenance of any Product Incorporating the Accused Functionality;

c)	professional services relating to any Product Incorporating the Accused Functionality;

d)	advertising displayed in conjunction with any Product Incorporating the Accused Functionality;

e)	cost savings achieved through Defendant's manufacture or use of any Product Incorporating the Accused Functionality; and

f)	increased sales of Defendant's other products due to any acquisition, sale, licensing, distribution or use of any Product Incorporating the Accused Functionality.

12.	All documents relating to Defendant's actual or forecasted sales, licensing or market share of any Product Incorporating the Accused Functionality, or any profits and/or costs that have been or will be attributable to each such Product after March 18, 2008, including without limitation all documents relating to any actual or forecasted:

a)	sales or licensing strategies relating to any Product Incorporating the Accused Functionality;

b)	market studies relating to any Product Incorporating the Accused Functionality;

c)	market share reports relating to any Product Incorporating the Accused Functionality;

d)	competitive analysis relating to any Product Incorporating the Accused Functionality;

e)	quantity sold or licensed of each Product Incorporating the Accused Functionality;

f)	Sales Revenue for each Product Incorporating the Accused Functionality;

g)	Sales Costs directly attributable to each Product Incorporating the Accused Functionality; and

h)	Gross Profit for each Product Incorporating the Accused Functionality.

13.	All documents relating to any of Defendant's profits and costs, other than Sales Costs, after March 18, 2008 for any Product Incorporating the Accused Functionality, including without limitation all documents relating to any actual or forecasted:

a)	Operating Expenses (including without limitation the methodology used to allocate such expenses, if any such expenses have been or will be allocated); and

b)	Operating Income.



14.     Documents sufficient to identify all known purchasers, whether direct or indirect, of any Product Incorporating the Accused Functionality.

15.     All documents relating to or embodying product support for any Product Incorporating the Accused Functionality, such documents including without limitation any:

a)     manuals;

b)     product support documentation; and

c)     documents relating to or embodying communications from direct or indirect purchasers of any such Product (including without limitation any complaints, suggestions, requests and questions).

16.     All documents that refer to Blue Spike, any of its Members or employees, the Patents-in-Suit, or any other Patent owned by or assigned to Blue Spike.

17.     All documents relating to any patent or patent application ever owned by or assigned to Defendant that relates to the Accused Functionality or any Product Incorporating the Accused Functionality.

18.     All documents relating to any of Defendant's policies concerning efforts to identify and avoid infringement of any patents or patent applications not owned by or assigned to Defendant.

19.     All documents relating to any efforts by Defendant to identify and avoid infringement of any patents or patent applications not owned by or assigned to Defendant that relate to the Accused Functionality or any Product Incorporating the Accused Functionality.

20.     All documents relating to any other intellectual property litigation concerning the Accused Functionality, any Product Incorporating the Accused Functionality, or any patent or patent application that has been alleged to cover the Accused Functionality or any Product Incorporating the Accused Functionality, including without limitation any documents comprising or referring to:

a)     disclosures;

b)     discovery responses;

c)     expert reports;

d)     briefing;

e)     transcripts of any depositions or proceedings; or

f)     judgments.

21.     All documents that relate to any License Negotiations (whether Consummated or Unconsummated) to which Defendant is or has been a party, signatory or beneficiary that relate



to the Accused Functionality or any Product Incorporating the Accused Functionality, including without limitation:

    a)    all Executed License Agreements; and

    b)    all documents that embody or refer to any communications (including without limitation internal and external correspondence, due diligence assessments and presentations) relating to such License Negotiations (whether Consummated or Unconsummated).

22.    Documents sufficient to show the identity and operation of any software that Defendant currently uses or has used since January 1, 1999 to create or modify any document that Defendant has produced or will produce in this action.

23.    Documents sufficient to show the identity and operation of any e-mail programs that Defendant currently uses or has used since January 1, 1999.

24.    Documents sufficient to show Defendant's paper and electronic document retention and destruction policies, by year, since January 1, 1999, including without limitation the preservation of paper and electronic documents of Defendant's employees and contractors who leave the company.

25.    All documents that refer to any actions taken in violation of any document retention and destruction policy concerning any document that is relevant to the claims or defenses of any party in this action under Local Rule 26(d).

26.    All other documents in Defendant's possession, custody or control that are relevant to the claims or defenses of any party in this action under Local Rule 26(d).

If you have any questions, please feel free to call me.

Yours very truly,

Randall T. Garteiser
Lead Counsel for Blue Spike, LLC