# Exhibit 16

## Higgins, Christopher J.

| | |
|---|---|
| **From:** | Peter Brasher [pbrasher@ghiplaw.com] |
| **Sent:** | Tuesday, June 24, 2014 1:03 PM |
| **To:** | Higgins, Christopher J. |
| **Cc:** | Randall Garteiser; Christopher Honea; bluespike@ghiplaw.com; AudibleMagic-BlueSpike |
| **Subject:** | Re: Update on Blue Spike production. |

Counsel,

Per our phone conversation of Monday June 23, 2014, please see more specific responses to your requests below.

These responses are Blue Spike's position with regard to these requests. We have received documents from Mr. Moskowitz and Blue Spike which we are currently reviewing. We have also contacted attorney's in possession of other documents which are being mailed to our offices for review shortly. Blue Spike, Inc., Blue Spike, LLC, and Scott Moskowitz agree to produce documents to the extent they are non-privelged and in Blue Spike, Inc., Blue Spike, LLC, and Scott Moskowitz's possession, custody and control.

Blue Spike will also provide supplemental responses to its interrogatory responses no later than June 25th by the close of business - 5:00 pm central.

Regards,



**Peter Brasher** / Attorney
888.908.4400 x104 / pbrasher@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Jun 10, 2014, at 4:19 PM, Higgins, Christopher J. <chiggins@orrick.com> wrote:

Randall,

When do you expect to provide Blue Spike's positions on the remaining categories of documents?  You promised us those positions by last Friday but what you sent on Friday is not a response.  It was nothing more than an evasive statement regarding the Giovanni Abstraction Machine source code.  Indeed, my email of June 9 noting that we have received no response from Blue Spike remains accurate.  Provide Blue Spike's positions on each of the following categories of documents by close of business tomorrow.

Blue Spike's positions with respect to each category of documents below must include the following:

    **A - Whether documents in the category exist, and**

1

**B - If documents exist, whether the documents will be produced and when, or whether the documents will be withheld and on what grounds, or**
**C - If no documents presently exist, whether such documents were destroyed and when the destruction occurred.**

1. All documents related to the Giovanni Abstraction Machine.

A. Per our conversation, I am currently attempting to verify if any documents exist related to the Giovanni Abstraction Machine. Because the product itself was never created, technical documents related to this product may be limited if they exist at all. To the best of my knowledge no source code related to the Giovanni Abstraction Machine exists. All documents related to the underlying technology are included in the prosecution histories for the patents-in-suit. As I stated above, we have received additional documents from Mr. Moskowitz and his attorneys and are in the process of reviewing those documents related to the underlying technology which would have supported the Giovanni Abstraction Machine had the same ever been created. We are also in the process of identifying the existence of any communications related to the Giovanni Abstraction Machine including offers to purchase or sale, negotiations, discussions, regarding the technology.
B. To the extent any additional documents related to the Giovanni Abstraction Machine do exist and are not privileged, Blue Spike, LLC will produce those documents. As the search is ongoing, at this time, I cannot provide a firm date when any documents relevant to this request will be produced. They will be produced as they are identified.
C. Given the scope—"all documents related"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

2. All documents related to the prosecution of the Blue Spike patents-in-suit, including prior art, drafts of applications and office action responses, and any communications related to any applications or issued patents. This includes any documents or communicates drafted by Scott Moskowitz during the time he prosecuted any of the Blue Spike patents.

A. Blue Spike has previously provided all non-privileged documents related to the prosecution of the patents-in-suit. Blue Spike, LLC is also in the process of reviewing documents from Mr. Moskowitz in which he received advice and counsel in his pro se prosecution of the '472 and the '700 patents, and several other patents not specifically named in this litigation. Counsel for Blue Spike also anticipates receiving further documents from outside counsel Floyd Chapman before July 4th that may be relevant to the subject matter of this litigation in particular to communications between Mr. Chapman and Mr. Moskowitz regarding the prosecution of these patents. Counsel for Blue Spike has also requested any other documents related to—as you identified in our phone conversation and emails—any non-privileged documents related to the '472 and '700 patents. Blue Spike will produce those non-privileged documents as they become available.
B. Counsel for Blue Spike will produce any relevant non privileged documents currently in its possession as they are identified.
C. Blue Spike, LLC, Blue Spike, Inc., and Mr. Moskowitz have not destroyed any documents related to the prosecution of the patents-in-suit.

3. All documents and files related to the Blue Spike website (www.bluespike.com).

A. Counsel for Blue Spike has requested past iterations of the website including previous public statements and other product offerings for www.bluespike.com and per our telephone conversation the products which were made available on the www.myshopify.com and all documents related to the maintenance and operation of the same.

2

B. As the documents are identified and not subject to some privilege, Blue Spike will produce the same in a timely fashion. Blue Spike, LLC, Blue Spike, Inc and Mr. Moskowitz object to this interrogatory to the extent that it requires the creation of documents not already in existence.
C. Given the scope—"all documents"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

4. All documents related to the formation of and business practices of Blue Spike, Inc. and Blue Spike, LLC, including corporate structure, employees, products, investors, financial data, and customers.

