## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | Civil Action No. 6:12-CV-499-MHS |
| *Plaintiff*, | § | |
| | § | |
| v. | § | (LEAD CASE) |
| | § | |
| TEXAS INSTRUMENTS, INC. | § | |
| *Defendants*. | § § | JURY TRIAL DEMANDED |
| _____ | § | |
| | § | |
| BLUE SPIKE, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-CV-576-MHS |
| | § | |
| AUDIBLE MAGIC CORPORATION, ET AL. | § § | (CONSOLIDATED WITH 6:12-CV-499) |
| | § | |
| *Defendants*. | § | JURY TRIAL DEMANDED |
| | § | |
| _____ | § | |

## DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS SEPARATE CLAIMS AGAINST FACEBOOK'S TECHNOLOGY, OR IN THE ALTERNATIVE, TO SEVER PURSUANT TO 35 U.S.C. § 299 <u>AND TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTS .................................................................................................................. 3

        A.      Blue Spike added, then dropped, Facebook Technology from its
                Complaint ................................................................................................. 3

        B.      Facebook's headquarters, witnesses, and a majority of the relevant
                evidence is located in the Northern District of California ..................... 4

III.    LEGAL STANDARDS ......................................................................................... 5

        A.      An amended pleading supersedes an earlier pleading ............................ 5

        B.      35 U.S.C. § 299 does not allow proceedings to be joined unless they
                involve the same transaction or common questions of fact .................... 5

        C.      A district court may transfer venue to any district where the case might
                have been filed where the transferee venue is clearly more convenient ... 6

IV.     ARGUMENT ........................................................................................................ 7

        A.      Blue Spike abandoned its claims against Facebook Technology ........... 7

        B.      In the alternative, Blue Spike's claims against Facebook Technology
                should be severed from its claims against Audible Magic Technology ... 8

                1.      Severance is warranted because Blue Spike agrees that the claims
                        against Facebook Technology should be tried separately ........... 9

                2.      Severing Blue Spike's claims against Facebook Technology is
                        necessary to resolve confusion over which claims are at issue ... 9

                3.      Severance is required by 35 U.S.C. § 299 and consistent with the
                        Court's case management order ................................................... 9

        C.      The case against Facebook Technology merits transfer under § 1404(a) ... 11

                1.      This case could have been brought in the Northern District of
                        California because Facebook "resides" there ........................... 11

                2.      Transfer is warranted because the majority of the witnesses and
                        evidence are concentrated in Northern California .................... 12

                        a.      The private interest factors favor transfer to the Northern
                                District of California .................................................... 12

                                (1)     Facebook's sources of proof are in the Northern
                                        District ............................................................... 12

                                (2)     Non-party witnesses reside in California ......... 12

**DEFENDANT FACEBOOK'S MOTION TO SEVER
AND TRANSFER VENUE**

**TABLE OF CONTENTS**
(continued)

Page

        (3)    It will be more cost effective for willing witnesses to travel within or to California than to Texas ................. 13

        (4)    Serially filing lawsuits in this District cannot create judicial economy ............................................................ 14

    b.    The public interest factors either favor the Northern District of California or are neutral........................................................ 15

  3.    This case merits transfer because it is similar to the other transferred cases in this consolidated litigation ....................................... 15

V.    CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blue Spike LLC v. Adobe Sys., Inc.*,
   No. 6:12-cv-564 (Mar. 13, 2014) ..........................................................................5

*Blue Spike, LLC v . Google, Inc.*,
   No. 6:12-cv-558 (Mar. 13, 2014) ..........................................................................5

*Blue Spike, LLC v. Imageware Sys., Inc.*,
   No. 6:12-cv-688 (Mar. 13, 2014) ..........................................................................5

*Blue Spike, LLC, v. Iris ID Sys., Inc.*,
   No. 6:13-cv-88 (Mar. 13, 2014) ..........................................................................5

*Blue Spike, LLC, v. Kronos, Inc.*,
   No. 6:13-cv-86 (Mar. 13, 2014) ..........................................................................5

*Blue Spike, LLC, v. Soundhound, Inc.*,
   No. 6:12-cv-537 (Mar. 13, 2014) ..........................................................................5

*Blue Spike, LLC v. Zietera, Inc.*,
   No. 6:12-cv-568 (Mar. 13, 2014) ..........................................................................5

