UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, § § *Plaintiff,* § § v. § § CLEAR CHANNEL BROADCASTING, § INC., § § *Defendant.* § | Case No. 6:12-cv-499 LEAD CASE Case No. 6:12-cv-595 CONSOLIDATED CASE |

### ORDER DENYING TRANSFER
### TO SOUTHERN DISTRICT OF NEW YORK

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Before the Court is Defendant Clear Channel Broadcasting, Inc.'s Motion to Transfer Venue to the United States District Court for the Southern District of New York (Docket Entry # 1148). Having considered the relevant briefing, the Court is of the opinion the motion should be **DENIED**.

I.   **BACKGROUND**

Plaintiff Blue Spike, LLC ("Blue Spike" or "Plaintiff") alleges Clear Channel Broadcasting, Inc. ("Clear Channel" or "Defendant") infringes four patents: U.S. Patents Nos. 7,346,472 (the '472 patent"), 7,660,700 ("the '700 patent"), 7,949,494 ("the '494 patent"), and 8,214,175 ("the '175 patent") (collectively, the "Asserted Patents"). The four related patents in suit describe a method and device for monitoring and analyzing signals.

Plaintiff is a Texas company with its headquarters and principal place of business in Tyler, Texas. Plaintiff was formed as a Texas limited liability company in May of 2012 by owner and CEO, Scott Moskowitz. On August 4, 2012, Blue Spike, Inc., a Florida corporation also

1

owned by Scott Moskowitz, assigned the Asserted Patents to Plaintiff. Shortly thereafter, Plaintiff brought suit against Clear Channel for infringement of the Asserted Patents in the Eastern District of Texas. Plaintiff also filed approximately 78 other cases with similar infringement claims asserted under the same four patents. *See* Docket Entry # 1369 at pg. 2. Judge Schneider consolidated the cases filed by Plaintiff into Lead Cause No. 6:12cv499. The consolidation was for pretrial purposes, including claim construction and discovery, but Judge Schneider specifically noted that the consolidation would not bear on any venue challenges.

## II. CLEAR CHANNEL'S MOTION

After the consolidation, Defendant Clear Channel moved to transfer this case to the Southern District of New York for the convenience of the parties. Clear Channel focuses on the location of RCS and Media Monitors, the Clear Channel business units responsible for designing, developing, and selling the accused products in this case. Because both RCS and Media monitors are headquartered in White Plains, New York, Clear Channel claims the vast majority of witnesses and documents related to the accused products are located in White Plains, in the Southern District of New York. The Southern District of New York has subpoena power over non-party witnesses, and Clear Channel asserts this case should be transferred there.

Plaintiff asserts Clear Channel has not satisfied the threshold showing that this case could have been filed in the Southern District of New York. Plaintiff asserts RCS and Media Monitors merged with Clear Channel subsidiary Clear Channel Management Services, Inc., which is a Texas corporation headquartered at the same San Antonio address as Defendant. According to Plaintiff, all of the corporate entities relevant to the venue analysis are located in Texas. Plaintiff also emphasizes judicial economy, relying upon the multiple pending lawsuits involving Blue Spike pending before the Court, asserting this is enough to defeat transfer without more.

Plaintiff further emphasizes the presence of Blue Spike as well as Mr. Moskowitz in the Eastern District of Texas.

### III. LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). A motion to transfer venue may be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.,* 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.,* 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.,* 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc), *cert. denied*, 22 U.S. 1172 (2009).

The first inquiry when determining a case's eligibility for a transfer under § 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). A suit for patent infringement can be filed in any district court in which a corporate defendant would be subject to personal jurisdiction. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). In determining whether a defendant may be subject to personal jurisdiction, the court must look at two possible sources giving rise to personal jurisdiction. First, a party may be subject to *general* personal jurisdiction in a district where it has "continuous and systematic general business contacts," thus subjecting itself to jurisdiction in that district for arising controversies. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Second, a party may be subject to *specific* personal

3

jurisdiction when "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Id*.

If the potential transferee district is a proper venue, the court must weigh the relative public and private interest factors of the current venue against the transferee venue. *Volkswagen I*, 371 F.3d at 203. The "private interest" factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public interest" factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the governing law in the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *Id*.

The plaintiff's choice of venue is not itself a factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight of the plaintiff's choice of venue is reflected in the defendant's burden of proving that the proposed venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1320. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 315.

