# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| | § | |
| *Plaintiff,* | § | Case No. 6:12-CV-499 |
| | § | LEAD CASE |
| v. | § | |
| | § | Case No. 6:12-CV-685 |
| 3M COGENT, INC., | § | CONSOLIDATED CASE |
| | § | |
| *Defendant.* | § | |

## ORDER SEVERING AND TRANSFERRING
## TO CENTRAL DISTRICT OF CALIFORNIA

The above-referenced cause of action was referred to the undersigned for pretrial purposes in accordance with 28 U.S.C. § 636. Before the Court is Defendant 3M Cogent Inc.'s Motion to Transfer Venue to the United States District Court for the Central District of California Under 28 U.S.C. § 1404(a)(Docket Entry # 1150). The Court, having considered the relevant briefing, finds that the Central District of California is a clearly more convenient venue and transfers this case to the Central District of California.

## BACKGROUND

Blue Spike, LLC ("Plaintiff" or "Blue Spike") filed suit against 3M Cogent Inc. ("3M Cogent") in the Eastern District of Texas on September 21, 2012, alleging 3M Cogent infringes U.S. Patent Nos. 8,214,175 (the "'175 patent"), 7,949,494 (the "'494 patent"), 7,660,700 (the "'700 patent"), and 7,346,472 (the "'472 patent") (collectively, the "Asserted Patents"). Plaintiff is a Texas company with its headquarters and principal place of business in Tyler, Texas. The owner and CEO, Scott Moskowitz, formed Blue Spike, LLC as a Texas limited liability company on May 14, 2012. On August 4, 2012 Blue Spike Inc., a Florida corporation also owned by Scott

Moskowitz, assigned the Asserted Patents to Plaintiff. Less than one week later, Plaintiff brought suit against 3M Cogent for infringement of the Asserted Patents in the Eastern District of Texas.

Plaintiff also filed multiple other lawsuits in this Court on these same four patents, and Judge Schneider consolidated the cases into Lead Cause No. 6:12cv499. The consolidation was for pretrial purposes, including claim construction and discovery, but Judge Schneider specifically noted the consolidation would not bear on any venue challenges.

## MOTION TO TRANSFER

Pursuant to 28 U.S.C. §1404(a), 3M Cogent moves to transfer this case to the Central District of California for the convenience of the parties. 3M Cogent is a wholly owned subsidiary of 3M Company, Inc. and maintains its headquarters in Pasadena, California. 3M Cogent's headquarters in Pasadena is the center of operations and home to a majority of its U.S. employees, including staff, engineers, and managers. 3M Cogent asserts it developed certain Accused Products in Pasadena; engineers with relevant knowledge of these systems are in Pasadena; all relevant electronic documents are most easily accessible in Pasadena; and decisions related to its overall business, including the most significant sales, marketing and engineering decisions related to the Accused Products, are made by business and technical managers in the Pasadena office.

## LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). A motion to transfer venue may be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342

(Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc), *cert. denied*, 22 U.S. 1172 (2009).

The first inquiry when determining a case's eligibility for a transfer under § 1404(a) is "whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). A suit for patent infringement can be filed in any district court in which a corporate defendant would be subject to personal jurisdiction. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). In determining whether a defendant may be subject to personal jurisdiction, the Court must look at two possible sources giving rise to personal jurisdiction. First, a party may be subject to general personal jurisdiction in a district where it has "continuous and systematic general business contacts," thus subjecting itself to jurisdiction in that district for arising controversies. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Second, a party may be subject to specific personal jurisdiction when "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Id.*

If the potential transferee district is a proper venue, the court must weigh the relative public and private interest factors of the current venue against the transferee venue. *Volkswagen I*, 371 F.3d at 203. The "private interest" factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public interest" factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in

3

having localized interests decided at home; (3) the familiarity of the forum with the governing law in the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *Id.*

The plaintiff's choice of venue is not itself a factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight of the plaintiff's choice of venue is reflected in the defendant's burden of proving that the proposed venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1320. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 315.

## ANALYSIS

### The Central District of California

Before considering the private and public interest factors and the question of whether allowing a transfer is in the interest of justice, the Court must determine whether this case could have originally been brought in the Central District of California. The movants bear the burden of establishing personal jurisdiction and venue as to all defendants in the transferee forum. *See Chirife v. St. Jude Med., Inc.*, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporation resides in any division with which it has minimum contacts. 28 U.S.C. 1391(c) & (d).

Since its founding in 1990 in South Pasadena, originally as Cogent Systems, Inc., 3M Cogent has been headquartered in the Central District of California. Plaintiff does not dispute

that 3M Cogent conducts business in the Central District of California. Under these facts, the Court finds venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391.

