IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC., *et al.*,<br><br>    *Defendants*. | Civil Action No. 12-CV-499-MHS-CMC<br><br>LEAD CASE<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF BLUE SPIKE, LLC'S AND COUNTERDEFENDANTS BLUE SPIKE, INC.'S AND SCOTT MOSKOWITZ'S OPPOSITION TO THE AUDIBLE MAGIC DEFENDANTS' MOTION TO COMPEL AND MOTION FOR SANCTIONS**

Audible Magic's Motion to Compel once again burdens both Blue Spike and this Court unnecessarily. Audible Magic asks the Court to compel responses Blue Spike already agreed to provide. Moreover, Audible Magic requests information that is irrelevant, duplicative, and burdensome. Audible Magic's motion to compel should be denied, or in the alternative, curtailed to relevant requests.

**FACTUAL BACKGROUND**

Counsel for Blue Spike, LLC and Audible Magic Corporation held a meet and confer regarding Audible Magic's document requests and Blue Spike, LLC's response and objections to Audible Magic's first set of interrogatories on June 23rd. Neither lead nor local counsel participated. Audible Magic made nineteen (19) document requests including but not limited to: all documents related to the activities of Mr. Moskowitz and Mike

1

Berry in relation to 66 of Mr. Moskowitz's U.S. patents; all documents related to Mr. Moskowitz's business and activities for the past 24 years; and all documents related to the unrelated employment lawsuit between Mr. Moskowitz and Marc Cooperman. To date, Blue Spike has received no notice or information that Audible Magic's counsel has attempted to request the same documents directly from or depose Mr. Cooperman or Mr. Berry.

Counsel for Blue Spike supplemented its interrogatory responses on June 25, 2014. Blue Spike agreed to provide all of the documents Audible Magic requested on June 24, 2014. Audible Magic filed its motion to compel on June 26, 2014. On July 1, 2014, Blue Spike produced its privilege log which contains documents directly responsive to Audible Magic's requests. In addition, Blue Spike has been in contact with third parties since May 1 in order to locate and obtain possession of documents directly responsive to Audible Magic's requests. Blue Spike has located documents responsive to Audible Magic's requests, but cannot produce them until they are in the possession, custody, or control of Blue Spike. Blue Spike has repeatedly requested that these documents be shipped to the offices of Blue Spike's counsel but has not yet received them.

# ARGUMENT

## I. Audible Magic's Motion to Compel Should Be Denied Because It Is Unnecessary–Blue Spike Agreed to Produce The Information Audible Magic Requested.

Audible Magic's Motion to Compel fails to mention a critical fact: Blue Spike agreed to produce responsive documents and answers to *all* of Audible Magic's requests shortly before Audible Magic filed its motion. This fact is absent from Audible Magic's motion for good reason—it underscores Audible Magic's persistent lack of good faith during the discovery process.

In its request for production, Audible Magic requested 19 categories of documents, including all documents related to watermarking technology not at issue in this case, all documents relating to Scott Moskowitz's business dealings in the past 24 years, and all documents relating to a separate employment lawsuit. In fact, Audible Magic believes that "there should be very few, if any, documents in Blue Spike, LLC's or Blue Spike, Inc.'s possession, custody, or control that are not relevant to this action." Higgins Decl., Ex. 1. Audible Magic wants virtually everything. *See also* Brasher Decl., ¶ 18 (noting Audible Magic's intent to "drink [discovery] from a fire hose").

These requests are clearly intended to burden Blue Spike rather than provide information relevant to the parties' claims. Nevertheless, Blue Spike informed Audible Magic that it would produce responsive documents in all of these 19 categories in the spirit of compromise. And yet Audible Magic filed

3

its motion anyway.[1] Blue Spike remains willing to continue its production of responsive documents and answers, although it now looks to the court to limit Audible Magic's requests to relevant matters, pursuant to Local Rule 26.

## II. Audible Magic's Motion to Compel Must Be Denied Because Audible Magic's Requests are Irrelevant and Burdensome.

As Audible Magic noted in its motion, discovery requests must be relevant. Mot. at 7. Yet despite paying lip service to this requirement, Audible Magic wants each and every document in Blue Spike, LLC's and Blue Spike, Inc.'s control. *See* Section I. Asking for all documents in Blue Spike's control contravenes Federal Rule of Civil Procedure 26(b), which decries discovery that is "more burdensome than beneficial." *Internet Machs. LLC v. Alienware Corp.*, 2011 U.S. Dist. LEXIS 155683, at *11 (E.D. Tex. Nov. 29, 2011). Audible Magic acts contrary to this requirement for at least four reasons.

