# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>    *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>    *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br>    *Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S OPPOSITION TO BLUE SPIKE'S OPPOSED MOTION TO EXTEND DEADLINE BY 9 DAYS TO RESPOND TO AUDIBLE MAGIC'S DISCOVERY**

Blue Spike's motion[1] is procedurally improper.  This is not a situation where Blue Spike is seeking an extension of a looming deadline.  Rather, Blue Spike failed to respond to discovery requests within the proper timeframe.  Having failed to respond, the propounded RFAs are deemed admitted and any objections to the interrogatories are deemed waived.  *See* Fed. R. Civ. P. 33(b)(4) and 36(a)(3).  Blue Spike cites no authority supporting that this Court has the ability to grant an *ex post facto* extension and simply ignore Blue Spike's prior failures.  Indeed, Blue Spike ignores the mechanism by which it may request the Court to change an answer to an RFA under Fed. R. Civ. P. 36(b).  Having failed to raise it in its opening motion, Blue Spike has waived that argument it in its reply.  Regardless, Blue Spike could not have satisfied the Fifth Circuit's standard to withdraw an RFA admission and its claims of diligence and good cause are irrelevant to that standard and equally unavailing.  Accordingly, Audible Magic respectfully requests the Court deny Blue Spike's improper request for an extension.

I.      **Relevant Background Regarding Requested Discovery**

During this litigation and as described below, Blue Spike Inc., Blue Spike LLC, and Scott Moskowitz have demonstrated a propensity to ignore communications, provide inadequate discovery responses, fail to comply with the local patent rules, and make contradicting and/or nonsensical statements.  The discovery at issue in the Motion relates to Audible Magic's patent infringement claims against Blue Spike LLC and Blue Spike Inc.  Audible Magic filed its patent claims based on Blue Spike's offer for sale of the Giovanni Abstraction Machine.  (Dkt. 1438 at p. 47-48.)  Under this Court's local patent rules and scheduling order, Blue Spike was required to provide all technical documents relating to the accused product on May 1, 2014.  (Dkt. 1332.) Blue Spike made no such production, forcing Audible Magic to file a motion to compel.  (Dkt.

---

[1] Blue Spike Inc. and Scott Moskowitz's (collectively, "Blue Spike") Opposed Motion to Extend Deadline by 9 Days to Respond to Audible Magic's Discovery ("Motion") (Dkt. 1648).

1

1617.) When Audible Magic requested that the Giovanni Abstraction Machine source code be made available to Audible Magic for inspection, Blue Spike repeatedly ignored Audible Magic's requests, then agreed on a date for Audible Magic to inspect the Giovanni Abstraction Machine source code, but then ultimately claimed that there was no code to inspect. (*See* Caridis Declaration in Support of Opposition to Extension ("Caridis Decl.") Exs. 1-3.) Not wanting to waste the Court or the parties' resources if no actual product existed, Audible Magic sent a letter to counsel for Blue Spike asking for clarification on the state of the Abstraction Machine. (Caridis Decl., Ex. 4.) Blue Spike never responded. (*See* Caridis Decl., Ex. 1.) Audible Magic also sent interrogatories to Blue Spike LLC seeking additional information on the Giovanni Abstraction Machine. (Caridis Decl., Ex. 5.) Blue Spike LLC's responses contained little substance (requiring Audible Magic to file a motion to compel). (*See* Dkt. 1617.) And what substance the responses did contain did little to clarify the existence of the product, and contradicted public information. (Caridis Decl., Ex. 6 at p. 5, 10.) Accordingly, Audible Magic sent discovery requests – both RFAs and interrogatories – to Blue Spike Inc. to ascertain the relevant information. (Caridis Decl., Exs. 7 and 8.)

The RFAs in question, particularly RFA numbers 1-5, were targeted to confirm information in the public domain or provided by counsel for Blue Spike:

| No. | RFA | Related public information or statement from Blue Spike counsel |
|---|---|---|
| 1 | Admit that Blue Spike Inc. offered a product named "Giovanni Abstraction Machine" for sale on its Myshopify Webpage until at least December 2013. | Screenshots from Blue Spike Inc.'s Myshopify page. (*See, e.g.*, Caridis Decl., Ex. 9.)[2] |

