IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-499** |
| | § | **LEAD CASE** |
| **TEXAS INSTRUMENTS, INC.** | § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| **BLUE SPIKE, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-576** |
| | § | **CONSOLIDATED CASE** |
| **AUDIBLE MAGIC CORPORATION,** | § | |
| **ET AL.** | § | |
| *Defendants.* | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following pending motions are before the Court: (1) Blue Spike, Inc.'s Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 993); (2) Blue Spike, LLC's Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 994); (3) Counterdefendant Scott Moskowitz's Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 995); (4) Blue Spike, Inc.'s Supplemental Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 1506); (5) Blue Spike, LLC's Supplemental Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 1507); and (6) Scott Moskowitz's Supplemental Motion to Dismiss

Audible Magic Corporation's Counterclaims (Docket Entry # 1508).  The Court, having reviewed the relevant briefing, recommends the motions be **DENIED**.

## I. FACTUAL BACKGROUND

This consolidated action involves numerous cases against unrelated defendants for infringement of four patents: U.S. Patent Nos. 7,346,472 (the '472 Patent), 7,660,700 (the '700 Patent), 7,949,494 (the '494 Patent), and 8,214,175 (the '175 Patent)(collectively, "Asserted Patents" or "Patents-in-Suit").  Blue Spike, LLC filed suit against Audible Magic Corporation ("Audible Magic") on August 27, 2012.  Audible Magic's answer included 12 counterclaims against Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz ("Counter-Defendants").

On September 20, 2013, all three putative Counter-Defendants filed motions to dismiss Audible Magic's counterclaims.   Blue Spike, Inc. and Moskowitz both move to dismiss counterclaims 1-9 on the basis that those claims concern patents in which they have no legal rights. In its response, Audible Magic represents it intended counterclaims 1-9 to be asserted against Blue Spike, LLC alone.  Audible Magic asserts it is willing to amend its counterclaims to include headings which explicitly list the relevant Counter-Defendant(s).

All three putative Counter-Defendants move to dismiss counterclaim 10 (unjust enrichment), asserting unjust enrichment is not an independent cause of action in Texas.  Counter-Defendants also move to dismiss counterclaim 11 (Lanham Act violation), asserting Audible Magic fails to identify any statement that is actionable under the Lanham Act. After these motions were filed, Blue spike, Inc. filed an amended complaint against Audible Magic.  Audible Magic then filed an answer that included the 12 original counterclaims as well as one new counterclaim: common-law unfair competition.   The parties agreed to file supplemental briefing regarding new counterclaim 13.

2

Counter-Defendants move to dismiss the unfair competition claim, asserting the two allegedly false and misleading statements relied upon by Audible Magic cannot support a claim for common-law unfair competition as a matter of law.  Even if the statements could support such a claim, Counter-Defendants contend Audible Magic failed to plead most of the required elements of such a claim.

## II. LEGAL STANDARDS

Regional circuit law applies to motions to dismiss for failure to state a claim. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted). In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.  DISCUSSION

### A.      Counterclaim 10 - unjust enrichment

In its answer to Blue Spike's First Amended Complaint, Audible Magic alleges as follows. Audible Magic's predecessor was a consulting company called Muscle Fish, LLC ("Muscle Fish"). (Docket Entry # 1438 at pg. 16, ¶16).  Beginning in 1992, Muscle Fish engineers worked on systems for analyzing content and signals. In the 1990s, Muscle Fish engineers designed a system for looking up and comparing known and unknown content, based on a set of features of content called "MFCCs." The Muscle Fish engineers published papers about this technology. *Id.* at pgs. 16-17, ¶18. In 1996, Muscle Fish filed application No. 08/681,174 on aspects of its MFCC-based fingerprinting technology. A continuation-in-part application was filed on July 21, 1997, resulting in the issuance of U.S. Patent No. 5,918,223 on aspects of the MFCC-based technology on June 29, 1999.  *Id.*  In the 1990s, interest in Muscle Fish's pioneering content recognition system was very high and the technology was known in the industry. *Id.* at pg. 17, ¶19.  Muscle Fish disclosed, marketed, and sold its technology and systems to numerous companies.  *Id.*  In 2000, Muscle Fish was merged into Audible Magic, and Audible Magic acquired all of Muscle Fish's intellectual property.  *Id.* at pg. 18, ¶20.

