## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>  *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>  *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br>  *Plaintiff*,<br><br>v.<br><br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S REPLY TO ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY BLUE SPIKE LLC, BLUE SPIKE INC. AND SCOTT MOSKOWITZ AND RESPONSES TO INTERROGATORIES <u>AND MOTION FOR SANCTIONS</u>**

Instead of respond substantively to Audible Magic's Motion to Compel (Dkt. 1617), the Blue Spike defendants used their reply to make multiple disingenuous statements.  Blue Spike provided no substantive response to any of the categories of documents that were the subject of Audible Magic's Motion.  Blue Spike also failed to respond to Audible Magic's Motion as it relates to Interrogatories 6-10.  Accordingly, Blue Spike has waived any argument regarding the sufficiency of its document production or interrogatory responses, and Audible Magic's Motion should be granted.  Finally, Blue Spike failed to respond to Audible Magic's sanctions request.  Blue Spike's lack of substantive response to Audible Magic's Motion (after being given two extensions for its opposition) demonstrates its disregard for the discovery processes of this Court.

**I.     False Statements In Blue Spike's Opposition**

Blue Spike's Opposition includes misrepresentations made to distract the Court from the deficiencies in Blue Spike's discovery efforts.  This section addresses many of these statements, which are directly contradicted by one or more exhibits attached to Audible Magic's Motion.

**A.     The Parties Conducted Two Official Meet and Confers**

Blue Spike implies that Audible Magic failed to properly meet-and-confer before filing its Motion because the June 23 conversation between the parties did not include both lead and local counsel.  Dkt. 1652 at 1.  Blue Spike fails to mention that **the parties met-and-conferred on two separate occasions** before the June 23 conversation.  *See* Dkt. 1617 at 17.  Indeed, Blue Spike confirmed that the parties conducted these meet-and-confers in e-mails sent following the meetings.  *See* Higgins Declaration in Support of Audible Magic's Reply ("Higgins Decl."), Exs. 18 and 19.  On June 19, following the second meet-and-confer, Blue Spike had not produced any of the requested documents nor had it supplemented its interrogatory responses, so it requested an extension before Audible Magic filed its motion.  Higgins Decl. ¶ 4.  Audible Magic agreed to

speak again with Blue Spike to determine if any issues could be resolved without motion practice.  Mr. Higgins then spoke with Mr. Brasher on June 23.  But as Mr. Brasher's declaration admits, Blue Spike still could not confirm whether any documents exist, nor provide a date certain to produce any.  Blue Spike's claim that Audible Magic failed to properly meet-and-confer is an attempt to distract from the issues in dispute, and is blatantly false.

### B. Blue Spike Did Not Agree to Produce All Relevant Documents And Intentionally Chooses Not To Produce Relevant Documents

Blue Spike next states that it "agreed to produce responsive documents and answers to *all* of Audible Magic's requests shortly before Audible Magic filed its motion." Dkt. 1652 at 3. First, Blue Spike refuses to even acknowledge that relevant documents *exist*, so its claim that it agreed to produce them is disingenuous.  All of Blue Spike's responses to-date offered the same "to the extent such documents exist" language with no date certain for production.  It is difficult to believe that now – two months after the deadline to produce documents and almost two years after Blue Spike filed this lawsuit – Blue Spike cannot ascertain what documents exist.  Indeed, claim construction is underway and Audible Magic has not received a single document regarding the accused Blue Spike product, and Blue Spike continues its refusal to produce documents relevant to its claims and Audible Magic's counterclaims.  Second, Blue Spike has still not produced any of the documents that Mr. Brasher indicated Blue Spike may produce.[1]  Audible Magic had no other choice but to seek the Court's assistance in obtaining relevant documents.

It is evident that Blue Spike is intentionally withholding documents.  For example, prior to the July 16 deposition of third party Matthew Ingalls, a Blue Spike, Inc. subcontractor during

---

[1] Contrary to Mr. Brasher's Declaration, the day after Audible Magic filed its motion, Blue Spike produced 172 documents totaling around 3,000 pages for its PLR 4-2 disclosure of extrinsic evidence.  All of these 172 documents are publicly available.  Indeed, Blue Spike produced the four patents-in-suit again along with over 50 other patents filed by Mr. Moskowitz.  The remaining documents in the 4-2 production were almost 100 documents of various dictionaries.

1999-2001, Blue Spike produced four emails relevant to Mr. Ingalls. In other words, when Blue Spike wants to gather and dole out documents, it can do so. It obviously has such documents. Yet, it continues to intentionally withhold the full scope of production to which Audible Magic is entitled. In fact, Mr. Ingalls produced more documents about the history and activities of Blue Spike and Mr. Moskowitz (including 500 pages of correspondence and presentations and historical source code) than Blue Spike or Mr. Moskowitz have produced to date.

