IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| *Plaintiff*, | § § § | Civil Action No. 12-CV-499-MHS-CMC |
| v. | § § | LEAD CASE |
| TEXAS INSTRUMENTS, INC., *et al.*, | § § § | JURY TRIAL DEMANDED |
| *Defendants*. | § § | |

**PLAINTIFF BLUE SPIKE, LLC'S AND COUNTERDEFENDANTS BLUE SPIKE, INC.'S AND SCOTT MOSKOWITZ'S SUR-REPLY TO THE AUDIBLE MAGIC DEFENDANTS' MOTION TO COMPEL AND MOTION FOR SANCTIONS**

Blue Spike files this sur-reply in order to correct misstatements and inaccuracies in Audible Magic's Reply.

First, Audible Magic failed to *properly* meet and confer. Audible Magic's insistence that it "conducted two official meet and confers" is misleading—any meet and confers between the parties occurred *before* Blue Spike provided supplemental responses. *Contra* Reply, Dkt. 1660 at 1. Two days before Audible Magic filed its motion to compel, Blue Spike provided supplemental responses that Audible Magic agrees "corrected some of [the original] deficiencies." *Id*. at 5. But Audible Magic filed its motion to compel without meeting and conferring anyway, claiming it was justified because there were still responses that "did not properly respond." *Id*. This is not a good faith use of the meet-and-confer process. Nor is this the first time Audible Magic has disregarded the meet-and-confer process immediately after

1

receiving supplemental discovery.[1] Audible Magic's motion runs contrary to the letter and spirit of Local Rule CV-7(h) and should be denied.

Second, Blue Spike agreed to produce and continues to produce documents responsive to Audible Magic's requests. *See* Mot., Dkt. 1617, Ex. 16 (in which Plaintiff's counsel "agree[s] to produce documents to the extent they are non-privileged and in [the relevant parties'] possession, custody, and control.") Blue Spike offered this concession despite its belief that Audible Magic's requests are irrelevant and burdensome (e.g. Audible Magic's request for *all* documents related to Mr. Moskowitz's business activities for the past 24 years). Blue Spike did not expect to have to produce such a massive amount of unrelated discovery, and Audible Magic cannot expect to receive such documents overnight. When Blue Spike filed its opposition to this motion, it noted that it had requested but not received the desired documents. *See* Opp., Dkt. 1652 at 2. Since that time, Blue Spike has received at least 8 banker's boxes full of documents that it is reviewing in preparation for a supplemental production. Audible Magic has unfairly burdened Blue Spike by demanding massive amounts of irrelevant production, some of which is in the hands of third parties, and then insisting on a rush order. Audible Magic then amplifies this burden by refusing to meet and confer and engaging in motion

---

[1] Audible Magic filed its Motion to Strike soon after Blue Spike provided supplemental infringement contentions. *See* Audible Magic's Mot. to Strike, Dkt. 1469. Audible Magic failed to meet and confer, and even informed Blue Spike that it had planned to file its motion regardless of Blue Spike's forthcoming supplemental discovery. *See* Blue Spike's Opp'n, Dkt. 1543.

practice. Audible Magic's motion upsets a functional discovery process and should be denied.

Third, watermarking technology is not at issue in this case. Blue Spike's complaint only mentions watermarking in the background section, merely as context. This background information is history, not a current issue before the court. Audible Magic's request for any and all documents related to all Scott Moskowitz's watermarking endeavors reaches far beyond the scope of this case or references in the patents-in-suit, and needlessly subjects Blue Spike to unnecessary disclosure of its innovative technology. In the spirit of compromise, Blue Spike agreed to produce such documents despite their irrelevancy. However, if the Court decides to provide any guidance on the scope of Audible Magic's discovery requests, Blue Spike asks that production of watermarking documents be disallowed.

