# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, § § § Plaintiff, § § v. § § CLEAR CHANNEL BROADCASTING, INC., § § Defendant. § § § § | Case No. 6:12-CV-499-MHS LEAD CASE<br><br>Case No. 6:12-CV-595-MHS CONSOLIDATED CASE<br><br>**ORAL ARGUMENT REQUESTED**<br>JURY TRIAL DEMANDED |

# DEFENDANT CLEAR CHANNEL BROADCASTING INC.'S
# OPPOSED MOTION TO STRIKE BLUE SPIKE'S INFRINGEMENT CONTENTIONS

**TABLE OF CONTENTS**

                                                                                  **Page**

I.     INTRODUCTION .................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 2

III.   ARGUMENT ........................................................................................................... 4

          A.     Blue Spike's Infringement Contentions Do Not Satisfy P.R. 3-1 .......................... 6

                  1.     Blue Spike Does Not Separately Identify Each Accused Product .............. 6

                  2.     Blue Spike's Amended Infringement Contentions Do Not Satisfy
                        P.R. 3-1(c) Because They Do Not Include Any Source Code
                        Citations ...................................................................................................... 6

                  3.     Blue Spike Has Not Satisfied Its Burden Under P.R. 3-1(d) to
                        Allege Infringement Under the Doctrine of Equivalents ........................... 8

                  4.     Blue Spike Has Not Satisfied Its Burden to Allege An Earlier
                        Priority Date Under P.R. 3-1(e) and 3-2 ...................................................... 8

          B.     All Five Factors Favor Striking Blue Spike's Infringement Contentions............... 9

                  1.     Blue Spike Has Delayed Supplementing Its Contentions For An
                        Unreasonable Amount of Time................................................................... 9

                  2.     Blue Spike Has No Justification For Delaying Nearly Three
                        Months ...................................................................................................... 10

                  3.     Blue Spike Has Not Demonstrated Diligence........................................... 11

                  4.     Clear Channel Has Suffered Unfair Prejudice .......................................... 12

                  5.     Striking the Contentions is Proper Because Leave to Amend Will
                        Not Cure Prejudice .................................................................................... 13

IV.   CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
    359 F. Supp. 2d 558 (E.D. Tex. 2005) .............................................................................. 5, 7

*Computer Acceleration Corp. v. Microsoft Corp.*,
    503 F.Supp. 2d 819 (E.D. Tex. 2007) .............................................................................. passim

*Connectel, LLC v. Cisco Systems, Inc.*,
    391 F. Supp. 2d 526 (E.D. Tex. 2005) .............................................................................. 5, 7, 12

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
    Case No. 6:07-CV-559, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009) ................................. 6

*Garmin Ltd. v. Tomtom, Inc.*,
    Case No. 2:06-CV-338-LED, 2007 WL 2903843 (E.D. Tex. Oct. 3, 2007) ..................... 8

*H-W Tech., L.C. v. Apple, Inc.*,
    Case No. 3:11-CV-651, 2012 WL 3650597 (N.D. Tex. Aug. 2, 2012) ............................ 7

*L.G. Motorsports, Inc. v. NGMCO, Inc.*,
    Case No. 4:11-CV-112, 2013 WL 2543398 (E.D. Tex. June 6, 2013) ............................. 14

*Nike, Inc. v. Adidas Am., Inc.*,
    479 F. Supp. 2d 664 (E.D. Tex. 2007) .............................................................................. 8, 12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ......................................................................................... 8

*UltimatePointer, LLC v. Nintendo Co., Ltd.*,
    Case No. 6:11-CV-496-LED (E.D. Tex. Dec. 3, 2013) .................................................... 5, 7, 10

**RULES**

Patent Rule 3-1 .......................................................................................................................... passim

Patent Rule 3-1(b) ..................................................................................................................... passim

Patent Rule 3-1(c) ..................................................................................................................... passim

Patent Rule 3-1(d) ..................................................................................................................... 1, 8, 15

Patent Rule 3-1(e) ..................................................................................................................... 1, 6, 8, 15

Patent Rule 3-2 .......................................................................................................................... 8

Patent Rule 3-2(b) ..................................................................................................................... 8, 9, 15

Patent Rule 3-2(c) ..................................................................................................................... 9

Patent Rule 3-6(b) ..................................................................................................................... 14

Defendant Clear Channel Broadcasting, Inc. ("Clear Channel") respectfully moves to strike Plaintiff Blue Spike, LLC's ("Blue Spike") Initial and Amended Infringement Contentions, served February 26 and April 16, 2014, respectively, for failure to comply with Patent Rule ("P.R.") 3-1.

