# Exhibit B

## O'MELVENY & MYERS LLP

| | 400 South Hope Street | |
|---|---|---|
| BEIJING | Los Angeles, California  90071-2899 | SAN FRANCISCO |
| BRUSSELS | | SEOUL |
| CENTURY CITY | TELEPHONE  (213) 430-6000 | SHANGHAI |
| HONG KONG | FACSIMILE  (213) 430-6407 | SILICON VALLEY |
| JAKARTA† | www.omm.com | SINGAPORE |
| LONDON | | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |
| NEW YORK | | |

March 26, 2014

WRITER'S DIRECT DIAL
(213) 430-6189

**VIA E-MAIL**

WRITER'S E-MAIL ADDRESS
ryagura@omm.com

Randall Garteiser, Esq.
GARTEISER HONEA, PC
218 North College Avenue
Tyler, Texas 75702

    Re: *Blue Spike, LLC v. Clear Channel Broadcasting, Inc., Case No. 6:12-cv-595 (consolidated with Case No. 6:12-cv-499), E.D. Tex.*

Dear Randall:

  This letter identifies the deficiencies in Blue Spike's Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") as to defendant Clear Channel Broadcasting, Inc. ("Clear Channel"). There are many problems with Blue Spike's Infringement Contentions that collectively reflect Blue Spike's lack of a reasonable basis to assert many of the claims against Clear Channel. Indeed, Blue Spike could not even identify the infringing Clear Channel products with any specificity, and instead accused "Clear Channel Broadcasting's Media Monitors and RCS monitoring and verification software, systems, and technology." Moreover, Blue Spike admits that it has no proof for at least 95 of the 114 claims it asserted against Clear Channel because its contentions include only boilerplate "information and belief" statements followed by the need for discovery without citing to any factual support for those claims or elements. As such, Blue Spike's Infringement Contentions fail to give Clear Channel fair notice of Blue Spike's infringement positions and allegations and do not comply with the local Patent Rules.

  The specific issues highlighted below address information that Clear Channel was entitled to receive from Blue Spike on February 26, 2014. We have set forth in this letter dates by which Blue Spike should remedy the defects in its Infringement Contentions. If Blue Spike does not remedy these defects in full, then Clear Channel will be forced to seek appropriate relief from the Court. Specifically, Clear Channel may move to strike Blue Spike's deficient Infringement Contentions, move to compel proper Infringement Contentions, move to strike or exclude future expert witness reports or other documents that go beyond the scope of the Infringement Contentions, or take other appropriate action.

† In association with Tumbuan & Partners

O'MELVENY & MYERS LLP

March 26, 2014 - Page 2

### I. Blue Spike Must Identify the Accused Clear Channel Products With Specificity

Blue Spike's Infringement Contentions identify no specific products of infringement as required by P.R. 3-1(b).  Instead, they merely allege that "Clear Channel Broadcasting's Media Monitors and RCS monitoring and verification software, systems, and technology" as the infringing instrumentality.  *See* Infringement Contentions, Ex. A, at 1.  Given the lack of proof for many of the claim elements asserted by Blue Spike, Clear Channel cannot identify which accused products contain the allegedly infringing "software, systems, and technology"—the Media Monitors' and RCS's websites identify many different types of products and services.  *See* http://www.mediamonitors.com/ and http://rcsworks.com/en/products/default.aspx.  The failure to identify specifically the allegedly infringing products or services indicates a lack of Rule 11 basis to bring this suit.  Moreover, it is not Clear Channel's burden to search for and identify for Blue Spike which products should be accused of infringement based on overbroad and unsupported allegations.  *Keranos, LLC v. Silicon Storage Tech., Inc.*, 2013 U.S. Dist. LEXIS 145194, at *14 (E.D. Tex. Aug. 2, 2013); *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *15 (E.D. Tex. Jan. 12, 2009) ("A party may not blindly accuse every product a defendant produces and expect to narrow its claims at its own convenience."). Further, although the title cell of the charts state the claims are being applied to "Clear Channel Broadcasting's Media Monitors and RCS monitoring and verification software, systems, and technology,"  the actual comparison includes only "Media Monitors Service."  No products or services are otherwise specifically named or charted.  If Blue Spike intends to accuse specific Media Monitors or RCS services or products, it must chart *each* accused product or service against *each* claim element.  The Patent Rules "demonstrate high expectations as to plaintiff's preparedness before bringing suit" and it is clear that Blue Spike was not prepared.  *See id.*

Accordingly, Blue Spike's Infringement Contentions fail to comply with P.R. 3-1(b).  Blue Spike does not specifically identify a single Clear Channel accused product based on any evidence other than "information and belief."  As a result, and as further addressed below, its claim chart fails to provide any evidence of what parts of each accused product correspond to each claim element.

