IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC, § | |
| *Plaintiff,* § | Consolidated Civil Action No. |
| § | 6:12-CV-499-MHS-CMC |
| v. § | |
| § | |
| TEXAS INSTRUMENTS, INC., § | JURY TRIAL DEMANDED |
| *Defendant.* § | |

### PLAINTIFF BLUE SPIKE LLC'S OPPOSITION TO DEFENDANT CLEAR CHANNEL'S MOTION FOR LEAVE TO AMEND [DKT. 1668]

The Court should deny Defendant Clear Channel Broadcasting, Inc.'s ("Clear Channel's") Motion for Leave to Amend its Answer. No good cause exists to grant the requested leave and, moreover, Clear Channel has misled the Court in its motion.

### INTRODUCTION

Clear Channel has failed to provide an adequate explanation for its failure to meet the Court's deadline. Clear Channel has misconstrued the facts to the Court.[1] Clear Channel actually had or could have, under reasonable diligence, obtained all the necessary information to meet the Court's April 4, 2014 deadline to amend pleadings. In light of Clear Channel's failure to meet the Court's deadline, it is now

---

[1] Clear Channel mislead the court by stating Blue Spike, LLC agreed to an amendment to the pleadings. In its own motion, Clear Channel first states that Mr. Garteiser agreed to the amendment (dkt. 1668 at 3); however, later in the motion Clear Channel changes its story and states "Blue Spike indicated it would likely agree" to an amendment (dkt. 1668 at 6). Mr. Randall Garteiser, counsel for Blue Spike, LLC never agreed to amend the pleadings only acknowledged the possibility of doing so.

seeking leave to amend its pleadings to include a licensing defense and an inequitable conduct defense.

On March 14, 2014, in compliance with the Court's scheduling order, Blue Spike, LLC produced 463 pages of licensing agreements related to the patents-in-suit. Clear Channel states that it did not learn about its potential licensing defense until May 19, 2014 based upon Blue Spike, LLC's document production. On May 19, 2014 Blue Spike, LLC produced a batch of unrelated emails and only an additional three (3) licensing agreements that were finalized between March 14, 2014 and May 19, 2014. The three (3) license/settlement agreements are for products wholly unrelated to Clear Channel's accused products; one of the parties to the produced agreements did not even obtain a license or a release. Further, all three license/settlement agreements were with named defendants in the above-captioned case, and Blue Spike, LLC put all parties on notice of settlement months and weeks before May 19 and April 4. Blue Spike, LLC and the Court cannot adequately evaluate or discuss Clear Channel's explanation for its failure to meet the court's deadline without more details related to its defense. Accordingly, Clear Channel has failed to show good cause.

With regard to its inequitable conduct defense, Blue Spike, LLC brought suit against Clear Channel on September 9, 2012, nearly two years ago. From that time, Clear Channel knew what products were accused and had available the patents-in-suit and the publicly available prosecution histories. Clear Channel knew the alleged prior art was not disclosed in the prosecution history. Clear Channel,

however, admits that it did not begin to investigate inequitable conduct until some time after May 19, 2014. Clear Channel in fact acknowledges that it could have obtained the information from its former employee; Clear Channel's only explanation for not obtaining the information—it "would have been difficult." *See* Dkt. 1668 at 5. Clear Channel's passive wait-and-see strategy, while it has colorable facts available to it, undermines the Court's schedule and the party's responsibility to diligently pursue all avenues for relief.

## LEGAL STANDARD

To be successful on its motion for leave, Clear Channel must show "good cause" for the delay. *See S&W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003). "The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it [could not] reasonably meet the scheduling deadline". *Vision Advancement, LLC v. Johnson & Johnson Vision Care, Inc.*, 2007 WL 865699, 2007 U.S. Dist. LEXIS 19079 at *3 (E.D. Tex. Mar. 19, 2007) (*citing* S&W Enters., L.L.C., 315 F.3d at 535). The Court should consider four factors in determining whether good cause exists: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Id*.

# ARGUMENT

I. **Clear Channel has failed to provide any explanation or sufficient detail for its failure to include a license defense before the Court's April 4 deadline.**

Clear Channel has failed to provide any clear explanation for its failure to timely amend its pleadings to include a license defense. Clear Channel's only explanation is that "[it] could not have known [before the deadline] that Blue Spike may have reached settlement agreements with its own customers without receiving those agreements from Blue Spike." Dkt. 1668 at 5. However, Clear Channel has not provided any specific information or detail sufficient for Blue Spike or the Court to evaluate Clear Channel's failure to meet the deadline.

