# EXHIBIT 6

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/005,229 | 12/26/2007 | Scott A. Moskowitz | 066112.0132CONT | 2556 |

7590    03/05/2009
Scott A. Moskowitz
#2505
16711 Collins Avenue
Sunny Isles Beach, FL 33160

| EXAMINER |
|---|
| TSAI, CAROL S W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2857 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/05/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

BLU000873

| Office Action Summary | Application No. | Applicant(s) |
|---|---|---|
| | 12/005,229 | MOSKOWITZ ET AL. |
| | Examiner | Art Unit |
| | CAROL S. TSAI | 2857 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>12 December 2008</u>.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>22-24 and 26-67</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>22-24 and 26-67</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>12/12/2008</u>.
4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

Application/Control Number: 12/005,229                                          Page 2
Art Unit: 2857

# DETAILED ACTION

The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

## Terminal Disclaimer

1.      The terminal disclaimer filed on October 30, 2008 disclaiming the terminal portion of any patent granted on this application has been reviewed and is accepted. The terminal disclaimer has been recorded.

## Information Disclosure Statement

2.      The listing of references in the specification is not a proper information disclosure statement. 37 CFR 1.98(b) requires a list of all patents, publications, or other information submitted for consideration by the Office, and MPEP § 609 A(1) states, "the list may not be incorporated into the specification but must be submitted in a separate paper." Therefore, unless the references have been cited by the examiner on form PTO-892, they have not been considered.

## Double Patenting

3.      The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.  A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140

Application/Control Number: 12/005,229 Page 3
Art Unit: 2857

F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

4. Claims 21 and 55 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claim 1 of U.S. Patent No. 7,346,472. Although the conflicting claims are not identical, they are not patentably distinct from each other because a later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or **anticipated by**, the earlier claim. In re Longi, 759 F.2d at 896, 225 USPQ at 651 (affirming a holding of obviousness-type double patenting because the claims at issue were obvious over claims in four prior art patents); In re Berg, 140 F.3d at 1437, 46 USPQ2d at 1233 (Fed. Cir. 1998) (affirming a holding of obviousness-type double patenting where a patent application claim to a genus is anticipated by a patent claim to a species within that genus). ELI LILLY AND COMPANY v BARR LABORATORIES, INC., United States Court of Appeals for the Federal Circuit, ON PETITION FOR REHEARING EN BANC (DECIDED: May 30, 2001).

BLU000876

Application/Control Number: 12/005,229 Page 4
Art Unit: 2857

## Claim Rejections - 35 USC § 101

5.  35 U.S.C. 101 reads as follows:

   Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

6.  Claims 33-42 and 54 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.

7.  Claim 33 is a process. It includes the judicial exception of an abstract idea (determining the distribution status for the created data signal abstract). No physical transformation is present to establish a practical application of the idea. The final result (determining the distribution status for the created data signal abstract) is useful (establishes the specific, substantial and credible utility of giving an indication of distribution status) only if at least made available for use in the disclosed practical application, concrete if the determination is based on objective criteria, and tangible if it's more than just a thought or a computation within a processor, instead being a real world result. In this instance, claim 33 does not appear to produce a tangible result such that the usefulness of the determination can be realized. The result appears useful and concrete; however, claim 33 should be rejected as non-statutory for failing to produce a tangible result.

8.  A process is statutory if it requires physical acts to be performed outside the computer independent of and following the steps to be performed by a programmed computer, where those acts involve the manipulation of tangible physical objects and result in the object having a different physical attribute or structure. A claim is limited to a practical application when the method, as claimed, produces a concrete, tangible and

Application/Control Number: 12/005,229 Page 5
Art Unit: 2857

useful result; i.e., the method recites a step or act of producing something that is concrete, tangible and useful. See AT &T, 172 F.3d at 1358, 50 USPQ2d at 1452. The claimed invention is directed to non-statutory subject matter because the method does not transform an article or physical object to a different state or thing (NOTE: transformation of data is not "physical transformation," nor are physical acts necessarily a "physical transformation.") and does not produce a concrete, tangible and useful result.

