# EXHIBIT 7

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Appl. No. | : | 12/005,229 | Confirmation No. 2556 |
| Applicant | : | Scott A. Moskowitz et al. | |
| Filed | : | December 26, 2007 | |
| TC/A.U. | : | 2857 | |
| Examiner | : | Carol S. W. TSAI | |
| Docket No. | : | 066112.0132CONT | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT/REPLY

In response to the Office Action of March 5, 2009, Applicants provide the following remarks for consideration:

06/08/2009 RMEBRAHT 00000011 12005229
03 FC:2202                                    156.00 OP

BLU000801

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## 1) Rejections under Double Patenting

§ 101 Rejections based on a judicially created doctrine of provisional obviousness-type nonstatutory double-patenting

Applicants respectfully traverse the Office's contention that the instant invention's Claims 21 and 55 (and all claims depending therefrom, respectively) is not patently distinct from the parent Application No. 09/657,181, which issued as U.S. Patent No. 7,346,472, Claim 1. While Applicants may disagree with the premise of the rejection, Applicants have included a terminal disclaimer and the associated fee herewith. *Please note*: Applicants previously filed a Terminal Disclaimer (PTO SB26) and the associated fee with regards to Claim 21 in the October 30, 2008 Response to Office Action of May 30, 2008 with the same traversal.

BLU000802

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## Information Disclosure Statement

With due respect, Applicants traverse the Office's assertion concerning the Information Disclosure Statement and arrangement of the Application as filed. Applicants affirm the Specification is in compliance as per Office Standard as described in at least MPEP § 608.01(a) ("Arrangement of Application") & 37 CFR 1.77 "Arrangement of application elements". *Please see* (b)(2) "Cross-reference to related applications (unless included in the application data sheet)". Further, as best understood under: 35 USC § 111; 35 USC § 119; & 35 USC § 120, the instant Application is in compliance with Office standard.

Second, Applicants' Information Disclosure Statements filed February 29, 2008 (within three months of the filing date December 26, 2007) & December 12, 2008, along with PTO Forms SB08A & SB08B are "separate paper[s]" and in compliance with Office standard as understood under: 37 CFR 1.56; 37 CFR 1.97; 37 CFR 1.98; & 37 CFR 1.78. Further, we respectfully request consideration of an updated Information Disclosure Statement and associated references as listed on the PTO SB08 Forms in view of the Federal Circuit's decision in *McKesson Information Solutions, Inc. v. Bridge Medical Inc.*

BLU000803

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## Rejections under 35 USC § 101

Applicants respectfully traverse assertions 7, 8, 9 & 10 at Pages 4-6 of the non-final Office Action dated March 5, 2009. As discussed during the Interview, on or about April 16, 2009, the "abstracts" of the claim[s] *are* transformed data read from memory. With regards to 10, Applicants maintain the claims at issue *are* "[c]laims to data structure (signals) stored in a memory are statutory subject matter because of the statutory nature of memory" (non-final Office Action at Page 6), not "[s]ignals per se", and submit it is Office Standard to consider the elements of the claims in view of the Specification as supplemented by the originally filed claims. Notably, the "database[s]" of the claims are statutory subject matter as previously presented in Applicants' prior Response to the non-final Office Action of May 30, 2008, dated October 30, 2008.

The process[es] of Claims 33–42 and 54 (indeed, all of the pending claims) are statutory subject matter as per Office Standard described at MPEP § 2106.01II:

> For example, a computer that recognizes a particular grouping or sequence of musical notes read from memory and thereafter causes another defined series of notes to be played, requires a functional interrelationship among that data and the computing processes performed when utilizing that data. As such, a claim to that computer is statutory subject matter because it implements a statutory process.

Perhaps fortuitously, *the example provided here at* MPEP § 2106.01II, listed above for reference addresses patentable subject matter under 35 USC § 101 and expressly discusses recognition of "musical notes", although Applicants maintain the instant, pending claims include different elements and are not restricted to audio data.

Another salient point, however, is that Claims 33 – 52 & 54 clearly produce "a useful, concrete and tangible result" (*Please see*, MPEP § 2106IVC(1)(2) & "totality of evidence" standard discussed at MPEP § 2106D). For at least these reasons, Applicants respectfully request the Office to withdraw the rejections based on 35 U.S.C. § 101. Last, Applicants respectfully submit that none of the references disclose, anticipate or suggest the elements of the claims; thus, the rejections based on anticipation and/or suggestion must respectfully be withdrawn.

4

BLU000804

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## 1) Rejections under 35 U.S.C. § 112 first paragraph

Claims 33-42 and 54

Applicants respectfully traverse the rejection of Claims 33-42 and 54 (under 35 USC § 112 1st paragraph) as allegedly "failing to comply with the written description requirement" (March 5, 2009 non-final Office Action at Page 6). With all due respect, it is unclear how the Office is applying the 35 USC § 112 1st paragraph rejection under "the written description requirement". Under MPEP § 2164, the enablement requirement and written description requirement are "separate and distinct".

Under 35 USC § 112 1st paragraph it is understood that a claim need not teach how to practice a claimed invention: the enablement standard is applied to the Specification as a whole. Contrary to the Office's assertion, the Specification does meet the standard of 35 USC § 112 1st paragraph for at least the reason that royalty payments should be made to the proper party when a work is possessed but has unknown ownership or provenance. Significantly, identifying criminals and/or counterfeiting more efficiently or monitoring, analysis and recognition of signals is made more computationally effective by the pioneering disclosure and subject matter as embodied in the claims pending herein. Nonetheless, Applicants have amended Claim 33 in accordance with the Examiner's suggestions during the Interview on or about April 16, 2009 to more fully distinguish the subject matter of the claims from the Logan, et al. and the cited references.

As discussed during the Interview on or about April 16, 2009, the Specification at Page 6, Paragraphs 15-17 provide several non-limiting examples that Applicants affirm would be understood by one possessing ordinary skill in the art, namely versioning of a data signal for which a creator or owner seeks payment or authorizes use over their work. As is made clear in the Specification, versions may be characterized by formats or by different artists of the "same" material, different distribution or use scenarios as would be understood by one possessing ordinary skill in the art. For purposes of non-limiting support, Applicants respectfully direct the Office to the following: Pages 7-11 Paragraphs 18-29 discuss, for instance, "unauthorized use", "owner's permission" & "users" who may seek to avoid royalties or other payment. Additionally, but without limitation, the Office is directed to: the Abstract, Background; Summary; Pages 12-13 Paragraphs 29-30 discuss versioning and distribution status; Page 17-18 Paragraph 40; & Pages 23-27 for several non-limiting Sample Embodiments which further distinguish the claims from Logan et al., the cited references, and the art. Accordingly, favorable reconsideration and withdrawal of this rejection is respectfully requested.

## 2) Rejections under 35 U.S.C. § 112 second paragraph

Claims 33-42, 54 & 58 stand rejected under the second paragraph of 35 U.S.C. § 112, as allegedly "indefinite" (Please see, 16, 17, 18, 19 & 20 at Page 7 of the non-final Office Action dated March 5, 2009). By the present Amendment, Applicants have amended Claim 33 in view of the Examiner's comments and express instructions to "... amend the claim language and specifically and clearly point out the difference between the claimed invention and cited reference, U.S. Patent No. 6,088,455 to Logan et al. in order to put the application in condition of allowance", as discussed during the Interview on or about April 16, 2009 (Interview Summary dated April 30, 2009, Paper No.

BLU000805

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

20090427). Applicants respectfully submit that Claim 33 (and all claims depending therefrom, namely Claims 34–42 & 54) now even more fully satisfy the requirements of the second paragraph of 35 U.S.C. § 112. Accordingly, favorable reconsideration and withdrawal of this rejection are respectfully requested.

