**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>    *Plaintiff*, | § <br> § <br> § | Civil Action No. 6:12-CV-499 MHS <br><br> LEAD CASE |
| v. | § <br> § | |
| TEXAS INSTRUMENTS, INC.<br>    *Defendants* | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**
**ON THE BASIS THAT CLAIM TERMS ARE INDEFINITE**

# TABLE OF CONTENTS

Page

RULE 56(A)(1) STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

RULE 56(A)(2) STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 2

INTRODUCTION ............................................................................................................... 8

LEGAL STANDARDS ........................................................................................................ 9

ARGUMENT .................................................................................................................... 10

 A. All Asserted Claims Are Indefinite Because the "Abstract" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty. ......................................................................................... 10

  1. Blue Spike admits that abstract has no "single definition." ..................... 11

  2. The asserted patents provide no definition of "abstract" and it has no accepted meaning in the art. ........................................................ 12

 B. Claims 8, 11 and 17 of the '175 Patent Are Indefinite Because the "Similar to" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty. .................................................................. 15

 C. Claim 11 of the '472 Patent Is Indefinite Because the "Index of Relatedness" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty. .................................................................. 18

 D. Claim 16 of the '175 Patent Is Indefinite Because the "Programmed or Structured to Use An/Said Algorithm" Limitations Fail to Inform Those Skilled in the Art About the Scope of the Invention With Reasonable Certainty ..................................................................................................................... 19

 E. Claim 7 of the '700 Patent and Claim 17 of the '494 Patent Are Indefinite Because the "Data Describing a Portion of the Characteristics of Its Associated Reference Signal" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty. ......................................... 20

 F. Claim 10 of the '700 Patent Is Indefinite Because "Wherein the System Applies a Cryptographic Protocol" Is a Method Step in a System Claim. .......... 22

 G. Claim 11 of the '700 Patent and Claim 21 of the '494 Patent Are Indefinite Because "Further Comprising Storing the Hashed Abstract" Is a Method Step in System Claims. ...................................................................................................... 25

 H. Claim 22 of the '494 Patent Is Indefinite Because the Limitation "Based on the Comparison Step" Improperly Recites a Method Step in a System Claim. ......... 26

I.  Claim 11 of the '472 Patent and Claims 1, 11 and 29 of the '494 Patent Are Indefinite Because "Device that Compares," "Comparing Device," and "Device Configured to Determine" Are Means Plus Function Elements that Have No Corresponding Structure or Algorithm.................................................. 27

CONCLUSION................................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007) ................................................................... 21

*Ariba, Inc. v. Emptoris, Inc.*,
No. 9:07-cv-90, 2008 WL 3482521 (E.D. Tex. Aug. 7, 2008) ..................... 23

*Aventis Pharma S.A. v. Hospira, Inc.*,
743 F. Supp. 2d 305 (D. Del. 2010),
*affirmed on other grounds,* 675 F.3d 1324 (Fed. Cir. 2012) ....................... 24

*Broussard v. Go-Devil Mfg. Co. of L.A., Inc.*,
2014 U.S. Dist. LEXIS 94352 (M.D. La. July 9, 2014) ................................ 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................... 9

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ................................................... 15, 17, 19, 22

*Deep Nines, Inc. v. McAfee, Inc.*,
2010 U.S. Dist. LEXIS 79420 (E.D. Tex. Aug. 4, 2010) .............................. 24

*Endo Pharma. Inc. v. Watson Labs., Inc.*,
2014 U.S. Dist. LEXIS 84804 (E.D. Tex. June 23, 2014) ............................. 12

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
673 F.3d 1361 (Fed. Cir. 2012) ...................................................................... 9

*Ernie Ball, Inc. v. Earvana, LLC*,
502 F. App'x 971 (Fed. Cir. 2013) ................................................................. 14

*Ex parte Lyell*,
17 USPQ2d 1548 (BPAI 1990) ...................................................................... 23

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) ........................................................................................ 10

*Halliburton Energy Servs. Inc. v. M-I, LLC*,
514 F.3d 1244 (Fed. Cir. 2008) .......................................................... 9, 20, 26

*Honeywell Int'l Inc. v. Int'l Trade Comm'n*,
341 F.3d 1332 (Fed. Cir. 2003) ...................................................................... 14

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
732 F.3d 1376 (Fed. Cir. 2013) ...................................................................... 20

*In re Cohn*,
58 438 F.2d 989 (CCPA 1971) ....................................................................... 12

*In re Katz Interactive Call Processing Pat. Litig.*,
639 F.3d 1303 (Fed. Cir. 2011) ................................................................... 9, 23

*Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*,
309 F.3d 1365 (Fed. Cir. 2002) ...................................................................... 11

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005) ........................................................... 23, 26, 27

iii

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
   344 F.3d 1205 (Fed. Cir. 2003) ........................................................ 20

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ........................................... 9, 11, 14, 16, 19, 20, 22

*Prolifiq Software, Inc. v. Veeva Systems Inc.*,
   2014 U.S. Dist. LEXIS 108630 (N.D. Cal. Aug. 6, 2014) ........................ 10, 14, 15, 17, 18

*Rembrandt Data Techs., LP v. AOL, LLC*,
   641 F.3d 1331 (Fed. Cir. 2011) ........................................................ 23, 24

*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*,
   731 F.2d 818 (Fed. Cir. 1984) ........................................................ 16

*SmithKline Beecham Corp. v. Apotex Corp.*,
   403 F.3d 1331 (Fed. Cir. 2005) ........................................................ 15

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
   537 F.3d 1357 (Fed. Cir. 2008) ........................................................ 18, 19, 22

*UltimatePointer, LLC v. Nintendo Co., Ltd.*,
   Nos. 6:11-cv-496, -571, 2013 WL 2325118 (E.D. Tex. May 28, 2013) .......... 23

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
   236 F.3d 684 (Fed. Cir. 2001) ........................................................ 12, 14

*Young v. Lumenis, Inc.*,
   492 F.3d 1336 (Fed. Cir. 2007) ........................................................ 9

### Rules

Fed. R. Civ. P. 56(a) ........................................................ 9

### Constitutional Provisions

U.S. Const., Art. I, § 8, cl. 8 ........................................................ 10

## RULE 56(A)(1) STATEMENT OF ISSUES TO BE DECIDED

1.     Whether all asserted claims of the Asserted Patents are invalid because the Asserted Patents do not inform one of ordinary skill in the art of the meaning of the term "abstract" with reasonable certainty and thus, as Blue Spike concedes "a single definition [is] impossible to achieve" for the term "abstract."

2.     Whether claims 8, 11 and 17 of the '175 patent and the claims that depend therefrom are invalid because the term "similar to" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

3.     Whether claim 16 of the '175 patent is invalid because the phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal," fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention, given that there is no "algorithm" disclosed anywhere in the patent and because the term "said digital query signal" lacks an antecedent basis.

4.     Whether claim 11 of the '472 patent and the claim that depends therefrom are invalid because the term "index of relatedness" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

5.     Whether claim 7 of the '700 patent and claim 17 of the '494 patent and the claims that depend therefrom are invalid because the phrase "data describing a portion of the characteristics of its associated reference signal" fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention, given that it does not indicate what portion or which characteristics of an associated reference signal must be described.

