UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| *Plaintiff*, | §§§ | CASE NO. 6:12-cv-499 MHS |
| v. | §§§ | LEAD CASE |
| TEXAS INSTRUMENTS, INC., et al., | §§§ | Jury Trial Demanded |
| *Defendants*. | §§§ | |

**PLAINTIFF BLUE SPIKE, LLC'S OPPOSITION TO DEFENDENTS'
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
ON THE BASIS THAT CLAIM TERMS ARE INDEFINITE**

TABLE OF CONTENTS

## Contents

I.    RULE 56(b)(1) STATEMENT OF ISSUES TO BE DECIDED ................................................ 1

II.   RULE 56(b)(2) STATEMENT OF MATERIAL FACTS ....................................................... 4

   A.    "abstract" ................................................................................................................. 5

   B.    "similar to" .............................................................................................................. 6

   C.    "index of relatedness" ............................................................................................ 7

   D.    "programmed or structured to use an/said algorithm" ...................................... 8

   E.    "data describing a portion of the characteristics of its associated reference signal" .................................................................................................................... 9

   F.    "system applies a cryptographic protocol" ....................................................... 11

   G.    "storing the hashed abstract and/or digitally signed abstract" ...................... 11

   H.    "based on the comparison step" .......................................................................... 11

III.   INTRODUCTION ........................................................................................................... 12

IV.    LEGAL STANDARD ...................................................................................................... 13

V.    ARGUMENT .................................................................................................................... 14

   A.    "abstract" ............................................................................................................... 14

      1.    "Abstract" should not be construed because the parties have already agreed to a definition. ..................................................................................................... 15

      2.    The term "abstract" is definite. ....................................................................... 15

      3.    Blue Spike does not admit that "abstract" is indefinite. ............................... 19

   B.    "similar to" ............................................................................................................ 21

   C.    "index of relatedness" .......................................................................................... 22

   D.    "programmed or structured to use an/said algorithm" .................................... 22

   E.    "data describing a portion of the characteristics of its associated reference signal" .................................................................................................................. 24

   F.    "wherein the system applies a cryptographic protocol," "further comprising storing the hashed abstract," and "based on the comparison step" ............................ 25

   G.    "device that compares," "comparing device," and "device configured to determine." ........................................................................................................... 27

VI. CONCLUSION ................................................................................................................. 28

## TABLE OF AUTHORITIES

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc*., 2014 U.S. Dist. LEXIS 24170, at \*9 (E.D. Tex. Feb. 26, 2014) ............................................................................................................22

Alexsam, Inc. v. Best Buy Stores L.P.,2012 U.S. Dist. LEXIS 148638, at \*9-10 (E.D. Tex.Aug. 22, 2012) ....................................................................................................26

*CCS Fitness, Inc. v. Brunswick, Corp*., 288 F.3d 1359, 1369 (Fed. Cir. 2002) ...................28

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................................................14

*Cybergym Research, LLC v. Icon Health & Fitness, Inc*., 2007 U.S. Dist. LEXIS 102195 (E.D. Tex. Sept. 4, 2007) ........................................................................................26

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ...............15

*Eolas Techs., Inc. v. Adobe Sys*., 810 F. Supp. 2d, 812-813 (E.D. Tex. August 22, 2011) .....26

*Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) .....................23

*Freeny v. Apple Inc*., 2014 U.S. Dist. LEXIS 120446, at \*16-17 (E.D. Tex. Aug. 28, 2014)16, 22

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1280 (Fed Cir. 2012) ...................19

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1378 (Fed. Cir. 2013) .......24

*Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*, 2012 U.S. Dist. LEXIS 100453, at 10-11 (E.D. Tex. July 19, 2012) ..............................................................................20

*IPXL Holdings. IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) ......................................................................................................................26

*Levine v. Samsung Telcoms. Am*., LLC,2012 U.S. Dist. LEXIS 13528, at \*54 (E.D. Tex. Feb. 3, 2012) ................................................................................................24, 25

*Lodsys, LLC v. Brother Int'l Corp*., 2013 U.S. Dist. LEXIS 85614, at \*106 (E.D. Tex.June 14, 2013) ...............................................................................................................20

*Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1368 (Fed. Cir. 2012)...........15

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003) ......................................................................................................................24

*Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996) ................................................................................................................15, 25

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124 (2014) ...................15, 16, 22

*Nobelbiz, Inc. v. Global Connect, L.L.C.*, 2013 U.S. Dist. LEXIS 176339, at \*19 (E.D. Tex. Dec. 13, 2013) .......................................................................................................21

*Rhine v. Casio, Inc*., 183 F.3d 1342, 1345 (Fed. Cir. 1999)....................................................15

*SFA Sys., LLC v. 1-800-Flowers.com, Inc*., 940 F. Supp. 2d, 455 (E.D. Tex. April 11, 2013) ......................................................................................................................26

*SynQor, Inc. v. Artesyn Techs., Inc*., 2010 U.S. Dist. LEXIS 74808, 96-98 (E.D. Tex. July 26, 2010) ......................................................................................................................26

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1376 (Fed. Cir. 2010) ...................28

*Thomas Swan & Co. v. Finisar Corp*., 2014 U.S. Dist. LEXIS 86209, at \*25 (E.D. Tex. June 25, 2014) ...............................................................................................................22

*Trover Group, Inc. v. Tyco Int'l, Ltd*., 2014 U.S. Dist. LEXIS 102331, at \*31-32 (E.D. Tex. July 28, 2014) .....................................................................................................22, 23

*Typhoon Touch Techs. Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir.2011) ..............................29

*VirnetX Inc. v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 110134, at \*32 (E.D. Tex. Aug. 8, 2014) ......................................................................................................................17

*Yodlee, Inc. v. CashEdge Inc.*, 2006 WL3456610, at \*4–6 (N.D. Cal. Nov. 29, 2006) .........26

*Young v. Lumenis, Inc*., 492 F.3d 1336, 1344-45 (Fed. Cir. 2007) .........................................15

## I.    RULE 56(b)(1) STATEMENT OF ISSUES TO BE DECIDED

1.    Whether all asserted claims of the Asserted Patents are invalid because the Asserted Patents do not inform one of ordinary skill in the art of the meaning of the term "abstract" with reasonable certainty and thus, as Blue Spike concedes "a single definition [is] impossible to achieve" for the term "abstract."

> **Response: Disputed.** Blue Spike does not concede that "'a single definition [is] impossible to achieve' for the term 'abstract'." Responding to Defendant's inappropriate attempt to incorporate limiting terms from dependent claims into the definition of "abstract," Blue Spike noted that "both independent and dependent claims alter the definition of this term, making a single definition impossible to achieve."[1] Ex. A, Dkt. 1700, Opening Claim Construction Brief at 8; The term itself is definite and "the inventors went to great lengths to describe it thoroughly in the claim language and specification. Ex. A, Dkt. 1700, Opening Claim Construction Brief at 8.

