# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>    *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |
| TEXAS INSTRUMENTS, INC.<br>    *Defendants* | § § § | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY ON THE
BASIS THAT CLAIM TERMS ARE INDEFINITE**


## **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................................. 1

    A.    "Abstract" ............................................................................................................ 2

        1.    Blue Spike fails to define "abstract" with any reasonable certainty ................................................................................................ 2

        2.    Blue Spike's Opposition further underscores the term's indefiniteness. .......................................................................................... 3

    B.    "Similar to" ......................................................................................................... 5

    C.    "Index of Relatedness" ....................................................................................... 7

    D.    "Programmed or Structured to Use An/Said Algorithm to Generate Said Digital/Query Reference Signal" ....................................................................... 7

    E.    "Data Describing a Portion of the Characteristics of Its Associated Reference Signal" ............................................................................................... 9

    F.    "Wherein the System Applies a Cryptographic Protocol," "Further Comprising Storing the Hashed Abstract," and "Based on the Comparison Step" .................... 9

    G.    "Device that Compares," "Comparing Device," and "Device Configured to Determine" ................................................................................................... 10

CONCLUSION ............................................................................................................................ 10

## **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................................. 1

    A.    "Abstract" ............................................................................................................ 2

        1.    Blue Spike fails to define "abstract" with any reasonable certainty ................................................................................................ 2

        2.    Blue Spike's Opposition further underscores the term's indefiniteness. .......................................................................................... 3

    B.    "Similar to" ......................................................................................................... 5

    C.    "Index of Relatedness" ....................................................................................... 7

    D.    "Programmed or Structured to Use An/Said Algorithm to Generate Said Digital/Query Reference Signal" ....................................................................... 7

    E.    "Data Describing a Portion of the Characteristics of Its Associated Reference Signal" ............................................................................................... 9

    F.    "Wherein the System Applies a Cryptographic Protocol," "Further Comprising Storing the Hashed Abstract," and "Based on the Comparison Step" .................... 9

    G.    "Device that Compares," "Comparing Device," and "Device Configured to Determine" ................................................................................................... 10

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 6:12cv22, 2014 U.S. Dist. LEXIS 24170 (E.D. Tex. Feb. 26, 2014) .............................. 7

*Adaptix, Inv. v. Huawei Techs. Co., Ltd.*,
    No. 6:13cv438, Report and Recommendation, (E.D. Tex. Sept. 19, 2014) .......................... 9

*Alexsam, Inc. v. Best Buy Stores L.P.*,
    No. 2:10-cv-93, 2012 WL 4891619 (E.D. Tex. Aug. 22, 2012) ........................................... 10

*Freeny v. Apple, Inc.*,
    No. 2:13-cv-00361-WCB, 2014 U.S. Dist. LEXIS 120446 (E.D. Tex. Aug. 28,
    2014) ...................................................................................................................................... 6

*Halliburton Energy Services, Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ............................................................................................ 8

*In re Cohn*,
    58 438 F.2d 989 (CCPA 1971) ............................................................................................. 2

*Interval Licensing LLC v. AOL, Inc.*,
    --- F.3d ----, 2014 WL 4435871 (Fed. Cir. Sept. 10, 2014) ....................................... 3, 4, 5, 7

*Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*,
    309 F.3d 1365 (Fed. Cir. 2002) ............................................................................................ 2

*Rembrandt Data Techs, LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011) ........................................................................................... 10

*SFA Sys., LLC v. 1-800-Flowers.com, Inc.*,
    940 F.Supp.2d 455 (E.D. Tex. 2013) ................................................................................... 10

*Trover Group, Inc. v. The Sec. Ctr., Inc.*,
    No. 2:13-cv-0052-WCB, 2014 U.S. Dist. LEXIS 102331 (E.D. Tex. July 28, 2014)
    ............................................................................................................................................... 6

Blue Spike's Opposition is a blatant attempt to twist the facts and avoid the inevitable conclusion that the asserted patents are invalid. This is nowhere more apparent than in its Introduction, where Blue Spike states that "the parties agreed that 'abstract' should be given its ordinary meaning." Yet the meaning of "abstract" is the main dispute between the parties.[1] Indeed, throughout this case, Blue Spike has offered no construction for "abstract." Then, in its Claim Construction Reply Brief, it proposed for the first time that abstract should be construed as "summary." Yet Blue Spike spent pages in its Indefiniteness Opposition reciting multiple "descriptions" of "abstract" that contradict every previous position it has taken with respect to "abstract" in this case, including its untimely construction.

