**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br><br>v.<br><br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**EMERGENCY MOTION FOR SANCTIONS AGAINST BLUE SPIKE LLC, BLUE
SPIKE INC. AND SCOTT MOSKOWITZ FOR
<u>FAILING TO COMPLY WITH A COURT ORDER</u>**

On September 10, 2014, this Court issued an Order to Compel Blue Spike LLC, Blue Spike, Inc. and Scott Moskowitz (collectively, "Blue Spike") to produce documents and respond to interrogatories. (Dkt. 1754). This Court gave Blue Spike twenty days (until September 30, 2014) to comply with the Order. *Id.* Blue Spike failed to comply, and even today – over a month after that Order – has not turned over all necessary information. Audible Magic is reluctant to burden this Court with an emergency motion of this nature. But Blue Spike's continued discovery failures are causing Audible Magic severe prejudice and must be addressed. Audible Magic's expert reports are due less than one month from today and, as explained below, Blue Spike's refusal to comply with the Court's Order is materially affecting Audible Magic's ability to produce its reports. Accordingly, as explained herein, Audible Magic requests that this Court impose both monetary sanctions and sanctions under FRCP 37(b)(2)(A) against Blue Spike.

## I.  TIMELINE OF EVENTS SINCE THE COURT'S ORDER

The Court's Order on Audible Magic's Motion to Compel required all three Blue Spike entities (Blue Spike, Inc., Blue Spike LLC and Mr. Moskowitz) to produce documents "responsive to the nine general categories of documents outlined above" and for Blue Spike LLC to "provide full supplemental responses to Audible Magic's interrogatory nos. 6-10" by September 30, 2014. (Dkt. 1754).

On October 1, 2014, Blue Spike produced 5,705 documents, totaling roughly 80,000 pages. (Declaration of Alyssa Caridis in Support of Audible Magic's Emergency Motion ("Caridis Decl.") at ¶2.) These documents were all produced under a single BATES prefix – it is impossible to determine which documents are from Blue Spike LLC and which are from Blue Spike Inc. or Mr. Moskowitz. Blue Spike LLC did not provide supplemental interrogatory responses.

1

On October 1, 2014, counsel for Audible Magic reminded Blue Spike LLC that the Court required Blue Spike to supplement its interrogatory responses. (Caridis Decl. at Exh. 1). Blue Spike did not respond.

On October 4, 2014, Blue Spike LLC provided supplemental interrogatory responses. (Caridis Decl., Exh. 2). Despite the Court's express order that it "overrules Blue Spike's objections to interrogatories nos. 6-10 and orders Blue Spike to provide full supplemental responses" (Dkt. 1754 at 7), Blue Spike stood on a number of its objections and otherwise responded inadequately.

On October 6, 2014, a week after the Court's deadline, Blue Spike produced 1,637 documents, totaling roughly 7,300 pages. (Caridis Decl. at ¶ 5). Again, these documents were produced under a single BATES prefix, with no custodial identifier.

On October 10, 2014, counsel for Audible Magic informed Blue Spike that its document production was deficient in at least two key respects: Blue Spike had not produced any documents about the Giovanni Abstraction Machine – the accused product in Audible Magic's patent counterclaim – and neither Blue Spike Inc. nor Blue Spike LLC had produced their respective financial documents.[1] (Caridis Decl., Exh. 3 at 2). Blue Spike responded that it would "look into" these issues. (*Id*., Exh. 3 at 1-2). Blue Spike never followed up and never pointed to where, in its production, it had produced relevant documents. (*Id.*, Exh. 3 at 1).

On October 13, 2014, two weeks after the Court's deadline, Blue Spike yet again made a production of documents (under a single prefix). (*Id.* at ¶7). This time, Blue Spike produced 2,591 documents, totaling over 19,000 pages. This production still did not include documents

---

[1] These documents fall squarely under the following categories of documents that the Court ordered produced: (1) All documents related to the Giovanni Abstraction Machine and (2) All documents related to the formation and business practices of Blue Spike, Inc. and Blue Spike, LLC, including . . . financial data. (Dkt. 1754 at 3-4).

