**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC | | Civil Action No. 6:12-CV-499 MHS |
| *Plaintiff,* | § | |
| | § | LEAD CASE |
| v. | § | |
| | § | |
| TEXAS INSTRUMENTS, INC. | § | |
| *Defendants* | § | |

**DEFENDANTS' OBJECTIONS TO CLAIM CONSTRUCTION ORDER**

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule CV- 72(b), Defendants submit their Objections to the Claim Construction Order filed October 16, 2014 (Dkt. No. 1831) ("Order") on the following terms: abstract, match/matches/matching, reference/query signal, comparing device, similar to, related to, and index of relatedness.[1] *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 109173, at *6 (E.D. Tex. 2009) ("Because claim construction is a matter of law, this Court can review a magistrate judge's claim construction de novo").

## I.    Abstract[2]

The construction proposed by a majority of the Defendants and the Court's construction do not differ by much.  But the omission of "the smallest amount of data" from the Court's construction is critical to provide definiteness to the term.  Without it, "abstract" loses the meaning given by the patentee and is indefinite.  Thus, the Court's construction is erroneous.

The majority of the Defendants first object to the Court's construction because "predefined signal set" is necessary to determine what "differences" an abstract that is being created must have to other preexisting abstracts.  The Court acknowledged the necessity of the including "predefined signal set" in its construction but erroneously concluded its construction captured this requirement.  Order at 31.  To avoid jury confusion, "predefined signal set" should be included in the Court's construction.

"Predefined signal set" is also necessary in order to determine the "smallest amount of data that can represent and differentiate two signals for a given predefined signal set."  And where, as here, the specification specifically limits the "present invention" to including this

---

[1] Defendants' also object to the constructions for the following terms, for the reasons outlined in their claim construction brief: versions of reference signals, creating at least one counter, selectable criteria, and distributing at least one signal.

[2] Defendants MorphoTrust USA, Inc., L-1 Identity Solutions, Inc., MorphoTrak, Inc., and Safran USA, Inc. (the "Morpho Defendants") object to the Report and Recommendation failing to find the term Abstract indefinite, but do not otherwise object to the Court's construction.

requirement, it becomes part of each and every claim:

> <u>*As a general improvement over the art, the present invention*</u> incorporates what could best be described as 'computer-acoustic' and 'computer-visual' modeling, where the <u>*signal abstracts are created using data reduction techniques to determine the smallest amount of data, at least a single bit, which can represent and differentiate two digitized signal representations for a given predefined signal set.*</u> Each of such representations must have at least a one bit difference with all other members of the database to differentiate each such representation from the others in the database.

'472 patent, col. 10:9-19. When the specification "describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398, 1400 n.1 (Fed. Cir. 2008) ("specification's repeated use of the phrase 'the present invention' describes the invention as a whole"; statements defining "the present invention" also defeat any presumptions of the doctrine of claim differentiation).

The Court also erred by not including the "smallest amount of data" in its construction because it allegedly could "potentially limit the claims to a preferred embodiment." Order at 30. But the Court made no finding that this statement is only a "preferred embodiment" as opposed to a necessary limitation of the "present invention." Absent such a finding, Federal Circuit precedent limits all claims to the applicant's definition of the "present invention." Overlooking the patentee's binding statements  is clear error.

The Court concluded that the "smallest amount of data" requirement is only a minimum requirement and that the alleged invention may allow for greater disparity. The Court's observation is accurate, and Defendants' proposed construction encompasses this concept. *See* '472 Patent at 10:9–16. An "abstract" must have "at least a one bit difference" to all other "abstracts" in the predefined signal set. '472 Patent at 10:16–18. That does not mean, however, that an "abstract" may not have *more* than a one bit difference to other abstracts. For example, the closer two signals are "perceptually" to each other, the fewer differences their two abstracts

2

will have between each other.  On the other hand, two very different works will have many bits different between their abstracts.  Defendants' proposed construction captures this concept without being unduly limiting.  Without it, one of ordinary skill in the art could not make sense of the claims and delineate their scope.  Dkt. 1752-4 ¶¶ 28–41; 1752-8  ¶¶ 32–33, ¶¶ 41–42, 46–47; 1752-6 ¶¶32-36, 40–42.  Accordingly, Defendants' construction should be adopted.

