IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>    *Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>    *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION ON INDEFINITENESS**

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule CV- 72(c), Defendants hereby submit their Objections to the Report and Recommendation on Defendants' Motion for Summary Judgment of Indefiniteness ("R&R") (Dkt. 1832) and request *de novo* review of their Motion for Summary Judgment of Indefiniteness.

## I. "Abstract"

The Court noted that *even Plaintiff* agreed that a definition for "abstract" is impossible to achieve. Dkt. 1831, Claim Construction Order ("Order")[1], at 28; *see* Dkt. 1700 at 8 (Blue Spike admits "a single definition" of "abstract" is "impossible to achieve"). Notwithstanding this agreement between the parties that "abstract" cannot be construed, the Court proposed an entirely new definition that fails to provide any clarity to the term "abstract." Indeed, the Court's construction of "abstract" raises further indefiniteness issues. Defendants, therefore, object to the R&R's denial of summary judgment regarding the term "abstract."

The patent provides no express definition, much less any detailed explanation, of what an "abstract" is. Instead, the specification attempts to explain what an "abstract" is *not*. *See* '472 patent, 4:56–59; 5:3–4; 5:18–20; 6:48–51. And the meaning of "abstract" depends on subjective factors such as "markets" and "applications" that are left unexplained. *Id.* at 3:52–57; 4:8–22; 5:67–6:3; 7:40–55; 9:42–65; *see also* Dkt. 1752, Ex. 1. *See also, e.g., Prolifiq Software Inc. v. Veeva Sys. Inc.*, C 13-03644 SI, 2014 WL 3870016, at *7 (N.D. Cal. Aug. 6, 2014) (citing *Datamize, LLC v. Plumtree Software, Inc*., 417 F.3d 1342, 1350 (Fed. Cir. 2005) (finding term "aesthetically pleasing" indefinite)). The Court's construction also adopts this approach, which fails to delineate the metes and bounds of the claims.

That the Court and parties struggled to define "abstract" highlights that this term falls

---

[1] The R&R incorporates the Court's analyses in its Claim Construction Order. Defendants refer to the Court's R&R, but provide corresponding cites to the analysis in the Order.

squarely within the "zone of uncertainty" that *Nautilus* warned of when holding that "a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Nautilus,* 134 S. Ct. at 2129. Defendants' experts testified the patents provide no guidance on what abstract means, and explained that "abstract" had no meaning to one of ordinary skill in art, much less any discernible meaning across the various fields of endeavor that Blue Spike accuses of infringing. Dkt. 1752-4 ¶¶ 28-41; 1752-8 ¶¶ 32-33, ¶¶ 41-42, 46-47; 1752-6 ¶¶32-36, 40-42. The Court erred in ignoring Defendants' experts' testimony. *See Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, CIV.A. 11-4380 JBS, 2014 WL 3362364 at *14 (D.N.J. July 9, 2014) ("*Nautilus* indicates [] that experts may have increased significance [] to illuminate the 'reasonable certainty' standard.") For these reasons, and the additional reasons set forth in Defendants' Briefs, "abstract" is indefinite.

## II. "Similar to"

The Court erred in construing "similar to" because it is an unexplained and purely subjective phrase. *See* '175 patent, cl. 11 (abstract is "similar to" and reduced in size compared to corresponding signal). When faced with a "purely subjective" claim phrase, the Court must look to the written description for guidance. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014); *see also Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc*., 731 F.2d 818, 826 (Fed. Cir. 1984) (when a "word of degree" is used, the Court must determine whether the patent provides "some standard for measuring that degree"). Here, the specification fails to provide any objective boundaries for one skilled in the art to ascertain with reasonable certainty what it means for an abstract to be "similar to" its corresponding signal. Indeed, the term does not appear at all to describe the relationship between a signal and its abstract. Instead, the specification merely describes subjective relationships that may exist between abstracts and their corresponding reference/query signals.

2

In one instance, the specification provides <u>anyone</u> using the method (e.g. "creator, the copyright owner or other interested party") can determine the "parameters" "to describe the original signal," without any objective guidance as to how these parameters are to be determined. '472 patent at 9:55–59.  In another , the specification states "*[a]s long as a realistic set of conditions can be arrived at governing the relationship* between a signal and its data reduced abstract, increases in effective monitoring and transparency of information data flow across communications channels is likely to result"). '472 patent at 9:61–65 (emphasis added).  These statements acknowledge the purely subjective nature of this term.  "[W]here a claim term allows the scope of the invention to be determined by the unrestrained, subjective opinion of the person practicing the invention, then no one, including a person skilled in the art, can determine with reasonable clarity the scope of the invention." *Prolifiq Software Inc.*, 2014 WL 3870016, at *5-7 (citing *Datamize,* 417 F.3d at 1350).  Ignoring the subjective nature of the relationship between an abstract and its corresponding signal, the Court erroneously seized on other disclosures as being "limiting."  *See* Order at 53-54.  Yet these relationships similarly leave one skilled in the art without any objective boundaries for determining what degree of similarity is required by the claims.  *See Interval Licensing*, 766 F.3d at 1371.

