IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **BLUE SPIKE, LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TEXAS INSTRUMENTS, INC.,** *et al.*,<br><br>*Defendants*. | Civil Action No. 12-CV-499-MHS-CMC<br><br>**LEAD CASE**<br><br>**JURY TRIAL DEMANDED** |

**BLUE SPIKE, LLC'S OPPOSITION TO AUDIBLE MAGIC CORPORATION'S MOTION FOR SANCTIONS AND MOTION FOR EXTENSION OF TIME TO COMPLY WITH THE DISCOVERY ORDER**

On October 15, 2014, Audible Magic Corporation filed its motion for sanctions against Blue Spike, LLC, Blue Spike, Inc., and Scott Moskowitz (collectively, "Blue Spike"), claiming Blue Spike failed to comply with this Court's Order to compel production of documents and respond to interrogatories. (Dkt. 1827.) Blue Spike opposes the motion on the ground that any failure to comply with the Court's Order was not willful, and the imposition of severe sanctions is unwarranted in light of Blue Spike's good faith attempts to comply with the Order. Blue Spike further moves this court for an extension of time to complete production in accordance with the Court's Order.

    **I.    STATEMENT OF FACTS**

On September 10, 2014, the Court issued its order compelling the production of certain documents and responses to certain interrogatories. Counsel for Blue Spike, LLC immediately communicated the Court's Order granting Audible Magic's Motion to Compel to Blue Spike, LLC, Scott Moskowitz, and any relevant third parties. Over the next several weeks, Counsel for Blue Spike received and reviewed over 50 boxes of physical documents, floppy disks, compact

1

disks, cassettes, several electronic file transfers, and several USB storage devices. *See* Brasher Declaration ¶¶ 3 and 5. Counsel for Blue Spike, LLC received the last batch of files via a USB storage device on September 30, 2014. *See id.* at ¶ 4.

Apart from the documents Blue Spike had already produced, on September 25, 2014, Blue Spike began producing documents pursuant to the Court's order. *See id.* ¶ 6. Blue Spike continued its production on September 30, October 6, and October 13 totaling approximately 116,000 pages. *See id.* ¶¶ 7-9. All remaining responsive documents Blue Spike has to produce are in the possession of Counsel's third-party vendor, who is converting the files to TIFF images and attaching bates labels pursuant to the court's order and the rules of discovery. *See id.* ¶¶ 10-11. When the third party vendor has returned the documents, Counsel will immediately produce the same to the defendants.

Counsel for Blue Spike, LLC and Audible Magic Corporation held a meet and confer on Wednesday October 15, 2014. *See id.* ¶ 12. Counsel for Blue Spike, LLC offered to make the entire production available for review in person in order to mitigate any prejudice by any delay. *See id.* Counsel for Audible Magic, Corporation stated that such an offer was "ridiculous." *See id.*

Neither Blue Spike nor its Counsel is withholding any non-privileged documents in its possession custody or control. *See id.* ¶ 15. Any delay is not the result of bad faith or an attempt to cover-up or conceal any information from Defendant Audible Magic. *See id.* ¶ 15. Any delay is the result of the volume of documents, the format of the documents, and working directly with third party vendors to comply with the court's E-discovery Order. *See id.* ¶ 15.

## II.     APPLICABLE LAW

The Court has authority under Fed. R. Civ. P. 37 to impose sanctions for failure to comply

with discovery orders. Permissible sanctions range from monetary sanctions to severe sanctions, including dismissal. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980). Fed. R. Civ. P. 37(b)(2) requires any sanction imposed be just, and the Court must find the penalized party's discovery violation was willful. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004); *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). "Severe sanctions such as taking allegations as established and awarding judgment on that basis, dismissal, and default judgment are authorized only in extreme circumstances." *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1254 (Fed. Cir. 1990).

This Court also has inherent powers, including the "authority to impose reasonable and appropriate sanctions on errant lawyers practicing before the court." *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). However, the Fifth Circuit has noted that a court must exercise restraint and caution when invoking its inherent powers, exercising it "only if essential to preserve the authority of the court," and employing "the least possible power adequate to the end proposed." *Id.* (quoting *Spallone v. United States*, 493 U.S. 265, 280, (1990)).

When imposing sanctions under its inherent power, a court must make a specific finding of "bad faith or willful abuse of the judicial process." *Cadle Co. v. Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997). Further, such "finding of bad faith must be supported by clear and convincing proof." *Cadle Co.*, 739 F.3d at 730 (quoting *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001)) (noting "nondisclosure and inconsistency, while justifying scrutiny, are not alone clear and convincing evidence of . . . bad faith or willful misconduct").

