# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499 MHS<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br><br>v.<br><br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576 MHS<br><br>CONSOLIDATED CASE |

**DEFENDANT AUDIBLE MAGIC CORPORATION'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR SANCTIONS AGAINST BLUE SPIKE LLC, BLUE SPIKE INC. AND SCOTT MOSKOWITZ FOR FAILING TO COMPLY WITH A COURT ORDER**

Blue Spike's Opposition does nothing more than confirm to this Court that Blue Spike, Inc., Blue Spike LLC and Scott Moskowitz (collectively "Blue Spike") failed to comply with this Court's September 10th Order and their discovery obligations generally.  Blue Spike shows no remorse for failing to comply with a Court order, and offers no credible explanation.  Instead, Blue Spike argues that because it does not believe Audible Magic has been prejudiced by Blue Spike's failure, it is acceptable that Blue Spike ignored a Court Order and may withhold critical documents until the eve of expert reports (or refuse to produce them entirely).  As explained below, Audible Magic has been (and continues to be) prejudiced by Blue Spike's action.

This is not a situation where Blue Spike made a full production months ago, as required, and throughout the course of discovery supplemented the production as appropriate or missed a document here and there.  Rather, Blue Spike completely failed and refused to make any meaningful production at all regarding its accused products, financial data and extremely relevant historical documents – all of which it could have and should have produced last spring.  Indeed, by the deadline for substantial completion of document production, the case had been pending for a year and half; Blue Spike had all of that time to prepare its production.  It is evident that Blue Spike chose to increase the pressure on Audible Magic by ignoring discovery obligations, and having the benefit of critical information as it has prepared its case the last two years, while at the same time withholding that information from Audible Magic.  Now, even after an order compelling it to do so, Blue Spike has failed to make a full production.  For example, to this day, Audible Magic *still* has no documents whatsoever regarding the accused Blue Spike product, no financial data regarding Blue Spike LLC and only a subset of historical documents and email.  Blue Spike now openly admits it failed to comply with a Court Order and that it continues to withhold materials that should have been produced months ago; the only

question for this Court is what sanction should be imposed on Blue Spike. Because this is not an isolated incident, and because Audible Magic continues to be prejudiced by Blue Spike's conduct, the sanctions discussed in Audible Magic's motion are warranted.

A.  **Audible Magic is prejudiced by Blue Spike's conduct and Blue Spike fails to address the main documents in dispute.**

The situation here is quite straightforward. The Blue Spike parties have had the benefit of materials and information critical to Audible Magic's defenses and counterclaims, but have kept that information held close, ignoring local rules, deadlines and court orders, to obtain the advantage of keeping Audible Magic in the dark regarding the full facts. This tactic continues as of the date of this brief and the need for relief is urgent.

The Giovanni Abstraction Machine is the accused product in Audible Magic's patent counterclaim. Was there really a dispute that these documents were responsive and should have been produced in May pursuant to the Patent Local Rules? Did Blue Spike need to wait until it had a Court Order, months after the disclosure deadline, before even beginning to collect this material? How did Blue Spike make affirmative statements to this Court about the structure and functionality of this product during the claim construction process, clearly in support of its non-infringement positions, but at the same time refusing to disclose any documents to Audible Magic about the operation of the product? Even by Blue Spike's own account, the Giovanni Abstraction Machine did not go on sale until late 2012. So how is it that, nearly two months after the Court's Order, Audible Magic still hasn't seen a document about this product? In short, Blue Spike has no excuse and is intentionally withholding documents about the accused product.

Similarly, Blue Spike LLC – the original plaintiff in this case – still has not produced any financial documentation. Blue Spike LLC was founded in 2012. The financial records of a patent plaintiff are unquestionably relevant and should have been produced in May, without a

2

Court order. Likewise, full financials for counterclaim defendants Blue Spike, Inc. and Scott Moskowitz should be produced. It defies reason that these financials are not readily available; they should have been immediately produced in response to the Order.

Blue Spike attempts to excuse its actions by asserting that the documents that Audible Magic is seeking are all 20 years old. This does not excuse its failure. Those 20 year old documents are key to the case and Blue Spike has known for two years that this material would be in dispute, as it described its history chapter and verse in its original complaint. And Audible Magic's counterclaims implicating this old material have been pending since July 2013. Yet by Blue Spike's own account, it only began to gather documents in the last month or so. In contrast, Audible Magic was able to gather its historical documents, using the long delay in this case to prepare a production for Blue Spike last spring. Blue Spike's failure to take the case seriously and do the same, despite ample time, demonstrates that its conduct *is* willful. Moreover, the assertion that the documents are all old dodges the fact that Audible Magic also focused its motion for sanctions on Blue Spike's failure to produce two categories of *contemporaneous* documents. *See* D.I. 1827 at 3-6.

