IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| *Plaintiff*, | § | Civil Action No. 12-CV-499-MHS-CMC |
| v. | § | |
| TEXAS INSTRUMENTS, INC., *et al.*, | § | LEAD CASE |
| *Defendants*. | § | JURY TRIAL DEMANDED |

**BLUE SPIKE, LLC'S SURREPLY TO**
**AUDIBLE MAGIC CORPORATION'S MOTION FOR SANCTIONS**

Audible Magic and more importantly its customers in this lawsuit, are beginning to realize that Audible Magic's counterclaims are specious. Blue Spike, LLC ("Blue Spike's") has explained it offered the Giovanni Signal Abstract Machine for a limited period of time in its responses to interrogatories and in denying requests for Admissions. It was never built, but was an item that Blue Spike could build. Yet, Audible Magic still troubles the Court with motion practice and demands for documents that cannot be produced because they do not exist. This could have been cleared up with a simple meet and confer, but instead, Audible Magic had two associates at its Counsel's office have a teleconference with an associate for Blue Spike, and then proceeded to move for sanctions.

Needless to say, there are not any additional documents pertaining to the Giovanni Signal Abstract Machine other than the description of what it would build for a customer. However, Blue Spike has been in the process of producing documents on the Giovanni Watermarking products at the request of Audible Magic, which were also at issue in the Court's Order. Blue Spike was already in the process of collecting these at the request of Audible Magic.

Almost in an attempt to justify its counterclaims, Audible Magic's Reply misconstrues Blue Spike position and misrepresents the facts. Since the Court's September 10th Order, Blue Spike has worked diligently, at great expense, to produce nearly 25 years of documents. Blue Spike has not and is not withholding any documents. Blue Spike is making a complete production of all the documents the court has required.

I. **Audible Magic has made several misrepresentations about the facts either deliberately or recklessly.**

In an attempt to correct Audible Magic's misrepresentations, Blue Spike will address each of Audible Magic's allegations directly and specifically and in turn.

- "Blue Spike claims that responsive documents are in the custody of its vendor, who is processing them for production. D.I. 1860 at 2. Blue Spike's counsel made these *exact same claims* over three weeks ago (*see* D.I. 1827 at Ex. 5) and has not produced a single document since Audible Magic filed its motion. Blue Spike's claims that its document vendor requires over three weeks to process any documents defy logic." [Reply at ¶4]

There are a lot of documents and native files that had to be produced that Audible Magic did not choose to inspect at Blue Spike's law firm. After receiving documents as late as September 30, 2014, Blue Spike provide to its third party vendor relevant documents for production on October 13 (Ex. 1) and October 22 (Ex. 2). Plaintiff's third party vendor responded on October 22 (Ex. 3) that it was still processing those documents and finally made that production available on Nov. 4 (Ex. 4), that Blue Spike produced shortly thereafter. As Blue Spike stated in its original opposition, the delay in part is the result of working with Blue Spike's third party vendor. *See* Declaration of Peter Brasher, ¶ 4. Such an issue is outside the control of Blue Spike and does not represent bad faith or an attempt to conceal evidence or prejudice Audible Magic.

- "Blue Spike claims that it made its entire remaining production available for inspection in its Tyler office. D.I. 1860 at 2. First, that offer was not made until October 14, 2014 – two weeks after the Court deadline. D.I. 1827 at Ex. 5. In that offer, Blue Spike explained that it had "hard drives, compact disks, floppy disks, and cassettes" for Audible Magic to inspect. *Id*. It is unclear how counsel for Audible Magic would be able to meaningfully review documents in this form in Tyler, Texas. And, at that time, Blue Spike could not even confirm that all responsive documents were at its offices. *Id.* Finally, counsel for Blue Spike is fully aware that the attorneys for Audible Magic who are responsible for case preparation work and live in California and Washington D.C. The burden and expense for them to travel and somehow review non-code documents in Tyler is significant." [Reply at ¶4]

Audible Magic fails to mention that Blue Spike has reviewed, converted into electronic format, and produced over 50 boxes of physical documents, restored the information on the floppy disks, hard-drives, compact disks, and cassettes into an up-to-date format that Audible Magic's counsel demanded. Brasher Decl. at ¶¶ 3, 5, and 15. When Blue Spike made the offer to

3

review all of those documents in person in the form they were delivered to counsel for Blue Spike, Blue Spike pointed out that such offer was in compliance with the Federal Rules which state in relevant part, "A party must produce documents as they are kept in the usual course of business…" Fed. R. Civ. Pro. 34(b)(2)(E)(i). Audible Magic claims great prejudice at the delay, but when Blue Spike made an offer to put an end to that prejudice, Audible Magic refused. Brasher Decl. at ¶ 13. Audible Magic has made it clear to Blue Spike and this Court that Audible Magic's convenience in discovery review is more important than its alleged prejudice.

