UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blue Spike, LLC, | § | |
| *Plaintiff,* | § | Case No. 6:12-cv-499-RWS-CMC |
| | § | |
| v. | § | Lead Case |
| | § | |
| Texas Instruments, Inc. et al., | § | Jury Trial Demanded |
| | § | |
| *Defendants.* | § | |

**BLUE SPIKE'S MOTION TO STRIKE EXPERT REPORT OF
DR. SCHUYLER QUACKENBUSH REGARDING INVALIDITY**

Plaintiff Blue Spike, LLC ("Blue Spike") moves the Court to strike Dr. Quackenbush's expert report produced on behalf of Defendant Audible Magic, Inc. Here, Audible Magic's expert report undermines a defining feature of our trial system: that fair-notice pleading and fact finding should be "unencumbered with *an excess of detail.*" *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 140 (5th Cir. 1968) (emphasis added). Audible Magic ignored this maxim by producing a 3676-page expert report that epitomizes "an excess of detail."

To put the expert report's massive length in context, Blue Spike asks the Court to consider the following:

- An average person reading two pages a minute would spend three weeks reading Dr. Quackenbush's 3676-page report.[1]

- Reading Dr. Quackenbush's 3676-page report is equivalent to reading *War and Peace* two-and-a-half times over—but with little of the literary majesty of Tolstoy's masterpiece.[2]

---

[1] *See* Ex. 1. Calculated at 40 hours per week.

1

- Printing 3676 pages on a standard home printer would drain more than nine ink cartridges.[3]

- If printed on lightweight 20-pound paper, the 3676-page report would weigh 144 pounds.[4] Delta would refuse to check a bag containing this report.[5]

Dr. Quackenbush's report is too long to provide Blue Spike with reasonable notice of the criticisms against its case, and it is simply too long for the Court to perform any meaningful gatekeeping role to ensure that Audible Magic's expert testimony is actually reliable. The mammoth report also increases rather than reduces costs, and it obfuscates rather than narrows the issues. In sum, Dr. Quackenbush's report is inadmissible for several reasons.

### ARGUMENT

### I. THE COURT SHOULD EXCLUDE DR. QUACKENBUSH'S 3676-PAGE EXPERT REPORT AS INADMISSIBLE.

The party proffering testimony bears the burden of establishing its admissibility. *Romero v. Wyeth Pharms., Inc.*, Case No. 1:03-cv-1367, 2012 U.S. Dist. LEXIS 64130, *5 (E.D. Tex. Apr. 12, 2012) (citing *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003)). If the proponent of the expert testimony fails to meet the admissibility requirements, the Court has discretion to exclude the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S.

---

[2] *See* Ex. 2.
[3] *See* Ex. 3. The Epson WorkForce WF-3520 uses a high-capacity ink cartridge yielding about 385 pages.
[4] Calculated at 20 lbs per 500 pages. *See* https://www.thepapermillstore.com/media/about_us/PaperWeights.pdf.
[5] "Bags exceeding 100 lbs. are not allowed." *See* http://www.delta.com/content/www/en_US/traveling-with-us/ baggage/before-your-trip/excess.html 1/6 (as visited on April 21, 2015).

137, 152 (1999); *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Here, the Court should strike Dr. Quackenbush's expert report because it fails to meet admissibility requirements.

Dr. Quackenbush's expert report does not assist a trier of fact as required. *See Romero,* 2012 U.S. Dist. LEXIS 64130 at *7 (citing FED. R. EVID. 702). The size of an expert report may indicate whether it is capable of assisting a trier of fact. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5th Cir. 1996) (striking expert report for being too short). At over 3600 pages, it is inconceivable that Audible Magic's expert report will assist anyone other than Audible Magic. The report is too long to read, and certainly too long to meaningfully digest. If Dr. Quackenbush's report contains data helpful to a trier of fact, those data are not reasonably accessible. *See LaBauve v. Olin Corp.*, 231 F.R.D. 632, 642 n.18 (S.D. Ala. 2005) ("[S]imply because the parties have these materials in their possession does not confer upon them license to dump them willy-nilly into the record and expect the Court to divine their significance. It is incumbent on the parties to organize their case, to separate wheat from chaff, and to present their positions efficiently and concisely.").

