# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC,<br><br>　　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br><br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-499-MHS<br><br>(LEAD CASE)<br><br>JURY TRIAL DEMANDED |
| BLUE SPIKE, LLC,<br><br>　　　*Plaintiff*<br><br>v.<br><br>AUDIBLE MAGIC CORPORATION, ET AL.<br><br>　　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:12-CV-576-MHS<br><br>(CONSOLIDATED WITH 6:12-CV-499)<br>JURY TRIAL DEMANDED |

## AUDIBLE MAGIC'S OPPOSITION TO BLUE SPIKE'S EMERGENCY OPPOSED MOTION TO MODIFY THE SCHEDULING ORDER

Blue Spike's Motion to Modify the Scheduling Order should be denied:

- Audible Magic Corp. ("Audible Magic") served its opening report on invalidity on March 3, 2015.

- During the week of March 20th (three weeks later), the parties agreed that rebuttal reports would be due April 21st.  Ex. 1.[1]

- Audible Magic complied with the April 21st deadline and has served its rebuttal expert reports.

- Blue Spike waited until the very night that rebuttal expert reports were due in order to seek a month-long extension from the Court.  Dkt. 1938.

- The extension Blue Spike seeks is unworkable under the Court's schedule.

- Any "emergency" facing Blue Spike is of its own making, and thus the motion should be considered in due course under the procedures in the Local Rules.

I.      **Blue Spike Has Had Audible Magic's Validity Report for Seven Weeks**

The *only* reason that Blue Spike provides for needing more time for its validity rebuttal report is that Audible Magic's invalidity expert report is too long.[2]  *See, generally*, Dkt. 1938 at 1-2.  But **Audible Magic served that report seven weeks ago**.  If Blue Spike believed it needed more time, it could have approached Audible Magic with a reasonable request.  Instead, during the very middle of those seven weeks, Blue Spike proposed (and Audible Magic subsequently agreed) to set a rebuttal report deadline of April 21st.  *See* Ex. 1.  In other words, after having three weeks to review the very report that Blue Spike now complains about, Blue Spike agreed to serve rebuttal reports on April 21st.  *Id.*

---

[1]   All exhibits cited herein are attached to the Declaration of Alyssa Caridis, filed concurrently herewith.

[2]   Blue Spike filed a separate motion seeking to strike that report.  Dkt. 1939.  Audible Magic does not believe that motion has any merit, and will respond accordingly.

In addition, instead of raising any issue with Audible Magic's report in a timely fashion, Blue Spike remained silent until Friday, April 17th.  Only then did Blue Spike raise an issue with the length of the invalidity report.  Ex. 2.  And only the following day – just three days before the deadline – did Blue Spike claim, for the first time, that it needed a lengthy extension.  Ex. 3.[3]

## II.    Blue Spike's Proposed Extension Would Disturb Court-Mandated Deadlines

The Scheduling Order in this case is clear: extensions on discovery deadlines cannot affect "the trial setting, dispositive motions deadline, challenges to experts deadline, or pretrial submission deadline."  Dkt. 1332 at ¶8.  Blue Spike's requested extension would compromise these deadlines.  For example, the Court requires that before filing any dispositive motions (e.g. summary judgment, motions to strike experts, and *Daubert* motions), a party must file a letter brief.  *Id.* at ¶10.  The deadline to file such letter briefs is next Monday, April 27th.  Under Blue Spike's proposed extension, Audible Magic would not even have the benefit of seeing, let alone reviewing, Blue Spike's rebuttal reports before that deadline passes.  In addition, the deadline to file dispositive motions is June 5, 2015.  *Id.* at pg. 5.  But with Blue Spike's proposed extensions, rebuttal reports would not get served until May 21st.  This leaves a scant two weeks for the parties to 1) review those reports, 2) take expert depositions, 3) determine whether grounds exist

---

[3]    In addition, on April 21, 2015 at 8:30 p.m. CDT, counsel for Blue Spike sent an e-mail to Special Master McGovern seeking this same proposed extension.  Ex. 4 at 2.  By that e-mail, Blue Spike notified Audible Magic, for the first time, that Blue Spike intended to disclose an additional technical expert in order to respond to the invalidity report.  *Id.*; *see also* Dkt. 1938 at 2.  Blue Spike provides zero explanation for why it had to wait until the night that its rebuttal reports were due to retain an additional expert to write those very reports.

