**Caridis, Alyssa**

| | |
|---|---|
| **From:** | Randall Garteiser <rgarteiser@ghiplaw.com> |
| **Sent:** | Saturday, April 18, 2015 9:01 AM |
| **To:** | Caridis, Alyssa; Andrew Perito; Reines, Edward |
| **Cc:** | AudibleMagic-BlueSpike; <bluespike@ghiplaw.com>; Eric Findlay; Walter Lackey; H Dutton |
| **Subject:** | Re: Late Production - Subject of Motion in Limine |

You sent your email confirmation with 10 minutes lead time and did not indicate lead counsel and local counsel would be on the call.

So we are now forced to do our meet and confer along with our other meet and confer on Tuesday (April 21) pertaining to the our Motion to Strike Audible Magic's invalidity reports, and then file our motion to compel since your client refuses to produce documents referenced in the document.

Additionally, Blue Spike will be requesting a month extension on the rebuttal deadline due to our experts availability and the issues surrounding Defendants' 3600 page expert report, please let us know if this is something the parties can agree too.



**Randall Garteiser** / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 17, 2015, at 2:24 PM, Randall Garteiser <rgarteiser@ghiplaw.com> wrote:

It is now April 17, and your client still has not produced the documents that Blue Spike requested (below) relating to its false positives and false negatives that Audible Magic captured and provided to IBM along with log files during the relevant period of infringement. This goes to whether Audible Magic's accused products "worked" when they said they did to invalidate the Blue Spike patents-in-suit. There are other reasons why the documents are relevant, including your client produced documents that it thought were relevant to this litigation on Feb. 23, possibly to rely upon at trial, and those documents reference other documents that are not good for your client that is choose, selectively, and methodically, to exclude from its production. This creates an obvious prejudice to Blue Spike.

Your client waited until February 23, 2015 to produce its agreements with IBM. These agreements came up in the Audible Magic deposition months ago, so obviously Blue Spike thought they were relevant. Under the IBM agreement, Audible Magic was forced to provide weekly updates to IBM. Those updates are relevant to this

1

case because it explains why the royalties rate Audible Magic had to pay IBM for licensing its technology to stop copyright infringement were so high but resulted in payments that were very low and the eventual termination of the IBM agreement.

In preparation for our meet and confer, please tell us why you didn't think they were relevant and were not produced previously?  Video content recognition has always been relevant to this litigation.
Why did your client produce these agreements after it said it had produced all of its relevant documents on our prior meet and confer call with the Special Master that lead to your client producing the additional payment modifications to the Muscle Fish and Audible Magic purchase agreement.  Blue Spike reserves its rights.

Due to the impending close of discovery on April 21, Blue Spike needs to meet and confer today between 4-6 p.m. Central, or Tuesday between 11-1 pm Central.   Please advise and we will circulate a call-in number.



**Randall Garteiser** / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 13, 2015, at 4:08 PM, Randall Garteiser <rgarteiser@ghiplaw.com> wrote:

Dear Counsel for Audible Magic:

This issue is far from resolved, and is going to possibly require Blue Spike serving a third party subpoena on IBM, if Audible Magic does not immediately agree to provide a Rule 30(b)(6) declarant to testify on the IBM related software licenses for identification of video content.  It seems these were entered into around August 28, 2008 and appears to have ended on December 22, 2012 with the signature of Vance Ikezoye.  This license was in place during the filing of this lawsuit with Blue Spike, but over two years later your client now produced it on the eve of expert reports, February 23, 2015.  See AUDMAG02631273-1287; AUDAMAG02631271-272.

It indicates that even IBM's video software was getting false positives and false negatives and this is what Audible Magic was using to identify video content for "its customers."  It confirms that Audible Magic never had any video content recognition software system working prior to 2008 when Audible Magic announced its was going to partner up with IBM, because they couldn't do it themselves.

Blue Spike reserves its rights.  It seems just unimaginable that Audible Magic would not produce these three IBM agreements related to Audible Magic's license to IBM's "software for the detection of unauthorized copies of videos that IBM will provide to AM in Object Code form."  AUDMAG02631273-1287.  We need the copy signed by Ikezoye immediately.  In the native copy of the agreement, Page 1 of the IBM and Audible Magic agreement indicates: "Whereas, AM would like to license the IBM software to provide a service to its customers for the identification of copies of registered videos."  Native File of Software License Agreement No. W0853761 and License No. L085492.

Separately, under IBM and Audible Magic Agreement No. W0753082, Blue Spike requests that by April 16, 2015, that Audible Magic produce all correspondence the Vance Ikezoye indicated he would "Provide IBM with a weekly written report stating: i) the number of videos evaluated during the prior week; . . . v) the number of false positives; and vi) the number of false negatives."  AUDMAG02631249.  Blue Spike also requests Audible Magic produce the log files it provided to IBM as Audible Magic indicated it would do every week.  AUDMAG02631249.   If these files do not exist, please advise by close of business on April 13, 2015 so Blue Spike can proceed accordingly.



