**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § § § | Civil Action No. 6:12-CV-499-MHS |
| *Plaintiff*, | § | |
| v. | § § | (LEAD CASE) |
| TEXAS INSTRUMENTS, INC. | § § | |
| *Defendants*. | § § | JURY TRIAL DEMANDED |
| | § | |
| BLUE SPIKE, LLC, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 6:12-CV-576-MHS |
| AUDIBLE MAGIC CORPORATION, ET AL. | § § § | (CONSOLIDATED WITH 6:12-CV-499) JURY TRIAL DEMANDED |
| *Defendants*. | § § | |
| | § § | |
| BLUE SPIKE, LLC, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 6:12-CV-594 |
| CBS CORP., and LAST.FM LTD., | § § | (CONSOLIDATED WITH 6:12-CV-499) JURY TRIAL DEMANDED |
| *Defendants* | § § | |
| | § | |

**<u>DEFENDANTS' OPPOSITION TO BLUE SPIKE'S MOTION TO STRIKE EXPERT
REPORT OF DR. SCHUYLER QUACKENBUSH REGARDING INVALIDITY</u>**

# TABLE OF CONTENTS

**Page**

I.    THE FACTS OF THIS CASE REQUIRE A DETAILED INVALIDITY ANALYSIS ............................................................................................... 2

    A.    The Report Covers 32 Asserted Claims ................................................. 3

    B.    The Report Must Establish that Various Systems Qualify as Prior Art ................. 3

    C.    The Report Analyzes The Validity of Each Asserted Claim Against Each Reference ................................................................................ 6

    D.    Blue Spike's Attempts to "Shock" the Court with Irrelevant "Facts" Should be Disregarded ............................................................... 7

II.   EXPERT REPORTS ARE REQUIRED TO BE DETAILED AND COMPREHENSIVE ........................................................................... 8

III.  BLUE SPIKE'S CITED CASES ARE IRRELEVANT TO THE ISSUES AT HAND ...................................................................................... 10

    A.    Blue Spike Misunderstands the Law Regarding Expert Admissibility .............. 10

    B.    Blue Spike's Arguments that the Report violates the Purpose of Rule 26 are Unfounded ................................................................... 12

IV.   BLUE SPIKE'S REQUEST IS UNTIMELY AND THEREFORE IMPROPER ........... 13

V.    CONCLUSION ............................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brandon v. The Sage Corp.*,
   Case No. 5:12-cv-1118, 2014 U.S. Dist. LEXIS 34864 (W.D. Tex. March 18, 2014) ..................................................................................................................13, 14

*Chiasson v. Zapata Gulf Marine Corp.*,
   988 F.2d 513 (5th Cir. 1993) ...............................................................................13

*Clark v. Prudential Ins. Co. of Am.*,
   289 F.R.D. 144 (D.N.J. 2013) .............................................................................11

*Coane v. Ferrara Pan Candy, Co.*,
   898 F.2d 1030 (5th Cir. 1990) .............................................................................13

*Hopwood v. Texas*,
   236 F.3d 256 (5th Cir. Tex. 2000) .........................................................................3

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008) ...........................................................................10

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002) .............................................................................5

*LaBauve v. Olin Corp.*,
   231 F.R.D. 632 (S.D. Ala. 2005) .........................................................................12

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011) ...........................................................................................4

*In re NTP*,
   654 F.3d 1279 (Fed. Cir. 2011) .............................................................................5

*Ring Plus, Inc. v. Cingular Wireless LLC*,
   637 F. Supp. 2d 423 (E.D. Tex. 2009) ..................................................................9

*Robinson v. United States (In re Katrina Canal Breaches Consol. Litig.)*,
   2009 U.S. Dist. LEXIS 130478 (E.D. La. Dec. 29, 2009) ..................................11

*Sierra Club v. Cedar Point Oil Company, Inc.*,
   73 F.3d 546 (5th Cir. 1996) ............................................................................3, 12

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
   2010 U.S. Dist. LEXIS 10257 (E.D. Tex. Feb. 5, 2010) ....................................10

## TABLE OF CONTENTS
(continued)

**Page**

*SynQor, Inc. v. Artesyn Techs., Inc.*,
  2011 U.S. Dist. LEXIS 91693 (E.D. Tex. Aug. 17, 2011) ........................................9

*United States v. Procter*,
  356 U.S. 677 (1958)........................................................................................13

