# EXHIBIT 1



ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759
WWW.ORRICK.COM

Gabriel M. Ramsey
(415) 773-5535
gramsey@orrick.com

The Honorable Robert W. Schroeder, III
U.S. District Court for the Eastern District of Texas
221 West Ferguson, Tyler, TX 75702

Re:   *Texas Instruments, Inc. v. Blue Spike, LLC.* **(Case No. 6:12-cv-499)** – **Audible Magic's Letter Brief Requesting Leave to File** *Daubert* **Motion on Blue Spike's Damages Report**

Dear Judge Schroeder,

The fundamentally flawed opinions of Blue Spike's damages expert, Mr. Rodney Bosco, should be excluded because they are inherently unreliable.  Mr. Bosco's opinions violate a basic tenant of Federal Circuit damages law:  Mr. Bosco applies a royalty rate to Audible Magic's entire revenue base without presenting any evidence that the patented feature drives demand for the accused products.  "The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *Virnetx, Inc. v, Cisco Systems, Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014).  Mr. Bosco attempts neither; his report must be struck.  Accordingly, Audible Magic respectfully requests leave to file a *Daubert* motion to exclude Mr. Bosco's expert opinions regarding Blue Spike's purported patent infringement damages.

**I.  Blue Spike's Damages Report**

Blue Spike's report on damages, submitted by Mr. Bosco, is straight forward.  First, Mr. Bosco "analyzes" the *Georgia Pacific* factors to estimate a royalty rate for the asserted patents.[1] Next, Mr. Bosco applies that rate to Audible Magic's *entire* revenue.  In his report, Mr. Bosco provides no justification for his use of Audible Magic's entire revenue as a royalty base.

**II. Federal Circuit Law on Damages**

The Federal Circuit has endorsed two different methodologies for identifying the revenue base on which to apply a reasonable royalty rate: (1) use of the entire market value rule and (2) apportioning the revenue base to reflect the value of the product attributable to the patented invention.  Regardless of which method is used, the Federal Circuit "has consistently held that 'a

---

[1] Audible Magic believes that Mr. Bosco's application of the *Georgia Pacific* factors is also legally insufficient and fatally flawed.  But in the interest of limiting the number of disputes for this Court, the present contemplated motion only focuses on Mr. Bosco's improper royalty base.



Judge Schroeder
May 18, 2015
Page 2

reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place.'" *Virnetx*, 767 F.3d at 1327 (quoting *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869 (Fed. Cir. 2010)).

"[W]hen claims are drawn to an individual component of a multi-component product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product." *Virnetx*, 767 F.3d at 1326. "A patentee may assess damages based on the entire market value of the accused product **only where** the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) (emphasis added); *see also TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed.Cir.1986) ("The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand."); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").[2]

One of the seminal cases in this area is *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), in which the plaintiff based its reasonable royalty calculation on the entire revenue base of Microsoft's Outlook software product, even though the only accused feature was the "date-picker" tool. The Federal Circuit held that the plaintiff could base its damages on the entire value of Outlook only if "the feature patented constitutes **the basis for customer demand**." *Id*. at 1336 (emphasis added). The plaintiff thus had the burden of demonstrating whether anyone had ever purchased Outlook because of the date-picker tool. The plaintiff failed to meet its burden. "Indeed, Lucent's damages expert conceded that there was no 'evidence that anybody anywhere at any time ever bought Outlook, be it an equipment manufacturer or an individual consumer, [ ] because it had a date picker.'" *Id*. at 1337-38. The Federal Circuit vacated the jury's damages award and remanded for a new trial on damages. *Id*. at 1338, 1340.

---

[2] Even if Blue Spike attempts to argue that its patents cover the entirety of Audible Magic's products, Mr. Bosco's damages opinions would still be fatally flawed because he failed to articulate the incremental value of the patented invention. *See, e.g.*, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("When a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.") (citing *Ericsson,* 773 F.3d at 1233 ("[T]he patent holder should only be compensated for the approximate incremental benefit derived from his invention.")).



