# EXHIBIT 1



ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759
WWW.ORRICK.COM

Gabriel M. Ramsey
(415) 773-5535
gramsey@orrick.com

The Honorable Robert W. Schroeder, III
U.S. District Court for the Eastern District of Texas
221 West Ferguson, Tyler, TX 75702

Re: *Texas Instruments, Inc. v. Blue Spike, LLC.* **(Case No. 6:12-cv-499)** – Audible Magic's Letter Brief Requesting Leave to File *Daubert* Motion Regarding Dr. Papakonstantinou

Dear Judge Schroeder,

    The fundamentally flawed opinions of Blue Spike's expert, Dr. Yannis Papakonstantinou, regarding validity of the asserted patents should be excluded because they are inherently unreliable. The Papakonstantinou Report has three fatal flaws: (1) it is rife with conclusory, unsupported characterizations of the prior art (indeed, it seems that Dr. Papakonstantinou did not even review the source code or documents underlying Audible Magic's system prior art); (2) it lacks any analysis of the *claims* of the Asserted Patents (it instead attempts to distinguish the prior art by comparing the prior art to a preferred embodiment in the specification); and (3) Dr. Papakonstantinou applies different claim constructions than those adopted by the Court. Accordingly, Audible Magic respectfully requests leave to file a *Daubert* motion to exclude Dr. Papakonstantinou's expert opinions.

### I. Dr. Papakonstantinou's Conclusory Opinions Are Unsupported By Facts Or Appropriate Analysis

    Blue Spike admits that this case will turn on the analysis of source code. *See, e.g.*, Dkt. 1544 at 8 (arguing that its infringement claims will "ultimately depend on Audible Magic's source code."). Similarly, where Audible Magic is asserting that its prior art systems invalidate the Asserted Patents, the source code must be analyzed. Yet, in his report, Dr. Papakonstantinou fails to analyze *any* source code or other technical documents. Instead, his Report is filled with conclusory, unsupported opinions that Blue Spike's patents are valid. Indeed, based on the "List of Materials Considered" submitted with his report, it seems that Dr. Papakonstantinou only ever reviewed source code from a single prior art instrumentality and never reviewed any of the underlying design documents evidencing the functionality of the prior art instrumentalities. It is difficult to understand how Dr. Papakonstantinou's unsupported, conclusory assertions can be reliable when he never reviewed or analyzed the code or underlying documents.

### II. The Papakonstantinou Report Is Flawed Because It Lacks Analysis Of The *Claims* Of The Asserted Patents Compared To The Prior Art

    The Papakonstantinou Report is fundamentally flawed because it does not analyze the prior art as compared to the *claims* of the asserted patents. Indeed, Dr. Papakonstantinou only refers to the claims of the Asserted Patents in *three paragraphs* in his entire section analyzing the prior art. Instead of focusing on the claim language, Dr. Papakonstantinou makes some general



Judge Schroeder
May 18, 2015
Page 2

observations about "improvements" disclosed in the specification of the Asserted Patents and then provides opinions on whether those improvements are found in the prior art.

For example, Dr. Papakonstantinou opines that an improvement taught by the Blue Spike Asserted Patents is "the introduction of the NULL case." Report, ¶53. But the "NULL case" does not appear in any claim of the Asserted Patents, nor is it a requirement of this Court's claim constructions. Nevertheless, when discussing various prior art references, Dr. Papakonstantinou "distinguishes" those references by arguing that they do not contain the NULL set:

- "These statements by Audible Magic imply that the '223 patent did not teach how to identify works for which a corresponding representation does not exist in the reference database. Conversely, Blue Spike patents-in-suit address this issue as the NULL set." Report, ¶106. (Dr. Papakonstantinou then explains that other prior art does not invalidate the Blue Spike patents for the same reason. *See, e.g.*, Report, ¶110 ("For the same reason that the '223 Patent does not invalidate . . . neither does the the SoundFisher program"), ¶125 (same for Audible Magic's Audio Databases), ¶127 (same for the AirData Blade).)

- "The Digital Generations source code appears as limited to the teachings of the '223 Patent and SoundFisher program in that it shows no indication of being able to address NULL cases." Report, ¶120.

Blue Spike should not be permitted to argue the validity of its patents by making reference to an embodiment that is not required by any of the claims. Dr. Papakonstantinou's opinions attempting to do so should be struck.

