

Sender's Email Address: rgarteiser@ghiplaw.com

Counsel for Blue Spike, LLC

Randall T. Garteiser
Christopher A. Honea
Kirk J. Anderson
Molly A. Jones
**Garteiser Honea PLLC**
119 W. Ferguson St.
Tyler, TX 75702
(888) 908-4400 phone and fax
rgarteiser@ghiplaw.com
chonea@ghiplaw.com
kanderson@ghiplaw.com
mjones@ghiplaw.com

Date: June 8, 2015

The Honorable Robert W. Schroeder, III
U.S. District Court for the Eastern District of Texas
221 West Ferguson, Tyler, TX 75702

Re:   *Texas Instruments, Inc. v. Blue Spike, LLC*; 6:12-cv-499;
      Letter Brief Opposition to Audible Magic's Request to File *Daubert* Motion Regarding Mr. Bosco's Report [Dkt. No. 1958]

Dear Judge Schroeder,

Audible Magic filed three letter-brief requests to file *Daubert* motions excluding all of Blue Spike's expert reports. Here, Blue Spike opposes Audible Magic's request to file a *Daubert* motion to exclude Mr. Bosco's report because Audible Magic's request is premised on incorrect case law.

This Court has recognized that "the rejection of expert testimony is the exception rather than the rule." *Alexam, Inc. v. Barnes and Noble, Inc., et al.*, Case No. 2:13-cv-003-MHS-CMC, Dkt. No. 161, at 6-7 (E.D. Tex. May 28, 2013). "Daubert did not work an overriding change in federal evidence law, and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.' *Id.* "As Daubert itself recognized and as noted above, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional



and appropriate means of attacking shaky but admissible evidence.'" *Id.* (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993)).

I. **Audible Magic's request should be denied because its misapplied legal theory is not a proper basis for a *Daubert* motion.**

At the heart of Mr. Bosco's damages calculations is the following premise—the core technology driving each of Audible Magic's accused products infringes Blue Spike's patents-in-suit. Mr. Bosco relies on Dr. Tewfik's assessments that (1) "Audible Magic's common architecture is the source of Blue Spike's patent allegations and is essential to each of Audible Magic's accused products and services" and (2) "none of Audible Magic's products or services would function without the common architecture, identified above as the fingerprinting, matching and database." Expert Report of Rodney Bosco ("Bosco Report") at 19. Thus, the legal theory on which Mr. Bosco relies is appropriate when the essence of the product itself infringes. *See, e.g. Personalized Media Communications, LLC v. Zynga, Inc.*, Case No. 2:12-CV-068-JRG-RSP, Dkt. No. 231, at 3 (E.D. Tex. Nov. 8, 2013) (denying *Daubert* motion in part because software as a whole was accused while Defendant's legal theory would only have been appropriate if portions of the software were accused).[1]

Audible Magic proffers a legal theory for an entirely distinct situation in which "claims are drawn to **an individual component of a multi-component product**." Audible Magic's Letter Brief [Dkt. No. 1958] ("Letter Brief") at 2 (citing *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)) (emphasis added). It is no surprise, then, that the cases on which Audible Magic relies involve allegedly infringing individual components of multi-component products. *See, e.g. VirnetX, Inc.*, 767 F.3d 1308 (in which plaintiff accused "FaceTime" individual feature of iPhone and iOS); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (in which accused "date-picker tool in Outlook is but a very small component of a much larger software program"); *LaserDynamics, Inc. v. Quanta Computer*, Inc., 694 F.3d 51, 56 (Fed. Cir. 2012) (in which laptop's ability to "identify the type

---

[1] *Contra* Letter Brief at 3 (in which Audible Magic's reliance on an inapplicable legal theory results in a faulty conclusion that "there can be no doubt that, in order to rely on the entire revenue of the accused product, Blue Spike carries the burden of proving that the accused functionality drives consumer demand").



of optical disc . . . that is inserted into the" drive was only a small part of the laptop's functionality).

Blue Spike respectfully asks the Court to deny Audible Magic's letter brief request to file a *Daubert* motion regarding Mr. Bosco's damages report because the legal theory on which it relies is inapplicable here.

### A. Mr. Bosco's damages theory relates to the core functionality that powers the accused products.

Mr. Bosco's conclusions are founded on Professor Tewfik's assessment that

> none of Audible Magic's products or services would function without the common architecture, identified above as the fingerprinting, matching and database. Further, I understand that Audible Magic's common architecture is the source of Blue Spike's patent allegations and is essential to each of Audible Magic's accused products and services.

Bosco Report at 19. This conclusion is supported by deposition testimony provided by Audible Magic programmers.[2] Thus, Mr. Bosco's damages calculations are not based on individual components of multi-component products; Mr. Bosco believes that the accused products would not function without core technology that is the source of Blue Spike's patent allegations.

