

Sender's Email Address: rgarteiser@ghiplaw.com

Counsel for Blue Spike, LLC

Randall T. Garteiser
Christopher A. Honea
Kirk J. Anderson
Molly A. Jones
**Garteiser Honea PLLC**
119 W. Ferguson St.
Tyler, TX 75702
(888) 908-4400 phone and fax
rgarteiser@ghiplaw.com
chonea@ghiplaw.com
kanderson@ghiplaw.com
mjones@ghiplaw.com

Date: June 8, 2015

The Honorable Robert W. Schroeder, III
U.S. District Court for the Eastern District of Texas
221 West Ferguson, Tyler, TX 75702

Re:  *Texas Instruments, Inc. v. Blue Spike, LLC*; 6:12-cv-499;
Letter Brief Opposition to Audible Magic's Request to File *Daubert* Motion Regarding Dr. Papakonstantinou's Report [Dkt. No. 1959]

Dear Judge Schroeder,

Audible Magic filed three letter-brief requests to file *Daubert* motions excluding all of Blue Spike's expert reports. Here, Blue Spike opposes Audible Magic's request to file a *Daubert* motion to exclude Dr. Papakonstantinou's report because Audible Magic fails to present a proper basis for a *Daubert* motion.

This Court has recognized that "the rejection of expert testimony is the exception rather than the rule." *Alexam, Inc. v. Barnes and Noble, Inc., et al.*, Case No. 2:13-cv-003-MHS-CMC, Dkt. No. 161, at 6-7 (E.D. Tex. May 28, 2013). "*Daubert* did not work an overriding change in federal evidence law, and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.' " *Id.* "As *Daubert* itself recognized and as noted above, '[v]igorous cross-examination, presentation of contrary



evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' " *Id.* (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993)).

### I. Audible Magic's request should be denied because Audible Magic cannot prevail on its factual sufficiency theory.

Audible Magic argues that Dr. Papakonstantinou makes "conclusory opinions" that are "unsupported by facts or appropriate analysis." Audible Magic's Letter Brief ("Letter Brief") at 1. Audible Magic's focus on the factual sufficiency of Dr. Papakonstantinou's report is not a proper basis for a *Daubert* motion. *See Droplets, Inc. v. Overstock.com, Inc., et al.*, Case No. 2:11-cv-401-JRG-RSP, Dkt. No. 365, at 4 (E.D. Tex. Jan. 13, 2015) (denying motion to exclude expert testimony because moving party's concerns "appear to be ones of factual sufficiency and not of methodological error"). Nor is Audible Magic's claim that Dr. Papakonstantinou offers "conclusory opinions" a sufficient basis to file a *Daubert* motion. *Id.* (declining to rule on Defendant's claim that an expert's opinions were conclusory because such a ruling would not be consistent with the court's role as gatekeeper).

Dr. Papakonstantinou relied on source code, documents, deposition testimony, patents, etc., to formulate his opinions, as evidenced in his "List of Materials Considered." Audible Magic's claim that Dr. Papakonstantinou made "unsupported, conclusory assertions" is disingenuous, as Audible Magic even cites to Dr. Papakonstantinou's "List of Materials Considered." Letter Brief at 1. Audible Magic's factual sufficiency claim is not a proper basis for a *Daubert* motion. *See Endo Pharmaceuticals Inc. v. Watson Laboratories, Inc.*, Case No. 2:13-CV-192-JRG, Dkt. No 116 (E.D. Tex., Feb. 20, 2015) (denying "as improper" *Daubert* motion to exclude because moving party's brief was not really "challenging the reliability of the specific opinions" but rather "seeking judgment on the overall evidentiary sufficiency" of the claim).[1]

### II. Audible Magic's request should be denied because Audible Magic's complaints regarding Dr. Papakonstantinou's conclusions are not a proper basis for a *Daubert* motion.

Audible Magic attacks Dr. Papakonstantinou's report for allegedly "not analyz[ing] the prior art as compared to the *claims* of the asserted patents"

---

[1] This is one of three boiler plate *Daubert* letter briefs that Defendant Audible Magic filed shortly after a teleconference with the Special Master where Blue Spike indicated that Audible Magic was over-litigating this dispute.



but then immediately admits that Dr. Papakonstantinou's report "refers to the claims of the Asserted Patents" in multiple paragraphs. Letter Brief at 1. In addition to contradicting itself, Audible Magic fails to mention that Dr. Papakonstantinou not only cites to individual claims, but explains why he believes those claims are representative of other claims. For instance, Dr. Papakonstantinou concluded that

> Claim 1 of the '223 patent, and in particular subsections (b) and (c) of that claim, teaches how feature files storing computed measurements and vectors may be grouped together for storage and retrieval based on similar measurements and distance between the vectors of a sound file and a reference. This language is repeated in the other independent claims, and **I believe that claim 1 of the '223 patent is representative of those claims in this respect**.

Dr. Papakonstantinou's Expert Report Rebutting Invalidity ("Papakonstantinou Report") at ¶ 63 (emphasis added). Audible Magic's claim that Dr. Papakonstantinou's failed to cite claim language is simply not true.

