# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| BLUE SPIKE, LLC<br>　　*Plaintiff*,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br>　　*Defendants* | Civil Action No. 6:12-CV-499 RWS-CMC<br><br>LEAD CASE |
| BLUE SPIKE, LLC,<br>　　*Plaintiff*,<br>v.<br>AUDIBLE MAGIC CORPORATION, FACEBOOK, INC., MYSPACE, LLC, SPECIFIC MEDIA, LLC, PHOTOBUCKET.COM, INC., DAILYMOTION, INC., DAILYMOTION S.A., SOUNDCLOUD, INC., SOUNDCLOUD LTD., MYXER, INC., QLIPSO, INC., QLIPSO MEDIA NETWORKS LTD., YAP.TV, INC., GOMISO, INC., IMESH, INC., METACAFE, INC., BOODABEE TECHNOLOGIES, INC., TUNECORE, INC., ZEDGE HOLDINGS, INC., BRIGHTCOVE INC., COINCIDENT.TV, INC., ACCEDO BROADBAND NORTH AMERICA, INC., ACCEDO BROADBAND AB, AND MEDIAFIRE, LLC<br>　　*Defendants*. | Civil Action No. 6:12-CV-576 RWS-CMC<br><br>CONSOLIDATED CASE |

**AUDIBLE MAGIC CORPORATION'S EMERGENCY MOTION TO ENFORCE THE COURT'S SCHEDULING ORDER**

The Local Rules of this Court are clear: a party opposing summary judgment motions is limited to 60 pages, total, for its opposition briefs. L.R. CV-7(a)(3)(B). This rule is reinforced by the scheduling order in this case which informs the parties that "[t]he Court will disregard any pages exceeding these limits." (D.I. 1332 at 14). On June 11, 2015, Blue Spike filed its third summary judgment opposition related to Audible Magic. That filing brought Blue Spike's opposition page total to at least 80 – twenty pages over the limit. By this motion Audible Magic is requesting the Court to enforce its scheduling order by either ignoring the last 20 pages of Blue Spike's opposition or requiring Blue Spike to file a 2 page stand-alone opposition.

Such request is not only in accordance with this Court's local rules and scheduling order, but is necessary to alleviate the prejudice to Audible Magic. Prior to Audible Magic's filing of its summary judgment motion of non-infringement, it approached Blue Spike seeking a stipulation, which would be proposed to the Court, to mutually increase the parties' page limits, given that Audible Magic only had 13 pages remaining for its opening brief and Blue Spike had only two pages remaining for its opposition. Blue Spike refused to agree to seek the Court's permission for any increased limits–and in fact refused to engage in any sort of substantive conversation with Audible Magic. Thus Audible Magic filed an abbreviated 13-page motion that conformed with the Court's 60 page total limit. Now, after having refused to seek the Court's permission for additional pages and refusing Audible Magic the courtesy of agreeing to additional pages, Blue Spike unilaterally filed an opposition brief that exceeds the Court's limit by at least 20 pages, completely ignoring the Rules.

Audible Magic has raised this issue to the Court as an emergency motion because it needs to understand what briefing the Court is going to consider in order for Audible Magic to decide how to proceed with a reply.

I.     **Procedural History**

In support of the present motion, Audible Magic states as follows

1. Blue Spike's Opposition to Audible Magic's License Motion (D.I. 1730), properly including the brief and the statement of disputed facts, was 39 pages.[1] Its Opposition to Defendants' Indefiniteness Motion[2] was more than 28 pages. (D.I. 1785). In contrast, Audible Magic's first two summary judgment motions were 20 and 27 pages respectively. (D.I. 1678, 1752). Last fall, Audible Magic thus understood that it still had 13 pages in which to bring a summary judgment motion before this Court, and planned to do so if the need arose. Audible Magic also understood, that even with the most lenient methods of calculation, Blue Spike had at best 1-2 pages to respond to any summary judgment motion brought by Audible Magic:

| Audible Magic Dispositive Motion | Pages | Blue Spike Dispositive Motion | Pages |
|---|---|---|---|
| Motion for Partial Summary Judgment Based on License (D.I. 1678) | 20 | Opposition (D.I. 1730) | 28 |
| Motion for Summary Judgment of Invalidity (D.I. 1752) | 27 | Opposition (D.I. 1785) | 30 |
| **Total Pages:** | **47** | **Total Pages:** | **58** |

2. With full respect for this Court's scheduling order in this case, and in hopes of not burdening this Court with a dispute related to the page limits, Audible Magic first proposed to Blue Spike a *mutual* increase in the page limits for summary judgment in September 2014. With a mutual increase in page limits, Audible Magic hoped to have the opportunity to fully brief any subsequent summary judgment motion, and also allow Blue Spike the opportunity of a full response. *See* Exhibit 1 at 7 (e-mail from Walter Lackey to Randall Garteiser on September

---

[1] In violation of CV-7(a)(1), Blue Spike included its Statement of Disputed Material facts as Exhibit A, in an attempt to decrease the total page count of its Opposition.

[2] This motion was brought on behalf of numerous parties, with Audible Magic being the lead signatory.