A. Counsel has requested these documents.
B. As they are identified, responsive, and not subject to any privilege, Blue Spike will produce the same.
C. Given the scope—"all documents related"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

5. All documents related to the dissolution of the DICE Company.

A. Counsel is determining whether the existence of documents related specifically to the *dissolution* of the DICE company are in the possession custody and control of Blue Spike, LLC, Blue Spike, Inc. or Mr. Moskowitz. Counsel for Blue Spike has requested all documents related to the Cooperman employment litigation which may contain documents related to the dissolution of the DICE company. *See* response to Request No. 6.
B. While Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz continue to object to the relevance of such documents, in the spirit of cooperation, Blue Spike has requested all documents related to the Cooperman employment dispute from the representing attorneys and from Mr. Moskowitz and will produce the same as they become available and are not subject to any privilege.
C. Given the scope—"all documents related"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

6. All documents related to Marc Cooperman, including all documents produced and filed in the lawsuits between Marc Cooperman and Scott Moskowitz.

A. It is believed that such documents do exist, and the same have been requested from those parties in possession of them.
B. While Blue Spike, LLC continues to object to the relevance of the such documents, in the spirit of cooperation, Blue Spike has requested all documents related to the Cooperman employment dispute from the representing attorneys and from Mr. Moskowitz and will produce the same as they become available and are not subject to any privilege.
C. Given the scope—"all documents related"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

7. All documents related to Audible Magic Corporation.

A. Such documents do exist.

B. Blue Spike and Mr. Moskowitz have provided all documents regarding interactions with and related to the Audible Magic Corporation. To the extent additional documents are discovered and not subject to any privilege, the parties will produce the same as they are identified and become available.
C. Given the scope—"all documents related"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

8. All documents related to Muscle Fish, LLC.

A. Such documents do exist.
B. Blue Spike and Mr. Moskowitz have provided all documents regarding its interactions with and related to Muscle Fish, LLC. To the extent additional documents are discovered and not subject to any privilege, Blue Spike LLC will produce the same. Before the close of business today—5:00 pm central—Blue Spike, LLC will produce a copy of the agreement entered into by Muscle Fish, LLC and Blue Spike, Inc.
C. Given the scope—"all documents related"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

9. All communications between Scott Moskowitz and any third parties regarding the patents-in-suit, the Giovanni Abstraction Machine, Audible Magic Corporation, or Muscle Fish, LLC.

The Patents-in-suit
A. The existence of any documents evidencing communications between Mr. Moskowitz and any third parties related to the patents-in-suit is being determined. There are documents regarding communications between Mr. Moskowitz and his attorneys concerning the prosecution of the patents-in-suit which will appear on the plaintiff's privilege log.
B. To the extent any such documents exist and are not subject to any privilege, they will be produced as they are identified.
C. Given the scope—"all communications"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

Giovanni Abstraction Machine
(See response to Request No. 1. To the extent this request seeks something beyond the scope of Request No. 1, please clarify.)

Audible Magic Corp./Muscle Fish, LLC
(See response to Request Nos. 7 and 8. To the extent this request seeks something beyond the scope of Request Nos. 7 and 8, please clarify.)

10. All documents related to the activities and business of Mr. Moskowitz and Blue Spike Inc., during the critical period 1997-2001. Obviously there are many more relevant materials beyond this range of dates, but Scott Moskowitz' and Blue Spike's activities in this time are of particular importance. This encompasses not only the communications and documents of Scott Moskowitz, but also Michael Berry and any other employees, consultants, contractors, agents or volunteers working with or for Scott Moskowitz or Blue Spike in this exceedingly relevant timeframe. This includes, but is not limited to, all internal communications regarding the building of the Blue Spike business and assessment of competitors, competing or similar technologies, etc. All

analysis, conversation, discussion, documents, emails etc. relating to Muscle Fish and Audible Magic, or any other company providing content-recognition technologies.

(See Blue Spike's response to the Request Nos. 4, 7, and 8. Please clarify whether this request goes above and beyond in any way the scope of Request Nos. 4, 7, and 8.)

11. All documents related to inventors Scott Moskowitz and Michael Berry and their activities in relation to Blue Spike, LLC, Blue Spike, Inc. (collectively "Blue Spike" here), the asserted patents or any related matters.

(See Blue Spike's response to Request No. 4. Please clarify whether this request goes above and beyond in any way the scope of Request No. 4.)

12. All documents related to the activities of Blue Spike CEO Scott Moskowitz in relation to the alleged more than 66 U.S. Patents related to managing, monitoring, and monetizing digital content and informational assets.