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ......................................................................6, 11

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ....................................................................12, 14

*GeoTag, Inc. v. Rent-A-Center, Inc., et al.*,
   No. 2:10-cv-573, slip op. (E.D. Tex. Jan. 14, 2013) (Schneider, J.)..................6, 15

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................12

*King v. Dogan*,
   31 F.3d 344 (5th Cir. 1994) ......................................................................5, 7, 8

*In re Nintendo*,
   544 F. App'x ............................................................................................10, 11

*In re Nintendo of Am., Inc.*,
   2014-132, slip op. (Jun. 25, 2014) ........................................................................11

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009).......................................................................10, 12

*Reiffin v. Microsoft Corp.*,
270 F. Supp. 2d 1132 (N.D. Cal. 2003) ......................................................................8

*Stewart v. City of Houston*,
No. H-07-4021, 2009 WL 2849728 (S.D.Tex. Sep. 3, 2009)....................................7

*In re TS Tech*,
551 F.3d at 1321 .......................................................................................................15

*UltimatePointer, L.L.C. v. Nintendo Co.*,
6:11-cv-496, 6:11-cv-571, slip op. (E.D. Tex. Jun. 17, 2014)................................10

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ................................................................................6, 11

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ..................................................................6, 7

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
No. 2:10-CV-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) .....................12

**Statutes**

28 U.S.C.,
§ 1391(c) ...................................................................................................................11
§ 1404(a) .....................................................................................................1, 2, 6, 11

35 U.S.C.,
§ 299.................................................................................................................. *passim*
§ 299(a) ......................................................................................................................6

America Invents Act. .....................................................................................................15

Leahy-Smith America Invents Act .................................................................................5

**Other Authorities**

Rule 20............................................................................................................................6

Facebook moves to dismiss Blue Spike's claims against Facebook's facial recognition technology (hereafter "Facebook Technology"), which are unrelated to claims based on Facebook's use of copyright compliance technology provided by Audible Magic (hereafter "Audible Magic Technology").   In the alternative, Facebook moves to sever claims against Facebook Technology and transfer to the Northern District of California.  28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Blue Spike originally brought this suit against Audible Magic and its customers (including Facebook) based solely on the use of Audible Magic Technology.  Blue Spike's original claim of infringement against Facebook, in other words, derived entirely from the fact that Facebook was a customer of the accused Audible Magic Technology.  But more than 18 months later, and after the deadline for moving to transfer under 28 U.S.C. § 1404(a) had passed, Audible Magic filed a "First Amended Complaint" purporting for the first time to separately accuse Facebook of infringement based on Facebook Technology separate from that of Audible Magic.  Blue Spike then dropped those allegations in a revised First Amended Complaint served a few weeks later in April 2014, yet it maintains that those non-Audible Magic technologies are somehow still being accused in this action.

Blue Spike's view of the law, however, is incorrect.  Fifth Circuit law is clear that an amended complaint supersedes earlier complaints and renders them null and of no legal effect. By dropping its claims against Facebook Technology in Blue Spike's revised "First Amended Complaint," Blue Spike waived those claims.  The Court should enter an order confirming that Facebook Technology unrelated to Audible Magic is not accused in this action.

In the alternative, if the Court deems that Blue Spike somehow has an operative claim against Facebook Technology separate from its claims against Audible Magic Technology, the Court should sever Blue Spike's claims against Facebook Technology and transfer the severed

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

Facebook action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  The claims should be severed under Section 299 of the Patent Act because Audible Magic Technology and Facebook Technology are unrelated and share no common nucleus of facts.  In fact, <u>Blue Spike agrees that its claims against the Audible Magic and Facebook Technology should be tried separately</u>.  Severance would be unopposed but for Blue Spike's insistence that severance not be addressed until later in the case.  Moreover, the Case Management Order separately scheduled "supplier" trials and "customer" trials and, under that Order, Blue Spike's claims against Facebook Technology will be tried separately from its claims against Facebook's use of Audible Magic Technology anyway.  Severance will therefore merely formalize the case management plan already in place.

As noted previously, Blue Spike accused Facebook Technology in a "First Amended Complaint" but dropped those claims a few weeks later when it filed another "First Amended Complaint."  Blue Spike now argues that it has essentially two lawsuits pending against Facebook and that both of its amended complaints remain in force.  To resolve the confusion, the claims against Facebook Technology should be severed into a new case.