## IV. ANALYSIS

### a. The Southern District of New York

Before considering the private and public interest factors, the Court must determine whether this case could have originally been brought in the Southern District of New York. The movants bear the burden of establishing personal jurisdiction and venue as to all defendants in the transferee forum. *See Chirife v. St. Jude Med., Inc.*, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporation resides in any division with which it has minimum contacts. 28 U.S.C. 1391(c) & (d). The relevant inquiry is whether jurisdiction and venue existed at the time this action was filed. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Thus, post-filing consent to jurisdiction in the transferee forum is irrelevant to the transfer analysis. *Id.*

Blue Spike contends that because Clear Channel, and not its subsidiaries, is the defendant in this case, this case could not have been brought in the Southern District of New York. Clear Channel is a Nevada corporation with its principal place of business in San Antonio, Texas. If the Court considers RCS and Media Monitors as subsidiaries of Defendant, Plaintiff argues venue does not lie in the transferee district if the parent's only connection to that district is through subsidiaries. *See Xerox Corp. v. Litton Indus., Inc.*, 353 F.Supp. 412, 414 (S.D.N.Y. 1973). Blue Spike asserts Clear Channel has not attempted to show its own connections to the transferee district. Even if the Court focuses its analysis on RCS and Media Monitors, Plaintiff asserts it is still "not clear" that Blue Spike could have filed suit in New York because in 2008

RCS and Media Monitors formally merged with Clear Channel Management Services, Inc., a Texas corporation headquartered in San Antonio.

Blue Spike's complaint alleges the "Media Monitors and RCS divisions" of Clear Channel offer "Media Monitors monitoring and verification software, systems, and technology ('Accused Products'), which infringe one or more claims of the Patents-in-Suit." (Compl., ¶ 27). In 1979, RCS was founded in Westchester County, New York, and the worldwide headquarters are in White Plains, New York. *Id.* ¶ 3. In 2003, RCS created Media Monitors, which was a subsidiary of RCS and is also based in White Plains. *Id.* In 2006, Clear Channel acquired RCS and its subsidiary, Media Monitors, but RCS maintained its offices and entire management team following the acquisition and later merger with Clear Channel Management Services, Inc. in 2008. *Id.* ¶ 4.

RCS maintained its New York offices and entire management team following this acquisition and later merger. While Blue Spike alleges Clear Channel "actively markets and sells its products in Texas," Defendant asserts it also markets and sells products in the Southern District of New York. Accordingly, the Court finds the Southern District of New York is a venue where this action could originally been brought. Because this threshold determination has been met, the Court considers the private and public interest factors to determine whether a transfer is appropriate.

b. **Private Interest Factors**

*i. Relative Ease of Access to Sources of Proof*

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of documents and hard copies across the country,

this factor must still be considered in the transfer analysis. *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.*; *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 873 (E.D. Tex. 2013). This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the proposed and transferor venues. *See, e.g.*, *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). But documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Although Blue Spike asserts its documents and servers are located in the Eastern District of Texas, Clear Channel asserts the vast majority of research and development documents regarding RCS and Media Monitors products are located in White Plains, New York. However, the Court does note there may also be some relevant documents at Defendant's headquarters in Texas. On balance, the Court finds this factor neutral.

### ii. Availability of Compulsory Process

The second private interest factor the Court must consider is the availability of compulsory process or subpoena power to secure the attendance of unwilling witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Volkswagen II*, 545 F.3d at 315. This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the proposed venue. *See Volkswagen II*, 545 F.3d at 316; *In re Amazon.com Inc.*, 478 F. App'x 669, 670 (Fed. Cir. 2012). The factor weighs the heaviest in favor of transfer when a proposed venue

is said to have "absolute subpoena power." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. "Absolute subpoena power" is subpoena power to compel attendance at both depositions and trial. *Id*.

Clear Channel generally asserts former employees, universities, research institutions, and prior art inventors are all located within the subpoena power of the Southern District of New York. Clear Channel also notes that "an attorney located in Alexandria, Virginia was involved in prosecuting at least two of the applications that resulted in the Asserted Patents," and Virginia is significantly closer to New York, weighing in favor of transfer. Docket Entry # 1148 at pg. 11. Although Blue Spike does not identify any non-party witnesses, generally or otherwise, who are located within the subpoena power of this Court, Blue Spike asserts Clear Channel only speculates that unidentified third-party witnesses might be subject to compulsory process in New York. According to Blue Spike, the Court must disregard these witnesses who are not specifically identified.

Although not specifically identified, the Court will still give these unidentified potential witnesses some consideration.[1] The Court finds this factor slightly favors transfer, as Plaintiff has not pointed to any potential third-party witnesses over which this district would have subpoena power. *See* Docket Entry #1363 at pg. 5.