**Private Interest Factors**

        i.    *Relative Ease of Access to Sources of Proof*

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of documents and hard copies across the country, this factor must still be considered in the transfer analysis. *Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.; Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 873 (E.D. Tex. 2013). But documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

3M Cogent developed the Accused Products in Pasadena, and the engineers with relevant knowledge of these systems are located there as well. 3M Cogent claims all the relevant electronic documents, such as those generated by engineers or managers that relate to the development or operation of the Accused Products are most easily accessible in Pasadena because the persons who can identify and locate such documents work there. Although Plaintiff asserts its evidence is located in the Eastern District of Texas, in patent infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. Accordingly, this factor weighs in favor of transfer.

5

    *ii.    Availability of Compulsory Process*

The second private interest factor the Court must consider is the availability of compulsory process or subpoena power to secure the attendance of unwilling witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Volkswagen II*, 545 F.3d at 315. This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the proposed venue. *See Volkswagen II*, 545 F.3d at 316*; In re Amazon.com Inc.*, 478 F. App'x 669, 670 (Fed. Cir. 2012). The factor weighs the heaviest in favor of transfer when a proposed venue is said to have "absolute subpoena power." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. "Absolute subpoena power" is subpoena power to compel attendance at both depositions and trial. *Id*.

3M Cogent asserts there are no known non-party witnesses subject to the Court's subpoena power in the Eastern District of Texas. According to 3M, numerous customers of 3M Cogent who purchase the products at issue in this case are located in the Los Angeles area. Docket Entry # 1150 at pgs. 10-11. 3M further asserts "[i]nsofar as non-party customer witnesses have relevant testimony about 3M Cogent's products at issue, these non-party witnesses are located within the trial subpoena power of the court in the Central District of California." 3M also states potential prior art witnesses would benefit from transfer.

Plaintiff asserts 3M does not identify the non-party customers or explain what their testimony might provide. Plaintiff also acknowledges some prior art inventors reside in California, but it states there are other prior art inventors who live elsewhere.

3M Cogent attached to its reply a Declaration of David R. Kniffin, the Identity Management Business Manager at 3M Cogent. Kniffin Decl., ¶3. According to Mr. Kniffin, 3M Cogent's "customers and/or entities to whom 3M Cogent has offered to sell biometric

6

authentication products during the relevant time period in this case, that are located in the greater surrounding Los Angeles area, within the Central District of California, include: the Anaheim Police Department, the City of Anaheim, the Ontario Police Department, the City of Ontario, the Los Angeles Police Department, the Court of Los Angeles and the Los Angeles Sheriff's Department." Kniffin Decl., ¶4. According to 3M Cogent, these specific examples of non-party customers have purchased products within the past six years and may have information about prior art offers to sell before Plaintiff's alleged invention. Docket Entry # 1360 at pg. 4.

Regarding the California prior art inventors who are not specifically identified, the Court will still give these unidentified potential witnesses some consideration as well. Judge Schneider similarly considered witnesses not specifically identified in his transfer analysis in *Blue Spike, LLC v. Kronos Incorporated* (Cause No. 6:13cv86, consolidated with 6:12cv499) (Docket Entry #1363)(" Although not specifically identified, the Court will still give these potential witnesses some consideration."). Considering both the specific examples of non-party customers identified by 3M Cogent, and further considering the California prior art inventors not specifically identified, the Court finds this factor favors transfer.

   iii. *Cost of Attendance for Willing Witnesses*

This factor is analyzed by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

7

The Fifth Circuit Court of Appeals has adopted a "100-mile rule" to assist with analysis of this factor. *See Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* When applying the 100-mile rule, the threshold question is whether the transferor and proposed venues are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and proposed venues. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320. The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance from witnesses than the transferor venue. *See Volkswagen II*, 545 F.3d at 317; *TS Tech*, 551 F.3d at 1320.

But "the '100-mile rule' should not be rigidly applied." *Genentech*, 566 F.3d at 1344. When a particular witness "will be required to travel a significant distance no matter where they testify," that witness' convenience is discounted for purposes of the 100-mile rule analysis. *Id*. (discounting European witnesses and documents transported from Washington, D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

As to this factor, 3M Cogent asserts the decisions related to its overall business, including the most significant sales, marketing, and engineering decisions related to the Accused Products, are made by business and technical managers in the Pasadena office. 3M Cogent states one specific Accused Product, the SA-4ii OEM Fingerprint Module, was developed by 3M Cogent in Pasadena. According to 3M Cogent, engineers with relevant knowledge regarding the product and its fingerprint recognition functionality are based in Pasadena or ultimately report to

individuals there. Specifically, Anne Wang, Senior Technical Manager, Xu Chen, Finance Manager, and Michael Hollowich, Executive Vice President, Business Development and Proposals, are likely witnesses who possess relevant knowledge concerning the design and operation of the Accused Products, and all are employed at the Pasadena location. *Id*. 3M Cogent also specifically identifies Mr. Berry, the co-inventor of the Asserted Patents who lives in Seattle, Washington. According to 3M Cogent, Seattle is much closer to the Central District of California.