First, Audible Magic demands unnecessarily large swaths of information. For instance, Audible Magic would like all documents relating to Blue Spike's business over the last 24 years. It wants everything. But certainly Blue Spike's office supply purchases in 1990 are not relevant to the claims at issue. Nor does Audible Magic make such a claim; it would rather

---

[1] It is noteworthy that Audible Magic stands alone in its habit of burdening the court with voluminous motions in blatant disregard for the meet and confer process. Its Motion to Compel is reminiscent of its Motion to Strike Blue Spike's infringement contentions, which it filed without a meet and confer immediately after Blue Spike delivered revised contentions.

burden Blue Spike with superfluous requests than narrow its scope to relevant matters. Audible Magic intends to drink from a fire hose of discovery, and now it seeks the Court's assistance in opening up the flood gates.

Second, Audible Magic requests information that has nothing to do with the parties' claims. By way of example, Scott Moskowitz's watermarking technology is not at issue in this case, and yet Audible Magic asks for every document related to that technology. Blue Spike has not made watermarking an issue by mentioning it in Mr. Moskowitz's background story, any more than the story might make, say, his undergrad courses relevant. Blue Spike is not asking for discovery related to products that have not been accused, nor would Audible Magic acquiesce if it did. Audible Magic should know better than to request information about products and technology not at issue in this case.

Third, Audible Magic seeks information regarding third parties that it could more easily get from the source. When a party seeks information that "can be obtained from some other source that is more convenient, less burdensome, and less expensive," this Court "must limit the frequency or extent of discovery." *Internet Machs.* at *10-11. *(citing* Fed. R. Civ. P. 26(b)(2)(C)(i).) At the very least, Audible Magic's requests for documents in the control of third parties Floyd Chapman and Rick Neifeld are inconvenient and burdensome to Blue Spike. Blue Spike continues to try to ascertain the

whereabouts of these documents, but Audible Magic is well aware that it would have been more efficient and cost-effective to seek these documents directly from the source.

Finally, Audible Magic seeks duplicative information. Many of Audible Magic's requests relate to interactions between parties to the suit (e.g., Scott Moskowitz, Blue Spike, LLC, and Blue Spike, Inc.). *See* Brasher Decl., ¶ 18. To the extent that Audible Magic requests duplicate information, it burdens Blue Spike.

Audible Magic's discovery requests are at best carelessly written, and at worst bad faith attempts to burden Blue Spike. Audible Magic must not be allowed to circumvent the meet and confer process and wield discovery as a means of harassing Blue Spike.

### III. Sanctions Against Blue Spike Are Unwarranted.

Audible Magic requests sanctions against Blue Spike for failing to provide "even basic information." Mot. at 15. And yet Audible Magic is not asking this Court to compel 13 of the 19 production requests. It is disingenuous of Audible Magic to accuse Blue Spike of not providing basic information when Audible Magic takes issue with only six responses to its 19 requests. Further, Blue Spike remains willing to produce documents on a rolling basis and has expressed this to Audible Magic.[2]

---

[2] Additionally, Blue Spike has explained to Audible Magic repeatedly that it has no source code in its possession. Now it is possible that Mike Berry, co-inventor and leader of the engineers and coders for Blue Spike, Inc, created

6

If anything, Audible Magic is guilty of the bad faith tactics it cites. (1) Audible Magic's production was saturated with useless icon graphics, irrelevant sound-bytes, and excessive duplicates, greatly increasing the burden and cost of discovery review. (2) Audible Magic's Motions to Strike and Compel are prime examples of improper objections, both demanding the Court to compel what Blue Spike had already offered to give. (3) Audible Magic disregarded the meet-and-confer process twice by filing both of its motions and ignoring Blue Spike's willingness to supplement discovery.

## CONCLUSION

Audible Magic's Motion to Compel is unnecessary. Despite Audible Magic's onerous requests, Blue Spike had already agreed to provide responses Audible Magic seeks. Moreover, Audible Magic's requests are irrelevant and burdensome. Blue Spike respectfully asks the Court to dismiss Audible Magic's motion. Alternatively, Blue Spike requests that the Court narrow and/or strike the requests.

---

source for the service later offered on Shopify by Blue Spike LLC known as Giovanni Abstraction Machine. After all, Mike Berry worked in New Mexico during the relevant timeframe (1997-2000), far from Blue Spike's CEO Scott Moskowitz. However, such code would be in Mike Berry's possession who is represented by independent counsel and has been an employee of transferred Defendant Adobe Systems, Inc. Audible Magic will have to accept that not all document requests can be fulfilled from Blue Spike, Inc., Scott Moskowitz, and Blue Spike LLC. Audible Magic must pursue some third parties on its own, like Mike Berry and Marc Cooperman, should Audible Magic truly believe these individuals have any information relevant to this lawsuit.