---

[2] Blue Spike Inc. now claims that it is not the owner of the Blue Spike my-shopify page. (*See,* Dkt. 1648-3 at 3.) However, the webpage in question specifically identifies the owner of the page as Blue Spike Inc. (*See, e.g.*, http://blue-spike.myshopify.com/, last visited July 24, 2014 (attributing ownership of the page to Blue Spike Inc.), Caridis Decl., Ex. 17 (screen capture of

| 2 | Admit that Blue Spike Inc. has never written any source code relating to the Giovanni Abstraction Machine. | Blue Spike never produced any source code, despite its obligation to do so under the local patent rules. (Dkt. 1317.) Blue Spike's counsel represented that no code existed. (*See, e.g.*, Dkt. 1652-2 at ¶15.) |
|---|---|---|
| 3 | Admit that Blue Spike Inc. has never possessed any source code relating to the Giovanni Abstraction Machine. | See above. |
| 4 | Admit that the Giovanni Abstraction Machine, offered on Blue Spike's Myshopify Webpage until at least December 2013, never existed. | Given the lack of any produced documentation or information, and in light of the representations of Blue Spike's counsel, it seems that no product existed. |
| 5 | Admit that the Giovanni Abstraction Machine, offered on Blue Spike's Myshopify Webpage until at least December 2013, never existed in any tangible form that could actually be purchased. | See above. |

## II. Blue Spike's Post-Deadline Conduct

The day after Blue Spike's responses were due, Audible Magic sent an e-mail to Blue Spike, informing Blue Spike that it had missed its deadlines. (Caridis Decl., Ex. 10.) Blue Spike did not respond for two days. When Blue Spike did respond, it offered a nonsensical explanation for its failure to provide discovery responses, and requested a three week extension to provide answers. (Caridis Decl., Ex. 11.)

The following day (Friday), the parties conducted a meet-and-confer. Audible Magic explained that the Federal Rules dictate the consequence of Blue Spike's failure, and Audible Magic did not believe that Blue Spike could, in good faith, deny a majority of the RFAs. As a compromise offer, and in order to avoid Court involvement, Audible Magic suggested that

---

Blue Spike Inc.'s webpage on November 2, 2012, providing direct link to buy *its* products on the myshopify page (link provided in first bullet point under "News").)

instead of all RFAs being deemed admitted and all objections waived, Blue Spike admit to RFA Nos. 1-5 and Audible Magic would agree that privilege objections for the interrogatories would not be waived.  Blue Spike refused this offer, but noted that "Blue Spike Inc. may ultimately admit to these RFAs."  (Caridis Decl., Ex. 12.)

On Monday – a week after Blue Spike's responses were due – the parties spoke again.  For the first time, Blue Spike's counsel claimed that Blue Spike Inc. and Scott Moskowitz never received the requests.  (Caridis Decl., Ex. 13.)  Blue Spike again refused Audible Magic's compromise offer.  Instead, Blue Spike indicated that it would file a motion the next day (Tuesday).  It did not.

On Wednesday July 23rd – nine days after the missed deadline – Blue Spike provided responses to the discovery requests in question.  (Dkt. 1648-3, 1648-4, and 1648-5.)  Despite Rule 36(a)(3) making clear that the RFAs are deemed admitted, Blue Spike Inc. denied every single RFA – contradicting statements from its counsel and Blue Spike Inc. in the process.  Then, ignoring Rule 36(b), Blue Spike filed the instant motion, asking for an *ex post facto* extension.

### III.    Legal Standard

The Federal Rules make the consequence of missing discovery deadlines clear:

- *Interrogatories*: Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure. (Fed. R. Civ. P. 33(b)(4).)

- *RFAs*:  A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  (Fed. R. Civ. P. 36(a)(3).)

The Rules also explain how a Court may permit amendment of an admitted RFA.  *See e.g.*, Fed. R. Civ. P. 36(b).  A deemed admission may only be withdrawn when the moving party satisfies the conditions set forth in Rule 36(b).  *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991); *see also Le v. Cheesecake Factory*

*Rests., Inc.,* 2007 U.S. App. LEXIS 5232 2007 U.S. App. LEXIS 5232 (5th Cir. 2007). Blue Spike was required to show through "affidavit, verified pleading, or other evidence….to suggest that the admission, if left standing, would render an unjust result under the law" or that "the admission is no longer true because of changed circumstances." *Le v. Cheesecake Factory Rests.*, 2007 U.S. App. LEXIS 5232, *6. And even then, the Court "still has discretion to deny a request to withdraw or amend an admission" after considering the fault of the party seeking the withdrawal and its diligence. *Id.* Blue Spike, however, failed to move under Rule 36(b), so its admissions cannot be withdrawn and Blue Spike cannot advance such an argument in its reply.