By contrast, in the 1990s, Moskowitz, one of the applicants for the '472, '700, '494 and '175 Patents-in-Suit, had only worked in a low-level business role at Sony Japan in the late 1980s, obtained a bachelor's degree in Political Science, Finance and Japanese in 1991 and formed an import/export and marketing company, which shipped CDs to Japan. *Id.* at pg 18, ¶21.  The other applicant for the Patents-in-Suit, Michael Berry ("Berry"), obtained a bachelor's degree in Music and Astronomy in 1991 and later obtained a master's degree in Music Composition in 1997 in the San

Francisco Bay Area. Upon information and belief, in the mid-1990s, neither of the applicants nor Blue Spike, Inc. were developing or selling any technology to identify content or signals based on the content or signal itself. *Id.*

In 1994, Moskowitz formed the DICE Company to develop a watermarking system called "Argent." *Id.* at pg. 19, ¶22. He formed that company, which was based in Palo Alto, California, with Marc Cooperman, who had a technical background. Cooperman's job was to create a working digital watermarking system because Moskowitz had no technical ability to do so. Cooperman worked on this project between March 1995 and October 1996, but the two were unable to develop a working system. Thereafter, as alleged by Cooperman, Moskowitz took the existing assets and intellectual property of the DICE Company, without informing Cooperman, and ultimately moved them to a new company, called "Blue Spike, Inc.," thus freezing out Cooperman. *Id.* Cooperman sued Moskowitz and Blue Spike, Inc. in two different lawsuits. *Id.* at pg. 19, ¶23. Going into 1997, upon information and belief, Moskowitz was in litigation with Cooperman; he had no technical person who could create any product for him, and he lacked sufficient technical background to create such software systems himself. *Id.*

Upon information and belief, at least as early as 1997, while Moskowitz's business was struggling, Moskowitz became aware of the pre-existing Muscle Fish content-based recognition systems. *Id.* at pgs. 19-20, ¶24. In the summer of 1997, Moskowitz contacted Muscle Fish and inquired about Muscle Fish's technology, and Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the Audio Information Retrieval (AIR) DataBlade module for the Informix Universal Server." *Id.* at pg. 20, ¶24. Similarly, in a telephone call with Muscle Fish in the summer of 1997, after having learned about Muscle Fish's technology and recognizing its value,

Moskowitz told Muscle Fish that it should obtain a trademark on the name of one of its products, "SoundFisher," which was one embodiment of Muscle Fish's content-based recognition technology. After his interactions with Muscle Fish, Moskowitz formally incorporated Blue Spike, Inc. in November 1997. As alleged further in the answer, Moskowitz did not disclose the foregoing prior art to the PTO. *Id.*

Audible Magic alleges Moskowitz and Blue Spike then used the ideas learned from Muscle Fish for their own benefit. Specifically, they allegedly filed patents purporting to cover content recognition and now accuse the same Muscle Fish technology that predated the patents by years. *Id.* at pgs. 21 & 23, ¶¶27-28, 33. Audible Magic alleges Counter-Defendants have taken information, technology and ideas from Audible Magic and its predecessor Muscle Fish, without authorization; Counter-Defendants used, without authorization or license, the information, technology and ideas of Audible Magic and its predecessor Muscle Fish; Counter-Defendants have profited unjustly from their actions and unauthorized use of information, technology and ideas, by, among other things, claiming ideas that they do not own and did not invent and commercializing information, technology and ideas of Audible Magic and its predecessor Muscle Fish; Counter-Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of the information, technology and ideas of Audible Magic and its predecessor Muscle Fish, and the activities alleged herein; retention by the Counter-Defendants of the profits they derived from their unauthorized and unlicensed use of information, technology and ideas of Audible Magic and its predecessor Muscle Fish, and the activities alleged herein, would be inequitable; Counter-Defendants' unauthorized and unlicensed use of the information, technology and ideas and the activities alleged herein, have damaged Audible Magic in an amount to be proven at trial, and

6

Counter-Defendants should disgorge their ill-gotten profits; and as a direct result of Counter-Defendants' actions, Audible Magic has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law, and which will continue unless Counter-Defendants' actions are enjoined.  *Id*. at pgs. 44-45, ¶¶75-82.