### C. Audible Magic Moved to Compel On All Categories of Documents

Blue Spike alleges that "Audible Magic is not asking this Court to compel 13 of the 19 production requests." Dkt. 1652 at 6. That is simply not true. Audible Magic's Motion to Compel clearly states that "[r]ather than step through each category of documents requested by Audible Magic, the following sections address broad categories to which common issues apply." Dkt. 1617, at 7. This is common practice in the Eastern District of Texas and helps to simplify issues for the Court and the parties. *See, e.g., Laserdynamics, Inc. v. Asus Computer Int'l*, 2009 U.S. Dist. LEXIS 3878, *16 (E.D. Tex. 2009). In addition, the Scheduling Order specifically states that "requests for production are unnecessary" and a party may move to compel without ever having served document requests. Dkt. 1332 at 6. Notwithstanding this permission, Audible Magic sent Blue Spike numerous topics of relevant documents and then provided an analysis under relevant case law of why each topic under the six broad categories is relevant. *See* Dkt. 1617 at 7-12. In its Opposition, Blue Spike provided no substantive response as to why it has not produced any of these documents, nor how any of them lack relevance.

### D. Blue Spike's Watermarking Technology is at Issue in This Case

Blue Spike states that "Scott Moskowitz's watermarking technology is not at issue in this case" because "Blue Spike has not made watermarking an issue…." Dkt. 1652 at 5. This is

3

purposefully misleading and incorrect.  Audible Magic's Lanham Act and common law unfair competition claims involve Scott Moskowitz's and Blue Spike's watermarking technology.  *See* Dkt. 1617 at 8.  Blue Spike provides no explanation how this technology is not relevant to Audible Magic's counterclaims.  Further, as explained in Audible Magic's Motion, and unrebutted by Blue Spike, the history of Blue Spike's watermarking business was put at issue in the complaint, and watermarking is referenced as part of the asserted Blue Spike patents.  *Id.*

### E.    Blue Spike Improperly Attempts To Shift Its Obligations To Third Parties

Blue Spike claims that "Audible Magic seeks information regarding third parties that it could more easily get from the source." Dkt. 1652 at 5.  But, as set forth in its motion, Audible Magic is seeking documents that should be in the possession, custody, or control of Blue Spike (e.g. the formation and business activities of Blue Spike; the Giovanni Abstraction machine; watermarking technology;  prosecution of the patents-in-suit from Scott Moskowitz's personal file, etc.).  *See* Dkt. 1617 at 8-11.  If these documents are in the possession, custody, *or control* of Blue Spike, it must produce them.  FRCP 34.  Blue Spike's argument that Audible Magic should spend its resources burdening third parties with subpoenas to obtain documents in Blue Spike's control runs directly afoul of the Federal Rules of Civil Procedure.  *See* FRCP 45(d)(1).

### F.    Audible Magic Did Not Request Duplicative Information

Blue Spike claims that "Audible Magic seeks duplicative information.  Many of Audible Magic's requests relate to interactions between parties to the suit (e.g., Scott Moskowitz, Blue Spike, LLC, and Blue Spike, Inc.)." Dkt. 1652, at 6.  Audible Magic is simply seeking information relevant to its claims and defenses.  To the extent that Blue Spike is complaining about producing multiple copies of documents, Audible Magic would be satisfied by receiving a single set of responsive documents.  To date, it has not received any.  And to the extent that Blue

Spike complains about Audible Magic's document production containing duplications, such complaints are disingenuous. Before discovery began, Audible Magic attempted to negotiate a revised ESI Order with Blue Spike to specifically exclude the production of duplicate documents. Blue Spike rejected this provision. Accordingly, Audible Magic has abided by the Orders in the case regarding document production. Blue Spike has not.

## II.     Blue Spike Fails to Address Its Deficient Interrogatory Objections and Responses

Blue Spike fails to address its deficient interrogatory responses in its Opposition. Thus, Blue Spike waived any argument that its objections and responses are sufficient, and must be ordered to withdraw its improper objections and provide full responses to Interrogatories 6-10. Audible Magic attempted to work with Blue Spike to correct the errors in its objections and responses; Blue Spike first refused and then supplemented with nonsensical answers. Audible Magic attached Blue Spike's Supplemental Responses to its Motion. *See* Dkt. 1617-18. In its supplemental responses, Blue Spike corrected some of its deficiencies. But for Interrogatories 6-10, Blue Spike maintained its objections and did not properly respond. These issues were discussed in the parties' June 3 meet-and-confer and in a follow-up conversation with Mr. Brasher on June 23. Blue Spike maintained its positions, so Audible Magic moved to compel.

## III.    Blue Spike Fails to Address Audible Magic's Request for Sanctions

Blue Spike provides no substantive response to Audible Magic's request for sanctions. Rather, Blue Spike complains about Audible Magic providing too much information in its document production, which conforms to all Local Rules. Audible Magic has been forced to spend its time and resources to attempt to ferret out basic information from Blue Spike. Blue Spike's lack of a substantive response to Audible Magic's Motion highlights the absurdity of Blue Spike's positions. Its conduct should be sanctioned.

Dated: July 30, 2014

By:

        */s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on July 30, 2014.

*/s/ Eric H. Findlay*
Eric H. Findlay