Fourth, Blue Spike is not shifting obligations by noting that Audible Magic has not chosen the most efficient means of discovery. *Contra* Reply, Dkt. 1660 at 4. Blue Spike produced what it readily has in its possession, custody, or control and continues to obtain and prepare more documents. Blue Spike is happy to acquire what it can even though Audible Magic could have used other means to more easily obtain the documents it seeks. However, Audible Magic cannot in good faith demand documents Blue Spike does not have readily available and then cry fowl when production is not immediate.

Fifth, Audible Magic mistakenly argues that "Blue Spike fails to address Audible Magic's request for Sanctions." Reply, Dkt. 1660 at 5. Blue Spike directs

3

Audible Magic to pages 6 and 7 of its opposition to Audible Magic's motion. *See* Opp., Dkt. 1652 at 5 ("Sanctions Against Blue Spike Are Unwarranted"). Blue Spike has supplemented its responses; has agreed to produce documents it considers irrelevant to this case; and continues to prepare additional documents for production. Audible Magic, on the other hand, refused to meet and confer, filed its motion two days after receiving supplemental discovery, and ran to the court a second time instead of resolving its issues with Blue Spike directly. Of the two parties, it is not Blue Spike whose actions justify sanctions.

Sixth, Blue Spike believes it has adequately answered Audible Magic's interrogatories, and yet remains willing to continue supplementing its responses. Most or all of Audible Magic's remaining issues with Blue Spike's interrogatory responses could and should have been resolved through further meet and confers. For example,

- **Interrogatory 6:** Blue Spike maintains that it put Audible Magic on notice of the patents-in-suit on the dates listed by the public disclaimer that the patents had been issued. The parties disagree about the sufficiency of those statements. Blue Spike is not withholding any information from Audible Magic.

- **Interrogatory 7:** Blue Spike maintains that its pre-suit investigations relating to infringing products are subject to privilege.

- **Interrogatory 8:** Audible Magic completely misstates Blue Spike's supplemental response to this interrogatory.[2] In an effort to reduce

---

[2] Audible Magic's uses case law to erroneously combat a position Blue Spike did not take in its supplemental response. *Compare* Mot., Dkt. 1617 at 14 *with* Mot., Dkt. 1617, Ex. 17 at 10. Audible Magic's assertions are more confusing because Audible Magic's case citation is incorrect and has nothing to do with patent litigation, discovery, or the Eastern District of Texas. *Compare* Mot., Dkt. 1617 at 14 *with* 2011 U.S. Dist. LEXIS 144281.

4

the burden to both parties, Blue Spike offered to supplement its response to this interrogatory after the number of prior art references was reduced to 40, later this month. Audible Magic disagrees, hoping to force Blue Spike to produce validity contentions for issues that will never come before this court. The parties never met and conferred on this position, and thus Audible Magic raises it for the first time with this Court and with Blue Spike.

- **Interrogatory 9:** Blue Spike cited the prosecution history in which Audible Magic's patent is cited and examined by the patent examiner. The parties never met and conferred on Blue Spike's response. The information was obtained by the inventor through the regular course of investigation in fields relevant to the patents-in-suit.

- **Interrogatory 10:** Blue Spike believes that Audible Magic mistakenly states that the Giovanni Abstraction machine was available at least as late as December 13, 2003. Blue Spike believes Audible Magic intended to write "December 13, **2013**." Blue Spike will supplement its response to show the dates the product was available.

That many or all of these disputes could have been resolved through further meet and confers illustrates the waste that Audible Magic's motion has created. Accordingly, Blue Spike requests that the court dismiss the motion.

## CONCLUSION

Audible Magic's Motion to Compel is unnecessary, burdensome, and an abuse of this Court's local rules. Audible Magic failed to meet and confer, seeks the court's aid regarding documents Blue Spike has already agreed to produce, and asks for sanctions in an effort to bully Blue Spike. Granting Audible Magic's motion would set a dangerous precedent and erode the efficacy of the local rules. Accordingly, Audible Magic's motion should be denied.

Respectfully submitted,


  /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax


*Counsel for Plaintiff Blue Spike LLC and Counterdefendants Blue Spike, Inc. and Scott Moskowitz*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on August 11, 2014.

                                                        /s/ Randall Garteiser