## I. INTRODUCTION

Blue Spike has failed to satisfy its obligations with respect to Patent Rule 3-1. The Patent Rules exist to "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.,* 503 F.Supp. 2d 819, 822 (E.D. Tex. 2007). First, pursuant to P.R. 3-1(b), Blue Spike failed to identify with specificity and provide a claim chart for each accused product. The charts assert that the "Media Monitors Service" infringes, but Blue Spike cites evidence for a separate product, MediaBase, leaving uncertainty as to whether this second product is also accused. Second, Blue Spike has failed to provide adequate charts, as required by P.R. 3-1(c), because it has simply paraphrased the claim language without explaining how the accused product satisfies each element of each claim. Third, pursuant to P.R. 3-1(d), Blue Spike has not provided adequate detail to assert the doctrine of equivalents. Finally, Blue Spike has failed to properly assert a priority date earlier than September 7, 2000, in violation of P.R. 3-1(e). Blue Spike has not identified an earlier date or any evidence that would support an earlier claim.

Blue Spike has already had two opportunities to provide adequate infringement contentions, yet they remain deficient. In the first instance, rather than citing to evidence, Blue Spike relied upon "information and belief" for the majority of claims, and asserted the doctrine of equivalents only on the cover page. In the second attempt, Blue Spike failed to remedy any deficiencies. Blue Spike simply deleted the phrase "information and belief" and moved the boilerplate doctrine of equivalents language from the cover page into the first element of each

claim. Clear Channel offered to provide Blue Spike a *third* opportunity to provide a basis for its infringement allegations against Clear Channel, but Blue Spike continues to delay.

For nearly five months, Blue Spike has ignored letters, emails, and phone calls. Blue Spike has repeatedly refused to confirm a date that it would substantively address Clear Channel's concerns. Blue Spike claimed it needed to review the source code a second time, and then cancelled the review with only one day's notice. Blue Spike did not reschedule this for another three weeks, and then failed to request the additional print-outs it claimed to need. This delay is unreasonable and unjustifiable. It has prejudiced Clear Channel's ability to prepare its claim construction positions and defenses. This prejudice has become incurable because discovery and claim construction are underway, Clear Channel is now required to reduce its asserted prior art, and expert reports will begin soon. Clear Channel, however, does not have adequate notice regarding Blue Spike's theories of infringement. Therefore, Clear Channel requests that this Court strike both Blue Spike's Initial and Amended Infringement Contentions without leave to amend.

## II.     STATEMENT OF FACTS

Blue Spike, LLC brought this suit against Clear Channel on September 9, 2012, alleging that Clear Channel infringes four patents: U.S. Patents Nos. 7,346,472 ("the '472 patent"), 7,660,700 ("the '700 patent"), 7,949,494 ("the '494 patent"), and 8,214,175 ("the '175 patent") (collectively, the "Asserted Patents"). (Case No. 6:12-CV-595 at Dkt. 1 at Introduction.) On February 26, 2014, Blue Spike served its Initial Infringement Contentions (the "Initial Contentions"), alleging infringement of 114 claims. (Declaration of Ryan K. Yagura in Support of Clear Channel's Motion to Strike ("Yagura Decl.") ¶ 2, Ex. A[1].)

---

[1] All exhibits are attached to the Yagura Decl.