Blue Spike must identify each Clear Channel accused product with specificity as required by P.R. 3-1(b) by no later than April 4, 2014.

### II. Blue Spike's Claim Charts and Infringement Allegations Fail to Comply with P.R. 3-1(c)

Blue Spike's claim charts fall woefully short of the high standard required by the Eastern District of Texas.  For at least 95 of the 114 claims Blue Spike asserts against Clear Channel, Blue Spike alleges infringement for at least one element of those 95 claims on nothing more than "information and belief."  *See, e.g., Davis-Lynch, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *7 ("A party may not rely on vague, conclusory language or simply mimic the language of the claims."). Certain claim elements have been improperly grouped within the charts in an attempt to mask elements which are accused on nothing more than "information and belief."  Such claims include

O'MELVENY & MYERS LLP

March 26, 2014 - Page 3

at least claims 1 and 6 of the '472 patent, claims 11 and 28 of the '494 patent, and claims 1 and 18 of the '700 patent.  Accordingly, Blue Spike has no reasonable basis to assert these 95 claims against Clear Channel.  The table below summarizes the deficient claims:

| Patent | Asserted Claims | Claims Asserted on Information and Belief |
|---|---|---|
| 175 | Claims 1-19 | 1-10, 12-19 |
| 472 | Claims 1-14 | 1-2, 6-7, 9-10, 12-14 |
| 494 | Claims 1-29 | 5-11, 13-23, 25-26, 28 |
| 700 | Claims 1-52 | 1, 4-18, 21-40, 42-52 |

The Court's March 7th Order requires Blue Spike to assert no more than 32 total claims among the four patents-in-suit by April 4, 2014.  Blue Spike, however, has no reasonable basis to assert any of the 95 claims where it has no evidence other than its own "information and belief" for required elements.  Thus, to the extent Blue Spike does not withdraw all claims that include allegations against Clear Channel based only on "information and belief," Clear Channel will move to strike those contentions.

### III.   Blue Spike is Precluded From Claiming an Earlier Priority Date

Blue Spike's disclosure under P.R. 3-1(e) that the priority date of the patents-in-suit is "no later than September 7, 2000," is not sufficient under the rules.  Blue Spike has no evidence that the patents-in-suit are entitled to any earlier priority date.  Accordingly, Clear Channel will move to strike any attempt by Blue Spike to later introduce an earlier priority date.

### IV.   Blue Spike is Precluded From Arguing For A Conception and Reduction to Practice Date Earlier than September 7, 2000

Blue Spike's Infringement Contentions allege that it has no "documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to P. R. 3-1(e)."  Accordingly, Blue Spike cannot later attempt to claim a date, or produce documents in support, of conception or reduction to practice prior to September 7, 2000.  If Blue Spike has such documents it must produce them immediately.  Clear Channel will oppose any attempt to do so later and will move to exclude any such documents belatedly produced.

### V.   Blue Spike Must Comply With E-Discovery Order

Blue Spike's production, submitted with its Infringement Contentions do not comply with the default Order Regarding E-Discovery (Dkt. 1136) entered in this case.  Although the parties are negotiating a replacement ESI order, for now, the standard order is controlling in this case.  Section 5.A requires each party to produce its documents as single-page TIFF files.  Further, if the documents exist in text-searchable format, whether as an original or converted for this litigation, the party shall produce the text-searchable format (Section 5.B).  Blue Spike's

O'MELVENY & MYERS LLP

March 26, 2014 - Page 4

productions have consisted of multi-page PDF files, none of which have been text searchable. Please immediately reproduce Blue Spike's previous productions in a manner that is compliant with the Court's e-discovery order.

\*   \*   \*

Ultimately, either Blue Spike did not have a proper Rule 11 basis for its infringement allegations, or it is withholding the specifics of its infringement theories from Clear Channel to gain a tactical advantage. Please confirm that Blue Spike will supplement its Infringement Contentions by April 4, 2014, when it provides its reduced number of claims. Please also confirm that Blue Spike will withdraw its assertion of any claims relying upon "information and belief." Finally, please confirm that Blue Spike will reproduce its previous document productions, and all future document productions, as single-page, text-searchable TIFF files. In the event that Blue Spike will not supplement its Infringement Contentions to comply with the Local Patent Rules or produce its previous productions in accordance with the Order Regarding E-Discovery, please explain in detail why not by April 4, 2014. We are available to meet and confer regarding the deficiencies addressed in this letter.

Sincerely,

*/s/ Ryan K. Yagura*

Ryan K. Yagura
of O'MELVENY AND MYERS LLP