Here are the facts: Clear Channel has asserted that it learned about a possible license defense on May 19, 2014 when Blue Spike, LLC produced certain documents which "indicated that some of the users of the accused Media Monitors Service might" have a license. *See* Dkt. 1668 at 1. On May 19, Blue Spike, LLC produced a batch of emails and three license/settlement agreements. The emails are dated several years and months before the parent patent was even filed; accordingly, Clear Channel cannot creditably rely on those as a basis for its license defense. The three license/settlement agreements Blue Spike, LLC produced are for products wholly unrelated to Clear Channel's accused products. One of the license/settlement agreements did not even confer a license or a release, so necessarily that agreement could not "reduce Clear Channel's damages liability" in any way. *See contra* Dkt. 1668 at 6. All three parties to those agreements were named defendants in the above-captioned case. Blue Spike, LLC provided public notice of settlement with all three well before May 19 and before April 4. Clear Channel has not provided any clear explanation for its failure to meet the Court's deadline; Clear Channel's vague reference to Blue Spike's May 19 production is more confusing than

explanatory. Accordingly, its motion for leave to amend its pleadings and include a license defense should be denied.

## II. Clear Channel has failed to show good cause to permit amending its pleadings to include an inequitable conduct defense and the sought amendment would be futile.

Clear Channel has known about the alleged prior art for over eighteen (18) months but fails to provide any explanation for its failure to diligently investigate the possibility of an inequitable conduct defense. Clear Channel's assertions that it has worked diligently since May 19, 2014 to obtain the necessary information to assert inequitable conduct are unavailing and misleading. Not only has Clear Channel known about the alleged prior art since September 9, 2012, one of the inventors and developers of the alleged prior art is a former employee of Clear Channel. Clear Channel acknowledges that it could have obtained the necessary information to plead inequitable conduct but its only explanation for the failure is that doing so "would have been difficult." Dkt. 1668 at 5. Clear Channel has not provided any explanation for why it waited over a year and a half to even begin investigating the possibility of an inequitable conduct defense. *See Wyeth v. Teva Pharms. United States, Inc.*, 2005 U.S. Dist. LEXIS 40055, at 11-12 (5th Cir. 2003) (recognizing that defendant had relevant information and could have at least sought leave of the Court to extend the deadline in order to obtain additional discovery related to a possible inequitable conduct defense); *see also Computer Acceleration Corp. v. Miscrosoft Corp.*, 2007 U.S. Dist. LEXIS 58649 at *7-8 (Aug. 10, 2007 E.D. Tex.) (finding that the amending party had knowledge about the

alleged prior art, then failed to act diligently when it waited only one month after obtaining additional information to seek leave to amend). Here Clear Channel failed to even investigate inequitable conduct for over 18 months. Clear Channel has provided no explanation for its delay. Accordingly, its motion for leave to amend should be denied.

### III. Clear Channel has failed to satisfy the requirements of *Exergen* making the requested amendment futile.

Even if the Court determines that Clear Channel acted diligently in investigating its affirmative defenses, Clear Channel has failed to satisfy the pleading standard to permit inclusion of an inequitable conduct defense. "In determining whether leave to amend should be granted, the court may consider the following factor[]…futility of the amendment." *Crouch v. J.C. Penney Corp.*, 2007 WL 1100461, at *2 (E.D. Tex. Apr. 11, 2007). Inequitable conduct must be pleaded with particularity. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). The pleader must not only include "the specific who, what, when, where, and how," the Federal Circuit "requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party…(1) knew of the withheld material information…and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1327-1329.

Clear Channel has presented evidence in the form of several emails. At no point in the emails is the patent identified neither are the details of the patent claims. *See generally* Dkt. 1668-2 Exhibit A. The parties to the emails make references to a "passive monitoring system." *Id*. The substance of the emails is

connected to the use and integration of unrelated technology. *Id.* At no point do the emails demonstrate that the named inventor had the request knowledge of the alleged prior art to impugn any inequitable conduct on him, and nowhere does Clear Channel provide facts asserting that the named inventor acted with the intent to deceive the PTO. *See Exergen Corp.,* 575 F.3d at 1328 (*citing King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (CCPA 1981) (finding that even though the pleading party provided evidence that the opposing party had material knowledge, the pleading party failed to adequately plead inequitable conduct because it provided no facts showing the opposing party knew of the materiality of the knowledge). Clear Channel has not adequately demonstrated that the inventor had the requisite knowledge to plead inequitable conduct.

## CONCLUSION

For the above stated reasons, Clear Channel's motion should be denied.

Respectfully Submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
**GARTEISER HONEA, P.C.**

7

        218 N. College Ave.
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

***Counsel for Blue Spike LLC***

**Certificate of Service**

       The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

                                              /s/ Randall T. Garteiser