9.    As to claim 33, the result is "determining the distribution status for the created data signal abstract based on the comparison" which is not tangible and useful because this result of "**the distribution status for the created data signal abstract based on the comparison is determined**" is not being conveyed to someone or something for making its usefulness immediately apparent to those familiar with the technological field of the invention. Brenner v. Manson, 383 U.S. 519, 148 USPQ 689 (1966); In re Ziegler, 992 F.2d 1197, 26 USPQ2d 1600 (Fed. Cir. 1993). The examiner submits that the claimed method merely manipulates an abstract idea without limitation to a practical application because claims that do not result in physical transformation cover mental processes and therefore attempt to patent human intelligence in of itself are nonstatutory.  In other words, although the claim appears to fall into a statutory category (process), they are not truly process claims because it does not manipulate subject matter of difference statutory category.

10.   Signals Per se are not statutory subject matter. The combination of signals with statutory physical structure (readable memory) may be statutory subject matter if a

BLU000878

Application/Control Number: 12/005,229 Page 6
Art Unit: 2857

useful, concrete and tangible result is produced. Claims to data structure (signals) stored in a memory are statutory subject matter because of the statutory nature of the memory. In re Lowry, 32 F.3d 1579, 1583-84, 32 USPQ2d 1031, 1035 (Fed. Cir. 1994) (discussing patentable weight of data structure limitations in the context of a statutory claim to a data structure stored on a computer readable medium that increases computer efficiency).

### Claim Rejections - 35 USC § 112

11. The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

12. Claims 33-42 and 54 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.

13. In claim 33, lines 2-3, it is not understandable what is meant by "creating an abstract for a data signal, the data signal *having an unknown distribution status*", since there is no clear and specific description provided in the DETAILED DESCRIPTION OF THE INVENTION.

14. In claim 33, lines it is not understandable what is meant by " each abstract in the at least one database corresponding to a data signal *having a known distribution*

Application/Control Number: 12/005,229 Page 7
Art Unit: 2857

*status*", since there is no clear and specific description provided in the DETAILED DESCRIPTION OF THE INVENTION.

15. In claim 33, lines 5-6, it is not understandable what is meant by " each abstract in the at least one database corresponding to a data signal **having a known distribution status**", since there is no clear and specific description provided in the DETAILED DESCRIPTION OF THE INVENTION.

16. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

17. Claims 33-42, 54, and 58 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

18. In claim 33, "an unknown distribution status" is vague and indefinite. It is not clear to the Examiner what an unknown distribution status is intended.

19. In claim 33, "a known distribution status" is vague and indefinite. It is not clear to the Examiner what a known distribution status is intended.

20. In claim 58, "the criteria" is vague and indefinite. It is not clear to the Examiner what the criteria is intended.

## Claim Rejections - 35 USC § 102

21. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

Application/Control Number: 12/005,229                                          Page 8
Art Unit: 2857

> (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

The changes made to 35 U.S.C. 102(e) by the American Inventors Protection Act of 1999 (AIPA) and the Intellectual Property and High Technology Technical Amendments Act of 2002 do not apply when the reference is a U.S. patent resulting directly or indirectly from an international application filed before November 29, 2000. Therefore, the prior art date of the reference is determined under 35 U.S.C. 102(e) prior to the amendment by the AIPA (pre-AIPA 35 U.S.C. 102(e)).

22.     Claims 22-24, 26-40, 43-46, 48-51, 55-57, 59-63, and 65-67 as best understood, are rejected under 35 U.S.C. 102(e) as being anticipated by U. S. Patent No. 6,088,455 to Logan et al.