With regards to Claim 58 Applicants affirm one of ordinary skill in the art would understand the term "the criteria" when read in view of the Specification and the originally filed claims. The Specification teaches that "criteria" are used in distribution and deployment scenarios of the claimed subject matter (*Please see*, for instance, Pages 19-21 Paragraphs 46-48 describing non-limiting examples of "criteria" and "parameters" as well as the originally filed claims), and so Claim 58 is merely referencing the same criteria be used "wherein the criteria used to compare a received query signal abstract with a stored reference signal abstract are adjustable". Please see, for additional non-limiting examples of "criteria" at Pages 22-23 Paragraphs 51-53. Because the "query signal" is a signal being "queried" against "stored reference signal abstract[s]" (e.g., as stored in a database), as is made clear in at least the Summary, Specification and originally filed claims, as would be understood by one possessing ordinary skill in the art, Applicants respectfully request the rejection be withdrawn.

BLU000806

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## Amendment to the Claims

### In the Claims:

Claims 1 – 20 & 25 were previously canceled without prejudice or disclaimer. Applicants reserve the right to pursue the subject matter of the original claims in this application and in other applications. Please add new claims 68 - 73. No new matter is introduced by this amendment and the amendments to the claims are fully supported by the original specification as supplemented by the original claims. This listing of claims will replace all prior versions, and listings, of claims in the application:

**Claims:**

Claims 1 – 20 & 25 (canceled)

21. (currently amended) An electronic system for monitoring and analyzing at least one signal, comprising:

a first input that receives at least one reference signal to be monitored,

a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal;

a second input that receives at least one query signal to be analyzed,

a second processor that creates an abstract of each query signal wherein the abstract comprises signal characteristic parameters of the query signal;

a reference database that stores abstracts of each at least one reference signal;

a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts wherein a match indicates the query signal is a version of at least one of the reference signals.

22. (original) The system of claim 21, wherein said second input is remotely coupled to the system.

23. (original)   The system of claim 21, wherein said second processor is remotely coupled to the system.

24. (currently amended) The system of claim 21, wherein the system transmits the [[criteria]] parameters that are being used by the first processor to the second processor.

7

**BLU000807**

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

25. (canceled)

26. (previously presented) The system of claim 21, wherein the stored abstracts comprise a self-similar representation of at least one reference signal.

27. (previously presented) The system of claim 21, wherein at least two of the stored abstracts comprise information corresponding to two versions of at least one reference signal.

28. (previously presented) The system of claim 21, wherein the stored abstracts comprise data describing a portion of the characteristics of its associated reference signal.

29. (previously presented) The system of claim 28, wherein the characteristics of the reference signal being described comprise at least one of a perceptible characteristic, a cognitive characteristic, a subjective characteristic, a perceptual quality, a recognizable characteristic or combinations thereof.

30. (previously presented) The system of claim 21, wherein each stored abstract comprises data unique to each variation of its corresponding reference signal.

31. (previously presented) The system of claim 21, wherein the system applies a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal.

32. (previously presented) The system of claim 31, wherein the cryptographic protocol is one of at least a hash or digital signature and further comprising storing the hashed abstract and/or digitally signed abstract.

33. (currently amended) A method for monitoring the distribution of data signals, comprising:

creating an abstract for a data signal wherein the data signal abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the data signal [[having an unknown distribution status]];

storing the data signal abstract in at least one reference database;

receiving a query signal;

creating an abstract for the query signal based on the parameters;

8

BLU000808

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

comparing the created [[data]] query signal abstract to the at least one database of data signal abstracts, each abstract in the at least one database corresponding to a version of the data signal [[having a known distribution status]]; and

determining [[the distribution status]] whether the query signal abstract matches any of the stored data signal abstracts in the at least one database to enable authorized transmission or use of the query signal for the query signal abstract based on whether a match was determined.

34. (previously presented) The method of claim 33, wherein the database is created by at least one of a music company, a movie studio, an image archive, an owner of a general computing device, a user of the data signal, an internet service provider, an information technology company, a body politic, a telecommunications company and combinations thereof.

35. (previously presented) The method of claim 33, wherein the data signals comprise at least one of images, audio, video, and combinations thereof.

36. (previously presented) The method of claim 33, wherein the stored data signal abstracts are derived from one of a cognitive feature or a perceptible characteristic of the associated data signals.

37. (previously presented) The method of claim 33, furthering comprising applying a cryptographic protocol to at least one created signal abstract, at least one database signal abstract or both at least one created signal abstract and at least one database signal abstract.

38. (previously presented) The method of claim 37, wherein the cryptographic protocol comprises one of a hash or digital signature.

39. (previously presented) The method of claim 33, wherein the stored signal abstracts comprise data to differentiate versions of the corresponding data signals.

40. (previously presented) The method of claim 33, wherein each of the stored data signal abstracts comprise information configured to differentiate variations of each referenced corresponding data signal.

41. (previously presented) The method of claim 33, further comprising storing information

9

BLU000809

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

associated with the comparison step to enable at least one of a re-calibration of the database, a heuristic-based adjustment of the database, a computational efficiency adjustment of the database, an adjustment for database collisions and/or null cases, changes to the recognition or use parameters governing the database and combinations thereof.

42. (currently amended) The method of claim 33, further comprising applying one of a relatedness index or measure of similarity to generate uniquely identifiable information to determine authorization.

43. (currently amended) A system for identifying and distributing signals, comprising:

a first input that receives a query abstract of a signal to identify;

a database containing a plurality of signal abstracts, the plurality of signal abstracts each associated with a corresponding signal wherein each of the plurality of the signal abstracts retains a perceptual relationship with the corresponding signal;

a comparing device that compares the query abstract to the plurality of abstracts stored in the reference database to identify a matching signal abstract; and

a device for retrieving the signal corresponding to the matching signal abstract; and

a device for conducting a transaction, the transaction selected from the group consisting of a download and a subscription.

44. (previously presented) The system of claim 43, wherein each signal abstract comprises a link to its corresponding signal.

45. (previously presented) The system of claim 43, wherein the comparing device determines if the signal abstracts stored in the database are authorized.

46. (previously presented) The system of claim 43, wherein the comparing device determines if the link is an authorized link.

47. (previously presented) The system of claim 43, wherein the reference database is governed by heuristics or experience-based parameters.

48. (previously presented) The system of claim 43, wherein the plurality of abstracts stored in the

10

BLU000810

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

reference database are derived from one of data reduced versions of said corresponding signals, compressed variations of said corresponding signals, bit-addressable relationships between said corresponding signals, and a least amount of data required to uniquely identify each corresponding signal, and combinations thereof.

49. (previously presented) The system of claim 43, wherein the device for conducting transactions or the device for retrieving the signal is remotely coupled to the system.

50. (previously presented) The system of claim 43, wherein the device for conducting transactions or the device for retrieving the signal is controlled by the database.

51. (previously presented) The system of claim 43, wherein the device for retrieving the signal and the device for conducting transactions comprise the same device.

52. (previously presented) The system of claim 43, further comprising an embedder to watermark signals with uniquely identifiable information.

53. (previously presented) The system of claim 21, further comprising an embedder to embed uniquely identifiable data into at least one of the received reference signal, the received query signal or both the received reference signal and the received query signal.

54. (previously presented) The method of claim 33, further comprising encoding information into the data signal with a watermarking technique.

55. (currently amended) A process for analyzing and identifying at least one signal, comprising:

       receiving at least one reference signal to be identified,

       creating an abstract of each reference signal received <u>based on perceptual characteristics representative of parameters to differentiate between versions of the reference signal</u>;

       storing abstracts of each reference signal received in a database;

       receiving at least one query signal to be identified,

       creating an abstract of the received query signal <u>based on the parameters</u>; and

BLU000811

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

comparing an abstract of said received query signal to the abstracts stored in the database to determine if the abstract of said received query signal is related to any of the stored abstracts.