6.     Whether claim 10 of the '700 patent and the claim that depends therefrom are invalid because it recites "an electronic <u>system</u> for monitoring and analyzing at least one signal,

1

comprising," among other elements, a method step "wherein the <u>system</u> *applies a cryptographic protocol* to the abstract of said reference signal, said query signal, or both said reference signal and said query signal."

 7. Whether claim 11 of the '700 patent is invalid because it depends from claim 10 and because it recites "an electronic <u>system</u> for monitoring and analyzing at least one signal, comprising," among other elements, a method step of "*storing the hashed abstract* and/or digitally signed abstract."

 8. Whether claim 21 of the '494 patent is invalid because it recites "a <u>system</u> for analyzing and identifying at least one reference signal, comprising," among other elements, a method step of "*storing the hashed abstract* and/or digitally signed abstract in the reference database."

 9. Whether claim 22 of the '494 patent is invalid because it recites "a <u>system</u> for analyzing and identifying at least one reference signal," but recites a <u>system</u> limitation that depends on the performance of a method step:  "a <u>transmitter</u> for distributing at least one signal *based on the comparison step*.

 10. Whether claim 11 of the '472 patent and claims 1 and 11 of the '494 patent and the claims that depend therefrom are invalid because the "device that compares" and "comparing device" elements are means plus function elements with no corresponding structure disclosed in the specification.

 11. Whether claim 29 of the '494 patent is invalid because the "device configured to determine . . ." element of that claim is a means plus function element with no corresponding structure disclosed in the specification.

### RULE 56(A)(2) STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56(a)(2), certain Defendants, moving for summary judgment herein,

submit the following facts with respect to which there is no genuine issue to be tried.

1.      U.S. Patent No. 7,346,472 states on its face that it was filed on September 7, 2000, and issued on March 18, 2008.  D.I. 176-4.

2.      U.S. Patent No. 7,660,700 states on its face that it was filed on December 26, 2007, with a priority date of September 7, 2000, and issued on February 9, 2010.  D.I. 176-3.

3.      U.S. Patent No. 7,949,494 states on its face that it was filed on December 22, 2009, with a priority date of September 7, 2000, and issued on May 24, 2011.  D.I. 176-2.

4.      U.S. Patent No. 8,214,175 states on its face that it was filed on February 26, 2011, with a priority date of September 7, 2000, and issued on July 3, 2012.  D.I. 176-1.

5.      Blue Spike filed actions for patent infringement against various Defendants on Aug. 9, 2012, and the Court consolidated them on Oct. 9, 2012 (D.I. No. 16).  Blue Spike asserted four patents against Defendants:  U.S. Patent No. 7,346,472 ("the '472 patent"), U.S. Patent No. 7,660,700 ("the '700 patent"), U.S. Patent No. 7,949,494 ("the '494 patent"), and U.S. Patent No. 8,214,175 ("the '175 patent") (collectively, the "Asserted Patents" or "patents-in-suit").  The Asserted Patents share a common specification and describe a method and system for creating an "abstract" of a signal that can be used for monitoring and comparison purposes.  According to the Asserted Patents, "[t]he present invention relates to identification of digitally-sampled information, such as images, audio and video . . . . using only the digital signal itself and then monitoring the number of times the signal is duplicated."  *See, e.g.*, '700 patent at 4:43–60.

**A.  "abstract"**

6.      The term "abstract" appears in every asserted claim of the Asserted Patents.

7.      The term "abstract" has no specific meaning in the art.  Snell Decl., ¶ 36. Declaration of Matthew Turk ("Turk Decl."), ¶ 32; Declaration of Kevin Bowyer ("Bowyer Decl."), ¶ 37.

8.      Blue Spike admits that "a single definition" of "abstract" is "impossible to achieve."  Blue Spike Opening Claim Constr. Br. (D.I. 1700) at 8.

9.      The specification of the Asserted Patents does not inform one of ordinary skill with reasonable certainty as to what "abstract" means in the context of the Asserted Patents.  Snell Decl., ¶¶ 37–42; Turk Decl., ¶¶ 33–35; Bowyer Decl., ¶¶ 3, 28–36.

10.      The specification does not provide an objective standard for determining "abstract."  Snell Decl., ¶¶ 37–41; Turk Decl., ¶ 35; Bowyer Decl., ¶ 28.

11.      Given the specification's absence of any objective indication of what the term means, such as source code or specific description, one of ordinary skill in the art as of the time of the patents' filing would not know how to interpret the term "abstract" without resorting to his or her own subjective opinions.  Snell Decl., ¶¶ 38–42; Turk Decl., ¶ 35; Bowyer Decl., ¶¶ 28–36.

**B.  "similar to"**

12.      The term "similar to" appears in claims 8, 11 and 17 of the '175 patent.

13.      The term "similar to" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  Snell Decl., ¶¶ 45–46; Turk Decl., ¶¶ 50–53.

14.      The Asserted Patents' specification does not use the phrase "similar to" in the context of what makes a digital signal abstract similar to a reference signal.

15.      The specification neither defines nor provides any guidance on how a digital signal abstract is similar to a digital reference signal.  Snell Decl., ¶¶ 47, 51–52; Turk Decl., ¶¶ 49, 52.

16.      "Similar" is not a word with a specific meaning in the art.  Snell Decl., ¶ 46; Turk Decl., ¶ 48.

**C.  "index of relatedness"**

17.      The term "index of relatedness" appears in claim 11 of the '472 patent.

18.     The term "index of relatedness" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  Snell Decl., ¶¶ 55–58; Turk Decl., ¶¶ 57–60.

19.     The term "index of relatedness" does not appear anywhere in the specification of the Asserted Patents, or anywhere in the '472 patent other than within claim 11 of the '472 patent.  Snell Decl., ¶ 54; Turk Decl., ¶ 55.

20.     The specification thus provides no guidance on what "index of relatedness" means in the context of the '472 patent.  Snell Decl., ¶ 54; Turk Decl., ¶ 55.

21.     The specification does not disclose what that structure of the "index of relatedness" is or how an "index of relatedness" works.  Snell Decl., ¶ 55; Turk Decl., ¶ 59.

22.     The specification does not disclose how much "relatedness" is required to determine if the two abstracts are "related."  Snell Decl., ¶¶ 56–61; Turk Decl., ¶ 58.

23.     "Index of relatedness" has no specific meaning in the art.  Snell Decl., ¶ 57; Turk Decl., ¶ 56.

24.     The specification does not provide an objective standard for determining "relatedness."  Snell Decl., ¶ 61; Turk Decl., ¶ 57.

25.     One of ordinary skill in the art would not be able to resolve the underlying ambiguity of "index of relatedness."  Snell Decl., ¶ 62; Turk Decl., ¶ 60.

**D.   "programmed or structured to use an/said algorithm"**

26.     The phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal" appears in claim 16 of the '175 patent.

27.     The phrases "programmed or structured to use an algorithm to generate said digital

reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal" fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  Snell Decl., ¶ 77; Turk Decl., ¶¶ 62–66.

28.     The specification of the '175 patent does not disclose an "algorithm" that a processor could use to generate a query signal or reference signal.  Snell Decl., ¶ 71; Turk Decl., ¶ 66.