2.    Whether claims 8, 11 and 17 of the '175 patent and the claims that depend therefrom are invalid because the term "similar to" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

> **Response: Disputed.** The term "similar to" is objective and sufficiently disclosed to inform one skilled in the art with reasonable certainty regarding its scope.

3.    Whether claim 16 of the '175 patent is invalid because the phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal," fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention, given that there is no "algorithm" disclosed anywhere in the patent and because the term "said digital query signal" lacks an antecedent basis.

---

[1] *See Nobelbiz, Inc. v. Global Connect, L.L.C.*, 2013 U.S. Dist. LEXIS 176339, at *19 (E.D. Tex. Dec. 13, 2013) ("[I]ncorporating a new limitation into this proposed claim term" would be "contrary to the canons of claim construction.").

> **Response: Disputed.** The issues are (1) whether an "algorithm" must be disclosed in a non-means-plus-function claim; (2) whether the prose algorithm ('175 Patent, Col 8:3-9:21), reference to a "watermark embedding algorithm" ('175 Patent, Col 5:32-42), and references to hash and digital signature algorithms sufficiently disclose an algorithm; and (3) whether the term "said digital query signal" lacks an antecedent basis *and* whether its meaning is not reasonably ascertainable.

4.      Whether claim 11 of the '472 patent and the claim that depends therefrom are is invalid because the term "index of relatedness" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

> **Response: Disputed.** The term "index of relatedness" is objective and sufficiently disclosed to inform one skilled in the art with reasonable certainty regarding its scope.

5.      Whether claim 7 of the '700 patent and claim 17 of the '494 patent and the claims that depend therefrom are invalid because the phrase "data describing a portion of the characteristics of its associated reference signal" fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention, given that it does not indicate what portion or which characteristics of an associated reference signal must be described.

> **Response: Disputed.** The issues are whether (1) the phrase "portion of the characteristics" can be construed as referring to a portion of a reference signal that is less than the whole, and (2) whether this construction preserves the claim's validity.

6.      Whether claim 10 of the '700 patent and the claim that depends therefrom are invalid because it recites "an electronic system for monitoring and analyzing at least one signal, comprising," among other elements, a method step "wherein the system applies a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal."

> **Response: Disputed.** The issues are whether the claims at issue (1) recite a method step in a system claim, and (2) are invalid for describing the functionality of the system rather than a user action.

7.      Whether claim 11 of the '700 patent is invalid because it depends from claim 10 and because it recites "an electronic system for monitoring and analyzing at least

one signal, comprising," among other elements, a method step of "storing the hashed abstract and/or digitally signed abstract."

> **Response: Disputed.** The issues are whether the claims at issue (1) recite a method step in a system claim, and (2) are invalid for describing the functionality of the system rather than a user action.

8.     Whether claim 21 of the '494 patent is invalid because it recites "a system for analyzing and identifying at least one reference signal, comprising," among other elements, a method step of "storing the hashed abstract and/or digitally signed abstract in the reference database."

> **Response: Disputed.** The issues are whether the claims at issue (1) recite a method step in a system claim, and (2) are invalid for describing the functionality of the system rather than a user action.

9.     Whether claim 22 of the '494 patent is invalid because it recites "a system for analyzing and identifying at least one reference signal," but recites a system limitation that depends on the performance of a method step: "a transmitter for distributing at least one signal based on the comparison step.

> **Response: Disputed.** The issues are whether the claims at issue (1) recite a method step in a system claim, and (2) are invalid for describing the functionality of the system rather than a user action.

10.     Whether claim 11 of the '472 patent and claims 1 and 11 of the '494 patent and the claims that depend therefrom are invalid because the "device that compares" and "comparing device" elements are means plus function elements with no corresponding structure disclosed in the specification.

> **Response: Disputed.** The issues are (1) whether the terms at issue are means-plus-function elements, and (2) whether an algorithm is sufficiently disclosed.

11.     Whether claim 29 of the '494 patent is invalid because the "device configured to determine . . ." element of that claim is a means plus function element with no corresponding  structure disclosed in the specification.

> **Response: Disputed.** The issues are (1) whether the terms at issue are means-plus-function elements, and (2) whether an algorithm is sufficiently disclosed.

## II.    RULE 56(b)(2) STATEMENT OF MATERIAL FACTS

1.      U.S. Patent No. 7,346,472 states on its face that it was filed on September 7, 2000, and issued on March 18, 2008. D.I. 176-4.

  **Response:** Undisputed**.**

2.      U.S. Patent No. 7,660,700 states on its face that it was filed on December 26, 2007, with a priority date of September 7, 2000, and issued on February 9, 2010. D.I. 176-3.

  **Response:** Undisputed**.**

3.      U.S. Patent No. 7,949,494 states on its face that it was filed on December 22, 2009, with a priority date of September 7, 2000, and issued on May 24, 2011. D.I. 176-2.

  **Response:** Undisputed**.**

4.      U.S. Patent No. 8,214,175 states on its face that it was filed on February 26, 2011, with a priority date of September 7, 2000, and issued on July 3, 2012. D.I. 176-1.

  **Response:** Undisputed**.**

5.      Blue Spike filed actions for patent infringement against various Defendants on Aug. 9, 2012, and the Court consolidated them on Oct. 9, 2012 (D.I. No. 16). Blue Spike asserted four patents against Defendants: U.S. Patent No. 7,346,472 ("the '472 patent"), U.S. Patent No. 7,660,700 ("the '700 patent"), U.S. Patent No. 7,949,494 ("the '494 patent"), and U.S. Patent No. 8,214,175 ("the '175 patent") (collectively, the "Asserted Patents" or "patents-in-suit"). The Asserted Patents share a common specification and describe a method and system for creating an "abstract" of a signal that can be used for monitoring and comparison purposes. According to the Asserted Patents, "[t]he present invention relates to identification of digitally-sampled information, such as images, audio and video . . . . using only the digital signal itself and then monitoring the number of times the signal is duplicated." See, e.g., '700 patent at 4:43–60.

**Response: Disputed** as to the large portion of the quote that has been deleted, altering the quote's meaning.

    **A.**    **"abstract"**

6.    The term "abstract" appears in every asserted claim of the Asserted Patents.

**Response: Disputed.** The term "abstract" does not appear in the following asserted claims '700 Patent, Claim 8, 51; '494 Patent, Claim 4, 18, 22.

7.    The term "abstract" has no specific meaning in the art. Snell Decl., ¶ 36. Declaration of Matthew Turk ("Turk Decl."), ¶ 32; Declaration of Kevin Bowyer ("Bowyer Decl."), ¶ 37.

   **Response:** Disputed to the extent it calls for a legal conclusion.

8.    Blue Spike admits that "a single definition" of "abstract" is "impossible to achieve." Blue Spike Opening Claim Constr. Br. (D.I. 1700) at 8.