Blue Spike's arguments with respect to other indefinite terms fare no better. While Blue Spike professes to have explicit definitions and ample support in the specification, Blue Spike's arguments are either devoid of any citations to the intrinsic record or cite to irrelevant portions of the specification. Even Blue Spike's expert, Ahmed Tewfik, asserts nothing more than vague generalities with little support.[2] Blue Spike has no support for certain claims because none exists. And Blue Spike's late proffers of constructions for the first time in its responsive briefing demonstrate the lack of clarity it has with its own patents. "Abstract" is indefinite and all asserted claims are therefore invalid.[3] Defendants' motion for summary judgment of indefiniteness should

---

[1] Blue Spike stated that the parties agreed on a construction for "digital reference signal abstract," "query signal abstract," and "first digital reference signal abstract." That is incorrect. Defendants suggested that these terms need not be construed because the dispute is over "abstract" alone. In no way did Defendants agree that "abstract" has any ordinary meaning.

[2] Blue Spike refused to make Dr. Tewfik available for a deposition prior to Defendants' Reply Brief deadline. Declaration of Christopher Higgins. Counsel for Blue Spike repeatedly ignored emails from Defendants requesting Dr. Tewfik's availability for a deposition. *Id.* Thus, Defendants object to Blue Spike's reliance on the declaration of Dr. Tewfik.

[3] Blue Spike argues that certain claim terms do not recite the term "abstract" ('700 patent, claims 8, 51; '494 patent, claims 4, 18, 22). But these are dependent claims that incorporate all of the limitations of the independent claims, including "abstract."

be granted, thereby dismissing Blue Spike's entire case.

**A.      "Abstract"**

Blue Spike's Opposition confirms that it is impossible to construe "abstract" with reasonable certainty. Blue Spike has changed its position on the meaning of this term no fewer than four times—quoting a hodge-podge of specification passages without supplying a single articulation of claim scope for this Court. These failures warrant summary judgment.

**1.      Blue Spike fails to define "abstract" with any reasonable certainty.**

Blue Spike began the claim construction process by asserting that no construction was required for "abstract." *See* Dkt. 1674, Suppl. Joint 4-3 Cl. Constr. Stmt., Ex. A at 1. Next, when it came time to brief the term, Blue Spike admitted that "a single definition" of "abstract" is in fact "impossible to achieve." Dkt. 1700, Op. Cl. Constr. Br. at 8. When Blue Spike submitted its reply brief it proposed an untimely and equally indefinite construction of "abstract" as a "summary."[4] Dkt. 1776, Reply Cl. Constr. Br. at 1. Now, realizing that its admissions have confirmed the term's indefiniteness, Blue Spike attempts to invent new law by declaring that "[t]here can be no overarching construction that incorporates independent and dependent claims alike, in any claim construction scenario." Dkt. 1785, Opp'n at 20 (footnote omitted). This is nonsensical, finds no basis in the law, and further flouts one of the most basic principles of claim construction that "[a] claim term used in multiple claims should be construed consistently." *See Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002); *In re Cohn*, 58 438 F.2d 989, 993 (CCPA 1971) (finding claim term indefinite where the patentee's conflicting use of the term rendered the scope of the claims uncertain). There is no reasonably

---

[4] Putting aside the procedural improprieties of raising new arguments in a reply brief, Blue Spike's untimely construction is without intrinsic support. The specification nowhere defines "abstract" as a "summary." In fact, the latter term is used just once in the specification, and only in connection with this header: "Summary of the Invention."

2

certain meaning of "abstract," and summary judgment should be granted on this basis.