2

relating to Giovanni Abstraction Machine nor financials (aside from a handful of tax returns) of the Blue Spike Defendants.[2]

## II. APPLICABLE LAW

The Court has both the specific and the inherent power to award sanctions for failure to comply with a court order. Fed. R. Civ. P. 37 authorizes the Court to award sanctions for failure to comply with discovery orders. In addition to the *mandatory* award of reasonable fees pursuant to Fed. R. Civ. P. 37(b)(2)(C), the Court may, among other things, bar the disobedient party from introducing certain evidence in support of a claim or defense, strike the pleadings in whole or part, or dismiss the action in whole or part. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). The Court also has the inherent power to award sanctions in order to protect the administration of justice and maintain the dignity of the Court. *See Kamatani v. BenQ Corp.*, 2005 U.S. Dist. LEXIS 42762, at *41-43 (E.D. Tex. Oct. 6, 2005) (J. Ward) ("when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules").

## III. ARGUMENT

### A. Blue Spike Has Still Not Produced All Relevant Documents

#### i. *Giovanni Abstraction Machine Documents*

As this Court is aware, Audible Magic asserted a counterclaim of patent infringement

---

[2] On October 14, 2014, after having not heard from Blue Spike, Audible Magic informed Blue Spike that it was moving forward with the present motion. (Caridis Decl., Exh. 3 at1). Only after receiving that e-mail did Blue Spike finally agree to meet-and-confer. (*Id.*, Exh. 5). In this communication, Blue Spike *admitted* that it had not produced all responsive documents and did not even know whether all responsive documents had been collected. (*Id.*) Blue Spike also offered that Audible Magic may inspect, in person, paper documents, hard drives, compact disks, floppy disks and cassettes. (*Id.*) It is unclear how such a haphazard inspection, offered for the first time a month from expert reports, would limit any prejudice to Audible Magic. And these documents should have already been produced per the Court's Order. Audible Magic immediately responded that any meet-and-confer needed to happen that day, and noted that it was free the entire afternoon. (Caridis Decl., Exh. 6). Blue Spike refused to meet and confer that day, forcing Audible Magic to delay bringing the present motion.

against Blue Spike Inc.'s and Blue Spike LLC's Giovanni Abstraction Machine on September 27, 2013. (Dkt. 885). Neither Blue Spike Inc. nor Blue Spike LLC moved to dismiss this claim. Thus, there was no question that documents relating to the Giovanni Abstraction Machine were relevant and should have been produced in May. Blue Spike failed to do so. When Audible Magic requested to review the source code for the Abstraction Machine, Blue Spike refused. (Dkt. 1317-13). But, as this Court noted in its Order to Compel, Blue Spike has failed to confirm whether source code ever existed for the Giovanni Abstraction Machine. (Dkt. 1754 at 4). Audible Magic was forced to proceed through claim construction without the benefit of ever seeing a single non-public document about the Abstraction Machine. Even now – after the Court's deadline has passed and less than a month from expert reports – Audible Magic is still without a single Blue Spike document about its product.

     Blue Spike's conduct is particularly egregious in light of the statements that it has made to this Court. In its Technology Tutorial on the Audible Magic Patent, Blue Spike made affirmative statements on how the Giovanni Abstraction Machine operates and how it is different than the '308 Patent. (Blue Spike's Technology Tutorial re Audible Magic's 308 Patent, served July 25, 2014). Similarly, in its Claim Construction Opposition Brief, Blue Spike again made comments about the functionality of the Giovanni Abstraction Machine and how that was different from Audible Magic's patent. (Dkt. 1753 at 4). Clearly the Abstraction Machine exists. If it did not, how could Blue Spike's counsel make such affirmative statements to this Court? It is convenient that Blue Spike has proceeded through discovery and claim construction with knowledge of the functionality of the accused product, but has not shared that knowledge with Audible Magic. And despite the rules of this Court and a Court Order, Blue Spike refuses to produce any documentation about the product at all, including highly relevant material regarding the offer for sale of the accused product for $10,000 on its website, background

descriptions of the product on Blue Spike's website, the decision to offer that product and other business-related documents concerning the offer for sale or documents regarding the architecture and operation of the product.