## II.    Match[s]/[ing]/[ed][3]

Defendants object to the Court's construction of the "match" terms because it departs from the teachings of the specification and file histories of the patents-in-suit.  The Court construed the "match" terms to mean a "match" occurs when two abstracts merely "share" selected criteria. This construction is overbroad and fails to account for the patent applicants' unequivocal assertion that a match only occurs when abstracts are *indistinguishable* from each other.  *See* Dkt. 1751-1, Ex. 3 at 4 (amending claim 107 to require recalibration when more than one abstract "match", *i.e.* as the applicant explained, when "two abstracts in the database are indistinguishable").  The Court's construction also misinterprets the teachings in the specification.  First, construing a match to occur when criteria are merely "shared" defeats the claimed utility of the alleged invention.  The specification describes a method that compresses a song (e.g. "New York State of Mind") so much that the resulting abstracts no longer differentiate between recordings of the same song sung by different artists (e.g. Billy Joel and Barbara Streisand) as "incapable of providing accurate monitoring of the artist's recordings because it could not determine which of the two artists is deserving of the royalty."  *See* '472 Patent, 7:9-25, *see also id*., 11:20-23 (describing more than one match as a problem).  The Court's construction of "match" similarly defeats the claimed utility of the invention because a "match"

---

[3] The Court concluded that "related to" should be construed the same as "match." Order at 62. Thus, the construction of "related to" is therefore erroneous for the same reasons Defendants identified for the construction of "match."

would occur any time abstracts share selected criteria. As a result, the two abstracts of "New York State of Mind" would "share" criteria and "match," even though Billy Joel sang one version and Barbara Streisand the other.

Second, the Court erroneously concluded the "index of relatedness" limitation of claim 11 "would serve no purpose" if a "match" were to occur only when two abstracts were indistinguishable. Order at 34.  But the "index of relatedness" limitation in claim 11 has no bearing on the construction of "match" because it considers the "relatedness" between the "query signal" and each of the "matching abstracts."  *See* '472 Patent at 18:23-32.  In contrast, a "match" occurs between two abstracts.  *See, e.g.,* '472 Patent, 16:13-15, 17:19-20, 14:19-27.

Third, the Court's construction contradicts the requirement that recalibration is required when two recordings of the same song by the same artist are "so similar that their differences are almost imperceptible," resulting in an unwanted match between the abstracts for the two songs. '472 Patent at 11:13-23; *see also* Order at 64 (noting the same).  Recalibration would not be possible to further differentiate the abstracts to avoid an unwanted match if a "match" occurs any time abstracts "share" selected criteria.  As the patent applicant emphasized to obtain allowance, a match only occurs when two abstracts are "indistinguishable."  Dkt. 1751-1, Ex. 3 at 4.

Fourth, the Court erred in finding the Defendants' construction improperly excludes the "sun" or "police sketch" embodiments because the "matches" described in the specification are between abstracts that are not "indistinguishable copies."  Not so.  The disclosure concerning pictures of the sun discusses creating an abstract from "those perceptual characteristics related to the sun" and then matching that abstract against other reference abstracts in a database. '472 patent at 14:65–15:15.  The disclosure expressly discloses exact matches of abstracts created using a single criterion (i.e., "perceptual characteristics related to the sun").

### III.    Reference signal/query signal

The Court erred by disregarding unequivocal intrinsic evidence that a "reference/query signal" is an "uncompressed" signal of an "entire work."  Order at 40.

The Court's construction relies on the following passage from the specification: "further data reduction may be applied on the candidate watermarks as *an example of* retaining a logical and perceptible relationship with the original uncompressed signal."  *See* Order at 40 (citing '472 patent, 5:37-39). But that portion of the specification does not define reference or query signals.  Rather, it concerns data reduction of a "watermark," and suggests that "watermarking embedding algorithms" "can yield information about the extent to which a data signal can be compressed while holding steadfast to the design requirement that the compressed signal maintain its perceptual relationship with the original, uncompressed signal."  '472 patent, 5:30-34.  This portion of the specification neither contradicts nor supplements the portions of the specification that describe creating an *abstract* using an *uncompressed* original signal. '472 patent, 5:18-39 ("original, uncompressed signal"); *id*. at 7:37-40 ("uncompressed or original file").  The signal is <u>then</u> compressed to create the abstract. *Id*.

The Court similarly erred in finding the signal does not have to be "an entire work".  As the Court acknowledged, the specification refers to a reference signal as the entire work, and refers to any portion less than the entire work by another term, "object".  Order at 40; *compare* '472 patent, col. 6:50-51 *with* '472 patent, col. 8:33-35.  *See Phillips*, 415 F.3d at 1313, 1316 (patentee acts as his own lexicographer).  Further, when the specification refers to a segment of a song without using the word "object," it refers to "*a segment of* the original signal"—reinforcing the fact that "signal" refers to an entire work. '472 patent, 11:47-48.

### IV.    Similar to, Index of relatedness, Comparing Device

Defendants' objections to "comparing device," "device configured to determine," "similar to," and "index of relatedness" are in their Objections to the R&R (Dkt. No. 1832).