The Court also failed to address Defendants' *unrebutted* expert testimony concerning the indefiniteness of this term.  *See Mycone*, 2014 WL 3362364, at *14 (significance of expert testimony in indefiniteness determination).  These experts testified that the asserted patents do not inform them with reasonable certainty of the meaning of "similar to," nor did the term have any well-defined meaning to one of ordinary skill during the relevant time period.  *See* Dkts. 1752-6, ¶¶46–52; 1752-8, ¶¶50, 52.

Finally, beyond failing to find the term "similar to" indefinite under recent Supreme Court and Federal Circuit precedent, the Court's construction of "similar to" ("retaining a

3

perceptual relationship") is repetitive of the construction of "abstract" and thus reads the term out of the asserted claims of the '175 patent.[2]  This lack of a meaningful difference between the constructions for "similar to" and "abstract" further demonstrates that "similar to" is indefinite.

### III.  "Index of relatedness"

The Court also erred in construing "index of relatedness," another subjective term with no objective boundaries.  The Court relies on the specification's disclosure concerning recalibration as informing one of ordinary skill of the scope of the phrase "index of relatedness." Order at 64-65.  While the specification informs one skilled in the art that "calibration" might be needed when a query signal *abstract* matches two reference abstracts, neither the claims nor the specification provide guidance regarding what is an "index of relatedness," or how such an index of relatedness would signify a match between a *query signal* and "at least two matching abstracts."  The "calibration" disclosure concerns differentiating abstracts for two near-identical songs so that the abstracts no longer match.  '472 patent at 11:13–24.  That portion of the specification does not address index of relatedness or matching a query signal to an abstract.

The nature or extent of the "relatedness" between an abstract and a query signal is not described in the '472 patent's specification, nor how to measure it.  "Index" or "index of relatedness" appears nowhere in the specification or file histories.  "A term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one person's opinion."  *Interval Licensing*, 766 F.3d at 1371.  Accordingly, one of ordinary skill in the art is left to apply his or her subjective judgment about what this term may mean.  *Cioffi v. Google Inc.*, 2:13-CV-103-JRG-RSP, 2014 WL 4293978, at 20-22 (E.D. Tex. Aug. 28, 2014)

---

[2] Replacing the language of claim 11 of the '175 patent with the Court's construction yields: "such that said digital reference signal [[] data-reduced representation of a signal that retains a perceptual relationship with the signal and differentiates the data-reduced representation from other data-reduced representations] is [retaining a perceptual relationship [with]] said digital reference signal and reduced in size compared to said digital reference signal…."

4

(concluding the term "critical file" is indefinite because neither the specification nor the prosecution history sets forth any standard for measuring the scope of the term).

Because the intrinsic evidence is ambiguous, the Court erred in failing to consider Defendants' unrebutted expert testimony. *See Mycone*, 2014 WL 3362364, at *14. Where the face of the patent is ambiguous as to the scope of the claim, the Court cannot supplant unrebutted expert evidence of "reasonable certainty" with its own unsupported and speculative *post hoc* judgment. *See, e.g., id.* at 13-14 (citations to opinions explaining other contexts where courts rely on experts for reasonable certainty standards). Defendants' experts testified there is no specific meaning of the phrase 'index of relatedness" in the art and it is a subjective and relative term. *See* Dkts. 1752-6 ¶¶55-61 and 1752-8 ¶¶54-61. *See also Datamize,* 417 F.3d at 1350. And although Blue Spike's expert addressed other terms, he was silent on this one.

## IV. "Comparing Device"

When a claim uses a nonce term such as "device," it is nothing more than a replacement for the word "means," and the Federal Circuit has consistently found that means-plus-function treatment applies to the claim. The R&R ignored this longstanding principle and instead resorted immediately to dictionary definitions. In doing so, the Court failed to conduct the proper analysis under §112(f).