### III. ARGUMENT

#### A. This is Not an Extreme Case Warranting Severe Sanctions

This Court has previously imposed severe sanctions where the offending party failed to comply with multiple orders and committed extreme abuses of the litigation process. In one case, the record showed the sanctioned party

> (1) failed to cooperate fully in preparing the joint pretrial report, (2) failed to timely make pretrial disclosures, (3) failed to timely return [defendant's] company property as ordered, . . . (4) failed to timely pay sums levied as sanctions for two separate incidences of discovery misbehavior . . . [and] failed to respond to a number of his adversary's motions, including . . . motion for summary judgment and motion for costs and attorney's fees.

*Murray v. Serena Software, Inc.*, 212 Fed. App'x 349, 351 (5th Cir. 1997) (*per curiam*).[1]

Even the case cited by Audible Magic contains circumstances far more extreme than the facts of the current case. In *Kamatani v. BenQ Corp.*, this Court referred to the plaintiff's conscious decision not to search its own records for documents it knew were extremely relevant, and its repeated misrepresentations to the court about such efforts, as "blatant and extensive discovery violations far in excess of anything this Court has ever encountered." 2005 U.S. Dist. LEXIS 42762, at *4, 43-46 (E.D. Tex. Oct. 6, 2005) (J. Ward). The Court distinguished the discovery violations in *Kamatani* as demonstrating the offending party's *conscious intent* to evade discovery orders, and its repeated failures to comply with this Court's rules, which was evidenced by its issuance of lesser sanctions on two prior occasions. *Id.*

Similarly, in another case, this Court imposed severe sanctions where the defendant, alleged to have directly and indirectly infringed asserted patents, *deliberately* attempted to conceal documents highly relevant to its inducement of its customer and co-defendant, and such

---

[1] This case has precedential value per USCS Ct. App. 5th Cir. Loc. R. 47.5.4 in certain limited contexts, including sanctions, and is therefore properly cited here.

concealment came to light only after jury findings in the case. *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 U.S. Dist. LEXIS 74337, at *9-12 (E.D. Tex. July 11, 2011).

Finally, this Court has imposed severe sanctions where the offending party willfully failed to answer or respond to the complaint, thereafter filed a motion for extension of time significantly later than the time to respond, filed their answer without the court's leave 151 days after the complaint was filed, and *forged* an email in support of its defense. *FURminator, Inc. v. PetVac Group LLC*, 2011 U.S. Dist. LEXIS 86522, at *15-19 (E.D. Tex. Aug. 5, 2011) (holding clear and convincing evidence of bad faith justified the district court's exercise of its inherent powers to impose severe sanction of dismissal with prejudice).

The present case is distinguishable from the repeated violations of discovery orders, failures to engage meaningfully in the litigation process, and active concealment or forgery of highly relevant information that warrants the imposition of severe. Indeed, Blue Spike has attempted in good faith to comply with the discovery Order, despite its failings to date. Blue Spike has worked diligently to correct the shortcomings in its production, beginning immediately following the issuance of the discovery Order, by working with the client to find all relevant materials, hastily reviewing such materials for privilege, working with the third-party document preparer to process the documents, and ultimately turning over 116,000 pages-worth of documents. *See* Brasher Declaration ¶¶ 6-9. Blue Spike's efforts to date are not purposely dilatory but rather indicative of the great time and effort that goes into producing over 20 years worth of responsive documents.[2] All remaining documents to be produced are in currently in the possession of a third party vendor, who is converting the documents to TIFF images and

---

[2] Audible Magic Corporation for instance produced several thousand pages of documents on October 24 and 26 including certain financial documents and licensing agreements. *See* Brasher Declaration ¶14.

5

attaching bates labels.

Further, in response to Audible Magic's inquiry regarding the remaining documents, Blue Spike offered to have them inspected in person, an offer that Audible Magic referred to as "ridiculous." These facts militate against a finding of bad faith or willfulness and are neither the type of obstructive behavior nor blatant disregard for the judicial process that warrants the imposition of sanctions.

### B. Audible Magic is Not Imminently Prejudiced by Blue Spike's Late Production

In evaluating a motion to impose severe sanctions, the Court should determine whether the offending party's conduct substantially prejudices the opposing party. *Moore v. CITGO Ref. & Chems.*, 735 F.3d 309, 316 (5th Cir. 2013). In so doing, the Court may credit the party against whom sanctions are sought where there was an attempt to mitigate any prejudice caused by its failure to abide by discovery deadlines. *See Kamatani v. BenQ, Inc.*, 2006 U.S. Dist. LEXIS 1850 *14 (E.D. Tex. Jan. 1, 2006) (J. Ward) (opining sanctions are not reasonable despite prior instances of sanctionable conduct, since "Kamatani cannot show any real prejudice from BenQ's late disclosure. BenQ, in an obvious attempt to minimize the impact of late disclosure, offered . . . to allow Kamatani to depose those witnesses not timely identified," which Kamatani obstinately chose not not avail themselves of; and noting, "BenQ's counsel engaged in the type of conduct this Court expects of lawyers once a mistake is discovered.").