Blue Spike claims that because there is still a few weeks before expert reports are due, Audible Magic is not prejudiced by Blue Spike's failure to comply with a Court order. This proposition is astoundingly disingenuous. Audible Magic produced the vast majority of its documents well over six months ago. Blue Spike has had this time to prepare its case – work on expert reports, prepare for depositions, etc. In stark contrast, Audible Magic is still waiting for the foundational and necessary documents to prepare its case. Thus, Blue Spike has had over six months to review documents and prepare its case, but it argues that a handful of weeks should be more than enough time for Audible Magic. This double standard should not be permitted.

Contrary to Blue Spike's arguments, Audible Magic continues to be prejudiced by Blue Spike's failure to comply. Audible Magic cannot schedule depositions of certain Blue Spike individuals or third parties until after Blue Spike has produced its relevant documents and Audible Magic has an opportunity to review them. Audible Magic had to proceed through claim construction without ever receiving a non-public document about the Accused Product. Audible Magic's experts are unable to meaningfully prepare expert reports without these documents.

**B.    Blue Spike's characterization of events is misleading.**

Blue Spike makes several statements in its opposition that are either inaccurate or misleading.

- Blue Spike claims that responsive documents are in the custody of its vendor, who is processing them for production. D.I. 1860 at 2. Blue Spike's counsel made these *exact same claims* over three weeks ago (*see* D.I. 1827 at Ex. 5) and has not produced a single document since Audible Magic filed its motion. Blue Spike's claims that its document vendor requires over three weeks to process any documents defy logic.

- Blue Spike claims that it made its entire remaining production available for inspection in its Tyler office. D.I. 1860 at 2. First, that offer was not made until October 14, 2014 – two weeks after the Court deadline. D.I. 1827 at Ex. 5. In that offer, Blue Spike explained that it had "hard drives, compact disks, floppy disks, and cassettes" for Audible Magic to inspect. *Id*. It is unclear how counsel for Audible Magic would be able to meaningfully review documents in this form in Tyler, Texas. And, at that time, Blue Spike could not even confirm that all responsive documents were at its offices. *Id.* Finally, counsel for Blue Spike is fully aware that the attorneys for Audible Magic who are responsible for case preparation work and live in California and Washington D.C. The burden and expense for them to travel

4

and somehow review non-code documents in Tyler is significant.

- Blue Spike talks, at length, about the Court's inherent power to impose sanctions. D.I. 1860 at 3. The Court's inherent sanctioning power is not relevant here. Rule 37 *mandates* sanctions where a party fails to comply with a Court order. *See* D.I. 1827 at 3. Thus, where Blue Spike does not deny that it failed to comply with an Order, the only question is *which* sanctions to apply.

- Blue Spike characterizes Audible Magic's requested sanctions as "severe", but does not address the fact that it repeatedly has told this Court that it never made a sale of the accused product. *See* D.I. 1827 at 5, n.3.

- Blue Spike now "admits that the deadline for production pursuant to the Court's Order was September 30" and requests an extension on that Order. D.I. 1860 at 8. But during the parties' meet-and-confer, counsel for Blue Spike submitted that Blue Spike did not believe that the Court's Order required full production by September 30. Only now – after Audible Magic has brought Blue Spike's conduct to the attention of the Court – does Blue Spike recognize the import of the Court's Order and requests an *ex post facto* extension.

**C.    Blue Spike's conduct is not an isolated incident.**

Blue Spike's disregard of the Court's rules is not going unnoticed. As this Court is aware, in July, Blue Spike failed to comply with the Federal Rules of Civil Procedure by failing to timely respond to discovery requests. As mentioned above, Blue Spike's failure to produce Blue Spike LLC financial documents and documents relating to the Giovanni Abstraction Machine was a violation of this Court's local rules, and should not have even required a motion to compel.

Dated:  November 5, 2014

*/s/ Brian Craft*
Brian Craft (Texas Bar. No. 04972020)
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
bcraft@findlaycraft.com
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp., Facebook, Inc., Myspace LLC, Specific Media LLC, Photobucket.com, Inc., DailyMotion, Inc., DailyMotion S.A., SoundCloud, Inc., SoundCloud Ltd., Myxer, Inc., Qlipso, Inc., Qlipso Media Networks, Ltd., Yap.tv, Inc.,

> GoMiso, Inc., iMesh, Inc., Metacafe, Inc., Boodabee Technologies, Inc., Zedge Holdings, Inc., Brightcove Inc., Coincident.TV, Inc., Accedo Broadband North America, Inc., Accedo Broadband AB, MediaFire, LLC, WiOffer LLC, and Harmonix Music Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on November 5, 2014.

>> */s/ Brian Craft*
>> Brian Craft