- "Blue Spike talks, at length, about the Court's inherent power to impose sanctions. D.I. 1860 at 3. The Court's inherent sanctioning power is not relevant here. Rule 37 *mandates* sanctions where a party fails to comply with a Court order. *See* D.I. 1827 at 3. Thus, where Blue Spike does not deny that it failed to comply with an Order, the only question is *which* sanctions to apply." [Reply at ¶5]

Rule 37 states, that when a party fails to comply with a discovery order, "the court where the action is pending *may* issue further just orders" (emphasis added). Fed. R. Civ. Pro. 37(b)(2)(A). At the very least, if the failure is not substantially justified, the Court must issue costs against the disobedient party. Fed. R. Civ. Pro. 37(b)(2)(C). As Blue Spike stated in its Opposition and re-stated here, sanctions is a severe penalty only warranted in the most flagrant of circumstances. Blue Spike is not withholding any documents from defendants and any delay is the result of the amount and type of documents as well as working with third-party vendors. In addition, if Audible Magic's interpretation of order is correct, Blue Spike only had 20 days in which to identify, locate, process, and produce the requested documents. Any delay is substantially justified.

- "Blue Spike characterizes Audible Magic's requested sanctions as "severe", but does not address the fact that it repeatedly has told this Court that it never made a sale of the accused product. *See* D.I. 1827 at 5, n.3." [Reply at ¶5]

Audible Magic's assertions are vexatious and confusing. Blue Spike can only respond

4

that sanctions are in fact a severe penalty, and Blue Spike *has* never made a sale of the accused product. The severity of Audible Magic's motion for sanctions will not change that simple fact.

- "Blue Spike now "admits that the deadline for production pursuant to the Court's Order was September 30" and requests an extension on that Order. D.I. 1860 at 8. But during the parties' meet-and-confer, counsel for Blue Spike submitted that Blue Spike did not believe that the Court's Order required full production by September 30. Only now – after Audible Magic has brought Blue Spike's conduct to the attention of the Court – does Blue Spike recognize the import of the Court's Order and requests an *ex post facto* extension." [Reply at ¶ 5]

Blue Spike's position with regard to the Court's order has not changed. It was Blue Spike's position then and is Blue Spike's position now, that the 20-day period was for Blue Spike to begin its production of the 25 years of documents. As stated previously Blue Spike made a diligent search for all documents responsive to the Court's order and the same were not all finally delivered to counsel for Blue Spike until September 30, 2014. This is not to say that Blue Spike had not previously produced and reached out to other third parties that had documents, including the prosecuting attorney that had switched firms several times since the year 2000. As soon as Blue Spike was able it began its production, it has, and has continued its production as quickly as possible. Declaration of Peter Brasher, ¶ 3. Blue Spike's request for an extension was "in the alternative," if this Court determined that Blue Spike's position was unfounded or inaccurate.

Blue Spike has reviewed, digitized or restored, and made text searchable over 50 boxes of physical documents, floppy disks, cassettes, old hard drives, and compact disks for the convenience of Audible Magic. When Blue Spike attempted to mitigate any perceived prejudice to Audible Magic in compliance with the rules of discovery, Audible Magic refused and instead opted to expend its time, energy, and money in expensive motion practice. All non-privileged documents relevant to all of Audible Magic's requests have been produced or will be produced this week. Audible Magic's insistence that "[it] is still waiting for the foundational and necessary

documents to prepare its case" (Reply at 3) is not evidence of Blue Spike's delinquency but evidence that Audible Magic's claims are without foundation. Blue Spike has produced all documents related to the Giovanni Abstraction Machine. In addition Blue Spike, LLC has produced financial documents in the form of sources of income and revenue and tax returns. If Audible Magic is filing its motion for sanctions to uncover some "foundational" documents, it has wasted the Court and Blue Spike's time and expenses.

For the above stated reason, Audible Magic's motion for sanctions should be denied.

Respectfully submitted,

/s/ Randall T. Garteiser

Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
  cjohns@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
Peter S. Brasher
  California Bar No. 283992
GARTEISER HONEA, P.C.
218 North College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

*Counsel for Blue Spike, LLC*

**Certificate of Service**

  The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

                 /s/ Randall T. Garteiser