An expert report that is excessively long does not satisfy the requirement of assisting the trier in fact. For example, in *Liberty Media Corp. v. Vivendi Universal, S.A.*, the court concluded that an expert's "120–page report is far in excess of what I would have permitted to be submitted." 874

F.Supp.2d 169, 174 (S.D.N.Y. 2012). Instead, an expert "must draw on the facts only as necessary—and in as concise a manner as possible—to support his opinion," and on that basis "decline[d] to parse" the expert's "report paragraph-by-paragraph." *Id*. If a 120-page report was "excessive," Dr. Quackenbush's 3676-page report is ludicrous. Likewise, in a recent patent case, *Avocent Redmond Corp. v. Rose Electronics*, No. C06-1711RSL, 2012 WL 5495230 (W.D. Wash. Nov. 13, 2012), the court opined that "hundreds of pages of charts attached to [an] expert report" were "completely unhelpful" and that the court was not "inclined to search for evidence regarding each accused product" in the report. *Id*. at *2. Here, by comparison, Dr. Quackenbush's report is many, many times longer than the reports held to be inadmissible in *Liberty Media* and *Avocent*—and is just as "completely unhelpful" as the excessively long reports in those cases.

Dr. Quackenbush's report is also unreliable, which is an independent ground for excluding it. *See Romero*, 2012 U.S. Dist. LEXIS 64130 at *5 (citing *Kumho Tire*, 526 U.S. at 152). The court may analyze the *Daubert* factors when assessing the reliability of an expert's opinion. *Id*. at *6. Here, the Court cannot meaningfully address the *Daubert* factors due to the sheer mass of Dr. Quackenbush's expert report. Audible Magic has buried its expert evidence in 144 pounds of paper. Thus, this expert report must be considered unreliable by default because neither the Court nor the other parties have any reasonable hope of analyzing the reliability of the opinions contained in the report.

4

## II. DR. QUACKENBUSH'S EXPERT REPORT VIOLATES THE PURPOSE OF RULE 26.

Expert reports are supposed to to narrow and clarify basic issues between the parties. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 515 (5th Cir. 1993). "The discovery rules are designed to aid in the expedient flow of litigation so that meritorious disputes may be heard and resolved in a reasonable period of time and at a reasonable cost to the parties." *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 (5th Cir. 1990). Dr. Quackenbush's report does not narrow and clarify issues; rather, his report buries those issues. Dr. Quackenbush's lengthy report puts Audible Magic in the catbird seat by obscuring relevant issues and forcing Blue Spike to expend an unreasonable amount of resources just to process it.

As other courts have explained, the tactic Audible Magic has employed here does not pass muster under the Federal Rules of Civil Procedure. The district court in *Cooke v. Town of Colorado City* held: "If the Court were to allow this kind of 'find the Easter Egg' approach, it would allow litigants to manipulate the expert disclosure rule in a way that would materially increase the cost of litigation." No. CV 10-08105-PCT-JAT, 2013 WL 551508, at *5 (D. Ariz. Feb. 13, 2013). Instead, the court continued, "[a]n opposing party should be able (and be entitled) to read an expert disclosure, determine what, if any, adverse opinions are being proffered and make an informed decision as to whether it is necessary to take a deposition and whether a responding expert is needed." *Id*. Here, Audible Magic's use of a 3676-page report deprives Blue

5

Spike of any fair opportunity (1) to understand Dr. Quackenbush's attacks on Blue Spike's case, (2) to make an informed decision about whether and how to depose Dr. Quackenbush, or (3) to decide whether and how to elicit an expert rebuttal report.

Dr. Quackenbush's report does not facilitate "the elimination of unfair surprise to the opposing party and the conservation of resources." *Brandon v. The Sage Corp.*, 2014 U.S. Dist. LEXIS 34864, *13 (W.D. Tex. Mar. 18, 2014); FED. R. CIV. P. 26 Committee Note (1970). Instead, his report increases the likelihood of surprise by burying potentially relevant testimony and will certainly waste significant resources—including time, personnel, and funds— in the attempt to process and rebut it. There is no way Blue Spike will be able to cover the entire report at Dr. Quackenbush's deposition. Nor is it reasonable for Blue Spike to pay an expert to read and analyze Dr. Quackenbush's 3676-page report and prepare a rebuttal opinion. Striking the 3676-page report will help prevent "trial by ambush"[6] and help ensure that the trial is "less a game of blindman's bluff and more a fair contest with basic issues and facts disclosed to the fullest extent possible." *United States v. Procter*, 356 U.S. 677, 682 (1958).