Moreover, that expert cannot have substantively started working on the report yet because, as Blue Spike notes, most of Audible Magic's prior art is designated under the protective order on account of it including proprietary source code of Audible Magic and its predecessor.  *Id.*  Thus, by Blue Spike's own admission, Dr. Papakonstantinou has not begun work on a rebuttal report, but only needs 30 days to draft that report.  Blue Spike fails to explain how its new expert can draft a rebuttal report in 30 days, but it could not draft a report in the seven weeks prior.  This discrepancy raises further issues with the true motivation behind Blue Spike's request for an extension.

to file a dispositive motion (ignoring that the deadline to file letter briefs had already passed), and 4) brief any potential issues.  Such a schedule is untenable.   Finally, pretrial disclosures are due on August 5th.  Therefore, there is no room to move the deadline for dispositive motions without disturbing pretrial disclosures and other pretrial deadlines.   The case schedule has already been extended numerous times, and thus to keep the case on track, it is imperative that the expert process proceed according to the schedule that has been set.

Audible Magic pointed out all of this to Blue Spike in correspondence from yesterday. *See* Ex. 4.  But instead of substantively responding to these issues, Blue Spike merely claims that its requested deadline will in no way impact the pretrial conference, ignoring the reality of the Court's schedule.  Dkt. 1938 at 2.

### III.    Blue Spike's Explanation for its Need for a 30-Day Extension on a Damages Rebuttal Report is Suspect

By Blue Spike's e-mail to Special Master Govern (Ex. 2 at 2), Audible Magic also learned that Blue Spike did not plan on serving its rebuttal damages report by the deadline either. Blue Spike never mentioned an issue with the damages rebuttal report in the days leading up to the deadline. *See, e.g*., Ex. 3.  Blue Spike claims that its firm "suffered a calendaring and distribution issue" with respect to Audible Magic's damages report on its counterclaims.  Dkt. 1938 at 2.  It is unclear what this means; the parties were clearly on notice that rebuttal reports were due on April 21st.  But what's more troubling is that this is not the first time that Blue Spike has missed a case deadline due to a claimed "calendaring issue" of its counsel.  *See* Dkt. 1736 at 5.  And, regardless, Blue Spike provides no justification why it now needs 30 days for a rebuttal damages report.

## IV.    Blue Spike's Proposed Extension Would Prejudice Audible Magic

Consistent with the case schedule, Audible Magic served its rebuttal reports on Tuesday, April 21st.  If Blue Spike's extension were granted, Blue Spike would then have the opportunity to review and improperly respond to those reports in its own rebuttal reports over the next thirty days.[4]   That is, through its strategic delay, Blue Spike is likely to try to "clean up" flaws with its opening report that have been raised.  In addition, Blue Spike has the benefit of seeing Audible Magic's rebuttal reports prior to the April 27th deadline to file letter briefs on dispositive motions (something Audible Magic would not have if Blue Spike's requested relief were granted).  And Blue Spike will have much more time to prepare for depositions of Audible Magic's experts on account of having received those rebuttal reports on time.  All of this is prejudicial.

Moreover, Audible Magic is prepared to resolve this litigation expeditiously.  Blue Spike chose to sue Audible Magic, and a large percentage of its customers, of infringement in this case.  Audible Magic has a strong conviction that those charges are meritless and is eager to clear its name before this Court.  Audible Magic is fully prepared to keep this case on the current schedule for dispositive motions and trial.  On the other hand, Blue Spike appears content to delay and drag out these proceedings.  Audible Magic should not have to wait for its day in Court because Blue Spike cannot abide by deadlines of its own choosing.

## V.    Blue Spike Has No Basis For The Extensive Prejudicial Delay That It Seeks

The basic facts set forth above, relating to the timing and substance of the present request, show that Blue Spike cannot have a proper basis for its requested 30-day extension.  In

---

[4]    The issues of validity and infringement are closely intertwined in this case – where Audible Magic contends the relevant portions of its accused products have not changed since before the filing date of the asserted patents. Accordingly, issues raised in Audible Magic's noninfringement rebuttal report may be germane to issues included in Blue Spike's validity rebuttal report.

addition, a review of the posture of this case and overarching case history further highlights the inappropriate nature of Blue Spike's request:

*First*, Blue Spike has been on notice of Audible Magic's invalidity theories, the prior art and supporting materials since Audible Magic's detailed May 2014 disclosures in its invalidity contentions.  Blue Spike took extensive depositions of the inventors of the prior art systems. There was nothing surprising or excessive about Audible Magic's invalidity report.  The report provides detailed explanations of the development history and salient points of the asserted systems, as relevant to the asserted claims, and provides citations to and discussion of the same evidence that Blue Spike was provided in the invalidity contentions.  Blue Spike should have been preparing its validity case long before receiving Audible Magic's report, and had ample opportunity to do so.  To be sure, (1) detailing the prior art systems, their conception and reduction to practice (which required synthesis of millions of pages of documents), (2) proving up invalidity for each element of the many asserted claims, based on such systems, publications and patents, (3) addressing obviousness combinations and (4) addressing additional arguments such as lack of enablement, written description, indefiniteness and derivation, required a relatively lengthy report.  But, it is certainly reasonable, given the complexity of the case and the burden of proof, and Blue Spike has had ample time to prepare its response.  In fact, the primary drafting process of Audible Magic's report itself took place over a seven-week period.  There is no reason that Blue Spike could not have responded in a similar timeframe.

*Second*, the case has not been particularly active in the last month and a half, and there are only two defendants left in the case (Audible Magic and Last.fm), who submitted a joint invalidity report.  Thus, this is not the situation of two years ago, where Blue Spike was litigating

against 40 or 50 defendants.  Blue Spike could and should have applied its resources to meet the deadline.

*Third*, Blue Spike's counsel overplays its purported resource constraints.  According to plaintiff's law firm's website, Garteiser Honea has at least nine attorneys, three legal interns and three advisors. http://ghiplaw.com/team/.  Its lead lawyers are experienced patent attorneys, who spent most of their legal careers at large intellectual property litigation firms, with extensive practice in the Eastern District of Texas.  They know the rules and the process.  The associate referenced in Blue Spike's motion, Mr. Brasher, left the firm nearly a month ago.  In fact, in a March 30th email, Blue Spike's counsel explained that it was taking steps to avoid any "calendaring mishap" given Mr. Brasher's departure.  Ex. 5.  Surely someone at the firm, beyond this single attorney, knew about something as important as Audible Magic's expert reports.

## VI.     Any "Emergency" Nature of Blue Spike's Motion is its Own Doing

As explained herein, Blue Spike – for whatever reason – elected to wait until the very night that expert reports were due before seeking an extension.  Because it decided to bring its motion at the last possible minute (instead of serving its reports), Blue Spike styled its present motion as an "emergency."  Respectfully, this is not a proper foundation for an emergency motion.

## VII.    Conclusion

Blue Spike's proposed extension would disturb this Court's pretrial deadlines and would prejudice Audible Magic.  And Blue Spike has failed to explain why it waited seven weeks to seek an extension on its rebuttal reports.  During the meet-and-confer on the present issue, Audible Magic offered Blue Spike an extension until Friday, April 24th to serve its rebuttal reports.  Audible Magic respectfully requests that the Court deny Blue Spike's motion and, in an

6

effort to further compromise, order that Blue Spike provide rebuttal reports by Tuesday, April

28th, and that Audible Magic (and for clarity only Audible Magic) have until Friday, May 1st to

file letter briefs on rebuttal reports; otherwise, Blue Spike should forfeit the right to provide

rebuttal opinions at trial.


Dated:  April 22, 2015


By:                                    /s/ Eric H. Findlay
                                       Eric H. Findlay (Texas Bar No. 00789886)
                                       Walter W. Lackey, Jr. (Texas Bar No. 24050901)
                                       FINDLAY CRAFT, P.C.
                                       102 N. College Ave., Suite 900
                                       Tyler, TX 75702
                                       Telephone:  (903) 534-1100
                                       Facsimile:   (903) 534-1137
                                       efindlay@findlaycraft.com
                                       wlackey@findlaycraft.com

                                       Gabriel M. Ramsey– *LEAD ATTORNEY*
                                       I. Neel Chatterjee
                                       ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                       1000 Marsh Road
                                       Menlo Park, CA 94025
                                       Telephone:  (650) 614-7400
                                       Facsimile:  (650) 614-7401
                                       gramsey@orrick.com
                                       nchatterjee@orrick.com

                                       Alyssa M. Caridis
                                       ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                       777 S. Figueroa St.
                                       Suite 3200
                                       Los Angeles, CA 90017
                                       Telephone:  (213) 629-2020
                                       Facsimile:  (213) 612-2499
                                       acaridis@orrick.com

                                       Christopher J. Higgins
                                       ORRICK, HERRINGTON & SUTCLIFFE, LLP

7

1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendants Audible Magic, Corp.

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served on April 22, 2015, with a copy of this document *via* electronic mail.

/s/ Eric H. Findlay
Eric H. Findlay