**Randall Garteiser** / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 6, 2015, at 5:29 PM, Caridis, Alyssa <acaridis@orrick.com> wrote:

Randall –

Your e-mail fails to identify by Bates number any documents that you claim were produced untimely.  It is impossible to have a meaningful conversation about Blue Spike's "dispute" without an identification of what documents are at issue.  I repeat my request that you identify, with specificity, the documents you are taking issue with.

Your e-mail also fails to acknowledge that fact discovery is still open (at your request).  At this point, it is unclear what Blue Spike is even considering "untimely."  I am not aware of any user manuals that were even produced this year – let alone in the last few weeks.  But, of course, if you would identify an actual document by Bates number we can hopefully have a substantive conversation.

Audible Magic's production has been substantially complete for almost a year. Indeed, by May 2014, Audible Magic had produced 99.8% of all of its documents in this litigation. If, at any point since that time, Blue Spike had a good faith belief that Audible Magic's production was deficient, it could have raised those issues any time.

Finally, Blue Spike's 11,000 page production made on February 24 consisted primarily of license agreements, drafts of license agreement, and e-mails from Blue Spike's counsel. Is it your position that those files were not kept electronically? Please confirm. Regardless, the point of my e-mail is that Blue Spike produced thousands of pages on the eve of expert reports – a point your response ignores.

Alyssa

---

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Monday, April 06, 2015 2:21 PM
**To:** Caridis, Alyssa
**Cc:** AudibleMagic-BlueSpike; <bluespike@ghiplaw.com>; Eric Findlay; Walter Lackey
**Subject:** Re: Late Production - Subject of Motion in Limine

ESI Order wasn't violated as the files were not kept in electronic form to begin with, so it was your client's obligation to separate it if they choose to do so, which they did.

With respect to untimely produced Audible Magic documents, an example is Audible Magic's production of a user's manual, when it previously indicated it did not have a user's manual at its Rule 30(b)(6) deposition on the topic of user manuals for the accused products. This is unacceptable and raises concerns about the searches actually performed by Audible Magic when a user's manual doesn't show up until 7 months later.



Randall Garteiser / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 6, 2015, at 12:13 PM, Caridis, Alyssa <acaridis@orrick.com> wrote:

Randall,

Please let us know which documents (by Bates number) were produced that you are taking issue with. As far as I am aware, most of the documents produced in the last few months were produced either 1) at the specific request of Blue Spike's counsel (e.g. source code print outs and financial restructuring documents) and/or 2) upon an express agreement with Blue Spike counsel and the Special Master (e.g. the non-relevant e-mails regarding the restructuring of Muscle Fish payments). We cannot take a position on your request until we understand what

documents you are referring to, when those documents were produced, and whether those documents indeed justify further action.

Furthermore, I will note that at your specific insistence, the schedule in this case keeps fact discovery open until the end of April.  During a teleconference with the defendants and the Special Master late last year, Defendants specifically raised the issue of closing fact discovery prior to opening expert reports. You refused.  While Audible Magic produced the vast majority of documents in this case in May of last year (consistent with the local rules of this Court) its investigation is still ongoing and, as is its right – and indeed its obligation – it continues to produce a few handful of documents as they are discovered and/or requested.  You simply have no basis to call any production at this point late.

Also, please indicate when Audible Magic "stated definitely that it had produced all of its documents." I'm not aware of such a communication.

Finally, Blue Spike produced over 11,000 pages of damages-related documents the week that Audible Magic's opening damages report was due.  The load file included in that production violated the Court's ESI order.  Blue Spike ignored Audible Magic's request to correct this issue (see my e-mail of February 26), forcing Audible Magic to expend considerable resources fixing the issue itself.  If you are now contending that a few hundred (unspecified) pages of production serves as an undue burden to Blue Spike – what do you believe is the impact of Blue Spike's production of 11,000 highly-relevant pages on licenses and license negotiations on the eve of expert reports?

Please respond by close of business Wednesday.

Alyssa

---

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Monday, April 06, 2015 8:33 AM
**To:** AudibleMagic-BlueSpike
**Cc:** <bluespike@ghiplaw.com>
**Subject:** Late Production - Subject of Motion in Limine

It appears Audible Magic produced several hundreds of documents after it stated definitely that it had produced all of its documents.  Does Audible Magic want to preclude these documents from being used as exhibits by Audible Magic, or do you want to allow Blue Spike the opportunity to supplement its infringement contention expert report later after expert rebuttal reports as we continue to sort through this untimely late production that was relevant and responsive to Rule 30(b)(6) deposition topics and thus has a created an undue prejudice on Blue Spike.

Blue Spike reserves its rights, and would like a response by Audible Magic by Wednesday, April 8, 2014 by the close of business.



**Randall Garteiser** / Partner

888.908.4400 x100 / rgarteiser@ghiplaw.com
218 N College Ave, Tyler, TX 75702
44 N San Pedro, San Rafael, CA 94903
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



**NOTICE TO RECIPIENT |** This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

**NOTICE TO RECIPIENT |** This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com