*Vega v. Ford Motor Co.*,
  2013 U.S. Dist. LEXIS 169018 (W.D. Tex. Mar. 27, 2013) ..................................10

**Federal Statutes**

35 U.S.C. § 102(a) and (b)........................................................................................6

35 U.S.C. § 102(g) ....................................................................................................5

**Rules**

Fed. R. Civ. P. 26 ............................................................................................ *passim*

Blue Spike LLC's Motion to Strike Expert Report of Dr. Schuyler Quackenbush Regarding Invalidity (Dkt. 1939) ("Motion") ignores the realities of complex patent litigation, is legally unsupported, and is factually flawed.[1]  It must be denied.  Blue Spike's Motion – which was only properly filed the day after the deadline to serve rebuttal reports – appears to simply be an excuse by Blue Spike to cover-up its failure to timely prepare its own reports.  The absurdity of Blue Spike's Motion is underscored in the proposed order submitted by Blue Spike where it asks this Court to limit Defendants to an invalidity expert report "that is no more and [*sic*] 20-pages."  Dkt. 1939-4 at 2.  If Blue Spike believes that an expert report on the validity of 32 claims across 4 patents should only take 20 pages then it must have a fundamental misconception about the purpose of expert reports and the nature of patent litigation.

Dr. Quackenbush's Report ("the Report") sets forth Audible Magic Corp.'s ("Audible Magic") and Last.fm Ltd.'s (collectively "Defendants") contention that the 32 claims at issue in this case are invalid pursuant to a number of legal theories.  Much of the prior art asserted by Defendants in this case is prior art systems (particularly those of Audible Magic and its predecessor).  Thus, Dr. Quackenbush – in order to lay out the facts necessary to carry the "clear and convincing" burden at trial – was required to 1) detail the prior art systems, their conception and reduction to practice, and the inventors' diligence in reducing the inventions to practice, 2) detail public disclosures, offers for sale, and sales of the inventions, 3) provide evidence rebutting plaintiff's repeated assertions that, purportedly, none of the prior art systems actually "worked," 4) prove up invalidity for each element of each asserted claim, based on such systems,

---

[1]    In addition, Blue Spike's motion can only be characterized as a "dispositive motion", and it was therefore required to file a letter brief before filing its present motion, pursuant to paragraph 10 of the scheduling order.  Dkt. 1332.  Defendants informed Blue Spike of this, but Blue Spike refused to withdraw or otherwise respond.  *See* Caridis Decl., Ex. 1.  Thus, to the extent this Court agrees that the present motion should have first been introduced in a letter brief, Defendants request reimbursement of their time responding here.

publications, and patents, 5) address obviousness combinations, and 6) cover additional arguments such as lack of enablement, written description, indefiniteness and derivation.  The Report's length is thus necessary to provide the detailed analysis and opinions required by Rule 26 in order to adequately cover this large amount of material.[2]

The Fifth Circuit has a favorable view toward this type of comprehensive, well supported report.  *See, e.g.*, *Hopwood v. Texas*, 236 F.3d 256, 267 (5th Cir. Tex. 2000) ("As the foundation for his trial testimony, Professor Wellborn presented a long and comprehensive expert report which was followed by a supplemental expert report"); *Sierra Club v. Cedar Point Oil Company, Inc.*, 73 F.3d 546 (5th Cir. 1996) (stating that expert reports should be "detailed and complete" so as "to avoid the disclosure of 'sketchy and vague' expert information.").  Blue Spike however ignores this fact and instead cherry picks sound bites out of cases that are not relevant to expert reports, patent litigation, or the dispute at hand.

Finally, Blue Spike attempts to persuade this Court with "factual" anecdotes related to the length of the Report (again without ever discussing the substance).  These anecdotes are irrelevant, misleading, and inaccurate.

For the foregoing reasons, as further explained below, Defendants respectfully request that Blue Spike's Motion be denied in its entirety.

## I.    THE FACTS OF THIS CASE REQUIRE A DETAILED INVALIDITY ANALYSIS

Blue Spike's Motion ignores the realities of this case:  thirty-two claims across four patents are at issue, much of the asserted prior art is prior systems, and invalidity must be proven by clear and convincing evidence for every element of every asserted claim.

---

[2]    Blue Spike's Motion is telling in what it does not say.  Blue Spike does not claim that it cannot understand the Report.  It does not claim that the Report is convoluted or lacking in substance, nor that it is premised on technical or legal inaccuracies.  Instead, Blue Spike's *only* argument is that the report is objectively too long.