Judge Schroeder
May 18, 2015
Page 3

      In *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d at 51, the Federal Circuit also rejected an expert's damages opinion because he failed to apportion between the allegedly infringing feature and non-accused features. The plaintiff's expert calculated his damages as a percentage of the entire market value of a laptop computer rather than of the patent-practicing optical disk drive alone. *Id.* at 68. The Federal Circuit held that use of the entire market value of the laptops was improper because the plaintiff had not presented any evidence showing that the patented disk drive **drove consumer demand** for laptop computers. *Id.*; *see also id.* at 69 ("There is no evidence that this feature alone motivates consumers to purchase a laptop computer, such that the value of the entire computer can be attributed to the patented disc discrimination method."). On this point, the Federal Circuit noted, "[i]t is not enough to merely show that the disc discrimination method is viewed as valuable, important, or even essential to the use of the laptop computer.  Nor is it enough to show that a laptop computer without an ODD practicing the disc discrimination method would be commercially unviable." *Id.* at 68. Given the plaintiff's failure to apportion, the Federal Circuit affirmed the lower court's decision offering the plaintiff either a new trial on damages or a remittitur of the verdict from $52 million to $6.2 million. *Id.* at 64, 71.

**III. Blue Spike's Damages Report Is Legally Insufficient**

      Mr. Bosco's failure to apportion his royalty base violates well-established Federal Circuit law.  In his report, Mr. Bosco simply applies his estimated royalty rate against the entire revenue base of Audible Magic.  Mr. Bosco fails to even allege, much less support, that the patented features drive consumer demand for Audible Magic's products.  There can be no doubt that, in order to rely on the entire revenue of the accused product, Blue Spike carries the burden of proving that the accused functionality drives consumer demand. *Id.* at 68.  Mr. Bosco's failure to even acknowledge this renders his opinions unreliable and fatally flawed.

      Moreover, Mr. Bosco fails to opine or provide support that his proffered analysis is tied to the *incremental* value that the patented invention adds to the end product.  The only statement in Mr. Bosco's report even remotely related to the importance of the asserted patents is legally insufficient to survive a *Daubert* challenge.  Mr. Bosco claims that he:

> [U]nderstand[s] from Professor Tewfik that, based on his experience in the field of signal processing (particularly in the field of watermarking), it is his opinion that none of Audible Magic's products or services would function without the common architecture, identified above as the fingerprinting, matching and database. Further, I understand that



Judge Schroeder
May 18, 2015
Page 4

> Audible Magic's common architecture is the source of Blue Spike's patent allegations and is essential to each of Audible Magic's accused products and services.

Bosco Report, p. 19.[3]  In other words, Mr. Bosco claims that the accused functionality is essential for Audible Magic's products.  The Federal Circuit has squarely rejected this type of argument.  *See LaserDynamics*, 694 F.3d at 68 ("It is not enough to merely show that the [accused functionality] is viewed as valuable, important, or even essential to the use of the [entire product].").

Furthermore, Blue Spike's other expert report underscores that the entire market value rule is <u>not</u> appropriate in this case.  Dr. Tewfik opined that "[t]he '<u>reference database</u>' consisting of fingerprints of audio and visual media is the foundation of most of Audible Magic's product and service offerings." Tewfik Report, p. 9 (emphasis added).  In other words, it is the content of the database (driven by relationships with content providers) that drives the value of Audible Magic's products – not the accused matching functionality.

**IV. Blue Spike's Damages Report Must Be Struck**

Because Mr. Bosco failed to apportion and failed to establish the entire market value rule, his damages opinions are wildly inflated. And this is not a matter that can be handled on cross-examination. Allowing Mr. Bosco to testify at trial about the entire Audible Magic revenue base would unjustifiably "skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc*, 632 F.3d at 1320. In the exercise of its gatekeeping responsibilities, the Court must strike the entirety of the Bosco opinions and report because of Mr. Bosco's violation of *Lucent* and *LaserDynamics*.  *See Virnetx*, 767 F.3d at 1328 ("the district court should have exercised its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"); *see also Wi-Lan Inc. v. Alcatel Lucent USA, Inc.*, 2013 U.S. Dist. LEXIS 189551, Case No. 6:10-cv-521 (E.D. Tex. June 28, 2013) (granting motion to strike damages report that neither apportioned nor met the entire market value rule).

**V. Conclusion**

Blue Spike's damages report is squarely in violation of established Federal Circuit precedent.  This Court should exercise its gatekeeping responsibilities and exclude those

---

[3] This statement is included in Mr. Bosco's "analysis" of *Georgia Pacific* factor 10; the statement is not even made in the context of discussing an appropriate royalty base.


ORRICK

Judge Schroeder
May 18, 2015
Page 5

unreliable opinions.  Accordingly, Audible Magic respectfully requests leave to file a *Daubert* challenge against Mr. Bosco's report.

Sincerely,

Gabriel Ramsey