**II.    The Papakonstantinou Report Applies Different Claim Constructions Than Those Adopted By The Court And Contradicts Blue Spike's Prior Claim Construction Positions**

Dr. Papakonstantinou's failure to compare the claims, as construed, to the asserted prior art is often due to the fact that through the Report, Blue Spike is attempting to re-litigate claim construction issues that have already been decided.

First, Dr. Papakonstantinou's repeated (and vague) reference to an abstract's purported ability to account for the "NULL set" appears to be an attempt to argue that each instance of the term "abstract" must be defined by that ability. However, if Blue Spike wanted to argue that, it should have done so at claim construction. It did not and the Court's claim construction of "abstract" does not require any limitation regarding the "NULL set." That language appears in no construction in this case whatsoever. *See* Dkt. 1700 and 1776.

Second, Dr. Papakonstantinou repeatedly argues that "abstracts," in general, must be able to distinguish between "versions" of a signal. *See, e.g.*, Report at ¶102 ("[T]he four Blue Spike



Judge Schroeder
May 18, 2015
Page 3

patents-in-suit inform one of ordinary skill in the art how to match 'intended' audio samples and differentiate between versions of those samples.", ¶135 (the Asserted Patents "teach a process of creating an "abstract" that is able to differentiate versions of songs"), ¶150 ("One of the improvements introduced by the Blue Spike patents-in-suit is the ability to differentiate between versions."), ¶161 (In opining on purported secondary indicia of non-obviousness, Dr. Papakonstantinou states "[t]he Blue Spike patents-in-suit teach a number of novel improvements over the prior art including differentiation of versions and handling of NULL cases."). Again, during the claim construction process Blue Spike did not argue that an "abstract" must always be able to distinguish between "versions." Indeed, it took the opposite approach – arguing that abstracts "*may* match a version of a signal to an original signal" (Dkt. 1700 at p. 4) (emphasis added) – and never claimed that abstracts *must* distinguish between versions. It is too late to argue otherwise now, and the Court's claim construction of "abstract" does not require any limitation regarding "versions."[1, 2]

Third, in order to argue around the prior art, Dr. Papakonstantinou asserts that abstracts require "the smallest amount of data, at least a single bit, which can represent and differentiate two digitized signal representations." Report, ¶ 51 (citing this language as the abstracts' "improvements over the prior art"). However, this construction was rejected by both Blue Spike and the Court during claim construction. Dkt. 1700 at 9 (Blue Spike argued that "[t]he 'smallest amount of data' phrase is not present in the intrinsic record and inappropriate in this context."); Dkt. 1831 (The Court held that "[r]egarding, Defendants' 'smallest amount of data that can differentiate signals' proposal, the Court finds that this would potentially limit the claims to a preferred embodiment.").

Fourth, Dr. Papakonstantinou asserts that "abstracts" carry out *only* one-to-one matching that returns an "intended match," as purportedly compared to prior art systems that enabled search "for similar sounds" and relative comparisons between signals. Report, ¶¶ 63-66, 95-96 (prior art implements "notion of similarity (versus exact matching as in database systems)"; asserting that "abstracts" covers only "simply matched" signals, but not signals "ranked in order

---

[1] Such a requirement would also run afoul of the doctrine of claim differentiation, as some claims of the Asserted Patents expressly recite differentiating between versions, and others do not.

[2] Some Asserted Claims require an explicit "versions" limitation. However, when presenting his analysis, Dr. Papakonstantinou does not make any distinction among the asserted claims. Not only should Dr. Papakonstantinou be precluded from re-arguing claim construction, but he should not be permitted to opine that certain prior art, across the board, does not invalidate the Asserted Patents because of his belief that the prior art does not disclose differentiating between versions. Such an opinion, if allowed, should be confined to only those claims that include the "version" limitation.