When a product as a whole infringes, net sales are an appropriate royalty base. *See, e.g. Personalized Media Communications,* Case No. 2:12-CV-068-JRG-RSP, Dkt. No. 231, at 3 (denying *Daubert* motion in part because software as a whole was accused, not just portions of it). For example, in *Bianco v. Globus Med., Inc.*, this Court found that "the net sales of the Caliber and Rise products as the royalty base for calculating damages without further apportionment was legally appropriate and was supported by the evidence at trial" when the accused portion of the product "did not relate to only a single subcomponent or feature" but "related to the overall idea." *Bianco*, 2014 U.S. Dist. LEXIS 151967, at *69.

---

[2] For example, Senior Programmer Erling Wold testified that Audible Magic's "core technology" is the "internal basic technology on which all other applications that Audible Magic did were built." Deposition of Erling Wold, Tr: 162:13-19.



### B. Audible Magic's case law is inapplicable to this case.

Audible Magic raises a single argument: "Mr. Bosco's opinions violate a basic tenant of Federal Circuit damages law" which "requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." Letter Brief at 1 (citing *Virnetx*, 767 F.3d at 1329 (Fed. Cir. 2014)). But Audible Magic's case law is only appropriate in situations where a small portion of a multi-component product is accused. The present situation is different—the core functionality of each accused product is implicated.

The cases on which Audible Magic relies reflect their application to multi-component products. *See VirnetX*, 767 F.3d at 1326 ("claims are drawn to an individual component of a multi-component product"); *LaserDynamics*, 694 F.3d at 67 ("small elements of multi-component products are accused of infringement"); *Lucent Techs.*, 580 F.3d at 1339 ("the patented invention is only a small component or feature of the licensed product"). In each of Audible Magic's cases, small components of larger multi-component products are accused. The law Audible Magic cites may be appropriate when only small portions of multi-component software is accused, but such is not the case here.

This case is more similar to *Bianco v. Globus Med* in which the accused element "related to the overall idea." *Bianco*, 2014 U.S. Dist. LEXIS 151967 at 62. The court distinguished cases in which small portions of a multi-component product are accused from cases in which the essence of the products as a whole are accused, saying "This case is not like the Federal Circuit cases that have found fault with a jury award of a reasonable royalty based on the entire market value of a product" because "[t]hose cases dealt with the prototypical fact pattern in which the infringing feature in the accused product is a minor subcomponent of, or makes a minor contribution to, the overall product." *Id*. 61-62. The court then identified the same cases relied upon by Audible Magic as not pertaining to accusations against the product as a whole. *Id*. (distinguishing *VirnetX*, *LaserDyamics*, and *Lucent* as applying to cases in which an "accused product is a minor subcomponent of, or makes minor contribution to, the overall product").

In *Personalized Media Communications*, this Court once again distinguished the same cases relied upon by Audible Magic, saying that "none of these cases are analogous to the record currently before the Court" because the plaintiff "alleges that each accused game, *as a whole*, infringes the



patents-in-suit." *Personalized Media Communications, LLC v. Zynga, Inc.*, Case No. 2:12-CV-068-JRG-RSP, Dkt. No. 231, at 3 (denying motion to exclude portions of an expert report).

### C. Audible Magic should not be allowed to file a Daubert motion on its inapplicable legal theory.

Audible Magic's legal theory is not applicable to the facts of this case and therefore does not warrant an opportunity to file a *Daubert* motion. If Audible Magic believes Mr. Bosco chose an incorrect legal theory, such an argument is not proper for a *Daubert* motion. *See D.O. Creasman Elecs., Inc. v. United States*, 2011 U.S. Dist. LEXIS 39251, *5 (W.D.N.C. 2011). To the extent Audible Magic takes issue with Mr. Bosco's conclusion, it will have the opportunity to cross-examine Mr. Bosco. *See O'Neil v. Isle of Capri Casinos, Inc.*, 2003 U.S. Dist. LEXIS 27823, at 8 (E.D. Tex. Oct. 6, 2003). And if Audible Magic believes Mr. Bosco failed to state facts sufficient to support his legal theory, such an attack is also improper for a *Daubert* motion. *See Endo Pharmaceuticals Inc. v. Watson Laboratories, Inc.*, Case No. 2:13-CV-192-JRG, Dkt. No 116 (E.D. Tex. Feb. 20, 2015).

## II. Conclusion

Blue Spike respectfully asks that Audible Magic's request to file a Daubert motion regarding Mr. Bosco's report be denied because Audible Magic relies on case law that is not applicable to this case.

Yours very truly,

Randall T. Garteiser
Counsel for Blue Spike, LLC