Audible Magic also takes issue with Dr. Papakonstantinou's references to the "null case" and argues that the term "does not appear in any claim of the Asserted Patents." Letter Brief at 2. Once again, Audible Magic misstates the facts. Both the '700 and '494 patents teach "storing information associated with the comparison step to enable . . . an adjustment for database collisions and/or null cases." U.S. Patent 7,600,700, Claim 26; U.S. Patent 7,949,494, Claim 9.[2]

Audible Magic should not be permitted to file a *Daubert* motion when its theories are premised on misrepresented facts. Moreover, because Dr. Papakonstantinou *did* cite to claim language and his reference to the "null case" *does* exist in the patents' claims, Audible Magic's only complaint must be with Dr. Papakonstantinou's conclusions. And a disagreement with an expert's conclusions is not a proper basis for a *Daubert* motion. *O'Neil v. Isle*

---

[2] The Null Case is further explained in more detail in the specification shared by the patents-in-suit. For instance, "[i]n some cases, the engine will consider the NULL case for a generalized item not in its database, or perhaps in situations where data objects may have collisions." U.S. Patent 7,949,494, Col. 10:35-37.



*of Capri Casinos, Inc.*, 2003 U.S. Dist. LEXIS 27823, at 8 (E.D. Tex. Oct. 6, 2003) (noting that the focus of a Daubert inquiry "must be solely on the principles and methodology, not on the conclusions that they generate"); *TQP Development, LLC v. 1-800-Flowers.com*, Case No. 2:11-cv-248-JRG-RSP, Dkt. No. 382, at 5 (E.D. Tex. Nov. 12, 2013) (denying motion to *Daubert* motion because "[d]istilled to their essence, Defendants' disagreements are with Dr. Becker's conclusions, not his methodology").

### III. Audible Magic's request should be denied because Dr. Papakonstantinou's report does not conflict with this Court's claim construction.

Audible Magic also fault's Dr. Papakonstantinou's expert report for allegedly deviating from this Court's claim construction. Audible Magic relies on case law from other courts to make this argument. *See, e.g.,* Letter Brief at 5 (citing *Medism Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 171 (S.D.N.Y. 2012), *overruled by Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352 (Fed. Cir. 2014)). But Audible Magic is once again misinterpreting the facts—Dr. Papakonstantinou does not deviate from this Court's claim construction.

First, Dr. Papakonstantinou's use of the "null case" is appropriate and supported by the patents-in-suit. As described more fully in Section II, the "null case" appears in multiple claims of the patents-in-suit and is bolstered by description in the specification.

Second, Dr. Papakonstantinou does *not* conclude that *abstracts* inherently must differentiate between versions; Dr. Papakonstantinou concludes that the *patents-in-suit* teach differentiation between versions. Letter Brief at 5 (citing Papakonstantinou report at ¶ 150) ("One of the improvements introduced by the Blue Spike patents-in-suit is the ability to differentiate between versions."). Claims in three of the four patents-in-suit refer repeatedly to version differentiation. Audible Magic's argument that Dr. Papakonstantinou believes "abstracts *must* distinguish between versions" is unsupported. Letter Brief at 5.

Third, Audible Magic resurrects an argument it lost on claim construction, and the argument is entirely premised on Dr. Papakonstantinou's citation to the shared specification. Dr. Papakonstantinou notes that "[a]s the Court noted during claim construction, the requirement that **the abstract be a data-reduced representation** that retains the human perceptual quality in the original signal is emphasized throughout the patent specification." Papakonstantinou Report at ¶ 189 (emphasis added). Dr. Papakonstantinou then cites a portion of the



specification regarding creating a data-reduced representation that states "where the signal abstracts are created using data reduction techniques to determine the smallest amount of data, at least a single bit, which can represent and differentiate two digitized signal representations for a given predefined signal set." Papakonstantinou Report at ¶ 189 (citing U.S. Patent 472, Col. 7:40-48). Citing to this passage, among many others, does not mean that Dr. Papakonstantinou believes in Audible Magic's position that the abstract *must* be the smallest representation possible. In fact, Dr. Papakonstantinou highlights that while a reduced data representation is important, it is offset by the need to retain a perceptual relationship. Papakonstantinou Report at ¶ 189 ("The challenge is to maximize the ability to sufficiently compress a signal . . . where such compression is designed to preserve some underlying 'aesthetic quality' of the signal."). Audible Magic's attempt to re-litigate claim construction is improper and without merit.

Finally, Audible Magic takes Dr. Papakonstantinou's references about intended matches completely out of context. Dr. Papakonstantinou concludes that the Blue Spike patents-in-suit do "not suffer from this 'exact match' deficiency,"—i.e. Blue Spike's patents teach a means of finding exact matches whereas the '223 Patent does not. This statement does not mean the Blue Spike patents-in-suit *only* perform "exact matches" (or "intended matches"). Audible Magic's conclusion is a logical fallacy that is not supported by Dr. Papakonstantinou's report. *See, e.g.,* Papakonstantinou Report at ¶ 55 (illustrating that the patents-in-suit teach more than "exact" or "intended" matching in instances in which "there is not necessarily one 'intended match', but multiple 'related matches'.")

Audible Magic twists Dr. Papakonstantinou's words in order to convince the Court to allow a *Daubert* motion. As Blue Spike has shown, the facts speak for themselves and a *Daubert* motion is unnecessary. Moreover, Blue Spike believes it is in no one's interest to continue litigating claim construction. Audible Magic should not be allowed to misrepresent the facts in order to gain an opportunity to file a *Daubert* motion.

### IV.  Conclusion

Blue Spike respectfully asks that Audible Magic's request to file a Daubert motion regarding Mr. Papakonstantinou's report be denied because Audible Magic has failed to provide a proper basis for such a motion.



                        Yours very truly,

                        _____

                        Randall T. Garteiser
                        Counsel for Blue Spike, LLC