15, 2014) ("Per our phone conversation on Friday, Audible Magic proposes that the parties file a joint motion requesting that the summary judgment motion limits of Local Rule CV7(a)(3) . . . be increased to 80 pages for briefs and responses, and 25 pages for replies and sur-replies. This agreement would only be as to Blue Spike and Audible Magic/its customers. And to clarify, Audible Magic is counting the indefiniteness briefing in its totals.").

3. Blue Spike, however, would not agree to any increases. *Id.* at 2 (e-mail from Peter Brasher to Alyssa Caridis on October 14, 2014) ("Blue Spike, LLC will not agree to extend page limits on the case dispositive motions. To the extent Blue Spike's Exhibit A exceeds the page limits as a result of its formatting and inclusion of Audible Magic's "undisputed facts", Blue Spike will re-file a shorter version of those disputed facts in a format which complies with the local rules and the court's order.").

4. Blue Spike thus declined Audible Magic's offer and elected to proceed under the current page limits set forth in the rules. *See Id.* at 1 (e-mail from Alyssa Caridis to Paul Brasher on October 14, 2014)("Just to be clear, regardless of how Blue Spike counts its pages or attempts to reformat its Exhibit A, Blue Spike has used at least 60 pages to respond to Audible Magic's summary judgment motions. The local rules limit a party to 60 pages, collectively, when responding to such motions. This means that if Audible Magic were to file a summary judgment motion tomorrow (it still has pages left to do so), Blue Spike would have no opportunity to file an opposition brief because it has already used its 60 pages (and now is refusing to agree to extend those page limits). So by refusing to agree to a mutual page extension, Blue Spike is essentially waiving any opposition to any of Audible Magic's future summary judgment motions.").

5. After this Court granted Audible Magic's letter brief requesting leave to file an additional summary judgment motion (non-infringement), Audible Magic again offered a mutual

extension of page limits to Blue Spike.  *See* Exhibit 2 at 4-5 (e-mail from Alyssa Caridis to Randall Garteiser on April 20, 2015) ("As you are aware, the Court granted Audible Magic's request to file a summary judgment motion for noninfringement last week….Thus, the parties have two options:  either Audible Magic can eventually file its MSJ brief using only 13 pages and Blue Spike would then have 2 pages to oppose, or the parties can stipulate to increase the page limits articulated in Rule 7(a)(3). …I raised this issue with Mr. Brasher last fall (see attached) but never received a response.  Please let us know which option Blue Spike would like to pursue.  If Blue Spike choses to remain silent on this issue, we will assume that means that it is fine with the current limits and will file a 2 page opposition, consistent with the local rules.").

      6.  Blue Spike repeatedly and in no uncertain terms declined Audible Magic's renewed offer to mutually increase the page limits, at times overstepping the bounds of civility.  *See Id.* at 1 (e-mail from Randall Garteiser to Alyssa Caridis on April 24, 2015 at 12:27 PM) ("Blue Spike disagrees, and as is normally the case in a world where emails fly at a rate of 100 plus a day, it maintains its position that no response to any email from a **notorious serial infringer client like Audible Magic**, is in no way ever an admission of anything.") (emphasis added); *id.* (e-mail from Randall Garteiser to Alyssa Caridis on April 24, 2015 at 10:57 AM)("Blue Spike will not agree to your client's math, and reserves its rights.  We will not stipulate in any way to increasing the page limits Audible Magic has for filing MSJs."); *id.* at 3 (e-mail from Randall Garteiser to Alyssa Caridis on April 22, 2015 at 7:42 PM) ("We are not going to agree to provide audible magic more pages and disagree with your math, but we will let Audible Magic know we they are over the page limit."); *see* Exhibit 3 at 1 (e-mail from Randall Garteiser to Alyssa Caridis on April 24, 2015 at 11:01 AM) ("As indicated in a separate email chain you've initiated, Blue Spike will not agree to provide Audible Magic more 60 pages.  Blue Spike will count pages and most likely challenging Audible Magic's count at the appropriate

time, which is not now when Blue Spike is working on its rebuttal report.").

7. Due to Blue Spike's repeated refusal to agree to a mutual increase of the page limits, Audible Magic took great pains to limit its non-infringement motion to only 13 pages. Audible Magic specifically limited its briefing with the understanding that both parties would abide by the local rules and the scheduling order in this case. *See generally,* Exhibit 2. Blue Spike, however, unilaterally decided it was entitled to a one-sided page extension, disregarding the rules and without permission of the Court, by filing a 22 page brief. This brought its total page count to 80 while Audible Magic's remained at the scheduling order's permitted 60:

| Audible Magic Dispositive Motion | Pages | Blue Spike Dispositive Motion | Pages |
| --- | --- | --- | --- |
| Motion for Partial Summary Judgment Based on License (D.I. 1678) | 20 | Opposition (D.I. 1730) | 28 |
| Motion for Summary Judgment of Invalidity (D.I. 1752) | 27 | Opposition (D.I. 1785) | 30 |
| Summary Judgment of Non-Infringement (D.I. 1957) | 13 | Opposition (D.I. 1973) | 22 |
| **Total Pages:** | **60** | **Total Pages:** | **80** |