A. Such documents do exist. Counsel for Blue Spike is in the process of reviewing those documents currently in its possession and has requested additional documents regarding the same from involved parties.
B. The scope of this request was not anticipated at the beginning of litigation and comprises several decades (approximately 30 years of work) which will require significant investigation. As such documents relevant documents are identified and not subject to any privilege, Blue Spike will produce the same. Blue Spike, LLC continues to object to the relevance of these documents to this litigation.
C. Given the scope—"all documents"—whether at any time any documents have been destroyed related to any of the patents is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

13. All documents related to Blue Spike's, and Scott Moskowitz' activities relating to the allegation that they have "practiced and has continued business plans to practice Moskowitz's patented inventions."

(See response to Request No. 4. To the extent this request seeks something beyond the scope of Request No. 4, please clarify.)

14. All documents related to Blue Spike's use of its technology to catalogue, manage, monitor, and monetize content.

(See response to Request No. 4. To the extent this request seeks something beyond the scope of Request No. 4, please clarify.)

15. All documents related to Blue Spike's pre-suit investigation of the accused products of Audible Magic and its customers, including all technical analysis and results

A. Such documents do exist.
B. Blue Spike has already produced documents underlying its pre-suit investigation. Any documents containing analysis and conclusions based on such analysis are protected as attorney work product and will not be produced. Blue Spike is reviewing its documents to determine the existence of any additional documents above what has already been produced, and any such non-privileged documents, will be produced as they are identified.
C. No such documents were destroyed.

16. All documents related to the matters set forth in the "Factual Background" section of Blue Spike's Amended Complaint.

A. Such documents do exist.
B. Counsel is compiling any such related documents and will produce the same before July 4, 2014 and subsequently as they are received and identified. Blue Spike objects to the relevance of some of the information that is covered by the scope of the request (i.e. such a broad request would presumably include all notes, documents, tests, etc. taken during his years in college as well as all publishing contracts for Mr. Moskowitz's book, drafts of the same and sales reports of the same).
C. Given the scope—"all documents"—whether at any time any documents have been destroyed is being determined. Blue Spike, LLC, Blue Spike, Inc. and Mr. Moskowitz have not destroyed any relevant documents in anticipation of litigation or since preparation for litigation began.

17. All documents related to Scott Moskowitz' and Blue Spike's business and technical background and activities from 1990 to present, including all matters relating to Scott Moskowitz' and Blue Spike's development of and business relating to watermarking technology and business, and the technology in the asserted patents.

(See response to Request Nos. 4, 12 and 16. To the extent this request seeks something beyond the scope of Request Nos. 4, 12 and 16, please clarify.)

18. All documents related to Scott Moskowitz' and Blue Spike's involvement in industry-based tests—such as the MUSE Embedded Signaling Tests, Secure Digital Music Initiative ("SDMI"), and various tests by performance-rights organizations including ASCAP and BMI, as well as Japan's Nomura Research Institute.

(See response to Request Nos. 4, 12 and 16. To the extent this request seeks something beyond the scope of Request Nos. 4, 12 and 16, please clarify.)

19. All documents related to Scott Moskowitz' and Blue Spike's projects to incorporate technologies with leaders in a gamut of industries, including but not limited to work with EMI, Warner Brothers, and Universal Music Group on music-release tracking systems; with AIG on insurance and financial services; with IBM on watermarking its software and managing movie scripts; and with Juniper Networks on measuring and provisioning the bandwidth used on its routers.

(See response to Request Nos. 4, 12 and 16. To the extent this request seeks something beyond the scope of Request Nos. 4, 12 and 16, please clarify.)

Each of these categories of documents has been provided to Blue Spike in Audible Magic's numerous letters and emails of at least May 9, May 18, and May 28, 2014.  Should Blue Spike fail by close of business tomorrow to provide a response to any category of documents above, Audible Magic will move to compel those documents.

Your statement regarding the source code requires clarification.  Is it your position that no code for the Giovanni Abstraction Machine (or a similar device or program performing content recognition) ever existed?  If that is not the case, please clarify whether such code existed and was destroyed, with the date of destruction.  If such code does exist, in any form, please indicate why Blue Spike has not produced that code.

6

It has now been over a month since Audible Magic first raised these issues related to Blue Spike's document production. In that same time frame Audible Magic has produced several million pages of documents and made its source code available for inspection. The fact that you have failed to even identify whether any documents exist, let alone whether you will produce them, in this time frame is unacceptable. To the extent Audible Magic is forced to file a motion to compel to garner this basic information that was required by the Court on May 1, it will seek sanctions.

-Chris

---

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Friday, June 06, 2014 10:59 PM
**To:** AudibleMagic-BlueSpike
**Cc:** Christopher Honea; bluespike@ghiplaw.com
**Subject:** Update on Blue Spike production.

There is no code to produce in response to your request with respect to the accused device.

I have more updates that I will follow-up with you on at the beginning on next week.



**Randall Garteiser**  / Partner
888.908.4400 x104 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



============================================================
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.
============================================================
NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E- MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/
============================================================