After severing the claims against Facebook Technology into a separate case, the Court should transfer the new case to the Northern District of California.  As the Court recognized when it transferred seven other Blue Spike cases—four involving other defendants located in the Northern District of California—it is clearly more convenient for parties to defend claims unrelated to allegations against Audible Magic in jurisdictions where they are headquartered, their documents and employees reside, and key third-party witnesses are located.  Facebook's motion to transfer, therefore, is factually indistinguishable from the ones this Court has already granted with respect to the other Northern California companies sued by Blue Spike.

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

## II.    FACTS

This case is one of 82 separate cases filed in this District by Blue Spike.  The Court consolidated the cases for pretrial purposes, specifically exempting venue.  (Dkt. No. 16.)  The Court ordered the Defendants to sort themselves into two groups: Supplier Defendants, who made the technology accused in their respective complaints, and Customer Defendants, who licensed the technology in their respective complaints from others.  (Dkt. Nos. 1316, Minutes from March 5 Scheduling Conference, and 1331 and 1332, Scheduling Orders for Supplier and Customer Defendants.)  Trials for the two groups are proceeding on different schedules.  (*Id.*)

### A.    Blue Spike added, then dropped, Facebook Technology from its Complaint

Blue Spike accused Facebook of infringement through its use of Audible Magic Technology, and later, through use of its own Facebook Technology.  Facebook is unique among the Defendants sued by Blue Spike; it appears to be the only corporate entity that qualifies as *both* a Supplier Defendant and a Customer Defendant.  (*See* Dkt. No. 1367.)

Blue Spike filed its complaint against Facebook accusing Audible Magic Technology in August 2012.  (Dkt. No. 1.)  Eighteen months later, Blue Spike filed a First Amended Complaint against Facebook that accused it of infringement based on Facebook Technology.  (Dkt. No. 1252, ¶ 27.)  Then, on April 4, 2014 (the last day to amend pleadings), Blue Spike filed another "First Amended Complaint" against Facebook and the other Customer Defendants that dropped any reference to Facebook Technology and reverted to accusations based only on Audible Magic Technology for content recognition.  (Dkt. No. 1400, ¶¶ 51, 52.)  Blue Spike's April 4 Amended Complaint also added a section concerning joinder under Section 299, stating that "each of the defendants' accused products and methods use the common and related infringing technologies—Audible Magic's digital fingerprint based technology for automatic content

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

recognition." (*Id*., ¶ 30.) It therefore appeared to Facebook that Blue Spike had chosen not to pursue claims based on separate Facebook Technology in the present action.

On April 17, 2014, Facebook requested confirmation from Blue Spike on whether it had withdrawn its claims against Facebook Technology. (Fischer Decl. ¶ 1, Ex. A, email from Sara J. Radke dated April 17, 2014.) Blue Spike responded that it had "distinct claims against entirely separate products" pending against Facebook. (Fischer Decl. Ex. B, letter from Kirk Anderson dated April 25, 2014.) Blue Spike continues to maintain that it has two separate cases pending against Facebook (albeit with only a single case number) that are merely consolidated for pretrial purposes, notwithstanding having dropped those claims in the currently-operative First Amended Complaint. (Dkt. No. 1400.)

On May 14, 2014 and May 29, 2014, counsel conferred regarding Blue Spike's infringement claims. During both meetings, Blue Spike agreed that its claims against Facebook Technology should be tried separately from its claims against Audible Magic Technology. (Fischer Decl. ¶¶ 6, 9.) But Blue Spike refused to file a formal stipulation for separate trials because it deemed it to be premature to raise the issue with the Court. (*Id*. Exs. C–D, emails from Randall Garteiser dated May 23 and 28, 2014.) Blue Spike also rejected Facebook's suggestion that it file a new complaint against Facebook Technology. (*Id*. ¶ 9.)