### iii. Cost of Attendance for Willing Witnesses

This factor is analyzed by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis,

---

[1] Judge Schneider similarly considered witnesses not specifically identified, in his transfer analysis in *Blue Spike, LLC v. Kronos Incorporated* (Cause No. 6:13cv86, consolidated with 6:12cv499).

irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* When applying the 100-mile rule, the threshold question is whether the transferor and proposed venues are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and proposed venues. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance from witnesses than the transferor venue. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320.

But "the '100-mile rule' should not be rigidly applied." *Genentech*, 566 F.3d at 1344. When a particular witness "will be required to travel a significant distance no matter where they testify," that witness' convenience is discounted for purposes of the 100-mile rule analysis. *Id*. (discounting European witnesses and documents transported from Washington, D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

As to this factor, Clear Channel asserts RCS and Media Monitors have nearly 120 full-time employees in White Plains, New York. Blue Spike first attacks Clear Channel's failure to

specifically identify employees with relevant knowledge of the accused devices. Blue Spike further asserts Mr. Moskowitz, its CEO and inventor of the technology, lives in this district. According to Blue Spike, traveling is excruciatingly painful and dangerous for Mr. Moskowitz, who is an essential witness. Clear Channel brings into question Mr. Moskowitz's residence within this district. Clear Channel asserts that although Mr. Moskowitz claims to live in Tyler, Texas, his actual residence is in Florida. Blue Spike represents Mr. Moskowitz splits his time between Tyler and Florida, where he receives an experimental medical treatment for his chronic inguinal neuropathy condition from Dr. Steven W. Unger. *See, e.g.* Docket Entry #1135, Moskowitz Decl. at ¶¶14-17.

The courts weigh most heavily the convenience of non-party witnesses. *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2013). However, although discounted, the Court gives some consideration to the inconvenience of Clear Channel's unnamed party witnesses. *See Landmark Tech., LLC v. Ann Inc.*, No. 6:12-cv-672-MHS-JDL, 2013 WL 3354451, *3 (E.D. Tex. July 1, 2013) ("The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witness are likely located in a particular forum.").

The Court also notes that in its response to Blue Spike's Notice of Additional Facts pertaining to Clear Channel's motion to transfer, Clear Channel referenced its Initial Disclosures which list three specific individuals at RCS (Mr. Beck, Mr. Generali, and Mr. Anniballi), two of which work out of RCS' main office in White Plains. The other RCS witness works remotely out of his home in Pennsylvania. According to Clear Channel, the Southern District of New York would be a significantly more convenient forum.

The only witness specifically identified by Blue Spike is Mr. Moskowitz, an essential witness who Blue Spike represents to the Court resides in this district. According to Blue Spike, litigating this action in the Southern District of New York would be extremely inconvenient and burdensome for Blue Spike and Mr. Moskowitz.[2] Blue Spike asserts it has no connection to the Southern District of New York as it is a small Texas company whose main assets are the patents and technology that its sole owner and CEO have worked for decades to invent and commercialize. Blue Spike argues Clear Channel is "an international megacorporation that is headquartered in and operates pervasively throughout Texas, including in this District," and it has its in-house IP lawyers located in San Antonio. Thus, according to Blue Spike, Clear Channel cannot credibly claim that litigating here would present any sort of hardship. Docket Entry # 1298 at pg. 10.

Blue Spike also encourages the Court to give special consideration to Mr. Moskowitz's travel limitations imposed by his serious health condition, chronic inguinal neuropathy, "which is characterized by a sharp, shooting pain that originates from the area located near the front hip. . . ." Moskowitz Decl. at ¶12. Unlike previous transfer briefing in the other *Blue Spike* cases, Blue Spike has now provided documentation from Mr. Moskowitz's physician regarding his claim that he is medically unable to travel long distances. *See* Docket Entry # 1593, Declaration of Dr. Stephen W. Unger attached to Blue Spike's Notice of Additional Facts Pertaining to Clear

---

[2] Although Clear Channel suggests Blue Spike's ties to this district should be disregarded, the Court does not find persuasive Clear Channel's argument that Blue Spike is an ephemeral entity, noting the Court has not made such a finding in any of the previous orders regarding transfer in the other *Blue Spike* cases.

Channel's Transfer Motion.³ The Court will consider the weight to give Mr. Moskowitz's health problems.