Although 3M Cogent specifically identifies employees Wang, Chen, and Hollowich, all of whom reside and work within the Central District of California, nearly 1,500 miles from the Eastern District of Texas, Plaintiff asserts 3M Cogent's argument about the costs and convenience of willing witnesses is still "relatively weak" because 3M Cogent fails to specifically identify any willing witnesses apart from its own employees. Docket Entry # 1302 at pg. 11. According to Plaintiff, 3M Cogent vaguely asserts there are other "engineers and managers" with relevant knowledge who also reside in California. Plaintiff states all of its known witnesses reside in the Eastern District of Texas, and the "cost" of attendance for those witnesses is not limited to money or inconvenience. Specifically, Plaintiff asserts its CEO, Mr. Moskowitz, has difficulty traveling.

Plaintiff asserts all of its witnesses live in this district, but does not name or describe any witnesses or employees, other than Mr. Moskowitz, claiming to now live in Tyler, Texas or elsewhere in the Eastern District of Texas. 3M Cogent also brings into question Mr. Moskowitz's residence within the Eastern District of Texas, asserting his actual residence is in

9

Florida.[1] Plaintiff represents Mr. Moskowitz splits his time between Tyler and Florida, where he receives an experimental medical treatment for his chronic inguinal neuropathy condition from Dr. Steven W. Unger, but he has lived in Tyler since before this case was filed. *See, e.g.* Docket Entry #1135, Moskowitz Decl. at ¶¶14-17; *see also* Docket Entry # 1302 at pg. 7.

The courts weigh most heavily the convenience of non-party witnesses. *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2013). With respect to non-party witnesses, Mr. Berry, the co-inventor of the Asserted Patents, lives in Seattle, Washington, which is much closer to the Central District of California than to the Eastern District of Texas.

Regarding party witnesses, the court "gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Landmark Tech., LLC v. Ann Inc.*, 2013 WL 3354451, *3 (E.D. Tex. July 1, 2013). As noted above, 3M Cogent has specifically identified three party witnesses, whereas Plaintiff only identified Mr. Moskowitz.

Plaintiff encourages the Court to give special consideration to Mr. Moskowitz's travel limitations imposed by his serious health condition, chronic inguinal neuropathy, "which is characterized by a sharp, shooting pain that originates from the area located near the front hip. . . ." Moskowitz Decl. at ¶12. Unlike previous transfer briefing in the other *Blue Spike* cases, Plaintiff has now provided documentation from Mr. Moskowitz's physician regarding his claim that he is medically unable to travel long distances. *See* Docket Entry # 1599, Declaration of Dr.

---

[1] Although 3M Cogent suggests Plaintiff's ties to this district should be disregarded, the Court does not find persuasive 3M's argument that Plaintiff is an ephemeral entity, noting the Court has not made such a finding in any of the previous orders regarding transfer in the other *Blue Spike* cases.

Stephen W. Unger attached to Blue Spike's Notice of Additional Facts Pertaining to 3M's Transfer Motion. The Court will consider the weight to give Mr. Moskowitz's health problems.

"The health concerns of a party or witness can be an important factor in the determination of whether a §1404(a) transfer is proper." *NGC Worldwide, Inc. v. Siamon*, No. 3:02-CV-1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) (collecting cases) (finding the detrimental effect of travel on Defendant Siamon's health, confirmed by his treating physician, weighed strongly in favor of transfer). In the *Siamon* case, Plaintiff NGC attempted to cast doubt on the seriousness of Siamon's condition and the effect travel had on his health. *Id.* However, the court relied on the opinion of Siamon's treating physician and found this factor weighed in favor of accepting his conclusions. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 81 (2nd Cir. 1986) ("The preference for the opinion of a treating physician runs throughout the law"). Likewise, the Court considers the opinion of Dr. Unger concerning the detrimental effect travel would have on Mr. Moskowitz's health in determining this private interest factor. *See* Docket Entry # 1599-1 at pg. 2 ("Mr. Moskowitz is unable to travel by plane or car for long durations of time, and doing so causes extreme pain and is not advised.").

On balance, even considering Mr. Moskowitz's medical condition, the Court finds this factor weighs slightly in favor of transfer, given 3M Cogent's specific identification of four witnesses located in the Central District of California for whom trial there would be more convenient.

    iv.    *All other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create

11

practical difficulties that will weigh heavily in favor or against transfer. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter "*Volkswagen III*").

Plaintiff emphasizes judicial economy, relying on the multiple pending lawsuit involving Blue Spike and consolidated for pretrial purposes, asserting considerations of judicial economy weigh heavily against transfer because this case is deeply intertwined with others in this district. According to Plaintiff, other consolidated defendants' accused products have very similar functionality to 3M Cogent's, and many of those defendants are 3M Cogent's direct competitors in the biometrics marketplace. Plaintiff asserts transferring this case "would guarantee that multiple courts would have to weigh identical issues, duplicate each other's efforts, and issue potentially conflicting rulings." Docket Entry # 1302 at pg. 5. In response, 3M Cogent asserts the "transfer analysis cannot be swayed or manipulated by serially filing cases within a single district." Docket Entry # 1360 at pg. 5; s*ee also GeoTag, Inc. v. Zoosk, Inc.,* 2:11cv403, Docket Entry # 114 at pg. 11 (E.D. Tex. Jan. 14, 2013).

The Court recognizes there is the possibility that transferring some of these cases could cause multiple courts to consider some overlapping issues. However, the Court will not give this possibility any more weight than other considerations and will consider this fact along with other practical issues, such as the stage of the litigation and the Court's familiarity with the asserted patents and the underlying technology. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1346-47 (Fed. Cir. 2010) (holding the trial court's familiarity with the only asserted patent from prior litigation, coupled with the fact there was co-pending litigation before the trial court involving the same patent and underlying technology, provided "substantial justification for maintaining suit in the Eastern District of Texas," especially considering no defendant party was actually located in the transferee venue and the presence of witnesses in that location was not overwhelming).

In considering the other pending cases and their effect on judicial economy, the Court first notes some of the *Blue Spike* cases have already been severed and transferred to other courts, including the Northern District of California, the Southern District of California, the Central District of California, the District of Massachusetts, and the District of New Jersey. All remaining *Blue Spike* cases are still in their infancy, and the Court has not gained any specialized knowledge about the patents as of yet. Nor will Plaintiff be overly prejudiced if this case is transferred, especially considering there is already one other *Blue Spike* case pending in the Central District of California. And, in consolidating these cases for pretrial purposes, Judge Schneider specifically noted the consolidation would not bear on any venue challenges.

On the other hand, the fact remains there are multiple additional cases pending in this district. There are a number of common or related issues among the related *Blue Spike* cases. On balance, the Court finds this factor is neutral.

**Public Interest Factors**

The parties only address two public interest factors: the local interest in the dispute and the familiarity of the forum with the governing law. These factors are addressed below. The remaining two public interest factors (administrative difficulties due to relative court congestion, and the avoidance of unnecessary problems of conflict of laws) are considered neutral.

    i.    *Local interests*

Regarding the local interests factor, the Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial

13

district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely sold product within the transferor venue); *TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *Nintendo*, 589 F.3d at 1198.

Considering Plaintiff's presence in the Eastern District of Texas, and further considering 3M Cogent's presence in the Central District of California, both districts have a local interest in adjudicating this matter. The Court finds this factor is neutral.

    ii.    *Familiarity of the Forum with Governing Law*

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Although Plaintiff asserts this Court will be much more familiar with the legal and factual issues involving Blue Spike's technology because of the multiple other suits involving the same patents, the Court is not now familiar with the Asserted Patents. Both the Central District of California and the Eastern District of Texas are equally capable of applying the law regarding patent infringement. *See TS Tech*, 551 F.3d at 1320. This factor is neutral.

## **CONCLUSION**

In summary, the Court has considered the private and public interest factors and finds the relative ease of access to proof, availability of compulsory process, and cost of attendance for willing witnesses weigh in favor of transfer. All remaining factors are neutral. On balance, the Court finds 3M Cogent has established that the Central District of California is a clearly more

convenient forum, especially considering Defendant's specified sources of proof and witnesses are located there. For the foregoing reasons, it is

**ORDERED** that Defendant 3M Cogent Inc.'s Motion to Transfer Venue to the United States District Court for the Central District of California Under 28 U.S.C. § 1404(a)(Docket Entry # 1150) is **GRANTED**. Accordingly, Plaintiff's claims against Defendant 3M Cogent Inc. are **SEVERED** from the lead case back into the original cause number, 6:12-cv-685, and the Clerk of the Court is directed to **TRANSFER** the severed action to the Central District of California for further consideration.

**SIGNED this 11th day of July, 2014.**

*/s/ Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

15