**IV.    Argument**

Blue Spike does not dispute that it received the discovery requests on June 11, 2014. (Motion at 1.) And Blue Spike does not dispute that responses to those discovery requests were due on July 14, 2014. (*Id.* at 2.) While the Court does have authority to extend an RFA deadline under Rule 36(a)(3), the time for doing so has passed. Once Blue Spike failed to timely respond, the RFAs were deemed admitted. (Fed. R. Civ. P. 36(a)(3).) At this point, requesting extension under Rule 36(a)(3) is improper and nonoperative. Similarly, Blue Spike's reliance on Rule 33(b)(2) for its interrogatory responses is misplaced. (*See* Motion at 4.) There is no doubt that parties (and the Court) can grant extensions before discovery responses are due. But the rules make clear that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

Blue Spike attempts to support its request for improper relief with claims of diligence and good cause. Blue Spike's arguments are irrelevant and nonetheless unpersuasive.

    **A.    Blue Spike's Request for an Extension Cannot Withdraw Its Admissions or Undo Its Waived Objections**

5

Blue Spike asserts a "good cause" argument to request an extension to respond to Audible Magic's RFAs and Interrogatories.  Even if such an extension were granted, however, it cannot withdraw Blue Spike's admissions and cannot permit Blue Spike to assert any objections to the Interrogatories.  Accordingly, Blue Spike's request for an extension to respond is moot and has no practical effect in the case.  Notwithstanding the mootness of Blue Spike's motion, Audible Magic responds to Blue Spike's allegations to clarify the record.

### 1. Blue Spike Did Not Act Diligently

An evaluation of diligence should take the context of the situation into account.  While nine days may be reasonable in some circumstances, this is not one of them.  On July 15 (the day after the deadline), Audible Magic informed Blue Spike of its missing discovery responses at 4:42 p.m. Central.[3]  (Caridis Decl, Ex. 10.)  Counsel for Blue Spike did not immediately call counsel for Audible Magic or reply to its e-mail, as would be expected.  Counsel for Blue Spike did not respond to the e-mail the next day.  Instead, at 2:52 p.m. Central on Thursday July 17, Blue Spike responded by offering a nonsensical explanation that it was somehow confused by discovery that Audible Magic hand served on Blue Spike on July 3.  (Caridis Decl., Ex. 11.)  According to Blue Spike, on account of that confusion, it did not realize that responses were due. (*Id.*)

On Monday July 23rd – a week after the missed deadline – Blue Spike retracted its nonsensical "confusion" excuse and instead claimed that the discovery responses were never forwarded on to the client.  (Caridis Decl., Ex. 13.)  Blue Spike then did not seek relief for another two days.

---

[3] Audible Magic waited until the afternoon to ensure that the responses were not served via the postal service.

6

In light of the nature of this dispute, it would be reasonable for Blue Spike to act with much more haste and diligence than it did. Additionally, the only reason that Blue Spike is seeking only a nine day extension is because Audible Magic informed Blue Spike of the missed deadline. If Blue Spike is to be believed, it would not have discovered its missed discovery deadline for a long time (if ever), had Audible Magic not sent its e-mail the day after the deadline. Audible Magic should not be punished for dutifully informing Blue Spike that its deadlines had passed.

### 2. Blue Spike's Claims of Prejudice are Unfounded

Blue Spike appears to subscribe to a conspiracy theory as to why Audible Magic requested these admissions. (Motion at 5-6.) The only "tactic" that Audible Magic has employed is requesting discovery and seeking enforcement of the Federal Rules of Civil Procedure, in an effort to establish formally what is either in the public domain or what Blue Spike's counsel has asserted in discussions during the case. As explained numerous times to Blue Spike, both on the phone and in writing, Audible Magic is trying to ascertain the existence of the Giovanni Abstraction Machine in order to determine whether to pursue its patent counterclaim. (*See, e.g.*, Caridis Decl., Ex. 4.) To be clear, the mere offer for sale of the Abstraction Machine is sufficient grounds to sustain Audible Magic's claim. 35 U.S.C. § 271(a). But if the Abstraction Machine does not exist in any tangible form, Audible Magic should be able to confirm that in order to evaluate whether to pursue its patent claim. This is particularly true in light of the resources that the parties and Court are expending in connection with the current claim construction process.

Furthermore, Audible Magic's compromise offer to Blue Spike would alleviate any claims of prejudice. Audible Magic offered that only RFA Nos. 1-5 be deemed admitted – admissions that are supported by public information and Blue Spike's counsel's statements. If

7

Blue Spike is now claiming that it has factual bases to deny these RFAs, it should be held accountable for the inconsistent and misleading statements of it and its counsel throughout this litigation.

Finally, to the extent Blue Spike is arguing that it is not required to respond to discovery because it has a pending motion to dismiss, such an argument is facially improper. *See* Local Rule CV-26 ("Provisions Governing Discovery; Duty of Disclosure… (a) No Excuses.  Absent court order to the contrary, a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue.")

### 3. Blue Spike's Prior Extensions are Irrelevant

It is difficult to believe that Blue Spike claims it is somehow deserving of an extension here because it has granted Audible Magic extensions in the past.  Blue Spike points to the fact that it granted *all defendants* (not specific to Audible Magic) extensions to two deadlines this summer.  Motion at 5-6.  Blue Spike fails to point out the numerous extensions that Audible Magic granted it this year.  (Caridis Decl., Exs. 14-16.)  Audible Magic has never taken issue with Blue Spike's request for an extension prior to the relevant deadline. *Id.*  But the situation of a blown deadline – where the Rules prescribe the results – is not analogous.

### B. Blue Spike Could Not Have Satisfied the Fifth Circuit's Standard to Withdraw Admissions Under Fed. R. Civ. P. 36(b).

Blue Spike's only excuse is that it inadvertently did not respond to the RFAs and Interrogatories.[4]  Such an argument has been squarely addressed and rejected by the Fifth Circuit and cannot serve as the basis to withdraw admissions under Rule 36(b). *Le v. Cheesecake Factory Rests.*, 2007 U.S. App. LEXIS 5232, *11-12.  And Blue Spike's claims of diligence and

---

[4] Blue Spike also blames Mr. Brasher's paternity leave for its failure to respond, but Mr. Brasher was back at work at least three weeks prior to the July 14th due date for Blue Spike's responses. *See* Dkt. 1652-2 (confirming that Mr. Brasher was working during this timeframe and participated in meet and confers).

prejudice fall well short of Rule 36(b)'s standard. *Id.* at 5-10. That is, Blue Spike could not have shown that the admission of RFAs 1-7 would "eliminate all merit issues" for presentation in the case or that the admission "is no longer true because of changed circumstances." *Id.* at 8-9. The RFAs seek information regarding the existence of the accused product in Audible Magic's patent infringement claim. If the RFAs are admitted, Audible Magic may withdraw its patent infringement claim. Indeed, it is difficult to reconcile Blue Spike's belated denial of the RFAs with its recently-filed Opposition to Audible Magic's Motion to Compel (Dkt. 1652), which was filed the same day as Blue Spike's Motion for an Extension. In Peter Brasher's Declaration in Support of Blue Spike's Opposition, Mr. Brasher states that:

> Before Audible Magic filed its motion to compel, Randall T. Garteiser and I indicated on at least three separate occasions to counsel for Audible Magic **that the Giovanni Abstraction Machine was never created**. Blue Spike is not aware of any source code available for Audible Magic to review or for Blue Spike, LLC to produce.

Dkt. 1652-2 (Declaration of Peter S. Brasher in Support of Plaintiff's Opposition to Defendants' [*sic*] Motion to Compel) (emphasis added). Blue Spike, however, attempts to now deny an RFA that asks whether the Giovanni Abstraction Machine ever existed.

As has been typical throughout discovery, Blue Spike affirmatively states one position to prevent giving any discovery to Audible Magic, and when Audible Magic serves additional discovery based upon Blue Spike's statement, Blue Spike changes its position. That is why Audible Magic has been forced to file several discovery motions and further demonstrates that there is no prejudice to Blue Spike. Blue Spike has affirmatively stated that the Giovanni Abstraction Machine never existed. Thus, there can be no prejudice to an RFA being deemed admitted that confirms this fact.

    **C.**    **Blue Spike's Accusations are Unwarranted and Inaccurate**

Throughout its Motion, Blue Spike accuses Audible Magic and its counsel of unprofessional conduct, "Rambo" litigation tactics, and violating the Texas Lawyer's Creed.  To the contrary, the actions of the parties in this case speak for themselves.  Audible Magic has simply sent discovery in the normal course, sought sufficient document production and expected both sides to comply with the Federal Rules of Civil Procedure and the rules of this Court.

Dated:  July 24, 2014

By:

*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

        Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, I electronically filed the foregoing **AUDIBLE MAGIC CORPORATION'S OPPOSITION TO BLUE SPIKE'S OPPOSED MOTION TO EXTEND DEADLINE BY 9 DAYS TO RESPOND TO AUDIBLE MAGIC'S DISCOVERY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing *via* electronic mail to all counsel of record.

        /s/ *Eric H. Findlay*
        Eric H. Findlay