According to Counter-Defendants, the Court must dismiss counterclaim 10 because unjust enrichment is not an independent cause of action under Texas law. Cases have held unjust enrichment "may be both an equitable right asserted as its own cause of action, or as a theory of recovery." *Nueces County Texas v. Merscorp Holdings, Inc*., 2013 WL 3353948 (S.D. Tex. July 3, 2013)(citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010)); *see also Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex.App.–Houston [1st Dist.] 2007, pet. denied)("Unjust enrichment is an independent cause of action.").

Although there is a split of authority in Texas courts about whether unjust enrichment is an independent cause of action, even in the cases holding unjust enrichment is not an independent cause of action, the courts have still allowed recovery based on the *theory* of unjust enrichment so long as a "person has obtained a benefit from another by fraud, duress, or the taking of undue advantage." *Newington Ltd. v. Forrester*, 2008 WL 4908200, *4 (N.D. Tex. Nov. 13, 2008)(emphasis in original)("In other words, Texas courts may waffle about whether unjust enrichment is a theory of recovery or an independent cause of action, but either way, they have provided the plaintiff with relief when the defendant has been unjustly enriched.").  Given the Supreme Court has stated that unjust enrichment is a cause of action, and further considering that Texas courts are willing to award recovery based on unjust enrichment even if it is nothing more than a theory, the court in *Newington* concluded that the claim for unjust enrichment should proceed.  *Id.*

7

Under Texas law, a party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage, or when a person wrongfully secures or passively receives a benefit which it would be unconscionable to retain. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also Douglass v. Beakley*, 900 F.Supp.2d 736, 752 (N.D. Tex. 2012). In *Douglass*, the court assumed that unjust enrichment is an independent cause of action in assessing the amended complaint and held the amended complaint sufficiently alleged the defendants "at least passively received unjust benefits and that it would be unconscionable to retain these benefits." *Id*. at 752-53. Therefore, the court declined to dismiss the unjust enrichment claim. *Id*. at 753.

Here, the Court is of the opinion Audible Magic's unjust enrichment counterclaim should proceed. Audible Magic has sufficiently pled a situation where one party unfairly benefits at the expense of another. Thus, the Court recommends Counter-Defendants' motion to dismiss Audible Magic's unjust enrichment claim be denied.

**B.      Counterclaim 11 - Lanham Act violation**

Audible Magic's counterclaim 11 alleges a violation of the Lanham Act, 15 U.S.C. §1125(a), which provides in relevant part that a "person who, or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act." According to Audible Magic, Counter-Defendants make false and misleading statements regarding "The Giovanni® Abstraction Machine™," about Counter-

8

Defendants, and about Counter-Defendants' activities. Audible Magic alleges such false and misleading statements include, but are not limited to the following: On the www.bluespike.com website, Blue Spike, Inc., Blue Spike, LLC, and Moskowitz state that Moskowitz and Blue Spike were the "first to create" content "fingerprinting" technology. (Docket Entry #1438 at pg. 45, ¶84).

Audible Magic alleges these false and misleading statements in materials on Counter-Defendants' website are available and accessible to Audible Magic's customers and potential customers. Audible Magic further asserts Counter-Defendants state or imply falsely and misleadingly that there is risk in using technology of parties other than Counter-Defendants, including Audible Magic and others. *Id*. at pg. 45, ¶85. According to Audible Magic, the facts are contrary to Counter-Defendants' false and misleading statements that Counter-Defendants or their products or technology are "first" or are expressly or impliedly superior for that reason. Audible Magic alleges Counter-Defendants' false and misleading statements omit facts that demonstrate the falsity and misleading nature of the statements. *Id.*

According to Counter-Defendants, Blue Spike's website does not claim to be "first to create" content-fingerprinting technology. Rather, it states as follows: "The question is, was Shazam first to create this technology? One company, Blue Spike, LLC, answers 'No.'" Counter-Defendants assert Audible Magic has not stated a valid Lanham Act claim based on Blue Spike's statement that another company did not invent the technology. Even if Blue Spike's website had actually stated it was the "first to create" digital fingerprinting technology, Counter-Defendants contend the Lanham Act claim would still fail as a matter of law.

Section 43(a) requires the plaintiff to establish: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial

9

segment of potential consumers; (3) the deception is material, in that it is likely to influence the

consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has

been or is likely to be injured as a result of the statement at issue. *Pizza Hut v. Papa John's Int'l*, 227

F.3d 489, 495 (5th Cir. Tex. 2000). Audible Magic alleges that:

• Blue Spike made false and misleading statements regarding the Giovanni® Abstraction Machine™ on the www.bluespike.com website that with this product Blue Spike was the "first to create" content "fingerprinting" technology.

• Blue Spike's false statements on www.bluespike.com are accessible to Audible Magic's customers.

• Blue Spike's statements mislead Audible Magic's potential customers that the Giovanni Abstraction Machine is superior technology.

• Blue Spike's statements are in interstate commerce and constitute a false statement of fact and misleading representation of fact that Blue Spike uses to promote the Giovanni Abstraction Machine over Audible Magic's technology.

• Audible Magic suffered irreparable harm as a result of Blue Spike's false and misleading statements..

These allegations provide Blue Spike with notice of the type of false advertising alleged, why

that alleged conduct was false or misleading, and how it allegedly influences Audible Magic's

potential customers. Under Rule 8's liberal pleading standards, the Court finds these allegations,

which must be accepted as true at the pleading stage, assert a plausible claim for violation of §43(a)

of the Lanham Act.  The Court does not find the alleged "first to create" statement too vague to

support a Lanham Act claim, as urged by Counter-Defendants.

Counter-Defendants assert a Lanham Act misrepresentation must refer to "the characteristics

of [a] good [or service] itself" to be actionable.  *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d

1300, 1307 (Fed. Cir. 2009).  The Federal Circuit in *Baden Sports* examined the Ninth Circuit Court

of Appeals' decision in *Sybersound Records, Inc. V. UAV Corp.*, 517 F.3d 1137 (9th Cir.2008)(The Ninth Circuit stated that "the nature, characteristics, and the qualities of karaoke recordings under the Lanham Act are more properly construed to mean characteristics of the good itself, such as the original song and artist of the karaoke recording, and the quality of its audio and visual effects."). Relying on this language, the Federal Circuit in *Baden Sports* found that in the Ninth Circuit a claim under §43(a)(1)(B) must refer to the characteristics of the good itself.  *Baden Sports*, 556 F.3d at 1307.  *Baden Sports* also involved an idea and authorship, issues not involved here.

Here, Audible Magic alleges Blue Spike made statements on its website that its Giovanni product and technology were "first," and that its competitors, including Audible Magic, are improperly using "borrowed technology" from Blue Spike.  These statements concern "the nature, characteristics, qualities, or geographic origin of [Blue Spike's] or [Audible Magic's] or another person's goods, services, or commercial activities." 15 U.S.C. §1125(a)(1)(B). As urged by Audible Magic, such statements do not concern who was the first to create an abstract idea, but rather connote to the public who was the first to use the technology in a product. *See Zobmondo Ent. LLC v. Imagination Int'l Corp.*, 2009 WL 8714439, *4-5 (C.D. Cal. June 23, 2009) (distinguishing *Baden Sports* and allowing a company to proceed with its Lanham Act claim that another company misrepresented that its board game was the first "would you rather" board game).

Finally, Counter-Defendants assert a statement's "materiality" can sometimes be determined as a matter of law for Lanham Act purposes.  In order to obtain monetary damages or equitable relief in the form of an injunction, "a plaintiff must demonstrate that the commercial advertisement or promotion is either literally false, of that [if the advertisement is not literally false,] it is likely to mislead and confuse consumers." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th

Cir. 2000). "If the statement is shown to be misleading, the plaintiff must also introduce evidence of the statement's impact on consumers, referred to as materiality."

Counter-Defendants assert a statement that a company was the "first to create" something is immaterial as a matter of law because it does not necessarily imply that the company's products are superior. According to Counter-Defendants, to imply superiority as Audible Magic suggests, a "first to create" statement must be coupled with more. Even if the Court finds the alleged "first to create" statement alone implies superiority, Counter-Defendants contend such a generalized claim of superiority over comparable products is not actionable under the Lanham Act. *See Pizza Hut*, 227 F.3d at 496-97.

It is true that bald assertions of superiority or general statements of opinions, as opposed to statements of fact, cannot form the basis of Lanham Act liability. *Id*. at 496. Rather, the statements at issue must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id*. (internal quotations omitted). In Pizza Hut, the Fifth Circuit Court of Appeals held Papa John's "Better Ingredients. Better Pizza" slogan non-actionable, stating the term "better" is one that remains unquantifiable, "especially when applied to the sense of taste." *Id*. at 499.

According to Audible Magic, a literally false statement is material without proof of public reaction or consumer reliance. *Id.* at 497. A claim may also be deemed literally false, and material, for Lanham Act purposes if it is "false by necessary implication." *Eastman Chem. Co. v. Plastipure, Inc. & Certichem*, 2013 U.S. Dist. LEXIS 124340, *10-11 (W.D. Tex. August 30, 2013) (citing *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1367 (Fed. Cir. 2013)). Under this criterion, "if the

words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required." *Hall*, 705 F.3d at 1367.

Here, as alleged in Audible magic's counterclaim, it is not true for Blue Spike to suggest that it was the first to create digital fingerprinting technology in its Giovanni product. Audible Magic asserts this is literally false and misleading, satisfying the materiality standard under the Lanham Act. However, even if Blue Spike's allegedly false statements are viewed only as implying that Blue Spike was the "first to create" content recognition technology with its Giovanni products, the Court is not convinced such statements are not actionable under the Lanham Act as a matter of law.

According to Audible Magic, the only reasonable implication of Blue Spike's statements is to persuade consumers not to buy competitors' products. Accepting as true Audible Magic's allegations, Blue Spike's statements imply it was the first to create content fingerprinting technology with its Giovanni product; no other competitor has the rights to use that technology; and, competitors are using "borrowed technology," implying the Giovanni product is superior to the others. The implication that Blue Spike was the first to create digital fingerprinting technology and the assertion that the Giovanni Abstraction Machine was the first to use content fingerprinting technology, since the "turn of the century," and that no other program on the market could use such technology, are claims of superiority among competitor products that are specifically intended to persuade a reasonable buyer.

In sum, Audible Magic has properly plead facts to support a plausible claim under § 43(a) of the Lanham Act. The Court recommends this part of Counter-Defendants' motion be denied.

13

C.       **Counterclaim 13 - common law unfair competition**

Audible Magic's common law unfair competition claim is tied to its Lanham Act claim because"[t]o prevail on a common law claim of unfair competition in Texas, a plaintiff must show that the defendant committed . . . an independent tort." *Wellpath Solutions, Inc. v. Wellpath Energy Servs, LLC*, No. 6:12-cv-286, 2013 WL 1314423, at *4 (E.D. Tex. Mar. 28, 2013). A "claim for common law unfair competition [is] analyzed under the elements of [a] claim of false advertising in violation of the Lanham Act" when the two claims are based on "essentially the same" allegations. *Axxiom Mfg., Inc. v. McCoy Inves., Inc.*, No. Civ. A. H-09-3735, 2010 WL 2545584, at *7 (S.D. Tex. June 21, 2010); *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008) (same).

Counter-Defendants assert Audible Magic's common law unfair competition counterclaim is based on the same two allegedly false and misleading statements from Blue Spike's website: that Moskowitz and Blue Spike were the "first to create" content fingerprinting technology and that the fingerprinting technology is technology that has powered Blue Spike's products since the "turn of the century," including the Giovanni Abstraction Machine.  According to Counter-Defendants, neither of these statements can support a claim for common law unfair competition for the same reasons the statements cannot support a Lanham Act claim.  In their supplemental motions, Counter-Defendants further assert Audible Magic has failed to adequately plead the elements of a Lanham Act claim.

The Court notes that even though Counter-Defendants' supplemental motions are based on an argument that Audible Magic failed to plead the requirements for a Lanham Act counterclaim, in their original motions to dismiss the Lanham Act counterclaim Counter-Defendants never made

this argument. Even if Counter-Defendants had properly argued that Audible Magic failed to plead the elements of a Lanham Act claim, the Court finds Audible Magic has alleged a plausible claim for violation of §43(a) of the Lanham Act. As noted above, Audible Magic alleges Blue Spike made a false statement about its Giovanni product that Blue Spike has placed in interstate commerce; this false statement has the potential to deceive a substantial segment of Audible Magic's customers and influence their purchasing decisions; and Audible Magic has been injured by Blue Spike's allegedly false statement. These facts, which must be accepted as true at the pleading stage, satisfy the liberal pleading standards that are applicable to claims under the Lanham Act. *See, e.g., Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 966 (S.D. Tex. 2012) (collecting cases from the 5th Circuit).

Counter-Defendants also do not address portions of Audible Magic's common law unfair competition counterclaim related to misappropriation of Audible Magic technology. In addition to the allegedly false statements made by Blue Spike, Audible Magic also alleges Blue Spike misappropriated Audible Magic and its predecessor company Muscle Fish technology and claimed it as its own. Specifically, Audible Magic pled the following:

> 103. Audible Magic and its predecessor Muscle Fish have expended labor, skill, and money, in the development of valuable information, technology, ideas, products and unique pecuniary interests.
>
> 104. Counter-Defendants have taken and used without authorization or license Audible Magic's information, technology, ideas, products and unique pecuniary interests, in competition with Audible Magic, thereby gaining a special advantage in that competition because Counter-Defendants are burdened with little or none of the expense incurred by Audible Magic. Counter-Defendants have caused commercial damage to Audible Magic.

(Docket Entry # 1438 at pg. 49).  Audible Magic further alleges the following details regarding this

alleged misappropriation:

> 26.  Upon information and belief, at least as early as 1997, while Moskowitz's
> business was struggling, Moskowitz became aware of the pre-existing Muscle Fish
> content-based recognition systems. For example, in the summer of 1997, Moskowitz
> contacted Muscle Fish and inquired about Muscle Fish's technology. At that time,
> Muscle Fish representatives told Moskowitz that Muscle Fish had "developed the
> Audio Information Retrieval (AIR) DataBlade module for the Informix Universal
> Server." Similarly, in a telephone call with Muscle Fish in the summer of 1997, after
> having learned about Muscle Fish's technology and recognizing its value, Moskowitz
> told Muscle Fish that it should obtain a trademark on the name of one of its products,
> "SoundFisher," which was one embodiment of Muscle Fish's content-based
> recognition technology. After his interactions with Muscle Fish, Moskowitz formally
> incorporated Blue Spike, Inc. in November 1997. As alleged further below,
> Moskowitz did not disclose the foregoing prior art to the PTO.
>
> 27. Muscle Fish expended tremendous resources to cultivate and develop valuable
> information and intellectual property, including source code and other intellectual
> property. Muscle Fish spent significant time, effort and money to develop valuable
> business trade secrets including, but not limited to source code, algorithms, ideas,
> formulas, designs, business plans, schematics, specifications, descriptions, prototypes
> and designs and other confidential intellectual property relating to content-based
> recognition technologies, systems and business. The development and use of such
> information enabled Muscle Fish and its successor Audible Magic to succeed in a
> competitive industry.

*Id*. at pgs. 33-34. These allegations constitute a separate basis for Audible Magic's counterclaim of

common law unfair competition.   The Court recommends Counter-Defendants' supplemental

motions to dismiss counterclaim 13 be denied.

Based on the foregoing, it is

**RECOMMENDED** that (1) Blue Spike, Inc.'s Motion to Dismiss Audible Magic

Corporation's Counterclaims (Docket Entry # 993); (2) Blue Spike, LLC's Motion to Dismiss

Audible Magic Corporation's Counterclaims (Docket Entry # 994); (3) Counterdefendant Scott

Moskowitz's Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 995);

16

(4) Blue Spike, Inc.'s Supplemental Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 1506); (5) Blue Spike, LLC's Supplemental Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 1507); and (6) Scott Moskowitz's Supplemental Motion to Dismiss Audible Magic Corporation's Counterclaims (Docket Entry # 1508) be **DENIED**.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 25th day of July, 2014.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

17