On March 26, Ryan Yagura, counsel for Clear Channel, sent a letter to Blue Spike detailing the deficiencies in the Initial Contentions. (*Id.* at ¶ 3, Ex. B.) Of the asserted claims, 95 (of 114) relied upon "information and belief" to assert infringement. (*Id.*) Clear Channel requested supplemental contentions by April 4, and requested an explanation if Blue Spike would not comply with this date. (*Id.*) Clear Channel did not receive any response to this letter by the requested date. (Yagura Decl. at ¶ 3.) Clear Channel (with other defendants) conferred with Blue Spike in early April, and Blue Spike served its Amended Infringement Contentions (the "Amended Contentions") on April 16, 2014, alleging infringement of 32 claims. (Yagura Decl. ¶ 4, Ex. C.) These contentions remove any reference to "information and belief," but include only one additional (but cumulative) exhibit. (*Id.*) In both the Initial and Amended Contentions, along with the Complaint, Blue Spike identified only a one system ("the Media Monitors Service") as infringing; however, the cover refers to "RCS monitoring and verification software, systems and technology." (Exs. A and C; Case No. 6:12-CV-595 at Dkt. 1.)

On May 20 and 21, two attorneys for Blue Spike, Ian Ramage and Kirk Anderson, inspected the source code for the Media Monitors and MediaBase products. (Yagura Decl. ¶ 5.) On June 10, Clear Channel produced Blue Spike's selected print-outs of the source code in compliance with the parties' agreed Protective Order (Dkt. No. 1562). (*Id.* at ¶ 6, Ex. D.) On June 23, Sarah Pfeiffer, counsel for Clear Channel, sent a letter to Randall Garteiser regarding Blue Spike's failure to meet its P.R. 3-1 obligations. (*Id.* at ¶ 7, Ex. E.) Clear Channel requested supplemental contentions by July 7, or a detailed explanation for why Blue Spike would not comply. (*Id.*) Blue Spike did not provide any response. (*Id.* at ¶ 7.)

On July 3, Ms. Pfeiffer requested a meet-and-confer with lead and local counsel to discuss several outstanding discovery issues. (*Id.* at ¶ 8, Ex. F.) After Mr. Garteiser eventually

3

stated he was available on July 11, Ms. Pfeiffer circulated a time and dial-in number for the call. (*Id.* at ¶ 9) Mr. Garteiser did not respond and did not join the call at the appointed time. (*Id.*) Ms. Pfeiffer then rescheduled the call, and Mr. Yagura, Ms. Pfeiffer, and Mr. Garteiser participated in the telephonic meet-and-confer. (*Id.* at ¶¶ 9-10, Ex. G.) During the call, counsel for Clear Channel informed Mr. Garteiser that because Blue Spike planned to inspect the code again on July 15, Clear Channel would allow Blue Spike until July 25 to provide supplemental infringement contentions. (*Id.* at ¶ 10.) Mr. Garteiser indicated on the phone that Blue Spike would provide pinpoint source code citations in supplemental infringement contentions, but refused to agree to a date-certain for supplementing. (*Id.* at ¶¶ 10-11, Ex. H at 2.) On July 14, Mr. Anderson cancelled his July 15 source code review and requested to move the inspection to August. (*Id.* at ¶ 12, Ex. I.)

On July 25 and July 28, Ms. Pfeiffer attempted to call Mr. Garteiser regarding a number of issues, including the contentions. (*Id.* at ¶ 13.) Mr. Garteiser did not return her calls. (*Id.*) On July 28, Ms. Pfeiffer sent an email informing Blue Spike that because Clear Channel had not received supplemental contentions, Clear Channel considered the issue ripe for motion practice. (Ex. J.) Blue Spike did not provide a response regarding the contentions, though did request a second source code inspection in August. (*Id.* at ¶ 14, Ex. I.) When coordinating the inspection, Blue Spike would not provide a date to supplement its contentions. (Ex. I.) On August 5, Kirk Anderson inspected the source code. (Yagura Decl. at ¶ 15.) Clear Channel did not receive any requests for additional source code print-outs or a date by which Blue Spike would supplement its contentions before filing this motion. (Yagura Decl. at ¶ 16.)

## III. ARGUMENT

The Court's Patent Rules are designed to "further the goal of full, timely discovery and to provide all parties with adequate notice and information with which to litigate their cases, not to

4

create supposed loopholes through which parties may practice litigation by ambush." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 824 (E.D. Tex. 2007) (citations omitted). "The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun." *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). Compliance with P.R. 3-1 requires disclosure of "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 527-28 (E.D. Tex. 2005).

The requirements of the Patent Rules of this district are well known. Patent Rule 3-1(b) requires that each accused product be identified separately for each claim. *See* P.R. 3-1(b). Patent Rule 3-1(c) requires "[a] chart identifying *specifically* where *each* element of *each* asserted claim is found within *each* Accused Instrumentality." *See* P.R. 3-1(c) (emphasis added); *see also Computer Acceleration Corp.*, 503 F. Supp. 2d at 824 (noting that "the requirement to provide a claim chart for each accused product is crystal clear"). A plaintiff must do more than just chart generic categories of products without any indication of where any elements of the asserted claims can be found in the accused products. *See Connectel, LLC*, 391 F. Supp. 2d at 538. Once a plaintiff has reviewed the defendant's source code, it must supplement its infringement contentions to include pinpoint source code citations. *See UltimatePointer, LLC v. Nintendo Co., Ltd.,* Case No. 6:11-CV-496-LED, 2013 WL 6253767, at *3 (E.D. Tex. Dec. 3, 2013) (requiring plaintiff to amend infringement contentions to include pinpoint citations to source code within 10 days of order).

### A.     Blue Spike's Infringement Contentions Do Not Satisfy P.R. 3-1

Despite having multiple opportunities and nearly two years after filing the Complaint, Blue Spike has failed to meet its burden to properly accuse products of infringement. For the reasons discussed below, Blue Spike has failed to meet the requirements of Patent Rules 3-1(b) through 3-1(e).

#### 1.     Blue Spike Does Not Separately Identify Each Accused Product

According to P.R. 3-1(b), a plaintiff must separately chart each product it accuses of infringement. *See* P.R. 3-1(b). "The requirement to provide a claim chart for each accused product is crystal clear." *Computer Acceleration Corp.*, 503 F. Supp. 2d at 824. Blue Spike's Amended Contentions (and Initial Contentions) only identify "the Media Monitors Service." The cited exhibits, however, also refer to another RCS product, MediaBase. (*See, e.g.,* Ex. C at 4.) Blue Spike has not satisfied its obligation to identify and chart each accused product if Blue Spike intends to accuse other products. "A party may not blindly accuse every product a defendant produces and expect to narrow its claims at its own convenience." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Case No. 6:07-CV-559, 2009 WL 81874, at *5 (E.D. Tex. Jan. 12, 2009). At this point, Clear Channel is left to guess whether MediaBase is actually accused, or whether Blue Spike is simply citing to additional information related to RCS, the company that operates both products. Because Blue Spike has had two years to determine which products it is accusing, Blue Spike's contentions should be limited to the only named product—Media Monitors.

#### 2.     Blue Spike's Amended Infringement Contentions Do Not Satisfy P.R. 3-1(c) Because They Do Not Include Any Source Code Citations

Patent Rule 3-1(c) requires, for each instrumentality, a "chart identifying where each element of each asserted claim is found." P.R. 3-1(c). "Plaintiff has the burden of providing

6

infringement contentions that identify specifically and in detail where each claim element is found in the accused products." *H-W Tech., L.C. v. Apple, Inc.,* Case No. 3:11-CV-651, 2012 WL 3650597, at *5 (N.D. Tex. Aug. 2, 2012) (citations and quotations omitted). Blue Spike's Initial and Amended contentions "mimic the claim language of the patents-at-issue, rather than explaining how the accused products infringe." *Connectel, LLC*, 391 F. Supp. 2d at 527. As shown in Exhibits A and C, Blue Spike paraphrases the claim language without sufficient explanation. For example, claim 5 of the '494 Patent requires that the "stored abstracts are derived from one of a cognitive feature or a perceptible characteristic." (Ex. C at 71.) The cited evidence refers to a "fingerprinting" system, but Blue Spike does not identify how this fingerprint technology relies upon a cognitive feature or perceptible characteristic, or how the accused product stores or derives an "abstract." (*Id.*) Claim 11 of the '175 Patent requires a processor that "is programmed or structured to generate a digital reference abstract." (Ex. C at 7.) But the chart does not identify any specific programs, structures, or algorithms that perform this function. (*Id.*) These are just two examples that show how, throughout the claims charted in Exs. A and C, Blue Spike parrots the claim language without specifying where each element is present in the Media Monitors Service. The infringement contentions must "provide defendants with notice of infringement beyond that which is provided by the mere language of the patent." *Connectel, LLC*, 391 F.Supp. 2d at 527.

To achieve the level of specificity the Patent Rules require, courts in this jurisdiction have required plaintiffs to include source code citations. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 825 (striking contentions against a product that did not include source code citations, despite access to the source code); *see also UltimatePointer, LLC,* 2013 WL 6253767 at *3. This Court has recognized that once a plaintiff has access to the code, it should supplement its contentions to "better inform defendants as to its infringement contentions." *Am. Video Graphics,*

7

*L.P.,* 359 F.Supp. 2d at 560-561. Clear Channel has provided Blue Spike access to source code for both Media Monitors and MediaBase. Blue Spike refuses to provide a date by which it will supplement its contentions to comply with this requirement. (Ex. I.) Therefore, both the Initial and Amended Contentions under P.R. 3-1(c) are insufficient and should be stricken.

### 3. Blue Spike Has Not Satisfied Its Burden Under P.R. 3-1(d) to Allege Infringement Under the Doctrine of Equivalents

Patent Rule 3-1(d) requires a plaintiff to describe in detail, for each element of each asserted claim, its position for both literal infringement and the doctrine of equivalents. *See Garmin Ltd. v. Tomtom, Inc.,* Case No. 2:06-CV-338-LED, 2007 WL 2903843, at *8 (E.D. Tex. Oct. 3, 2007); *see also Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 670 (E.D. Tex. 2007). Boilerplate language does not meet the disclosure goals of the Patent Rules, which serve to "require the parties to crystallize their theories of the case early in the litigation." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). In both sets of contentions, Blue Spike alleges the doctrine of equivalents through mere boilerplate language. In the Initial Contentions, this language appeared only on the cover pleading, not in the claim charts at all. (Ex. A at 6.) In the Amended Contentions, only the first element of each claim states that the "Media Monitors Service infringes [the asserted patent at issue] either literally or under the doctrine of equivalents." (Ex. C at, *e.g.*, 3-7 (claim 8 of the '175 Patent).) Blue Spike has failed to identify whether *each element* of *each claim* is infringed under the doctrine of equivalents, thus Blue Spike's assertion of the doctrine of equivalents should be stricken.

### 4. Blue Spike Has Not Satisfied Its Burden to Allege An Earlier Priority Date Under P.R. 3-1(e) and 3-2

Patent Rule 3-1(e) requires the plaintiff to identify the priority date for each asserted claim. Blue Spike stated that the Asserted Patents were "entitled to a priority date ***no later than*** September 7, 2000." (Ex. A at 3 (emphasis added).) Patent Rule 3-2(b) requires the plaintiff to

8

produce all documents evidencing the conception and reduction to practice "created on or before the date of application." P.R. 3-2(b). Although Blue Spike identified Bates ranges for P.R. 3-2(c), it did not identify any Bates ranges for P.R. 3-2(b), and stated it was unaware of any responsive documents. (Ex. A at 4.) Blue Spike did not include a specific date or identify evidence served pursuant to P.R. 3-2(b) to provide a basis for a priority date earlier than September 7, 2000. As such, the phrase "no later than September 7, 2000" must be stricken, and Blue Spike must be limited to a priority and invention date no earlier than September 7, 2000. Further, Blue Spike must be precluded from any later attempt to swear behind prior art.

### B. All Five Factors Favor Striking Blue Spike's Infringement Contentions

Courts in the Eastern District consider five optional factors when deciding to strike infringement contentions, including: (i) the length of delay, (ii) the reason for the delay, (iii) the diligence of the offending party, (iv) the danger of unfair prejudice, and (v) the importance of the matter and availability of lesser sanctions. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 822. The Court should strike Blue Spike's infringement contentions against Clear Channel because all factors favor striking the contentions due to Blue Spike's unexplained and prolonged failure to supplement its contentions.

#### 1. Blue Spike Has Delayed Supplementing Its Contentions For An Unreasonable Amount of Time

Blue Spike has delayed providing adequate contentions for months. In software cases, courts have "recognized the pragmatic limitation on detailed infringement contentions when plaintiffs do not have the necessary access to non-public software." *Computer Acceleration Corp.*, 503 F. Supp. 2d at 824. In this case, however, Blue Spike has had access to the source code. Blue Spike first inspected the source code in *May*—nearly three months before Clear Channel filed this motion. Blue Spike received source code print-outs in early June. Blue Spike then

9

conducted a second review on August 5. Blue Spike, however, has not supplemented its contentions with regard to any of the deficiencies. At a minimum, Blue Spike could have corrected the issues related to identifying each of the accused products, the doctrine of equivalents, and the priority date when it served the Amended Contentions in April, but it did not.

The length of this delay is far beyond what this Court has previously allowed for a plaintiff to add source code citations. *See, e.g., UltimatePointer, LLC,* 2013 WL 6253767 at *3 (providing plaintiff 10 days to serve amended contentions). Further, this delay has extended into the discovery period, the claim construction process, and the narrowing of prior art, when the point of these contentions is to "streamline the discovery process." *Computer Acceleration Corp.*, 503 F. Supp. 2d at 823. Therefore, the delay of nearly three months (or longer for the non-source code related deficiencies) is unreasonable and favors striking Blue Spike's contentions.

        **2.**      **Blue Spike Has No Justification For Delaying Nearly Three Months**

Blue Spike has offered no explanation or justification for its delay. Although courts are willing to accommodate time for the plaintiff to review material within a defendant's control, such as source code, where a defendant has, "without wasting the court's time, voluntarily turned over the software code," courts have found that this factor favors striking insufficient contentions. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 824. Clear Channel permitted inspection on May 20-21. On June 10, Clear Channel provided print-outs of Blue Spike's selected portions of source code. (Ex. D.) Clear Channel agreed to allow Blue Spike until July 25 to supplement to accommodate a second on-site source code inspection. (Ex. H.) *The day before* the agreed-upon inspection, Blue Spike cancelled, without justification. (Ex. I.)

The issues of identifying the products, articulating the doctrine of equivalents allegation, and alleging a priority date do not rely on information outside of Blue Spike's control. Thus, there is no

reason Blue Spike could not have met the standards of P.R. 3-1 when it first served the contentions in February, or at least when it provided the Amended Contentions in April. Therefore, this factor weighs in favor of striking the contentions because Blue Spike has not provided any reason that would justify this unreasonable delay.

### 3. Blue Spike Has Not Demonstrated Diligence

Blue Spike has not demonstrated any diligence in supplementing its contentions with regard to any of the deficiencies described above. Rather, Blue Spike has repeatedly failed to respond to inquiries and delayed source code inspections. After the May 20 and 21 inspection, Clear Channel allowed Blue Spike one month to supplement its contentions to include source code citations and correct other deficiencies, but received nothing. After sending a letter on June 23, Clear Channel allowed another two weeks to supplement. Clear Channel still received nothing from Blue Spike. On July 11, Clear Channel again offered two weeks to supplement the contentions following a planned inspection. Rather than work to fulfill its requirements under P.R. 3-1, Blue Spike cancelled its source code inspection, and yet another deadline passed without any response.

When rescheduling the second inspection, Blue Spike refused to commit to provide supplemental contentions, even when Clear Channel offered additional time to accommodate a second print-out request. (Ex. I.) Blue Spike did not request any additional print-outs before Clear Channel filed this motion. (Ex. J.) Since the first letter on March 26, Blue Spike has let deadlines pass without response, and still, after two inspections, will not provide a date-certain to supplement its contentions. This behavior shows that Blue Spike has not exercised diligence; therefore this factor favors striking Blue Spike's contentions.

11

### 4. Clear Channel Has Suffered Unfair Prejudice

There has already been significant unfair prejudice and there is a high risk for additional prejudice. Blue Spike's conduct during the meet-and-confer process demonstrates that Blue Spike is slow to respond to requests and does not follow through on its promises and obligations. Discovery and claim construction are well underway, but Blue Spike refuses to provide the information that Clear Channel needs to properly defend itself.

Blue Spike's failure to properly identify and chart the accused products pursuant to P.R. 3-1(b) and (c) has prejudiced Clear Channel's ability to develop its defenses. Clear Channel "should not have to guess" how Blue Spike plans to assert its claims against the Media Monitors and MediaBase products. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 823. At this stage, Clear Channel and the other defendants have provided extremely detailed invalidity contentions, yet Clear Channel still has no understanding of how Blue Spike will allege infringement, or even which products are accused. *See Connectel, LLC*, 391 F. Supp. 2d at 528 ("Because of these deficiencies, Cisco is unable to crystalize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction."). Where the plaintiff has not provided adequate detail in its infringement contentions, this factor favors striking the contentions. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 823.

Blue Spike's failure to provide a description of its doctrine of equivalents allegation has also prejudiced Clear Channel, given how far this case has progressed. *See Nike, Inc.*, 479 F. Supp. 2d at 669-670 (noting that although Nike's initial infringement contentions included two paragraphs related to the doctrine of equivalents, that did not show that the defendant "would not now be unfairly prejudiced by Nike's more detailed claims under the doctrine of equivalents"); *see also Connectel, LLC*, 391 F. Supp. 2d at 527 ("[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the

12

Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond." ).

Blue Spike's refusal to specifically identify the earliest priority date it will claim will also cause prejudice. The defendants are required to limit their asserted prior art references on August 22. (Dkt. 1332 at 2) But Blue Spike has not properly identified what it claims as the earliest priority date for the Asserted Patents (asserting only that it will be "no later than" September 7, 2000). Blue Spike might attempt to swear behind certain references. Clear Channel would generally account for this type of assertion when selecting prior art, if Blue Spike had properly identified its earliest claimed priority date. Further, how Blue Spike applies the claim terms to the accused products might also affect Clear Channel's selection of art. Blue Spike's deficient contentions do not allow Clear Channel to compare Blue Spike's application of the claims to the prior art. The briefing on this motion will not be complete until after August 22, thus Clear Channel will already have suffered prejudice due to Blue Spike's failure to comply with P.R. 3-1.

### 5. Striking the Contentions is Proper Because Leave to Amend Will Not Cure Prejudice

Finally, although Blue Spike may argue that it should be permitted a third attempt to correct its contentions, this would not cure the prejudice to Clear Channel. The Eastern District's Patent Rules do not "permit a party to ambush an opponent" with deficient contentions late in the game. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 824. Blue Spike "was on notice of the rules, had plenty of time to comply, and had sufficient information to file a proper infringement contention and chart," but did not. *Id.* at 825. Therefore, striking the contentions is appropriate. *Id.* ("The court finds no violation of due process in striking this contention.").

13

Discovery has been open for months, claim construction is in progress, the defendants will soon narrow their selection of prior art, and expert reports are quickly approaching. Clear Channel will already have suffered significant prejudice that cannot be remedied as more deadlines pass.

Blue Spike will likely argue that striking its contentions is a severe remedy, as the contentions are meant to provide the basis for its case. But this is precisely why Clear Channel needs adequate notice of Blue Spike's infringement contentions.

> "Allowing such a scanty and inadequate infringement contention disclosure to stand would deter neither game-playing nor actual violation of the rules - to the contrary it would actually discourage the voluntary exchange of information. Courts rely upon, and must even insist upon, the professionalism and good faith cooperation of attorneys if they are not to be bogged down in micro-managing discovery disputes. This factor weighs heavily in favor of striking the contention."

*Computer Acceleration Corp.*, 503 F. Supp. 2d at 825. Blue Spike has already made one attempt at amending, and did not correct any of the deficiencies discussed here. Thus, it seems unlikely that Blue Spike would comply with the Patent Rules on its third attempt.

Further, the delay in receiving the supplemental contentions will mean that more time and deadlines have passed. A continuance is not practical because there are many other defendants, and it would not be efficient to place Clear Channel on a separate, later track than the other defendants. Finally, Blue Spike will not be able to satisfy the requirement of good cause for amendment under P.R. 3-6(b). Good cause requires a lack of prejudice, lack of undue delay, and, most importantly, diligence. *See L.G. Motorsports, Inc. v. NGMCO, Inc.*, Case No. 4:11-CV-112, 2013 WL 2543398, at *6 (E.D. Tex. June 6, 2013) ("The good cause standard focuses on the diligence of the party seeking a modification of the scheduling order."). As described above, Blue Spike cannot satisfy any of these requirements. A lesser sanction would not cure the prejudice to Clear Channel. Therefore, this factor favors striking Blue Spike's contentions.

## IV.    CONCLUSION

Blue Spike has failed to satisfy its obligations with respect to several of this Court's Patent Rules.  First, pursuant to P.R. 3-1(b), Blue Spike failed to identify with specificity and provide a claim chart for each accused product, providing a chart only for the "Media Monitors Service."  Blue Spike confusingly blends in evidence related to a separate product, MediaBase, to camouflage missing citations in its infringement charts.  Second, Blue Spike has failed to provide charts with source code citations for either product, as required by P.R. 3-1(c).  Third, pursuant to P.R. 3-1(d), Blue Spike has failed to provide adequate notice regarding its allegation of infringement under the doctrine of equivalents.  Finally, Blue Spike has failed to provide detail regarding any claim to a priority date earlier than September 7, 2000, in violation of P.R. 3-1(e) and P.R. 3-2(b).

Blue Spike has unreasonably delayed complying with the Patent Rules without justification.  Blue Spike has never exercised diligence throughout the meet-and-confer process, including ignoring communications, cancelling source code inspections, and failing to timely request additional print-outs.  Nearly two years after filing the case and several months after these disclosures were due, Blue Spike's failure to provide sufficient infringement contentions has caused significant prejudice to Clear Channel.  The case is several months into discovery, claim construction has begun, and the defendants will have to narrow their selection of prior art without knowing what Blue Spike may allege as the priority date.  Clear Channel therefore requests that this Court strike Blue Spike's Initial and Amended Contentions with regard to P.R. 3-1(b), 3-1(c), 3-1(d), and 3-1(e) without leave to amend.

Dated:  August 13, 2014                     */s/ Ryan K. Yagura*

                                                      Ryan K. Yagura
                                                     ryagura@omm.com - TX S.B. #240755933

    Nicholas J. Whilt
    nwhilt@omm.com – CA S.B. #247738
    O' MELVENY & MYERS LLP
    400 South Hope Street
    Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
    Facsimile:  (213) 430-6407

    Sarah A. Pfeiffer
    spfeiffer@omm.com – CA S.B. #278205
    O' MELVENY & MYERS LLP
    610 Newport Center Drive
    Newport Beach, California 92660
    Telephone:  (949) 823-6900
    Facsimile:  (949) 823-6994

    *Attorneys for Clear Channel Broadcasting, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 13, 2014, all counsel of record who have consented to electronic service were served with a copy of this document via the Court's ECF system, pursuant to Local Rule CV-5(a)(3).

                                            */s/ Ryan K. Yagura*
                                            Ryan K. Yagura

## **CERTIFICATE OF CONFERENCE**

      I hereby certify that counsel for Defendant has complied with the meet and confer requirements of Local Rule CV-7(h).  This motion is opposed.  The parties engaged in a personal telephonic conference, including lead and local counsel, on July 11, 2014, with the following participants: Randall Garteiser for Plaintiff and Ryan Yagura and Sarah Pfeiffer for Defendant.  No agreement was reached because the parties disagreed as to the merits.  Discussions have ended at an impasse.

                                            */s/ Ryan K. Yagura*
                                            Ryan K. Yagura