23.     With respect to claims 21, 28, 30, 33, 43, 55, 61, and 66, Logan et al. disclose an electronic system for monitoring and analyzing at least one signal, comprising: a first input compression buffer (not shown)) that receives at least one reference signal (identification signal (not shown)) to be monitored (see col. 2, lines 51-53 and col. 6, lines 24-27), a first processor (data processor 28 shown on Fig. 1) that creates an abstract of each reference signal input to said first processor through said first input (see col. 7, lines 30-43);  a second input (receiver 12 shown on Fig. 1) that receives at least one query signal (broadcast signal (not shown)) to be analyzed (see Abstract, lines 4-6; col. 2, lines 41-43;  and col. 4, line 66 to col. 5, line 31), a second processor (a digital processor 14 shown on Fig. 1) that creates an abstract of each query signal (see col. 2, lines 43-51 and col. 5, lines 2-5 and lines 11-15);  a reference database

Application/Control Number: 12/005,229							Page 9
Art Unit: 2857

(computer memory 30 shown on Fig. 1) that stores abstracts of each at least one reference signal (see col. 7, lines 23-30); a comparing device (comparator 50 shown on Fig. 2) that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts (see Abstract, lines 7-10; col. 2, lines and col. 8, line 39 to col. 9, line 6).

24.     As to claims 22, 23, 49, 50, 56, and 57, Logan et al. also disclose said second input being remotely coupled to the system (see Fig. 1 and col. 4, lines 53-65 and col. 5, lines 12-31).

25.     As to claim 24, Logan et al. also disclose the system transmitting the criteria that are being used by the first processor to the second processor (see col. 12, lines 2-14).

26.     As to claims 26 and 59, Logan et al. also disclose the stored abstracts comprising a self-similar representation of at least one reference signal (see col. 6, line 60 to col. 7, line 1).

27.     As to claims 27, 39, and 60, Logan et al. also disclose information corresponding to two versions of at least one reference signal (see col. 10, lines 9-20).

28.     As to claims 29, 36, and 62, Logan et al. also disclose the characteristics of the reference signal being described comprising at least one of a perceptible characteristic, a cognitive characteristic, a subjective characteristic, a perceptual quality, a recognizable characteristic or combinations thereof (see col. 12, lines 2-7).

29.     As to claims 30, 40, and 63, Logan et al. also disclose data unique to each variation of its corresponding reference signal (see col. 14, lines 34-39).

Application/Control Number: 12/005,229 Page 10
Art Unit: 2857

30. As to claims 32 and 65, Logan et al. also disclose the cryptographic protocol being one of at least a hash or digital signature and further comprising storing the hashed abstract and/or digitally signed abstract (see col. 7, line 66 to col. 8, line 12).

31. As to claims 34 and 38, Logan et al. also disclose the database being created by at least one of a music company, a movie studio, an image archive, an owner of a general computing device, a user of the data signal, an internet service provider, an information technology company, a body politic, a telecommunications company and combinations thereof (see col. 5, lines 32-36).

32. As to claim 35, Logan et al. also disclose at least one of images, audio, video, and combinations thereof (see col. 2, lines 56-58).

33. As to claim 44, Logan et al. also disclose each signal abstract comprising a link to its corresponding signal (see col. 5, lines 11-20).

34. As to claims 45 and 46, Logan et al. also disclose the comparing device determining if the signal abstracts stored in the database are authorized (see col. 9, lines 49-60).

35. As to claim 48, Logan et al. also disclose the plurality of abstracts stored in the reference database are derived from one of data reduced versions of said corresponding signals, compressed variations of said corresponding signals, bit-addressable relationships between said corresponding signals, and a least amount of data required to uniquely identify each corresponding signal, and combinations thereof (see col. 2, lined 39-61).

BLU000883

Application/Control Number: 12/005,229 Page 11
Art Unit: 2857

36. As to claim 51, Logan et al. also disclose the device for retrieving the signal and the device for conducting transactions comprising the same device (see col. 2, lines 51-53).

### Claim Rejections - 35 USC § 103

37. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

38. Claims 31, 37, and 64 are rejected under 35 U.S.C. 103(a) as being unpatentable over Logan et al. in view of U. S. Publication 20020073043 to Herman et al.

39. As noted above, with respect to claims 31, 37, and 64, Logan et al. disclose the claimed invention, except for a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal.

40. Herman et al. teach a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal (see paragraph 0318).

41. It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify Logan et al.'s method to include a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal

Application/Control Number: 12/005,229 Page 12
Art Unit: 2857

and said query signal, as taught by Herman et al., in order to provide security among transactor systems.

42. Claims 41 and 47 are rejected under 35 U.S.C. 103(a) as being unpatentable over Logan et al. in view of U. S. Publication 2001/0043594 to Ogawa et al.

43. As noted above, with respect to claims 41 and 47, Logan et al. disclose the claimed invention, except for storing information associated with the comparison step to enable at least one of a re-calibration of the database, a heuristic-based adjustment of the database, a computational efficiency adjustment of the database, an adjustment for database collisions and/or null cases, changes to the recognition or use parameters governing the database and combinations thereof.

44. Ogawa et al. teach storing information associated with the comparison step to enable at least one of a re-calibration of the database, a heuristic-based adjustment of the database, a computational efficiency adjustment of the database, an adjustment for database collisions and/or null cases, changes to the recognition or use parameters governing the database and combinations thereof (see Paragraph 0233).

45. Claims 42 and 53 are rejected under 35 U.S.C. 103(a) as being unpatentable over Logan et al. in view of U. S. Patent No. 5,210,820 to Kenyon.

46. As noted above, with respect to claims 42 and 53, Logan et al. disclose the claimed invention, except for applying one of a relatedness index or measure of similarity to generate uniquely identifiable information to determine distribution status.

Application/Control Number: 12/005,229 Page 13
Art Unit: 2857

47. Kenyon teaches applying one of a relatedness index or measure of similarity to generate uniquely identifiable information to determine distribution status (see col. 8, lines 11-40).

48. It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify Logan et al.'s method to include applying one of a relatedness index or measure of similarity to generate uniquely identifiable information to determine distribution status, as taught by Kenyon, in order to accurately recognize and classify a large number of unique broadcast signals on a plurality of broadcast channels simultaneously and with high reliability.

49. Claims 52 and 54 are rejected under 35 U.S.C. 103(a) as being unpatentable over Logan et al. in view of U. S. Publication 2004/0125983 to Reed et al.

50. As noted above, with respect to claims 52 and 54, Logan et al. disclose the claimed invention, except for an embedder to watermark signals with uniquely identifiable information.

51. Reed et al. teach an embedder to watermark signals with uniquely identifiable information (see paragraph 0080).

52. It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify Logan et al.'s method to include an embedder to watermark signals with uniquely identifiable information, as taught by Reed et al., in order to identify portions of the image that can withstand more watermark signal content without substantially impacting image fidelity

Application/Control Number: 12/005,229   Page 14
Art Unit: 2857

## Response to Arguments

53.     Applicant's arguments filed October 30, 2008 have been fully considered but they are not persuasive.

54.     **NOTE: As indicated in the Interview Summary, the Examiner should call Mr. Moskowitz to set up a interview to discuss the case after receiving the amendmen.  However, the Examiner considered to file an Office Action instead of setting up an interview with Applicants in order that the Examiner can deliberately provide a specific and clear response based on Applicants' lengthy arguments in a total of 23 pages after the Examiner took a more detailed look at application, cited reference, and arguments. Additionally, 37 CFR 1.2 states that the action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt**.

55.     Applicants argue that the Logan reference, as agreed in the prosecution of the parent application (Application No. 09/657,181 now U.S. Patent No. 7,346,472), Logan et al. does not anticipate or suggest an abstract as claimed. The Examiner disagrees with Applicant. As described in the Office Action of Allowance mailed on September 26, 2007, the Examiner clearly indicates **U. S. Patent No. 6,088,455 to Logan et al. is the reference closest to the claimed invention. Logan et al. disclose a method for monitoring and analyzing at least one signal comprising: receiving at least one reference signal to be monitored; creating an abstract of said at least one reference signal; storing the abstract of said at least one reference signal in a**

Application/Control Number: 12/005,229 Page 15
Art Unit: 2857

*reference database; receiving at least one query signal to be analyzed; creating an abstract of said at least one query signal; comparing the abstract of said at least one query signal to the abstract of said at least one reference signal to determine if the abstract of said at least one query signal matches the abstract of said at least one reference signal*. However, Logan et al. do not teach creating an abstract of said at least one reference signal comprising: inputting the reference signal to a processor; creating an abstract of the reference signal using perceptual qualities of the reference signal such that the abstract retains a perceptual relationship to the reference signal from which it is derived; and creating an abstract of said at least one query signal comprising: inputting the at least one query signal to the processor; creating an abstract of the at least one query signal using perceptual qualities of the at least one query signal such that the abstract retains a perceptual relationship to the at least one query signal from which it is derived; and including all of the other limitations in the respective independent claims. Therefore, Logan et al. do anticipate or suggest (i.e., a 102(e) rejection has been asserted in the instant case) an abstract as claimed.

56. Applicants argue that a fundamental principle contained in 35 U.S.C. 112, second paragraph is that applicants are their own lexicographers, that they can define in the claims what they regard as their invention essentially in whatever terms they choose so long as any special meaning assigned to a term is clearly set forth in the specification. The Examiner disagrees with Applicants. Applicants can define in the claims what they regard as their invention essentially in whatever terms they choose so long as any special meaning assigned to a term is clearly set forth in the specification;

BLU000888

Application/Control Number: 12/005,229 Page 16
Art Unit: 2857

however, Applicants are responsible to clearly define the term in the Specification to enable the Examiner or one having ordinary skill in the art understand the meaning of Applicants own lexicographers. Otherwise, their own lexicographers are indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. In addition, the Examiner does not raise any 35 U.S.C. 112, second paragraph rejection in the previous Office Action mailed on August 25, 2008 at all.

57. Applicants argue that during the examination of a pro se application it becomes apparent to the examiner that there is patentable subject matter disclosed in the application, that the examiner should draft one or more claims for the applicant and indicate in his or her action that claims would be allowed if incorporated in the application by amendment. The Examiner disagrees with the Applicant. The Examiner is not able to draft one or more claims for the applicant because there is no patentable subject matter disclosed in the claims of claimed invention.

58. Applicants argue that Applicants are proceeding pro se and request clarification on how the cited claims can be rewritten should the term distribution status", discussed during the August 25, 2008 Interview, continue to be objectionable. The Examiner disagrees with Applicants. Mr. Moskowitz called on August 25, 2008 to discuss the 101 rejection raised in the Office-Action mailed on May 30, 2008, the Examiner suggested Mr. Moskowitz to file an amendment including the arguments in response to the Office-Action mailed on May 20, 2008, and the Examiner will arrange an interview to discuss the case with Mr. Moskowits after the Examiner take a more detailed look at application,

BLU000889

Application/Control Number: 12/005,229 Page 17
Art Unit: 2857

cited reference, and arguments. During the inerview, the Examiner did not have any discussion about the term "distribution status" with Applicants.

59. Applicant states the following on page 21:

60. Claims 21, 33, and 43 (and all claims that depend therefrom) is thus patentable over the combination because Logan does not disclose, anticipate or suggest: (1) a first processor that creates an abstract of each reference signal input to said first processor through said first input; (2) a second processor that creates an abstract of each query signal; & (3) a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts, Logan cannot be considered prior art. The Examiner disagrees with Applicants. As set forth above in the art rejection, Logan et al. do disclose a first processor (data processor 28 shown on Fig. 1) that creates an abstract of each reference signal input to said first processor through said first input (see col. 7, lines 30-43); a second processor (a digital processor 14 shown on Fig. 1) that creates an abstract of each query signal (see col. 2, lines 43-51 and col. 5, lines 2-5 and lines 11-15);  and a comparing device (comparator 50 shown on Fig. 2) that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts (see Abstract, lines 7-10; col. 2, lines  and col. 8, line 39 to col. 9, line 6).

BLU000890

Application/Control Number: 12/005,229   Page 18
Art Unit: 2857

### Contact Information

61.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to CAROL S. TSAI whose telephone number is (571)272-2224. The examiner can normally be reached on M-F(8:00-4:30).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Ramos-Feliciano S. Eliseo can be reached on (571) 272-7925. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

February 17, 2008
Art Unit 2857

/Carol S Tsai/
Primary Examiner, Art Unit 2857

BLU000891