56. (previously presented)   The process of claim 55, wherein said database is independently accessible.

57. (previously presented) The process of claim 55, wherein said received query signal is independently stored.

58. (previously presented) The process of claim 55, wherein the criteria used to compare a received query signal abstract with a stored reference signal abstract are adjustable.

59. (previously presented) The process of claim 55, wherein the stored abstracts comprise a self-similar representation of at least one reference signal.

60. (previously presented)  The process of claim 55, wherein at least two of the stored abstracts comprise information corresponding to two versions of at least one reference signal.

61. (previously presented)  The process of claim 55, wherein at least one abstract comprises data describing a portion of the characteristics of its associated reference signal.

62. (previously presented)  The process of claim 61, wherein the characteristics of the reference signal being described comprise at least one of a perceptible characteristic, a cognitive characteristic, a subjective characteristic, a perceptual quality, a recognizable characteristic or combinations thereof.

63. (previously presented)  The process of claim 55, wherein a stored abstract comprises data unique to a variation of its corresponding reference signal.

64. (previously presented)  The process of claim 55, wherein the process further comprises applying a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal.

BLU000812

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

65. (previously presented)  The process of claim 64, wherein the cryptographic protocol is one of at least a hash or digital signature and further comprising storing the hashed abstract and/or digitally signed abstract.

66. (previously presented)  The process of claim 55, further comprising distributing at least one signal based on the comparison step.

67. (previously presented)  The process of claim 66, further comprising watermarking the at least one signal to be distributed.

68. (new)  The system of claim 21, wherein the match indicates that the abstract of the query signal comprises the same perceptual characteristics as the abstract of the matched one of the reference signals.

69. (new) The system of claim 21, wherein the parameters comprise commonly perceptible features.

70. (new) The system of claim 69, wherein the commonly perceptible features are selected.

71. (new) The system of claim 21, wherein said first and said second processors are the same processor.

72. (new) The system of claim 21, wherein the first processor and the second processor are different processors.

73. (new) The process of claim 33, wherein the data signal is received by one of a creator or owner of said data signal.

BLU000813

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## REMARKS/ARGUMENTS

Applicants thank Primary Examiner Tsai for the telephonic interview, which took place on or about April 16, 2009. During the interview with Primary Examiner Tsai Claims 21 - 54 and the Logan, et al. reference was discussed. Comments 54, 55, 56, 57, 58 were discussed and it is the Applicants position that these points may prejudice the instant Application. Thus, Applicants asked if it would be appropriate to seek clarification of these points as per 37 CFR 1.2 in the Response to the non-final March 5, 2009 Office Action. This clarification is sought in view of 35 USC § 282 "[a] patent is presumed valid". Applicants further seek clarification in an effort to adhere to the principles of compact prosecution under MPEP § 2106.

Applicants respectfully traverse 55 (at Pages 14-15 of the March 5, 2009 Office Action), "Allowable Subject Matter" was identified by the Office in an Office Action dated May 11, 2007 & the Applicants amended the claims at the express instructions of the Office in a Rule 111 Response dated August 13, 2007. The March 5, 2009 non-final Office Action states at 55: "The Examiner disagrees with the Applicant"; but, goes on to restate the same reason for allowance. Applicants agree with the Office that [emphasis in the Office Action] "*However, Logan et al., do not teach creating an abstract of said at least one reference signal using perceptual qualities of the reference signal such that the abstract retains a perceptual relationship to the reference signal from which it is derived....*" Respectfully, it appears the Examiner disagrees with the Applicants on the patentability of the previously presented claims in the instant application. But, the Examiner does agree with the Applicants that the issued claims of the parent application (now, U.S. Patent 7,346,472) are patentable over Logan and the cited references. Although Applicants traverse the characterization of Logan as applied to the subject matter of the claims, as presented, Applicants have amended the claims in accordance with the suggestions made by the Examiner during the Interview on or about April 16, 2009. Further remarks concerning why Applicants maintain the claims are patentable over Logan and the cited references are provided below.

Applicants respectfully traverse 56 (at Pages 15-16 of the March 5, 2009 Office Action), while the Examiner did not raise 35 USC 112 second paragraph rejections in the August 25, 2008 non-final Office Action, as stated above, there is a distinction between "the enablement requirement" and "the written description requirement". Applicants pointed to several sections of the Specification during the Interview, which provide full support for the term "abstract", on or about April 16, 2009, and maintain that it is from the perspective of one having ordinary skill in the art that such rejections are applied. Applicants did agree to amend claim language at the express instructions of the Examiner to make this rejection moot and the pending claims in condition for allowance.

Applicants respectfully traverse 57 (at Pages 16 of the March 5, 2009 Office Action), though the Examiner may disagree with the Applicants, MPEP § 707.07(j) refers to the Application not "the subject matter of the claims of claimed invention". The originally filed claims too are part of the Specification for purposes of assisting with interpretation of the pending claims. In the instant application, Applicants proceeded under express instructions from the Office under a Rule 111 continuation that had "Allowable Subject Matter" identified by the Examiner as best understood. With due and considered respect, Applicants believe the Interview, on or about April 16, 2009 (Paper No. 20090427), was helpful in clarifying this point and the points raised above to put the

14

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

instant "application in condition for allowance" (Paper No. 20090427) as well as clarify the written record without creating improper prosecution history estoppel.

Applicants respectfully traverse 58 (at Pages 16-17 of the March 5, 2009 Office Action) as the 101 rejection, raised by the Office, relating to the term "distribution status". Applicants provided a written response detailing the term in the October 30, 2008 Response to the non-final Office Action of May 30, 2008. It is respectfully pointed out that 35 USC 101 rejections are complex and will be considered by the US Supreme Court in reviewing the Bilski decision. The written response of October 30, 2008 specifically covers the term "distribution status" between Pages 4-8. Again, in the interests of compact prosecution, Applicants believe the Interview, on or about April 16, 2009, was helpful in clarifying this point and have amended the claim language as expressly suggested by the Examiner to put the claims in condition for allowance.

With regards to 59 & 60 (Page 17 of the non-final Office Action dated March 5, 2009), it is believed the claim amendment[s] & arguments presented below illustrate patentably distinguishable features between the instant claims and Logan, et al. as well as the cited references.

In view of the above comments and, as per the Interview Summary, dated April 30, 2009 (Paper No. 20090427), Applicants have taken steps to expedite the prosecution of this application and place it in condition for allowance. If the Office believes that prosecution might be furthered by discussing the application with the Applicants, in person or by telephone, we would welcome the opportunity to do so as agreed in the Interview Summary.

15

BLU000815

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## Rejections under 35 U.S.C. § 102

### 1) § 102(e) Rejections based on U.S. Patent No. 6,088,455 ("Logan")

Claims 22-24, 26-40, 43-46, 48-51, 55-57, 59-63 and 65-67 stand rejected as allegedly anticipated or suggested (i.e., 102(e)) by U.S. Patent No. 6,088,455 by Logan et al. (thereafter "Logan"). Please see Page 8 of March 5, 2009 non-final Office Action. Please note that Claim 21 is not cited in point "23" but is cited in point "22" – clarification is thus respectfully sought on these points.

### Claims 22-24, 26-40, 43-46, 48-51, 55-57, 59-63 and 65-67

In order for a reference to anticipate a claim, the reference must disclose each and every feature of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation. See *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1347, 51 USPQ2d 1943, 1947 (Fed. Cir. 1999); *In re Paulsen*, 30 F.3d 1475, 1479, 31 USPQ2d 1671, 1673 (Fed. Cir. 1994). "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987). Currently Amended Independent Claim 21 recites: "An electronic system for monitoring and analyzing at least one signal, comprising: (1) a first input that receives at least one reference signal to be monitored, (2) a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal; (3) a second input that receives at least one query signal to be analyzed, (4) a second processor that creates an abstract of each query signal wherein the abstract comprises signal characteristic parameters of the query signal; (5) a reference database that stores abstracts of each at least one reference signal; (6) a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts wherein a match indicates the query signal is a version of at least one of the reference signals or a null case." The Section 102 rejection for Independent Claim 21 (and all claims depending therefrom) is improper for at least the reason that Logan fails to disclose or suggest at least "a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal".

Logically speaking, Logan cannot anticipate or suggest, "a second processor that creates an abstract of each query signal wherein the abstract comprises signal characteristic parameters of the query signal". This claim element, namely, the second input and the abstract created therefrom, provides significant and pioneering benefits over the Logan reference and the art as will be explained further below. Namely, "a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts wherein a match indicates the query signal is a version of at least one of the reference signals". The instant claims offer significant improvements over the art to enable a more robust and diverse information economy. Versions of signals can be analyzed, identified and monitored in a

16

BLU000816

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

computationally beneficial manner. As is amply discussed in the Specification, "versions" include: formats (e.g., MP3, AAC, etc.), deployment scenarios (e.g., radio broadcast, internet transmission, etc.) and even use, such as different versions of a song sung by different artists or even artists drawing different versions of the "same" sun or "same" apple. Authorization of transmission or utilization of signals too represent pioneering benefits over Logan and the cited references. For at least these reasons, Applicants respectfully request the 102 rejections be withdrawn.

The non-final Office Action at Page 8 states [emphasis added]: "a first input (compression buffer **(not shown)**) that receives at least one reference signal (identification signal **(not shown)**) to be monitored (see col. 2, lines 51-53 and col. 6 lines 24-27), a first processor (data processor 28 shown on Fig. 1) that creates an abstract of each reference signal input to said first processor through said first input (see col. 7, lines 30-43) ... that receives at least one query signal (broadcast signal **(not shown)**) ". Applicants respectfully traverse and point out that the Office Action has failed to present a prima facie case of anticipation or suggestion (i.e., 102(e)) by failing to point out all of the elements of Claim 21. Namely, the elements being rejected as allegedly anticipated or suggested by Logan are expressly "(not shown)": Applicants respectfully concur that these elements are not taught, anticipated or suggested, as Logan teaches away from the claims. In the interests of compact prosecution (MPEP § 707.07(g)), it is respectfully pointed out that according to C.F.R. § 1.104(c)(2): "In rejecting claims for want of novelty or for obviousness, the examiner must cite the best references at his or her command. When a reference is complex or shows or describes inventions other than that claimed by the applicant, the particular part relied on must be designated as nearly as practicable. The pertinence of each reference, if not apparent, must be clearly explained and each rejected claim specified." Significantly, besides failing to anticipate or suggest *all* of the elements of the claims, Logan unnecessarily exposes original data & uses "additive information" not the more computationally beneficial "abstracts" of the claims. Logan's *alleged* "query signal", besides being "(not shown)", is not the "query signal" of the claims but apparently "user preferences". It is unclear how user preferences relate to query signals as presented. Thus, clarification is respectfully sought. Applicants respectfully direct the Office to Logan's own disclosure which expressly teaches away from the query signals of the claims, stating (Col. 7 ll. 39-45):

> In operation, a user at the data processing system 16 can log on to a Web service running on the digital processor 28 and from the Web service identify hypertext links to URLs of identification signals for songs of interest to that particular user. The user can download the identification signals to a local database and employ the local database to search the broadcast programming signal to identify songs of interest to that user. Alternatively, the data processor 16 can employ agent software modules that search through sources of computer readable information to identify identification signals that are of interest to the user.

Second, besides the second input for query signals, Logan cannot anticipate or suggest "abstracts", as Logan's "comparator" expressly requires: 1) "identification signal"; 2) "attribute signal"; & 3) "known segment of the broadcast programming signal". Abstracts as claimed do not cause original data to be exposed unnecessarily – in fact,

17

**BLU000817**

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

even the "known segment" of Logan is exposed. Detail on Logan's *alleged* "comparator" provided by Logan supports the contention that the reference expressly teaches away from the subject matter of the pending claims. Logan at Col. 8 ll. 35 – Col. 9 ll. 26 [emphasis added]:

> The identification signal memory 64 can store for any one of the segments, an identification signal that has information suitable for identifying the occurrence of that known segment within the data signal provided by the receiver element 12. **Accordingly, the comparator 50 searches the data signal representative of the broadcast programming signal for the occurrence of one or more of those known segments by identifying an identification signal stored within the identification signal memory 64 and representative of the known segment.**

> As depicted in FIG. 2, the correlator element 62 connects between the buffer processor 60 and the identification signal memory 64. The controller 48 will direct the compression buffer 42 to download a portion of the data signal stored in a compressed format within the memory 46 to the buffer processor 60. **The correlator 62 can then process the portion of the data signal within the buffer. Processor 60 can correlate that downloaded portion with one or more of the identification signals stored within the identification signal memory 64. If the correlator 62 determines no match to exist between that portion of the data signal and any one of the identification signals within the memory 64, the comparator 50, via the depicted bi-directional transmission path, informs the controller 48 and the controller 48 directs the compression buffer 42 to download another segment of the data signal.**

> The comparator 50 depicted in FIG. 2 can employ any correlation device or technique for processing an identification signal to detect the occurrence of a known segment of a data signal. In one embodiment, the comparator 50 includes a correlator 62 of the type disclosed in U.S. Pat. No. 4,843,562 issued to Kenyon et al., the teachings of which are incorporated herein by reference. The comparator 50 can be an electrical circuit card assembly or a software module executing on the data processor 16. In the embodiment depicted in FIG. 2, **the comparator 50 includes an identification signal memory 64 that has identification signals and attribute signals associated with the program segment identified by the respective identification signal.**

BLU000818

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

In one embodiment, the attribute signal is representative of the length of the segment being identified. More particularly, the attribute signal provides a preceding signal length and a succeeding signal length, each of which respectively describes the period of time that the known segment runs respective to the portion of the segment that is associated with the identification signal. Consequently, the correlator 62, upon detecting a match between the data signal in the buffer processor 60 and one of the identification signals, can delimit a beginning and end for the segment associated with the respective identification signal. For example, an identification signal within memory 64 can include an attribute signal that identifies the length of time that the program segment runs before the occurrence of the identifying portion and similarly the length of time that the program segment continues for after the occurrence of the identifying portion. The buffer processor 60 can include a computer program that can employ these attribute signals to generate a mark signal that delimits the beginning and end of the program segment to mark one segment of the broadcast programming signal.

Third, Applicants again respectfully seek clarification as it appears that the 1) "identification signal"; 2) "attribute signal"; & 3) "known segment of the broadcast programming signal" as cited by Logan -- it is not a compact representation derived from a signal let alone the reference and/or query signals of the claims. Signal abstracts retain a perceptual relationship with the signal from which it was created or derived. Like one way functions that are more robust for purposes of efficiently identifying and analyzing signal (e.g., robust hashes) while minimizing exposure of original data to prevent subsequent tampering or misuse, Logan teaches away, instead, disclosing: "[t]he invention will be understood in one aspect as systems for editing a radio broadcast signal so as to make it more suited to an individual audience member's tastes" (Col. 2 ll. 24-27). That the broadcast is "known" it logically follows that Logan cannot anticipate or suggest abstracts as claimed herein, especially that Logan requires at least three ("3") additive signals, including the original data.

Next, Currently Amended Independent Claim 33 (and all claims depending therefrom) includes the following element absent in Logan and the art "creating an abstract for a data signal wherein the data signal abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the data signal". Because Logan is apparently teaching edits of known broadcast signals, there cannot be the claim element: "data signal abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the data signal". There would be no need, Logan expressly teaches away addressing instead signals that are "known" in advance of broadcast (Please see, Abstract "before broadcast"). Indeed, at least one benefit over Logan is that a previously received known radio broadcast segment may have been stripped of its associated "identification signal", under the claimed subject matter, a user can use the signal alone and its associated abstract for "comparing the created query signal abstract to the at least one database of data signal abstracts, each abstract in the at least one database corresponding to a version of the data signal; and determining whether the query signal abstract matches any of the stored data signal

19

BLU000819

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

abstracts in the database to enable authorized transmission or use of the query signal for the query signal abstract based on whether a match was determined". None of these elements are anticipated or suggested by Logan or the prior art.

Currently Amended Independent Claim 43 (and all claims depending therefrom) recites the following feature absent in Logan and the art "a database containing a plurality of signal abstracts, the plurality of signal abstracts each associated with a corresponding signal wherein each of the plurality of the signal abstracts retains a perceptual relationship with the corresponding signal". Similarly, Currently Amended Independent Claim 55 (and all claims depending therefrom) recites the following feature absent in Logan and the art "creating an abstract of each reference signal received based on perceptual characteristics representative of parameters to differentiate between versions of the reference signal". Again, Logan's users allegedly have "a device according to the invention for modifying a broadcast programming signal to generate a proprietary program signal that can be more suited to the individual users tastes and preferences (Logan at Col. 5 ll. 64 -67) teaching away from the subject matter of the instant claims.

Because Logan does not disclose, anticipate or suggest the elements of Independent Claim 21: (1) a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal; (2) a second processor that creates an abstract of each query signal wherein the abstract comprises signal characteristic parameters of the query signal; & (3) a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts wherein a match indicates the query signal is a version of at least one of the reference signals, Logan cannot be considered prior art. Similarly, Logan does not anticipate or suggest the elements of Independent Claims 33, 43 & 55 (and all claims depending therefrom, respectively). In view of the above comments, it is respectfully submitted that the cited reference does not anticipate or suggest the claims. Thus, the Applicant respectfully requests the Section 102 rejections be withdrawn for Independent Claims 21, 33, 43 & 55 (and all claims depending therefrom). The claims that depend therefrom, namely, Claims 22 - 24, 26 – 40, 44 – 46, 48 – 51, 55-57, 59-63 & 65-67 are also allowable. The Applicants' silence as to the Examiner's comments is not indicative of acquiescence to the stated grounds of rejection.

BLU000820

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

### Rejections under 35 U.S.C. § 103

In order to "establish a prima facie case of obviousness" MPEP § 706.02(j):

> [T]he examiner should set forth in the Office action:
>
> (A) the relevant teachings of the prior art relied upon, preferably with reference to the relevant column or page number(s) and line number(s) where appropriate,
> (B) the difference or differences in the claim over the applied reference(s),
> (C) the proposed modification of the applied reference(s) necessary to arrive at the claimed subject matter, and
> (D) an explanation >as to< why >the claimed invention would have been obvious to< one of ordinary skill in the art at the time the invention was made**.
>
> **
>
> "To support the conclusion that the claimed invention is directed to obvious subject matter, either the references must expressly or impliedly suggest the claimed invention or the examiner must present a convincing line of reasoning as to why the artisan would have found the claimed invention to have been obvious in light of the teachings of the references." *Ex parte Clapp*, 227 USPQ 972, 973 (Bd. Pat. App. & Inter. 1985). **
>
> Where a reference is relied on to support a rejection, whether or not in a minor capacity, that reference should be positively included in the statement of the rejection. See *In re Hoch*, 428 F.2d 1341, 1342 n.3 166 USPQ 406, 407 n. 3 (CCPA 1970).
>
> It is important for an examiner to properly communicate the basis for a rejection so that the issues can be identified early and the applicant can be given fair opportunity to reply. Furthermore, if an initially rejected application issues as a patent, the rationale behind an earlier rejection may be important in interpreting the scope of the patent claims. Since issued patents are presumed valid (35 U.S.C. 282) and constitute a property right (35 U.S.C. 261), the written record must be clear as to the basis for the grant. Since patent examiners cannot normally be compelled to testify in legal proceedings regarding their mental processes (see MPEP § 1701.01), it is important that the written record clearly explain the rationale for decisions made during prosecution of the application. Next, "First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or to

21

BLU000821

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

> combine reference teachings. Second, there must be a reasonable expectation of success. Finally, the prior art reference (or references when combined) must teach or suggest all the claim limitations. The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art and not based on applicant's disclosure. *In re Vaeck,* 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991).

Applicants submit that the Office Action has failed to establish a *prima facie* case of obviousness to the extent that the citations do not teach or suggest all of the claim elements. The arguments in connection with Logan as discussed in the Interview on or about April 16, 2009, are cited above. The Herman et al. reference (US Publication No. 2002/0073043, hereinafter "Herman"), Ogawa et al. (US Publication No. 2001/0043594, hereinafter "Ogawa"), Kenyon reference (U.S. Patent No. 5,210,820, hereinafter "Kenyon"), Reed et al. (US Publication No. 2004/0125983, hereinafter "Reed") will be further addressed below.

Second, there is no motivation or suggestion to make the proposed combinations of the citations as directed by the Office. More particularly, there is no motivation to combine Logan with Herman, Logan with Ogawa, Logan with Kenyon, or Logan with Reed. The Federal Circuit has emphasized the importance of providing evidence of motivation to combine in *Winner Int'l Royalty Corp. v. Ching-Rong Wang,* 202 F. 3d 1340, 1348-49 (Fed. Cir. Jan. 27, 2000). "Although a reference need not expressly teach that the disclosure contained therein should be combined with another . . . the showing of combinability, in whatever form, must nevertheless be 'clear and particular.'" *Winner,* 202 F. 3d at 1348-49 (citations omitted). Further, the "absence of such a suggestion to combine is dispositive in an obviousness determination." *Gambro Lundia AB v. Baxter Healthcare Corp.,* 11 F.3d 1573, 1579 (Fed. Cir. 1997).

Instead, it appears that the Office Action identifies citations without reference to the elements of the claims, and has combined them. Even assuming *arguendo* that the references contained all elements of the claimed invention, it is still impermissible to reject a claim that would *allegedly* have been obvious simply "by locating references which describe various aspects of a patent applicant's invention without also providing evidence of the motivating force which would impel one skilled in the art to do what the patent applicant has done." *Ex parte Levengood,* 28 USPQ2d 1300, 1303 (Bd. Pat. App. & Inter. 1993) [emphasis added]. Applicants submit that the Office has not satisfied the initial burden "to provide some suggestion of the desirability of doing what the inventor has done", *please see* further MPEP § 2141III.

> Although the Supreme Court in *KSR* cautioned against an overly rigid application of TSM, it also recognized that TSM was one of a number of valid rationales that could be used to determine obviousness. (According to the Supreme Court, establishment of the TSM approach to the question of obviousness "captured a helpful insight." 550 U.S. at ___, 82 USPQ2d at 1396 (citing *In re Bergel,* 292 F.2d 955, 956-57, 130 USPQ 206, 207-208 (1961)). Furthermore, the Court explained that "[t]here is no necessary inconsistency

22

BLU000822

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

> between the idea underlying the TSM test and the *Graham* analysis." 550 U.S. at ___, 82 USPQ2d at 1396.

Last, *for argument's sake*, even if the claim elements did teach or suggest all of the claim elements there is no reasonable expectation of success in combining the citations as suggested by the Office Action. The suggested combination[s] are not a "predictable use of prior art elements according to their established functions" (*KSR* Opinion at Page 13). For at least these reasons, Applicants respectfully request the Section 103 rejections of Claims 31, 37, 41, 42, 47, 52, 53, 54 & 64 be withdrawn. Additional discussion will be presented below.

BLU000823

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

**1. a)  35 USC § 103(a) Rejections based on U.S. Patent No. 6,088,455 Logan et al. ("Logan") in view of U.S. Publication 2002/0073043 by Herman et al. ("Herman") as applied to Claims 31, 37 and 64**

Claims 31, 37 & 64 have been rejected under 35 U.S.C. § 103(a) as being allegedly unpatentable over Logan in view of Herman. Applicants respectfully traverse. The references do not disclose or suggest an "abstract" as claimed. In fact, Logan expressly states "[s]ystems and methods for editing broadcast programming signals which allow a user to compile a proprietary signal tailored to the user's individual preferences are provided" (Logan at Abstract). Without conceding the propriety of the asserted combination, Applicants submit that the asserted combination does not disclose at least the following feature of Independent Claim 21 (from which Claim 31 depends), among other features, "a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal", for at least the following reasons, Logan apparently teaches edits of a known broadcast segment. Similar to Claim 21, pending Independent Claim 37 (from which Claim 33 depends) recites, "a comparing device that compares the query abstract to the plurality of abstracts stored in the reference database to identify a matching signal abstract". Last, pending Independent Claim 55 (from which Claim 64 depends) recites, "creating an abstract of each reference signal received based on perceptual characteristics representative of parameters to differentiate between versions of the reference signal".

Herman is cited for its alleged disclosure of various features of Claim 31, 37 and 64. Applicants respectfully submit that Herman does not add anything to Logan that would remedy the deficiencies cited above. Herman allegedly teaches (Herman at Abstract): "... Smart Receipts, that electronically document a transaction between two parties and maintains a persistent connection between the two parties following a successful online transaction". Herman's "Smart Receipts" are *not* the "applies a cryptographic protocol to the abstract" (Claim 31); "applying a cryptographic protocol to at least one created signal abstract" (Claim 37); and "applying a cryptographic protocol to the abstract of said reference signal" (Claim 64) as contended in the Office Action at 40 on Page 11 of the non-final Office Action of March 5, 2009. In fact, Herman teaches away from the claim[s] by disclosing: "The Transactor servers essentially define a marketplace in which safe transactions may occur, and existence and ownership may be asserted and verified under rules (i e., "Transactor Laws of Nature") defined for the Transactor system as a whole. The primary purpose of the Transactor system is to provide a safe marketplace for objects and owners outside the scope of any game in which those objects and owners might participate." (Herman at [0058]) – not enhancing uniqueness of an abstract, per se, as Herman's system apparently determines what is unique without regard to information submitted for analysis, monitoring or identification.

Second, the Office has not presented "clear and particular" evidence of a motivating force. The Office Action appears to identify citations that allegedly disclose elements of the claims. This gives rise to impermissible hindsight, as there is clearly no motivation to combine Logan and Herman. Even assuming, *for argument's sake*, there was a motivation to make the proposed combination of Logan and Herman, the combination fails to disclose or suggest all of the terms of Independent Claim 31 (and all claims depending therefrom, namely, claim 31), Independent Claim 31 (and all claims depending therefrom, namely, claim 37) and Independent Claim 64 (and all claims that

24

BLU000824

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

depend therefrom, namely, 64). Combining Logan and Herman would be improper as Logan's known broadcast segments are not Transactor servers with the alleged "smart receipts" of Herman – especially as the user's preference causes *edits* a known broadcast segment. That Herman does restrict access to "Transactor Laws of Nature" raises the issue that Herman may be non-analogous art (*Please see* MPEP § 2141.01). Instead of encouraging broader access to information while monitoring and analyzing the identity and use of said information, Herman appears directed at a different issue. In fact, the combination of Logan and Herman would likely increase the computational complexity of monitoring, identifying and analyzing signals with "Transactor servers" without any established benefit.

Third, there is no reasonable likelihood of success. Applying Herman's "Transactor servers" would logically result in more restrictions of Logan's "known broadcast segments", teaching away from the claims. It is thus respectfully submitted that there is no reasonable likelihood of success in combining these two citations, at least as suggested by the Office.

Last, a review of the Office Action makes clear that in each rejection, Logan and Herman are relied upon for those elements that are present in the independent claims as well as the dependent claims. Because the cited citations, either alone or in combination fail to disclose all of the claim elements, the Office has failed to establish a prima facie case for obviousness for <u>all</u> claims that depend from Independent Claims 31, 37 and 64. *See* MPEP § 2143.03: "To establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA 1974). "All words in a claim must be considered in judging the patentability of that claim against the prior art." *In re Wilson*, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970). For at least this reason, the Office has failed to establish a prima facie case of obviousness for all claims that depend from Claims 31, 37 and 64. *See* MPEP § 2143.03 ("If an independent claim is nonobvious under 35 U.S.C. § 103, then any claim depending therefrom is nonobvious."). Accordingly, for at least these reasons, Applicants respectfully request withdrawal of the Section 103 rejection for Claims 31, 37 and 64.

**b) 35 USC § 103(a) Rejections based on U.S. Patent No. 6,088,455 Logan et al. ("Logan") in view of U.S. Publication 2001/0043594 by Ogawa et al. ("Ogawa") as applied to Claims 41 and 47**

Claims 41 & 47 have been rejected under 35 U.S.C. § 103(a) as being allegedly unpatentable over Logan in view of Ogawa. Applicants respectfully traverse. The references do not disclose or suggest an "abstract" as claimed. In fact, Logan expressly states "[s]ystems and methods for editing broadcast programming signals which allow a user to compile a proprietary signal tailored to the user's individual preferences are provided" (Logan at Abstract). Without conceding the propriety of the asserted combination, Applicants submit that the asserted combination does not disclose at least the following feature of Independent Claim 33 (from which Claim 41 depends), among other features, "creating an abstract for a data signal wherein the data signal abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the data signal", for at least the following reasons, Logan apparently teaches edits of a known broadcast segment. Similar to Claim 33, pending Independent Claim 43 (from which Claim 47 depends) recites, "a comparing device that compares the

BLU000825

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

query abstract to the plurality of abstracts stored in the reference database to identify a matching signal abstract".

Ogawa is cited for its alleged disclosure of various features of Claim 41 and Claim 47. Applicants respectfully submit that Ogawa does not add anything to Logan that would remedy the deficiencies cited above. Ogawa allegedly teaches (Ogawa at Abstract): "[a] code for uniquely identifying, for example, a telephone terminal and a computer terminal may be formed with the codes corresponding to operators of a telephone terminal". Ogawa's "code" is *not* the "information associated with the comparison step" as contended in the Office Action. In fact, Ogawa teaches away from the claim[s] by disclosing "using codes corresponding to an operator of a telephone terminal" (Ogawa at [0002]) for the purpose of "… making access to the information network, for example, from telephone terminals" (Ogawa at [0009]) – not the analysis or monitoring of the information *itself.*

Second, the Office has not presented "clear and particular" evidence of a motivating force. The Office Action appears to identify citations that allegedly disclose elements of the claims. This gives rise to impermissible hindsight, as there is clearly no motivation to combine Logan and Ogawa. Even assuming, *for argument's sake*, there was a motivation to make the proposed combination of Logan and Ogawa, the combination fails to disclose or suggest all of the terms of Independent Claim 33 (and all claims depending therefrom, namely, claim 41) and Independent Claim 43 (and all claims depending therefrom, namely, claim 47). Combining Logan and Ogawa would be improper as Logan's known broadcast segments are not access-restricted terminals. That Ogawa does restrict access to terminals raises the issue that Ogawa may be non-analogous art (*Please see* MPEP § 2141.01). Instead of encouraging broader access to information while monitoring and analyzing the provenance of said information, Ogawa appears directed at a different issue. In fact, the combination of Logan and Ogawa would likely increase the computational complexity of monitoring and analyzing signals with "access restricted terminals" without any established benefit.

Third, there is no reasonable likelihood of success. Applying Ogawa's "access restricted" terminals would logically result in more restrictions of Logan's "known broadcast segments", teaching away from the claims. It is thus respectfully submitted that there is no reasonable likelihood of success in combining these two citations, at least as suggested by the Office.

Last, a review of the Office Action makes clear that in each rejection, Logan and Ogawa are relied upon for those elements that are present in the independent claims as well as the dependent claims. Because the cited citations, either alone or in combination fail to disclose all of the claim elements, the Office has failed to establish a prima facie case for obviousness for <u>all</u> claims that depend from Independent Claims 33 and 43. *See* MPEP § 2143.03: "To establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA 1974). "All words in a claim must be considered in judging the patentability of that claim against the prior art." *In re Wilson*, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970). For at least this reason, the Office has failed to establish a prima facie case of obviousness for all claims that depend from Claims 33 and 43. *See* MPEP § 2143.03 ("If an independent claim is nonobvious under 35 U.S.C. § 103, then any claim depending therefrom is nonobvious."). Accordingly, for at least these reasons,

26

BLU000826

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

Applicants respectfully request withdrawal of the Section 103 rejection for Claims 41 and 47.

### c) 35 USC § 103(a) Rejections based on U.S. Patent No. 6,088,455 Logan et al. ("Logan") in view of U.S. Patent No. 5,210,820 to Kenyon ("Kenyon") as applied to Claims 42 and 53

Claims 42 & 53 have been rejected under 35 U.S.C. § 103(a) as being allegedly unpatentable over Logan in view of Kenyon. Applicants respectfully traverse. The references do not disclose or suggest an "abstract" as claimed. In fact, Logan expressly discloses "[s]ystems and methods for editing broadcast programming signals which allow a user to compile a proprietary signal tailored to the user's individual preferences are provided" (Logan at Abstract). Without conceding the propriety of the asserted combination, Applicants submit that the asserted combination does not disclose at least the following feature of Independent Claim 33 (from which Claim 42 depends), among other features, "creating an abstract for a data signal wherein the data signal abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the data signal", for at least the following reasons, Logan apparently teaches edits of a known broadcast segment. Similar to Claim 33, pending Independent Claim 43 (from which Claim 53 depends) recites, "a comparing device that compares the query abstract to the plurality of abstracts stored in the reference database to identify a matching signal abstract".

Kenyon is cited for its alleged disclosure of various features of Claim 42 and Claim 53. Applicants respectfully submit that Kenyon does not add anything to Logan that would remedy the deficiencies cited above. Kenyon allegedly teaches (Kenyon at Abstract): "[a] statistical moment". Kenyon's "statistical moment" is *not* the "relatedness index or measure of similarity to generate uniquely identifiable information to determine authorization" as contended in the Office Action at Page 9 – "33". In fact, Kenyon teaches away from the claim[s] by disclosing "for each song in the list, correlate the corresponding reference pattern with the time warped input waveform S211" (Kenyon at Fig. 18). Unlike abstracts, Kenyon's "statistical moment" is "... *used as an address to access a data base wherein a pointer is stored, the pointer pointing to a further data base location where the target signal's identification code is stored.*" (Kenyon at Column 5 ll. 55 – 60) not the analysis or monitoring of the information itself.

Second, the Office has not presented "clear and particular" evidence of a motivating force. The Office Action appears to identify citations that allegedly disclose elements of the claims. This gives rise to impermissible hindsight, as there is clearly no motivation to combine Logan and Kenyon. Even assuming, *for argument's sake*, there was a motivation to make the proposed combination of Logan and Kenyon, the combination fails to disclose or suggest all of the terms of Independent Claim 33 (and all claims depending therefrom, namely, claim 42) and Independent Claim 43 (and all claims depending therefrom, namely, claim 53). Combining Logan and Kenyon would be improper as Logan's known broadcast segments are already "identifiable". Logan too requires access to the original signal. Again, this teaches away from encouraging broader access to information and differentiating between similar content or versions of the same content. In fact, the combination of Logan and Kenyon would likely increase the computational complexity of monitoring and analyzing signals as original signal

BLU000827

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

material is already provided under Logan, Kenyon does not provide any established benefit.

Third, there is no reasonable likelihood of success. Applying Kenyon's "statistical moment" would logically result in apparently exact comparisons as Logan's alleged monitoring and analysis is of "known broadcast segments" – teaching away from the claims. It is thus respectfully submitted that there is no reasonable likelihood of success in combining these two citations, at least as suggested by the Office. Further, Claim 53 is directed to the additional claim element "further comprising an embedder to embed uniquely identifiable data into at least one of the received reference signal, the received query signal or both the received reference signal and the received query signal" raises the issues that Kenyon may be non-analogous art (*Please see* MPEP § 2141.01) as no embedding process or device is mentioned in Kenyon as best understood. In the interests of compact prosecution (MPEP § 707.07(g)), it is respectfully pointed out that according to C.F.R. § 1.104(c)(2): "In rejecting claims for want of novelty or for obviousness, the examiner must cite the best references at his or her command. When a reference is complex or shows or describes inventions other than that claimed by the applicant, the particular part relied on must be designated as nearly as practicable. The pertinence of each reference, if not apparent, must be clearly explained and each rejected claim specified."

Last, a review of the Office Action makes clear that in each rejection, Logan and Kenyon are relied upon for those elements that are present in the independent claims as well as the dependent claims. Because the cited citations, either alone or in combination, fail to disclose all of the claim elements, the Office has failed to establish a prima facie case for obviousness for all claims that depend from Independent Claims 33 and 43. *See* MPEP § 2143.03: "To establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 USPQ 580 (CCPA 1974). "All words in a claim must be considered in judging the patentability of that claim against the prior art." *In re Wilson*, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970). For at least this reason, the Office has failed to establish a prima facie case of obviousness for all claims that depend from Claims 33 and 43. *See* MPEP § 2143.03 ("If an independent claim is nonobvious under 35 U.S.C. § 103, then any claim depending therefrom is nonobvious."). Accordingly, for at least these reasons, Applicants respectfully request withdrawal of the Section 103 rejection for Claims 42 and 53.

d) 35 USC § 103(a) Rejections based on U.S. Patent No. 6,088,455 Logan et al. ("Logan") in view of U.S. Publication 2004/0125983 by Reed et al. ("Reed") as applied to Claims 52 and 54

Claims 52 & 54 have been rejected under 35 U.S.C. § 103(a) as being allegedly unpatentable over Logan in view of Reed. Applicants respectfully traverse. The references do not disclose or suggest an "abstract" as claimed. In fact, Logan expressly discloses "[s]ystems and methods for editing broadcast programming signals which allow a user to compile a proprietary signal tailored to the user's individual preferences are provided" (Logan at Abstract). Without conceding the propriety of the asserted combination, Applicants submit that the asserted combination does not disclose at least the following feature of Independent Claim 52 (from which Claim 21 depends), among other features, "a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal

28

BLU000828

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

characteristic parameters configured to differentiate between a plurality of versions of the reference signal", for at least the following reasons, Logan apparently teaches edits of a known broadcast segment. Similar to Claim 21, pending Independent Claim 33 (from which Claim 54 depends) recites, "creating an abstract for a data signal wherein the data signal abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the data signal".

Reed is cited for its alleged disclosure of various features of Claim 52 and Claim 54. Applicants respectfully submit that Reed does not add anything to Logan that would remedy the deficiencies cited above. Reed allegedly teaches (Reed at Abstract): "[a] user interface scheme enables the user to control encoding of the watermark in desired color regions". Reed's "mapping process" is *not* the "an embedder to watermark signals with uniquely identifiable information" (Claim 52) or "encoding information into the data signal with a watermarking technique" (Claim 54) as contended in the Office Action at Page 13. In fact, Reed allegedly focuses on "color adaptive watermarking" (Title) that relies on the original signal. Unlike secure watermarking techniques, Reed's reliance on the original signal undermines any alleged security as apparently argued by the Office, because Reed's alleged watermarks can be manipulated by unknown parties to undermine proper identification. "To extract the message, the reader captures a representation of the signal suspected of containing a watermark and then processes it to detect the watermark and decode the message" (Reed at Paragraph 52) not watermarking signals for uniqueness in the manner claimed.

Second, the Office has not presented "clear and particular" evidence of a motivating force. The Office Action appears to identify citations that allegedly disclose elements of the claims. This gives rise to impermissible hindsight, as there is clearly no motivation to combine Logan and Reed. Even assuming, *for argument's sake*, there was a motivation to make the proposed combination of Logan and Reed, the combination fails to disclose or suggest all of the terms of Independent Claim 21 (and all claims depending therefrom, namely, claim 52) and Independent Claim 33 (and all claims depending therefrom, namely, claim 54). Combining Logan and Reed would be improper as Logan's *known* broadcast segments are already "identifiable". In fact, the combination of Logan and Reed would likely increase the computational complexity of monitoring and analyzing signals as original, identifiable signal material is already provided under Logan, Reed does not provide any established benefit.

Third, there is no reasonable likelihood of success. Applying Reed's "color adaptive watermarks" would logically result in original signals being exposed and any watermarks easily removed by differencing with the original unwatermarked material as Logan's alleged monitoring and analysis is of "known broadcast segments" – teaching away from the claims. It is thus respectfully submitted that there is no reasonable likelihood of success in combining these two citations, at least as suggested by the Office.

Last, a review of the Office Action makes clear that in each rejection, Logan and Reed are relied upon for those elements that are present in the independent claims as well as the dependent claims. Because the cited citations, either alone or in combination, fail to disclose all of the claim elements, the Office has failed to establish a prima facie case for obviousness for <u>all</u> claims that depend from Independent Claims 33 and 43. *See* MPEP § 2143.03: "To establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981,

BLU000829

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

180 USPQ 580 (CCPA 1974). "All words in a claim must be considered in judging the patentability of that claim against the prior art." *In re Wilson*, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970). For at least this reason, the Office has failed to establish a prima facie case of obviousness for all claims that depend from Claims 21 and 33. *See* MPEP § 2143.03 ("If an independent claim is nonobvious under 35 U.S.C. § 103, then any claim depending therefrom is nonobvious."). Accordingly, for at least these reasons, Applicants respectfully request withdrawal of the Section 103 rejection for Claims 52 and 54.

30

BLU000830

Application No. 12/005,229
Reply to Office Action of March 5, 2009 dated June 5, 2009

## CONCLUSION

Applicants maintain that this application is in condition for allowance, and such disposition is earnestly solicited. Applicants' silence as to the Examiner's comments is not indicative of an acquiescence to the stated grounds of rejection. If the Examiner believes that an interview with the Applicants, either by telephone or in person, would further prosecution of this application, we would welcome the opportunity for such an interview.

It is believed that no other fees are required to ensure entry and consideration of this response.

Respectfully submitted,

Date:  June 5, 2009                        By: _____
                                           Scott A. Moskowitz
                                           Tel (305) 956-9041
                                           Fax (305) 956-9042

                                           For Blue Spike, Inc.

                                           By: _____
                                           Scott A. Moskowitz
                                           President

31

BLU000831

Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

PTO/SB/17 (10-08)

Effective on 12/08/2004.
Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).

# FEE TRANSMITTAL
## For FY 2009

☑ Applicant claims small entity status. See 37 CFR 1.27

| **Complete if Known** | |
|---|---|
| Application Number | 12/005,229 |
| Filing Date | December 26, 2007 |
| First Named Inventor | Scott A. MOSKOWITZ et al. |
| Examiner Name | Carol S.W. TSAI |
| Art Unit | 2857 |
| Attorney Docket No. | 066112.0132CONT |

| TOTAL AMOUNT OF PAYMENT | ($) *406.00* |
|---|---|

## METHOD OF PAYMENT (check all that apply)

☐ Check ☑ Credit Card ☐ Money Order ☐ None ☐ Other (please identify): _____

☐ Deposit Account   Deposit Account Number: _____   Deposit Account Name: _____

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☐ Charge fee(s) indicated below
☐ Charge any additional fee(s) or underpayments of fee(s) under 37 CFR 1.16 and 1.17
☐ Charge fee(s) indicated below, **except for the filing fee**
☐ Credit any overpayments

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| Application Type | FILING FEES Fee ($) | Small Entity Fee ($) | SEARCH FEES Fee ($) | Small Entity Fee ($) | EXAMINATION FEES Fee ($) | Small Entity Fee ($) | Fees Paid ($) |
|---|---|---|---|---|---|---|---|
| Utility | 330 | 165 | 540 | 270 | 220 | 110 | _____ |
| Design | 220 | 110 | 100 | 50 | 140 | 70 | _____ |
| Plant | 220 | 110 | 330 | 165 | 170 | 85 | _____ |
| Reissue | 330 | 165 | 540 | 270 | 650 | 325 | _____ |
| Provisional | 220 | 110 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 52 | 26 |
| Each independent claim over 3 (including Reissues) | 220 | 110 |
| Multiple dependent claims | 390 | 195 |

| Total Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| _____ - 20 or HP = | 6 | x 26 = | *156.00* |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| _____ - 3 or HP = | _____ | x _____ = | _____ |

HP = highest number of independent claims paid for, if greater than 3.

| Multiple Dependent Claims | |
|---|---|
| Fee ($) | Fee Paid ($) |
| _____ | _____ |

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| _____ - 100 = | _____ | / 50 = _____ (round up to a whole number) x | _____ = | _____ |

### 4. OTHER FEE(S)

| | Fees Paid ($) |
|---|---|
| Non-English Specification, $130 fee (no small entity discount) | *180.00 *70.00 *156.00* |
| Other (e.g., late filing surcharge): *IDS After 1st OA & TD; 6 new dependent claims (6)* | *406.00* |

## SUBMITTED BY

| Signature | *[signature]* | Registration No. (Attorney/Agent) | | Telephone 305 956 9041 |
|---|---|---|---|---|
| Name (Print/Type) | Scott A. MOSKOWITZ | | | Date June 5, 2009 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

BLU000832

PTO/SB/26 (06-09)
Approved for use through 06/30/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 066112.0132cont |
| --- | --- |

In re Application of: Scott A. MOSKOWITZ

Application No.: 12/005,229

Filed: December 26, 2007

For: Method And Device For Monitoring And Analyzing Signals

The owner*, Blue Spike, Inc. _____, of ____100____ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term **prior patent** No. 7,346,472 _____ as the term of said prior patent is defined in 35 U.S.C. 154 and 173, and as the term of said **prior patent** is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:

    expires for failure to pay a maintenance fee;
    is held unenforceable;
    is found invalid by a court of competent jurisdiction;
    is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
    has all claims canceled by a reexamination certificate;
    is reissued; or
    is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. [✔] For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. [ ] The undersigned is an attorney or agent of record. Reg. No._____

_____      June 5, 2009
Signature                                   Date

_____
Scott A. MOSKOWITZ
Typed or printed name

_____
305.956.9041
Telephone Number

[✔] Terminal disclaimer fee under 37 CFR 1.20(d) included.

**WARNING: Information on this form may become public.** Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

06/08/2009 DAGOUM1 00000011 12005229
02 FC:2814                       70.00 OP

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this certification. See MEPP § 324.

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

BLU000833