29.     In the absence of any such disclosure, a person of ordinary skill in the art reading the patent would not know what type of algorithm to generate an "abstract" is described.  Snell Decl., ¶ 72; Turk Decl., ¶¶ 64–65.

30.     Neither in claim 16 of the '175 patent, nor in the claims from which it depends, is there any reference to a "digital query signal" prior to the use of the term "said digital query signal" in claim 16.

### E.  "data describing a portion of the characteristics of its associated reference signal"

31.     The phrase "data describing a portion of the characteristics of its associated reference signal" appears in claim 7 of the '700 Patent and claim 17 of the '494 patent.

32.     The phrase "data describing a portion of the characteristics of its associated reference signal" fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

33.     The specification does not describe what portion or which characteristics of an associated reference signal must be described.

34.     The specification does not provide any guidance on what "portion" refers to.  Snell Decl., ¶ 65; Turk Decl., ¶ 68.

6

35.     The specification gives no examples of what constitutes a "portion" in the context of characteristics of a reference signal.  Snell Decl., ¶ 65; Turk Decl., ¶ 68.

36.     The specification does not describe what "characteristics" are, and how one of ordinary skill could segment out a "portion" of those characteristics.  Snell Decl., ¶ 66; Turk Decl., ¶ 72.

37.     Neither "portion" nor "characteristics" has a specific meaning in the art.  Snell Decl., ¶ 67; Turk Decl., ¶¶ 69, 73.

**F.  "system applies a cryptographic protocol"**

38.     Claim 10 of the '700 patent is a system claim reciting "an electronic system for monitoring and analyzing at least one signal, comprising," among other elements, a method step "wherein the system applies a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal."

**G.  "storing the hashed abstract and/or digitally signed abstract"**

39.     Claim 11 of the '700 patent is a system claim reciting "an electronic system for monitoring and analyzing at least one signal, comprising," among other elements, a method step of "storing the hashed abstract and/or digitally signed abstract."

40.     Claim 21 of the '494 patent is a system claim reciting "a system for analyzing and identifying at least one reference signal, comprising," among other elements, a method step of "storing the hashed abstract and/or digitally signed abstract in the reference database."

**H.  "based on the comparison step"**

41.     Claim 22 of the '494 patent is a system claim reciting "a system for analyzing and identifying at least one reference signal, comprising," among other elements, performance of a specific method step, a "comparison step":  "a transmitter for distributing at least one signal based on the comparison step."

7

## INTRODUCTION

The meaning of many claim terms in Plaintiff Blue Spike LLC's ("Blue Spike") Asserted Patents simply cannot be discerned with any reasonable certainty.  The Supreme Court recently held that patent claims are invalid if they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  A person of ordinary skill in the art, reviewing the asserted claims, specification and the prosecution history, is left guessing regarding the meaning of subjective claim terms such as "*similar to,*" "*index of relatedness,*" "*data describing a portion of the characteristics of its associated reference signal,*" and "*abstract.*"  Indeed, Blue Spike admits that it is "impossible" to determine the meaning of the key claim term "*abstract*"—which appears in every asserted claim.  The asserted claims are thus invalid as indefinite.

The asserted claims have other flaws.  For example, claim 16 of the '175 patent recites a processor "*programmed or structured to use an algorithm*" to perform the function of generating a "signal abstract"—yet, the patent discloses no algorithms at all, leaving the nature of the algorithm completely indeterminable and rendering this claim invalid.  Moreover, several of the asserted system claims impermissibly incorporate method limitations, for example, system claims that include the method steps of "*appl[ying] a cryptographic protocol,*" "*storing the hashed abstract*" or that recite a "*comparison step*" as an antecedent basis.  Because it is impossible to determine if these claims are infringed when the claimed apparatus is made, or only when the method steps are performed, they indefinite.  Defendants thus respectfully request that the Court grant summary judgment of invalidity as to all of the asserted claims.[1]

---

[1]  This motion is joined by Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc.,

## LEGAL STANDARDS

Summary judgment is proper if the record shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Indefiniteness under 35 U.S.C. § 112 ¶ 2 (pre-AIA) is a question of law, and is amenable to summary judgment.  *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1362 (Fed. Cir. 2012); *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007).

Section 112 ¶ 2 requires patent claims to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  Claims are definite "only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise."  *Halliburton Energy Servs. Inc. v. M-I, LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (internal quotation marks omitted).  The Supreme Court recently held that "[a] patent claim is invalid for indefiniteness if its ***claims***, read in light of the patent's specification and prosecution history, ***fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention***."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (emphasis added).

The standard set forth in *Nautilus* is "stricter [for the patentee] than that previously employed by the Federal Circuit."  *Broussard v. Go-Devil Mfg. Co. of L.A., Inc.*, 2014 U.S. Dist.

---

GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, Harmonix Music Systems, Inc., CBS Interactive Inc., Last.fm Ltd., Irdeto USA, Inc., Irdeto B.V., Shazam Entertainment Limited, Cognitec Systems Gmbh and Cognitec Systems Corp., MorphoTrust USA, Inc., L-1 Identity Solutions, Inc., MorphoTrak, Inc., and Safran USA, Inc., Iritech, Inc., Fulcrum Biometrics, LLC, Futronic Technology Co., Ltd., Viggle Inc., Airborne Biometrics Group, Inc., and Entropic Communications, Inc.

LEXIS 94352, at *133 (M.D. La. July 9, 2014).  Courts have recently relied on *Nautilus* in finding

claim terms indefinite if they fail to provide an objective standard for determining the scope of the

invention and instead rely on "unrestrained, subjective opinion."  *Prolifiq Software, Inc. v. Veeva*

*Systems Inc.,* 2014 U.S. Dist. LEXIS 108630, at *7 (N.D. Cal. Aug. 6, 2014); *Broussard,* 2014

U.S. Dist. LEXIS 94352, at *133–36 (noting that *Nautilus* "implicitly rejected a standard which

would tolerate 'a skilled artisan['s] … trial and error process to determine the scope of the

invention").

As the Supreme Court has observed, definiteness is extremely important:  "The patent laws

'promote the Progress of Science and useful Arts' by rewarding innovation with a temporary

monopoly.  U.S. Const., Art. I, § 8, cl. 8. The monopoly is a property right; and like any property

right, its boundaries should be clear."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535

U.S. 722, 730–31 (2002) (internal quotation marks omitted).

## ARGUMENT

### A.  All Asserted Claims Are Indefinite Because the "Abstract" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty.

The claim term "abstract" appears in each claim of the Asserted Patents.  *See* Snell Decl.,

Exs. 1–4.  Blue Spike contends that the term has different, unspecified meanings between all of the

various claims of the patents and admits that it is "impossible" to construe the term.  D.I. 1700 at 8.

The claims are therefore indefinite.  The following chart provides an exemplary usage of the term

from claim 3 of the '472 patent.

A method for monitoring and analyzing at least one signal comprising:
[a] receiving at least one reference signal to be monitored;
[b] creating an **abstract** of said at least one reference signal;
[c] storing the **abstract** of said at least one reference signal in a reference database;
[d] receiving at least one query signal to be analyzed;
[e] creating an **abstract** of said at least one query signal;
[f] comparing the **abstract** of said at least one query signal to the **abstract** of said at least one reference signal to determine if the **abstract** of said at least one query signal matches the **abstract**

> of said at least one reference signal;
> [g] creating at least one counter corresponding to one of said at least one reference signals, said at least one counter being representative of the number of times a match is found between the **abstract** of said at least one query signal and the **abstract** of said at least one reference signal; and
> [h] incrementing the counter corresponding to a particular reference signal when a match is found between an **abstract** of said at least one query signal and the **abstract** of the particular reference signal.

### 1. Blue Spike admits that abstract has no "single definition."

In Blue Spike's words, "[t]he term 'abstract' is a central component to each of the patents-in-suit…" D.I. 1700 at 8. Indeed, the patentee refers to the term "abstract" more than 40 times in the common specification, and 101 times in the claims of the '472 patent alone, where each and every asserted claim contains the term "abstract. Despite the importance of this term to the purported invention, Blue Spike admits that "a single definition" of "abstract" is "impossible to achieve." *Id.* A claim term that is impossible to define with a single definition is precisely the type of term that the Supreme Court found to be indefinite in *Nautilus* as it fails "to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. Blue Spike's admission is dispositive that "abstract" is indefinite.

Blue Spike also contends that the term "abstract" *shifts meaning* in some indescribable and unexplained way, between claims in a single patent and between multiple patents that share a common specification. D.I. 1700 at 8. If the word "abstract" shifts meanings between claims in a way that cannot be described or defined, then the boundary of the property right is not clearly defined and the claims are indefinite.

First, as a matter of law, the term "abstract" must be given the same meaning across all claims in which it is used. *See Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002) ("A claim term used in multiple claims should be construed consistently").

Second, it is well settled that if a claim term can have more than one meaning to a person of

ordinary skill in the art, and the appropriate meaning of the term is not explained in the specification, the claim is indefinite.  *See Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001); *In re Cohn*, 58 438 F.2d 989, 993 (CCPA 1971) (finding claim term indefinite where the patentee's conflicting use of the term rendered the scope of the claims uncertain).  Here, Blue Spike concedes that it is unable to articulate a single construction of "abstract" across all claims and such a feat is "impossible to achieve."  D.I. 1700 at 8.

### 2. The asserted patents provide no definition of "abstract" and it has no accepted meaning in the art.

Even setting aside Blue Spike's admission, the specification also does not inform one of ordinary skill in the art with reasonably certainty as to the scope of the term "abstract," and the term has no accepted meaning to one of ordinary skill in the art.  Bowyer Decl., ¶¶ 28–37; Turk Decl., ¶¶ 32–33; Snell Decl., ¶ 36.  Indeed, the intrinsic record provides only vague and conflicting examples about the meaning of this critical claim term.  *Endo Pharma. Inc. v. Watson Labs., Inc.*, 2014 U.S. Dist. LEXIS 84804, at *7 (E.D. Tex. June 23, 2014) ("[I]n case of doubt or ambiguity [about the meaning of a claim term] it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims.").

The only clear guidance from the specification pertains to what an "abstract" is *not*; it does not give any indication about what an "abstract" *is*.  "[T]he present invention eliminates the need of any additive monitoring signal," such as a watermark, "avoid[ing] a major disadvantage of the prior art."  *See* '472 patent at 4:56–59; 5:3–4; 5:18–20; 6:48–51.  The specification provides conflicting hints about what an abstract may be.  For example:

- "The present invention concerns itself with perceptible relationships only to the extent that efficiencies can be achieved both in accuracy and speed with enabling logical relationships between an original signal and its ***abstract***." '472 patent at 9:42–46.

- "…a more logical and self-sufficient relationship between the original and its data-reduced **abstract** enhances the transparency of any resulting monitoring efforts…." *Id.* at 5:67–6:3.

- "[s]ignal **abstracts** retain a perceptual relationship with the signal from which it was created or derived." Ex. 1 (June 5, 2009 Amendment & Request for Reconsideration after Non-Final Rejection at 19 (emphasis added in each)).

The specification contains no explanation of what part of a reference signal or query signal appears in an "abstract," how much of that signal is used, how that "abstract" ultimately relates to its original signal, or how to determine any of these.  Given the advances in signal processing by 1999, this information is simply insufficient to inform one of ordinary skill in the art with reasonable certainty of the scope of the invention.  Blue Spike has asserted that a wide range of digital technologies infringe the Asserted Patents.  But each of the accused technologies uses different ways of manipulating signals for processing, transmission, storage, and matching functions.  *See* Bowyer Decl. at ¶¶ 38–41; Turk Decl., ¶¶ 41–42; Snell Decl., ¶¶ 40–41.  The Asserted Patents fail to explain which techniques, if any, are covered by "abstracts."

In fact, the specification confirms that the meaning of "abstract" in the purported invention is a moving target that shifts depending upon the unspecified "markets" or "applications" where the alleged invention might be deployed:

- "While there are many approaches to data reduction that can be utilized, a primary concern is the ability to reduce the digital signal in such a manner as to retain a 'perceptual relationship' between the original signal and its data reduced version.  This relationship may *either be mathematically discernible or a result of market-dictated needs*."  '472 patent at 3:52–57.

- "Lossless and lossy compression schemes *are appropriate candidates* for data reduction technologies, *as are* those subset of approaches that are based on perceptual models… Where spectral transforms fail to assist in greater data reduction of the signal, *other signal characteristics can be identified* as candidates…. but *other approaches* or combinations of signal characteristic analysis *are contemplated*…."  *Id.* at 4:8–22.

- "While psychoacoustic and psychovisual compression has some relevance to the present invention, *additional data reduction or massive compression is anticipated* by the present invention…. *Depending on the application*, general data reduction of the original signal

13

can be as simple as massive compression or may relate to the watermark encoding envelope parameter ….” *Id.* at 7:40–55 (emphasis added in each).

Nor does “abstract” have a meaning known to one of ordinary skill in the Asserted Patents’ disclosed fields of image and music recognition.  *See* Snell Decl., ¶¶ 36, 38–41; Turk Decl., ¶¶ 32, 46–47, or in the field of biometric identification, Bowyer Decl., ¶ 37.  Given the broad range of possible applications, and the vague descriptions of the relationship between abstracts and their original signals, one of ordinary skill in the art cannot tell with reasonable certainty what is claimed.  Bowyer Decl., ¶¶ 28–36; Turk Decl., ¶¶ 46–47; Snell Decl., ¶¶ 41–42.  The term is therefore indefinite.  *See Honeywell Int’l Inc. v. Int’l Trade Comm’n*, 341 F.3d 1332, 1339–42 (Fed. Cir. 2003) (“melting point elevation” held indefinite because there were several methods to determining value and intrinsic record provided no guidance); *Union Pac.*, 236 F.3d at 692 (“comparing” held indefinite because it “could undoubtedly have other meanings to a person of skill in the art.”); *Ernie Ball, Inc. v. Earvana, LLC*, 502 F. App’x 971, 979–80 (Fed. Cir. 2013) (“sinusoidal” held indefinite because the intrinsic record provided no objective way of determining whether this limitation was met).  This is the very “zone of uncertainty” that *Nautilus* warned of when holding that “a patent must be precise enough to afford clear notice of what is claimed, thereby ‘appris[ing] the public of what is still open to them.’” *Nautilus*, 134 S. Ct. at 2129.

Moreover, the Asserted Patents are indefinite because the scope of this purported “pioneering technology” is left to the subjective opinion of the person practicing the invention. *See Prolifiq*, 2014 WL 3870016, at *6–7 (finding claims indefinite where patents failed to provide “an objective standard for determining what is meant by the term ‘differently versioned,’” thus impermissibly relying on the “unrestrained, subjective opinion of the person practicing the

invention").  The specification states that "abstract" is determined subjectively – either arbitrarily or by mutual agreement:

> *In some cases*, data reduction alone will not suffice: the **sender and receiver must agree** to the accuracy of the recognition.  *In other cases*, agreement will actually depend on a third party who authored or created the signal in question.  A digitized signal *may have parameters* to assist in establishing more accurate identification, for example, a 'signal **abstract'** *which naturally, or by agreement with the creator, the copyright owner or other interested parties*, can be used to describe the original signal…. As long as a realistic set of conditions **can be arrived at** *governing the relationship between a signal and its data reduced* **abstract**, increases in effective monitoring and transparency of information data flow across communications channels is likely to result.

'472 patent at 9:51–65 (emphasis added); *see also* Bowyer Decl. at ¶¶ 32–36.  This subjectivity renders "abstract" indefinite.  *See Prolifiq,* 2014 WL 3870016, at *7; *id.* at *5 (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) (finding term "aesthetically pleasing" indefinite)).

"[T]he claim, read in light of the specification, must apprise those skilled in the art of the scope of the claim."  *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340 (Fed. Cir. 2005).  Because it is "impossible" to construe the term "abstract" by Blue Spike's own admission, and because the specification itself demonstrates that the meaning of the term is indeterminate, shifting and subjective, each claim of the Asserted Patents fails to apprise those of skill in the art of their scope with reasonable certainty, and is thus indefinite as a matter of law.[2]

### B.  Claims 8, 11 and 17 of the '175 Patent Are Indefinite Because the "Similar to" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty.

The claim term "similar to," which appears in claims 8, 11 and 17 of the '175 patents, is indefinite because there is no disclosure of how "similar" two abstracts must be.  There is no specific meaning of the term "similar to" in the art, and it is a subjective and relative term, the

---

[2]  To the extent the Court determines this term is definite, Defendants' Claim Construction Brief contains discussion of its proposed alternative constructions.

contours of which cannot be discerned from the specification or the term itself.  *See* Snell Decl., ¶¶ 45–51; Turk Decl., ¶¶ 48–53.  The following chart illustrates the use of the term in the claims:

A system, comprising:
[. . .]
[b]  at least one processor;
[c]  wherein said at least one processor is programmed or structured to generate a digital reference signal abstract from a digital reference signal such that said digital reference signal abstract is **similar to** said digital reference signal and reduced in size compared to said digital reference signal
[. . .]

The phrase "similar to," as used in claim 8, 11 and 17 of the '175 patent, is precisely the type of term that courts have routinely found to be indefinite, as one of ordinary skill in the art simply cannot be informed of the scope of "similar to" with reasonable certainty.  *Nautilus*, 134 S. Ct. at 2124.  Indeed, when a "word of degree" is used, the Court must determine whether the patent provides "some standard for measuring that degree."  *Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984).

The claim language provides no guidance on the required degree of similarity.  The relevant claims require generation of an "abstract" "such that said digital reference signal abstract is *similar to* said digital reference signal *and reduced in size* compared to said digital reference signal."  *See, e.g.*, '175 patent, cl. 11.  Although "similar to" must mean something more than simply smaller, because it appears alongside the phrase "reduced in size," the claims provide no other clue as to what this term means with respect to the relationship between the digital reference signal and its digital reference signal abstract.

Neither the specification nor the prosecution history of the '175 patent provides guidance as to the meaning of this term.  The way that an "abstract" of a signal could be "similar to" a signal is not described anywhere in the specification.  In fact, the specification does not use the phrase "similar to" anywhere when describing the relationship between an abstract and a signal.  Nor does

16

Blue Spike argue otherwise in its opening claim construction brief.  In fact, Blue Spike fails to cite to either the specification or the prosecution history of any of the Asserted Patents.

There is no specific meaning of the word "similar to" in the art.  *See* Snell Decl., ¶ 46; Turk Decl., ¶ 50.  Rather, the specification suggests the relationship between an original signal and its abstract is a subjective inquiry left to those practicing the invention: "As long as a realistic set of conditions can be arrived at governing the relationship between a signal and its data reduced abstract, increases in effective monitoring and transparency of information data flow across communications channels is likely to result." '472 patent at 9:61–65 (emphasis added). With such a relative term, one skilled in the art is left struggling to apply their subjective judgment to determine what degree of similarity is required by the claims and what features or aspects in signal processing, their perception, or the physical world might bear on that question.  *See* Snell Decl., ¶¶ 47–52; Turk Decl., ¶ 52.

The specification is also unclear who or what determines this similarity: "A digitized signal *may have parameters* to assist in establishing more accurate identification, for example, a 'signal abstract' *which naturally, or by agreement with the creator, the copyright owner or other interested parties*, can be used to describe the original signal." '472 patent at 9:55–59 (emphasis added).  This subjectivity renders the term indefinite. *See Datamize*, 417 F.3d at 1350–51 (holding claims indefinite where construction of term was "completely dependent on a person's subjective opinion"); *Prolifiq*, 2014 WL 3870016, at *5–7 (finding claims indefinite because the meaning of the term "differently versioned" depended on the "unrestrained, subjective opinion of the person practicing the invention").[3]  Because the relative "similarity" between an abstract and signal is subjective and wholly undefined, claims 8, 11 and 17 of the '175 patent, and the claims that depend

---

[3] To the extent the Court finds this term is definite, Defendants' Claim Construction Brief contains discussion of a proposed alternative construction.

therefrom, are necessarily invalid as indefinite.  *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,

537 F.3d 1357, 1372 (Fed. Cir. 2008); *Prolifiq*, 2014 WL 3870016, at *5–7.

### C.  Claim 11 of the '472 Patent Is Indefinite Because the "Index of Relatedness" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty.

The claim term "index of relatedness," which appears in claim 11 of the '472 patents, is

indefinite because there is no disclosure of what this term is, what it does, or how "relatedness" is

measured.  Moreover, the term "index of relatedness" has no specific meaning in the art, and is a

subjective and relative term, the contours of which cannot be discerned from the specification or

the term itself.  *See* Snell Decl., ¶¶ 55–61; Turk Decl., ¶¶ 54–61.  The following chart illustrates the

usage of the term:

> A computerized system for monitoring and analyzing at least one signal:
> [. . .]
> [e]  a comparing device, coupled to said reference database and to said second input, that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts,
> [f]  wherein the comparing device identifies at least two abstracts in the reference database that match the abstract of said at least one query signal and an **index of relatedness** to said at least one query signal for each of said at least two matching abstracts.

"Index of relatedness" is used in the patent to describe some type of relationship between a

"query signal" and two "abstracts" in a database.  As discussed, Blue Spike concedes that

"abstract" cannot be specifically defined.  The nature or extent of the "relatedness" between an

abstract and a query signal is not described in the '472 patent's specification, nor how to measure

it.  The terms "index" and "index of relatedness" do not appear in the patent beyond the claim.

There is no specific meaning of the phrase "index of relatedness" in the art, and it is a subjective

and relative term.  *See* Snell Decl., ¶¶ 55–61; Turk Decl., ¶¶ 54–61.

Given that "relatedness" is a subjective and relative term, and in the absence of any

objective measure of what constitutes "relatedness" or an "index of relatedness," one of ordinary

skill in the art is left to apply their subjective judgment about what this term may mean.  For this reason, the term fails to inform one of skill in the art, with reasonable certainty, regarding the scope of the term's meaning.  *Cf. Nautilus*, 134 S. Ct. at 2124.  Accordingly, claim 11 and the claim that depends therefrom are invalid as indefinite.  *See Star Sci.*, 537 F.3d at 1372; *Datamize*, 417 F.3d at 1350–51.

### D. Claim 16 of the '175 Patent Is Indefinite Because the "Programmed or Structured to Use An/Said Algorithm" Limitations Fail to Inform Those Skilled in the Art About the Scope of the Invention With Reasonable Certainty.

The claim terms "programmed or structured to use an/said algorithm to generate said digital reference/query signal abstract from said digital reference/query signal," which appear in claim 16 of the '175 patent, are indefinite because there is no "algorithm" disclosed in the specification that a processor could use to generate a query signal or reference signal.  In the absence of any such disclosure, a person of ordinary skill in the art reading the patent would have to guess whether use of a particular type of algorithm to generate an abstract would infringe.  Snell Decl., ¶¶ 72–76; Turk Decl., ¶¶ 62–66.  The following chart illustrates the usage of the terms:

> The system of claim 12, [a]  wherein said at least one processor is **programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal**; and wherein said at least one processor is **programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal**.

Given that Blue Spike concedes that "abstract" cannot be attributed with any particular meaning, it is impossible to determine what algorithm might generate such an abstract.  In the absence of any disclosure of an algorithm, a person of ordinary skill in the art reading the patent would not know what type of algorithm to use to generate an "abstract."  Snell Decl., ¶¶ 72–76; Turk Decl., ¶¶ 64–65.  Because the specification does not limit the field to a particular technology, the problem is compounded.  *See* Snell Decl. ¶ 73; Turk Decl. ¶ 64.  Where a patentee claims that a required structural element is an algorithm, but the specification fails completely to disclose any

such algorithm, the element is indefinite.  *See Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1378–81 (Fed. Cir. 2013) (claim indefinite because the specification did not disclose any algorithm that explained specifically how to achieve the function); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003) (specification must disclose "actual algorithms"; it is not appropriate to point to the general skill in the art and argue that a skilled artisan could have written such a program).

Further, nowhere in claim 16 (or the claims from which it depends) is there any reference to a "digital query signal."  Thus, the term lacks an antecedent basis, further rendering the claim invalid as indefinite.  *Halliburton*, 514 F.3d at 1249 (claim indefinite if a term does not have proper antecedent basis and meaning is not reasonably ascertainable).  Thus, the phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal," fail to inform those skilled in the art of the scope of the invention with reasonable certainty.  *Nautilus*, 134 S. Ct. at 2124.

### E. Claim 7 of the '700 Patent and Claim 17 of the '494 Patent Are Indefinite Because the "Data Describing a Portion of the Characteristics of Its Associated Reference Signal" Limitation Fails to Inform Those Skilled in the Art About the Scope of the Invention with Reasonable Certainty.

The claim term "data describing a portion of the characteristics of its associated reference signal," which appears in claim 7 of the '700 patent and claim 17 of the '494 patent, is indefinite because there is no disclosure that quantifies how much a "portion of characteristics" must be. There is no specific meaning of this phrase in the art, and there is no description of what portion or how much of the characteristics, or which characteristics, of an associated reference signal must be described.  *See* Snell Decl., ¶¶ 65–66; Turk Decl., ¶¶ 67–75.  The following chart illustrates the usage of the term:

> The system of claim 1, [a]  wherein the stored abstracts comprise **data describing a portion of the characteristics of its associated reference signal**.

"Data describing a portion of the characteristics of its associated reference signal" is used in the patent to describe the nature of an "abstract."  As discussed above, Blue Spike concedes that "abstract" cannot be specifically defined.  Further, the specification does not provide any guidance on what "portion" refers to.  It gives no examples of what constitutes a "portion" in the context of characteristics of a reference signal.  It uses "portion" only to discuss the portion of a signal being monitored.  *See* '494 patent at col. 8:34–36.  *See* Snell Decl., ¶ 65; Turk Decl., ¶ 68.

The specification also fails to give guidance on *which* "portion" of the characteristics claims 7 of the '700 patent and 17 of the '494 patent mean.  Both claims depend from independent claims that describe creating an abstract from presumably more than a "portion" of the characteristics of a reference or query signal.  If this were not so, claims 7 and 17 would have no meaning.  *See Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007) ("different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope") (internal quotation marks omitted).  Yet the specification states that an "abstract" is created in part by selecting certain characteristics of the reference signal that remain relatively constant.  *See* Section A, *supra*.  A person of ordinary skill practicing the patent would need to know which portion of the characteristics was used to create the abstract, and then which portion of the first portion claims 7 and 17 refer to.  *See* Turk Decl. ¶ 71.  The specification provides none of this information.

The specification also fails to describe what "characteristics" might be relevant to the constitution of an abstract and how one of ordinary skill in the art could separate out a "portion" of those characteristics.  The specification states only that a "database engine" will identify "characteristics (for example, the differences) that can be used to distinguish one digital signal

21

from all other digital signals that are stored in its collection." '494 patent at 10:20–24. But this says nothing about what those characteristics might be.

Neither "portion" nor "characteristics" has a technical meaning in the field. *See* Snell Decl., ¶ 67; Turk Decl., ¶¶ 69, 73. Thus, one of ordinary skill in the art is left to guess what "characteristics" of a signal, and what "portion" of them, are relevant to defining an abstract. *See* Snell Decl., ¶¶ 65–68; Turk Decl., ¶¶ 69–75. Thus, the phrase fails to inform one of skill in the art, with reasonable certainty, regarding the scope of the term's meaning. *Nautilus*, 134 S. Ct. at 2124. Accordingly, claim 7 of the '700 patent, claim 17 of the '494 patent and the claims that depend therefrom are invalid as indefinite. *See Star Sci.*, 537 F.3d at 1372; *Datamize*, 417 F.3d at 1350–51.

### F. Claim 10 of the '700 Patent Is Indefinite Because "Wherein the System Applies a Cryptographic Protocol" Is a Method Step in a System Claim.

Claim 10 of the '700 patent indefinite because it improperly includes a method step in a system claim. The following chart contains the relevant portions of the claim:

| |
|---|
| Claim 1:<br>An electronic system for monitoring and analyzing at least one signal, comprising:<br>[a] a first input that receives at least one reference signal to be monitored,<br>[b] a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal;<br>[c] a second input that receives at least one query signal to be analyzed,<br>[d] a second processor that creates an abstract of each query signal wherein the abstract comprises signal characteristic parameters of the query signal;<br>[e] a reference database that stores abstracts of each at least one reference signal;<br>[f] a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts wherein a match indicates the query signal is a version of at least one of the reference signals. |
| Claim 10:<br>The system of claim 1, [a] **wherein the system applies a cryptographic protocol** to the abstract of said reference signal, said query signal, or both said reference signal and said query signal. |

It is well-settled that where a claim "attempts to claim both a system and a method for using that system," the claim is indefinite as a matter of law, under Section 112 ¶ 2. *See IPXL*

*Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005); *see also Ex parte Lyell*, 17 USPQ2d 1548 (BPAI 1990); *UltimatePointer, LLC v. Nintendo Co., Ltd.*, Nos. 6:11-cv-496, -571, 2013 WL 2325118, at *22–23 (E.D. Tex. May 28, 2013); *Ariba, Inc. v. Emptoris, Inc.*, No. 9:07-cv-90, 2008 WL 3482521, at *6–8 (E.D. Tex. Aug. 7, 2008).  Such claims are indefinite because it is impossible for a person of skill to know whether the claim is infringed when the apparatus is made or when the required actions are performed.  *IPXL Holdings*, 430 F.3d at 1384 ("[A]s a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus."); *see also Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011).

Claim 10 requires "[a]n electronic system for monitoring and analyzing at least one signal," and recites several apparatus limitations, including, a "reference database" and "a comparing device."  '700 patent at 15:9–30.  Claim 10 then goes on to recite a method step "wherein the system *applies a cryptographic protocol* to the abstract of said reference signal, said query signal, or both said reference signal and said query signal."  *Id.* at 15:56–59 (emphasis added).  This act can only comprise part of a method claim, as it is not a structural limitation, or even a functional attribute of a structural limitation.  Indeed, the claim does not even specify what element of the system has this capability, attributing it just to "the system."  While a patent claim can use functional language to define the capabilities of the structural elements of a system claim, claim limitations directed to actions performed by the system render the claim invalid.  *See In re Katz*, 639 F.3d at 1318 (rejecting the argument that the limitation defined a functional capability and was therefore not a method step); *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305,

328–31 (D. Del. 2010), *affirmed on other grounds* in 675 F.3d 1324 (Fed. Cir. 2012) (holding that two composition claims that recited that the composition "is used to form an injectable solution" (*i.e.*, a perfusion) were indefinite and stating that "[h]ad the patentees wished to state that the composition was merely 'capable of being formed into a perfusion, they could easily have stated so explicitly'"). Claim 10 is thus indefinite.

Claim 10 is analogous to the claim the court invalidated in the *Rembrandt* case. The claim there was directed to a "data transmitting device" that recited several structural limitations and included a final limitation of "transmitting the trellis encoded frames," untethered to any structural element. The court found that this claim—which has the same structure as Claim 10 here—recited both an apparatus and a method, and was thus invalid. 641 F.3d at 1339. In addition, the court held that it could not redraft the claim to preserve its validity. *Id.* at 1339–40.

Claim 10 is also similar to the claim the court held invalid in *Deep Nines, Inc. v. McAfee, Inc.*, 2010 U.S. Dist. LEXIS 79420, *6–14 (E.D. Tex. Aug. 4, 2010). That claim described a gateway system comprising three elements: "[1] a firewall for receiving data . . .; [2] an intrusion detection system . . .; and [3] *acting on the data representing text identified as hostile in order to prevent an attack*." *Id.* at *8 (emphasis added). The court found that the "acting" limitation was an impermissible method step. *Id.* (noting that "[u]se of a colon following 'comprising' and semicolons following each separate paragraph denotes separation of distinct items in a series"). The court rejected the patentee's argument that "acting on the data" would be understood to be a functional limitation of the "intrusion detection system." *Id.* Similarly, here, claim 10, a dependent claim, and therefore a distinct limitation, recites a method step requiring the system to "*appl[y] a cryptographic protocol*." Even if this limitation were not an improper method step, the failure to tie the claimed function to any structural element of the "system" would render claim 10

(and its dependent claim, Claim 11) invalid as indefinite for failing to provide any guidance to a person of ordinary skill how to construct the claimed system.

### G. Claim 11 of the '700 Patent and Claim 21 of the '494 Patent Are Indefinite Because "Further Comprising Storing the Hashed Abstract" Is a Method Step in System Claims.

Claim 11 of the '700 patent and claim 21 of the '494 patent, are indefinite because they improperly attempt to claim a system with a method step.[4]  The following chart contains the relevant portions of the claims:

| |
|---|
| '700: Claim 11:<br>The system of claim 10, [a] wherein the cryptographic protocol is one of at least a hash or digital signature and **further comprising storing the hashed abstract and/or digitally signed abstract**. |
| '494: Claim 21:<br>The system of claim 20, [a] wherein the cryptographic protocol is one of at least a hash or digital signature and **further comprising storing the hashed abstract and/or digitally signed abstract** in the reference database. |

This limitation does not recite that some element of the system is *capable of* storing the hashed abstract—and as with claim 10, does not tie this function to a specific structural element of the system at all.  Thus, it is impossible to know whether claim 11 and claim 21 are infringed when the system is made, or only later, when the system completes the step of "storing the hashed abstract and/or digitally signed abstract."

Again, *Rembrandt* and *Deep Nines* are on point.  Here, as in *Rembrandt*, claims 11 and 21 include several apparatus limitations (a first input, a first processor, a reference database, a second input, a second processor, a comparing device) and a final method step of "storing the hashed abstract and/or digitally signed abstract in the reference database."  '700 patent at 15:60–63; '494:16:9-22.  Similarly, as in *Deep Nines*, claim 11 and claim 21's "storing" limitations are in dependent claims that introduce the limitations as "further comprising."  It is thus clear that the

---

[4]  Claim 11 of the '700 patent depends from claim 10, and therefore is also indefinite for the same reasons described in Section F for claim 10.

limitations are "distinct item[s] in a series" that should not be interpreted as functional capablity of a separate structural limitation.  *See Deep Nines*, 2010 U.S. Dist. LEXIS at *9.  Claims 11 and 21 are thus invalid as indefinite.  *See IPXL Holdings,* 430 F.3d at 1383–84.  Even if these limitations were not method steps, the failure to tie the claimed function to any structural elements at all renders them invalid as indefinite because they provide no guidance to a person of ordinary skill how to construct a system that would meet the limitations of the claimed systems.

### H.  Claim 22 of the '494 Patent Is Indefinite Because the Limitation "Based on the Comparison Step" Improperly Recites a Method Step in a System Claim.

Claim 22 of the '494 patent is indefinite because it improperly attempts to claim both a system and a method step.  The following chart contains the relevant portions of the claims:

| Claim 11: |
| --- |
| A system for analyzing and identifying at least one reference signal, comprising: <br> [a]  a first input for receiving at least one reference signal to be identified, <br> [b]  a first processor for creating an abstract of each reference signal received based on perceptual characteristics representative of parameters to differentiate between versions of the reference signal; <br> [c]  a reference database for storing abstracts of each reference signal received in a database; <br> [d]  a second input for receiving at least one query signal to be identified, <br> [e]  a second processor for creating an abstract of the received query signal based on the parameters; and <br> [f] a comparing device for comparing an abstract of said received query signal to the abstracts stored in the database to determine if the abstract of said received query signal is related to any of the stored abstracts. |
| Claim 22: <br> The system of claim 11, [a]  further comprising a transmitter for distributing at least one signal **based on the comparison step**. |

Because claim 22 is a system claim, "*comparison step*" has no antecedent basis.  For this reason alone it is indefinite.  *Halliburton*, 514 F.3d at 1249 (claim indefinite if a term does not have proper antecedent basis and meaning is not reasonably ascertainable).  In addition, while claim 22 recites "a comparing device for comparing an abstract of said received query signal to the abstracts stored in the database to determine if the abstract of said received query signal is related to any of the stored abstracts," the incorporation of "*the comparison step*" into the dependent limitation

makes it unclear whether claim 22 is infringed when someone builds a system that includes a "comparing device" and a "transmitter" or a "comparing device" and a "transmitter" that acts based on a "*comparison step*" performed by the "comparing device" (or some other structural element).  In other words, it is unclear whether infringement requires the performance of a specific method step by a specific component of the system.  The claim is thus invalid as indefinite.  *See IPXL Holdings*, 430 F.3d at 1383–84.

### I.   Claim 11 of the '472 Patent and Claims 1, 11 and 29 of the '494 Patent Are Indefinite Because "Device that Compares," "Comparing Device," and "Device Configured to Determine" Are Means Plus Function Elements that Have No Corresponding Structure or Algorithm.

As discussed more fully in Defendants' Claim Construction Brief (filed concurrently with this motion), the "device that compares…" and "comparing device" elements in claim 11 of the '472 patent and claims 1 and 11 of the '494 patent, and the "device configured to determine…" element in claim 29 of the '494 patent are means plus function elements.  However, the common specification fails to disclose any corresponding structure for the means set forth in the claims.  Therefore, these claims and those that depend therefrom are indefinite as a matter of law.

### CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to defendants on the grounds that each of the asserted claims is invalid  as indefinite pursuant to 35 U.S.C. § 112 ¶ 2 (pre-AIA).

Dated:  September 9, 2014                     Respectfully submitted,


                                                            */s/ Gabriel Ramsey*
                                                            Eric H. Findlay (Texas Bar No. 00789886)
                                                            Walter W. Lackey, Jr. (Texas Bar No. 24050901)
                                                            FINDLAY CRAFT, LLP
                                                            6760 Old Jacksonville Hwy, Suite 101
                                                            Tyler, TX 75703
                                                            Telephone:  (903) 534-1100
                                                            Facsimile:   (903) 534-1137

efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

*Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.*

/s/  Andrew L. Perito
Edward R. Reines
Cal. Bar No. 135960 – Admitted to E.D. Texas
Lead Attorney
edward.reines@weil.com
Andrew L. Perito
Cal. Bar No. 269995 – Admitted to E.D. Texas
andrew.perito@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

28

*Attorneys for Defendant CBS Interactive Inc. and Last.fm Ltd.*

*/s/ Benjamin Hershkowitz*
Josh A. Krevitt
NY Bar No. 2568228
jkrevitt@gibsondunn.com
Benjamin Hershkowitz
NY Bar No. 2600559
bhershkowitz@gibsondunn.com
R. Scott Roe
NY Bar No. 4480224
sroe@gibsondunn.com
Anne Champion
NY Bar No. 4425237
achampion@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Ph. 212.351.4000
Fax: 212.351.6210

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, TX 75702
Tel: 903.597.8311
Fax: 903.593.0846

*Attorneys for Defendant Shazam Entertainment Limited*

*/s/ Jo Dale Carothers*
Alan H. Blankenheimer
ablankenheimer@cov.com
Jo Dale Carothers
jcarothers@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, 6th Floor
San Diego, CA 92122-1225
Tel: 858-678-1800
Fax: 858-678-1600

29

Michael E. Jones
SBN: 10929400
Potter Minton, PC
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

*Attorneys for Defendant Entropic Communications, Inc.*

*/s/ Andrew P. Valentine*
Andrew P. Valentine (Pro Hac Vice)
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Telephone: 650.833.2000
Facsimile: 650.833.2001
andrew.valentine@dlapiper.com

*/s/ John Guaragna*
401 Congress Avenue
Suite 2500
Austin, TX 78701-3799
Telephone:  512.457.7125
Facsimile:  512.721.2325
john.guaragna@dlapiper.com

*Attorneys for Defendants Irdeto USA, Inc. and Irdeto B.V.*

*/s/ Orion Armon*
Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000
Fax: (650) 857-0663
hkeefe@cooley.com
mweinstein@cooley.com

Orion Armon (*pro hac vice*)
Sara J. Bradford (*pro hac vice*)
Janna K. Fischer (*pro hac vice*)
COOLEY LLP
380 Interlocken Crescent, Suite 900

Broomfield, CO 80021
Tel: (720) 566-4000
Fax: (720) 566-4099
oarmon@cooley.com
sbradford@cooley.com
jfischer@cooley.com

Deron R. Dacus (Texas Bar No. 00790553)
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Tel: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

*Attorneys for Defendant Facebook, Inc.*

*/s/ Dwayne K. Goetzel*
Eric B. Meyertons
Texas State Bar No. 14004400
Dwayne K. Goetzel
Texas State Bar No. 08059500
Ryan T. Beard
Texas State Bar No. 24012264
MEYERTONS, HOOD, KIVLIN,
  KOWERT & GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

*Attorneys For Defendant Cognitec Systems Gmbh and Cognitec Systems Corp.*

*/s/ Daniel Johnson, Jr.*
C. Erik Hawes (TX Bar No. 24042543)
Email:  ehawes@morganlewis.com
Thomas R. Davis (TX Bar No. 24055384)
Email: tdavis@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

31

Daniel Johnson, Jr. (Admitted *Pro Hac Vice*)
Email: djjohnson@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

*Attorneys for Defendants MorphoTrust USA, Inc.,*
*L-1 Identity Solutions, Inc., MorphoTrak, Inc., and*
*Safran USA, Inc.*


*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

*Attorneys for Defendants Iritech, Inc., Fulcrum Biometrics,*
*LLC, and Futronic Technology Co., Ltd.*


*/s/ Reid E. Dammann*
Reid E. Dammann (CA Bar No. 249031)
r.dammann@mpglaw.com
MUSICK PEELER LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, CA 90017
Houston, TX 77010-1018
Telephone: (213) 629-7611
Facsimile: (213) 624-1376

*Attorneys for Defendant Airborne Biometrics Group, Inc.*


*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900

Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Jordan A. Sigale
Christopher Swickhamer
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, IL 60654
Telephone: 312-464-3109
Facsimile: 312-276-8375
Email: jsigale@loeb.com
Email: cswickhamer@loeb.com

*Attorneys for Defendant Viggle Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on all counsel of record via ECF filing pursuant to Local Rule CV-5(a)(7)(C) on September 9, 2014.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz

33