**Response: Disputed.** Blue Spike does not concede that "'a single definition [is] impossible to achieve' for the term 'abstract'." Responding to Defendant's inappropriate attempt to incorporate limiting terms from dependent claims into the definition of "abstract," Blue Spike noted that "both independent and dependent claims alter the definition of this term, making a single definition impossible to achieve." Dkt. 1700, Opening Claim Construction Brief at 8, Ex A; The term itself is definite and "the inventors went to great lengths to describe it thoroughly in the claim language and specification. Dkt. 1700, Opening Claim Construction Brief at 8, Ex. A.

9.    The specification of the Asserted Patents does not inform one of ordinary skill with reasonable certainty as to what "abstract" means in the context of the Asserted Patents. Snell Decl., ¶¶ 37–42; Turk Decl., ¶¶ 33–35; Bowyer Decl., ¶¶ 3, 28–36.

**Response: Disputed.** The Asserted Patents' claims, read in light of the specification and prosecution history, inform with reasonable certainty those skilled in the art about the scope of the term "abstract." (Tewfik Decl. 4-7)

10.    The specification does not provide an objective standard for determining "abstract." Snell Decl., ¶¶ 37–41; Turk Decl., ¶ 35; Bowyer Decl., ¶ 28.

**Response: Disputed.** The specification provides an objective standard for determining "abstract" (Tewfik Decl. 4-7), including a five-element prose

algorithm ('175 Patent, Col 8:3-9:21) and numerous specific descriptions (e.g. '175 Patent, Col. 10:10-24; 14:54-57).

11.      Given the specification's absence of any objective indication of what the term means, such as source code or specific description, one of ordinary skill in the art as of the time of the patents' filing would not know how to interpret the term "abstract" without resorting to his or her own subjective opinions. Snell Decl., ¶¶ 38–42; Turk Decl., ¶ 35; Bowyer Decl., ¶¶ 28–36.

>    **Response: Disputed.** The specification provides an objective standard for determining "abstract" Tewfik Decl. 4-7), including a five-element prose algorithm ('175 Patent, Col 8:3-9:21) and numerous specific descriptions (e.g. '175 Patent, Col. 10:10-24; 14:54-57). Source code is not necessary.[2]

>    **B.      "similar to"**

12.      The term "similar to" appears in claims 8, 11 and 17 of the '175 patent.

>    **Response:** Undisputed**.**

13.      The term "similar to" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Snell Decl., ¶¶ 45–46; Turk Decl., ¶¶ 50–53.

>    **Response: Disputed.** The term "similar to" is objective and sufficiently disclosed to inform one skilled in the art with reasonable certainty regarding its scope.

14.      The Asserted Patents' specification does not use the phrase "similar to" in the context of what makes a digital signal abstract similar to a reference signal.

>    **Response: Disputed** to the extent that "similar to" is implied in the record.

15.      The specification neither defines nor provides any guidance on how a digital signal abstract is similar to a digital reference signal. Snell Decl., ¶¶ 47, 51–52; Turk Decl., ¶¶ 49, 52.

---

[2] *See, e.g., Pers. Audio, LLC v. Apple, Inc.,* 2011 U.S. Dist. LEXIS 157778, at *10(E.D. Tex. Jan. 30, 2011) ("A patentee is not required to disclose a listing of source code or a highly detailed description of the algorithm. . . .").

**Response: Disputed.** The Asserted Patents provide significant disclosure regarding how a digital signal abstract is similar to a digital reference signal. *E.g.* '175, Col 7:4-17, 8:44-46, 9:42-52; 10:10-16.

16.    "Similar" is not a word with a specific meaning in the art. Snell Decl., ¶ 46; Turk Decl., ¶ 48.

**Response:** Disputed to the extent it calls for a legal conclusion**.**

## C.    "index of relatedness"

17.    The term "index of relatedness" appears in claim 11 of the '472 patent.

**Response:** Undisputed**.**

18.    The term "index of relatedness" is subjective and relative, and fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Snell Decl., ¶¶ 55–58; Turk Decl., ¶¶ 57–60.

**Response: Disputed**. The term "index of relatedness" is objective and sufficiently disclosed to inform one skilled in the art with reasonable certainty regarding its scope.

19.    The term "index of relatedness" does not appear anywhere in the specification of the Asserted Patents, or anywhere in the '472 patent other than within claim 11 of the '472 patent. Snell Decl., ¶ 54; Turk Decl., ¶ 55.

**Response: Disputed** to the extent that "index of relatedness" is implied in the record.

20.    The specification thus provides no guidance on what "index of relatedness" means in the context of the '472 patent. Snell Decl., ¶ 54; Turk Decl., ¶ 55.

**Response: Disputed.** The Asserted Patents provide significant disclosure regarding how the relatedness of signals and abstracts may be measured. *E.g.* '175, Col 7:4-17, 8:44-46, 9:42-52; 10:10-16.

21.    The specification does not disclose what that structure of the "index of relatedness" is or how an "index of relatedness" works. Snell Decl., ¶ 55; Turk Decl., ¶ 59.

**Response: Disputed.** The Asserted Patents provide significant disclosure regarding how the relatedness of signals and abstracts may be measured. *E.g.* '175, Col 7:4-17, 8:44-46, 9:42-52; 10:10-16.

22.     The specification does not disclose how much "relatedness" is required to determine if the two abstracts are "related." Snell Decl., ¶¶ 56–61; Turk Decl., ¶ 58.

> **Response: Disputed.** The Asserted Patents provide significant disclosure regarding how the relatedness of signals and abstracts may be measured. *E.g.* '175, Col 7:4-17, 8:44-46, 9:42-52; 10:10-16.

23.     "Index of relatedness" has no specific meaning in the art. Snell Decl., ¶ 57; Turk Decl., ¶ 56.

> **Response:** Disputed to the extent it calls for a legal conclusion**.**

24.     The specification does not provide an objective standard for determining "relatedness." Snell Decl., ¶ 61; Turk Decl., ¶ 57.

> **Response: Disputed.** The Asserted Patents provide significant disclosure regarding how the relatedness of signals and abstracts may be measured. *E.g.* '175, Col 7:4-17, 8:44-46, 9:42-52; 10:10-16.

25.     One of ordinary skill in the art would not be able to resolve the underlying ambiguity of "index of relatedness." Snell Decl., ¶ 62; Turk Decl., ¶ 60.

> **Response: Disputed.** The Asserted Patents provide significant disclosure regarding how the relatedness of signals and abstracts may be measured. *E.g.* '175, Col 7:4-17, 8:44-46, 9:42-52; 10:10-16.

### D.     "programmed or structured to use an/said algorithm"

26.     The phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal" appears [sic] in claim 16 of the '175 patent.

> **Response:** Undisputed.

27.     The phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal" fail to inform, with reasonable

certainty, those skilled in the art about the scope of the invention. Snell Decl., ¶ 77; Turk Decl., ¶¶ 62–66.

> **Response: Disputed**. The phrases "programmed or structured to use an algorithm to generate said digital reference signal abstract from said digital reference signal" and "programmed or structured to use said algorithm to generate said digital query signal abstract from said digital query signal" are objective and sufficiently disclosed to inform one skilled in the art with reasonable certainty regarding their scope.

28.    The specification of the '175 patent does not disclose an "algorithm" that a processor could use to generate a query signal or reference signal. Snell Decl., ¶ 71; Turk Decl., ¶ 66.

> **Response: Disputed.** The specification of the '175 patent discloses multiple algorithms that a processor could use to generate a query signal or reference signal. *E.g.* '175 Patent, Col 8:3-9:21 (prose algorithm), '175 Patent, Col 5:32-42 (watermark embedding algorithm).

29.    In the absence of any such disclosure, a person of ordinary skill in the art reading the patent would not know what type of algorithm to generate an "abstract" is described. Snell Decl., ¶ 72; Turk Decl., ¶¶ 64–65.

> **Response: Disputed.** The specification of the '175 patent discloses multiple algorithms that a processor could use to generate a query signal or reference signal. *E.g.* '175 Patent, Col 8:3-9:21 (prose algorithm), '175 Patent, Col 5:32-42 (watermark embedding algorithm). A person of ordinary skill in the art would be sufficiently informed as to what algorithms might generate an "abstract."

30.    Neither in claim 16 of the '175 patent, nor in the claims from which it depends, is there any reference to a "digital query signal" prior to the use of the term "said digital query signal" in claim 16.

> **Response: Disputed** to the extent that the claims on which claim 16 depends make reference to a "digital query signal abstract" implying a "digital query signal," and that a "query signal" is imputed from other claims.

> **E.    "data describing a portion of the characteristics of its associated reference signal"**

31.     The phrase "data describing a portion of the characteristics of its associated reference signal" appears in claim 7 of the '700 Patent and claim 17 of the '494 patent.

> **Response:** Undisputed.

32.     The phrase "data describing a portion of the characteristics of its associated reference signal" fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

> **Response: Disputed**. The phrase "data describing a portion of the characteristics of its associated reference signal" is objective and sufficiently disclosed to inform one skilled in the art with reasonable certainty regarding its scope.

33.     The specification does not describe what portion or which characteristics of an associated reference signal must be described.

> **Response: Disputed**. The term "portion of the characteristics" inherently describes what part of the signal is described—a portion less than the whole.[3]

34.     The specification does not provide any guidance on what "portion" refers to. Snell Decl., ¶ 65; Turk Decl., ¶ 68.

> **Response: Disputed**. The term "portion of the characteristics" inherently describes what part of the signal is described—a portion less than the whole.

35.     The specification gives no examples of what constitutes a "portion" in the context of characteristics of a reference signal. Snell Decl., ¶ 65; Turk Decl., ¶ 68.

> **Response: Disputed**. The specification provides examples of what constitutes a "portion" in the context of characteristics of a reference signal. *E.g.* '175 Patent, Col. 11:35-41 ("This may include a short *3 second segment* of a commercially available and recognizable *song* . . . . The *complete song* is marketed as a *separately* valued object from the use of *a discrete segment of the song*.") (emphasis added).

---

[3] Claims amendable to multiple constructions should be interpreted so as to preserve validity. *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1368 (Fed. Cir. 2012).

36.     The specification does not describe what "characteristics" are, and how one of ordinary skill could segment out a "portion" of those characteristics. Snell Decl., ¶66; Turk Decl., ¶ 72.

> **Response: Disputed**. The term "portion of the characteristics" inherently describes what part of the signal is described—a portion less than the whole.

37.     Neither "portion" nor "characteristics" has a specific meaning in the art. Snell Decl., ¶ 67; Turk Decl., ¶¶ 69, 73.

> **Response:** Disputed to the extent it calls for a legal conclusion**.**

### F.      "system applies a cryptographic protocol"

38.     Claim 10 of the '700 patent is a system claim reciting "an electronic system for monitoring and analyzing at least one signal, comprising," among other elements, a method step "wherein the system applies a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal."

> **Response: Disputed.** The element "wherein the system applies a cryptographic protocol . . ." describes functionality.

### G.      "storing the hashed abstract and/or digitally signed abstract"

39.     Claim 11 of the '700 patent is a system claim reciting "an electronic system for monitoring and analyzing at least one signal, comprising," among other elements, a method step of "storing the hashed abstract and/or digitally signed abstract."

> **Response: Disputed.** The element "storing the hashed abstract . . ." describes functionality.

40.     Claim 21 of the '494 patent is a system claim reciting "a system for analyzing and identifying at least one reference signal, comprising," among other elements, a method step of "storing the hashed abstract and/or digitally signed abstract in the reference database."

> **Response: Disputed.** The element "storing the hashed abstract and/or digitally signed abstract in the reference database" describes functionality.

### H.      "based on the comparison step"

41.     Claim 22 of the '494 patent is a system claim reciting "a system for analyzing and identifying at least one reference signal, comprising," among other elements, performance of a specific method step, a "comparison step": "a transmitter for distributing at least one signal based on the comparison step."

> **Response: Disputed.** The elements "comparison step," et al., describe functionality.

### III.     INTRODUCTION

Defendants' motion for summary judgment must be denied because it fails to provide clear and convincing evidence that Blue Spike's claim terms are indefinite. In support of their argument, Defendants ignore major portions of the intrinsic record that provide scope to the claim terms. Nevertheless, it is clear that the claims and specification provide sufficient detail to one skilled in the art regarding the scope of the invention.

Defendants spend a majority of their efforts on the term "abstract." However, those efforts are wasted considering the parties agreed that "abstract"[4] should be given its ordinary meaning in the parties' joint 4-3 statement. Yet now the defendants act contrary to this express agreement by arguing that "abstract" is indefinite. Defendants should not be allowed to breach their agreement. Even so, the term the specification gives ample support for the term "abstract" and sufficiently describes its scope.

Defendants also argue that terms such as "similar to" and "index of relatedness" are indefinite because they are allegedly subjective and unsupported in the record. This is untrue on both counts. These objective terms are bolstered by significant support in the intrinsic record. Indeed, these terms are closely related to abstract comparisons. Defendants argue that "similar to" and "index of relatedness"

---

[4] The parties agreed on "digital reference signal abstract," "query signal abstract," and "first digital reference signal abstract." Ex. B, 4-3 Supplemental Joint Claim Construction and Prehearing Statement.

are indefinite because they refuse to accept that the invention teaches how abstracts match signals by degree, not just exact identity. Once matching by degree is accepted, it is readily apparent how an abstract may be "similar to" a signal and that this similarity may be measured on an "index of relatedness."

The dispute over "data describing a portion of the characteristics of its associated reference signal" is immediately resolved with the proper reading. This term describes creating an abstract ("data describing") from a segment of a signal ("a portion of the characteristics of its associated reference signal"). Not only is this construction supported in the record, but unlike Defendants' interpretation, it preserves the term's validity. Because construction should favor interpretations that protect a claim's validity, Defendants' reading must be discarded.

Defendants single out three terms as improperly incorporating method language into system claims. But Defendants' argument relies upon case law that is not germane to the patents-in-suit. The precedent cited by Defendants is restrictive of claims that require a user's action, not merely describing the capability of the system. But the claims at issue do just that—describe a system capability. Thus, the claims at issue remain valid.

Defendants argue that three terms relating to a "comparing device" are indefinite because they are means-plus-function claims that lack support. This is not the case. First, the "comparing device" terms are not means-plus-function claims. And second, even if they were means-plus-function, they are properly supported by numerous algorithms described in the specification.

Because the Defendants have failed to meet their high burden of establishing clear and convincing evidence of indefiniteness, Blue Spike respectfully asks the Court to deny summary judgment.

## IV.   LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine issue of material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In analyzing a motion for summary judgment, the Court must draw all inferences in favor of the non-moving party. *Celotex*, 477 U.S. at 323. And a finding of

13

indefiniteness on summary judgment must overcome the statutory presumption of validity. See 35 U.S.C. § 282. Thus, a party asserting that a patent claim is invalid for indefiniteness bears the burden of proving indefiniteness by clear and convincing evidence. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344-45 (Fed. Cir. 2007).

The definiteness requirement of 35 U.S.C. § 112 "ensure[s] that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124 (2014). The definiteness requirement "mandates clarity, while recognizing that absolute precision is unattainable." *Id.* at 2129.[5]

"When claims are amenable to more than one construction, they should when reasonably possible be interpreted so as to preserve their validity." *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996). Moreover, the Federal Circuit has cautioned against adopting a construction of a term which renders claims invalid or meaningless unless that construction "is the 'only claim construction that is consistent with the claim's language and the written description.'" *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1368 (Fed. Cir. 2012) (*quoting Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999)).

## V.     ARGUMENT

### A.  "abstract"

---

[5] Three months after the Supreme Court decided *Nautilus, Inc. v. Biosig Instruments, Inc.*, it appears that findings of indefiniteness are no more common. *See, e.g., Freeny v. Apple Inc.*, 2014 U.S. Dist. LEXIS 120446 (E.D. Tex. Aug. 28, 2014) (finding "low power communication signals" not indefinite); *Droplets, Inc. v. eBay, Inc.*, 2014 U.S. Dist. LEXIS 117699 (E.D. Tex. Aug. 22, 2014) (indefinite argument rejected); *VirnetX Inc. v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 110134 (E.D. Tex. Aug. 8, 2014) (motion for summary judgment based on indefiniteness denied); *Trover Group, Inc. v. Tyco Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 102331 (E.D. Tex. July 28, 2014) (although "amplitude" only found in claims and not discussed in specification, not indefinite).

### 1. "Abstract" should not be construed because the parties have already agreed to a definition.

Defendants should not be allowed to argue the term "abstract." Indeed, the parties worked diligently to agree on definitions before relying on the court's aid, and memorialized their agreements in a 4-3 Supplemental Joint Claim Construction Prehearing Statement. Ex. B. That joint claim construction statement shows that the parties agreed *not* to construe variations of the term "abstract." In fact, the parties specifically agreed that no construction was required, and that the term could retain its plain and ordinary meaning.

Later, Defendants argued for two separate constructions. While the Morpho Defendants also argued indefiniteness, the remaining Defendants refrained for a time. Now all defendants have joined together, dismissing the 4-3 statement, to argue that "abstract" is indefinite. This abuse of the meet and confer process must not be allowed. Blue Spike met in good faith and expected its efforts to be reciprocated. If Defendants are allowed to disregard the out-of-court meet-and-confer process, the judicial economy envisioned in such out-of-court engagements will be undermined. Moreover, Blue Spike will be prejudiced for adhering to an agreement Defendants never intended to keep

Thus, Blue Spike respectfully asks the Court to strike the term "abstract" from Defendants' motion for summary judgment.

### 2. The term "abstract" is definite.

"Abstract" is not indefinite. A term is definite if the patent provides one of ordinary skill in the art reasonable certainty regarding the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. at 2124. "[A]ll that is required is that the patent apprise [persons of skill in the art] of the scope of the invention." *Freeny v. Apple Inc.*, 2014 U.S. Dist. LEXIS 120446, at *16-17 (E.D. Tex. Aug. 28, 2014) (noting that post-*Nautilus* "some modicum of uncertainty is the price of ensuring the appropriate incentives for innovation") (citing *Nautilus*, 134 S.Ct. at 2128) (quotations omitted). Here, the patents-in-suit provide sufficient description of the invention's scope. (Tewfik declaration)

First, the specification provides scope by indicating what an abstract *is*—the collection of "all, or nearly all, of the perceptual qualities of [a portion of a signal] that differentiate it from a similarly selected [portion of another signal]." '175 Patent, Col. 8:44-46. Next, the specification narrows the scope by indicating what an abstract *is not*—it does not include perceptual qualities that fail to provide efficiencies "both in accuracy and speed with enabling logical relationships between an original signal and its abstract." '175 Patent, Col. 9:42-46. Even the Defendants agree that the specification provides "clear guidance" indicating "what an 'abstract' is not." Mot. at 12. Ultimately, the result is an abstract that "maintain[s] the ability to distinguish the perceptual quality of the signals being compared." '175 Col. 7:4-17. These descriptions define scope sufficiently to overcome indefiniteness. *See VirnetX Inc. v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 110134, at *32 (E.D. Tex. Aug. 8, 2014) (post-Nautilus ruling denying indefiniteness due to Plaintiff's description of the invention and Defendant's failure rebut).

Other descriptions in the specification further indicate an "abstract's" scope. For example, the following passage explains that abstracts are created using "'computer-acoustic' and 'computer-visual' modeling . . . to determine the smallest amount of data . . . which can represent and differentiate two digitized signal representations."

> As a general improvement over the art, the present invention incorporates what could best be described as "computer-acoustic" and "computer-visual" modeling, where the signal abstracts are created using data reduction techniques to determine the smallest amount of data, at least a single bit, which can represent and differentiate two digitized signal representations for a given predefined signal set. Each of such representations must have at least one bit difference with all other members of the database to differentiate each such representation from the others in the database. . . . The engine will identify those characteristics (for example, the differences) that can be used to distinguish one digital signal from all other digital signals that are stored in its collection.

'175 Patent, Col 10:10-24. And yet another description of the scope of an abstract reads as follows:

Lossless and lossy compression schemes are appropriate candidates for data reduction technologies, as are those subset of approaches that are based on perceptual models, such as AAC, MP3, TwinVQ, JPEG, GIF, MPEG, etc. Where spectral transforms fail to assist in greater data reduction of the signal, other signal characteristics can be identified as candidates for further data reduction. Linear predictive coding (LPC), z-transform analysis, root mean square (rms), signal to peak, may be appropriate tools to measure signal characteristics, but other approaches or combinations of signal characteristic analysis are contemplated. While such signal characteristics may assist in determining particular applications of the present invention, a generalized approach to signal recognition is necessary to optimize the deployment and use of the present invention.

'494 patent, col 4:18-32. These descriptions provide independent reasons to deny a finding of indefiniteness.

These descriptions of "abstract" are not only sufficient to overcome an indefiniteness ruling, they are substantial enough to refrain from construction and to allow the specification to define the term. Nevertheless, if the Court decides to construe "abstract," Blue Spike has proposed "summary," as this term succinctly captures the essence of the "abstract."

Considering the numerous descriptions in the specification, it is surprising that Defendants maintain that the specification "does not give *any* indication about what an abstract is."[6] Mot. at 12 (emphasis added). Defendants then cite random passages and claim that the "specification provides conflicting hints about what an abstract may be." Mot. at 12. Yet there is no conflict. On the contrary, Defendants' bullet-point list of "conflicting hints" merely explains that perceptual relationships are valuable for distinguishing signals (Brief, Ex. B; Col 5:67-6:3), but only if they result in a more efficient comparison process ('472 Patent, Col. 9:42-46). Thus, some perceptual relationships may be implemented and others abandoned. Defendants' list actually highlights the upper- and lower-bounds of an "abstract's" scope, further supporting denial of summary judgment.

---

[6] Defendants accusation is disingenuous, as they later admit "the specification states that an 'abstract' is created in part by *selecting certain characteristics of the reference signal that remain relatively constant.*" Mot. at 21. (emphasis added).

Much of Defendants' energy is expended questioning how an abstract is created. *See, e.g.* Dkt. 1752 at 13 (where Defendant inquires "what part of a reference signal or query signal appears in an 'abstract'" and "how much of that signal is used"); Dkt. 1752 at 21 ("A person of ordinary skill practicing the patent would need to know which portion of the characteristics was used to create the abstract."). But Defendants' energies are misplaced, since

> examination of the specification from the perspective of a skilled artisan does not convert an indefiniteness inquiry into an enablement inquiry. We are not analyzing whether a skilled artisan could have devised a processor and transceiver—with all necessary component parts—but whether a skilled artisan would have understood the specification as requiring a processor and transceiver.

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1280 (Fed Cir. 2012)

Defendants' are also mistaken that "market driven needs" somehow make the invention "a moving target." The specification notes that "decisions regarding the success or failure of an accurate detection of any given object may be flexibly implemented or changed to reflect market-based demands of the engine." '175 Patent, Col. 10:29-31. These "market-based demands" do not make the abstract any less definite, but relate to dependent claims that further modify an abstract by applying a hash ('700 Patent, Claim 11), digital signature ('700 Patent, Claim 11), cryptographic protocol ('700 Patent, Claim 10), or watermark ('494 Patent, Claim 23). *See* '175 Patent, Col 10:50-55 ("[W]here the data reduced abstract needs to have further uniqueness, a hash or signature may be required. And for objects which have further uniqueness requirements, two identical instances of the object could be made unique with cryptographic techniques.").

Another misguided argument is Defendants' claim that an "abstract" is "determined subjectively." Mot. at 15. This argument rests on the following passage: "In some cases, data reduction alone will not suffice: the sender and receiver must agree to the accuracy of the recognition. . . . " Mot. at 15 (*citing* '472 patent at 9:51-52). This passage relates to the creation of an abstract using "selectable criteria," and is therefore limited to the only asserted claim with this term (the '472 Patent, Claim 9). Moreover, the mere fact that criteria may be selected is not a subjective

process, so it is no wonder that Defendants do not attack the term "selectable criteria" directly. Yet even if the mere ability to select criteria were a subjective process, the specification describes "selectable criteria" sufficient to overcome a ruling of indefiniteness. *See also Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*, 2012 U.S. Dist. LEXIS 100453, at 10-11 (E.D. Tex. July 19, 2012) (finding that "useful to the recipient" was subjective but sufficiently defined so as to overcome a finding of indefiniteness).

Finally, Defendants' argument that "the purported invention is a moving target that shifts" is also problematic as it cites unrelated references that merely indicate how data reduction may be accomplished. Mot. at 13. It is ironic that Defendants criticize the patent for too little description on one hand, and then fault it for providing too much on the other.

The numerous descriptions of "abstract" that appear throughout the claims and specification provide sufficient scope to one of ordinary skill in the art. Defendants fail to meet their burden of showing clear and convincing evidence that the term is indefinite. *Lodsys, LLC v. Brother Int'l Corp.*, 2013 U.S. Dist. LEXIS 85614, at *106 (E.D. Tex.June 14, 2013) ("[B]ecause issued patents are entitled to a statutory presumption of validity under § 282, the standard for finding that a claim is indefinite (and therefore invalid) is high.") Thus, the Court should deny summary judgment on this term.

### 3. Blue Spike does not admit that "abstract" is indefinite.

Defendants' take out of context a statement from Blue Spike's Opening Claim Construction brief and make it the foundation of their indefiniteness brief, hoping to convince the Court that Blue Spike somehow admits that the term "abstract" is entirely impossible to define.[7] This could not be further from the truth. As indicated above, "abstract" is clearly defined in the specification. Additionally, Blue Spike has proposed an alternative construction of "summary." Dkt. 1776, Reply to Claim Construction Brief at 1.

---

[7] Notably, before Blue Spike filed its opening claim construction brief, only the Morpho Defendants argued that "abstract" is indefinite.

The statement in question was a response to the Defendants' attempt to narrow "abstract" by imputing limiting terms from dependent claims. Blue Spike responded by saying that "*both independent and dependent claims alter the definition of the term*, making a single definition impossible to achieve." Mot. at 8 (emphasis added). There can be no overarching construction that incorporates independent and dependent claims alike,[8] in any claim construction scenario. This is a restatement of the law more than an assessment of the patents-in-suit; a greedy construction that incorporates limiting terms from dependent claims cannot be valid. *See Nobelbiz, Inc. v. Global Connect, L.L.C.*, 2013 U.S. Dist. LEXIS 176339, at *19 (E.D. Tex. Dec. 13, 2013) (refraining from "incorporating a new limitation into this proposed claim term" because doing so would be "contrary to the canons of claim construction").

Defendants claim that "Blue Spike believes the term 'abstract' *shifts meaning* in some indescribable and unexplained way." Resp. at 11. This is not true. Defendants are not clear how they reach this conclusion. If Defendants are referring to the same out-of-context passage noted above, it has never been Blue Spike's contention that "abstract" shifts meaning, suffice it to say that the term may be further limited by dependent claims.

Blue Spike does *not* concede that it is "unable to articulate a single construction of "abstract" across all claims. *Contra* Mot. at 12. Blue Spike believes that "abstract" is adequately defined in the claim language and specification. Even so, Blue Spike has even provided the construction "summary." Dkt. 1776, Reply ISO Claim Construction at 1. Blue Spike believes no further construction is required, but if a construction is adopted, it must not unnecessarily limit the term—as

---

[8] For instance, the majority Defendants argue for a claim construction that incorporates a "perceptual relationship," imputing a limitation from dependent claims such as claim 18 of Patent '494. *See* Dkt. 1751, Defendants' Response to Claim Construction at 13 (in which Morpho defendants agree that "the term 'abstract' must have a broader construction than 'perceptual' due to the doctrine of claim differentiation).

Defendants' construction would—by incorporating limitations from dependent claims.

### B.  "similar to"

"Similar to" is not indefinite. The term's meaning is apparent on the face of the specification. Signal analysis (i.e. abstract comparisons) "must maintain the ability to distinguish the perceptual quality of the signals being compared." '175 Patent, Col. 7:15-17. Thus distinguishing signals necessarily provides feedback regarding their similarity. The specification explains that "abstracts are created using data reduction techniques to determine the smallest amount of data, at least a single bit, which can represent and differentiate two digitized signal representations." '175 Patent, Col. 10:12-16. These "at least a single bit" characteristics are distinguishing aspects of the reference signal, not arbitrary distinctions. *See, e.g.,* '175 Patent, Col. 7:15-34 (explaining how perceptual characteristics can improve upon compression techniques in order to distinguish different versions of a song).  Thus an abstract remains similar to the signal from which it is derived and "maintain[s] the ability to distinguish the perceptual quality of the signals being compared." Col. 7, lines 4-17.

The term "similar to" is not indefinite for being subjective. *Contra* Mot. at 15. "On numerous occasions, district courts, including this court, have held similarly imprecise claim language not indefinite." *Freeny v. Apple Inc.*, 2014 U.S. Dist. LEXIS 120446, at *15 (E.D. Tex. Aug. 28, 2014) (citing *Thomas Swan & Co. v. Finisar Corp.*, 2014 U.S. Dist. LEXIS 86209, at *25 (E.D. Tex. June 25, 2014) ("substantially collimated" not indefinite); *Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, 2014 U.S. Dist. LEXIS 24170, at *9 (E.D. Tex. Feb. 26, 2014) ("roughly the same" not indefinite)). In *Trover Group, Inc. v. Tyco Int'l, Ltd* the court determined that

> although the term 'amplitude' is used only in the claims and is not defined or discussed in the specification, the Court does not find it to be indefinite. To the contrary, the context makes the meaning of the term sufficiently clear to ensure that the term is not so indefinite as to invalidate the claims in which it appears. *See Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014)*

*Trover Group, Inc. v. Tyco Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 102331, at *31-32 (E.D. Tex. July 28, 2014). Here, as in *Trover*, the context makes "similar to" sufficiently clear to one of ordinary skill in the art.

### C. "index of relatedness"

"Index of relatedness" describes a relationship between a query signal and two abstracts. *See* Mot. at 18. An "index" is an "indicator, sign, or measure of something." GOOGLE DICTIONARY, http://dictionary.reference.com/browse/google. At the time of the invention, "relatedness" meant the state or condition of being related." Ex. G, OXFORD ENGLISH DICTIONARY (1989). The term "related" meant "having relation *to*, or relationship *with*, something else." Ex. H, OXFORD ENGLISH DICTIONARY, (1989) (emphasis original). So an "index of relatedness" in the context of the claims meant "a measure of the relationship between the signal and its abstract." The specification goes to great lengths to describe the relationship between signal and abstract, a relationship that identifies distinguishing characteristics. The term is definite despite not appearing in the specification because it is framed by sufficient context. *Trover Group, Inc. v. Tyco Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 102331, at *31-32 (E.D. Tex. July 28, 2014)

### D. "programmed or structured to use an/said algorithm"

The term "programmed or structured to use an/said algorithm" is definite because the specification and claims cite to numerous algorithms that can be used in the abstract creation process. An inventor may disclose an algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (noting that "a patentee [may] express th[e] algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure")

Here, many algorithms are noted by name. For example, a hash, digital signature, or cryptographic protocol. Additionally, the specification lays out in prose a 5-step algorithm for producing an abstract. '175 Patent, Col. 7:65-9:28; *See*

*c4cast.com* at 67 (finding a prose algorithm sufficient proof of definiteness); *Levine v. Samsung Telcoms. Am.*, LLC,2012 U.S. Dist. LEXIS 13528, at *54 (E.D. Tex. Feb. 3, 2012) (prose algorithm overcame indefinite argument). Each of these algorithms is sufficient disclosure to independently warrant denial of summary judgment on this issue.

In addition to the algorithms already mentioned, the inventor notes that a "watermarking embedding **algorithm**" can be used to "yield information about the extent to which a data signal can be compressed while holding steadfast to the design requirement that the compressed signal maintain its perceptual relationship with the original, uncompressed signal." '175 Patent, Col. 5:33-42. (emphasis added). Watermarking techniques are known to one of ordinary skill in the art. In fact, at least 9 of Mr. Moskowitz's watermarking inventions are listed on the patents-in-suit.

Additionally, claim 16 would have survived indefiniteness even if it had failed to list an algorithm because it is not a means-plus-function claim. The cases Defendants cite to are inapposite because they both involve means-plus-function terms that require disclosure of a structure. *See Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1378 (Fed. Cir. 2013) (in which means-plus-function language required disclosure of a structure pursuant to 35 USCS §112); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003) ("There is no dispute that this limitation is written in means-plus-function form and falls under 35 U.S.C. § 112 P6.") Here, claim 16 is not a means-plus-function element, and would not be subject to the requirement under 35 USCS §112 to disclose a structure.

Even if the means-plus-function restrictions applied to this term, it would still be sufficiently definite. An algorithm is unnecessary if the claim's function is sufficiently clear. Here, claim 16 is merely a dependent claim attached to an already clear independent claim *See Levine v. Samsung Telcoms. Am., LLC,* 2012 U.S. Dist.

LEXIS 13528, at * 53-54. (E.D. Tex.Feb. 3, 2012) (finding that no algorithm was necessary). [9]

### E. "data describing a portion of the characteristics of its associated reference signal"

The term "data describing a portion of the characteristics of its associated reference signal" is a simple construction—an abstract is generated from a portion of a reference signal rather than the entire signal. This construction is supported by the specification which provides examples of what constitutes a "portion" in the context of characteristics of a reference signal. *E.g.* '175 Patent, Col. 11:35-41 ("This may include a short 3 second segment of a commercially available and recognizable song . . . . The complete song is marketed as a separately valued object from the use of a discrete segment of the song."). Plaintiff's construction should be adopted because it is accurate and supported by the intrinsic record.

There is no conflict or redundancy between the independent claim and dependent claims at issue. The dependent claims identify distinguishing characteristics of a fraction of the original signal, while the dependent claims identify those characteristics in the entire signal. Defendants' reading is undermined by their own argument—the redundancy in their reading implies that the reading itself is flawed. *See* Mot. at 21. Accordingly, Defendants' interpretation is inappropriate. *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996) (noting claims should be "interpreted so as to preserve their validity").

---

[9] Defendants also argue that "digital query signal" does not appear in claim 16 or the claim on which it relies, and it is invalid for lacking antecedent basis because the "meaning is not reasonably ascertainable" (quoting *Halliburton*). Defendants cannot claim in good faith that "digital query signal" is not readily ascertainable, when the independent claim refers to digital reference signals, digital reference signal abstracts, and query signal abstracts, not to mention that query signals are mentioned in the patent's abstract and body numerous times. Moreover, Defendants agreed to a definition of "digital query signal" in the 4-3 disclosure. Ex. B.

**F.   "wherein the system applies a cryptographic protocol," "further comprising storing the hashed abstract," and "based on the comparison step"**

Defendants argue that certain claims are indefinite for reciting a method step in a system claim. However, Defendants' argument is unavailing because it incorrectly relies on *IPXL Holdings*. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). This Court, as well as many other decisions in this jurisdiction, have limited the IPXL holding:

> [T]he Federal Circuit clarified its holding in IPXL by explaining that <u>apparatus claims are not necessarily indefinite for using functional language</u>. 520 F.3d 1367, 1375 (Fed. Cir.2008) (citation omitted). For example, functional language which merely describes the capability of the claimed invention will not render a claim invalid under IPXL. *Id.* This sort of language does not impermissibly mix two different statutory classes of subject matter. *See Yodlee, Inc. v. CashEdge, Inc.*, 2006 WL3456610, at *4–6 (N.D. Cal. Nov. 29, 2006) (finding the claims at issue are valid because they "describe what the apparatuses do, when used in a certain way. They do not claim use of the apparatuses"). Since evaluating indefiniteness arguments under IPXL, courts have repeatedly distinguished IPXL from situations in which the claim language offered sufficient notice to potential defendants as to the actions which would constitute infringement. *See, e.g., Yodlee, 2006 WL 3456610, at *4*;

Alexsam, Inc. v. Best Buy Stores L.P.,2012 U.S. Dist. LEXIS 148638, at *9-10 (E.D. Tex.Aug. 22, 2012), affirmed by Schneider. *See also SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, 940 F. Supp. 2d, 455 (E.D. Tex. April 11, 2013) (distinguishing *IPXL* and its progeny as involving claims requiring user acts rather than capabilities of the system); *Eolas Techs., Inc. v. Adobe Sys.*, 810 F. Supp. 2d, 812-813 (E.D. Tex. August 22, 2011) (distinguishing *IPXL* limitation as requiring action or "actual use" rather than merely setting forth a capability); *Cybergym Research, LLC v. Icon Health & Fitness, Inc.*, 2007 U.S. Dist. LEXIS 102195 (E.D. Tex. Sept. 4, 2007) ("Because the claim language at issue in *IPXL Holdings* expressly required an action by the 'user', the present case is distinguishable."); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2010 U.S. Dist. LEXIS 74808, 96-98 (E.D. Tex. July 26, 2010) ("The Court agrees with numerous other courts in that the holding in the *IPXL* case is very limited.").

Here, the claim language compels the same result as in Alexsam:

'700 patent, Claim 1:

An electronic system for monitoring and analyzing at least one signal, comprising:

[a] a first input that receives at least one reference signal to be monitored,

[b] a first processor that creates an abstract of each reference signal input to said first processor through said first input wherein the abstract comprises signal characteristic parameters configured to differentiate between a plurality of versions of the reference signal;

[c] a second input that receives at least one query signal to be analyzed,

[d] a second processor that creates an abstract of each query signal wherein the abstract comprises signal characteristic parameters of the query signal;

[e] a reference database that stores abstracts of each at least one reference signal;

[f] a comparing device that compares an abstract of said at least one query signal to the abstracts stored in the reference database to determine if the abstract of said at least one query signal matches any of the stored abstracts wherein a match indicates the query signal is a version of at least one of the reference signals.

Claim 10:

The system of claim 1,

[a] wherein the system applies a cryptographic protocol to the abstract of said reference signal, said query signal, or both said reference signal and said query signal.

'700: Claim 11:

The system of claim 10, [a] wherein the cryptographic protocol is one of at least a hash or digital signature and further comprising storing the hashed abstract and/or digitally signed abstract.

'494: Claim 21:

The system of claim 20, [a] wherein the cryptographic protocol is one of at least a hash or digital signature and further comprising storing the hashed abstract and/or digitally signed

abstract in the reference database.

Claim 22:

The system of claim 11, [a] further comprising a transmitter for distributing at least one signal based on the comparison step.[10]

As in Alexam, the claim language reveals that there is no user involved; rather there is functionality.  This is entirely permissible as this Court has previously found.

## G.  "device that compares," "comparing device," and "device configured to determine."

The three phrases "device that compares," "comparing device," and "device configured to determine" are not indefinite because they are not means-plus-function elements. As a threshold issue, Blue Spike's opening claim construction brief, explained that there is a rebuttable presumption that these claims are *not* means-plus-function elements because of the lack of means-plus-function language. Dkt. 1700 at 15 (*citing CCS Fitness, Inc. v. Brunswick, Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002)).

The phrases at issue are not means-plus-function, and Defendants fail to meet their burden of proving by clear and convincing evidence that they are. For this reason, the terms are not indefinite. Yet even assuming they were means-plus-function, a "comparing device" is recognizable by one of ordinary skill in the art and thus sufficiently disclosed. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1376 (Fed. Cir. 2010). Blue Spike referenced several extrinsic dictionary sources, each indicating that the term "comparing device" and its variations were known in the art, providing another independent basis for overcoming indefiniteness. (Dkt. 1700 at 17-18).

---

[10] Lack of antecedent basis is not grounds for finding indefiniteness where there it is implied from the overall context.  Energizer Holdings v. ITC, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006)

Further, the intrinsic record shows discloses structure sufficient to meet the requirements of § 112 ¶ 6. *See* Dkt. 1700 at 16-17. The patent discloses an algorithm in the form of prose, which is sufficient disclosure. *Typhoon Touch Techs. Inc. v. Dell, Inc.,* 659 F.3d 1376 (Fed. Cir.2011). *Typhoon Touch Techs* instructed that an algorithm is acceptable in various forms, and that

> a patentee need not include computer code in the specification for a computer-implemented procedure in order to comply with the requirements of § 112, ¶ 2. Instead, a procedural algorithm may be expressed 'in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure."

*Typhoon Touch Techs.* 659 F.3d at 1384. Moreover, one of normal skill in the art opines that there is sufficient structure to ascertain the bounds of these claims using "comparing device" based on the three spec cites. *See* Ex. B-C, Decl. of Ahmed Tewfik.

Thus, these claims are not indefinite.

## VI. CONCLUSION

Defendants have failed to establish clear and convincing evidence that Blue Spike's claims are not sufficiently supported by the intrinsic record. On the contrary, the record provides the requisite scope for one of ordinary skill in the art. Thus, summary judgment is unwarranted and must be denied.

Respectfully Submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992

**GARTEISER HONEA, P.C.**
218 N. College Ave.
Tyler, Texas 75702
Telephone:  (903) 705-7420
Facsimile:  (888) 908-4400

***Counsel for Blue Spike LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

<u>/s/ Randall T. Garteiser</u>
Randall T. Garteiser