### 2. Blue Spike's Opposition further underscores the term's indefiniteness.

Blue Spike now cites to numerous passages from the specification that allegedly "define" the scope of the term "abstract." These passages, however, highlight the ambiguity and subjectivity of the use of the term in the specification. *First*, Blue Spike claims that the specification "indicat[es] what an abstract *is*–the collection of 'all, or nearly all, of the perceptual qualities of [a portion of a signal] that differentiate it from a similarly selected [portion of another signal].'" Opp'n at 16.[5] *Second,* Blue Spike asserts that "[u]ltimately, the result is an abstract that 'maintain[s] the ability to distinguish the perceptual quality of the signals being compared.'" *Id. Third*, Blue Spike argues that "abstracts are created using 'computer acoustic' and 'computer visual modeling'… to determine the smallest amount of data … which can represent and differentiate two digitized signal representations." *Id.*

These passages illustrate the point made in Defendants' Motion: "the intrinsic record provides only vague and conflicting examples about the meaning of this critical claim term." Dkt. 1752, Def. Mot. for Summ. J. at 12. Blue Spike, however, asserts that Defendants' Motion "highlights the upper- and lower-bounds of an 'abstract's' scope," *without actually articulating what that scope is.* Opp'n at 17. *See Interval Licensing LLC v. AOL, Inc.,* --- F.3d ----, 2014 WL 4435871, at *5 (Fed. Cir. Sept. 10, 2014) (noting that "there is an indefiniteness problem if the claim language 'might mean several things and "no informed and confident choice is available among the contending definitions.'"").

Dr. Tewfik's Declaration is similarly evasive. He *claims* to have reasonable certainty of the scope of the invention, but declines to actually articulate that scope, define the meaning of the

---

[5] Blue Spike appears to be replacing "[a portion of a signal]" with the term "object"—which is what actually appears in the specification—with no explanation or support. *See* '175 patent at 8:47–49.

3

term, or explain why it should be construed to mean "summary." Dkt. 1785-10, Tewfik Decl. at 4. Instead, Dr. Tewfik merely cites passages from the specification without providing any further information or analysis. *Id.* at 5–7. Indeed, he fails to explain what one of ordinary skill would understand from those passages, or how one could objectively determine what an "abstract" is without resorting to subjective opinion. *See id.* Moreover, his Declaration makes no attempt to rebut the opinions of Defendants' three experts, Dr. Bowyer, Dr. Turk, and Mr. Snell, who all examined the intrinsic record and gave reasoned opinions that it does not inform them of the meaning of "abstract" with reasonable certainty. *Id.* at 4–7; Dkt. 1752-4, Bowyer Decl. ¶¶ 28–41; Dkt. 1752-8, Turk Decl. ¶¶ 33–36, 46–48; Dkt. 1752-6, Snell Decl. ¶¶ 36–42.[6]

Finally, as the specification explains, just what is and what is not an "abstract" is ultimately left to the subjective determination of those practicing the invention:

> *In some cases*, data reduction alone will not suffice: the **sender and receiver must agree** to the accuracy of the recognition. *In other cases*, agreement will actually depend on a third party who authored or created the signal in question. …. for example, a "**signal abstract**" *which naturally, or* **by agreement** *with the creator, the copyright owner or other interested parties*, can be used to describe the original signal.… As long as a realistic set of conditions **can be arrived at** governing the relationship between a signal and its data reduced **abstract**, increases in effective monitoring and transparency … is likely to result.

'472 patent at 9:51–65 (emphasis added). This passage is the hallmark of indefiniteness, for it "leav[es] the skilled artisan to consult the 'unpredictable vagaries of any one person's opinion'" about the meaning of "abstract." *Interval Licensing*, 2014 WL 4435871, at *8. Blue Spike offers no meaningful rebuttal to this improper designation of claim scope in its Opposition, but instead tries to cabin this damaging statement, and the others identified in Defendants' Motion, to claim terms other than "abstract." Opp'n at 18–19. Such a baseless proposition did not even earn the

---

[6] Dr. Tewfik also notably declines to opine that the Asserted Patents are applicable to biometric identification. *See* Tewfik Decl. at 6 (pointing specifically to an embodiment in the specification that addresses music and stating only that it would apply to an image or video).

4

endorsement of Blue Spike's expert. Because the specification admits that an "*abstract*" is subjectively determined by mutual agreement, there is no support for limiting this admission to the single claim that creates abstracts using "selectable criteria," as Blue Spike insists. *See id.*; '472 patent at 9:47–10:8. The specification likewise admits that "decisions regarding the success or failure of an accurate detection of any given object may be flexibly implemented or changed to reflect market-based demands of the engine." '175 patent at 10:28–31. Again, nothing supports confining these subjective, "market-based demands" to only certain dependent claims. *Compare id.* at 10:28–31 *with id.* at 10:50–55. Instead, these both apply to "abstract," and clearly and convincingly evince the subjectivity of the term. Blue Spike has neither credible arguments nor evidence to the contrary.[7]

**B.     "Similar to"**

In its Opposition, Blue Spike concedes that "similar to" is a "subjective" term. Opp'n at 21. Thus, as the Federal Circuit recently held, when "faced with a purely subjective claim phrase, we must look to the written description for guidance." *Interval Licensing*, 2014 WL 4435871, at *5 (quotation omitted). Here, two of Defendants' experts have independently concluded that "[t]he specification provides no guidance on how a digital signal abstract is similar to a digital reference signal" (Turk Decl. ¶¶ 50–54; Snell Decl. ¶¶ 44–52), and "similar to" has no well-defined meaning to one of ordinary skill in the art (Turk Decl. ¶ 51; Snell Decl. ¶¶ 45–46).

Blue Spike offers *no evidence* to the contrary in its Opposition—its expert is **silent** on the indefiniteness of this claim term. Instead, Blue Spike's attorneys assert that "an abstract remains similar to the signal from which it is derived and 'maintain[s] the ability to distinguish the

---

[7] To the extent the Court determines from Blue Spike's collection of excerpts that the term is definite, these excerpts serve as limiting admissions that Blue Spike's untimely construction is too broad and that Defendants' constructions are consistent with the specification.

5

perceptual quality of the signals being compared.'" Opp'n at 21 (quoting '175 patent at 7:4–17). Yet that attorney argument is not evidence, and in any event, raises more questions than it attempts to resolve. Exactly what must be similar between an abstract and its reference signal, and more importantly, just how much similarity is required for the abstract to be "similar to" its reference signal, the intrinsic record does not say. *See* Turk Decl. ¶ 53. As Dr. Turk stated, the '175 patent "explains nothing about how alike the reference signal needs to be to its abstract. There is no explanation or context for what 'similar' means." *Id.*

Nor does invoking the word "perceptual" salvage the validity of the '175 patent's asserted claims. As Mr. Snell testified, the '175 patent "do[es] not specify how many or which components of perception (*e.g.*, recording hall acoustics, rhythm, tempo and the duration, pitch, loudness and timbre of each note) must match, and do[es] not specify quantitatively how similar these components must be." Snell Decl. ¶ 47.[8] Even if such metrics had been supplied, the necessary "software, mathematical equations, algorithm flow charts, schematics, and block diagrams for describing the means of comparing the similarity of signals are missing" from the intrinsic record as well, confirming the indefiniteness of this claim term. *Id.* ¶ 51.

Furthermore, Blue Spike's string citation to decisions by other courts construing different claim terms in light of different intrinsic records fails to alter the result that "similar to" is indefinite here. Not only are Blue Spike's cited cases distinguishable,[9] but they are undermined by

---

[8] Adding to the confusion, Blue Spike insists that an "abstract" need not comprise all of the perceptual qualities of its reference signal. Opp'n at 16 (asserting that an "abstract" is "the collection of all, or nearly all, of the perceptual qualities of [a portion of a signal] . . . ."

[9] *See Freeny v. Apple, Inc.*, No. 2:13-cv-00361-WCB, 2014 U.S. Dist. LEXIS 120446, at *17 (E.D. Tex. Aug. 28, 2014) (term not indefinite where "[t]he specification on several occasions refers to low power signals as those that do not communicate further than a few hundred feet,"); *Trover Group, Inc. v. The Sec. Ctr., Inc.*, No. 2:13-cv-0052-WCB, 2014 U.S. Dist. LEXIS 102331, at *33 (E.D. Tex. July 28, 2014) ("amplitude" not indefinite where the specification "described in detail" a process in which "some degree of change is observed"); *Adaptix, Inc. v. Alcatel-Lucent*

the recent decision of *Interval Licensing*, in which the Federal Circuit held that "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." 2014 WL 4435871 at *5 (ruling the term "in an unobtrusive manner that does not distract a user" indefinite). Here, both Mr. Snell and Dr. Turk agree that the intrinsic record supplies no objective boundaries for the claim term "similar to," and neither Blue Spike nor its expert offer any evidence to the contrary. In fact, Blue Spike failed to articulate one example of an abstract that is "similar to" its reference signal, or one that is not.

C.  **"Index of Relatedness"**

Blue Spike, for the first time in its Opposition, proposes a construction for "index of relatedness" as "a measure of the relationship between the signal and ***its abstract***." Opp'n at 22 (emphasis added). Just two sentences earlier, however, Blue Spike alleges that the "index of relatedness" describes a relationship between a query signal and "***two abstracts***." *Id. (*emphasis added). It is clear that even Blue Spike is uncertain what "index of relatedness" means. Indeed, its entire argument is that "[t]he term is definite despite not appearing in the specification because it is framed by sufficient context." *Id.* Tellingly, Blue Spike includes no citations, nor any indication at all, as to what that context is. That is because none exists. Moreover, no one of ordinary skill in the art knows what the term "index of relatedness" means. *See* Turk Decl. ¶¶54-61; Snell Decl. ¶¶55–61. Blue Spike's expert, Dr. Tewfik, is silent. *See* Tewkif Decl. Accordingly, the term is indefinite.

D.  **"Programmed or Structured to Use An/Said Algorithm to Generate Said Digital/Query Reference Signal"**

The claim language plainly requires an algorithm to generate an abstract. Neither the claim

---

*USA, Inc.*, No. 6:12cv22, 2014 U.S. Dist. LEXIS 24170, at *37–*38 (E.D. Tex. Feb. 26, 2014) (pre-*Nautilus* ruling that term was not indefinite given specific disclosed examples).

7

nor the specification specifies an algorithm. Thus, the inventors failed to specify the bounds of that which they purported to invent, and the claim is indefinite as a result.

Rather than pointing to an algorithm disclosed in the specification for creating an abstract, Blue Spike simply argues that the specification discloses ***other algorithms*** for "a hash, digital signature, or cryptographic protocol." Opp'n at 22. These are irrelevant. For "producing an abstract" Blue Spike points to a section that merely gives an overview of "five elements" of a typical signal recognition system. *Id.* (citing '175 patent at 7:65–9:28). There is no algorithm disclosed in this prose.[10]

Blue Spike's argument related to means-plus-function claims is equally unavailing. First, it cannot be disputed that claim 16 of the '175 patent is drafted in functional language. The Federal Circuit has instructed that, as here, "[w]hen a claim limitation is defined in purely functional terms, the task of determining whether that limitation is sufficiently definite is a difficult one that is highly dependent on context." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1255–56 (Fed. Cir. 2008). And because patent drafters can resolve the ambiguity of functional claiming "if the specification provided a formula for calculating a property" or a "quantitative metric," courts are reluctant to permit functional limitations to cover that which the inventor did not invent. *Id.* at 1256 (finding claim limitation indefinite because proposed definition would cover all future improvements). The same result should hold here. Claim 16 recites a processor "programmed or structured to use an algorithm to generate…an abstract." There is no mention of an algorithm in the specification and claim 16 cannot permit the inventors to cover "all future

---

[10] Blue Spike further cites to a "watermarking embedding algorithm" which is irrelevant to the claimed abstract. The specification explicitly states that an abstract is not a watermark. '472 patent at 5:5–20.

improvements" to the abstract creation process. The claim is indefinite.[11]

E. **"Data Describing a Portion of the Characteristics of Its Associated Reference Signal"**

Blue Spike does not even address Defendants' arguments relating to this claim element. Instead, Blue Spike misrepresents the claim language in dispute. Claim 7 of the '700 patent and claim 17 of the '494 patent each require that "stored abstracts comprise data describing ***a portion of the characteristics*** of its associated reference signal." (emphasis added). Blue Spike ignores the plain language of the claim—discussing portions of characteristics—and instead posits that the claim teaches that "an abstract is generated from ***a portion of a reference signal*** rather than the entire signal." Opp'n at 24 (emphasis added). But the claim language discusses a portion of the characteristics, ***not*** a portion of the reference signal. Blue Spike's arguments thus fail.

One of ordinary skill in the art is "left to guess what 'characteristics' of a signal, and what 'portion' of them, are relevant to defining an abstract." Def. Mot. for Summ. J. at 22. Blue Spike failed to dispute Defendants' arguments and accompanying declarations, or present any evidence of the existence of a genuine issue for trial. Accordingly, summary judgment is warranted.

F. **"Wherein the System Applies a Cryptographic Protocol," "Further Comprising Storing the Hashed Abstract," and "Based on the Comparison Step"**

Blue Spike's sole argument is that impermissible mixed method and apparatus claims require a user involved. The holding of *IPXL Holdings, L.L.C. v. Amazon.com, Inc.* has not been so restricted. For example, the Federal Circuit found the claims in *Rembrandt*, which are similar to the claims here and do not require user action, to be impermissible mixed method and apparatus

---

[11] As argued in Defendants' Motion, claim 16 is also indefinite because "said digital query signal" lacks antecedent basis. In contrast to Blue Spike's argument, this is not a case where the antecedent basis for "said digital query signal" can be ascertained in the claim with reasonable certainty. The antecedent basis simply does not exist. Claims 11 and 12, from which claim 16 depends, do not contain a "digital query signal" or even a "query signal" in any form. Thus, the claims are indefinite under the new *Nautilus* standard. *See Adaptix, Inv. v. Huawei Techs. Co., Ltd.*, No. 6:13cv438, Report and Recommendation, (E.D. Tex. Sept. 19, 2014).

claims. *Rembrandt Data Techs, LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011).

Blue Spike further ignores the fact that every claim in all cases cited in its Opposition describes the functional capabilities of *a specific structural claim element*.[12] Here, the method steps are not describing the configuration or capabilities of any claimed structural elements; rather, they are unattributed to any structural element and must be performed by the system as a whole in order to infringe (*e.g.*, "wherein the system applies a cryptographic protocol," "further comprising storing the hashed abstract and/or digitally signed abstract," "based on the comparison step"). *See Rembrandt*, 641 F.3d at 1339 (rejecting Rembrandt's request to insert an apparatus—"transmitter section for"—before the method step to render the claim valid). Accordingly, it is ambiguous whether infringement occurs upon creation of the system or upon performance of the methods by the system, and therefore, these claims are indefinite.

### G. "Device that Compares," "Comparing Device," and "Device Configured to Determine"

Defendants addressed the construction of these terms in its Claim Construction brief. Although Blue Spike includes these terms in its Opposition, whether means-plus-function treatment applies is a matter of claim construction.

### CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to defendants on the grounds that each of the asserted claims is invalid as indefinite.

---

[12] *See, e.g.*, *Alexsam, Inc. v. Best Buy Stores L.P.*, No. 2:10-cv-93, 2012 WL 4891619 (E.D. Tex. Aug. 22, 2012) ("A system comprising … *a transaction processor receiving* …; *a processing hub receiving* …; *said processing hub activating* …."); *SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, 940 F.Supp.2d 455 (E.D. Tex. 2013) ("A computer implemented sales system … comprising … *the event manager detecting* …, *inferring* …, and *automatically initiating* ….").

Dated:  September 26, 2014    Respectfully submitted,

/s/ Gabriel Ramsey
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

*Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.*

/s/  Andrew L. Perito
Edward R. Reines
Cal. Bar No. 135960 – Admitted to E.D. Texas
Lead Attorney

11

edward.reines@weil.com
Andrew L. Perito
Cal. Bar No. 269995 – Admitted to E.D. Texas
andrew.perito@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendant CBS Interactive Inc. and Last.fm Ltd.*

*/s/ Anne Champion*
Josh A. Krevitt
NY Bar No. 2568228
jkrevitt@gibsondunn.com
Benjamin Hershkowitz
NY Bar No. 2600559
bhershkowitz@gibsondunn.com
R. Scott Roe
NY Bar No. 4480224
sroe@gibsondunn.com
Anne Champion
NY Bar No. 4425237
achampion@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Ph. 212.351.4000
Fax: 212.351.6210

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, TX 75702
Tel: 903.597.8311
Fax: 903.593.0846


*Attorneys for Defendant Shazam Entertainment Limited*

*/s/ Jo Dale Carothers*
Alan H. Blankenheimer
ablankenheimer@cov.com
Jo Dale Carothers

12

jcarothers@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, 6th Floor
San Diego, CA 92122-1225
Tel: 858-678-1800
Fax: 858-678-1600

Michael E. Jones
SBN: 10929400
Potter Minton, PC
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

*Attorneys for Defendant Entropic Communications, Inc.*

*/s/ Andrew P. Valentine*
Andrew P. Valentine (Pro Hac Vice)
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Telephone: 650.833.2000
Facsimile: 650.833.2001
andrew.valentine@dlapiper.com

*/s/ John Guaragna*
401 Congress Avenue
Suite 2500
Austin, TX 78701-3799
Telephone:  512.457.7125
Facsimile:  512.721.2325
john.guaragna@dlapiper.com

*Attorneys for Defendants Irdeto USA, Inc. and Irdeto B.V.*

*/s/ Orion Armon*
Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000
Fax: (650) 857-0663
hkeefe@cooley.com
mweinstein@cooley.com

Orion Armon (*pro hac vice*)
Sara J. Bradford (*pro hac vice*)
Janna K. Fischer (*pro hac vice*)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Tel: (720) 566-4000
Fax: (720) 566-4099
oarmon@cooley.com
sbradford@cooley.com
jfischer@cooley.com

Deron R. Dacus (Texas Bar No. 00790553)
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Tel: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

*Attorneys for Defendant Facebook, Inc.*


*/s/ Dwayne K. Goetzel*
Eric B. Meyertons
Texas State Bar No. 14004400
Dwayne K. Goetzel
Texas State Bar No. 08059500
Ryan T. Beard
Texas State Bar No. 24012264
MEYERTONS, HOOD, KIVLIN,
  KOWERT & GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

*Attorneys For Defendant Cognitec Systems Gmbh and Cognitec Systems Corp.*


*/s/ Daniel Johnson, Jr.*
C. Erik Hawes (TX Bar No. 24042543)
Email:  ehawes@morganlewis.com
Thomas R. Davis (TX Bar No. 24055384)
Email: tdavis@morganlewis.com

14

MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

Daniel Johnson, Jr. (Admitted *Pro Hac Vice*)
Email: djjohnson@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

*Attorneys for Defendants MorphoTrust USA, Inc., L-1 Identity Solutions, Inc., MorphoTrak, Inc., and Safran USA, Inc.*

*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

*Attorneys for Defendants Iritech, Inc., Fulcrum Biometrics, LLC, and Futronic Technology Co., Ltd.*

*/s/ Reid E. Dammann*
Reid E. Dammann (CA Bar No. 249031)
r.dammann@mpglaw.com
MUSICK PEELER LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, CA 90017
Houston, TX 77010-1018
Telephone: (213) 629-7611
Facsimile: (213) 624-1376

*Attorneys for Defendant Airborne Biometrics Group, Inc.*

*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)

FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Jordan A. Sigale
Christopher Swickhamer
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, IL 60654
Telephone: 312-464-3109
Facsimile: 312-276-8375
Email: jsigale@loeb.com
Email: cswickhamer@loeb.com

*Attorneys for Defendant Viggle Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on all counsel of record via ECF filing pursuant to Local Rule CV-5(a)(7)(C) on September 26, 2014.

<div style="text-align: right;">

*/s/ Anne Champion*

</div>