Given Blue Spike's complete refusal to provide any relevant information about the Accused Product and the circumstances of this case, Blue Spike should be precluded from offering a non-infringement defense against Audible Magic's patent counterclaim.[3] *See* FRCP 37(b)(2)(A)(ii); *cf. Kamatani v. BenQ Corp.*, 2005 U.S. Dist. LEXIS 42762, at *41-47 (E.D. Tex. Oct. 6, 2005)(J. Ward) (The Court struck the defendants' licensing defense to patent infringement where the defendants failed to provide plaintiff with accurate information related to the defense.)

        ii.    *Financial Documents about the Blue Spike Entities*

Audible Magic has several tort counterclaims in which it bears the burden of proving its damages. Per this Court's scheduling order, opening expert reports are due in 30 days. (Dkt. 1332). Yet Blue Spike's entire financial production consists of a random assortment of tax returns for Blue Spike Inc. Blue Spike Inc. has not produced any balance sheets, income statements, accounting records, or any other type of financial information one would expect for a company in operation since 1997. And Blue Spike LLC – the plaintiff in this case – has not produced a single document of financial data. There can be no question that this information is relevant and should have been produced in response to the Court's Order (if not much sooner). Accordingly, Audible Magic respectfully requests that the Court impose monetary sanctions on

---

[3] Audible Magic recognizes that such a sanction may seem extreme. But Blue Spike's continued conduct in this case warrants such action. Furthermore, Blue Spike has made multiple representations to this Court that it has not made any sales of the Giovanni Abstraction Machine. Thus, under Blue Spike's theory, even if it were not permitted to present a non-infringement defense, any damages stemming from the sales of the Giovanni Abstraction Machine would be de minimus.

Blue Spike, require Blue Spike Inc. and Blue Spike LLC to immediately produce these documents, and take any other actions the Court deems appropriate.

B. <u>Blue Spike LLC Failed To Comply With The Court's Order Regarding Interrogatory Responses</u>

As part of the Order to Compel, Blue Spike LLC was required to provide supplemental interrogatory responses by September 30. Blue Spike did not provide such responses until October 4, and even then, only after Audible Magic's request. The supplemental responses (Caridis Decl., Exh. 2) provided by Blue Spike are incomplete and internally inconsistent, as detailed below.

- *Interrogatory 6 (Providing Audible Magic Notice of Blue Spike's Patents).* Blue Spike LLC claims that it gave Audible Magic notice of the Blue Spike Patents-in-Suit when it made postings on Blue Spike's websites starting on September 14, 2008. (Caridis Decl., Exh. 2 at 7). But for the rest of its interrogatory responses, Blue Spike LLC claims that the "earliest possible date" for it to have taken any action was April 2012, its incorporation date. (*See, e.g.*, *id.*, Exh. 2 at 8).

- *Interrogatory No. 7 (Blue Spike's Pre-suit Knowledge of Audible Magic).* The Court expressly overruled Blue Spike's previous objections to this interrogatory. (*See* Dkt. 1754). Despite this, Blue Spike improperly stands on its objections and refuses to substantively answer the interrogatory. (Caridis Decl., Exh. 2 at 8). Instead, Blue Spike LLC claims that it became aware of Audible Magic "at the earliest possible date, which is its incorporation date." (*Id.*) Taking this response, and Blue Spike LLC's response to Interrogatory 6 together, Blue Spike LLC is claiming that it put Audible Magic on notice in 2008 (a fact ostensibly helpful to Blue Spike), but then hides behind its incorporation date when answering a

6

question about its prior knowledge of Audible Magic (a fact ostensibly helpful to Audible Magic). Such duplicity should not be permitted.

- *Interrogatory No. 8 (Response to Audible Magic's Invalidity Contentions).* The Court expressly overruled Blue Spike's previous objections to this interrogatory. (*See* Dkt. 1754). Now Blue Spike claims that the parties should meet and confer to limit the scope of Blue Spike's response. But the Court already overruled Blue Spike's objections. Blue Spike would have Audible Magic prepare its invalidity expert report and make its final election of asserted prior art (both due on November 14) without ever having received Blue Spike's validity contentions. Audible Magic requested this information over six months ago, and the Court ordered Blue Spike to respond.

Again, there is no question that Blue Spike failed to comply with the Court's Order. Audible Magic respectfully requests that the Court impose monetary sanctions on Blue Spike LLC, require Blue Spike LLC to immediately and fully respond to these interrogatories, and take any other actions the Court deems appropriate.

C. <u>Blue Spike Continues To Produce Documents In An Untimely Manner</u>

Demonstrating Blue Spike's disregard for the Court's order, it continues to make piecemeal document productions, slowly doling out documents in random, ad hoc groups, in order to gain the strategic benefit of producing them as close as possible to the expert report deadline (so that Audible Magic is handicapped in its ability to review them), well past the Court-ordered deadline and many months since Audible Magic first raised the inadequate production issues. Since the Court's deadline, Blue Spike has produced over 4,000 documents, with no indication of when it intends to be done or whether it plans to produce the documents sufficiently in advance of the expert deadline. Indeed, as recently as October 14, 2014, Blue

Spike indicated that it still had collected, but not yet produced certain documents and could not confirm that all responsive documents had been collected. (Caridis Decl., Exh. 5). Apparently Blue Spike interprets the Court's Order as an order for rolling production, whenever it sees fit and in a manner that prejudices Audible Magic.

At this point, Blue Spike has produced 141,377 pages of documents, all bearing the BATES prefix "BLU." The Blue Spike defendants have made no attempt to identify *which* entity is providing any given document. This makes it impossible to determine whether Blue Spike Inc. or Scott Moskowitz has, indeed, provided any documentation.

The documents that Blue Spike is producing now affect more than just Audible Magic counterclaims. For example, one of the documents that Blue Spike produced on October 13th is an e-mail from 2000 in which Scott Moskowitz expressly describes his patented "abstract" – a term that, as this Court is aware, is hotly contested between the parties. (*See* Caridis Decl., Exh. 4). This document should have at least been produced prior to the close of claim construction discovery. That Blue Spike finds it appropriate to produce such a document at this stage in the case highlights its general disregard for the Court's discovery rules. Blue Spike should be precluded from relying on any of the documents that it produced after the Court's deadline.

### IV. CONCLUSION

As detailed above, Audible Magic respectfully requests that this Court impose sanctions on Blue Spike for its discovery misconduct. Furthermore, Audible Magic reserves the right to supplement its forthcoming expert reports, in light of any additional material received from Blue Spike.

Dated: October 15, 2014

By:

    */s/ Brian Craft*
Brian Craft (Texas Bar. No. 04972020)
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
bcraft@findlaycraft.com
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc.,

9

>Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## CERTIFICATE OF CONFERENCE

We hereby certify that Audible Magic complied with the meet and confer requirement in Local Rule CV-7(h). Blue Spike indicated that it opposes Audible Magic's emergency motion. The parties conducted a telephonic meet and confer on October 15, 2014 to discuss Blue Spike's lack of compliance with the Court's previous order, in addition to multiple previous communications as outlined in Audible Magic's motion. The parties were unable to reach agreement that any of the deficiencies were resolved and are at an impasse, leaving open issues for the Court to resolve.

*/s/ Walter W. Lackey, Jr.*
Walter W. Lackey, Jr.

*/s/ Alyssa M. Caridis*
Alyssa M. Caridis

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on October 15, 2014.

*/s/ Brian Craft*
Brian Craft