5

Dated: October 30, 2014

*/s/ Eric H. Findlay*
I. Neel Chatterjee (admitted E.D. Texas)
Gabriel M. Ramsey (admitted E.D. Texas)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis (admitted E.D. Texas)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone:  (202) 339-8400
Facsimile:  (202) 339-8500
chiggins@orrick.com

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

*Counsel for Defendants Audible Magic, Corp.,*
*Myspace LLC, Specific Media LLC, Photobucket.com,*
*Inc., DailyMotion, Inc., DailyMotion S.A.,*
*SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc.,*
*Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv,*
*Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc.,*
*Boodabee Technologies, Inc., Zedge Holdings, Inc.,*
*Brightcove Inc., Coincident.TV, Inc., Accedo*

*Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.*

*/s/ Anne Champion*
Josh A. Krevitt
(NY Bar No. 2568228)
Benjamin Hershkowitz
(NY Bar No. 2600559)
R. Scott Roe
(NY Bar No. 4480224)
Anne Champion
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Ph. 212.351.4000
Fax: 212.351.6210
jkrevitt@gibsondunn.com
bhershkowitz@gibsondunn.com
sroe@gibsondunn.com
achampion@gibsondunn.com

Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
Allen F. Gardner
SBN: 24043679
allengardner@potterminton.com
Daniel A. Noteware, Jr.
SBN: 24051123
dannynoteware@potterminton.com
Potter Minton, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

*Counsel for Defendant*
*Shazam Entertainment Limited*

*/s/ Daniel Johnson, Jr.*
C. Erik Hawes (TX Bar No. 24042543)
Email:  ehawes@morganlewis.com
Thomas R. Davis (TX Bar No. 24055384)
Email: tdavis@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000

Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

Daniel Johnson, Jr. (Admitted *Pro Hac Vice*)
Email: djjohnson@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

*Attorneys for Defendants MorphoTrust USA, Inc.,*
*L-1 Identity Solutions, Inc., MorphoTrak, Inc., and*
*Safran USA, Inc.*

*/s/ Edward R. Reines*
Edward R. Reines
Cal. Bar No. 135960 – Admitted to E.D. Texas
Lead Attorney
edward.reines@weil.com
Andrew Perito
andrew.perito@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Counsel for Defendants Last.fm Ltd., and CBS*
*Interactive, Inc.*

*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Jordan A. Sigale
Christopher Swickhamer

8

LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, IL 60654
Telephone: 312-464-3109
Facsimile: 312-276-8375
Email: jsigale@loeb.com
Email: cswickhamer@loeb.com

*Attorneys for Defendant Viggle, Inc.*


*/s/ Teresa M. Corbin*
Teresa M. Corbin
Teresa M. Corbin, CA Bar No. 132360
(Admitted E.D. Texas)
Bryan A. Kohm, CA Bar No. 233276
(Admitted E.D. Texas)
David Lacy Kusters, CA Bar No. 241335
(Admitted E.D. Texas)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:      (415) 874-2300
Facsimile:       (415) 281-1350

Darren E. Donnelly, CA Bar No. 194335
(Admitted E.D. Texas)
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone:   (650) 955-8500
Facsimile:       (650) 983-5200

*Attorneys for Defendants*
*SMRTV, Inc.; and The Nielsen Company (US) LLC*

*/s/ Steven J. Corr*
Tharan Greg Lanier (admitted E.D. Texas)
California Bar No. 138784
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com

Steven J. Corr (admitted E.D. Texas)

California Bar No. 216243
Jones Day
555 S. Flower Street
Los Angeles, CA  90278
Telephone: (213) 243-2327
Facsimile: (213) 243-2539
sjcorr@jonesday.com

*Attorneys for Defendants The Nielsen Company (US) LLC*

*/s/ Michael A. Molano*
Michael A. Molano (*pro hac vice*)
Ward Johnson (*pro hac vice*)
MAYER BROWN LLP
3000 El Camino Real
Palo Alto, CA 94306-2112
Phone: (650) 331-2000
Fax: (650) 331-2060
Email: wjohnson@mayerbrown.com
Email: mmolano@mayerbrown.com

Kyle E. Friesen
Texas Bar No. 24061954
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002-2730
Phone: (713) 238-2691
Fax: (713) 238-4691
Email: kfriesen@mayerbrown.com

*Counsel for Defendants*
*Civolution USA, Inc. and Civolution B.V.*

/s/ *Reid E. Dammann*
Reid E. Dammann (CA Bar No. 249031)
r.dammann@mpglaw.com
MUSICK PEELER LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, CA 90017
Houston, TX 77010-1018
Telephone: (213) 629-7611
Facsimile: (213) 624-1376

*Counsel for Defendant Airborne Biometrics Group,*

10

*Inc.*

*/s/ Orion Armon*
Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000
Fax: (650) 857-0663
hkeefe@cooley.com
mweinstein@cooley.com

Orion Armon (*pro hac vice*)
Sara J. Bradford (*pro hac vice*)
Janna K. Fischer (*pro hac vice*)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Tel: (720) 566-4000
Fax: (720) 566-4099
oarmon@cooley.com
sbradford@cooley.com
jfischer@cooley.com

Deron R. Dacus (Texas Bar No. 00790553)
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Tel: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

*Counsel for Defendant Facebook, Inc.*

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 30, 2014, I electronically filed the foregoing Defendants'

Objections to Claim Construction Order with the Clerk of the Court using the CM/ECF system

which will send notification of such filing *via* electronic mail to all counsel of record.

<u>*/s/ Eric H. Findlay*</u>
Eric H. Findlay