The Court must first determine the ordinary meaning of "comparing device" and "device configured to determine" and whether that meaning connotes definite structure to one of ordinary skill in the art. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1375 (Fed. Cir. 2003) (remanding to better develop the record before determining whether "circuit," "unit," and "interface" were means-plus-function terms). The Order skips this step and concludes without evidence that a "comparing device" is a "comparator." Order at 47. *Apex Inc.*, 325 F.3d at 1375. The Court's conclusion conflicts with the Federal Circuit's precedents, which hold that "device"

5

is a mere stand-in for the term "means" and does not connote any definite structure. *See MIT v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) (citing *Personalized Media Comm. v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998) (equating "device" with "means," explaining that both are "generic" terms that "typically do not connote sufficiently definite structure.").

The Court further erred in failing to consider whether the additional adjective "comparing" added definite structure to "device." *Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007).

Finally, the Court erred by failing to consider whether the functional language following "device" – "configured to determine if a query signal matches any one of a plurality of reference signals" – connotes any definite structure. *Id.* They do not—these phrases are purely functional and connote no definite structure to one of skill in the art. *See Abacus Software*, 462 F.3d at 1354 (equating "device" with "means," explaining that both are "generic" terms that "typically do not connote sufficiently definite structure."); *Ergo, Licensing, LLC v. Carefusion* 303, Inc., 673 F.3d 1361, 1363-64 (Fed. Cir. 2012) (same); *Widevine Techs., Inc. v. Verimatrix, Inc*., 2009 U.S. Dist. LEXIS 102768, at *39-41 (E.D. Tex. Nov. 4, 2009) (same); *Biomedino*, 490 F.3d at 950 ("control means" did not escape means-plus-function treatment because "control" was just an adjective describing what the "means" did, not structure); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc*., 239 F.3d 1225, 1232 (Fed. Cir. 2001) ("air circulating means … for circulating air" recites function not structure). Blue Spike provided dictionary definitions of "comparator," but they contradict the intrinsic record and include embodiments that render the claims inoperable (e.g., a hardware comparator for determining the larger of two voltage inputs). Dkt. 1700, 16-17. Because these phrases are purely functional, they are governed by 112(f).

Ignoring these principles, the R&R improperly relies solely on Blue Spike's dictionary

6

definitions and the definition of a "comparator" from one prior art reference. Order at 47. The prior art definition for "comparator", however, cannot serve as the basis for the construction of "comparing device" or "device configured to determine" because the patentee expressly distinguished his "comparing device" from the "comparator" in the Logan prior art reference. Order at 46-47. If the "comparing device" is not a "comparator" as known in the prior art, then "comparing device" surely cannot mean "comparator" to one of skill in the art. Thus, the Court erred in finding that "comparing device" or "device configured to determine" means a "comparator." And even if those terms meant "comparator," Blue Spike's dictionary definitions confirm that the patentee meant a specific type of "comparator" and not the entire class of comparators, some of which render the claims inoperable. Based on the Defendants' evidence that "device" is a nonce term and the contradictions in the extrinsic evidence, the Court erred in finding that §112(f) did not apply. Once § 112(f) is properly applied, a finding of indefiniteness is unavoidable because there are no structures associated with these limitations disclosed in the specification. Accordingly, the "comparing device" terms are indefinite.

### V. "Wherein the System Applies a Cryptographic Protocol," "Further Comprising Storing the Hashed Abstract," and "Based on the Comparison Step"

The Court's R&R regarding the three above-listed limitations, which recite method steps in apparatus claims, too narrowly interprets the holding of *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377, 1384 (Fed. Cir. 2005). The inclusion of a method step in an apparatus claim renders such a claim indefinite even where the method step does not require *user* action. *See Rembrandt Data Techs, LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (affirming that inclusion of the method step "transmitting the trellis encoded frames" rendered indefinite the associated apparatus claim). Rather, the touchstone of the Federal Circuit's *IPXL* jurisprudence is that inclusion of a method step—regardless of whether it is performed by a user or by the claimed system as a whole—renders an apparatus claim indefinite because of the

7

ambiguity it creates regarding *when* such a claim is infringed, *i.e.*, upon manufacture or operation of the claimed apparatus. *See IPXL,* 430 F.3d at 1384; *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1277 (Fed. Cir. 2012) ("[S]uch a claim is not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds of protection involved …."). Regardless of the fact that "the claim does not recite a method step performed by a user" (R&R at 8, 9 & 10), each of these claim limitations creates such an ambiguity regarding when the asserted claims are infringed.

Moreover, because these method steps do not describe the "structure and capabilities," *id.*, of any particular structural elements recited in the claim but must instead be performed by the system as a whole in order to infringe, the claims are invalid for indefiniteness. *See Rembrandt*, 641 F.3d at 1339. The Court attributes the application of a cryptographic protocol in Claim 10 of the '700 patent to the first and second processors (R&R at 8), but the language of the claims creates no such linkage. Similarly, neither Claim 11 of the'700 patent nor Claim 21 of the '494 patent attribute "storing the hashed abstract" to any component of the claimed apparatus. *Id.* at 9. Claim 22 of the '494 patent suffers both from the same problem—no language in the claim associates "the comparison step" with a particular component as opposed to the operation of the system as a whole (*see* Dkt. No. 1752 at 27)—and from the additional infirmity that "the comparison step" lacks antecedent basis in the claim, *see id.* at 26.

## VI. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court find that "abstract", "similar to", "index of relatedness", "comparing device", "wherein the system applies a cryptographic protocol," "further comprising storing the hashed abstract," and "based on the comparison step" are indefinite.

8

Dated: October 30, 2014

*/s/ Eric H. Findlay*
I. Neel Chatterjee (admitted E.D. Texas)
Gabriel M. Ramsey (admitted E.D. Texas)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis (admitted E.D. Texas)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
chiggins@orrick.com

Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

*Counsel for Defendants Audible Magic, Corp., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc., GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband*

9

*AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.*

*/s/ Anne Champion*
Josh A. Krevitt
(NY Bar No. 2568228)
Benjamin Hershkowitz
(NY Bar No. 2600559)
R. Scott Roe
(NY Bar No. 4480224)
Anne Champion
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Ph. 212.351.4000
Fax: 212.351.6210
jkrevitt@gibsondunn.com
bhershkowitz@gibsondunn.com
sroe@gibsondunn.com
achampion@gibsondunn.com

Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
Allen F. Gardner
SBN: 24043679
allengardner@potterminton.com
Daniel A. Noteware, Jr.
SBN: 24051123
dannynoteware@potterminton.com
Potter Minton, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

*Counsel for Defendant
Shazam Entertainment Limited*


*/s/ Daniel Johnson, Jr.*
C. Erik Hawes (TX Bar No. 24042543)
Email: ehawes@morganlewis.com
Thomas R. Davis (TX Bar No. 24055384)
Email: tdavis@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002

10

(713) 890-5000 Telephone
(713) 890-5001 Facsimile

Daniel Johnson, Jr. (Admitted *Pro Hac Vice*)
Email: djjohnson@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000 Telephone
(415) 442-1001 Facsimile

*Attorneys for Defendants MorphoTrust USA, Inc., L-1 Identity Solutions, Inc., MorphoTrak, Inc., and Safran USA, Inc.*


*/s/ Edward R. Reines*
Edward R. Reines
Cal. Bar No. 135960 – Admitted to E.D. Texas
Lead Attorney
edward.reines@weil.com
Andrew Perito
andrew.perito@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Counsel for Defendants Last.fm Ltd., and CBS Interactive, Inc.*


*/s/ Eric H. Findlay*
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Jordan A. Sigale
Christopher Swickhamer
LOEB & LOEB LLP

11

321 North Clark Street, Suite 2300
Chicago, IL 60654
Telephone: 312-464-3109
Facsimile: 312-276-8375
Email: jsigale@loeb.com
Email: cswickhamer@loeb.com

*Attorneys for Defendant Viggle, Inc.*


/s/ *Reid E. Dammann*
Reid E. Dammann (CA Bar No. 249031)
r.dammann@mpglaw.com
MUSICK PEELER LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, CA 90017
Houston, TX 77010-1018
Telephone: (213) 629-7611
Facsimile: (213) 624-1376

*Counsel for Defendant Airborne Biometrics Group, Inc.*


*/s/ Orion Armon*
Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000
Fax: (650) 857-0663
hkeefe@cooley.com
mweinstein@cooley.com

Orion Armon (*pro hac vice*)
Sara J. Bradford (*pro hac vice*)
Janna K. Fischer (*pro hac vice*)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Tel: (720) 566-4000
Fax: (720) 566-4099
oarmon@cooley.com
sbradford@cooley.com
jfischer@cooley.com

12

Deron R. Dacus (Texas Bar No. 00790553)
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Tel: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

*Counsel for Defendant Facebook, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2014, I electronically filed the foregoing Defendants' Objections to Report and Recommendation on Indefiniteness with the Clerk of the Court using the CM/ECF system which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Eric H. Findlay*
Eric H. Findlay