Blue Spike admits that the deadline for production pursuant to this Court's Order was September 30, 2014, and as discussed, all attempts were made to comply with this deadline including the production of approximately 90,000 pages. *See* Brasher Declaration ¶¶ 6-7. However, Blue Spike disagrees with Audible Magic's characterization of the circumstances as severely prejudicing their preparation of expert reports, particularly in light of this Court's

subsequent Order Granting Plaintiff's Motion to Modify the Scheduling Order, which moved the deadline to designate expert witnesses and reports on issues for which the party bears the burden from November 14, 2014 to January 15, 2014. *See* Dkt. 1829. Additionally, the deadline for completion of all discovery is April 21, 2015. *See* Dkt. 1332.

Furthermore, Blue Spike was sensitive to Audible Magic's prior deadline to produce expert reports and for this reason made the documents available for inspection in person before the third party vendor could process them. Audible Magic maintains that such inspection would not limit any prejudice to Audible Magic (*see* Dkt. 1827 at 3 n.2); however, Blue Spike fails to understand how Audible Magic could make such a determination. Moreover, the Court granted Blue Spike LLC's opposed motion to extend the expert deadline until January 15, 2015. It was agreed to several of the defendants but was opposed by Audible Magic.

      C.    <u>Blue Spike, LLC has fully responded to the Interrogatories in full compliance with the Court's order.</u>

Blue Spike, LLC has fully complied with the Court's order and responded to Audible Magic's interrogatories. With regard to both Interrogatory Nos. 6 and 7, as clearly identified in its definitions, Blue Spike, LLC is responding on behalf of itself and not on behalf of either Blue Spike, Inc. or Scott Moskowitz. Blue Spike, LLC is a legal entity under the laws of the State of Texas and could not have knowledge or take action before the date of its incorporation. Audible Magic Corp. has served interrogatories on both Blue Spike, Inc. and Scott Moskowitz.[3] Instead of serving additional interrogatories on Blue Spike, Inc. or Scott Moskowitz related to happenings before April 2012, Audible Magic filed a motion for sanctions increasing motion practice and involving the court unnecessarily.

---

[3] Audible Magic Corp. acknowledged the distinction between Blue Spike, LLC and Blue Spike, Inc. and agreed to service of Interrogatories regarding each entity's particular knowledge. *See* Dkt. 1617 n. 3.

With regard to Interrogatory No. 8, Audible Magic's claim of prejudice are unfounded as the Court has extended the Defendant's deadline. Furthermore, Blue Spike expressly requested a meet and confer to discuss the bounds of the interrogatory to avoid motion practice, but Counsel for Audible Magic ignored the request. Blue Spike is not attempting to avoid its obligations, it is the Plaintiff. Instead, Blue Spike is attempting to pursue this litigation within the context of Rule 1 – avoiding excessive court involvement and unnecessary litigation costs.  Blue Spike was disappointed that lead trial counsel for Audible Magic refused to meet and confer prior to filing this motion for sanctions.

### IV.   IN THE ALTERNATIVE, MOTION FOR EXTENSION OF TIME TO COMPLY WITH THE DISCOVERY ORDER

Audible Magic has failed to show sufficient evidence or cause to justify the imposition of sanctions. Blue Spike has acted in good faith to comply with the Court's order and is not withholding any documents or attempting to evade the Court's order. Blue Spike respectfully requests that the Court deny Defendant's motion. In the alternative, Blue Spike respectfully moves the Court for an extension of time within which to complete production of documents responsive to this Court's Order, dated September 10, 2014.  *See* Dkt. 1754.

Blue Spike's current deadline to produce documents pursuant to the Order was September 30, 2014. Blue Spike requests an extension of time of until October 15, 2014, to produce the remaining documents. The documents originally in hard copy remain available to be inspected in hard copy at the law offices of Garteiser Honea in Tyler.  Accordingly, Audible Magic has had plenty of time to complete its expert reports with all of the documents responsive to Audible Magic's requests available for inspection in the manner it was produced and also being processed as TIFF images no later than November 15, 2014.

## V. CONCLUSION

As discussed above, Audible Magic cannot make a showing of bad faith or willfulness necessary for the imposition of sanctions. Given Blue Spike's continued efforts to engage in the judicial process in good faith, Blue Spike respectfully submits that the imposition of sanctions against it are inappropriate even in light of its admitted failure to comply with the discovery deadline. Blue Spike further moves this court for an extension of time to comply with the discovery Order to bring an end to this discovery dispute.

Respectfully submitted,

/s/ Randall T. Garteiser

Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Counsel for Blue Spike, LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

/s/  Randall T. Garteiser