## III.   THE COURT SHOULD ALSO STRIKE THIS EXPERT REPORT, AS IT CANNOT POSSIBLY REFLECT DR. QUACKENBUSH'S TRIAL TESTIMONY.

An expert report is "intended to set forth the substance of the direct examination, and should be written in a manner that reflects the testimony to

---

[6] *Seoul Semiconductor Co. v. Nichia Corp.*, 596 F.Supp.2d 1005, 1011 (E.D. Tex. 2009).

be given by the witness." *United States ex rel. Barron v. Deloitte & Touche, LLP*, 2008 U.S. Dist. LEXIS 111897, *11-12 (W.D. Tex. Sept. 26, 2008) (citing FED. R. CIV. P. 26 Committee Note (1993)). At more than 3600 pages, Dr. Quackenbush's report cannot possibly reflect his eventual trial testimony. There simply will not be enough time at trial for Dr. Quackenbush to cover a fraction of the content in his report. If left unchecked, this imbalance would allow Audible Magic to surprise Blue Spike at trial with the few snippets of Dr. Quackenbush's testimony that are actually relevant.

## IV. AUDIBLE MAGIC'S USE OF THIS REPORT ABUSES THE DISCOVERY PROCESS.

Weighing in at 3676 pages, Dr. Quackenbush's report unfairly burdens Blue Spike and stymies the flow of litigation. *See Coane*, 898 F.2d at 1033 ("The discovery rules are designed to aid in the expedient flow of litigation so that meritorious disputes may be heard and resolved in a reasonable period of time and at a reasonable cost to the parties."). Audible Magic's improper use of discovery is exactly what the federal rules have attempted to curb:

> [T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake."

FED. R. CIV. P. 26 Committee Note (1983). The Fifth Circuit echoed this sentiment, stating that "[i]t is not acceptable for a party to attempt to use the judicial system to punish financially or to harass an opponent in order to gain an unfair advantage in litigation." *Coane*, 898 F.2d at 1033. "Patent litigation

is challenging and expensive enough without putting one party or the other to the task of sifting through mountains of data and transcripts to glean what is at issue." *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 U.S. Dist. LEXIS 116382, *10-11 (N.D. Cal. Aug. 20, 2014). Dr. Quackenbush's report is exactly that: a mountain of data that buries the real issues in dispute.

### CONCLUSION

For these reasons, Blue Spike respectfully asks the Court to strike Dr. Quackenbush's 3676-page expert report due to its excessive length. The report does not narrow or clarify issues, reduce costs, or assist the trier of fact—and its length renders it impervious to the kind of review that this Court must perform in its role as the gatekeeper for expert opinion.

If the Court does not strike Dr. Quackenbush's report altogether, Blue Spike asks the Court, in the alternative, (1) to order a vastly truncated report if Audible Magic wishes to continue relying on Dr. Quackenbush's opinions, (2) to order Audible Magic to specify which portions of the report it will rely on at trial, (3) to give Blue Spike extra time to depose Dr. Quackenbush, (4) to provide Blue Spike an extra 30 days to respond to the report, and (5) to order any other relief the Court sees fit to ensure that the proceedings remain fair and reasonable.

Respectfully submitted,

 /s/ Randall T. Garteiser
Randall T. Garteiser
  Lead Attorney
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Christopher S. Johns
  Texas Bar No. 24044849
Kirk J. Anderson
  California Bar No. 289043
Molly A. Jones
  California Bar No. 301419
GARTEISER HONEA, P.C.
218 N. College Avenue
Tyler, Texas 75702
(903) 705-7420
(888) 908-4400 fax

**Counsel for Blue Spike, LLC**

**Certificate of Service**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

/s/ Randall Garteiser