In order to prevail on its claims of invalidity, Defendants are required to show that the asserted claims are invalid by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243 (2011). Defendants therefore produced a detailed report – articulating their clear and convincing evidence of invalidity – in accordance with Rule 26, which requires that an expert report include a "<u>complete statement</u> of all opinions the witness will express and <u>the basis and reasons for them</u>." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

### A. The Report Covers 32 Asserted Claims

Under the Court's scheduling order, the trials against the Supplier Defendants are to include the issue of validity of *all* claims asserted against a given supplier's customers.[3] So, although Blue Spike only accuses Audible Magic of infringing ten claims, Audible Magic is required to present evidence of the invalidity of all 32 claims asserted against its customers.

In order to streamline this case, Audible Magic has requested – several times – that Blue Spike limit the number of claims that it is asserting against Audible Magic's customers, in order to reduce the scope of the overall dispute. *See, e.g.*, Caridis Decl., Ex. 2. Blue Spike has repeatedly refused. The Report could be drastically reduced in size if Blue Spike would agree to this simplification. Indeed, it is not clear how Blue Spike can have a good faith basis to assert certain claims against Audible Magic's customers where Blue Spike voluntarily dropped the same claims against Audible Magic. Regardless, Audible Magic is required to try the validity of all customer claims; the Report must cover all 32 claims.

### B. The Report Must Establish that Various Systems Qualify as Prior Art

As Blue Spike has known for well over a year, Defendants' invalidity claims are largely based on the prior art systems of Audible Magic and its predecessor. In fact, Blue Spike has

---

[3]   This is necessary in order to avoid serial, multiple validity trials against each of the customer defendants.

repeatedly challenged Defendants' invalidity claims by arguing that those very systems cannot constitute prior art because they "didn't work" and were "poorly defined." *See, e.g.*, Caridis Decl., Exs. 3 and 4. Accordingly, before even analyzing any specific claim element from the asserted patents, it is first necessary to qualify these prior systems as prior art.

Proving that past systems qualify as prior art requires an intensive process. For example, Defendants contend that several past systems qualify as prior art under 35 U.S.C. §102(g). Under that subsection, a claim is invalid if the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it before the applicants' invention date. 35 U.S.C. §102(g)(2) (pre-AIA). Thus a device constitutes prior art under Section 102(g)(2) if it was conceived of and reduced to practice before the filing date of the patent. *Id.* But in order to prove the required conception and reduction to practice, the inventor's testimony must be corroborated by other evidence – most often in documentary or physical form. *See, e.g.*, *In re NTP*, 654 F.3d 1279, 1291 (Fed. Cir. 2011) ("An inventor cannot rely on uncorroborated testimony to establish a prior invention date. It has long been the case that an inventor's allegations of earlier invention alone are insufficient--an alleged date of invention must be corroborated") (internal citations omitted). Thus, it is not enough for Defendants to make an unsupported claim that a particular device shows invention prior to the filing date. They must show conception, reduction to practice and diligence – and all of that must be corroborated by documentary, physical, and/or circumstantial evidence. *Id*; *see also In re Jolley*, 308 F.3d 1317, 1328 (Fed. Cir. 2002) ("corroboration is required to support an inventor's testimony regarding his reasonable diligence in pursuit of the invention.").

In addition, Defendants also contend that several past systems qualify as prior art under pre-AIA 35 U.S.C. §102(a) and (b). Again, under these subsections, it is not merely enough to

show that the systems met every element of every claim.  Instead, additional facts such as "public use," "known or used by others," or "on sale in the United States" must first be established.  35 U.S.C. §102(a), (b) (pre-AIA).

Of course, as is often the case, devices and prior systems are not perfectly documented in a single place.  Meeting the burden of establishing these "threshold" requirements entails culling and synthesizing hundreds of files of source code and hundreds of thousands of pages of documents – something that the Report successfully does.  Indeed, after providing sections on general legal and technical background, the Report goes through each asserted prior art system and carefully sets forth the necessary clear and convincing evidence which shows that the system qualifies as prior art.  This, understandably, is not a trivial undertaking.  But Defendants took great care to carefully spell out (as is their obligation) how each reference qualifies as prior art.

In particular, each of the overview sections of the prior art systems sets forth the development history of the system, including specific references to documents and their dates, so that the conception of each element, diligence by the inventors and ultimate reduction to practice of each element, is established and firmly dated.  Similarly, the commercial history of these systems is addressed in the same manner, with description of documents showing the customers, partners, investors and members of the public to whom the systems were disclosed, offered for sale, or sold.  Further, Dr. Quackenbush presents fully supported demonstrations of the systems, including details of how the software was prepared, evidence that such was generated from accurately dated source code, as well as displays and technical "walk throughs" of the actual operation of the software.

Dr. Quackenbush and Defendants went to great lengths to make sure that these descriptions were cogent, not duplicative and relevant to the claims.  In particular, the detailed

factual overviews of the systems were organized into modules addressing discrete functionalities relevant to the asserted patents.  For example, for the prior art "Clango" system, there was an introductory section detailing the public disclosure, offers for sale, and sale of the products, followed by descriptive modules documenting the technical history according to relevant categories of functionality, such as: (1) "Overview of Development History," (2) "The Analysis Of Signals And Generation Of Feature Vectors/Fingerprints," (3) "The Storage of Feature Vectors/Fingerprints In A Database," (4) "The Comparison Of Unknown and Known Features Vectors/Fingerprints," (5) "Counting Matches And Generating Reports Of Matches," (6) "Application Of A Cryptographic Protocol, Hash Or Digital Signature To A Feature Vector/Fingerprint And Storage Of The Feature Vector/Fingerprint," and (7) "Distributing A Signal Based On The Comparison Between Feature Vectors/Fingerprints."  Having the overarching factual description all in one place is an efficient approach, given the volume of evidence and the high evidentiary burden that Defendants bear.

The analysis required substantial description and citation of evidence.  That Blue Spike may not like that Defendants have ample evidence supporting that analysis is not grounds to strike a report.

## C.  The Report Analyzes The Validity of Each Asserted Claim Against Each Reference

After Dr. Quackenbush qualifies the relevant systems as prior art, he then undertakes the task of mapping each claim element of each asserted claim in each asserted patent to each prior art system.  The Scheduling Order provides for Defendants to use 16 prior art references…16 references times 32 claims is a lot of analysis.  In order to cut down on as much repetition as possible (some of the claims share similar elements), the Report includes many cross-references (by specific section) wherever possible.  In other words, the Report is not a rote copy-paste job.

The analysis of the asserted claims occurring later in the report refer back to the cogent factual narrative as support for particular functions (such as creating the fingerprint, storing it in a database, comparing fingerprints to find "matches" etc.) and further highlight particularly salient documents and evidence anticipating individual claim elements, on an element-by-element basis. Where claims required obviousness combinations, the same format was followed, including discussion of the salient portions of the documents showing the elements to be combined, as well as materials supporting the motivation and reasons why it would be obvious to combine such references. In order to carry its burden, Audible Magic had to carry out this process, element-by-element, for the 32 asserted claims, including all anticipation points and obviousness combinations.

Obviously, this is a detailed process, but a necessary one in order to disclose Dr. Quackenbush's opinions that the asserted claims are invalid by clear and convincing evidence. Indeed, this basic format – first introduce systems and then analyze individual claim elements – is the same format that Blue Spike's expert, Dr. Tewfik, used in his opening report. A table of contents for the Report, attached as Exhibit 5 to the Caridis Declaration, shows the cogent, organized overall structure of the report, which is typical of expert reports submitted in patent cases in this and many other Courts. It is difficult to understand how else Blue Spike would envision Defendants present this evidence (much less how Blue Spike expects such detailed analysis to consist of only 20 pages).

**D.**     **Blue Spike's Attempts to "Shock" the Court with Irrelevant "Facts" Should be Disregarded**

Without wanting to dwell on complete red-herrings, Defendants feel the need to address the colorful (irrelevant) anecdotes that Blue Spike includes in its Motion. Blue Spike's entire Motion is based on the number of pages in the Report. Of course, Blue Spike fails to mention

that the Report is double spaced (when Blue Spike's own expert reports are single spaced) and

that the Report includes hundreds of screen shots and figures (illustrating the prior art systems).[4]

Blue Spike also claims that the Report would weigh 144 pounds.  Dkt. 1939 at 2.  But a 9.5-by-

11 inch ream of 20-pound paper does not weigh 20 pounds – it weighs five.  Suffice it is to say

that such irrelevant anecdotes are especially disconcerting when supported by inaccurate facts.

## II.   EXPERT REPORTS ARE REQUIRED TO BE DETAILED AND COMPREHENSIVE

Federal Rule 26 requires that an export report include a "complete statement of all

opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P.

26(a)(2)(B) (emphasis added).  *See, e.g.*, *Ring Plus, Inc. v. Cingular Wireless LLC*, 637 F. Supp.

2d 423, 429-430 (E.D. Tex. 2009) (citing Fed. R. Civ. P. 37(c)) ("Federal Rule of Civil

Procedure 26(a)(2)(B) provides that an expert report must contain a complete statement of all

opinions to be expressed and the basis and reasons supporting them.  If a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless."); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011

U.S. Dist. LEXIS 91693, 46 (E.D. Tex. Aug. 17, 2011) ("Fed. R. Civ. P. 26(a)(2)(B)(i) requires

an expert to provide a report that gives 'a complete statement of all opinions the witness will

express and the basis and reasons for them.' Conclusory opinions in expert reports … do not

satisfy these requirements and properly lead to the exclusion of the expert's testimony.").

Blue Spike would have Defendants ignore this rule and provide hand-waiving conclusory

---

[4] The report was prepared as double-spaced, as that was the format used by Dr. Quackenbush and it was ultimately considered to be more readable, and left room for notation in the margins. Upon Blue Spike's request, at any point along the way, Defendants would have been happy to provide a single spaced version, to facilitate Blue Spike's preparation of a response or for portability.  Instead, Blue Spike elected to file this motion the day after its rebuttal reports were due.

allegations (apparently confined to 20 pages).  But conclusory, unsupported allegations are exactly the thing that Rule 26 was enacted to avoid.  For example, the Federal Circuit has noted that "[c]onclusory expert reports, eleventh-hour disclosures, and attempts to proffer expert testimony without compliance with Rule 26 violate both the rules and principles of discovery, and the obligations lawyers have to the court.  Exclusion and forfeiture are appropriate consequences to avoid repeated occurrences of such manipulation of the litigation process." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008).  This is a view echoed by Courts in this state.  *See, e.g., Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 U.S. Dist. LEXIS 10257, 25-26 (E.D. Tex. Feb. 5, 2010) (rev'd on other grounds) ("This Court holds that Dr. Sebastianelli may not testify beyond the scope of his expert report. … Dr. Sebastianelli must have set forth a minimal basis in his expert report as to why each element that is not met by literal infringement is met by the doctrine of equivalents. To otherwise allow Dr. Sebastianelli to testify at trial on these elements without properly disclosing its position would unfairly prejudice Arthrex and defeat one of the primary purposes that the expert report serves."); *Vega v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 169018 (W.D. Tex. Mar. 27, 2013) ("Expert reports 'must be detailed and complete' as 'the purpose of the reports is to avoid the disclosure of sketch and vague expert information.'").  In fact, it would be impossible for Defendants to satisfy their Rule 26 obligations if Blue Spike's suggested 20-page limit were set – as Defendants would have less than a page to detail its invalidity contentions for each of the 32 claims at issue.

Blue Spike's entire motion is premised on the faulty conclusion that the size of the Report automatically makes it improper.  As discussed more fully below, Blue Spike's claims in this regard lack legal support.  *See, infra* at Section III.  Moreover, Courts have recognized (in various contexts) that proper, detailed expert reports can indeed be quite lengthy (even in the

-9-

thousands of pages), particularly where the issues are complex or there are many contested issues.  *See, e.g.*,  *Robinson v. United States (In re Katrina Canal Breaches Consol. Litig.)*, 2009 U.S. Dist. LEXIS 130478 (E.D. La. Dec. 29, 2009) ("Dr. Bea, the expert at issue in this motion, filed several expert reports consisting of <u>many thousands of pages</u> including illustrations in addition to many more thousands of pages of reliance materials. Dr. Bea's <u>testimony was very encompassing</u> and principally was directed to the mechanisms that caused the flooding of plaintiffs' homes") (emphasis added); *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 187 (D.N.J. 2013) ("Although the analysis can end here, the Court will address the question whether the proposed approach to assessing damages meets the commonality and predominance requirement. That issue is heavily contested, as is evident by the <u>thousands of pages of expert reports</u> and exhibits.") (emphasis added).

## III.   <u>BLUE SPIKE'S CITED CASES ARE IRRELEVANT TO THE ISSUES AT HAND</u>

### A.   <u>Blue Spike Misunderstands the Law Regarding Expert Admissibility</u>

Blue Spike first contends that Dr. Quackenbush's *report* should be excluded as inadmissible.  Dkt. 1939 at 2.  Defendants are unaware of any authority or situation where an expert *report* in a patent case – regardless of its length – is considered *admissible evidence*. Indeed, the cases that Blue Spike cites in support of this argument have no relevance to the wholesale admissibility of an expert *report* – rather they challenge the qualifications or specific opinions of a challenged expert.  For example, in *Romero v. Wyeth Pharms., Inc.*, the Court struck portions of a proposed expert's testimony because the Court concluded that the expert did not possess appropriate technical qualifications to proffer certain opinions.  Case No. 1:03-cv-1367, 2012 U.S. Dist. LEXIS 64130, *12-13 (E.D. Text. April. 12, 2012) (product liability case). In *Kumho Tire Co. v. Carmichael*, the Court affirmed a District Court's exclusion of certain opinions where, *inter alia*, the District Court "found unreliable the methodology employed by

-10-

the expert in analyzing the data." 526 U.S. 137, 153 (1999) (product defect case).

Blue Spike also posits that the Court may make a blanket assumption based on the size of an expert report. But in the only case that Blue Spike cites in support of this proposition, the challenged expert reports "were so incomplete and insubstantial that they failed to meet the requirements of the discovery order." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (case involving a violation of the Clean Water Act). The challenged expert reports in *Sierra Club* included a "one-and-a-half page outline listing [the expert's] 'points of testimony'" and several "one paragraph descriptions" of other experts' proposed testimony. *Id.* Thus, the Court examined whether the disclosure gave *enough detail* to the opposing party – it did not suggest a blanket rule that the size of a report is an indicator of acceptability.

Blue Spike concludes its section about "admissibility" of the Report by claiming that a long report does not assist the trier of fact. Dkt. 1939 at 3-4. First, the jury never sees the expert reports in a patent case. The Report merely outlines Dr. Quackenbush's proposed testimony. Furthermore, this is just another example of Blue Spike making a generalized, unsupported statement based on specific holdings in inapposite cases. In *Liberty Media Corp. v. Vivendi Universal, S.A.*, the court **did not strike** the relevant expert report. 874 F.Supp.2d 169, 174 (S.D.N.Y. 2012). Indeed, the Court noted that it "trust[s] plaintiffs' counsel will exercise discretion in allocating trial time and will only present the facts necessary to support [the expert's] opinion." *Id.* And in *Avocent Redmond Corp. v. Rose Electronics*, the admissibility of expert opinions was not even at issue. Case No. C06-1711RSL, 2012 WL 5495230 (W.D. Wash. Nov. 13, 2012). There, in support of a motion for summary judgment, the patentee cited to hundreds of pages of charts attached to an expert report. *Id.* Because the patentee

-11-

indiscriminately attached excessive evidence to its motion, the Court declined to parse through those pages to determine whether patentee had made a proper showing for summary judgment. *Id*.[5]  This has *nothing* to do with the length of an expert disclosure under Rule 26, and Blue Spike should be admonished for suggesting otherwise.

### B.      Blue Spike's Arguments that the Report violates the Purpose of Rule 26 are Unfounded

Blue Spike's next legal fallacy is that the Report violates the purpose of Rule 26.  In support of this proposition, Blue Spike cites a string of cases, all but one of which has nothing to do with the admissibility of an expert report (let alone the length of an expert report).  *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513 (5th Cir. 1993) (concerning admissibility of a surveillance videotape in an action involving negligence and unseaworthiness of a vessel); *Coane v. Ferrara Pan Candy, Co.*, 898 F.2d 1030 (5th Cir. 1990) (ruling on sanctions imposed in a personal injury lawsuit after plaintiff repeatedly failed to comply with orders to compel discovery); *Brandon v. The Sage Corp.*, Case No. 5:12-cv-1118, 2014 U.S. Dist. LEXIS 34864, *11-15 (W.D. Tex. March 18, 2014) (<u>denying</u> a motion to strike expert testimony where plaintiff failed to furnish an expert report, holding that "attorneys providing expert testimony solely on the topic of their fees typically do not provide expert reports"); *United States v. Procter*, 356 U.S. 677, 682 (1958) (concerning admissibility of a grand jury transcript).

In the one case that Blue Spike cites that deals with an expert report, *Cook v. Town of Colorado City*, the Court was asked to determine the sufficiency of plaintiff's expert disclosures under Rule 26(a)(2)(C). Case No. 10-08105-PCT-JAT, 2013 WL 551508 (D. Ariz. Feb. 13, 2013).  In those disclosures, plaintiff offered a generic description about what each of its medical

---

[5]    Blue Spike also cites to *LaBauve v. Olin Corp.*, which similarly had nothing to do with expert reports.  231 F.R.D. 632 (S.D. Ala. 2005) (order on motion for class action certification). Much like in *Avocent*, the Court in *LaBauve* was commenting on the parties' indiscriminate submission of excessive evidence in relation to a specific motion.  *Id.* at 641-642.

witnesses may testify about.  *Id.* at *11-12.  The Court noted that "this disclosure advises the reader that the witness will have opinions in certain areas, but fails to state what the opinions are, and the factual basis for those opinions."  *Id.* at *11.  The Court went on to conclude that "[n]ot only do the disclosures say nothing about the opinions to which the witness intends to testify, but they do not even attempt to state facts supporting such opinions."  *Id.* at *12.   In other words, the expert reports at issue in *Cook* did not provide enough detail about the proposed expert's opinions.  *Id.*  The same cannot be true here.

As explained above, the purpose of expert disclosures under Rule 26 is to provide full and fair disclosure of the opinions of a party's experts and the detailed bases for those opinions. *See supra* at Section II.  Instead of acknowledging this fact, Blue Spike attempts to obfuscate the issue by cherry-picking sound bites that it thinks are helpful to its case – regardless of the holdings of those cases or the applicability of the statements to the facts at hand.  Blue Spike's Motion should be denied.

## IV.    <u>BLUE SPIKE'S REQUEST IS UNTIMELY AND THEREFORE IMPROPER</u>

Defendants served the Report on Blue Spike on March 3, 2015.  Blue Spike waited for seven weeks to bring the present issue before the Court – on the night that rebuttal reports were due.  Indeed, Blue Spike did not even notify Defendants that it believed there was anything wrong with the Report until four days prior to the deadline to serve rebuttal reports.  *See generally*, Dkt. 1942.  Moreover, it appears that Blue Spike did not even attempt to retain an expert to respond to the Report until the day that its responsive report was due.  Dkt. 1938.  Now, instead of providing Defendants with its own rebuttal report on validity, Blue Spike seeks to strike Defendants' report.  If Blue Spike had a legitimate complaint about Dr. Quackenbush's report it would have raised it long ago – most likely within days of receiving the Report.  That Blue Spike failed to do so, and instead used the present Motion as an excuse to ignore the

parties' deadline to file rebuttal reports, should not go unnoticed.  Accordingly, to the extent that Blue Spike had any legitimate basis to complain about the Report, it has waived its complaints by failing to act sooner.

## V.    CONCLUSION

This a complex patent case – made more complex by Blue Spike's refusal to reasonably limit the number of claims that will have to be decided at trial.  Pursuant to Rule 26, the Report is required to contain detailed analysis and support for Dr. Quackenbush's opinions that the asserted patents are invalid by clear and convincing evidence.  While this exercise may seem tedious, the alternative is no better.  Had Defendants presented a report with conclusory, unsupported opinions, Blue Spike would almost certainly be complaining that it did not get enough information.  Blue Spike cannot just seek to strike an expert report because it does not like what the report clearly shows – that Blue Spike's patents are invalid.

As set forth above, the Report is appropriately detailed and fully complies with Rule 26. This is underscored by the fact that Blue Spike is unable to cite to a single case that – when read in context (and not just conveniently excised) – actually supports its position.  Defendants respectfully request that Blue Spike's Motion be denied.

Dated:  April 23, 2015


By:                                                  /s/ Eric H. Findlay                                 
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone:  (903) 534-1100
Facsimile:   (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

*Attorneys for Defendant Audible Magic, Corp.*


/s/  Andrew L. Perito
Edward R. Reines
Cal. Bar No. 135960 – Admitted to E.D. Texas
Lead Attorney
edward.reines@weil.com
Andrew L. Perito
Cal. Bar No. 269995 – Admitted to E.D. Texas
andrew.perito@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendant Last.fm Ltd.*

-15-

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served on April 23, 2015, with a copy of this document *via* electronic mail.

*/s/ Eric H. Findlay*
Eric H. Findlay