Judge Schroeder
May 18, 2015
Page 4

of their similarity."). This is exactly the *opposite* of what Blue Spike argued in claim construction:

- When discussing the construction of "abstract," Blue Spike claimed that "the process of comparing abstracts may indicate a variety of results—such as the degree of relatedness between two signals, whether they are versions of another signal, ***how they are similar or dissimilar*** . . . " Dkt. 1700 at 9 (emphasis added);

- Blue Spike argues that abstracts can "can ***indicate similarity*** to a member of the set" Dkt. 1700 at 10 (emphasis added);

- Blue argues that abstracts "may even ***match similar signals*** and indicated how and to what degree those signals are related" Dkt. 1700 at 13 (emphasis added);

- "The patents-in-suit improve upon the prior art in a variety of ways. Digital abstracts, as taught in the patents-in-suit, detail techniques for comparing and distinguishing digital signals, not just matching them." Dkt. 1700 at p. 4;

- "If Defendants have their way, the rich comparing and distinguishing features taught in the patents-in-suit would be replaced with the 1-to-1 matching present in the prior art." Dkt. 1700 at p. 5;

- Blue Spike argued against Defendants' claim construction positions by asserting that Defendants' constructions would limit the patents to "the 1-to-1 matching widely taught in the prior art." Dkt. 1700 at p. 13.

The Court ultimately agreed with Blue Spike's arguments, adopting a version of "abstract" and "match" that was broader than a one-to-one match. Dkt. 1831 at 32, 36.

Thus, in his report, Dr. Papakonstantinou either ignores the Court's Claim Construction Order or attempts to re-litigate some of those constructions. Regardless of his motivation, such opinions are legally inadequate.

### III. The Papakonstantinou Report Must Be Struck

"Rule 702 . . . requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 2795 (1993). Here, Dr. Papakonstantinou is offering opinions on the validity of the Asserted Patents. But those opinions are unsupported, apply rejected claim constructions, and fail to compare the prior art to the claims at issue.

FRE 702 and *Daubert* require that expert opinions be supported by scientifically valid methodology. Dr. Papakonstantinou does not base his opinions on any technical analysis of the



Judge Schroeder
May 18, 2015
Page 5

prior art instrumentalities. It is doubtful he has even reviewed the underlying source code. Such conclusory, unsupported opinions are the exact thing that Courts should exclude. For example, where an expert did not point to any cogent underlying sources for factual assertions, and instead of particularly analyzing the accused product, combined general sources of information and made unsupported inferences from cursory review of the products, the expert's opinions were excluded under *Daubert*. *Sorkin v. Amsysco, Inc.*, 2006 U.S. Dist. LEXIS 39399, *7-9 (S.D. Tex. 2006); *see also Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tex. 2001) (excluding opinions on patent validity that did not contain sufficient underlying factual bases and analysis).

Expert opinions under an incorrect claim construction have no relevance. *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1246 (Fed. Cir. 2002). District courts routinely exclude expert testimony premised on mischaracterizations of the claim construction as inadmissible under *Daubert* and Rule 702. *See, e.g.*, *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 171 (S.D.N.Y. 2012); *MarcTec, LLC v. Johnson & Johnson*, No. 07-cv-825-DRH , 2010 WL 680490, *4 (S.D. Ill. Feb. 23, 2010). Where expert opinion does not conform to the Court's claim construction, it is irrelevant to the questions of validity and infringement. *See MarcTec*, 2010 WL 680490 at *4. Expert testimony must not encourage the jury to depart from the Court's claim construction and to interpret the claims on its own. *EZ Dock, Inc. v. Schafer Sys.*, No. 98-2364, 2003 WL 1610781, at *12 (D. Minn. Mar. 8, 2003); *Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 WL 2022815, at *1 (E.D. Mich. July 7, 2009) (excluding expert opinions premised on claim constructions that departed from the Court's).

Dr. Papakonstantinou's comparison of the prior art to alleged *unclaimed* benefits of the Blue Spike patents is equally irrelevant to this case. It cannot be disputed that anticipation and obviousness require a comparison of the asserted prior art to the patent claims at issue. In order to challenge claims of invalidity, Blue Spike must perform the converse analysis – opining on which elements are missing from the prior art. Dr. Papakonstantinou's report plainly fails in this regard, and his opinions that preferred embodiments are missing from the prior art are irrelevant and will not assist the trier of fact to determine whether the Blue Spike patents are valid.

**V. Conclusion**

Dr. Papakonstantinou's Report is premised on inadequate factual analysis and application of erroneous law, and is therefore irrelevant and unreliable. This Court should exercise its gatekeeping responsibilities and exclude those unreliable opinions. Accordingly, Audible Magic respectfully requests leave to file a *Daubert* challenge against Dr. Papakonstantinou's report.

Sincerely,

Gabriel Ramsey