8. When Audible Magic raised this issue, Blue Spike provided several excuses and untrue statements for failing to comply with the scheduling order. *See* Exhibit 4 (e-mail from Randall Garteiser to Alyssa Caridis on 6/12/2015). Notably, however, Blue Spike **did not deny** going over the page limits. *Id.* Blue Spike first suggested this Court should stop reading once Blue Spike's page limit is reached (which would be page 2 of its Opposition at best). Second, Blue Spike accused Audible Magic of attempting to win its Motion on a technicality. *Id.* at 1. If this were true, however, Audible Magic would not have tried to resolve the matter amicably and repeatedly asked Blue Spike to agree to a mutual increase in page limits prior to this motion practice. If trying to win on a technicality, Audible Magic would have remained silent until after Blue Spike filed an over-long brief and then moved to strike it after. And finally, Blue Spike

-5-

attempted to attribute one of Audible Magic's motions, which it signed and briefed in full, to another defendant simply because the other defendant e-filed it.

## II. Argument

Blue Spike's refusal to comply with the page limits squarely violates the scheduling order governing this case, the local rules, and the Eastern District's recognition of the importance of these limits. The scheduling order states: "if more than one summary judgment motion is filed, the parties are reminded of the limitations set forth in Local Rule CV-7(a)(3) (e.g., no more than 60 pages total for all summary judgment motions filed). **The Court will disregard any pages exceeding these limits**." (D.I. 1332 at 14) (emphasis added). Local Rule CV-7(a)(3)(B) limits a party responding to summary judgment motions to 60 pages collectively. Judges in the Eastern District of Texas take these rules seriously and enforce them strictly. *See Blackboard, Inc. v. Desire2Learn, Inc.*, 521 F. Supp. 2d 575, 575-576 (E.D. Tex. 2007) (granting motion to strike for exceeding the 60 page limit); *Eolas Tech., Inc. v. Adobe Sys., Inc.,* Case No. 6:09-cv-446 (Sept. 2, 2010) (J. Davis) (Denying the parties' joint motion to increase page limits, and allowing the parties to refile in compliance with the page limit rules because "Local Rules' page limits ease the burden of motion practice on both the Court and the parties").

Blue Spike's failure to abide by the page limit rules governing this action caused irreversible prejudice to Audible Magic. Audible Magic repeatedly requested that Blue Spike engage in a meaningful discussion about page limits many months prior to this motion practice. Blue Spike refused multiple times, and often crossed the bounds of civility in doing so. Blue Spike was therefore well aware of the page limits in this action many months before this Motion and Opposition were briefed. Blue Spike made a conscious decision to stack the decks in its favor, at a time when Audible Magic has no ability to now re-do its opening motion. Blue Spike's refusal to *mutually* increase the page limits circumvented Audible Magic's ability to

fully brief its Motion, while providing Blue Spike nearly double the pages, and thus double the opportunity, to attack Audible Magic's Motion. This clearly puts Audible Magic at an inequitable disadvantage.

Blue Spike and its counsel are not above this Court's rules, and should not be permitted to completely disregard the rules in order to obtain an unfair advantage over Audible Magic. This is particularly true given that Audible Magic has fully complied with the rules and attempted to resolve the matter for months, only to be met with insults from Blue Spike's counsel. Accordingly, Audible Magic respectfully requests that this Court ignore the last 20 pages of Blue Spike's Opposition, as Blue Spike itself suggests this Court do. *See* Exhibit 4. In the alternative, Audible Magic asks that this Court require Blue Spike to re-file within its page limit, in a stand-alone 2 page Opposition.

Dated: June 12, 2015

By:

/s/ Eric H. Findlay
Eric H. Findlay (Texas Bar No. 00789886)
Walter W. Lackey, Jr. (Texas Bar No. 24050901)
FINDLAY CRAFT, LLP
102 N. College Ave., Suite 900
Tyler, TX 85802
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
wlackey@findlaycraft.com

Gabriel M. Ramsey– *LEAD ATTORNEY*
I. Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
gramsey@orrick.com
nchatterjee@orrick.com

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE, LLP

777 S. Figueroa St.
Suite 3200
Los Angeles, CA 90017
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499
acaridis@orrick.com

Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE, LLP
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8418
chiggins@orrick.com

Attorneys for Defendant Audible Magic Corp.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on opposing counsel pursuant to Local Rule CV-5(a)(7)(C) on June 12, 2015.

>  */s/ Eric H. Findlay*
> Eric H. Findlay

## CERTIFICATE OF CONFERENCE

Counsel for Audible Magic attempted, multiple times, to conduct a meet and confer with counsel for Blue Spike on June 12, 2015.  *See* Exhibit 4.  However, Blue Spike would not agree to a teleconference with counsel for Audible Magic unless lead counsel Mr. Gabe Ramsey and Special Master McGovern were in attendance; in short, attempting to characterize this as a discovery dispute.  Based on the e-mail traffic, Audible Magic presumes that Blue Spike opposes this motion.

>  */s/ Walter W. Lackey, Jr.*
> Walter W. Lackey, Jr.