**B.      Facebook's headquarters, witnesses, and a majority of the relevant evidence is located in the Northern District of California**

Facebook is a Delaware corporation with its headquarters in Menlo Park, California. (Compl., Dkt. 1400 ¶ 4; Jordan Decl. ¶ 2.) Facebook was established in Palo Alto in June 2004. (*See* Jordan Decl., ¶ 2.) The vast majority of Facebook's sources of proof and known witnesses relevant to this action are located in the Northern District of California. (*Id*., ¶¶ 3–4.) Conversely, none of Facebook's witnesses—nor Facebook's evidence—is located in the

DEFENDANT FACEBOOK'S MOTION TO SEVER
                                                                       AND TRANSFER VENUE

Eastern District of Texas.  Facebook maintains no offices in this District, knows of no employees who work in this District, and is aware of no relevant documents in this District.  (*Id.* ¶ 5.)

This Court has already transferred seven defendants originally part of the consolidated pretrial measures, including four to the Northern District of California.[1]  Facebook shares many characteristics of those defendants that the Court found persuasive:

- Facebook's headquarters are in the Northern District of California.

- Facebook's witnesses are in the Northern District of California.

- Documentary evidence is in the Northern District of California.

- Inventors and assignees of relevant prior art are located in California.

(*See* Dkt Nos. 1356, 1358, 1359, and 1362.)  This Court also already found that Blue Spike's location in this District does not preclude transfer.  (*Id.*)

## III.   LEGAL STANDARDS

### A.   An amended pleading supersedes an earlier pleading

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

### B.   35 U.S.C. § 299 does not allow proceedings to be joined unless they involve the same transaction or common questions of fact

The Leahy-Smith America Invents Act ("AIA") allows accused infringers of the same patent to be joined in one action only if any right to relief is asserted "with respect to or arising

---

[1] Dkt. No. 1355, *Blue Spike, LLC v. Imageware Sys., Inc.*, No. 6:12-cv-688 (Mar. 13, 2014) (transferred to the Southern District of California); Dkt. No. 1356, *Blue Spike, LLC, v. Soundhound, Inc.*, No. 6:12-cv-537 (Mar. 13, 2014) (transferred to the Northern District of California); Dkt. No. 1357, *Blue Spike, LLC, v. Iris ID Sys., Inc.*, No. 6:13-cv-88 (Mar. 13, 2014) (transferred to the District of New Jersey); Dkt No. 1358, *Blue Spike, LLC v . Google, Inc.*, No. 6:12-cv-558 (Mar. 13, 2014) (transferred to the Northern District of California); Dkt. 1359, *Blue Spike, LLC v. Zietera, Inc.*, No. 6:12-cv-568 (Mar. 13, 2014) (transferred to the Northern District of California); Dkt. No. 1362, *Blue Spike LLC v. Adobe Sys., Inc.*, No. 6:12-cv-564 (Mar. 13, 2014) (transferred to the Northern District of California); Dkt. No. 1363, *Blue Spike, LLC, v. Kronos, Inc.*, No. 6:13-cv-86 (Mar. 13, 2014) (transferred to the District of Massachusetts).

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

out of the same transaction, occurrence, or series of transactions or occurrences" or if "questions of fact common to all defendants . . . will arise in the action."  35 U.S.C. § 299(a) (2014).

After the AIA's passage but before it took effect, the Federal Circuit clarified the test for joinder in patent infringement cases, holding that under Rule 20, defendants are properly joined when "there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant."  *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012).  The existence of "some similarity" that would exist "simply because the same patent claims are alleged to be infringed," does not satisfy the joinder rule.  *Id.* at 1359.  Courts continue to look to *EMC* for Federal Circuit guidance on the issue of transfer.  *See, e.g., GeoTag, Inc. v. Rent-A-Center, Inc., et al.*, No. 2:10-cv-573, slip op. at 3 (E.D. Tex. Jan. 14, 2013) (Schneider, J.).

### C.  A district court may transfer venue to any district where the case might have been filed where the transferee venue is clearly more convenient

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a) (2014).  To succeed on a motion to transfer venue, a defendant must show that the transferee district is a "clearly more convenient" venue for the lawsuit.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

Courts deciding motions to transfer venue first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  Once that threshold is met, the Fifth Circuit analyzes private and public factors relating to the convenience of parties and witnesses and the interests of the two venues in the case.  *See Volkswagen of Am.*, 545 F.3d at 315.  The private interest factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) cost of attendance for willing

witnesses; and (4) all other practical problems.  *Id.*  The public interest factors are: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) familiarity of the forum with the law governing the case; and (4) avoidance of unnecessary problems of conflicts of law.  *Id.*

## IV.   ARGUMENT

### A.   Blue Spike abandoned its claims against Facebook Technology

Blue Spike's repeated, inconsistent amendments to its complaints in this action resulted in confusion and uncertainty—and Blue Spike steadfastly refuses to take any action to remedy the mess it created, including filing a new complaint or a stipulation for separate trials.  Blue Spike maintains that, notwithstanding the removal of infringement claims against Facebook Technology in its latest First Amended Complaint, Facebook Technology is still at issue in this case.  This has created an untenable uncertainty as to the scope of the present litigation.  To fix the problem Blue Spike created, the Court should enter an order clarifying that Facebook Technology is not being accused in this action.

As noted previously, Fifth Circuit law is clear that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King*, 31 F.3d at 346; *see also Stewart v. City of Houston*, No. H-07-4021, 2009 WL 2849728, at *9 (S.D.Tex. Sep. 3, 2009) (holding that plaintiff abandoned claims by removing them from amended complaint). Here, Blue Spike's revised "First Amended Complaint" removed all allegations of infringement against Facebook Technology and did not incorporate or adopt its earlier allegations.  To the contrary, Blue Spike appears to have deliberately removed those allegations from its April 4 "First Amended Complaint" to shore up its case for joinder under Section 299 by arguing that all Defendants use the same accused Audible Magic Technology.  (Dkt. No. 1400, ¶ 30.)

A similar situation was presented by the district court in *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132 (N.D. Cal. 2003).  In that case, the plaintiff filed a complaint accusing the Microsoft "Windows CE" product of infringement but removed his infringement allegations against that product in a subsequently-filed first amended complaint.  *Id.* at 1161.  The district court, applying the Ninth Circuit's formulation of the *King* rule, held that the plaintiff had abandoned its claims against Windows CE by failing to reassert them in an amended pleading. *Id.* ("It is plaintiff, however, who has failed to reallege claims of infringement of Windows CE in the FAC and plaintiff who must suffer the consequences: a waiver of those claims."). Accordingly, the Court should enter an order clarifying that the Facebook technologies accused of infringement in this action consist <u>only</u> of the Audible Magic Technology identified in the currently-operative First Amended Complaint.

### B.    In the alternative, Blue Spike's claims against Facebook Technology should be severed from its claims against Audible Magic Technology

In the event the Court determines that Blue Spike maintains separate claims against Facebook Technology notwithstanding the deliberate removal of those claims from its April 4 "First Amended Complaint," Facebook respectfully requests that the Court sever those claims from Blue Spike's infringement claims based on Facebook's use of Audible Magic Technology. Other than questions of timing, Blue Spike is not opposed to severing the claims, and it already agrees that its two claims against Facebook require separate jury trials.  Furthermore, Section 299 requires separate trials because the claims cover unrelated technologies and different real parties in interest.

Once severed, the case against Facebook Technology should be transferred to the Northern District of California.  Each of the factors regarding transfer strongly favor transfer or are neutral, underscoring that it would be clearly more convenient for Blue Spike's claims

against Facebook Technology to be adjudicated in the Northern District of California.

### 1. Severance is warranted because Blue Spike agrees that the claims against Facebook Technology should be tried separately

Severance is appropriate because Blue Spike agrees that its claims against Facebook Technology should be tried separately from its claims against Facebook's use of Audible Magic Technology. (Fischer Decl. Ex. C.) Blue Spike will not agree to file a stipulation to that effect because it prefers to resolve the issue closer to trial—but its refusal to file a stipulation now does not change that Blue Spike agrees with Facebook that its claims are entirely separate. (*Id.*)

### 2. Severing Blue Spike's claims against Facebook Technology is necessary to resolve confusion over which claims are at issue

Second, the case against Facebook Technology should be severed to resolve the uncertainty over the status of the claims Facebook is defending against in this lawsuit. Blue Spike maintains that it has two operative complaints pending against Facebook, but its current Complaint does not assert any claims against Facebook Technology. Severance is necessary to resolve confusion over whether Facebook is properly in the case as a "supplier" defendant.

### 3. Severance is required by 35 U.S.C. § 299 and consistent with the Court's case management order

Third, severing the claims against Facebook Technology from claims against Facebook's use of Audible Magic Technology is required by 35 U.S.C. § 299 and consistent with the Court's Case Management Order. The parties agree that Blue Spike's claims against Facebook implicate different real parties in interest, technologies, witnesses, and evidence, so it is impractical for the Court and parties, and would needlessly confuse a jury, to adjudicate the claims together.

The Audible Magic Technology, the only technology accused in the original Complaint, is a content recognition technology that attempts to detect whether user-uploaded content is copyrighted. It was developed by Audible Magic employees with no involvement by Facebook.

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

Facebook's relationship with Audible Magic consists of a customer agreement and end-user documentation that any other customer of Audible Magic would receive.  (*Id*. ¶ 5.)  The claims and defenses asserted between Blue Spike and Facebook over the alleged infringement of Audible Magic Technology exclusively involve Audible Magic employees, Audible Magic's source code, and other sources of proof within Audible Magic's control.  Audible Magic is the real party in interest regarding these claims.

Facebook Technology is entirely unrelated to the Audible Magic Technology.  It uses facial recognition technologies to suggest the identities of faces in users' photos.  (Jordan Decl. ¶ 6.)  It was developed by a company called Face.com that Facebook acquired.  (*Id*. ¶ 7.)  The claims and defenses asserted between Blue Spike and Facebook over the alleged infringement of Facebook Technology involve Facebook employees, Facebook's source code, and other sources of proof within Facebook's control.  (*Id*. ¶¶ 6–7.)  Facebook is the real party in interest regarding these claims.

Blue Spike's claims against Audible Magic Technology and Facebook Technology cannot be tried together or included in the same case under 35 U.S.C. § 299.  The Federal Circuit recently decided *In re Nintendo Co.*, a case involving similar facts, and held that Section 299 prevented joinder of claims against the same party that were attributable to different real parties in interest and that involved different technologies, witnesses, and evidence.  544 F. App'x 934, 939 (Fed. Cir. 2013) (holding that claims against third-party products could not be joined with claims against a manufacturer's system even though both were sold by the same retailers).[2]

The factual situation in this case is akin to *In re Nintendo*, and Section 299 prevents joinder of Blue Spike's claims against unrelated products in the same case.  Facebook

---

[2] A court in this District recently granted the manufacturer's motion to sever and transfer the case against the manufacturer and stay the retailer case for later trial.  *UltimatePointer, L.L.C. v. Nintendo Co.*, 6:11-cv-496, 6:11-cv-571, slip op. (E.D. Tex. Jun. 17, 2014).

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

Technology and Audible Magic Technology have nothing in common other than that "the same patent claims are alleged to be infringed." *In re EMC*, 677 F.3d at 1359. Therefore, Blue Spike cannot bring or maintain infringement claims against both technologies in the present case. *See In re Nintendo*, 544 F. App'x at 939. The Federal Circuit very recently ruled again that severing a case to address the claims against the "true defendant" separately furthered the goals of "just, convenient, efficient, and less expensive determination." *In re Nintendo of Am., Inc.*, 2014-132, slip op. at 4 (Jun. 25, 2014).

In addition to the requirements of Section 299, which require severance for trial, the structure of the Court's Case Management Order already contemplates that claims against Facebook's use of Audible Magic Technology will be tried separately from claims against Facebook Technology. Facebook is a "supplier" with respect to Facebook Technology and therefore allegations against Facebook Technology are scheduled to be tried in accordance with the "supplier" trial schedule. (Dkt. No. 1331.) In contrast, Facebook is a "customer" with respect to Audible Magic Technology, and customer lawsuits are scheduled to proceed on a completely separate schedule with later trials. (Dkt. 1332.) Severing the claims against Facebook Technology is consistent with the Court's Case Management Order.

### C.   The case against Facebook Technology merits transfer under § 1404(a)

#### 1.   This case could have been brought in the Northern District of California because Facebook "resides" there

The threshold question in a motion to transfer is whether suit could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d at 203. Facebook is headquartered in Northern California and was subject to personal jurisdiction there when this action was filed. 28 U.S.C. § 1391(c). This case could have been filed in the Northern District of California.

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

2.      **Transfer is warranted because the majority of the witnesses and evidence are concentrated in Northern California**

The proposed transferee forum is "clearly more convenient" when, as here, much of the relevant evidence is concentrated around one district—the Northern District of California—and the only witnesses and evidence in the district deciding the transfer motion were brought there by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

a.      **The private interest factors favor transfer to the Northern District of California**

(1)      **Facebook's sources of proof are in the Northern District**

The sources of proof of Facebook's noninfringement are located at Facebook's headquarters in the Northern District of California.  (*See* Jordan Decl. ¶¶ 3-4.)  As is true in most patent infringement cases, the majority of the relevant evidence will come from Facebook, the Defendant.  *See In re Genentech*, *Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  The highly proprietary information and source code relating to the www.facebook.com website are stored in Facebook's various data centers, which are accessible and ultimately managed from Menlo Park. (*Id.* ¶ 3.)  Facebook has no known relevant documents or employees in this District. (*Id.* ¶ 5.)

Although Blue Spike is located in this District, it moved to Texas from Florida in 2012, shortly before filing this litigation.  But for the Plaintiff's move to Texas, any documents would have been located in Florida.  Courts put little to no weight on a plaintiff's move to a particular district done to "manipulate venue."  *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:10-CV-160-JRG, 2012 WL 194370, at *5 (E.D. Tex. Jan. 23, 2012).

(2)      **Non-party witnesses reside in California**

The primary consideration under this factor is the location of non-party witnesses.  The Northern District of California has subpoena power over non-party witnesses.  California is

home to universities and technology companies with scientists and other inventors who work in the areas of Facebook Technology.

To give one example, U.S. Patent No. 6,119,124 is a primary reference in Facebook's invalidity contentions.  (Fischer Decl. Ex. E, Defendants' Invalidity Contentions at C-1.)  Mark Manasse, one of the named inventors on U.S. Patent No. 6,119,124, now lives in San Francisco and works for Microsoft at offices in Mountain View, California.  (Fischer Decl. ¶ 14.)  He states that he would be inconvenienced by travel to Texas for trial because he soon will have cancer surgery and his doctors are in California.  He would be unwilling to testify in Texas unless required to do so, and his medical condition limits his ability to travel.  (*Id*.)  Similarly, Chad Carson is one of the authors of "Blobworld: A System for Region-Based Image Indexing and Retrieval," which Facebook cites in its invalidity contentions. (Fischer Decl. Ex. E at C-3.)  He is the co-founder of a San Francisco-area startup with twelve employees and says that he would be inconvenienced by travel to Texas.  (Fischer Decl. ¶ 18.)  California is also home to several experts in facial recognition technology: David Kriegman at the University of California, San Diego; Allen Yang at the University of California, Berkeley; and Ming-Hsuan Yang at the University of California, Merced.  (Fischer Decl. ¶ 19.)

The Northern District has subpoena power over all of the foregoing third-party witnesses. This factor thus favors transfer.  The jury's deliberations over the validity of Blue Spike's patents will be influenced heavily by these witnesses, and live testimony presents the best opportunity for the jury to decide their credibility.

> **(3)     It will be more cost effective for willing witnesses to travel within or to California than to Texas**

The vast majority of the non-party witnesses—and all of Facebook's witnesses—reside in California.  "The convenience of the witnesses is probably the single most important factor in

transfer analysis." *In re Genentech*, 566 F.3d at 1343).  The Fifth Circuit has established a "100-mile" rule—applicable here—which puts greater weight on the inconvenience to witnesses where the additional distance to be traveled is greater than 100 miles.  *Id.*  Facebook has identified two key witnesses with knowledge of the technology at issue, Dan Barak and Yaniv Taigman.  (*See* Jordan Decl. ¶ 7; Fischer Decl. Ex. H, Facebook's Initial Disclosures.)  Both Barak and Taigman work at Facebook headquarters in Menlo Park and live in the Northern District.  They and any other Facebook witnesses with technical knowledge would be inconvenienced by traveling to Texas for trial.  (*See* Jordan Decl. ¶¶ 3–4.)  As stated above, the California non-party witnesses will also incur significant time and travel expense.

Conversely, Blue Spike has identified only one witness, inventor Scott Moskowitz, who resides in the District.  This Court ordered transfer for other defendants despite Moskowitz's presence in the District.  (*See, e.g.,* Dkt. No. 1358 at 7.)  Moskowitz also continues to live at least part of the time in Florida, as he declared to the Florida Secretary of State's office in January. (Fischer Decl. Ex. I, Blue Spike, Inc.'s annual report.)  Inventor Michael Berry lives in Seattle, Washington, which is much closer to the Northern District of California than to this District. (*See* Fischer Decl. Ex. J, Blue Spike's Initial Disclosures).  The Blue Spike patent prosecutors work in the Washington, D.C. area.   (*See* Fischer Decl. Exs. K and L, counsel's online biographies.)   Blue Spike has identified no witnesses other than Moskowitz, and no third-party witnesses, who reside in the District.  This factor favors transfer.

### (4)  Serially filing lawsuits in this District cannot create judicial economy

Blue Spike's filing of multiple lawsuits against unrelated defendants in this District cannot create judicial economy.  As this Court has noted, allowing a plaintiff to manufacture venue by serially filing cases within a single district "would undermine the princip[les]

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

underpinning transfer law and the recently enacted America Invents Act." *GeoTag, Inc. v. Rent-A-Center, Inc., et al.*, No. 2:10-cv-573, slip op. at 14 (E.D. Tex. Jan. 14, 2013) (Schneider, J.).

> **b.      The public interest factors either favor the Northern District of California or are neutral**

Local interests favor having this case decided in the Northern District of California, where Facebook is headquartered and its employees live. *See In re TS Tech*, 551 F.3d at 1321. Court congestion is neutral. The Northern District and this District proceed to trial and resolve cases in relatively similar amounts of time. *See, e.g.*, Dkt. No. 1358 at 9. Both districts are familiar with patent law, and there are no conflicts of law issues. These factors are also neutral.

> **3.      This case merits transfer because it is similar to the other transferred cases in this consolidated litigation**

This case merits transfer because Facebook shares the same characteristics as Google, Adobe, Soundhound and Zietera, the four Defendants this Court already transferred to the Northern District. Facebook, like the transferred Defendants, has its headquarters, witnesses, and documentary evidence in the Northern District of California. (Dkt. Nos. 1356, 1358, 1359, and 1362). This Court discounted the existence of serially-filed cases as a basis for venue in each of these four cases, and in three others the Court transferred to other districts. (Dkt Nos. 1355, 1356, 1357, 1358, 1359, 1362, and 1363.) The same considerations are present here.

## V.      CONCLUSION

For the foregoing reasons, Facebook requests that this Court dismiss the portion of the case involving Facebook Technology. Alternatively, Facebook requests that this Court sever claims against Facebook Technology and transfer the severed case to the Northern District of California.

**DEFENDANT FACEBOOK'S MOTION TO SEVER AND TRANSFER VENUE**

Date:  June 26, 2014                    Respectfully submitted,

                                        _/s/ Orion Armon_____ _____ _____

                                        Deron Dacus (Texas Bar No. 00790553)
                                        The Dacus Firm, P.C.
                                        821 ESE Loop 323, Suite 430
                                        Tyler, TX 75701

                                        Heidi L. Keefe (CA Bar 178960)
                                        Mark R. Weinstein (CA Bar 193043)
                                        COOLEY LLP
                                        Five Palo Alto Square
                                        3000 El Camino Real
                                        Palo Alto, CA 94306-2155
                                        Phone:  (650) 843-5000
                                        Fax:      (650) 857-0663
                                        hkeefe@cooley.com
                                        mweinstein@cooley.com

                                        Orion Armon (CO Bar No. 34923)
                                        Sara J. Bradford (*pro hac vice*)
                                        Janna K. Fischer (*pro hac vice*)
                                        COOLEY LLP
                                        380 Interlocken Crescent, Suite 900
                                        Broomfield, CO  80021
                                        Tel:    (720) 566-4000
                                        Fax:   (720) 566-4099
                                        oarmon@cooley.com
                                        sradke@cooley.com
                                        jfischer@cooley.com

                                        *Attorneys For Defendant*
                                        *Facebook, Inc.*

**DEFENDANT FACEBOOK'S MOTION TO SEVER
                                                   AND TRANSFER VENUE**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(c) on June 26, 2014.

/s/ *Orion Armon*
Orion Armon

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on April 22, May 23, May 29 and June 9, 2014, counsel for Facebook conferred with counsel for Plaintiff, and Plaintiff opposes this Motion.

/s/ *Orion Armon*
Heidi L. Keefe

106802535 v10

17.   DEFENDANT FACEBOOK'S MOTION TO SEVER
AND TRANSFER VENUE