"The health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases) (finding the detrimental effect of travel on Defendant Siamon's health, confirmed by his treating physician, weighed strongly in favor of transfer). In the *Siamon* case, Plaintiff NGC attempted to cast doubt on the seriousness of Siamon's condition and the effect travel had on his health. *Id.* However, the court relied on the opinion of Siamon's treating physician and found this factor weighed in favor of accepting his conclusions. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 81 (2nd Cir. 1986) ("The preference for the opinion of a treating physician runs throughout the law"). Likewise, the Court considers the opinion of Dr. Unger concerning the detrimental effect travel would have on Mr. Moskowitz's health in determining this private interest factor. *See* Docket Entry # 1593-2 at pg. 2 ("Mr. Moskowitz is unable to travel by plane or car for long durations of time, and doing so causes extreme pain and is not advised.").

On balance, considering Mr. Moskowitz's medical condition, the inconvenience of some of Defendant's unnamed party witnesses, and the fact that some of Defendant's willing witnesses are likely located at its headquarters in Texas, the Court finds the cost of attendance for willing witnesses factor neutral.

---

³ Judge Schneider noted in several orders granting motions to transfer in other *Blue Spike* cases that Blue Spike had not provided any health documentation to support his claim that he is medically unable to travel long distances. *See, e.g.* Docket Entry # 1356 at pg. 7. Blue Spike has sufficiently explained that following the Court's rulings which discounted Mr. Moskowitz's declaration, Blue Spike's counsel immediately sought a declaration from Dr. Unger, which has now been provided as a corroborating declaration.

*iv. All other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)("*Volkswagen III*").

Blue Spike emphasizes judicial economy, relying upon the multiple pending lawsuits involving Blue Spike pending before the Court, asserting this is enough to defeat transfer without more. Blue Spike asserts judicial economy provides a sufficient basis to deny transfer even when all of the convenience factors clearly favor transfer. Blue Spike points to the factual and legal similarities between this action and the numerous other *Blue Spike* actions currently consolidated for pretrial with this case, asserting transferring this case "would guarantee that multiple courts would have to weigh identical issues, duplicate each other's efforts, and issue potentially conflicting rulings." Docket Entry # 1298 at pg. 6. Clear Channel asserts Blue Spike should not be allowed to subvert transfer "by filing numerous lawsuits as a way to establish proper venue." Docket Entry # 1148 at pg. 12.

The Court recognizes there is the possibility that transferring some of these cases could cause multiple courts to consider overlapping issues.[4] However, the Court will not permit this fact alone to serve as a sufficient basis to deny transfer, as advocated by Plaintiff. The Court considers this fact along with other practical issues, such as the stage of the litigation and the Court's familiarity with the asserted patents and the underlying technology. *See In re Vistaprint*

---

[4] The Court notes some of the *Blue Spike* cases have already been severed and transferred to other courts, including the Northern District of California, the Southern District of California, the Central District of California, the District of Massachusetts, and the District of New Jersey.

13

*Ltd.*, 628 F.3d 1342, 1346-47 (Fed. Cir. 2010)(holding the trial court's familiarity with the only asserted patent from prior litigation, coupled with the fact there was co-pending litigation before the trial court involving the same patent and underlying technology, provided "substantial justification for maintaining suit in the Eastern District of Texas," especially considering no defendant party was actually located in the transferee venue and the presence of witnesses in that location was not overwhelming).

Having considered all of these practical issues, the Court does not find this fact weighs for or against transfer. Accordingly, this factor is neutral.

**c.     Public Interest Factors**

The parties only address two of the public interest factors: administrative difficulties due to relative court congestion and the local interest in the dispute. These factors are addressed below. The remaining two public interest factors are considered neutral.

*i. Administrative Difficulties from Court Congestion*

The first public interest factor is administrative difficulties flowing from court congestion. *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342. While both parties put forth statistical data as to the number of cases in each district and the relative speed at which these cases are adjudicated, these statistics are too speculative to determine any administrative difficulties from relative court congestion. Therefore, the Court finds this factor neutral.

*ii. Local Interests*

The Fifth Circuit Court of Appeals has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues.

14

*See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *Nintendo*, 589 F.3d at 1198.

Considering Blue Spike's presence in the Eastern District of Texas, both districts have a local interest in adjudicating this matter. The Court finds this factor is neutral.

## V. CONCLUSION

In summary, the Court has considered the private and public interest factors and finds the availability of compulsory process for non-willing witnesses factor weighs slightly in favor of transfer. All remaining factors are neutral. On balance, the Court does not find Clear Channel has established that the Southern District of New York is a clearly more convenient forum, especially considering Defendant's headquarters in Texas. For the foregoing reasons, it is

**ORDERED** that Defendant Clear Channel Broadcasting, Inc.'s Motion to Transfer Venue to the United States District Court for the Southern District of New York (Docket Entry # 1148) is **DENIED.**

**SIGNED this 2nd day of July, 2014.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE